3/23/2015 CourtView Justice Solutions

## CA 1984 06 0071

| | | | |
|---|---|---|---|
| **Case Type** | COURT OF APPEALS | **Action:** | PRE-APRIL 1988 CASES |
| **Case Status** | Closed | **Status Date:** | 04/10/1990 |
| **File Date:** | 06/18/1984 | **Case Judge:** | COMMON PLEAS COURT, |
| **DCM Track:** | | **Next Event:** | |

All Information | Party | Docket | Disposition | Financial

### Docket Information

| Date | Docket Text | Amount | Image Avail. |
|---|---|---|---|
| 09/29/1988 | JUDGMENT ENTRY APPEAL FROM THE COURT OF APPEALS FILED MOYER,J | $2.00 | Image |
| 04/10/1990 | PLEASE SEE DOCKET FOR PREVIOUS FILINGS | $0.00 | |
| 04/07/1992 | --CONCERNING DISPOSITION \ CONFISCATED PROPERTY ;NO LONGER NEEDED AS EVIDENCE BACK TO JUDGES OFFICE FILED | $0.00 | |
| 08/21/1998 | APPEAL TAKEN FROM COURT OF COMMON PLEAS BUTLER CO CASE #CR83-12-0614 DIRECT APPEAL OF RIGHT IN A CAPITAL CASE APPLICAITON FOR REOPENING PURSUANT TO OH R. APP. P.26(B) FILED JOHN MARSHALL,ATTY,DAVID H BODIKER,OH PUBLIC DEFENDER, ORI LEON,ASST STATE PUBLIC DEFENDER (EXHIBITS ATTACHED) | $0.00 | |
| 08/31/1998 | APPELLEES MEMORANDUM IN OPPOSITION TO MOTION FOR DELAYED REOPENING FILED DANIEL EICHEL,ATTY | $0.00 | |
| 01/13/1999 | JOURNAL ENTRY DENYING APPLICATION FOR REPOENING FILED POWELL,KOEHLER,WALSH,JUDGES | $12.00 | |
| 01/14/1999 | COPIES SENT TO ALL ATTORNEYS AND/OR PARTIES OF RECORD | $2.00 | |
| 01/14/1999 | Issue Date: 01/14/1999<br>Service : COURT OF APPEALS COPY ISSUED<br>Method : REQUEST TO SERVICE BY ORDINARY MAIL<br>Cost Per :$    4.00<br><br>OHIO, STATE OF<br>c/o ATTY: HOLCOMB, JOHN F<br>216 SOCIETY BANK BLDG<br>6 S SECOND ST<br>HAMILTON, OH  45012-0515<br>Tracking No: 1000000776<br><br>DAVIS, VON CLARK<br>c/o ATTY: MARSHALL, JOHN<br>111 WEST RICH ST  SUITE 430<br>COLUMBUS, OH  43215<br>Tracking No: 1000000777 | $8.00 | |
| 02/05/1999 | ORDER TO CERTIFY RECORD TO THE SUPREME COURT OH FILED | $2.00 | Image |
| 02/05/1999 | NOTICE OF APPEAL FILED IN THE SUPREME COURT OFOH CASE #99-0252 FILED 2-1-99 | $0.00 | Image |
| 02/25/1999 | ALL PAPERS SENT TO SUPREME COURT OF OHIO | $0.00 | |
| 09/13/1999 | JOURNAL ENTRY THE JUDGMENT OF COURT OF APPEAL IS AFFIRMED CONSISTENT WITH THE OPINION RENDERED HEREIN; APPELLE RECOVER FROM APPELLANT & MANDATE BE SENT TO COURT OF APPEALS FILED THOMAS J MOYER,CHIEF JUSTICE | $2.00 | Image |
| 09/13/1999 | JOURNAL ENTRY MANDATE; JUDGMENT IS AFFIRMED CONSISTENT WITH OPINION RENDERED HEREIN FILED THOMAS J MOYER,CHIEF JUSTICE | $2.00 | Image |
| 09/15/1999 | ALL PAPERS RETURN FROM SUPREME COURT OF OHIO | $0.00 | |

VON CLARK DAVIS v. WARDEN<br>CASE NO. 2:16-cv-00495<br>APPENDIX - Page 499

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO  *CA84-06-071*

STATE OF OHIO                    :          CASE NO. CR83-12-0614

             Plaintiff          :                                    IMAGED

   -vs-                          :          NOTICE OF APPEAL

VON CLARK DAVIS            **FILED in Common Pleas Court**
                          **BUTLER COUNTY, OHIO**

             Defendant          :

       : : : :   JUN 1 8 1984   : :

    Now comes Defendant, **EDWARD S. ROBB, JR.** by and through his
                                      **CLERK**

attorney, and hereby give notice of appeal of the judgment of

conviction and of sentence pursuant to Ohio Revised Code 2929.05

and other provisions of the Ohio Revised Code.

                          HOLBROCK, JONSON, BRESSLER & HOUSER
                          Attorneys for Defendant
                          315 South Monument Avenue
                          P. O. Box 687
                          Hamilton, Ohio  45012
                          Telephone:  868-7600

    FILED in Court of Appeals
       BUTLER COUNTY, OHIO

    JUN 1 8 1984

                          BY  *Timothy R. Evans*
                              Timothy R. Evans

                P R E C I P E

TO THE CLERK OF COURTS
COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

    Please prepare and forward for filing with the Clerk of Courts

for the Twelfth Appellate District Court of Appeals a certified

copy of the transcript of the journal entries, docket entries and

HOLBROCK, JONSON,
BRESSLER & HOUSER
ATTORNEYS AT LAW
HOLBROCK–JONSON
BUILDING
315 S. MONUMENT AVENUE
P. O. 687
HAMILTON, OHIO 45012

*1/2*   *1/22*

*CR83·12·0614*
*CA84·06·071*



RICHARD F. CELESTE
GOVERNOR

## OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

SOUTHERN OHIO CORRECTIONAL FACILITY
P.O. Box 45699
Lucasville, Ohio  45699-0001

June 21, 1984

FILED in Court of Appeals
BUTLER COUNTY, OHIO

JUN 2 6 1984

EDWARD L. ROBB, JR.

Mr. Edward S. Robb, Jr.
Butler County Clerk of Courts
Court House
Hamilton, Ohio   45011

Re: DAVIS, Von Clark
SOCF # 179-828

Dear Mr. Robb:

This is to advise you that Von Clark Davis was transferred to this
facility from the Chillicothe Correctional Institute on June 18, 1984.
He has been housed in our cell block J-4 and classified as death row.

This will also advise you of our receipt of a Death Warrant from But-
ler County Common Pleas Court specifying Mr. Davis' execution date as
October 1, 1984.

It is a matter of utmost urgency that you send me certified copies of
every Journal Entry or Stay of Execution affecting the above execution date
as soon as they are filed in your office.

Cordially yours,

SOUTHERN OHIO CORRECTIONAL FACILITY

*Wallace E. Stein*

Wallace E. Stein
Chief Record Clerk

WES/s

IN THE COURT OF APPEALS OF ___BUTLER___ COUNTY, OHIO

STATE OF OHIO,                    *

        Appellee,           *

    vs.                           *          Case No. Butler CA84-06-071

VON CLARK DAVIS,                  *          SCHEDULING ORDER.

        Appellant.          *

                    *
                    BUTLER COUNTY, OHIO
                    *

*  *  *  *  *  *  JUN 2 6 1984  *  *  *  *  *  *  *  *

Upon consideration of the pendency of the within appeal, it is hereby ORDERED that the TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES shall be filed by the trial court clerk of courts with the Appellate Clerk at the  Butler  County Clerk of Courts within ___40___ days of the filing of the notice of appeal.

It is further ORDERED that the TRANSCRIPT OF PROCEEDINGS (or, if applicable, Statement of the Evidence, Statement of the Proceedings, or Agreed Statement of the Case as allowed by Appellate Rule 9) shall be filed with the County Clerk of Courts within ___45___ days of the filing of the notice of appeal. If a transcript of proceedings (or, if applicable, statement of the evidence, statement of the proceedings, or agreed statement of the case) is not to be filed, then NOTICE OF LOCAL APPELLATE RULE 5 shall be filed with the County Clerk of Courts within ___30___ days of the filing of the notice of appeal.

It is further ORDERED that after the TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES and either the TRANSCRIPT OF PROCEEDINGS or NOTICE OF LOCAL APPELLATE RULE 5 have been filed, the record shall be considered filed.

It is further ORDERED that the APPELLANT'S BRIEF shall be filed with the County Clerk of Courts and served upon the appellee or opposing counsel within ___25___ days of the filing of the record.

It is further ORDERED that the APPELLEE'S BRIEF shall be filed with the County Clerk of Courts and served upon the appellant or opposing counsel within ___25___ days of the filing of the appellant's brief.

It is further ORDERED that the APPELLANT'S REPLY BRIEF shall be filed with the County Clerk of Courts and served upon the appellee or opposing counsel within ___10___ days of the filing of the appellee's brief.

It is further ORDERED that NO EXTENSION OF TIME WILL BE GRANTED in the filing of any of the above-noted items except upon the demonstration of good cause.

IT IS SO ORDERED.


_Hendrickson, J._

_____
William R. Hendrickson, Presiding Judge

– 2 –

IMAGED

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

CR84-071

STATE OF OHIO,                              *      Case No. CR83-12-0614

    Plaintiff,                              *

vs.                                         *            MOTION FOR
                                                      STAY OF EXECUTION
                              AUG 1 6 1984  *
VON CLARK DAVIS

    Defendant.                              *

          * * * * * * * * * * * *

        Now comes the defendant, by and through his attorney,
Timothy R. Evans, and moves the Court for an order staying the
date of execution of Von Clark Davis which is presently set
for October 1, 1984 upon the grounds that an appellate review
of the death sentence is pending pursuant to Section 2929.05 of
the Ohio Revised Code.

                 Respectfully submitted,

                 *Timothy R. Evans*

                 Timothy R. Evans
                 Attorney for Von Clark Davis
                 315 South Monument Avenue
                 Hamilton, OH 45011 (868-7600)

## CERTIFICATE OF SERVICE

        A copy of the foregoing Motion was forwarded to
the Prosecutor of Butler County, Ohio by hand delivering a copy
to his office at the Courthouse, Hamilton, Ohio 45011, this
15th day of August, 1984.

                 *Timothy R. Evans*

                 Timothy R. Evans

HOLBROCK, JONSON
BRESSLER & HOUSER
ATTORNEYS AT LAW
HOLBROOK—JONSON
BUILDING
315 S. MONUMENT AVENUE
P. O. BOX 687
HAMILTON, OHIO 45012

115

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO    CA 84-06-071

STATE OF OHIO,                    *        Case No. CR83-12-0614
                                            J. Bruewer
        Plaintiff,                *

vs.                    FILED In Common Pleas Court     ENTRY GRANTING
                       BUTLER COUNTY, OHIO             STAY OF EXECUTION
VON CLARK DAVIS,             AUG 16 1984       *

        Defendant.        EDWARD S. ROBB, JR.
                         *   *   *   CLERK   *   *   *

        Upon application and motion of Defendant for a stay
of execution and as provided by Ohio Revised Code Section 2929.05,
the imposition of the death sentence now set for October 1, 1984
is hereby stayed pending Defendant's appellate review.

        Dated:    8-16-84   .


                              "Enter"

        FILED In Court of Appeals
        BUTLER COUNTY, OHIO
                                    /s/ Bruewer J.
        AUG 16 1984                                    JUDGE



I CERTIFY THE WITHIN TO BE A
TRUE COPY OF THE ORIGINAL FILED
          August            19 84
EDWARD S. ROBB, JR.
Butler County Clerk of Courts
        Jerome Cook        Deputy

J 18 P 95

# MISSING DOCUMENT

Appellant's Motion for Extension of Time to File Brief

IN THE COURT OF APPEALS OF BUTLER COUNTY, OHIO

STATE OF OHIO,                          *

       Appellee,                    *       Case No. Butler 84-06-071

   VS.                                  *       ENTRY.

VON CLARK DAVIS,                        *

       Appellant.                   *

                   *   *   *   *   *   *   *   *   *

    Upon motion of counsel for the appellant requesting thirty

(30) additional days in which to file a brief in the above-

captioned matter, and for good cause shown, it is hereby ORDERED

that the appellant be granted thirty (30) additional days to

file his brief to be due no later than November 12, 1984. No

further extensions will be granted.

                            Fred E. Jones, Judge

**FILED in Court of Appeals**
BUTLER COUNTY, OHIO

OCT 1 8 1984

EDWARD S ROBB, JR.
CLERK

## <u>MISSING DOCUMENT</u>

Appellant's Motion to Exceed Page Limitation for Brief

IN THE COURT OF APPEALS OF BUTLER COUNTY, OHIO

STATE OF OHIO,                    *

       Appellee,          *        Case No. Butler 84-04-071

    VS.                       *        ENTRY.

VON CLARK DAVIS,                  *

       Appellant.        *    *    *

Upon motion of counsel for the appellant requesting leave
to exceed this court's twenty (20) page limitation for appellate
briefs by forty (40) pages, and for good cause shown, it is
hereby ORDERED that leave is granted with the appellant's brief
not to exceed sixty (60) pages.

_____
Richard N. Koehler, Judge

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT

BUTLER COUNTY, OHIO

STATE OF OHIO,                     *

    Appellee,                      *

vs.                                *     Case No. CA84-04-071

VON CLARK DAVIS,                   *

    Appellant.                     *

ON APPEAL FROM THE COURT OF COMMON PLEAS,

BUTLER COUNTY, OHIO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BRIEF OF APPELLANT, VON CLARK DAVIS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorneys for Appellant:          Attorneys for Appellee:

Mr. Timothy R. Evans              Mr. John F. Holcomb
315 South Monument Avenue         Butler County Prosecutor
Hamilton, Ohio 45011              Courthouse
Telephone:  868-7600              Hamilton, Ohio 45011

BUTLER COUNTY
PROSECUTING ATTORNEY

NOV 1 3 1984

RECEIVED

TABLE OF CONTENTS

AND

ASSIGNMENTS OF ERROR

STATEMENT OF THE CASE ................................. 1

STATEMENT OF FACTS ................................... 1

FIRST ASSIGNMENT OF ERROR ........................... 7

THE COURT ERRED IN FAILING TO DISMISS THE DEATH PENALTY
SPECIFICATIONS AGAINST THE DEFENDANT ON THE GROUNDS THAT
THE DEATH PENALTY IS UNCONSTITUTIONAL.

Issues Presented for Review and Argument.

1.  The death penalty as authorized by the Ohio Revised
Code, deprives the Defendant of his life for that due
process of law guaranteed in Article One, Section 16
of the Ohio Constitution and the Fourteenth Amendment
to the United States Constitution.

2.  Ohio's death penalty violates the Eighth Amendment
of the United States Constitution and Ohio Constitution,
Article One Section 9 prohibiting the infliction of
cruel and unusual punishment.

3.  The death penalty is arbitrarily and capriciously
inflicted, constituting a denial of equal protection
of the laws under the Eighth and Fourteenth Amendments
of the U.S.  Constitution and Article One, Section 9 and
16 of the Ohio Constitution.

4.  The death penalty sections of the Ohio Revised Code
deprive the Defendant of due process of law under the
Fourteenth Amendment and Article One, Section 16 of the Ohio
Constitution and constitute cruel and unusual punishment
under the Eighth Amendment and Article One, Section 9 of the
Ohio Constitution as it permits imposition of the death
penalty on a less than adequate showing of guilt.  It is also
unconstitutional because it requires proof of aggravating
circumstances during the guilt determination state of death
penalty deliberations.

5.  The death penalty is unconstitutional because it denies
the Defendant the right to a trial before an impartial jury
as guaranteed by the Sixth and Fourteenth Amendment to the
U.S. Constitution and Article 1, Section 10 of Ohio
Constitution.

6. The death penalty is unconstitutional because it has a chilling effect on the Defendant's right to a jury trial guaranteed by the Sixth and Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Ohio Constitution.

7. Section 2945.25(c) of the Ohio Revised Code violates the Defendant's right to an impartial jury on the determination of guilt.

8. The Ohio death penalty fails to provide a sentencing authority with an option to choose a life sentence when there are aggravating circumstances and no mitigating circumstances and is, therefore, unconstitutional under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 9 and 16 of the Ohio Constitution.

9. The death penalty authorized by the Ohio Revised violates the Eight Amendment and the Fourteenth Amendment clauses of the U.S. Constitution and the cruel and unusual punishment provisions and due process clauses of the State Constitution in that several of the aggravating circumstances set forth in Ohio Revised Code 2929.04 (a) are overbroad and vague and fail to reasonably justify the imposition of the ultimate sentence.

Authorities

Arnold vs. State,
236 Georgia 534, 224 S.E. 2d 386 .................. 28

Bailey, Deterent Effect of the Death Penalty
for Murder in Ohio,
28 Cleveland State L.R. 51 ........................ 10

Barclay vs. Florida ,
103 Sup. Court 3428 .............................. 21

Beck vs. Alabama,
447 U.S. 625 ..................................... 16

Bowers and Pierce, Arbitrariness and Discrimination
in Post Furman Capital Statutes Crime,
Pg. 563, October 1980 ............................ 13

Bowers and Pierce, The Illusion of Deterence
in Isaac Ehrlich's Research on Capital Punishment,
85 Yale Law Journal 187 .......................... 10

Coker vs. Georgia,
433 U.S. 584 ..................................... 11

Commonwealth vs. O'Neil,
327 N.E. 2d, 668 ................................. 9

Cross vs. Ledford,
161 Ohio St. 269, 120 N.E. 2d 118 ................. 18

Furman vs. Georgia,
408 U.S. 238 ..................................... 27

Glazer, Capital Punishment, Deterrent to Murder,
10 Univ. of Toledo L.R. 317 ..................... 10

Godfrey vs. Georgia,
446 U.S. 420 ..................................... 30

Gregg vs. Georgia,
428 U.S. 153 .................................9,29,30

Grigsby vs. Maybury,
43 C.L.R. 24744, Sup. Ct. of Arkansas ............24,25

In Re Winship,
397 U.S. 358 ..................................... 18

Locket vs. Ohio,
438 U.S. 586 ..................................... 16

Ohio Revised Code, Sections 2903 and 2904 ........ 11

Ohio Revised Code Section 2929.02(2)(A)(1) ........20,22

Ohio Revised Code Section 2929.03 ..............20,22,24

Ohio Revised Code Section 2929.03(D)(2) .......... 26

Ohio Revised Code Section 2929.03(F) ............. 15

Ohio Revised Code Section 2929.04(A)(5) .......... 20

Ohio Revised Code Section 2929.05 ............... 15

Ohio Revised Code, Section 2929.05(A) ............ 14

Ohio Revised Code Section 2945(C) ................ 25

Robinson vs. California,
370 U.S. 660 ..................................... 11

Scurry vs. United States,
347 S. 2d 468 .................................... 17

State vs. Crenshaw,
51 O.A. 2d 63 .................................... 19

State vs. Furman,
408 U.S. 346 ..................................... 11

State vs. Grosgene,
Case No. CR82-6155, Lucas County Common Pleas Court . . 13

State vs. McClellan,
12 O.A. 2d 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

State vs. McDugle,
301 S.E. 2d 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29

Witherspoon vs. Illinois,
391 U.S. 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

Woodsen vs. North Carolina,
428 U.S. 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

Zant vs. Stephens,
103 Sup. Court 2743 . . . . . . . . . . . . . . . . . . . . . . . . . .21,30

SECOND ASSIGNMENT OF ERROR . . . . . . . . . . . . . . . . . . . . . .    31

THE COURT ERRED IN FAILING TO ALLOW THE DEFENDANT
THE RIGHT TO INSPECT THE GRAND JURY TRANSCRIPT.

Issues Presented for Review and Argument.

1. Where the Defendant moves to dismiss and to
inspect the grand jury transcript for purposes of
showing that the indictment against him was not based
upon probable cause and that the indictment was
founded on illegal and incompetent evidence, the
Defendant has a right to inspect the Grand Jury
Testimony.

Authorities:

Antrobus vs. Indiana,
254 N.E. 2d 873 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    39

Arizona vs. McCormick,
448 P. 2d 74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    39

Bressler vs. People,
8 NE 2d 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    35

Commonwealth vs. Stewart,
309 N.E. 2d 470 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    39

Dennis vs. U.S.,
384 U.S. 855 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    38

Earl of Shaftsberry Case, 1681 . . . . . . . . . . . . . . . . . . . . .    32

Marvin F. Frankle and Gary P. Nefcalus-
The Grand Jury, An Institution on Trial . . . . . . . . . . .    33

Holzworth-The History of English Law ............... 32

In Grand Jury Summoned October 12, 1970,
321 F. Supp. 238 ................................... 36

Jencks Act, 18 USC Section 3500 .................. 34

Ohio Rules of Criminal Procedure, Rule 6 .........34,36

Parlapiano vs. District Court,
491 P. 2d 965 .................................... 39

People vs. Dunc,
201 NW 2d 629 .................................... 36

Report and Recommendation of June 5, 1972
Grand Jury, 375 F. Supp. 1219 .................... 36

Shelby vs. Sixth Judicial District Court,
414 P 2d 942 ..................................... 37

State vs. Dewell,
196 S. 687, Sup. Ct. of Florida .................. 37

Stephens-History of Criminal Law in England ....... 32

U.S. vs. Hernandez,
290 F. 2d 86 ..................................... 38

United States vs. Hughes,
413 F. 2d 1244 ................................... 39

United States vs. Ramirez,
482 F 2d 807 ..................................... 35

8 Wigmore on Evidence, Section 2360 .............. 33

ASSIGNMENT OF ERROR THREE  ........................ 40

THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO
BIFURCATE THE TRIAL AND TO SEVER THE CHARGES.

Issues Presented for Review and Argument:

1. Where a defendant is charged with aggravated murder with a
specification that he had previously been convicted of murder
and further in the second count of the indictment charged
with having firearms while under disability, is it improper
for the Court to try all charges together and to refuse to
biforcate the trial and to have the proof of specification at
the sentencing hearing if the defendant is found guilty and
further to refuse to sever the charge of having weapons while
under disability so that no evidence would be introduced as
to defendant's prior crimes.

2. Where the defendant is charged with aggravated murder with a specification that he has previously committed a homicide and also with having weapons while under disability, defendant's right to a trial by an impartial jury is violated by requiring all charges to be tried at once, in violation of the Ohio Revised Code, so as to allow the prosecution to introduce by way of evidence on having weapons while under disability, evidence which could not otherwise be introduced at the trial in chief.

Authorities:

Ohio Revised Code Section 2929.022(A) ............ 42

Ohio Revised Code Section 2929.04(A)(5) ........... 41

Ohio Revised Code Section 2929.022 ............... 45

Ohio Revised Code Section 2945.18 ................ 45

Ohio Revised Code Section 2945.20 ................ 44

Ohio Rules of Procedure 8 ........................ 45

Ohio Rule of Criminal Procedure 8A ............... 42

Ohio Rule of Criminal Procedure 14 ..............42,44

State ex rel Corrigan, Prosecuting Attorney
vs. McMonigle Judge, 12 Oh. St. 3d 15 ........... 44

State vs. Henry,
4 Ohio St. 3d 45 ...............................44,45

FOURTH ASSIGNMENT OF ERROR ......................... 46

THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE AND CONTRARY TO LAW.

Issues Presented for Review and Argument:

1. Where the defendant, in an aggravated murder case is bound over to the grand jury and indicted on the testimony of one witness and the State then fails to present that witness at Trial, but instead presents other witnesses who contradict the fact that that witness was even at the scene, the judgment is against the manifest weight of the evidence and the credibility of the State's case fails entirely.

2. Where the State presents no evidence that the Defendant in an way plotted, schemed or planned to kill the deceased, and there is no evidence of prior calculation and design the Defendant may only be convicted of murder and not aggravated murder.

Authorities:

Ohio Revised Code Section 2903.01(A) ............... 48

State vs. Jenkins,
48 O.A. 2d 99 ................................ 50

State vs. Kulig,
37 O.S. 2d 157 .............................. 50

State vs. Reed,
65 Ohio St. 2d 117 ......................... 49

FIFTH ASSIGNMENT OF ERROR ...................... 51

THE COURT ERRED IN NOT DISMISSING THE SPECIFICATION
OF THE INDICTMENT THAT THE APPELLANT HAD COMMITTED
A PRIOR HOMICIDE, ON THE BASIS THAT SUCH SPECIFI-
CATION WAS TOO REMOTE IN TIME TO BE USED AGAINST
APPELLANT.

Issues Presented for Review and Argument:

1. Where the prior murder conviction of the Defendant
occurred thirteen (13) years prior to the homicide in
question, to allow such homicide to be used as a
basis of an aggravating circumstance is improper and
should have been stricken from the indictment.

Authorities:

State vs. George, Case No. CA83-04-034,
12th Dist. Court of Appeals, Unreported .......... 52

SIXTH ASSIGNMENT OF ERROR ...................... 53

THE COURT ERRED IN IMPOSING THE DEATH PENALTY AS
THE COURT FOUND AS AGGRAVATING FACTORS NOT LISTED
IN THE OIHO REVISED CODE AND FACTORS WHICH WERE
IMPROPER FOR CONSIDERATION UNDER THE OHIO REVISED
CODE.

Issues Presented for Review and Argument:

1. Where the Court finds as aggravating circumstances
four factors which are not listed in the Ohio Revised
Code as aggravating circumstances, and not charged in the
indictment as specifications, and considers these
circumstances in imposing death, the Court errs in
imposing the death penalty and the death penalty must
be reversed.

Authorities:

Ohio Revised Code Section 2929.03 .................... 56

Ohio Revised Code Section 2929.03(F) ............... 54

Ohio Revised Code Section 2929.04 .................. 54

Ohio Revised Code Section 2929.04(A) ............... 56

Ohio Revised Code Section 2929.04(B) .............. 54

SEVENTH ASSIGNMENT OF ERROR ......................... 56

UNDER THE PROPORTIONALITY REVIEW REQUIRED TO BE
DONE BY THIS COURT, THE PENALTY IMPOSED UPON VON
CLARK DAVIS IS OUT OF PROPORTION TO THE OTHER
SENTENCES GIVEN FOR SIMILAR CRIMES IN THIS COUNTY.

Issues Presented for Review and Argument:

1. Under ORC 2929.05, where this Court is
required to consider whether the sentence is
excessive or disproportionate to the penalty
imposed in similar cases, the penalty imposed
upon Von Clark Davis is excessive.

Authorities:

State of Ohio vs. Gaither, Butler County
Court of Common Pleas ........................... 57

State of Ohio vs. Gill, Butler County
Court of Common Pleas ........................... 57

State of Ohio vs. Johnson, Butler County
Court of Common Pleas ........................... 57

State of Ohio vs. Pierce, Butler County
Court of Common Pleas ........................... 57

CONCLUSION ........................................... 59

CERTIFICATE OF SERVICE ............................... 60

## STATEMENT OF THE CASE

### Procedural Posture

Von Clark Davis was indicted by the Grand Jury of Butler County for the crime of aggravated murder in violation of Ohio Revised Code Section 2903.01(A) with two specifications; the first being that Von Clark Davis had previously been convicted in 1971 of murder in the second degree; the second was that Von Clark Davis had a firearm on or about his person or under his control while committing the offense at bar. Count Two alleged that Von Clark Davis did have, carry and use a firearm having previously been convicted of felonies of violence, i.e. shooting with intent to wound on April 10, 1970 and second degree murder on April 20, 1971.

Numerous motions were filed prior to trial and the Court in an opinion ruled on a number of motions. Thereafter, Von Clark Davis waived his right to be tried by a jury and elected to be tried by a three-judge panel, which found him guilty of both offenses and of the specification and at a sentencing hearing, sentenced him to death. Defendant has appealed the verdict and sentence to this Court.

### STATEMENT OF FACTS

The trial began on May 9, 1984 before three judges. At that time, the following was taken as evidence. The Coroner, Dr.

[1]

Burkhardt, was called as a witness to testify as to the cause of death, i.e. from gunshot wounds. Next to testify was Detective Ron Wells of the Hamilton Police Department who was called to the scene to investigate. He identified the cartridge cases found at the scene (Tp. 24-31). Ronald Dye, a criminologist with B.C.I. testified that all four of these cartridge cases were fired from the same gun and that they could have only come from a Raven or an Astra (Tp. 41-45). Mark Lovitt testified that he was sitting in Gabe's Tavern when Von Clark Davis had another individual come in to get Lovitt and that they thereafter went to Gill's Pawn Shop and bought a 25-caliber Raven. They went back to Gabe's, then later went to K-Mart to get bullets. Later on, they had to go down to Fairfield to get more bullets (Tp. 59-70).

Wade Coleman, Von Davis' cousin, testified that he went to the bar and picked up Lovitt and that they did indeed go to buy the gun. He also stated that Von Clark Davis had told him that he wanted the gun for protection (Tp. 79-85). Phyllis Becker, the clerk at Gill's Pawn Shop, identified the purchase form filled out by Mark Lovitt and testified that this type of pistol was a popular type of pistol to keep at the house (Tp. 90-93). Ron Williams, Clerk of the Butler County Gun Store, testified that he did sell a box of PMC 25 auto bulletts and that he showed several individuals how to load them into the gun (Tp. 94-96).

The next witness was Mona Aldridge, who testified that she was with the deceased on the day she died and that she had

[2]

et her that same day at 5:00 p.m. at the American Legion. Von Clark Davis entered the American Legion about five minutes later and was talking to Suzette Butler, the deceased. They then left the bar and went outside. Before leaving, the deceased told Mona that she would be right back and that she left her jacket and cigarettes there. After several minutes, Mona Albridge went to the door, opened the door and looked out, and testified that she saw Von Clark Davis point the gun at the deceased's head. She testified that about three or four feet separated Von Clark Davis from Suzette Butler (even though the coroner had testified that the distance would be less than a foot) and then testified that someone ran in behind her and said Suzette Butler was shot. This was about one and a half minutes later. Mona Aldridge then testified that she walked to the phone but didn't say anything to anybody and that as she was walking to the phone, somebody ran by her and said that the deceased had been shot. She testified that she didn't call the police because somebody was on the phone at the time. She also testified that she and Suzette Butler had no plan to go to the Legion nor was there any plan to meet Von Clark Davis there the day of the shooting and it was just a coincidence that they all were there on the day in question. Ms. Aldridge also testified that Von Davis came in, they all sat at a table together for a few minutes and that Von Clark Davis walked out first and then Suzette Butler followed him out (Tp. 104-122).

The next witness was Cozette Massey. She testified that

[3]

she was walking by the Legion with her boyfriend, Reginald Denmark, she saw the shooting and she saw Von Clark Davis put the gun in his pocket then and walk to a car. She testified that she knew Tony Ferguson, but she didn't see him there that night. She testified when she heard two shots she then looked up and that's when she saw Von Clark Davis put the gun in his pocket and walk away (Tp. 135-149). Reginald Denmark, Cozette Massey's boyfriend, was standing on the street with Cozette Massey, when he saw Von Clark Davis pull the gun, put the gun to her head and fire, that he was twenty to thirty feet away (Tp. 166-168).

Jodanna Miles was likewise at the American Legion that night and she was the girl who passed behind Mona Aldridge and said that Suzette Butler had been shot. She testified that it looked to her like Von Clark Davis and Suzette Butler had been arguing (Tp. 131). In addition, Mona Aldridge had given a statement to the police that also said that they were arguing, however, at trial she denied that there was any argument between the two. At that point, the State rested and the defendant moved for a verdict of acquittal on the basis the State had not proven prior calculation and design, which motion was denied.

The defense then went forward. Both Cozette Massey and Reginald Denmark had told the story in their testimony that they had told a black police officer they had seen it but told him that they didn't want to give their name and they were therefore told just to get out of the way and get back into the crowd. The

[4]

defense presented the testimony of John Hill, a black officer, who was not at the scene and of Essex Sheppard who was the only black officer at the scene.  Essex Sheppard testified that no one came up to him that night and told him they had seen it and that he advised no one to get back into the crowd when they refused to give their names after saying that they were a witness to the crime (Tp. 237-240).

Tony Ferguson was called as a defense witness.  He had testified at the Municipal Court at the preliminary hearing.  His testimony differed greatly from that at the preliminary hearing. He claimed that while he didn't see Reginald Denmark and Cozette Massey at the scene, he saw Von Clark Davis shoot Suzette Butler, that after the shooting, Von Clark Davis moved towards him and he, Tony Ferguson, pulled his 44 magnum out of his shoulder holster and said to Von Clark Davis, "if you miss, I won't."  Von Clark Davis then said "Okay man, everything's alright", and walked to his car and Tony Ferguson put his gun in his shoulder holster and went into the bar (Tp. 248-279).

Von Clark Davis testified in his own defense.  He testified that he and Suzette Butler had been living together but he had recently moved out.  His testimony was also that he had bought the gun to trade on some dental equipment from a man by the name of Silky Carr from Lexington, Kentucky, and that Suzette Butler owed Silky Carr money in a drug deal.  He testified that at that night he had been at the Legion and he was supposed to go

[5]

to Middletown to meet Silky Carr, that when he left Suzette

Butler out in front of the Legion she and Silky Carr were

arguing, that he had earlier given the gun and $200.00 to Silky

Carr, and they were to meet in Middletown to close the deal.  He

testified that he went to Middletown and that Silky Carr never

appeared and that when he drove back to Hamilton he found out

that Suzette Butler had been murdered and then he went to

Lexington to look for Silky Carr.  After being unable to find

Silky Carr, he called the police and turned himself in (Tp.

286-300).  After that the defense rested and renewed its motion

to dismiss, which was denied.

Thereafter, the Court found the defendant guilty of

aggravated murder with prior calculation and design and in

addition found that the specification had been proven beyond a

reasonable doubt.

The mitigation hearing was thereafter held.  At that

hearing, John Bohlen, Chief Probation Officer of Butler County

Probation testified that he reviewed the pardon and parole

records of Von Clark Davis when he had been at the penitentiary

and that he had an excellent scholastic and penal record and that

he had been found to be an excellent candidate for rehabilitation

(Tp. 280-284).

Charles Tipton, stepfather of Von Clark Davis, testified

that Von Clark Davis had received an honorable discharge from the

[6]

Navy, that he had worked before his previous incarceration and
that while in the penitentiary, he had been educated and received
a degree as well as his G.E.D. Allistar Tipton, Von Clark Davis'
mother, likewise testified as to her son's rehabilitation in
prison and his work record. Roger Fisher, the Director for
Forensic Psychiatry in Butler County, testified that he found no
significant mental impairment but did find an active detached
schizoid personality, which had been previously diagnosed in the
penitentiary. Thereafter, the panel sentenced Von Clark Davis to
death in the electric chair.

### FIRST ASSINGMENT OF ERROR

THE COURT ERRED IN FAILING TO DISMISS THE DEATH PENALTY
SPECIFICATIONS AGAINST THE DEFENDANT ON THE GROUNDS THAT THE
DEATH PENALTY IS UNCONSTITUTIONAL.

Issues Presented for Review and Argument.

   1. The death penalty as authorized by the Ohio Revised
Code, deprives the Defendant of his life for that due process of
law guaranteed in Article One, Section 16 of the Ohio
Constitution and the Fourteenth Amendment to the United States
Constitution.

   2. Ohio's death penalty violates the Eighth Amendment
of the United States Constitution and Ohio Constitution, Article
One Section 9 prohibiting the infliction of cruel and unusual
punishment.

[7]

3. The death penalty is arbitrarily and capriciously inflicted, constituting a denial of equal protection of the laws under the Eighth and Fourteenth Amendments of the U.S. Constitution and Article One, Section 9 and 16 of the Ohio Constitution.

4. The death penalty sections of the Ohio Revised Code deprive the Defendant of due process of law under the Fourteenth Amendment and Article One, Section 16 of the Ohio Constitution and constitute cruel and unusual punishment under the Eighth Amendment and Article One, Section 9 of the Ohio Constitution as it permits imposition of the death penalty on a less than adequate showing of guilt. It is also unconstitutional because it requires proof of aggravating circumstances during the guilt determination state of death penalty deliberations.

5. The death penalty is unconstitutional because it denies the Defendant the right to a trial before an impartial jury as guaranteed by the Sixth and Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of Ohio Constitution.

6. The death penalty is unconstitutional because it has a chilling effect on the Defendant's right to a jury trial guaranteed by the Sixth and Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Ohio Constitution.

7. Section 2945.25(c) of the Ohio Revised Code violates the Defendant's right to an impartial jury on the determination of guilt.

[8]

8. The Ohio death penalty fails to provide a sentencing authority with an option to choose a life sentence when there are aggravating circumstances and no mitigating circumstances and is, therefore, unconstitutional under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 9 and 16 of the Ohio Constitution.

9. The death penalty authorized by the Ohio Revised violates the Eight Amendment and the Fourteenth Amendment clauses of the U.S. Constitution and the cruel and unusual punishment provisions and due process clauses of the State Constitution in that several of the aggravating circumstances set forth in Ohio Revised Code 2929.04 (a) are overbroad and vague and fail to reasonably justify the imposition of the ultimate sentence.

### Argument One

The death penalty violates Article 1, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Since life is a constitutionally protected fundamental right, the State must show an overwhelming reason to destroy life and show ligitimate and compelling State interest before life can be taken. See Commonwealth -vs- O'Neil, 327 N.E. 2d, 668. The compelling interests commonly advanced to justify capital punishment are as the United States Supreme Court held in Gregg

[9]

-vs- Georgia, 428 U.S. 153, (1) deterence of capital crimes by perspective offenders; (2) incapacitation of dangerous criminals and a consequent prevention of crimes they may otherwise commit in the future; and (3) retribution. The Court in Gregg, while upholding capital punishment, did not decide whether such punishment was the least restrictive for achieving the purported societal interest.

Many authorities have noted that the death penalty does not deter others. See for example, Glazer, Capital Punishment, Deterent to Murder, 10 Univ. of Toledo L.R. 317, Bailey, Deterent Effect of the Death Penalty for Murder in Ohio, 28 Cleveland State L.R. 51, and Bowers and Pierce, The Illusion of Deterence in Isaac Ehrlich's Research on Capital Punishment, 85 Yale Law Journal 187. These studies have shown that jurisdictions having the death penalty do not have a lower rate of criminal homicide than those which do not. Thus, while the State has a valid interest in protecting its citizens from murder, this Court must determine whether those interests require the use of the death penalty as a punishment or whether there are less extreme means available to further these ends. Obviously life sentence without possibility of parole would be as effective a deterent as the death penalty and thus, there are less restrictive means. Likewise, the offender can be incapacitated by a life sentence without parole since in fact, for example, a dangerous psychopath who is found not guilty by reason of insanity is not executed, but is merely contained.

[10]

Finally, retribution, while a goal of punishment, cannot serve as compelling State interest to justify capital punishment because life imprisonment would equally satisfy the public's outrage in its desire for punishment. Thus, the State cannot demonstrate the death penalty is necessary in pursuing its legitimate objectives. It has chosen a means which violates due process of law to achieve its stated ends.

### Argument Two

Sections 2903 and 2904 of the Ohio Revised Code violate the Federal and State prohibitions against the infliction of cruel and unusual punishment. In State -vs- Furman, 408 U.S. 346, Justice Marshall, in his concurrence, noted that punishment may not be more severe than is necessary to serve ligitimate interest of the State. As argued above, the death penalty is not necessary to serve these legitimate interests. Since every punishment contains some element of cruelty, some cruelty is necessary to serve legitimate ends. However, when the level of cruelty is disproportionate to the crime, it does not serve the needs of society and therefore, its deemed to be too cruel and thus in violation of the prohibitions against cruel and unusual punishment. See Robinson -vs- California, 370 U.S. 660.

Likewise, in Coker -vs- Georgia, 433 U.S. 584, the United States Supreme Court held:

"A punishment is as excessive and

[11]

> unconstitutional if it makes no measurable
> contributions to accepted goals of punishment,
> enhances nothing more than the needless imposition
> of pain and suffering or is grossly out of
> proportion to the severity of the crime.  A
> punishment might fail the test on either ground."

As has been pointed out before, there is no evidence to demonstrate a deterent effect from the imposition of the death penalty.  Thus, the State must show a different compelling State interest in the death penalty.  The State of Ohio is unable to demonstrate such a compelling State interest since it can achieve its legitimate interests by less drastic means than death. Therefore, the death penalty constitutes cruel and unusual punishment and is in violation of the Eighth Amendment of the U.S. Constitution and Article, Section 9 of the Ohio Constitution.

### Argument Three

The death penalty is arbitrarily and capriciously applied, constituting a denial of equal protection of the laws.

In Butler County alone, one Defendant has received the death penalty for a murder which, as will be argued later, was not done with prior calculation and design.  Other Defendants, including one who killed an eleven-year old girl, received a 20-year life sentence.  Another Defendant who strangled and stabbed a woman to death, received a 30-year life sentence.  A

[12]

man who beat to death a parapalegic in an automobile, received a 30-year life sentence. Finally, another individual who was found guilty of aggravated murder with prior calculation and design by killing another individual during the course of a robbery received a life sentence. The article by Bowers and Pierce, Arbitrariness and Discrimination in Post Furman Capital Statutes Crime, Pg. 563, October 1980, noted that black killers were found to be substantially more likely than others to receive a death sentence.

Under Ohio's current law, this pattern has not changed significantly. The first 13 persons sentenced to death in this State, nine were convicted of killing whites, one was convicted of killing a black police officer and one was convicted of killing two blacks and a white, and two were convicted of killing blacks. Therefore, the death penalty is generally preserved for blacks who kill whites. In addition, the arbitrary and capricious applications of the death penalty persist because of uncontrolled discretion of the Prosecutor. In Butler County, the Prosecutor allowed a man who beat a parapalegic to death to plead to the capital offense but drop the death penalty specification. While the Prosecutor must have discretion, when the discretion involves the question of who will and who will not face the death penalty, use of the discretion in this manner involves cruel and unusual punishment for the Defendant. In State -vs- Grosgene, from the Lucas County Court of Common Pleas No. CR-82-6155, a

[13]

three judge panel of the Lucas County Court of Appeals addressed the question of the unbridle discretion of the Prosecutor and stated that the Prosecutor should present all of his evidence to a grand jury for its determination on whether to charge a death penalty specification.  The Court stated:

> "We  believe it should be mandatory that Prosecutors aprise the grand jury considering an aggravated murder case where there is a possiblilty of the death sentence of any standard or criteria that may be established either by rule or legislation.  Moreover, along with such instruction, a Prosecutor should be required to present any and all evidence he may have in his possession that may have an effect on the decision of the grant jury so whether to charge a specification to the count of aggravated murder.  It is this Courts opinion that a procedure as suggested herein or one similar thereto would dampen the claim of selective prosecution in capital cases and relieve the Court of countless hours in reading, hearing and deciding motions addressed to that question."

Thus, as demonstrated, the death penalty in Ohio is arbitrarily applied and under Furman -vs- Georgia, constitutes cruel and unusual punishment.

In addition, the Court of Appeals and the Ohio Supreme Court are statutorily, under Section 2929.05(A) of the Ohio Revised Code required to determine whether a particular sentence of death is excessive or disproportionate to that imposed in similar cases.  However, neither a three judge panel or a jury is required to make such findings.  While a judge, in passing on a jury's determination to impose a death penalty, or the three

[14]

judge panel itself under Section 2929.03(F) is required to state in a separate opinion the specific findings as to the existence of any mitigating factors and the aggravating circumstances, and the reasons why such circumstances outweigh the mitigating factors before passing judgment, it is not required to do a proportionality review as is this Court and the Supreme Court. Thus, before the Defendant receives a proportionality review, he has been sentenced to death.

In addition, under Section 2929.05 of the Ohio Revised Code, a Court affirming a death sentence in Ohio is required to find that death is the only appropriate remedy. However, the original sentencing body has no such requirement. Thus, the sentencing procedure itself is inadequate and unconstitutional since neither a three judge panel, a judge nor a jury must determine whether death is the only appropriate remedy as this Court must determine and as the Supreme Court must determine. Thus, despite the Cardinal Rule that this Court will not pass on a question not raised or passed on by a lower Court, the statute requires this Court and the Supreme Court to make a determination which has not been made or passed on by the lower Court, i.e. is the death sentence the only remedy appropriate and it is proportional to sentences received for like and similar crimes throughout the community. Even though Section 2929.05 requires this Court and the Supreme Court to determine whether the sentence is appropriate, it gives no guidelines as to how to

[15]

determine that the sentence is excessive or disproportionate to the penalty imposed in similar cases where indeed should be used for comparison.

### Argument Four

The Sections of the Ohio Revised Code that deal with the death penalty, deprive the Defendant of due process of law and constitute cruel and unusual punishment because these provisions permit imposition of the death penalty on a less than adequate showing of guilt and the appropriateness of the death penalty.

In capital cases, the United States Supreme Court requires a greater degree of reliability in the conviction than in non-capital cases and requires a greater guarantee that death is actually the appropriate sentence.

In Woodson -vs- North Carolina, 428 U.S. 305, the Court stated:

> "Death in its finality differs more from life imprisonment than a hundred year prison term differs from one of only a year or two.   Because of that difference there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a given case."

Likewise, in Locket -vs- Ohio, 438 U.S. 586, the Court called for a greater degree of reliability when the sentence of death is imposed.  In Beck -vs- Alabama , 447 U.S. 625, the U.S.

[16]

Supreme Court struck down an Alabama statute which precluded instruction on lesser included offenses in capital cases. The Court stated that the statute enhanced the risk of unwarrented conviction and stated:

> "Such risk cannot be tolerated in a case in which a Defendant's life is at stake, we have invalidated procedural rules intended to diminish the reliability of the sentencing determination. The same reasoning must apply to rules that diminish the reliability of the guilty determination."

Given the stake in a capital case, i.e. the loss of life as opposed merely to the loss of liberty, it is thus required that in the guilt determinate process, a standard for taking life, which reduced the margin of error as much as humanly possible should be used, i.e. proof beyond all doubt of the Defendant's guilt and of the absolute necessity to impose the death penalty even if the Defendant is found guilty. Proof beyond a reasonable doubt in Ohio requires only that proof that an ordinary person would be willing to rely and act upon in his most important affairs. Such a standard has been rejected by other Courts. See Scurry -vs- United States, 347 S. 2d 468. In that case the Court noted:

> "Being convinced beyond a reasonable doubt cannot be equated with being willing to act in the more important matters of your own affairs. A prudent person called upon to act in an important business or family matter would certainly weigh the often neatly balanced considerations and risks tending in both directions, but

[17]

in taking action on a judgment after doing so such
person would not be necessarily convinced beyond a
reasonabe doubt that he made the right judgment. Human
experience, unfortunately, is to the contrary.

The jury, on the otherhand, is prohibited from
convicting unless it can say beyond a reasonable doubt
that a Defendant is guilty as charged.  Thus, there is a
substantial difference between a jurors verdict of guilt
beyond a reasonable doubt and a person making a judgment
in a matter of personal importance to him.  To equate
the two in a jurors mind is to deny the Defendant the
benefit of reasonable doubt."

Likewise, the Ohio Reasonable Doubt statute requires

that the jury have, "A firm conviction of the truth of the

charge."  However, the Ohio Supreme Court in Cross -vs- Ledford,

161 Oh. St. 469, 120 N.E. 2d 118, stated:

"Clear and convincing evidence is that measure or
degree of proof which will produce in the mind of the
trier of facts a firm belief for conviction as to the
allegations to be established.  It is intermediate,
being  more than a mere proponderance, that not to the
extent of sure certainty as is required beyond a
reasonable doubt as in criminal cases."

Thus, the Reasonable Doubt statute in Ohio reduces the

standard for conviction.  This is in violation of that standard

approved by the United States Supreme Court which held that guilt

must be proven beyond a reasonable doubt as a matter of

constitutional law. See In Re Winship, 397 U.S. 358.  The effect

of the amendment of the Ohio Revised Code on reasonable doubt to

provide a mere firm conviction and a willing to act in the most

important of your affairs has been analyzed and criticized in

[18]

State —vs— Crenshaw, 51 O.A. 2d 63. In that case the Montgomery
County Court of Appeals examined the charges created by the new
statute altering the test for reasonable doubt from moral
certainty to present firm conviction.  The Court stated:


> The changes in the substance of the definition of
> reasonable doubt reduce the degree of certainty required
> and eliminate the implication of steadfast, certainty or
> conviction.  The changes are not mere semantics or
> philisophical differences, they are significant.  This
> significance lends itself to a unique advantage to the
> State in its argument to the jury and a disadvantage to
> the accused.  Important affairs is a traditional test
> for clear and convincing evidence and is acquired to set
> aside important written instruments standard based on a
> most important affairs of the average jury is lower than
> an abiding conviction to a moral certainty and reflects
> adversely upon the accused."


Thus, as the Court can see, the Reasonable Doubt
standard in the State of Ohio is constitutionally unfirm and
therefore, such a standard may not be used particularly when the
death penalty is to be implemented.


## Argument Five

The death penalty provisions in the Ohio Revised Code
constitute cruel and unusual punishment and violate due process
and equal protection by requiring proof of aggravating
circumstances in the guilt stage of the death penalty
deliberations.

Ohio's statutory framework for the imposition of a death
penalty upon a capitally charged Defendant mandates a two stage

[19]

process.  The initial trial or guilt determining stage of the
proceedings requires the jury or panel to find the Defendant's
guilt of aggravated murder and one or more aggravated
circumstances in order to proceed with capital punishment.  See
ORC 2929.03 and ORC 2929.02(2)(A)(1).  However, Section
2929.02(2)(A) allows that if an indictment charging a Defendant
with aggravated murder contains a specification of the
aggravating circumstances of a prior conviction listed in (A)(5)
of 2929.04, the Defendant may elect to have the trier of fact
determine the existence of that aggravated circumstance at the
sentencing hearing.  Otherwise, the aggravating circumstance is
determined during trial.

     In Von Clark Davis's case, ORC 2929.02(2) was applicable
since the aggravating circumstance was a prior conviction or
murder.  As will be argued later, he waved a jury because the
Court, while realizing that the Revised Code required the jury,
not to hear any evidence of a prior conviction, during the trial
in chief, refused to sever the Weapons Under Disability count
which meant that the jury would hear the aggravating circumstance
in the case in chief anyway.  Thus, Von Clark Davis was forced to
have a jury hear the aggravating circumstance at the guilt
determination.  Allowing proof of the aggravating circumstances
at the guilt determining phase violates the Defendant's due
process and equal protection rights and can influence a panel or
jury during the guilt phase.  Furthermore, Ohio's procedure

[20]

requiring that the jury find aggravating circumstances beyond a
reasonable doubt at the trial stage without the concurrent
examination and balancing of mitigating circumstances capable of
proscribing the imposition of the death penalty violates the Ohio
and Federal prohibitions against cruel and unusual punishment for
the jury, at the trial stage, determines the existence of the
aggravating circumstance beyond a reasonable doubt and then is
asked at a later hearing to find if there was any mitigation
which outweighs that determination.  The net result is that Ohio
procedure effectively mandates imposition of death at the trial
stage by virtue of the jury's verdict of guilt and finding beyond
a reasonable doubt of the presence of the aggravating
circumstance.

     In point of fact, many of the aggravating circumstances
listed are merely those circumstances which distinguish felony
murder from murder.  The U.S. Supreme Court has often held that
there are a limited number of cases for which a death penalty is
applicable.  See Barclay -vs- Florida, 103 Sup. Court 3428 and
Zant -vs- Stephens, 103 Sup. Court 2743.  Thus, the Ohio
aggravating factors as a whole are unconstitutional under the
Supreme Court's analysis since it fails to provide for the
categorical narrowing at the definition stage required by Zant.
As the Zant Court stated:

     "An aggravating circumstance must generally narrow
the class of persons eligible for the death penalty and

[21]

must reasonably justify the imposition of a more severe
sentence on the Defendant compared to others found
guilty of aggravated murder."

By requiring jurors to hear the proof of the aggravating
factors it makes it difficult for them to distinguish between
those deserving of death and those not deserving of death.

## Argument Six

The Ohio Revised Code Sections 2929.02(2) and 2929.03-04
violate the Defendants right to effective assitance of counsel at
the trial before an impartial jury and therefore violates the
Ohio and U.S. Constitutions.

The above cited statutory sections providing for
sentencing before the same jury or panel of judges which
determine the facts at trial violate the Defendant's rights to
effective assistance of counsel and a fair trial before an
impartial jury as guaranteed by the Sixth and Fourteenth
Amendments to the United States Constitution and by the Ohio
Constitution.

The recently enacted Ohio statute providing for the
penalty for certain aggravated murders provides for a biforcated
trial.  The first portion determines the guilt and the second
stage applies after the Defendant has been found guilty to
determine whether the Defendant is to be sentenced to death or to

[22]

life imprisonment. This statute requires both stages to be heard and decided by the same fact finder, whether jury or panel. This denies the accused the effective assitance of counsel. For example, if counsel defends on the facts of the case and presents a defense, i.e. an identification issue or any other issue, this could effect the Defendant's credibility for the sentencing stage of the trial if the jury or panel does not believe the Defendant, as they did not in this case, and the Defendant denies his involvement in the crime, then it would be difficult to present mitigating factors. For instance, what about a Defendant with an alibi defense and yet severe psychiatric problems? This indeed happended in Von Clark Davis's case. Von Clark Davis claimed he did not do it. He claimed that someone else did it. Roger Fisher, psychologist of the Forenzic Center, testified that if indeed Von Clark Davis had committed this crime, and had admitted his participation, this would indicate a severe mental problem. However, counsel in trying the case to the same panel is forced to elect whether to present a defense mitigation. Thus, if the defense does not succeed then how does an attorney in front of the same fact finder argue the mitigation hearing that although his client did not commit the murder, he should now be spared because if he did he was suffering from psychiatric problems. Such a situation is constitutional impermissable, as Ohio's death penalty will force defense counsel in many cases to abandon viable defenses at the guilt determining stage for fear of prejudicing his client at the sentencing stage.

[23]

˙˙kewise another problem with bifurcated trial using the same jury in both stages, is that the prosecution will seek a death qualified jury and those jurors whose opposition to the death penalty would absolutely procclude them from fairly deciding guilt or punishment under Witherspoon -vs- Illinois, 391 U.S. 510, would be excluded from such a panel thus resulting in a jury more likely to convict.

33 C.L.R. 2477

In Grigsby -vs- Maybury, 43 C.L.R. 24744, the Supreme Court of Arkansas indicated that the death qualification process in itself prejudices a defendant as it creates the belief on the party of the jury that he is guilty.

Finally, ORC 2929.03 allows the Defendant to request a mental examination prior to trial.  Once the examination is requested by the Defendant, the Court must order such obligation and the results were automatically made available to all parties, the judge and the jury.  Thus, the Defendant has no control over whether or not the jury sees what could be a potentially damaging psychiatric exam.

Thus in summary, the Ohio death penalty framework forces an accused to decide whether or not he is going to defend on the merits or on mitigation, thus, unneedlessly and unnecessarily encourages abandonment of defense on the merits and chills the right to a jury trial.

Argument Seven

[24]

Section 2945(C) of the Ohio Revised Code violates the
Defendant's right to an impartial jury.

Section 2945.25(C) of the Ohio Revised Code provides for
a challenge for cause in a death penalty case of any juror who
unequivicably states that under no circumstances ill he follow
the instructions of the trial judge and consider fairly the
imposition of death in a particular case.  However, there is no
provision granting a challenge to the defense for cause of any
juror irrevocably committed to the application of the death
penalty upon proof of aggravated murder with specifications even
where there is evidence of mitigation.  The failure to provide
this alternative challenge for cause deprives the Defendant of a
right to an impartial jury in that it reduces available
peremptory charges to attempt to assure juror fairness.  In
addition, it makes more likely the exclusion of jurors opposed to
the death penalty resulting in a death qualified jury more likely
to be conviction prone and prosecution biased.  Death qualifying
jurors and excluding those with objections to the death penalty
offends the Sixth Amendment's right to a fair cross section in
the guilt determining process and produces conviction prone
juries.  See Grigsby -vs- Maybury, supra.

In State -vs- McClellan, 12 O.A. 2d 204, the Court
stated, "Under the law of Ohio a juror with a bias in favor of
capital punishment is just as unfit to serve on a jury as one who

[25]

will refuse to vote for the death penalty if properly convinced the evidence warrants such a vote." However, the Ohio Revised Code does not allow a challenge for a juror who is in favor or the death penalty.

### Argument Eight

The Ohio Revised Code implementing the death penalty violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 and 16 of the Ohio Constitution.

Section 2929.03(D)(2) of the Ohio Revised Code provides only that if a jury unanimously finds by proof beyond a reasonable doubt that the aggravating circumstances the offender was guilty of committing outweighed the mitigating factors, the trial jury shall recommend that the sentence of death be imposed on the offense.  However, no standard of weighing mitigation against aggravation is present nor defined.  This weight standard, one without a definition, permeates the statute and invites arbitrary and capricious jury decisions.  The guarantee against cruel and unusual punishment requires that aggravating circumstances must more than merely outweigh the mitigating factors to result in imposition of the death penalty.  In addition, if "outweigh" is defined as the same standard as "preponderence of the evidence", then the sentence makes no sense at all for a jury must find beyond a reasonable doubt that the

[26]

aggravating circumstances proponderate over the mitigating circumstances. Thus, the balancing sought to be achieved is absence from the statute. The statute itself appears to require only that the sentencing body be convinced beyond a reasonably doubt that the aggravating factors were marginally greater than the mitigating factors. In that instance, even a slight difference in weight between aggravating and mitigating circumstances would result in execution. Such a sentencing scheme is constitutionally defective and creates a risk of arbitrary or capricious sentencing.

The Ohio provisions, furthermore, do not explicitly provide for merciful discretion on the part of the trier of fact and the death penalty appears to be mandatory once criteria is established.

In the first version of the death penalty bill, the death penalty was procluded unless the aggravation substantially outweighed mitigation. The final version deleted substantially.

Defendant contends that under the Eighth and Fourteenth Amendment standards people should not be put to death unless the scale substantially in favor of death. In addition, such a comparison is arbitrary and capricious. Under Furman -vs- Georgia, 408 U.S. 238, the penalty of death may not be imposed under sentencing procedures that create a substantial risk on arbitrary and capricious application. In addition, the

[27]

mitigating circumstances of the Revised Code are vague and do not provide clear and objective standards for sentencing discretion as required by the Ohio Supreme Court. For example, one of the mitigating factors is the lack of significant history of prior criminal convictions and delinquency ajudications which is basically undefined. In the case of Arnold -vs- State, 236 Georgia 534, 224 S.E. 2d 386, the Georgia Court found that the aggravating factor substantial history of serious assaultive criminal convictions was too vague and gave too wide a latitude of discretion to the jury. Thus, it depends on an individual jurors interpretation as to what constitutes a lack of substantial contact with the law.

Finally, the burden of proof is allocated improperly to determine the existence of mitigating factors. The Defendant has a burden of proof of going forward with mitigation. However, the statute fails to allocate burden of proof as to the existence of mitigating factors. This leaves the jury with no guidance particularly if the evidence as to a particular circumstance is equally balanced. The scheme is vague and arbitrary. The State of Ohio should be forced to prove the absence of mitigating factors beyond a reasonable doubt. This would prevent arbitrary decisions in close cases. The Defendant cannot be obligated to bear the burden the proving the existence of a mitigating factor. If the Defendant were so required, then in a case which the evidence relating to mitigation was equally balanced the jury

[28]

would have to find that there were no mitigating circumstances. Aggravation would thus outweigh mitigation and the jury would have to impose the death sentence even though it were as likely as not that there were mitigating circumstances. This is contrary to the Constitution.

## Argument Nine

The Ohio Revised Code on the death penalty violates the cruel and unusual punishment provisions of the U.S. and Federal Constitutions by failing to provide the sentencing authority with an option to choose life imprisonment when there are aggravating circumstances and no mitigating circumstances.

Georgia, which has a death sentencing statute similar to Ohio, has required that the trial court charge a jury that even if they find existence of an aggravating circumstance but find no mitigating circumstance they may never the less return a life sentence. See Gregg -vs- Georgia, 428 U.S. 153. However, Ohio's provisions do not allow the jury this opportunity.

As the Court said in State -vs- McDugle , 301 S.E. 2d 308, "While aggravating factors are present and no mitigating ones, the sentencing body must still determine whether the aggravating circumstances are of such value, weight, consequence or significance as to be sufficiently substantial to call for the imposition of the death penalty."

[29]

<u>Argument Ten</u>

The death penalty violates the cruel and unusual provisions of the State and Federal Constitutions and the due process clauses of the State and Federal Constitutions because the aggravating circumstances are overbroad and vague and fail to reasonably justify the imposition of a more severe sentence.

The U.S. Supreme Court in <u>Gregg -vs- Georgia</u>, 428 U.S. 153, requires that the State channel the sentencers discretion by clear and objective standards that provide specific and detailed guidance.

In <u>Godfrey -vs- Georgia</u>, 446 U.S. 420, the United States Supreme court vacated a death sentence because an arbitrary and capricious infliction of the death penalty had occured in the application of one of Georgia's aggravating circumstances.  The Court said:

> "A person of ordinary sensability could fairly
> characterize almost every murder is outrageous or
> wantonly vile, horrible and inhuman (which was one of
> Georgia's aggravating circumstances), and thus there is
> no principalled way to distinguish this case in which
> the death penalty was imposed from the many cases in
> which it was not."

See also <u>Zant -vs- Stephens</u>, 103 Sup. Ct. 2733.

Therefore, counsel submits that this Court should find that the Ohio Death Penalty Statute is unconstitutional and vacate the death sentence.

[30]

### SECOND ASSIGNMENT OF ERROR

THE COURT ERRED IN FAILING TO ALLOW THE DEFENDANT THE RIGHT TO
INSPECT THE GRAND JURY TRANSCRIPT.

Issues Presented for Review and Argument.

1.   Where the Defendant moves to dismiss and to inspect
the grand jury transcript for purposes of showing that the
indictment against him was not based upon probable cause and that
the indictment was founded on illegal and incompetent evidence,
the Defendant has a right to inspect the Grand Jury testimony.

### Argument

The Defendant moved the Court to dismiss the indictment
and also moved to inspect the Grand Jury transcript.   The
Defendant submitted that there were two reasons for needing the
Grand Jury transcript - (1) to support his Motion to Dismiss and
(2) that the traditional rules regarding the secrecy of the Grand
Jury were obsolete, based on misconceptions of the common law,
and that the need for secrecy was no longer present.

Defendant submitted an extensive Memorandum in support
of his motion.   The Grand Jury was initiated at first in 1166 as
the sword of the crown gathering information on citizens but not
to protect them from unfair prosecution.   However, sometime
around the middle of the Fourteenth Century, the Grand Jury

[31]

asserted its independence and to serve its intended purpose of
screening accusations and voting indictments, began to meet
secretly, not to protect itself against the alleged Defendants,
but to avoid interference from the King.  See for example,
Stephens-History of Criminal Law in England and Holzworth-The
History of English Law.

Thus, while the Grand Jury at first was invoked to
augment the power of the crown by acting as a public prosecutor,
by 1368 this practice had diminished and there emerged a new form
of Grand Jury which adopted the custom of hiding its presence
from the crown so as to protect itself from the abuses of the
crown.  This independence became firmly established in the famous
Earl of Shaftsberry Case, taking place in 1681.  In that case the
King had insisted the Grand Jury hear in open court testimony
concerning charges brought against the Earl of Shaftsberry.
Following the hearing the Grand Jury felt that State and the
Crown, as represented by its prosecutors, were interested only in
injustice and in intimidating the Earl.  They demanded and were
granted the right to interview witnesses in private.  After this
private hearing, where the witnesses were not subject to
retribution by the crown by failing to testify properly, the
grand jury returned a bill with the word "Ignoramous" written
across the front, meaning ignored.  However, a second grand jury
was convened by the Crown in another location, resulting in an
indictment of the Earl of Shaftsberry, who was forced to flee to

[32]

Holland. The Co-Defendant indicted with him was convicted and executed. See Marvin F. Frankle and Gary P. Nefcalus-The Grand Jury, An Institution on Trial. After this case and the King's blatant disregard of the first Grand Jury's findings, reforms were demanded and instituted.

The Grand Jury as transplanted in America, met in private to protect itself from the government. Later, the Prosecutor, both here and England, was permitted to be present, only to assist the jury in drawing up the form of the indictment, but he himself did not present testimony. See 8 Wigmore on Evidence, Section 2360. About this time, four alleged reasons the grand jury secrecy developed. These reasons were (1) the grand jury must be free from apprehension that their votes and opinions may be disclosed; (2) witnesses and complainants summoned should be free from apprehension that their testimony may subsequently be disclosed by compulsion; (3) that a guilty accused would not flee from arrest, suborn perjury, or tamper with the witnesses of the grand jury and (4) that an innocent accused who is not indicted should not be discredited in the community.

However, these reasons become unimportant after the indictment is issued. First, the defendant in this case does not seek the discussions, opinions and votes of the grand jurors. These should remain secret. Second, the witnesses who have already testified and can certainly have no fear that their

[33]

-timony would be disclosed, since they knew or should have known at the time they testified in grand jury that whatever they said, which was detrimental to the defendant if he were indicted, could be used against him in trial. In addition, if there was any real fear that the defendant would intimidate any of the witnesses who appeared, the prosecutor could seek a protective order prohibiting this particular evidence from being disclosed. This reason does not call for a wholesale refusal of the grand jury minutes. Finally, once the accused has been indicted, arraigned and in particular, in Von Clark Davis' case, incarcerated for the entire time, there is no fear that he would flee from arrest and since the grand jury has already heard the testimony, it would be impossible for him to suborn perjury or tamper with the witnesses of the grand jury. Finally, since the defendant has been indicted, the disclosure of what had transpired during the grand jury would certainly not cause him to suffer any loss of standing among the community.

It is interesting to note that Rule 6 of the Ohio Rules of Criminal Procedure on grand jury secrecy does not demand secrecy of the witnesses before the grand jury but only prevents the grand jurors themselves, as well as any stenographer or prosecutor who may be present, from disclosing what went on before the grand jury. The witnesses are not sworn to secrecy and they may disclose their testimony at any time. In the federal system under the Jencks Act, 18 USC Section 3500, the

[34]

defendant is entitled to grand jury testimony of a government
trial witness without any preliminary inspection for usefulness
by a trial judge.  See also <u>United States vs. Ramirez</u>, 482 F 2d
807.

One hundred years ago, the grand jury testimony was kept
secret not only from the defendant but also from the state.
However, in a series of cases taking place around a hundred years
ago, prosecutors of the federal system and of the various states
set forth the very reasons now urged on behalf of defendants as
grounds for lifting the bar of secrecy once the accused is in
custody.

In the case of <u>Bressler vs. People</u>, 8 NE 2d 62, the
Illinois Court in 1866 stated:

> "When the indictment is returned and the defendant is
> arrested and placed upon trial neither statutory nor
> common law reasons for secrecy can apply.  There can be
> no reason why evidence given before a grand jury should
> not be made known and proved if the ends of justice
> require it.  A contrary course would tend to defeat
> instead of promote justice and is in direct opposition
> to the tendency of the principal which is to enlarge
> rather than to contract the source of evidence".

This citation did not arise from a case where the
defendant successfully urged the secrecy of the grand jury be
lifted but rather came from a case in which the prosecution urged
that the secrecy of the grand jury must be lifted so that the
testimony at the grand jury could be used to convict the

[35]

defendant. Ohio Rule of Criminal Procedure, Rule 6, now allows the prosecutor and other government agencies seeking to convict the defendant free use of the grand jury testimony.

Federal courts have long recognized that once the grand jury is discharged, the reasons for its secrecy end. Indeed, the Southern District of Ohio held In Grand Jury Summoned October 12, 1970, 321 F Supp. 238, that the secrecy of grand jury proceedings may not be imposed upon witnesses who appear before the grand jury and they may be interviewed after their appearance and repeat what they said before the grand jury or otherwise relate their knowledge of the subject of the inquiry. Likewise, federal courts have held that one of the reasons for secrecy, i.e. preventing flight of an accused, ceases when the indictment is returned and the accused arrested. See Report and Recommendation of June 5, 1972 Grand Jury, 375 F. Supp. 1219.

Michigan has developed a rule which requires disclosure of grand jury testimony prior to trial. In the case of People vs. Dunc, 201 NW 2d 629, the Supreme Court of Michigan held:

> "A person accused of a crime by any grand jury has the
> right to the transcript of its testimony and such parts
> of the record including the testimony of other witnesses
> before the grand jury, touching on the issue of guilt or
> innocence of the crime charged and to obtain it, he must
> petition the circuit court of the county wherein the
> grand jury was impaneled."

As a matter of fact several states have allowed the

[36]

defendant the right to use the grand jury testimony by virtue of statute. Some of these states are Iowa, California, Kentucky, Minnesota and Vermont. Obviously, the reasons for secrecy have been abrogated in those states by statute. However, it should be noted that the statutes in these states have not resulted in wholesale perjury or threats upon witnesses before the grand jury.

Likewise, in the case of State vs. Dewell, 196 S. 687, Supreme Court of Florida as long ago as 1936 held that while the policy of the law was to require the utmost secrecy as to grand jury proceedings while the grand jury was in session, once an indictment was presented and published, and the accused was in custody, the rule for secrecy was no longer necessary. Likewise, the Supreme Court of Nevada in the case of Shelby vs. Sixth Judicial District Court, 414 P 2d 942 held:

> "The secrecy provisions of the Nevada statute were directed to grand jury members rather than to witnesses appearing before the grand jury and the secrecy of the grand jury proceedings was not a valid reason for the denying of a pretrial examination of the transcript of the testimony after an indictment was returned and the accused is in custody or under restraint."

The Court further held:

> "A transcript should be made to preserve testimony in evidence presented to the grand jury, and the rule of secrecy is certainly not obsolete."

[37]

In that case, petitioner filed a motion in district court to allow him to inspect the transcript of testimony of the witnesses advancing three reasons:  (1) To determine if the requisite standard of proof had been met to justify the return of an indictment; (2) To determine if the indictment had been brought on legally admissable evidence; and (3) To use the transcript for discovery in preparation for trial.  As to ground 1, the Nevada Supreme Court stated:

> "It is fundamentally unfair to require one to stand trial unless he was committed upon a criminal charge with reasonable or probable cause.  No one would suggest that an accused person should be tried for a public offense if there exists no reasonable or probable cause for trial.  Our constitution and statutes recognize this as a principal of fairness and provide for his protection by a writ of habeas corpus."

In _Dennis_ vs. _U.S._, 384 U.S. 855, the United States Supreme Court decided that defendants in that case were allowed to obtain the statements made by the complaining witnesses at the grand jury.  The Court stated:

> "In the American adversary system for determining guilt or innocence, it is rarely testifiable for the prosecution to have exclusive access to a storehouse of relevant fact and exceptions to this are justifiable only by the clearest and most compelling considerations."

Likewise, the Second Judicial Circuit has allowed full discovery of grand jury testimony.  See _U.S._ vs. _Hernandez_, 290 F. 2d 86.  The Arizona Supreme Court has held the same.  See

[38]

Arizona vs. McCormick, 448 P. 2d 74. As has the Fifth Circuit

Court of Appeals of the United States in United States vs.

Hughes, 413 F. 2d 1244.

In Antrobus vs. Indiana, 254 N.E. 2d 873, the Supreme

Court of Indiana held that pretrial statements including grand

jury statements made by prosecution witnesses to the police, are

discoverable and should be turned over directly to the defendant.

In Parlapiano vs. District Court, 491 P. 2d 965, the Supreme

Court of Colorado en banke held:

> "Unless the people show otherwise, the grand jury
> testimony of a person who will testify at trial is
> presumed to be material for the preparation of the
> defense and a request therefore is presumed to be
> reasonable."

In commenting on the secrecy of the grand jury, the

Colorado Supreme Court stated:

> "Secrecy for secrecy's sake should no longer be the rule
> in Colorado, rather than maintenance of the law, secrecy
> around grand jury testimony should be grounded upon
> sound reason."

Finally, in Commonwealth vs. Stewart, 309 N.E. 2d 470,

the Supreme Judicial Court of Massachusetts held the defendant

would no longer be required to show a particularized need in

order to gain access to the testimony of the witnesses before the

grand jury which indicted him, but that such testimony would be

[39]

provided as a matter of routine, except where protective orders were required.

While an indictment on its face is prima facia evidence of probable cause, it is not such evidence that a defendant should not be allowed to rebut the prima facia evidence. The defendant in this case does not believe the indictment to be based on probable cause. The only witness the state used at the preliminary hearing in order to establish probable cause to bind over the defendant was one Tony Ferguson, who told an outlandish story, contradicted his preliminary hearing testimony at trial and whom the defendant presented as a witness only to establish the absolute lack of probable cause to even indict the defendant. Defendant has reason to believe that Tony Ferguson was indeed the only witness at the grand jury. However, without an inspection of the transcript, defendant could not support his allegations. Indeed, it makes no sense to tell a defendant that he must establish the indictment is invalid and then refuse to allow him to review the grand jury testimony so as to substantiate his allegation. Therefore, the defendant submits that in this case the Court erred in failing to allow him to inspect the grand jury testimony so as to substantiate his Motion to Dismiss.

### ASSIGNMENT OF ERROR THREE

THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO BIFURCATE THE TRIAL AND TO SEVER THE CHARGES.

[40]

Issues Presented for Review and Argument

1.  Where a defendant is charged with aggravated murder with a specification that he had previously been convicted of murder and further in the second count of the indictment charged with having firearms while under disability, is it improper for the Court to try all charges together and to refuse to biforcate the trial and to have the proof of specification at the sentencing hearing if the defendant is found guilty and further to refuse to sever the charge of having weapons while under disability so that no evidence would be introduced as to defendant's prior crimes.

2.  Where the defendant is charged with aggravated murder with a specification that he has previously committed a homicide and also with having weapons while under disability, defendant's right to a trial by an impartial jury is violated by requiring all charges to be tried at once, in violation of the Ohio Revised Code, so as to allow the prosecution to introduce by way of evidence on having weapons while under disability, evidence which could not otherwise be introduced at the trial in chief.

Argument

The Defendant, as noted previously, was charged with aggravated murder with the specification under ORC 2929.04(A)(5),

[41]

that prior to the offense at bar, the Defendant was convicted of the an offense an essential element of which was the purposeful killing of or attempt to kill another. The Defendant was further charged in the second count with having weapons while under disability. The Defendant filed a Motion to Bifurcate the Trial and to sever the charge of having weapons while under disability. The Court overruled both motions. ORC 2929.022(A) provides:

> "If an indictment or count in an indictment charging a Defendant with aggravated murder contains a specification in the aggravating circumstance of prior conviction, listed in Division (A)(5) of ORC 2929.04, the Defendant may elect to have the panel of judges if he waives a trial by jury or the trial judge, if he is tried by jury, determine the existence of the aggravating circumstance at the sentencing hearing held pursuant to Divisions (C) and (D) of 2929.03 of the Ohio Revised Code.

The Court effectively denied this right to the Defendant.

In addition, the Defendant filed a Motion to Sever the weapons under disability charge for a very simple reason. Since he had the right not to have a jury hear about the specification that he had committed a prior homicide, the State should not be permitted to bring that information in through the back door, i.e. through a second charge.

Ohio Rule of Criminal Procedure 8(A) allows the prosecution to charge a Defendant with more than one offense in the same indictment. However, Ohio Rule of Criminal Procedure 14 specifically provides that if it appears that the Defendant or

[42]

the State is prejudiced by a joinder of offenses in the
indictment, the Court shall order separate trials of counts or
provide such other relief as justice requires.

In the present matter, Von Clark Davis was charged with
aggravated murder.  He was entitled not to have the specification
brought to the attention of the panel or jury until the
sentencing hearing.  However, because he was also charged with
having weapons under disability, the Prosecution then was allowed
to prove his prior offense, which without the second count it
would not be permitted to do until the sentencing hearing.
Because of these considerations, Von Clark Davis waived a jury.
Thus, the Court's failure to grant the Motion to Sever and the
Motion to Bifurcate denied Defendant a fair trial and had a
chilling effect on his right to a jury trial, since he was faced
with either choosing a three judge panel or a jury who would know
about the prior homicide.  While the jury may be given an
instruction that this is only to be used for the weapons under
disability charge or for  determining the specification, it is
not credible to believe that a jury could not take this into
consideration when determining guilt.  Thus, there was an invalid
waiver of his right to a trial by jury forced by the Court's
decision, and the Court erred in overruling the motions to
bifurcate and to sever.

The Ohio Supreme Court has held on two occasions that
adherence to the Ohio Statutory scheme for capital cases is

[43]

mandatory and that failure of the State to adhere to it is prejudicial and requires a reversal.  In the case of State -vs- Henry, 4 Oh. St. 3d 45, the Court held that where two or more persons were jointly indicted for aggravated murder, each of such persons shall be tried separately unless the Court ordered a joint trial pursuant to strict mandates set forth in Criminal Rule 14 and ORC 2945.20.  The Court first grappled with the problem of whether aggravated murder was a capital offense, even though in that case the death penalty could not be imposed.  That analysis is obviously not necessary here since this was a capital case, and the Defendant received the death penalty.  The Court noted that both Criminal Rule 14 and ORC 2945.20 required separate trials unless good cause was shown.  The Court held that because neither the State nor the appellee sought affirmative approval for a joint trial the case must be remanded for a new trial wherein the appellee would be tried separately.

The Court also noted that under Criminal Rules and ORC 2929 there appeared statuatory safeguards and detriments that take affect when a person is charged with committing a crime that is classified as a capital offense and that these must be strictly adhered to.

Likewise in the case of State ex rel Corrigan, Prosecuting Attorney -vs- Mc Monigle Judge, 12 Oh. St. 3d 15, the Ohio Supreme Court affirmed the granting by the Court of Appeals

[44]

of the mandamus. In this case, the Prosecuting Attorney contended that under ORC 2945.18, a special venire was required for a capital case. The Trial Court denied the request, but on a Writ of Mandamus the Court of Appeals granted the request. The Court, relying on Henry, found that it was a capital case and that because it was a capital case, the special venire must be granted and that the statutory safeguards for capital cases must be followed.

Therefore, it is clear that the Court erred in failing to grant Defendant's motions. While the State, under Ohio Criminal Rule of Procedure 8 could try the counts together, because of the statutory election allowed by ORC 2929.022, the Defendant had the right to sever the specification of a prior homicide. The intent of the legislature was clear. Such evidence in a capital case could be extremely damaging and prejudicial and no instruction could wipe it out of a jury's mind. However, the Court's refusal to sever and refusal to grant this election deprived the Defendant of his right to a jury trial. The Defendant was thus forced to elect a three judge panel because Defendant knew that a jury would be informed of his prior homicide on opening statement and throughout the trial.

Furthermore, the Court erred in failing to allow the Defendant to elect not to have the aggravating circumstance tried during the course of the trial as was his right. Failure to comply with this procedure requires a reversal of the Trial Court's verdict.

[45]

FOURTH ASSIGNMENT OF ERROR

THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

Issues Presented for Review and Argument

1.  Where the defendant, in an aggravated murder case is bound over to the grand jury and indicted on the testimony of one witness and the State then fails to present that witness at Trial, but instead presents other witnesses who contradict the fact that that witness was even at the scene, the judgment is against the manifest weight of the evidence and the credibility of the State's case fails entirely.

2.  Where the State presents no evidence that the Defendant in an way plotted, schemed or planned to kill the deceased, and there is no evidence of prior calculation and design the Defendant may only be convicted of murder and not aggravated murder.

Argument

At the preliminary hearing the State presented only the evidence of Tony Ferguson, whose testimony has been summarized in the Statement of Facts.  Needless to say from Tony Ferguson's testimony neither Reginald Denmark nor Cozette Massey were presented at the scene.  While this standing alone would perhaps not be fatal to the State's case, the simple fact is that the

[46]

bindover to the Grand Jury and the subsequented indictment were obtained by the testimony of a witness who was so discredited and who changed his testimony so greatly from preliminary hearing that the State decided not to call him.

The eye witnesses to the offense presented by the State did not see Tony Ferguson at the scene of the crime. Cozette Massey, who knows Tony Ferguson, did not see him out there that night and neither did Reginald Denmark.

In addition, all the witnesses who testified, testified that the shooting happened over a brief time span. Von Clark Davis testified that he bought the gun in order to trade for dental equipment. However, Wade Coleman testified, who was called by the State, that Von Clark Davis had bought the gun for protection. There was no showing that there had been any trouble between Suzette Butler and Von Clark Davis nor that he intended at any time to kill her nor that he purchased the gun for that reason. In fact, Mona Aldridge in her statement to the police, stated that they had been arguing when she looked out at the time the gun was fired.

Likewise, Jordana Miles, who had seen part of the incident, said that it looked to her like they might have been arguing.

This does not establish prior calculation and design on the part of the Defendant. The Defendant was charged with

[47]

aggravated murder in that he killed Suzette Butler, with prior calculation and design. No other allegation was made.

The Committee comments that ORC 2903.01(A) points out that the section restates the former crime of premeditated murder so as to embody the classic concept of the planned, cold blooded killing while discarding the notion that only an instance prior to deliberation is necessary. The Committee Comment also notes that under former Ohio Law, murder could be premeditated even if the final plan was conceived and executed on the spur of the moment. The Committee Comment continues:

> "The section employs the phrase, 'prior calculation and design' - the indicate study care in planning or analyzing the means of death as well as a scheme compessing the death of the victim. Neither the degree of care nor the lenghth of time the offender takes to ponder the crime beforehand are critical factors in themselves, but must amount to more than momentary deliberation."

Here, by the testimony of the State's witness Mona Aldrige, she and Suzette Butler had gone to the Legion about 5 p.m. There had been no prearranged plan for them to go to the Legion. They had decided to do it on the spur of the moment. Von Clark Davis happended to walk into the American Legion five minutes later. There was no evidence showing that Von Clark Davis knew that Suzette Butler would even be at the American Legion. All three had sat at the table, had a drink and talked for a few minutes. While Mona Aldridge didn't hear the

[48]

conversation between Von Clark Davis and Sue, she didn't hear an argument between them at that time. However, in her statement to the police she indicated that they might have been arguing. Von Clark Davis left first then a very brief time after Suzette Butler got up, left her coat and cigarettes, told Mona Aldridge she would be right back and walked out behind Von Clark Davis. There was no evidence that Von Davis had asked Suzette Butler to go outside or had any intention of leaving with Suzette Butler. Shortly thereafter the homicide occurred. It occurred on a public street, in front of a public building, where there were numerous witnesses. Certainly had there been planning or prior calculation and design, Von Davis would not have fired the fatal shots, if he did, at that point.

In the case of State -vs- Reed, 65 Oh. St. 2d 117, the Ohio Supreme Court reduced the Defendants aggravated murder conviction to murder because there was insufficient evidence of prior calculation and design. In that case, a Cincinnati Police Officer was shot and killed after he stopped a vehicle and approached it to investigate it for an alleged robbery. The Defendant, Wayne Reed, was convicted of aggravated murder. The killing took place as an officer stopped an automobile containing the Defendant who was believed to have been in the process of planning a robbery. The Supreme Court held that the prosecution did not prove the presence of prior calculation and design. The Court held that the evidence regarding the killing at most

[49]

indicated the presence of instantanious deliberation. Therefore, even though the appellant had made statements to a classmate that he would kill any police officer who got in the way of a crime he might commit, this did not show that appellant designed a scheme in order to implement a calculated decision to kill. The Court held that the evidence was not sufficient to show prior calculation and design. The Court thus reduced the crime to one of murder.

In the case of State -vs- Jenkins, 48 O.A. 2d 99, the Court of Appeals for Cuyahoga County modified a finding of guilty of aggravated murder to a finding of murder, holding that momentary premeditation did not satisfy the standard of prior calculation and design. In this case there was a quarrel between the Defendant and another at his automobile. The Defendant walked to his car, took out a pump shot gun and shot the deceased. Thus, looking at the facts at the case before us, it is obviously the State did not prove prior calculation and design on the part of Von Davis.

The State in order to prove prior calculation and design attempted to show that Von Clark Davis had obtained the gun that same day. However, Von Clark Davis testified he obtained it to trade for dental equipment and one of the State's witnesses testified that Von Davis obtained it in order to defend himself.

Under State -vs- Kulig, 37 O.S. 2d 157, the Ohio Supreme Court held that when circumstantial evidence was used to prove an

[50]

element of an offense, it must be irreconcilable with any reasonable hypothesis of innocence. Here, the mere fact that Von Clark Davis obtained a firearm the same day, leads to many inferences and certainly it is not unreasonable that he did not obtain the gun merely to kill Suzette Butler, particularly when there had been no evidence presented by the State of any threats that he had made against Suzette Butler, of any bad feelings between he and Suzette Butler or that he had told anyone that he intended to kill Suzette Butler. In fact, the homicide was the result of a momentary argument. Certainly the place to kill was not picked, a public street in front of a public building, nor was the time since it was merely a chance, random meeting between the two.

Therefore, the Defendant submits that the judgment is against the manifest weight of the evidence and contrary to law and that the Defendant, Von Clark Davis, should either be acquitted because of the fact conflict in the State's testimony used to bind the Defendant to the grand jury and to indict the Defendant and the testimony at trial, or in the alternative, that the Defendant's conviction should be reduced to murder since the State failed to prove an essential element, that of prior calculation and design.

### FIFTH ASSIGNMENT OR ERROR

THE COURT ERRED IN NOT DISMISSING THE SPECIFICATION OF THE INDICTMENT THAT THE APPELLANT HAD COMMITTED A PRIOR HOMICIDE, ON

[51]

THE BASIS THAT SUCH SPECIFICATION WAS TOO REMOTE IN TIME TO BE
USED AGAINST APPELLANT.

Issues Presented for Review and Argument.

      1.   Where the prior murder conviction of the Defendant
occurred thirteen (13) years prior to the homicide in question,
to allow such homicide to be used as a basis of an aggravating
circumstance is improper and should have been stricken from the
indictment.

### Argument

      The prior homicide for which the appellant was committed
occurred in 1971.  Appellant at that time was convicted of
murder.  Appellant submits that this offense is to remote in time
to allow to be used as a specification for which the death
penalty may be given.  As argued in the First Assignment of
Error, the United State Supreme Court has held that there only a
very narrow range of offenses for which the death penalty may be
imposed.  Appellant submits that the use of a thirteen (13) year
old crime as a basis for the death penalty is unconstitutional
and is to remote in time.

      In the case of State -vs- George, 12th Appellate
District, Unreported, Case No. CA83-04-034, this Court held that
where the Defendant had been convicted of a homicide fourteen
(14) years earlier where the modus operandi was identical or very

[52]

~imilar to the crime at hand, such prior conviction was not admissable in evidence as a like and similar offense as it was too remote in time and bore no temporal relationship to the crime at hand.

Likewise in Von Clark Davis's case, the crime for which he was tried was remote in time and bore no temporal relationship to the prior homicide. Therefore, the Defendant submits that it is unconstitutional to sentence him to death for a second homicide which occurred thirteen (13) years after the previous homicide and that because of the lack of temporal relationship and the remoteness in time, this specification should have been stickened from the indictment.

<u>SIXTH ASSIGNMENT OF ERROR</u>

THE COURT ERRED IN IMPOSING THE DEATH PENALTY AS THE COURT FOUND AS AGGRAVATING FACTORS NOT LISTED IN THE OHIO REVISED CODE AND FACTORS WHICH WERE IMPROPER FOR CONSIDERATION UNDER THE OHIO REVISED CODE.

<u>Issues Presented for Review and Argument</u>

1.   Where the Court finds as aggravating circumstances four factors which are not listed in the Ohio Revised Code as aggravating circumstances, and not charged in the indictment as specifications, and considers these circumstances in imposing death, the Court errs in imposing the death penalty and the death penalty must be reversed.

[53]

Argument

Ohio Revised Code 2929.03(F) lists aggravating circumstances. When the Court or the panel of three judges imposes the sentence of death, it must state in a separate opinion specific findings as to the existence of any of the mitigating factors set forth in Division B of ORC 2929.04, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing and the reason why these circumstances outweigh the mitigating factors.

The aggravating factors are listed in ORC 2929.04. They consist of eight (8) aggravating factors. However, the Court found in it's opinion as aggravating factors the manner by which the Defendant purchased the gun, the manner by which the Defendant purchased the ammunition for the gun, the shooting of the victim, (firing at close range), the prior purposeful killing of his wife in 1970, and the committing of the present offense while on parole for murder of his wife. However, of those five aggravating factors only one, the prior purposeful killing of his wife, is listed in ORC 2929.04 as an aggravating circumstance.

Defendant thus submits to this Court that the Court of Common Pleas erred by considering as aggravating factors, factors not listed in the Ohio Revised Code as aggravating factors. In fact, the only proper aggravating factor to consider was the thirteen-year old purposeful killing of his wife.

[54]

The Court in it's opinion found also four mitigating factors: 1) the Defendant was well adjusted to prison routine during his stay and furthered his education while in prison; 2) that he had a good family relationship between the Defendant and all members of his family; 3) that since his release on parole he had maintained partial employment; and 4) that Defendant had a compulsory personality disorder or explosive disorder which may have contributed to the violence in this case.

ORC 2929.04 lists as mitigating circumstances (1) whether it is unlikely the offense would have been committed but for the fact the offender was under duress, coercion or strong provocation, which was because of a mental disorder, and (2) whether at the time of committing the offense the offender because of a mental disease or defect lacks substantial capacity to conform his conduct to the requirements of law. The Court found both of these to be present. The Court, however, decided beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances without in detail explaining why.

The Court further found as an aggravating circumstance that the killing was planned, calculated and designed by the Defendant and carried out in execution fashion. This, however, is the element of prior calculation and design, which is present in aggravated murder but is not an aggravating circumstance. The Court, therefore, considered invalid aggravating circumstances.

[55]

Therefore, Defendant-Appellant submits to this Court that the Trial Court's consideration of non-statutory, aggravating circumstances was improper and therefore his sentence of death should be reversed.

The Statutory law of Ohio is clear. The aggravating factors found by the Court were not listed as aggravating circumstances in the indictment nor are they aggravating circumstances under ORC 2929.04(A). Furthermore, the Court may only sentence after weighing and balancing those statutory, aggravating factors against any mitigating factors under ORC 2929.03. Thus, Defendant submits that his sentence must be reversed.

### SEVENTH ASSIGNMENT OF ERROR

UNDER THE PROPORTIONALITY REVIEW REQUIRED TO BE DONE BY THIS COURT, THE PENALTY IMPOSED UPON VON CLARK DAVIS IS OUT OF PROPORTION TO THE OTHER SENTENCES GIVEN FOR SIMILAR CRIMES IN THIS COUNTY.

Issues Presented for Review and Argument

1. Under ORC 2929.05, where this Court is required to consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, the penalty imposed upon Von Clark Davis is excessive.

Argument

[56]

This Court is directed to the four (4) other capital cases tried in Butler County, Ohio.

In the case of State -vs- Johnson, Johnson was alleged to have beaten to death a parapalegic while he was seated in an automobile for purposes of robbing him. Gerald Johnson received a life sentence in the penitentiary with the possibility of parole after thirty (30) years. He was allowed to plead guilty to aggravated murder and the State in return dropped the death penalty specification.

In the case of State -vs- Gill, Bradley Gill was convicted of killing an eleven (11) year old child with a knife after kidnapping her for allegedly sexual purposes. Bradley Gill received a life sentence with eligibility for parole after twenty (20) years.

In the case of State -vs- Gaither, Ernest Gaither was charged with murder during the commission of a robbery of a young woman in her apartment by tying her up and killing her with a knife. He received a life sentence with eligibility for parole in thirty (30) years.

In the case of State -vs- Pierce, the Defendant, Donald Pierce, shot the deceased in the back of the head with a firearm and then robbed him. The jury found that it was cold blooded, calculated murder with prior calculation and design, for the purpose of robbery. Pierce received life in prison with possibility of parole after thirty (30) years.

[57]

In all of these cases previously mentioned, the murder was clearly done with prior calculation and design and clearly done during the commission of another violent felony. In Von Clark Davis's case the murder he committed, without apparent motive other than perhaps a lover's quarrel, was not committed during the commission of violent felony, i.e. robbery or kidnapping. However, of these five capital cases in this County this year, only Von Clark Davis received the death penalty. While this is not an assignment of error per se, it is an argument by counsel to show the disproportionate sentence received by Defendant.

Therefore, the Defendant urges this Court to vacate the sentence imposed upon him and to find it excessive.

[58]

## CONCLUSION

In conclusion, appellant submits to this Court that his conviction for aggravated murder with the specification of a prior murder in 1970 must be reversed and remanded for a new trial or in the alternative that he be found guilty of the crime of murder and that the death penalty imposed in this case should be set aside.

Respectfully submitted,

Timothy R. Evans
Attorney for Appellant
315 S. Monument Avenue
Hamilton, OH  45011
Telephone:  868-7600

[59]

CERTIFICATE OF SERVICE

A copy of the foregoing Brief of Appellant was forwarded by ordinary U.S. mail to John F. Holcomb, Butler County Prosecutor, Courthouse, Hamilton, Ohio 45011, this 13th day of November, 1984.

_____
Timothy R. Evans

(60)

## <u>MISSING DOCUMENT</u>

Appellee's Motion for Extension of Time to File Brief

IN THE COURT OF APPEALS OF BUTLER COUNTY, OHIO

STATE OF OHIO,                          *

        Appellee,            *       Case No. Butler 84-04-071

    VS.                             *       ENTRY.

VON CLARK DAVIS,                        *

        Appellant.           *

                *   *   *   *   *

FILED in Court of Appeals
BUTLER COUNTY, OHIO
DEC 10 1984
EDWARDS ROBB, JR.
CLERK

    Upon motion of counsel for the appellee requesting fourteen
(14) additional days in which to file a brief in the above-
captioned matter, and for good cause shown, it is hereby ORDERED
that the appellee is granted fourteen (14) additional days to
file its brief to be due no later than December 22, 1984.  No
further extensions will be granted.

                        _____
                        Richard N. Koehler, Judge