IN THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

STATE OF OHIO

CASE NO. CA84-06-071

Plaintiff-Appellee

vs.

**FILED in Court of Appeals**
BUTLER COUNTY, OHIO

VON CLARK DAVIS

JAN 3 -1985

Defendant-Appellant

EDWARD S. ROBB, JR.
CLERK

BRIEF OF PLAINTIFF-APPELLEE

ATTORNEYS FOR PLAINTIFF-APPELLEE:

JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

and

DANIEL G. EICHEL
FIRST ASSISTANT PROSECUTING ATTORNEY

and

MICHAEL J. SAGE
ASSISTANT PROSECUTING ATTORNEY
Butler County Court House
P.O. Box 515
Hamilton, Ohio 45012
Telephone (513) 867-5722

ATTORNEY FOR DEFENDANT-APPELLANT:

TIMOTHY R. EVANS
HOLBROCK, JONSON, BRESSLER & HOUSER
315 South Monument Avenue
Hamilton, Ohio 45011
Telephone (513) 868-7600

## TABLE OF CONTENTS
### and AUTHORITIES

Page

STATEMENT OF THE CASE

      Procedural Posture ....................................... 1-2

      Statement of Facts ...................................... 2-5

ARGUMENT

    I. THE TRIAL COURT DID NOT ERR BY OVERRULING THE
DEFENDANT-APPELLANT'S MOTION TO DISMISS THE DEATH PENALTY
SPECIFICATION ON CONSTITUTIONAL GROUNDS.

Issues Presented for Review and Argument:

    *1. Ohio's statutory framework for imposition of capital
punishment, Ohio Revised Code Sections 2929.02 through
2929.04, as adopted by the General Assembly effective
October 19, 1981, does not violate the Sixth, Eighth and
Fourteenth Amendments to the United States Constitution or
any provision of the Ohio Constitution*...................... 6

    Authorities:

      Gregg v. Georgia (1976), 428 U.S. 153 .................. 6

      State v. Jenkins (1984), 15 Ohio St. 3d 164............. 6

      Zant v. Stephens (1983), ___ U.S. ___, 77 L. Ed 2d 235 ... 7

    *2. The standard of proof beyond a reasonable doubt as
defined in Ohio Revised Code Section 2901.06 is applicable
in a capital prosecution and is constitutional*.............. 7

    Authorities:

      State v. Cotton (1978), 56 Ohio St. 2d 8 ............... 8

      State v. Jenkins (1984), 15 Ohio St. 3d 164........... 8

      Zant v. Nabozny (1978) 54 Ohio St. 2d 195 ............. 8

    *3. The trial of aggravating circumstances in the guilt
phase of a capital trial as provided by Ohio Revised Code
Section 2929.03 does not violate any provision of the United
States or Ohio Constitution*................................ 8

- i -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 583

Table of Contents cont'd.

Page

Authorities:

Crampton v. Ohio (McGautha v. California) (1971), 402
    U.S. 183 ............................................     9
Jurek v. Texas (1976), 428 U.S. 262 ...................     8
State v. Jenkins (1984), 15 Ohio St. 3d 164.............     8

4. *The trial of issues of guilt and penalty in a bifur-*
*cated proceeding before the same trier of fact, as provided*
*by Ohio Revised Code Sections 2929.03 - .04, does not violate*
*the Sixty or Fourteenth Amendments to the United States*
*Constitution*...............................................     9
Authorities:

Luce v. United States (Dec. 10, 1984), ___U.S.___, 36
    Cr. L. Rptr. 3001 ..................................     9
State v. Jenkins (1984), 15 Ohio St. 3d 164............     9

5. *Where the accused in a capital case waives a jury*
*trial and elects to be tried by a three-judge panel pursuant*
*to Ohio Revised Code Section 2945.06, any pretrial rulings as*
*to jury selection procedures are moot and unreviewable; further,*
*Ohio Revised Code Section 2945.25(C)'s challenge for cause of*
*Witherspoon - excludable jurors in constitutional*............     10
Authorities:

DeFunis v. Odegaard (1974), 416 U.S. 312 ...............     10
Lockett v. Ohio (1978), 438 U.S. 586 ...................     11
Luce v. United States (Dec. 10, 1984), ___U.S.___, 36 Cr.
    L. Rptr. 3001 .....................................     10
State v. Jenkins (1984), 15 Ohio St. 3d 164.............     11
Witherspoon v. Illinois (1968), 391 U.S. 510 ...........     11
Ohio Revised Code Section 2945.25(C) ...................     11

6. *Ohio's statutory capital punishment procedure places*
*the burden of proof in the penalty phase of trial upon the*
*prosecution by proof beyond a reasonable doubt, and absent*
*such proof the death penalty is precluded, pursuant to Ohio*
*Revised Code Section 2929.03(D)(2)*...........................     11-12
Authorities:

Barclay v. Florida (1983), ___U.S.___, 77 L. Ed. 2d 1134.     12
Patterson v. New York (1977), 432 U.S. 197 .............     12

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 584

Table of Contents cont'd.

                                                              Page

    Proffitt v. Florida (1976), 428 U.S. 242 ..............    12
    State v. Howze (1979), 66 Ohio App. 2d 41 .............    13
    State v. Jenkins (1984), 15 Ohio St. 3d 164...........    12
    Ohio Revised Code Section 2901.05(A) ..................    13
    Ohio Revised Code Section 2929.03(0)(1) through (3) ....   12
    Ohio Revised Code Sections 2929.04(A) and (C) .........    12

    7. *Ohio's statutory capital punishment procedure permits*

*the consideration in the penalty phase, as a mitigating*

*factor of any aspect of a defendant's character or record, any*

*of the circumstances of the offense, and any other factors*

*relevant to the issue of whether the defendant should be*

*sentenced to death, pursuant to Ohio Revised Code Sections*

*2929.03 - .04*...............................................    13

    Authorities:

    Barclay v. Florida (1983), ___U.S.___, 77 L. Ed. 2d 1134.   13
    State v. Jenkins (1984), 15 Ohio St. 3d 164............    13
    Ohio Revised Code Sections 2929.04(B)(7), (C) ...........   13

    8. *The specification pursuant to Ohio Revised Code*

*Section 2929.04(A)(5) that prior to the offense at bar, the*

*offender was convicted of another offense an element of which*

*was the purposeful killing of another, is neither vague nor*

*overbroad and provides a clear, objective and principled*

*basis for distinguishing a capital case from non-capital cases.*   14

    Authorities:

    Godfrey v. Georgia (1980), 446 U.S. 420 .................   14
    Jurek v. Texas (1976), 428 U.S. 262 .....................   15
    Lockett v. Ohio (1978), 438 U.S. 586 ....................   15
    Roberts v. Louisiana (1977), 431 U.S. 633 ...............   15
    Zant v. Stephens (1983), ___U.S.___, 77 L. Ed. 2d 235 ....   15
    Ohio Revised Code Section 2929.04(A)(5) .................   14

    II. THE DEFENDANT-APPELLANT'S MOTION TO DISMISS OR INSPECT
GRAND JURY TRANSCRIPT WAS PROPERLY OVERRULED.

Issue Presented for Review and Argument:

        A defendant is not generally entitled to inspect the
grand jury proceedings; and since an indictment valid on its

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 585

Table of Contents cont'd.

Page

face is not subject to challenge on the basis of inadequate
or improper evidence before the grand jury, the motion for
inspection in this case fails to demonstrate a "particu-
larized need" for disclosure..................................   17

   Authorities:

      Costello v. United States (1956), 350 U.S. 359 .........   17-18
      Holt v. United States (1910), 218 U.S. 245 .............   17
      Lawn v. United States (1958), 355 U.S. 339 .............   17
      State v. Cooper (1977), 52 Ohio St. 2d 163 .............   19
      State v. Greer (1981), 66 Ohio St. 2d 139 ..............   18
      State v. Laskey (1970), 21 Ohio St. 2d 187 .............   18
      State v. Morris (1975), 42 Ohio St. 2d 307 ............   19
      Criminal Rule 6(B)(2) ..................................   18
      Criminal Rule 6(E) ....................................   18

   III. THE TRIAL COURT PROPERLY OVERRULED THE DEFENDANT-
APPELLANT'S MOTION TO SEVER THE TWO COUNTS OF THE INDICTMENT.

Issue Presented for Review and Argument:

   Where the offense of Aggravated Murder with Specification
of a prior conviction for a purposeful killing is properly
joined in an indictment also charging the offense of having
a weapon while under disability alleging the same prior
conviction, the trial of both offenses in a single proceeding
before a three-judge panel does not constitute error pre-
judicial to the rights of the accused......................   20

   Authorities:

      McGautha v. California (1971), 402 U.S. 183 ...........   22
      Spencer v. Texas (1967), 385 U.S. 554 .................   22
      State v. Austin (1976), 52 Ohio App. 2d 59 ............   23
      State v. Dunkins (1983), 10 Ohio App. 3d 72 ...........   21
      State v. Eubank (1979), 60 Ohio St. 2d 183 ............   23
      State v. Gordon (1971), 28 Ohio St. 2d 45 .............   22
      State v. Green (1981), 2 Ohio App. 3d 38 ..............   22
      State v. Roberts (1980), 62 Ohio St. 2d 170 ...........   21
      State v. Torres (1981), 66 Ohio St. 2d 340 ............   21
      State v. White (1968), 15 Ohio St. 2d 146 .............   23
      Ohio Revised Code Section 2929.022 ....................   22

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 586

Table of Contents cont'd.

                                                              Page

        Ohio Revised Code Section 2945.20 .....................    22
        Criminal Rule 8(A) ....................................    20
        Criminal Rule 14 ......................................    21, 22

IV. THE JUDGMENT OF CONVICTION IS NOT AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE.

<u>Issue Presented for Review and Argument:</u>

*Where there is credible evidence which supports all the*
*necessary elements of aggravated murder contrary to O.R.C.*
*2903.0l(A), a judgment of conviction will not be reversed....*    24

<u>Authorities:</u>

        State v. Bell (1976) 48 Ohio St. 2d 270 ...............    24
        State v. Cotton (1978), 56 Ohio St. 2d 8 ..............    26
        State v. Eley (1978), 56 Ohio St. 2d 169 ..............    24
        State v. Pierce (1980), 64 Ohio St. 2d 281 ............    25
        State v. Robbins (1979), 58 Ohio St. 2d 74 ............    26
        State v. Smith (1976), 49 Ohio App. 2d 388 ............    24
        State v. Wallen (1969), 21 Ohio App. 2d 27 ............    24

V. THE TRIAL COURT WAS NOT REQUIRED TO STRIKE THE
SPECIFICATION OF A PRIOR CONVICTION FOR PURPOSEFUL MURDER
FROM THE INDICTMENT.

<u>Issues Presented for Review and Argument:</u>

*1. An appellate court need not consider an assignment*
*of error which a party complaining of the trial court's*
*judgment did not call to the trial court's attention by*
*way of a defense or objection............................*    27

<u>Authorities:</u>

        State v. Driscoll (1922), 106 Ohio St. 33 .............    27
        State v. Williams (1977), 51 Ohio St. 2d 112 .........    27
        Criminal Rules 12(B)(2) and (G) ......................    27-28

*2. Ohio Revised Code Section 2929.04(A)(5), which pro-*
*vides that a prior conviction for a purposeful killing may*
*be a specified aggravating circumstance calling for the*
*imposition of the death penalty, is not limited in time as*
*to the age of the prior conviction .........................*    28

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 587

Table of contents cont'd.

Page

Authorities:

Gregg v. Georgia (1976), 428 U.S. 153 .................. 29
Rummel v. Estelle (1980), 445 U.S. 263 ................ 29
State v. George (12th Dist. April 30, 1984), Butler
  Co. No. CA83-04-034, unreported ...................... 29
Ohio Revised Code §2901.13 ............................ 30
Ohio Revised Code §2929.02 ............................ 29
Ohio Revised Code §2929.04 ............................ 28
Ohio Revised Code §2929.04(A)(5) ...................... 28
Ohio Revised Code §2945.71 - .73 ...................... 30
Ohio Revised Code §2967.13 ............................ 29
Evidence Rule 404(B) .................................. 29
Ohio Admin. Code 5120:1-1-03(A)(1) .................... 29
Packer, Making the Punishment Fit the Crime,
  77 HARV. L. REV. 1071 (1964) ........................ 28

VI. THE TRIAL COURT PROPERLY IMPOSED THE DEATH PENALTY.

Issue Presented for Review and Argument:

*Where there is present one or more constitutionally
acceptable aggravating circumstances, a court may consider
admissable evidence incorrectly designated as an aggravating
circumstance as long as a reviewing court finds that the
death penalty is adequately supported by the evidence of
the case.......................................................* 31

Authorities:

Barclay v. Florida (1983), ___ U.S.___, 77 L. Ed 2d 1134.. 33
Harris v. Pulley (9th Cir. 1982), 692 F. 2d 1189 ........ 33
State v. Jenkins (1984), 15 Ohio St. 3d 164, ........... 32
Williams v. Maggio (5th Cir. 1982), F. 2d 381 .......... 33
Zant v. Stephens (1983) ___ U.S.___, 77 L. Ed. 2d 235 .... 32
Ohio Revised Code §2929.03(D)(3) and (F) ................ 31
Ohio Revised Code §2929.05(A) .......................... 33

VII. THE DEATH SENTENCE AS TO DEFENDANT-APPELLANT IS NOT
EXCESSIVE OR DISPROPORTIONATE TO THE CRIME COMMITTED, WHICH
IS NOT SIMILAR TO ANY RECENT CASE.

Issue Presented for Review and Argument:

*The Eighth Amendment does not require comparative pro-*

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 588

Table of contents cont'd.

Page

*portionality review of a death sentence with other*
*similar cases; and to the extent that Ohio Revised*
*Code Section 2929.05(A) requires such review, there is*
*no "similar case" involving repeat murder with prior*
*calculation and design and with no substantial mitigating*
*circumstances*...............................................    36

    Authorities:

    Coker v. Georgia (1977), 433 U.S. 584 ...............    36
    Enmund v. Florida (1982), 458 U.S. 782 .............    36
    Gregg v. Georgia (1976), 428 U.S. 153 ...............    36
    Jurek v. Texas (1976), 428 U.S. 262 .................    37
    Pulley v. Harris (1984), ___ U.S.___, 79 L. Ed 2d 29,
       104 S.Ct. 871 .....................................    36-37
    Rummel v. Estelle (1980), 445 U.S. 263 .............    41
    State v. Bell (1976), 48 Ohio St. 2d 270 ............    38
    Williams v. New York (1949), 337 U.S. 241 ............    38
    Ohio Revised Code §2903.01(A) and (B) ...............    39, 41
    Ohio Revised Code §2929.04(A)(5) .....................    38
    Ohio Revised Code §2929.04(A)(7) .....................    41
    Ohio Revised Code §2929.05(A) .......................    37
    Packer, Making the Punishment Fit the Crime,
       77 HARV. L. REV. 1071 (1964) .......................    39

CONCLUSION AND PROOF OF SERVICE ...........................    43

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 589

## STATEMENT OF THE CASE

Procedural Posture:

This is an appeal from the judgment of conviction and sentence of death as to defendant-appellant Von Clark Davis for the offense of Aggravated Murder in violation of R.C. 2903.01(A) with a Specification of a prior conviction for second-degree murder under R.C. 2929.04(A)(5), a firearm specification under R.C. 2929.71, and also Having Weapon While Under Disability in violation of R.C. 2923.13(A)(2), in the Common Pleas Court of Butler County, Ohio.

Defendant-Appellant was indicted in January, 1984, for the shooting death of Suzette Butler on December 12, 1983. He was arrested by the police in Louisville, Kentucky on December 14, 1983, and was afforded a preliminary hearing on the charges in Hamilton Municipal Court on December 21, 1983. (T.d. 1)

A number of pretrial motions were heard on February 15, 1984, and with the defendant waiving his right to a speedy trial, the trial was scheduled for May 9, 1984. (T.d. 42) Additional pretrial motions were thereafter filed and overruled by the trial court, Judge Henry J. Bruewer presiding,by entry filed May 4, 1984. (T.d. 88)

On May 8, 1984, defendant-appellant in open court made a written waiver of jury trial and election to be tried by a three-judge panel under R.C. 2945.06. On May 9, 1984, trial commenced before Judges Bruewer, William R. Stitsinger and John R. Moser of the Common Pleas Court of Butler County, General Trial Division. On May 11, 1984, the

- 1 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 590

three-judge panel unanimously found the defendant-appellant guilty of Aggravated Murder with Specification of prior conviction and with Specification of a firearm, and guilty as to Having Weapon While Under Disability.

On May 29, 1984, a sentencing hearing was conducted, and the court imposed a sentence of death by electrocution as to Aggravated Murder, a term of three years actual incarceration as to the firearm specification and a term of one and one-half years as to the weapon under disability offense. (T.d. 106)

Statement of Facts:

On December 12, 1983, at approximately 7:30 p.m., the Hamilton Police Department and the Butler County Coroner responded to a shooting outside of the American Legion Hall located at 727 Central Avenue in the City of Hamilton, Butler County, Ohio. (T.p. 12 and 25) Laying approximately six feet from the front door on the pavement was the deceased body of a young black girl identified as Suzette Butler. (T.p. 25) A subsequent autopsy performed at the direction of the coroner's office revealed Suzette Butler died of multiple gunshot wounds to the head; and also revealed that she sustained four closely placed gunshot wounds to the left side of her head. (T.p. 13-17) An expert criminalist from the Bureau of Criminal Identification concluded that the four .25 caliber automatic bullets removed from the victim's head were fired from the same firearm. (T.p. 44) The same expert further concluded that four shell casings found at the scene of the shooting were all .25 auto

- 2 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 591

caliber cartridge cases of PMC brand, and that these same four casings had been chambered in the barrel of the same weapon. (T.p. 45) The expert witness also concluded that one gunshot wound to the victim in which there was stippling present was fired from a distance two to six inches from the head of Suzette Butler. (T.p. 48)

Mark Lovette and Wade Coleman testified that the afternoon of this murder, the defendant Von Clark Davis sought out Mark Lovette from Gabe's Cafe, and requested Lovette purchase a hand gun for him at Gil's Pawn Shop located in Hamilton. Lovette went to the pawn shop and purchased a Raven P25 automatic hand gun for $49.50, which he turned over to the Defendant. (T.p. 60 and 91) Lovette was dropped off at Gabe's, and subsequently the defendant came back, picked Lovette up again, and took him to a K-Mart store to purchase bullets for the firearm. (T.p.81) After the purchase of bullets Lovette was returned again to Gabe's. Subsequently, on a third occasion, that afternoon the defendant and Coleman picked Lovette up from Gabe's and again asked him to purchase more bullets on behalf of the defendant because those purchased at K-Mart did not fit the firearm. (T.p. 81) At that point, the defendant took Lovette and Coleman to Butler County Gun, a Fairfield gun store. Lovette and Coleman entered the store with a gun clip for a P25 Raven automatic, and the clerk sold one box of PMC brand .25 automatic bullets. (T.p. 89 and 96) In the presence of both Lovette and Coleman, the defendant loaded the newly purchased .25 caliber Raven automatic with four or five PMC brand bullets purchased only a couple hours before the death of Suzette Butler. (T.p. 84)

- 3 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 592

At approximately 5:30 p.m., Mona Aldridge, a close friend of the victim, and the victim arrived together at the American Legion at which Suzette Butler was murdered. Ms. Butler left the American Legion for a period of time to drop off her daughter, and subsequently returned alone. Five minutes later, the defendant also arrived. (T.p. 106) After a conversation between the defendant and victim at a table inside the bar, they both walked outside the door. Suzette Butler told Ms. Aldridge she would be right back, and left her jacket, drink and cigarettes on the table where she was sitting. (T.p. 108) A short time afterwards, Ms. Aldridge became concerned and went to the outside door to check on her friend. Upon opening the door she observed the defendant pointing a gun at the head of the victim. (T.p. 108)

Ms. Aldridge immediately turned back to look for help, and someone came in the door behind her and said someone was shot. (T.p. 109)

Cozette Massey and Reginald Denmark both testified that on the night of Suzette Butler's murder they were walking down Central Avenue toward the American Legion Hall when they observed the defendant, Von Clark Davis, shoot Suzette Butler several times in the head. Both witnesses identified in court the defendant as the person who shot the victim, and both testified that the defendant, after firing several shots, bent over the body of the victim and fired the last shot into the head of the victim at point blank range. (T.p. 136-138, 168) Both witnesses testified that after the shooting, the defendant crossed the street, got into an automobile which was identified as belonging to the defendant and drove away. (T.p. 31, 138, 170) Both parties indicated that the

- 4 -

time of shooting was between 7:15 and 7:30 p.m. (T.p. 136, 166)

It was stipulated between all parties that the defendant, Von Clark Davis, was previously convicted in 1971 in Butler County Case No. 21655 of Second Degree Murder, an element of which is the purposeful killing of another, and in Butler County Case No. 20938 of Shooting with Intent to Wound in 1970. At the time the defendant murdered Suzette Butler, he was on parole for the murder of his wife in 1970.

Thereafter, the three judge panel found the defendant guilty of aggravated murder and guilty of all specifications charged in the Indictment, including the specification of previously having been found guilty of a purposeful killing of another. The defendant was also found guilty of having a gun while under a disability.

A mitigation hearing was held two days later. After long and careful consideration, the defendant, Von Clark Davis, was sentenced to death in the electric chair.

- 5 -

ARGUMENT

    I. THE TRIAL COURT DID NOT ERR BY OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO DISMISS THE DEATH PENALTY SPECIFICATION ON CONSTI-TUTIONAL GROUNDS.

Issues Presented for Review and Argument:

    *1. Ohio's statutory framework for imposition of capital punishment, Ohio Revised Code Sections 2929.02 through 2929.04, as adopted by the General Assembly effective October 19, 1981, does not violate the Sixth, Eighth and Fourteenth Amendments to the United States Constitution or any provision of the Ohio Constitution.*

    In State v. Jenkins (1984), 15 Ohio St. 3d 164, ___ NE 2d ___, the Ohio Supreme Court thoroughly discussed and rejected all general claims that the Ohio death penalty scheme was unconstitutional on its face in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution or Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

    Appellant's first issue herein challenging the imposition of capital punishment as failing to be the "least restrictive means" to achieve the societal interest of deterrence and incapacitation, (i.e., life imprisonment), was rejected in Jenkins, id. at pages 167-168, for the reasons established in Gregg v. Georgia (1976), 428 U.S. 153; appellant's argument is predicated solely on societal protection, while the Supreme Court has recognized that the death penalty, as a sanction or punishment from the aspect of societal retribution, is proper in extreme cases. Gregg, id. at 184; Jenkins, id. at 168.

- 6 -

Appellant's second issue under his first assignment of error attacks capital punishment in any case as cruel and unusual punishment. The Court in Jenkins, id. at pages *168-169*, rejected that argument on the basis of Gregg v. Georgia, supra, and its companion cases.

Appellant's third issue complains of the death penalty in general as a denial of equal protection of the laws, claiming that it is inevitably administered and applied in an arbitrary and capricious fashion. The courts in both Jenkins, id. at *169-170*, Gregg, id. at 226, recognized that this argument represents an indictment of our entire criminal justice system which must be constitutionally rejected.

Under Ohio Revised Code Sections 2903.01 and 2929.02-.05, the discretion of the sentencing authority is "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action" in imposing the sentence. See Zant v. Stephens (1983), ___ U.S. ___, 77 L. Ed 2d 235, at 248. The inevitable degree of discretion exercised by prosecutors in the charging process, as viewed by the Court, does not cause the system to be standardless any more than decisions which are made by juries; further, the Court found it unlikely that prosecutors would fail to prosecute, as capital cases, those cases which are truly "similar" in relevant respects. Gregg, id. at 225, quoted in State v. Jenkins, id at *170.*

   *2. The standard of proof beyond a reasonable doubt as defined in Ohio Revised Code Section 2901.05 is applicable in a capital prosecution and is constitutional.*

- 7 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 596

In the fourth issue briefed by appellant under his first assignment of error, he contends that Ohio's definition of reasonable doubt as provided in R.C. 2901.05 is "constitutionally unfirm [sic]."

Similar arguments attacking the statutory definition of reasonable doubt have been rejected by the Ohio Supreme Court in two cases decided under the 1974 law: State v. Cotton (1978), 56 Ohio St. 2d 8, 13, 381 NE 2d 190 at 194, and State v. Nabozny (1978), 54 Ohio St. 2d 195, 202-203, 375 NE 2d 784, 790-791. Appellant's argument that a "proof beyond all doubt" standard should apply to capital prosecutions was recently rejected by the Ohio Supreme Court in State v. Jenkins (1984), 15 Ohio St. 3d *164*, ___ NE 2d ___, paragraph eight of syllabus.

*3. The trial of aggravating circumstances in the guilt phase of a capital trial as provided by Ohio Revised Code Section 2929.03 does not violate any provision of the United States or Ohio Constitution.*

In his fifth issue under this first assignment of error, appellant maintains that by requiring proof of aggravating circumstances at the guilt phase of trial, he is deprived of an impartial jury on the issue of his guilt. However, this identical argument was rejected by the Ohio Supreme Court in State v. Jenkins (1984), 15 Ohio St. 3d *164*, at pages *173-174*, where the court reasoned that Ohio's system is akin to the Texas procedure which was upheld in Jurek v. Texas (1976), 428 U.S. 262, which differs from the Georgia and Florida procedures in requiring consideration at the guilt phase whether the crime falls into a particular category justifying capital punishment. The court was unconcerned whether the aggravating circumstances are proven at the guilt or penalty phase, as

- 8 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 597

long as factors in mitigation are considered at the penalty phase. <u>Jurek</u>, <u>id</u>. at 271.

Further, the Ohio Supreme Court noted that although the U.S. Supreme Court has endorsed bifurcated proceedings in capital cases, the Court has yet to suggest a constitutional requirement of bifurcation. <u>Jenkins</u>, <u>id</u>. at *174*, n. 11. In the last decision to deal with this issue, the U.S. Supreme Court held in <u>Crampton v. Ohio</u>, <u>sub</u> <u>nom</u>. <u>McGautha v. California</u> (1971), 402 U.S. 183, 208-213, that bifurcation was not constitutionally mandated.

*4. The trial of issues of guilt and penalty in a bifurcated proceeding before the same trier of fact, as provided by Ohio Revised Code Sections 2929.03-.04, does not violate the Sixth or Fourteenth Amendments to the United States Constitution or any provision of the Ohio Constitution.*

The Ohio Supreme Court in <u>State v. Jenkins</u>, <u>id</u>. at pages *173-174* , n. 11, rejected appellant's sixth argument under this assignment of error which complains that the single-jury procedure in these bifurcated proceedings deprives a defendant of an impartial jury and fair trial at the sentencing stage.

In the case at bar, it is first to be noted that appellant waived a jury trial and was tried by a three-judge panel; the Sixth Amendment jury trial implications are thus not reviewable herein. <u>See</u> <u>Luce v. United States</u> (Dec. 10, 1984), ___U.S. ___, 36 Cr. L. Rptr. 3001. Further, the notion that two juries are constitutionally mandated for the bifurcated proceedings has never even remotely been suggested in the Supreme Court's prior decisions, <u>Jenkins</u>, <u>id</u>. at *174*, n. 11. Last, the appellant's

- 9 -

suggestion that he has a "right" to present irreconcilable and inconsistent defenses does not seem to be truly compatible with the concept of "fair trial" embodied in the Due Process Clause of the Fourteenth Amendment. This argument fails particularly in light of Section 2929.03(D)(2), which explicitly requires "consideration of the relevant evidence raised at trial" in the sentencing deliberation process.

   *5. Where the accused in a capital case waives a jury trial and elects to be tried by a three-judge panel pursuant to Ohio Revised Code Section 2945.06, any pretrial rulings as to jury selection procedures are moot and unreviewable; further, Ohio Revised Code Section 2945.25(C)'s challenge for cause of Witherspoon - excludable jurors is constitutional.*

   Appellant's issue as to the so-called "death qualification" of prospective jurors in capital cases (briefed as his seventh argument under the first assignment of error) is not reviewable in this case, because appellant was tried by a three-judge panel rather than a jury. The trial court's ruling on a motion in limine regarding this issue became moot when appellant waived a jury trial. See Luce v. United States (Dec. 10, 1984), ___U.S.___, 36 Cr. L. Rptr. 3001, (holding that a district court's in limine ruling permitting impeachment by a prior conviction is not reviewable where a defendant did not testify at trial; the reviewing court is not required to speculate as to the defendant's motivation not to testify.) Courts are without power to decide questions that cannot affect the litigants before them. See DeFunis v. Odegaard(1974), 416 U.S. 312, 316.

   Appellant's argument as to jury selection is otherwise not well

- 10 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 599

taken on the merits. In <u>State v. Jenkins</u> (1984), 15 Ohio St. 3d *164*,

___NE 2d ___, the Ohio Supreme Court held in paragraph two of the

syllabus:

> To death-qualify a jury prior to the guilt phase
> of a bifurcated capital prosecution does not deny
> a capital defendant a trial by an impartial jury.

The Court reasoned that the decision in <u>Witherspoon v. Illinois</u> (1968),

391 U.S. 510, expressly permits the exclusion for cause of jurors who

make it unmistakably clear (1) that they would automatically vote against

the imposition of capital punishment without regard to any evidence, or

(2) that their attitude toward the death penalty would prevent them from

making an impartial decision as to the defendant's guilt. <u>Id</u>. at 522-

523, n. 21. Thus, the Court reasoned that jurors subject to challenge

under <u>Witherspoon</u> because they refuse to follow the law not only renders

a jury impartial for the penalty phase but also for the guilt phase of

trial as well.

The Ohio statute providing for challenge for cause of such jurors,

Ohio Revised Code Section 2945.25(C), was upheld in <u>Lockett v. Ohio</u> (1978),

438 U.S. 586, 595-597, part II-B of the opinion; in <u>Lockett</u>, the Court

noted that there is nothing in its prior decisions which suggests that

a capital defendant has a "right to be tried by jurors who have explicitly

indicated an inability to follow the law and instructions of the trial

judge." 438 U.S. at 596-597.

> *6. Ohio's statutory capital punishment procedure places the*
> *burden of proof in the penalty phase of trial upon the prosecution by*
> *proof beyond a reasonable doubt, and absent such proof the death penalty*

- 11 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 600

*is precluded, pursuant to Ohio Revised Code Section 2929.03(D)(2).*

Although appellant claims in his eighth argument herein that Ohio's death penalty scheme does not identify who bears the burden of proof or define what standard of proof is borne, the Court in State v. Jenkins, id. at pages *171-173* , ruled that an examination of the pertinent statutory provisions demonstrates that the statute does indeed provide the direction that appellant claims is lacking.

First, the concept of weighing aggravating circumstances proved beyond a reasonable doubt against any existing mitigating factors was approved in Proffitt v. Florida (1976), 428 U.S. 242, and its validity continues today. See Barclay v. Florida (1983), ___ U.S. ___, 77 L. Ed 2d 1134. The Ohio procedure first requires proof of one or more aggravating circumstances at the guilt phase by proof beyond a reasonable doubt, and the burden is on the prosecution, R.C. 2929.04(A). Next, in the penalty phase, the burden of proof is again on the prosecution, by proof beyond a reasonable doubt, that the aggravating circumstances outweigh any mitigating factors present in the case, see R.C. 2929.03(D)(2) and (3). The defendant is given great latitude in the presentation of evidence of any factors relevant to mitigation, see R.C. 2929.04(C). This statute clearly imposes the risk of non-persuasion upon the prosecution in both guilt and penalty phases, and by an articulable standard.

Appellant's argument (without citation to legal authority) that the state should be constitutionally required to prove the absence of mitigating factors was rejected in State v. Jenkins, id. at *171*. The

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 601

Court reasoned that the statute explicitly places the burden of going
forward with evidence of any factors in mitigation of the death penalty,
see R.C. 2929.03(D)(1), and the Court further held that the defendant
bears a burden of proving mitigating factors by a preponderance of the
evidence. Jenkins, id. at page /7/. This is no different from the rule
regarding affirmative defenses, see R.C. 2901.05(A), which has been held
not to violate the defendant's constitutional rights, see State v. Howze
(1979), 66 Ohio App. 2d 41, 420 NE 2d 131, and Patterson v. New York
(1977), 432 U.S. 197.

    *7. Ohio's statutory capital punishment procedure permits the
consideration in the penalty phase, as a mitigating factor of any aspect
of a defendant's character or record, any of the circumstances of the
offense, and any other factors relevant to the issue of whether the
defendant should be sentenced to death, pursuant to Ohio Revised Code
Sections 2929.03 - .04.*

    The ninth argument of appellant herein maintains that Ohio's death
penalty scheme is flawed by failing to afford the sentencing authority
the option to impose a sentence of life imprisonment, (i.e., grant mercy),
regardless of whether aggravating circumstances outweigh factors in
mitigation of the death penalty. As noted by the Court in State v.
Jenkins, id. at page /78, this argument seizes upon the language of
Justice Stevens' concurring opinion in Barclay v. Florida, supra, at
1153. However, the Ohio Supreme Court in Jenkins noted that Ohio's
system presently coincides with Justice Stevens' alternative scheme, to
require the sentencing authority to consider and weigh "any other factors
relevant" in mitigation, under R.C. 2929.04(B)(7) and (C), by which the

- 13 -

defendant is given great latitude.

Thus, State v. Jenkins, id. at pages 178-179, rejects this argument.

8. *The specification pursuant to Ohio Revised Code Section 2929.04(A)(5) that prior to the offense at bar, the offender was convicted of another offense an element of which was the purposeful killing of another, is neither vague nor overbroad and provides a clear, objective and principled basis for distinguishing a capital case from non-capital cases.*

The tenth and final issue presented under this first assignment of error claims that the Ohio scheme does not adequately channel the sentencing authority's discretion by clear and objective standards, citing the decision in Godfrey v. Georgia (1980), 446 U.S. 420. In Godfrey, the Supreme Court held that Georgia's statutory aggravating circumstance that a murder was "outrageously or wantonly vile, horrible or inhuman" was unconstitutionally vague. The plurality decision concluded that almost every murder would be capable of such characterization by a person of ordinary sensibility, and thus failed to provide a principled way to distinguish a case in which the death penalty is imposed from the many cases in which it is not. Id. at 433.

Unlike the situation in Godfrey, the "repeat murder" specification under R.C. 2929.04(A)(5) in the case at bar is defined in clear, specific, objective terms. Proof of this aggravating circumstance requires: (1) a prior offense; (2) a prior conviction (and thus proof beyond a reasonable doubt in the past); (3) the prior killing of another (in an unrelated homicide); and (4) the prior killing must have been purposeful, as an essential element of the offense. This specification leaves nothing to guesswork.

- 14 -

Under Ohio's repeat murder specification, the sentencing authority's discretion is "suitably directed and limited as to minimize the risk of wholly arbitrary and capricious action" in imposing the sentence. Zant v. Stephens (1983), ___ U.S. ___, 77 L. Ed. 2d 235 at 248.  It meets the necessity of "genuinely narrow[ing] the class of persons eligible for the death penalty," id. at 249, while requiring "objective consideration of the particularized circumstances of the individual offense and the individual offender," Jurek v. Texas, supra at 273-274.

On three occasions since Gregg, the Court has expressly reserved as an open question whether a state may provide for a mandatory death sentence upon proof of certain categories of capital murder such as murder by a prisoner or escapee serving a life sentence or murder by a person previously convicted of an unrelated murder.  See Roberts (Stanislaus)v. Louisiana (1976), 428 U.S. 325, 334 n. 9: Roberts (Harry) v. Louisiana (1977), 431 U.S. 633, 635 n. 2; and Lockett v. Ohio (1978), 438 U.S. 586, 604 n. 11.  The Roberts cases explained in a footnote that mandatory death sentences may be permissible in these categories, because the capital crime itself in these instances is defined in significant part in terms of the character or record of the individual offender.  In the Lockett decision, while striking down Ohio's former death penalty scheme on grounds that it lacked sufficient consideration of mitigating factors, the Court opined that the "rarest kind of case" (such as the case at bar) may justify a mandatory death sentence on the ground of deterrence.

- 15 -

Thus, if it is arguable that a <u>mandatory</u> death sentence is justi-
fiable for this category of capital murder, then the Ohio procedure,
reformed in the wake of <u>Lockett v. Ohio</u> to require full consideration
of any relevant mitigating factors in all categories of capital murder,
will certainly pass constitutional muster.

Defendant-Appellant's First Assignment of Error should be overruled
in all its particulars.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 605

## II. THE DEFENDANT-APPELLANT'S MOTION TO DISMISS OR INSPECT GRAND JURY TRANSCRIPT WAS PROPERLY OVERRULED.

### Issue Presented for Review and Argument:

> *A defendant is not generally entitled to inspect the grand jury proceedings; and since an indictment valid on its face is not subject to challenge on the basis of inadequate or improper evidence before the grand jury, the motion for inspection in this case fails to demonstrate a "particularized need" for disclosure.*

It is well-settled that "the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." United States v. Calandra (1974), 414 U.S. 338, 344-345, (holding that the exclusionary rule on illegally obtained evidence is not applicable to grand jury proceedings). See also Costello v. United States (1956), 350 U.S. 359 (holding that an indictment is not subject to challenge on the ground that hearsay evidence was presented to the grand jury); Holt v. United States (1910), 218 U.S. 245 (denying the right to challenge an indictment on the ground that evidence before the grand jury was insufficient); and Lawn v. United States (1958), 355 U.S. 339, 348-350.

The Supreme Court reasoned in the Costello decision:

> [I]n this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor. . . .
>
> . . . . If indictments were to be held open to challenge on the ground that there was inadequate

- 17 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 606

> or incompetent evidence before the grand jury,
> the resulting delay would be great indeed. The
> result of such a rule would be that before trial
> on the merits a defendant could always insist on
> a kind of preliminary trial to determine the
> competency and adequacy of the evidence before
> the grand jury. This is not required by the
> Fifth Amendment. . . .
>
> . . . No. persuasive reasons are advanced for
> establishing such a rule. It would run counter
> to the whole history of the grand jury institution,
> in which laymen conduct their inquiries unfettered
> by technical rules. Neither justice nor the concept
> of a fair trial requires such a change.

350 U.S. at pages 362-364.

Thus, the underlying assumption made by appellant herein is faulty;
he has no basis to challenge the indictment, and therefore no legitimate
reason for inspection of the grand jury proceedings.

A defendant is not generally entitled to inspect the grand jury
proceedings. State v. Laskey (1970), 21 Ohio St. 2d 187, 191, 257 NE 2d
65. Only upon a showing of "particularized need" for pretrial inspection
may the trial court permit such inspection. Ohio has held that disclosure
of grand jury testimony, other than that of a defendant or codefendant
under Criminal Rule 16(B) discovery provisions, is not required but is
strictly controlled under Criminal Rule 6(E), and the release of any such
testimony for use prior to or during trial is within the discretion of
the trial court. State v. Greer (1981), 66 Ohio St. 2d 139, 420 NE 2d
982, syllabus paragraph one. Grand jury proceedings are secret, and an
accused is not entitled to inspection except upon a showing by the
defense that a particularized need for disclosure exists which outweighs

- 18 -

the need for secrecy. Id., syllabus paragraph two.

A mere statement that the grand jury transcript may be "material to the defense," or an allegation of "possible defects" in proceedings before the grand jury, is not sufficient for a defendant to obtain the grand jury minutes; unless an accused presents specific reasons for suspecting errors in the grand jury proceedings, and thus demonstrates a particularized need, his motion should be denied. State v. Cooper (1977), 52 Ohio St. 2d 163, 370 NE 2d 725; State v. Morris (1975), 42 Ohio St. 2d 307, 329 NE 2d 85.

The only such grounds for a motion to dismiss the indictment are set forth in Criminal Rule 6(B)(2), being objections to the array or lack of legal qualification of an individual juror. Neither are alleged in appellant's pretrial motion, and as set forth above, appellant's motion to dismiss on the grounds of hearsay, illegally obtained evidence or lack of sufficient evidence at the grand jury was not well taken as a matter of law. United States v. Calandra, supra, and Costello v. United States, supra. Appellant's second assignment of error is therefore not well taken and should be overruled.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 608

III. THE TRIAL COURT PROPERLY OVERRULED THE DEFENDANT-APPELLANT'S
MOTION TO SEVER THE TWO COUNTS OF THE INDICTMENT.

Issue Presented for Review and Argument:

> *Where the offense of Aggravated Murder
> with specification of a prior conviction for a pur-
> poseful killing is properly joined in an indict-
> ment also charging the offense of having a weapon
> while under disability alleging the same prior
> conviction, the trial of both offenses in a single
> proceeding before a three-judge panel does not
> constitute error prejudicial to the rights of the
> accused.*

The joinder of Counts One and Two of this Indictment is proper under
Criminal Rule 8(A), which permits the joinder of offenses based on the
same occurrence or series of events connected together. Criminal Rule
8(A) provides in pertinent part:

> Two or more offenses may be charged in the same
> indictment . . . in a separate count for each
> offense if the offenses charged . . . are based
> on the same act or transaction, or are based on
> two or more acts or transactions connected
> together or constituting parts of a common
> scheme or plan, or are part of a course of criminal
> conduct.

In the case at bar, the defendant's acts of acquiring, having and
using a firearm constituted the evidence which would prove the purposeful
murder with prior calculation and design, as well as constituting the
elements of the weapons offense. Likewise, the prior conviction for
second-degree murder in 1971 was the proof necessary to sustain the
specification to count one, as well as being the element of "disability"
in count two. Thus, the two offenses were interrelated and overlapping
with respect to the evidence.

- 20 -

Where there is an original joinder of two counts in one indictment, a defendant must bear the burden of affirmatively showing prejudice and abuse of discretion when claiming under Criminal Rule 14 that separate trials of multiple charges should be allowed. State v. Roberts (1980), 62 Ohio St. 2d 170, 175, 405 NE 2d 247; State v. Torres (1981), 66 Ohio St. 2d 340, 421 NE 2d 1288, syllabus. The trial court has discretion in ruling on a motion to sever counts; joinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and mini-mizing the possibility of incongruous results in successive trials before different juries. State v. Torres, id.

In State v. Dunkins (1983), 10 Ohio App. 3d 72, 460 NE 2d 688, the Court of Appeals of Summit County decided that a joinder of the offenses of aggravated burglary, carrying a concealed weapon, and having a weapon while under disability was proper, a situation similar to the case at bar. The reasoning of the Dunkins case applies in the present case as well. First, the evidence of the defendant's prior convictions relevant to his disability was simple and direct; in the guilt phase of trial herein, this evidence was concise and indeed was stipulated, (T.pp. 207-209), without any elaboration as to the details. Second, the policy consideration of promoting judicial economy is more compelling where, as here, all the charges are based on the same set of facts and joinder will avoid duplication. Dunkins, id. at 73.

Additionally, it has been settled that repeat offender statutes,

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 610

which make proof of a prior conviction an element of the current offenses, do not operate to deny an accused a fair trial and have been held consti- tutional. State v. Green (1981), 2 Ohio App. 3d 38, 440 NE 2d 615; see Spencer v. Texas (1967), 385 U.S. 554 at pages 565-566 (holding that the Due Process Clause did not prevent a state from enacting such a scheme for dealing with habitual offenders or from admitting evidence of prior convictions during the trial). The trial court is thus required to receive evidence of the prior conviction and to weigh the same in deter- mining guilt and enhancing punishment. State v. Gordon (1971), 28 Ohio St. 2d 45, 276 NE 2d 243.

In capital cases, while Criminal Rule 14 and R.C. Section 2945.20 make provision for automatic severance of jointly indicted defendants, there is no such rule requiring severance of capital and non-capital counts against the same defendant. Further, the bifurcation of trial procedure is not a constitutional requirement, see McGautha v. California (1971), 402 U.S. 183.

In the case at bar, R.C. Section 2929.022 was invoked by defendant when his case was scheduled for a jury trial, with the filing on April 27, 1984, of his election to have his prior-conviction specification "tried by the Trial Judge as opposed to the Trial Jury [sic]". (T.d. 58). On May 4, 1984, the Court accepted this election on the record. (T.d. 89) However, the defendant subsequently altered the trial procedure on May 8, 1984, by waiving a jury trial and electing to be tried by a three-judge panel. (T.d. 90) He did not thereafter make any election regarding the determination of the specification by the three-judge panel. In the

- 22 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 611

absence of such an election, Revised Code Section 2929.022(A)(1) speci-
fically provides for a single-stage trial as in any other case of
aggravated murder with specifications.

Finally, since the case at bar was tried before a three-judge court
rather than a jury trial, it is presumed that the judges based their
verdict on only the relevant, material and competent evidence. State v.
White (1968), 15 Ohio St. 2d 146, 151, 239 NE 2d 65; see also State v.
Eubank (1979), 60 Ohio St. 2d 183, 398 NE 2d 567, and State v. Austin
(1976), 52 Ohio App. 2d 59, 368 NE 2d 59. Thus, the defendant-appellant
was not prejudiced before the three-judge court under the facts of this
case.

- 23 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 612

IV. THE JUDGMENT OF CONVICTION IS NOT AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

Issue Presented for Review and Argument:

> Where there is credible evidence which
> supports all the necessary elements of aggravated
> murder contrary to O.R.C. 2903.01(A), a judgment
> of conviction will not be reversed.

"[I]n reviewing the legal sufficiency of the evidence to support a
jury verdict, it is the minds of the jurors rather than a reviewing court
which must be convinced." State v. Thomas (1982), 70 Ohio St. 2d 79 at 80,
434 NE 2d 1356 at 1357. The Supreme Court has also held in State v. Eley
(1978), 56 Ohio St. 2d 169, 383 NE 2d 132, syllabus by the Court:

> A reviewing court will not reverse a jury
> verdict where there is substantial evidence upon
> which a jury could reasonably conclude that all
> the elements of an offense had been proven beyond
> a reasonable doubt.

The rule is no different when the trier of fact is a three judge
panel rather than a jury. State v. Smith (1976), 49 Ohio App. 2d 388, 393,
361 NE 2d 267, and State v. Wallen (1969), 21 Ohio App. 2d 27, 34, 254
NE 2d 716. A panel of judges is not required to accept appellant's version
of the murder, see State v. Bell (1976), 48 Ohio St. 2d 270, 279, 358 NE2d
556, 563, judgment vacated as to death penalty (1978), 438 U.S. 637. As
the trier of fact, it was within the province of the panel to determine
which was the credible evidence. State v. Bell, id.

In the case at hand, there was ample credible evidence presented by
the state from which reasonable minds could find that the appellant
intentionally shot and killed Suzette Butler with prior calculation and
design.

- 24 -

Only a matter of hours before the appellant shot the victim four times in the head at point blank range, he engaged in a complicated and reasoned plan to covertly obtain a handgun and bullets which were used to kill Suzette Butler. Davis went to a bar, and paid an individual whom he did not know to purchase an inexpensive handgun in that individual's name. Davis then used that same individual to covertly purchase bullets for the gun at locations other than where he purchased the gun. After the individual bought the wrong ammunition, Davis continued to use this individual to successfully find ammunition which fit the gun. After having found the correct bullets, the Appellant then loaded that ammunition into the gun and concealed the weapon. (T.p. 58-86)

After successfully and covertly obtaining this handgun, the appellant then went to the American Legion arriving shortly after the victim did. He engaged the victim in quiet conversation, and successfully talked her into leaving the crowded bar. (T.p. 103-110) He then shot her four times in the head at point blank range. To ensure the victim was dead, Davis bent over Suzette's Butler's body, placed the gun to her head and fired the last shot. He then calmly got into his car, which happened to be across the street, and made good his escape.

A very significant similar case is State v. Pierce (1980), 64 Ohio St. 2d 281, 414 NE 2d 1038, which also involved a defendant who repeatedly fired a weapon at his victim, killing him. The Court in Pierce approved the following statement of the law:

> No definite period of time must elapse and no
> particular amount of consideration must be given

- 25 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 614

> to the prior calculation and design to kill.
> Acting on the spur of the moment or after momentary
> consideration of the purpose to kill is not sufficient
> . . . However neither the degree of care nor the
> length of time the offender takes to ponder the crime
> beforehand are critical factors in themselves. . . ."
> (Id. at 287.)

Upon consideration of Davis's actions on December 12, 1983, to covertly purchase the weapon used, the evidence established far more than a "spur of the moment" killing. Rather, the actions of appellant, as adduced, show that appellant used extreme aggression against a help-less victim in a scheme design to implement a calculated decision to kill. State v. Robbins (1979), 58 Ohio St. 2d 74, 78-79, 388 NE 2d 755, upholds a finding of "prior calculation and design" where such violence was used against a drunken victim. Here, as in Robbins, the facts do not speak of a "heated brawl" or "spur of the moment" killing, but of appellant's holding the victim's life in cheap regard. Robbins, id. at 79. See also State v. Cotton (1978), 56 Ohio St. 2d 8, 381 NE 2d 190, where, as here, the defendant's repeated shooting of the victim to inflict a fatal wound was a sufficient circumstance to constitute prior calculation and design.

- 26 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 615

V. THE TRIAL COURT WAS NOT REQUIRED TO STRIKE THE SPECIFICATION
OF A PRIOR CONVICTION FOR PURPOSEFUL MURDER FROM THE INDICTMENT.

Issues Presented for Review and Argument:

> *1. An appellate court need not consider an assignment*
> *of error which a party complaining of the trial court's*
> *judgment did not call to the trial court's attention*
> *by way of a defense or objection.*

For the first time in these proceedings, defendant-appellant now
raises in his fifth assignment of error a complaint that the Specification
of Davis's 1971 second-degree murder conviction should have been stricken
from the Indictment. However, this court need not address this propo-
sition of law, since the appellant failed to object in the trial court
regarding this issue.

The Ohio Supreme Court has consistently held that an appellate
court need not consider an error which a party complaining of the trial
court's judgment could have called, but did not call, to the trial
court's attention at a time when such error could have been avoided or
corrected by the trial court. State v. Williams (1977), 51 Ohio St. 2d
112, 364 NE 2d 1364, paragraph one of syllabus. Any other rule would
relieve counsel from any duty or responsibility to the court and place
the entire responsibility upon the trial court to be faultless, see
State v. Driscoll (1922), 106 Ohio St. 33 at 39, 138 NE 376 at 378. The
appellant's attempt to color the issue as a constitutional question
doe not change the rule's application; State v. Williams, id. at 117.

If the Specification were improper, this defense or objection to the
Indictment should have been raised prior to trial, Criminal Rule 12(B)(2),

- 27 -

and the failure to do so constitutes a waiver under Criminal Rule 12(G).

> 2. *Ohio Revised Code Section 2929.04(A)(5),*
> *which provides that a prior conviction for a*
> *purposeful killing may be a specified aggravating*
> *circumstance calling for the imposition of the*
> *death penalty, is not limited in time as to the*
> *age of the prior conviction.*

The Ohio General Assembly enacted its death penalty scheme in 1974,

reenacted in 1981, to set forth specific instances in which the imposition

of the death penalty is deemed to be appropriate for aggravated murder.

One of these classes is the situation at bar, which the legislature itself

has referred to as "repeat murder," see Committee Comments following

Section 2929.04. This aggravating circumstance recognizes the special

danger demonstrated by an individual who purposely and repeatedly disre-

gards the safety, personal integrity and human worth of others:

> There is a widely held view that those who
> present the strongest case for severe measures of
> incapacitation are not murderers as a group (their
> offenses often are situational) but rather those
> who have repeatedly engaged in violent combative
> behavior. A well-demonstrated propensity for life-
> endangering behavior is thought to provide a more
> solid basis for infliction of the most severe
> measures of incapacitation than does the fortuity
> of a single homicidal incident.

Packer, Making the Punishment Fit the Crime, 77 HARV. L. REV. 1071, 1080

(1964), (emphasis added).

Since the provisions of Section 2929.04(A)(5) strictly require a

prior conviction for "an offense an essential element of which was the

purposeful killing . . . of another, " (i.e. aggravated murder or murder,

or their equivalents), it necessarily follows that the offender was

- 28 -

sentenced to a lengthly incarceration for the prior offense. Under current Ohio law, aggravated murder calls for a minimum punishment of life imprisonment, and murder calls for a sentence of 15 years to life, see Revised Code Section 2929.02. Parole eligibility occurs at the earliest for aggravated murder only after 15 full years, see Revised Code Section 2967.13(B) through (E), and for murder, parole is available only after 9 years and 6 months are served, see Ohio Admin. Code 5120:1-1-03(A)(1).

Given these terms of actual incarceration to be served on a prior conviction, it is clear that any parolee who commits a repeat murder will necessarily have a prior conviction which occurred about ten years or more prior to the second killing. Therefore, to adopt appellant's "remoteness" argument would effectively nullify the General Assembly's intent to identify and punish repeat murders committed by paroled offenders. However, the courts owe deference to the decisions of state legislatures, particularly where the specification of punishments is concerned, for these are peculiarly questions of legislative policy, see Gregg v. Georgia (1976), 428 U.S. 153, 174-176; see also Rummel v. Estelle (1980), 445 U.S. 263, 284.

The only case cited by appellant, State v. George (12th Dist. April 30, 1984), Butler Co. No. CA83-04-034, unreported, is inapplicable to the present case. George concerned the admissibility of "other-acts" evidence under common law principles, codified in Revised Code 2945.59 and Evidence Rule 404(B), introduced by the state for the purpose of

- 29 -

proving identity.  The George case simply held that the "other acts" evidence was not relevant to the issue of identity, because the time span of 14 years between the prior act and the act constituting the current offense did not lead to the conclusion that the perpetrator is the same in each one.  However, in the case at bar, unlike George, the prior conviction was not utilized as proof of identity, but rather its use was clearly limited by the prosecutor and trial court to the specification as a penalty-enhancement factor.

It is quite apparent that Revised Code 2929.04(A)(5) contains no time limitation as to the prior conviction. This is significant, since the General Assembly has elsewhere provided time restrictions as to the prosecution of offenses.  (See, e.g., statute of limitations for certain offenses, Revised Code Section 2901.13, and speedy trial provisions, Revised Code Sections 2945.71-.73.)  If a similar restriction were intended here, it is logical to assume that the statute would so provide. It is also notable that Revised Code Section 2901.13 provides that there is no statute of limitations as to aggravated murder or murder.

Without any constitutional or statutory reason for declaring the Specification invalid herein, this court must defer to the judgment of the legislature and refrain from judicial re-writing of the statute. This assignment of error should be overruled.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 619

VI. THE TRIAL COURT PROPERLY IMPOSED THE DEATH PENALTY.

Issue Presented for Review and Argument:

*Where there is present one or more constitutionally acceptable aggravating circumstances, a court may consider otherwise admissable evidence incorrectly designated as an aggravating circumstance as long as a reviewing court finds that the death penalty is adequately supported by the evidence of the case.*

Revised Code Section 2929.03(D)(3) states:

Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section . . . if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender . . . (Emphasis added.)

In the case at bar, the three judge panel, in its written opinion, pursuant to R.C. 2929.03(F), listed both the aggravating factors received through testimony, and evidence in this case along with the statutory aggravating circumstance, the defendant was found guilty of, and concluded that the death penalty was the appropriate penalty. R.C. 2929.03(D)(3) specifically mandates that the court consider evidence raised at trial, testimony and other evidence in deciding whether the statutory aggravating circumstances outweigh the mitigating factors. It was the consideration of the evidence and testimony at trial which formed this basis for the non-statutory aggravating factors listed in the court's opinion which the appellant now attacks.

The appellant erroneously argues that the mislabling of aggravating

- 31 -

factors of a case as aggravating circumstances dictates reversible error.
However, both the United States Supreme Court in Zant v. Stephens (1983),
____U.S.___, 77 L. Ed 2d 235 and the Ohio Supreme Court in State v.
Jenkins (1984), 15 Ohio St. 3d   , have held that if evidence is admis-
sable and is incorrectly considered as an aggravating circumstance, the
imposition of the death sentence will be upheld as long as the in-
dependently reviewing court determines that the remaining aggravating
circumstances outweigh the mitigating factors beyond a reasonable doubt.

In Zant, the Georgia Supreme Court had struck down one of three
aggravating circumstances condidered by the jury in imposing the death
penalty.  The Georgia Court still upheld the death penalty.  It concluded
that since the evidence concerning the defective aggravating circumstance
was otherwise admissable, and since the verdict was adequately supported
by the evidence, resentencing was not required.  Upon review, the United
States Supreme Court upheld the Georgia Supreme Court.  The court
specifically looked to the admissability of the evidence absent its
designation as an aggravating circumstance and the scope of the mandatory
review by the Georgia appellate courts in determining the propriety of
the sentence.  Since the evidence was otherwise admissable and the
Georgia Supreme Court had reviewed the sentence to guard against arbi-
trariness and to assure proportionality, the court upheld the sentence.

In Jenkins, the Ohio Supreme Court recently ruled that two of five
aggravating circumstances considered by the jury in that case were
unnecessarily cumulative; however, the court ruled that this conclusion

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 621

does not, in and of itself, necessitate that an appellant be resentenced or the case be reversed. The court stated that if,during appellate review,previously considered aggravating circumstances are otherwise admissable,but not appropriate aggravating circumstances, resentencing is not automatically required where the court independently determines that the remaining aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt;and that the jury's consideration of duplicative aggravating circumstances in the penalty phase did not effect the verdict.

Other cases in accord with the reasoning in Zant and Jenkins are: Barclay v. Florida (1983), ___U.S.___, 77 L. Ed 2d 1134 (trial court's consideration of nonstatutory aggravating factors of defendant's prior criminal record and racial motive of the killing, held not to preclude imposition of death penalty where one statutory aggravating circumstance, kidnapping, was present); Harris v. Pulley (9th Cir. 1982), 692 F. 2d 1189, 1194, cert. denied (1983), 75 L. Ed 2d 804; and Williams v. Maggio (5th Cir. 1982), 679 F. 2d 381, 389, cert. denied (1983), 77 L. Ed. 2d 1399.

In the case at bar, appellant is fully protected not only by the rule of law set forth in Zant and Jenkins, but also by R.C. 2929.05(A). This section requires both the Court of Appeals and Supreme Court to make an independent review of the sentence of death based on the facts and evidence disclosed in the record to ensure that the aggravating circumstances that the offender was found guilty of committing,outweigh

- 33 -

the mitigating factors in the case. The same section further dictates that both courts determine whether the sentence is excessive or disproportionate to the penalty imposed in similar cases.

In appellant's case, the aggravating factors of the appellant's conduct considered by the three judge panel in its opinion and referred by them as "aggravating circumstances" were admissable evidence in the case in chief. O.R.C. 2929.03(D) mandates that the aggravating facts raised at trial through testimony and evidence, and referred to in the court's opinion, be considered by the three judge panel in determining whether the statutory aggravating circumstances outweigh the mitigating factors. A reading of the court's opinion and the evidence taken as a whole clearly affirm that the court followed the intent of the law.

However, even if this court finds the trial court considered improper aggravating circumstances, under Zant and Jenkins a resentencing is not appropriate. Those items labeled by the trial court as inappropriate aggravating circumstances are still admissable evidence, and under O.R.C. 2929.03(D) must be considered by the three judge panel in determining sentence. In addition, this appellate court must make an independent determination based on these same facts and evidence whether it believes the death penalty is appropriate. The scope of mandatory review provided by the law and Supreme Court decisions is extensive to guard against arbitrary, capricious and disproportionate sentencing. Any possibility of error that the three judge panel made is protected against when both this appellate and the Ohio Supreme Court undertakes

- 34 -

its responsibility to independently weigh all the evidence, and determine whether the remaining aggravating circumstance which appellant was found guilty of committing, outweighs the minor and insignificant mitigating factors present in this case.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 624

VII. THE DEATH SENTENCE AS TO DEFENDANT-APPELLANT IS NOT EXCESSIVE
OR DISPROPORTIONATE TO THE CRIME COMMITTED, WHICH IS NOT SIMILAR TO ANY
RECENT CASE.

Issue Presented for Review and Argument:

> *The Eighth Amendment does not require com-
> parative proportionality review of a death sentence
> with other similar cases; and to the extent that Ohio
> Revised Code Section 2929.05(A) requires such review,
> there is no "similar case" involving repeat murder
> with prior calculation and design and with no sub-
> stantial mitigating circumstances.*

In the constitutional sense, "proportionality" has been used with

reference to an abstract evaluation of the appropriateness of a sentence

for a particular category of crime. In that sense, looking to the

gravity of the offense and the severity of the punishment, the death

penalty has been declared inherently disproportionate when imposed for

rape, Coker v. Georgia (1977), 433 U.S. 584, and when imposed upon an

accomplice to a felony murder who did not himself kill, attempt to kill,

or intend to kill the victim, Enmund v. Florida (1982), 458 U.S. 782.

On the other hand, "we are concerned here only with the imposition of

capital punishment for the crime of murder, and when a life has been

taken deliberately by the offender, we cannot say that the punishment is

invariably disproportionate to the crime. It is an extreme sanction,

suitable to the most extreme of crimes." Gregg v. Georgia (1976), 428

U.S. 153, at 186. Thus, there is no proportionality issue in the con-

stitutional sense. See also State v. Jenkins(1984), 15 Ohio St. 3d ____.

In Pulley v. Harris (1984), ___U.S.___, 79 L. Ed. 2d 29, 104 S. Ct.

- 36 -

871, the Court held that the Eighth Amendment does not require that a
state appellate court must compare the death sentence in the case before
it with the penalties imposed in other similar cases. The Court noted
that although the much-copied Georgia statute contained a provision for
such appellate comparison, see Gregg v. Georgia at 204-206, the upholding
of the Georgia scheme did not mean that such review is indispensable
to a finding of constitutionality; it was further noted that the Texas
scheme was also upheld, although it did not include this comparative
proportionality review, in Jurek v. Texas (1976), 428 U.S. 262.

The "much-copied Georgia scheme" was indeed copied by the Ohio
enactment in 1981, and thus the provision for comparative proportionality
review is a statutory component of Ohio Revised Code Section 2929.05(A).
The legislative intent is designed to assure that the death penalty will
not be imposed on a capriciously selected group of convicted defendants,
for discriminatory reasons, or wantonly or freakishly in comparison with
the "practice among juries faced with similar factual situations and
like aggravating circumstances," Gregg v. Georgia, id. at 205. (Emphasis
added.) See also concurring opinion of White, J. at 224.

The problem with this question on review is that there is no
"similar case," involving repeat murder by a paroled offender who pre-
sented little in the way of any meaningful mitigation and showed absolu-
tely no remorse, contrition or even accountability for the murder of an
innocent victim. A simple recitation by appellant of some of the
aggravated murder cases in Butler County, without any comparison of the
individuals charged and mitigating factors presented, does not facilitate

- 37 -

this court's present inquiry.

> "The belief no longer prevails that every offense
> in a like legal category calls for an identical
> punishment without regard to the past life and
> habits of a particular offender." State v. Bell
> (1976), 48 Ohio St. 2d 270 at 281, 358 NE 2d 556
> at 564, citing Williams v. New York (1949), 337
> U.S. 241 at 247.

With the idea that the statutory review requires comparison with other
cases "similar" as to the facts of the offense, "similar" as to like
aggravating circumstances, and "similar" as to the mitigating factors
presented, a search of capital cases tried in this state reveals
virtually no similar case; but in cases which are arguably comparative
to the case at bar, the death penalty has been imposed.

A study of capital cases in Ohio will reveal that Von Clark Davis
thus far is the only offender to be tried and convicted of aggravated
murder with the repeat murder specification under R.C. 2929.04(A)(5).
The only other aggravating circumstance under Ohio law which bears any
similarity to the repeat murder situation is the "mass murder" specifi-
cation, which is also found in the same subsection (5) of the statute,
R.C. 2929.04(A); the similarity lies in the fact that the offender is
charged with having caused multiple, purposeful deaths. In the "mass-
murder" category, the imposition of the death penalty for such crimes
has been uniform in Ohio since the passage of the new law: State v.
Frank Spisak, Jr., Cuyahoga Co. (8-10-83); State v. Rosalie Grant,
Mahoning Co. (10-21-83); State v. Reginald Brooks, Sr., Cuyahoga Co.
(12-1-83); State v. Dale N. Johnston, Hocking Co. (3-23-84); and State v.
Terry L. Coffman, Clinton Co. (10-26-84). It is also quite well-

- 38 -

demonstrated in the three-year history of the current statute that the
death penalty for aggravated murder, throughout the state of Ohio, has
not been imposed in an arbitrary or capricious manner or for discrimina-
tory reasons. State v. Jenkins, supra at page _____.

A review of Butler County's recent capital cases reveals, contrary
to appellant's brief, that Von Clark Davis is the only recent capital
offender convicted in Butler County under R.C. 2903.01(A), aggravated
murder with prior calculation and design. Second, Davis is likewise the
only repeat murderer in Butler County or in the state of Ohio, to date.
Third, Davis presented virtually nothing of a qualitative nature to
mitigate or lessen the degree of his responsibility or accountability.
Davis was a 37-year-old man, a convicted murderer, paroled from a life
sentence, for whom the following observations are appropriate:

> . . . Proposals for the individualization of punish-
> ment stem ordinarily from a position that has been
> well characterized as the rehabilitative ideal. . . .
> Indulging for the moment the presently dubious assumption
> that we are equipped to subject the general run of
> criminals to reformative measures, there remains a dark
> underside to the rehabilitative ideal. What are we to
> do with those whom we cannot reform and, in particular,
> those who by our failure are thought to remain menaces
> to life? Current penal theories admit, indeed insist
> upon, the need for permanent incapacitation in such
> cases. Once this need is recognized, the death penalty
> as a means of incapacitation for the violent psycho-
> path can hardly be objected to on grounds that will
> survive rational scrutiny, if the use of the death
> penalty in any situation is to be permitted.

Packer, Making the Punishment Fit the Crime, 77 HARV. L. REV. 1071, 1081
(1964). The psychological evidence presented in the sentencing phase of
the present case indicated that Davis was "free of any mental disease

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 628

or defect which would have impaired his capacity to appreciate the criminality of his conduct or to have conformed [sic] his conduct to the requirements of the law." (T.pp. 402-403, 404) In essence, the facts reflect merely that Davis has a psychological "difficulty [in] relating to women in solving problems that he has with them in a nonviolent way." (T.pp. 406-407) This "psychological problem" in no way mitigates Davis's current offense, but simply explains the recidivist's capacity to take life twice.

Contrasted with Davis's lack of any mitigating factors, the other cases in Butler County each contained mitigation evidence deemed sufficient to impose life imprisonment rather than death. Thus, in State v. Gerald Ray Johnson, Case No. CR83-07-0302, (December 2, 1983), a youthful 22-year old offender, whose prior criminal history consisted only of non-violent theft offenses, pled guilty to aggravated murder without specifications in consideration of the fact that the prosecution's case was entirely circumstantial, based on a single fingerprint. In State v. Bradford A. Gill, Case No. CR84-03-0200, (June 21, 1984), a 27-year old who had no prior criminal history pled guilty to aggravated murder with a specification of Kidnapping; the three-judge court deemed the aggravating circumstance a "technical" one based on their assessment that the sexual activity involved was "minimal", and found that the aggravating conduct was outweighed by the mitigating factors. In State v. Ernest L. Gaither, Case No. CR84-02-0125 (August 27, 1984), a 27-year old, whose only prior conviction for carrying a concealed weapon was unknown by the sentencing jury pleaded his own case for mercy in an unsworn

- 40 -

statement, apparently convincing the jury that the psychiatric evidence
of his mental instability at the time of the offense was a mitigating
factor, although not sufficient to constitute legal insanity. Finally,
in State v. James Donald Pierce, Case No. CR84-02-0090, (September 28,
1984), a jury was persuaded that one or more mitigating factors existed
regarding the shooting of Donald Reeder, himself a convicted armed
robber; the defense presented psychiatric testimony of Pierce's immaturity
and the defense also argued that by Reeder's verbal taunting of Pierce,
the victim induced or facilitated his own demise.

It is also inappropriate and unproductive for other reasons to com-
pare Davis's case to the other Butler County cases, all of which were
charged under subsection (B) of Revised Code 2903.01, unlike appellant's
case. Although each involved an underlying felony as an element of
aggravated murder as well as Specifications for the felony under Revised
Code 2929.04(A)(7), to compare such specifications with the repeat murder
specification is to compare bad apples with a bad orange; all are repre-
hensible, and it is not a judicial duty to make a judgment of personal
distaste as to which "circumstance" is more or less "aggravating." All
categories, of course, implicate different societal interests, making any
such comparison inherently speculative. See Rummel v. Estelle (1980),
445 U.S. 263, 282 at n. 27.

In closing, the following words from the decision in Gregg v. Georgia
indicate that capital punishment may be the appropriate sanction from the
aspect of deterrence in this case:

> . . . There are carefully contemplated

- 41 -

> murders, such as murder for hire, where the
> possible penalty of death may well enter into
> the cold calculus that precedes the decision
> to act. And there are some categories of
> murder, such as murder by a life prisoner,
> where other sanctions may not be adequate.
>
> The value of capital punishment as a
> deterrent of crime is a complex factual issue
> the resolution of which properly rests with
> the legislatures. . . . (Id. at 186.)

The death penalty is indeed the appropriate sanction in the case at bar for the cold, calculated, repeat murder by Von Clark Davis, and the sentence should be affirmed.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 631

## CONCLUSION

For the foregoing reasons, the judgment of conviction herein should be affirmed.

Respectfully submitted,

JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

By

DANIEL G. EICHEL
FIRST ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

and

MICHAEL J. SAGE
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
Butler County Court House
P.O. Box 515
Hamilton, Ohio  45012
Telephone (513) 867-5722

## PROOF OF SERVICE

This is to certify that a copy of the foregoing Brief of Plaintiff-Appellee was mailed by U.S. ordinary mail to Timothy R. Evans, Attorney for Defendant-Appellant, 315 S. Monument Avenue, Hamilton, Ohio 45011, this 32ᴅ day of January,  1985.

MICHAEL J. SAGE
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

- 43 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 632

## <u>MISSING DOCUMENT</u>

Appellant's Motion for Extension of Time
to File Reply Brief

IN THE COURT OF APPEALS OF BUTLER COUNTY, OHIO

STATE OF OHIO,                    *

        Appellee,              *      Case No. Butler 84-06-071

    vs.                          *      ENTRY.

VON CLARK DAVIS,                  *

        Appellant.             *

          *  *  *  *  *  *  *  *  *

      Upon motion of counsel for the appellant requesting one (1)
additional week in which to file a reply brief in the above-
captioned matter, and for good cause shown, it is hereby ORDERED
that the appellant is granted one (1) additional week to file a
brief to be due no later than 9:30 A.M., January 22, 1985.  No
further extensions will be granted.

                    _____
                    Richard N. Koehler, Judge

FILED in Court of Appeals
BUTLER COUNTY, OHIO
JAN 2 2 1985
EDWARD S. ROBB, JR.
CLERK

## MISSING DOCUMENT

Appellant's Reply Brief

IN THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT OF OHIO
BUTLER COUNTY



STATE OF OHIO,                    *        CASE NO. CA84-06-071

      Plaintiff-Appellee       *

vs.                                        SEPARATE OPINION PURSUANT
                                           TO R.C. 2929.05(A)

VON CLARK DAVIS,

      Defendant-Appellant

FILED in Court of Appeals
BUTLER COUNTY, OHIO

MAY 9 1996

EDWARD S. ROBB, JR.
CLERK

    Pursuant to R.C. 2929.05(A), this court certifies that it
has reviewed the judgment, the sentence of death, the transcript
and all of the facts and other evidence in the record in this
case and makes the following independent findings:

    1) The evidence supports the finding by the three judge
panel that appellant Von C. Davis was guilty of aggravated murder
and the aggravating circumstance charged in the indictment.
    2) The aggravating circumstance for which appellant was
found guilty outweighs the mitigating factors in this case.
    3) The death sentence is not excessive or disproportionate
to the sentence imposed in similar cases.
    4) The sentence of death is appropriate in this case.

    In making this certification and these findings, this court
incorporates its full opinion affirming the conviction and sen-
tence in this case.

    Judgment affirmed.

                       William R. Hendrickson
                       Presiding Judge

                       Richard N. Koehler, Judge

                       Fred E. Jones, Judge

119

IN THE COURT OF APPEALS

**JUDGMENT**

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY    IMAGED    COPY

STATE OF OHIO,                          *      CASE NO. CA84-06-071

    Plaintiff-Appellee              *

vs.                                     *          JUDGMENT ENTRY

                                    *

VON CLARK DAVIS,                        *

    Defendant-Appellant


    The assignments of error properly before this Court having
been ruled upon as heretofore set forth, it is the Order of this
Court that the judgment or final order herein appealed from be,
and the same hereby is, affirmed.

    It is further Ordered that a mandate be sent to the Court of
Common Pleas of Butler County, for execution upon this judgment.

    Costs to be taxed in compliance with App. R. 24.

    And the Court, being of the opinion that there were
reasonable grounds for this appeal, allows no penalty.

    It is further Ordered that a certified copy of this Judgment
Entry shall constitute the mandate pursuant to App. R. 27.

    To all of which the appellant, by his counsel, excepts.

William R. Hendrickson
Presiding Judge

Richard N. Koehler, Judge

Fred E. Jones, Judge

**FILED in Court of Appeals**
BUTLER COUNTY, OHIO

MAY 2 7 1986

EDWARD S. ROBB. JR.
CLERK

**FILED in Common Pleas Court**
BUTLER COUNTY, OHIO
MAY 2 7 1986
EDWARD S. ROBB, JR.
CLERK

J 20 P 783

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 637



IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

#CR83-12-0614

STATE OF OHIO,                          *     CASE NO. CA84-06-071

    Plaintiff-Appellee          *     MANDATE

vs.                          FILED in Court of Appeals   JUDGMENT ENTRY
                             BUTLER COUNTY, OHIO

VON CLARK DAVIS,
                                  MAY 2 7 1986           IMAGED
    Defendant-Appellant

                             EDWARD S. ROBB, JR.
                                    CLERK

    The assignments of error properly before this Court having
been ruled upon as heretofore set forth, it is the Order of this
Court that the judgment or final order herein appealed from be,
and the same hereby is, affirmed.

    It is further Ordered that a mandate be sent to the Court of
Common Pleas of Butler County, for execution upon this judgment.

    Costs to be taxed in compliance with App. R. 24.

    And the Court, being of the opinion that there were
reasonable grounds for this appeal, allows no penalty.

    It is further Ordered that a certified copy of this Judgment
Entry shall constitute the mandate pursuant to App. R. 27.

    To all of which the appellant, by his counsel, excepts.

                              William R. Hendrickson
**FILED in Common Pleas Court**     William R. Hendrickson
**BUTLER COUNTY, OHIO**             Presiding Judge
    MAY 27 1986
**EDWARD S. ROBB, JR.**             Richard N. Koehler, Judge
    **CLERK**

                              Fred E. Jones, Judge

I CERTIFY THE WITHIN TO BE A
TRUE COPY OF THE ORIGINAL FILED
   May 27 _____ 19 86
EDWARD S. ROBB, JR.
Butler County Clerk of Courts
        _____ **Deputy**

37

IMAGED ENTRY

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                    *        CASE NO. CA84-06-071

       Plaintiff-Appellee        *

                              *

vs.                    **FILED in Court of Appeals** O P I N I O N
                    BUTLER COUNTY OHIO   5-27-86

VON CLARK DAVIS,                    *

          Defendant-Appellant  MAY 2 7 1986

                  EDWARD S. ROBB, JR.
                      CLERK

John F. Holcomb, Butler County Prosecutor, Butler County
Courthouse, Hamilton, Ohio 45012, for Plaintiff-Appellee

Holbrock & Johnson Law Firm, Timothy R. Evans, 315 So. Monument
Avenue, Hamilton, Ohio 45011, for Defendant-Appellant

KOEHLER, J.

    Today we address questions raised by appellant Von Clark

Davis' aggravated murder conviction and subsequent death sen-

tence. On December 12, 1983, at approximately 7:40 p.m., police

officers of the Hamilton Police Department reported to the scene

of a shooting at 727 Central Avenue, the location of American

Legion Post #520. Lying on the pavement approximately six feet

outside the front door was the body of a young woman later iden-

tified as Suzette Butler. An autopsy performed the next day at

the direction of the Butler County Coroner revealed that Butler

38

J 20 P 285

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 639

Butler CA84-06-071
IMAGED

had died of multiple (four) gunshot wounds to the left side of
her head.

During the noon hours of December 12, 1983, appellant had
sought out one Mark Lovette at Gabe's Tavern and had requested
that Lovette "do him a favor." Along with one Wade Coleman, a
cousin of appellant, they drove in appellant's automobile to
Gil's Loans, a pawn shop, where Lovette purchased for appellant a
$49.50 Raven P25 semi-automatic handgun. After stopping to pur-
chase shells at a K-Mart store, Lovette was taken back to Gabe's
Tavern.

Shortly thereafter, appellant and Coleman again appeared at
Gabe's. The record indicates that the shells previously pur-
chased at K-Mart "didn't fit the gun very well." Appellant drove
to Butler County Gun in Fairfield where Lovette purchased one box
of PMC .25 automatic shells. These shells were turned over to
appellant. In the presence of both Lovette and Coleman, appel-
lant then loaded four or five shells into the clip, placed the
clip inside the gun, and slid the gun under the driver's seat.
At trial, Coleman testified that appellant dropped him off at his
residence at approximately 3:00 or 3:30 p.m.[1]

At approximately 5:30 or 6:00 p.m., Butler, the victim of
the shooting, met one Mona Aldridge at the above mentioned
American Legion. Appellant arrived about five minutes later and
walked up to Butler at the bar. After approximately one hour,
appellant and Butler went to a table where they were joined by

- 2 -  J 20 P 786

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 640

Aldridge. Five or ten minutes elapsed at which time appellant
and Butler arose and walked out the front door. Before leaving,
Butler told Aldridge that she would be "right back" and requested
that Aldridge watch her personal articles, i.e., a jacket and her
cigarettes and drink.

After several minutes Aldridge became concerned and went to
the front door to check on Butler. Upon cracking the door open,
Aldridge observed that appellant and Butler were standing approx-
imately three or four feet apart and that appellant had a gun
pointed at Butler's head. Aldridge panicked and went back inside
the bar. Shortly thereafter, others came in behind her saying
that someone had been shot.

The record further establishes that Cozette Massey and
Reginald A. Denmark witnessed this shooting. At approximately
7:15 p.m., they had departed Massey's apartment intending to take
a walk around downtown Hamilton "to look at the Christmas
lights." As they were walking down Central Avenue they saw two
people talking in front of the American Legion. It did not
appear as if these individuals were arguing. At this point, two
shots rang out and the woman put her hands up to her face and
exclaimed "oh, no." As she fell, another shot was fired.
Finally, "*** after she was down, he bent down and shot her in
the head, it was about a couple inches from her head ***." At
trial, both Massey and Denmark identified appellant as that
person who had shot Butler.

- 3 -  

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 641

Appellant was subsequently arrested and an indictment was filed against him on January 6, 1984. In count one thereof, appellant was charged with the aggravated murder of Butler in violation of R.C. 2903.01(A)[2], with specification of having a firearm. Count one also contained a specification of the aggravating circumstance that prior to this offense appellant had been convicted of an offense an essential element of which was the purposeful killing of, or attempt to kill, another [R.C. 2929.04(A)(5)].[3] In count two, it was alleged that appellant did knowingly acquire, have, carry or use a firearm having previously been convicted of felonies of violence, i.e., shooting with intent to wound on April 10, 1970 and murder in the second degree on April 20, 1971, in violation of R.C. 2923.13(A)(2).[4]

Appellant waived his right to a jury and the guilt phase of his trial commenced on May 9, 1984 before a three judge panel of the Court of Common Pleas of Butler County. The three judge panel found appellant guilty of both counts of the indictment and of both specifications to count one. On May 29, 1984, the penalty phase of the trial was held to determine whether the death penalty would be imposed. The panel found that the aggravating circumstance of the murder outweighed the mitigating factors and, inter alia, sentenced appellant to death.

On this appeal appellant raises seven assignments of error as follows:

J 20 P 788

- 4 -

Butler CA84-06-071

IMAGED

FIRST ASSIGNMENT OF ERROR:

> "The court erred in failing to dismiss the
> death penalty specifications against the
> defendant on the grounds that the death
> penalty is unconstitutional."

SECOND ASSIGNMENT OF ERROR:

> "The court erred in failing to allow the
> defendant the right to inspect the grand
> jury transcript."

THIRD ASSIGNMENT OF ERROR:

> "The court erred in denying defendant's
> motion to bifurcate the trial and to sever
> the charges."

FOURTH ASSIGNMENT OF ERROR:

> "The judgment was against the manifest
> weight of the evidence and contrary to law."

FIFTH ASSIGNMENT OF ERROR:

> "The court erred in not dismissing the spe-
> cification of the indictment that the appel-
> lant had committed a prior homicide, on the
> basis that such specification was too remote
> in time to be used against appellant."

SIXTH ASSIGNMENT OF ERROR:

> "The court erred in imposing the death
> penalty as the court found as aggravating
> [circumstances] factors not listed in the
> Ohio Revised Code and factors which were
> improper for consideration under the Ohio
> Revised Code."

SEVENTH ASSIGNMENT OF ERROR:

> "Under the proportionality review required
> to be done by this court, the penalty im-
> posed upon Von Clark Davis is out of propor-
> tion to the other sentences given for simi-
> lar crimes in this county."

The constitutional claim raised by appellant's first

J 20 P 789

- 5 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 643

Butler CA84-06-071

IMAGED

assignment of error has been subdivided into ten issues. Before

considering those issues, however, we note that the statutory

framework for imposition of capital punishment has been upheld by

the Ohio Supreme Court in the context of the arguments raised in

State v. Jenkins (1984), 15 Ohio St. 3d 164, certiorari denied

(1985), 473 U.S.__, 105 S.Ct. 3514; State v. Maurer (1984), 15

Ohio St. 3d 239; State v. Mapes (1985), 19 Ohio St. 3d 108; State

v. Martin (1985), 19 Ohio St. 3d 122; and, State v. Buell (1986),

22 Ohio St. 3d 124. Paragraph one of the syllabus to Maurer,

supra, states:

> "Ohio's statutory framework for imposition
> of capital punishment, as adopted by the
> General Assembly effective October 19,
> 1981, and in the context of the arguments
> raised herein, does not violate the Eighth
> and Fourteenth Amendments to the United
> States Constitution or any provision of the
> Ohio Constitution. (State v. Jenkins, 15
> Ohio St. 3d 164, paragraph one of the
> syllabus, followed.)"

The ten issues raised by appellant are as follows:

> "1. The death penalty violates Article 1,
> Section 16 of the Ohio Constitution and the
> Fourteenth Amendment to the United States
> Constitution." (Under this issue, it is
> appellant's position that the death penalty
> violates due process in that the societal
> interests at stake, i.e., deterrence, inca-
> pacitation, and retribution, can be ade-
> quately protected with a less restrictive
> approach than the imposition of death, i.e.,
> life imprisonment.)

> "2. Ohio's death penalty violates the
> Eighth Amendment of the United States
> Constitution and Ohio Constitution, Article
> One, Section 9, prohibiting the infliction
> of cruel and unusual punishment." (Here,

- 6 -    J 20 P 790



appellant argues that the death penalty
constitutes cruel and unusual punishment in
that it is more severe than is necessary to
serve legitimate state interests.)

"3.   The death penalty is arbitrarily and
capriciously applied, constituting a denial
of equal protection of the laws."  (Appel-
lant raises several arguments under this
issue:  (a) that the death penalty is ar-
bitrary and capricious since prosecutors
inevitably exercise discretion in pursuing
capital cases; (b) that the extent of pro-
portionality review is constitutionally
infirm in that neither a three judge panel
nor a jury is required under R.C. 2929.05(A)
to determine whether a particular sentence
of death is excessive or disproportionate to
sentences imposed in similar cases; (c) that
the sentencing procedure is inadequate and
unconstitutional in that neither a three
judge panel, a judge nor a jury is required
to decide the appropriateness of the death
penalty.)

"4.   The Sections of the Ohio Revised Code
that deal with the death penalty, deprive
the Defendant of due process of law and
constitute cruel and unusual punishment
because these provisions permit imposition
of the death penalty on a less than adequate
showing of guilt and the appropriateness of
the death penalty."  (Appellant here raises
two arguments:  (a) that in a capital case,
the state's burden should be "proof beyond
all doubt"; (b) that the statutory defini-
tion of "reasonable doubt" contained in R.C.
2901.05(D) is inadequate and fails to convey
the concept of reasonable doubt required by
In re Winship (1970), 397 U.S. 358.)

"5. The death penalty provisions in the Ohio
Revised Code constitute cruel and unusual
punishment and violate due process and equal
protection by requiring proof of aggravating
circumstances in the guilt stage of the
death penalty deliberations."

6.   R.C. 2929.022 and 2929.03-.04, which
provide for sentencing before the same jury

- 7 -    J 20 P 291

IMAGED

or panel of judges that determines the facts
at trial, violate the defendant's rights to
effective assistance of counsel and a fair
trial before an impartial jury as guaranteed
by the Sixth and Fourteenth Amendments to
the United States Constitution and by the
Ohio Constitution.

"7.   Section 2945.25(C) of the Ohio Revised
Code violates the Defendant's right to an
impartial jury." (It is appellant's posi-
tion that the so-called death qualification
process of a jury prior to the guilt phase
of a capital prosecution violates an
accused's right to an impartial jury in that
the death-qualified jury is claimed to be
predisposed to convict.)

"8.   The Ohio Revised Code implementing the
death penalty violates the Eighth and
Fourteenth Amendments to the United States
Constitution and Article 1, Section 9 and 16
of the Ohio Constitution."  (Under this
issue, appellant argues:  (a) that the
imposition of the death penalty under Ohio's
statutory structure is constitutionally
infirm for failing to provide necessary and
adequate guidance to the sentencing author-
ity in relation to "weighing" aggravating
circumstances and mitigating factors; (b)
that his death sentence should be set aside
in that the capital punishment scheme fails
to allocate the burden of proof as to the
existence of mitigating factors; (c) that
the death penalty in Ohio is constitution-
ally defective since the state is not re-
quired to prove the absence of any of the
mitigating factors.)

"9.   The Ohio Revised Code on the death
penalty violates the cruel and unusual
punishment provisions of the U.S. and
Federal Constitutions [sic] by failing to
provide the sentencing authority with an
option to choose life imprisonment when
there are aggravating circumstances and no
mitigating circumstances."

"10.  The death penalty violates the cruel
and unusual provisions of the State and

- 8 -    J 20 P 792

> Federal Constitutions and the due process
> clauses of the State and Federal Constitu-
> tions because the aggravating circumstances
> are overbroad and vague and fail to reason-
> ably justify the imposition of a more severe
> sentence."

IMAGED

Each of the foregoing issues was considered and rejected in
either Jenkins, supra, or Buell, supra, with the exception of
issues 3(b) and 10. (As to issue 1, see Jenkins, pp. 167-168;
issue 2: Jenkins, pp. 168-169; issue 3(a): Jenkins, pp. 169-170;
issue 3(c): Buell, pp. 136-137; issue 4(a): Jenkins, p. 210;
issue 4(b): Jenkins, p. 211; issue 5: Jenkins, pp. 173-174;
issue 6: Jenkins, pp. 173-174, footnote 11; issue 7: Jenkins,
pp. 179-188, State v. Williams (1985), 23 Ohio St. 3d 16,
Lockhart v. McCree (1986), __ U.S. __, 39 Cr. L. 3085; issue
8(a): Jenkins, pp. 172-173; issue 8(b): Jenkins, pp. 171-172;
issue 8(c): Jenkins, p. 171; issue 9: Buell, p. 141.) Issues
3(b) and 10 we address below.

In pertinent part, R.C. 2929.05(A) provides:

> "Whenever sentence of death is imposed
> pursuant to sections 2929.03 and 2929.04 of
> the Revised Code, the court of appeals and
> the supreme court shall upon appeal review
> the sentence of death at the same time that
> they review the other issues in the case.
> The court of appeals and the supreme court
> shall review the judgment in the case and
> the sentence of death imposed by the court
> or panel of three judges in the same manner
> that they review other criminal cases, ex-
> cept that they shall review and independ-
> ently weigh all of the facts and other evi-
> dence disclosed in the record in the case
> and consider the offense and the offender

- 9 -    J 20 P 793

Butler CA84-06-071

IMAGED

>          to determine whether the aggravating cir-
>          cumstances the offender was found guilty of
>          committing outweigh the mitigating factors
>          in the case, and whether the sentence of
>          death is appropriate.  In determining
>          whether the sentence of death is appro-
>          priate, the court of appeals and the
>          supreme court shall consider whether the
>          sentence is excessive or disproportionate
>          to the penalty imposed in similar cases.
>          ***"

As noted above, appellant's argument under issue 3(b) is
that Ohio's statutory framework for the imposition of capital
punishment is constitutionally infirm in that neither juries nor
three judge panels are required to conduct proportionality re-
view.  Initially, we observe that the United States Supreme
Court, in Pulley v. Harris (1984), 465 U.S. 37, held that neither
Gregg v. Georgia (1976), 428 U.S. 153; Proffitt v. Florida
(1976), 428 U.S. 242; nor Jurek v. Texas (1976), 428 U.S. 262,
established proportionality review as a constitutional require-
ment.  At p. 39, the court stated:

>          "*** Needless to say, that some schemes
>          providing for proportionality review are
>          constitutional does not mean that such
>          review is indispensible.  We take statutes
>          as we find them.  To endorse the statute as
>          a whole is not to say that anything differ-
>          ent is unacceptable. *** Examination of our
>          1976 cases makes clear that they do not
>          establish proportionality review as a
>          constitutional requirement."

Although proportionality review is not constitutionally
required in every case, the question remains whether the absence
of proportionality review at the trial court level creates a
fatal defect in the capital punishment scheme.  We think not.

- 10 - J 20 P 794

Butler CA84-06-071

"The fundamental purpose behind proportionality review is to ensure that sentencing authorities do not retreat to the pre-Furman[5] era when sentences were imposed arbitrarily, capriciously and indiscriminately." Jenkins, supra, at p. 176. Incorporated into Ohio's death penalty statutes are several factors which minimize the risk of arbitrary and capricious sentencing. Among these are bifurcated proceedings, the limited number of chargeable capital crimes, the requirement that at least one aggravating circumstance be found to exist and the consideration of a broad range of mitigating factors. We hold that appellant's issue 3(b) is not well-taken.

In connection with the argument raised by issue 10, appellant principally relies on the decision of the United States Supreme Court in Godfrey v. Georgia (1980), 446 U.S. 420. Therein, the court vacated a death sentence predicated upon the aggravating circumstance that the murder was outrageously or wantonly vile, horrible or inhuman. In finding this aggravating circumstance overbroad, the Supreme Court, at pp. 428-429, stated that "A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'"

Appellant's contention that the reasoning of Godfrey is applicable to the case sub judice is without merit. Unlike the aggravating circumstance at issue in Godfrey, the aggravating circumstances contained in R.C. 2929.04(A)(1) through (8)[6] are

- 11 -   J 20 P 795

IMAGED

sufficiently explicit to distinguish those cases in which the
death sentence is imposed, from those cases in which the death
sentence is not imposed. See Maurer, supra, at pp. 242-243; and,
Buell, supra, at pp. 141-142. The first assignment of error is
overruled.

By his second assignment of error, appellant maintains that
"The court erred in failing to allow the defendant the right to
inspect the grand jury transcript." In support of this assign-
ment, appellant argues as follows: "Where the Defendant moves to
dismiss and to inspect the grand jury transcript for purposes of
showing that the indictment against him was not based upon prob-
able cause and that the indictment was founded on illegal and
incompetent evidence, the Defendant has a right to inspect the
Grand Jury testimony."

Crim. R. 6(E) delineates the degree of secrecy accorded
grand jury proceedings:

> "Secrecy of proceedings and disclosure.
> Deliberations of the grand jury and the
> vote of any grand juror shall not be dis-
> closed. Disclosure of other matters occur-
> ring before the grand jury may be made to
> the prosecuting attorney for use in the
> performance of his duties. A grand juror,
> prosecuting attorney, interpreter, stenog-
> rapher, operator of a recording device, or
> typist who transcribes recorded testimony,
> may disclose matters occurring before the
> grand jury, other than the deliberations of
> a grand jury or the vote of a grand juror,
> but may disclose such matters only when so
> directed by the court preliminary to or in
> connection with a judicial proceeding, or
> when permitted by the court at the request
> of the defendant upon a showing that

- 12 -   J 20 P 796

Butler CA84-06-071
IMAGED

> grounds may exist for a motion to dismiss
> the indictment because of matters occurring
> before the grand jury. ***"

Construing this rule in State v. Greer (1981), 66 Ohio St.
2d 139, the Ohio Supreme Court held that because of the general
policy that grand jury proceedings are to be kept secret, they
may be disclosed only where the accused is able to demonstrate a
"particularized need," i.e., when the circumstances reveal a
probability that the failure to provide the grand jury testimony
will deny the defendant a fair trial. Based on the record before
us, this court finds that appellant has failed to demonstrate a
particularized need to inspect the grand jury testimony which
outweighs the need for secrecy.

Appellant's motion to dismiss the indictment was premised on
the argument that said indictment was not based upon probable
cause and was founded on illegal and incompetent evidence. How-
ever, in the case of United States v. Calandra (1974), 414 U.S.
338, 344-345, the United States Supreme Court held that "The
grand jury's sources of information are widely drawn, and the
validity of an indictment is not affected by the character of the
evidence considered. Thus, an indictment valid on its face is
not subject to challenge on the ground that the grand jury acted
on the basis of inadequate or incompetent evidence. ***" See,
also, Villasino v. Maxwell (1963), 174 Ohio St. 483, 485 ("'If
indictments were to be held open to challenge on the ground that
there was inadequate or incompetent evidence before the grand

- 13 -    J 20 P 747

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 651

<u>Butler CA84-06-071</u>

jury, the resulting delay would be great indeed.  The result of
such a rule would be that before trial on the merits a defendant
could always insist on a kind of preliminary trial to determine
the competency and adequacy of the evidence before the grand
jury.  This is not required by the Fifth Amendment.  An indict-
ment returned by a legally constituted and unbiased grand jury,
like an information drawn by the prosecutor, if valid on its
face, is enough to call for trial of the charge on the merits.
The Fifth Amendment requires nothing more.'"); <u>Wickline</u> v. <u>Alvis</u>
(1957), 103 Ohio App. 1 ("An indictment and subsequent proceed-
ings based thereon are not rendered invalid on the ground that
illegal and incompetent testimony was heard by the grand jury
which voted such indictment."); <u>United States</u> v. <u>Adamo</u>, 742 F.2d
927, 939 (6th Cir. 1984), certiorari denied (1985), 105 S.Ct. 971
("*** A grand jury presented with inadequate or incompetent evi-
dence may nevertheless be an unbiased grand jury capable of re-
turning a valid indictment.").  Because the validity of an indict-
ment, valid on its face, may not be attacked on the basis that
the grand jury acted upon inadequate or incompetent evidence,
appellant has failed to demonstrate a particularized need to
inspect the grand jury testimony.  Appellant's second assignment
of error is overruled.

Next appellant contends that the trial court erred in re-
fusing to sever the two charges contained in the indictment,
<u>i.e.</u>, aggravated murder and having weapons while under

- 14 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 652

Butler CA84-06-071

disability.

IMAGED

Crim. R. 8(A) governs the joinder of offenses and provides as follows:

> "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction ***."

The evidence of record in this case reveals that the crimes charged in the indictment arose from the same act or transaction. Therefore, they should have been prosecuted in a single prosecution unless the trial court, in the interest of justice, ordered that they be tried separately.[7]

R.C. 2941.04 provides, in pertinent part, that:

> "*** The court in the interest of justice and for good cause shown, may order different offenses or counts set forth in the indictment or information tried separately or divided into two or more groups and each of said groups tried separately. ***"

Similarly, Crim. R. 14, entitled "Relief from Prejudicial Joinder," provides that:

> "If it appears that a defendant or the state is prejudiced by a joinder of offenses *** in an indictment, information, or complaint, *** the court shall order an election or separate trial of counts *** or provide such other relief as justice requires. ***"

The fact that a necessary element of one of the crimes alleged in an indictment is proof of conviction of a prior felony does not, in and of itself, require the trial court to order a

- 15 -    J 50 P799

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 653

Butler CA84-06-071

separate trial. While we may agree that trying the two offenses here involved in a single prosecution placed appellant in a disadvantageous position at trial, under Crim. R. 14 "[a] defendant who asserts that joinder is improper has the burden of making an affirmative showing that his rights will be prejudiced *** " by the joinder. State v. Roberts (1980), 62 Ohio St. 2d 170, 175, certiorari denied, 449 U.S. 879. "[T]he burden (is) upon the defendant to either affirmatively demonstrate before trial that his rights would be prejudiced by the joinder, or to show at the close of the state's case, or at the conclusion of all the evidence, that his rights actually had been prejudiced by the joinder." State v. Williams (1981), 1 Ohio App. 3d 156, 159; see, also, State v. Owens (1975), 51 Ohio App. 2d 132.

As to the pre-trial prong of this "test", appellant argues that "*** the Court's failure to grant the Motion to Sever *** denied Defendant a fair trial and had a chilling effect on his right to a jury trial, since he was faced with either choosing a three judge panel or a jury who would know about the prior homicide. While the jury may be given an instruction that this is only to be used for the weapons under disability charge or for determining the specification, it is not credible to believe that a jury could not take this into consideration when determining guilt." This argument is without merit. At best, it merely raised a risk of prejudice; it did not make the required showing of prejudice. Williams, supra, at 159. It is presumed that a

- 16 -    J 20 P 800

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 654

( )                               ( )
                                    Butler CA84-06-071
                                        IMAGED

jury will obey a trial court's instructions.  State v. Dunkins

(1983), 10 Ohio App. 3d 72, 73.

     Nor was there actual prejudice to appellant.  The evidence

of the prior convictions was simple and distinct; there was no

elaboration as to the details of appellant's prior second degree

murder conviction.  Also, the evidence of guilt was so overwhelm-

ing that it may be concluded, beyond a reasonable doubt, that the

introduction of the prior convictions did not contribute to the

guilty verdict.  Under the circumstances in this case, the denial

of appellant's motion to sever did not prejudice his right to a

fair trial.  See Stone v. State (1984), 253 Ga. 433, 321 S.E.2d

723; State v. Hilongo (1982), 64 Haw. 577, 645 P.2d 314; Pope v.

State (1983), 168 Ga. App. 846, 310 S.E.2d 575; Dunkins, supra;

cf., State v. Vazquez (Supreme Court of Florida, 1982), 419 So.2d

1088.

     Additionally, appellant raises a second argument in support

of this assignment of error.  Under the Ohio capital punishment

scheme, proof of aggravating circumstances is to be adduced at

the guilt phase of the capital trial.  However, R.C. 2929.022(A),

entitled "Determination of aggravating circumstance," states:

          "If an indictment or count in an indict-
          ment charging a defendant with aggravated
          murder contains a specification of the ag-
          gravating circumstance of a prior convic-
          tion listed in division (A)(5) of section
          2929.04 of the Revised Code [see footnote
          3, supra], the defendant may elect to have
          the panel of three judges, if he waives
          trial by jury, or the trial judge, if he is
          tried by jury, determine the existence of

                              - 17 -     J 20 P 801

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 655

that aggravating circumstance at the        IMAGED
sentencing hearing ***."

The thrust of appellant's "second argument" is as follows:
Crim. R. 8 permitted the joinder of the counts contained in the
indictment.   Under R.C. 2929.022(A), however, appellant could
elect to have proof of prior convictions, an essential element of
which was the purposeful killing of or attempt to kill another,
determined at a sentencing hearing.  When the trial court refused
to sever the two counts, proof of appellant's prior second degree
murder conviction, a necessary element of the second count, was
rendered admissible at trial.  This abridged appellant's statu-
tory right under R.C. 2929.022(A) to elect to have evidence of
prior purposeful killings considered only at a sentencing
hearing.

Appellant's argument in this regard is without merit.  As
stated above, Ohio's statutory framework for imposition of cap-
ital punishment directs that aggravating circumstances be deter-
mined at the guilt phase.  Accordingly, but for R.C. 2929.022(A),
the state would be able to bring in evidence not otherwise admis-
sible under the rules of evidence; i.e., were R.C. 2929.022(A)
not included in the statutory framework, evidence pertaining to
prior purposeful killings would not be considered prejudicial
but, rather, would be admissible at trial to prove the aggravat-
ing circumstance of R.C. 2929.04(A)(5).  The simple purpose of
R.C. 2929.022(A) is to provide the capital defendant with a
mechanism whereby the introduction of such evidence may be

J 20 P 802

- 18 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 656

Butler CA84-06-071

precluded.  Stated in other words, when the R.C. 2929.022(A)
election is made, evidence concerning prior purposeful killings
not otherwise admissible may not be introduced to prove an ag-
gravating circumstance.  Contrary to appellant's second argument,
it is not the purpose of R.C. 2929.022(A) to provide the defen-
dant with a blanket statutory right to preclude, at the guilt
phase, the introduction of all evidence pertaining to prior pur-
poseful killings which is otherwise admissible.  The third
assignment of error is hereby overruled.

In his fourth assignment of error, appellant contends that
"The judgment was against the manifest weight of the evidence and
contrary to law."  Specifically, appellant asserts that the evi-
dence does not support a finding of that "prior calculation and
design" required for an aggravated murder conviction.

The Court of Appeals for Cuyahoga County, Markus, J., dis-
cussed the requirement of prior calculation and design in State
v. Davis (1982), 8 Ohio App. 3d 205, 206-207:

> "Prior calculation and design sets up a
> more demanding standard than the old first
> degree murder standard of 'deliberate and
> premeditated malice.'  Prior calculation
> and design requires the accused to have
> killed purposefully after devising a plan
> or scheme to kill.  There must be some kind
> of studied analysis with its object being
> the means by which to kill.  The kind of
> momentary deliberation or instantaneous
> premeditation that was the accepted stand-
> ard under the old statute, as exemplified
> by State v. Schaffer (1960), 113 Ohio App.
> 125 ***, is no longer sufficient or
> acceptable."

J 20 P 803

- 19 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 657

See, also, State v. Robbins (1979), 58 Ohio St. 2d 74; State v. Cotton (1978), 56 Ohio St. 2d 8; State v. Stidham (May 11, 1983), Brown App. No. 404, unreported; State v. Jenkins (1976), 48 Ohio App. 2d 99, 101-102.

Although appellant's precise state of mind during the evening hours of December 12, 1983 was not established, other evidence addressed at trial supports the conclusion that appellant murdered Suzette Butler according to a plan and with prior calculation and design. First, the state's evidence, which the three judge panel evidently believed, indicates that the shooting was not the result of an "instantaneous eruption of events." To the contrary, neither Massey nor Denmark (who witnessed the shooting) nor Aldridge (who sat with appellant and the decedent inside the American Legion bar) testified at trial as to any sort of verbal or physical confrontation between appellant and the decedent. Massey and Denmark testified that they saw two people "talking" in front of the American Legion. Further, the state's evidence was that during the afternoon of the shooting appellant purchased the murder weapon and ammunition through a third person. Then, in the presence of both Lovette and Coleman, he loaded the gun and slipped it under the driver's seat of his automobile. Only a few hours later appellant used this gun to fire four shots, at close range, into the left side of the decedent's head. The final shot came in execution style: "*** (A)fter she was down, he bent down and shot her in the head, it

J 20 P 804

- 20 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 658

Butler CA84-06-071

was about a couple inches from her head ***."       IMAGED

These facts, as could be interpreted by the three judge panel, do not so much speak of momentary deliberation or instantaneous premeditation as of appellant's holding Suzette Butler's life in cheap regard.  The record reflects substantial evidence of that studied analysis required for a finding of "prior calculation and design."  See State v. Eley (1978), 56 Ohio St. 2d 169, 172.  Appellant's fourth assignment of error must be rejected.

The fifth assignment of error is also without merit.  Thereunder, appellant argues that "The court erred in not dismissing the specification of the indictment that the appellant had committed a prior homicide, on the basis that such specification was too remote in time to be used against appellant."

In support of this assignment, appellant relies solely on this court's decision in State v. George (Apr. 30, 1984), Butler App. No. CA83-04-034, unreported.  George raised the question of whether certain testimony, relating to an act which had occurred fourteen years prior to trial, was admissible into evidence.  Such testimony was offered by the state for the purpose of determining the identity of the individual responsible for the crime at issue.  Therein, and under the unique facts presented by that case, we held:  "*** the prior act of (the defendant) does not have such a temporal relationship with the act constituting the crime charged that evidence of the prior act discloses that the

- 21 -   J 2u P 8o5

identity of the perpetrator is the same in each one." IMAGED

George is readily distinguishable from the case sub judice. Unlike the testimony at issue in George, evidence of appellant's 1971 second degree murder conviction was here offered, in connection with R.C. 2929.04(A)(5), simply to demonstrate that appellant had, in fact, previously been convicted of an offense an essential element of which was the purposeful killing of another. Additionally, we note that Mapes, supra, involved the aggravating circumstance of an eleven year old killing. As the aggravating circumstance specified in count one of the indictment was not too remote in time to be used against appellant, the fifth assignment of error is overruled.

For his sixth assignment of error, appellant argues that "The court erred in imposing the death penalty as the court found as aggravating (circumstances) factors not listed in the Ohio Revised Code and factors which were improper for consideration under the Ohio Revised Code."

R.C. 2929.03(F) provides:

> "The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. ***"

- 22 -

J 2υP 806

Butler CA84-06-071

At the conclusion of the sentencing phase, and pursuant to R.C. 2929.03(F), the three judge panel made the following specific findings:

> "***
> "We find the following aggravated circumstances have been proven beyond a reasonable doubt:
> "1) The manner by which the Defendant purchased the gun, used to kill the victim in this case.
> "2) The manner by which the Defendant purchased the ammunition for the gun.
> "3) The shooting of the victim, the firing at close range and finally placing the gun almost against her skull and discharging the weapon.
> "4) The prior purposeful killing of his wife in 1970 by multiple stab wounds.
> "5) Committing the present offense while on parole for the murder of his wife.
> "***"

The purpose of the eight statutory aggravating circumstances listed in R.C. 2929.04(A) is to limit the discretion of the sentencing body. They objectively narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a more severe sentence on particular defendants as compared to others found guilty of aggravated murder. We agree with appellant that the trial court's consideration of non-statutory aggravating circumstances was improper under Godfrey v. Georgia, supra.

There remains, however, the question of whether our conclusion in this regard necessitates that appellant be resentenced. In Zant v. Stephens (1983), 462 U.S. 862, the Georgia Supreme Court had struck down as unconstitutionally vague one of three

- 23 -

J 2o P 8 07

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 661

Butler CA84-06-071
IMAGED

aggravating circumstances considered by the jury in the defen-
dant's capital trial. Despite this action, the Georgia court
concluded that resentencing was not required. Upon review, the
United States Supreme Court affirmed. The evidence which sup-
ported the defective aggravating circumstance, absent its desig-
nation as an aggravating circumstance, was otherwise admissible
and the Georgia Supreme Court had reviewed the sentence in order
to guard against arbitrariness and to assure proportionality.
See, also, the fifth paragraph of the syllabus in Jenkins, supra,
wherein the Ohio Supreme Court held: "In the penalty phase of a
capital prosecution, where two or more aggravating circumstances
arise from the same act or indivisible course of conduct and are
thus duplicative, the duplicative aggravating circumstances will
be merged for purposes of sentencing. Should this merging of
aggravating circumstances take place upon appellate review of a
death sentence, resentencing is not automatically required where
the reviewing court independently determines that the remaining
aggravating circumstances outweigh the mitigating factors beyond
a reasonable doubt and that the jury's consideration of duplica-
tive aggravating circumstances in the penalty phase did not
affect the verdict."

As in Zant and Jenkins, the evidence supporting the non-
statutory aggravating circumstances considered by the court below
was clearly admissible. Additionally, and again as in Zant and
Jenkins, R.C. 2929.05(A) requires this court to make independent

J 20 P 808

- 24 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 662

Butler CA84-06-071

findings when the death sentence is imposed.  Specifically, R.C.

2929.05, entitled "Appellate review of death sentence," provides:

> "(A) Whenever sentence of death is
> imposed ***, the court of appeals *** shall
> upon appeal review the sentence of death at
> the same time that [it] review[s] the other
> issues in the case.  The court of appeals
> *** shall review the judgment in the case
> and the sentence of death imposed by the
> *** panel of three judges in the same
> manner that [it] review[s] other criminal
> cases, except that [it] shall review and
> independently weigh all of the facts and
> other evidence disclosed in the record in
> the case and consider the offense and the
> offender to determine whether the aggravat-
> ing circumstances the offender was found
> guilty of committing outweigh the mitigat-
> ing factors in the case ***.  [The court of
> appeals] shall also review all of the facts
> and other evidence to determine if the evi-
> dence supports the finding of the aggravat-
> ing circumstances *** the panel of three
> judges found the offender guilty of commit-
> ting, and shall determine whether the sen-
> tencing court properly weighed the aggra-
> vating circumstances the offender was found
> guilty of committing and the mitigating
> factors.  The court of appeals *** shall
> affirm a sentence of death only if [it] is
> persuaded from the record that the aggra-
> vating circumstances the offender was found
> guilty of committing outweigh the mitigat-
> ing factors present in the case ***."

It is our conclusion that although the trial court improp-

erly considered non-statutory aggravating circumstances, this

does not require that appellant's sentence be set aside.  "Any

*** possibility of error that this had upon the [three judge

panel's] judgment can be guarded against when this court under-

takes its responsibility *** to weigh all of the evidence and

determine whether the remaining *** aggravating circumstance

J 20 P 809

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 663

Butler CA84-06-071

which appellant was found guilty of committing outweigh[s] the
mitigating factors present in this case." Jenkins, supra, at pp.
199-200. The sixth assignment of error is overruled.

Appellant also contends, by his seventh assignment of error,
that "Under the proportionality review required to be done by
this court, the penalty imposed upon Von Clark Davis is out of
proportion to the other sentences given for similar crimes in
this county." We disagree.

R.C. 2929.05(A) further provides as follows:

> "Whenever sentence of death is imposed
> ***, the court of appeals *** shall review
> the judgment in the case and the sentence
> of death imposed by the *** panel of three
> judges in the same manner that (it)
> review(s) other criminal cases, except that
> (it) shall review and independently weigh
> all of the facts and other evidence dis-
> closed in the record in the case and con-
> sider the offense and the offender to
> determine *** whether the sentence of death
> is appropriate. In determining whether the
> sentence of death is appropriate, the court
> of appeals *** shall consider whether the
> sentence is excessive or disproportionate
> to the penalty imposed in similar cases.
> *** The court of appeals *** shall affirm a
> sentence of death only if (it) is persuaded
> from the record *** that the sentence of
> death is the appropriate sentence in the
> case."

Based on the record and the evidence, it is this court's
opinion that the death penalty is appropriate in the case sub
judice and is not excessive or disproportionate to the penalty
imposed in similar cases. State v. Russell (Dec. 30, 1985),
Clermont App. No. CA84-01-001, unreported; State v. Pierce (Mar.

J 20 P8/0

- 26 -

Butler CA84-06-071

17, 1986), Butler App. No. CA84-10-125, unreported; Jenkins,
supra; Maurer, supra; Mapes, supra; Martin, supra; Buell, supra.
Appellant's seventh assignment of error is overruled.

We now undertake the task of independently weighing the ag-
gravating circumstances against any mitigating factors. Despite
the trial court's consideration of non-statutory criteria (see
the sixth assignment of error, supra), one aggravating circum-
stance remains: prior to the offense at bar, appellant was con-
victed of second degree murder, an offense an essential element
of which was the purposeful killing of another.[8]

Based upon the evidence adduced at the sentencing hearing,
the three judge panel specifically enumerated and considered the
following factors in mitigation:

> "1) The Defendant adjusted well to prison
> routine and during his stay in prison, ob-
> tained a high school GED and an associate
> degree in Business Administration, and
> studied for and worked as a dental
> technician.
> "2) There has always been a good family
> relationship between the Defendant and all
> members of his family, including his step
> father.
> "3) Since his release on parole, he has
> maintained at least partial employment.
> "4) As testified by the psychologist,
> Defendant has a compulsory personality
> disorder or explosive disorder which may
> have contributed to the violence in this
> case."

These factors, which fail to exemplify the factors set forth
in R.C. 2929.04(B)(1) through (B)(6),[9] in no way excuse appel-
lant's culpability in two murders. While he suffered from

J 20 P 8/L

- 27 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 665

Butler CA84-06-071

personality disorders, appellant did not lack substantial capacity to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. Rather, the murder of Suzette Butler was knowingly and deliberately accomplished. After careful consideration of the record, we can only conclude that the aggravating circumstance of this case outweighs the above R.C. 2929.04(B)(7) mitigating factors beyond a reasonable doubt. That the three judge panel considered non-statutory aggravating circumstances in the penalty phase did not affect the sentence herein.

Appellant's claims have all been discussed and rejected. Accordingly, we affirm the conviction and sentence of death in this case.

Judgment affirmed.

HENDRICKSON, P.J., and JONES, J., concur.

---

[1] Additionally, we note the following testimony wherein Coleman identified appellant's stated rationale for desiring a gun:

"***

"Q. (by the prosecuting attorney). *** Did Mr. Davis have an occasion to discuss with you why he needed to have a gun?

"A. (by Coleman). No more than he wanted for protection."

J 20 P 8/2

- 28 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 666

Butler CA84-06-071

IMAGED

[2] R.C. 2903.01 provides:

    "(A) No person shall purposely, and with prior calculation and design, cause the death of another."

[3] In pertinent part, R.C. 2929.04 provides:

    "(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:
    "***
    "(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course cf conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.
    "***"

[4] In pertinent part, R.C. 2923.13, entitled "Having weapons while under disability," provides:

    "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
    "***
    "(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony;
    "***"

[5] I.e., Furman v. Georgia (1972), 408 U.S. 238.

J 20 P 813

- 29 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 667

[6] In pertinent part, R.C. 2929.04, entitled "Criteria for imposing death or imprisonment for a capital offense," provides:

> "(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:
>
> "(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. For purposes of this division, a person is a candidate if he has been nominated for election according to law, or if he has filed a petition or petitions according to law to have his name placed on the ballot in a primary or general election, or if he campaigns as a write-in candidate in a primary or general election.
>
> "(2) The offense was committed for hire.
>
> "(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.
>
> "(4) The offense was committed while the offender was a prisoner in a detention facility as defined in section 2921.01 of the Revised Code.
>
> "(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.
>
> "(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code, whom the offender had reasonable cause to know or knew to be such, and either the victim, at the time of the commission of the offense, was engaged in his duties, or it was the

J 20 P8 14

- 30 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 668

Butler CA84-06-071

IMAGED

offender's specific purpose to kill a peace
officer.
"(7) The offense was committed while the
offender was committing, attempting to com-
mit, or fleeing immediately after commit-
ting or attempting to commit kidnapping,
rape, aggravated arson, aggravated robbery,
or aggravated burglary, and either the
offender was the principal offender in the
commission of the aggravated murder or, if
not the principal offender, committed the
aggravated murder with prior calculation
and design.
"(8) The victim of the aggravated murder
was a witness to an offense who was pur-
posely killed to prevent his testimony in
any criminal proceeding and the aggravated
murder was not committed during the
commission, attempted commission, or flight
immediately after the commission or
attempted commission of the offense to
which the victim was a witness, or the
victim of the aggravated murder was a
witness to an offense and was purposely
killed in retaliation for his testimony in
any criminal proceeding."

[7] We note the case of State v. Dunkins (1983), 10 Ohio App. 3d
72, wherein it was held that:

"The law favors joinder for public policy
reasons, such as: to conserve judicial
economy and prosecutorial time; to conserve
public funds by avoiding duplication inher-
ent in multiple trials; to diminish the
inconvenience to public authorities and
witnesses; to promptly bring to trial those
accused of a crime; and to minimize the
possibility of incongruous results that can
occur in successive trials before different
juries."

[8] In accordance with the mandate of R.C. 2929.05(A), we note our
conclusion that the evidence supports the panel's finding of this
aggravated circumstance.

J 20 P 8/5

- 31 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 669

Butler CA84-06-071

IMAGED

[9] The R.C. 2929.04 criteria for imposing death or imprisonment for a capital offense are as follows:

> "(B) If one or more of the aggravating
> circumstances listed in division (A) of
> this section is specified in the indictment
> or count in the indictment and proved
> beyond a reasonable doubt, *** the court,
> trial jury, or panel of three judges shall
> consider, and weigh against the aggravating
> circumstances proved beyond a reasonable
> doubt, the nature and circumstances of the
> offense, the history, character, and back-
> ground of the offender, and all of the
> following factors:
>
> "(1) Whether the victim of the offense
> induced or facilitated it;
>
> "(2) Whether it is unlikely that the
> offense would have been committed, but for
> the fact that the offender was under
> duress, coercion, or strong provocation;
>
> "(3) Whether, at the time of committing
> the offense, the offender, because of a
> mental disease or defect, lacked substan-
> tial capacity to appreciate the criminality
> of his conduct or to conform his conduct to
> the requirements of the law;
>
> "(4) The youth of the offender;
>
> "(5) The offender's lack of a significant
> history of prior criminal convictions and
> delinquency adjudications;
>
> "(6) If the offender was a participant in
> the offense but not the principal offender,
> the degree of the offender's participation
> in the offense and the degree of the
> offender's participation in the acts that
> led to the death of the victim;
>
> "(7) Any other factors that are relevant
> to the issue of whether the offender should
> be sentenced to death."

J 20 P 816

- 32 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 670

 

COURT OF APPEALS OF
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

STATE OF OHIO                    *        Case No. CA84-06-071

    Plaintiff-Appellee       *

vs.                              *        NOTICE OF APPEAL

VON  CLARK DAVIS                 *

    Defendant-Appellant      *        86-1171

         * * * * * * * * * *

    Now comes the Defendant-Appellant and hereby gives
notice of his appeal to the SUPREME COURT OF OHIO from an Opinion
and Judgment Entry of the Court of Appeals, Twelfth Appellate
District, Butler County, Ohio, entered on May 27, 1986, that the
case does involve a substantial constitutional question, that the
case did not originate in the Court of Appeals, and that the case
is of great public and general interest.

                 HOLBROCK & JONSON LAW FIRM
                 Attorneys for Appellant
                 315 S. Monument Avenue
                 Hamilton, OH  45011
                 Telephone:  868-7600

**FILED in Court of Appeals**
  BUTLER COUNTY, OHIO

    JUN 2 3 1986

  EDWARD S ROBB. JR
     CLERK

                By: _____
                 Timothy R. Evans

       CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Notice of
Appeal was forwarded by ordinary U.S. Mail to Mr. John Holcomb,
Prosecuting Attorney, Butler County Courthouse, Hamilton, OH
45011, this 23rd day of June, 1986.

                By: _____
                 Timothy R. Evans

                   **FILED**

                  JUL 2 3 1986

           SUPREME COURT OF OHIO
           JAMES Wm. KELLY, Clerk

MDS:ljs
9/29/88

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

STATE OF OHIO                *     Case No.: CR83-12-0614

        Plaintiff       *     CA84-04-071

                   *     86-1171

vs.                  *     <u>MOTION TO RETURN DEFENDANT</u>
                               <u>FOR SENTENCING</u>

VON CLARK DAVIS

        Defendant       *

           * * * * * * * * *

Now comes John A. Garretson, Michael D. Shanks and Timothy R. Evans as attorneys on behalf of Defendant, Von Clark Davis, and moves the Court for an order returning Defendant from the Ohio Correctional Facility, Lucasville, Ohio, to the custody of the sheriff of Butler County, Ohio, pending a resentencing hearing in the above captioned matter.

<u>M E M O R A N D U M</u>

The Supreme Court of Ohio in a recent publicized opinion has set aside the opposition of the death penalty in the above captioned case and has remanded the matter back to the trial court for resentencing pursuant to the dictates of the opinion. At the present time, Defendant, Von Clark Davis, remains on death row at the Ohio Correctional Facility in Lucasville, Ohio. Since the matter is to be rescheduled for sentencing it is imperative that the Defendant be returned as soon as practical to the custody of the Sheriff of Butler County, Ohio, so that the legal and factual issues can be properly reviewed with Defendant and counsel and further that counsel can adequately prepare for the sentencing hearing as

DRESSLER, SHANKS
AND SECLING CO. L.P.A.
ATTORNEYS AT LAW
304 N. SECOND ST
HAMILTON, OHIO 45011
863-2112

mandated by the Supreme Court.  Therefore, it is respectfully requested
that the Court issue an order requiring the Ohio Department of Corrections
to return Von Clark Davis to the custody of the Sheriff of Butler County,
Ohio, pending further matters.

JOHN A. GARRETSON
Attorney for Defendant
616 Dayton Street
Hamilton, OH  45011
Telephone:  863-6600

By: _____ (cms)
    John A. Garretson

BRESSLER, SHANKS & GEDLING, CO., LPA
Attorneys for Defendant
304 N. Second Street
Hamilton, OH  45011
Telephone:  863-2112

By: _____
    Michael D. Shanks

HOLBROCK & JONSON
Attorneys for Defendant
315 S. Monument Avenue
Hamilton, OH  45011
Telephone:  868-7600

By: _____ (ms)
    Timothy R. Evans

## CERTIFICATE OF SERVICE

We hereby certify that a copy of the foregoing Motion was
hand-delivered to John A. Holcomb, Prosecuting Attorney, 216 Society Bank
Building, Hamilton, Ohio, on this 29th day of Sept. , 1988.

By: _____
    John A. Garretson

By: _____
    Michael D. Shanks

By: _____
    Timothy R. Evans

BRESSLER, SHANKS
AND GEDLING CO., LPA
ATTORNEYS AT LAW
304 N. SECOND ST.
HAMILTON, OHIO 45011
863-2112

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

FILED

'92 APR 7 PM 4 18

CLERK OF COURTS
EDWARD S. ROBB. JR.

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

APR 7 1992

EDWARD S. ROBB, JR.
CLERK

Received from the Common Pleas Court of Butler County,

Ohio, this 7th day of April, 1992 the following

items used as Exhibits in Case No. CA84-06-0071

State of Ohio
- vs -
Von Clark Davis

Photos State Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11 +
12, 13, 15, 16, 17, 18, 19 & 26
State Exhibit 2 4-25 cal Cartridge case
State Exhibit 1 — 4 bullets

Jay Eckert
Supervisor C.P.C. Clerk

Mary L. Swain
Secretary
Recipient