# The Supreme Court of Ohio & The Ohio Judicial System

Clerk's Office
65 South Front Street, 8th Floor
Columbus, Ohio 43215-3431
800.826.9010
614.387.9530

Sandra H. Grosko
Clerk

## Search Results: Case Number 1986-1171

## The Supreme Court of Ohio

## CASE INFORMATION

### GENERAL INFORMATION

**Case: 1986-1171** Death Penalty Case (offense committed prior to 1/1/95)
**Filed:** 07/21/86
**Status:** Case Is Disposed

### State of Ohio v. Von Clark Davis

### PARTIES and ATTORNEYS

| |
|---|
| Davis, Von Clark (Appellant) |
|     Represented by: |
|         Evans, Timothy (**18593**) |
| State of Ohio (Appellee) |
|     Represented by: |
|         Holcomb, John (**1499**) |

### PRIOR JURISDICTION

| Jurisdiction Information | Prior Decision Date | Case Number(s) |
|---|---|---|
| Butler County, 12th District Court of Appeals | 05/27/1986 | CA8406071 |

### DOCKET ITEMS

- Most documents that were filed in Supreme Court cases after December 1, 2006, are scanned. They are available for viewing via the online dockets, generally within one business day from their date of filing.

- Supreme Court orders that were issued after January 1, 2007, are also available via the online docket as PDFs. Orders scanned prior to April 6, 2009, may not bear the signature of the Chief Justice. These online orders are identical to the original orders in all other respects.
- A 🖼 symbol in an online docket denotes a scanned filing or an electronic version of a Supreme Court order. Clicking the icon opens an image of the filing or order.

| Date Filed | Description |
|------------|-------------|
| 07/21/86 | Notice of appeal by Von Clark Davis<br>*Filed by:*  Davis, Von |
| 07/21/86 | Affidavit of indigency<br>*Filed by:*  Davis, Von |
| 07/23/86 | Original papers |
| 07/24/86 | Original papers letter sent to appellant's attorney |
| 07/24/86 | Original papers letter sent to appellee's attorney |
| 07/28/86 | Return receipt; OP postage $1.67 |
| 07/30/86 | Return receipt; OP postage $1.67 |
| 08/27/86 | Request for extension of time<br>*Filed by:*  Davis, Von |
|  | 08/27/86: Granted; brief due 10/16/86 |
| 09/16/86 | Original papers sent to appellant's attorney; 1 copy; cost $254.20 |
| 09/24/86 | Return receipt; OP postage $10.27 |
| 10/15/86 | Request for extension of time<br>*Filed by:*  Davis, Von |
|  | 10/15/86: Granted; brief due 10/20/86 |
| 10/17/86 | Record; volumes I & II<br>*Filed by:*  Davis, Von |
| 10/17/86 | Appellant merit brief<br>*Filed by:*  Davis, Von |
| 11/17/86 | Appellee merit brief<br>*Filed by:*   State of Ohio |
| 12/02/86 | Request for extension of time<br>*Filed by:*  Davis, Von |
|  | 12/02/86: Granted; reply brief due 12/18/86 |
| 12/18/86 | Reply brief<br>*Filed by:*  Davis, Von |
| 02/26/88 | Application to photograph proceedings by Alfred Behrman |
|  | 02/29/88: Granted |
| 02/29/88 | List of additional authorities |

3/23/2015            Supreme Court of Ohio - Case Number 1986-1171

| | |
|---|---|
| | *Filed by:*  **State of Ohio** |
| 03/02/88 | Oral argument |
| 09/14/88 | Upon consideration of the merits |
| | 09/14/88: Affirmed in part/reversed in part & cause remanded |
| 09/28/88 | Certified copy of entry sent to clerk |
| 09/28/88 | Mandate issued |
| 11/28/88 | Notice of appeal to United States Supreme Court |
| 01/23/89 | Order of United States Supreme Court denying certiorari |
| 01/26/89 | Original papers returned to court/agency |
| 01/30/89 | Return receipt; postage $7.18 |
| 01/30/89 | Return receipt; postage $6.75 |

Back

**Question or Comments?**          ECMS Online 1.2.9

**Home | Contact Us | Search | Feedback | Site Policy | Terms of Use | Career Opportunities**

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 677

TRE:db
6/23/8

ORIGINAL
*n.a.F.*

COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

STATE OF OHIO                    *    Case No. CA84-06-071

    Plaintiff-Appellee   JUN 2 3 1986   **86-1 171**

vs.                              *    NOTICE OF APPEAL

VON CLARK DAVIS                  *

    Defendant-Appellant     *

\* \* \* \* \* \* \* \* \* \* \* \*

    Now comes the Defendant-Appellant and hereby gives
notice of his appeal to the SUPREME COURT OF OHIO from an Opinion
and Judgment Entry of the Court of Appeals, Twelfth Appellate
District, Butler County, Ohio, entered on May 27, 1986, that the
case does involve a substantial constitutional question, that the
case did not originate in the Court of Appeals, and that the case
is of great public and general interest.

                HOLBROCK & JONSON LAW FIRM
                Attorneys for Appellant
                315 S. Monument Avenue
                Hamilton, OH  45011

OC18593

                Telephone:  868-7600

                    *Timothy R. Evans*

              By:_____
                  Timothy R. Evans

### CERTIFICATE OF SERVICE

0001499

    I hereby certify that a copy of the foregoing Notice of
Appeal was forwarded by ordinary U.S. Mail to Mr. John Holcomb,
Prosecuting Attorney, Butler County Courthouse, Hamilton, OH
45011, this 23rd day of June, 1986.

                   *Timothy R. Evans*

             By:_____
                Timothy R. Evans

HOLBROCK & JONSON
  LAWYERS
  ATTORNEYS AT LAW
  315 S.
  315 MONUMENT AVENUE
  P.O. BOX 687
  HAMILTON, OHIO 45012

FILED CO.

JUL 21 1986

SUPREME COURT OF OHIO
JAMES Wm. KELLY, Clerk

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 678





ORIGINAL
*R.F.P.*

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO   86-1 171

STATE OF OHIO,                                     Case No. CR83-12-0614
                                                        J. Bruewer
          Plaintiff,      FILED In Common Pleas Court
                          BUTLER COUNTY, OHIO  *

vs.                          AUG 1 1984   *              ENTRY

VON CLARK DAVIS,          EDWARD S. ROBB, JR.
                                  CLERK
          Defendant.

                  *  *  *  *  *  *  *  *  *  *  *

          Upon application and for good cause shown, the Court
hereby finds that the Defendant herein, Von Clark Davis, is
indigent and unable to secure an attorney for his appeal, and
further finds that said Defendant is unable to pay the expenses
of his appeal, and

          It is hereby the ORDER of the Court that a complete
transcript of proceedings be prepared in the case of The State
of Ohio vs. Von Clark Davis at public expense and timely filed
with the Court of Appeals, Twelfth District of Ohio, Butler
County, Ohio, and

          It is the further ORDER of the Court that Timothy R.
Evans be appointed as counsel of record for Defendant.


                          "Enter"


                                                        JUDGE

                          FILED CO.

                          JUL 21 1986

                          SUPREME COURT OF OHIO
                          JAMES Wm. KELLY, Clerk

HOLBROCK, JONSON
BRESSLER & HOUSER
ATTORNEYS AT LAW
HOLBROCK-JONSON
BUILDING
105 S. MONUMENT AVENUE
P. O. BOX 687
HAMILTON OHIO 45012

P 026 117 476

**RECEIPT FOR CERTIFIED MAIL**

NO INSURANCE COVERAGE PROVIDED
NOT FOR INTERNATIONAL MAIL

(See Reverse)

Sent to
Timothy R. Evans, Esq.
Street and No.
HOLBROCK & JONSON
315 S. Monument Avenue
P.O., State and ZIP Code
Hamilton, OH    45011

| | |
|---|---|
| Postage | $ |
| 86-1171 | |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to whom, and Date Delivered | |
| Return receipt showing to whom, Date, and Address of Delivery | |
| TOTAL Postage and Fees | $ 1.67 |
| Postmark or Date | |

PS Form 3800, Feb. 1982    * U.S.G.P.O. 1984-446-014

---

PS Form 3800, June 1985

TOTAL Postage and Fees $ 1.67

Date, and Address of Delivery
Return Receipt showing to whom,

to whom and Date Delivered
Return Receipt showing

Restricted Delivery Fee

Special Delivery Fee

Certified Fee
86-1171

Postage $
Hamilton, OH 45012
P.O., State and ZIP Code
687 Box
315 S. Monument Ave.
Street and No.
HOLBROCK & JONSON
Sent to Timothy R. Evans, Esq.

(See Reverse)

**RECEIPT FOR CERTIFIED MAIL**

P 426 090 232

* U.S.G.P.O. 1985-480-794

---

P 026 117 477

**RECEIPT FOR CERTIFIED MAIL**

NO INSURANCE COVERAGE PROVIDED
NOT FOR INTERNATIONAL MAIL

(See Reverse)

Sent to
John Holcomb
Street and No.
Butler County Prosecutor
P.O., State and ZIP Code
Butler County Courthouse
Hamilton, OH    45011

| | |
|---|---|
| Postage | $ |
| 86-1171 | |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to whom and Date Delivered | |
| Return receipt showing to whom, Date, and Address of Delivery | |
| TOTAL Postage and Fees | $ 1.67 |
| Postmark or Date | |

PS Form 3800, Feb. 1982    * U.S.G.P.O. 1984-446-014

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 680

**Card 1 (left):**

PS Form 3811, July 1983 447-845

SENDER: Complete items 1, 2, 3 and 4.

Put your address in the "RETURN TO" space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for service(s) requested.

1. ☐ Show to whom, date and address of delivery.

2. ☐ Restricted Delivery.

3. Article Addressed to:
Timothy R. Evans, Esq.
HOLBROCK & JONSON
315 S. Monument Avenue
Hamilton, OH  45011

4. Type of Service:        Article Number
☐ Registered   ☐ Insured
☒ Certified    ☐ COD        P026 117476
☐ Express Mail

Always obtain signature of addressee or agent and DATE DELIVERED.

5. Signature — Addressee
X

6. Signature — Agent
X

7. Date of Delivery
JUL 2 8 1986

8. Addressee's Address (ONLY if requested and fee paid)

**Card 2 (middle):**

PS Form 3811, July 1983 447-845

SENDER: Complete items 1, 2, 3 and 4.

Put your address in the "RETURN TO" space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for service(s) requested.

1. ☐ Show to whom, date and address of delivery.

2. ☐ Restricted Delivery.

3. Article Addressed to:
Timothy R. Evans, Esq.
HOLBROCK & JONSON
315 S. Monument Avenue
Hamilton, OH  45012

4. Type of Service:        Article Number
☐ Registered   ☐ Insured
☒ Certified    ☐ COD        080 232
☐ Express Mail

Always obtain signature of addressee or agent and DATE DELIVERED.

5. Signature — Addressee
X

6. Signature — Agent
X

7. Date of Delivery
SEP 1 9 1986

8. Addressee's Address (ONLY if requested and fee paid)

**Card 3 (right):**

PS Form 3811, July 1983 447-845

SENDER: Complete items 1, 2, 3 and 4.

Put your address in the "RETURN TO" space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for service(s) requested.

1. ☐ Show to whom, date and address of delivery.

2. ☐ Restricted Delivery.

3. Article Addressed to:
John Holcomb
Butler County Prosecutor
Butler County Courthouse
Hamilton, OH  45011

4. Type of Service:        Article Number
☐ Registered   ☐ Insured
☒ Certified    ☐ COD        P026 117477
☐ Express Mail

Always obtain signature of addressee or agent and DATE DELIVERED.

5. Signature — Addressee
X

6. Signature — Agent
X

7. Date of Delivery
JUL 2 5 1986

8. Addressee's Address (ONLY if requested and fee paid)



# The Supreme Court of Ohio

## Columbus

FRANK D. CELEBREZZE, CHIEF JUSTICE
A. WILLIAM SWEENEY
RALPH S. LOCHER
ROBERT E. HOLMES
CLIFFORD F. BROWN
ANDY DOUGLAS
CRAIG WRIGHT

July 24, 1986

JAMES WM. KELLY
CLERK

SAM F. ADKINS
DANIEL J. CROWLEY
PHILIP J. LOMBARDI
CRAIG P. SCOTT
J. ADRIAN REDD
DEPUTY CLERKS

John Holcomb
Butler County Prosecutor
Butler County Courthouse
Hamilton, OH 45011

               Re: S.C. #86-1171; State v. Von Clark Davis

Dear Mr. Holcomb:

On July 23, 1986, the original papers and transcript of proceedings were filed in the above-styled case. Should your files of this case be incomplete, a copy of these papers can be reproduced for your convenience. After reproduction, the copy will be released immediately to you as attorney of record. Exceptions to the release of papers will not be made.

Arrangements for this copy can be made by sending a written request to:

               Office of the Clerk
               Supreme Court of Ohio
               30 East Broad Street
               Columbus, Ohio 43266-0419

               Attn: James Bumbico

As a reminder, the requirements set forth in Rules IV, V, and VI of the Supreme Court Rules of Practice must be observed. Return of the papers is unnecessary as the reproduction costs of the copy will be taxed as costs in the above-styled case.

               Sincerely,

               JAMES WM. KELLY
               Clerk

JWK/jb

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 684

OPF

S.C. CASE NO. $\boxed{8}\boxed{6}\boxed{1}\boxed{1}\boxed{7}\boxed{1}$

78 7-23

ON COMPUTER

STATUS OF PARTY FILING THE DOCUMENT: _____

☐ APPLICATION FOR ATTORNEY FEES FILED

☒ ORIGINAL PAPERS FILED

☐ EXTENSION OF TIME

FILED
JUL 23 1986
SUPREME COURT OF OHIO
JAMES Wm. KELLY, Clerk

COURT ACTION: _____

EFFECTIVE DATE: _____

COMMENT: _____

COMMENT: _____

# HOLBROCK & JONSON LAW FIRM

HOLBROCK-JONSON BUILDING
315 S. MONUMENT AVENUE
P. O. BOX 687
HAMILTON, OHIO 45012

HUGH D. HOLBROCK
GEORGE N. JONSON
TIMOTHY R. EVANS

JOHN T. WILLARD
RICHARD L. HURCHANIK

TELEPHONE
(513) 868-7600

ROBY HOUSER
OF COUNSEL

August 5, 1986



Office of the Clerk
Supreme Court of Ohio
30 East Broad Street
Columbus, OH 43266-0419

Attn: James Bumbico

Re: Case No. 86-1171 - State vs. Von Clark Davis

Dear Mr. Bumbico:

Please be advised that as attorney of record for
the above-mentioned defendant, I am hereby requesting
a copy of <u>all</u> original papers and transcript filed in
the above-mentioned case number at your earliest
convenience.

If you have any questions or need further information,
please feel free to contact me.

Sincerely,

Timothy R. Evans

TRE/db

1271 pgs    AnT
#254.20
9-16



RECEIVED

AUG 6 1986

SUPREME COURT OF OHIO
JAMES Wm KELLY

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 685

ORIGINAL RXT

IN THE SUPREME COURT

STATE OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | * | Case No. 86-1171 |
| Plaintiff | * | |
| vs. | * | DEFENDANT'S MOTION FOR EXTENSION OF TIME TO FILE |
| VON CLARK DAVIS | * | BRIEF |
| Defendant | * | (Death Penalty Case) |

\* \* \* \* \* \* \* \* \* \* \*

Now comes the Defendant by and through his attorney, Timothy R. Evans and respectfully moves the Court for an extension of 90 days, to wit: December 1, 1986, from the due date of his Brief to the Supreme Court being September 2, 1986 for the reason that counsel for Defendant has requested a copy of all original papers and transcript of proceedings, which as of this date have not been sent to counsel, and said documents are to be included in Defendant's Brief to this Court.

HOLBROCK & JONSON LAW FIRM
Attorneys for Defendant
315 S. Monument Avenue
Hamilton, OH 45011
Telephone: 868-7600

By: _Timothy R. Evans_
Timothy R. Evans

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Extension of Time was forwarded by Hand Delivery to Mr. John Holcomb, Butler County Prosecutor, Butler County Courthouse, Hamilton, OH 45011, this 26th day of August, 1986.

By: _Timothy R. Evans_
Timothy R. Evans

HOLBROCK & JONSON
LAW FIRM
HOLBROCK-JONSON
BUILDING
5 S. MONUMENT AVENUE
P. O. BOX 687
HAMILTON, OHIO 45012

FILED

AUG 2 7 1986

SUPREME COURT OF OHIO
JAMES Wm. KELLY, Clerk

# The Supreme Court of Ohio

## Columbus

ON COMPUTER

1986 TERM

To wit: August 27, 1986

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 86-1171 |
| Appellee, | : | |
| | | |
| v. | : | E N T R Y |
| | | |
| Von Clark Davis, | : | **64-154** |
| Appellant. | : | |

On written request of counsel for appellant it is ordered that the time for filing brief is hereby extended to October 16, 1986.

*Frank D. Celebrezze*
FRANK D. CELEBREZZE
Chief Justice

I, James Wm. Kelly, Clerk of the Supreme Court of Ohio, do hereby certify that the foregoing order was correctly copied from the records of said Court, to wit, from the Journal.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Supreme Court, on this 27th day of August, 1986.

JAMES WM. KELLY     CLERK

*Daniel J. Crowley*     DEPUTY

S.C. CASE NO. [8][6][1][1][7][1]

STATUS OF PARTY FILING THE DOCUMENT: _____ANT_____

☐ **APPLICATION FOR ATTORNEY FEES FILED**
☐ **ORIGINAL PAPERS FILED**

ON COMPUTER

☒ **EXTENSION OF TIME**

COURT ACTION: _____Granted_____
EFFECTIVE DATE: _____8/27/86_____
COMMENT: _____ANT Brief due 10/16/86_____

COMMENT: _____Aff of Poverty_____

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 688

ORIGINAL

2xT

ON COMPUTER

IN THE SUPREME COURT

STATE OF OHIO

STATE OF OHIO                    *    Case No. 86-1171

     Appellee            *

vs.                              *    APPELLANT'S MOTION FOR
                                      EXTENSION OF TIME TO FILE
VON CLARK DAVIS                  *    BRIEF

     Appellant           *    (DEATH PENALTY CASE)

       * * * * * * * * * * *

     Now comes the Appellant by and through his attorney,
Timothy R. Evans and respectfully moves the Court for an exten-
sion of four (4) days, to wit: October 20, 1986, for the reason
that Appellant's counsel needs additional time in which to finish
said brief in that it is a very lengthy Brief and Record and said
attorney's office has had problems with their copy machine due to
the excessive amount of copying for said Brief and Record.

                  HOLBROCK & JONSON LAW FIRM
                  Attorneys for Appellant
                  315 S. Monument Avenue
                  Hamilton, OH  45011
                  Telephone:  868-7600

                  By: _Timothy R. Evans_____
                       Timothy R. Evans


### CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing Motion for
Extension of Time was forwarded by ordinary U.S. Mail to Mr. John
Holcomb, Butler County Prosecutor, Butler County Courthouse,
Hamilton, OH  45011, this 15th day of October, 1986.

                  By: _Timothy R. Evans_____
                     Timothy R. Evans

HOLBROCK & JONSON
LAW FIRM
HOLBROCK-JONSON
BUILDING
S S. MONUMENT AVENUE
P. O. BOX 687
HAMILTON, OHIO 45012

FILED CO.

OCT 15 1986

SUPREME COURT OF OHIO

# The Supreme Court of Ohio

## Columbus




ON COMPUTER

1986 TERM

To wit:  October 15, 1986

State of Ohio,                     :          Case No.  86-1171
    Appellee,                    :

      v.                        :             E N T R Y

Von Clark Davis,                   :
    Appellant.                   :          64 - 284

On written request of counsel for appellant it is ordered
that the time for filing brief is hereby extended to October
20, 1986.

_____

FRANK D. CELEBREZZE
Chief Justice

I, James Wm. Kelly, Clerk of the Supreme Court of Ohio, do
hereby certify that the foregoing order was correctly copied
from the records of said Court, to wit, from the Journal.

IN WITNESS WHEREOF, I have hereunto subscribed my name
and affixed the seal of said Supreme Court, on this
15th day of October, 1986.

_____JAMES WM. KELLY_____   CLERK

_____Daniel J. Crowley_____   DEPUTY

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 691

S.C. CASE NO. 8 6 1 1 7 1

STATUS OF PARTY FILING THE DOCUMENT: _Ant_

☐ APPLICATION FOR ATTORNEY FEES FILED

☐ ORIGINAL PAPERS FILED          ON COMPUTER

☒ EXTENSION OF TIME

    COURT ACTION: _GRT_

    EFFECTIVE DATE: _10-15-86_

    COMMENT: _Ants Merit Brief Due 10-20_

COMMENT: _AFP_

**ORIGINAL** *RDF*

IN THE

SUPREME COURT OF OHIO

STATE OF OHIO     *    Case No. 86-1171

      Appellee     *

vs.     *

VON CLARK DAVIS     *

      Appellant     *   *BR10-17*
ON COMPUTER

ON APPEAL FROM THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

(DEATH PENALTY CASE)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RECORD     VOL. I

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorney for Appellee:

John Holcomb
Butler County Prosecutor
Butler County Courthouse
Hamilton, OH 45011
Telephone: (513) 867-5722

Attorney for Appellant:

Timothy R. Evans
HOLBROCK & JONSON LAW FIRM
315 S. Monument Avenue
Hamilton, OH 45011
Telephone: 868-7600



FILED

OCT 17 1986

SUPREME COURT OF OHIO
JAMES Wm. KELLY, Clerk

TABLE OF CONTENTS

VOLUME 1:    TRANSCRIPT OF PROCEEDINGS        1  to   443

             TRANSCRIPT OF MOTIONS          444  to   505

VOLUME 2:    PLEADINGS AND EXHIBITS         506  to   633

             Section 1:  Pleadings         506  to   605

             -Entry (Hamilton Municipal Court               506
             -Notice to Supreme Court of Filing of
                Indictment                                  507
             -Summons on Indictment                         508
             -Indictment                                    510
             -Entry Scheduling Pretrial Hearing and
                Continuing Trial Date                       512
             -Order                                         513
             -Counsel Asignment                             514
             -Certificate                                   515
             -Entry                                         516
             -Entry Ordering Special Venire Pursuant to
                ORC 2945.18                                 517
             -Entry Ordering Additional Special Venire
                Pursuant to ORC 2945.19                     518
             -Entry Ordering Additional Special Venire
                Pursuant to ORC 2945.19                     519
             -Order                                         520
             -Precipe                                       521
             -Entry                                         522
             -Waiver and Election                           526
             -Jury Waiver and Election of Three Judge
                Panel                                       527
             -Motion and Entry                              528
             -Entry Designating Three Judge Panel           530
             -Motion and Entry                              532
             -Clerk's Transcript Fee for an Indigent
                Defendant                                   533
             -Certificate                                   534
             -Entry of Findings                             535
             -Entry                                         536
             -Judgment of Conviction Entry and Writ
                for the Execution of the Death Penalty      537
             -Opinion                                       539
             -Application for Assigned Counsel Fees         542
             -Counsel Assignment                            543
             -Notice of Appeal                              544
             -List of Pleadings Filed, Writs Issued
                Writs Returned and Copies of Returned       546
             -Scheduling Order                              550
             -Letter From Ohio Department of Rehabilitation

| | |
|---|---|
| and Correction | 552 |
| -Criminal Docket Statement | 553 |
| -Motion for Extension of Time in Which to File Transcript | 555 |
| -Entry Granting Stay of Execution | 556 |
| -Motion for Extension of Time in Which to File Appellant's Brief | 557 |
| -Motion for Leave to File Appellant's Brief Beyond 20-page Court Limitation | 558 |
| -Entry | 559 |
| -Entry | 560 |
| -Notice of Oral Argument | 561 |
| -Motion for Extension of Time to File Brief by Appellee | 562 |
| -Entry | 563 |
| -Motion for Extension of Time to File Brief by Appellee | 564 |
| -Entry | 565 |
| -Motion of Appellee | 566 |
| -Entry | 567 |
| -Motion for Extension of Time to File Appellant's Reply Brief | 568 |
| -Entry | 569 |
| -Judgment Entry | 570 |
| -Separate Opinion Pursuant to R.C. 2929.05(A) | 571 |
| -Mandate - Judgment Entry | 572 |
| -Opinion of Court of Appeals | 573 |
| -Separate Opinion Pursuant to R.C. 2929.05(A) | 605 |

Section 2: Joint Exhibits   606  to  611

| | |
|---|---|
| -Exhibit No. 1 | 606 |
| -Exhibit No. 2 | 608 |
| -Exhibit No. 3 | 609 |
| -Exhibit No. 4 | 611 |

Section 3: State's Exhibits   612  to  633

| | |
|---|---|
| -Exhibit No. 3 | 612 |
| -Exhibit No. 4 | 612 |
| -Exhibit No. 5 | 612 |
| -Exhibit No. 6 | 613 |
| -Exhibit No. 7 | 613 |
| -Exhibit No. 8 | 613 |
| -Exhibit No. 9 | 614 |
| -Exhibit No. 10 | 614 |
| -Exhibit No. 11 | 614 |
| -Exhibit No. 12 | 615 |
| -Exhibit No. 13 | 616 |
| -Exhibit No. 15 | 617 |
| -Exhibit No. 16 | 617 |

-Exhibit No. 17     617
-Exhibit No. 18     618
-Exhibit No. 19     619
-Exhibit No. 21     620
-Exhibit No. 22     621
-Exhibit No. 23     622
-Exhibit No. 24     624
-Exhibit No. 25     626
-Exhibit No. 26     627
-Exhibit No. 28     628
-Exhibit No. 29     630
-Exhibit No. 30     631
-Exhibit No. 31     632

CERTIFICATE OF SERVICE     634

**ORIGINAL** *ROP*

IN THE

SUPREME COURT OF OHIO

STATE OF OHIO        *     Case No. 86-1171

       Appellee      *

vs.        *

VON CLARK DAVIS     *    *BR 10-11*

       Appellant      *   ON COMPUTER

ON APPEAL FROM THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

(DEATH PENALTY CASE)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RECORD    *VOL. 2*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorneys for Appellee:          Attorneys for Appellant:

John Holcomb                 Timothy R. Evans
Butler County Prosecutor       HOLBROCK & JONSON LAW FIRM
Butler County Courthouse       315 S. Monument Avenue
Hamilton, OH 45011            Hamilton, OH 45011
Telephone: (513) 867-5722     Telephone: 868-7600



FILED

OCT 17 1986

SUPREME COURT OF OHIO
JAMES Wm. KELLY, Clerk

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 696

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Record was forwarded by ordinary U.S. Mail to Mr. John Holcomb, Butler County Prosecutor, Butler County Courthouse, Hamilton, Ohio, this 17th day of October, 1986.

By: _____
Timothy R. Evans

**ORIGINAL** *B7F*



IN THE

SUPREME COURT OF OHIO

*BR 10-17*
**ON COMPUTER**

| | | |
|---|---|---|
| STATE OF OHIO | * | Case No. 86-1171 |
| Appellee | * | |
| vs. | * | |
| VON CLARK DAVIS | * | |
| Appellant | * | |

ON APPEAL FROM THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

(DEATH PENALTY CASE)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BRIEF OF APPELLANT

VON CLARK DAVIS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorneys for Appellee:

John Holcomb
Butler County Prosecutor
Butler County Courthouse
Hamilton, OH 45011
Telephone: (513) 867-5722

Attorneys for Appellant:

Timothy R. Evans
HOLBROCK & JONSON LAW FIRM
315 S. Monument Avenue
Hamilton, OH 45011
(513) 868-7600



FILED

OCT 17 1986

SUPREME COURT OF OHIO
JAMES Wm. KELLY, Clerk

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 698

TABLE OF CONTENTS

PAGES

TABLE OF AUTHORITIES ............................. TAl

NOTICE TO THIS COURT ............................. N

STATEMENT OF THE CASE ............................ 1

STATEMENT OF FACTS ............................... 3

PROPOSITION OF LAW I ............................. 9

WHERE THE THREE JUDGE PANEL INCLUDED
NON-STATUORY AGGRAVATING FACTORS IN WEIGHING
THE MITIGATING FACTORS, THE DEATH PENALTY IS
INVALID AND CONTRARY TO LAW.

Authorities:

State vs. Johnson, 24 Ohio St. 3d 87 (1986) .. 10,14

Godfrey vs. Georgia, 446 U.S. 420 (1980) ..... 10,14

Profitt vs. Wainright, 685 F.2d 1227 (1982) . 11,12

Ohio Revised Code §2929.04(A)(5) ............. 9

Ohio Revised Code §2929.03(F) ................ 9

Ohio Revised Code §2941.14(B) ................ 10

Henry vs. Wainwright, 661 F.2d 56 (1981) ..... 11

Furman vs. Georgia, 508 U.S. 238,
92 S. Ct. 2726 (1972) ........................ 11,12

Stephens vs. Zant, 631 F.2d 397 (5th Cir. 1980) 12

PROPOSITION OF LAW II ............................ 15

WHERE THE TRIAL COURT CONSIDERED NONSTATUTORY
AGGRAVATING CIRCUMSTANCES IN SENTENCING
DEFENDANT TO DEATH, THE COURT OF APPEALS MAY
NOT INDEPENDENTLY WEIGH THE AGGRAVATING AND
MITIGATING FACTORS BUT MUST REQUIRE THE
DEFENDANT BE RESENTENCED.

Authorities:

Gregg vs. Georgia, 428 U.S. 153 (1976) .......       15

Godfrey vs. Georgia, 446 U.S. 420 (1980) .....       15

Henry vs. Wainwright, 661 F.2d 56 (5th Cir. 1981)    16

Gardner vs. Florida, 430 U.S. 349 (1977) .....       17

Note, Capital Punishment:  Impairment of a Death
Sentence by the Invalidity of an Aggravating
Circumstance, 52 U.Cin.L.Rev. 541 (1983) .....       17

Ohio Revised Code §2929.05 ...................       15,16

PROPOSITION OF LAW III ...........................       18

WHERE THE TRIAL COURT DENIED DEFENDANT'S
MOTION TO BIFURCATE THE TRIAL, WHEN THE
DEFENDANT IS CHARGED WITH AGGRAVATED MURDER
WITH A SPECIFICATION THAT HE WAS PREVIOUSLY
CONVICTED OF HOMICIDE AND ALSO WITH HAVING
WEAPONS UNDER DISABILITY, THE DEFENDANT'S
RIGHT TO A TRIAL BY AN IMPARTIAL JURY IS
VIOLATED AND THE CASE MUST BE REMANDED FOR A
NEW TRIAL.

Authorities:

State vs. Henry, 4 Ohio St. 3d 44 (1983)......       20,21

State, ex rel Corrigan, Prosecuting Attorney
vs. McMonigle Judge, 12 Ohio St. 3d 15 (1984)        21

Ohio Revised Code §2934.18                           21

Ohio Revised Code §2945.20                           20,21

Ohio Revised Code §2929.04(A)(5)                     18

Ohio Revised Code §2929.022(A)                       18,22

Ohio Revised Code 2929.03                            19

Ohio Rule of Criminal Procedure 8(A) .........       19,21

Ohio Rule of Criminal Procedure 14 ...........       19,20,21

PROPOSITION OF LAW IV ............................       23

WHERE THE DEFENDANT MOVES TO DISMISS AND TO
INSPECT THE GRAND JURY TRANSCRIPT FOR PURPOSES

OF SHOWING THAT THE INDICTMENT AGAINST HIM WAS
NOT BASED UPON PROBABLE CAUSE AND THAT THE
INDICTMENT WAS FOUNDED ON ILLEGAL AND
INCOMPETENT EVIDENCE, THE DEFENDANT HAS A
RIGHT TO INSPECT THE GRAND JURY TESTIMONY, AND
THE COURT ERRS IN FAILING TO ALLOW THE
DEFENDANT TO INSPECT THE GRAND JURY
TRANSCRIPT.

Authorities:

Antrobus vs. Indiana, 254 N.E. 2d 873 ........          30

Arizona vs. McCormick, 448 P. 2d 74 ..........          30

Bressler vs. People, 8 NE 2d 62 ..............          27

Commonwealth vs. Stewart, 309 N.E. 2d 470 ....          31

Dennis vs. U.S., 384 U.S. 855 ...............          30

Earl of Shaftsberry Case, 1681 ...............          24

Marvin F. Frankle and Gary P. Nefcalus-The Grand
Jury, An Institution on Trial ...............          24

Holzworth-The Histroy of English Law .........          24

In Grand Jury Summoned October 12, 1970,
321 F. Supp. 238 .............................          28

Jencks Act, 18 USC Section 3500 .............          26

Ohio Rules of Criminal Procedure, Rule 6 .....       26,27

Parlapiano vs. District Court, 491 P. 2d 965 .          31

People vs. Dunc, 201 NW 2d 629 ..............          28

Report and Recommendation of June 5, 1972 Grand
Jury, 375 F. Supp. 1219 ......................          28

Shelby vs. Sixth Judicial District Court
414 P. 2d 942 ...............................          29

State vs. Dewell, 196 S. 687, Sup. Ct. of Florida          29

Stephens-History of Criminal Law in England ..          24

U.S. vs. Hernandez, 290 f. 2d 86 ............          30

United States vs. Hughes, 413 F. 2d 1244 ..... 30

United States vs. Ramirez, 482 F. 2d 807 ..... 27

8 Wigmore on Evidence, Section 2360 .......... 25

PROPOSITION OF LAW V ............................ 33

WHERE OHIO REVISED CODE §2929.05 REQUIRES THE
COURT TO CONSIDER WHETHER THE SENTENCE IS
EXCESSIVE OR DISPROPORTIONATE TO THE PENALTY
IMPOSED IN SIMILAR CASES, THE PENALTY IMPOSED
UPON THE APPELLANT IS OUT OF PROPORTION TO THE
OTHER SENTENCES GIVEN IN THE COUNTY.

Authorities:

Gregg vs. Georgia, 428 U.S. 153 (1976) ....... 33

State vs. Gaither, Case No. CR84-02-0125,
August 27, 1984, Butler Co. C.P., unreported . 34

Ohio Revised Code §2929.05(A) ................ 33

State vs. Gill, Case No. CR84-03-0200 (June 21,
1984), Butler Co. C.P., unreported .......... 34

State vs. Johnson, Case No. CR83-07-0302,
**December 2, 1983, Butler Co. C.P., unreported** 34

State vs. Pierce, Butler App. No. CA84-10-125
(March 17, 1986), unreported ................ 35

PROPOSITION OF LAW VI ............................ 36

WHERE THE COURT IMPOSES A DEATH SENTENCE UPON
THE DEFENDANT, THE COURT ERRS ON THE GROUNDS
THAT THE DEATH PENALTY IS UNCONSTITUTIONAL FOR
THE FOLLOWING REASONS:

1.   The death penalty as authorized by
the Ohio Revised Code, deprives the Defendant
of his life for that due process of law
guaranteed in Article One, Section 16 of the
Ohio Constitution and the Fourteenth Amendment
to the United State Constitution.

2.   Ohio's death penalty violates the
Eighth Amendment of the United States
Constitution and Ohio Constitution, Article

One, Section 9 prohibiting the infliction of cruel and unusual punishment.

3. The death penalty is arbitrarily and capriciously inflicted, constituting a denial of equal protection of the laws under the Eighth and Fourteenth Amendments of the U.S. Constitution and Article One, Section 9 and 16 of the Ohio Constitution.

4. The death penalty sections of the Ohio Revised Code deprive the Defendant of due process of law under the Fourteenth Amendment and Article One, Section 16 of the Ohio Constitution and constitute cruel and unusual punishment under the Eighth Amendment and Article One, Section 9 of the Ohio Constitution as it permits imposition of the death penalty on a less than adequate showing of guilt. It is also unconstitutional because it requires proof of aggravating circumstances during the guilt determination state of death penalty deliberations.

5. The death penalty is unconstitutional because it denies the Defendant the right to a trial before an impartial jury as guaranteed by the Sixth and Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of Ohio Constitution.

6. The death penalty is unconstitutional because it has a chilling effect on the Defendant's right to a jury trial guaranteed by the Sixth and Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Ohio Constitution.

7. Section 2945.25(C) of the Ohio Revised Code violates the Defendant's right to an impartial jury on the determination of guilt.

8. The Ohio death penalty fails to provide a sentencing authority with an option to choose a life sentence when there are aggravating circumstances and no mitigating circumstances and is, therefore, unconstitutional under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 9 and 16 of the Ohio Constitution.

9. The death penalty authorized by the Ohio Revised Code violates the Eighth Amendment and the Fourteenth Amendment clauses of the U.S. Constitution and the cruel and unusual punishment provisions and due process clauses of the State Constitution in that several of the aggravating circumstances set forth in Ohio Revised Code 2929.04(A) are overbroad and vague and fail to reasonably justify the imposition of the ultimate sentence.

Authorities:

Arnold vs. State, 236 GA. 534, 224 S.E. 2d 386        55

Bailey, Deterent Effect of the Death Penalty for Murder in Ohio, 28 Cleveland State L.R. 51        38

Barclay vs. Florida, 103 Sup. Ct. 3428 .......        49

Beck vs. Alabama, 447 U.S. 625 ..............        44

Bowers and Pierce, Arbitrariness and Discrimination in Post Furman Capital Statutes Crime, Pg. 563, October 1980 ................        40

Bowers and Pierce, The Illusion of Deterence in Isaac Ehrlich's Research on Capital Punishment, 85 Yale Law Journal 187 .....................        38

Coker vs. Georgia, 433 U.S. 584 .............        39

Commonwealth vs. O'Neil, 327 N.E. 2d 668 .....        37

Cross vs. Ledford, 161 Ohio St. 269, 120 N.E. 2d 118 .............................        45

Furman vs. Georgia, 408 U.S. 238 ............        42,55

Glazer, Capital Punishment, Deterent to Murder, 10 Univ. of Toledo L.R. 317 .................        38

Godfrey vs. Georgia, 446 U.S. 420 ...........        57

Gregg vs. Georgia, 428 U.S. 153 .............        37,56,57

In Re Winship, 397 U.S. 358 .................        46

Locket vs. Ohio, 438 U.S. 586 ...............        44

Ohio Revised Code §2903 and 2904 .............   39

Ohio Revised Code §2929.02(2) ................   48,49

Ohio Revised Code §2929.02(2)(A)(1) ..........   47

Ohio Revised Code §2929.03 ...................   47,49,51

Ohio Revised Code §2929.03(D)(2) .............   53

Ohio Revised Code §2929.03(F) ................   42

Ohio Revised Code §2929.04(A)(5) .............   47

Ohio Revised Code §2929.05 ...................   43

Ohio Revised Code §2929.05(A) ................   42

Ohio Revised Code §2945.25(C) ................   52

Robinson vs. California, 370 U.S. 660 ........   39

Scurry vs. United States, 347 S. 2d 468 ......   45

State vs. Crenshaw, 51 O.A. 2d 63 ............   46

State vs. Furman, 408 U.S. 346 ...............   39

State vs. Jenkins, 15 Ohio St. 3d 164 (1984) .   58

State vs. Grosgene, Case No. CR82-6155, Lucas
County Common Pleas Court ....................   41

State vs. McClellan, 12 O.A. 2d 204 ..........   53

State vs. McDugle, 301 S.E. 2d 308 ...........   56

Witherspoon vs. Illinois, 391 U.S. 510 .......   51

Woodman vs. North Carolina, 428 U.S. 305 .....   44

Zant vs. Stephens, 103 Sup. Court 2743 .......   49,58

PROPOSITION OF LAW VII ...........................   59

WHERE THE SPECIFICATION OF THE INDICTMENT
CHARGED THE APPELLANT WITH A PRIOR HOMICIDE
THAT OCCURRED THIRTEEN YEARS PRIOR TO THE
HOMICIDE IN QUESTION, SUCH SPECIFICATION WAS
TOO REMOTE IN TIME TO BE USED AS AN
AGGRAVATING CIRCUMSTANCE.

Authorities:

State vs. George, Case No. Ca83-04-034, 12th
District Court of Appeals, unreported ........        59

PROPOSITION OF LAW VIII .........................        61

WHERE THE TESTIMONY OF THE STATE'S WITNESSES
IS CONTRADICTORY TO THE POINT THAT CREDIBILITY
IS QUESTIONABLE AND THE STATE PRESENTS NO
EVIDENCE OF PRIOR CALCULATION AND DESIGN, THE
CONVICTION OF AGGRAVATED MURDER WAS AGAINST
THE MANIFEST WEIGHT OF THE EVIDENCE.

Authorities:

Ohio Revised Code §2903.01(A) ...............        62

State vs. Jenkins, 48 O.A. 2d 99 ............        64

State vs. Kulig, 37 O.S. 2d 157 .............        65

State vs. Reed, 65 Ohio St. 2d 117 ..........        64

CONCLUSION ......................................        67

APPENDIX

Notice of Appeal to the Supreme Court ........        68

Assignments of Errors filed in the Court of
Appeals ....................................        69

Opinion of the Court of Appeals ..............        70

Separate Opinion of the Court of Appeals .....       102

Judgment Entry of the Court of Appeals .......       103

Opinion of the Court of Common Pleas .........       104

Judgment of Conviction Entry and Writ for the
Execution of the Death Penalty of the Court of
Common Pleas ...............................       107

Ohio Revised Code 2903 .......................       109

Ohio Revised Code 2929.02(2) .................       135

Ohio Revised Code 2929.03 ....................       137

Ohio Revised Code 2929.04(A)(5) ..............     142

Ohio Revised Code 2929.05 ....................     143

Ohio Revised Code 2941.14(B) ................     144

Ohio Revised Code 2945.20 ...................     145

Ohio Revised Code 2945.25(C) ................     147

State vs. Gaither, Case No. CR84-02-0125,
August 27, 1984, Butler Co. C.P., unreported .    148

State vs. George, Case No. CA83-04-034, 12th
District Court of Appeals, unreported ........    150

State vs. Gill, Case No. CR84-03-0200, June 21,
1984, Butler Co. C.P., unreported ............    162

State vs. Johnson, Case No. CR83-07-0302,
December 2, 1983, Butler Co. C.P., unreported
     174

State vs. Pierce, Butler App. No. CA84-10-125
March 17, 1986, unreported ...................    176

CERTIFICATE OF SERVICE ...........................    197

TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT CASES:                  PAGES

Barclay vs. Florida, 103 S.Ct. 3428 .............    49

Beck vs. Alabama, 447 U.S. 625 ..................    44

Coker vs. Georgia, 433 U.S. 584 .................    39

Dennis vs. U.S., 384 U.S. 855 ...................    30

Furman vs. Georgia, 408 U.S. 238, 92 S. Ct. 2726
(1972) ..........................................    11,12,42,55

Gardner vs. Florida, 430 U.S. 349 (1977) ........    17

Godfrey vs. Georgia, 446 U.S. 420 (1980) ........    10,14,15,57

Gregg vs. Georgia, 428 U.S. 153 (1976) ..........    15,33,37,56,
                                                     57

In Re Winship, 397 U.S. 358 .....................    46

Lockett vs. Ohio, 438 U.S. 586 ..................    44

Robinson vs. California, 370 U.S. 660 ...........    39

Witherspoon vs. Illinois, 391 U.S. 510 ..........    51

Woodsen vs. North Carolina, 428 U.S. 305 ........    44

Zant vs. Stephens, 103 S.Ct. 2743 ...............    49,58


FEDERAL COURT:

Henry vs. Wainwright, 661 F.2d 56 (1981) ........    16

In Grand Jury Summoned October 12, 1970, 321 F.
Supp. 238 .......................................    28

Proffitt vs. Wainwright, 685 F.2d 1227 (1982) ...    11,12

Report and Recommendation of June 5, 1972 Grand
Jury, 375 F.Supp. 1219 ..........................    28

Stephens vs. Zant, 631 F.2d 397 (5th Cir. 1980) ..   12

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 708

U.S. vs. Hernandez, 290 F.2d 86 .................. 30

U.S. vs. Hughes, 413 F.2d 1244 ................... 30

U.S. vs. Ramirez, 482 F.2d 807 ................... 27

OHIO AUTHORITIES:

Cross vs. Ledford, 161 Ohio St. 269, 120 N.E. 2d
118 ............................................. 45

Ohio Rule of Criminal Procedure 6 ............... 26,27

Ohio Rule of Criminal Procedure 8A .............. 19,21

Ohio Rule of Criminal Procedure 14 .............. 19,20,21

State, ex Rel Corrigan, Prosecuting Attorney vs.
McMonigle Judge, 12 Ohio St. 3d 15 (1984) ....... 21

State vs. Crenshaw, 51 Ohio App. 2d 63 .......... 46

State vs. Gaither, Case No. CR84-02-0125,
August 27, 1984, Butler Co. C.P., unreported ..... 34

State vs. George, Case No. CA83-04-034, 12th Dist.
Court of Appeals, unreported ..................... 59

State vs. Gill, Case No. CR84-03-0200, June 21,
1984, Butler Co. C.P., unreported ............... 34

State vs. Grosgene, Case No. CR82-6155, Lucas Co.
C.P., unreported ................................. 41

State vs. Henry, 4 Ohio St. 3d 44 (1983) ........ 20,21

State vs. Jenkins, 15 Ohio St. 3d 164 (1984) ..... 58,64

State vs. Johnson, Case No. CR83-07-0302, December
2, 1983, Butler Co. C.P., unreported ............ 34

State vs. Johnson, 24 Ohio St.3d 87 (1986) ....... 10,14

State vs. Kulig, 37 Ohio St. 2d 157 .............. 65

State vs. McClellan, 12 Ohio App. 2d 204 ......... 53

State vs. Pierce, Butler App. No. CA84-10-125,
March 17, 1986) unreported ....................... 35

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 709

State vs. Reed, 65 Ohio St. 2d 117 .............. 64

OHIO REVISED CODES:

Ohio Revised Code 2903.01(A) ..................... 62

Ohio Revised Code §2929.022(A) ................... 18,22,47

Ohio Revised Code §2929.03(F) .................... 9,19,42

Ohio Revised Code §2929.04(A)(5) ................ 9,18,47

Ohio Revised Code §2929.05 ...................... 15,16,43

Ohio Revised Code §2934.18 ...................... 21

Ohio Revised Code §2941.14(B) ................... 10

Ohio Revised Code §2945.20 ...................... 20,21

OTHER AUTHORITIES:

Antrobus vs. Indiana, 254 N.E. 2d 873 ........... 30

Arizona vs. McCormick, 448 P.2d 74 .............. 30

Arnold vs. State, 236 GA. 534, 224 S.E. 2d 386 ... 55

Bailey, Deterent Effect of the Death Penalty for
Murder in Ohio, 28 Clev. St. L.R. 51 ............ 38

Bowers & Pierce, Arbitrariness and Discrimination in
Post Furman Capital Statutes Crime, Pg. 563,
October 1980 ................................... 40

Bowers & Pierce, The Illusion of Deterence in Isaal
Ehrlich's Research on Capital Punishment, 85 Yale
L.J. 187 ....................................... 38

Bressler vs. People, 8 N.E. 2d 62 ............... 27

Note, Capital Punishment, Impairment of a Death
Sentence by the Invalidity of an Aggravating
Circumstance, 52 U.Cin.L.Rev. 541 (1983) ........ 17

Commonwealth vs. O'Neil, 327 N.E. 2d 668 ........ 37

Commonwealth vs. Stewart, 309 N.E. 2d 470 ....... 31

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 710

Earl of Shaftsberry Case, 1681 ................... 24

Glazer, Capital Punishment, Deterent to Murder,
10 Univ. of Toledo L.R. 317 ...................... 38

Marvin F. Frankle and Gary P. Nefcalus - The Grand
Jury, An Institution on Trial .................... 24

Holzworth - The History of English Law ........... 24

Jencks Act, 18 USC §3500 ......................... 26

Parlapiano vs. District Court, 491 P.2d 965 ...... 31

People vs. Dunc, 201 N.W. 2d 629 ................. 28

Scurry vs. U.S., 347 S.2d 468 .................... 45

Shelby vs. Sixth Judicial District Court,
414 P. 2d 942 .................................... 29

State vs. Dewell, 196 S. 687, Sup. Ct. of Florida   29

State vs. McDugle, 301 S.E. 2d 308 ............... 56

Stephens - History of Criminal Law in England ....  24

8 Wigmore on Evidence, Section 2360 .............. 25

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 711

## NOTICE TO THIS COURT

Where the designation of Tp. issues, this refers to the transcript of proceedings, which is included in the Record in this case.

Where the designation of Tm. issues, this refers to the transcript of motions, which is included in the Record in this case.

N

## STATEMENT OF THE CASE

### Procedural Posture

On January 6, 1984, Defendant-Appellant Von Clark Davis was indicted by the Grand Jury of Butler County for the Crime of Aggravated Murder in violation of Ohio Revised Code §2903.01(A) with two specifications. The first specification being that Von Clark Davis had previously been convicted, in 1971, of murder in the second degree; and the second was that Davis had a firearm on or about his person, or under his control while committing the offense at bar. Count Two of the Indictment alleged that Von Clark Davis did knowingly have, carry and use a firearm having previously been convicted of felonies of violence, i.e., shooting with intent to wound on April 10, 1970, and second degree murder on April 20, 1971, in violation of Ohio Revised Code §2923.13(A)(2).

Von Clark Davis waived his right to be tried by a jury and elected to be tried by a three judge panel. The guilt phase of the trial commenced on May 9, 1984 in the Butler County Court of Common Pleas. The three judge panel found the defendant guilty of both Counts of the Indictment and of both specifications to Count One. The penalty phase of the trial was held on May 29, 1984, and the panel sentenced Von Clark Davis to death.

[1]

The appellant appealed to the Court of Appeals, Butler County, Ohio, who affirmed appellant's conviction and sentence of death.

[2]

## STATEMENT OF FACTS

On December 12, 1983, the Hamilton Police Department investigated a shooting at the American Legion Post #520, located at 727 Central Avenue. The body of the deceased, Suzette Butler, was found lying outside the front door. An autopsy performed under the direction of Dr. Burkhardt, Butler County Coroner, indicated the cause of death to be from multiple gunshot wounds. Detective Ron Wells of the Hamilton Police Department was called to investigate the homicide and processed the scene for evidence. Four cartridge cases were recovered at the scene and evidence indicated all four cartridges were fired from the same weapon. A B.C.I. Criminologist, Ronald Dye, testified that the projectiles recovered from the autopsy were examined and he determined they could have only been fired from a Raven or Astra .25 caliber semi-automatic pistol. (Tp. 41-45).

Mark Lovitt testified that he was sitting in Gabe's Tavern when another individual came in to get Lovitt and they they thereafter went to Gill's Pawn Shop with Von Clark Davis and bought a .25 caliber Raven. They went back to Gabe's, then later went to K-Mart to get bullets. Later on, they had to go down to Fairfield to get more bullets. (Tp. 59-70).

Wade Coleman, Von Davis' cousin, testified that he went to the bar and picked up Lovitt and that they did indeed go to buy the gun. He also stated that Von Clark Davis had told him

[3]

that he wanted the gun for protection. (Tp. 79-85). Phyllis Becker, the clerk at Gill's Pawn Shop, identified the purchase form filled out by Mark Lovitt and testified that this type of pistol was a popular type of pistol to keep at the house. (Tp. 90-93). Ron Williams, clerk of the Butler County Gun Store, testified that he did sell a box of PMC 25 auto bullets and that he showed several individuals how to load them into the gun. (Tp. 94-96).

The next witness was Mona Aldridge, who testified that she was with the deceased on the day she died and that she had met her that same day at 5:00 p.m. at the American Legion. Von Clark Davis entered the American Legion about five minutes later and was talking to Suzette Butler, the deceased. They then left the bar and went outside. Before leaving, the deceased told Mona that she would be right back and that she left her jacket and cigarettes there. After several minutes, Mona Aldridge went to the door, opened the door and looked out, and testified that she saw Von Clark Davis point the gun at the deceased's head. She testified that about three or four feet separated Von Clark Davis from Suzette Butler (even though the coroner had testified that the distance would be less then a foot) and then testified that someone ran in behind her and said Suzette Butler was shot. This was about one and half minutes later. Mona Aldridge then testified that she walked to the phone but didn't say anything to anybody and that as she was walking to the phone, somebody ran by

[4]

her and said that the deceased had been shot. she testified that she didn't call the police because somebody was on the phone at the time. She also testified that she and Suzette Butler had no plan to go to the Legion nor was there any plan to meet Von Clark Davis there the day of the shooting, and it was just a coincidence that they all were there on the day in question. Ms. Aldridge also testified that Von Davis came in, they all sat at a table together for a few minutes and that Von Clark Davis walked out first and then Suzette Butler followed him out. (Tp. 104-122).

The next witness was Cozette Massey. She testified that she was walking by the Legion with her boyfriend, Reginald Denmark, she saw the shooting and she saw Von Clark Davis put the gun in his pocket then and walk to a car. She testified that she knew Tony Ferguson, but she didn't see him there that night. She testified when she heard two shots she then looked up and that's when she saw Von Clark Davis put the gun in his pocket and walk away. (Tp. 135-149). Reginald Denmark, Cozette Massey's boyfriend, was standing on the street with Cozette Massey, when he saw Von Clark Davis pull the gun, put the gun to her head and fire, that he was twenty to thirty feet away. (Tp. 166-168).

Jodanna Miles was likewise at the American Legion that night and she was the girl who passed behind Mona Aldridge and said that Suzette Butler had been shot. She testified that it looked to her like Von Clark Davis and Suzette Butler had been

[5]

arguing. (Tp. 131). In addition, Mona Aldridge had given a statement to the police that also said that they were arguing, however, at trial she denied that there was any argument between the two. At that point, the State rested and the defendant moved for a verdict of acquittal on the basis the State had not proven prior calculation and design, which motion was denied.

The defense then went forward. Both Cozette Massey and Reginald Denmark had told the story in their testimony that they had told a black police officer they had seen it but told him that they didn't want to give their name and they were therefore told just to get out of the way and get back into the crowd. The defense presented the testimony of John Hill, a black officer, who was not at the scene and of Essex Sheppard who was the only black officer at the scene. Essex Sheppard testified that no one came up to him that night and told him they had seen it and that he advised no one to get back into the crowd when they refused to give their names after saying that they were a witness to the crime. (Tp. 237-240).

Tony Ferguson was called as a defense witness. He had testified at the Municipal Court at the preliminary hearing. His testimony differed greatly from that at the preliminary hearing. He claimed that while he didn't see Reginald Denmark and Cozette Massey at the scene, he saw Von Clark Davis shoot Suzette Butler; that after the shooting, Von Clark Davis moved towards him and he, Tony Ferguson, pulled his 44 Magnum out of his shoulder

[6]

holster and said to Von Clark Davis, "If you miss, I won't." Von Clark Davis then said, "Okay man, everything's alright", and walked to his car and Tony Ferguson put his gun in his shoulder holster and went into the bar. (Tp. 248-279).

Von Clark Davis testified in his own defense. He testified that he and Suzette Butler had been living together, but he had recently moved out. His testimony was also that he had bought the gun to trade on some dental equipment from a man by the name of Silky Carr from Lexington, Kentucky, and that Suzette Butler owed Silky Carr money in a drug deal. He testified that at that night he had been at the Legion and he was supposed to go to Middletown to meet Silky Carr; that when he left Suzette Butler out in front of the Legion she and Silky Carr were arguing; that he had earlier given the gun and $200.00 to Silky Carr, and they were to meet in Middletown to close the deal. He testified that he went to Middletown and that Silky Carr never appeared and that when he drove back to Hamilton he found out that Suzette Butler had been murdered and then he went to Lexington to look for Silky Carr. After being unable to find Silky Carr, he called the police and turned himself in. (Tp. 286-300). After that, the defense rested and renewed its motion to dismiss, which was denied.

Thereafter, the Court found the defendant guilty of aggravated murder with prior calculation and design, and in addition found that the specification had been proven beyond a reasonable doubt.

[7]

The mitigation hearing was thereafter held. At that hearing, John Bohlen, Chief Probation Officer of Butler County Probation, testified that he reviewed the pardon and parole records of Von Clark Davis when he had been at the penitentiary and that he had an excellent scholastic and penal record and that he had been found to be an excellent candidate for rehabilitation. (Tp. 280-284).

Charles Tipton, stepfather of Von Clark Davis, testified that Von Clark Davis had received an honorable discharge from the Navy, that he had worked before his previous incarceration and that while in the penitentiary, he had been educated and received a degree as well as his G.E.D. Allistar Tipton, Von Clark Davis' mother, likewise testified as to her son's rehabilitation in prison and his work record. Roger Fisher, the Director for Forensic Psychiatry in Butler County, testified that he found no significant mental impairment but did find an active detached schizoid personality, which had been previously diagnosed in the penitentiary. Thereafter, the panel sentenced Von Clark Davis to death in the electric chair.

[8]

## PROPOSITION OF LAW ONE

WHERE THE THREE JUDGE PANEL INCLUDED NON-STATUORY AGGRAVATING
FACTORS IN WEIGHING THE MITIGATING FACTORS, THE DEATH PENALTY IS
INVALID AND CONTRARY TO LAW.

### Argument

The defendant-appellant was charged with the offense of
aggravated murder with the specification of a prior conviction
for second degree murder under Ohio Revised Code 2929.04(A)(5).
The three judge panel found the defendant guilty and imposed the
death penalty. In the separate opinion made pursuant to Section
2929.03(F) ORC, the panel found the following aggravating
circumstances were proven beyond a reasonable doubt:

1) The manner by which the Defendant purchased the gun,
used to kill the victim in this case.

2) The manner by which the Defendant purchased the
ammunition for the gun.

3) The shooting of the victim, the firing at close
range and finally placing the gun almost against her skull and
discharging the weapon.

4) The prior purposeful killing of his wife in 1970 by
multiple stab wounds.

5) Committing the present offense while on parole for
the murder of his wife.

Section 2929.04(A) of the Revised Code specifically
enumerates the aggravating circumstances that may be considered
in imposing the death penalty. However, the State contended the

[9]

Court could find additional nonstatutory aggravating factors through testimony and evidence received at trial. This type of judicial discretion defeats the legislative intent embodied in Section 2941.14(B):

> "Imposition of the death penalty for aggravated murder is precluded unless the indictment or count in the indictment charging the offense specifies one or more of the aggravating circumstances listed in Division (A) of Section 2929.04 of the Revised Code."

Appellant thus submits to this Court that the three judge panel erred by considering as aggravating factors those not listed in the Ohio Revised Code as aggravating factors.

This Court faced the same issue in State vs. Johnson, 24 Ohio St.3d 87 (1986), holding that, "...Revised Code Section 2941.14(B) limits the aggravating circumstances which may be considered in imposing the death penalty to those specifically enumerated in Revised Code 2929.04(A)." Johnson at 93. In Godfrey vs. Georgia, 446 U.S. 420 (1980), the United State Supreme Court found that the inclusion of nonstatutory aggravating factors allowed a jury to deviate from their limited discretion mandated by statute, resulting in an "arbitrary and capricious infliction of the death penalty." State vs. Johnson, 24 Ohio St.3d 87,94 (discussing Godfrey, supra). The result is that the probability of receiving the death penalty is greatly increased.

[10]

Other Courts have found the death sentence invalid when based on nonstatutory aggravating factors. In Proffitt vs. Wainwright, 685 F.2d 1227 (1982), the 11th Circuit held the death penalty cannot stand when partially based on nonstatutory and unconstitutional aggravating factors. (Emphasis added). The 5th Circuit also addressed the issue in Henry vs. Wainwright, 661 F.2d 56 (1981), holding the death penalty invalid when based in part on nonstatutory factors and that consideration by the sentencer of nonstatutory aggravating factors violates the Eighth and Fourteenth Amendments. The Court found that the nonstatutory aggravating factors constituted a failure to limit and guide sentencer discretion, permitting arbitrary and selective imposition of the death penalty. Henry vs. Wainwright, 661 F.2d at 58. Following the constitutional directive of Furman vs. Georgia, 408 U.S. 238, 92 S.Ct. 2726 (1972), the Court decided that descretion in capital sentencing must be guided by the statutory aggravating factors in order to avoid "arbitrary and selective imposition of the death penalty." Henry at 58. Even though there were proper statutory aggravating factors found, the Court held that, "...The introduction of nonstatutory aggravating factors is reversible error since a Court is unable to determine whether the death sentence was the result of such improper weighing of the evidence." Henry, 661 F.2d at 59.

The Court of Appeals, Eleventh Circuit, faced a similar situation in Proffitt vs. Wainwright, 685 F.2d 1227 (1982). In

[11]

Proffitt, the trial judge listed four aggravating factors, three of which were invalid under the Florida sentencing statutes. The Appeals Court found, "The Trial Court transcended the list of aggravating factors set forth in the Florida Statute and substituted their own judgment of what circumstances justify capital punishment for that of the Florida legislature. In so doing, the trial judge not only committed error under the State law, he also exceeded the Federal constitutional limitations imposed by Furman on capital sentencing by increasing the risk that the death penalty would be imposed in an arbitrary and capricious manner." Proffitt vs. Wainwright, 685 F.2d at 1267. The Appeals Court ordered the defendant resentenced rather than speculate what weight the mitigating factors would have been had the nonstatutory aggravating factors not been considered. The Court agreed, "That the rational appellate review of capital sentencing decisions contemplated by Furman and its progeny requires more than mere speculation or conjecture as to what the sentencing tribunal would have decided had it correctly applied the law. Such post hoc justification of a sentencing decision, which depends on a rationale for imposing death distinct from that relied on by the sentencer, cannot fulfill the Appellate Courts constitutional responsibilities." Proffitt at 1269.

In Stephens vs. Zant, 631 F.2d 397 (5th Cir. 1980), the Appellate Court set aside the death penalty based in part on an unconstitutional aggravating circumstance because it was

[12]

impossible to tell the extent to which the Georgia jury had relied on the invalid aggravating factor in imposing the death penalty.

In the case at bar, the only proper aggravating factor the court should have considered was the thirteen-year old purposeful killing of Defendant's wife. In their separate opinion the three judge panel found four mitigating factors:

1) The Defendant adjusted well to prison routine and during his stay in prison, obtained a high school GED and an associates degree in Business Administration, and studied for and worked as a dental technician.

2) There has always been a good family relationship between the Defendant and all members of his family, including his step father.

3) Since his release on parole, he has maintained at least partial employment.

4) As testified by the psychologist, Defendant has a compulsory personality disorder or explosive disorder which may have contributed tot he violence in this case.

Ohio Revised Code Section 2929.04 lists as mitigating circumstances: (1) whether it is unlikely the offense would have been committed but for the fact the offender was under duress, coercion or strong provocation, which was because of a mental disorder, and (2) whether at the time of committing the offense the offender because of a mental disease or defect lacks substantial capacity to conform his conduct to the requirements of law. The Court found both of these to be present. The Court, however, decided beyond a reasonable doubt that the aggravating

[13]

circumstances outweighed the mitigating circumstances without in detail explaining why.

Defendant submits that the dictates of Godfrey and the Court's own findings in Johnson, require sentencing based on constitutionally accepted statutory aggravating factors. When the sentencing body weighs nonstatutory aggravating factors against the mitigating factors, the defendant is denied his constitutional rights mandated by the Eighth and Fourteenth Amendments. Therefore, defendant submits that his death sentence must be reversed.

[14]

## PROPOSITION OF LAW TWO

WHERE THE TRIAL COURT CONSIDERED NONSTATUTORY AGGRAVATING
CIRCUMSTANCES IN SENTENCING DEFENDANT TO DEATH, THE COURT OF
APPEALS MAY NOT INDEPENDENTLY WEIGH THE AGGRAVATING AND
MITIGATING FACTORS BUT MUST REQUIRE THE DEFENDANT BE RESENTENCED.

### Argument

Ohio Revised Code §2929.05 requires appellate review of
death sentences, in part, the Court must:

> "... review the judgment in the case and the sentence of
> death imposed by the court or panel of three judges in
> the same manner that they review other criminal cases,
> except that they shall review and independently weigh
> all of the facts and other evidence disclosed in the
> record in the case and consider the offense and the
> offender to determine whether the aggravating
> circumstances the offender was found guilty of
> committing outweigh the mitigating factors in the case,
> and whether the sentence of death is appropriate."

This independent review by the appellate courts was
designed to thwart a sentencer exceeding the discretion allowed
by statute. In Gregg vs. Georgia, 428 U.S. 153 (1976), the
United State Supreme Court affirmed the death penalty imposed on
Gregg based primarily on two considerations--The channeling of
jury discretion and meaningful appellate review. But in Godfrey
vs. Georgia, 446 U.S. 420 (1980), the Court found the death
penalty could not stand when based on a statutory aggravating
factor that was unconstitutionally broad and vague.

[15]

Justice Stewart, in writing for the plurality, noted that unclear standards made rational review of the death sentence impossible. Id. at 428.

In order for rational review to be possible, the sentencing body has to abide by the limited discretion mandated by statute, ORC §2929.05 further requires the appellate court to:

> "... review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors. The court of appeals or the Supreme Court shall affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case."

Appellate submits that the Appellate Court cannot properly review and weigh the aggravating and mitigating factors when the trial court utilized nonstatutory aggravating factors in passing sentence. The Fifth Circuit, in Henry vs. Wainwright, 661 F.2d56 (5th Cir. 1981), vacated and remanded on other grounds, 102 S.Ct. 2922, Reaff'd, 686 F.2d 311 (1982), determined it was not possible for a reviewing court to discern the effect that the improper aggravating circumstance had on the jury. The same situation also applies to the case sub judice. The Appellate Court is unable to determine the weight the improper

[16]

aggravating circumstances had upon the three judge panel when they sentenced appellant to death, especially in light of the fact that four mitigating factors were found. By affirming the death penalty, based on nonstatutory aggravating factors, the Appellate Court has denied the appellant procedural due process. The sentencing process, as well as the trial itself, must satisfy due process requirements. Gardner vs. Florida, 430 U.S. 349 (1977). See Note, Capital Punishment: Impairment of a Death Sentence by the Invalidity of an Aggravating Circumstance, 52 U. Cin. L. Rev. 541 (1983).

Appellant thus submits that the appeals court erred in affirming the death penalty and his sentence must be reversed.

[17]

## PROPOSITION OF LAW III

WHERE THE TRIAL COURT DENIED DEFENDANT'S MOTION TO BIFURCATE THE TRIAL, WHEN THE DEFENDANT IS CHARGED WITH AGGRAVATED MURDER WITH A SPECIFICATION THAT HE WAS PREVIOUSLY CONVICTED OF HOMICIDE AND ALSO WITH HAVING WEAPONS UNDER DISABILITY, THE DEFENDANT'S RIGHT TO A TRIAL BY AN IMPARTIAL JURY IS VIOLATED AND THE CASE MUST BE REMANDED FOR A NEW TRIAL.

### Argument

The Defendant, as noted previously, was charged with aggravated murder with the specification under Ohio Revised Code Section 2929.04(A)(5), that prior to the offense at bar, the Defendant was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another. The Defendant was further charged in the second count with having weapons while under disability. The Defendant filed a Motion to Bifurcate the Trial and to sever the charge of having weapons while under disability.

Ohio Revised Code §2929.022(A) provides:

"If an indictment or count in an indictment charging a Defendant with aggravated murder contains a specification in the aggravating circumstnace of prior conviction, listed in Division (A)(5) of ORC 2929.04, the Defendant may elect to have the panel of judges if he waives a trial by jury or the trial judge, if he is tried by jury, determine the existence of the aggravating circumstance at the sentencing hearing held

[18]

pursuant to Divisions (C) and (D) of 2929.03 of the Ohio Revised Code.

The Court overruled both motions, thus effectively denying this right to the Defendant.

In addition, the Defendant filed a Motion to Sever the weapons under disability charge for a very simple reason. Since he had the right not to have a jury hear about the specification that he had committed a prior homicide, the State should not be permitted to bring that information in through the back door, i.e. through a second charge.

Ohio Rule of Criminal Procedure 8(A) allows the prosecution to charge a Defendant with more than one offense in the same indictment. However, Ohio Rule of Criminal Procedure 14 specifically provides that if it appears that the Defendant or the State is prejudiced by a joinder of offenses in the indictment, the Court shall order separate trials of counts or provide such other relief as justice requires.

In the present matter, Von Clark Davis was charged with aggravated murder. He was entitled not to have the specification brought to the attention of the panel or jury until the sentencing hearing. However, because he was also charged with having weapons under disability, the Prosecution then was allowed to prove his prior offense, which without the second count, it would not be permitted to do until the sentencing hearing.

[19]

Because of these considerations, Von Clark Davis waived a jury. (T.M. 58). Thus, the Court's failure to grant the Motion to Sever and the Motion to Bifurcate denied Defendant a fair trial and had a chilling effect on his right to a jury trial, since he was faced with either choosing a three judge panel or a jury who would know about the prior homicide. While the jury may be given an instruction that this is only to be used for the weapons under disability charge or for determining the specification, it is not credible to believe that a jury could not take this into consideration when determining guilt. Thus, there was an invalid waiver of his right to a trial by jury forced by the Court's decision, and the Court erred in overruling the motions to bifurcate and to sever.

The Ohio Supreme Court has held on two occasions that adherence to the Ohio Statutory scheme for capital cases is mandatory and that failure of the State to adhere to it is prejudicial and requires a reversal. In the case of State vs. Henry, 4 Oh. St.3d 45, the Court held that where two or more persons were jointly indicted for aggravated murder, each of such persons shall be tried separately unless the Court ordered a joint trial pursuant to strict mandates set forth in Criminal Rule 14 and ORC 2945.20. The Court first grappled with the problem of whether aggravated murder was a capital offense, even though in that case the death penalty could not be imposed. That analysis is obviously not necessary here since this was a capital

[20]

case, and the Defendant received the death penalty. The Court noted that both Criminal Rule 14 and ORC 2945.20 required separate trials unless good cause was shown. The Court held that because neither the State nor the appellee sought affirmative approval for a joint trial the case must be remanded for a new trial wherein the appellee would be tried separately.

The Court also noted that under Criminal Rules and ORC 2929 there appeared statutory safeguards and detriments that take affect when a person is charged with committing a crime that is classified as a capital offense and that these must be strictly adhered to.

Likewise in the case of State ex rel Corrigan, Prosecuting Attorney vs. McMonigle Judge, 12 Oh. St.3d 15, the Ohio Supreme Court affirmed the granting by the Court of Appeals of the mandamus. In this case, the Prosecuting Attorney contended that under ORC 2945.18, a special venire was required for a capital case. The Trial Court denied the request, but on a writ of Mandamus the Court of Appeals granted the request. The Court, relying on Henry, found that it was a capital case and that because it was a capital case, the special venire must be granted and that the statutory safeguards for capital cases must be followed.

Therefore, it is clear that the Court erred in failing to grant Defendant's motions. While the State, under Ohio

[21]

Criminal Rule of Procedure 8 could try the counts together, because of the statutory election allowed by ORC 2929.022, the Defendant had the right to sever the specification of a prior homicide. The intent of the legislature was clear. Such evidence in a capital case could be extremely damaging and prejudicial and no instruction could wipe it out of a jury's mind. However, the Court's refusal to sever and refusal to grant this election deprived the Defendant of his right to a jury trial. The Defendant was thus forced to elect a three judge panel because Defendant knew that a jury would be informed of his prior homicide on opening statement and throughout the trial.

Furthermore, the Court erred in failing to allow the Defendant to elect not to have the aggravating circumstance tried during the course of the trial as was his right. Failure to comply with this procedure requires a reversal of the Trial Court's verdict.

[22]

PROPOSITION OF LAW IV

WHERE THE DEFENDANT MOVES TO DISMISS AND TO INSPECT THE GRAND
JURY TRANSCRIPT FOR PURPOSES OF SHOWING THAT THE INDICTMENT
AGAINST HIM WAS NOT BASED UPON PROBABLE CAUSE AND THAT THE
INDICTMENT WAS FOUNDED ON ILLEGAL AND INCOMPETENT EVIDENCE, THE
DEFENDANT HAS A RIGHT TO INSPECT THE GRAND JURY TESTIMONY, AND
THE COURT ERRS IN FAILING TO ALLOW THE DEFENDANT TO INSPECT THE
GRAND JURY TRANSCRIPT.

### Argument

The Defendant moved the Court to dismiss the indictment
and also moved to inspect the Grand Jury transcript. The
Defendant submitted that there were two reasons for needing the
Grand Jury transcript - (1) to support his Motion to Dismiss and
(2) that the traditional rules regarding the secrecy of the Grand
Jury were obsolete, baed on misconceptions of the common law, and
that the need for secrecy was no longer present.

Defendant submitted an extensive Memorandum in support
of his motion. The Grand Jury was initiated at first in 1166 as
the sword of the crown gathering information on citizens but not
to protect them from unfair prosecution. However, sometime
around the middle of the Fourteenth Century, the Grand Jury
asserted its independence and to serve its intended purpose of
screening accusations and voting indictments, began to meet

[23]

secretly, not to protect itself against the alleged Defendants, but to avoid interference from the King. See for example, Stephens-History of Criminal Law in England and Holzworth-The History of English Law.

Thus, while the Grand Jury at first was invoked to augment the power of the crown by acting as a public prosecutor, by 1368 this practice had diminished and there emerged a new form of Grand Jury which adopted the custom of hiding its presence from the crown so as to protect itself from the abuses of the crown. This independence became firmly established in the famous Earl of Shaftsberry Case, taking place in 1681. In that case the King had insisted the Grand Jury hear in open court testimony concerning charges brought against the Earl of Shaftsberry. Following the hearing the Grand Jury felt that State and the Crown, as represented by its prosecutors, were interested only in injustice and in intimidating the Earl. They demanded and were granted the right to interview witnesses in private. After this private hearing, where the witnesses were not subject to retribution by the crown by failing to testify properly, the grand jury returned a bill with the word "Ignoramous" written across the front, meaning ignored. However, a second grand jury was convened by the Crown in another location, resulting in an indictment of the Earl of Shaftsberry, who was forced to flee to Holland. The Co-Defendant indicted with him was convicted and executed. See Marvin F. Frankle and Gary P. Nefcalus-The Grand

[24]

Jury, An Institution on Trial. After this case and the King's blatant disregard of the first Grand Jury's findings, reforms were demanded and instituted.

The Grand Jury as transplanted in America, met in private to protect itself from the government. Later, the Prosecutor, both here and England, was permitted to be present, only to assist the jury in drawing up the form of the indictmenet, but he himself did not present testimony. See 8 Wigmore on Evidence, Section 2360. About this time, four alleged reasons the grand jury secrecy developed. These reasons were (1) the grand jury must be free from apprehension that their votes and opinions may be disclosed; (2) witnesses and complainants summoned should be free from apprehension that their testimony may subsequently be disclosed by compulsion; (3) that a guilty accused would not flee from arrest, suborn perjury, or tamper with the witnesses of the grand jury and (4) that an innocent accuses who is not indicted should not be discredited in the community.

However, these reasons become unimportant after the indictment is issued. First, the Defendant in this case does not seek the discussions, opinions and votes of the grand jurors. These should remain secret. Second, the witnesses who hve already testified and can certainly have no fear that their testimony would be disclosed, since they knew or should have known at the time they testified in grand jury that whatever they

[25]

said, which was detrimental to the defendant if he were indicted, could be used against him in trial. In addition, if there was any real fear that the defendant would intimidate any of the witnesses who appeared, the prosecutor could seek a protective order prohibiting this particular evidence from being disclosed. This reason does not call for a wholesale refusal of the grand jury minutes. Finally, ince the accused has been indicted, arraigned and in particular, in Von Clark Davis' case, incarcerated for the entire time, there is not fear that he would flee from arrest and since the grand jury has already heard the testimony, it would be impossible for him to suborn perjury or tamper with the witnesses of the grand jury. Finally, since the defendant has been indicted, the disclosure of what had transpired during the grand jury would certainly not cause him to suffer any loss of standing among the community.

It is interesting to note that Rule 6 of the Ohio Rules of Criminal Procedure on grand jury secrecy does not demand secrecy of the witnesses before the grand jury but only prevents the grand jurors themselves, as well as any stenographer or prosecutor who may be present, from disclosing what went on before the grand jury. The witnesses are not sworn to secrecy and they may disclose their testimony at any time. In the federal system under the Jencks Act, 18 USC Section 3500, the defendant is entitled to grand jury testimony of a government trial witness without any preliminary inspection for usefulness

[ 26 ]

by a trial judge. See also <u>United</u> <u>States</u> <u>vs.</u> <u>Ramirez</u>, 482 F 2d
807.

One hundred years ago, the grand jury testimony was kept
secret not only from the defendant but also from the state.
However, in a series of cases taking place around a hundred years
ago, prosecutors of the federal system and of the various states
set forth the very reasons now urged on behalf of defendants as
grounds for lifting the bar of secrecy once the accused is in
custody.

In the case of <u>Bressler</u> <u>vs.</u> <u>People</u>, 8 NE 2d 62, the
Illinois Court in 1866 stated:

> "When the indictment is returned and the defendant is
> arrested and placed upon trial neither statutory nor
> common law reasons for secrecy can apply. There can be
> no reason why evidence given before a grand jury should
> not be made known and proved it the ends of justice
> require it. A contrary course would tend to defeat
> instead of promote justice and is in direct opposition
> to the tendency of the principal which is to enlarge
> rather than to contract the source of evidence."

This citation did not arise from a case where the
defendant successfully urged the secrecy of the grand jury be
lifted but rather came from a case in which the prosecution urged
that the secrecy of the grand jury must be lifted so that the
testimony at the grand jury could not used to convict the
defendant. <u>Ohio</u> <u>Rule</u> <u>of</u> <u>Criminal</u> <u>Procedure</u>, <u>Rule</u> <u>6</u>, now allows
the prosecutor and other government agencies seeking to convict
the defendant free use of the grand jury testimony.

[27]

Federal courts have long recognized that once the grand jury is discharged, the reasons for its secrecy end. Indeed, the Soutern District of Ohio held in In Grand Jury Summoned October 12, 1970, 321 F Supp. 238, that the secrecy of grand jury proceedings may not be imposed upon witnesses who appear before the grand jury and they may be interviewed after their appearance and repeat what they said before the grand jury or otherwise relate their knowledge of the subject of the inquiry. Likewise, federal courts have held that one of the reasons for secrecy, i.e. preventing flight of an accused, ceases when the indictment is returned and the accuses arrested. See Report and Recommendation of June 5, 1972 Grand Jury, 375 F. Supp. 1219.

Michigan has developed a rule which requires disclosure of grand jury testimony prior to trial. In the case of People vs. Dunc, 201 NW 2d 629, the Supreme Court of Michigan held:

"A person accused of a crime by any grand jury has the right to the transcript of its testimony and such parts of the record including the testimony of other witnesses before the grand jury, touching on the issue of guilt or innocence of the crime charged and to obtain it, he must petition the circuit court of the county wherein the grand jury was impaneled."

As a matter of fact several states have allowed the defendant the right to use the grand jury testimony by virtue of statute. Some of these states are Iowa, California, kentucky, Minnesota and Vermont. Obviously, the reasons for secrecy have been abrogated in those states by statute. However, it should be

[28]

noted that the statutes in these states have not resulted in wholesale perjury or threats upon witnesses before the grand jury.

Likewise, in the case of <u>State</u> <u>vs.</u> <u>Dewell,</u> 196 S. 687, the Supreme Court of Florida as long ago as 1936 held that while the policy of the law was to require the utmost secrecy as to grand jury proceedings while the grand jury was in session, once an indictment was presented and published, and the accused was in custody, the rule for secrecy was no longer necessary. Likewise, the Supreme Court of Nevada in the case of <u>Shelby</u> <u>vs.</u> <u>Sixth</u> <u>Judicial</u> <u>District</u> <u>Court</u>, 414 P 2d 942 held:

> "The secrecy provisions of the Nevada statute were directed to grand jury members rather than to witnesses appearing before the grand jury and the secrecy of the grand jury proceedings was not a valid reason for the denying of a pretrial examination of the transcript of the testimony after an indictment was returned and the accused is in custody or under restraint."

The court further held:

> "A transcript should be made to preserve testimony in evidence presented to the grand jury, and the rule of secrecy is certainly not obsolete."

In that case, petitioner filed a motion in district court to allow him to inspect the transcript of testimony of the witnesses advancing three reasons: (1) To determine if the requisite standard of proof had been met to justify the return of an indictment; (2) To determine if the indictment had been brought on legally admissable evidence; and (3) To use the

[29]

transcript for discovery in preparation for trial.  As to ground
1, the Nevada Supreme Court stated:

> "It is fundamentally unfair to require one to stand
> trial unless he was committed upon a criminal charge
> with reasonable or probable cause.  No one would suggest
> that an accused person should be tried for a public
> offense if there exists no reasonable or probable cause
> for trial.  Our constitution and statutes recognize this
> as a principal of fairness and provide for his
> protection by a writ of habeas corpus."

In Dennis vs. U.S., 384 U.S. 855, the United States
Supreme Court decided that defendants in that case were allowed
to obtain the statements made by the complaining witnesses at the
grand jury.  The Court stated:

> "In the American adversary system for determining guilt
> or innocence, it is rarely justifiable for the
> prosecution to have exclusive access to a storehouse of
> relevant fact and exceptions to this are justifiable
> only by the clearest and most compelling
> considerations."

Likewise, the Second Judicial Circuit has allowed full
discovery of grand jury testimony.  See U.S. vs. Hernandez, 290
F. 2d 86.  The Arizona Supreme Court has held the same.  See
Arizona vs. McCormick, 448 P. 2d 74.  As has the Fifth Circuit
Court of Appeals of the United States in United States vs.
Hughes, 413 F. 2d 1244.

In Antrobus vs. Indiana, 254 N.E. 2d 873, the Supreme
Court of Indiana held that pretrial statements including grand

[30]

jury statements made by prosecution witnesses to the police, are discoverable and should be turned over directly to the defendant. In <u>Parlapioan</u> vs. <u>District</u> <u>Court</u>, 491 F. 2d 965, the Supreme Court of Colorado, en banke held:

> "Unless the people show otherwise, the grand jury testimony of a person who will testify at trial is presumed to be material for the preparation of the defense and a request therefore is presumed to be reasonable."

In commenting on the secrecy of the grand jury, the Colorado Supreme Court stated:

> "Secrecy for secrecy's sake should no longer be the rule in Colorado, rather than maintenance of the law, secrecy around grand jury testimony should be grounded upon sound reason."

Finally, in <u>Commonwealth</u> vs. <u>Stewart</u>, 309 N.E. 2d 470, the Supreme Judicial Court of Massachusetts held the defendant would no longer be required to show a particularized need in order to gain access to the testimony of the witnesses before the grand jury which indicted him, but that such testimony would be provided as a matter of routine, except where protective orders were required.

While an indictment on its fact is prima facia evidence of probable cause, it is not such evidence that a defendant should not be allowed to rebut the prima facia evidence. The defendant in this case does not believe the indictment to be

[31]

based on probable cause. The only witness the state used at the
preliminary hearing in order to establish probable cause to bind
over the defendant was one Tony Ferguson, who told an outlandish
story, contradicted his preliminary hearing testimony at trial
and whom the defendant presented as a witness only to establish
the absolute lack of probable cause to even indict the defendant.
Defendant has reason to believe that Tony Ferguson was indeed the
only witness at the grand jury. However, without an inspection
of the transcript, defendant could not support his allegations.
Indeed, it makes no sense to tell a defendant that he must
establish the indictment is invalid and then refuse to allow him
to review the grand jury testimony so as to substantiate his
allegation. Therefore, the defendant submits that in this case
the Court erred in failing to allow him to inspect the grand jury
testimony so as to substantiate his Motion to Dismiss.

[32]

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 744

## PROPOSITION OF LAW V

WHERE OHIO REVISED CODE §2929.05 REQUIRES THE COURT TO CONSIDER
WHETHER THE SENTENCE IS EXCESSIVE OR DISPROPORTIONATE TO THE
PENALTY IMPOSED IN SIMILAR CASES, THE PENALTY IMPOSED UPON THE
APPELLANT IS OUT OF PROPORTION TO THE OTHER SENTENCES GIVEN IN
THE COUNTY.

### Argument

Ohio Revised Code Section 2929.05(A) provides that:

> "Whenever sentence of death is imposed ***, the court of
> appeals *** shall review the judgment in the case and
> the sentence of death imposed by the *** panel of three
> judges in the same manner that (it) reivew(s) other
> criminal cases, except that (it) shall review and
> independently weigh all of the facts and other evidence
> disclosed in the record in the case and consider the
> offense and the offender to determine *** whether the
> sentence of death is appropriate.  In determining
> whether the sentence of death is appropriate, the court
> of appeals *** shall consider whether the sentence is
> excessive or disproportionate to the penalty imposed in
> similar cases.  *** the court of appeals *** shall
> affirm a sentence of death only if (it) is persuaded
> from the record *** that the sentence of death is the
> appropriate sentence in the case."

This proportionality review requirement was enacted
after the United States Supreme Court decided Gregg vs. Georgia,
428 U.S. 153 (1976), in order to prevent arbitrary and capricious
imposition of the death penalty.  As the Gregg Court suggested,
the intent of the proportionality review was to ensure that the
death penalty was not imposed for discriminatory reasons among

[33]

"juries faced with similar factual situations and like aggravating circumstances." (Appellee's Brief at 37). Appellant submits that the proportionality review mandated by statute was not proper since the reviewing court considered the nonstatutory aggravating factors found by the trial court.

This Court is directed to the four (4) other capital cases tried in Butler County, Ohio prior to the appellate review of Appellant's case.

In the case of State vs. Johnson, Johnson was alleged to have beaten to death a parapalegic while he was seated in an automobile for purposes of robbing him. Gerald Johnson recieved a life sentence in the penitentiary with the possibility of parole after thirty (30) years. He was allowed to plead guilty to aggravated murder and the State in return dropped the death penalty specification.

In the case of State vs. Gill, Bradley Gill was convicted of killing an eleven (11) year old child with a knife after kidnapping her for allegedly sexual purposes. Bradley Gill received a life sentence with eligibility for parole after twenty (20) years.

In the case of State vs. Gaither, Ernest Gaither was charged with murder during the commission of a robbery of a young woman in her apartment by tying her up and killing her with a knife. He received a life sentence with eligibility for parole in thirty (30) years.

[34]

In the case of State vs. Pierce, the Defendant, Donald Pierce, shot the deceased in the back of the head with a firearm and then robbed him. The jury found that it was cold blooded, calculated murder with prior calculation and design, for the purpose of robbery. Pierce received life in prison with possibility of parole after thirty (30) years.

In all of these cases previously mentioned, the murder was clearly done with prior calculation and design and clearly done during the commission of another violent felony. In Von Clark Davis's case the murder he committed, without apparent motive other than perhaps a lover's quarrel, was not committed during the commission of a violent felony, i.e. robbery or kidnapping. However, of these five capital cases in this County, only Von Clark Davis received the death penalty. While this is not an assignment of error per se, it is an argument by counsel to show the disproportionate sentence received by Defendant.

Therefore, the Defendant urges this Court to vacate the sentence imposed upon him and to find it excessive.

[35]

## PROPOSITION OF LAW VI

WHERE THE COURT IMPOSES A DEATH SENTENCE UPON THE DEFENDANT, THE
COURT ERRS ON THE GROUNDS THAT THE DEATH PENALTY IS
UNCONSTITUTIONAL FOR THE FOLLOWING REASONS:

1.    The death penalty as authorized by the Ohio Revised
Code, deprives the Defendant of his life for that due process of
law guaranteed in Article One, Section 16 of the Ohio
Constitution and the Fourteenth Amendment to the United State
Constitution.

2.    Ohio's death penalty violates the Eighth Amendment of
the United States Constitution and Ohio Constitution, Article
One, Section 9 prohibiting the infliction of cruel and unusual
punishment.

3.    The death penalty is arbitrarily and capriciously
inflicted, constituting a denial of equal protection of the laws
under the Eighth and Fourteenth Amendments of the U.S.
Constitution and Article One, Section 9 and 16 of the Ohio
Constitution.

4.    The death penalty sections of the Ohio Revised Code
deprive the Defendant of due process of law under the Fourteenth
Amendment and Article One, Section 16 of the Ohio Constitution
and constitute cruel and unusual punishment under the Eighth
Amendment and Article One, Section 9 of the Ohio Constitution as
it permits imposition of the death penalty on a less than
adequate showing of guilt.  It is also unconstitutional because
it requires proof of aggravating circumstances during the guilt
determination state of death penalty deliberations.

5.    The death penalty is unconstitutional because it denies
the Defendant the right to a trial before an impartial jury as
guaranteed by the Sixth and Fourteenth Amendment to the U.S.
Constitition and Article 1, Section 10 of Ohio Constitution.

6.    The death penalty is unconstitutional because it has a
chilling effect on the Defendant's right to a jury trial
guaranteed by the Sixth and Fourteenth Amendment to the U.S.
Constitution and Article 1, Section 10 of the Ohio Constitution.

7.    Section 2945.25(C) of the Ohio Revised Code violates the
Defendant's right to an impartial jury on the determination of
guilt.

[36]

8.   The Ohio death penalty fails to provide a sentencing authority with an option to choose a life sentence when there are aggravating circumstances and no mitigating circumstances and is, therefore, unconstitutional under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 9 and 16 of the Ohio Constitution.

9.   The death penalty authorized by the Ohio Revised Code violates the Eighth Amendment and the Fourteenth Amendment clauses of the U.S. Constitution and the cruel and unusual punishment provisions and due process clauses of the State Constitution in that several of the aggravating circumstances set forth in Ohio Revised Code 2929.04(A) are overbroad and vague and fail to reasonably justify the imposition of the ultimate sentence.

### Argument One

The death penalty violates Article 1, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Since life is a constitutionally protected fundamental right, the State must show an overwhelming reason to destroy life and show ligitimate and compelling State interest before life can be taken. See Commonwealth vs. O'Neil, 327 N.E. 2d 668. The compelling interest commonly advanced to justify capital punishment are as the United State Supreme Court held in Gregg vs. Georgia, 428 U.S. 153, (1) deterence of capital crimes by perspective offenders; (2) incapacitation of dangerous criminals and a consequent prevention of crimes they may otherwise commit in the future; and (3) retribution. The Court in Gregg, while upholding captial punishment, did not decide whether such punishment was the least restrictive for achieving the purported societal interest.

[37]

Many authorities have noted that the death penalty does not deter others. See for example, Glazer, Capital Punishment, Deterent to Murder, 10 Univ. of Toledo L.R. 317, Bailey, Deterent Effect of the Death Penalty for Murder in Ohio, 28 Cleveland State L.R. 51, and Bowers and Pierce, The Illusion of Deterence in Isaac Ehrlich's Research on Capital Punishment, 85 Yale Law Journal 187. These studies have shown that jurisdiction having the death penalty do not have a lower rate of criminal homicide than those which do not. Thus, while the State has a valid interest in protecting its citizens from murder, this Court must determine whether those interests require the use of the death penalty as a punishment or whether there are less extreme means available to further these ends. Obviously life sentence without possibility of parole would be as effective a deterent as the death penalty and thus, there are less restrictive means. Likewise, the offender can be incapacitated by a life sentence without parole since in fact, for example, a dangerous psychopath who is found not guilty by reason of insanity is not executed, but is merely contained.

Finally, retribution, while a goal of punishment, cannot serve as compelling State interest to justify capital punishment because life imprisonment would equally satisfy the public's outrage in its desire for punishment. Thus, the State cannot demonstrate the death penalty is necessary in pursuing its legitimate objective. It has chosen a means which violates due process of law to achieve its stated ends.

[38]

Argument Two

Sections 2903 and 2904 of the Ohio Revised Code violate the Federal and State prohibitions against the infliction of cruel and unusual punishment. In State vs. Furman, 408 U.S. 346, Justice Marshall, in his concurrence, noted that punishment may not be more severe than is necessary to serve ligitimate interest of the State. As argued above, the death penalty is not necessary to serve these legitimate interests. Since every punishment contains some element of cruelty, some cruelty is necessary to serve legitimate ends. However, when the level of cruelty is disproportionate to the crime, it does not serve the needs of society and therefore, its deemed to be too cruel and thus in violation of the prohibitions against cruel and unusual punishment. See Robinson vs. California, 370 U.S. 660.

Likewise, in Coker vs. Georgia, 433 U.S. 584, the United States Supreme Court held:

> "A punishment is as excessive and unconstitutional if it makes no measurable contributions to accepted goals of punishment, enhances nothing more than the needless imposition of pain and suffering or is grossly out of proportion to the severity of the crime. A punishment might fail the test on either ground."

As has been pointed out before, these is no evidence to demonstrate a deterent effect from the imposition of the death penalty. Thus, the State must show a different compelling State interest in the death penalty. The State of Ohio is unable to

[39]

demonstrate such a compelling State interest since it can achieve its legitimate interests by less drastic means than death. Therefore, the death penalty constitutes cruel and unusual punishment and is in violation of the Eighth Amendment of the U.S. Constitution and Article 1, Section 9 of the Ohio Constitution.

### Argument Three

The death penalty is arbitrarily and capriciously applied, constituting a denial of equal protection of the laws.

In Butler County alone, one Defendant has received the death penalty for a murder which, as will be argued later, was not done with prior calculation and design. Other Defendants, including one who killed an eleven-year old girl, received a 20-year life sentence. Another Defendant who strangled and stabbed a woman to death, received a 30-year life sentence. A man who beat to death a parapalegic in an automobile, received a 30-year life sentence. Finally, another individual who was found guilty of aggravated murder with prior calculation and design by killing another individual during the course of a robbery received a life sentence. The article by Bowers and Pierce, Arbitrariness and Discrimination in Post Furman Capital Statutes Crime, Pg. 563, October 1980, noted that black killers were found to be substantially more likely than others to receive a daeth sentence.

[40]

Under Ohio's current law, this pattern has not changed significantly. The first 13 persons sentenced to death in this State prior to Defendant, nine were convicted of killing whites, one was convicted of killing a black police officer and one was convicted of killing two blacks and a white, and two were convicted of killing blacks. Therefore, the death penalty is generally preserved for blacks who kill whites. In addition, the arbitrary and capricious applications of the death penalty is generally preserved for blacks who kill whites. In addition, the arbitrary and capricious applications of the death penalty persist because of uncontrolled discretion of the Prosecutor. In Butler County, the Prosecutor allowed a man who beat a parapalegic to death to plead to the capital offense but drop the death penalty specification involves the question of who will and who will not face the death penalty, use of the discretion in this manner involves cruel and unusual punishment for the Defendant. In State vs. Grosgene, from the Lucas County Court of Common Pleas No. CR-82-6155, a three judge panel of the Lucas County Court of Appeals addressed the questions of the unbridle discretion of the Prosecutor and stated that the Prosecutor should present all of his evidence to a grand jury for its determination on whether to charge a death penalty specification. The Court stated:

"We believe it should be mandatory that Prosecutors aprise the grand jury considering an aggravated murder case where there is a possibility of the death sentence

[41]

of any standard or criteria that may be established
either by rule or legislation. Moreover, along with
such instruction, a Prosecutor should be required to
present any and all evidence he may have in his
possession that may have an effect on the decision of
the grand jury so whether to charge a specification to
the count of aggravated murder. It is this Courts
opinion that a procedure as suggested herein or one
similar thereto would dampen the claim of selective
prosecution in capital cases and relieve the Court of
countless hours in reading, hearing and deciding motions
addressed to that question."

Thus, as demonstrated, the death penalty in Ohio is arbitrarily
applied and under Furman vs. Georgia, constitutes cruel and
unusual punishment.

In addition, the Court of Appeals and the Ohio Supreme
Court are statutorily, under Section 2929.05(A) of the Ohio
Revised Code required to determine whether a particular sentence
of death is excessive or disproportionate to that imposed in
similar cases. However, neither a three judge panel or a jury is
required to make such findings. While a judge, in passing on a
jury's determination to impose a death penalty, or the three
judge panel itself under Section 2929.03(F) is required to state
in a separate opinion the specific findings as to the existence
of any mitigating factors and the aggravating circumstances, and
the reasons why such circumstances outweigh the mitigating
factors before passing judgment, it is not required to do a
proportionality review as is this Court and the Supreme Court.
Thus, before the Defendant receives a proportionaltiy review, he
has been sentenced to death.

[42]

In addition, under Section 2929.05 of the Ohio Revised Code, a Court affirming a death sentence in Ohio is required to find that death is the only appropriate remedy. However, the original sentencing body has no such requirement. Thus, the sentencing procedure itself is inadequate and unconstitutional since neither a three judge panel, a judge nor a jury must determine whether death is the only appropriate remedy as this Court must determine and as the Supreme Court must determine. Thus, despite the Cardinal Rule that this Court will not pass on a question not raised or passed on by a lower Court, the statute requires this Court and the Supreme Court to make a determination which as not been made or passed on by the lower Court, i.e. is the death sentence the only remedy appropriate and is it proportional to sentences received for like and similar crimes throughout the community. Even though Section 2929.05 requires this Court and the Supreme Court to determine whether the sentence is appropriate, it gives no guidelines as to how to determine that the sentence is excessive or disproportionate to the penalty imposed in similar cases where indeed should be used for comparison.

## Argument Four

The Sections of the Ohio Revised Code that deal with the death penalty, deprive the Defendant of due process of law and constitute cruel and unusual punishment because these provisions permit imposition of the death penalty on a less then adequate showing of guilt and the approprateness of the death penalty.

[43]

In capital cases, the United States Supreme Court requires a greater degree of reliability in the conviction than in non-capital cases and requires a greater guarantee that death is actually the appropriate sentence.

in <u>Woodman</u> <u>vs.</u> <u>North</u> <u>Carolina</u>, 428 U.S. 305, the Court stated:

> "Death in its finality differs more from life imprisonment than a hundred year prison term differs from one of only a year or two. Because of that difference there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a given case."

Likewise, in <u>Locket</u> <u>vs.</u> <u>Ohio,</u> 438 U.S. 586, the Court called for a greater degree of reliability when the sentence of death is imposed. In <u>Beck</u> <u>vs.</u> <u>Alabama</u>, 447 U.S. 625, the U.S. Supreme Court struck down an Alabama statute which precluded instruction on lesser included offenses in capital cases. The Couirt stated that the statute enhanced the risk of unwarrented conviction and stated:

> "Such risk cannot be tolerated in a case in which a Defendant's life is at stake, we have invalidated procedural rules intended to diminish the reliability of the sentencing determination. The same reasoning must apply to rules that diminish the reliability of the guilty determination."

Given the stake in a capital case, i.e. the loss of life as opposed merely to the loss of liberty, it is thus required

[44]

that in the guilt determinate process, a standard for taking
life, which reduced the margin of error as much as humanly
possible should be used, i.e. proof beyond all doubt of the
Defendant's guilt and of the absolute necessity to impose the
death penalty even if the Defendant is found guilt.  Proof beyond
a reasonable doubt in Ohio requires only that proof that an
ordinary person would be willing to rely and act upon in his most
important affairs.  Such a standard has been rejected by other
Courts.  See Scurry vs. United States, 347 S. 2d 468.  In that
case the Court noted:

> "Being convinced beyond a reasonable doubt cannot be
> equated with being willing to act in the more important
> matters of your own affairs.  A prudent person called
> upon to act in an important business or family matter
> would certainly weigh the often neatly balanced
> consideration and risks tending in both directions, but
> in taking action on a judgment after doing so such
> person would not be necessarily convinced beyond a
> reasonable doubt that he made the right judgment.  Human
> experience, unfortunately, is to the contrary.
>
> The jury, on the otherhand, is prohibited from
> convicting unless it can say beyond a reasonable doubt
> that a Defendant is guilty as charged.  Thus, there is a
> substantial difference between a jurors verdict of guilt
> beyond a reasonable doubt and a person making a judgment
> in a matter of personal importance to him.  To equate
> the two in a jurors mind is to deny the Defendant the
> benefit of reasonable doubt."

Likewise, the Ohio Reasonable Doubt statute requires
that the jury have, "A firm conviction of the truth of the
charge."  However, the Ohio Supreme Court in Cross vs. Ledford,
161 Oh. St. 469, 120 N.E. 2d 118, stated:

[45]

"Clear and convincing evidence in that measure or degree
of proof which will produce in the mind of the trier of
facts a firm belief for conviction as to the allegations
to be established.  It is intermediate, being more than
a mere proponderance, that not to be extent of sure
certainty as is required beyond a reasonable doubt as in
criminal cases."

Thus, the Reasonable Doubt statute in Ohio reduces the
standard for conviction.  This is in violation of that standard
approved by the United State Supreme Court which held that guilt
must be proven beyond a reasonable doubt as a matter of
constitutional law.  See In Re Winship, 397 U.S. 358.  The effect
of the amendment of the Ohio Revised Code on reasonable doubt to
provide a mere firm conviction and a willing to act in the most
important of your affairs has been analyzed and criticized in
State vs. Crenshaw, 51 O.A. 2d 63.  In that case the Montgomery
County Court of Appeals examined the charges created by the new
statute altering the test for reasonable doubt from moral
certainty to present firm conviction.  The Court stated:

"The changes in the substance of the definition of
reasonable doubt reduce the degree of certainty required
and eliminate the implication of steadfast, certainty or
conviction.  The changes are not mere semantics or
philisophical differences, they are significant.  This
significance lends itself to a unique advantage to the
State in its argument to the jury and a disadvantage to
the accused.  Important affairs is a traditional test
for clear and convincing evidence and is acquired to set
aside important written instruments standard based on a
most important affairs of the average jury is lower than
an abiding conviction to a moral certainty and relfects
adversely upon the accused."

[46]

Thus, as the Court can see, the Reasonable Doubt standard in the State of Ohio is constitutionally unfirm and therefore, such a standard may not be used particularly when the death penalty is to be implemented.

### Argument Five

The death penalty provisions in the Ohio Revised Code constitute cruel and unusual punishment and violate due process and equal protection by requiring proof of aggravating circumstances in the guilt stage of the death penalty deliberations.

Ohio's statutory framework for the imposition of a death penalty upon a capitally charged Defendant mandates a two state process. The initial trial or guilt determining stage of the proceedings requires the jury or panel to find the Defendant's guilt of aggravated murder and one or more aggravated circumstances in order to proceed with capital punishment. See ORC 2929.03 and ORC 2929.02(2)(A)(1). However, Section 2929.02(2)(A) allows that if an indictment charging a Defendant with aggravated murder contains a specification of the aggravating circumstances of a prior conviction listed in (A)(5) of 2929.04. THe Defendant may elect to have the trier of fact determine the existence of that aggravated circumstance at the sentencing hearing. Otherwise, the aggravating circumstances is determined during trial.

[47]

In Von Clark Davis's case, ORC 2929.02(2) was applicable since the aggravating circumstances was a prior conviction or murder. As argued earlier, he waived a jury because the Court, while realizing that the Revised Code required the jury not to hear any evidence of a prior conviction, during the trial in chief, refused to sever the Weapons Under Disability count which meant that the jury would hear the aggravating circumstance in the case in chief anyway. Thus, Von Clark Davis was forced to have a jury hear the aggravating circumstance at the guilt determination. Allowing proof of the aggravating circumstances at the guilt determining phase violates the Defendant's due process and equal protection rights and can influence a panel or jury during the guilt phase. Furthermore, Ohio's procedure requiring that the jury find aggravating circumstances beyond a reasonable doubt at the trial stage without the concurrent examination and balancing of mitigating circumstances capable of proscribing the imposition of the death penalty violates the Ohio and Federal prohibitions against cruel and unusual punishment for the jury, at the trial stage, determines the existence of the aggravating circumstance beyond a reasonable doubt and then is asked at a later hearing to find if there was any mitigation which outweighs that determination. The net result in that Ohio procedure effectively mandates imposition of death at the trial stage by virtue of the jury's verdict of guilt and finding beyond a reasonable doubt of the presence of the aggravating circumstance.

[48]

In point of fact, many of the aggravating circumstances listed are merely those circumstances which distinguish felony murder from murder. The U.S. Supreme Court has often held that there are a limited number of cases for which a death penalty is applicable. See Barclay vs. Florida, 103 Sup. Court 3428 and Zant vs. Stephens, 103 Sup. Court 2743. Thus, the Ohio aggravating factors as a whole are unconstitutional under the Supreme Court's analysis since it fails to provide for the categorical narrowing at the definition stage required by Zant. As the Zant Court stated:

> "An aggravating circumstance must generally narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the Defendant compared to others found guilty of aggravated murder."

Be requiring jurors to hear the proof of the aggravating factors it makes it difficult for them to distinguish between those deserving of death and those not deserving of death.

### Argument Six

Ohio Revised Code Sections 2929.02(2) and 2929.03-04 violate the Defendants right to effective assistance of counsel at the trial before an impartial jury and therefore violate the Ohio and U.S. Constitutions.

The above cited statutory sections providing for sentencing before the same jury or panel of judges which

[49]

his participation, this would indicate a severe mental problem. However, counsel in trying the case to the same panel is forced to elect whether to present a defense mitigation. Thus, if the defense does not succeed then how does an attorney in front of the same fact finder argue the mitigation hearing that although his client did not commit the murder, he should now be spared because if he did he was suffering from psychiatric problems. Such a situation is constitutionally impermissible, as Ohio's death penalty will force defense counsel in many cases to abandon viable defenses at the guilt determining stage for fear of prejudicing his client at the sentencing stage.

Likewise, another problem with bifurcated trial using the same jury in both stages, is that the prosecution will seek a death qualified jury and those jurors whose opposition to the death penalty would absolutely proclude them from fairly deciding guilt or punishment under Witherspoon vs. Illinois, 391 U.S. 510, would be excluded from such a panel thus resulting in a jury more likely to convict.

Finally, ORC 2929.03 allows the Defendant to request a mental examination prior to trial. Once the examination is requested by the Defendant, the Court must order such examination and the results were automatically made available to all parties, the judge and the jury. Thus, the Defendant has no control over whether or not the jury sees what could be a potentially damaging psychiatric exam.

[51]

Thus in summary, the Ohio death penalty framework forces an accused to decide whether or not he is going to defend on the merits or on mitigation, thus, unneedlessly and unnecessarily encourages abandonment of defense on the merits and chills the right to a jury trial.

### Argument Seven

Section 2945(C) of the Ohio Revised Code violates the Defendant's right to an impartial jury.

Section 2945.25(C) of the Ohio Revised Code provides for a challenge for cause in a death penalty case of any juror who unequivicably states that under no circumstances will he follow the instructions of the trial judge and consider fairly the imposition of death in a particular case. However, there is no provision granting a challenge to the defense for cause of any juror irrevocably committed to the application of the death penalty upon proof of aggravated murder with specifications even where there is evidence of mitigation. The failure to provide this alternative challenge for cause deprives the Defendant of a right to an impartial jury in that it reduces available peremptory charges to attempt to assure juror fairness. In addition, it makes more likely the exclusion of jurors opposed to the death penalty resulting in a death qualified jury more likely to be conviction prone and prosecution biased. Death qualifying jurors and excluding those with objections to the death penalty

[52]

offends the Sixth Amendment's right to a fair cross section in the guilt determining process and produces conviction prone juries.

In State vs. McClellan, 12 O.S. 2d 204, the Court stated, "Under the law of Ohio a juror with a bias in favor of capital punishment is just as unfit to serve on a jury as one who will refuse to vote for the death penalty if properly convinced the evidence warrants such a vote." However, the Ohio Revised Code does not allow a challenge for a juror who is in favor of the death penalty.

### Argument Eight

The Ohio Revised Code implementing the death penalty violates the Eighth and Fourteenth Amendments to The United States Constitution and Article 1, Section 9 and 16 of the Ohio Constitution.

Section 2929.03(D)(2) of the Ohio Revised Code provides only that if a jury unanimously finds by proof beyond a reasonable doubt that the aggravating circumstances the offender was guilty of committing outweighed the mitigating factors, the trial jury shall recommend that the sentence of death be imposed on the offense. However, no standard of weighing mitigation against aggravation is present nor defined. This weight standard, one without definition, permeates the statute and invites arbitrary and capricious jury decisions. The guarantee

[53]

factors beyond a reasonable doubt. This would prevent arbitrary decisions in close cases. The Defendant cannot be obligated to bear the burden of proving the existence of a mitigating factor. If the Defendant were so required, then in a case which the evidence relating to mitigation was equally balanced the jury would have to find that there were no mitigating circumstances. Aggravation would thus outweigh mitigation and the jury would have to impose the death sentence even though it were as likely as not that there were mitigating circumstances. This is contrary to the Constitution.

### Argument Nine

The Ohio Revised Code on the death penalty violates the cruel and unusual punishment provisions of the U.S. and Federal Constitutions by failing to provide the sentencing authority with an option to choose life imprisonment when there are aggravating circumstances and no mitigating circumstances.

Georgia, which has a death sentencing statute similar to Ohio, has required that the trial court charge a jury that even if they find existence of an aggravating circumstance but find no mitigating circumstance they may never the less return a life sentence. See Gregg vs. Georgia, 428 U.S. 153. However, Ohio's provisions do not allow the jury this opportunity.

As the Court said in State vs. McDugle, 301 S.E. 2d 308, "While aggravating factors are present and no mitigating ones,

[56]

the sentencing body must still determine whether the aggravating
circumstances are of such value, weight, consequence or
significance as to be sufficiently substantial to call for the
imposition of the death penalty."

### Argument Ten

The death penalty violates the cruel and unusual
provisions of the State and Federal Constitutions and the due
process clauses of the State and Federal Constitutions because
the aggravating circumstances are overbroad and vague and fail to
reasonably justify the imposition of a more severe sentence.

The U.S. Supreme Court in Gregg vs. Georgia, 428 U.S.
153, requires that the State channel the sentencers' discretion
by clear and objective standards that provide specific and
detailed guidance.

In Godfrey vs. Georgia, 446 U.S. 420, the United States
Supreme Court vacated a death sentence because an arbitrary and
capricious infliction of the death penalty had occured in the
application of one of Georgia's aggravating circumstances. The
Court said:

> "A person or ordinary sensability could fairly
> characterize almost every murder as outrageous or
> wantonly vile, horrible and inhuman (which was one of
> Georgia's aggravating circumstances), and thus there is
> no principalled way to distinguish this case in which
> the death penalty was imposed from the many cases in
> which it was not."

[57]

## PROPOSITION OF LAW VII

WHERE THE SPECIFICATION OF THE INDICTMENT CHARGED THE APPELLANT
WITH A PRIOR HOMICIDE THAT OCCURRED THIRTEEN YEARS PRIOR TO THE
HOMICIDE IN QUESTION, SUCH SPECIFICATION WAS TOO REMOTE IN TIME
TO BE USED AS AN AGGRAVATING CIRCUMSTANCE.

### Argument

The prior homicide for which the Appellant was committed
occurred in 1971. Appellant at that time was convicted of
murder. Appellant submits that this offense is too remote in
time to allow to be used as a specification for which the death
penalty may be given. As argued in the First Assignment of
Error, the United States Supreme Court has held that there is
only a very narrow range of offenses for which the death penalty
may be imposed. Appellant submits that the use of a thirteen
(13) year old crime as a basis for the death penalty is
unconstitutional and is too remote in time.

In the case of State vs. George, 12th Appellate
District, Unreported, Case No. CA83-04-034, the Court held that
where the Defendant had been convicted of a homicide fourteen
(14) years earlier where the modus operandi was identical or very
similar to the crime at hand, such prior conviction was not
admissable in evidence as a like and similar offense as it was
too remote in time and bore no temporal relationship to the crime
at hand.

[59]

Likewise in Von Clark Davis's case, the crime for which he was tried was remote in time and bore no temporal relationship to the prior homicide. Therefore, the Defendant submits that it is unconstitutional to sentence him to death for a second homicide and that because of the lack of temporal relationship and the remoteness in time, this specification should have been strickened from the indictment.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 768

## PROPOSITION OF LAW VIII

WHERE THE TESTIMONY OF THE STATE'S WITNESSES IS CONTRADICTORY TO
THE POINT THAT CREDIBILITY IS QUESTIONABLE AND THE STATE PRESENTS
NO EVIDENCE OF PRIOR CALCULATION AND DESIGN, THE CONVICTION OF
AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE.

### Argument

At the preliminary hearing the State presented only the
evidence of Tony Ferguson, whose testimony has been summarized in
the Statement of Facts. Needless to say from Tony Ferguson's
testimony neither Reginald Denmark nor Cozette Massey were
present at the scene. While this standing along would perhaps
not be fatal to the State's case, the simple fact is that the
bindover to the Grand Jury and the subsequented indictment were
obtained by the testimony of a witness who was so discredited and
who changed his testimony so greatly from preliminary hearing
that the State decided not to call him.

The eye witness to the offense presented by the State
did not see Tony Ferguson at the scene of the crime. Cozette
Massey, who knows Tony Ferguson, did not see him out there that
night and neither did Reginald Denmark.

In addition, all the witnesses who testified, testified
that the shooting happened over a brief time span. Von Clark

[61]

Davis testified that he bought the gun in order to trade for dental equipment. However, Wade Coleman testified, who was called by the State, that Von Clark Davis had bought the gun for protection. There was no showing that there had been any trouble between Suzette Butler and Von Clark Davis nor that he intended at any time to kill her nor that he purchased the gun for that reason. In fact, Mona Aldridge in her statement to the police, stated that they had been arguing when she looked out at the time the gun was fired.

Likewise, Jordana Miles, who had seen part of the incident, said that it looked to her like they might have been arguing.

This does not establish prior calculation and design on the part of the Defendant. The Defendant was charged with aggravated murder in that he killed Suzette Butler, with prior calculation and design. No other allegation was made.

The Committee comments that ORC 2903.01(A) points out that the section restates the former crime of premeditated murder so as to embody the classic concept of the planned, cold blooded killing while discarding the notion that only an instant of prior deliberation is necessary. The Committee Comment also notes that under former Ohio Law, murder could be premeditated even if the final plan was conceived and executed on the spur of the moment. The Committee Comment continues:

[62]

"The section employs the phrase, 'prior calculation and design' - the indicate study care in planning or analyzing the means of death as well as a scheme for the death of the victim. Neither the degree of car nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but must amount to more than momentary deliberations."

Here, by the testimony of the State's witness Mona Aldridge, she and Suzette Butler had gone to the Legion about 5 p.m. There had been no prearranged plan for them to go to the Legion. They had decided to do it on the spur of the moment. Von Clark Davis happened to walk into the American Legion five minutes later. There was no evidence showing that Von Clark Davis knew that Suzette Butler would even be at the American Legion. All three had sat at the table, had a drink and talked for a few minutes. While Mona Aldridge didn't hear the conversation between Von Clark Davis and Sue, she didn't hear an argument between them at that time. However, in her statement to the police she indicated that they might have been arguing. Von Clark Davis left first then a very brief time after Suzette Butler got up, left her coat and cigarettes, told Mona Aldridge she would be right back and walked out behind Von Clark Davis. There wa no evidence that Von Davis had asked Suzette Butler to go outside or had any intention of leaving with Suzette Butler. Shortly thereafter the homicide occurred. It occurred on a public street, in front of a public building, where there were numerous witnesses. Certainly had ther been planning or prior calculation and design, Von Davis would not have fired the fatal shots, if he did, at that point.

[63]

In the case of State vs. Reed, 65 O.S. 2d 117, the Ohio
Supreme Court reduced the Defendants aggravated murder conviction
to murder because there was insufficient evidence of prior
calculation and design. In that case, a Cincinnati Police
Officer was shot and killed after he stopped a vehicle and
approached it to investigate it for an alleged robbery. The
Defendant, Wayne Reed, was convicted of aggravated murder. The
killing took place as an officer stopped an automobile containing
the Defendant who was believed to have been in the process of
planning a robbery. This Court held that the prosecution did not
prove the presence of prior calculation and design. The Court
held that the evidence regarding the killing at most indicated
the presence of instantanious deliberation. Therefore, even
though the appellant had made statements to a classmate that he
would kill any police officer who got in the way of a crime he
might commit, this did not show that appellant designed a scheme
in order to implement a calculated decision to kill. The Court
held that the evidence was not sufficient to show prior
calculation and design. This Court thus reduced the crime to one
of murder.

In the case of State vs. Jenkins, 48 O.A. 2d 99, the
Court of Appeals for Cuyahoga County modified a finding of guilty
of aggravated murder to a finding of murder, holding that
momentary premeditation did not satisfy the standard of prior
calculation and design. In this case there was a quarrel between

[64]

the Defendant and another at his automobile. The Defendant walked to his car, took out a pump shot gun and shot the deceased. Thus, looking at the facts at the case before us, it is obvious the State did not prove prior calculation and design on the part of Von Davis.

The State in order to prove prior calculation and design attempted to show that Von Clark Davis had obtained the gun that same day. However, Von Clark Davis testified he obtained it to trade for dental equipment and one of the State's witnesses testified that Von Davis obtained it in order to defend himself.

Under State vs. Kulig, 37 O.S. 2d 157, this Court held that when circumstantial evidence was used to prove an element of an offense, it must be irreconcilable with any reasonable hypothesis of innocence. Here, the mere fact that Von Clark Davis obtained a firearm the same day, leads to many inferences and certainly it is not unreasonable that he did not obtain the gun merely to kill Suzette Butler, particularly when there had been no evidence presented by the State of any threats that he had made against Suzette Butler, of any bad feelings between he and Suzette Butler or that he had told anyone that he intended to kill Suzette Butler. In fact, the homicide was the result of a momentary argument. Certainly the place to kill was not picked, a public street in front of a public building, nor was the time since it was merely a chance, random meeting between the two.

[65]

Therefore, the Appellant submits that the judgment is against the manifest weight of the evidence and contrary to law and that the Defendant, Von Clark Davis, should either be acquitted because of the fact conflict in the State's testimony used to bind the Defendant to the grand jury and to indict the Defendant and the testimony at trial, or in the alternative, that the Defendant's conviction should be reduced to murder since the State failed to prove an essential element, that of prior calculation and design.

[66]

## CONCLUSION

In Conclusion, Appellant Submits to this Court that his conviction for aggravated murder must be reversed and remanded for a new trial, or in the alternative, that the death penalty imposed in this case be set aside and Appellant be resentenced.

Respectfully submitted,

HOLBROCK & JONSON LAW FIRM
Attorneys for Appellant
315 S. Monument Avenue
Hamilton, OH  45011
Telephone:  868-7600

By: _____
    ∴Timothy R.  Evans

[67]