TRE:db
6/23/86

COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

**86-1171**

STATE OF OHIO

Plaintiff-Appellee JUN 2 3 1986

vs.

VON CLARK DAVIS

Defendant-Appellant

\* Case No. CA84-06-071

\*

\* NOTICE OF APPEAL

\*

\*

\* \* \* \* \* \* \* \* \* \* \*

Now comes the Defendant-Appellant and hereby gives
notice of his appeal to the SUPREME COURT OF OHIO from an Opinion
and Judgment Entry of the Court of Appeals, Twelfth Appellate
District, Butler County, Ohio, entered on May 27, 1986, that the
case does involve a substantial constitutional question, that the
case did not originate in the Court of Appeals, and that the case
is of great public and general interest.

HOLBROCK & JONSON LAW FIRM
Attorneys for Appellant
315 S. Monument Avenue
Hamilton, OH 45011
Telephone: 868-7600

By: _____
    Timothy R. Evans

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of
Appeal was forwarded by ordinary U.S. Mail to Mr. John Holcomb,
Prosecuting Attorney, Butler County Courthouse, Hamilton, OH
45011, this 23rd day of June, 1986.

By: _____
    Timothy R. Evans

FILED CO.

JUL 21 1986

SUPREME COURT OF OHIO
JAMES Wm KELLY, Clerk

68

IN THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

STATE OF OHIO　　　　　　　　　　 *　　 Case No. CA84-04-071

　　　　Appellee　　　　　　　　 *

vs.　　　　　　　　　　　　　　　 *　　 ASSIGNMENTS OF ERROR

VON CLARK DAVIS　　　　　　　　 *

　　　　Appellant　　　　　　　　 *

* * * * * * * * * * *

　　　　1.　　The Court erred in failing to dismiss the death
penalty specifications against the Defendant on the grounds that
the death penalty is unconstitutional.

　　　　2.　　The Court erred in failing to allow the Defendant
the right to inspect the grand jury transcript.

　　　　3.　　The Court erred in denying Defendant's Motion to
Bifurcate the Trial and to sever the charges.

　　　　4.　　The judgment was against the manifest weight of the
evidence and contrary to law.

　　　　5.　　The Court erred in not dismissing the specification
of the indictment that the Appellant had committed a prior homi-
cide, on the basis tht such specification was too remote in time
to be used against Appellant.

　　　　6.　　The Court erred in imposing the death penalty as
the Court found as aggravating factors not listed in the Ohio
Revised Code and factors which were improper for consideration
under the Ohio Revised Code.

　　　　7.　　Under the proportionality review required to be
done by this Court, the penalty imposed upon Von Clark Davis is
out of proportion to the other sentences given for similar crimes
in this county.



69

ENTRY

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                          *        CASE NO. CA84-06-071

        Plaintiff-Appellee        *

    vs.                              FILED in Court of Appeals        O P I N I O N
                                          BUTLER COUNTY, OHIO              5-27-86

VON CLARK DAVIS,                        MAY 2*7 1986

    Defendant-Appellant EDWARD S. ROBB, JR.
                                 CLERK


John F. Holcomb, Butler County Prosecutor, Butler County
Courthouse, Hamilton, Ohio 45012, for Plaintiff-Appellee

Holbrock & Johnson Law Firm, Timothy R. Evans, 315 So. Monument
Avenue, Hamilton, Ohio 45011, for Defendant-Appellant


KOEHLER, J.

    Today we address questions raised by appellant Von Clark
Davis' aggravated murder conviction and subsequent death sen-
tence. On December 12, 1983, at approximately 7:40 p.m., police
officers of the Hamilton Police Department reported to the scene
of a shooting at 727 Central Avenue, the location of American
Legion Post #520. Lying on the pavement approximately six feet
outside the front door was the body of a young woman later iden-
tified as Suzette Butler. An autopsy performed the next day at
the direction of the Butler County Coroner revealed that Butler



had died of multiple (four) gunshot wounds to the left side of
her head.

    During the noon hours of December 12, 1983, appellant had
sought out one Mark Lovette at Gabe's Tavern and had requested
that Lovette "do him a favor." Along with one Wade Coleman, a
cousin of appellant, they drove in appellant's automobile to
Gil's Loans, a pawn shop, where Lovette purchased for appellant a
$49.50 Raven P25 semi-automatic handgun. After stopping to pur-
chase shells at a K-Mart store, Lovette was taken back to Gabe's
Tavern.

    Shortly thereafter, appellant and Coleman again appeared at
Gabe's. The record indicates that the shells previously pur-
chased at K-Mart "didn't fit the gun very well." Appellant drove
to Butler County Gun in Fairfield where Lovette purchased one box
of PMC .25 automatic shells. These shells were turned over to
appellant. In the presence of both Lovette and Coleman, appel-
lant then loaded four or five shells into the clip, placed the
clip inside the gun, and slid the gun under the driver's seat.
At trial, Coleman testified that appellant dropped him off at his
residence at approximately 3:00 or 3:30 p.m.[1]

    At approximately 5:30 or 6:00 p.m., Butler, the victim of
the shooting, met one Mona Aldridge at the above mentioned
American Legion. Appellant arrived about five minutes later and
walked up to Butler at the bar. After approximately one hour,
appellant and Butler went to a table where they were joined by

- 2 -



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 779

Aldridge. Five or ten minutes elapsed at which time appellant
and Butler arose and walked out the front door. Before leaving,
Butler told Aldridge that she would be "right back" and requested
that Aldridge watch her personal articles, i.e., a jacket and her
cigarettes and drink.

After several minutes Aldridge became concerned and went to
the front door to check on Butler. Upon cracking the door open,
Aldridge observed that appellant and Butler were standing approx-
imately three or four feet apart and that appellant had a gun
pointed at Butler's head. Aldridge panicked and went back inside
the bar. Shortly thereafter, others came in behind her saying
that someone had been shot.

The record further establishes that Cozette Massey and
Reginald A. Denmark witnessed this shooting. At approximately
7:15 p.m., they had departed Massey's apartment intending to take
a walk around downtown Hamilton "to look at the Christmas
lights." As they were walking down Central Avenue they saw two
people talking in front of the American Legion. It did not
appear as if these individuals were arguing. At this point, two
shots rang out and the woman put her hands up to her face and
exclaimed "oh, no." As she fell, another shot was fired.
Finally, "*** after she was down, he bent down and shot her in
the head, it was about a couple inches from her head ***." At
trial, both Massey and Denmark identified appellant as that
person who had shot Butler.

72

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 780

Appellant was subsequently arrested and an indictment was filed against him on January 6, 1984. In count one thereof, appellant was charged with the aggravated murder of Butler in violation of R.C. 2903.01(A)[2], with specification of having a firearm. Count one also contained a specification of the aggravating circumstance that prior to this offense appellant had been convicted of an offense an essential element of which was the purposeful killing of, or attempt to kill, another [R.C. 2929.04(A)(5)].[3] In count two, it was alleged that appellant did knowingly acquire, have, carry or use a firearm having previously been convicted of felonies of violence, i.e., shooting with intent to wound on April 10, 1970 and murder in the second degree on April 20, 1971, in violation of R.C. 2923.13(A)(2).[4]

Appellant waived his right to a jury and the guilt phase of his trial commenced on May 9, 1984 before a three judge panel of the Court of Common Pleas of Butler County. The three judge panel found appellant guilty of both counts of the indictment and of both specifications to count one. On May 29, 1984, the penalty phase of the trial was held to determine whether the death penalty would be imposed. The panel found that the aggravating circumstance of the murder outweighed the mitigating factors and, inter alia, sentenced appellant to death.

On this appeal appellant raises seven assignments of error as follows:

- 4 -

73

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 781

Butler CA84-06-071

FIRST ASSIGNMENT OF ERROR:

> "The court erred in failing to dismiss the death penalty specifications against the defendant on the grounds that the death penalty is unconstitutional."

SECOND ASSIGNMENT OF ERROR:

> "The court erred in failing to allow the defendant the right to inspect the grand jury transcript."

THIRD ASSIGNMENT OF ERROR:

> "The court erred in denying defendant's motion to bifurcate the trial and to sever the charges."

FOURTH ASSIGNMENT OF ERROR:

> "The judgment was against the manifest weight of the evidence and contrary to law."

FIFTH ASSIGNMENT OF ERROR:

> "The court erred in not dismissing the specification of the indictment that the appellant had committed a prior homicide, on the basis that such specification was too remote in time to be used against appellant."

SIXTH ASSIGNMENT OF ERROR:

> "The court erred in imposing the death penalty as the court found as aggravating [circumstances] factors not listed in the Ohio Revised Code and factors which were improper for consideration under the Ohio Revised Code."

SEVENTH ASSIGNMENT OF ERROR:

> "Under the proportionality review required to be done by this court, the penalty imposed upon Von Clark Davis is out of proportion to the other sentences given for similar crimes in this county."

The constitutional claim raised by appellant's first

- 5 -

7 N

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 782

assignment of error has been subdivided into ten issues. Before
considering those issues, however, we note that the statutory
framework for imposition of capital punishment has been upheld by
the Ohio Supreme Court in the context of the arguments raised in
State v. Jenkins (1984), 15 Ohio St. 3d 164, certiorari denied
(1985), 473 U.S.__, 105 S.Ct. 3514; State v. Maurer (1984), 15
Ohio St. 3d 239; State v. Mapes (1985), 19 Ohio St. 3d 108; State
v. Martin (1985), 19 Ohio St. 3d 122; and, State v. Buell (1986),
22 Ohio St. 3d 124. Paragraph one of the syllabus to Maurer,
supra, states:

> "Ohio's statutory framework for imposition
> of capital punishment, as adopted by the
> General Assembly effective October 19,
> 1981, and in the context of the arguments
> raised herein, does not violate the Eighth
> and Fourteenth Amendments to the United
> States Constitution or any provision of the
> Ohio Constitution. (State v. Jenkins, 15
> Ohio St. 3d 164, paragraph one of the
> syllabus, followed.)"

The ten issues raised by appellant are as follows:

> "1. The death penalty violates Article 1,
> Section 16 of the Ohio Constitution and the
> Fourteenth Amendment to the United States
> Constitution." (Under this issue, it is
> appellant's position that the death penalty
> violates due process in that the societal
> interests at stake, i.e., deterrence, inca-
> pacitation, and retribution, can be ade-
> quately protected with a less restrictive
> approach than the imposition of death, i.e.,
> life imprisonment.)

> "2. Ohio's death penalty violates the
> Eighth Amendment of the United States
> Constitution and Ohio Constitution, Article
> One, Section 9, prohibiting the infliction
> of cruel and unusual punishment." (Here,

- 6 -



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 783

Butler CR84-00-071

appellant argues that the death penalty
constitutes cruel and unusual punishment in
that it is more severe than is necessary to
serve legitimate state interests.)

"3.  The death penalty is arbitrarily and
capriciously applied, constituting a denial
of equal protection of the laws."  (Appel-
lant raises several arguments under this
issue:  (a) that the death penalty is ar-
bitrary and capricious since prosecutors
inevitably exercise discretion in pursuing
capital cases; (b) that the extent of pro-
portionality review is constitutionally
infirm in that neither a three judge panel
nor a jury is required under R.C. 2929.05(A)
to determine whether a particular sentence
of death is excessive or disproportionate to
sentences imposed in similar cases; (c) that
the sentencing procedure is inadequate and
unconstitutional in that neither a three
judge panel, a judge nor a jury is required
to decide the appropriateness of the death
penalty.)

"4.  The Sections of the Ohio Revised Code
that deal with the death penalty, deprive
the Defendant of due process of law and
constitute cruel and unusual punishment
because these provisions permit imposition
of the death penalty on a less than adequate
showing of guilt and the appropriateness of
the death penalty."  (Appellant here raises
two arguments:  (a) that in a capital case,
the state's burden should be "proof beyond
all doubt"; (b) that the statutory defini-
tion of "reasonable doubt" contained in R.C.
2901.05(D) is inadequate and fails to convey
the concept of reasonable doubt required by
In re Winship (1970), 397 U.S. 358.)

"5. The death penalty provisions in the Ohio
Revised Code constitute cruel and unusual
punishment and violate due process and equal
protection by requiring proof of aggravating
circumstances in the guilt stage of the
death penalty deliberations."

6.  R.C. 2929.022 and 2929.03-.04, which
provide for sentencing before the same jury

- 7 -



Butler CA84-06-071

or panel of judges that determines the facts at trial, violate the defendant's rights to effective assistance of counsel and a fair trial before an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by the Ohio Constitution.

"7.  Section 2945.25(C) of the Ohio Revised Code violates the Defendant's right to an impartial jury."  (It is appellant's position that the so-called death qualification process of a jury prior to the guilt phase of a capital prosecution violates an accused's right to an impartial jury in that the death-qualified jury is claimed to be predisposed to convict.)

"8.  The Ohio Revised Code implementing the death penalty violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 and 16 of the Ohio Constitution."  (Under this issue, appellant argues:  (a) that the imposition of the death penalty under Ohio's statutory structure is constitutionally infirm for failing to provide necessary and adequate guidance to the sentencing authority in relation to "weighing" aggravating circumstances and mitigating factors;  (b) that his death sentence should be set aside in that the capital punishment scheme fails to allocate the burden of proof as to the existence of mitigating factors; (c) that the death penalty in Ohio is constitutionally defective since the state is not required to prove the absence of any of the mitigating factors.)

"9.  The Ohio Revised Code on the death penalty violates the cruel and unusual punishment provisions of the U.S. and Federal Constitutions [sic] by failing to provide the sentencing authority with an option to choose life imprisonment when there are aggravating circumstances and no mitigating circumstances."

"10.  The death penalty violates the cruel and unusual provisions of the State and

- 8 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 785

Butler CA84-06-071

> Federal Constitutions and the due process
> clauses of the State and Federal Constitu-
> tions because the aggravating circumstances
> are overbroad and vague and fail to reason-
> ably justify the imposition of a more severe
> sentence."

Each of the foregoing issues was considered and rejected in
either Jenkins, supra, or Buell, supra, with the exception of
issues 3(b) and 10. (As to issue 1, see Jenkins, pp. 167-168;
issue 2: Jenkins, pp. 168-169; issue 3(a): Jenkins, pp. 169-170;
issue 3(c): Buell, pp. 136-137; issue 4(a): Jenkins, p. 210;
issue 4(b): Jenkins, p. 211; issue 5: Jenkins, pp. 173-174;
issue 6: Jenkins, pp. 173-174, footnote 11; issue 7: Jenkins,
pp. 179-188, State v. Williams (1985), 23 Ohio St. 3d 16,
Lockhart v. McCree (1986), _ U.S. _, 39 Cr. L. 3085; issue
8(a): Jenkins, pp. 172-173; issue 8(b): Jenkins, pp. 171-172;
issue 8(c): Jenkins, p. 171; issue 9: Buell, p. 141.) Issues
3(b) and 10 we address below.

In pertinent part, R.C. 2929.05(A) provides:

> "Whenever sentence of death is imposed
> pursuant to sections 2929.03 and 2929.04 of
> the Revised Code, the court of appeals and
> the supreme court shall upon appeal review
> the sentence of death at the same time that
> they review the other issues in the case.
> The court of appeals and the supreme court
> shall review the judgment in the case and
> the sentence of death imposed by the court
> or panel of three judges in the same manner
> that they review other criminal cases, ex-
> cept that they shall review and independ-
> ently weigh all of the facts and other evi-
> dence disclosed in the record in the case
> and consider the offense and the offender

- 9 -



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 786

> to determine whether the aggravating cir-
> cumstances the offender was found guilty of
> committing outweigh the mitigating factors
> in the case, and whether the sentence of
> death is appropriate. In determining
> whether the sentence of death is appro-
> priate, the court of appeals and the
> supreme court shall consider whether the
> sentence is excessive or disproportionate
> to the penalty imposed in similar cases.
> ***"

As noted above, appellant's argument under issue 3(b) is
that Ohio's statutory framework for the imposition of capital
punishment is constitutionally infirm in that neither juries nor
three judge panels are required to conduct proportionality re-
view. Initially, we observe that the United States Supreme
Court, in Pulley v. Harris (1984), 465 U.S. 37, held that neither
Gregg v. Georgia (1976), 428 U.S. 153; Proffitt v. Florida
(1976), 428 U.S. 242; nor Jurek v. Texas (1976), 428 U.S. 262,
established proportionality review as a constitutional require-
ment. At p. 39, the court stated:

> "*** Needless to say, that some schemes
> providing for proportionality review are
> constitutional does not mean that such
> review is indispensible. We take statutes
> as we find them. To endorse the statute as
> a whole is not to say that anything differ-
> ent is unacceptable. *** Examination of our
> 1976 cases makes clear that they do not
> establish proportionality review as a
> constitutional requirement."

Although proportionality review is not constitutionally
required in every case, the question remains whether the absence
of proportionality review at the trial court level creates a
fatal defect in the capital punishment scheme. We think not.

- 10 -

79

"The fundamental purpose behind proportionality review is to ensure that sentencing authorities do not retreat to the pre-Furman[5] era when sentences were imposed arbitrarily, capriciously and indiscriminately." Jenkins, supra, at p. 176. Incorporated into Ohio's death penalty statutes are several factors which minimize the risk of arbitrary and capricious sentencing. Among these are bifurcated proceedings, the limited number of charge-able capital crimes, the requirement that at least one aggravat-ing circumstance be found to exist and the consideration of a broad range of mitigating factors. We hold that appellant's issue 3(b) is not well-taken.

In connection with the argument raised by issue 10, appel-lant principally relies on the decision of the United States Supreme Court in Godfrey v. Georgia (1980), 446 U.S. 420. Therein, the court vacated a death sentence predicated upon the aggravating circumstance that the murder was outrageously or wantonly vile, horrible or inhuman. In finding this aggravating circumstance overbroad, the Supreme Court, at pp. 428-429, stated that "A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'"

Appellant's contention that the reasoning of Godfrey is applicable to the case sub judice is without merit. Unlike the aggravating circumstance at issue in Godfrey, the aggravating circumstances contained in R.C. 2929.04(A)(1) through (8)[6] are

- 11 -



sufficiently explicit to distinguish those cases in which the
death sentence is imposed, from those cases in which the death
sentence is not imposed. See Maurer, supra, at pp. 242-243; and,
Buell, supra, at pp. 141-142. The first assignment of error is
overruled.

By his second assignment of error, appellant maintains that
"The court erred in failing to allow the defendant the right to
inspect the grand jury transcript." In support of this assign-
ment, appellant argues as follows: "Where the Defendant moves to
dismiss and to inspect the grand jury transcript for purposes of
showing that the indictment against him was not based upon prob-
able cause and that the indictment was founded on illegal and
incompetent evidence, the Defendant has a right to inspect the
Grand Jury testimony."

Crim. R. 6(E) delineates the degree of secrecy accorded
grand jury proceedings:

> "Secrecy of proceedings and disclosure.
> Deliberations of the grand jury and the
> vote of any grand juror shall not be dis-
> closed. Disclosure of other matters occur-
> ring before the grand jury may be made to
> the prosecuting attorney for use in the
> performance of his duties. A grand juror,
> prosecuting attorney, interpreter, stenog-
> rapher, operator of a recording device, or
> typist who transcribes recorded testimony,
> may disclose matters occurring before the
> grand jury, other than the deliberations of
> a grand jury or the vote of a grand juror,
> but may disclose such matters only when so
> directed by the court preliminary to or in
> connection with a judicial proceeding, or
> when permitted by the court at the request
> of the defendant upon a showing that

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 789

grounds may exist for a motion to dismiss
the indictment because of matters occurring
before the grand jury. ***"

Construing this rule in State v. Greer (1981), 66 Ohio St.
2d 139, the Ohio Supreme Court held that because of the general
policy that grand jury proceedings are to be kept secret, they
may be disclosed only where the accused is able to demonstrate a
"particularized need," i.e., when the circumstances reveal a
probability that the failure to provide the grand jury testimony
will deny the defendant a fair trial. Based on the record before
us, this court finds that appellant has failed to demonstrate a
particularized need to inspect the grand jury testimony which
outweighs the need for secrecy.

Appellant's motion to dismiss the indictment was premised on
the argument that said indictment was not based upon probable
cause and was founded on illegal and incompetent evidence. How-
ever, in the case of United States v. Calandra (1974), 414 U.S.
338, 344-345, the United States Supreme Court held that "The
grand jury's sources of information are widely drawn, and the
validity of an indictment is not affected by the character of the
evidence considered. Thus, an indictment valid on its face is
not subject to challenge on the ground that the grand jury acted
on the basis of inadequate or incompetent evidence. ***" See,
also, Villasino v. Maxwell (1963), 174 Ohio St. 483, 485 ("'If
indictments were to be held open to challenge on the ground that
there was inadequate or incompetent evidence before the grand

- 13 -

82

jury, the resulting delay would be great indeed. The result of
such a rule would be that before trial on the merits a defendant
could always insist on a kind of preliminary trial to determine
the competency and adequacy of the evidence before the grand
jury. This is not required by the Fifth Amendment. An indict-
ment returned by a legally constituted and unbiased grand jury,
like an information drawn by the prosecutor, if valid on its
face, is enough to call for trial of the charge on the merits.
The Fifth Amendment requires nothing more.'"); Wickline v. Alvis
(1957), 103 Ohio App. 1 ("An indictment and subsequent proceed-
ings based thereon are not rendered invalid on the ground that
illegal and incompetent testimony was heard by the grand jury
which voted such indictment."); United States v. Adamo, 742 F.2d
927, 939 (6th Cir. 1984), certiorari denied (1985), 105 S.Ct. 971
("*** A grand jury presented with inadequate or incompetent evi-
dence may nevertheless be an unbiased grand jury capable of re-
turning a valid indictment."). Because the validity of an indict-
ment, valid on its face, may not be attacked on the basis that
the grand jury acted upon inadequate or incompetent evidence,
appellant has failed to demonstrate a particularized need to
inspect the grand jury testimony. Appellant's second assignment
of error is overruled.

Next appellant contends that the trial court erred in re-
fusing to sever the two charges contained in the indictment,
i.e., aggravated murder and having weapons while under

- 14 -

83

Butler CA84-08-071

disability.

Crim. R. 8(A) governs the joinder of offenses and provides
as follows:

> "Two or more offenses may be charged in
> the same indictment, information or com-
> plaint in a separate count for each offense
> if the offenses charged, whether felonies
> or misdemeanors or both, are of the same or
> similar character, or are based on the same
> act or transaction ***."

The evidence of record in this case reveals that the crimes
charged in the indictment arose from the same act or transaction.
Therefore, they should have been prosecuted in a single prosecu-
tion unless the trial court, in the interest of justice, ordered
that they be tried separately.[7]

R.C. 2941.04 provides, in pertinent part, that:

> "*** The court in the interest of justice
> and for good cause shown, may order differ-
> ent offenses or counts set forth in the
> indictment or information tried separately
> or divided into two or more groups and each
> of said groups tried separately. ***"

Similarly, Crim. R. 14, entitled "Relief from Prejudicial
Joinder," provides that:

> "If it appears that a defendant or the
> state is prejudiced by a joinder of
> offenses *** in an indictment, information,
> or complaint, *** the court shall order an
> election or separate trial of counts *** or
> provide such other relief as justice
> requires. ***"

The fact that a necessary element of one of the crimes
alleged in an indictment is proof of conviction of a prior felony
does not, in and of itself, require the trial court to order a

- 15 -



separate trial. While we may agree that trying the two offenses here involved in a single prosecution placed appellant in a disadvantageous position at trial, under Crim. R. 14 "[a] defendant who asserts that joinder is improper has the burden of making an affirmative showing that his rights will be prejudiced \*\*\*" by the joinder. State v. Roberts (1980), 62 Ohio St. 2d 170, 175, certiorari denied, 449 U.S. 879. "[T]he burden (is) upon the defendant to either affirmatively demonstrate before trial that his rights would be prejudiced by the joinder, or to show at the close of the state's case, or at the conclusion of all the evidence, that his rights actually had been prejudiced by the joinder." State v. Williams (1981), 1 Ohio App. 3d 156, 159; see, also, State v. Owens (1975), 51 Ohio App. 2d 132.

As to the pre-trial prong of this "test", appellant argues that "\*\*\* the Court's failure to grant the Motion to Sever \*\*\* denied Defendant a fair trial and had a chilling effect on his right to a jury trial, since he was faced with either choosing a three judge panel or a jury who would know about the prior homicide. While the jury may be given an instruction that this is only to be used for the weapons under disability charge or for determining the specification, it is not credible to believe that a jury could not take this into consideration when determining guilt." This argument is without merit. At best, it merely raised a risk of prejudice; it did not make the required showing of prejudice. Williams, supra, at 159. It is presumed that a

- 16 -



jury will obey a trial court's instructions. <u>State</u> v. <u>Dunkins</u>
(1983), 10 Ohio App. 3d 72, 73.

Nor was there actual prejudice to appellant. The evidence
of the prior convictions was simple and distinct; there was no
elaboration as to the details of appellant's prior second degree
murder conviction. Also, the evidence of guilt was so overwhelm-
ing that it may be concluded, beyond a reasonable doubt, that the
introduction of the prior convictions did not contribute to the
guilty verdict. Under the circumstances in this case, the denial
of appellant's motion to sever did not prejudice his right to a
fair trial. See <u>Stone</u> v. <u>State</u> (1984), 253 Ga. 433, 321 S.E.2d
723; <u>State</u> v. <u>Hilongo</u> (1982), 64 Haw. 577, 645 P.2d 314; <u>Pope</u> v.
<u>State</u> (1983), 168 Ga. App. 846, 310 S.E.2d 575; <u>Dunkins</u>, <u>supra</u>;
cf., <u>State</u> v. <u>Vazquez</u> (Supreme Court of Florida, 1982), 419 So.2d
1088.

Additionally, appellant raises a second argument in support
of this assignment of error. Under the Ohio capital punishment
scheme, proof of aggravating circumstances is to be adduced at
the guilt phase of the capital trial. However, R.C. 2929.022(A),
entitled "Determination of aggravating circumstance," states:

> "If an indictment or count in an indict-
> ment charging a defendant with aggravated
> murder contains a specification of the ag-
> gravating circumstance of a prior convic-
> tion listed in division (A)(5) of section
> 2929.04 of the Revised Code [see footnote
> 3, <u>supra</u>], the defendant may elect to have
> the panel of three judges, if he waives
> trial by jury, or the trial judge, if he is
> tried by jury, determine the existence of

- 17 -



that aggravating circumstance at the
sentencing hearing ***."

The thrust of appellant's "second argument" is as follows:
Crim. R. 8 permitted the joinder of the counts contained in the
indictment. Under R.C. 2929.022(A), however, appellant could
elect to have proof of prior convictions, an essential element of
which was the purposeful killing of or attempt to kill another,
determined at a sentencing hearing. When the trial court refused
to sever the two counts, proof of appellant's prior second degree
murder conviction, a necessary element of the second count, was
rendered admissible at trial. This abridged appellant's statu-
tory right under R.C. 2929.022(A) to elect to have evidence of
prior purposeful killings considered only at a sentencing
hearing.

Appellant's argument in this regard is without merit. As
stated above, Ohio's statutory framework for imposition of cap-
ital punishment directs that aggravating circumstances be deter-
mined at the guilt phase. Accordingly, but for R.C. 2929.022(A),
the state would be able to bring in evidence not otherwise admis-
sible under the rules of evidence; i.e., were R.C. 2929.022(A)
not included in the statutory framework, evidence pertaining to
prior purposeful killings would not be considered prejudicial
but, rather, would be admissible at trial to prove the aggravat-
ing circumstance of R.C. 2929.04(A)(5). The simple purpose of
R.C. 2929.022(A) is to provide the capital defendant with a
mechanism whereby the introduction of such evidence may be

- 18 -

$87$

precluded. Stated in other words, when the R.C. 2929.022(A) election is made, evidence concerning prior purposeful killings not otherwise admissible may not be introduced to prove an aggravating circumstance. Contrary to appellant's second argument, it is not the purpose of R.C. 2929.022(A) to provide the defendant with a blanket statutory right to preclude, at the guilt phase, the introduction of all evidence pertaining to prior purposeful killings which is otherwise admissible. The third assignment of error is hereby overruled.

In his fourth assignment of error, appellant contends that "The judgment was against the manifest weight of the evidence and contrary to law." Specifically, appellant asserts that the evidence does not support a finding of that "prior calculation and design" required for an aggravated murder conviction.

The Court of Appeals for Cuyahoga County, Markus, J., discussed the requirement of prior calculation and design in State v. Davis (1982), 8 Ohio App. 3d 205, 206-207:

> "Prior calculation and design sets up a
> more demanding standard than the old first
> degree murder standard of 'deliberate and
> premeditated malice.' Prior calculation
> and design requires the accused to have
> killed purposefully after devising a plan
> or scheme to kill. There must be some kind
> of studied analysis with its object being
> the means by which to kill. The kind of
> momentary deliberation or instantaneous
> premeditation that was the accepted stand-
> ard under the old statute, as exemplified
> by State v. Schaffer (1960), 113 Ohio App.
> 125 ***, is no longer sufficient or
> acceptable."

- 19 -

88

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 796

See, also, <u>State</u> v. <u>Robbins</u> (1979), 58 Ohio St. 2d 74; <u>State</u>
v. <u>Cotton</u> (1978), 56 Ohio St. 2d 8; <u>State</u> v. <u>Stidham</u> (May 11,
1983), Brown App. No. 404, unreported; <u>State</u> v. <u>Jenkins</u> (1976),
48 Ohio App. 2d 99, 101-102.

Although appellant's precise state of mind during the even-
ing hours of December 12, 1983 was not established, other evi-
dence addressed at trial supports the conclusion that appellant
murdered Suzette Butler according to a plan and with prior calcu-
lation and design.  First, the state's evidence, which the three
judge panel evidently believed, indicates that the shooting was
not the result of an "instantaneous eruption of events."  To the
contrary, neither Massey nor Denmark (who witnessed the shoot-
ing) nor Aldridge (who sat with appellant and the decedent inside
the American Legion bar) testified at trial as to any sort of
verbal or physical confrontation between appellant and the dece-
dent.  Massey and Denmark testified that they saw two people
"talking" in front of the American Legion.  Further, the state's
evidence was that during the afternoon of the shooting appellant
purchased the murder weapon and ammunition through a third per-
son.  Then, in the presence of both Lovette and Coleman, he
loaded the gun and slipped it under the driver's seat of his
automobile.  Only a few hours later appellant used this gun to
fire four shots, at close range, into the left side of the
decedent's head.  The final shot came in execution style:  "***
(A)fter she was down, he bent down and shot her in the head, it

- 20 -

89

was about a couple inches from her head ***."

These facts, as could be interpreted by the three judge
panel, do not so much speak of momentary deliberation or instan-
taneous premeditation as of appellant's holding Suzette Butler's
life in cheap regard. The record reflects substantial evidence
of that studied analysis required for a finding of "prior calcu-
lation and design." See State v. Eley (1978), 56 Ohio St. 2d
169, 172. Appellant's fourth assignment of error must be
rejected.

The fifth assignment of error is also without merit. There-
under, appellant argues that "The court erred in not dismissing
the specification of the indictment that the appellant had com-
mitted a prior homicide, on the basis that such specification was
too remote in time to be used against appellant."

In support of this assignment, appellant relies solely on
this court's decision in State v. George (Apr. 30, 1984), Butler
App. No. CA83-04-034, unreported. George raised the question of
whether certain testimony, relating to an act which had occurred
fourteen years prior to trial, was admissible into evidence.
Such testimony was offered by the state for the purpose of deter-
mining the identity of the individual responsible for the crime
at issue. Therein, and under the unique facts presented by that
case, we held: "*** the prior act of (the defendant) does not
have such a temporal relationship with the act constituting the
crime charged that evidence of the prior act discloses that the

- 21 -

90

identity of the perpetrator is the same in each one."

George is readily distinguishable from the case sub judice. Unlike the testimony at issue in George, evidence of appellant's 1971 second degree murder conviction was here offered, in connection with R.C. 2929.04(A)(5), simply to demonstrate that appellant had, in fact, previously been convicted of an offense an essential element of which was the purposeful killing of another. Additionally, we note that Mapes, supra, involved the aggravating circumstance of an eleven year old killing. As the aggravating circumstance specified in count one of the indictment was not too remote in time to be used against appellant, the fifth assignment of error is overruled.

For his sixth assignment of error, appellant argues that "The court erred in imposing the death penalty as the court found as aggravating (circumstances) factors not listed in the Ohio Revised Code and factors which were improper for consideration under the Ohio Revised Code."

R.C. 2929.03(F) provides:

> "The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. ***"

- 22 -

91

At the conclusion of the sentencing phase, and pursuant to R.C. 2929.03(F), the three judge panel made the following specific findings:

> "***
> "We find the following aggravated circumstances have been proven beyond a reasonable doubt:
> "1) The manner by which the Defendant purchased the gun, used to kill the victim in this case.
> "2) The manner by which the Defendant purchased the ammunition for the gun.
> "3) The shooting of the victim, the firing at close range and finally placing the gun almost against her skull and discharging the weapon.
> "4) The prior purposeful killing of his wife in 1970 by multiple stab wounds.
> "5) Committing the present offense while on parole for the murder of his wife.
> "***"

The purpose of the eight statutory aggravating circumstances listed in R.C. 2929.04(A) is to limit the discretion of the sentencing body. They objectively narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a more severe sentence on particular defendants as compared to others found guilty of aggravated murder. We agree with appellant that the trial court's consideration of non-statutory aggravating circumstances was improper under Godfrey v. Georgia, supra.

There remains, however, the question of whether our conclusion in this regard necessitates that appellant be resentenced. In Zant v. Stephens (1983), 462 U.S. 862, the Georgia Supreme Court had struck down as unconstitutionally vague one of three

- 23 -

92

aggravating circumstances considered by the jury in the defendant's capital trial. Despite this action, the Georgia court concluded that resentencing was not required. Upon review, the United States Supreme Court affirmed. The evidence which supported the defective aggravating circumstance, absent its designation as an aggravating circumstance, was otherwise admissible and the Georgia Supreme Court had reviewed the sentence in order to guard against arbitrariness and to assure proportionality. See, also, the fifth paragraph of the syllabus in Jenkins, supra, wherein the Ohio Supreme Court held: "In the penalty phase of a capital prosecution, where two or more aggravating circumstances arise from the same act or indivisible course of conduct and are thus duplicative, the duplicative aggravating circumstances will be merged for purposes of sentencing. Should this merging of aggravating circumstances take place upon appellate review of a death sentence, resentencing is not automatically required where the reviewing court independently determines that the remaining aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt and that the jury's consideration of duplicative aggravating circumstances in the penalty phase did not affect the verdict."

As in Zant and Jenkins, the evidence supporting the non-statutory aggravating circumstances considered by the court below was clearly admissible. Additionally, and again as in Zant and Jenkins, R.C. 2929.05(A) requires this court to make independent

- 24 -

93

Butler CA84-06-071

findings when the death sentence is imposed. Specifically, R.C. 2929.05, entitled "Appellate review of death sentence," provides:

> "(A) Whenever sentence of death is imposed ***, the court of appeals *** shall upon appeal review the sentence of death at the same time that [it] review[s] the other issues in the case. The court of appeals *** shall review the judgment in the case and the sentence of death imposed by the *** panel of three judges in the same manner that [it] review[s] other criminal cases, except that [it] shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case ***. [The court of appeals] shall also review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances *** the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors. The court of appeals *** shall affirm a sentence of death only if [it] is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case ***."

It is our conclusion that although the trial court improperly considered non-statutory aggravating circumstances, this does not require that appellant's sentence be set aside. "Any *** possibility of error that this had upon the [three judge panel's] judgment can be guarded against when this court undertakes its responsibility *** to weigh all of the evidence and determine whether the remaining *** aggravating circumstance

- 25 -

94

Butler CA84-06-071

which appellant was found guilty of committing outweigh[s] the mitigating factors present in this case." Jenkins, supra, at pp. 199-200. The sixth assignment of error is overruled.

Appellant also contends, by his seventh assignment of error, that "Under the proportionality review required to be done by this court, the penalty imposed upon Von Clark Davis is out of proportion to the other sentences given for similar crimes in this county." We disagree.

R.C. 2929.05(A) further provides as follows:

> "Whenever sentence of death is imposed
> ***, the court of appeals *** shall review
> the judgment in the case and the sentence
> of death imposed by the *** panel of three
> judges in the same manner that (it)
> review(s) other criminal cases, except that
> (it) shall review and independently weigh
> all of the facts and other evidence dis-
> closed in the record in the case and con-
> sider the offense and the offender to
> determine *** whether the sentence of death
> is appropriate. In determining whether the
> sentence of death is appropriate, the court
> of appeals *** shall consider whether the
> sentence is excessive or disproportionate
> to the penalty imposed in similar cases.
> *** The court of appeals *** shall affirm a
> sentence of death only if (it) is persuaded
> from the record *** that the sentence of
> death is the appropriate sentence in the
> case."

Based on the record and the evidence, it is this court's opinion that the death penalty is appropriate in the case sub judice and is not excessive or disproportionate to the penalty imposed in similar cases. State v. Russell (Dec. 30, 1985), Clermont App. No. CA84-01-001, unreported; State v. Pierce (Mar.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 803

17, 1986), Butler App. No. CA84-10-125, unreported; Jenkins, supra; Maurer, supra; Mapes, supra; Martin, supra; Buell, supra. Appellant's seventh assignment of error is overruled.

We now undertake the task of independently weighing the aggravating circumstances against any mitigating factors. Despite the trial court's consideration of non-statutory criteria (see the sixth assignment of error, supra), one aggravating circumstance remains: prior to the offense at bar, appellant was convicted of second degree murder, an offense an essential element of which was the purposeful killing of another.[8]

Based upon the evidence adduced at the sentencing hearing, the three judge panel specifically enumerated and considered the following factors in mitigation:

> "1) The Defendant adjusted well to prison
> routine and during his stay in prison, ob-
> tained a high school GED and an associate
> degree in Business Administration, and
> studied for and worked as a dental
> technician.
> "2) There has always been a good family
> relationship between the Defendant and all
> members of his family, including his step
> father.
> "3) Since his release on parole, he has
> maintained at least partial employment.
> "4) As testified by the psychologist,
> Defendant has a compulsory personality
> disorder or explosive disorder which may
> have contributed to the violence in this
> case."

These factors, which fail to exemplify the factors set forth in R.C. 2929.04(B)(1) through (B)(6),[9] in no way excuse appellant's culpability in two murders. While he suffered from

- 27 -

96

personality disorders, appellant did not lack substantial capac-
ity to conform his conduct to the requirements of the law or to
appreciate the criminality of his conduct. Rather, the murder of
Suzette Butler was knowingly and deliberately accomplished.
After careful consideration of the record, we can only conclude
that the aggravating circumstance of this case outweighs the
above R.C. 2929.04(B)(7) mitigating factors beyond a reasonable
doubt. That the three judge panel considered non-statutory
aggravating circumstances in the penalty phase did not affect the
sentence herein.

Appellant's claims have all been discussed and rejected.
Accordingly, we affirm the conviction and sentence of death in
this case.

Judgment affirmed.

HENDRICKSON, P.J., and JONES, J., concur.

---

[1] Additionally, we note the following testimony wherein Coleman
identified appellant's stated rationale for desiring a gun:

> "***
>
> "Q. (by the prosecuting attorney). *** Did Mr. Davis have an occasion to discuss with you why he needed to have a gun?
>
> "A. (by Coleman). No more than he wanted for protection."

- 28 -

97

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 805

[2] R.C. 2903.01 provides:

> "(A) No person shall purposely, and with
> prior calculation and design, cause the
> death of another."

[3] In pertinent part, R.C. 2929.04 provides:

> "(A) Imposition of the death penalty for
> aggravated murder is precluded, unless one
> or more of the following is specified in
> the indictment or count in the indictment
> pursuant to section 2941.14 of the Revised
> Code and proved beyond a reasonable doubt:
> "***
> "(5) Prior to the offense at bar, the
> offender was convicted of an offense an
> essential element of which was the pur-
> poseful killing of or attempt to kill
> another, or the offense at bar was part of
> a course cf conduct involving the purpose-
> ful killing of or attempt to kill two or
> more persons by the offender.
> "***"

[4] In pertinent part, R.C. 2923.13, entitled "Having weapons while
under disability," provides:

> "(A) Unless relieved from disability as
> provided in section 2923.14 of the Revised
> Code, no person shall knowingly acquire,
> have, carry, or use any firearm or danger-
> ous ordnance, if any of the following
> apply:
> "***
> "(2) Such person is under indictment for
> or has been convicted of any felony of
> violence, or has been adjudged a juvenile
> delinquent for commission of any such
> felony;
> "***"

[5] I.e., Furman v. Georgia (1972), 408 U.S. 238.

- 29 -

98

[6] In pertinent part, R.C. 2929.04, entitled "Criteria for imposing death or imprisonment for a capital offense," provides:

> "(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:
>
> "(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. For purposes of this division, a person is a candidate if he has been nominated for election according to law, or if he has filed a petition or petitions according to law to have his name placed on the ballot in a primary or general election, or if he campaigns as a write-in candidate in a primary or general election.
>
> "(2) The offense was committed for hire.
>
> "(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.
>
> "(4) The offense was committed while the offender was a prisoner in a detention facility as defined in section 2921.01 of the Revised Code.
>
> "(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.
>
> "(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code, whom the offender had reasonable cause to know or knew to be such, and either the victim, at the time of the commission of the offense, was engaged in his duties, or it was the

- 30 -

99

offender's specific purpose to kill a peace officer.

"(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

"(8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent his testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness, or the victim of the aggravated murder was a witness to an offense and was purposely killed in retaliation for his testimony in any criminal proceeding."

[7] We note the case of State v. Dunkins (1983), 10 Ohio App. 3d 72, wherein it was held that:

"The law favors joinder for public policy reasons, such as: to conserve judicial economy and prosecutorial time; to conserve public funds by avoiding duplication inherent in multiple trials; to diminish the inconvenience to public authorities and witnesses; to promptly bring to trial those accused of a crime; and to minimize the possibility of incongruous results that can occur in successive trials before different juries."

[8] In accordance with the mandate of R.C. 2929.05(A), we note our conclusion that the evidence supports the panel's finding of this aggravated circumstance.

- 31 -



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 808

[9] The R.C. 2929.04 criteria for imposing death or imprisonment for a capital offense are as follows:

> "(B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, *** the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
> "(1) Whether the victim of the offense induced or facilitated it;
> "(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
> "(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
> "(4) The youth of the offender;
> "(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;
> "(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;
> "(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

- 32 -

(O)

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 809

IN THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT OF OHIO
BUTLER COUNTY

STATE OF OHIO,                         *      CASE NO. CA84-06-071

    Plaintiff-Appellee      *

   vs.                            *    SEPARATE OPINION PURSUANT
                                  TO R.C. 2929.05(A)
VON CLARK DAVIS,                       *

    Defendant-Appellant       *

**FILED in Court of Appeals**
BUTLER COUNTY, OHIO
MAY 2 7 1986
EDWARD S ROBB. JR.
CLERK

      Pursuant to R.C. 2929.05(A), this court certifies that it
has reviewed the judgment, the sentence of death, the transcript
and all of the facts and other evidence in the record in this
case and makes the following independent findings:

      1) The evidence supports the finding by the three judge
panel that appellant Von C. Davis was guilty of aggravated murder
and the aggravating circumstance charged in the indictment.
      2) The aggravating circumstance for which appellant was
found guilty outweighs the mitigating factors in this case.
      3) The death sentence is not excessive or disproportionate
to the sentence imposed in similar cases.
      4) The sentence of death is appropriate in this case.

      In making this certification and these findings, this court
incorporates its full opinion affirming the conviction and sen-
tence in this case.

      Judgment affirmed.

William R. Hendrickson
Presiding Judge

Richard N. Koehler, Judge

Fred E. Jones, Judge

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 810

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                        *        CASE NO. CA84-06-071

    Plaintiff-Appellee           *

vs.                       **FILED in Court of Appeals** JUDGMENT ENTRY

                       BUTLER COUNTY, OHIO

VON CLARK DAVIS,

    Defendant-Appellant        MAY 2 7 1986

               EDWARD S. ROBB, JR.
                   CLERK

    The assignments of error properly before this Court having
been ruled upon as heretofore set forth, it is the Order of this
Court that the judgment or final order herein appealed from be,
and the same hereby is, affirmed.

    It is further Ordered that a mandate be sent to the Court of
Common Pleas of Butler County, for execution upon this judgment.

    Costs to be taxed in compliance with App. R. 24.

    And the Court, being of the opinion that there were
reasonable grounds for this appeal, allows no penalty.

    It is further Ordered that a certified copy of this Judgment
Entry shall constitute the mandate pursuant to App. R. 27.

    To all of which the appellant, by his counsel, excepts.

                         William R. Hendrickson
                         Presiding Judge

                         Richard N. Koehler, Judge

                         Fred E. Jones, Judge

103

STATE OF OHIO                    :        State of Ohio, Butler County

    Plaintiff                    :        Court of Common Pleas

vs.                              :        Case No.  CR83-12-0614

VON CLARK DAVIS                  :        O P I N I O N

    Defendant  Filed in Common Pleas Court
                BUTLER COUNTY, OHIO
               : : : : : : : :
                JUN 11 1984

BRUEWER, J.

                EDWARD S. ROBB, JR.
    This opinion is made pursuant to Section 2929.03(F),

Ohio Revised Code.

    This panel of three (3) judges has imposed the death

penalty and makes the following findings as to the existence

of mitigating factors and aggravated circumstances.

    We find the following to be mitigating factors:

    1)  The Defendant adjusted well to prison routine and

during his stay in prison, obtained a high school GED and

an associate degree in Business Administration, and studied

for and worked as a dental technician.

    2)  There has always been a good family relationship

between the Defendant and all members of his family, including

his step father.

    3)  Since his release on parole, he has maintained

at least partial employment.

    4)  As testified by the psychologist, Defendant has

a compulsory personality disorder or explosive disorder which

539
VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 812

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

JUN 1 1 1984

EDWARD S. ROBB, JR.
CLERK

may have contributed to the violence in this case.

We find the following aggravated circumstances have been proven beyond a reasonable doubt:

1) The manner by which the Defendant purchased the gun, used to kill the victim in this case.

2) The manner by which the Defendant purchased the ammunition for the gun.

3) The shooting of the victim, the firing at close range and finally placing the gun almost against her skull and discharging the weapon.

4) The prior purposeful killing of his wife in 1970 by multiple stab wounds.

5) Committing the present offense while on parole for the murder of his wife.

After considering the mitigating factors and the aggravating circumstances proved beyond a reasonable doubt, we unanimously find by proof beyond a reasonable doubt that the aggravated circumstances the Defendant was found guilty of, outweigh the mitigating factors found by this panel.

The killing of the victim in this case was planned, calculated and designed by the Defendant and carried out in an execution fashion. Further, he had previously been convicted of second degree Murder for the purposeful killing of his wife. These make it impossible for this panel to arrive at any other conclusion than that the aggravated

1 380 P118





VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 813

circumstances, proven beyond a reasonable doubt, outweigh
the mitigating factors.

We, therefore, sentence the Defendant to death by
electrocution on October 1, 1984.

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

JUN 1 1 1984

EDWARD S. ROBB, JR.
CLERK

JUDGE HENRY J. BRUEWER

JUDGE WILLIAM R. STITZINGER

JUDGE JOHN R. MOSER

J 380 P 119



STATE OF OHIO              :         CASE NO.  CR83-12-0614

FILED

Plaintiff                 :         STATE OF OHIO
                                    COUNTY OF BUTLER
vs                        :         COURT OF COMMON PLEAS

Clerk of Common Pleas Court

VON CLARK DAVIS    BUTLER COUNTY, OHIO    JUDGMENT OF CONVICTION ENTRY
                                          AND WRIT FOR THE EXECUTION
        Defendant         :               OF THE DEATH PENALTY
                         4 1984

: : : : : : : : : : : : : : : : : : : : : : : : : : : :

EDWARD S. ROBB, JR.

This 29th day of May, 1984 the defendant came before the Court

personally and with his counsel, Michael D. Shanks and John A. Garretson, and

the Indictment, plea, trial, and verdict of the Three Judge Panel on the

issue of Guilt and Specification being as set forth in the previous Entry of

the Court, which are expressly included herein by reference,

        And the Court having considered all facts and circumstances in

aggravation and mitigation as set forth in Sections 2929.03-2929.04,

        Coming now to the imposition of sentence, pursuant to Rule 32(A)(1) of

the Ohio Rules of Criminal Procedure, the Court afforded counsel an opportunity

to speak on behalf of the defendant, and the Court addressed the defendant

personally and asked him if he wished to make a statement in his own behalf or

present any information in mitigation of punishment, and nothing being said by

defendant as to why sentence should not now be pronounced,

        IT IS ORDERED as to Count One of the Indictment that the Butler

County Sheriff shall, within thirty (30) days hereof, in a private manner,

convey the defendant to the Southern Ohio Correctional Facility at Lucasville,

Ohio, where such prisoner shall be received by the Warden and kept until the

day designated for his execution in the manner and form prescribed by law.

        IT IS FURTHER ORDERED as to Count One of the Indictment that the

defendant, Von Clark Davis, on the 1st day of October, 1984, within the walls

of the Southern Ohio Correctional Facility at Lucasville, Ohio, shall be

electrocuted by causing a current of electricity of sufficient intensity to

cause the death to pass through the body of the said defendant, the application

of such current to be continued until the said defendant is dead.

        The Warden of the Southern Ohio Correctional Facility at Lucasville,

Ohio, or, in his absence, a Deputy Warden, shall be the executioner, and said

death sentence must be inflicted within the walls of the Southern Ohio

Correctional Facility at Lucasville, Ohio and within an enclosure to be

prepared for that purpose under the direction of the Warden.  Such enclosure

shall exclude public view.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
JOHN F. HOLCOMB
PROSECUTING ATTORNEY

BUTLER COUNTY
COURTHOUSE
P. O. BOX 515
HAMILTON, OHIO 45012

J 379  P 308

107

IT IS FURTHER ORDERED as to the second Specification contained in Count One of the Indictment that the defendant be confined in the Southern Ohio Correctional Facility at Lucasville, Ohio for a term of actual incarceration of three (3) years imposed pursuant to Section 2929.71 of the Ohio Revised Code, to be served prior to and consecutively with any other term of imprisonment imposed herein.

IT IS FURTHER ORDERED as to Count Two of the Indictment that the defendant be confined in the Southern Ohio Correctional Facility at Lucasville, Ohio, for a definite term of one and one-half (1-1/2) years.

IT IS FURTHER ORDERED that the defendant shall pay the costs of prosecution herein.

FILED in Common Pleas Court
BUTLER COUNTY, OHIO

MAY 4 1984

EDWARD S. ROBB, JR.
CLERK

ENTER

HENRY J. BRUEWER, PRESIDING JUDGE

WILLIAM R. STITSINGER, JUDGE

JOHN R. MOSER, JUDGE

APPROVED:

JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY
COURTHOUSE
P O BOX 515
HAMILTON, OHIO 45012

J379 P809

- 2 -

108

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 816



22

# CHAPTER 2903: HOMICIDE AND ASSAULT

Section

### HOMICIDE

2903.01 Aggravated murder.
2903.02 Murder.
2903.03 Voluntary manslaughter.
2903.04 Involuntary manslaughter.
2903.05 Negligent homicide.
2903.06 Aggravated vehicular homicide.
2903.07 Vehicular homicide.
2903.08-2903.10 Repealed.

### ASSAULT

2903.11 Felonious assault.
2903.12 Aggravated assault.
2903.13 Assault.
2903.14 Negligent assault.
2903.15, 2903.16 Repealed.

### MENACING

2903.21 Aggravated menacing.
2903.22 Menacing.

**Committee Comment to H 511**

Chapter 2903, defines those offenses, other than assaultive sex offenses, of which the primary thrust is actual or potential harm to persons.

The chapter contains the single capital offense defined in the code, aggravated murder, which includes the planned killing in cold blood, and the purposeful killing committed during kidnapping, rape, arson, robbery, burglary, or escape. The lesser offense of murder is defined simply as the purposeful killing of another.

Elements of the former offense of first degree manslaughter are divided between two sections: voluntary manslaughter, which is knowingly killing another while under extreme emotional stress brought on by serious provocation; and involuntary manslaughter, which is killing another as a proximate result of the commission of a felony. Involuntary manslaughter carries a more severe penalty if the death was caused through commission of a felony than if it resulted from commission of a misdemeanor. Under former law the penalty for manslaughter was the same regardless of whether the offense was voluntary or involuntary, and regardless of the cause of death. Negligent homicide, a new offense, is defined as negligently killing another by means of a deadly weapon or dangerous ordnance.

Two vehicular homicide offenses are included in the chapter, both dealing with killing another while operating a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft. The difference between the two is that the aggravated offense is committed recklessly, while the less serious offense is committed negligently. Former law connected these offenses to the violation of various traffic laws, rather than to the recklessness or negligence of the offender. Also, former law did not provide a homicide offense involving snowmobiles or aircraft, and the offense involving locomotives was obsolete and unenforceable.

Four assault and two menacing offenses are defined in the chapter. Felonious assault is knowingly causing serious physical harm to another by any means, or knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. Aggravated assault is the same, except that it is committed while the offender is under extreme emotional stress induced by serious provocation. Thus, felonious assault and aggravated assault complement murder and voluntary manslaughter, respectively. Simple assault and negligent assault offenses are also defined, complementing involuntary manslaughter and negligent homicide, respectively. The two menacing offenses are defined as causing another to believe the offender will harm him or his family or his property, and the distinction between the two is based on the degree of threatened harm.

## HOMICIDE

### § 2903.01 Aggravated murder.

(A) No person shall purposely, and with prior calculation and design, cause the death of another.

(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

(C) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code.

(D) No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. In no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because he engaged in a common design with others to commit the offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit, the offense. If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his

23



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 817

Case: 2:16-cv-00495-SJD-MRM Doc #: 4-7 Filed: 08/08/16 Page: 43 of 130 PAGEID #: 852

lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt.

HISTORY: 134 v H 511 (Eff 1-1-74); 130 v S 1, Eff 10-19-81.

Not analogous to former RC § 2903.01 (GC § 12403-1; 109 v 48; 121 v 557, (572); Bureau of Code Revision, 10-1-53; 196 v 114), repealed 134 v H 511, § 2, eff 1-1-74.

### Committee Comment to H 511

The first part of this section restates the former crime of premeditated murder so as to embody the classic concept of the planned, cold-blooded killing while discarding the notion that only an instant's prior deliberation is necessary. By judicial interpretation of the former Ohio law, murder could be premeditated even though the fatal plan was conceived and executed on the spur of the moment. See, *State v. Schaffer*, 133 Ohio App. 125, 17 O.O. 2d 114, 177 N.E. 2d 534 (Lawrence Co. App., 1960). The section employs the phrase, "prior calculation and design," to indicate studied care in planning or analyzing the means of the crime, as well as a scheme compassing the death of the victim. Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must amount to more than momentary deliberation.

The second part of the section defines the offense of felony murder. The requirement that the killing must be purposeful is retained. See, *Turk v. State*, 48 Ohio App. 489, 2 O.O. 96, 194 N.E. 425 (Cuyahoga Co. App., 1934), aff'd 129 Ohio St. 245, 194 N.E. 453. The section expands upon the former crime of felony murder by listing kidnapping and escape, in addition to rape, arson, robbery and burglary, as the felonies during which a purposeful killing constitutes aggravated murder.

Aggravated murder is a capital offense, for which the penalty may be death or imprisonment for life. In addition, the offender may be fined up to $25,000. If any one of seven aggravating circumstances is specified in the indictment and proved beyond a reasonable doubt, and none of three mitigating circumstances is established by a preponderance of the evidence, the penalty is death. Otherwise, the penalty is life imprisonment. The penalties, the procedure for determining the penalty to be imposed in a given case, and the lists of aggravating and mitigating circumstances are set forth in sections 2929.02, 2929.03, and 2929.04.

### Transition — capital offenses.

Persons charged with a capital offense committed prior to January 1, 1974, must be tried under the law as it existed at the time of the offense and, if convicted, sentenced to life imprisonment. If the section defining the offense provides for a lesser penalty under the circumstances of a particular case, then the lesser penalty must be imposed in that case.

Persons committing aggravated murder (the only capital offense in the new code) on and after January 1, 1974, must be charged and tried under the new law and, if convicted, may be subject to the death penalty. See, sections 2903.01, 2929.02 to 2929.04, and 2941.14.

### Cross-References to Related Sections

Aggravated murder defined as offense of violence, RC § 2901.01(I).

Conviction as bar to inheritance from victim, RC § 2105.19.

Custody of defendant under suspended sentence, RC § 2953.11.

Death defined, RC § 2108.30.

Purpose defined, RC § 2901.22(A).

Standards for community-based corrections programs, RC § 5149.31.

### Ohio Constitution

Bail for capital offenders, OConst art I, § 9.

### Comparative Legislation

Aggravated murder:
18 USC § 1111
CA—Penal Code § 190.1
FL—Stat Ann § 782.04
IL—Ann Stat ch 38 § 8-4
IN—Code § 35-13-4-1.
KY—Rev Stat Ann § 507.020
MI—Comp Laws Ann § 750.316
NY—Penal Law § 125.27
PA—CSA tit 18 § 2502

### Text Discussion

Culpability; purpose. 1 Ohio Crim. Prac. & Pro. § 51.3

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

Guilty plea in aggravated murder cases. 1 Ohio Crim. Prac. & Pro. § 25.6

Penalties and sentencing in capital offense. 1 Ohio Crim. Prac. & Pro. § 51.6c, d

### Forms

Aggravated murder. 4 OJI § 503.01

Aggravated murder: during specific felony. 4 OJI § 503.01

Sentencing hearing. 4 OJI § 503.01.

Specifications of aggravating circumstances. 4 OJI § 413.45

Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.01

### Research Aids

Aggravated murder and murder:
O-Jur3d: Crim L § 1782
Am-Jur2d: Crim L §§ 24-26

### ALR

Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. 1 ALR3d 571.

Application of felony murder doctrine where the felony relied upon is an included offense with the homicide. 40 ALR3d 1341.

Causing one, by threat or fright, to leap or fall to his death. 25 ALR2d 1186.

Degree of homicide as affected by accused's religious or occult belief in harmlessness of ceremonial ritualistic acts directly causing fatal injury. 78 ALR3d 1132.

Homicide as affected by lapse of time between injury and death. 60 ALR3d 1323.

Homicide by fright or shock. 47 ALR2d 1072.

Homicide: what constitutes "lying in wait." 89 ALR2d 1140.


110

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 818

nse of violence, RC

m victim, RC

ended sentence, RC

orrections programs,

† I, § 9.

Prac. & Pro. § 51.3
'rac. & Pro. § 62.1
cases. 1 Ohio Crim.

ffense. 1 Ohio Crim.

' elony. 4 OJI §

stances. 4 OJI § 413.45
rac. & Pro. 8.01

r's character or reputa-
1 of self-defense by one
ide. 1 ALR3d 571.
trine where the felony
nse with the homicide.

to leap or fall to his

by accused's religious
sness of ceremonial
fatal injury. 78 ALR3d

f time between injury

LR2d 1072.
g in wait." 89 ALR2d

---

Modern status of rules as to burden and quantum of proof
  to show self-defense in homicide. 43 ALR3d 221.
Presumption of deliberation or premeditation from fact of
  killing. 86 ALR2d 656.
Presumption of deliberation or premeditation from the cir-
  cumstances attending the killing. 96 ALR2d 1435.
What constitutes attempted murder. 54 ALR3d 612.
What constitutes murder by torture. 83 ALR3d 1222.
What felonies are inherently or forceably dangerous to
  human life for the purpose of felony-murder doctrine.
  50 ALR 397.

**Law Review**

Constitutional law—due process—burden of proof—
  presumption of malice in homicide prosecution
  violates due process— *Mullaney v. Wilbur*, 421 US
  684 (1975). Case note. 45 CinLRev 144 (1976).
A hypothetical: *Quinlan* under Ohio law. Comment. 10
  AkronLRev 145 (1976).
*Patterson v. New York* [97 SCt 2319 (1977)], criminal pro-
  cedure—the burden of proof and affirmative defenses.
  Note. 9 ToledoLRev 524 (1978).
Shifting the burden of proving self-defense—with analysis
  of related Ohio law. Comment. 11 AkronLRev 717
  (1978).
Strict vicarious criminal liability for the acts of a victim.
  Note. 1 CapitalULRev 232 (1972).

## CASE NOTES AND OAG

### INDEX

Accident, 13
Complicity, 12
Corpus delicti, 10
Counts, conviction on several, 14
Evidence, 19 et seq
  Character of victim, 29
  Confession of accused, 21, 28
  Conviction of similar offense, 19
  Corpus delicti, 28
  Declaration of co-conspirator, 23
  Excited utterance, response to question, 30
  Fingerprints, 25
  Gunshot residue test, 31
  Photographs of victim's body, 27
  Polygraph examination, 22
  Prior calculation and design, 20
  Prior inconsistent silence, 24
  Specification, 19
  Subsequent threats against third person, 26
Guilty plea, acceptance of, 8
Indictment, amendment of, 1
Insanity, 6
Instructions to jury, 13, 16
Intent to kill, 32 et seq
  Accomplice, inferred, 34
  Actual victim not intended, 32
  Armed robbery, inferred, 36
  Arson, inferred, 37
  Concealment of victim's body, 38
  Deadly weapon, inferred from use, 34, 35
  Death as probable consequence, 35
  Jury question, 33
Jury trial, waiver, 3
Lesser included offenses, 39 et seq
  Affirmative defenses, 44, 45

Involuntary manslaughter, 40
Voluntary manslaughter—
  Instruction not required, 39, 44
  Instruction required, 41-43, 46
Prior calculation and design, 47 et seq
  Cumulative stress, compatible with, 50
  Deliberate and premeditated malice distinguished, 48, 53
  Demolition of occupied structure, 52
  Evidence sufficient, 47
  Instantaneous deliberation insufficient, 49, 51
  Prior law compared, 48, 51, 53
Prospective jurors, 9, 17
Proximate cause of death, 2, 7, 15, 18
Self-defense, 54 et seq
  Accident, inconsistent with, 55, 56
  Arresting officer, 61, 65
  Character evidence, 64
  Danger, belief of accused, 56, 57, 65
  Elements, 54
  Improper instruction, 66
  Initial aggressor, 60, 62
  Mob violence, 59
  Provoked assault, 63
  Resisting lawful authority, 58
Specifications, 4, 11
Verdict, consistency of, 5, 11

---

1. (1977) Where the indictment charged the defendant
only with premeditated murder, the court could not per-
mit "constructive" amendment of the indictment, by allow-
ing the prosecution to argue and present evidence on a
charge of felony-murder. To do so deprives a defendant of
the right to be apprised of the charges against him and may
prejudicially alter the conduct of his defense. The fact that
the charge to the jury included premeditated murder
in accord with the indictment could not cure the prejudice
to the defendant: Watson v. Jago, 558 F2d 330, 8 OO3d
307 (6thCir).

2. (1978) There was sufficient evidence from which the
jury could find that the beating administered by the defen-
dant was the proximate cause of death, rather than the
subsequent operation or removal of the respirator: State v.
Johnson, 56 OS2d 35, 10 OO3d 78, 381 NE2d 637.

3. (1978) An accused, charged with a capital offense,
has not knowingly, intelligently, and voluntarily waived
his right to a trial by jury where, prior to waiving this
right, he is misinformed that the three-judge panel may
render a verdict pursuant to RC § 2945.06 only by unan-
imous vote: State v. Ruppert, 54 OS2d 263, 8 OO3d 232,
375 NE2d 1250.

4. (1978) The discretion given to the trial judge in Crim.
R. 11(C)(3) to dismiss the specifications "in the interests of
justice" when the defendant enters a plea of guilty or no
contest to the charge of aggravated murder is neither viola-
tive of defendant's constitutional right to equal protection
of the laws nor does it coerce the defendant to waive his
constitutional right to a jury trial: State v. Nabozny, 54
OS2d 195, 8 OO3d 181, 375 NE2d 781.

5. (1978) The several counts of an indictment containing
more than one count are not interdependent and an incon-
sistency in a verdict does not arise out of inconsistent
responses to different counts, but only arises out of incon-
sistent responses to the same count: State v. Adams, 53
OS2d 223, 7 OO3d 393, 374 NE2d 137.

6. (1977) Defendant's contention that at the time of the

offense he was suffering from temporary insanity induced by a combination of drugs and alcohol was supported only by a doctor's conjectural testimony and was not sufficient to warrant a jury instruction: State v. Toth, 52 OS2d 206, 6 OO3d 461, 371 NE2d 831.

7. (1977) The trial court did not err by including in its charge on aggravated murder the element of proximate cause, since such factor is clearly an element of the crime as set forth in RC § 2903.01(B): State v. Cooper, 52 OS2d 163, 8 OO3d 377, 370 NE2d 725.

8. (1977) The state is not required to accept a guilty plea and dismissal of a specification in a capital case simply because it has done so with a codefendant: State v. Jackson, 50 OS2d 253, 4 OO3d 429, 364 NE2d 236.

9. (1976) In a prosecution for aggravated murder with specifications, a potential juror may be disqualified on voir dire if the trial court is satisfied from the inquiry that the juror will not render an impartial finding according to law as to defendant's guilt or innocence, both of the charge and the specifications: State v. Lockett, 49 OS2d 48, 3 OO3d 27, 358 NE2d 1062.

10. (1976) (a) The corpus delicti of a crime is the body or substance of the crime, included in which are usually two elements: (1) the act and (2) the criminal agency of the act. (b) There must be some evidence in addition to a confession tending to establish the corpus delicti, before such confession is admissible. (c) The quantum or weight of such additional or extraneous evidence is not of itself required to be equal to proof beyond a reasonable doubt, nor even enough to make a prima facie case. See State v. Maranda, 94 OS 364: State v. Edwards, 49 OS2d 31, 3 OO3d 18, 358 NE2d 1369.

11. (1976) Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid: State v. Perryman, 49 OS2d 14, 3 OO3d 8, 358 NE2d 1040.

12. (1976) When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper: State v. Perryman, 49 OS2d 14, 3 OO3d 8, 358 NE2d 1040.

13. (1976) In a prosecution for aggravated murder, the trial court did not err when it refused to give the standard instruction on accident to the jury where the court's instructions defined purpose in such a way as to include the possibility of a finding by the jury of accident, thereby barring a conviction of aggravated murder: State v. Bates, 48 OS2d 315, 2 OO3d 453, 358 NE2d 584.

14. (1980) Under RC § 2941.25(A), a defendant cannot be convicted of four counts of aggravated murder where only two homicides are involved: State v. Morningstar, 19 OO3d 283 (App).

15. (1977) One who has inflicted an injury upon another is criminally responsible for his death, despite the fact that different or more skillful medical treatment might have saved his life, or that his death was caused by a surgical operation rendered necessary by the condition of the injury: State v. Johnson, 60 OApp2d 45, 14 OO3d 24, 395 NE2d 368.

16. (1977) In a case of aggravated murder, and attempted aggravated murder with specifications of aggravated robbery, where the court in its charge instructs the jury that "the evidence discloses beyond question that [the decedent] was slain purposefully during the course of an aggravated robbery [and that another victim] was shot during the course of an aggravated robbery, and that the evidence discloses in fact an aggravated robbery was accomplished," such a charge invades the exclusive province of the jury as the judge of the facts and comes within the prohibitions of Morgan v. State, 48 OS 371 (1891); State v. Nutter, 22 OS2d 116, 51 OO2d 178 (1970), and Premack v. State, 11 Ohio CC(NS) 364 (1908): State v. Bridgeman, 51 OApp2d 105, 5 OO3d 275, 366 NE2d 1378.

17. (1975) Since the potential imposition of the death penalty in the trial of an aggravated murder charge with specifications is not within the province of the jury, it is improper, upon voir dire, to question prospective jurors relative to such penalty: State v. Strub, 48 OApp2d 57, 2 OO3d 40, 355 NE2d 819.

18. (1977) Courts of this state are not bound to hold that the common law rule establishing a conclusive presumption that an injury caused by a person to another who dies more than "a year and a day" following the injury did not cause his death is the law of Ohio, but are left to determine the question according to their best light and judgment: State v. Sandridge, 5 OO3d 419, 365 NE2d 898 (CP).

## Evidence

19. (1981) Where defendant's aggravated murder conviction was obtained at least in part by admission of inherently prejudicial evidence of a prior conviction as a "specification" to the charge, which was constitutionally infirm because defendant was not aware that he was pleading guilty to a charge of attempted murder, defendant was entitled to writ of habeas corpus should he not be retried: Lonberger v. Jago, 651 F2d 447 (6thCir).

20. (1981) An aggravated murder conviction must be reduced to murder because there was insufficient evidence of prior calculation and design or attempted robbery or escape: State v. Reed, 65 OS2d 117, 19 OO3d 311, 418 NE2d 1359.

21. (1978) Where there is some evidence, which of itself, need not be equal to proof beyond a reasonable doubt nor even make a prima facie case, in addition to the confession tending to establish the corpus delicti, the confession is admissible: State v. Black, 54 OS2d 304, 8 OO3d 296, 376 NE2d 948.

22. (1978) The results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment, provided that the following conditions are observed: (1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state. (2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence. (3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting: (a) the examiner's qualifications and training; (b) the conditions under which the test was administered; (c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and, (d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry. (4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 820

, and that the
obery was ac-
isive province
within the
: State v.
Premack
: Bridgeman,
78.

of the death
charge with
the jury, it is
ective jurors
OApp2d 57, 2

d to hold that
ive presump-
ther who dies
njury did not
left to deter-
ht and judg-
5 NE2d 898

murder con-
mission of in-
nviction as a
nstitutionally
that he was
urder, defen-
uld he not be
Cir).
tion must be
ient evidence
d robbery or
O3d 311, 418

hich] of
asonable
ddition to the
icti, the con-
304, 8 OO3d

mination are
r purposes of
t the follow-
ing attorney,
n stipulation
t and for the
and the ex-
defendant or
ion, the ad-
discretion of
nvinced that
as conducted
accept such
inion are of-
e the right to
e examiner's
under which
ions of and
aphic inter-
l judge, any
. (4) If such
truct the jury
s not tend to
vith which a

defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given: State v. Souel, 53 OS2d 123, 7 OO3d 207, 372 NE2d 1318.

23. (1977) A declaration of a conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity: State v. Shelton, 51 OS2d 68, 5 OO3d 42, 364 NE2d 1152.

24. (1977) The state is not barred from commenting on the fact that defendant related certain facts about the homicide for the first time at trial, despite his having had several prior conversations on the subject with non-law enforcement persons: State v. Osborne, 50 OS2d 211, 4 OO3d 406, 364 NE2d 216.

25. (1977) Fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime: State v. Miller, 49 OS2d 198, 3 OO3d 321, 361 NE2d 419.

26. (1976) In a prosecution for aggravated murder, testimony as to threats made by the defendant against a third person subsequent to the killing, which latter incident did not involve the deceased and formed no part of the murder affair, is not, over objection, admissible in evidence against the defendant: State v. Bayless, 40 OS2d 73, 2 OO3d 249, 357 NE2d 1035.

27. (1976) The trial court did not abuse its discretion in permitting photographs of the victim's body to be admitted in evidence in a prosecution for aggravated murder, since the number of shots fired, the places where the bullets entered the body, and the resulting wounds are all probative evidence of a purpose to cause death, and the total probative value of these photographs was not outweighed by the danger of prejudicial effect upon the defendant: State v. Hatfield, 48 OS2d 118, 2 OO3d 273, 357 NE2d 379.

28. (1979) In a prosecution for aggravated murder, the corpus delicti — the act and the criminal agency of the act — must be established prior to the admission of the defendant's extrajudicial confession, Where there is no evidence, circumstantial or direct, other than the defendant's extrajudicial confession, of the cause of death, or of any injury to the body or of any attempt at concealment of the body, the defendant's extrajudicial confession is inadmissible: State v. Ralston, 67 OApp2d 81,21 OO3d 403, 425 NE2d 939.

29. (1979) The state, in its case in chief, may not introduce testimony in a murder case evidencing the character and reputation of the deceased victim as a quiet and peaceable person, but if such incompetent evidence elicited by the state is admitted in evidence by the trial court, evidence contra offered by the defendant is admissible to rebut or explain the tainted evidence. Proof of the prior specific acts of violence of the deceased, unknown to defendant, is competent to impeach evidence introduced by the state that the deceased was a peaceable person: State v. Schmidt, 65 OApp2d 239, 19 OO3d 201, 417 NE2d 1264.

30. (1977) A declaration, made in response to a question posed by a witness, by one who has just been shot and who subsequently dies is admissible in evidence as an "excited utterance" if (1) there was a close proximity in time between the shooting and the declaration, and (2) under the circumstances the statement was almost certainly not the result of reflection or fabrication: State v. Dickerson, 51 OApp2d 255, 5 OO3d 377, 367 NE2d 927.

31. (1976) The results of a gunshot residue test may be admitted into evidence only after it is established that: (a) The test was based upon scientific principles which are accepted as dependable for the proposed purpose by the profession concerned in that science or its related art; and has gained general acceptance in the particular field to which it belongs; (b) The apparatus and/or materials used to make the scientific test were constructed or produced according to an acceptable model and were in condition to allow for accurate testing; and (c) The witness who conducted the test must be qualified by his training and experience to conduct the test: State v. Smith, 50 OApp2d 183, 4 OO3d 160, 362 NE2d 1239.

Intent to kill

32. (1981) If one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of RC § 2903.01(A): State v. Solomon, 66 OS2d 214, 20 OO3d 213, 421 NE2d 139.

33. (1980) The existence of an accused's purpose to kill must be found by the jury under proper instructions from the trial court and can never be determined by the court as a matter of law: State of Ohio v. Scott, 61 OS2d 155, 15 OO3d 182, 400 NE2d 375.

34. (1980) A jury may infer an aider and abettor's purpose to kill from his knowledge that a gun was to be used: State of Ohio v. Scott, 61 OS2d 155, 15 OO3d 182, 400 NE2d 375.

35. (1978) Where an inherently dangerous instrumentality is employed in the commission of an aggravated robbery, a homicide which occurs during the robbery is a natural and probable consequence thereof. Thus the mere fact that the shotgun was not fired at the decedent, but used as a club by the defendant, does not negate the presumption of an intent to kill since such a weapon is capable of causing death by either method: State v. Johnson, 56 OS2d 35, 10 OO3d 78, 381 NE2d 637.

36. (1978) Where the record in a prosecution for aggravated murder committed during the commission of an armed robbery established that the participants in the offense entered into a common design to commit the armed robbery by the use of force, violence and a deadly weapon and all the participants were aware that an inherently dangerous instrumentality was to be employed to accomplish the felonious purpose, a homicide occurring during the commission of the felony is a natural and probable consequence of the common plan which must be presumed to have been intended, and such evidence is sufficient to allow a jury to find a purposeful intent to kill: State v. Clark, 55 OS2d 257, 9 OO3d 257, 379 NE2d 597; State v. Lockett, 49 OS2d 48, 3 OO3d 27, 358 NE2d 1062, overruled on other grounds, 438 US 586, 57 LEd2d 973, 98 SCt 2954, 9 OO3d 26.

37. (1977) While the act of burning a structure alone may not be sufficient to infer a purpose to kill, when combined with the arsonist's actual knowledge that other persons are exposed to the substantial risk of serious physical harm the arsonist created, the element of purpose to kill can be presumed from the natural and probable consequences of his actions: State v. Thompson, 55 OApp2d 17, 9 OO3d 190, 379 NE2d 245.

38. (1976) In a criminal case, an inference of guilty intent may be drawn from the presentation of direct

113

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 821

evidence that an accused concealed the body of one he had killed: State v. Austin, 52 OApp2d 59, 6 OO3d 43, 368 NE2d 59.

**Lesser included offenses**

39. (1980) Given the lapse of time between allegedly provoking telephone conversations with the victim and his killing the next morning, during which there was no evidence of provocation, such killing was not as a matter of law committed under extreme emotional stress, and defendant was not entitled to an instruction on voluntary manslaughter: State v. Pierce, 64 OS2d 281, 18 OO3d 466, 414 NE2d 1038.

40. (1980) Where a jury could reasonably find against the state on the issue of an aider and abettor's purpose to kill, and find for the state on the remaining elements of felony murder, which themselves would sustain a conviction for involuntary manslaughter, a charge to the jury on involuntary manslaughter is both warranted and required (State v. Nolton, 19 OS2d 133, 135, 48 OO2d 119, 120, approved and followed): State of Ohio v. Scott, 61 OS2d 155, 15 OO3d 182, 400 NE2d 375.

41. (1978) Where, in a prosecution for aggravated murder, the defendant produces or elicits some evidence of the mitigating circumstance of extreme emotional stress described in RC § 2903.03, the question of his having committed the lesser included offense of voluntary manslaughter must be submitted to the jury under proper instructions from the court: State v. Muscatello, 55 OS2d 201, 9 OO3d 148, 378 NE2d 738.

42. (1977) In a prosecution for aggravated murder the defendant need only produce some evidence of extreme emotional stress in order to warrant a jury instruction on voluntary manslaughter: State v. Muscatello, 57 OApp2d 231, 11 OO3d 320, 387 NE2d 627.

43. (1976) In a trial where the defendant is charged with murder, if the jury could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements which by themselves would sustain a conviction upon a lesser included offense, a charge on the lesser included offense of manslaughter is required: State v. Osburn, 52 OApp2d 146, 6 OO3d 116, 368 NE2d 849.

44. (1976) Where an accused is charged with murder and pleads self-defense, the refusal of the court to charge the jury on the lesser included offense of negligent homicide is not error: State v. Grace, 50 OApp2d 259, 4 OO3d 223, 362 NE2d 1223.

45. (1976) In a case in which an accused asserts an affirmative defense, a trial court is not, for that reason alone, prevented per se from considering the degree of homicidal guilt. With respect to the element of prior calculation and design, which separates aggravated murder from its lesser included offense of murder, the jury, once having rejected the affirmative defense of self-defense, could reasonably have concluded either that prior calculation and design had been proved or it had not. Under such circumstances the lesser included offense should have been charged to the jury: State v. Jenkins, 48 OApp2d 99, 2 OO3d 73, 355 NE2d 825.

46. (1975) Where the evidence in a criminal case would support a finding by the jury of guilt of a lesser included offense to the offense for which the defendant was indicted and tried, a charge on such lesser included offense must be given; the refusal of a trial court to charge upon such a required lesser included offense is error prejudicial to the rights of the defendant: State v. Jones, 47 OApp2d 8, 1 OO3d 156, 351 NE2d 798.

**Prior calculation and design**

47. (1979) Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified: State v. Robbins, 58 OS2d 74, 12 OO3d 84, 388 NE2d 755; State v. Cotton, 56 OS2d 8, 10 OO3d 4, 381 NE2d 190.

48. (1978) In a capital case prosecuted under RC § 2903.01(A), "prior calculation and design" is a more stringent element than the "deliberate and premeditated malice" which was required under prior law. RC § 2903.01(A), construed: State v. Cotton, 56 OS2d 8, 10 OO3d 4, 381 NE2d 190.

49. (1978) Instantaneous deliberation is not sufficient to constitute "prior calculation and design": State v. Cotton, 56 OS2d 8, 10 OO3d 4, 381 NE2d 190.

50. (1978) Stress built up over a long period of time does not reduce a calculated homicide to voluntary manslaughter: State v. Muscatello, 55 OS2d 201, 9 OO3d 148, 378 NE2d 738.

51. (1977) Under RC § 2903.01, momentary deliberation, or acts done on the spur of the moment, are no longer sufficient to demonstrate premeditated murder: State v. Toth, 52 OS2d 206, 6 OO3d 461, 371 NE2d 831.

52. (1977) The demolition of an occupied structure by two individuals is sufficient to indicate agreement to engage in conduct in which the object is purposely to cause the death of any occupants of the structure, and further indicates prior design and calculation: State v. Kiraly, 56 OApp2d 37, 10 OO3d 53, 381 NE2d 649.

53. (1976) Revised Code § 2903.01(A) requires the state to prove beyond a reasonable doubt that the defendant purposely caused the death of another with "prior calculation and design." "Prior calculation and design" sets up a new and more demanding standard than the old first degree murder standard of "deliberate and premeditated malice." "Prior calculation and design" requires some kind of studied analysis with its object being to cause the death of another. Momentary premeditation is no longer sufficient: State v. Jenkins, 48 OApp2d 99, 2 OO3d 73, 355 NE2d 825.

**Self-defense**

See also case notes under RC § 2903.02.

54. (1979) To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger: State v. Robbins, 58 OS2d 74, 12 OO3d 84, 388 NE2d 755.

55. In a case of homicide, where defendant testifies that he did not intend to fire the fatal shot and that he did not knowingly "pull the trigger," such testimony is entirely inconsistent and irreconcilable with self-defense: State v. Champion, 109 OS 281, 142 NE 141.

56. Where defendant entirely fails to testify to a "bona fide" belief or danger of death or great bodily harm, he has no right to claim justification by way of self-defense: State v. Champion, 109 OS 281, 142 NE 141.

57. Self-defense depends on what impression was made upon the mind of the accused and whether the facts and circumstances were such as would reasonably tend to create such impression in his mind, and the measure is not

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 822

28     29    HOMICIDE AND ASSAULT    § 2903.01

al reveals the
for the plan-
 ulation,
 . show a
d decision to
iculation and
74, 12 OO3d
, 10 OO3d 4,

under RC §
a more strin-
oremeditated
law, RC §
OS2d 8, 10

: sufficient to
te v. Cotton,

l of time does
/ manslaugh-
)3d 148, 378

ary delibera-
are no longer
der: State v.
831.
structure by
greement to
sely to cause
d further in-
-. Kiraly, 56

fres the state
ie defendant
rior calcula-
gr" sets up a
t d first
m...editated
es some kind
use the death
longer suffi-
O3d 73, 355

ie following
ot at fault in
(2) the slayer
mt danger of
ily means of
h force; and
to retreat or
74, 12 OO3d

testifies that
at he did not
s entirely in-
ise: State v.

y to a "bona
harm, he has
efense: State

m was made
he facts and
bly tend to
easure is not

that of a man of ordinary firmness: Stewart v. State, 105 OS 625, 138 NE 876.

58. One who is wilfully resisting lawful authority cannot claim self-defense: State v. Morgan, 100 OS 66, 125 NE 109 (resisting conductor who was lawfully removing defendant from train.)

59. Where a number of persons, in the exercise of their lawful rights, have reason to apprehend an immediate, violent and criminal assault upon them as a party from superior numbers, it is not unlawful for them to combine for their just defense: Goins v. State, 46 OS 457, 21 NE 476.

60. Taking human life in self-defense can only be justified on the ground of necessity, and one can not avail himself of it, if he brings the affray on himself: Erwin v. State, 29 OS 186.

61. Where a person who is committing a criminal offense resists arrest attempted by one who is known to him to be an officer, the officer may defend himself from the attack of the offender, and take his life if necessary: Wolfe v. State, 19 OS 248.

62. Where A first makes a malicious assault upon B, under no circumstances can he justify taking the life of B in the ensuing conflict, but if A retires from the conflict in good faith and retreats to a place of apparent security, his right of self-defense is fully restored, and if he is pursued by B and attacked in a manner to endanger his life, he is justified in taking B's life if it becomes necessary to save his own: Stoffer v. State, 15 OS 47.

63. When a slayer seeks and provokes an assault upon himself, in order to have a pretext for stabbing his adversary, and does, upon being assaulted, stab and kill him, such killing is not excusable homicide in self-defense: Stewart v. State, 1 OS 66.

64. (1979) In an assault case as in a homicide case, the accused is entitled to introduce the testimony of competent witnesses that prior to the incident in question both his character and his reputation as a quiet and peaceable citizen were good. In support of his defense of self-defense and the fear of bodily harm on which it is based, the accused is entitled to offer testimony about the dangerous and violent character of the other person and the accused's knowledge of it: Norwood v. Dismuke, 13 OO3d 152 (App).

65. (1979) Shooting in self-defense is justified when the officer acts to save himself from death or great bodily harm: State v. Foster, 60 OMisc 46, 14 OO3d 144, 396 NE2d 46 (CP).

66. An instruction on self-defense should not be given where the defendant pleads not guilty and has not interposed such a defense: Goings v. State, 24 CC(NS) 145, 30 CD 628.

[CONSTRUING FORMER ANALOGOUS RC § 2901.01]

INDEX

Co-conspirator's testimony, 5
Complicity, 11
Death of victim, 9
Deliberation and premeditation, 17 et seq
 Abandonment of plan, 20
 Capacity, 17
 Distinguished, 21
 Evidence, 19
 Presumption, 22
 Time, 18, 23
Dying declarations, 6, 8, 12, 14
Felony murder, 24 et seq
 Complicity, 30, 37
Conspiracy, 31, 35
Deliberation and premeditation, 25, 32-34
Indictment, 38, 40
Intent, 24, 27, 28, 36
Lesser included offenses, 26, 29, 39
Indictment, 3, 7, 15
Lesser included offenses, 41 et seq
 Charge improper, 41
 Charge not required, 42, 45
 Charge required, 47
 Finding without charge, 43, 46
 Specific charges, 44
Malice, 10
Motive, 4
Photographs of victim's corpse, 16
Purpose and intent, 48 et seq
 Evidence, 49, 55, 56
 Indictment, 52
 Presumption, 54
 Purposely defined, 53
 Shooting into crowd, 51
 Transferred intent, 50
Unborn child, killing of, 13
Unconstitutionality, effect, 1
Voluntary intoxication, 2

1. (1973) The decision of the U.S. Supreme Court in Furman v. Georgia compels the Ohio supreme court to modify death sentences imposed under RC § 2901.01, reducing them to life imprisonment, but not to set aside first degree murder convictions, or to invalidate the indictment: Vargas v. Metzger, 35 OS2d 116, 64 OO2d 70, 298 NE2d 600.

2. Where in the trial of a first degree murder case the defendant asserts voluntary intoxication as a defense to the prosecution, it will be incumbent upon him to establish that degree of intoxication which rendered him incapable of forming the intent to kill or of acting with premeditation and deliberation: Long v. State, 109 OS 77, 141 NE 691.

3. Two indictments, each charging the unlawful killing of different human beings, though growing out of the same general transaction, quarrel or controversy, do not charge the same offense. They each charge a separate and distinct offense under the laws of Ohio: State v. Billotto, 104 OS 13, 135 NE 285.

4. It is not necessary to prove motive: Fabian v. State, 97 OS 184, 119 NE 410.

5. When a conspiracy has been established prima facie, the testimony of a confederate tending to prove that the defendant paid him money the day after the homicide for services in connection therewith, is competent: State v. Doty, 94 OS 258, 113 NE 811.

6. Dying declarations reduced to writing by a competent person at the instance of the declarant and approved and signed by him are admissible: State v. Kindle, 47 OS 358, 24 NE 485.

7. An indictment in which it is averred that P assaulted and purposely wounded B, with the intent to kill him, of which wound B died, sufficiently charges that P purposely killed B: Price v. State, 35 OS 601.

8. Dying declarations are admissible only when the death of the declarant is the subject of the charge, and the circumstances of the death are the subject of the dying declarations: State v. Harper, 35 OS 78.

9. It is not essential that the person assaulted should then and there die, or that the slayer intended that death should take place then and there: Rufer v. State, 25 OS 464.



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 823

10. Where the fact of killing is proved, malice is to be presumed, and all the circumstances of justification, excuse, or extenuation must be made out by the accused, unless they appear from the evidence adduced against him: Davis v. State, 25 OS 369.

11. One who participates in the felonious intent and is present aiding and abetting the commission of a murder is a principal, though not himself the immediate perpetrator of the act: Warden v. State, 24 OS 143; State v. Doty, 94 OS 258, 113 NE 811.

12. Where dying declarations are proved in a case, a statement of the deceased made at another time, which is neither a dying declaration, nor a part of the res gestae, is not admissible to impeach such declarations: Wroe v. State, 20 OS 460.

13. Neither degree of felonious homicide can be predicated upon the killing of an unborn child: Robbins v. State, 8 OS 131.

14. The substance of competent dying declarations may be given although the witness is not able to give the precise words: Montgomery v. State, 11 O 424.

15. (1973) Each method listed in former RC § 2901.01 (murder in the first degree) is a separate offense even though the murder victim is the same person, and the use of a commission of such means does not constitute the "same criminal act" as that term is used in RC § 2941.32 (proceedings when two indictments are pending): State v. Trocodaro, 40 OApp2d 50, 69 OO2d 28, 317 NE2d 418.

16. (1973) Slides and photographs showing the corpse of a murder victim are admissible in evidence if shown to be accurate reproductions and illustrative of verbal testimony: State v. Fugate, 36 OApp2d 131, 65 OO2d 155, 303 NE2d 313.

**Deliberation and premeditation**

17. Deliberation and premeditation require mental action, and an exercise of the reason, reflection, judgment and decision, and cannot take place where the mind is deranged, destroyed or does not exist: Clark v. State, 12 O 483.

18. To constitute deliberation and premeditation, the intention to do the injury must have been deliberated upon, and the design to do it formed, before the act was done, though it is not required that either should have been for any considerable time before. This supposes that the party by reflection understood what he was about to do, and intended to do it in order to do harm: State v. Turner, W 20.

19. The act of the slayer in killing a much weaker person by brutal beating and kicking is evidence of malice, but in the absence of threats it is not evidence of deliberate or premeditated malice: State v. Kingcade, 20 NP(NS) 97, 28 OD 30.

20. Where A has threatened violence to B, but several hours later receives B in his home in a quiet and peaceable manner, and then killed B in a struggle, the jury may consider whether or not A had abandoned his former violent purposes: State v. Miller, 7 NP 458, 5 OD 703.

21. To deliberate is to weigh and consider; premeditate is to think of before, in their general and true meanings. The killing may be a fact, the will or purpose to kill may be present, malice may be in the act, and yet deliberation and premeditation may be absent: State v. Cook, 2 DecRep 36, 1 WLM 201; Burns v. State, 3 DecRep 122, 3 Gaz 323.

22. Knowingly putting a poisonous drug into water or tea, believing it would be swallowed by another person, raises a presumption of premeditation and deliberation accompanied by malice: State v. Summons, 1 DecRep 416, 9 WLJ 407.

23. To constitute deliberation there must be reflection and planning for some time, however short, and this planning must be cool, and in the exercise of clear reason: State v. Brooks, 1 DecRep 407, 9 WLJ 109.

**Felony murder**

24. Intent to kill is a necessary element of first-degree murder in Ohio even when the killing occurs in the perpetration of a robbery: Palfy v. Cardwell, 448 F2d 328, 61 OO2d 233 (6thCir).

25. (1972) The killing of another purposely (1) in perpetrating or attempting to perpetrate robbery, (2) or a rape, (3) or of deliberate and premeditated malice are separate and distinct offenses of first degree murder, and, under RC § 2901.01, may properly be charged in separate counts of an indictment: State v. Strozier, 32 OS2d 62, 61 OO2d 303, 290 NE2d 177; State v. Ferguson, 175 OS 390, 25 OO2d 383, 195 NE2d 794.

26. Murder in the first degree in the perpetration of a robbery may include the lesser offenses of murder in the second degree and manslaughter, and where, in the trial of a defendant for murder in the first degree in the perpetration of a robbery, there is substantial evidence tending to support a charge of murder in the second degree or manslaughter, the court should charge the jury on murder in the first degree and on the included lesser offenses: State v. Muskus, 158 OS 276, 49 OO 122, 109 NE2d 15.

27. Under GC § 12400 (RC § 2901.01), an essential element of the crime of first degree murder is an intention to kill, even where the killing is "by means of poison or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary": State v. Farmer, 156 OS 214, 46 OO 97, 102 NE2d 11; discussed in 21 CinLRev 201.

28. In a prosecution under GC § 12400 (RC § 2901.01), where the proof establishes beyond reasonable doubt that the accused, in the perpetration of rape, intentionally administered poison knowing it to be such and death resulted therefrom, such accused may be found guilty of murder in the first degree: State v. Salter, 149 OS 264, 36 OO 572, 78 NE2d 575; discussed in 9 OSLJ 352; 18 CinLRev 114.

29. Where one is indicted and tried for murder in the attempted perpetration of robbery under GC § 12400 (RC § 2901.01), no instruction on any lesser grade of homicide than murder in the first degree is requisite or proper when evidence to support the same is lacking: Malone v. State, 130 OS 443, 5 OO 59, 200 NE 473.

30. A homicide committed by one of two or more persons jointly engaged in robbery, while they are in flight a short distance from the scene of the robbery, committed in order to enable the robbers to escape, is committed while perpetrating a robbery: State v. Habig, 106 OS 151, 140 NE 195 [approving and following Conrad v. State, 75 OS 52].

31. Where A and B, in the furtherance of a common plan, enter upon the perpetration of a burglary armed and prepared to kill if opposed, and while so engaged are discovered and pursued by the officers, and A, at a short distance from the building and on another lot, shot and killed an officer, B is equally guilty with A of murder in the first degree, although B was not around, and although such killing was not a part of the prearranged plan: Conrad v. State, 75 OS 52, 78 NE 957, 6 LRA(NS) 1154.

32. Where the act of killing was unlawfully and purposely done in an attempt to rob, it is not necessary to prove deliberation and premeditation under this section: Lindsey v. State, 69 OS 215, 69 NE 126; Stevens v. State, 42 OS 150.

33. Where the evidence shows a common purpose to commit the burglary, common participation in it, a threat

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 824

be reflection
and that plan-
reason: State

f first-degree
in the perpe-
F2d 328, 61

osely (1) in
ery, (2) or a
1 malice are
nurder, and,
d in separate
OS2d 62, 61
175 OS 390,

stration of a
urder in the
in the trial of
he perpetra-
e tending to
pree or man-
n murder in
ases: State v.
15.

essential ele-
intention to
poison or is
, arson, rob-
l, 46 OO 97,

; § 2901.01),
e doubt that
ationally ad-
eath resulted
under in
572, 78
Rev 114.
ler in the at-
12400 (RC §
of homicide
roper when
one v. State,

or more per-
e in flight a
ommitted in
nitted while
OS 151, 140
State, 75 OS

a common
y armed and
ngaged are
i, at a short
t, shot and
urder in the
id although
plan: Con-
5) 1154.
ly and pur-
ecessary to
this section:
ens v. State,

purpose to
it, a threat

to kill made by the person whose building is being burglar-
ized, the firing of a shot by one of the burglars followed by
their flight, the jury are authorized to find a common pur-
pose to commit murder: Huling v. State, 17 OS 583.

34. In the case of homicide which occurs in the perpe-
tration, or attempt to perpetrate, any rape, arson, rob-
bery, or burglary, the enormity and turpitude of the crim-
inal act, in which the offender is engaged at the time, sup-
plies the place of the deliberate and premeditated malice
made an element of the first class of homicide defined by
the statute: Robbins v. State, 8 OS 131; see also Lindsey v.
State, 69 OS 215, 89 NE 126.

35. Where the defendant is jointly indicted with two
other persons for murder under GC § 12400 (RC § 2901.-
01) and in the indictment the defendant is charged with
"unlawfully, purposely, and while attempting to perpe-
trate a robbery," killing the person whom they attempted
to rob, a conspiracy is not charged: State v. McKinney, 77
App 309, 33 OO 111, 64 NE2d 129.

36. In prosecution for first degree murder in perpe-
trating arson, there must be a purpose and intent to kill
before crime of murder is complete, since common law
rule, that any act known to be dangerous to life and likely
in itself to cause death done with purpose of committing
felony which causes death is murder, is not law of Ohio:
Turk v. State, 48 App 489, 2 OO 96, 194 NE 425 [af-
firmed, 129 OS 245].

37. Under the provisions of GC § 12400 (RC § 2901.01),
if two persons jointly indicted jointly participate in an at-
tempted robbery and while attempting such robbery, one
of the participants kills the victim, all persons who were
jointly engaged and participated in the felonious act are
equally guilty of murder, even though the evidence does
not show which of the two fired the fatal shot: State v.
McKinney, 44 OLA 568 (App).

38. An indictment under this section which charges
murder in the first degree while the accused is attempting
to perpetrate a robbery, must allege facts sufficient to show
an attempt to commit a robbery, as defined by GC § 12432
(RC § 2901.12), since the attempt to commit a robbery
takes the place of deliberate and premeditated knowledge:
Murray v. State, 23 CC(NS) 508, 34 CD 340.

39. The crime of murder in the first degree, committed
in an attempt to perpetrate a robbery, necessarily includes
within it an assault, and an assault with intent to commit a
robbery, whether such assault be formally or especially
averred or not. It also includes all degrees of homicide
below the first, unless perhaps the second degree is not in-
cluded: Blair v. State, 5 CC 496, 3 CD 242 [affirmed,
without report, 25 Bull 388].

40. An averment merely that the accused killed another
while he was attempting "to perpetrate a robbery," is not
sufficient, since that is a mere conclusion. The indictment
must state the facts which show that the killing occurred
while the accused was engaged in the "attempt to commit
robbery": Blair v. State, 5 CC 496, 3 CD 242 [affirmed,
without report, 25 Bull 388].

### Lesser included offenses

41. Where, under the evidence, it is clear and convinc-
ing that the force and violence complained of by the state
killed the deceased, a charge of assault and battery is im-
proper: State v. Champion, 109 OS 281, 142 NE 141 [ap-
proving and following Bandy v. State, 102 OS 384].

42. If the indictment charges murder in the first degree
in the perpetration of a robbery, under GC § 12400 (RC §
2901.01), and there is no evidence tending to support a
charge of murder in the second degree, or manslaughter,
as distinguished from murder in the first degree, then the

defendant, upon the failure of proof as to murder in the
first degree, is entitled to an acquittal, and, in such case, it
is not error for the court to refuse to charge either murder
in the second degree or manslaughter: Bandy v. State, 102
OS 384, 131 NE 499, 21 ALR 594.

43. Under an indictment for murder it is competent for
the jury, where the evidence justifies it, to find the defen-
dant guilty of an assault and battery only: Marts v. State,
26 OS 162.

44. An indictment for murder in the first degree in-
cludes both of the lesser degrees of homicide: Robbins v.
State, 8 OS 131.

45. When death followed from use of a deadly weapon,
it is not error to refuse to charge on assault, and assault and
battery: Lyon v. State, 23 App 237, 155 NE 569.

46. In a prosecution for first degree murder the jury may
in its discretion under GC § 13448-2 (RC § 2945.74) fix the
crime at second degree murder though it ought, under the
law and facts, to be fixed in the first: Cowdrey v. State, 11
App 291, 30 OCA 378 [motion for leave to file petition in
error overruled, 17 OLR 386, 64 Bull 445].

47. The court is required to charge on manslaughter if
upon the most favorable view of the evidence in behalf of
the defendant there is direct or inferential proof that he
killed a police officer in resisting arrest, but that it was not
wilful or purposeful but was unintentional or accidental;
the court is not required to charge manslaughter merely
because it is an included offense of murder in the first
degree as charged in the indictment: State v. Harris, 32
OLA 221 (App).

### Purpose and intent

48. Under the provisions of GC § 12400 (RC § 2901.01),
there must be a purpose and intent to kill before the crime
of murder is complete: Order of United Commercial
Travelers v. Meinsen, 131 F2d 176, 25 OO 1 (6thCir).

49. Intent to kill must be established beyond a reason-
able doubt, and this rule is not changed by reason of the in-
troduction of evidence by the accused to prove that the
homicide was accidental, the legal effect of such evidence
being, simply, to controvert an inference of intent to kill
which may arise by evidence introduced by the state: Jones
v. State, 51 OS 331, 28 NE 79.

50. It is not necessary that the person killed should have
been the person intended. Where one strikes purposely and
maliciously with intent to kill A, and the blow takes effect
upon and kills B, it is the killing of another within the
meaning of the statute, and constitutes murder: Wareham
v. State, 25 OS 601.

51. Where one maliciously shoots into a crowd, he may
be presumed to have intended causing the death of the per-
son he kills: Robbins v. State, 8 OS 131.

52. An indictment, following common law precedents,
which avers that A "purposely and of deliberate and
premeditated malice did strike" the deceased "giving to
him . . . one mortal wound," and that the deceased "of the
mortal wound aforesaid died," does not sufficiently aver
the intent to kill, purposely being predicated of the assault
and wounding, but not of the killing: Fouts v. State, 8 OS
98; Hagan v. State, 10 OS 459.

53. Purposely implies an act of the will, an intention, a
design to do the act: Clark v. State, 12 O 483.

54. (1973) An intent to kill may be presumed where the
natural and probable consequence of a wrongful act is to
produce death, and such intent may be deduced from all
the surrounding circumstances, including the instrument
used to produce death, its tendency to destroy life, and the
manner of inflicting the fatal wound: State v. Fugate, 36
OApp2d 131, 65 OO2d 155, 303 NE2d 313.



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 825

**55.** Intent is generally proved by the circumstances, and where the means used was calculated to take life, an intent to kill may be presumed unless the other circumstances of the killing negative such presumption: Cottell v. State, 12 CC 467, 5 CD 472.

**56.** Intent to kill may be inferred where the slayer was much stronger than his victim and where he killed his victim by violent beating and kicking in such a way as to cause death immediately: State v. Kingcade, 20 NP(NS) 97, 28 OD 30.

## § 2903.02    Murder.

(A) No person shall purposely cause the death of another.

(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code.

HISTORY: 134 v H 511. Eff 1-1-74.

Not analogous to former RC § 2903.02 (GC §§ 12962, 12963; RS § 6808; S&S 377; 59 v 65; 83 v 202; Bureau of Code Revision, 10-1-53; 131 v 671), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

### Committee Comment to H 511

This section defines murder simply as the purposeful killing of another, and the offense can thus be a lesser included offense to both forms of aggravated murder.

Murder is punishable by an indefinite term of imprisonment of not less than 15 years to life. In addition, the offender may be fined not more than $15,000. The penalty is specified in section 2929.02.

### Cross-References to Related Sections

Conviction as bar to inheritance from victim, RC § 2105.19.

Death defined, RC § 2108.30.

Murder defined as offense of violence, RC § 2901.01(I).

Purpose defined, RC § 2901.22(A).

Standards for community-based corrections programs, RC § 5149.31.

### Comparative Legislation

Murder:
18 USC § 1111
CA—Penal Code § 187
FL—Stat Ann § 782.03
IL—Ann Stat ch 38, § 8-4
IN—Code § 35-1-54-1
KY—Rev Stat Ann § 507.020
MI—Comp Laws Ann § 750.317
NY—Penal Law §§ 125, 125.25
PA—CSA tit 18, § 2502

### Text Discussion

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

### Forms

Murder. 4 OJI § 503.02
Murder, as lesser offense. 4 OJI § 503.15
Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.02

### Research Aids

Murder:
O-Jur3d: Crim L § 1788
Am-Jur2d: Crim L §§ 24-26, 491, 675; Homi §§ 41-43, 53

### ALR

Acquittal on homicide charge as bar to subsequent prosecution for assault and homicide. 37 ALR2d 1068.

Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. 1 ALR3d 571.

Admissibility on behalf of accused in homicide case of evidence that killing was committed at victim's request. 71 ALR2d 617.

Homicide as affected by lapse of time between injury and death. 60 ALR3d 1323.

Homicide: burden of proof on defense that killing was accidental. 63 ALR3d 936.

Homicide by automobile as murder. 21 ALR3d 116.

Inference of malice or intent to kill where killing is by blow without weapon. 22 ALR2d 854.

Insulting words as provocation of homicide or as reducing the degree thereof. 2 ALR3d 1292.

Killing unborn child. 40 ALR3d 444.

Modern status of rules as to burden and quantum of proof to show self-defense in homicide. 43 ALR3d 221.

Single act affecting multiple victims as constituting multiple assaults or homicides. 8 ALR4th 960.

What constitutes attempted murder. 54 ALR3d 612.

### Law Review

A hypothetical: *Quinlan* under Ohio law. Comment. 10 AkronLRev 145 (1976).

Involuntary manslaughter: review and commentary on Ohio law. Jeffrey M. Goldsmith. 40 OSLJ 569 (1979).

*Patterson v. New York* [97 SCt 2319 (1977)], criminal procedure—the burden of proof and affirmative defenses. Note. 9 ToledoLRev 524 (1978).

Shifting the burden of proving self-defense—with analysis of related Ohio law. Comment. 11 AkronLRev 717 (1978).

### CASE NOTES AND OAG

#### INDEX

Gunshot residue test, evidence of, 9
Lesser included offenses—
  Negligent homicide, 2
  Plea of self-defense, 8
  Voluntary manslaughter, 4, 7
Mitigating circumstances, burden of proof, 6
Plea, acceptance of, 5
Purpose, evidence of, 10
Retrial where plea set aside, 1, 3
Self-defense, 11 et seq
  Against arresting officer, 22
  Assault in home, 14
  Charge proper, 12
  Danger to defendant, 18, 20, 21, 23
  Duty to retreat, 14, 17
  Evidence of defendant's character, 13
  Excessive force, 15
  Expert testimony on battered wife syndrome, 11
  Initial aggressor, retreat of, 19
  Justifiable and excusable homicide distinguished, 16

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 826

' ' §§ 41-43,

sequent pros-
rice versa. 37

cter or reputa-
defense by one
.R3d 571.
nicide case of
it victim's re-

sen injury and

cilling was ac-

R3d 116.
ing is by blow

or as reducing

ntum of proof
.R3d 221.
ituting multi-
0.
i3d 612.

Comment. 10

nmentary on
'39 (1979).
inal pro-
affirmative
3).
with analysis
ronLRev 717

. 16

1. (1981) Where the Ohio court of appeals reversed defendant's conviction of aggravated murder with a "specification" and entered judgment of guilty of murder for which such "specification" was not an element, and where evidence of defendant's invalid prior guilty plea was offered only as proof of a "specification" and not as proof of commission of murder in violation of RC § 2903.02, defendant's case was not to be remanded for an evidentiary hearing so that the state might have a second chance at proving the validity of his prior plea: Lonberger v. Jago, 651 F2d 447 (6thCir).

2. (1980) Negligent homicide is not a lesser included offense of murder under Ohio law: Bruner v. Overberg, 624 F2d 51, 19 OO3d 151 (6thCir).

3. (1979) Where defendant had pled guilty to a charge of murder in response to an indictment charging him with aggravated murder and other offenses, and where the guilty plea was later set aside on appeal, defendant could thereafter be tried on all the charges in the original indictment: Hawk v. Berkemer, 610 F2d 445 (6thCir).

4. (1980) Given the lapse of time between allegedly provoking telephone conversations with the victim and his killing the next morning, during which there was no evidence of provocation, such killing was not as a matter of law committed under extreme emotional stress, and defendant was not entitled to an instruction on voluntary manslaughter: State v. Pierce, 64 OS2d 281, 18 OO3d 466, 414 NE2d 1038.

5. (1977) Where an individual is indicted on a charge of aggravated murder, with specifications thereto, and the trial court accepts a plea of guilty to the lesser included offense of murder (RC § 2903.02) without personally advising the defendant that he is ineligible for probation, such omission does not constitute prejudicial error, and there is substantial compliance with the provisions of CrimR 11: State v. Stewart, 51 OS2d 86, 5 OO3d 52, 364 NE2d 1163.

6. (1977) A jury instruction which allows the jury to reduce a charge of murder,"RC § 2903.02, to voluntary manslaughter, .RC § 2903.03, only if they find beyond a reasonable doubt that the defendant, in the commission of the crime, acted under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, unconstitutionally places upon the defendant the burden of proving the mitigating circumstance of emotional stress beyond a reasonable doubt: State v. Muscatello, 57 OApp2d 231, 11 OO3d 320, 387 NE2d 627.

7. (1976) In a trial where the defendant is charged with murder, if the jury could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements which by themselves would sustain a conviction upon a lesser included offense, a charge on the lesser included offense of manslaughter is required: State v. Osburn, 52 OApp2d 146, 6 OO3d 116, 368 NE2d 849.

8. (1976) Where an accused is charged with murder and pleads self-defense, the refusal of the court to charge the jury on the lesser included offense of negligent homicide is not error: State v. Grace, 50 OApp2d 259, 4 OO3d 223, 362 NE2d 1223.

9. (1976) The results of a gunshot residue test may be admitted into evidence only after it is established that: (a) The test was based upon scientific principles which are accepted as dependable for the proposed purpose by the profession concerned in that science or its related art; and has gained general acceptance in the particular field to which

it belongs; (b) The apparatus and/or materials used to make the scientific test were constructed or produced according to an acceptable model and were in condition to allow for accurate testing; and (c) The witness who conducted the test must be qualified by his training and experience to conduct the test: State v. Smith, 50 OApp2d 183, 4 OO3d 160, 362 NE2d 1239.

10. (1976) Where the circumstances are consistent both with the theory that the defendant purposely caused the death of the victim and with the theory that the victim's death was unintentional, the court will not substitute its judgment for that of the jury, and the defendant's conviction of murder will not be overturned: State v. Williams, 47 OApp2d 330, 1 OO3d 393, 354 NE2d 691.

## Self-defense

See also case notes under RC § 2903.01.

11. (1980) Where a woman charged with the murder of her spouse presents evidence of an ongoing battering situation and asserts self-defense as justification of the homicide, the defense is entitled to present expert testimony on the unique state of mind of the battered woman: State v. Thomas, 17 OO3d 397 (App).

12. It is not error to charge upon the issue of self-defense, if the evidence of the state tends to show that the defendant took the life of another person, and if the evidence of the state and the defendant tends to show that whatever was done by the defendant and his associates was done in lawful defense of themselves, even though defendant denies that he took such life: Graham v. State, 98 OS 77, 120 NE 232, 18 ALR 1272.

13. It is not reversible error to charge that the appearance of danger must have been such as to alarm a man of ordinary firmness, if the undisputed evidence, including the testimony of the defendant, shows that he was a man of ordinary firmness: Napier v. State, 90 OS 276, 107 NE 535.

14. Where one is assaulted in his home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life. But a homicide in such a case would not be justifiable unless the slayer, in the careful and proper use of his faculties, bona fide believes, and had reasonable ground to believe that the killing is necessary to repel the assailant or prevent his forcible entry: State v. Peacock, 40 OS 333.

15. Where a wounding with a knife is thought to be justified on the ground of self-defense, if the evidence shows that the resistance is disproportionate to the assault, or excessive, the defendant is liable: Close v. Cooper, 34 OS 98.

16. The common law distinction between justifiable and excusable homicide is now important only for the purpose of determining the duty of retreat. When the killing is such as the common law would designate as justifiable there is no duty to retreat; if excusable only the duty to retreat is imposed: Erwin v, State, 29 OS 186.

17. A defendant who has not provoked an assault and who while in the lawful pursuit of his business is assaulted suddenly and violently with a deadly weapon and placed under danger of loss of life or great bodily harm is not required to retreat: Marts v. State, 26 OS 162; Erwin v. State, 29 OS 186; Graham v. State, 98 OS 77, 120 NE 232, 18 ALR 1272.

18. Homicide is justifiable on the ground of self-defense where the slayer, in the careful and proper use of his faculties, bona fide believes, and has reasonable ground to

119

§ 2903.02 CRIMES—PROCEDURE 34

believe, that he is in imminent danger of death or great bodily harm, and that his only means of escape from such danger will be by taking the life of his assailant, although, in fact, he is mistaken as to the existence or imminence of the danger: Marts v. State, 26 OS 162; Darling v. Williams, Admr., 35 OS 58.

19. Where A first makes a malicious assault upon B, under no circumstances can he justify taking the life of B in the ensuing conflict, but if A retires from the conflict in good faith and retreats to a place of apparent security, his right of self-defense is fully restored, and if he is pursued by B and attacked in a manner to endanger his life, he is justified in taking B's life if it becomes necessary to save his own: Stoffer v. State, 15 OS 47.

20. It is not necessary that the defendant show such circumstances as would cause a man of ordinary courage to believe himself in danger of death or severe bodily harm; but the jury is to decide whether the defendant himself honestly believed upon reasonable ground that his life was in danger: Martin v. State, 17 CC 406, 9 CD 621.

21. A charge to the jury that the defendant must show that he is in actual danger, ignoring any question as to his reasonable belief that he was in danger is erroneous: Aurand v. State, 12 CC(NS) 311, 21 CD 314.

22. For the circumstances under which one may take the life of an arresting officer who has surreptitiously gained admittance to one's house on a pretense that he did not intend to make an arrest, see State v. Miller, 7 NP 458, 5 OD 703 [affirmed, 13 CC 67, 7 CD 553].

23. There must be not only a seeming intent on the part of the deceased to kill or do great bodily harm, but also an apparent capacity to do great harm to the slayer: State v. Snelbaker, 8 DecRep 466, 8 Bull 90.

### [CONSTRUING FORMER ANALOGOUS RC § 2901.05]

#### INDEX

Argument to jury, 3
Complicity, 1, 2
Lesser included offenses, 4
Malice, 5 et seq
   Deliberate and premeditated, 5
   Element of 2nd degree murder, 7-9
   Presumption, 7
   Proof, 6, 10
Purpose and intent, 11 et seq
   Beyond a reasonable doubt, 12, 15
   Defined, 19
   Indictment, 13
   Presumption, 14, 18
   Proof, 11, 16-19

1. If two or more persons act in concert in resisting a number of others, each of them may be guilty of aiding, abetting and assisting such others in a criminal assault made by one of them: Graham v. State, 98 OS 77, 120 NE 232, 18 ALR 1272.

2. In the absence of proof of a conspiracy, one who is present when a homicide is committed by another upon a sudden quarrel or in the heat of passion, is not guilty of aiding and abetting the homicide, although he may become involved in an independent fight with others of the party of the deceased, unless he does some overt act with a view to produce that result, or purposely incites or encourages the principal to do the act: Goins v. State, 46 OS 457, 21 NE 476.

3. Where the circumstances seem to indicate that the crime was committed by either the prosecuting witness or the accused, the use by the prosecuting attorney of language in his argument to the jury which leaves in their minds the impression that the prosecuting witness had been tried and acquitted of the crime and had no motive to testify otherwise than the truth, leaving them to conclude that the defendant must be the guilty one, is misconduct of a prejudicial character: Going v. State, 24 CC(NS) 145, 30 CD 628.

4. In a trial of one indicted for murder in the second degree, it is error to charge that the jury should either find the accused guilty of murder in the second degree or manslaughter or acquit him, for this excludes the two lesser offenses of assault and battery and assault alone: Duranec v. State, 16 CC(NS) 20, 27 CD 287.

#### Malice

5. Malice is an essential element of murder in the second degree, but if deliberate and premeditated malice is present the crime is murder in the first degree: Kolotich v. State, 104 OS 156, 135 NE 544.

6. In a trial for murder in the second degree, the state may prove previous threats made by the accused against the person he afterwards killed, even though such threats tend to prove deliberate and premeditated malice: Stewart v. State, 1 OS 66.

7. Simple malice only, or malice without deliberation and premeditation, is necessary to constitute murder in the second degree; and such malice is presumed when the fact of killing is proved: State v. Turner, W 20; State v. Town, W 75.

8. If the killing is unlawful and malicious and with a purpose and intent to kill, but without deliberate and premeditated malice, the crime is murder in the second degree: Zeltner v. State, 13 CC(NS) 417, 22 CD 102.

9. Intent to kill and also malice must be affirmatively shown to authorize a verdict of murder in the second degree: Bennett v. State, 10 CC 84, 4 CD 129.

10. Where the slayer was much stronger than his victim and where he killed his victim by violent beating and kicking in such a way as to cause death immediately, implied malice is shown: State v. Kingcade, 20 NP(NS) 97, 28 OD 30.

#### Purpose and intent

11. (1967) Where two defendants engage in an automobile drag race, and one defendant, while attempting to pass the other by driving on the left side of the highway, is suddenly confronted by a car coming over a crest in the road, and in the resulting collision the driver of the oncoming car is killed, and there is testimony that the defendant attempted to avoid the collision by operating his car to the right, striking the other defendant's automobile before colliding with the oncoming car, the evidence of an intent and purpose to maliciously kill does not attain to that high degree of probative force and certainty which under this section is required to sustain a verdict of murder in the second degree: State v. Butler, 11 OS2d 23, 40 OO2d 43, 227 NE2d 627.

12. To constitute murder in the second degree, an intent to kill must be established beyond a reasonable doubt: Jones v. State, 51 OS 331, 38 NE 79.

13. In murder of the second degree, intent or purpose to kill must be specifically averred in every indictment: Hagan v. State, 10 OS 459.

14. Where one maliciously shoots into a crowd, he may



cate that the
ng witness or
attorney of
*    * in their
ess had
ino motive to
i to conclude
nisconduct of
CC(NS) 145,

n the second
ld either find
gree or man-
two lesser of-
: Duranee v.

in the second
alice is pres-
Kolotich v.

ee, the state
used against
such threats
lice: Stewart

deliberation
urder in the
hen the fact
te v. Town,

and with a
ate and pre-
the second
CD 102.
ffirmatively
ond de-

in his victim
ng and kick-
ely, implied
) 97, 28 OD

in an auto-
tempting to
highway, is
crest in the
the oncom-
e defendant
is car to the
before col-
of an intent
to that high
i under this
r in the sec-
O2d 43, 227

e, an intent
able doubt:

r purpose to
indictment:

vd, he may

be presumed to have intended causing the death of the person he kills: Robbins v. State, 8 OS 131.

15. In order to support a conviction, under this section for murder in the second degree, it is essential that there be evidence beyond a reasonable doubt that the accused purposely killed another: State v. Creech, 5 OApp2d 179, 34 OO2d 311, 214 NE2d 675.

16. Under a charge of murder in the second degree, proof that the killing was done purposely may be deduced from the attendant circumstances, the type of instrument used, the manner of its use, and its tendency to destroy life when used in that manner: State v. Stallings, 82 App 337, 38 OO 30, 79 NE2d 925.

17. Evidence that defendant, a powerfully built physically-fit man, aged forty-seven years, weighing one hundred ninety pounds, by his own admission continued to beat the decedent, a man fifty-eight years old, weighing one hundred sixty-five pounds, as he lay on the ground helpless, because he feared decedent would rise and continue the fight, but at a time when decedent had no hold on him and he was not then trying to get away from decedent, shows an intention to purposely kill the decedent: State v. Powell, 75 OLA 33 (App).

18. An intention to take decedent's life is not rebutted by the absence of the use of deadly weapons, it merely deprives the state of the presumption of intent to kill which their use would have afforded the prosecution: State v. Powell, 75 OLA 33 (App).

19. To show that the accused purposely inflicted the wound that caused the death, or that he purposely struck the deceased, from which blow the deceased died, is not sufficient to constitute murder in the second degree; it must be shown that the killing was "purposely" done: Munday v. State, 5 CC(NS) 656, 16 CD 712 [affirmed, without report, 72 OS 614].

## § 2903.03     Voluntary manslaughter.

(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.

(B) Whoever violates this section is guilty of voluntary manslaughter, a felony of the first degree.
HISTORY: 134 v H 511 (Eff 1-1-74); 139 v H 103. Eff 5-19-82.

Not analogous to former RC § 2903.03 (GC § 12964; RS § 6937; S&C 667; 54 v 196; 103 v 864: Bureau of Code Revision, 10-1-53), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

### Committee Comment to H 511

This section defines an offense analogous to the former crime of voluntary manslaughter, with two important changes.

First, former law required that the slaying be intentional, whereas this section requires that it be committed knowingly. Since proof of purpose also constitutes proof of knowledge, however, voluntary manslaughter remains a lesser included offense to both aggravated murder and murder. For example, in the trial of a charge of aggravated murder, if the jury finds that the killing was purposely done, but was not done with prior calculation or design or under circumstances constituting felony mur-

der, it would be bound to return a verdict of guilty of murder. If, in addition, the jury found that the killing was done while the offender was under extreme emotional stress brought on by substantial and adequate provocation, the jury would be bound to return a verdict of guilty of voluntary manslaughter.

Second, the former offense of voluntary manslaughter contemplated killings done in a sudden fit of rage or passion. This section includes such killings, but also includes homicides done while under extreme emotional stress which may be the result of a build-up of stress over a period of time. Both the former law and this section require that the offender's emotional state be the result of sufficient provocation.

Voluntary manslaughter is a felony of the first degree.

### Cross-References to Related Sections

Penalties for felonies, RC § 2929.11.
Conviction as bar to inheritance from victim, RC § 2105.19.
Deadly force defined, RC § 2901.01(B).
Death defined, RC § 2108.30.
Knowingly defined, RC § 2901.22(B).
Standards for community-based corrections programs, RC § 5149.31.
Voluntary manslaughter defined as offense of violence, RC § 2901.01(I).

### Comparative Legislation

Voluntary manslaughter:
18 USC § 1112
CA—Penal Code § 192
FL—Stat Ann § 782.07
IL—Ann Stat ch 38 § 9-2
IN—Code § 35-13-4-2
KY—Rev Stat Ann § 507.030
MI—Comp Laws Ann § 750.321
NY—Penal Law § 125.20
PA—CSA tit 18 § 2503

### Text Discussion

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

### Forms

Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.03
Voluntary manslaughter. 4 OJI § 503.03

### Research Aids

Voluntary manslaughter:
O-Jur3d: Crim L § 1791
Am-Jur2d: Crim L §§ 155, 269; Homi §§ 54-69

### ALR

Homicide as affected by lapse of time between injury and death. 60 ALR3d 1323.
Insulting words as provocation of homicide or as reducing the degree thereof. 2 ALR2d 1292.
Single act affecting multiple victims as constituting multiple assaults or homicides. 8 ALR4th 960.
Who other than actor is liable for manslaughter? 95 ALR2d 175.

### Law Review

A hypothetical: Quinlan under Ohio law. Comment. 10 AkronLRev 145 (1976).

121

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 829

*Patterson v. New York* [97 SCt 2319 (1977)], criminal procedure—the burden of proof and affirmative defenses. Note. 9 ToledoLRev 524 (1978).

Shifting the burden of proving self-defense—with analysis of related Ohio law. Comment. 11 AkronLRev 717 (1978).

## CASE NOTES AND OAG

### INDEX

Constitutionality, 7
Elements, 5
Extreme emotional stress—
    Burden of proof, 7, 9
    Defined, 6, 8
    Mitigating circumstance, 5
Jury instruction—
    Burden of proof, 10
    Harmless error, 2
    Required, 4
    Reversible error, 1
    Not required, 3
Proximate cause of death, 11

1. (1981) In a prosecution for aggravated murder, the court erred in refusing an instruction on voluntary manslaughter merely because the defendant asserted self-defense where the jury could have found against the state on some element of the greater offense and for the state on the elements of the lesser offense: State v. Solomon, 66 OS2d 214, 20 OO3d 213, 421 NE2d 139.

2. (1981) A conviction of murder will not be reversed due to an erroneous instruction on extreme emotional stress where the defendant failed to object to the instruction and failed to introduce any evidence of that mitigating circumstance: State v. Durkin, 66 OS2d 158, 20 OO3d 168, 420 NE2d 124.

3. (1980) Given the lapse of time between allegedly provoking telephone conversations with the victim and his killing the next morning, during which there was no evidence of provocation, such killing was not as a matter of law committed under extreme emotional stress, and defendant was not entitled to an instruction on voluntary manslaughter: State v. Pierce, 64 OS2d 281, 18 OO3d 466, 414 NE2d 1038.

4. (1980) Where a jury could reasonably find against the state on the issue of an aider and abettor's purpose to kill, and find for the state on the remaining elements of felony murder, which themselves would sustain a conviction for involuntary manslaughter, a charge to the jury on involuntary manslaughter is both warranted and required: State v. Nolton, 19 OS2d 133, 135, 48 OO2d 119, 120, approved and followed): State of Ohio v. Scott, 61 OS2d 155, 15 OO3d 182, 400 NE2d 375.

5. (1978) Extreme emotional stress, as described in RC § 2903.03, is not an element of the crime of voluntary manslaughter, but is rather a circumstance, the establishment of which mitigates a defendant's criminal culpability: State v. Muscatello, 55 OS2d 201, 9 OO3d 148, 378 NE2d 738.

6. (1978) An act committed while under the extreme emotional stress described in RC § 2903.03(A), is one performed under the influence of sudden passion or in the heat of blood, without time and opportunity for reflection or for passions to cool: State v. Muscatello, 55 OS2d 201, 9 OO3d 148, 378 NE2d 738.

7. (1977) Nowhere does RC § 2903.03(A) unconstitu-

tionally place upon the defendant the burden of proving a mitigating circumstance, which also is an element of the crime charged; rather, the prosecution must prove beyond a reasonable doubt that the defendant knowingly caused the death of another while under extreme emotional distress brought on by a serious provocation. Simply because the element of extreme emotional distress may reduce the seriousness of the offense charged from aggravated murder to voluntary manslaughter, does not, per se, make such element an affirmative defense or mitigating factor to be proved by the defendant: State v. Toth, 52 OS2d 206, 6 OO3d 461, 371 NE2d 831.

8. (1977) The mitigating circumstances of extreme emotional stress relative to the crime of voluntary manslaughter, RC § 2903.03, may be the result of a build-up of stress over a period of time and need not be only of sudden origin. Whether or not a defendant is entitled to an instruction to this effect depends upon the facts and circumstances of the case as presented by the evidence at trial: State v. Muscatello, 57 OApp2d 231, 11 OO3d 320, 387 NE2d 627.

9. (1977) Emotional stress is not an element of the offense of voluntary manslaughter, RC § 2903.03, which the state must prove beyond a reasonable doubt. Emotional stress is a mitigating circumstance for which the defendant in a criminal prosecution bears the burden of producing some evidence and does not have the burden of establishing such mitigating circumstance by a preponderance of the evidence or beyond a reasonable doubt: State v. Muscatello, 57 OApp2d 231, 11 OO3d 320, 387 NE2d 627.

10. (1977) A jury instruction which allows the jury to reduce a charge of aggravated murder, RC § 2903.01, or murder, RC § 2903.02, to voluntary manslaughter, RC § 2903.03, only if they find beyond a reasonable doubt that the defendant, in the commission of the crime, acted under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, unconstitutionally places upon the defendant the burden of proving the mitigating circumstance of emotional stress beyond a reasonable doubt. RC § 2901.05: State v. Muscatello, 57 OApp2d 231, 11 OO3d 320, 387 NE2d 627.

11. (1977) Revised Code § 2903.03 is not limited by the common-law "year and a day" rule; in all homicide cases, the prosecution need only prove proximate causation as an element of the crime: State v. Sandridge, 5 OO3d 419, 365 NE2d 898 (CP).

## [CONSTRUING FORMER ANALOGOUS RC § 2901.06]

### INDEX

Accidental killing, 4
Acts likely to result in death, 5, 8
Charge on elements of offense, 7
Intent to kill, 1, 2, 3
Manslaughter as included offense, 6
Provocation, 9
Self-defense, 4

1. An intentional killing upon a sudden quarrel, without malice, is manslaughter: Davis v. State, 25 OS 369.

2. An intent or purpose to kill may be present in the crime of manslaughter, where the killing is without malice and upon a sudden quarrel: Montgomery v. State, 11 O 424; Erwin v. State, 29 OS 186.

3. An intent to kill is not an essential element of manslaughter either at common law or in Ohio: Mont-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 830

ᵃ of proving a
lement of the
prove beyond
vᵏ̵ʳᵗy caused
┗⋯⋯ᵃ Simply
distress may
┄ᵍᵉᵈ from ag-
does not, per
or mitigating
: v. Toth, 52

extreme emo-
y manslaugh-
d-up of stress
ly of sudden
led to an in-
acts and cir-
⋯ evidence at
1 OO3d 320,

nt of the of-
⋯3, which the
⋯. Emotional
he defendant
of producing
f establishing
rance of the
t: State v.
7 NE2d 627.
: the jury to
2903.01, or
⋯ghter, RC §
e doubt that
⋯acted under
provocation
leadly force,
⋯ᵃrden of
⋯l stress
⋯5: State v.
7 NE2d 627.
nited by the
nicide cases,
sation as an
⋯3d 419, 365

OUS

rel, without
5 369.
sent in the
hout malice
State, 11 O

element of
⋯hlo: Mont-

gomery v. State, 11 O 424; Sutcliffe v. State, 18 O 469;
Cline v. State, 43 OS 332, 1 NE 22.

4. (1972) The accidental killing of an innocent party by
one acting in self-defense against another is not a crime
and the failure of a court to so instruct a jury deliberating
the guilt of one accused of the manslaughter of such a party
is error: State v. Clifton, 32 OApp2d 284, 61 OO2d 348,
290 NE2d 921.

5. (1969) Unlawfully killing, as defined in the "man-
slaughter in the first degree" statute, may be established by
proof of assault, or of menacing threats, in violation of RC
§ 2901.25, [now RC §§ 2903.11, 2903.21] which prox-
imately caused death, when death could be reasonably an-
ticipated by an ordinarily prudent person as likely to result
from such conduct while possessed with knowledge of a
heart ailment of the victim: State v. Nosis, 22 OApp2d 16,
51 OO2d 15, 257 NE2d 414.

6. Manslaughter in the first degree, as defined in this
section, is an included offense in murder in the second de-
gree [now RC § 2903.02]: State v. Taylor, 4 OO2d 332,
148 NE2d 507 (App).

7. It is prejudicial error for a court, in its charge to the
jury as to manslaughter, in a case involving an indictment
for murder in the second degree to neglect to divide such
subject into two natural divisions, voluntary and involun-
tary manslaughter, and to fail to give a correct statement
of the necessary elements which must be shown beyond a
reasonable doubt to make a case, when so required by the
evidence: State v. Carter, 75 App 545, 31 OO 322, 58
NE2d 794.

8. The cause of death must be such as would naturally,
logically and proximately result from the commission of
the unlawful act which must have been one that would
reasonably be anticipated by an ordinarily prudent person
to likely result in such death: State v. Kotowski, 20 OO2d
396, 183 NE2d 262 (CP).

9. Manslaughter results not from a wicked and de-
praved spirit, or malice aforethought, but from provoca-
tion to kill—so great as to produce a transport of passion
which for the time being renders the person deaf to the
voice of reason: State v. Kingcade, 20 NP(NS) 97, 28 OD
30.

### § 2903.04   Involuntary manslaughter.

(A) No person shall cause the death of another as
a proximate result of the offender's committing or
attempting to commit a felony.

(B) No person shall cause the death of another as a
proximate result of the offender's committing or at-
tempting to commit a misdemeanor.

(C) Whoever violates this section is guilty of in-
voluntary manslaughter. Violation of division (A) of
this section is a felony of the first degree. Violation
of division (B) of this section is a felony of the third
degree.

HISTORY: 134 v H 511. Eff 1-1-74.

Not analogous to former RC § 2903.04 (GC § 12965; RS §§
6364-38, 6364-39; 90 v 235; 91 v 311; 92 v 71; 101 v 133; Bureau of
Code Revision, 10-1-53), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

#### Committee Comment to H 511

This section defines an offense substantially
equivalent to the former offense of involuntary man-

slaughter, except that for penalty purposes it dis-
tinguishes between homicides resulting from felonies and
those resulting from misdemeanors.

Involuntary manslaughter is a felony of the first degree
when the victim's death proximately results from the of-
fender's committing or attempting to commit a felony,
and a felony of the third degree when death proximately
results from the offender's committing or attempting to
commit a misdemeanor.

#### Cross-References to Related Sections

Penalties for felonies, RC § 2929.11.
Death defined, RC § 2108.30.
Felony defined, RC § 2901.02.
Involuntary manslaughter defined as offense of violence,
RC § 2901.01(I).
Misdemeanor defined, RC § 2901.02.
Standards for community-based corrections programs,
RC § 5149.31.

#### Comparative Legislation

Involuntary manslaughter:
18 USC § 1112
CA—Penal Code §§ 192-194
FL—Stat Ann § 782.07
IL—Ann Stat ch 38 § 9-3
IN—Code § 35-13-4-2
KY—Rev Stat Ann § 507.040
MI—Comp Laws Ann § 750.321
NY—Penal Law § 125.15
PA—CSA tit 18 § 2504

#### Text Discussion

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

#### Forms

Involuntary manslaughter. 4 OJI § 503.04
Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.05, 8.06

#### Research Aids

Involuntary manslaughter:
O-Jur3d: Crim L § 1793
Am-Jur2d: Crim L §§ 155, 269; Homi § 70

#### ALR

Causing one, by threats or fright, to leap or fall to his
death. 25 ALR2d 1186.
Criminal liability for death resulting from unlawful fur-
nishing of intoxicating liquor or drugs to another. 32
ALR3d 589.
Criminal responsibility of druggist for death or injury
in consequence of mistake. 55 ALR2d 714.
Failure to provide medical or surgical attention. 100
ALR2d 483.
Homicide as affected by lapse of time between injury and
death. 60 ALR3d 1323.
Homicide by withholding food, clothing, or shelter. 61
ALR3d 1207.
Homicide predicated on improper treatment of disease
or injury. 45 ALR3d 114.
Single act affecting multiple victims as constituting multi-
ple assaults or homicides. 8 ALR4th 960.
Who other than actor is liable for manslaughter? 95
ALR2d 175.



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 831

**Law Review**

Involuntary manslaughter: review and commentary on Ohio law. Jeffrey M. Goldsmith. 40 OSLJ 569 (1979).

## CASE NOTES AND OAG

1. (1980) Where a jury could reasonably find against the state on the issue of an aider and abettor's purpose to kill, and find for the state on the remaining elements of felony murder, which themselves would sustain a conviction for involuntary manslaughter, a charge to the jury on involuntary manslaughter is both warranted and required (State v. Nolton, 19 OS2d 133, 135, 48 OO2d 119, 120, approved and followed): State v. Scott, 61 OS2d 155, 15 OO3d 182, 400 NE2d 375.

2. (1977) In a prosecution for aggravated murder while committing the offense of kidnapping and while attempting to commit rape, where the record revealed no evidence tending to show that the appellant did not purposely intend to commit the crimes of kidnapping and attempted rape, there was no error on the part of the trial court in refusing to charge on the lesser included offense of involuntary manslaughter: State v. Cooper, 52 OS2d 163, 6 OO3d 377, 370 NE2d 725.

3. (1977) The proximate cause theory of criminal liability is the applicable standard in RC § 2903.04 and where a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and reasonably inevitable consequence of death resulting from his original criminal act: State v. Chambers, 53 OApp2d 266, 7 OO3d 326, 373 NE2d 393.

4. (1976) Instructions on both self-defense and the lesser included offense of involuntary manslaughter were proper in a murder case where there was sufficient evidence of the former and the jury could reasonably find that the killing was unintentional: State v. Osburn, 52 OApp2d 146, 6 OO3d 116, 368 NE2d 849.

5. (1975) Where a review of the transcript reveals that the evidence presented by both the state and the defense was insufficient to demonstrate an illegal act (a felony or misdemeanor) coupled with an accidental killing as is required to constitute the crime of involuntary manslaughter, the refusal of the trial court to instruct the jury on involuntary manslaughter was not prejudicial error: State v. Jones, 47 OApp2d 8, 1 OO3d 156, 351 NE2d 798.

[CONSTRUING FORMER ANALOGOUS RC § 2901.06]

INDEX

Accidental killing, 11
Act not unlawful, 9
Aiders and abettors, 4, 10
Burden on defendant to produce evidence, 1
Deceased's violation of statute, no defense, 12
Definition, 12
Felony, 1
Misdemeanor, 2, 5, 12
Municipal ordinance, 2, 3
Proximate cause, 6, 7
State need not elect, 8

1. (1969) Where defendant is charged with a felony murder, and, where after presentation of the state's case, the two possible verdicts are guilty of first degree murder and not guilty, and where defendant requests the court to submit a verdict form of manslaughter to the jury, and, where the knowledge of facts which would justify the submission of this latter offense to the jury rests solely in the mind of defendant, it is not prejudicial error for the trial court to require him, by whatever means are available to him, to prove that the elements of manslaughter are present in the case before the trial court submits the offense of manslaughter for the consideration of the jury: State v. Eaton, 19 OS2d 145, 48 OO2d 188, 249 NE2d 897.

2. A violation of an ordinance of a charter city may be an unlawful act, within the definition of manslaughter: State v. O'Mara, 105 OS 94, 136 NE 885.

3. One species of manslaughter may be the unintentional killing of another while the slayer is in the commission of an unlawful act: State v. O'Mara, 105 OS 94, 136 NE 885.

4. Where an unlawful act does naturally and proximately result in death, all who participate in the commission of such unlawful act are in law liable for the commission of such unlawful killing: Black v. State, 103 OS 434, 133 NE 795.

5. Shooting at a target within the city limits is an unlawful act; and if death results therefrom the crime may be manslaughter: Black v. State, 103 OS 434, 133 NE 795.

6. If the unlawful act is not the proximate cause of the death, the killing is not manslaughter: Jackson v. State, 101 OS 152, 127 NE 870.

7. Unlawful killing, as used in manslaughter, must be such as would naturally, logically and proximately result from the commission of some unlawful act as defined by statute and such unlawful act must be one that would be reasonably anticipated by an ordinarily prudent person as likely to result in such killing: State v. Schaeffer, 96 OS 215, 117 NE 220, LRA 1918B, 945; Jackson v. State, 101 OS 152, 127 NE 870; Black v. State, 103 OS 434, 133 NE 795.

8. The unlawful act relied upon by the state as the basis for a charge of manslaughter may be made unlawful by more than one statute. In such case it is error to compel the state to elect upon which statute it relies for a conviction: State v. Schaeffer, 96 OS 215, 117 NE 220, LRA 1918B 945.

9. One who unintentionally shoots and kills another by discharging firearms on his own premises is not guilty of manslaughter, since this is not an unlawful act punished by GC § 12817 (RC §§ 3773.21, 3773.99): Martin v. State, 70 OS 219, 71 NE 640.

10. Our statutory definition of manslaughter admits of aiders and abettors and procurers of that crime: Hagan v. State, 10 OS 459.

11. This section makes an unlawful killing manslaughter, and manslaughter may be found where the killing, if in the commission of an unlawful act, was accidental: Patrick v. Baldridge, 107 App 331, 8 OO2d 259, 159 NE2d 461.

12. Where the engineers on two trains approaching the crossing of two railroads fail to come to a full stop as required by GC § 12549 (RC § 4999.04), and in the resulting collision one is killed, the other may be prosecuted for manslaughter; and it is no defense that the deceased was also violating the statute: State v. Snyder, 5 OLR 580, 53 Bull 110.

## § 2903.05   Negligent homicide.

(A) No person shall negligently cause the death of another by means of a deadly weapon or dangerous

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 832

Case: 2:16-cv-00495-SJD-MRM Doc #: 4-7 Filed: 08/08/16 Page: 57 of 130 PAGEID #: 866

he jury, and,
ustify the sub-
: solely in the
r for the trial
'lable to
are pres-
the offense of
ury: State v.
2d 897.
· city may be
ianslaughter:

the uninten-
the commis-
5 OS 94, 136

d proximate-
ommission of
ommission of
434, 133 NE

limits is an
ie crime may
133 NE 795.
cause of the
ion v. State,

ter, must be
nately result
s defined by
iat would be
nt person as
effer, 96 OS
v. State, 101
434, 133 NE

e as the basis
r~ ·wful by
ipel the
t conviction:
LRA 1918B

s another by
not guilty of
punished by
1 v. State, 70

er admits of
ie: Hagan v.

manslaugh-
he killing, if
; accidental:
9, 159 NE2d

roaching the
ll stop as re-
the resulting
osecuted for
leceased was
)LR 580, 53

'
he death of
· dangerous

---

ordnance as defined in section 2923.11 of the Revised Code.

(B) Whoever violates this section is guilty of negligent homicide, a misdemeanor of the first degree.

HISTORY: 134 v H 511. Eff 1-1-74.

Not analogous to former RC § 2903.05 (GC § 12966; RS § 6986b; 80 v 222; 103 v 864; Bureau of Code Revision, 10-1-53), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

### Committee Comment to H 511

This section adds a new offense of homicide negligently committed, in which the instrumentality is a deadly weapon or dangerous ordnance as defined in section 2923.11. Children are frequently killed while playing with "unloaded" guns, and this section would apply to a person who, because of a substantial dereliction from due care, leaves a loaded firearm in a place where childish curiosity has a tragic result. Also, the hunter who fails to make sure of his target and kills someone, and the person who points a firearm in jest and kills the unfortunate at whom it is aimed, would be guilty of a violation of this section.

Negligent homicide is a misdemeanor of the first degree.

### Cross-References to Related Sections

Penalties for misdemeanors, RC § 2929.21.
Death defined, RC § 2108.30.
Negligently defined, RC § 2901.22(D).

### Comparative Legislation

Negligent homicide:
CA—Penal Code § 187
FL—Stat Ann § 782.07
IL—Ann Stat ch 38 § 9-3
IN—Code §§ 35-1-53-1, 35-1-54-1
KY—Rev Stat Ann § 507.050
MI—Comp Laws Ann § 750.324
NY—Penal Law § 125.10
PA—CSA tit 18 § 2501

### Text Discussion

Culpability: negligence. 1 Ohio Crim. Prac. & Pro. § 51.3
Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

### Forms

Negligent homicide. 4 OJI § 503.05
Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.06

### Research Aids

Negligent homicide:
O-Jur3d: Crim L § 1794
Am-Jur2d: Homi §§ 91-101

### ALR

Burden of proof on defense that killing was accidental. 63 ALR3d 936.
Criminal responsibility for injury or death resulting from hunting accident. 23 ALR2d 1401.
Homicide as affected by lapse of time between injury and death. 60 ALR3d 1323.

---

Liability for injury or death of minor or other incompetent inflicted upon himself by gun made available by defendant. 75 ALR3d 825.
Pocket or clasp knife as deadly or dangerous weapon for purposes of statute aggravating offenses such as assault, robbery, or homicide. 100 ALR3d 287.
Single act affecting multiple victims as constituting multiple assaults or homicides. 8 ALR4th 960.

### Law Review

Involuntary manslaughter: review and commentary on Ohio law. Jeffrey M. Goldsmith. 40 OSLJ 569 (1979).

### CASE NOTES AND OAG

1. (1980) Negligent homicide is not a lesser included offense of murder: Brewer v. Overberg, 624 F2d 51, 19 OO3d 151 (6thCir).

2. (1979) Since intent is not an element of negligent homicide, an instruction on the defense of accident would be irrelevant: Columbus v. Bee, 67 OApp2d 65, 21 OO3d 371, 425 NE2d 409.

3. (1976) Where an accused is charged with murder and pleads self-defense, the refusal of the court to charge the jury on the lesser included offense of negligent homicide is not error: State v. Grace, 50 OApp2d 259, 4 OO3d 223, 362 NE2d 1237.

4. (1975) Where an accused picks up a gun without checking to see if it is loaded; jumps out a window and begins to chase friends around a yard; and runs back into his house and faces two friends, with the gun still in his hand, such action is a substantial departure or lapse from due care which will enable a trier of the facts to find a violation under RC § 2903.05: In re Jackson, 45 OApp2d 243, 74 OO2d 384, 344 NE2d 162.

5. (1976) Where the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer. Where it appears that a killing was unintentional, that the perpetrator acted with no wrongful purpose in doing the homicidal act, that it was done while he was engaged in a lawful enterprise, and that it was the result of negligence, the homicide will be excused on the score of accident or misadventure: State v. Lovejoy, 2 OO3d 320, 48 OMisc 20, 357 NE2d 424 (MC).

6. (1976) The negligence required under RC § 2903.05 is that of "a substantial lapse from due care" [RC § 2901.22(D)], and is the type of conduct that amounts to a material forsaking of expected concern, a vital abandonment of required care, or a real divergence of appropriate concern: State v. Lovejoy, 2 OO3d 320, 48 OMisc 20, 357 NE2d 424 (MC).

### [CONSTRUING FORMER ANALOGOUS RC § 2901.06]

1. The fact that the decedent was guilty of contributory negligence is not a defense: Bell v. State, 7 App 185, 27 OCA 353, 29 CD 48; Prince v. State, 12 App 347, 31 OCA 209 [motion for leave to file petition in error overruled, 17 OLR 505, 65 Bull 137].

### § 2903.06  Aggravated vehicular homicide.

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle,

snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another.

(B) Whoever violates this section is guilty of aggravated vehicular homicide, a felony of the fourth degree. If the offender has previously been convicted of an offense under this section or section 2903.07 of the Revised Code, aggravated vehicular homicide is a felony of the third degree.

HISTORY: 134 v H 511 (Eff 1-1-74); 135 v H 716. Eff 1-1-74.

Not analogous to former RC § 2903.06 (GC § 12967; RS § 6986a; 77 v 79; 103 v 864; Bureau of Code Revision, 10-1-53), repealed 134 v H 511, § 2, eff 1-1-74.

For current analogous provision to former RC § 2903.06 see RC § 2923.21.

The effective date of H 716 is set by section 1 of the act.

**Committee Comment to H 511**

This section is roughly analogous to the former crime of first degree homicide by vehicle, but expands upon the former offense in two important respects.

First, it covers recklessness with respect not only to motor vehicles, but also with respect to motorcycles, snowmobiles, locomotives, watercraft, and aircraft. Former law covered motor vehicles and watercraft, and also included a locomotive manslaughter provision which was unenforceable because the penalty was uncertain. Second, the section does not predicate liability on the violation of a safety statute, but on the whole spectrum of reckless conduct as defined in section 2901.22. Former law made the offense dependent on a violation of the laws against drunk driving, reckless operation, and drag racing.

Aggravated vehicular homicide is a felony of the fourth degree. If the offender has previously been convicted of a vehicular homicide offense, aggravated vehicular homicide is a felony of the third degree.

**Cross-References to Related Sections**

Penalties for felonies, RC § 2929.11.

Death defined, RC § 2108.30.

Ineligibility for pre-trial diversion program, RC § 2935.36.

Recklessly defined, RC § 2901.22(C).

Revocation of probationary driver's license, RC § 4507.16.2.

State watercraft officers' powers, RC § 1547.52.1.

Vehicular homicide, RC § 2903.07.

**Comparative Legislation**

Aggravated vehicular homicide:
CA—Penal Code § 194
FL—Stat Ann § 782.071
IL—Ann Stat ch 38 § 9-3
IN—Code §§ 35-1-53-1, 35-1-54-1
KY—Rev Stat Ann § 507.050
MI—Comp Laws Ann § 750.325
NY—Penal Law § 125.10
PA—CSA tit 18 § 2504

**Text Discussion**

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1
Juvenile traffic offenders. 2 Anderson Fam. L. § 9.2

**Forms**

Aggravated vehicular homicide, with lesser offense  § 503.06

Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.07

**Research Aids**

Vehicular homicide:
O-Jur3d: Crim L § 1795
Am-Jur2d: Homi § 91 et seq

**ALR**

Homicide by automobile as murder. 21 ALR3d 116.

**Law Review**

Involuntary manslaughter: review and commentary on Ohio law. Jeffrey M. Goldsmith. 40 OSLJ 569 (1979).

## CASE NOTES AND OAG

1. (1978) The two-hour requirement for the collection of blood and urine specimens in OAC 3701-53-05 does not apply to the admissibility of evidence of test results in a prosecution for a violation of RC § 2903.06 (aggravated vehicular homicide): State v. Hernandez, 62 OApp2d 63, 16 OO3d 114, 403 NE2d 1022.

2. (1977) Where one has a strong common interest, that is not merely remote or passive, with the operator of a motor vehicle which causes the death of another while being driven in a reckless manner, he may be found to have participated in the operation of the vehicle, within the meaning of RC § 2903.06: State v. Hann, 55 OApp2d 267, 9 OO3d 407, 380 NE2d 1339.

3. (1979) A participant in a drag race is not criminally liable for the death of another participant where his sole contribution to the death is his agreeing to race. In such a case, the decedent's actions, and not those of the defendant, are the proximate cause of the death: State v. Uhler, 61 OMisc 37, 14 OO3d 158, 402 NE2d 556 (CP).

### [CONSTRUING FORMER ANALOGOUS RC § 4511.18.1]

1. (1971) A viable unborn fetus is not a "person" within the meaning of RC § 4511.18.1: State v. Dickinson, 28 OS2d 65, 57 OO2d 255, 275 NE2d 599.

2. (1970) The conviction of a misdemeanor, such as a failure to yield or other misdemeanors, in a case where a motor vehicular death occurs does not bar a subsequent prosecution under the provisions of RC §§ 4511.18 and 4511.18.1: OAG No.70-112.

3. (1970) It is not necessary to first obtain a conviction for the misdemeanor offense to be able to sustain the charge of motor vehicle homicide under RC §§ 4511.18 and 4511.18.1: OAG No.70-112.

## § 2903.07   Vehicular homicide.

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall negligently cause the death of another.

(B) Whoever violates this section is guilty of vehicular homicide, a misdemeanor of the first degree. If the offender has previously been convicted of an offense under this section or section

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 834

fie   4 on

o. 8.07

'3d 116.

mentary on
l 569 (1979).

'collection of
does not ap-
lts in a pros-
(aggravated
⊃App2d 63,

nterest, that
⊃erator of a
er while be-
und to have
within the
'rApp2d 267,

t criminally
here his sole
e. In such a
f the defen-
te v. Uhler,

O∪⊃

son" within
ckinson, 28

r, such as a
ase where a
subsequent
511.18 and

i conviction
sustain the
§§ 4511.18

rticipating
iotorcycle,
: aircraft,
ier.

guilty of
the first
been con-
or section

2903.06 of the Revised Code, vehicular homicide is a felony of the fourth degree.

HISTORY: 134 v H 511 (Eff 1-1-74); 135 v H 716. Eff 1-1-74.

Not analogous to former RC § 2903.07 (GC § 12967-1; 120 v 143; Bureau of Code Revision, 10-1-53), repealed 134 v H 511, § 2, eff 1-1-74.

For current analogous provision to former RC § 2903.07 see RC § 2923.21.

The effective date of H 716 is set by section 1 of the act.

### Committee Comment to H 511

This offense is substantively the same as aggravated vehicular homicide in all respects but one: the offense is based on negligence rather than recklessness. The former offense of second degree vehicular homicide was based on a violation of any traffic statute other than those dealing with drunk driving, reckless operation, and drag racing.

Vehicular homicide is a misdemeanor of the first degree. If the offender has previously been convicted of a vehicular homicide offense, vehicular homicide is a felony of the fourth degree.

### Cross-References to Related Sections

Penalties—
  Felonies, for, RC § 2929.11.
  Misdemeanors, for, RC § 2929.21.
Aggravated vehicular homicide, RC § 2903.06.
Death defined, RC § 2108.30.
Ineligibility for pre-trial diversion program, RC § 2935.36.
Negligently defined, RC § 2901.22(D).
Revocation of probationary driver's license, RC § 4507.16.2.
State watercraft officers' powers, RC § 1547.52.1.

### Comparative Legislation

Vehicular homicide:
  CA—Penal Code § 192
  FL—Stat Ann § 782.071
  IL—Ann Stat ch 38 § 9-3
  IN—Code § 9-4-1-54
  KY—Rev Stat Ann § 507.050
  MI—Comp Laws Ann § 750.325
  NY—Penal Law § 125.10
  PA—CSA tit 18 § 2504

### Text Discussion

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1
Juvenile traffic offenders. 2 Anderson Fam. L. § 9.2

### Forms

Vehicular homicide. 4 OJI § 503.07

### Research Aids

Vehicular homicide:
  O-Jur3d: Crim L. § 1795
  Am-Jur2d: Auto § 204 et seq; Homi § 91 et seq

### ALR

Criminal liability for injury or death caused by operation of pleasure boat. 8 ALR4th 886.

What amounts to negligence within the meaning of statutes penalizing negligent homicide by operation of a motor vehicle. 20 ALR3d 473.

### Law Review

Involuntary manslaughter: review and commentary on Ohio law. Jeffrey M. Goldsmith. 40 OSLJ 589 (1979).

### CASE NOTES AND OAG

1. (1978) A conviction of vehicular homicide must be reversed where there is no evidence that the defendant's negligent operation of his vehicle was the proximate cause of the victim's death. Thus, despite the fact that there was evidence that defendant was exceeding the speed limit and entered the intersection under the yellow light, the evidence was undisputed that the light had not turned red when the unobserved victim entered the roadway: State v. Vaught, 56 OS2d 93, 10 OO3d 224, 382 NE2d 213.

2. (1978) Revised Code § 2903.07, vehicular homicide, is not unconstitutional in that it imposes criminal liability for negligent, rather than intentional, conduct. Further, the statute is not unconstitutionally vague in describing the prohibited conduct: State v. Smith, 11 OO3d 343 (App).

3. (1975) Pursuant to RC § 2901.22, negligence involves a substantial lapse from due care: State v. Ovens, 44 OApp2d 428, 73 OO2d 540, 339 NE2d 853.

4. (1979) The violation of RC § 2903.07, vehicular homicide, when committed by a juvenile is an act of delinquency, not a juvenile traffic offense: In re Fox, 14 OO3d 80, 60 OMisc 31, 395 NE2d 918 (CP).

5. (1975) Where a defendant pleads guilty to a violation of a municipal ordinance pertaining to failure to yield the right of way, his conviction thereof is not a bar to a subsequent prosecution on a charge of vehicular homicide under RC § 2903.07(A) growing out of the "same transaction" because the test to be applied is that of "collateral estoppel" which is only applicable where the companion charge resulted in an acquittal at trial or an appellate reversal of a conviction for insufficient evidence: Toledo v. Romstadt, 44 OMisc 55, 73 OO2d 220, 337 NE2d 188 (MC).

### §§ 2903.08 to 2903.10   Repealed,
134 v H 511, § 2 [GC §§ 12970—12970-2, 12971; RS §§ 6984a, 6985; 73 v 219; 81 v 181, 184; 83 v 27; 95 v 273; 101 v 233; 103 v 864(907); 113 v 281; Bureau of Code Revision, 10-1-53; 126 v 1039; 130 v 658; 130 v Pt 2, 143; 132 v S 65; 133 v H 1]. Eff 1-1-74.

These sections concerned torturing or neglecting children or pregnant wife, and sale of comic books depicting crime.

### ASSAULT

### § 2903.11   Felonious assault.

(A) No person shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree.

HISTORY: 134 v H 511. Eff 1-1-74.



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 835

Not analogous to former RC § 2903.11 (126 v 1039; 130 v 655), repealed 133 v H 84, § 2, eff 9-15-70.

The effective date of H 511 is set by section 4 of the act.

**Committee Comment to H 511**

This section prohibits knowingly causing serious physical harm to any person, or knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11.

The section replaces a number of special assault offenses while utilizing a different approach than that taken in former law. Previously, a number of statutes prohibited specific acts such as shooting, maiming, or cutting, or prohibited attacks on certain persons such as law enforcement officers. This section does not distinguish among persons and, except with respect to deadly weapons and dangerous ordnance, is not based on the means used to commit the offense. The relative gravity of this offense and of the three lesser assault offenses following it is graded according to three factors: the degree of culpability; the seriousness of the actual or potential harm involved; and whether or not a deadly weapon is used.

This section is a lesser included offense to attempted murder, which is a felony of the first degree. See, section 2923.02. For example, if with purpose to kill, an offender shoots and wounds another, he may be charged with attempted murder. If it is not clear that the offender had a murderous purpose, his act may be an offense under this section.

Felonious assault is a felony of the second degree.

**Cross-References to Related Sections**

Penalties for felonies, RC § 2929.11.

Competency of wife as witness, RC § 2945.42.

Felonious assault defined as an offense of violence, RC § 2901.01(I).

Knowingly defined, RC § 2901.22(B).

Physical harm to persons defined, RC § 2901.01(C).

Serious physical harm to persons defined, RC § 2901.01(E).

Standards for community-based corrections programs, RC § 5149.31.

**Comparative Legislation**

Felonious assault:
  CA—Penal Code § 220
  FL—Stat Ann § 784.021
  IL—Ann Stat ch 38 § 12-4
  IN—Code § 35-1-54-4
  KY—Rev Stat Ann § 508.010
  MI—Comp Laws Ann § 750.82
  NY—Penal Law § 120.10

**Text Discussion**

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

**Forms**

Felonious assault. 4 OJI § 503.11

**Research Aids**

Felonious assault:
  O-Jur3d: Crim L § 1733
  Am-Jur2d: Asslt & B §§ 48-55

**ALR**

Acquittal on homicide charge as bar to subsequent prosecution for assault and battery or vice versa. 37 ALR2d 1068.

Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.

Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. 1 ALR3d 571.

Attempt to commit assault as criminal offense. 79 ALR2d 597.

Consent as defense to charge of criminal assault and battery. 58 ALR3d 662.

Consent as defense to charge of mayhem. 86 ALR2d 268.

Dog as deadly or dangerous weapon for purposes of statutes aggravating offenses such as assault and robbery. 7 ALR4th 607.

Fact that gun was unloaded as affecting criminal responsibility. 79 ALR2d 1412.

Inference, in prosecution for assault with deadly or dangerous weapon, of intent to do physical harm. 92 ALR2d 647.

Intent to do physical harm as essential element of crime of assault with deadly or dangerous weapon. 92 ALR2d 635.

Parts of the human body, other than feet, as deadly or dangerous weapons for purposes of statutes aggravating offenses such as assault or robbery. 8 ALR4th 1268.

Pocket or clasp knife as deadly or dangerous weapon for purposes of statute aggravating offenses such as assault, robbery, or homicide. 100 ALR3d 287.

Private person's duty and liability for failure to protect another against criminal attack by third person. 10 ALR3d 619.

Walking cane as deadly or dangerous weapon for purpose of statutes aggravating offenses such as assault and robbery. 8 ALR4th 842.

**Law Review**

Criminal law—defense of others—reasonable mistake of fact not a defense in intervention on behalf of a third party—*State v. Wenger*, 58 OS2d 336 (1979). Case note. 9 CapitalULRev 827 (1980).

**CASE NOTES AND OAG**

**INDEX**

Aggravated assault, charge of, effect. 11
Constitutionality. 1
Deadly weapon, 5, 12, 13
Defense of another, 4
Elements, 3
Evidence, 3, 6
Good faith, 4
Interference with lawful arrest, 4
Lesser included offenses, 7-10
Provocation, 10, 11
Reasonable conduct, 3
Self-defense, 1, 2, 6

**1.** (1980) While there are due process limits to the extent to which a state may redefine the elements of a crime and thereby reallocate the burden of proof to the defendant, in failing to make absence of self-defense an element of the crimes of felonious or aggravated assault as defined in RC



Case: 2:16-cv-00495-SJD-MRM Doc #: 4-7 Filed: 08/08/16 Page: 61 of 130 PAGEID #: 870

42

bsequent pros-
rice versa. 37

s          offense
r .   .s of vic-

acter or repu-
elf-defense by
1 ALR3d 571.
1se. 79 ALR2d

d assault and

8 ALR2d 268.
r purposes of
sault and rob-

iminal respon-

th deadly or
sical harm. 92

ent of crime of
on. 92 ALR2d

, as deadly or
statutes ag-
r robbery. 8

as weapon for
inses such as
i3d 287.
ure to protect
rd person. 10

on for purpose
r    ult and

ole mistake of
half of a third
) (1979). Case

ts to the extent
of a crime and
- defendant, in
element of the
defined in RC

§§ 2903.11 and 2903.12, Ohio did not violate due process: Isaac v. Engle, 646 F2d 1129 (6thCir).

2. (1980) The defense of self-defense as defined in the charge to the jury did not negate an element of the crime of felonious assault or aggravated assault as defined in RC §§ 2903.11 and 2903.12, since one could act knowingly (felonious assault), or knowingly and while under extreme emotional distress brought on by serious provocation reasonably sufficient to incite him into using deadly force (aggravated assault), and yet act in self-defense: Isaac v. Engle, 646 F2d 1129 (6thCir).

3. (1981) There was no credible evidence supporting all the essential elements of RC § 2903.11(A)(2) where defendant did not know that he was pointing his gun at law enforcement officers and his conduct was reasonable under the circumstances, and his conviction of felonious assault was therefore properly overturned: In re Sekulich, 65 OS2d 13, 19 OO3d 192, 417 NE2d 1041.

4. (1979) A third person has no right to volunteer assistance or interpose resistance when the person assisted is being lawfully arrested; and if the intervenor, in good faith, aggressively intervenes in a struggle between another person and a plain clothes officer, who is attempting to effectuate a lawful arrest, then the intervenor is guilty of an assault: State v. Wenger, 58 OS2d 336, 12 OO3d 309, 390 NE2d 801.

5. (1978) An unloaded gun used in an assault is a deadly weapon. Thus a defendant may be convicted of felonious assault on the basis of having intentionally pointed an unloaded gun at a police officer: State v. Tate, 54 OS2d 444, 8 OO3d 441, 377 NE2d 778.

6. (1979) In an assault case as in a homicide case, the accused is entitled to introduce the testimony of competent witnesses that prior to the incident in question both his character and his reputation as a quiet and peaceable citizen were good. In support of his defense of self-defense and the fear of bodily harm on which it is based, the accused is entitled to offer testimony about the dangerous and violent character of the other person and the accused's knowledge of it: Norwood v. Dismuke, 13 OO3d 152 (App).

7. (1978) Aggravated menacing, RC § 2903.21, is not a lesser included offense of felonious assault, RC § 2903.11, or of aggravated assault, RC § 2903.12: State v. Nicholl, 9 OO3d 285 (App).

8. (1977) In a prosecution for felonious assault under RC § 2903.11, where the record contained no evidence whatsoever of any "extreme emotional stress" or "serious provocation," the court properly overruled defendant's request for a charge on aggravated assault: State v. Gavin, 51 OApp2d 49, 5 OO3d 168, 365 NE2d 1263.

9. (1975) The crime of aggravated menacing, prohibited by RC § 2903.21, is not a lesser included offense under a charge of felonious assault, prohibited by RC § 2903.11: State v. Beaty, 45 OApp2d 127, 74 OO2d 137, 341 NE2d 622.

10. (1974) Proof by the defendant of provocation, as defined in RC § 2903.12, though not a complete defense to acts charged as felonious assault, as defined by RC § 2903.11, would permit a jury, if the elements of the crime are proved, to find a defendant guilty of the lesser included offense of aggravated assault as defined by RC § 2903.12: State v. Butler, 44 OApp2d 177, 73 OO2d 196, 337 NE2d 663.

11. (1974) A charge by the state of the commission of aggravated assault, as defined by RC § 2903.12, constitutes, in legal effect, an admission by the state that provocation as defined in that section existed at the time of the alleged

offense, and that such provocation absolves the defendant of the guilt of felonious assault as defined by RC § 2903.11 which he would have had without such provocation: State v. Butler, 44 OApp2d 177, 73 OO2d 196, 337 NE2d 663.

12. (1979) Although not per se a deadly weapon, an automobile, when used in a manner likely to produce death or great bodily harm, can be classified as a "deadly weapon," under RC § 2903.11(A)(2) and the definition stated in RC § 2923.11(A): State v. Foster, 60 OMisc 46, 14 OO3d 144, 396 NE2d 46 (CP).

13. (1975) Some weapons are per se "deadly"; other weapons can become "deadly" depending upon the manner and circumstances of their use. Any instrument which through human control is the means of inflicting a blow may be a deadly weapon, viz., any instrument so used as likely to produce death or great bodily harm. It does not matter that it was made specifically for some other purpose, and if it is a thing with which death or serious injury can be easily or readily produced, it is a deadly weapon: State v. Orlett, 44 OMisc 7, 73 OO2d 30, 335 NE2d 894 (MC).

### [CONSTRUING FORMER ANALOGOUS
### RC §§ 2901.08 et seq]
### INDEX

Complicity, 13
Deadly weapon, 2, 5, 15
Defense of another, 5
Evidence, 17
Federal statute, 1
Felony of violence, 11
Intent, 12
Jury instructions, 2-4, 14, 15, 18
Lesser included offenses, 4, 6, 14, 16
Malice, 7
Nolle prosequi, effect, 9
Self-defense, 2, 3, 10, 16
Teacher punishing pupil, 19
Transferred intent, 8

1. (1971) In view of the fact that the applicable state and federal statutes were quite different in that the federal statute proscribed assaults while the state statute prohibited batteries involving shootings, cuttings or stabbings, it was not improper for the government to proceed under the state statute, in a prosecution against a defendant who allegedly maliciously shot a man on a United States Air Force base with intent to kill, wound or maim: Fields v. United States, 438 F2d 205, 57 OO2d 35 (2ndCir).

2. (1971) Where the record of a trial for shooting with intent to wound shows that the undisputed use of a pistol is the only element differentiating the lesser included offense of assault with a dangerous weapon from assault and battery, the accused is not entitled to a jury instruction on the latter offense: State v. Mastel, 26 OS2d 170, 55 OO2d 378, 270 NE2d 650.

3. For the sufficiency of a charge, in a prosecution for assault with intent to kill, to the effect that the accused can invoke self-defense only if the facts would alarm a man of ordinary firmness, see Stewart v. State, 105 OS 625, 138 NE 876, 20 OLR 166.

4. If there is evidence tending to show an included offense, such as assault and battery, it is reversible error to refuse to charge that the jury may find the accused guilty of such included offense: Windle v. State, 102 OS 439, 132 NE 22.

5. One who is indicted for shooting with intent to kill



cannot show that the person at whom he shot had made murderous assaults upon another person and that the accused had learned of such murderous assaults: Szalkai v. State, 96 OS 36, 117 NE 12.

6. An indictment charging, in separate counts, shooting with intent to kill and shooting with intent to wound includes the lesser offenses of assault and battery and assault, and upon the trial of the accused upon such an indictment the jury may find the accused not guilty of shooting with intent to kill and not guilty of shooting with intent to wound, but guilty of assault and battery or an assault only, if there is sufficient evidence tending to support such lesser offense: State v. McCoy, 88 OS 447, 103 NE 136; Wendle v. State, 102 OS 439, 132 NE 22.

7. Malice is an essential element of an assault with intent to kill, although the word "maliciously" does not appear in the statute: State v. Stout, 49 OS 270, 30 NE 437.

8. If one, maliciously intending to kill, wound or maim B, by mistake shoots and wounds A, supposing him to be B, a conviction on an indictment for maliciously shooting A with intent is good: Callahan v. State, 21 OS 306; Wareham v. State, 25 OS 601.

9. Where the indictment is found for assault with intent to kill and a nolle prosequi is entered as to the intent to kill, it leaves the accused indicted for assault: Baker v. State, 12 OS 214.

10. A person assaulted may repel by force, but he may not, without necessity, use a deadly weapon for that purpose: Stewart v. State, 1 OS 66.

11. (1973) A conviction of assault with a dangerous instrument, to-wit, an automobile, under former RC § 2901.24.1, is a felony of violence and involving moral turpitude, which is included under the provisions of RC § 2923.56(A) (now RC § 2923.13): State v. Adkins, 40 OApp2d 473, 69 OO2d 416, 320 NE2d 308.

12. (1972) In order to sustain a charge of assault with intent to kill in violation of [former] RC § 2901.24, the state must prove that the accused intended to kill at the time of the alleged assault: State v. Kinnemore, 34 OApp2d 39, 63 OO2d 62, 295 NE2d 680.

13. (1971) A jury verdict that three men are guilty of the crime of assault with a dangerous weapon or instrument or by other means or force likely to produce death or great bodily harm is not against the weight of the evidence where the evidence shows the three defendants openly consorted together in a common uniform, two armed with heavy chains and the third with a blackjack and during a barroom incident each publicly and in the known sight and presence of the other two displayed such weapons but only one of the defendants actually struck the victims with one of the weapons: State v. Duering, 25 OApp2d 103, 54 OO2d 207, 266 NE2d 251.

14. In a criminal prosecution for intentional shooting with intent to kill, a charge to the jury on assault, assault with a dangerous weapon, and pointing firearms as lesser included offenses, is justified, where the evidence adduced at such trial warrants: State v. Deboard, 116 App 108, 21 OO2d 398, 187 NE2d 83.

15. The trial court properly refused to instruct the jury, in an action under this section for assaulting another with a dangerous weapon or instrument or by other means or force likely to produce death or great bodily harm, that it was necessary for the state to prove that the pistol used by the defendant was loaded, since when a pistol is used to commit the offense charged the presumption is that the gun was loaded, and the burden of proving that it was unloaded is upon the defendant, and in the absence of such evidence by the defendant the trial court is justified in in-

structing the jury on the effect of a loaded gun: State v. Lewis, 89 OLA 441, 186 NE2d 487 (App).

16. Where one is being tried on an indictment charging malicious cutting with intent to kill, wound or maim, and the evidence discloses that the one assaulted was the aggressor; that a number of the aggressor's companions joined in making an attack upon the accused, including an attack with a chair; and that the aggressor reached for his pocket, giving the impression that he intended to use a knife, such facts are relevant for consideration by the jury in determining whether accused would be justified in using his pocketknife in self-defense: State v. McDade, 113 App 397, 17 OO2d 469, 178 NE2d 824.

17. Where defendant threatened to get even with a police officer who had arrested him the night before, went to the police station and parked his car directly in front of the door leading to the police department assembly room, had two loaded guns in the front seat, and fired six shots without provocation in the direction of the officer, there was sufficient evidence to sustain the conviction under this section: State v. Arnold, 16 OO2d 286, 176 NE2d 861 (App).

18. An indictment charging the crime of maliciously shooting at a person, with intent to wound such person, includes the lesser offense of assault; and when upon trial there is credible evidence tending to support the offense of assault, it is the duty of the court to charge the jury with reference thereto: State v. Fleming, 102 App 244, 2 OO2d 268, 142 NE2d 546.

19. Before a school teacher can be convicted under this section for punishing a child, it must be shown that the punishment administered was immoderate and excessive, and that the teacher was actuated by malice expressed or implied, and that the punishment was of such a nature as to produce or threaten to produce lasting injury: Martin v. State, 11 NP(NS) 183, 21 OD 520.

## § 2903.12    Aggravated assault.

(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

(B) Whoever violates this section is guilty of aggravated assault, a felony of the fourth degree.

HISTORY: 134 v H 511 (Eff 1-1-74); 139 v H 103, Eff 5-19-82.

Not analogous to former RC § 2903.12 (130 v 659), repealed 134 v H 511, § 2, eff 1-1-74.

Analogous to former RC § 2901.18 (GC § 12425; RS § 6984a; 81 v 184; 83 v 27; 95 v 273; Bureau of Code Revision, 10-1-53; 131 v 670), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

### Committee Comment to H 511

An offense under this section is the same as an offense under section 2903.11, felonious assault, except that an offense under this section is committed while the offender is under extreme emotional stress brought on by



44

gun: State v.

nent charging
or maim, and
d ···· the ag-
s    panions
, ι.....uding an
eached for his
nded to use a
on by the jury
ctified in using
Dade, 113 App

even with a
t before, went
ctly in front of
sembly room,
fired six shots
officer, there
ion under this
76 NE2d 861

of maliciously
ich person, in-
ien upon trial
the offense of
the jury with
1 244, 2 OO2d

ted under this
iown that the
and excessive,
e expressed or
ch a nature as
ury: Martin v.

ι

ι   of sud-
ge, either of
cation occa-
sufficient to
force, shall

iother;
cal harm to
ir dangerous
1 of the Re-

guilty of ag-
degree.
33. Eff 5-19-82,
9), repealed 134

; RS § 6984a; 81
, 10-1-53; 131 v

n 4 of the act.

ime as an of-
ssault, except
tted while the
brought on by

---

45      HOMICIDE AND ASSAULT      § 2903.12

substantial and adequate provocation. Accordingly, this section complements the offense of voluntary manslaughter, while the offense of felonious assault complements the section on murder. This section is also a lesser included offense to attempted murder and attempted voluntary manslaughter. See section 2923.02.

Aggravated assault is a felony of the fourth degree.

### Cross-References to Related Sections

Penalties for felonies, RC § 2929.11.

Aggravated assault defined as offense of violence, RC § 2901.01(I).

Competency of wife as witness, RC § 2945.42.

Deadly force defined, RC § 2901.01(B).

Knowingly defined, RC § 2901.01(C).

Physical harm to persons defined, RC § 2901.01(E).

### Comparative Legislation

Aggravated assault:
CA—Penal Code § 245
FL—Stat Ann § 784.021
IL—Ann Stat ch 38 § 12-2
IN—Code § 35-13-3-1
KY—Rev Stat Ann §§ 508.020, 508.040
MI—Comp Laws Ann §§ 750.81a, 750.83
NY—Penal Law § 120.05
PA—CSA tit 18 § 2702

### Text Discussion

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

### Forms

Aggravated assault. 4 OJI § 503.12

### Research Aids

Aggravated assault:
O-Jur3d: Crim L § 1734
Am-Jur2d: Asslt & B §§ 48-55

### ALR

Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.

Consent as defense to charge of criminal assault and battery. 58 ALR3d 662.

Inference, in prosecution for assault with deadly or dangerous weapon, of intent to do physical harm. 92 ALR2d 647.

Intent to do physical harm as essential element of crime of assault with deadly or dangerous weapon. 92 ALR2d 635.

Kicking as aggravated assault, or assault with dangerous or deadly weapon. 33 ALR3d 922.

Parts of the human body, other than feet, as deadly or dangerous weapons for purposes of statutes aggravating offenses such as assault or robbery. 8 ALR4th 1268.

Pocket or clasp knife as deadly or dangerous weapon for purposes of statute aggravating offenses such as assault, robbery, or homicide. 100 ALR3d 287.

### CASE NOTES AND OAG

See also case notes under RC § 2903.11.

1. (1980) While there are due process limits to the extent

---

to which a state may redefine the elements of a crime and thereby reallocate the burden of proof to the defendant, in failing to make absence of self-defense an element of the crimes of felonious or aggravated assault as defined in RC §§ 2903.11 and 2903.12, Ohio did not violate due process: Isaac v. Engle, 646 F2d 1129 (6thCir).

2. (1980) The defense of self-defense as defined in the charge to the jury did not negate an element of the crime of felonious assault or aggravated assault as defined in RC §§ 2903.11 and 2903.12, since one could act knowingly (felonious assault), or knowingly and while under extreme emotional distress brought on by serious provocation reasonably sufficient to incite him into using deadly force (aggravated assault), and yet act in self-defense: Isaac v. Engle, 646 F2d 1129 (6thCir).

3. (1979) A third person has no right to volunteer assistance or interpose resistance when the person assisted is being lawfully arrested; and if the intervenor, in good faith, aggressively intervenes in a struggle between another person and a plain clothes officer, who is attempting to effectuate a lawful arrest, then the intervenor is guilty of an assault: State v. Wenger, 58 OS2d 336, 12 OO3d 309, 390 NE2d 801.

4. (1978) Aggravated menacing, RC § 2903.21, is not a lesser included offense of felonious assault, RC § 2903.11, or of aggravated assault, RC § 2903.12: State v. Nicholl, 9 OO3d 285 (App); State v. Beaty, 45 OApp2d 127, 74 OO2d 137, 341 NE2d 622.

5. (1977) In a prosecution for felonious assault under RC § 2903.11, where the record contained no evidence whatsoever of any "extreme emotional stress" or "serious provocation," the court properly overruled defendant's request for a charge on aggravated assault: State v. Gavin, 51 OApp2d 49, 5 OO3d 168, 365 NE2d 1263.

6. (1975) The crime of aggravated assault as defined by RC § 2903.12 is a lesser included offense of the crime of felonious assault as defined by RC § 2903.11: State v. Butler, 44 OApp2d 177, 73 OO2d 196, 337 NE2d 633.

7. (1975) Proof by the defendant of provocation, as defined in RC § 2903.12, though not a complete defense to acts charged as felonious assault, as defined by RC § 2903.11, would permit a jury, if the elements of the crime are proved, to find a defendant guilty of the lesser included offense of aggravated assault as defined by RC § 2903.12: State v. Butler, 44 OApp2d 177, 73 OO2d 196, 337 NE2d 633.

#### [CONSTRUING FORMER ANALOGOUS
RC § 2901.18]

1. Consent does not make the act lawful and the participants are guilty of assault and battery: Barholt v. Wright, 45 OS 177, 12 NE 185, 4 AmSt 535.

2. Where, during a violent altercation between A and B, A threatened to shoot B, and immediately thereafter procured a gun and fired it at B, it is error to charge the jury that from this threat alone they might infer that the gun was loaded: Fastbinder v. State, 42 OS 341.

3. Upon the trial of an indictment for shooting with intent to kill, where the evidence shows that the act charged was committed by the accused when he was being assaulted with a dangerous weapon, evidence of the general reputation of the assailant as a man of violent and dangerous character, and of the knowledge of such general reputation by the accused at the time of the assault, is admissible: Upthegrove v. State, 37 OS 662.

4. If a father wantonly makes an assault upon a third person, and his son comes into the affray, afterwards, to

---

131

aid his father in the assault, on an indictment against the son for an assault with intent to murder, the jury cannot consider his relation to his father, nor the circumstances of peril in which his father was placed: Sharp v. State, 19 O 379.

## § 2903.13   Assault.

(A) No person shall knowingly cause or attempt to cause physical harm to another.

(B) No person shall recklessly cause serious physical harm to another.

(C) Whoever violates this section is guilty of assault, a misdemeanor of the first degree.

HISTORY: 134 v H 511. Eff 1-1-74.

Not analogous to former RC § 2903.13 (133 v H 84), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

**Committee Comment to H 511**

This section prohibits simple assault and simple battery in the traditional sense. It expands upon former law, however, by including within its purview reckless actions which result in serious physical harm to another.

Assault is a misdemeanor of the first degree.

**Cross-References to Related Sections**

Penalties for misdemeanors, RC § 2929.21.

Assault defined as offense of violence, RC § 2901.01(I).

Competency of wife as witness, RC § 2945.42.

Knowingly defined, RC § 2901.22(B).

Physical harm to persons defined, RC § 2901.01(C).

Recklessly defined, RC § 2901.22(C).

Serious physical harm to persons defined, RC § 2901.01(E).

**Comparative Legislation**

Assault:
18 USC § 111
CA—Penal Code § 216
FL—Stat Ann § 784.011
IL—Ann Stat ch 38 § 12-1
IN—Code § 35-1-54-4
KY—Rev Stat Ann § 508.030
MI—Comp Laws Ann § 750.81
NY—Penal Law § 120
PA—CSA tit 18 § 2701

**Text Discussion**

Corporal punishment of pupils by school personnel. 2 Anderson Fam. L. § 20.8

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

**Forms**

Assault. 4 OJI § 503.13

**Research Aids**

Assault:
O-Jur3d: Crim L § 1735.
Am-Jur2d: Asslt & B §§ 13-21

**ALR**

Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.

Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. 1 ALR3d 571.

Attempt to commit assault as criminal offense. 79 ALR2d 597.

Child of tender years as liable for battery. 87 ALR2d 574.

Consent as defense to charge of criminal assault and battery. 58 ALR3d 662.

Consent as a defense to mayhem. 86 ALR2d 268.

Criminal liability for excessive or improper punishment inflicted on child by parent, teacher, or one in loco parentis. 89 ALR2d 396.

Indecent proposal to woman as assault. 12 ALR2d 971.

Private person's duty and liability for failure to protect another against criminal attack by third person. 10 ALR3d 619.

Scienter as element of offense of assaulting, resisting, or impeding federal officer. 10 ALR3d 833.

### CASE NOTES AND OAG

See also case notes under RC § 2903.12.

1. (1979) A third person has no right to volunteer assistance or interpose resistance when the person assisted is being lawfully arrested; and if the intervenor, in good faith, aggressively intervenes in a struggle between another person and a plain clothes officer, who is attempting to effectuate a lawful arrest, then the intervenor is guilty of an assault because he has no greater right to use force than the person whom he is endeavoring to protect: State v. Wenger, 58 OS2d 336, '12 OO3d 309, 390 NE2d 801.

2. (1978) The defense of assumption of the risk is not available to a defendant who has committed an assault in violation of RC § 2903.13: Johnson v. Hardnett, 62 OApp2d 165, 16 OO3d 345, 405 NE2d 324.

[CONSTRUING FORMER ANALOGOUS
RC § 2901.14 et seq]

1. (1965) A conviction for violation of this section will be affirmed where the evidence shows that the chief of a volunteer fire department of an adjoining county had no authority to enter an apartment to investigate an alleged oil fume odor and struck and resisted a uniformed police officer who requested him to leave the premises: State v. Guenther, 34 OO2d 211, 214 262 (App).

2. A conviction on a charge of assault, under this section, in that defendant struck at prosecuting witness with a deadly weapon, an axe, was sustained by the evidence: State v. Wood, 34 OLA 328, 37 NE2d 106 (App).

3. Assault and battery may be committed by striking another unlawfully with an automobile: Keuhn v. State, 37 App 217, 174 NE 606.

## § 2903.14   Negligent assault.

(A) No person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another.

(B) Whoever violates this section is guilty of negligent assault, a misdemeanor of the third degree.

HISTORY: 134 v H 511. Eff 1-1-74.

Not analogous to former RC § 2903.14 (133 v H 84), repealed 134 v H 511, § 2, eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

acter or reputa-
-defense by one
LR3d 571.
n° ⁻9 ALR2d

87 ALR2d 574.
ssault and bat-

2d 268.
punishment in-
or one in loco

ALR2d 971.
lure to protect
3rd person. 10

g, resisting, or
3.

;

to volunteer
person assisted
venor, in good
tween another
empting to ef-
· is guilty of an
force than the
tect: State v.
NE2d 801.
the risk is not
d an assault in
Hardnett, 62

GOUS

s. on will be
:he chief of a
:ounty had no
ate an alleged
formed police
nises: State v.

inder this sec-
witness with a
the evidence:
(App).
d by striking
:uhn v. State,

means of a
as defined in
ιuse physical

is guilty of
f the third

H 84], repealed

n 4 of the act. ·

---

**Committee Comment to H 511**

This section forbids negligently causing physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11. The offense thus complements section 2903.05, negligent homicide. That is, circumstances which would constitute the more serious offense if someone is killed would constitute this offense if the victim is merely injured.

Negligent assault is a misdemeanor of the third degree.

**Cross-References to Related Sections**

Penalties for misdemeanors, RC § 2929.21
Negligently defined, RC § 2901.22(D).
Physical harm to persons, RC § 2901.01(C).

**Comparative Legislation**

Negligent assault:
    CA—Penal Code § 216
    FL—Stat Ann § 784.011
    IL—Ann Stat ch 38 § 12-1
    IN—Code § 35-1-54-4
    KY—Rev Stat Ann § 508.030
    MI—Comp Laws Ann § 750.81
    NY—Penal Law §§ 120.20, 120.25
    PA—CSA tit 18 § 2705

**Text Discussion**

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

**Forms**

Negligent assault. 4 OJI § 503.14

**Research Aids**

Negligent assault:
    O-Jur3d: Crim L § 1736
    Am-Jur2d: Asslt & B §§ 6, 40, 48, 117, 150

**ALR**

Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.
Criminal responsibility for injury resulting from hunting accident. 23 ALR2d 1401.
Liability for injury or death of minor or other incompetent inflicted upon himself by gun made available by defendant. 75 ALR3d 825.

**CASE NOTES AND OAG**

1. (1980) In a prosecution for attempted murder, the trial court did not err in refusing defendant's request for or instruction on negligent assault where defendant abandoned its request by subsequently objecting to the giving of instructions as to any lesser included offenses: State v. Parra, 61 OS2d 236, 15 OO3d 251, 400 NE2d 885.

---

## §§ 2903.15, 2903.16    Repealed, 134 v H 511, § 2 [133 v H 84; 135 v S 62]. Eff 1-1-74.

These sections concerned material and performances obscene or harmful to minors, and falsification of minor's status.

---

## MENACING

### § 2903.21    Aggravated menacing.

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family.

(B) Whoever violates this section is guilty of aggravated menacing, a misdemeanor of the first degree.

HISTORY: 134 v H 511. Eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

**Committee Comment to H 511**

This section is analogous to the former offense of menacing threats, although this offense and the lesser offense of menacing differ from former law in two significant respects.

First, former law made no distinction as to types of harm threatened. The threat of more serious harm, however, calls for a more severe penalty under this section, whereas threats of lesser harm are cognizable under section 2903.22, menacing. Second, under this section and the section following, the threatened harm need not be directed at the victim as such, but may be directed at a member of the victim's immediate family. Under former law, the person to whom the threat was addressed had also to be the object of the threatened harm. Also, a threat to harm property is cognizable under both menacing sections by itself and without any additional elements, such as a purpose to extort.

Neither aggravated menacing nor menacing requires that the offender be able to carry out his threat or even believe himself capable of carrying it out. It is sufficient if the offender knowingly causes the victim to believe the offender will carry his threat into execution. The rationale for this is that regardless of whether the offender is bluffing or in earnest the victim may be impelled to violence to counter what he believes to be a real threat. If the victim of a threat is not in fact intimidated, the offender's conduct would constitute attempted menacing if his purpose was to intimidate or he knew that his conduct would probably intimidate.

Aggravated menacing is a misdemeanor of the first degree.

**Cross-References to Related Sections**

Penalties for misdemeanors, RC § 2929.21.
Aggravated menacing defined as an offense of violence, RC § 2901.01(I).
Extortion, RC § 2905.11.
Knowingly defined, RC § 2901.22(B).
Property defined, RC § 2901.01(J).
Serious physical harm to persons, RC § 2901.01(E).
Serious physical harm to property, RC § 2901.01(F).

**Comparative Legislation**

Aggravated menacing:
    CA—Penal Code § 246
    IL—Ann Stat ch 38 § 12-6
    IN—Code § 35-1-54-4
    KY—Rev Stat Ann §§ 508.050, 508.080
    MI—Comp Laws Ann § 750.87
    NY—Penal Law § 120.15

133

§ 2903.22          CRIMES—PROCEDURE          48

**Text Discussion**

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

**Forms**

Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.13

**Research Aids**

Aggravated menacing:
  O-Jur3d: Crim L § 1846
  Am-Jur2d: Asslt & B §§ 2-4, 7, 22, 23

## CASE NOTES AND OAG

1. (1978) Aggravated menacing, RC § 2903.21, is not a lesser included offense of felonious assault, RC § 2903.11, or of aggravated assault, RC § 2903.12: State v. Nicholl, 9 OO3d 285 (App).

2. (1975) The crime of aggravated menacing, prohibited by RC § 2903.21, is not a lesser included offense under a charge of felonious assault, prohibited by RC § 2903.11: State v. Beaty, 45 OApp2d 127, 74 OO2d 137, 341 NE2d 622.

## § 2903.22    Menacing.

(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person or member of his immediate family.

(B) Whoever violates this section is guilty of menacing, a misdemeanor of the fourth degree.
HISTORY: 134 v H 511. Eff 1-1-74.

The effective date of H 511 is set by section 4 of the act.

**Committee Comment to H 511** .

The operation of this section and the rationale for it are the same as in section 2903.21, aggravated menacing.

The sole difference between the two sections is in the degree of harm threatened. A threat of serious physical harm is punishable as aggravated menacing, whereas a threat of mere physical harm constitutes menacing under this section.

Menacing is a misdemeanor of the fourth degree.

**Cross-References to Related Sections**

Penalties for misdemeanors, RC § 2929.21.

Extortion, RC § 2905.11.
Knowingly defined, RC § 2901.22(B).
Menacing defined as offense of violence, RC § 2901.01(I).
Physical harm to persons defined, RC § 2901.01(C).
Physical harm to property defined, RC § 2901.01(D).
Property defined, RC § 2901.01(J).

**Comparative Legislation**

Menacing:
  CA—Penal Code § 220
  IL—Ann Stat ch 38 § 12-6
  IN—Code § 35-1-54-4
  KY—Rev Stat Ann § 2903.22
  MI—Comp Laws Ann § 750.88
  NY—Penal Law § 120.15
  PA—CSA tit 18 § 2709

**Text Discussion**

Elements of offense. 1 Ohio Crim. Prac. & Pro. § 62.1

**Forms**

Menacing. 4 OJI § 503.22
Statutory charge. 2A Ohio Crim. Prac. & Pro. 8.14

**Research Aids**

Menacing:
  O-Jur3d: Crim L § 1847
  Am-Jur2d: Asslt & B §§ 2-4, 7, 22, 23

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 842

Crim.

§ 41.3

to murder?
iniel Glaser.

iality of the
ayLRev 169

408 US 238

Comment.

ments—the
ith penalty
:atutes con-
violation of
*Furman v.*
i2 CinLRev

murder in
Bailey. 28

tal notes on
299 (1979).
!08 US 238
/    nent.

bstitute for
iLRev 130

ie life back
l (1974).
ploring the
i. Welsh S.

by its deci-
f the death
irtheless, a
r, i.e., life
283 (App).
nviction of
: collection
igainst the
: collected
Blake, 53

)US

: Court in
e court to
; 2901.01,
ɔ set aside

first degree murder convictions, or to invalidate the indict-
ment: Vargas v. Metzger, 35 OS2d 116, 64 OO2d 70, 298
NE2d 600.

## [§ 2929.02.1] § 2929.021 [Notice to supreme court of indictment charging aggravated murder; plea.]

(A) If an indictment or a count in an indictment
charges the defendant with aggravated murder and
contains one or more specifications of aggravating
circumstances listed in division (A) of section
2929.04 of the Revised Code, the clerk of the court
in which the indictment is filed, within fifteen days
after the day on which it is filed, shall file a notice
with the supreme court indicating that the indict-
ment was filed. The notice shall be in the form
prescribed by the clerk of the supreme court and
shall contain, for each charge of aggravated murder
with a specification, at least the following informa-
tion pertaining to the charge:

(1) The name of the person charged in the indict-
ment or count in the indictment with aggravated
murder with a specification;

(2) The docket number or numbers of the case or
cases arising out of the charge, if available;

(3) The court in which the case or cases will be
heard;

(4) The date on which the indictment was filed.

(B) If the indictment or a count in an indictment
charges the defendant with aggravated murder and
contains one or more specifications of aggravating
circumstances listed in division (A) of section
2929.04 of the Revised Code and if the defendant
pleads guilty or no contest to any offense in the case
or if the indictment or any count in the indictment is
dismissed, the clerk of the court in which the plea is
entered or the indictment or count is dismissed shall
file a notice with the supreme court indicating what
action was taken in the case. The notice shall be
filed within fifteen days after the plea is entered or
the indictment or count is dismissed, shall be in the
form prescribed by the clerk of the supreme court,
and shall contain at least the following information:

(1) The name of the person who entered the guilty
or no contest plea or who is named in the indictment
or count that is dismissed;

(2) The docket numbers of the cases in which the
guilty or no contest plea is entered or in which the
indictment or count is dismissed;

(3) The sentence imposed on the offender in each
case.

HISTORY: 139 v S 1. Eff 10-19-81.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.

## [§ 2929.02.2] § 2929.022 [Deter-mination of aggravating circumstance.]

(A) If an indictment or count in an indictment
charging a defendant with aggravated murder con-

tains a specification of the aggravating circumstance
of a prior conviction listed in division (A)(5) of sec-
tion 2929.04 of the Revised Code, the defendant
may elect to have the panel of three judges, if he
waives trial by jury, or the trial judge, if he is tried
by jury, determine the existence of that aggravating
circumstance at the sentencing hearing held pur-
suant to divisions (C) and (D) of section 2929.03 of
the Revised Code.

(1) If the defendant does not elect to have the ex-
istence of the aggravating circumstance determined
at the sentencing hearing, the defendant shall be
tried on the charge of aggravated murder, on the
specification of the aggravating circumstance of a
prior conviction listed in division (A)(5) of section
2929.04 of the Revised Code, and on any other
specifications of an aggravating circumstance listed
in division (A) of section 2929.04 of the Revised
Code in a single trial as in any other criminal case in
which a person is charged with aggravated murder
and specifications.

(2) If the defendant does elect to have the ex-
istence of the aggravating circumstance of a prior
conviction listed in division (A)(5) of section 2929.04
of the Revised Code determined at the sentencing
hearing, then, following a verdict of guilty of the
charge of aggravated murder, the panel of three
judges or the trial judge shall:

(a) Hold a sentencing hearing pursuant to divi-
sion (B) of this section, unless required to do other-
wise under division (A)(2)(b) of this section;

(b) If the offender raises the matter of age at trial
pursuant to section 2929.023 [2929.02.3] of the
Revised Code and is not found at trial to have been
eighteen years of age or older at the time of the com-
mission of the offense, conduct a hearing to deter-
mine if the specification of the aggravating cir-
cumstance of a prior conviction listed in division
(A)(5) of section 2929.04 of the Revised Code is
proven beyond a reasonable doubt. After conduct-
ing the hearing, the panel or judge shall proceed as
follows:

(i) If that aggravating circumstance is proven
beyond a reasonable doubt or if the defendant at
trial was convicted of any other specification of an
aggravating circumstance, the panel or judge shall
impose sentence according to division (E) of section
2929.03 of the Revised Code;

(ii) If that aggravating circumstance is not proven
beyond a reasonable doubt and the defendant at
trial was not convicted of any other specification of
an aggravating circumstance, the panel or judge
shall impose sentence of life imprisonment with
parole eligibility after serving twenty years of im-
prisonment on the offender.

(B) At the sentencing hearing, the panel of judges,
if the defendant was tried by a panel of three judges,
or the trial judge, if the defendant was tried by jury,
shall, when required pursuant to division (A)(2) of
this section, first determine if the specification of the
aggravating circumstance of a prior conviction



listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt. If the panel of judges or the trial judge determines that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt or if they do not determine that the specification is proven beyond a reasonable doubt but the defendant at trial was convicted of a specification of any other aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, the panel of judges or the trial judge and trial jury shall impose sentence on the offender pursuant to division (D) of section 2929.03 and section 2929.04 of the Revised Code. If the panel of judges or the trial judge does not determine that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt and the defendant at trial was not convicted of any other specification of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, the panel of judges or the trial judge shall terminate the sentencing hearing and impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

HISTORY: 139 v S 1. Eff 10-19-81.

**Forms**

Sentencing hearing. 4 OJI § 503.01.
Specifications of aggravating circumstance. 4 OJI § 413.45.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.
Reasonable doubt defined, RC § 2901.05.

### [§ 2929.02.3] § 2929.023 [Defendant may raise matter of age.]

A person charged with aggravated murder and one or more specifications of an aggravating circumstance may, at trial, raise the matter of his age at the time of the alleged commission of the offense and may present evidence at trial that he was not eighteen years of age or older at the time of the alleged commission of the offense. The burdens of raising the matter of age, and of going forward with the evidence relating to the matter of age, are upon the defendant. After a defendant has raised the matter of age at trial, the prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the defendant was eighteen years of age or older at the time of the alleged commission of the offense.

HISTORY: 139 v S 1. Eff 10-19-81.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.
Reasonable doubt, RC § 2901.05.

### [§ 2929.02.4] § 2929.024 [Investigation services and experts for indigent.]

If the court determines that the defendant is indigent and that investigation services, experts, or other services are reasonably necessary for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, the court shall authorize the defendant's counsel to obtain the necessary services for the defendant, and shall order that payment of the fees and expenses for the necessary services be made in the same manner that payment for appointed counsel is made pursuant to Chapter 120. of the Revised Code. If the court determines that the necessary services had to be obtained prior to court authorization for payment of the fees and expenses for the necessary services, the court may, after the services have been obtained, authorize the defendant's counsel to obtain the necessary services and order that payment of the fees and expenses for the necessary services be made as provided in this section.

HISTORY: 139 v S 1. Eff 10-19-81.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.

### § 2929.03 Imposing sentence for a capital offense.

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to section 2929.023 [2929.02.3] of the Revised Code, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard, which shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but such instruction shall not mention the penalty which may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C)(1) If the indictment or count in the indict-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 844

listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt. If the panel of judges or the trial judge determines that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt or if they do not determine that the specification is proven beyond a reasonable doubt but the defendant at trial was convicted of a specification of any other aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, the panel of judges or the trial judge and trial jury shall impose sentence on the offender pursuant to division (D) of section 2929.03 and section 2929.04 of the Revised Code. If the panel of judges or the trial judge does not determine that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt and the defendant at trial was not convicted of any other specification of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, the panel of judges or the trial judge shall terminate the sentencing hearing and impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

HISTORY: 139 v S 1. Eff 10-19-81.

**Forms**

Sentencing hearing. 4 OJI § 503.01.
Specifications of aggravating circumstance. 4 OJI § 413.45.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.
Reasonable doubt defined, RC § 2901.05.

### [§ 2929.02.3] § 2929.023 [Defendant may raise matter of age.]

A person charged with aggravated murder and one or more specifications of an aggravating circumstance may, at trial, raise the matter of his age at the time of the alleged commission of the offense and may present evidence at trial that he was not eighteen years of age or older at the time of the alleged commission of the offense. The burdens of raising the matter of age, and of going forward with the evidence relating to the matter of age, are upon the defendant. After a defendant has raised the matter of age at trial, the prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the defendant was eighteen years of age or older at the time of the alleged commission of the offense.

HISTORY: 139 v S 1. Eff 10-19-81.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.
Reasonable doubt, RC § 2901.05.

### [§ 2929.02.4] § 2929.024 [Investigation services and experts for indigent.]

If the court determines that the defendant is indigent and that investigation services, experts, or other services are reasonably necessary for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, the court shall authorize the defendant's counsel to obtain the necessary services for the defendant, and shall order that payment of the fees and expenses for the necessary services be made in the same manner that payment for appointed counsel is made pursuant to Chapter 120. of the Revised Code. If the court determines that the necessary services had to be obtained prior to court authorization for payment of the fees and expenses for the necessary services, the court may, after the services have been obtained, authorize the defendant's counsel to obtain the necessary services and order that payment of the fees and expenses for the necessary services be made as provided in this section.

HISTORY: 139 v S 1. Eff 10-19-81.

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.

### § 2929.03 Imposing sentence for a capital offense.

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to section 2929.023 [2929.02.3] of the Revised Code, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard, which shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but such instruction shall not mention the penalty which may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C)(1) If the indictment or count in the indict-

ment
more
listed
vised
charg
and r
matte
02.3]
pose :
eligib:
ment
(2)
contai
circum
2929.(
found
the spe
offend
parole
impris
gibility
ment,
and (E
one of
(a) E
fender
(b) E
fender
(D)(:
aggrav:
of age
[2929.0
at trial
the tim
death n
murder
When c
upon th
pre-sent
request
aminati
the inv
submitte
of the I
mation
ination
division
provide
against 1
trial. A
ination s
defenda:
this divi
trial jury
prosecut
under th
the offen
report p
nished to
relevant

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 845

246

247     PENALTIES AND SENTENCING     § 2929.03

[Investi-

ir   's in-
x,   , or
the prop-
l with ag-
cing hear-
t's counsel
lefendant,
s and ex-
n the same
el is made
ode. If the
ces had to
i for pay-
essary ser-
e been ob-
to obtain
ent of the
s be made

a capital

ndictment
ain one or
umstances
r t Re-
l. of the
court shall
ith parole
imprison-

ndictment
e or more
s listed in
ised Code,
er the ac-
principal
l charge,
of age or
offense, if
ender pur-
he Revised
or not guil-
instructed
include an
e proved
support a
ch instruc-
nay be the
lict on any

he indict-

ment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of each of the specifications, and regardless of whether the offender raised the matter of age pursuant to section 2929.023 [2929.-02.3] of the Revised Code, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(2) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be death, life imprisonment with parole eligibility after serving twenty full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment, shall be determined pursuant to divisions (D) and (E) of this section, and shall be determined by one of the following:

(a) By the panel of three judges that tried the offender upon his waiver of the right to trial by jury;

(b) By the trial jury and the trial judge, if the offender was tried by jury.

(D)(1) Death may not be imposed as a penalty for aggravated murder if the offender raised the matter of age at trial pursuant to section 2929.023 [2929.02.3] of the Revised Code and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense. When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to section 2947.06 of the Revised Code. No statement made or information provided by a defendant in a mental examination or proceeding conducted pursuant to this division shall be disclosed to any person, except as provided in this division, or be used in evidence against the defendant on the issue of guilt in any retrial. A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or his counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the of-

fender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, he is subject to cross-examination only if he consents to make the statement under oath or affirmation.

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

If the trial jury recommends that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. If the trial jury recommends that the sentence of death be imposed upon the offender, the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

138

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 846

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

(b) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(E) If the offender raised the matter of age at trial pursuant to section 2929.023 [2929.02.3] of the Revised Code, was convicted of aggravated murder and one or more specifications of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:

(1) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

(2) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. The court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.

(G) Whenever the court or a panel of three judges imposes sentence of death, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the appellate court.

HISTORY: 134 v H 511 (Eff 1-1-74); 139 v S 1. Eff 10-19-81.

**Committee Comment to H 511**

This section specifies the procedure to be followed in determining whether the sentence for aggravated murder is to be life imprisonment or death.

The death penalty is precluded unless the indictment contains a specification of one or more of the aggravating circumstances listed in section 2929.04. In the absence of such specifications, life imprisonment must be imposed. If the indictment specifies an aggravating circumstance, it must be proved beyond a reasonable doubt, and the jury must return separate verdicts on the charge and specification. If the verdict is guilty of the charge but not guilty of the specification, the penalty is life imprisonment.

If the verdict is guilty of both the charge and the specification, the jury is discharged and the trial begins a second phase designed to determine the presence or absence of one or more mitigating circumstances. If one of the three mitigating factors listed in section 2929.04 is established by a preponderance of the evidence, the penalty is life imprisonment. If none of such factors is established, the penalty is death. The procedure is essentially the same in the first phase of an aggravated murder trial whether the case is tried by a jury or by a three-judge panel on a waiver of a jury. The burden of proof still rests on the state, the same rules of evidence apply, the specification must be proved beyond a reasonable doubt, and the panel's verdict must be unanimous.

With respect to the mitigation phase of the trial, the procedure is somewhat different depending on whether the case is tried by a jury or a three-judge panel. A jury tries only the charge and specification, and the judge in a jury trial determines mitigation. If a jury is waived, the same three-judge panel tries not only the charge and specification, but also determines the presence or absence of mitigation. Also, the statute expressly provides that the panel's finding that no mitigating circumstance is established must be unanimous, or the death penalty is precluded. In other respects, the procedure for determining mitigation is similar whether the trial judge or a three-judge panel tries the issue. Mitigation must be established by a preponderance of the evidence, and the rules of evidence also apply in this phase of the trial (the requirement for a pre-sentence investigation and report, the requirement for a psychiatric examination and report, and the provision for an unsworn statement by the defendant, represent partial exceptions to the rules of evidence).

**Cross-References to Related Sections**

Aggravated murder, RC § 2903.01.
Execution of death sentence, RC §§ 2949.21-2949.31.
Parole eligibility, RC § 2967.13.
Penalties for murder, RC § 2929.02.
Reasonable doubt, RC § 2901.05.
Time of execution in capital cases, RC § 2947.08.

Ohio Constit:
Cruel and un

Comparative
Capital offen:
  18 USC § :
  CA—Penal
  FL—Stat /
  IL—Ann S
  IN—Code
  KY—Rev !
  MI—Com]
  NY—Pena
  PA—CSA

Text Discuss
Penalties an
  Prac. &
Verdict; pen

Forms
Sentencing l
Specificatior

Research Ai
Imposing se
  O-Jur3d:
  Am-Jur2c

ALR
Absence of
  quirin{
  1240.
Beliefs rega
  in cap
  550.
Court's rig'
  to con
  96 AL
Defendant
  ALR3
Necessity :
  wheth
  not be
Propriety
  follow
  or les:

Law Revi
Capital p
  death
  (1978
Capital p
  (1972
The const
  38 O
Constitut
  impo
  unde
  stitur
  the {
Geo
  172 .
Criminal
  men
Loci
Akr{

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 847

**Ohio Constitution**

Cruel and unusual punishment, OConst art I, § 9.

**Comparative Legislation**

Capital offense, sentence:
18 USC § 3566
CA—Penal Code § 1105
FL—Stat Ann § 775.081
IL—Ann Stat ch 38 § 9-1
IN—Code § 35-50-2-9
KY—Rev Stat Ann § 532.035
MI—Comp Laws Ann § 750.91
NY—Penal Law §§ 60.05, 60.06
PA—CSA tit 61 § 2121 et seq

**Text Discussion**

Penalties and sentencing in capital offenses. 1 Ohio Crim. Prac. & Pro. § 51.6c, d, e
Verdict; penalty. 1 Ohio Crim. Prac. & Pro. § 41.3

**Forms**

Sentencing hearing. 4 OJI § 503.01.
Specifications of aggravating circumstance. 4 OJI § 413.45.

**Research Aids**

Imposing sentence for a capital offense:
O-Jur3d: Crim L §§ 1840—1842
Am-Jur2d: Crim L §§ 535—556

**ALR**

Absence of counsel for accused at time of sentence as requiring vacation thereof or other relief. 20 ALR2d 1240.

Beliefs regarding capital punishment as disqualifying juror in capital case—post Witherspoon cases. 39 ALR3d 550.

Court's right in imposing sentence to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR 768.

Defendant's rights to disclosure of presentence report. 40 ALR3d 681.

Necessity and sufficiency of question to defendant as to whether he has anything to say why sentence should not be pronounced against him. 96 ALR2d 1292.

Propriety of imposition of death sentence by state court following jury's recommendation of life imprisonment or lesser sentence. 8 ALR4th 1028.

**Law Review**

Capital punishment in Ohio: the constitutionality of the death penalty statute. Comment. 3 UDayLRev 169 (1978).

Capital punishment statutes after *Furman* [408 US 238 (1972)]. Note. 35 OSLJ 651 (1974).

The constitutionality of Ohio's death penalty. Comment. 38 OSLJ 617 (1977).

Constitutional law—cruel and unusual punishments—the imposition and carrying out of the death penalty under current discretionary sentencing statutes constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments. *Furman v. Georgia*, 408 US 238 (1972). Case note. 42 CinLRev 172 (1973).

Criminal law—death penalty—cruel and unusual punishment—individualized sentencing determination. *Lockett v. Ohio*, 438 US 586 (1975). Case note. 12 AkronLRev 360 (1978).

The death penalty and guilty pleas: Ohio rule 11(C)(3)—a constitutional answer to a capital defendant's dilemma. Comment. 5 ONorthLRev 687 (1978).

*Gardner v. Florida* [430 US 349 (1977)]: pre-sentence reports in capital sentencing procedures. Case note. 5 ONorthLRev 175 (1978).

Legislative response to *Furman v. Georgia* [408 US 238 (1972)]—Ohio restores the death penalty. Comment. 8 AkronLRev 149 (1974).

The response to *Furman*: can legislators breathe life back into death? Comment. 23 ClevStLRev 172 (1974).

*Witherspoon* [391 US 510 (1968)] revisited: exploring the tension between *Witherspoon* and *Furman*. Welsh S. White. 45 CinLRev 19 (1976).

---

## CASE NOTES AND OAG

[DECISIONS PRIOR TO MAJOR AMENDMENT,
139 v S 1, eff 10-19-81]

INDEX

Burden of proof, 5, 10, 11
Court's duty as to sentencing, 9
Defendant not entitled to psychiatric, 12
Evidence need not be offered, 6
Jury not to consider penalty, 15
Pre-sentence investigation required, 7
Prior convictions, 3
Three-judge panel, 4, 13, 14
Voir dire, 16
What must be considered, 1, 2, 8

1. (1976) Consideration of the character and record of the individual offender and of the circumstances of a particular offense is constitutionally required in death penalty cases even where the crime of first degree murder is narrowly defined: Roberts v. Louisiana, 428 US 325, 49 LEd2d 974, 96 SCt 3001.

2. (1976) The fundamental respect for humanity underlying the eighth amendment requires consideration of the character and record of the individual offender and the circumstances of a particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death: Woodson v. North Carolina, 428 US 280, 49 LEd2d 944, 96 SCt 2978.

3. (1980) Where it is necessary to charge a prior offense in the indictment for purposes of enhanced punishment, as a matter of state law the prior offense becomes an element of the second offense, and, therefore, it is not reversible error to read to the jury an indictment which contains the averment of a prior conviction or to place such indictment in the jury's possession during its deliberations. The admission of a prior conviction in a single-stage trial conforms with Ohio's rules of evidence and criminal procedure: Lonberger v. Jago, 635 F2d 1189 (6thCir).

4. (1978) Where an accused, charged with a capital offense, knowingly, intelligently, and voluntarily waives his right to a trial by jury pursuant to RC § 2945.05 and CrimR 23(A), and is subsequently tried before a three-judge panel, the panel may render a verdict upon a majority vote of its members pursuant to RC § 2945.06: State v. Ruppert, 54 OS2d 263, 8 OO3d 232, 375 NE2d 1250.

5. (1977) At a mitigation hearing the defendant bears only the risk of nonpersuasion; he does not need to establish a mitigating circumstance by a preponderance: State v. Toth, 52 OS2d 206, 6 OO3d 461, 371 NE2d 831.

---

### Left margin fragments

suant to this
filed.
three judges
the court in
d   the en-
cou...
, Eff 10-19-81.

be followed in
aggravated

he indictment
e of the ag-
929.04. In the
onment must
a reasonable
a reasonable
rdicts on the
guilty of the
he penalty is

rge and the
trial begins a
presence or
ances. If one
n 2929.04 is
vidence, the
ch factors is
ure is essen-
rated murder
a three-judge
oof still rests
e apply, the
nable doubt.

al, the
u, whether
panel. A jury
he judge in a
waived, the
charge and
resence or
pressly pro-
tigating cir-
ous, or the
cts, the pro-
whether the
issue. Mitiga-
ance of the
ipply in this
sentence in-
psychiatric
an unsworn
l exceptions

2949.31.

7.08.

---

140

6. (1977) The proceeding established in RC §§ 2929.03 and 2929.04 for imposing sentence for a capital offense is not an adversary proceeding and, under the provisions of RC § 2929.03(D) and (E), and RC § 2929.04(B), neither the defendant nor the prosecution is required by statute to offer testimony or other evidence of mitigating circumstances: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

7. (1977) Under the provisions of RC § 2929.03(D) and (E), and RC § 2929.04(B), the court is required to order a pre-sentence investigation and a psychiatric examination to be made and to order reports of the investigation and examination to be submitted to the court pursuant to RC § 2947.06: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

8. (1977) Under the provisions of RC § 2929.03(D) and (E), the court must consider the reports which it is required to have prepared and submitted and any other reports, testimony or other evidence submitted, statements of the offender, whether under oath or not, or any other testimony or evidence submitted on behalf of the defendant, testimony or other evidence submitted by the prosecution, evidence submitted during the trial and arguments of counsel submitted to the court pursuant to division (D) of RC § 2929.03; and after consideration of all these items with regard to mitigating circumstances, the court is required to determine whether any mitigating circumstance listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

9. (1977) Under the provisions of RC § 2929.03, if the court finds that none of the mitigating circumstances listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence, then it shall impose the sentence of death on the offender; otherwise, it shall impose a sentence of life imprisonment on the offender (RC § 2929.03(E)): State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

10. (1977) The provision of RC § 2929.03(E) that "if the court finds *** that none of the mitigating circumstances listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence, it shall impose the sentence of death on the offender," requires that the defendant bear the risk of nonpersuasion during the mitigation hearing, but does not impose an unconstitutional burden upon a defendant which would render the Ohio statutory framework for the imposition of capital punishment unconstitutional: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

11. (1977) The provision of RC § 2929.03(E) requiring the court to impose the sentence of death on the offender "if the court finds, or if the panel of three judges unanimously finds that none of the mitigating circumstances listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence ***" does not make the lack of mitigating factors an additional and constitutionally mandated element of a capital offense, and the state is not constitutionally required to prove the lack of such mitigating factors beyond a reasonable doubt: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

12. (1977) In conducting a mitigation hearing, under the provisions of RC § 2929.03(D), a court, having appointed a psychiatrist and a psychologist pursuant to RC § 2947.06, is not constitutionally required to appoint an additional psychiatrist of the defendant's choosing at state expense: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

13. (1977) Revised Code § 2929.03 is not unconstitutional in providing that the three-judge panel not only try the charges and specifications but also determine the sentence: State v. Miller, 49 OS2d 198, 3 OO3d 321, 361 NE2d 419.

14. (1976) A defendant is not coerced or impelled to waive his constitutional right to jury trial by RC § 2929.03(C)(1), (2) and (E), under the provisions of which an offender who waives a jury trial need persuade only one member of the three-judge panel at the mitigation hearing to avoid imposition of the death penalty: State v. Bell, 48 OS2d 270, 2 OO3d 427, 358 NE2d 556.

15. (1975) In the deliberation of a verdict concerning a charge of aggravated murder with specifications, the possible imposition of the death penalty is not within the province of the jury: State v. Strub, 48 OApp2d 57, 2 OO3d 40, 355 NE2d 819.

16. (1975) Since the potential imposition of the death penalty in the trial of an aggravated murder charge with specifications is not within the province of the jury, it is improper, upon voir dire, to question prospective jurors relative to such penalty: State v. Strub, 48 OApp2d 57, 2 OO3d 40, 355 NE2d 819.

## § 2929.04 Criteria for imposing death or imprisonment for a capital offense.

(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. For purposes of this division, a person is a candidate if he has been nominated for election according to law, or if he has filed a petition or petitions according to law to have his name placed on the ballot in a primary or general election, or if he campaigns as a write-in candidate in a primary or general election.

(2) The offense was committed for hire.

(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

(4) The offense was committed while the offender was a prisoner in a detention facility as defined in section 2921.01 of the Revised Code.

(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code,

whom the [...]
knew to l [...]
of the con [...]
duties, on [...]
kill a pea [...]

(7) The [...]
was comm [...]
immediat [...]
commit [...]
gravated [...]
either the [...]
commissi [...]
principal [...]
murder v [...]

(8) The [...]
witness t [...]
prevent [...]
and the a [...]
ing the [...]
flight in [...]
tempted [...]
tim was [...]
murder [...]
posely ki [...]
criminal [...]

(B) If [...]
stances [...]
specified [...]
ment an [...]
the offer [...]
to sectio [...]
or if the [...]
was foun [...]
or older [...]
the cour [...]
consider [...]
cumstan [...]
nature a [...]
charactd [...]
of the fo [...]

(1) W [...]
facilitat [...]
(2) W [...]
have be [...]
fender v [...]
cation; [...]
(3) W [...]
fense, tl [...]
defect, [...]
crimina [...]
to the r [...]
(4) T [...]
(5) T [...]
prior c [...]
judicati [...]
(6) If [...]
but not [...]
fender's [...]
of the o [...]
the dea [...]

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 849

6. (1977) The proceeding established in RC §§ 2929.03 and 2929.04 for imposing sentence for a capital offense is not an adversary proceeding and, under the provisions of RC § 2929.03(D) and (E), and RC § 2929.04(B), neither the defendant nor the prosecution is required by statute to offer testimony or other evidence of mitigating circumstances: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

7. (1977) Under the provisions of RC § 2929.03(D) and (E), and RC § 2929.04(B), the court is required to order a pre-sentence investigation and a psychiatric examination to be made and to order reports of the investigation and examination to be submitted to the court pursuant to RC § 2947.06: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

8. (1977) Under the provisions of RC § 2929.03(D) and (E), the court must consider the reports which it is required to have prepared and submitted and any other reports, testimony or other evidence submitted, statements of the offender, whether under oath or not, or any other testimony or evidence submitted on behalf of the defendant, testimony or other evidence submitted by the prosecution, evidence submitted during the trial and arguments of counsel submitted to the court pursuant to division (D) of RC § 2929.03; and after consideration of all these items with regard to mitigating circumstances, the court is required to determine whether any mitigating circumstance listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

9. (1977) Under the provisions of RC § 2929.03, if the court finds that none of the mitigating circumstances listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence, then it shall impose the sentence of death on the offender; otherwise, it shall impose a sentence of life imprisonment on the offender (RC § 2929.03(E)): State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

10. (1977) The provision of RC § 2929.03(E) that "if the court finds *** that none of the mitigating circumstances listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence, it shall impose the sentence of death on the offender," requires that the defendant bear the risk of nonpersuasion during the mitigation hearing, but does not impose an unconstitutional burden upon a defendant which would render the Ohio statutory framework for the imposition of capital punishment unconstitutional: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

11. (1977) The provision of RC § 2929.03(E) requiring the court to impose the sentence of death on the offender "if the court finds, or if the panel of three judges unanimously finds that none of the mitigating circumstances listed in division (B) of RC § 2929.04 is established by a preponderance of the evidence ***" does not make the lack of mitigating factors an additional and constitutionally mandated element of a capital offense, and the state is not constitutionally required to prove the lack of such mitigating factors beyond a reasonable doubt: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

12. (1977) In conducting a mitigation hearing, under the provisions of RC § 2929.03(D), a court, having appointed a psychiatrist and a psychologist pursuant to RC § 2947.06, is not constitutionally required to appoint an additional psychiatrist of the defendant's choosing at state expense: State v. Downs, 51 OS2d 47, 5 OO3d 30, 364 NE2d 1140.

13. (1977) Revised Code § 2929.03 is not unconstitutional in providing that the three-judge panel not only try the charges and specifications but also determine the sentence: State v. Miller, 49 OS2d 198, 3 OO3d 321, 361 NE2d 419.

14. (1976) A defendant is not coerced or impelled to waive his constitutional right to jury trial by RC § 2929.03(C)(1), (2) and (E), under the provisions of which an offender who waives a jury trial need persuade only one member of the three-judge panel at the mitigation hearing to avoid imposition of the death penalty: State v. Bell, 48 OS2d 270, 2 OO3d 427, 358 NE2d 556.

15. (1975) In the deliberation of a verdict concerning a charge of aggravated murder with specifications, the possible imposition of the death penalty is not within the province of the jury: State v. Strub, 48 OApp2d 57, 2 OO3d 40, 355 NE2d 819.

16. (1975) Since the potential imposition of the death penalty in the trial of an aggravated murder charge with specifications is not within the province of the jury, it is improper, upon voir dire, to question prospective jurors relative to such penalty: State v. Strub, 48 OApp2d 57, 2 OO3d 40, 355 NE2d 819.

## § 2929.04 Criteria for imposing death or imprisonment for a capital offense.

(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. For purposes of this division, a person is a candidate if he has been nominated for election according to law, or if he has filed a petition or petitions according to law to have his name placed on the ballot in a primary or general election, or if he campaigns as a write-in candidate in a primary or general election.

(2) The offense was committed for hire.

(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

(4) The offense was committed while the offender was a prisoner in a detention facility as defined in section 2921.01 of the Revised Code.

(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code,



142

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 850

elements of the crime of murder in the first degree for purposely and wilfully killing a policeman: State v. Ross, 92 App 29, 49 OO 198, 108 NE2d 77.

4. Where officers under the direction of their superiors had been sent to search for the participant in a robbery, and in doing so entered the cottage where a policeman met his death, the jury was justified in concluding that the officer was in the discharge of his duties when killed, within the scope of this section: State v. Dingledine, 14 OO 339 (App) [appeal dismissed, 135 OS 251].

5. Where one of several persons arming themselves with firearms and conspiring to resist sheriff kills sheriff while in discharge of duties, all conspirators are guilty of first degree murder: Rails v. State, 43 App 129, 182 NE 691, 35 OLR 80.

## § 2929.05 [Appellate review of death sentence.]

(A) Whenever sentence of death is imposed pursuant to sections 2929.03 and 2929.04 of the Revised Code, the court of appeals and the supreme court shall upon appeal review the sentence of death at the same time that they review the other issues in the case. The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the court of appeals and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. They shall also review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors. The court of appeals or the supreme court shall affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case.

Any court of appeals that reviews a case in which the sentence of death is imposed shall file a separate opinion as to its findings in the case with the clerk of the supreme court. The opinion shall be filed within fifteen days after the court issues its opinion and shall contain whatever information is required by the clerk of the supreme court.

(B) The court of appeals and the supreme court shall give priority over all other cases to the review of judgments in which the sentence of death is imposed, and, except as otherwise provided in this section, shall conduct the review in accordance with the Appellate Rules.

(C) Whenever sentence of death is imposed pursuant to section 2929.022 [2929.02.2] or 2929.03 of the Revised Code, the court of common pleas that sentenced the offender shall, upon motion of the offender and after conducting a hearing on the motion, vacate the sentence if all of the following apply:

(1) The offender alleges in the motion and presents evidence at the hearing that he was not eighteen years of age or older at the time of the commission of the aggravated murder for which he was sentenced;

(2) The offender did not present evidence at trial pursuant to section 2929.023 [2929.02.3] of the Revised Code that he was not eighteen years of age or older at the time of the commission of the aggravated murder for which he was sentenced;

(3) The motion was filed at any time after the sentence was imposed in the case and prior to execution of the sentence;

(4) At the hearing conducted on the motion, the prosecution does not prove beyond a reasonable doubt that the offender was eighteen years of age or older at the time of the commission of the aggravated murder for which he was sentenced.

HISTORY: 139 v S 1. Eff 10-19-81.

Cross-References to Related Sections

Reasonable doubt, RC § 2901.05.

## § 2929.06 [Resentencing hearing after vacation of death sentence.]

If the sentence of death that is imposed upon any offender is vacated on appeal because the court of appeals or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is vacated upon appeal for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, or is vacated pursuant to division (C) of section 2929.05 of the Revised Code, the trial court that sentenced the offender shall conduct a hearing to resentence the offender. At the resentencing hearing, the court shall sentence the offender to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

HISTORY: 139 v S 1. Eff 10-19-81.

Cross-References to Related Sections

Parole eligibility, RC § 2967.13.

143

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 851

a bar to a
. State, 6

>oration.

ufficient
· associa-
e proper
tate any
associa-
es of all
f one or
or more
ng to the
cient for
state the
name or
been or

: Bureau of

o. § 51.7

ted group

t §§ 136,

a.. · of a
ns not in-
on of any
O 506, 84

(GC §

offense
e for the
, excuse,
or defin-
made is
doing of

Bureau of

n, CrimR

n statutes

**Research Aids**

Negativing exception, excuse, or proviso in penal law:
O-Jur3d: Crim L § 742
Am-Jur2d: Indict §§ 85, 98—102

### CASE NOTES AND OAG

1. (1964) A complaint charging defendant with violation of RC § 3773.24, the Sunday closing law, is not defective for failure to allege that the acts complained of were not works of necessity or charity or otherwise did not come within the exceptions in the statute: State v. Whitt, 3 OApp2d 278, 32 OO2d 382, 210 NE2d 279.

2. Under this section, an indictment for unlawfully obtaining a narcotic drug by giving a false name, in violation of RC § 3719.17, is not objectionable because it fails to negative the exception contained in RC § 3719.15: Folenius v. Eckle, 109 App 152, 10 OO2d 367, 164 NE2d 458.

## § 2941.11   Pleading prior conviction. (GC § 13437-10)

Whenever it is necessary to allege a prior conviction of the accused in an indictment or information, it is sufficient to allege that the accused was, at a certain stated time, in a certain stated court, convicted of a certain stated offense, giving the name of the offense, or stating the substantial elements thereof.

HISTORY: GC § 13437-10; 113 v 123(166), ch 16, § 10; Bureau of Code Revision. Eff 10-1-53.

**Cross-References to Related Sections**

Proof of prior conviction, RC § 2945.75(B).

**Ohio Rules**   ·

Nature and contents of indictment or information, CrimR 7(B).

**Text Discussion**

Indictment. 1 Ohio Crim. Prac. & Pro. § 15.4

**Forms**

Indictment: alleging aggravating element (prior conviction). 2A Ohio Crim. Prac. & Pro. 7.03

**Research Aids**

Prior conviction:
O-Jur3d: Crim L § 748
Am-Jur2d: Indict § 151

### CASE NOTES AND OAG

1. (1965) The provisions of this section are mandatory and an allegation of a prior conviction in an indictment or information must show that "the accused was, at a certain stated time, in a certain stated court, convicted of a certain stated offense, giving the name of the offense, or stating the substantial elements thereof": State v. Winters, 2 OS2d 325, 31 OO2d 581, 209 NE2d 131.

## § 2941.12   Pleading a statute. (GC § 13437-11)

In pleading a statute or right derived therefrom it is sufficient to refer to the statute by its title, or in any other manner which identifies the statute. The court must thereupon take judicial notice of such statute.

HISTORY: GC § 13437-11; 113 v 123(166), ch 16, § 11; Bureau of Code Revision. Eff 10-1-53.

**Research Aids**

Pleading a statute:
O-Jur3d: Crim L § 762
Am-Jur2d: Indict §§ 86—103, 139

## § 2941.13   Pleading a judgment. (GC § 13437-12)

In pleading a judgment or other determination of, or a proceeding before, any court or officer, civil or military, it is not necessary to allege the fact conferring jurisdiction on such court or officer. It is sufficient to allege generally that such judgment or determination was given or made or such proceedings had.

HISTORY: GC § 13437-12; 113 v 123(166), ch 16, § 12; Bureau of Code Revision. Eff 10-1-53.

**Research Aids**

Pleading judgment or proceedings:
O-Jur3d: Crim L § 763
Am-Jur2d: Indict § 79

## § 2941.14 Allegations in homicide indictment.

(A) In an indictment for aggravated murder, murder, or voluntary or involuntary manslaughter, the manner in which, or the means by which the death was caused need not be set forth.

(B) Imposition of the death penalty for aggravated murder is precluded unless the indictment or count in the indictment charging the offense specifies one or more of the aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code. If more than one aggravating circumstance is specified to an indictment or count, each shall be in a separately numbered specification, and if an aggravating circumstance is specified to a count in an indictment containing more than one count, such specification shall be identified as to the count to which it applies.

(C) A specification to an indictment or count in an indictment charging aggravated murder shall be stated at the end of the body of the indictment or count, and may be in substantially the following form:

*Specification* (or, *Specification 1*, or *Specification to the First Count*, or, *Specification 1 to the First Count*). The Grand Jurors further find and specify that (set forth the applicable aggravating circumstance listed in divisions (A)(1) to (8) of section 2929.04 of the Revised Code. The aggravating circumstance may be stated in the words of the subdivision in which it appears, or in words sufficient to give the accused notice of the same).

144

special venire: Makley v. State, 49 App 359, 3 OO 250, 197 NE 339, appeal dismissed, 128 OS 571.

6. In prosecution for first degree murder the forms of law should be strictly followed, and the provisions of statutes conferring rights in favor of the accused in the method and manner of summoning and impaneling juries are mandatory: Caferelli v. State, 12 App 91, 31 OCA 152, petition in error overruled, 17 OLR 392, 65 Bull 15.

7. When the court, under this section, orders a venire of seventy-five names to be drawn from the jury wheel for service in the joint trial of three codefendants, indicted for a capital offense, the defendants, claiming that at least one hundred and fifty names should have been drawn, should have challenged the array: State v. Dingledine, 14 OO 339 (App), appeal dismissed, 135 OS 251.

## § 2945.19 [Special venire in capital cases.]

Jurors summoned as provided in section 2945.18 of the Revised Code, who are not set aside on challenge, together with whatever number of by-standers having the qualifications of jurors is necessary to make the number of twelve on the jury, or, if the whole array is set aside, twelve bystanders having the qualifications of jurors and not set aside on challenge, is a lawful jury for the trial of a person charged with a capital offense. Either party may demand and have a special venire to fill the panel. If it is necessary to summon talesmen, the court on motion of either party shall select them and issue forthwith a venire for that number having the qualifications of jurors as is necessary. The jurors shall appear at the time fixed by the court, but a person in or about the courthouse shall not be selected without the consent of both parties. If a cause has been assigned for trial, and the jury for the trial of the cause has been drawn and the cause is continued to another term of court, the jury drawn shall be discharged and a new jury drawn for the trial of the cause. If the trial of the cause has commenced and there is not time to conclude it at the same term of court, the cause may be concluded at the next term of court.

**HISTORY:** 139 v S 1. Eff 10-19-81.

Analogous to former RC § 2945.19 (GC § 13443-2; 113 v 123(182); Bureau of Code Revision, 10-1-53; 127 v 847), repealed 136 v H 133, § 2, eff 6-3-76.

### CASE NOTES AND OAG

[CONSTRUING FORMER ANALOGOUS RC § 2945.19]

1. (1976) The trial court did not err in failing to declare a mistrial in a prosecution for murder where the original venire was exhausted when the court followed the procedure set forth in RC §§ 2945.18 and 2945.19: State v. Osborne, 49 OS2d 135, 3 OO3d 79, 359 NE2d 78.

2. (1972) A defendant is not denied due process of law where the composition of the special venire called for his trial was constituted in such a manner that only qualified electors were eligible for jury duty. The provisions of RC §§ 2945.18, 2945.19, 2313.06 and 2313.08, whereby jurors are selected only from among qualified electors of the county, are constitutional: State v. Johnson, 31 OS2d 106, 60 OO2d 85, 285 NE2d 751.

3. (1974) One accused of first degree murder is not en-

titled to a special venire allowed under RC § 2945.19: State v. Gaines, 40 OApp2d 224, 69 OO2d 210, 318 NE2d 657.

## § 2945.20   Separate trial for capital offense. (GC § 13443-3)

When two or more persons are jointly indicted for a capital offense, each of such persons shall be tried separately. The court, for good cause shown on application therefor by the prosecuting attorney or one or more of the defendants, may order said defendants to be tried jointly.

**HISTORY:** GC § 13443-3; 113 v 123(183), ch.22, § 3; 118 v 261; Bureau of Code Revision. Eff 10-1-53.

Analogous to former GC § 13446.

### Ohio Rules

Relief from prejudicial joinder, CrimR 14.
See CrimR 13, 14. As to the relationship between statutes and Rules, see Publisher's Note, page v.

### Comparative Legislation

Separate trial for capital offense:
18 USC §§ 1111, 3437; FRCrP 14
CA—Penal Code § 644
FL—Stat Ann § 775.15
IL—Ann Stat ch 38 § 3-3
IN—Code § 35-3.1-1-9
KY—RCr 9.16
MI—Comp Laws Ann § 768.5
NY—Crim Pro Law § 220.10

### Research Aids

Separate trial for capital offenses:
O-Jur3d: Crim L § 779
Am-Jur2d: Trial §§ 17—24

### CASE NOTES AND OAG

1. (1973) Simultaneous trials of co-defendants do not constitute a denial of the right of each defendant to a separate trial: State v. Kassow, 28 OS2d 141, 57 OO2d 390, 277 NE2d 435.

2. Where one of two defendants jointly indicted for murder in the first degree has, in the absence of the other, made admissions or confessions implicating such other, and where it is disclosed that such admissions or confessions will be introduced in evidence, it is error to require a joint trial of the two defendants over the objection of the nonconfessing defendant: State v. Abbott, 152 OS 228, 40 OO 282, 89 NE2d 147.

3. (1971) The right to separate trials by one of two or more persons jointly indicted for a capital offense, as granted by RC § 2945.20, is a right which may be overcome for good cause shown, the burden of showing the same being upon the state: State v. Fields, 29 OApp2d 154, 58 OO2d 212, 279 NE2d 616.

4. Where the trial court, under the provisions of this section, granted the state's motion for a joint trial of two defendants, the fact that during the trial it became evident that it would have been more to the interest of one of the defendants to have had separate trials, could not be assigned as error in the reviewing court: State v. Bohannon, 64 App 431, 18 OO 123, 28 NE2d 1010, appeal dismissed, 137 OS 152.

5. The fact that trial court rules against the defendant

145

Case: 2:16-cv-00495-SJD-MRM Doc #: 4-7 Filed: 08/08/16 Page: 79 of 130  PAGEID #: 888

15.19: State
NE2d 857,

1 of-

dicted for
ll be tried
wn on ap-
hey or one
iid defen-

3; 116 v 301;

en statutes

nts do not
nt to a sep-
JO2d 390,

idicted for
: the other,
uch other,
or confes-
o require a
tion of the
JS 228, 40

: of two or
offense, as
iy be over-
lowing the
\pp2d 154,

of this sec-
ial of two
me evident
one of the
not be as-
Bohannon,
dismissed,

defendant

on his application for a separate trial is in itself no indica-
tion that there has been an abuse of discretion; such abuse
must be affirmatively shown: State v. Dingledine, 14 OO
339 (App), appeal dismissed, 135 OS 251.

6. In capital cases under this section, where two or more
are jointly indicted each is required to be tried separately
unless the court for good cause orders the defendants to be
tried jointly and good cause is shown where all of the
defendants acted in concert in the commission of the crime
or where the jury in a joint trial would be better able to
weigh testimony: State v. Richardson, 39 OLA 608 (App).

7. It is not good cause under this section for ordering
defendants in capital cases to be tried jointly that separate
trials would result in other accused persons being denied
speedy trials or that separate trials would cause extra ex-
pense to the county: State v. Richardson, 39 OLA 608
(App).

## § 2945.21  Peremptory challenges in capital cases.

(A)(1) In criminal cases in which there is only one
defendant, each party, in addition to the challenges
for cause authorized by law, may peremptorily
challenge three of the jurors in misdemeanor cases
and four of the jurors in felony cases other than
capital cases. If there is more than one defendant,
each defendant may peremptorily challenge the
same number of jurors as if he were the sole defen-
dant.

(2) Notwithstanding Criminal Rule 24, in capital
cases in which there is only one defendant, each par-
ty, in addition to the challenges for cause authorized
by law, may peremptorily challenge twelve of the
jurors. If there is more than one defendant, each
defendant may peremptorily challenge the same
number of jurors as if he were the sole defendant.

(3) In any case in which there are multiple defen-
dants, the prosecuting attorney may peremptorily
challenge a number of jurors equal to the total
number of peremptory challenges allowed to all of
the defendants.

(B) If any indictments, informations, or com-
plaints are consolidated for trial, the consolidated
cases shall be considered, for purposes of exercising
peremptory challenges, as though the defendants or
offenses had been joined in the same indictment, in-
formation, or complaint.

(C) The exercise of peremptory challenges autho-
rized by this section shall be in accordance with the
procedures of Criminal Rule 24.

HISTORY: GC § 13443-4; 113 v 123(183), ch 22, § 4; 119 v 594;
Bureau of Code Revision (Eff 10-1-53); 139 v S 1. Eff 10-19-81.

Analogous to former GC §§ 13647, 13649.

### Cross-References to Related Sections

Peremptory challenges, RC § 2945.22.

### Ohio Rules

Peremptory challenges, CrimR 24(C), (D).
See CrimR 24(C), (D). As to the relationship between
statutes and Rules, see Publisher's Note, page v.

### Text Discussion

Peremptory challenges. 1 Ohio Crim. Prac. & Pro. 28.7,
28.8

### Research Aids

Peremptory challenges:
O-Jur3d: Crim L §§ 911—913
Am-Jur2d: Trial §§ 234, 1097

### Law Review

The prosecutor's exercise of the peremptory challenge to
exclude nonwhite jurors: a valued common law priv-
ilege in conflict with the equal protection clause.
Comment. 46 CinLRev 554 (1977).

### CASE NOTES AND OAG

[DECISIONS PRIOR TO MAJOR AMENDMENT,
139 v S 1, eff 10-19-81]

1. (1972) Court's voir dire examination must comply
with Witherspoon v. Illinois, 391 US 510: State v. Ander-
son, 30 OS2d 66, 59 OO2d 85, 282 NE2d 568.

2. (1971) Under RC § 2945.21 a declination in turn to
exercise a peremptory challenge to dismiss a juror does not
render the state or the defendant unable reasonably to use
any remaining peremptory challenges to dismiss a juror
seated either before or after the declination: State v. Berry,
25 OS2d 255, 54 OO2d 374, 267 NE2d 775.

3. (1969) A prospective juror may be challenged for
cause in a capital case where his opinions preclude him
from finding the accused guilty of an offense punishable
with death: State v. Eaton, 19 OS2d 145, 48 OO2d 188,
249 NE2d 897.

4. In the absence of a rule fixed by statute, the trial
court in a capital case may determine the manner of exer-
cising peremptory challenges: Rucker v. State, 119 OS 189,
162 NE 802.

5. (1974) Violation of RC § 2901.01, within the factual
context of the case at bar is neither a capital offense, crime
or case, which would entitle the appellant to six peremp-
tory challenges pursuant to RC § 2945.21: State v. Beasley,
68 OO2d 337 (App).

6. Defendant exercising only a part of his peremptory
challenges and expressing satisfaction with jury cannot
later complain as to jury: Lutes v. State, 37 App 353, 174
NE 745; State v. Bohannon, 64 App 431, 18 OO 123, 28
NE2d 1010, appeal dismissed, 137 OS 152, 18 OO 132, 28
NE2d 201.

## § 2945.22  Repealed, 139 v S 1, § 2 [GC §
13443-6; 113 v 123(183); Bureau of Code Revision,
10-1-53]. Eff 10-19-81.

This section concerned peremptory challenges.

## § 2945.23  When peremptory challenges
required. (GC § 13443-7)

Except by agreement, neither the state nor the
defendant shall be required to exercise any peremp-
tory challenge until twelve jurors have been passed
for cause and are in the panel.

HISTORY: GC § 13443-7; 113 v 123(183), ch.22, § 7; Bureau of
Code Revision. Eff 10-1-53.

146

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 854

**Ohio Rules**

Peremptory challenges, CrimR 24(C), (D).
See CrimR 24(D), (F). As to the relationship between statutes and Rules, see Publisher's Note, page v.

**Outlines of Procedure**

Common pleas court actions. Leyshon No. 315

**Research Aids**

Time and manner of exercising:
O-Jur3d: Crim L § 912
Am-Jur2d: Jury § 215

### § 2945.24 Juries.

In all criminal cases other than capital cases, a jury summoned and impaneled under sections 2313.01 to 2313.46 of the Revised Code shall try the accused. In capital cases, a jury summoned and impaneled under sections 2945.18 and 2945.19 of the Revised Code shall try the accused.

HISTORY: GC § 13443-5; 113 v 123(183), ch 22, § 5; Bureau of Code Revision (Eff 10-1-53); 136 v H 133 (Eff 6-3-76); 139 v S 1. Eff 10-19-81.

Analogous to former GC § 13651.

**Ohio Rules**

Challenge for cause, CrimR 24(B).

**Text Discussion**

Jury demand. 1 Ohio Crim. Prac. & Pro. § 27.3

**Outlines of Procedure**

Common pleas court actions. Leyshon No. 315

**Research Aids**

Selecting and impaneling jury, generally:
O-Jur3d: Crim L § 892
Am-Jur2d: Jury §§ 136—188

#### CASE NOTES AND OAG

1. (1972) The right to a fair and impartial jury requires that the source from which prospective jurors are selected include the names and addresses of 18, 19 and 20 year old electors: State v. Willis, 33 OMisc 159, 62 OO2d 288, 293 NE2d 885 (MC).

### § 2945.25 Causes of challenging of jurors.

A person called as a juror in a criminal case may be challenged for the following causes:

(A) That he was a member of the grand jury that found the indictment in the case;

(B) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial;

(C) In the trial of a capital offense, that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. A prospective juror's conscientious or religious opposition to the death penalty in and of itself is not grounds for a challenge for cause. All parties shall be given wide latitude in voir dire questioning in this regard.

(D) That he is related by consanguinity or affinity within the fifth degree to the person alleged to be injured or attempted to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted, or to the defendant;

(E) That he served on a petit jury drawn in the same cause against the same defendant, and that [petit]† jury was discharged after hearing the evidence or rendering a verdict on the evidence that was set aside;

(F) That he served as a juror in a civil case brought against the defendant for the same act;

(G) That he has been subpoenaed in good faith as a witness in the case;

(H) That he is a chronic alcoholic, or drug dependent person;

(I) That he has been convicted of a crime that by law disqualifies him from serving on a jury;

(J) That he has an action pending between him and the state or the defendant;

(K) That he or his spouse is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against him;

(L) That he is the person alleged to be injured or attempted to be injured by the offense charged, or is the person on whose complaint the prosecution was instituted, or the defendant;

(M) That he is the employer or employee, or the spouse, parent, son, or daughter of the employer or employee, or the counselor, agent, or attorney of any person included in division (L) of this section;

(N) That English is not his native language, and his knowledge of English is insufficient to permit him to understand the facts and law in the case;

(O) That he otherwise is unsuitable for any other cause to serve as a juror.

The validity of each challenge listed in this section shall be determined by the court.

HISTORY: GC § 13443-8; 113 v 123(183), ch 22, § 8; 118 v 429; Bureau of Code Revision (Eff 10-1-53); 136 v H 965 (Eff 4-9-81); 139 v S 1. Eff 10-19-81.

Analogous to former GC § 13653.

† S 1 failed to contain the word "petit" here. It was added in H 965.

**Ohio Rules**

Trial by jury, CrimR 23(A).
Trial jurors, CrimR 24.
See CrimR 24(B). As to the relationship between statutes and Rules, see Publisher's Note, page v.

Comp
Chall
18
CA
FL
IL-
IN
KY
MI
NY
PA

Text
Chal

Rese:
Chal
O-
At
Inter
O
At
Opii
O
A
Opp
O
A
Phy
C
A
Pre:
C
A
Rel
C
A

Lav
Cri

Jur

Ab
Bu
Mi
Ne
Op
(
(
(
(
1
1

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 855

STATE OF OHIO                    :    CASE NO. CR84-02-0125

       Plaintiff           :    STATE OF OHIO

vs                         COUNTY OF BUTLER

                     :    COURT OF COMMON PLEAS

ERNEST L. GAITHER     AUG 1 4 1984

A/K/A EARNEST L. GAITHER

                       JUDGMENT OF CONVICTION ENTRY

       Defendant

: : : : : : : : : :

        This 9th day of August, 1984 came the Prosecuting Attorney into Court and the defendant personally with his counsel, Al Edmunds and David L. Kash, and the defendant having previously been found Guilty by the Jury's Verdict as to Aggravated Murder with Specification, contrary to Ohio Revised Code Sections 2903.01(B) and 2929.04(A)(7) respectively, as charged in Count One of the Indictment, and Guilty as to Aggravated Robbery, contrary to Ohio Revised Code Section 2911.01(A)(1), as charged in Count Two of the Indictment.

        Wherefore a hearing was conducted pursuant to Ohio Revised Code Sections 2929.03 and 2929.04, and after having heard all the testimony adduced by both parties and after the defendant was afforded an opportunity to make a statement on his own behalf without being sworn or subject to cross-examination, the Jury in writing made its Recommendation pursuant to Ohio Revised Code Section 2929.03(D)(2), to wit: that the defendant be sentenced to life imprisonment with parole eligibility after serving thirty (30) full years of imprisonment.

        Coming now to the imposition of sentence, pursuant to Criminal Rule 32(A)(1), the Court afforded defendant and his counsel an opportunity to make a statement as to why sentence should not now be pronounced, and pursuant to Ohio Revised Code Section 2929.03(D)(2) the Court having accepted the Recommendation of the Jury,

        IT IS HEREBY ORDERED that the defendant be sentenced to the Chillicothe Correctional Institution at Chillicothe, Ohio for a term of life imprisonment, with parole eligibility after serving thirty (30) full years of imprisonment, and pay the costs of prosecution, as to Count One of the Indictment.

        IT IS FURTHER ORDERED that the defendant be sentenced to the Chillicothe Correctional Institution at Chillicothe, Ohio for a minimum term of seven (7) years and a maximum term of twenty-five (25) years, and pay the costs of prosecution, as to Count Two of the Indictment. Said sentence is to run consecutively with the sentence imposed in Count One of the Indictment.

        Pursuant to Rule 32(A)(2), Ohio Rule of Criminal Procedure, and after imposing sentence, the Court advised the defendant that he has a right to appeal, that if he is unable to pay the costs of an appeal, he has the right to

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
JOHN F. HOLCOMB
PROSECUTING ATTORNEY

BUTLER COUNTY
COURTHOUSE
P. O. BOX 515
HAMILTON, OHIO 45012

148

appeal without payment, that if he is unable to obtain counsel for an appeal, counsel will be appointed without cost, that if he is unable to pay the cost of documents necessary to appeal, such documents including but not limited to the entire transcript of all proceedings in the trial of this action will be provided without cost, and that he has a right to have a notice of appeal timely filed on his behalf.

Said defendant is to be given credit for serving one hundred and seventy-three (173) days served in the Butler County Jail at Hamilton, Ohio.

E N T E R

_____

BRUEWER, J.

APPROVED:

JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
UTING ATTORNEY
R COUNTY, OHIO
F. HOLCOMB
UTING ATTORNEY

LER COUNTY
URTHOUSE
O BOX 515
ION, OHIO 45012

149

- 2 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 857

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY, OHIO

STATE OF OHIO,                          :        CASE NO. CA83-04-134

        Plaintiff-Appellee           :

                               :

    -vs-                                :

                               :

NOLAN RAY GEORGE,                        :

        Defendant-Appellant          :        O P I N I O N
                                      4-30-84

John F. Holcomb by Ronald R. Craft, Butler County Courthouse, P. O. Box 515, Hamilton, Ohio 45012, for Plaintiff-Appellee.

Fred Miller, Condo, Walsh, Schiavone, Spillane and Miller Co., 301 South Front Street, P. O. Box 187, Hamilton, Ohio 45015, for Defendant-Appellant.

JONES, J.

    On October 22, 1982, the nude body of Cindy Garland Rose was discovered in a field near the intersection of the Route 4 Bypass and Princeton Road, located in Butler County, Ohio. On November 23, 1982, defendant-appellant, Nolan Ray George, was arrested in connection with Rose's death.

    Appellant was tried before a jury on March 28 and 29, 1983, and found guilty of involuntary manslaughter in violation of R.C. 2903.04. The court sentenced appellant to three to ten years in



150

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 858

the Ohio State Penitentiary. Further facts relevant to the
determination of this appeal are discussed in the opinion.

Appellant's first assignment of error reads as follows:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF
> DEFENDANT-APPELLANT WHEN IT OVERRULED HIS
> MOTION FOR DISCHARGE FOR LACK OF A SPEEDY
> TRIAL.

Appellant was arrested on November 23, 1982, and tried on
March 28, 1983, 125 days after his arrest. It is appellant's
position that since he was not brought to trial within the speci-
fied time provided for in R.C. 2945.71, the Ohio speedy trial
statute, he should have been discharged. The transcript of pro-
ceedings indicates that trial was originally scheduled for
February 17, 1983, 85 days after appellant was arrested. On
February 16, 1983, the day before trial, counsel for appellant
filed a motion for a continuance in order to investigate newly
discovered evidence. The trial court granted the motion and the
matter was continued so that appellant could conduct his investi-
gation.

On Friday, March 4, 1983, appellant filed another motion in
which he stated that "* * * the time period necessary to complete
the investigation of new evidence referred to in defendant's
motion for continuance filed February 16, 1983, is hereby com-
pleted." Appellant requested an immediate trial on the involun-
tary manslaughter charge. On Monday, March 7, 1983, the trial

151
-2-
-62-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 859

judge filed an entry setting appellant's case for trial on March 28, 1983.[1]

An accused against whom a felony charge is pending must be brought to trial within 270 days after his arrest. R.C. 2945.71 (C)(2). R.C. 2945.71(E) states that:

> "For purposes of computing time under divi-
> sions * * * (C)(2) * * * of this section,
> each day during which the accused is held
> in jail in lieu of bail on the pending
> charge shall be counted as three days."

The 90 day "speedy trial provision" as enumerated above may be extended under the provisions of R.C. 2945.72. An accused who is not brought to trial within the time proscribed by R.C. 2945.71 and R.C. 2945.72 must be discharged. R.C. 2945.73(B).

Appellant has cited numerous cases in support of his argument, including State v. Baker, Butler No. CA82-04-0045 (12th Dist. June 30, 1983), a recent decision of this Court. These

---

[1] The trial court's entry, in its entirety, reads as follows:

> "This matter having been continued from the
> originally scheduled trial date of February
> 17, 1983, upon the motion of the defendant
> so as to allow the defense additional time
> for investigation, and it now appearing to
> the Court that defense counsel's investiga-
> tion is completed and that the matter may
> now be rescheduled for trial,
>
> "IT IS, HEREBY ORDERED, that the trial of
> this cause be heard on March 28, 1983 at
> 9:00 a.m."



-3-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 860

cases stand for the proposition that when a court continues a case <u>sua</u> <u>sponte</u> the record must affirmatively demonstrate the necessity for a continuance and reflect the reasonableness thereof. <u>State</u> v. <u>Mincy</u> (1982), 2 Ohio St. 3d 6; <u>Aurora</u> v. <u>Patrick</u> (1980), 61 Ohio St. 2d 107; <u>Baker</u>, <u>supra</u>. The cases cited by appellant rely on R.C. 2945.72(H) as the basis for their decisions. R.C. 2945.72(H) provides that the time within which an accused must be brought to trial may be extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than the accused's own motion."

Appellant asserts that the trial court's entry of March 7, 1983, amounts to a <u>sua</u> <u>sponte</u> continuance. As such, the entry granting the continuance must reflect the purpose of the court's decision to grant the additional continuance in order to determine whether that continuance was necessary and whether there were reasonable grounds for the continuance as required by R.C. 2945.72(H). By failing to grant appellant an "immediate" trial and continuing appellant's trial for an additional 24 days without affirmatively demonstrating the reasonableness for the extension, it is appellant's position that the 24 days should be counted against the state.

It should be initially noted that the state was ready to proceed with trial on the 86th day following appellant's arrest. Appellant concedes responsibility for the extension from February 16 to March 4, but contends that he should have been tried



153

-4-

-64-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 861

"immediately" after notifying the court on a Friday afternoon that his investigation was complete. The state argues that March 28 was the next available trial date although that fact is not recited in the court's entry. In any event, we see no justification in requiring a court to reschedule appellant's trial immediately after he has concluded his investigation. "Such a holding would not comport with the realities of congested court dockets which are typically set months in advance." State v. Bauer (1980), 61 Ohio St. 2d 83, 85.

The only continuance granted was that resulting from appellant's motion filed on February 16, and continuing until March 4, when appellant indicated his investigation was complete and he was ready to proceed. It is appellant's apparent belief that once he notified the court on Friday afternoon of his readiness to proceed, requesting an immediate trial, that his trial should have been promptly conducted the following Monday morning.

The extension which followed appellant's motion of March 4, was not a continuance granted upon the court's own motion, but rather a delay which was directly instituted by and attributed to appellant's own motion for continuance. Had appellant not requested a continuance, he would have been tried before the 90 day limitation period had expired. R.C. 2945.72(E), provides that the time of trial may be extended by "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused." (Emphasis added.) The case at bar is just such a situation where trial has been delayed because of a motion made



-5-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 862

or instituted by the accused. Appellant did not ask for a con-
tinuance of a specific and definite duration. Thus, the trial
court could not set appellant's trial for a later date at the
time appellant requested his continuance since the trial court
could not determine when appellant would complete his investiga-
tion. Only after appellant notified the court that he was ready
to proceed could the court establish a definite and certain trial
date.

We hold that the situation presented by the case at bar is
controlled by R.C. 2945.72(E), inasmuch as the 24 day extension
from March 4 to March 28 is a period of _delay_ which is necessi-
tated by a motion made by appellant rather than a continuance
granted on the court's own motion. Consequently, appellant's
reliance on R.C. 2945.72(H) and the cases cited in support
thereof, including our own decision in _Baker_, _supra_, is inappli-
cable to the matter currently before us. Accordingly, the first
assignment of error is without merit and is hereby overruled.

In his second assignment of error, appellant claims that the
trial court erred in overruling appellant's motion _in_ _limine_ and
improperly permitted the introduction of testimony concerning
prior acts of appellant.

The victim's body was covered with multiple scratches and
abrasions which, according to the testimony of a deputy coroner,
were caused by dragging the body through the underbrush. In
addition, there was a z-shaped abrasion on the right rib area
below the breast, and a severe laceration on the head which



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 863

resulted in a subdural hematoma. There was also evidence that
the victim had engaged in sexual activity prior to death. The
coroner stated that death was caused by the victim's multiple
injuries combined with hypothermia resulting from the victim
being exposed to cold temperatures without adequate protection.
Although no specific time of death could be established, the
coroner estimated that the victim died approximately 24 to 48
hours before the body was found.

Several witnesses testified that on October 18, 1982, they
saw appellant with a female companion in the area where the body
was found. Additional witnesses testified that they saw appel-
lant in the area on the afternoon of October 20, 1982. Several
beer cans containing the fingerprints of both appellant and the
victim were found near the body.

The state also offered into evidence the testimony of one
Charles Chancy, a retired Michigan police detective. Chancy tes-
tified that appellant, in 1969, admitted to killing a young woman
in Michigan under circumstances which were significantly similar
to the homicide in the case sub judice. In that case, the par-
tially nude body of a young woman was discovered among the brush
and thickets of an isolated field. The body was covered with
numerous scratches and abrasions and the victim had been severely
beaten about the head. According to Chancy's testimony, appel-
lant stated that he met the girl, purchased some beer, and drove

-7- 156
67



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 864

to the field where he subsequently killed his female companion and dragged her body into the weeds.

Appellant made a pre-trial motion _in limine_ in order to prevent the admission of Chancy's testimony. Appellant also objected to the introduction of the testimony when it was offered at trial. Both the pre-trial motion and the oral motion made at trial were denied by the court, and the testimony was introduced pursuant to R.C. 2945.59.

Chancy's testimony was offered by the state for purpose of determining the identity of the individual responsible for the victim's death. The evidence was admitted pursuant to R.C. 2945.59, the Ohio "similar acts" statute. R.C. 2945.59 reads in its entirety as follows:

> "In any criminal case in which the defend-
> ant's motive or intent, the absence of mis-
> take or accident on his part, or the
> defendant's scheme, plan, or system in
> doing an act is material, any acts of the
> defendant which tend to show his motive or
> intent, the absence of mistake or accident
> on his part, or the defendant's scheme,
> plan, or system in doing the act in ques-
> tion may be proved, whether they are con-
> temporaneous with or prior or subsequent
> thereto, notwithstanding that such proof
> may show or tend to show the commission of
> another crime by the defendant."

As a general rule, "* * * evidence which tends to show that an accused has committed another crime wholly independent of the offense for which he is on trial is * * * inadmissible." State v. Curry (1975), 43 Ohio St. 2d 66, 68, 69. See, also, State v. Hector (1969), 19 Ohio St. 2d 167. Evidence which reflects the accused's propensity or inclination to commit crime is prohibited

-8- 

since "[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime." <u>Hector</u>, <u>supra</u> at 174, 175. Since R.C. 2945.59 acts as an exception to the aforementioned general rule, the statute must be strictly construed against the state. <u>State</u> v. <u>Burson</u> (1974), 38 Ohio St. 2d 157. Thus, evidence of a defendant's prior acts is admissible

> "* * * <u>only</u> when it 'tends to show' one of the matters enumerated in the statute and <u>only</u> when it is relevant to proof of the guilt of the defendant of the offense in question."

<u>Burson</u>, <u>supra</u> at 158.

Although identity is not one of the matters specifically enumerated in R.C. 2945.59, the statute does permit evidence of a defendant's prior acts which reflects the defendant's scheme, plan or system. In <u>Curry</u>, <u>supra</u>, the Supreme Court held that when the identity of the perpetrator of a crime is in question, evidence of a defendant's scheme, plan or system is admissible under R.C. 2945.59.

> "One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes.

<u>Curry</u>, <u>supra</u> at 73. Nevertheless, "[w]here evidence of other acts of the defendant is sought to be introduced for the pur-

-9-  158

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 866

pose of showing his identity, * * * the standard for determining admissibility is strict." Burson, supra at 159.

Before evidence of prior acts may be admitted under R.C. 2945.59, the evidence must be material to an issue at trial. State v. Gardner (1979), 59 Ohio St. 2d 14; State v. Snowden (1976), 49 Ohio App. 2d 7. Thus, evidence of a defendant's scheme, plan or system going to the issue of identity is material only if the question of identity is a material issue of the trial at which the evidence of the prior acts is offered. In the case at bar, it is quite obvious that the identity of the perpetrator of the crime was at issue. Although appellant admitted being in the crime area two days before the estimated date of death of the victim, the identity of the individual who accompanied the victim to the area on or about October 20 and committed the crime was an issue throughout the entire trial. We therefore conclude, that the evidence of the Michigan homicide which appellant admitted to committing was material in that it related to the question of identity in the matter before the trial court.

In addition to being material, evidence of prior acts or conduct must also be relevant before it can be properly admitted into evidence. In order to be relevant to a central issue at trial, evidence of the defendant's prior acts "* * * must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense

-10- 159
-90-

in question." Burson, supra at 159. See, also, Gardner, supra;
Snowden, supra.

Admittedly, the homicide in the case at bar and the prior
Michigan homicide were both committed in a similar setting, under
comparative circumstances, with a common modus operandi. How-
ever, we question the temporal relationship between the two acts.
In Burson, supra, testimony of a prior similar act committed by
the defendant which occurred four years earlier was offered into
evidence for several reasons, including that of identity. The
court, ruling that the evidence was inadmissible for all of the
reasons for which it was offered, stated that the evidence of the
prior act only showed that the defendant was an "intemperate and
violent individual." Although the court did not specifically
rely on the four year interval between the two crimes, we
consider it to be a significant factor in the court's decision.
Evidence of an act which occurred 14 years prior to the present
one should not be admitted if evidence of a prior act which has
only a four year difference has been declared inadmissible. The
state contends that since appellant was incarcerated for 12 of
the 14 years immediately preceding Rose's death, in actuality,
only two years separate the Michigan homicide from the one in the
case at bar. We do not find such argument to be persuasive. In
addition, we question the use of evidence of a prior act which is
offered not by the testimony of an eyewitness to the prior act or
event, but rather through the testimony of an individual who is
recounting the prior act as it was orally related to him by

-11-



appellant.  We therefore hold that the prior act of appellant does not have such a temporal relationship with the act constituting the crime charged that evidence of the prior act discloses that the identity of the perpetrator is the same in each one.  Consequently, evidence concerning the prior act is not relevant to the issue of identity and is therefore inadmissible under R.C. 2945.59.

Assuming _arguendo_ that we found the prior act to be relevant, we feel that when such evidence is considered in conjunction with the cumulative evidence produced at trial, it should still be excluded since its prejudicial effect outweighs its probative value.  Even though evidence is relevant, such may still be precluded if its prejudicial effect in fact outweighs its probative value.  State v. Wilson (1982), 8 Ohio App. 3d 216. Accordingly, appellant's second assignment of error is well taken and sustained, with the cause to be remanded and appellant afforded a new trial.

BETTIS, J., concurs.

KOEHLER, P.J., concurs in judgment only.

Judge J. Warren Bettis of the Common Pleas Court of Columbiana County sitting by assignment in the Twelfth Appellate District.

-12-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 869

FILED

3 AM 15 01

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                    :        CASE NO. CR84-03-0200

     Plaintiff,              :

-vs-                               :

BRADFORD A. GILL,    **FILED In Common Pleas Court**    O P I N I O N
             **BUTLER COUNTY; OHIO**    Pursuant to
                              R.C. 2929.03(F)
     Defendant.        **JUL  3 1984**

**EDWARD G. ROSS, JR.**
**CLERK**

MOSER, J.

       The defendant was indicted for aggravated murder
with specifications contrary to R.C. 2903.01(B). A copy of
the indictment is attached as Exhibit "A".

       The matter was set for trial for June 11, 1984.
The defendant on June 6, 1984 executed a jury waiver in open
court and asked to be tried by a panel of three judges.

       This matter then came before the panel of three
judges on June 11, 1984, at which time the defendant plead
guilty as charged. Pursuant to Criminal Rule 11(C)(3), the
panel heard evidence which consumed about three hours of
time. Following the presentation of evidence the panel
deliberated and thereupon concluded that the defendant was
guilty as charged and as to which he plead guilty. The
decision was announced in open Court.

       Thereupon, this matter was continued until

dge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

380 P930

162

FILED in Common Pleas Court
BUTLER COUNTY, OH!

JUL 8 1984

2.

EDWARD S. ROBB, JR.
CLERK

June 20, 1984, pursuant to Revised Code 2929.03 to hear

evidence in mitigation.

The evidence presented against this defendant

disclosed that on March 24, 1984, the defendant was outside

his home in association with several young children including

some of his own and the victim Kerri Hintermeister, age 11.

The children were playing games which included

"pretend school" in which the defendant played the part of

principle. At one point the defendant was seen whispering

to the victim. A short time subsequent to this time the

defendant entered his garage. Thereafter Kerri Hintermeister

disappeared from the scene.

The defendant reappeared, however Kerri Hinter-

meister did not reappear. Inquiries were made over the

whereabouts of Kerri Hintermeister and even the defendant

questioned the neighbors concerning the victim's disappearance.

The defendant approached one neighbor and

suggested a search party for the purpose of locating Kerri

Hintermeister. Search parties were then organized and the

search started on March 24th, and again continued on the

following day.

On Sunday March 25th, the victims body was

found in the defendant's garage. It was on the inside of a

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

1380 P931

163

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 871

FILED in Common Pleas Court
BUTLER COUNTY, OH

JUL 8 1994

EDWARD S. ROBB, JR.
CLERK

3.

workbench lying on a piece of carpeting and partly concealed by

a cement block and a piece of plastic pipe. The body had

four wounds as follows:

> (1) An apparent knife puncture to the
> chest which perforated the heart.
>
> (2) An apparent knife puncture in the
> stomach area.
>
> (3) A small puncture in the throat
> apparently made with a knife-like instrument.
>
> (4) A three inch cut to the throat
> above the smaller wound in the throat. The
> slicing of the throat severed the trachia.

The cause of death was determined to have been

primarily wound (1) in combination with wound (4).

At the time Kerri Hintermeister's body was

discovered defendant was engaged in a search party with

friends. Someone notified the defendant and his friends

that Kerri Hintermeister had been found. The search party

then returned home, except for defendant who stated he

wanted to inform other "searchers" up ahead who may not have

heard the news. The defendant was told that there were

probably no other search parties in the area. Nevertheless

the defendant persisted and he ventured further into the

wooded area.

The defendant's whereabouts were thereupon

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

380 932

164

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 872

FILED In Common Pleas Court
BUTLER COUNTY    )IO

JUL  3 1984

4.

EDWARD S. ROBB, JR.
CLERK

unknown for five or six hours.  The defendant ended up at

the Ross Bible Chapel, a small church several miles away.

The defendant was a member of the church.  According to the

defendant, after he left the search party, he went into the

woods, sat down, went to sleep (he had not slept the night

before) and when he awoke was confused as to his exact

whereabouts.  He started walking, came out onto Hine Road,

and from there decided to go to the Ross Bible Chapel where

he believed there may still be some worshipers, it being

Sunday evening.  He arrived at the chapel to find no one.

He broke in, used the telephone and called his wife who

along with a friend picked Gill up and took him home.

Shortly after this the defendant was arrested.

Evidence gathered pursuant to a search warrant

included a knife owned by defendant with blood stains on it.

The blood was of the same type as Kerri Hintermeister, being

A-B.  Also a handkerchief was taken from the defendant's

residence which contained bloodstains of the same type as

the victim, as well as containing traces of semen.  The

defendant's blood tye was A.

A few spermatazoa (around a half dozen) were

found within the victim's labia but outside the hymenal ring.

The victim's body was normally clothed with no disarrayment.

udge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

380 - 933

165

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 873

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

JUL 3 1984

5.

There was no semen or fluid in the vagina and there was no

EDWARD S. ROBB, JR.
CLERK

indication of penetration. There were no bruises or wounds

to the body except the four enumerated above.

The defendant's version of the events must be

garnered from his own testimony in open Court as well as the

history he gave to the examining psychologists who testified.

Gill alleged he was in his garage doing some

cleanup work which included cutting up some tangled twine

with his pocket knife. The garage doors were closed but

not locked. On one occasion one of his children kicked open

the pedestrian door for the purpose of bringing some toys

into the garage. The child then left and later Kerri

Hintermeister entered the garage asking for a board to be

used while playing school. The two looked together and

during the process Kerri Hintermeister teased Gill about the

mess in the garage which had taken on the appearance of a

"disaster area" as a result of the storage of multiple house-

hold items.

dge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

At one point when Gill had his back to Kerri

Hintermeister, he felt her jab him in the back of the ribs

with what turned out to be the butt end of a knife. Gill,

playfully, quickly turned around, grabbed Kerri Hintermeister's

380  934 wrist and spun her around and pulled her back up against his

166

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

JUL  3 1984

EDWARD S. ROBB, JR.
CLERK

6.

front and pulled her up off her feet

It was at this time that the knife she was carrying penetrated her heart.  The panel did note that this story would be consistent with the Coroner's testimony that the knife penetrated Kerri's body at a 45 degree angle.

Gill noticed what he did, laid Kerri on a rug, and then in what he described as a sudden release of a combination of panic, fear, and anger, cut Kerri's throat and stabbed her in the stomach.  It was at or about this time Gill ejaculated, wiped off his penis with his handker-chief and also reached with his hands into the pants of Kerri Hintermeister and touched her vaginal area.

The sequence of events revolving around the sexual activity was the most difficult part of the facts to assimilate.  Even Gill's testimony in Court and the version he gave to the psychologist are not consistent.  However, in view of the guilty plea, the Court accepts a version that is consistent with the guilty plea.  If this Court were to accept the "sexual activity" version most favorable to the defendant, we would have to find him not guilty of aggravated murder with specifications and guilty to a lesser charge.

There was no trace of semen on Kerri Hintermeister or on her clothes.  There were apparent semen stains on Gill's

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

380 935

167

FILED in Common Pleas Court
BUTLER COUNTY, O' ˋ

JUL 3 1984

7.

EDWARD S. ROBB, JR.
CLERK

undershorts, but this was not determined by scientific

evidence. The Court merely drew this inference from the

other direct testimony offered.

This law now requires this panel of judges to

determine if the mitigating circumstances presented to us

outweigh the aggravating circumstances in determining if

the death sentence should be imposed.

This Court found the following aggravated

circumstances:

(1) The fact the victim was a child eleven
years of age.

(2) The multiple wounds inflicted upon
the victim, i.e., to the heart, stomach and
throat. Further that while the panel believed
the first wound was to the heart which in and
of itself was fatal, the defendant viciously
cut the throat of the victim and stabbed her
in the stomach while she was yet alive.

(3) The sexual activity of the defendant
towards the victim, albeit it was non violent
and at a minimal, but nevertheless present.

(4) The forceful detention of the
victim.

(5) The attempt to secrete the crime
by meticulously placing the body in a cabinet
and placing a cement block in front of the
body.

(6) The deceit and diversion created by
the defendant when he participated in and
encouraged search parties.

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio



168

FILED IN COMMON PLEAS COURT
BUTLER COUNTY, OHIO

JUL  3 1984

EDWARD S. ROBB, JR.                    8.
CLERK

The Court was also required to determine

mitigating factors pursuant to Revised Code 2929.04(B).

This section of law required the Court to consider:

(1)  The nature and circumstances of the offense;

(2)  The history, character, and background of the offender;

(3)  Whether the victim induced or facilitated the offense;

(4)  Whether it was unlikely the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

(5)  Whether at the time of committing the offense the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of law;

(6)  The youth of the offender;

(7)  The offender's lack of significant history of prior criminal convictions and delinquency adjudication;

(8)  The degree of the offender's participation if he was not a principal participant.

(9)  Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

Pursuant to the above nine categories we found

the following:

(1)  The defendant's youthful age of twenty-seven.

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

380 P932

169

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 877

FILED In Common Pleas Court
BUTLEr 'UNTY, OHIO

JUL 3 1984

EDWARD S. ROBB, JR.
CLERK

9.

(2) There was a total absence of any contact with a criminal justice system either as an adult or juvenile. The panel considered this significant as we virtually never have an adult before us without prior contact with the courts.

(3) The defendant had a number of personality disorders, the totality of which caused him to suffer from a substantial psychological disease and that his actions were in fact a product of this disease.

That, while Gill knew right from wrong, he lacked substantial capacity to conform his conduct to the requirements of the law.

The Court noted with respect to Gill's personality disorders that:

(a) He would only look at another woman's face, believing to look at her body would be "cheating" his wife;

(b) Strove to be loved - he was a "pleaser";

(c) Always gave of himself without expecting anything in return;

(d) Repressed anger at all times;

(e) Would not complain - continually shrugged off his own problems and attended to the problems of others;

(f) Accepted set backs in life without apparent concern.

(g) His behavior was governed more by the needs of others instead of his own.

(h) Hyper religious, using his beliefs to control his normal sexual desires, even to the extent that "sexual daydreaming" was

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

380 938

170

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

JUL 8 1984

EDWARD S. ROBB, JR.          10.
CLERK

believed to be an act of infidelity;

(i)  Dealt with conflicts by yielding to others;

(j)  Developed a disassociative mind, which enabled him to feel better when things were bad, and to block out the unacceptable.

(4)  The defendant had a great love and devotion to his family and children; and devoted an inordinate amount of time to other people's children and their problems.  There was never the slightest suggestion that his behavior with children in the past was anything but appropriate.

(5)  The defendant had an impeccable background with exemplary behavior, (except for the few minutes on March 24, 1984, when he killed Kerri Hintermeister).

Defendant's character and behavior can best be exemplified by paraphrasing many of the witnesses who testified to Gill's character as follows:

(a)  He was a true example of love;

(b)  He was a role model for others;

(c)  He extended himself to others in an unselfish manner;

(d)  He is a person who could gain the confidence and respect of teenagers;

(e)  He was one who built self-esteem in children.

(f)  His good deeds became the rule, rather than the exception.

(g)  He was industrious, but not not socially aggressive;

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

1380 P939

171

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 879

FILED in Common Pleas Court
BUTLER COUNTY, OHIO

JUL 3 1984

EDWARD S. ROBB, JR.          11.
CLERK

(h)  He was a person who not only
said "I love you", but demonstrated it
through his deeds;

(i)  He was a person who always put
others before himself;

(j)  Material things took on no importance
in his life;

(k)  He was a person who had the
ability to reason instead of fight in a
volatile situation.  He had a calming
effect on others;

(l)  He was kind, gentle, and a
mature person;

(m)  A good family man who demonstrated
stability in the face of personal problems;

(n)  As a Sunday school teacher he
administered fair discipline with reason
and was a good and confidential counsellor
to the teenagers in his class.

(6)  The defendant showed remorse and
contrition when he entered a guilty plea to
an offense which could cost him his life.

The Court heard over eight hours of "mitigation"

testimony.  The Court concluded that the foregoing mitigation

facts were overwhelming and outweighed the aggravating

circumstances, therefore mandating that the death sentence

not be imposed.

The Court also noted that Gill's offense was

not one involving premeditation, planning or deliberation.

It was an impulsive, spontaneous act on his part which amounted

dge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

JUL 3 1984

EDWARD S. ROBB, JR.     12.
CLERK

to a momentary aberration of behavior, which was otherwise
exemplary.

 The panel unanimously agreed that the defendant's
total character and background belied the events of March 24,
1984. Unfortunately a five minute aberration of behavior
took the life of Kerri Hintermesiter and destroyed the life
of her family and the life of the Gill family.

 The Court cannot through any punishment meted
out bring Kerri Hintermeister back to the living. However,
this Court has applied the evidence to the law which requires
us to consider the aggravating circumstances as opposed to
the mitigating circumstances and has determined that the
defendant shall spend the rest of his natural life in prison
without consideration for parole until he has served twenty
full years.

_____
Henry J. Bruewer, Judge

_____
William R. Stitsinger, Judge

_____
John R. Moser, Presiding Judge

Judge JOHN R. MOSER
Common Pleas Court
Butler County, Ohio

1 380 P 941

173

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 881

STATE OF OHIO                          :        CASE NO.   CR83-07-0302

Plaintiff **FILED in Common Pleas Court**        STATE OF OHIO
                **BUTLER COUNTY, OHIO**          COUNTY OF BUTLER
vs                                               COURT OF COMMON PLEAS
                        DEC 6 1983
GERALD RAY JOHNSON   **EDWARD S. ROBB, JR.**     JUDGMENT OF CONVICTION ENTRY
        Defendant           **CLERK**

                : : : : : : : : : : : : : : : : : : : : : : : : :

        This 2nd day of December, 1983 the defendant came before the Court

personally and with his counsel, David N. Parker, and the charges, plea and

findings being as set forth in the previous Entry of the Court, which are

expressly included herein by reference,

        Coming now to the imposition of sentence, pursuant to Rule 32(A)(1)

of the Ohio Rules of Criminal Procedure, the Court afforded counsel an opportu-

nity to speak on behalf of the defendant and the Court addressed the defendant

personally and asked him if he wished to make a statement in his own behalf or

present any information in mitigation of punishment, and nothing being said by

defendant as to why sentence should not now be pronounced,

        The Court having thoroughly considered all of the criteria as set

forth in Chapter 2929., Ohio Revised Code,

        IT IS ORDERED that defendant be sentenced to the Columbus Correction-

al Facility at Columbus, Ohio for Life Imprisonment with parole eligibility

after serving twenty (20) years of imprisonment, and pay the costs of

prosecution, as to Count One of the Indictment.

        IT IS FURTHER ORDERED that defendant be sentenced to the Columbus

Correctional Facility at Columbus, Ohio for a minimum term of ten (10) years

nd a maximum term of twenty-five (25) years and pay the costs of prosecution,

as to Count Two of the Indictment. Said sentence is to run consecutively with

the sentence imposed in Count One of the Indictment.

        IT IS FURTHER ORDERED that defendant be sentenced to the Columbus

Correctional Facility at Columbus, Ohio for a minimum term of ten (10) years

and a maximum term of twenty-five (25) years and pay the costs of prosecution,

as to Count Three of the Indictment. Said sentence is to run consecutively

...n the sentences imposed in Count One and Count Two of the Indictment.

        IT IS FURTHER ORDERED that defendant be sentenced to the Columbus

Correctional Facility at Columbus, Ohio for a definite term of one and one-half

(1-1/2) years and pay the costs of prosecution, as to Count Four of the Indictment. Said sentence is to run consecutively with the sentence imposed in Count One, Count Two, and Count Three of the Indictment.

Said defendant is to be given credit for serving one hundred thirty-eight (138) days in the Butler County Jail at Hamilton, Ohio.

E N T E R

MOSER, J.

APPROVED:

JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

- 2 -

175

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 883



IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY, OHIO


STATE OF OHIO                     :

       Plaintiff-Appellee    :    CASE NO. CA84-10-125

  - vs -                          :    MEMORANDUM DECISION
                                    AND
JAMES DONALD PIERCE               :    JUDGMENT ENTRY
                                   3-17-86
      Defendant-Appellant   :


John F. Holcomb, Prosecuting Attorney, Daniel G. Eichel, Assistant
Prosecuting Attorney, and Michael J. Sage, Assistant Prosecuting
Attorney, Butler County Courthouse, Hamilton, Ohio 45012, for
Plaintiff-Appellee.

Randall M. Dana, Ohio Public Defender, and Michael W. Gleespen,
Assistant State Public Defender, 8 East Long Street, 11th Floor,
Columbus, Ohio 43215, for Defendant-Appellant.


PER CURIAM

    This cause came on to be heard upon the appeal, transcript of

the docket, journal entries and original papers from the Court of

Common Pleas of Butler County, Ohio, transcript of proceedings,

briefs and oral arguments of counsel.

    Now, therefore, the assignments of error having been fully

considered are passed upon in conformity with App. R. 12(A) as



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 884

follows:

Late in the evening on December 17, 1983, defendant-appellant, James Donald Pierce, Robert Lewis and Donald Reeder went for a drive in a car purchased by appellant. Reeder was driving the vehicle during this time, and appellant was riding in the back seat. At some point in the evening, appellant told Reeder to pull the car over. Reeder stopped the car and turned off the engine and lights. Appellant then shot Reeder twice in the back of the head.

Reeder's body was discovered on December 27, 1983, lying among some logs off the side of Hamilton-Eaton Road in Milford Township. He had died from the gunshot wounds to the back of his head. When found, the left boot was off Reeder's foot, and the hip pocket of Reeder's pants was torn. There was no money or wallet found on Reeder's body.

Appellant was charged with aggravated murder in violation of R.C. 2903.01(B) with a specification that the murder was committed during an aggravated robbery under R.C. 2929.04(A)(7), and with a firearm specification under R.C. 2929.71. On September 10, 1984, a trial by jury was commenced. On September 26, 1984, the jury returned its verdict that appellant was guilty of aggravated murder and also guilty as to both specifications.

On September 28, 1984, the penalty phase of the proceedings began. After deliberations, the jury made its recommendation of life imprisonment with parole eligibility after thirty years. On October 11, 1984, the trial court entered judgment, accepting the

- 2 -

177

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 885

Butler 84-10-125

jury's recommendation as to the sentence for the aggravated murder and making that sentence consecutive with another five to twenty-five year sentence for a prior aggravated burglary conviction, and further imposing a sentence of three years consecutive actual incarceration for the firearm specification.

From this judgment, appellant timely brings this appeal naming eleven assignments of error.

Appellant's first assignment of error is as follows:

> "THE TRIAL COURT ERRED IN DENYING THE DE-
> FENDANT'S MOTION FOR A MISTRIAL AND IN
> DISSUADING THE STATE FROM JOINING THE DE-
> FENDANT'S MOTION FOR A MISTRIAL WHERE THE
> VENIRE WAS TAINTED BY COMMENTS OF THE DE-
> CEDENT'S FAMILY AND THE FAILURE TO INDI-
> VIDUALLY VOIR DIRE VENIREMEN REGARDING
> THESE COMMENTS."

Appellant argues under this assignment of error that the jury panel was tainted due to some of the potential jurors having over-heard a discussion by the decedent's family concerning appellant's guilt and his prior criminal record. Therefore, appellant claims he was denied his constitutional right to a fair trial before impartial jurors, and his motion for a mistrial should have been granted.

The record reveals that during voir dire, and in the presence of the entire jury panel, Ms. Jenkins, a potential juror, stated the following:

> "MR. CREHAN: Do you feel that in any
> way that it would...it would affect your
> ability to hear the evidence in this case?
>
> "MS. JENKINS: Umhum.

- 3 -

178

"MR. CREHAN:  You do?  In what way?

"MS. JENKINS:  Well, I heard the de-
ceased's family talking out there and I
think that's already affected me a little
bit...so I wouldn't be very fair...about
it.  Like you say, he's got a record, he's
had a record before.  I don't think I
could block that out of my mind.

"MR. CREHAN:  Do you feel that you could
not sit as a fair and impartial juror in
this case?

"MS. JENKINS:  Umhum.

"BY THE COURT:  Let me...let me...Mr.
Crehan.  Miss Jenkins, I understand that
you were...that you heard dece...the de-
cedent's family members talking?

"MS. JENKINS:  Umhum.

"BY THE COURT:  Where was that?

"MR. CREHAN:  Your Honor...may I ap-
proach the bench, sir?"  (Emphasis added.)

Thereafter, the trial court excused the rest of the jury pan-

el, and questioned Jenkins individually as to what she had over-

heard.  Jenkins stated that she had overheard the conversation in

the women's restroom, which consisted of the decedent's family

saying that appellant was guilty of Reeder's murder, and that ap-

pellant had previously been involved in a robbery with a sixteen-

year-old juvenile.

After questioning Jenkins, the court severely admonished the

decedent's family and warned them to refrain from entering into

any conversations about the case even amongst themselves since the

courthouse did not have physical facilities to isolate the jurors

- 4 -

179

from the rest of the general public. The trial court then excused
Jenkins as a potential juror. It was at this point that defense
counsel moved for a mistrial, which the trial court denied.

After this occurred, the trial court had the remaining jurors
brought back into the courtroom and asked the entire panel as a
group if anyone else had overheard conversations by the decedent's
family concerning the appellant. Thereupon, three other jurors
revealed they had overheard the same conversation and the court
again had the remaining jurors leave the courtroom.

The trial court then ordered the Reeder family to vacate the
courtroom and questioned the remaining three jurors as to what
they had overheard. One potential juror stated that there were
four of them in the restroom, and they did not know the person who
was discussing appellant. Shortly thereafter, upon request of the
prosecutor, the trial court excluded all three of the potential
jurors who had overheard the conversation.

The remaining potential jurors were then brought back into
the courtroom and defense counsel had the opportunity to question
each juror individually as to whether they had heard any conversa-
tions from anyone regarding the case. Defense counsel did, in
fact, pose this question to several of the jurors, all of whom
responded in the negative.

The prosecutor at one point during this incident joined in
the defense attorney's request for a mistrial, but later withdrew
this request. Appellant alleges that the request was later with-

- 5 -

180

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 888

drawn by the prosecutor for the sole reason that it would take a
substantial length of time to impanel a new jury if a mistrial
were declared. It appears from the record, however, that the pro-
secutor joined in the mistrial motion out of frustration with the
entire situation, i.e., the statements made by decedent's family
and the inadequate facilities within the courthouse which pre-
vented segregating the potential jurors from the general public,[1]
and not from a true belief that the entire venire had been
tainted. Nevertheless, for whatever reason the prosecutor chose
to withdraw his motion, the fact remains that it was withdrawn
and the trial court denied appellant's request for a mistrial.
Therefore, what is left for us to determine is whether the record
shows it was error for the trial court to deny the motion for a
mistrial.

Appellant contends that he was prejudiced by Jenkin's state-
ment before the entire panel of prospective jurors that appellant
had a prior criminal record. However, defense counsel, himself,
had already informed the jurors that appellant had been previously
convicted of complicity to an aggravated robbery, and breaking and
entering. Further, Jenkins' very words show that she was repeat-

---

[1] The record makes it quite clear that the facilities in the But-
ler County Court House are so inadequate that it is extremely dif-
ficult to conduct a trial when the accused is charged with aggra-
vated murder. Thus, although we find no error in the case sub
judice, it is recommended that appropriate action be taken to cor-
rect this condition before there is an incident which results in a
mistrial.

- 6 -



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 889

Butler CA84-10-125

ing what defense counsel had previously stated, and not what she had learned outside of the courtroom. Therefore, we find no merit to this argument.

Although a new trial may be granted due to the misconduct of the jury where the substantial rights of the defendant have been materially affected, there must be evidence that the verdict was influenced as a result of the misconduct. State v. Hipkins (1982), 69 Ohio St. 2d 80. We are unable to find in the record any evidence showing that the verdict was influenced due to the conversations of decedent's family which were overheard by the four prospective jurors, all of whom were properly dismissed from the case. Therefore we must affirm the refusal of the trial court to grant a mistrial. State v. Higgins (1942), 70 Ohio App. 383, motion for leave to appeal overruled (1942), 139 Ohio St. 636.

We also find that during voir dire, the trial court took adequate measures to insure the fairness and impartiality of each of the jurors in this case. In a voir dire proceeding, it is only reversible error if it is shown that a trial court has clearly abused its discretion in determining impartiality of prospective jurors. See State v. Williams (1983), 6 Ohio St. 3d 281, certiorari denied (1983), 464 U.S. 1020. Defense counsel was afforded ample opportunity by the trial court to question each juror as to whether he or she overheard any remarks by the family of the decedent, and there is nothing in the record to show that any of the remaining jurors had heard anything, or that they were not fair

- 7 -

182

and impartial.  Therefore, we find no abuse of discretion by the trial court.

Accordingly, appellant's first assignment of error is over-ruled.

Appellant's second assignment of error is as follows:

>"THE COURT'S INSTRUCTION REGARDING WHAT
>CONSTITUTED THE AGGRAVATING CIRCUMSTANCE
>VIOLATED APPELLANT'S RIGHTS TO DUE PRO-
>CESS, EQUAL PROTECTION, AND FAIR AND IM-
>PARTIAL JURY."

Appellant was charged with the specification provided for under R.C. 2929.04(A)(7), which states in part:

>"The offense was committed while the
>offender was committing, attempting to
>commit, or fleeing immediately after
>committing or attempting to commit ***
>aggravated robbery *** and *** the of-
>fender was the principal offender in
>- the commission of the aggravated murder
>***."

During the mitigation phase of the trial, the court below in-structed the jury as follows:

>"What are aggravating circumstances?
>In this particular case, the aggravating
>circumstance is precisely set out in the
>specifications contained in your guilty
>verdict form.  It is as follows:  That
>the defendant James Donald Pierce, as
>the principal offender committed the of-
>fense of aggravated murder of Donald
>Reeder while the defendant was commit-
>ting or attempting to commit the offense
>of aggravated robbery.  In other words,
>it is the aggravated robbery, combined
>with the homicide which is the aggrava-
>ted circumstance in this case."  (Empha-
>sis added.)

Appellant argues that this instruction was prejudicial error

- 8 -

183

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 891

in that it imposed consideration of a nonstatutory aggravating
circumstance upon the jury -- the murder itself, and thereby dou-
bled the number of aggravating specifications that the jury was
told to consider.  The record reveals that there was no objection
made in the court below so as to preserve as error this instruc-
tion made to the jury, and therefore we find that it has been
waived.  Crim. R. 30(A); State v. Williams (1977), 51 Ohio St. 2d
112, vacated in part on other grounds (1978), 438 U.S. 911.

Accordingly, appellant's second assignment of error is over-
ruled.

Appellant's third assignment of error is as follows:

>"THE TRIAL COURT ABUSED ITS DISCRETION
>BY UNREASONABLY RESTRICTING THE VOIR DIRE
>EXAMINATIONS OF PROSPECTIVE JURORS."

Appellant contends that the trial court refused to allow de-
fense counsel to fully inquire into various beliefs of the pro-
spective jurors.  However, the record before us fails to support
this contention.

It is well established in Ohio that the scope of examination
of prospective jurors is a matter within the sound discretion of
the trial court, and such judgment can only be reversed when an
abuse of discretion is shown.  State v. Jenkins (1984), 15 Ohio
St. 3d 164, certiorari denied (1985), ___ U.S. ___, 105 S.Ct.
3514.  The Supreme Court has also defined a standard which we must
follow in order to determine whether such an abuse of discretion
exists in the trial court's conduct of voir dire.  It is as

- 9 -

184

<u>Butler CA84-10-125</u>

follows:

> "In order to have an 'abuse' in reach-
> ing such determination, the result must
> be so palpably and grossly violative of
> fact and logic that it evidences not the
> exercise of will but perversity of will,
> not the exercise of judgment but defiance
> thereof, not the exercise of reason but
> rather of passion or bias."

See <u>Jenkins</u>, <u>supra</u>, at 222.

Appellant appears to be particularly aggrieved by not being allowed to question prospective jurors as to other specific murder cases which occurred recently in the area. However, the trial court did allow defense counsel to question prospective jurors in a general vein as to whether any publicity they had seen or heard regarding recent murder cases would affect their deliberations in appellant's case. Therefore, we find no abuse of discretion in the court's restricting defense counsel's questions in this regard.

Further, the record indicates that the trial court allowed defense counsel sufficient latitude in its examination of prospective jurors in regard to their attitudes on the death penalty, and in most instances complained of, defense counsel was able to elicit the responses he desired from the jurors merely by rephrasing his questions. Therefore, we find no abuse of discretion by the trial court in its determination of the conduct of <u>voir dire</u>. See <u>Williams</u>, 6 Ohio St. 3d 281, <u>supra</u>.

Accordingly, appellant's third assignment of error is overruled.

- 10 -

185

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 893

Appellant's fourth assignment of error is as follows:

> "THE PROSECUTOR'S SUBSTANTIAL AND EXTEN-
> SIVE MISCONDUCT VIOLATED APPELLANT'S
> RIGHTS TO DUE PROCESS, EQUAL PROTECTION,
> A FAIR TRIAL, AND AGAINST CRUEL AND UN-
> USUAL PUNISHMENT."

Appellant first argues under this assignment of error that the prosecutor in this case attempted to improperly influence the jury and prejudiced appellant when, during his opening statement during the guilt phase of the trial, the prosecutor stated:

> "*** the evidence will show positively be-
> yond any doubt that he did kill him, that
> he did rob him during the commission of
> that killing, and in justice and fairness
> deserves only to die." (Emphasis added.)

There was no objection made at trial as to this statement, and therefore error has not been preserved for this court. State v. Watson (1971), 28 Ohio St. 2d 15. We also note there was a lack of objection made to questions asked of appellant by the prosecutor concerning appellant's neglect of his wife and family and appellant's avoidance of a certain restaurant since it was owned by a police officer. Therefore, we find that appellant has also waived any claim of error he may have had concerning these questions.

Appellant argues the prosecutor should not have been allowed to question appellant as to his knowledge that Reeder was a police informant, and whether appellant's knowledge of this status precipitated the murder since there was no evidence in the record that Reeder was an informant. However, we do not find that the ques-

- 11 -

186

tions asked by the prosecutor were prejudicial error. Appellant admitted at trial that he killed Reeder, which left before the jury only the issue of whether or not he did so during the course of robbery. Therefore, whether or not appellant knew that Reeder was an informant would not bear upon the fact of whether appellant killed Reeder during the course of a robbery.

Finally, appellant argues under this assignment of error that the prosecutor also committed prejudicial misconduct by failing to disclose to defense counsel statements made by appellant to police officials after a discovery request had been made by appellant pursuant to Crim. R. 16(B)(1)(a). The trial court ruled that the statements were not incriminating, and therefore did not instruct the jury to disregard the questions. We agree that the questions and appellant's answers were not incriminating, and therefore find no prejudicial error occurred when the trial court refused to strike them from the record.

Accordingly, appellant's fourth assignment of error is over-ruled.

Appellant's fifth assignment of error is as follows:

> "THE PROSECUTOR'S AND TRIAL COURT'S COM-
> MENTS TO PROSPECTIVE JURORS DURING VOIR
> DIRE AND TO THE JURY DURING CLOSING AR-
> GUMENT AT THE SENTENCING PHASE THAT THE
> VERDICT AS TO A LIFE OR DEATH SENTENCE IS
> MERELY A 'RECOMMENDATION' MISSTATED THE
> LAW AND DIMINISHED THE JURY'S RESPONSI-
> BILITY IN VIOLATION OF THE FIFTH, EIGHTH
> AND FOURTEENTH AMENDMENTS TO THE UNITED
> STATES CONSTITUTION AND ARTICLE I, SEC-
> TIONS 2, 9 AND 16 OF THE OHIO CONSTITU-
> TION."

- 12 -

187

Appellant contends that since the jury was informed that a determination by the jury that a death sentence was warranted would not be binding upon the trial court, the jury's sense of responsibility in determining a verdict was diminished. The U. S. Supreme Court has recently held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." Caldwell v. Mississippi (1985), ___ U.S. ___, 105 S.Ct. 2633, 2639.

However, the case sub judice does not present the situation which the Court was concerned with in Caldwell. First, we did not find any statement in the record which would cause a jury to feel its responsibilies were diminished, as even when the jury's sentencing option of the death penalty was referred to as a recommendation, it was not done in such a manner as to encourage the jury to pass to the court the responsibility of sentencing. Further, appellant was not given the death penalty, but rather was sentenced to life in prison with parole eligibility after thirty years, which shows the jury fully accepted its responsibility by recommending to the court a sentence which the court did not have the power to review.

Finally, appellant argues that the jury's two options as to life sentences, either twenty or thirty years in prison without parole, were referred to repeatedly as recommendations to the

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 896

court, when in accordance with R.C. 2929.03(D)(2), a life sentence
verdict is binding upon the court.  However, immediately prior to
commencing their sentencing deliberations, the trial court, in
referring to the two life-sentence options, properly instructed
the jury as follows:

> "*** if you make one of these recommenda-
> tions it will be binding upon the Court
> and the Court will impose the specific
> life sentence you recommend."

Therefore, we do not find the jury was misled or their sense of
responsibility was diminished in respect to their consideration of
the life sentences.

Accordingly, appellant's fifth assignment of error is over-
ruled.

Appellant's sixth assignment of error is as follows:

> "THE COURT'S FAILURE TO ADMIT MITIGATING
> EVIDENCE VIOLATED APPELLANT'S RIGHTS TO
> DUE PROCESS, EQUAL PROTECTION, AND AGAINST
> CRUEL AND UNUSUAL PUNISHMENT."

Appellant contends that the trial court's exclusion from evi-
dence his mother's hospitalization for mental depression prior to
the commission of the murder, and the victim's criminal record, as
mitigating evidence during the sentencing phase of the trial
caused the jury to sentence appellant to thirty years in prison
without parole rather than twenty years without parole.

R.C. 2929.04(C) provides that a defendant shall be given
great latitude in presenting evidence of mitigating factors at the
sentencing phase of the trial.  However, sentencers are only re-

- 14 -

189

quired to consider all mitigating evidence which is relevant.  See
Jenkins, supra, at 189.  As stated by the United States Supreme
Court,

> "[n]othing in this opinion limits the tra-
> ditional authority of a court to exclude,
> as irrelevant, evidence not bearing on the
> defendant's character, prior record, or
> the circumstances of his offense."

Lockett v. Ohio (1978), 438 U.S. 586 at 604, fn. 12, 98 S.Ct.
2954, 2965.

The trial court ruled, upon defense counsel's attempt to in-
troduce into evidence Reeder's criminal record, that although the
trial court would not admit into evidence the criminal record, it
would not preclude the appellant himself from making reference to
the criminal record of the victim to which appellant may have had
knowledge.  The trial court went on to state:

> "*** so if indeed the defendant's record
> made any difference to Pierce and he had
> knowledge of it, he could certainly make
> reference to it."

We find this ruling did not prejudice appellant in any way.
Obviously, the mere fact that Reeder had a criminal record would
not be relevant in showing why appellant feared Reeder, unless
appellant had knowledge of the record.

As to the trial court's exclusion of the hospitalization
of appellant's mother, we find that even if such exclusion were
error, it was harmless beyond a reasonable doubt, as there is
no reasonable possibility that this evidence would have per-
suaded the jury to reduce the punishment it imposed upon appellant

- 15 -

190

Butler CA84-10-125

from life with parole eligibility after thirty years, to life with

parole eligibility after twenty years.  See State v. Bayless

(1976), 48 Ohio St. 2d 73, vacated in part on other grounds

(1978), 438 U.S. 911.

Accordingly, appellant's sixth assignment of error is over-

ruled.

Appellant's seventh assignment of error is as follows:

> "THE COURT'S INSTRUCTION PROHIBITING CON-
> SIDERATION OF MERCY IN THE SENTENCING DE-
> CISION VIOLATED APPELLANT'S RIGHTS TO DUE
> PROCESS, EQUAL PROTECTION AND AGAINST
> CRUEL AND UNUSUAL PUNISHMENT."

Appellant argues under this assignment of error that the jury

was improperly prohibited from considering mercy as a component of

their sentencing decision due to the following instruction given

to the trial court:

> "Now remember, you must not be influ-
> enced in your deliberations by any con-
> sideration of sympathy or prejudice."

This same argument was considered by the Ohio Supreme Court

in Jenkins.  In that case, the court found a similar instruction

to be both appropriate and necessary and stated:

> "The instruction to the jury in the pen-
> alty phase of a capital prosecution to ex-
> clude consideration of bias, sympathy or
> prejudice is intended to insure that the
> sentencing decision is based upon a con-
> sideration of the reviewable guidelines
> fixed by statute as opposed to the indi-
> vidual juror's personal biases or sympa-
> thies."

See Jenkins, supra, at 192.

- 16 -

|9|

Therefore, based upon the reasoning of the Ohio Supreme Court in Jenkins, we find appellant's argument to be without merit.

Accordingly, appellant's seventh assignment of error is over-ruled.

Appellant's eighth and ninth assignments of error are as follows:

> ASSIGNMENT OF ERROR NO. 8:
>
> "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY INSTRUCTING THE JURY PRIOR TO THEIR MITIGATION PHASE DE-LIBERATIONS TO CONSIDER THE SEVEN STATU-TORY FACTORS SET OUT IN R.C. SECTION 2929.04(B)."
>
> ASSIGNMENT OF ERROR NO. 9:
>
> "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY PERMITTING THE PROSECUTOR IN HIS MITIGATION PHASE CLOS-ING TO ARGUE STATUTORY MITIGATING FACTORS NOT RAISED BY THE DEFENSE."

Appellant argues under this eighth assignment of error that when the trial court instructed the jury that there were seven statutory mitigating factors which could be considered, where no evidence has been introduced to support a finding of all seven factors, it permitted the jury to consider the lack of proof on these facts as an aggravating circumstance.

This court recently considered the same issue in the case of State v. Russell (Dec. 30, 1985), Clermont App. No. CA84-01-001, unreported, in which we stated that this type of instruction on the statutory factors enumerated in R.C. 2929.04 is mandated by the language of the statute itself. See Russell, supra, at 15.

- 17 -

192

Therefore, in accordance with our decision in Russell, we find appellant's eighth assignment of error to be without merit and is overruled.

We also considered the issue raised in appellant's ninth assignment of error in Russell. Appellant contends under this claim of error that by allowing the prosecutor to comment on statutory mitigating factors not raised by the defense during the sentencing phase of the trial, the court in effect allowed the prosecutor to introduce nonstatutory aggravating factors which may have caused the jury to sentence appellant to life with parole after thirty years of imprisonment instead of life with parole after twenty years. However, we stated in Russell that since the trial court is statutorily required to instruct the jury on all seven mitigating factors,

> "[t]he state should therefore be entitled
> to point out to the jury the absence of
> evidence on any of the factors not argued
> by an accused. Rather than emphasizing
> the lack of such factors, we believe that
> this would tend to stress to the jury the
> importance of concentrating on those spe-
> cific factors which an accused elects to
> argue in favor of mitigation."

See Russell, supra, at 16.

Therefore, for the reasons set forth in Russell, we find appellant's ninth assignment of error to be without merit and the same is overruled.

Appellant's tenth assignment of error is as follows:

> "THE SIXTH AND FOURTEENTH AMENDMENTS TO
> THE UNITED STATES CONSTITUTION PROHIBIT

- 18 -

193

> 'DEATH QUALIFICATION' OF PROSPECTIVE
> JURORS PRIOR TO THE GUILT-INNOCENCE DE-
> TERMINATION BECAUSE THE PROCESS OF CULL-
> ING THE PANEL OF ALL PROSPECTIVE JURORS
> OPPOSED TO THE DEATH PENALTY CREATES A
> CONVICTION-PRONE JURY, THEREBY DENYING
> THE CAPITALLY CHARGED DEFENDANT HIS
> RIGHTS TO A TRIAL BY AN IMPARTIAL JURY
> DRAWN FROM A FAIR CROSS-SECTION OF THE
> COMMUNITY AND TO EQUAL PROTECTION OF THE
> LAW."

This court, in Russell, and the Supreme Court of Ohio, in Jenkins, have both addressed this issue, and have held that a defendant's right to a jury drawn from a representative cross-section of the community does not include the right to be tried by jurors who are unable or unwilling to follow the law and instructions of a trial judge in a capital case. Therefore, for the reasons set forth in Russell and Jenkins, we find that "death qualifications" of a jury does not deny a capital defendant his right to trial by a fair and impartial jury.

Appellant argues that although the Supreme Court of Ohio has already ruled that "death qualification" of a jury does not deny a defendant his right to trial by a fair and impartial jury, the Ohio Supreme Court has not ruled whether a defendant is denied his right to equal protection when he is tried by a "death qualified" jury. As previously stated by the Ohio Supreme Court, "[t]he essential purpose of the jury in our legal system is to determine the facts according to law fairly and impartially ***." See Bayless, supra at 89. Thus, it is an ultimate goal of all criminal trials to be conducted by a fair and impartial jury. We have al-

- 19 -

194

ready ruled that death qualification does not render a jury unfair or partial, and therefore, we find appellant was tried by the same type of jury ultimately sought for all criminal trials, and as such was not denied his right to equal protection by being tried by a "death qualified" jury. See Bayless, supra.

Accordingly, appellant's tenth assignment of error is over-ruled.

Appellant's eleventh assignment of error is as follows:

> "DEFENSE COUNSEL'S FAILURE TO PRESERVE
> ERROR VIOLATED APPELLANT'S RIGHTS TO A
> FAIR TRIAL AND TO THE EFFECTIVE ASSIS-
> TANCE OF COUNSEL."

Appellant argues under this assignment of error that if the failure of defense counsel to object at trial to (1) the prosecu-tor's references to the jury's sentencing determination as a re-commendation; (2) the trial court's mitigation phase jury instruc-tion prohibiting the consideration of mercy; (3) the prosecutor's and the court's statements referring to statutory mitigating fac-tors not raised by the defense; and (4) the trial court's decision to death-qualify the jury, waived these issues for review on ap-peal, then defense counsel's actions constituted ineffective as-sistance of counsel.

Throughout this opinion, we have reviewed each of the alleged errors listed above, and have not found any prejudicial error to exist. As a result, we cannot find defense counsel's performance to be so deficient that appellant was denied effective assistance

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 903

of counsel and a fair trial.[2]  Strickland v. Washington (1984),
466 U.S. 668.

Accordingly, appellant's eleventh assignment of error is
overruled.

The assignments of error properly before this court having
been ruled upon as heretofore set forth, it is the order of this
court that the judgment or final order herein appealed from be,
and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the court
of Common Pleas of Butler County, Ohio, for execution upon this
judgment.

Costs to be taxed in compliance with App. R. 24.

And the court being of the opinion that there were reason-
able grounds for this appeal, allows no penalty.

It is further ordered that a certified copy of this Memoran-
dum Decision and Judgment Entry shall constitute the mandate pur-
suant to App. R. 27.

To all of which the appellant, by his counsel, excepts.


KOEHLER, P.J., HENDRICKSON and CASTLE, JJ., concur.

Castle, J., retired, of the Twelfth Appellate District, was as-
signed to active duty pursuant to Section 6(C), Article IV,
Constitution.

---

[2]  It is apparent from the record that defense counsel did an ex-
cellent job as he was able to convince the jury that appellant
should not have the death penalty regardless of the fact that ap-
pellant shot decedent in the back of the head at close range under
circumstances which gave rise to the inference that robbery was
the motive.

- 21 -

196

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 904

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing

Appellant's Brief was forwarded by ordinary U.S. Mail to Mr. John

Holcomb, Prosecuting Attorney, Butler County Courthouse,

Hamilton, OH  45011, this _17th_ day of October, 1986.

By: _Timothy R. Evans_
      Timothy R. Evans

197

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 905