## INDEX TO EXHIBITS

A   - TRIAL COURT OPINION

B   - TRIAL COURT OPINION, STATE V. VAN HOOK

C   - TRIAL COURT OPINION, STATE V. STUMPF

D   - TRIAL COURT OPINION, STATE V. FORNEY

E   - PETITIONER'S JURY WAIVER

F   - PETITIONER'S AFFIDAVIT

G   - SPECIFICATION ELECTION

H   - PETITIONER'S AFFIDAVIT

I   - AFFIDAVIT OF MICHAEL SHANKS, ESQ.

J   - AFFIDAVIT OF JOHN GARRETSON, ESQ.

K   - ENTRY DESIGNATING THREE JUDGE PANEL

L   - FORECLOSURE PETITION

M   - JUDGMENT ENTRY AND DECREE OF FORECLOSURE

N   - AFFIDAVIT OF PETITIONER

O   - AFFIDAVIT OF HARRY REINHART, ESQ.

P   - AFFIDAVIT OF HARRY REINHART, ESQ.

Q   - AFFIDAVIT OF VON CLARK DAVIS

R   - AFFIDAVIT OF ALLUSTER TIPTON

S   - AFFIDAVIT OF ELLIOT DAVIS

T   - AFFIDAVIT OF CHARLES TIPTON

U   - AFFIDAVIT OF MILTON FLOWERS

V   - AFFIDAVIT OF SHERRY DAVIS

W   - MOTION FOR FURTHER PSYCHOLOGICAL EVALUATIONS

X   - AFFIDAVIT OF JOHN LEE

Y    - AFFIDAVIT OF DR. JEFFREY SMALLDON

Z    - AFFIDAVIT OF DR. NANCY SCHMIDTGOESSLING

AA    - AFFIDAVIT OF MICHAEL SHANKS, ESQ.

BB    - AFFIDAVT OF JOHN GARRETSON, ESQ.

CC    - LETTER OF ROBERT BEARD

DD    - POST-CONVICTION PETITION, CASE NUMBER 21655

EE    - AFFIDAVIT OF CAROL DAVIS SMITH

EXHIBIT A

IN THE COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO
FILED

STATE OF OHIO,

'89 AUG 10 AM 9 20

        Plaintiff,

CLERK OF COURT CASE NO.  CR83-12-0614
EDWARD S. ROBB, JR.

-vs-

:

OPINION

VON CLARK DAVIS,

:

        Defendant.

:

FILED In Common Pleas Court
BUTLER COUNTY, OHIO

AUG 10 1989

BRUEWER, J.

EDWARD S. ROBB, JR.
CLERK

This 4th day of August, 1989, this cause came on to be heard before a three judge panel consisting of Judge Henry J. Bruewer, William R. Stitsinger, and John R. Moser, on the remand of the Ohio Supreme Court, reported as **State** v. **Davis** (1988), 38 Ohio St. 3d 361, 373 "for a resentencing hearing solely for the purpose of determining whether the remaining aggravating circumstance outweighs the mitigating factors presented by (Defendant), beyond a reasonable doubt."  The Court having unanimously found that the aggravating circumstance, of which the defendant was found guilty, outweighs the mitigating factors presented beyond a reasonable doubt, this opinion is made pursuant to Section 2929.03 (F), Ohio Revised Code

The aggravating circumstance in this case is that, prior to the aggravated murder at bar, the Defendant had been convicted of the offense of Second Degree Murder, an essential element of which was the purposeful killing of another, to-wit, the prior purposeful killing of his wife Ernestine Davis in 1970.

We find the following to be mitigating factors:

1) The Defendant adjusted well to prison routine and during his stay in prison, obtained a high school GED and an associate

-2-

degree in Business Administration, and studied for and worked as a dental technician.

2) There has always been a good family relationship between the Defendant and all members of his family, including his stepfather.

3) Since his release on parole, he has maintaned at least partial employment.

4) As testified by the psychologist, Defendant has a compulsory personality disorder or explosive disorder which may have contributed to the violence in this case.

FILED In Common Pleas Court
BUTLER COUNTY, OHIO
AUG 10 1989
EDWARD S. ROBB, JR.
CLERK

All of these mitigating factors are considered to be under Section 2929.04 (B) (7), Ohio Revised Code.

We find that this aggravating circumstance outweighs the mitigating factors found by the panel by proof beyond a reasonable doubt, because the factors we find in mitigation are of slight weight. The Defendant's positive prison record, good family relationship, study and accomplishments in prison and employment while on parole were overwhelmingly counterbalanced and outweighed by the aggravating circumstance of his prior conviction for purposeful killing, demonstrating rather convincingly that a prior life sentence was no deterrent at all for this Defendant.

Defendant's explosive personality disorder, which we found may have contributed to the violence in the case at bar, may explain it but in no way excuses it, and is not of such a nature as would have any great mitigating effect. Nothing in the case indicates any verbal or physical confrontation with the victim prior to the killing which would either provoke Defendant or arouse in him a "heat of passion." Defendant's personality disorder perhaps explains



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1904

-3-

now he could commit unprovoked homicidal violence in the case at
bar; however, this disorder did not affect the substantial capacity
of the Defendant to appreciate the criminality of the crime he
engaged in with prior calculation and design, or his substantial
capacity to refrain from committing the offense, and indeed is
such as would be had of numerous normal persons where the death sentence
would not be mitigated. In sum, we have a very angry man who set
out to kill his victim, having previously been convicted of a prior
purposeful killing of another and having found no deterrence from
committing the present offense in that prior conviction.

As we are required by Section 2929.04 (B), Ohio Revised Code,
to consider the nature and circumstances of the offense, the history,
character and background of the offender, and all of the factors in
mitigation of the sentence of death presented herein, we find the
aggravating circumstance, the Defendant's previous conviction of
the prior purposeful killing of his wife in 1970, outweighs the
mitigating circumstances beyond a reasonable doubt.

We, therefore, sentence the defendant to death by electrocution
on December 4, 1989.

MOSER and STITSINGER, JJ. concur.

BRUEWER, J.

STITSINGER, J.

MOSER, J.

EXHIBIT B

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

OHIO                          :
    Plaintiff                 :    CASE No. B-851389
                              :
    -vs-                      :    O P I N I O N
                              :    3 JUDGE PANEL
VANHOOK                       :
    Defendant                 :    JUDGE ROBERT S. KRAFT,
                              :    JUDGE GILBERT BETTMAN, and
                              :    JUDGE DONALD L. SCHOTT
                              :
                              :    8-8-85

BACKGROUND

This case originated with the filing of an indictment on
1985, against the defendant, Robert Vanhook, charging him
(1) tuwo murder in Count One (1) of the indictment and
his with one specification of aggravating circumstances as
One (1) thus qualifying this case as a possible death
was under the laws of the State of Ohio. In addition the
was charged with aggravated robbery in Count (2).

This opinion deals only with the aggravated murder charge
and the specification pertaining to said murder. It is prepared and
will be filed with the First District Court of Appeals and with the
Supreme Court of Ohio in compliance with the requirements of O.R.C.
§2929.03(F).

On April 23, 1985, the defendant was present in court with
his attorneys and was initially arraigned. The arraignment
proceeding as well as all further matters in this case were handled
by Judge Robert S. Kraft of the Hamilton County Common Pleas Court.

S ince the date of arraignment the docket sheet reflects an
extensive process of trial preparation. It also reflects a plea of
not guilty by reason of insanity and the evaluations of professionals
appointed by the Court. Numerous motions were filed before trial.
They were heard and ruled upon during the course of the pretrial
preparation. All rulings on said motions are reflected either on the
docket sheet of the case, directly on the face of the motion or on
the record.

- 2 -

JUL 0 1990

## GUILT OR INNOCENCE TRIAL

The guilt or innocence trial of the defendant, Robert Vanhook, commenced on July 15, 1985, after the defendant waived his right to a jury trial and elected to be tried by a three judge panel. A special venire of seventy-five (75) each had already been drawn and summoned and early excuse requests had been attended to on July 1985. Approximately one hundred twenty remaining prospective jurors were on hand on the day set for trial when the defendant elected to be tried by a three judge panel.

On July 15, 1985, the State commenced its case by producing evidence on the charge of aggravated murder as set forth in the First Count of the indictment, evidence as to the specification of aggravating circumstances as to the first count, and evidence on the charges of aggravated robbery as charged in the second count.

During the course of the guilt or innocence proceeding, the State of Ohio and the defense presented witnesses. The thrust of the State's case was designed to prove the elements of the aggravated

- 3 -

murder Count as well as the elements of the specification alleged. The thrust of the defense case was to present the defense of not guilty by reason of insanity.

From the evidence adduced there was absolutely no doubt that Robert Vanhook was the sole perpetrator of the murder. In a voluntary taped interview while in police custody he admitted killing David Self and he acknowledged that no one else was present. The disputed question the three judge panel had to determine was whether or not he committed or attempted to commit the aggravated robbery alleged and whether or not he was insane at the time of the commission of the homicide.

After a review of the evidence including the exhibits and the arguments of counsel as they pertain to both the plea of not guilty and the plea of not guilty by reason of insanity and, upon due deliberation, the three judge panel did, on July 29, 1985, find the defendant guilty of aggravated murder as charged in the First Count

- 4 -

dictment, and also found the defendant guilty of the
...tion contained in the indictment as it pertained to the
...unt.

The aggravating circumstance which the defendant, Robert
was found guilty of committing was that as principal and
petrator he committed said aggravated murder:

(1) While committing aggravated robbery.

SENTENCING PROCEEDINGS

On July 31, 1985, after a two day break in the proceedings
is necessary in order to have prepared and filed both a mental
tion and a presentence report, as requested by the defendant,
and stage of this matter, hereinafter referred to as the
ing or Mitigating Proceedings commenced, pursuant to O.R.C.
2(D).

It should be noted that the three Judges were not
ered for their deliberations on guilt or innocence or during
a day break in the proceedings.

- 5 -

At the sentencing or mitigation proceeding the Court
reversed the traditional trial procedure ordering defendant to open
first and present his evidence first, while allowing the State to
have two closing arguments. This partial reversal of procedure did
not, in any way, alter the burden of proof placed upon the State, as
the law requires. The three judge panel heard additional testimony,
an unsworn statement by defendant and the arguments of respective
counsel relative to the factors in favor of and in mitigation of the
sentence of death. The Court then recessed the case until August 8,
1985.

Upon due deliberation, the three judge panel on August 8,
1985, found, unanimously, that the State of Ohio proved by proof
beyond a reasonable doubt that the aggravating circumstance which the
defendant Robert Vanhook was found guilty of committing was suffi-
cient to outweigh the mitigating factors in this case. Consequently
the three judge panel decided that the sentence of death be imposed
as mandated by the provisions of O.R.C. §2929.03(D)(2).

- 6 -

## IMPOSITION OF SENTENCE PROCEEDINGS

On August 8, 1985, the three judge panel proceeded to pass sentence pursuant to O.R.C. §2929.03(D)(3). On that same date, the three judge panel filed its written opinion in the case as required by O.R.C. §2929.03(F).

This three judge panel found by proof beyond a reasonable doubt, upon a review of the relevant evidence in both proceedings, the testimony, exhibits, statement of the defendant, not under oath, arguments of respective counsel, along with the presentence report and mental examination report requested by defendant, that the aggravating circumstance which the defendant, Robert VanHook, was found guilty of committing did outweigh the mitigating factors in the case and, therefore, on August 8, 1985, this three judge panel imposed the sentence of death upon the defendant, Robert VanHook, ordering said execution to take place on December 19, 1985.

- 7 -

## OPINION

The provisions of O.R.C. §2929.03(F) now require this three judge panel to state in a separate opinion its specific findings as to the existence of any of the mitigating factors specifically enumerated in O.R.C. §2929.04(B) or the existence of any other mitigating factors, and also require the three judge panel to state reasons why the aggravating circumstances that the offender was found guilty of committing were sufficient to outweigh the mitigating factors, since that is what the three judge panel has in fact found by imposing the death penalty. In other words the three judge panel must put in writing the justification for their sentence.

In meeting their responsibility under the statute, the three judge panel reviewed all mitigating factors described in O.R.C. §2929.04(B) as well as any other mitigating factors raised by the defendant and now indicates what conclusions were reached from the evidence as to each. Those possible mitigating factors specifically set forth in the statute are as follows:

- 8 -

(1) Whether the victim of the offense induced or facili-
tated it;

(2) Whether it is unlikely that the offense would have
be committed, but for the fact that the offender was under duress,
sion, or strong provocation;

(3) Whether, at the time of committing the offense, the
fender, because of a mental disease or defect, lacked substantial
pacity to appreciate the criminality of his conduct or to conform
s conduct to the requirements of the law;

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior
minal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but
the principal offender, the degree of the offender's participa-
on in the offense and the degree of the offender's participation in
acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of
ther the offender should be sentenced to death, and

- 9 -

(8) The nature and circumstances of the offense, the
history, character and background of the offender.

- The three judge panel will first, however, review the
aggravating circumstances which the defendant has been found guilty
of committing and will indicate the reasons for their conclusions.

AGGRAVATING CIRCUMSTANCES

The aggravating circumstance that the defendant, Robert
Vanhook, was found guilty of committing was that the aggravated
murder was committed while Robert Vanhook was committing aggravated
robbery, and the said Robert Vanhook was the principal offender in
the commission of the aggravated murder at the time the aggravated
robbery was committed.

In deliberating upon their decision in this case as
required by O.R.C. §2929.03(D)(3), the three judge panel evaluated
all of the relevant evidence raised at both proceedings, the
testimony, other evidence, the unsworn statement of the defendant and
the arguments of respective counsel along with the presentence report
and mental examination report requested by defendant.

- 10 -

The principles of law which guided this three judge panel contained in written jury instructions which would have been ided to a jury during the two proceedings. The evidence and mony was tested by the three judge panel from the viewpoint of liability and relevancy to the existence of an aggravating cumstance along with its qualitative and quantitative measure. crime of aggravated robbery was deemed by the General Assembly of State of Ohio to be among the most serious when a general vision of the Criminal Code was made on January 1, 1974. This e separately stated in a first degree felony. In O.R.C. 19.04, the General Assembly mandated the imposition of the death lity for an aggravated murder committed during commission of this nse.

In the guilt or innocence proceeding, at which defendant not testify and in its sentencing proceeding, in which the defen- t did make an unsworn statement along with statements of defense counsel in argument, there was never a denial in any respect that defendant was the sole and principal perpetrator of the offense

- 11 -

charged in the first count of the indictment. A complete review of the evidence pertaining to count one and the specification of the aggravating circumstance as to count one reveals to this three judge panel beyond any doubt that the murder was committed by the defendant and by he alone.

Furthermore, the three judge panel concludes that the defendant's version of the events in his taped confession establishes beyond any doubt that his intentions were crystal clear on February 16, 1985, when he made the acquaintance of David Self in the subway Bar. His intention from beginning to end was to rob the victim at some point in their evening's activities. The evidence also establishes beyond a reasonable doubt that the defendant choked the victim into unconsciousness, and snatched the victim for valuables; finding none, he became enraged. Furthermore, it is beyond any doubt that at some point in time the defendant went to the kitchen, took a knife from a drawer and commenced mutilating the victim's body in a

- 12 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1911

it bizarre way. This part of his conduct that evening would have been considered irrational. However, everything else he did that evening would have to be considered completely rational.

His modus operandi was clear. Since the age of fifteen he had been accosting and robbing homosexuals and he was intending to do the same thing again.

His efforts at concealment in smudging his bloody fingerprints and stuffing the knife handle first into the stomach wound were quite lucid acts and his visit to his friend Dr. Moy for food and money were the acts of a totally rational person, his departure from the city and the discarding of stolen necklaces and a leather jacket, were obvious rational acts designed to avoid detection.

It was, therefore, the three judge panel's conclusion upon a full and complete review of all of the relevant evidence that there was proof beyond a reasonable doubt that the defendant committed an aggravated robbery; and that he killed David Self while committing that aggravated robbery. There was also a plea of not guilty by

- 13 -

reason of insanity entered and on this issue evidence was presented.

The defendant called upon Dr. Emmett George Cooper and the State called upon Drs. Nancy Schmitzgoessing and Teresito Alguisola.

Their testimony collectively established that the defendant had a personality disorder which was neither a mental disease nor mental illness and that the defendant could and did distinguish between right and wrong on the night in question. Furthermore, they concluded that much of what the defendant did on the night in question confused their own conclusions that he knew what he was doing and could have desisted from doing what he did. However, there was evidence to suggest that while under voluntary intoxication it was possible that the defendant lost touch with reality for some unspecified period of time while he acted out conduct he claimed was part of his military training and the influence of either his Viet Nam connections or movies he had seen about the Viet Nam War.

- 14 -

The three judge panel considered this version of the way of the event provided to the three doctors by the defendant posed this version with the one provided in the defendant's confession and recognized discrepancies sufficient to cause the judge panel to conclude that the defendant was attempting to a story which might cause the three judge panel to conclude he was not in control of his faculties at the time it was committed heinous act. Considering the legal definition of the plea of guilty by reason of insanity and weighing the more credible nce against the requirement of the law, the three judge panel luded that the defendant failed to meet his burden of proof ssary to establish insanity at the time of the crime and efore rejected this defense.

## MITIGATING FACTORS

The three judge panel will now review all possible tigating factors indicating whether or not they were present and if what, if any, consideration the Court gave to them. Those listed O.R.C. §2929.04(B) are as follows:

- 15 -

(1) "Whether the victim of the offense induced or facili-tated it." The three judge panel finds absolutely no evidence whatsoever to suggest that David Sall in any respect induced or facilitated the offense. This factor was not present.

(2) "Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation." Again, the three judge panel finds absolutely no evidence that would suggest that the defendant was under duress, coercion or strong provocation. This factor was not present.

(t) "Whereafter, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." The three judge panel finds absolutely no evidence that would suggest that the defendant suffered from a mental disease or defect.

- 16 -

(4) "The youth of the offender." The three judge panel finds in this case that there was absolutely no evidence to suggest that any other person was involved in the aggravated robbery and murder of David Self, other than the defendant, Robert Vanhook.

Therefore, this factor was not present.

In summary, based upon the relevant evidence presented, possible mitigating factors number one, two, three, four, five and six, described in O.R.C. §2929.04(B) were not present, and could not be the subject of any consideration by this three judge panel as it relates to mitigation of the penalty of death.

The three judge panel will now review the remaining possible mitigating factors enumerated in O.R.C. Section 2929.04(B).

(7) "Any other factors that are relevant to the issue of whether the offender should be sentenced to death," and

(8) "The nature and circumstances of the offense, the history, character and background of the offender."

- 18 -

---

(4) "The youth of the offender." The three judge panel finds that the defendant was born January 14, 1960, and at the time this trial was 25 years of age. There is absolutely no evidence suggest that he was a youthful offender or that his age was a factor that should be taken into account in mitigation of the issue of death. This factor was not present.

(5) "The offender's lack of a significant history of prior criminal convictions and delinquent adjudications." The record in this case, including the exhibits offered by the defense and the testimony which the three judge panel has considered indicates that defendant, Robert Vanhook, had numerous contacts with the law as a juvenile and as an adult extending over a period of 14 ve. Therefore the three judge panel would be precluded from ring the defendant consideration pursuant to mitigating factor ber five.

(6) "If the offender was a participant in the offense but t the principal offender was a participant in the offense but the offense and the degree of the offender's participation in the

- 17 -

The history, character and background of the defendant and y other factors that are relevant to the issue or whether the nder should be sentenced to death" are closely interrelated and l be reviewed as interrelated.

The nature and circumstances of this offense appear clear the three judge panel. Therefore, it will not be the panel's ation to reiterate in this opinion each and every sordid detail the afternoon and early evening hours preceding the death of David lf. The testimony of police officers, criminalists and deputy oner who came upon the scene in the apartment of David Self, at 5 Madison Rd., Apt. 16, Hamilton County, Ohio, revealed a gruesome nario. It is quite clear that David Self was found on the floor his apartment, blood splattered everywhere, with innumerable knife unds about his body. In a gaping stomach wound was the knife that l used to bring about his death.

In the words of the defendant, on a taped statement to the lice, the only living witness to the incident, he related what ppened that evening. The victim, David Self, kneeled in front of

- 19 -

the defendant to perform an oral sexual act. They were in close proximity and the defendant grabbed and choked the victim into unconsciousness. Finding no money on the victim increased the defendant. He got a paring knife from the kitchen and in an act of rage cut his throat four or five times and stuck the knife into the victim's skull behind the ears repeatedly to "scramble" the brains; then he cut a gaping wound in the victim's stomach, stuck the knife into the stomach cavity and attempted to cut the heart, without complete success. The defendant's version of the events has differed from that which he gave in his taped confession and that given to the three doctors. The true circumstances of the offense must be gleaned from the testimony of the State's witnesses who described the scene, the victim's condition, the condition of the apartment which was viewed by the three judge panel and the actions of the defendant immediately before and immediately after the attack.

- 20 -

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1915

The history, character and background of the defendant, art Vanhook, are very closely interrelated with the remaining tigating factors to be discussed and will be interspersed with a scussion of these specific factors argued in mitigation.

The three judge panel have specifically reviewed the idence offered regarding the background of the defendant. It seems necessary in this opinion to repeat all of the pertinent factors of e background that may have impacted upon his conduct. The three idge panel is well aware that all of the evidence will be a part of e record that will be reviewed by the appellate courts and herefore will simply summarize what it deems to be some pertinent spects of this defendant's history and background.

While the three judge panel recognizes that all of the records in this case indeed indicate the defendant had a very tragic nd unfortunate upbringing, with no love or parental guidance, with continual and excessive use of alcohol and other drugs and with constant negative reinforcement of his personality, the three judge panel is also satisfied that the records, testimony and evidence,

- 21 -

reflect conclusively that the defendant has never suffered from a mental disease or defect which would have prevented the defendant from distinguishing right from wrong or would have prevented his from conforming his conduct to the requirements of the law. In other words the defendant has never suffered from any psychosis. Instead, he has been diagnosed over many years as having a borderline personality disorder which manifests itself in all types of antisocial behavior. This disorder is not a product of a mental illness or disease, so says the overwhelming weight of the professional testimony.

It is true, that the defendant was afflicted with defi- ciencies of personality which suggested that he was destined to get into trouble. However, those same personality characteristics which allowed him to live and work within a community and society in a peaceful fashion when he chose to, compels this Court to a conclusion that the defendant functioned as a rational human being during the period of time surrounding the criminal activity of which he has been convicted.

- 22 -

This is not to say that the defendant was a totally normal
being. Time and time again professionals diagnosed him as
having problems, of being a problem, of showing little motivation.
manifested a positivity which at times could be deceiving. But
throughout his life, his true personality reflected a desire to do
thing whatever he wished, regardless of the consequences.

In considering whether or not the defendant, at the time of
committing the offense because of a mental disease or defect, lacked
substantial capacity to appreciate the criminality of his conduct, or
conform his conduct to the requirements of law, the three judge
panel reviewed the expert testimony of Drs. Emmett Cooper, Nancy
Schmidtgoessling and Yarmoila Argulois and the mental examination
reports of Dr. Donna E. Winter. Their collective and lengthy
testimony and reports offer credible and compelling testimony in the
area with respect to the sanity of the defendant. They all
characterized the defendant as not having a mental disease or illness
but not being psychotic. They all found the defendant to have

- 23 -

- 24 -

personality problems and classified him in the lexicon of the
profession as being a borderline personality which was not due to any
mental illness or disease.

As an example, Dr. Nancy Schmidtgoessling, a clinical
psychologist, found that the actions of Mr. Vanhook were classical
for a borderline personality. She pointed out that the defendant has
admitted what he had done, and has had complete and total recall of
the incident even to the extent of saying that he did intend to rob
his victim and that he got angry because he did not find any money on
the victim. He also described in such detail his efforts at covering
up his presence and his escape, clearly showing complete touch with
reality at all times. Dr. Schmidtgoessling in describing the
defendant as having a borderline personality disorder stated,
however, that he was not mentally ill even though she did see
disturbance of functioning in some of his conduct. She acknowledged
that while Mr. Vanhook may have been out of control at the time of
his attack on David Self, and his ability to refrain from the act may
have been seriously impaired at that moment, that inability to

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1917

was not the result of mental illness or mental disease or defect. It was the result of being angry, one of the visuics of a borderline personality disorder and this anger triggered by failure to find money and by the enhancement of unary ingestion of alcohol and other drugs of abuse.

Dr. Terzento Alguisohs, a psychiatrist, said that he felt exhibit had a character disorder but that he was aware of what doing; was aware of the intentions of his actions; that he did is a mental disease or defect, he did have the capacity to know consequences of his conduct and if there were another person in ca at the time he would have been able to refrain.

Dr. Emmett Cooper, a psychologist, called by the defendant & much the same conclusion concerning the nature of the 'ant's problems. His medical conclusion was that the defendant t suffering from a mental defect or illness at the time of the which would have prevented his from conforming his conduct to he or from knowing the difference between right or wrong. If, he concluded that the defendant did have a borderline

- 25 -

personality and because of a voluntary ingestion of alcohol and or drugs suffered a transient psychotic episode during which he was not in touch with reality.

The three judge panel concluded that there was no evidence that the offender in this case, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. In arriving at this conclusion it should be noted that the three judge panel recognized and considered the testimony of Dr. Emmett Cooper who was called as a defense expert witness. Upon careful examination of Dr. Cooper's testimony this three judge panel is satisfied that when rendering his opinion in this case, he was careful to walk a very fine professional line. He was willing to acknowledge a similar diagnosis as his other professional colleague, that is a borderline personality disorder, but sought to go further in suggesting that the ingestion of alcohol and or other drugs of abuse caused the defendant to lose touch with reality. Although he didn't verbalize it in

- 26 -

exactly this fashion, he was most to suggest that a form of temporary insanity situation occurred. The three judge panel chose not to accept this theory to explain the defendant's bizarre conduct.

The three judge panel now moves to a discussion and examination of any other factor that may be relevant to the issue of whether the defendant should be spared from a sentence of death. The intelligence of the defendant, Robert Vanhook, has never been questioned by either side in this case. It is readily apparent that the defendant functioned in a normal range for his age. It was clear that his earlier years were chaotic and he suffered from a significant degree of neglect and abuse. But this fact alone certainly cannot excuse his conduct. The defendant from about the age of fifteen has been involved in a sordid life style and has been a parasite on society preying on homosexuals for a livelihood. It is also recognized that the defendant is drug and alcohol dependent.

The three judge panel recognize that the death penalty is the most severe penalty that can be imposed by man against man and that it should only be imposed after a most careful and meticulous

- 27 -

review of the facts and law have taken place. It is believed that such an evaluation of the facts and law in this case had been undertaken by this three judge panel in reaching their decision.

CONCLUSION

The sole issue which confronted the three judge panel is stated as follows:

DID THE STATE OF OHIO PROVE BEYOND A REASONABLE DOUBT THAT THE AGGRAVATING CIRCUMSTANCE WHICH THE DEFENDANT, ROBERT VANHOOK, WAS FOUND GUILTY OF COMMITTING OUTWEIGH THE FACTORS IN MITIGATION OF THE IMPOSITION OF THE SENTENCE OF DEATH?

In this regard all of the statutory mitigating circumstances and all other possible mitigating factors raised by counsel have now been reviewed and discussed. The same has been done with the aggravating circumstance.

Upon full, careful and complete scrutiny of all the mitigating factors set forth in the statute or called to the three judge panel's attention by defense counsel in any manner and after considering fully the aggravating circumstance which exist and has been proven beyond a reasonable doubt, the three judge panel

- 28 -

concludes that the aggravating circumstance does outweigh all the mitigating factors advanced by defendant beyond a reasonable doubt as required by O.R.C. [2929.03(D)(3)].

For all the above stated reasons the three judge panel did impose a sentence of death.

Respectfully submitted,

ROBERT P. KRAFT, JUDGE

GILBERT BETTMAN, JUDGE

DONALD L. SCHOTT, JUDGE

- 29 -

EXHIBIT C

0002-10

COMMON PLEAS COURT

IN THE COURT OF COMMON PLEAS OF GUERNSEY COUNTY, OHIO

84 SEP 24 PM D 33

CLERK OF COURTS
GUERNSEY CO. OHIO

STATE OF OHIO

Plaintiff

-vs-

JOHN DAVID STUMPF

Defendant

RECEIVED 60.
SEP 28 1984
SUPREME COURT OF OHIO
JAMES Wm KELLY

CASE NO. 8654

SEPARATE OPINION REQUIRED BY
SECTION 2929.03, THE REVISED
CODE OF OHIO

Pursuant to Section 2929.03 F of the Revised Code of Ohio, the Court being a panel of three judges does hereby state in a Separate Opinion as follows:

A.  EXISTENCE OF ANY MITIGATING FACTORS SET FORTH IN DIVISION B OF SECTION 2929.04.

The Court has considered in accordance with Revised Code of Ohio, Section 2929.04 the following mitigating factors:

1.  The nature and circumstances of the offense.
2.  The history, character and background of the offender.  (See Defendant's Mitigation Exhibit No. 4)

We find that the Defendant has established by a preponderance of the evidence the following mitigating factors:

1.  The youth of the offender - age 23.
2.  That although the Defendant had been found guilty of certain offenses in his home community, the Defendant lacked significant history of prior criminal conviction and delinquency adjudications

We further find that the Defendant has not established by a preponderance of the evidence Mitigating Factors 1, 2, 3 and 6 as set forth in 2929.04 B.

B.  EXISTENCE OF ANY OTHER MITIGATING FACTORS.

The Defendant presented the following factors which the Court has considered:

1.  Evidence of character.
2.  Use of alcohol and drugs.
3.  Employment history.
4.  Emotional stability.
5.  Family relationships.
6.  Educational background and native intelligence.  (See Defendant's Mitigation Exhibit No. 3)
7.  Unverified and unattested questionnaires on John David Stumpf. (See Defendant's Mitigation Exhibit No. 6).  The alleged preparer name appears in response to Question No. 30 with no indication it is or is intended as a signature.  The questionnaries were prepared by person or persons unknown.

I hereby certify this to be a true copy of the original filed in this office on
_____ 24 1984
_____
Clerk of Courts, Guernsey Co., Ohio

8. Summary results of questionnaires. (See Defendant's Mitigation Exhibit No. 5)

9. Leadership qualities.

Factors 1 through 9 were not established as mitigating factors by a preponderance of the evidence.

C. AGGRAVATING CIRCUMSTANCES THE DEFENDANT WAS FOUND GUILTY OF COMMITTING.

The offense was committed for the purpose of escaping detection, apprehension, trial or punishment for other offenses committed by the Defendant to-wit: Aggravated Robbery and Attempted Aggravated Murder.

D. REASONS WHY THE AGGRAVATING CIRCUMSTANCES THE OFFENDER WAS FOUND GUILTY OF COMMITTING WERE SUFFICIENT TO OUTWEIGH THE MITIGATING FACTORS:

1. The Court finds beyond a reasonable doubt that the Defendant was the principal offender in count one of the indictment.

2. The methodical manner in which the Defendant and his companion entered the house of the victims and assumed control of the victims. Examples:

   a. Wiping of fingerprints from the telephone.

   b. The dialogue of the Defendant with his companion. (See attached Transcript A)

   c. The initiative taken by the Defendant in the course of that dialogue leading up to and directing the victims into the bedroom.

   d. Continual holding both victims at gunpoint by the Defendant.

   e. The Defendant shooting the male victim at close range between the eyes.

   f. The Defendant firing a second shot into the head of the male victim.

   g. The Defendant and his companion engaging in dialogue in the proximity of the male victim followed by four shots, the bullets of which were found in the head and body of Mary Jane Stout.

3. Failure of the Defendant and his companion to render assistance to the victims.

4. Defendant and his companion fleeing immediately from the scene with the victims' automobile and personal property including firearms and ammunition.

5. The Defendant actively participated in the sale of guns stolen from the home of the victims.

6. The Course of conduct of the Defendant both before and after the commission of the offense in the travel through the country with a quantity of beer and guns.

-2-

7.  The Defendant's companion firing a gun into a passing vehicle in route.

8.  The Defendant made no effort to disassociate himself from his companions.

9.  The direct evidence of a gang operation of robbery, assault and other crimes.

September 24, 1984

JOHN E. HENDERSON, JUDGE

RAYMOND C. RICE, JUDGE

J. WARREN BETTIS, JUDGE

-3-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1923

EXHIBIT D

IN THE COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff, | ) | CASE NO.: 82-04-0443(A) |
| -v- | ) | OPINION |
| RICARDO ANGELO FORNEY, | ) | |
| Defendant. | ) | |

- - -

This opinion is filed pursuant to the requirements of R.C. 2929.03(F).

On October 7, 1982, pursuant to R.C. 2923(D)(1), the Panel conducted a hearing relative to sentencing concern-ing the aggravating circumstances the Defendant was found guilty of committing and the mitigating factors set forth in R.C. 2929.04, and further, received and considered the evidence presented at trial, the pre-sentence investigation report, reports of mental examinations made, as well as statements of the Defendant and counsel.

The Panel finds beyond a reasonable doubt the follow-ing aggravating circumstances:

1. The Defendant shot the victim, Pearl Woods, intentionally and purposely caused her death while the Defendant was committing or attempting to commit an aggravated robbery;

2. The Defendant was the principal offender in the

16 PAGE 268

2

commission of the aggravated murder.

The Panel finds the following mitigating factors:

1. There was no prior calculation and design to kill the victim;

2. While the Defendant purposely killed the victim, he acted upon instantaneous deliberation motivated by fear;

3. The Defendant, while having been previously convicted of aggravated robbery, lacked a significant history of criminal convictions or delinquency adjudications.

Upon considering and weighing the aggravating circumstances proved beyond a reasonable doubt, the mitigating factors, the nature and circumstances of the offense, the history, character and background of the Defendant, all of which bear upon the question of whether or not the offender should be sentenced to death, the Court cannot find unanimously that the aggravating circumstances, which were proven beyond a reasonable doubt, were sufficient to outweigh the mitigating factors, and hence, the Defendant could not be sentenced to death.

Accordingly, the sentence set forth in the Judgment Entry filed herein was imposed.

_John W. Reece_
JUDGE JOHN W. REECE

_Theodore R. Price_
JUDGE THEODORE R. PRICE

_____

cc: Pros. Michael Carroll
    Atty. Thomas Henretta

EXHIBIT E

STATE OF OHIO : CASE NO. CR83-12-0614

            Plaintiff : IN THE COURT OF COMMON PLEAS
                      STATE OF OHIO, BUTLER COUNTY

vs.           FILED In Common Pleas Court
              BUTLER COUNTY, OHIO

VON CLARK DAVIS          JURY WAIVER AND ELECTION OF
              MAY 8    THREE-JUDGE PANEL
           Defendant 1984:

       EDWARD S. ROBB, JR.

       I, Von Clark Davis, defendant in the above cause, appearing in open

court this 8th day of May, 1984, with my attorneys, Michael D. Shanks and John A.

Garretson, do hereby voluntarily waive my right to trial by jury and elect to be

tried by a court to be composed of three judges, consisting of Judges Henry J.

Bruewer, William R. Stitsinger, and John R. Moser, all the same being the

elected judges of the General Division of the Court of Common Pleas of Butler

County who are engaged in the trial of criminal cases, pursuant to Ohio Revised

Code Section 2945.06.

       I am waiving said trial by jury, and making this election to be tried

by a court composed of three judges, with full knowledge of my right under the

Consitution of the United States and of Ohio to a trial by a jury consisting

of twelve jurors, whose verdict must be unanimous; with full knowledge of the

consequences of such waiver and election under the laws of the State of Ohio;

and without any compulsion, undue influence, promises or inducements of any

kind made to me by anyone.

       I further state that I have received the advice and counsel of my

attorneys, with which I am satisfied, and being fully advised by them do hereby

make this waiver and election of my own free will and accord.

                              _____
                               VON CLARK DAVIS

WITNESSES:

_____
MICHAEL D. SHANKS
Attorney for Defendant

_____
JOHN A. GARRETSON
Attorney for Defendant

       This jury waiver and election to be tried by a three-judge panel is

hereby accepted and entered upon the journal of this Court.

                           E N T E R

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

BUTLER COUNTY
COURTHOUSE
P. O. BOX 515
HAMILTON, OHIO 45012

                           _____
                           BRUEWER, J.

J.328 F909

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,            :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.            :


EXHIBIT F

AFFIDAVIT OF VON CLARK DAVIS

STATE OF OHIO,

COUNTY OF SCIOTO, SS:

    I, Von Clark Davis, being first duly sworn according to law, state the following:

    1)  I am the Defendant-Petitioner in the above-captioned case.

    2)  That on May 8, 1984, I appeared in the Butler County Common Pleas Court.  The purpose of this appearance was to waive my trial by jury.

    3)  During this hearing, the trial court told to me that I could have my capital case tried to twelve jurors or a three judge panel.

    4)  While explaining the two choices, the trial court informed me that the jury would have to be "convinced" of my guilt.  By contrast, the trial court stated that the three judge panel would have to find my guilt "beyond a reasonable doubt."

5)  The information the trial court gave me on May 8, 1984, formed a part of my decision to elect to be tried by a three judge panel rather than a jury.

Further Affiant saith naught.

_Von Clark Davis_
VON CLARK DAVIS

Sworn to and subscribed in my presence this _17_ day of September, 1993.

_____
NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

EXHIBIT G

STATE OF OHIO                              :        CASE NO.  CR83-12-0614

Plaintiff  Filed in Common Pleas Court      STATE OF OHIO
           BUTLER COUNTY, OHIO              COUNTY OF BUTLER
vs                                          COURT OF COMMON PLEAS

VON CLARK DAVIS      MAY 4 1984      :      WAIVER AND ELECTION

Defendant      EDWARD S. ROBB, JR.
     : : : : : : : : : : CLERK : : : : : : : : : : : :

        Pursuant to 2929.022 of the Ohio Revised Code, the defendant elects to

have the trial judge determine the existence of the aggravated specification

contained in the Indictment and hereby knowingly, intelligently and voluntarily

waives his right to have a jury determine beyond a reasonable doubt the

existence of the aggravated specification as contained in the Indictment.

                                        _____
                                        VON CLARK DAVIS
                                        Defendant

                                        _____
                                        MICHAEL D. SHANKS
                                        Attorney for Defendant
                                        315 South Monument Avenue
                                        Hamilton, Ohio  45011

                                        _____
                                        JOHN A. GARRETSON
                                        Attorney for Defendant
                                        118 South Second Street
                                        Hamilton, Ohio  45011

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,            :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.            :

## EXHIBIT H

## AFFIDAVIT OF VON CLARK DAVIS

STATE OF OHIO,

COUNTY OF SCIOTO, SS:

    I, Von Clark Davis, being first duly sworn according to law, state the following:

    1)  I am the Defendant-Petitioner in the above-captioned case.

    2)  I was charged with one count of Aggravated Murder.  This count carried a capital specification, a prior purposeful murder, pursuant to O.R.C. 2929.04(A)(5).  I was also charged with Having a Weapon Under Disability in violation of O.R.C. 2923.13.

    3)  On May 4, 1984, I elected to have the prior murder specification determined by a judge pursuant to O.R.C. 2929.022.  I made this decision because I did not want the jury to hear about my prior murder during the guilt phase of my capital trial.

4)  I also wanted my weapon under disability charge to be tried separately.  Accordingly, my attorneys filed a Motion to Sever that count.

5)  On May 8, 1984, the trial court overruled that motion.  With the trial court's decision I knew the jury would hear about my prior murder.

6)  At this point I felt the jury would not be able to separate my prior murder from the current capital charge.  As a result, I had no choice but to waive my right to trial by jury.

7)  Had the trial court severed the charges, I would not have waived my trial by jury.

Further Affiant saith naught.


*Von Clark Davis*
_____
VON CLARK DAVIS

Sworn to and subscribed in my presence this 17 day of September, 1993.


_____
NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,               :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.               :

## EXHIBIT I

### AFFIDAVIT OF MICHAEL SHANKS, ESQ.

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Michael Shanks, being first duly sworn according to law, state the following:

    1)  I am an attorney licensed to practice law in the State of Ohio.

    2)  John Garretson and I represented Petitioner Davis at his capital trial and on resentencing in the above-captioned case.

    3)  Petitioner Davis was capitally charged in a two count indictment. The first count charged aggravated murder and carried one death penalty specification: Ohio Rev. Code Ann. Section 2929.04(A)(5), a prior purposeful murder. The second count of the indictment charged Petitioner with having a weapon under disability pursuant to O.R.C. 2923.13.

    4)  My co-counsel and I discussed with Petitioner the ramifications of having the jury exposed to his prior murder through his O.R.C. 2929.04(A)(5) specification. Based on this discussion, on May 4, 1984, Petitioner elected under O.R.C. 2929.022 to have his capital specification determined by the trial court.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1932

5) Mr. Garretson and I also discussed with Petitioner Davis the fact that if the having a weapon under disability charge was not severed from his capital charge, the jury could still hear evidence concerning his prior murder.

6) As a result of these discussions, Mr. Garretson and I filed a Motion to Sever the weapon under disability charge.

7) The trial court subsequently denied that motion.

8) After this ruling, Mr. Garretson and I advised Petitioner that the jury would be exposed to his prior murder charge. This exposure would be very prejudicial to any jury and would prevent a fair guilt determination of his capital charge.

9) We told Petitioner that we felt the trial court left us no option and we advised him that he should waive his trial by jury. Our advice rested ~~solely~~ MAINLY on the trial court's failure to sever.

10) On May 8, 1984, Petitioner accepted our advice and waived his right to trial by jury.

11) Had the trial court granted our Motion to Sever, I would not have advised Petitioner to waive his right to a jury trial. I would have tried his capital case to a jury.

Further Affiant saith naught.

_____
MICHAEL SHANKS

Sworn to and subscribed in my presence this 6th day of ~~September~~ October, 1993.

_____
NOTARY PUBLIC

TERESA L. BRADFORD
NOTARY PUBLIC
STATE OF OHIO
MY COMMISSION
EXPIRES NOV. 22, 1996

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,               :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.               :

EXHIBIT J

AFFIDAVIT OF JOHN GARRETSON, ESQ.

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, John Garretson, being first duly sworn according to law, state the
following:

    1)  I am an attorney licensed to practice law in the State of Ohio.

    2)  Michael Shanks and I represented Petitioner Davis at his capital
trial and on resentencing in the above-captioned case.

    3)  Petitioner Davis was capitally charged in a two count indictment.
The first count charged aggravated murder and carried one death penalty
specification:  Ohio Rev. Code Ann. Section 2929.04(A)(5), a prior purposeful
murder.  The second count of the indictment charged Petitioner with having a
weapon under disability pursuant to O.R.C. 2923.13.

    4)  My co-counsel and I discussed with Petitioner the ramifications of
having the jury exposed to his prior murder through his O.R.C. 2929.04(A)(5)
specification.  Based on this discussion, on May 4, 1984, Petitioner elected
under O.R.C. 2929.022 to have his capital specification determined by the
trial court.

5) Mr. Shanks and I also discussed with Petitioner Davis the fact that if the having a weapon under disability charge was not severed from his capital charge, the jury could still hear evidence concerning his prior murder.

6) As a result of these discussions, Mr. Shanks and I filed a Motion to Sever the weapon under disability charge.

7) The trial court subsequently denied that motion.

8) After this ruling, Mr. Shanks and I advised Petitioner that the jury would be exposed to his murder charge. This exposure would be very prejudicial to any jury and would prevent a fair guilt determination of his capital charge.

9) We told Petitioner that we felt the trial court left us no option and we advised him that he should waive his trial by jury. Our advice rested *PRIMARILY* ~~solely~~ on the trial court's failure to sever.

10) On May 8, 1984, Petitioner accepted our advice and waived his right to trial by jury.

11) Had the trial court granted our Motion to Sever, I would not have advised Petitioner to waive his right to a jury trial. I would have tried his capital case to a jury.

Further Affiant saith naught.

_John A. Garretson_
JOHN GARRETSON

Sworn to and subscribed in my presence this **6th** day of September, 1993.

_Judith C. Roush_
NOTARY PUBLIC

JUDITH C. ROUSH
Notary Public, State of Ohio
My Commission Expires Nov. 14, 1995

EXHIBIT K

STATE OF OHIO                    :          CASE NO.  CR83-12-0614
                                 FILED in Common Pleas Court
          Plaintiff   BUTLER COUNTY, OHIO          STATE OF OHIO
                                                   COUNTY OF BUTLER
vs                          MAY 9  1984  :         COURT OF COMMON PLEAS

VON CLARK DAVIS                  :          ENTRY DESIGNATING
                      EDWARD S. ROBB, JR.          THREE JUDGE PANEL
          Defendant       CLERK

          : : : : : : : : : : : : : : : : : : : : : :

          Pursuant to Ohio Revised Code Section 2945.06, and it appearing to

the Court that the defendant Von Clark Davis has appeared in open Court and

waived his right to a trial by jury and elects to be tried by a court to be

composed of three judges, consisting of the three elected judges of the General

Division of this Court who engage in the trial of criminal cases,

          IT IS THEREFORE ORDERED that the following three-judge panel is

designated to hear and determine this cause pursuant to Ohio Revised Code

Section 2945.06:

          (1)  Judge Henry J. Bruewer, Presiding Judge;

          (2)  Judge William R. Stitsinger; and

          (3)  Judge John R. Moser.

                                        E N T E R

                                        DAVID BLACK,
                                        Presiding Judge of the
                                        Court of Common Pleas

APPROVED:

JOHN F. HOLCOMB
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

BUTLER COUNTY
COURTHOUSE
P. O. BOX 515
HAMILTON, OHIO 45012

j 379 F 9

530

EXHIBIT L
74073

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation organized and existing under the laws of the United States, | : COURT OF COMMON PLEAS |
| | : BUTLER COUNTY, OHIO |
| Plaintiff | : NO. _____ |
| -vs- | |
| VON DAVIS ████████████ Hamilton, Ohio, | FILED in Co... ... ... ... BUTLER C... ... ... PETITION ... 5 ... EDWARD S. ROBB, JR. CLERK |
| ERNESTINE DAVIS ████████████ Hamilton, Ohio, | : |
| MARK G. WENDEL, Treasurer of Butler County, Ohio, | : |
| A. R. TILTON, Auditor of Butler County, Ohio, | : |
| Defendants | : |
| | : |

: : : : : : : : : : : : : :

Plaintiff says that it is a corporation organized and existing

under the laws of the United States, having its principal office in the City of

Washington, District of Columbia.

FIRST CAUSE OF ACTION

Plaintiff for its first cause of action says that there is due

it from the defendants Von Davis and Ernestine Davis, the sum of Eight

Thousand Six Hundred Eighty-Six and 91/100 Dollars ($8,686.91) which it

claims with interest thereon at the rate of Seven and One-Half Per Cent

(7-1/2%) Per Annum from July 1st, 1969, on a certain promissory note

executed and delivered by said defendants, a photostatic copy of which with

all endorsements thereon, is attached hereto, marked "Exhibit A" and made

a part hereof.

Plaintiff says that the defendants Von Davis and Ernestine

Davis have failed to pay or cause to be paid the monthly installments of

Sixty and 90/100 Dollars ($60.90) due on August 1, 1969, and for each month

thereafter, and are now in default since August 1, 1969.



74074

Plaintiff further says that it is the owner and holder of said
note ... rejected and how due ... together with other charges ... on its ... 
interest now due, payable, together with other charges ... on its ... evident for
in said note and mortgage ... in, the same.

SECOND CAUSE OF ACTION

Plaintiff for its second cause of action herein ... its to,
incorporates and adopts all the allegations contained in its first cause of action
as if full, and completely rewritten herein, and does further say that at the
time of ... execution and delivery of the above described note and as a part
of said transaction and to secure the favorable performance of the terms and
conditions thereof, the defendants, Von Davis and Ernestine Davis, duly
executed and delivered to L. M. Primacs, Inc., a certain mortgage deed
conveying ... following described real estate, to-wit:

Entire Lot No. 1922 as the same is shown and
designated in the Fifth Ward, City of Hamilton,
Butler County, Ohio.

Plaintiff says that said loan was made under the terms and
regulations relating to F.H.A. loans and in accordance with the forms
prescribed by said agency.

Plaintiff further says that on the 17th day of April, 1969,
said mortgage was executed and delivered and that on the 23rd day of April,
1969, at 3:05 P.M. said mortgage deed was duly filed with the Recorder of
Butler County, Ohio and was duly recorded in Vol. 451 page 117 of the Mortgage
Records of Butler County, Ohio, on the 23rd day of April, 1969.

Plaintiff further says that on the 22nd day of April, 1969,
said mortgagee L. M. Primacs, Inc., for value received, ... assigned, and
transferred and set over to the Pittsburgh Mortgage Corporation all of its right,
title and interest in and to said note and mortgage, which assignment was filed
with the order of Butler County, Ohio, May 9th, 1969, and said assignment
being ... separate instrument, and recorded in Miscellaneous Records Vol. 36
... ... Recorder's Office ... ... in the same
said Butler ... Ohio.



74075

assigned, transferred, and set over to the plaintiff Federal National Mortgage Association, all its right, title and interest in and to said note and mortgage, which assignment was filed with the Recorder of Butler County, Ohio, May 5th, 1969, said assignment being by separate instrument, and recorded in Miscellaneous Record Vol. 40 page 323, Recorder's Office, Butler County, Ohio; that said mortgage deed thereby became and remains the first and best lien on said real estate in favor of this plaintiff to secure the balance due on said promissory note and other charges and costs.

Plaintiff further says that a photostatic copy of said mortgage above referred to is attached hereto marked "Exhibit B" and made a part of this petition by reference.

Plaintiff further says that said mortgage deed is conditioned and provides, among other things, as follows:

"Upon any default in the note secured hereby, or under this deed, foreclosure proceedings may be instituted at the option of the Grantee. In any such action the Grantee shall be entitled without notice and without regard to the adequacy of the security of the debt, to the appointment of a Receiver of the rents and profits of the mortgaged premises, etc."

Plaintiff further says that the payment provided for in said note and in mortgage and to the amount as hereinabove set forth, is delinquent and that the conditions of said mortgage deed have become broken and said mortgage deed is now absolute and plaintiff is entitled to foreclose the same.

Plaintiff further says that said mortgage deed provides as follows:

"any deficiency in the amount of such aggregate monthly payments shall, unless made good by the Grantor prior to the due date of the next such installment, constitute an event of default under this deed. The Grantee may collect a "late charge" not to exceed two cents (2¢) for each dollar ($1) of each payment more than fifteen (15) days in arrears to cover the extra expense involved in handling delinquent payments."

Plaintiff further says that the defendants Von Clark Davis and ...



since the 1st day of August, 1969, and that by reason thereof there is now due and has or come due an additional amount under the terms of said mortgage deed to be computed from the date of the sale of the premises.

Plaintiff further says that said mortgage deed is further conditioned that the holder of said mortgage shall have the right to pay any ground rents, taxes, assessments, and other charges which the Grantor is agreed to pay under Paragraph 4 of the said mortgage, and to make any payments hereinabove provided to be made by the Grantor, and also all premium payments for insurance on said premises and as set forth in said mortgage deed, and that any amount so paid by the Grantee or holder of said mortgage shall be added to the principal debts and bear interest at the rate set forth in said note and all to be secured by said mortgage deed, and that by reason of said provision any such taxes, insurance premium, or other charges to be paid by this plaintiff shall constitute a further addition to the amount claimed herein.

Plaintiff further says that defendant Mark G. Venuel, Treasurer of Butler County, Ohio, and A. R. Tilton, Auditor of Butler County, Ohio, have or may have a claim for real estate taxes on the above described property.

WHEREFORE, plaintiff prays judgment against defendants Von Davis and Ernestine Davis in the sum of Eight Thousand Six Hundred Eighty-six and 91/100 Dollars ($8,686.91) together with interest thereon at the rate of Seven and One-Half Per Cent (7-1/2%) Per Annum from July 1st, 1969, on a certain promissory note executed and delivered by Von Davis and Ernestine Davis, and for all interest and charges accruing to the time of the sale of said premises, and costs herein expended; that said mortgage may be declared to be the first and best lien upon said real estate and that said mortgage may be foreclosed and said real estate described herein be sold for the payment of such sums and for any other sums hereinafter to be determined by the Court as provided by law; that a Receiver be appointed to care for said



74078

PRAECIPE

TO THE CLERK:

Please issue summons, directed to the Sheriff of Butler County, Ohio, for service upon the defendants Von Davis, Ernestine Davis, Mark G. Wendel, Treasurer of Butler County, Ohio, and A. R. Fulton, Auditor of Butler County, Ohio, and make all the same returnable according to law.

Endorse thereon, "Action for money only, amount claimed $8086.91 , together with interest at the rate of seven and one-half per cent (7-1/2%) per annum from July 1, 1969, and all interest and other charges accruing to the date of sale, foreclosure of mortgage upon real estate, appointment of a receiver, and all other relief."

William R. Stitsinger

John R. Moser
Attorneys for Plaintiff

74077

premises during the pendency of this action, that the Court find that this plaintiff has a first and best lien upon said premises, that the proceeds of said sale be first applied to the payment of the amount due on said note and mortgage together with interest thereon, and other charges, and the costs of this action, and for other relief as may be just and proper in the premises.

_____
William R. Stitsinger

_____
John R. Moser
Attorneys for Plaintiff

STATE OF OHIO, BUTLER COUNTY, SS:

William R. Stitsinger being first duly sworn, deposes and says that he is attorney of record for the plaintiff, a corporation, and that he has in his possession the original note and mortgage sued upon herein, and that the facts stated and allegations contained in the foregoing Petition are true as he verily believes.

_____
William R. Stitsinger

Sworn to before me and subscribed in my presence this

5th day of January, 1970.

_____
Notary Public, Butler County, Ohio.



74101

It is further Ordered, Decreed and Adjudged that unless the said defendants Von Davis and Ernestine Davis shall within three days from the date of this entry and decree pay or cause to be paid to the plaintiff the sum found due herein on said mortgage and note, plus the costs of this action, that the equity of redemption of said defendants in said premises be foreclosed and said real estate be sold and that an order of said issue to the Sheriff of Butler County, Ohio, directing him to appraise, advertise, and sell said real estate according to law and the orders of the Court, and report his proceedings to this Court for further orders and relief.

Fichner J.

4.34 PAGE 296          74100

The Court further finds that in order to secure said promissory note set forth in the petition of the plaintiff, the said defendants Von Davis and Ernestine Davis, his wife, executed and delivered to L. M. Primack, Inc., their mortgage dated April 19th, 1969, and recorded on April 23rd, 1969, in Volume 951 page 117 of the Mortgage Records of Butler County, Ohio. Further that on April 22, 1969, said mortgagee L. M. Primack, for value received, sold, assigned, and transferred and set over said mortgage to Pittsburgh Mortgage Corporation, which assignment was by separate instrument, recorded in Miscellaneous Record Vol. 48 page 326, Recorder's Office, Butler County, Ohio, May 6th, 1969; Further that on April 22nd, 1969, said Pittsburgh Mortgage Corporation for value received, sold, assigned, transferred and set over said mortgage to the plaintiff Federal National Mortgage Association, which assignment was by separate instrument, recorded in Miscellaneous Record Vol. 48 page 328, Recorder's Office, Butler County, Ohio, on May 6th, 1969, and that said mortgage thereby became, and the Court finds the same to be, the first and best lien on said real estate in favor of this plaintiff, to secure the payment due on said promissory note and other charges and costs.

The Court further finds that the defendants Von Davis and Ernestine Davis have failed to pay said note when it became due and have breached the conditions of said mortgage, and have failed to pay or cause to be paid the monthly installments provided for in said mortgage for a period of more than thirty (30) days since the same became due and payable, and the conditions of said mortgage have been broken and said mortgage has become absolute and plaintiff is entitled to have the same foreclosed.



EXHIBIT M  .74099

FEDERAL NATIONAL MORTGAGE : COURT OF COMMON PLEAS
ASSOCIATION, a corporation,
: BUTLER COUNTY, OHIO
Plaintiff
: NO. 60677

-vs-
VON DAVIS, ET AL,  JUDGMENT ENTRY AND
DECREE OF FORECLOSURE
Defendants
: JUDGMENT

: : : : : : : : : : : : : : :

This day this cause came on to be heard upon the petition of the
plaintiff, and upon the evidence, and the Court finds that the defendants have
been duly served with summons and process, as provided by law, and that
this Court has jurisdiction of this matter and over all of the defendants
named herein.

Upon consideration of all the evidence, the Court finds that there is
due and unpaid to the Plaintiff Federal National Mortgage Association, a
corporation organized and existing under the laws of the United States, upon
the promissory note secured by the mortgage as set forth in the petition,
together with advancements made by the plaintiff pursuant to the terms and
conditions of said mortgage, the sum of Nine Thousand One Hundred Sixty-
One and 31/100 Dollars ($9,161.31), plus interest thereon from the 23rd day
of March, 1970.

It is therefore hereby Ordered, Adjudged, and Decreed that plaintiff
Federal National Mortgage Association recover from said defendants, and
said plaintiff is hereby awarded judgment against the defendants Von Davis
and Ernestine Davis, the sum of Nine Thousand One Hundred Sixty-One and
31/100 Dollars ($9,161.31) plus interest from March 23rd, 1970, and until
the time of sale of the subject real estate, plus real estate taxes, assess-
ments, insurance premiums advanced thereafter, and for the costs incurred
in this action.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,          :

-vs-                                    :     Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.          :

EXHIBIT N

AFFIDAVIT OF VON CLARK DAVIS

STATE OF OHIO,

COUNTY OF SCIOTO, SS:

    I, Von Clark Davis, being first duly sworn according to law, state the
following:

    1)  I am the Defendant-Petitioner in the above-captioned case.

    2)  In April 1969, I purchased a house in Hamilton, Ohio, with my wife,
Ernestine.

    3)  At some point thereafter, foreclosure proceedings were instituted
against me, and I lost my home.

    4)  I did not know until approximately two months ago that Judges
Stitsinger and Moser were the attorneys for the mortgage company and as a
result were instrumental in taking my home from me.

    5)  The judges did not disclose this information to me at the time of my
jury waiver in May 1984.

6)   Had I known of Judge Stitsinger and Judge Moser's involvement in the foreclosure proceedings, I would not have agreed to their participation in my capital case.

Further Affiant saith naught.

_Van Clark Davis_
VON CLARK DAVIS

Sworn to and subscribed in my presence this _17th_ day of September, 1993.

NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,           :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.           :

### EXHIBIT O

### AFFIDAVIT OF HARRY REINHART

STATE OF OHIO,

COUNTY OF FRANKLIN, SS:

    I, Harry Reinhart, being first duly sworn according to law, state the following:

    1) I am an attorney at law with offices at 536 South High Street, Columbus, Ohio  43215. I am a member of the Ohio Bar (1978) and admitted to practice in the Northern (1984) and Southern (1979) Federal District Court of Ohio, the Sixth Circuit Court of Appeals (1984), and the United States Supreme Court (1984).

    2) I am a 1978 Graduate of the Capital University School of Law (Franklin County). I joined the staff of the Ohio Public Defender Commission in 1979 where I practiced exclusively in the field of criminal law. In June of 1988 I left that office to enter the private practice of law and my practice is limited primarily to criminal defense.

    3) During my tenure with the Ohio Public Defender Commission, I was appointed as the first Chief Appellate Counsel, authored and edited the Ohio Criminal Trial Manual, created and administered the seminar program, including the initiation of the Ohio Public Defender Advocacy Institute. In addition, I

assisted in the formation of the Ohio Association of Criminal Defense Lawyers of which I am a Director and Founding Member. I am presently serving as Vice President of the Amicus/Strike Force Committee.

4) I am a member of the American Bar Association, the Ohio Bar Association, the Columbus Bar Association, the Ohio Academy of Trial Lawyers, the Franklin County Trial Lawyers Association, the National Association of Criminal Defense Lawyers, the Ohio Association of Criminal Defense Lawyers, the Death Penalty Task Force, the Southern Poverty Law Center, the Association to Abolish the Death Penalty, and the American Civil Liberties Union.

5) I am qualified under Rule 65 of the Ohio Supreme Court Rules of Superintendence for Courts of Common Pleas to function as lead counsel at trial, on appeal, and at the state post-conviction level. This rule governs the appointment of counsel for indigent defendants in capital cases. I am also qualified under 21 U.S.C. Section 848(q) for appointment in federal capital cases and habeas corpus petitions filed by persons under a death sentence pursuant to 21 U.S.C. Sections 2254 and 2255.

6) I have extensive experience in both trial and appellate litigation in capital cases. I have been both lead and co-counsel at the trial and appellate levels. I have drafted and filed petitions for certiorari to the United States Supreme Court and have experience in post-conviction practice on both the state and federal levels. I have lectured on these and related topics at seminars sponsored by the Ohio Public Defender Commission, the Ohio Association of Criminal Defense Lawyers, the Ohio Association of Trial Lawyers, as well as various local bar associations. I am presently serving as Chairman of the Criminal Law Committee for the Franklin County Trial Lawyers Association.

7)  I have previously been qualified as an expert and have presented testimony at capital post-conviction hearings. See State v. Buell, No. CR-189356 (Cuy. C.P.); State v. J.D. Scott, No. CR-182521 (Cuy. C.P.). See, also, State v. Byrd, No. B-831662A (Ham. C.P.).  In addition, I represent three (3) death row inmates, one on direct appeal, one in state post-conviction and another in federal habeas.  I have recently completed three capital cases at the state trial court level, two of which resulted in life verdicts and one a plea to aggravated murder.  Since the date Ohio's new death penalty statute became effective (October 1981), I have been involved as either lead counsel or co-counsel in over one dozen capital cases, including State v. Larry Lee (Washington County), State v. Larry Sabo (Athens County), State v. James L. Ratler (Franklin County), State v. Harold Heath (Belmont County), State v. Vincent Simone (Champaign County), State v. Wesley Vincent (Ross County), State v. Bulerin (Allen County), and State v. Yee (Erie).  In addition, I have consulted with and assisted in the representation of capitally-charged defendants by other attorneys in numerous other cases, including State v. Dale Johnston (Hocking County), State v. Drewey Kiser (Ross County), State v. Spirko (Van Wert County), State v. Eddie Hill (Belmont County), State v. Richard Joseph (Allen County), and State v. John Parsons (Franklin County).

8)  I have argued cases in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Twelfth appellate judicial districts in Ohio, as well as the Ohio Supreme Court and the United States Sixth Circuit Court of Appeals.  I presently have cases pending in both the Northern and Southern Federal Districts of Ohio, and have authored amicus briefs for the Ohio Association of Criminal Defense Lawyers in the United States Supreme Court in Penson v. Ohio, ___ U.S. ___, 109 S. Ct. 346, 102 L.Ed. 2d 300 (1988); Powers v. Ohio, No. 89 5011; and Ohio v. Huertas, No. 89-1944.

9) I was contacted by Joann Bour-Stokes and she requested that I express my opinion of the accepted standards of practice for capital litigation at the trial level, especially those standards involving a three judge panel.

10) The decision whether or not to waive a jury and try the case to a three-judge panel is a crucial decision. Ohio's three-judge panel provision in capital cases has no counterpart in other state statutes, and therefore the standards of practice relating to this technique are uniquely Ohio standards. Counsel must recognize that the same factors which affect jurors in a capital case also affect judges. In addition, counsel must be aware that judges stand for reelection and are therefore concerned about public perception of themselves. It is beyond dispute that judges, as politicians, fight for public recognition and that the criminal docket is by far the most effective means of garnering publicity. The Code of Judicial Conduct prohibits judges during campaigns from speaking about or commenting on any issue which may come before them thus further hindering any particular candidate's or judge's ability to communicate his/her position on various important social issues such as crime. Thus, as a very practical matter, an Ohio trial court judge's conduct of a capital trial and more importantly, the result and sentence, becomes an important tool in communicating with the electorate. These are realistic factors that must be taken into consideration when advising a client about his right to waive a jury and try a case to a three-judge panel.

11) As a result of these very practical considerations a very specific standard of practice has developed in Ohio with respect to jury waivers in capital cases. Because of the extraordinary and unusual risks associated with waiving a jury trial right in favor of a three-judge panel, the jury trial right should never be waived without reservation of the option to withdraw the waiver in the event that the three-judge panel returns a death sentence. The reservation of this right should be made in open court and on the record.

12)   Failure to meet this standard evidences unreasonable professional judgment and heightens the probability that a client will be sentenced to death with little or no hope of relief on appeal at post-conviction or on resentencing.

Further Affiant saith naught.

_____
HARRY R. REINHART

Sworn to and subscribed in my presence this 4th day of ~~September~~ October, 1993.

_____
NOTARY PUBLIC

RICHARD JOSEPH VICKERS, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

IMAGED

STATE OF OHIO,                          :

    Plaintiff-Respondent,               :

-vs-                                    :      Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.               :

## EXHIBIT P

### AFFIDAVIT OF HARRY REINHART

STATE OF OHIO,

COUNTY OF FRANKLIN, SS:

    I, Harry Reinhart, being first duly sworn according to law, state the
following:

    1)  I am an attorney at law with offices at 536 South High Street,
Columbus, Ohio  43215.  I am a member of the Ohio Bar (1978) and admitted to
practice in the Northern (1984) and Southern (1979) Federal District Court of
Ohio, the Sixth Circuit Court of Appeals (1984), and the United States Supreme
Court (1984).

    2)  I am a 1978 Graduate of the Capital University School of Law
(Franklin County).  I joined the staff of the Ohio Public Defender Commission
in 1979 where I practiced exclusively in the field of criminal law.  In June
of 1988 I left that office to enter the private practice of law and my
practice is limited primarily to criminal defense.

    3)  During my tenure with the Ohio Public Defender Commission, I was
appointed as the first Chief Appellate Counsel, authored and edited the Ohio
Criminal Trial Manual, created and administered the seminar program, including
the initiation of the Ohio Public Defender Advocacy Institute.  In addition, I

assisted in the formation of the Ohio Association of Criminal Defense Lawyers of which I am a Director and Founding Member. I am presently serving as Vice President of the Amicus/Strike Force Committee.

4) I am a member of the American Bar Association, the Ohio Bar Association, the Columbus Bar Association, the Ohio Academy of Trial Lawyers, the Franklin County Trial Lawyers Association, the National Association of Criminal Defense Lawyers, the Ohio Association of Criminal Defense Lawyers, the Death Penalty Task Force, the Southern Poverty Law Center, the Association to Abolish the Death Penalty, and the American Civil Liberties Union.

5) I am qualified under Rule 65 of the Ohio Supreme Court Rules of Superintendence for Courts of Common Pleas to function as lead counsel at trial, on appeal, and at the state post-conviction level. This rule governs the appointment of counsel for indigent defendants in capital cases. I am also qualified under 21 U.S.C. Section 848(q) for appointment in federal capital cases and habeas corpus petitions filed by persons under a death sentence pursuant to 21 U.S.C. Sections 2254 and 2255.

6) I have extensive experience in both trial and appellate litigation in capital cases. I have been both lead and co-counsel at the trial and appellate levels. I have drafted and filed petitions for certiorari to the United States Supreme Court and have experience in post-conviction practice on both the state and federal levels. I have lectured on these and related topics at seminars sponsored by the Ohio Public Defender Commission, the Ohio Association of Criminal Defense Lawyers, the Ohio Association of Trial Lawyers, as well as various local bar associations. I am presently serving as Chairman of the Criminal Law Committee for the Franklin County Trial Lawyers Association.

7) I have previously been qualified as an expert and have presented testimony at capital post-conviction hearings. See State v. Buell, No. CR-189356 (Cuy. C.P.); State v. J.D. Scott, No. CR-182521 (Cuy. C.P.). See, also, State v. Byrd, No. B-831662A (Ham. C.P.). In addition, I represent three (3) death row inmates, one on direct appeal, one in state post-conviction and another in federal habeas. I have recently completed three capital cases at the state trial court level, two of which resulted in life verdicts and one a plea to aggravated murder. Since the date Ohio's new death penalty statute became effective (October 1981), I have been involved as either lead counsel or co-counsel in over one dozen capital cases, including State v. Larry Lee (Washington County), State v. Larry Sabo (Athens County), State v. James L. Ratler (Franklin County), State v. Harold Heath (Belmont County), State v. Vincent Simone (Champaign County), State v. Wesley Vincent (Ross County), State v. Bulerin (Allen County), and State v. Yee (Erie). In addition, I have consulted with and assisted in the representation of capitally-charged defendants by other attorneys in numerous other cases, including State v. Dale Johnston (Hocking County), State v. Drewey Kiser (Ross County), State v. Spirko (Van Wert County), State v. Eddie Hill (Belmont County), State v. Richard Joseph (Allen County), and State v. John Parsons (Franklin County).

8) I have argued cases in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Twelfth appellate judicial districts in Ohio, as well as the Ohio Supreme Court and the United States Sixth Circuit Court of Appeals. I presently have cases pending in both the Northern and Southern Federal Districts of Ohio, and have authored amicus briefs for the Ohio Association of Criminal Defense Lawyers in the United States Supreme Court in Penson v. Ohio, ___ U.S. ___, 109 S. Ct. 346, 102 L.Ed. 2d 300 (1988); Powers v. Ohio, No. 89 5011; and Ohio v. Huertas, No. 89-1944.

9) I was contacted by Joann Bour-Stokes and she requested that I express my opinion of the accepted standards of practice for capital litigation at the trial level, especially those standards involving a three judge panel.

10) The decision whether or not to waive a jury and try the case to a three-judge panel is a crucial decision. Ohio's three-judge panel provision in capital cases has no counterpart in other state statutes, and therefore the standards of practice relating to this technique are uniquely Ohio standards.

11) The Ohio Supreme Court has adopted a rule in capital cases that the Court, in reviewing the case, will presume that the panel considered only relevant, material, and competent evidence in reaching its decision unless the record affirmatively demonstrates otherwise. State v. White, 15 Ohio St. 2d 146 (1968); State v. Post, 32 Ohio St. 3d 380 (1987).

12) The Ohio presumption is effectively irrebuttable. Only if the record affirmatively shows that the trial court considered improper evidence will an appellate court find its admission to be error. The standard for an affirmative showing on the record is almost impossible to meet. The defendant has no way to create such a record because he cannot attend the court's deliberations. Only if the court happens to mention the particular evidence at issue in pronouncing sentence or in its opinion, can the defendant make the required showing.

13) Equal protection requires that all capital defendants be tried on the same quality of evidence. Due process requires that the rules of evidence be applied fairly and that capital defendants not be deprived of a fair determination of their cases. Capital defendants in Ohio are deprived of these rights when they elect to be tried and sentenced before a three-judge panel.

14) These are realistic factors that must be taken into consideration when advising a client about his right to waive a jury and try a case to a three-judge panel.

15) As a result of the very practical considerations a very specific standard of practice has developed in Ohio with respect to jury waivers in capital cases.

16) A capital defendant should always be advised by his attorneys prior to waiving a jury trial that his case will be subject to a lesser standard of review on appeal if tried before a three-judge panel.

17) This facet of capital litigation is recognized and has been recognized in Ohio. It serves as a minimum standard of practice for capital litigation in cases tried to a three-judge panel. Failure to meet this standard evidences unreasonable professional judgment and heightens the probability that a client's conviction and sentence of death will be affirmed on appeal regardless of errors occurring at trial. Counsel who represented Petitioner Davis at trial fell below this standard.

18) Failure to meet this standard evidences unreasonable professional judgment and heightens the probability that a client will be convicted and sentenced to death with little or no hope of relief on appeal.

Further Affiant saith naught.

_____
HARRY R. REINHART

Sworn to and subscribed in my presence this 4th day of ~~September~~ October, 1993.

_____
NOTARY PUBLIC

RICHARD JOSEPH VICKERS, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

     Plaintiff-Respondent,            :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

     Defendant-Petitioner.            :

<u>EXHIBIT Q</u>

<u>AFFIDAVIT OF VON CLARK DAVIS</u>

STATE OF OHIO,

COUNTY OF SCIOTO, SS:

    I, Von Clark Davis, being first duly sworn according to law, state the following:

    1)  I am the Defendant-Petitioner in the above-captioned case.

    2)  That on May 8, 1984, I appeared in the Butler County Common Pleas Court.  The purpose of this appearance was to waive my trial by jury.

    3)  During this hearing, the trial court told to me that I could have my capital case tried to twelve jurors or a three judge panel.

    4)  Prior to this hearing, I was not informed by my attorneys or the trial court, that if I elected to be tried by a three-judge panel, that errors occurring at my trial would be presumed harmless by the Court of Appeals and the Ohio Supreme Court.

5)   If I had known this information, I would not have elected to be tried by a three-judge panel.

Further Affiant saith naught.


_Von Clark Davis_
_____
VON CLARK DAVIS


Sworn to and subscribed in my presence this 27ᵗʰ day of September, 1993.


_____
NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,           :

-vs-                                    :     Case No.  CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.           :

EXHIBIT  R

AFFIDAVIT OF ALLUSTER TIPTON

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Alluster Tipton, being first duly sworn according to law, state the following:

    1)  I am Petitioner Davis's mother.

    2)  I testified at my son's mitigation hearing in 1984.

    3)  Had I been permitted, I also would have testified at his resentencing hearing in 1989.

    4)  I would have testified at the resentencing hearing to information that was not included in my testimony in 1984.

    5)  My testimony would have included facts surrounding my upbringing and further details about Von's life.

    6)  My testimony would have included, but is not limited to, the following:

        A)  I was born to Hattie Bailey on ███████ in St. Louis, Missouri.

*Q.S.*

B) ~~My mother met my father, Ned Davis, one year prior to my birth.~~ My mother and father were never married and I was the only child from their relationship.

C) I grew up without a father. I did not see my father until I was sixteen. Children would tease me about not having a father. I would tell them my cousin's father was my father.

D) Six months after I was born, my mother and I moved to Hamilton, Ohio, where my grandmother Evelyn resided.

E) I was reared by my grandmother, Evelyn, and considered her my second mother.

F) When I was eleven, my mother moved out of my grandmother's house. I remained with my grandmother in her home.

G) I married Von's father, Nicholas Davis, in 1945. I was pregnant with our first son, Elliot.

H) I had five children with Nicholas Davis: Elliot Davis, born ███████; Von Clark Davis, born ███████; Carol Davis, born ███████; Charles Davis, born ███████; and, Victor Davis, born ███████. My son, Charles, died in 1986.

I) Nicholas was still in the service at the time we were married.

J) Nicholas was always on the go when we were married. Sometimes he would leave the family for weeks at a time. After the birth of our third child, Nicholas's departures became more frequent and longer in duration.

K) Nicholas also drank while we were married. He would be argumentative after he drank. Nicholas and I would stand toe-to-toe and fight. Nicholas ~~and~~ hit me ~~once~~. we fought quite often. *Q.S.*

L) Nicholas and I divorced in 1954.

M) Von missed having a father, he had no one to turn to.

N) When he was small, Von would ask about his father. He stopped asking about him when he became a teenager.

O)  Von missed having a dad more than the other children.

P)  Von attended Harrison Elementary School in Hamilton.  He was forced to repeat the sixth grade due to his poor grades.

Q)  Von was enrolled in special classes at Harding Junior High School.

R)  Von dropped out of school prior to completing junior high school.

S)  Von did have a temper.  His anger could be triggered by one or several events.  Von also had mood swings as a child.

T)  I married Charles Tipton on August 5, 1960.  Von was thirteen years old when I married Charles.

U)  Von went into the Navy in June 1964.  He was discharged in January 1965.

V)  I noticed the biggest change in Von after his military service.  He did not act the same.  He seemed more withdrawn, and could not be still.  He had to be moving all the time.

7)  I love my son and do not want him to be executed.

Further Affiant saith naught.


_____
ALLUSTER TIPTON


Sworn to and subscribed in my presence this 28ᵗ day of SEPTEMBER, 1993.


_____
NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,          :

-vs-                                    :    Case No.   CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.          :


EXHIBIT   S

AFFIDAVIT OF ELLIOT DAVIS

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Elliot Davis, being first duly sworn according to law, state the

following:

    1)  I am Petitioner Davis's brother.

    2)  I attended his capital trial in 1984.

    3)  I would have been willing to testify at my brother's capital trial in

1984 and at his resentencing hearing in 1989.

    4)  My testimony would have included information about our childhood and

facts about Von's life.

    5)  I love my brother and do not want him to be executed.

_____
ELLIOT DAVIS


Sworn to and subscribed in my presence this 28 day of SEPTEMBER, 1993.


_____
NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

     Plaintiff-Respondent,             :

-vs-                                    :    Case No.  CR 83-12-0614

VON CLARK DAVIS,                        :

     Defendant-Petitioner.             :


EXHIBIT   T

AFFIDAVIT OF CHARLES TIPTON

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Charles Tipton, being first duly sworn according to law, state the following:

    1)  I am Petitioner Davis's stepfather.  I am married to his mother, Alluster.

    2)  I testified at my stepson's mitigation hearing in 1984.

    3)  I attended the resentencing hearing in 1989 and had I been permitted, I also would have testified at this hearing.

    4)  I would have testified at the resentencing hearing to information that was not included in my testimony in 1984.

    5)  My testimony would have included additional facts about Von and his life.

6)   I love Von and do not want him to be executed.

Further Affiant saith naught.


CHARLES TIPTON


Sworn to and subscribed in my presence this 28st day of SEPTEMBER , 1993.


NOTARY PUBLIC

JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,          :

-vs-                                    :    Case No.  CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.          :

EXHIBIT  U

AFFIDAVIT OF MILTON FLOWERS

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Milton Flowers, being first duly sworn according to law, state the following:

    1)  I am a family friend of Petitioner Davis.

    2)  I became acquainted with Petitioner's family when I lived next door to them in Hamilton, Ohio.  Petitioner's mother, Alluster, was just a baby. In addition to Alluster, Alluster's mother, Hattie Bailey, and Alluster's grandmother lived in the home.

    3)  I really did not believe that Hattie Bailey had all her marbles.  She was no mother at all to Alluster.  If it were not for Alluster's grandmother and her uncle Tecumsah, I do not know what would have happened to Alluster.

    4)  Hattie did not care what Alluster would do; she just wanted Alluster to stay out of her way.

5)  Hattie was a violent character who would become abusive.  She would say a lot of things she would be sorry for later.

6)  Alluster, like her mother, had a violent temper.  It did not take much for her to get upset.  She got into numerous fights.

7)  Alluster married Petitioner's father, Nick Davis, at a very young age.  When Alluster and Nick were first married, there were at times food shortages in their home.

8)  Alluster was just about like Hattie as a mother.

9)  After Nick and Alluster separated, there were a lot of men in and out of Alluster's life.  The quality of care for the children, including Von, was poor.

10)  Von was very small as a child.  He suffered because of his size; he felt as if he were being taken advantage of.

11)  Von had a violent temper.  At times when he was angry, the other kids would have to catch and hold him until he cooled down.

12)  Von would have violent outbursts in school.  These outbursts were like those that Alluster and Hattie had.

13)  I feel that Von is a product and victim of his environment.  He faced rejection both at home and in the community.

14)  Von was really out there on his own while he was growing up.  He was not able to go home to talk to anyone.

15)  I would have been willing to testify on Von's behalf at his original capital trial in 1984 and at his resentencing in 1989.

16)  I love Von and do not want him to be executed.

Further Affiant saith naught.

_MILTON B. Flowers_
MILTON FLOWERS

Sworn to and subscribed in my presence this _28_ day of _September_, 1993.

NOTARY PUBLIC

**JOANN M. BOUR-STOKES**, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                              :

    Plaintiff-Respondent,                :

-vs-                                        :    Case No.  CR 83-12-0614

VON CLARK DAVIS,                            :

    Defendant-Petitioner.                :


EXHIBIT <u>  V  </u>

<u>AFFIDAVIT OF SHERRY DAVIS</u>

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Sherry Davis, being first duly sworn according to law, state the following:

    1)  I am Petitioner Davis's daughter.

    2)  I was born ████████████.

    3)  I was two years old when my father killed my mother, Ernestine.

    4)  I attended my father's capital trial when he was charged with the killing of Suzette Butler.

    5)  I also have corresponded with my father while he was in prison.  He has written that he wished he were out so he could help me raise my two sons who are three and four years old.

    6)  I would have been willing to testify on my father's behalf at his capital trial in 1984 and at his resentencing hearing in 1989.

7)  I love my father and do not want him to be executed.

Further Affiant saith naught.

_____
SHERRY DAVIS

Sworn to and subscribed in my presence this 28ᵈ day of _SEPTEMBER_, 1993.

_____
NOTARY PUBLIC

**JOANN M. BOUR-STOKES,** Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

EXHIBIT W

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO
FILED

STATE OF OHIO      '89 JUL 18 P CASE NO. CR 83 12 0614

     Plaintiff     CLERK OF COURTS

vs.     FILED In Common Pleas Court    MOTION FOR FURTHER PSYCHO-
      BUTLER COUNTY, OHIO    LOGICAL EVALUATIONS, APPOINT-
                          MENT OF A SOCIAL WORKER
VON CLARK DAVIS      JUL 18 1989    TO PREPARE A SOCIAL HISTORY
                               AND FOR PAYMENT OF EXTRA-
    Defendant EDWARD S. ROBB, JR. ORDINARY EXPENSES FOR SAID
              CLERK         EXPERTS

     : : : : : : : :

Now comes the defendant, Von Clark Davis, by and through counsel, and moves the Court to appoint Roger Fisher of the Butler County Forensic Center to perform an additional psychological evaluation in this case and to appoint an additional psychologist to perform an independent psychological evaluation in this case and moves the Court to appoint a social worker to prepare a social history in this case for the use of the psychologist and for the Court's use in determining sentence in this matter. Defendant further moves the Court to approve extraordinary expenses to employ these experts.

*JOHN A. GARRETSON*       A-173
A Legal Professional Association
616 Dayton Street, P. O. Box 1166
Hamilton, Ohio 45012
Telephone: (513) 863-6600

*MICHAEL SHANKS* per phs
MICHAEL SHANKS
304 North Second Street
Hamilton, Ohio 45011
Telephone: (513) 863-2112

ITS    LAW OFFICES
FTC... ..IEVS AND
NSELORS AT LAW
DA    ON STREET
P.O.    )X 1166
ILTON, OHIO 45012

513   53–6600

4

TIMOTHY R. EVANS
P. O. Box 687
Hamilton, Ohio  45012
Telephone:  (513) 868-7600

**ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by regular U. S. Mail to John F. Holcomb, Prosecuting Attorney, P. O. Box 515, Hamilton, Ohio 45012, on the date the same was filed.

JOHN A. GARRETSON
Attorney for Defendant

RRETSON LAW OFFICES
ATTORNEYS AND
COU  ELORS AT LAW
616  VYTON STREET
P.O. BOX 1166
HAM  TON, OHIO 45012

(513) 863-6600

- 2 -

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                           :

    Plaintiff-Respondent,                :

-vs-                                     :    Case No.  CR 83-12-0614

VON CLARK DAVIS,                         :

    Defendant-Petitioner.                :

EXHIBIT  X

AFFIDAVIT OF JOHN LEE

STATE OF OHIO,

COUNTY OF FRANKLIN, SS:

    I, John Lee, being first duly sworn according to law, state the following:

    1)  I am a mitigation specialist at the Ohio Public Defender Commission.

    2)  On May 17, 1993, our office requested Petitioner Davis's institutional records from the Southern Ohio Correctional Facility.

    3)  We received those records on May 25, 1993.

    4)  I have reviewed those records.

    5)  According to the records, Petitioner Davis has received no rules infraction since his incarceration on death row.

_____
JOHN LEE

Sworn to and subscribed in my presence this 30ᵗʰ day of SEPTEMBER, 1993.

_____
NOTARY PUBLIC
JOANN M. BOUR-STOKES, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                         :

    Plaintiff-Respondent,          :

-vs-                                   :      Case No.  CR-83-12-0614

VON CLARK DAVIS,                       :

    Defendant-Petitioner.          :

## EXHIBIT  Y

### AFFIDAVIT OF JEFFREY L. SMALLDON, PH.D.

IN THE STATE OF OHIO
           SS:
COUNTY OF FRANKLIN,

    I, Jeffrey L. Smalldon, Ph.D., after being duly sworn according to law, state as follows:

    1)  I am Jeffrey L. Smalldon, Ph.D., a psychologist associated with David J. Tennenbaum, Ph.D. and Associates, 3796 Olentangy River Road, Columbus, Ohio 43214-3455.  My primary areas of specialization are forensic and neuropsychological assessment/consultation.

    After graduating from Valparaiso University, cum laude, I obtained two subsequent masters degrees and served as Vice President for Mental Health and Alcoholism Services at the largest private general hospital in Ohio before obtaining my doctorate in psychology from The Ohio State University in 1989. Among my training experiences were two years of teaching introductory psychology, as well as internship assignments at two centers specializing in the assessment and treatment of forensic clients/patients.  I completed my pre-doctoral clinical internship at Connecticut Valley Hospital, where my primary assignment was on an inpatient forensic unit.  After receiving my Ph.D., I worked as a postdoctoral trainee at Riverside Methodist Hospital's Neurological

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 1974

Rehabilitation Center, where I continued on as a staff psychologist for almost a year after receiving my license from the Ohio Board of Psychology in 1990.

I have conducted many comprehensive neuropsychological evaluations, and on a number of occasions I have been qualified as an expert witness to testify in court regarding my findings. My training, experience, and qualifications in the area of neuropsychological assessment are further detailed in the attached condensed version of my curriculum vita that is included as an addendum to this affidavit.

2) I was requested by Joann Bour-Stokes and Linda Prucha of the Ohio Public Defenders Office to review selected background materials related to an aggravated murder case where Von Clark Davis was the defendant. I reviewed the following materials:

a) Affidavits from friends and family members of Von Clark Davis.

b) Records from the following sources:

Butler County Forensic Psychiatric Center
Ohio Department of Rehabilitation and
 Correction
London Correctional Institution - Office of
 Psychological Services
Urbana University
Hamilton Board of Education
Southern Ohio Correctional Facility
Adult Parole Authority
Mercy Hospital - Hamilton, Ohio
Butler County Sheriffs Department
Naval Records for Von Clark Davis

3) On August 27, 1993, I administered a standard battery of neuropsychological assessment procedures to Mr. Davis. Included in the battery were the following tests: Bender Visual Motor Gestalt Test; Trail Making Test

(Parts A and B); Speech Sounds Perception Test; Seashore Rhythm Test; Controlled Oral Word Association Test; Booklet Categories Test; Wechsler Memory Scale-Revised; Sensory Perceptual Exam; Finger Oscillation Test; Tactual Performance Test; Wide Range Achievement Test - Revised; and the Rey's Fifteen Item Memory Test. In addition, I reviewed a Minnesota Multiphasic Personality Inventory II and a Wechsler Adult Intelligence Scale - Revised, administered by Dr. Nancy Schmidtgoessling on August 6, 1993.

4) The results of my examination include a number of significant indicators suggestive of possible underlying brain impairment. This conclusion is based upon Mr. Davis's performance on the following tests: Booklet Categories Test, Tactual Performance Test, and the Bender Visual Motor Gestalt Test, where he made the same error on three separate testings.

5) Based on these results, it is possible to draw some tentative inferences about the types of difficulties Mr. Davis might be expected to experience in his day-to-day functioning. Particularly relevant to the finding of possible brain impairment is Mr. Davis's pattern of poor performance on the Booklet Categories Test, the Total Time portion of the Tactual Performance Test and the Bender Visual Motor Gestalt Test. On this latter test he made the same rather unusual error on three separate trials, a finding that one would not expect to obtain from a non-impaired test subject. More specifically, he appears to be someone who would have difficulty generating alternative solutions to problems requiring logical reasonings and a sound appreciation for cause-effect relationships. His thinking is rigid, and he has trouble shifting to a new course of action even after it becomes clear that his first approach is ineffective. In addition to these deficiencies in logical reasoning and

mental flexibility, he also demonstrated difficulty accurately perceiving spatial and visuospatial relationships.

Further Affiant saith naught.

_____
JEFFREY L. SMALLDON, PH.D.

Sworn and subscribed to me this the _5th_ day of October, 1993.

_____
NOTARY PUBLIC

RICHARD JOSEPH VICKERS, Attorney At Law,
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

JEFFREY L. SMALLDON, Ph.D

███████████████

Columbus, Ohio 43235

████████████

LICENSURE          License No. 4376, Ohio State Board of Psychology,
                   December, 1990

EDUCATION

     Ph.D.         August, 1989, The Ohio State University.
                   Columbus, Ohio.
                   Major Field: Counseling Psychology

     M.H.A.        June, 1982, The George Washington Univer-
                   sity. Washington, D.C.
                   Major Field: Health Services Administration

     Post-         June, 1979, Trinity College, the University
     Grad.         of Dublin. Dublin, Republic of Ireland.
     Dipl          Major Field: Modern Anglo-Irish Literature

     M.A.          December, 1976, Purdue University.
                   West Lafayette, Indiana.
                   Major Field: English

     B.A.          June, 1975 (cum laude), Valparaiso University.
                   Valparaiso, Indiana.
                   Major Field: English
                   Minor Field: Psychology

TEACHING/ACADEMIC EXPERIENCE

     Teaching Associate. The Ohio State University, Dept. of
     Psychology. Fall 1986-Spring 1988. Supervisors: David
     Hothersall, Ph.D. and David Tuber, Ph.D.

          Taught 8 sections of General Psychology (5x/week).

     Instructor. Niagara County Community College, Dept. of
     English. August 1979-December 1979.

          Taught composition and expository writing.

     Instructor. Valparaiso University, Dept. of English.
     September 1977-June 1978. Dept. Chairman: Arlin G. Meyer,
     Ph.D.

          Taught undergraduate courses in literary studies,
          business communications, and composition.

<u>Teaching Associate</u>. Purdue University, Dept. of English.
September 1975-June 1977. Supervisor: Lizette Van Gelder,
Associate Professor of English.

Taught undergraduate courses in composition and
developmental reading.

<u>Research Associate</u>. Jan Wojcik, Ph.D., Professor of English
and Comparative Literature, Purdue University. January 1976-
December 1976.

Assisted with research and manuscript preparation for
<u>Muted Consent: a casebook in modern medical ethics</u>
(Purdue University Press, 1978).

## <u>CLINICAL AND PROFESSIONAL WORK EXPERIENCE</u>

<u>Psychologist</u>. Riverside Methodist Hospitals' Neurological
Rehabilitation Center. Columbus, Ohio. December 1990-
present.

Perform comprehensive neuropsychological evaluations;
conduct individual and group psychotherapy with
stroke and traumatic brain injury patients.

<u>Psychologist</u>. Private practice. David J. Tennenbaum,
Ph.D., and Associates. Columbus, Ohio. December 1990-
present.

Perform psychodiagnostic evaluations; individual and
family psychotherapy.

<u>Postdoctoral Fellow</u>. Riverside Methodist Hospitals'
Neurological Rehabilitation Center. Columbus, Ohio.
Supervisor: Ken Bain, Ph.D. March 1990-December 1990.

Perform comprehensive neuropsychological evaluations;
conduct individual and group psychotherapy with stroke
and traumatic brain injury patients.

<u>Postdoctoral Fellow</u>. Private practice, Columbus, Ohio.
Supervisor: David Tennenbaum, Ph.D. Sept. 1989-Dec. 1990.

Administer, score, and interpret a variety of psycho-
logical assessment instruments. Also, participate on
interdisciplinary gerontology treatment team in an
inpatient hospital setting; assist with a variety of
inpatient consultations; and assist in performing cus-
tody and other forensic evaluations.

Predoctoral Clinical Intern. Connecticut Valley Hospital, Middletown, CT. Dept. Chief: Mary Rose Brogan, Ph.D. Outpat. Supervisor: Clark Allen, Ph.D. Sept. 1988-present.

> Responsibilities included provision of individual, group, and family psychotherapy both in a long-term state psychiatric hospital and at a hospital-based community mental health clinic. Also functioned as a member of interdisciplinary treatment teams on two inpatient wards. Completed twenty complete psychodiagnostic assessments.

Psychology Trainee. Private practice, Columbus, Ohio. Supervisor: David Tennenbaum, Ph.D. Sept. 1987-July 1988.

> [See description above.]

Psychology Trainee: Southwest Forensic Psychiatric Center. Columbus, Ohio. Supervisor: Kristen E. Haskins, Psy.D. March 1987-September 1987.

> Conducted court-ordered evaluations of criminal defendants' competency to stand trial and responsibility at time of the alleged offense. Administered, scored, and interpreted a wide variety of psychodiagnostic instruments, and prepared written reports for use in determining the legal disposition of referred cases.

Psychology Trainee: Timothy Moritz Forensic Psychiatric Hospital. Columbus, Ohio. March 1988-August 1988.

> Conducted individual and group psychotherapy in a maximum security forensic setting.

Practicum Counselor: Psychological Services Center, The Ohio State University. Columbus, Ohio. April 1986-March 1987. Supervisors: Richard Russell, Ph.D., Nancy Betz, Ph.D., Glenn Good, Ph.D., and Laurie Mintz, Ph.D.

Vice President for Mental Health and Alcoholism Services: Riverside Methodist Hospital (1093 beds). Columbus, Ohio. July 1983-September 1985.

> Had administrative responsibility for a 138-bed facility consisting of comprehensive inpatient and outpatient treatment for both psychiatric and substance abuse patients. Worked with department heads in the development and implementation of a number of innovative programs, including an intensive outpatient program for substance abuse patients. During my tenure as vice president, the unit received a full 3-year accreditation from the Joint Commission on Accreditation of Hospitals (JCAH).

AWARDS/HONORS

. Recipient of University Fellowship for graduate study in psychology at The Ohio State University (1985)

. Recipient of a full Public Health Traineeship for graduate study in health services administration at The George Washington University (1980)

. Recipient of a Postgraduate Fellowship from the Rotary Foundation for graduate study in modern Anglo-Irish literature at Trinity College, the University of Dublin (1978)

. Received the only "High Pass" among students sitting for the Masters comprehensive examinations in English at Purdue University, Fall 1976

. Selected to represent Riverside Methodist Hospital in the Columbus Area Leadership Program (1984)

. Named a Danforth Fellowship finalist (1976)

. Recipient of award as top student-athlete in high school graduating class of 600 (1971)

PUBLICATIONS

Smalldon, J.L. (1979). Impressions of Aran. Irish Heritage, July-August, 11-17, 34.

Smalldon, J.L. (1985). Lonesome for God [commentary on Jack Kerouac's Big Sur]. The Kerouac Connection, No. 8, 12-13.

Smalldon, J.L. (1985). [Review of A Marriage of Poets by Arthur and Kit Knight]. The Small Press Review, 17, 8-9.

Smalldon, J.L. Human nature stained: Colin Wilson and the existential study of modern murder. Accepted for 1991 publication by Paupers' Press, Manchester, England.

SELECTED PRESENTATIONS

. "Assessing Mental Status in the Elderly," invited continuing education presentation sponsored by Riverside Methodist Hospitals, September 1990.

. "Motiveless Murder and the Popular Imagination," presentation at the Popular Culture Association's annual convention, Toronto, March 1990.

. "The Social Construction of Apparently Motiveless Murder," invited symposium at Christ College, undergraduate honors college at Valparaiso University. October 1989.

. "Constructing the Sense in Senseless Murder: An Interdisplinary Perspective," invited symposium at Whiting Forensic Institute, Middletown, Ct. August 1989.

. "Observations on the Moral Career of the Institutionalized Psychiatric Patient," invited presentation to the students of Elisabeth Young-Bruehl's "Madness and Literature" class at Wesleyan University, Middletown, Ct. April 1989.

. "The Phenomenon and Social Construction of Apparently Motiveless Murder," invited presentation to the Dept. of Psychology, Connecticut Valley Hospital, Middletown, Ct. January 1989.

## PROFESSIONAL AND ACADEMIC AFFILIATIONS

. Member, American Psychological Association

. Member, Ohio Psychological Association

. Member, Central Ohio Psychological Association

. Member, Popular Culture Association

## REFERENCES (available on request)

. William W. Wilkins
President, Grant Hospital, and
Executive Vice President,
U.S. Health Corporation
Grant Hospital
111 S. Grant Avenue
Columbus, Ohio 43215
(614) 461-3232

. Donald J. Vincent, M.D.
Medical Director
Riverside Methodist Hospitals'
Gerontology Services
Riverside Methodist Hospitals
3535 Olentangy River Road
Columbus, Ohio 43214
(614) 261-5180

. David J. Tennenbaum, Ph.D.
  3732-J Olentangy River Road
  Columbus, Ohio 43214-3449
  (614) 451-6517

. Ken Bain, Ph.D.
  Riverside Methodist Hospitals'
    Neurological Rehabilitation Center
  3830 Olentangy River Road
  Columbus, Ohio 43214
  (614) 261-4940

. Dorica Nevin, Psy.D.
  Connecticut Valley Hospital
  Silver Street
  Middletown, Connecticut 06457
  (203) 344-2666

OCT 06 '93 15:20 OPDC                                    P.5/5

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,            :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.            :

EXHIBIT AA

AFFIDAVIT OF MICHAEL SHANKS, ESQ.

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Michael Shanks, being first duly sworn according to law, state the following:

    1)  I am an attorney licensed to practice law in the State of Ohio.

    2)  John Garretson and I represented Petitioner Davis at his capital trial in 1984.  That trial resulted in a death sentence for Petitioner Davis.

    3)  Petitioner Davis's death sentence was subsequently reversed by the Ohio Supreme Court.

    4)  The Ohio Supreme Court remanded Petitioner's case to the Butler County Common Pleas Court for a resentencing hearing.  Pursuant to the Ohio Supreme Court's mandate, Petitioner was eligible to receive the death penalty as a potential sentence.

    5)  John Garretson and I were appointed to represent Petitioner at his resentencing hearing.

    6)  Prior to the resentencing hearing, Mr. Garretson and I filed several motions on Petitioner's behalf.

7)  On July 18, 1989, we filed a Motion for Further Psychological Evaluations, Appointment of a Social Worker to Prepare a Social History and for Payment of Extraordinary Expenses for Said Experts.

8)  On July 24, 1989, we filed a Motion to Permit the Defense to Admit All Relevant Evidence at the Sentencing Phase.

9)  The trial court held a hearing on these motions on July 31, 1989.

10)  At this hearing, the trial court overruled both these motions. (Motion Hearing, p. 12.)  Further, the three judge panel informed Mr. Garretson and I that we would not be permitted to introduce any additional evidence on Petitioner's behalf.  The panel was going to limit its decision to the evidence presented at Petitioner's original trial.  (Motion Hearing, p. 12.)

11)  Mr. Garretson and I did proffer some additional mitigating evidence into the record at the resentencing hearing.  This included Petitioner's good prison conduct and a psychological update from Dr. Fisher.  (Resentencing Hearing, p. 2-6.)

12)  We were unable to proffer any additional evidence because the trial court's denial of our motions denied us access to funds and expert assistance.

13)  Had the trial court granted our motions, we would have employed the services of a mitigation specialist and a psychologist.  We would have presented any evidence uncovered by these experts in an attempt to save Petitioner Davis's life.

14)  Petitioner Davis is currently represented by the Ohio Public Defender Commission and has now had access to the expert services we requested at the time of Petitioner's resentencing hearing.

15)  As a result of these services, additional evidence has been uncovered in Petitioner's case.  I have reviewed the exhibits pertaining to

this new evidence including the Affidavits of Alluster Tipton, Elliot Davis, Charles Tipton, Milton Flowers, Sherry Davis, John Lee, Dr. Jeff Smalldon and Dr. Nancy Schmidtgoessling.

16) I consider the information in these affidavits to be relevant to the determination of whether Von Clark Davis should live or die.

17) Had the trial court given me the necessary funds and the opportunity, I would have introduced this evidence at Petitioner's resentencing hearing.

Further Affiant saith naught.

_____
MICHAEL SHANKS

Sworn to and subscribed in my presence this _6_ day of October, 1993.

_____
NOTARY PUBLIC

TERESA L. BRADFORD
NOTARY PUBLIC
STATE OF OHIO
MY COMMISSION
EXPIRES NOV. 22, 1996

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,            :

-vs-                                    :    Case No. CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.            :

EXHIBIT BB

AFFIDAVIT OF JOHN GARRETSON, ESQ.

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, John Garretson, being first duly sworn according to law, state the following:

    1)  I am an attorney licensed to practice law in the State of Ohio.

    2)  Michael Shanks and I represented Petitioner Davis at his capital trial in 1984.  That trial resulted in a death sentence for Petitioner Davis.

    3)  Petitioner Davis's death sentence was subsequently reversed by the Ohio Supreme Court.

    4)  The Ohio Supreme Court remanded Petitioner's case to the Butler County Common Pleas Court for a resentencing hearing.  Pursuant to the Ohio Supreme Court's mandate, Petitioner was eligible to receive the death penalty as a potential sentence.

    5)  Michael Shanks and I were appointed to represent Petitioner at his resentencing hearing.

    6)  Prior to the resentencing hearing, Mr. Shanks and I filed several motions on Petitioner's behalf.

7)  On July 18, 1989, we filed a Motion for Further Psychological Evaluations, Appointment of a Social Worker to Prepare a Social History and for Payment of Extraordinary Expenses for Said Experts.

8)  On July 24, 1989, we filed a Motion to Permit the Defense to Admit All Relevant Evidence at the Sentencing Phase.

9)  The trial court held a hearing on these motions on July 31, 1989.

10)  At this hearing, the trial court overruled both these motions. (Motion Hearing, p. 12.)  Further, the three judge panel informed Mr. Shanks and I that we would not be permitted to introduce any additional evidence on Petitioner's behalf.  The panel was going to limit its decision to the evidence presented at Petitioner's original trial.  (Motion Hearing, p. 12.)

11)  Mr. Shanks and I did proffer some additional mitigating evidence into the record at the resentencing hearing.  This included Petitioner's good prison conduct and a psychological update from Dr. Fisher.  (Resentencing Hearing, p. 2-6.)

12)  We were unable to proffer any additional evidence because the trial court's denial of our motions denied us access to funds and expert assistance.

13)  Had the trial court granted our motions, we would have employed the services of a mitigation specialist and a psychologist.  We would have presented any evidence uncovered by these experts in an attempt to save Petitioner Davis's life.

14)  Petitioner Davis is currently represented by the Ohio Public Defender Commission and has now had access to the expert services we requested at the time of Petitioner's resentencing hearing.

15)  As a result of these services, additional evidence has been uncovered in Petitioner's case.  I have reviewed the exhibits pertaining to

this new evidence including the Affidavits of Alluster Tipton, Elliot Davis, Charles Tipton, Milton Flowers, Sherry Davis, John Lee, Dr. Jeff Smalldon and Dr. Nancy Schmidtgoessling.

16) I consider the information in these affidavits to be relevant to the determination of whether Von Clark Davis should live or die.

17) Had the trial court given me the necessary funds and the opportunity, I would have introduced this evidence at Petitioner's resentencing hearing.

Further Affiant saith naught.

JOHN GARRETSON

Sworn to and subscribed in my presence this 6th day of October, 1993.

NOTARY PUBLIC

JUDITH C. ROUSH
Notary Public, State of Ohio
My Commission Expires Nov. 14, 1995

P O Box 69
London, Ohio, 43140

EXHIBIT CC

Dear Mr. Bressler.

My name is Robert Jones Beard, you may recall I talked with you in 1971 regarding the murder trial of Von C. Davis. I was in the house at the time of the murder and I must confess, I did see more than I previously told you about. Let me first make a couple of things clear I know Von committed a formidable crime, but under the circumstances I witnessed he had no intentions of committing the crime. And I'm only providing this belated information with the understanding that I'm not incriminating myself.

I'll be straight to the point. At the time of the crime I simply decided I don't want to get involved, and my close friends thought it was wise that I stay out of it. I thought you would help Von more than you did as his counsel, and he wouldn't have to serve so much time I have finally discovered the beauty of God and my conscience is afire, so I want to do what God would want me to do. Ernestines parents are nice people, and I just couldn't tell them she actually provoked the crime.

When Von came that day of the murder, Ernestine and I was upstairs, he arrived at the backdoor and she asked who was it, and he told her. She cursed to me about being tired of that bastard, and would stick him. She withdrew a large knife from under the mattress and swore she would use it. It wasn't my business so I stayed out of it. They were arguing in the kitchen, and when it became very loud I decided to leave coming down the stairs I remember him asking her why did she have a knife? Moving toward the door I saw Ernestine strike at Von with the knife, and then heard wrestling. To be honest with you, Ernestine was the aggressor and not Von, he was trying to talk to her. I couldn't see much more, only heard Ernestine yelling that she would kill him. I went back upstairs to comfort the children.

It is to my understanding that Von was too confused to tell the true facts, and I can't understand why you couldn't detect this. I know it was premeditation because he did not have a knife with him, the knife that killed Ernestine was the

Knife she withdrew from the mattress, because I saw it.
I dont know if this is going to help Von now, but I must
relay this confession out to his family so they will know
the truth. I was thinking of showing this letter to Von
since I see him down here every day. What do you suggest?
I must tell him sooner or later. If you wish to write me or
visit, please feel free. I must help him, God knows it was
not his fault.

Concern,

Robert G Jones Beard

EXHIBIT DD

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,               :

-vs-                                    :    Case No.  21655

VON CLARK DAVIS,                        :    EVIDENTIARY HEARING REQUESTED

    Defendant-Petitioner.               :

PETITION TO VACATE OR
SET ASIDE SENTENCE:  R.C. 2953.21

    Now comes Petitioner Von Clark Davis, by and through his counsel, and
petitions this Honorable Court for post-conviction relief pursuant to Ohio
Rev. Code Ann. Section 2953.21 as follows:

JURISDICTIONAL FACTS

    1)  On January 12, 1971, Petitioner Davis was indicted by the Butler
County Grand Jury on one count of First Degree Murder in violation of O.R.C.
2901.01.

    2)  On February 9, 1971, Petitioner Davis filed a motion to take the
deposition of Robert Beard Jones, which the trial court entered and ordered
the deposition to be taken on March 17, 1971.

    3)  On March 26, 1971, Petitioner Davis filed a motion to enter
additional plea of not guilty by reason of insanity, which that court entered
and counsel for Petitioner Davis withdrew on April 18, 1971.

    4)  Petitioner's trial began on April 12, 1971, and continued to April
13, 1971.

    5)  On April 13, 1971, Richard J. Wessel, Prosecuting Attorney of Butler
County, entered a Nolle Prosequi to the words "deliberate" and "premeditated,"
in Petitioner's indictment.

6)  Petitioner Davis pled guilty to the remaining charge in the indictment on April 20, 1971, and was sentenced to life in prison.

7)  Petitioner Davis was represented at trial by the following attorneys:

    A)  H. Joseph Bressler

    B)  Hugh D. Holbrock

        Holbrock, Jonson, Bressler and Houser
        315 South Monument Avenue
        Hamilton, Ohio    45011

8)  On April 14, 1981, Petitioner Davis filed a motion for leave to file for a new trial in the Court of Common Pleas.  The trial court overruled the motion on April 22, 1981.

9)  Petitioner Davis was represented at this post-trial motion by the following counsel:

    A)  H. Joseph Bressler

    B)  Hugh D. Holbrock

        Holbrock, Jonson, Bressler and Houser
        315 South Monument Avenue
        Hamilton, Ohio    45011

10)  Mr. Davis alleges a denial or infringement of his rights, as to render his judgment or conviction void or voidable under the Ohio Constitution and the United States Constitution.

11)  Some of the constitutional errors which entitle Mr. Davis to relief and which were not included in the record and therefore could not have been fully and completely asserted on appeal, include the following:

<u>FIRST CAUSE OF ACTION</u>

12)  Petitioner Davis hereby incorporates paragraphs one (1) through eleven (11) as if fully rewritten herein.

Ernestine was killed.  This letter was addressed to H.J. Bressler, attorney for Von Clark Davis.  (Exhibit 1.)

    20)  The evidence of Robert Beard demonstrated that:

        a)  Mr. Beard was present in the house at the time Ernestine Davis was killed.

        b)  Mr. Beard saw more than what he had previously told Petitioner Davis's attorneys.

        c)  Mr. Beard stated that Petitioner had no intention of killing Ernestine Davis.

        d)  At the time of the killing, Mr. Beard did not want to get involved.

        e)  On the day of the killing, Ernestine and Robert Beard were upstairs.

        f)  Von Davis arrived at the back door of the house. Ernestine cursed and said she was "tired of that bastard and would stick him."

        g)  Ernestine took a large knife from under the mattress and "swore she would use it".

        h)  Beard heard Von and Ernestine arguing in the kitchen.  When he came down the stairs, he heard Von ask Ernestine why she had a knife.  Beard saw Ernestine strike at Von with the knife and heard wrestling.

        i)  Beard stated in his letter that Ernestine was the aggressor and Von was trying to talk to her.  He stated that he heard Ernestine yelling that she would kill Von.

    21)  The above described circumstances demonstrate that Von's actions towards Ernestine were a response to her aggressive and threatening behavior. Robert Beard's evidence demonstrates that the killing of Ernestine was not "purposeful" as required by the statute under which Von Davis was convicted.

    22)  Petitioner's conviction must be reversed.

<u>DEMAND FOR RELIEF</u>

WHEREFORE, Petitioner Von Clark Davis requests the following relief:

1) That Petitioner be granted an evidentiary hearing pursuant to O.R.C. Section 2953.21.

2) That Petitioner's conviction be determined void or voidable.

3) For such other further relief as the court may deem just and proper.

Respectfully submitted,

JAMES KURA - 0014857
Ohio Public Defender

JOANN BOUR-STOKES - 0037265
Chief Appellate Counsel,
Death Penalty Division

LINDA E. PRUCHA - 0040689
Assistant State Public Defender

Ohio Public Defender Commission
8 East Long Street - 11th Floor
Columbus, Ohio   43266-0587
614/466-5394

COUNSEL FOR DEFENDANT-PETITIONER

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,               :

-vs-                                    :     Case No.  CR 83-12-0614

VON CLARK DAVIS,                        :

    Defendant-Petitioner.               :


EXHIBIT  DD

AFFIDAVIT OF CAROL DAVIS Smith (CS)

STATE OF OHIO,

COUNTY OF BUTLER, SS:

    I, Carol Davis, Smith (CS) being first duly sworn according to law, state the following:

    1)  I am Petitioner Davis's sister.

    2)  I would have been willing to testify at my brother's capital trial in 1984 and at his resentencing hearing in 1989.

    3)  My testimony would have included information about our childhood and facts about Von's life.

    4)  I remember my brother as being very adventurous and a risk-taker.  If there was anything we could get into to have fun, we would do it.

    5)  Von was the nuttiest as far as taking risks.

6)  I love my brother and do not want him to be executed.

Further Affiant saith naught.


CAROL DAVIS *Smith (C.S.)*

Sworn to and subscribed in my presence this *4* day of *October*, 1993.

NOTARY PUBLIC

J. CHRISTOPHER MELLIN
Notary Public, State of Ohio
My Commission Expires Jan. 8, 1996