IMAGED

## IN THE COURT OF APPEALS
## TWELFTH JUDICIAL DISTRICT
## BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| **STATE OF OHIO,** | : | **Court of Appeals Case No. CA89-09-123** |
| **Appellee,** | FILED in Court of Appeals<br>BUTLER COUNTY, OHIO : | **Appeal taken from Court of Common Pleas, Butler County** |
| | AUG 21 1998 | **Case No. CR83-12-0614** |
| **v.** | CINDY CARPENTER<br>CLERK OF COURTS | **Direct Appeal of Right in a Capital Case** |
| **VON CLARK DAVIS,** | : | |
| **Appellant.** | : | **Application for Reopening Pursuant to App.R. 26(B)** |



### I.    Introduction.

Pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, Von Clark Davis submits this application to reopen his direct appeal on the grounds that his prior appellate counsel provided ineffective assistance of counsel on his direct appeal.[1]  Prior appellate counsel's failure to raise meritorious issues in this Court constituted ineffective assistance of counsel which substantially prejudiced Mr. Davis.  A reasonable probability exists that, but for such ineffective assistance, Mr. Davis' aggravated murder conviction would have been reversed and his death sentence would have been vacated.  See Exhibit "A" (Affidavit of Lori Leon, Esq.).  The assignments of error listed below constitute colorable claims of ineffective assistance of counsel and thus satisfy the threshold requirement for reopening an appeal.[2]  Due to the severe page limitation imposed by Rule 26(B), Mr. Davis is unable to fully brief these assignments of error.  Thus, this application is not presented in lieu of full briefing and does not constitute full or adequate presentation of the facts and law.

---

[1] See Strickland v. Washington, 466 U.S. 668 (1984).
[2] Ohio R. App. P. 26(B), Staff Note (July 1, 1993 Amendment); State v. Murnahan, 63 Ohio St. 3d  60, 66 (1992).



IMAGED

## II.    Procedural history.

After the reenactment of Ohio's death penalty scheme in 1981, Mr. Davis was the first

person to be sentenced to death in Butler County. A three judge panel heard his case and filed its

sentencing opinion on June 11, 1984. This Court heard Mr. Davis' direct appeal of his

conviction and sentence and filed its judgment affirming the conviction and death sentence on

May 27, 1986. State v. Davis, No. CA84-06-071, 1986 WL 5989 (Butler Ct. App. 1986). The

Ohio Supreme Court heard Mr. Davis' direct appeal of right regarding his conviction and

sentence and issued its judgment on September 14, 1988. State v. Davis, 38 Ohio St.3d 361, 528

N.E.2d 925 (1988). This judgment affirmed the conviction, reversed the death sentence, and

remanded the case for a resentencing hearing. On remand, the three judge panel resentenced Mr.

Davis to death and filed its opinion on August 10, 1989. This Court affirmed the resentence on

October 29, 1990.[3] State v. Davis, No. CA89-09-123, 1990 WL 165137 (Butler Ct. App. 1990).

The Ohio Supreme Court affirmed the resentence on February 19, 1992. State v. Davis, 63 Ohio

St.3d 44, 584 N.E.2d 1192 (1992).

## III.    Mr. Davis' prior appellate counsel could not have raised any claim of ineffective assistance of appellate counsel.

Mr. Davis was represented on his first direct appeal in this Court and the Ohio Supreme

Court by Timothy Evans. Mr. Evans could not have raised any claim of ineffective assistance of

appellate counsel in the direct appeal to this Court because an attorney is precluded from raising

such a claim against himself.[4] On remand, Mr. Davis was represented by Mr. Garretson, Mr.

Shanks, and Mr. Evans in the trial court. After the three judge panel resentenced Mr. Davis to

---

[3] This application addresses claims of ineffective assistance of counsel that occurred during this appeal.
[4] State v. Cole, 2 Ohio St.3d 112, Syl., 113 n.1, 443 N.E.2d 169, 170, 171 (Ohio 1982); State v. Carter, 36 Ohio Misc. 170, 173, 304 N.E.2d 415, 417 (Ohio C.P. 1973). Further, it appears that neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit have required an attorney to raise a claim of ineffective assistance of counsel against himself.

2



death, Joann Bour-Stokes and Linda Prucha represented Mr. Davis on his second direct appeal in this Court and the Ohio Supreme Court. Neither Ms. Bour-Stokes nor Ms. Prucha could have raised a claim of ineffective assistance of appellate counsel against themselves or each other.[5] Ms. Prucha continued to represent Mr. Davis during his state post-conviction proceedings; she only recently withdrew from representing Mr. Davis.

**IV.    It was impossible for Mr. Davis to comply with any time requirement contained in Rule 26(B) or Murnahan.**

This assignments of error contained in this application address the judgment that was filed by this Court on October 29, 1990. It was impossible for Mr. Davis to comply with any time requirement contained in Rule 26(B) because this rule was enacted approximately three years after the journalization of the appellate judgment of this Court in 1990.[6] It was also impossible for Mr. Davis to comply with any time requirement contained in Murnahan because that decision was issued approximately two years after the journalization of the appellate judgment of this Court in 1990.[7]

**V.    Pursuant to Rule 26(B), good cause exists for this delayed filing.**

Rule 26(B) contains no time requirement for filing an application where the applicant has shown good cause.[8] The good cause requirement has been met here because (1) meritorious issues of appellate ineffectiveness constitutes good cause; and (2) prior appellate counsel could not have raised any claims of ineffective assistance of appellate counsel.

---

[5] Cole, 2 Ohio St.3d at Syl., 113 n.1, 443 N.E.2d at 170, 171. Further, it appears that neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit have required an attorney to raise a claim of ineffective assistance of counsel against himself.
[6] Rule 26(B) provides that an application to reopen must be filed within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.
[7] Applying these rules to Mr. Davis would be unconstitutionally retroactive. See Landgraf v. U.S.I. Film Prods., 511 U.S. 244 (1994).
[8] See State v. Sparks, No. L-84-143 (Ohio App. Lucas Co. Feb. 11, 1997) (attached hereto as Exhbit "B"); State v. Williams, No. 88-J-26 (Ohio App. Jefferson Co. June 1, 1995) (attached hereto as Exhibit "C"). See also State v. Pinkerman, 88 Ohio App.3d 158, 161, 623 N.E.2d 643, 645 (Ohio 1993).

3



VI.     **Prior appellate counsel failed to raise meritorious claims in this Court.**

Prior appellate counsel failed to raise the following meritorious assignments of error in

this Court.

## ASSIGNMENT OF ERROR I
**Mr. Davis was denied his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution because errors in the resentencing opinion violated the United States Constitution.**

In the resentencing opinion, the three judge panel found that the following four mitigating

factors existed in Mr. Davis' case:

1) The Defendant adjusted well to prison routine and during his stay in prison, obtained a high school G.E.D. and an associate degree in Business Administration, and studied for and worked as a dental technician.

2) There has always been a good family relationship between the Defendant and all members of his family, including his stepfather.

3) Since his release on parole, he has maintained at least partial employment.

4) As testified by the psychologist, Defendant has a compulsory personality disorder or explosive disorder which may have contributed to the violence in this case.

The panel then found that these factors deserved only slight weight:

Defendant's explosive personality disorder, which we found may have contributed to the violence in the case at bar, may explain it but in no way excuses it, and is not of such a nature as would have any great mitigating effect.

It was erroneous for the panel to consider the disorder as an "excuse" for the crime and

then discount the disorder's validity as a mitigating factor.[9]

The panel then found that Mr. Davis' personality disorder, "is such as would be had of

numerous offenders where the death sentence would not be mitigated." This finding shows that

the panel failed to conduct the constitutionally-required individualized determination of the

---

[9] See Eddings v. Oklahoma, 455 U.S. 104 (1982); Lockett v. Ohio, 438 U.S. 586, 605 (1978); State v. Lawrence, 44 Ohio St. 3d 24 (1989).

4



appropriateness of a death sentence.[10]  Further, Mr. Davis was not afforded the opportunity to

rebut this proposition.[11]

## ASSIGNMENT OF ERROR II

**Mr. Davis was denied his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution because: (A) prosecutorial misconduct occurred at the resentencing that violated his rights under the United States Constitution; and (B) trial counsel in violation of the United States Constitution failed to object to the prosecutorial misconduct that occurred at the resentencing that violated his rights under the United States Constitution.**

At the resentencing before the three judge panel in 1989, the prosecutor argued, inter alia,

the following:

A) "the aggravating circumstance is that the defendant has not once, but twice, been convicted or [sic] purposely killing another..." Tr. 8/4/89 at 7;

B) "this defendant, a repeat offender..." Id.;

C) "...is there anything more important in this case than the fact that Von Clark Davis is a repeat offender? I submit it's the most significant thing in this defendant's history, character or background...that Your Honors can consider." Id. at 8;

D) that the "aggravating circumstance on that issue, that the defendant was convicted of killing Ernestine Davis on December 30, 1970, by inflicting 27 stab wounds to her chest, her stomach and to her hands and elbows....And we only consider that aggravating circumstance now because he killed again." Id.;

E) "The aggravating circumstance in this case, repeat killing, recognizes a special danger demonstrated by an individual who purposely and repeatedly kills another, purposely and repeatedly disregard the safety, personal integrity and human worth of others." Id. at 8-9.

F) "We have that well demonstrated propensity for violence in this case.  So that's the aggravating circumstance that we weigh in this case." Id. at 9;

G) "We know what his future dangerousness was in 1983." Id. at 10;

H) "it's hard to say that this defendant is not too dangerous, that we can predict that he's not too dangerous." Id. at 11;

---

[10] See Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934, 2947 (1989); Gregg v. Georgia, 428 U.S. 153 (1976); Woodson v. North Carolina, 428 U.S. 280, 304 (1976); Lockett, 438 U.S. at 605.

[11] See Skipper v. South Carolina, 476 U.S. 1, 5 n.1 (1986); Gardner v. Florida, 430 U.S. 349 (1977).

IMAGED

I) "How is it relevant to whether he deserves the death sentence for a repeat killing." Id. at 12;

J) "He fully appreciated the wrongfulness of the act and that's evidenced by the...the covert way in which he purchased the gun." Id. at 13;

K) "And that's what we have in this case, a double killing...separated in time by thirteen years, but nevertheless under the same subsection of the law...a double killing, a repeat offender." Id. at 26;

L) "It's not the end of the story to say that he was a repeat offender, but you have to weigh it, weigh the significant fact that he is a repeat offender and weigh how much weight you give to the mitigation that they...they presented in this case." Id. at 27; and

M) "that fact that he is a repeat offender did not deter Von Clark Davis." Id. at 28

These arguments were improper and constituted prosecutorial misconduct because future dangerousness and "a course of conduct involving the purposeful killing of or attempt to kill two or more persons" were not aggravating circumstances in this case.[12]

## ASSIGNMENT OF ERROR III

**Mr. Davis was denied his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution because (A) the presiding trial judge's consideration of Mr. Davis' failure to take responsibility for the crime is improper and in violation of the United States Constitution; and (B) trial counsel was ineffective in violation of the United States Constitution because they failed to object to the presiding trial judge's consideration of Mr. Davis' failure to take responsibility for the crime as improper and in violation of the United States Constitution.**

Judge Brewer was the initial judge assigned to hear Mr. Davis' case and thus the presiding judge on the three-judge panel. See Exhibit "D" at 16 (Deposition of Michael Shanks, Esq.). According to Mr. Shanks, prior to the jury waiver there were conversations where Judge Brewer indicated that (1) "one of the things he considered to be important was acceptance of responsibility and ... fault for causing this death," id. at 18-19; (2) "he would be not likely to vote for death in a situation where a person would come forth and truly accept and show remorse," id. at 19; (3) if Mr. Davis "persisted in the story ... in which [he] insisted that he wasn't responsible

6



for the death of Suzette Butler, that [Judge Brewer] would be more inclined to impose the death penalty," id.; (4) he would be more inclined to impose the death penalty "if there was this lack of remorse or lack of acceptance of ... responsibility," id.; and (5) was going to "consider the factor of [Mr. Davis'] lack of remorse or lack of coming forward and accepting responsibility for the death as part of his thought process about whether to impose the death penalty," id. at 19-20. The judge's consideration of such lack of remorse or lack of acceptance of responsibility was improper and violated Mr. Davis' rights.[13] For example, this consideration (1) constituted a nonstatutory aggravating factor;[14] (2) violated Mr. Davis' Fifth Amendment right not to incriminate himself; (3) demonstrated that the judge made a credibility determination regarding Mr. Davis prior to his trial testimony; (4) demonstrated that the judge made a determination as to Mr. Davis' guilt and sentence prior to trial; (5) violated Mr. Davis' Sixth Amendment right to trial and sentencing by an impartial factfinder; (6) violated Mr. Davis' procedural and substantive due process rights; and (7) violated Mr. Davis' Eighth Amendment rights.

### ASSIGNMENT OF ERROR IV
**Mr. Davis was denied his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution because: (A) the rebuttal evidence introduced by the prosecutor at the sentencing phase was improper and in violation of the United States Constitution; and (B) trial counsel was ineffective in violation of the United States Constitution because they failed to object to the improper rebuttal evidence introduced by the prosecutor at the sentencing phase.**

During the sentencing phase, the prosecutor introduced evidence regarding the prior purposeful killing through the testimony of Captain Carpenter, Hamilton Police Department. Tr. 412. Captain Carpenter testified about his investigation surrounding the prior killing and referred to the victim's stab wounds and Mr. Davis' statement in that case. Tr. 414. The

---

[12] See R.C. §§ 2929.03, 2929.04; U.S. Const. Amds. V, VI, VIII, XIV.

[13] See U.S. Const. Amds. V, VI, VIII, XIV.

[14] A capital defendant's lack of remorse or lack of acceptance of responsibility is not a statutory aggravating circumstance. See R.C. § 2929.04.

7



prosecutor also introduced photographs of the crime scene of the prior killing. Tr. 415. This

evidence was improper because (1) it did not rebut anything presented by Mr. Davis at the

sentencing phase and (2) the aggravating circumstance of being convicted of a prior purposeful

killing had already been proven at the trial phase.[15]

## ASSIGNMENT OF ERROR V

**Mr. Davis was denied his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution because: (A) Ohio's death penalty scheme regarding the standard of proof of a mitigating factor in a case tried to a three judge panel violates the United States Constitution; and (B) trial counsel was ineffective in violation of the United States Constitution because they failed to raise the claim that Ohio's death penalty scheme regarding the standard of proof of a mitigating factor in a case tried to a three-judge panel violates the United States Constitution.**

Revised Code § 2929.03(D) is unconstitutional because it fails to prescribe a standard of

proof for a mitigating factor in a case tried to a three-judge panel.[16]

## ASSIGNMENT OF ERROR VI

**Mr. Davis was denied his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution because trial counsel was ineffective in violation of the United States Constitution due to their failure to inform Mr. Davis that his case would be subjected to a lower standard of appellate review if tried to a three judge panel (rather than a jury).**

The Ohio Supreme Court has adopted a rule that when it reviews a death penalty appeal

from a trial before a three judge panel, it will presume that the panel considered only relevant,

material, and competent evidence in reaching its decision unless the record affirmatively

demonstrates otherwise.[17] This presumption is effectively irrebuttable. The defendant has no

way to create a record regarding the panel's decision. This presumption is unconstitutional.[18]

---

[15] See U.S. Const. Amds. V, VI, VIII, XIV.
[16] See Furman v. Georgia, 408 U.S. 238 (1972); U.S. Const. Amds. V, VI, VIII, XIV.
[17] State v. White, 15 Ohio St. 2d 146, 151, 239 N.E.2d 65, 70 (Ohio 1968); State v. Post, 32 Ohio St. 3d 380, 384, 523 N.E.2d 754, 759 (Ohio 1987).
[18] See U.S. Const. Amds. V, VI, VIII, XIV.

IMAGED

## VII. Conclusion.

For the above reasons, Mr. Davis requests that this Court grant his application.

Respectfully submitted,

JOHN MARSHALL - 0015160
111 West Rich Street, Suite 430
Columbus, Ohio 43215
(614) 463-9790
(614) 463-9780 (facsimile)

DAVID H. BODIKER - 0016590
Ohio Public Defender

LORI LEON - 0065584
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215-2998
(614) 466-5394
(614) 728-3670 (facsimile)

COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

A copy of the foregoing document was sent via regular first class U.S. Mail to John Holcomb, Butler County Prosecutor's Office, 216 Key Bank Building, 6 South Second St., Hamilton, OH 45012, on this 21 day of August, 1998.

Counsel for Appellant

*davis murnahan 2/73231*

9



IN THE COURT OF APPEALS
TWELFTH JUDICIAL DISTRICT
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| **STATE OF OHIO,** | : | **Court of Appeals Case No. CA89-09-123** |
| **Appellee,** | : | **Appeal taken from Court of Common Pleas, Butler County** |
| **v.** | | **Case No. CR83-12-0614** |
| | : | |
| | | **Direct Appeal of Right in a Capital Case** |
| **VON CLARK DAVIS,** | : | |
| | | **Application for Reopening Pursuant to** |
| **Appellant.** | : | **App.R. 26(B)** |

---

## EXHIBIT A

---

AFFIDAVIT OF LORI LEON, ESQ.
IN SUPPORT OF APPLICATION FOR REOPENING
PURSUANT TO APP.R. 26(B)

STATE OF OHIO

        SS:

FRANKLIN COUNTY

I, Lori Leon, having been duly sworn state as follows:

1.     I am an attorney licensed to practice law in the State of Ohio.

2.     I am currently employed by the Office of the Ohio Public Defender as an Assistant State Public Defender. As part of my duties, I was assigned to represent Von Clark Davis in his death penalty federal habeas proceedings which commenced in March, 1997, and have continued to represent him since that time.

3.     Upon my review of the record in Mr. Davis' case I identified several assignments of error that were not raised by his previous direct appeal counsel.

4.     I hereby swear that, in my opinion, each Assignment of Error concerns a prejudicial deficiency in the representation provided by prior appellate counsel in his direct appeal to



this Court. Each issue is worthy of full briefing and full consideration by this Court. See Application for Reopening, Court of Appeals Case No. CA89-09-123

5.     I believe that Mr. Davis was prejudiced by the deficiencies in the representation provided by former appellate counsel in that, if the identified assignments of error had been raised, Mr. Davis' conviction and death sentence would have been vacated and appellate relief would have been granted. Id.

Further affiant sayeth naught.

_____
LORI LEON

Sworn to before me and subscribed in my presence this 20th day of August, 1998.

_____
NOTARY PUBLIC

Randall L. Porter, Notary Public,
State of Ohio, My Commission is
perpetual in accordance with
Section 147.03 O.R.C.

*davis murnahan affidavit 2/73185*

COURT OF APPEALS
FILED
1997 FEB 11 A 11: 45
LUCAS COUNTY, OHIO
HARRY BARLOS
CLERK OF COURTS

IMAGED

IN THE COURT OF APPEALS OF LUCAS COUNTY

State of Ohio                      Court of Appeals No. L-84-143

        Appellee                Trial Court No. CR 83-6925

v.

Joel Sparks                        DECISION AND JUDGMENT ENTRY

        Appellant               Decided: FEB 11 1997

* * * * *

       Appellant has filed an application for reopening based
upon a claim of ineffective assistance of appellate counsel.

       Appellant was convicted of murder in December 1983;
this court affirmed that conviction in 1984. See State v. Sparks
(Dec. 14, 1984), Lucas App. No. 1-84-143, unreported. Since that
time, appellant's case was assigned for review by the Ohio Public
Defender Commission. Appellee has filed no response to the
motion.

       App. R. 26(B)(6) provides that an application for
reopening shall be granted if there is a genuine issue as to
whether the applicant was deprived of the effective assistance of
appellate counsel. An application for reopening must be filed
within ninety days from journalization of the appellate judgment,
unless the applicant shows good cause for filing at a later time.
App.R. 26(B)(1).

EXHIBIT
B

JOURNALIZED

FEB 12 1997

1.

IMAGED

In this case, appellant asserts that although trial counsel objected to an allegedly improper jury instruction as to the affirmative defense of self-defense and the duty to retreat from one's own home, his appellate counsel failed to argue such error on direct appeal. As a result of this failure, appellant contends that he was denied effective assistance of counsel.

In order to prove ineffective assistance of counsel, a defendant must show 1) that defense counsel's representation fell below an objective standard of reasonableness and 2) that counsel's deficient representation was prejudicial to defendant's case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, citing Strickland v. Washington (1984), 466 U.S. 668.

In this case, we conclude that the failure to assert an assignment of error as to the self-defense jury instruction creates a genuine issue as to whether the applicant was deprived of the effective assistance of appellate counsel. This proposed error was not discovered until recently reviewed by the Ohio Public Defender's office.

Accordingly, in the interest of justice, appellant's motion for reopening, limited to arguments related to the self-defense jury instructions, is well-taken and granted. The clerk for Lucas County Court of Appeals is granted 20 days from the date of this decision in which to reassemble the record. Appellant will have 20 days from the date of notice of transmission of the record in which to file his brief.

JOURNALIZED

FEB 12 1997
Cassette 209

IMAGED

State v. Sparks
L-84-143

Melvin L. Resnick, P.J.

James R. Sherck, J.

Richard W. Knepper, J.
CONCUR.

JUDGE

JUDGE

JUDGE

COPY

JOURNALIZED

FEB 12 1997
Cassette 209
PG. 78

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 2843

IMAGED

1995 WL 338613, State v. Williams, (Ohio App. 7 Dist. 1995)                                Page 1

*338613    NOTICE: RULE 2 OF THE OHIO SUPREME COURT RULES FOR THE REPORTING OF OPINIONS IMPOSES RESTRICTIONS AND LIMITATIONS ON THE USE OF UNPUBLISHED OPINIONS.

STATE of Ohio, Plaintiff-Appellee,
v.
Samuel WILLIAMS, Defendant-Appellant.

88-J-26.

Court of Appeals of Ohio, Jefferson County.

June 1, 1995.

Criminal Appeal from Common Pleas Court Case No. 87-CR-70. Reversed and Remanded.

Stephen M. Stern, Pros Atty., Debra Romantic-Boros, Asst. Pro Atty., Steubenville, for plaintiff-appellee.

James Kura, Ohio Public Defender, Kort Gatterdam, Asst. State Public Defender, Ohio Public Defender Com'n, Columbus, for defendant-appellant.

*O P I N I O N*

DONOFRIO, Judge.

**1  This matter was previously before this court on direct appeal.  On July 3, 1990, this court entered its affirmation of a jury verdict wherein defendant-appellant, Samuel Williams, was convicted of aggravated murder following a trial in the Jefferson County Common Pleas Court in June of 1988. The same attorneys which handled the trial and the previous appeal then filed an appeal with the Ohio Supreme Court.  The Supreme Court dismissed the appeal on December 19, 1990.

On October 7, 1992, appellant, by and through new counsel, filed an application for delayed reconsideration based upon the Ohio Supreme Court's decision in *State v. Murnahan* (1992), 63 Ohio St.3d 60.  *Murnahan* permits a delayed claim of ineffective assistance of appellate counsel.  The basis of that application was appellate counsel's failure to assign as error certain "acquittal first" instructions that were given to the jury before they could consider a lesser included offense, a violation

of the holding in *State v. Thomas* (1988), 40 Ohio St.3d 213, U.S. certiorari denied (1989), 493 U.S. 826.  The holding in *Thomas* was announced subsequent to appellant's trial, but in time to raise the issue on appeal.  Appellant's counsel did not raise the issue in appellant's first appeal.

The issue raised in this appeal centers on two instructions to the jury regarding the lesser included offense of murder.  The first questioned instruction was given before the jury entered deliberations.  The second questioned instruction was given the morning preceding the jury's second day of deliberations when the trial court gave amplified instructions as to how the jury should consider the lesser included offense of murder.

In appellant's first assignment of error, he contends:

"The trial court erred in instructing the jury that they must acquit appellant of aggravated murder before they could consider the lesser included offense of murder.  Said error deprived appellant of his Ohio and United States constitutional rights to due process of law."

In appellant's second assignment of error, he contends:

"Appellant was deprived of his right to the effective assistance of trial and appellate counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section Ten of the Ohio Constitution when his trial counsel failed to object to an acquittal first instruction and the same counsel on appeal failed to raise the acquittal first issue."

Since this case is being considered by us pursuant to *State v. Murnahan, supra,* we must restrict our analysis to that portion of appellant's second assignment of error which claims a deprivation of effective assistance of appellate counsel.  As such, the first assignment of error is overruled.

With the foregoing in mind, error by the trial court as claimed by appellant must be such that previous appellate counsel should have raised it in the original appeal of this action.  Further, counsel's failure to do so must have resulted in prejudice to the appellant.  We thus begin with first determining if [...] issue were in fact error.

EXHIBIT

C

Copyright (c) West Group 1998 [...] Govt. works

IMAGED

\*\*2 In *State v. Thomas, supra,* the Ohio Supreme Court referred to instructions wherein a jury is told that they must unanimously find a defendant not guilty of an offense before considering a lesser included offense as an "acquittal first" instruction. The Supreme Court then indicated in *Thomas,* at 219-220, that:

"\*\*\* We reject the 'acquittal first' instruction approved by the court of appeals below because such an instruction encroaches on the province of the jury to decide questions of fact and to arrive at a verdict based on all the evidence before it and on all the various offenses on which it has been properly instructed.

"The defendant's right to have the jury instructed on a lesser included offense is fundamental to providing defendant with a fair trial. \*\*\* Although the risk of coerced decisions may be present in any jury deliberation, \*\*\* the 'acquittal first' instruction exacerbates such risk."

Despite its holding in *Thomas,* the Supreme Court opted not to reverse the conviction of the defendant in that particular case. The instruction in question in the *Thomas* case reads:

"'If you find that The State has proven beyond a reasonable doubt all of the essential elements of the crime of aggravated murder, then your verdict must be that the Defendant is guilty of aggravated murder; and you will not consider the lesser offense.

"'However, if you find that The State has failed to prove beyond a reasonable doubt the element of prior calculation and design, then your verdict must be that the Defendant is not guilty of aggravated murder.

"'You will then proceed with your deliberations and decide whether The State has proven beyond a reasonable doubt all of the essential elements of the lesser crime of murder."' *State v. Thomas, supra,* at 220

The Supreme Court found that the above instruction did not expressly require a unanimous acquittal on the charged crime before the jury was permitted to consider the lesser included offense. The Supreme Court indicated that this instruction addresses possible disagreement by the jury on an

element of the crime and a corresponding inability to reach a verdict of aggravated murder.

The Supreme Court went on to state that this instruction has negligible coercive potential because it speaks to the jury's inability to find, whether unanimously or not, a certain element of the greater offense. The court went on to affirm the conviction of aggravated murder while stressing that a better instruction would have been to incorporate the "inability to agree" language adopted by the court in its opinion.

The trial court's instructions that are first questioned in the present case are as follows:

"Finally you may find that the Defendant is not guilty of both the charge of aggravated murder and the specification. Any of these verdicts reached by your body must be unanimous.

"If you find that the State has failed to prove each and every element of the crime of aggravated murder as I have instructed you, you will then return a verdict of not guilty to that charge. At this point you will then continue to deliberate and determine whether or not the Defendant is guilty of the lessor (*sic.*) included charge of murder." (Tr. 760)

\*\*3 In the present case, appellee, State of Ohio, contends that these jury instructions given after trial did not expressly require a unanimous "not guilty" verdict before consideration of the lesser included offense. Appellee contends that these instructions were very similar to the instructions given in the *Thomas* case, which were approved by the Supreme Court.

We agree with appellee that these instructions are very similar to the *Thomas* instructions. In reading both instructions, they are very close in wording and in how we would interpret them. According to *Thomas,* both are acceptable. Appellant emphasizes that the paragraph prior to the first instruction refers to the fact that "Any of these verdicts reached by your body must be unanimous." This reference was to several possible verdicts referred to prior to the instruction in question. We feel that this instruction when read in total with all of the other instructions given right after the trial, as in *Thomas,* did not expressly require a unanimous acquittal before considering the lesser included offense.

Copyright (c) West Group 1998 No claim to original U.S. Govt. works

IMAGED

A review of this court's journal entry of November 13, 1992 permitting appellant's application for delayed reconsideration indicates that when this first instruction is read in total it does not create substantial grounds for relief.

"If you find that the State has failed to prove each and every element of the crime of aggravated murder as I have instructed you, you will then return a verdict of not guilty to that charge. At this point you will then continue to deliberate and determine whether or not the Defendant is guilty of the lessor (sic.) included charge of murder." (Tr. 760)

As in *Thomas,* this instruction has "negligible coercive potential" because it speaks to the jury's inability to find, whether unanimously or not, all elements of the greater offense.

We are not persuaded that this instruction, which was given before the jury began deliberations, unduly prejudiced the appellant. Thus, we do not find prejudicial effect with this instruction although a better instruction would have been to incorporate the "inability to agree language" that *Thomas* adopted. Even though the instruction may have been somewhat confusing and ambiguous, as in *Thomas,* it is our finding that when read as a whole with the balance of instructions it is not prejudicial. Therefore, trial counsel was not ineffective in failing to object to it. Further, ineffective assistance of appellate counsel did not occur by appellate counsel failing to question this instruction on appeal.

The second instruction at issue was given on the morning of the second day of deliberations after the jury was unable to reach a verdict. The court instructed the jury that:

"*** You are really into a situation of just determining in accordance with the instructions you received on reasonable doubt as to whether or not the State proved its case beyond a reason able ( sic.) doubt against the defendant. And your possibilities are he is guilty of aggravated murder, if you don't agree on that and you are unanimous in that, they (sic.) you can decide if he is guilty of murder. If you agree that he is, you return a verdict of guilty of murder. If you don't think he is guilty of that and you are unanimous, return the two verdicts of not guilty." (Tr. 782)

**4 Appellee asserts that the second instruction can be read to require a unanimous "guilty" verdict or a unanimous indecision but does not require a unanimous "not guilty" verdict. We disagree.

We find that the second instruction is a violation of the acquittal first prohibition as set out in *Thomas.* Prior to the second day of deliberation, the trial court gave these amplified instructions on its own. In appellant's initial appeal, this court indicated that amplified instructions are frowned upon. Part of the reason for this is that they may sometimes be taken out of context or unduly emphasized.

This instruction clearly and expressly required a unanimous not guilty verdict prior to deliberating on the lesser included offense as prohibited by the Supreme Court's later released decision in *Thomas.*

We must now consider whether the improper jury instruction would have required a reversal of appellant's conviction if initially brought up on appeal. As previously stated, we find that this instruction given by the trial court expressly required a unanimous acquittal on the charge of aggravated murder before the jury was permitted to deliberate on the lesser included offense of murder. Pursuant to the holding in *Thomas, supra,* and in accordance with the reasoning of the Second District's case of *State v. Shaw* (1990), 65 Ohio App.3d 821, such an instruction constitutes prejudicial error and therefore warrants a reversal. It has been stated that, "*** ordinarily it is prejudicial error to give an instruction which misstates the law ***." 5 Ohio Jurisprudence 3d (1978) 304, Appellate Review, Section 646.

Appellant contends that appellate counsel was ineffective in failing to raise the issue of ineffective assistance of trial counsel and in failing to raise the issue of the erroneous jury instruction on appeal. Because the decision in *Thomas* was not released until subsequent to the trial of appellant, ineffectiveness of trial counsel is not a meritorious issue. However, appellate counsel was ineffective in failing to raise the second jury instruction as an issue on appeal.

*Thomas* was decided by the Ohio Supreme Court on December 30, 1988. Appellant's conviction was journalized June 22, 1988. Notice of appeal was filed July 20, 1988. Due to the length of the transcript, it was not filed until May 31, 1989.

Copyright (c) West Group 1998 No claim to original U.S. Govt. works

IMAGED

1995 WL 338613, State v. Williams, (Ohio App. 7 Dist. 1995)                                    Page 4

Appellant received several extensions to file his brief and eventually filed same on October 24, 1989. Appellee filed its brief on November 22, 1989. Oral argument was heard April 17, 1990. This court's opinion was released July 3, 1990.

As can be seen, appellate counsel had ample time to become aware of the *Thomas* decision and its implications. Failure to raise error in regard to the second jury instruction was ineffective assistance of appellate counsel that resulted in prejudice to appellant. See *Strickland v. Washington* (1984), 466

U.S. 668. This omission by appellate counsel affected the result of appellant's first appeal. Therefore, appellant's second assignment of error is with merit.

**5. For the foregoing reasons, the judgment of the trial court is reversed and this cause remanded for further proceeding consistent with this opinion.

O'NEILL, P.J., concurs.

COX, J., concurs.

Copyright (c) West Group 1998 No claim to original U.S. Govt. works

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 2847

IMAGED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

- - -

VON CLARK DAVIS,                        :
                                        :
          Petitioner,                   :
                                        :   Case No. C-1-97-402
                                        :
RALPH COYLE,                            :
                                        :
          Respondent.                   :

- - -

Deposition of **MICHAEL D. SHANKS, ESQUIRE**, a witness herein, called by the Petitioner for cross-examination under the applicable Federal Rules of Civil Procedure, taken before Sylvia A. Fraley, a Registered Diplomate Reporter, Certified Realtime Reporter and Notary Public in and for the State of Ohio, pursuant to subpoena, at the offices of Holbrock & Jonson, 315 South Monument Avenue, Hamilton, Ohio 45011, commencing on Tuesday, June 23, 1998, at 12:05 p.m.

- - -





Main Office
8036 Smoke Road
Pataskala, Ohio 43062
(614)228-0018
(800)852-6163
Fax (740) 927-3436

1180 South High Street
Columbus, Ohio 43206
(614)228-0018

EXHIBIT
D

2

```
 1                    APPEARANCES              IMAGED

 2                      -  -  -

 3           JOHN S. MARSHALL, ESQUIRE
             111 West Rich Street
 4           Suite 430
             Columbus, Ohio 43215
 5
                -  AND  -
 6
             LORI LEON,
 7              ASSISTANT STATE PUBLIC DEFENDER
             OHIO PUBLIC DEFENDER COMMISSION
 8           8 East Long Street
             11th Floor
 9           Columbus, Ohio 43215

10              On behalf of the Petitioner.

11           MICHAEL L. COLLYER,
                ASSISTANT ATTORNEY GENERAL
12           OFFICE OF BETTY D. MONTGOMERY
             Capital Crimes Section
13           Cleveland District Office
             State Office Building
14           615 West Superior Avenue
             12th Floor
15           Cleveland, Ohio 44113-1899

16              -  AND  -

17           JONATHAN R. FULKERSON,
                ASSISTANT ATTORNEY GENERAL
18           OFFICE OF BETTY D. MONTGOMERY
             Capital Crimes Section
19           State Office Tower
             30 East Broad Street
20           26th Floor
             Columbus, Ohio 43215-3428
21
                On behalf of the Respondent.
22
                      -  -  -
23

24

25
```

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

16

1 with the outcome. You know, they don't like to

2 overturn convictions. But I felt that that was a

3 significant piece of evidence and it would warrant a

4 close look by a court, and Joe didn't get it and I

5 wasn't shocked by it.

6          So, I'm sure he did explain to me what his

7 thought processes were but I don't recall the

8 specifics --

9     Q.    No recollection?

10    A.    -- the specific details.

11    Q.    The death penalty had only recently been

12 reinstated in Ohio?

13    A.    Right.

14    Q.    And this was your first death penalty case?

15    A.    Right.

16    Q.    And the courts, themselves, probably weren't

17 very familiar with the procedures --

18    A.    That's an accurate statement.

19    Q.    -- with the procedures in a death penalty.

20          I believe Judge Bruewer was the initial

21 judge --

22    A.    (Affirmative nodding of head).

23    Q.    -- and in a way, the lead judge, --

24    A.    (Affirmative nodding of head).

25    Q.    -- ultimately, in a three-judge panel?

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

```
 1  Although I understand they all have an equal vote in
 2  matters, --
 3       A.   I think that is an accurate recitation.
 4       Q.   -- he took the lead, in a sense?
 5       A.   Right.
 6       Q.   Were there conversations between counsel and
 7  Judge Bruewer about the process that --
 8       A.   Well, I think there were many conversations
 9  with all counsel and Judge Bruewer about the process.
10  We were concerned about what was going to happen and
11  how; you know, the facts, how -- Nobody had done a
12  death penalty case before.  You know, mitigation, how
13  to handle, all those things.
14            So, I think there were a lot of conversation
15  between Judge Bruewer and all counsel.
16       Q.   Do you have a recollection of any
17  conversation with Judge Bruewer in which he told you
18  what his feeling was with respect to this particular
19  case and the potential death penalty?
20       A.   I have a -- Judge Bruewer and I and Jack
21  Garretson and the prosecuting staff had a good
22  relationship, and Judge Bruewer is a very
23  straightforward and honest man.  We -- we had a lot of
24  conversations about what it's like to have to deal
25  with a death penalty case.  I recall that Judge
```

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

1 Stitsinger, one of the other members of the panel, had
2 represented the last person in Butler County who was
3 electrocuted, and Judge Bruewer had indicated to us in
4 conversations that he wasn't happy about being in a
5 situation where he would potentially have to make that
6 kind of decision. It's a shock. I don't think
7 anybody would be happy about it, you know.
8      Q.   Sure.
9      A.   And I remember, you know, some general
10 conversations in that regard.
11      Q.   What did he tell you about that
12 particularly, about his -- his thought process with
13 regard to imposing the death penalty?
14      A.   You know, I can only say that, in -- in part
15 of the conversations that I can recall with regard to
16 how the process would work and what we would be able
17 to do and that, and the judge had indicated to both
18 Jack Garretson and I that he certainly harbored a
19 philosophical reluctance to -- to issue a death
20 warrant for anyone, to vote for death.
21      Q.   Did he give you an indication under what
22 circumstances he would not impose the death penalty?
23      A.   Jack Garretson and I had discussed a lot of
24 things with Von and I remember that the judge had
25 indicated that one of the things that he considered to

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

1  be important was acceptance of responsibility and, you

2  know, some sort of, basically, acceptance of the --

3  your being at fault for causing this death.  I believe

4  that there was -- were general discussions that he

5  would be not likely to vote for death in a situation

6  where a person would come forth and truly accept and

7  show remorse for their action; and these were part of

8  an ongoing set of discussions.  Happened over several

9  weeks, I'm sure.

10      Q.   As part of that discussion, did he indicate

11  to you that if Von persisted in the story -- the Silky

12  Carr story and the story that -- in which Von insisted

13  that he wasn't responsible for the death of Suzette

14  Butler, that he would be more inclined to impose the

15  death penalty?

16      A.   Well, I think that's a synopsis of what part

17  of the discussions were.  Obviously, he made clear

18  that he would be more inclined to be able to do that

19  if -- if there was this lack of remorse or lack of

20  acceptance of, you know, of your responsibility.

21      Q.   So, in these conversations, Judge Bruewer

22  made it clear that he would be more inclined to --

23  that he was going to consider the factor of Von's lack

24  of remorse or lack of coming forward and accepting

25  responsibility for the death as part of his thought

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

1  process about whether to impose the death penalty?

2      A.    I think that that was in context of what we

3  discussed before in that regard, yes.

4      Q.    I take it Von did not ever come forward and

5  accept responsibility for the death; correct?

6      A.    Von did not ever come forward and accept

7  responsibility for the death.

8      Q.    He always insisted on his innocence?

9      A.    That's correct.

10     Q.    Did not plead guilty; correct?

11     A.    That's correct.

12     Q.    Did not show any remorse or anything like

13  that?

14     A.    Well, he -- he was -- he felt sorry for the

15  family of Suzette Butler but he didn't show remorse

16  for the intentional death -- of causing her death and

17  he never -- never indicated that to me, or, to my

18  knowledge, Jack Garretson.

19     Q.    And was it your understanding of the law at

20  the time that if one of the three judges on the panel

21  had decided not to impose the death penalty, that

22  death could not be imposed?

23     A.    That's my understanding.

24     Q.    It had to be a unanimous decision?

25     A.    That was my understanding.

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

IMAGED

1          MR. MARSHALL:  Okay.

2          MR. COLLYER:  That's all I have.

3          MR. MARSHALL:  Mr. Shanks, thanks very much.

4          (Discussion off the record.)

5          THE WITNESS:  Yeah, I'll waive.

6          (Signature waived.)

7                    -  -  -

8          Thereupon, at 12:30 p.m., on Tuesday, June

9   23, 1998, the deposition was concluded.

10                   -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 2855

```
 1                    CERTIFICATE

 2   STATE OF OHIO        :
                             SS:
 3   COUNTY OF FRANKLIN    :

 4            I, Sylvia A. Fraley, a Registered Diplomate

 5   Reporter, Certified Realtime Reporter, and Notary

 6   Public in and for the State of Ohio, duly commissioned

 7   and qualified, do hereby certify that the within-named

 8   Michael D. Shanks, Esquire, was by me first duly sworn

 9   to testify to the truth, the whole truth, and nothing

10   but the truth in the cause aforesaid; that the

11   deposition then given by him was by me reduced to

12   stenotype in the presence of said witness, afterward

13   transcribed upon a computer; that the foregoing is a

14   true and correct transcript of the deposition so given

15   by him; that the deposition was taken at the time and

16   place in the caption specified and was completed

17   without adjournment; and that I am in no way related

18   to or employed by any attorney or party hereto, or

19   financially interested in the action.

20            IN WITNESS WHEREOF, I have hereunto set my

21   hand and affixed my seal of office at Columbus, Ohio,

22   on this 24th day of June, 1998.

23            _____
                SYLVIA A. FRALEY, RDR, CRR
24              NOTARY PUBLIC-STATE OF OHIO

25   My Commission Expires: May 5, 2003.
```

FRALEY, COOPER & ASSOCIATES
(614) 927-3338

IMAGED

IN THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT
BUTLER COUNTY, OHIO

IMAGED

STATE OF OHIO,                                    :          CASE NO.  CA89-09-123

                Appellee,                         :

        vs.                                       :

VON CLARK DAVIS,                                  :          **APPELLEE'S MEMORANDUM
                                                             IN OPPOSITION TO MOTION
                Appellant.                        :          FOR DELAYED REOPENING**

                                     : : : : : : :

        Now comes Appellee, and in opposition to the Appellant's motion for a delayed

reopening filed August 21, 1998, says that the motion should be denied for the following

reasons.

        First, the motion for reopening is untimely.  This Court's decision in the case at bar

was announced almost eight years ago.  ***State v. Davis*** (Oct. 29, 1990), Butler App. No.

CA89-09-123, unreported, 1990 WL 165137, *affirmed* (1992), 63 Ohio St.3d 44, 584 N.E.2d

1192, *certiorari denied* (1992), 506 U.S. 858, 113 S.Ct. 172, 121 L.Ed.2d 119.   As amended

effective July 1, 1993 in response to the Ohio Supreme Court's opinion in ***State v.***

***Murnahan*** (1992), 63 Ohio St.3d 60, 66 n.2, 584 N.E.2d 1204, App.R. 26(B) requires that

an application for reopening shall be filed "within ninety days from the journalization of

the appellate judgment unless the application shows good cause for filing at a later time,"

see App.R. 26(B)(1).  Moreover, while appellant seeks to reopen an appellate judgment

journalized before July 1, 1993, he may not simply rely on the fact that App.R. 26(B) did

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 KEY BANK BUILDING
6 S. SECOND STREET
P.O. BOX 515
HAMILTON, OHIO 45012

1

not exist within ninety days following the judgment in question, but must show good cause why he did not attempt to invoke the procedures available under former App.R. 26 and 14(B) as established in the Murnahan decision. See *State v. Reddick* (1995), 72 Ohio St.3d 88, 90, 647 N.E.2d 784, 786, and *State v. Spisak* (1995), 73 Ohio St.3d 151, 652 N.E.2d 719. "[B]oth types of applications require a showing for good cause for delay in filing." *State v. Peeples* (1995), 73 Ohio St.3d 149, 150, 652 N.E.2d 717, 718. Thus, appellant's motion for reopening is untimely here, and good cause is not shown for this delay.

Second, an application for reopening "shall be granted only *** if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." *State v. Allen* (1996), 77 Ohio St.3d 172, 173, 672 N.E.2d 638, 639; App. R. 26(B)(5). As used in this analysis, ineffective assistance of counsel is intended to comprise the two elements set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 205, 80 L.Ed.2d 674, that is, deficiency in the representation of appellant and prejudice resulting from such deficiency. *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458.

Appellant Davis has made no such showing here. His allegedly-ineffective appellate counsel, Assistant State Public Defenders Joann Bour-Stokes and Linda Prucha of Columbus, raised five assignments of error which were carefully analyzed in this Court's 1990 decision (attached and incorporated herein by reference). "Counsel could have reasonably decided they could not add more issues without 'burying good arguments *** in a verbal mound made up of strong and weak contentions.'" *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339, 353, quoting *Jones v. Barnes*

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 KEY BANK BUILDING
6 S. SECOND STREET
P.O. BOX 515
HAMILTON, OHIO 45012

2

IMAGED

(1983), 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994.

Nor are appellant's new assignments of error particularly compelling. Some of the issues now brought by appellant were also raised in virtually identical fashion in a post-conviction petition and rejected by the trial court in 1996. See ***State v. Davis*** (Sept. 30, 1996), Butler App. No. CA95-07-124, unreported, 1996 WL 551432, *jurisdictional motion overruled* (1997), 77 Ohio St.3d 1520, 674 N.E.2d 372. Other arguments not so raised are not so compelling as to cause this Court to find that the failure to raise them constituted a deficiency in the representation of appellant and prejudice resulting from such deficiency. ***State v. Reed***, *supra*, and ***Strickland v. Washington***, *supra*.

**WHEREFORE**, appellant's motion for delayed reopening should be denied.

Respectfully submitted,

**JOHN F. HOLCOMB** (0001499)
**PROSECUTING ATTORNEY**
**BUTLER COUNTY, OHIO**


**DANIEL G. EICHEL  (0008259)**
**FIRST ASSISTANT PROSECUTING ATTORNEY**
**BUTLER COUNTY, OHIO**
216 Key Bank Building
6 South Second Street
Hamilton, Ohio  45012-0515
Telephone: (513) 887-3474

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 KEY BANK BUILDING
6 S. SECOND STREET
P.O. BOX 515
HAMILTON, OHIO 45012

3



## PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was mailed by regular U.S. mail to John Marshall, 111 West Rich Street, Suite 430, Columbus, OH 43215 and Lori Leon, Assistant State Public Defender, 8 East Long Street, 11th Floor, Columbus, OH 43215-2998, this 31st day of August, 1998.

**DANIEL G. EICHEL (0008259)**
**FIRST ASSISTANT PROSECUTING ATTORNEY**
**BUTLER COUNTY, OHIO**

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 KEY BANK BUILDING
6 S. SECOND STREET
P.O. BOX 515
HAMILTON, OHIO 45012

4

JAN-22-99 09:27 AM  LAW OFFICES      .  614 463 9780      P.02

IMAGED

IN THE COURT OF APPEALS FOR BUTLER COUNTY, OHIO

STATE OF OHIO,                         :

                Appellee,              :    CASE NOS. CA84-06-071
                                                      CA89-09-123
                                       :
        - vs -        FILED BUTLER CO.
                      COURT OF APPEALS  :
                        JAN 13 1999         ENTRY
                      CINDY CARPENTER  DENYING APPLICATION
VON CLARK DAVIS,      CLERK OF COURTS :  FOR REOPENING

                Appellant.             :


        This matter came on to be considered upon applications for

reopening filed pursuant to App.R. 26(B) by counsel for

appellant, Von Clark Davis, on August 21, 1998, and memoranda in

opposition filed by counsel for appellee, the state of Ohio, on

August 31, 1998.

        In May 1984, a three-judge panel found appellant guilty of

aggravated murder and sentenced him to death.     Appellant's

conviction and death sentence were affirmed on direct appeal to

this court.  State v. Davis (May 27, 1986), Butler App. No.

CA84-06-071, unreported.   Upon further appeal, appellant's

conviction was affirmed while the death penalty was vacated and

the matter remanded for resentencing.  State v. Davis (1988), 38

Ohio St.3d 361, certiorari denied (1989), 488 U.S. 1034, 109

S.Ct. 849.   On remand, the same three-judge panel again

IMAGED

Butler CA84-06-071
Butler CA89-09-123
Page -2-

sentenced appellant to death and the sentence was affirmed on

direct appeal. State v. Davis (Oct. 29, 1990), Butler App. No.

CA89-09-123, unreported, affirmed (1992), 63 Ohio St.3d 44,

certiorari denied (1992), 506 U.S. 858, 113 S.Ct. 172.

In his application in Case No. CA84-06-071, appellant

claims he was denied the effective assistance of appellate

counsel in the direct appeal of his conviction and death

sentence based upon appellate counsel's failure to raise

assignments of error pertaining to: (1) unnecessarily suggestive

identification procedures; (2) use of a prejudicial witness for

impeachment; (3) involuntary jury waiver; (4) failure to inform

appellant that a jury waiver subjected him to an increased risk

of a death sentence; (5) invalid jury waiver; (6) failure to

inform appellant that his case would be subjected to a lower

standard of appellate review if tried to a three judge panel;

(7) the state's improper use of rebuttal evidence during the

sentencing phase; (8) lack of a standard of proof for a

mitigating factor in a case tried to a three judge panel; (9)

racial discrimination in the selection of the grand and petit

juries; and (10) the presiding trial judge's consideration of

JAN-22-99 09:28 AM  LAW OFFICES          614 463 9780        P.04

IMAGED

Butler CA84-06-071
Butler CA89-09-123
Page -3-

appellant's failure to take responsibility for the crime in
determining the sentence.

In Case No. CA89-09-123, appellant claims counsel was
ineffective for likewise failing to present assignments of error
similar to the sixth, seventh, eighth, and tenth assignments in
Case No. CA84-06-071. Appellant also submits two additional
claims based upon appellate counsel's failure to present
assignments of error raising constitutional errors in the
resentencing opinion and prosecutorial misconduct during
resentencing.

An application for reopening must be filed in the court of
appeals "within ninety days from the journalization of the
appellate judgment unless the applicant shows good cause for
filing at a later time." App.R. 26(B)(1). Furthermore, an
application must contain a showing of good cause for untimely
filing if the application is filed more than ninety days from
journalization of the appellate judgment. App.R. 26(B)(2)(b).

We realize that it was impossible for appellant to file an
application for reopening within ninety days of this court's
May 27, 1986 entry affirming his conviction in Case No. CA84-06-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 2863

IMAGED

Butler CA84-06-071
Butler CA89-09-123
Page -4-

071 or within ninety days of this court's October 29, 1990 entry

in Case No. CA89-09-123. Neither the supreme court's decision

in State v. Murnahan (1992), 63 Ohio St.3d 60, nor App.R. 26(B)

were avialable to allow the filing of an application to reopen

within ninety days of either of the appellate decisions which

are the subject of this application.

However, "an applicant who seeks to reopen an appellate

judgment journalized before July 1, 1993 may not simply rely on

the fact that App.R. 26(B) did not exist within the ninety days

following journalization of the appellate judgment, but must

show good cause why he or she did not attempt to invoke the

procedures available under former App.R. 26 and 14(B)." State

v. Reddick (1995), 72 Ohio St.3d 88, 90.

In response to the supreme court's decision in Murnahan,

App.R. 26 was amended effective July 1, 1993 to permit

applications for reopening in criminal cases based upon

ineffective assistance of appellate counsel. Allowing appellant

the benefit of ninety days from the rule's effective date, any

application for reopening should have been filed no later than

September 30, 1993. Appellant's applications were filed on

IMAGED

Butler CA84-06-071
Butler CA89-09-123
Page -5-

August 21, 1998 -- nearly five years after the effective date of
App.R. 26(B).

With respect to Case No. CA84-06-071, there is nothing
submitted to show good cause as to why the application in that
particular case was filed more than ninety days after the
effective date of App.R. 26(B) or why the application was not
filed any earlier than it was under App.R. 14 and 26(A).[1]

In Case No. CA89-09-123, appellant claims he could not have
raised the ineffectiveness of appellate counsel before now since
his counsel in that appeal continued to represent him in post
conviction proceedings and only "recently withdrew from
representing [appellant]."[2] We are not persuaded that such

---

1. Appellant was represented by new counsel in Case No. CA89-
09-123 by the time App.R. 26(B) was enacted. Thus there was
substantial time in which the alleged ineffectiveness of
appellate counsel in Case No. CA84-06-071 could have been raised
either under App.R. 26(B) or under App.R. 14(B) and former
App.R. 26.

2. The counsel in question is Ms. Linda E. Prucha. Ms. Prucha
represented appellant in his post conviction proceeding before
this court. See State v. Davis (Sep. 30, 1996), Butler CA95-07-
124, unreported. Although we have no firm indication of how
"recently" Ms. Prucha terminated her representation of
appellant, the subsequent appeal of Case No. CA95-07-124 to the
Supreme Court of Ohio was dismissed on January 15, 1997, see
State v. Davis (1997), 77 Ohio St.3d 1520, and our research

JAN-22-99 09:29 AM  LAW OFFICES          614 463 9780          P.07

IMAGED

Butler CA84-06-071
Butler CA89-09-123
Page -6-


constitutes good cause under App.R. 26(B)(2)(b) for the late

filing of the petition in Case No. CA89-09-123.

Upon due consideration of the foregoing, and it appearing

to the court that appellant has failed to show good cause as to

why his applications were not filed in a timely manner,

appellant's applications for reopening are hereby DENIED.

IT IS SO ORDERED.


Stephen W. Powell
Presiding Judge

Richard N. Koehler
Judge

James E. Walsh
Judge


reveals no further appeal of this particular action or evidence
of Ms. Prucha's continued representation beyond this date. Thus
it appears that it has been at least seven months between Ms.
Prucha's last representation of appellant in the Ohio courts and
the filing of this petition.