

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

**STATE OF OHIO,**

    **Plaintiff-Respondent,** :    Case No. CR 1983-12-0614

**vs.** :    Judge Daniel Andrew Nastoff

**VON CLARK DAVIS** :    **ORAL ARGUMENT REQUESTED**

    **Defendant-Petitioner.** :    **Pleading M**

---

## VON CLARK DAVIS' MOTION TO PRECLUDE THE STATE FROM SEEKING THE DEATH PENALTY

---

      Von Clark Davis moves this Court to strike the prosecution's oral notice to again seek the death penalty. The law in effect at the time of the 1983 offense precluded the state from again seeking the death penalty when the original three judge panel could not be reconvened. Mr. Davis has attached a memorandum of law that he incorporates in this motion.

                        Respectfully submitted,

                        OFFICE OF
                        THE OHIO PUBLIC DEFENDER

                        RANDALL L. PORTER - 0005835
                        Assistant State Public Defender

                        8 East Long Street - 11th Floor
                        Columbus, Ohio 43215
                        (614) 466-5394 (Voice)
                        (614) 644-0703 (Facsimile)



PorterR@OPD.state.OH.US

And

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3155 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## MEMORANDUM OF LAW

On January 29, 2007, the United States Court of Appeals for the Sixth Circuit reversed Von Clark Davis' (Mr. Davis) death sentence. *Davis v. Coyle* (6th Cir. 2007), 475 F. 3d 761. The Court remanded this matter for a resentencing hearing. *Id.* at 781.

The prosecution has announced its intention to again seek the death penalty. That notice contravenes the repeated pronouncements of the United States and Ohio Supreme Courts that the law in effect at the time of offense should govern the trial proceedings. The prosecution's efforts to again seek the imposition of the death penalty violates the *ex post facto*, due process and double jeopardy clauses of the United States and Ohio Constitutions. United States Constitution; Article II, Section 28;  Fifth, Sixth, Eighth and Fourteenth Amendments; Ohio Constitution; Article I, §§ 5, 9, 10 and 16; and Ohio's death penalty sentencing statutes.

2

I. **THE LAW IN EFFECT AT THE TIME OF MR. DAVIS' TRIAL DID NOT PERMIT THE STATE TO AGAIN SEEK THE DEATH PENALTY UNDER THE FACTS UNIQUE TO THIS CASE.**

On May 8, 1984 Mr. Davis waived his right to a jury trial and elected to be tried by a three judge panel. Mr. Davis entered his waiver pursuant to R.C. 2945.05. *State v. Davis* (1992) 63 Ohio St. 3d 44, 47. *See also State v. Stumpf* (1987), 32 Ohio St. 3d 95, 105. R.C. 2945.06 provides the procedure for implementing a jury waiver. With respect to jury waivers in capital cases "[i]n any case in which a defendant waives his right to a jury trial... He *shall* be tried by a court composed of three judges, consisting of the judge *presiding at the time* in the trial of criminal cases and two other judges to be designated by the presiding judge or the chief justice of the court..." R.C. 2945.06 (emphasis added). The phrase "presiding at the time" references the defendant's entrance of his jury waiver. Therefore, the judge must have been on the bench at the time that the defendant waived his right to a jury trial.

At the time of the 1983 offense, RC. 2929.03 delineated the procedure for imposing a sentence of death. That section provided that when a defendant was convicted of aggravated murder and one or more capital specifications the appropriate sentence was to be determined by "the panel of three judges that tried the offense upon his waiver of the right to trial by jury." R.C. 2929.03(C)(2)(a).[1] [Exhibit A]. Therefore the only panel that could sentence a defendant to death was the panel that found him guilty.

---

[1] Thus, the phrase "the panel of three judges" contained through out R.C. 2929.03 references the panel that sat on the trial phase and found the defendant guilty. *See,* 2929(D)(3), (E)(F)(G).

When the State of Ohio reenacted the death penalty in 1981, it addressed the appropriate remedy for those cases in which an appellate court vacated the defendant's death sentence. R.C. 2929.06 [Exhibit B]. The original statute, however, only addressed the appropriate remedy when the defendant had tried his case to a jury. [*Id.*]. On Mr. Davis' first direct appeal, the Ohio Supreme Court determined that in a three judge panel case, when an appellate court found vacated the death sentence for reasons not contained in R.C. 2929.06, the prosecution could seek the death penalty upon remand. *State v. Davis* (1988), 38 Ohio St. 3d 361, 373. The Ohio Supreme Court, however, did not address the effect of one or more of the members of the three judge panel no longer being able to serve after the remand. That issue did not arise after that Court remanded this case because all three judges who had initially served on the panel were again able to serve. Thus the remand proceedings were conducted consistent with the requirements contained in R.C. 2929.03(C)(2)(a) and R.C. 2945.06.

The Ohio Legislature subsequently eight times amended R.C. 2929.06 to create procedures for the retrial of cases in which appellate courts had vacated the defendants' death sentences. The Section now provides in relevant part, "Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender.... If the offender was tried by a panel

4

of three judges, *that panel or, if necessary, a new panel of three judges shall conduct the hearing.*" R.C. 2929.06(B)

The section now provides a method for reconstructing a three judge panel when no such method existed at the time of the offense. Because R.C. 2929.06(B) specifically addresses the remand situation, it arguably prevails over R.C. 2929.03(C)(2)(a) and R.C. 2945.06. *See* R.C. 1.51, R.C. 1.52(A). The question, however is whether the amendment to R.C. 2929.06 providing for the reconstituting of three judge panels, when prior members are unable to serve should retrospectively be applied to Mr. Davis' case.

The question arises because none of three judges who sat on Mr. Davis' original trial, sentencing, and re-sentencing proceedings are now available to serve on his second re-sentencing. At the time of this offense only the three judge panel that  found him guilty of aggravated murder and the capital specification could sentence him to death. R.C. 2929.03(C)(2)(a)

## II.  THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENT AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION PRECLUDE THIS COURT FROM APPLYING THE AMENDED VERSION OF O.R.C. § 2929.06 IN THE PRESENT CASE.

The Due Process provisions of the Fifth and Fourteenth Amendments to the United States Constitution prohibit impermissibly retroactive legislation. *Landgraf v. U.S.I. Film Products* (1994), 511 U.S. 244, 266, citing *Usery v. Turner Elkhorn Mining Co.* (1976), 428 U.S. 1, 17.  This protection is separate from the protection against *ex post facto* laws. *See* U.S. Const., Art. I, sec. 10, cl. 1. The "specific prohibition of *ex post facto* laws is

5

only one aspect of the broader constitutional protection against arbitrary changes in the law . . . . *Lynce v. Mathis* (1997), 519 U.S. 433, 440-441.

The "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Hughes Aircraft Co. v. United States ex rel. Schumer* (1997), 520 U.S. 939, 946. *See Landgraf*, 511 U.S. at 265, (presumption has "timeless and universal appeal"); *Lynce*, 519 U.S. at 439 (presumption is "essential thread in the mantle of protection that the law affords the individual citizen"). A statute that operates or is applied retroactively raises serious concerns regarding the legislature's power to "sweep away settled expectations suddenly" and enact legislation as retribution against unpopular individuals or groups. *Landgraf*, 511 U.S. at 267.

The courts apply a three part test to determine if a statute can be retroactively applied. The *first* question or is whether the statutory text at issue manifests a clear intent that the statute is be applied to cases that arose prior to the statute's enactment. *Landgraf*, 511 U.S. at 257. "Congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Landgraf*, 511 U.S. at 272, citing *Bowen v. Georgetown Univ. Hospital* (1988), 488 U.S. 204, 208.

The *second* question is what change the new legislation makes to the old law. *Landgraf*, 511 U.S. at 280; *In re Hanserd* (6th 1997), 123 F.3d 922, 924.

The *third* question is whether applying the new law to pending

cases would have an unconstitutional retroactive effect. *Landgraf*, 511 U.S. at 280. A statute may have an unconstitutional retroactive effect upon events arising prior to its enactment where it:

(1) affects substantive rights, liabilities, or duties, *Landgraf*, 511 U.S. at 278; *Hughes Aircraft*, 520 U.S. at 947; or

(2) impacts private parties' planning, *Landgraf*, 511 U.S. at 282; or

(3) changes the legal consequences of events completed prior to the statute's effective date, *Id.* 511 U.S. at 269 n. 23,; *In re Hanserd*, 123 F.3d at 924, 930-932; or

(4) gives a quality or effect to events which they lacked or failed to contemplate prior their performance, *Landgraf*, 511 U.S. at 269; or

(5) may be retributive, *Id.*, 511 U.S. at 281; or

(6) creates a new cause of action, *Id.*; *Hughes Aircraft*, 570 U.S. at 948; or

(7) changes or abolishes limits on the amount of damages available, *Landgraf*, 511 U.S. at 284 n. 36; or

(8) restricts rights to recover damages, *Id.*, 511 U.S. at 285; or

(9) sweeps away settled expectations suddenly and without individualized consideration, *Id.*, 511 U.S. at 266; or

(10) imposes new burdens on persons after the fact, *Id.*, 511 U.S. at 269 n. 24.

These examples of how a statute can have an unconstitutional retroactive effect "do not purport to define the outer limit of impermissible retroactivity." *Hughes Aircraft*, 520 U.S. at 947, citing *Landgraf*, 511 U.S. at 269.

The amendment to O.R.C. § 2929.06 significantly changed the death penalty. Persons, such as Mr. Davis, are now exposed to the potential of a second death sentence, if their death sentences are overturned on appeal and the initial panel cannot be reconvened. Under the initial version of the statute, which was in effect at the time of the present offense, there was no such exposure. A defendant could only be sentence to death by the same three judge panel that had found him guilty. R.C. 2929.03(C)(2)(a)

Where a statute changes the amount of protection granted to an individual's rights, such change affects the underlying rights and cannot be applied retroactively. *See U.S. Steel Mining Co. v. Riddle* (Ala. Civ. App. 1993), 627 So.2d 455, 458; *$814,254.76 in U.S. Currency* (9th Cir. 1995), 51 F.3d 207, 212; *Alley v. Consolidation Coal Co.* (Tenn. 1985), 699 S.W.2d 147, 148; *White v. General Motors Corp.* (Mich. 1988), 429 N.W. 2d 576, 579; *Henderson v. Johnson* (Ala. Civ. App. 1993), 632 So.2d 488, 489.

Pursuant to the Fifth and Fourteenth Amendments, as well as Article I, Section 16 of the Ohio Constitution, the State is precluded from once again seeking the death penalty against Mr. Davis.

**III. THE *EX POST FACTO* CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS PRECLUDE THIS COURT FROM APPLYING THE AMENDED VERSION OF O.R.C. § 2929.06 IN THE PRESENT CASE.**

Article II, § 28 of the Ohio Constitution, prohibits the enactment of any retroactive law, "The general assembly shall have no power to pass retroactive laws..." Article I, § 10 of the United States Constitution also provides the same

8

protections, "No state shall ... pass any Bill of Attainder, *ex post facto* Law, or Law Impairing the Obligations of Contracts, or grant any Title of Nobility."

The ban on *ex post facto* laws means "that a law shall not be passed concerning, and after the fact, or thing done, or action committed." *Calder v. Bull*, 3 U.S. 386,. In *Calder* Justice Chase defined *ex post facto* law:

> I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Id.* at 390.

The prosecution's effort in the this case to seek the death penalty a third time violates both the third and fourth parts of the *Calder* definition of impermissible retroactive legislation. It is an effort to inflict greater punishment than was authorized at the time of the offense was committed. It is also an effort to alters the legal rules of evidence that were in effect at the time of the commission of the offense and that alteration prejudices Mr. Davis.

**A.    The Application of Amended O.R.C. § 2929.06 Constitutes An *Ex Post Facto* Attempt to Increase Mr. Davis' Sentence.**

At the time of the present offense trial, the law was clear that if a death sentence was vacated or reversed on appeal, the maximum sentence the a three judge panel could impose if one more of its original members was not

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4192

able to again serve on the panel, was a life sentence with parole eligibility after the defendant had served thirty full years. The prosecution's efforts to now have this Court apply 2929.06(B) as amended with respect to the reconstituting of the panel with three new members violates the *ex post facto* provisions of the United States and Ohio Constitutions.  The amended statute increases the statutory maximum sentence from thirty full years to death.

In applying the *ex post facto doctrine,* the United States Supreme Court has been extremely vigilant in searching the record for any increase in a defendant's sentence and quick to strike down those increases.  The Court set the tone in *In re Medley* (1890), 134 U.S. 160.  In that case the Court examined a statute that was not in effect at the time of the offense and mandated that the petitioner had to be held in solitary confinement while awaiting execution.  The United States Supreme Court concluded that solitary confinement "was an additional punishment of the most important and painful character and is therefore forbidden by this provision [*Ex. Post Facto* Clause] of the Constitution of the United States". *Id.* at 171.

In *Lindsey v. Washington* (1937), 301 U.S. 397 the Court addressed a change in the State of Washington's sentencing provisions.  The law in effect at the time of the offense provided that the trial court in its discretion could impose a sentence to a maximum of fifteen years. Prior to sentencing the legislature amended the statute to require that the trial court impose a sentence of fifteen years in every case with the parole board to be afforded the discretion of determining whether a shorter sentence was appropriate.  The

10

Supreme Court struck down the revised statute. The Court held that the *ex post facto* clause looks to the standard of punishment prescribed by the statute, rather than the sentence actually imposed. *Id.* at 401.

In *Miller v. Florida* (1987), 482 U.S. 423 the Court struck down state sentencing guidelines that violated the *ex post facto* clause. At the time of the commission of the offense the presumptive guidelines then in effect required the trial court to impose a sentence of three and one-half to four and one-half years of imprisonment. Prior to petitioner's sentencing, the Florida Supreme Court adopted guidelines that increased the sentencing range by two years from which the trial court could only deviate if the defendant demonstrated by clear and convincing evidence that such a sentence would be inappropriate. The Supreme Court concluded that Florida courts could not retroactively apply the amended guidelines because they made more onerous the punishment for cases committed before their enactment. *Id.* at 435.

Twice the United States Supreme Court has struck down changes to good time credit provisions as violations of the *Ex Post Facto* Clause. In *Weaver v. Graham* (1981), 450 U.S. 24 the Court invalidated a Florida statute that decreased the good time credits an inmate could accrue. The Court held that it was immaterial that the initial good time provisions were not part of the original sentence and that the revised good time provisions would only impact credits earned after the enactment of the new statute. *Id.* at 450. In *Lynce v. Mathis,* 519 U.S. at 433, 442, the Court reached a similar conclusion concerning good time credits earned as a result of prison overcrowding. The

Court held that the subjective intent of the legislature was immaterial and instead, it was simply a matter of whether the new statute lengthened the period that an individual in petitioner's position must spend in prison.

It is beyond question that the modification of O.R.C. § 2929.06 increased the severity of Mr. Davis' potential sentence. He has gone from a maximum sentence of life with parole eligibility after serving thirty years to a maximum sentence of death. That change was brought about after he committed the offense, was convicted, and sentence was imposed.

**B.    The Application of Amended O.R.C. § 2929.06 Would Constitute An *Ex Post Facto* Change In the Sentencing Procedure.**

At the time of Mr. Davis' trial, if a defendant elected to have his sentence decided by a three judge panel, the only panel that could sentence him to death was the panel that found him guilty. The amendment to O.R.C. § 2929.06 that permits a different panel to sentence him to death eliminates that absolute defense, and thereby violates the *Ex Post Facto* Clauses of the Federal and Ohio Constitution.

One of the earliest cases involving the *Ex Post Facto* Clause and changes in procedure involved a maritime case. *United States v. Hall* (1809), 26 F.Cas. 84; 1809 U.S. Appellate LEXIS 339. The Court held that a change in the law could not be applied to a pending case if it impaired a defense the defendant had at the time of his arrest.

The Supreme Court in *Carmell v. Texas* (2000), 529 U.S. 513 applied the *Ex Post Facto* Clause with respect to changes in a state's rules of

evidence. The opinion, authored by Justice Thomas, reaffirmed that the fourth category identified in *Calder* that a state's retroactive modification of its laws regarding evidence could constitute a viable *Ex Post Facto* challenge. *Id.* at 534-535. Under the evidence rule in effect at the time of the offense, the prosecutor, to obtain a conviction, was required to produce both the victim's testimony and corroboration of that testimony. Under the new evidentiary rule, the petitioner could be and was convicted on the victim's testimony alone, without any corroborating evidence. Justice Thomas concluded:

> All of these legislative changes, in a sense, are mere images of one another. In each instance, the government refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction. There is plainly a fundamental fairness interest, even apart from any claim of reliance or notice, in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.

*Id.* at 533.

The prosecution in the present case refuses, after the fact, to play by its own rules. It has decided that R.C. 2929.03 was wrong and that death newly constituted three judge panels should be able to sentence individuals to death even though those panels did not hear all of the evidence. While that change may be acceptable, that change cannot be applied retroactively to Mr. Davis.

### III. THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS PRECLUDE THIS COURT FROM APPLYING AMENDED O.R.C. § 2929.06 IN THE PRESENT CASE

As a general rule, subjecting a defendant to the same punishment on re-trial that was available at the original trial, after a reversal on appeal,

13

does not implicate double jeopardy restrictions.  However, this case does not fall within the general rule.  At the time of his trial Mr. Davis, a defendant could only be sentenced to death by the three judge panel who found him guilty. Mr. Davis has now met the legal standards in place at the time he went to trial. An appellate court vacated his death sentence. The three panel that convicted him cannot be reconvened. Requiring Mr. Davis to again defend against imposition of the death penalty violates the Double Jeopardy Clauses of the Ohio and Federal Constitutions.

R.C. 2929.03(C)(2)(a) recognized that only the three judge panel jury that heard the entire trial should be permitted to impose the ultimate penalty.  Permitting a newly constituted three judge panel to consider the death penalty would deny Mr. Davis the benefit of the knowledge and perspective acquired by the panel that heard the entire case.  There is no reason to believe that had if the initial three judge panel considered all of the relevant evidence, it would have returned a sentence of death.  The prosecution should get only one bite of the apple.

## IV.  CONCLUSION

This Court lacks the necessary statutory authorization to again subject Von Clark Davis to the death penalty.  At the time of the commission of the offense and the trial, only the three judge penal that convicted him could sentence him to death.  The Due Process, *Ex Post Facto* and Double Jeopardy provisions of the United States and Ohio Constitutions preclude this Court from forcing Von Clark Davis to once again defend against the death penalty.

14

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER – 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

MELYNDA COOK-REICH - 0066596       0005835

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3155 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

15

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis'*
*Motion To Preclude The State From Seeking The Death Penalty* was hand
delivered to the Offices of Daniel G. Eichel, First Assistant Butler County
Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County
Prosecuting Attorney at the Government Services Center, 315 High Street,
Hamilton, Ohio 45011 on this 30th day of June, 2008.

_____
COUNSEL FOR VON CLARK DAVIS

Ohio Revised Code

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2929.  PENALTIES AND SENTENCING
PENALTIES FOR MURDER

ORC Ann. 2929.03 (1981)

§ 2929.03. Imposing sentence for capital offense

§ 2929.03  Imposing sentence for a capital offense.

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to section 2929.023 [2929.02.3] of the Revised Code, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard, which shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but such instruction shall not mention the penalty which may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C)(1) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of each of the specifications, and regardless of whether the offender raised the matter of age pursuant to section 2929.023 [2929.-02.3] of the Revised Code, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(2) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be death, life imprisonment with parole eligibility after serving twenty full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment, shall be determined pursuant to divisions (D) and (E) of this section, and shall be determined by one of the following:

(a) By the panel of three judges that tried the offender upon his waiver of the right to trial by jury;

(b) By the trial jury and the trial judge, if the offender was tried by jury.

(D)(1) Death may not be imposed as a penalty for aggravated murder if the offender raised the matter of age at trial pursuant to section 2929.023 [2929.02.3] of the Revised Code and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense. When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to section 2947.06 of the Revised Code. No statement made or information provided by a defendant in a mental examination or proceeding conducted pursuant to this division shall be disclosed to any person, except as provided in this division, or be used in evidence against the defendant on the issue of guilt in any retrial. A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or his counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, he is subject to cross-examination only if he consents to make the statement under oath or affirmation.

EXHIBIT

A

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4200

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

If the trial jury recommends that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. If the trial jury recommends that the sentence of death be imposed upon the offender, the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

(b) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(E) If the offender raised the matter of age at trial pursuant to section 2929.023 [2929.02.3] of the Revised Code, was convicted of aggravated murder and one or more specifications of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:

(1) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

(2) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. The court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.

(G) Whenever the court or a panel of three judges imposes sentence of death, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the appellate court.

HISTORY: 134 v H 511 (Eff 1-1-74); 139 v S 1, Eff 10-19-81.

## § 2929.06 [Resentencing hearing after vacation of death sentence.]

If the sentence of death that is imposed upon any offender is vacated upon appeal because the court of appeals or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is vacated upon appeal for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, or is vacated pursuant to division (C) of section 2929.05 of the Revised Code, the trial court that sentenced the offender shall conduct a hearing to re-sentence the offender. At the resentencing hearing, the court shall sentence the offender to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

HISTORY: 139 v S 1. Eff 10-19-81.



EXHIBIT

B

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

2008 JUN 30 AM 10: 37

STATE OF OHIO,                           :

      Plaintiff        :  **Case No. CR 1983-12-0614**

vs.                                             :  **Judge Daniel Andrew Nastoff**

**VON CLARK DAVIS**             :  **ORAL ARGUMENT REQUESTED**

      **Defendant.**             :  **PLEADING O**

---

## VON CLARK DAVIS' MOTION
## TO TRANSCRIBE THE GRAND JURY PROCEEDINGS

---

      Von Clark Davis moves this Court to order the court reporter to transcribe the grand jury proceedings in the above-named case. Mr. Davis has attached a memorandum of law which he incorporates in this motion.

              Respectfully submitted,

              OFFICE OF
              THE OHIO PUBLIC DEFENDER

              RANDALL L. PORTER - 0005835
              Assistant State Public Defender

              Office of the Ohio Public Defender
              8 East Long Street -11th Floor
              Columbus, Ohio 43215
              (614) 466-5394 (Voice)
              (614) 644-0703 (Facsimile)
              PorterR@OPD.state.OH.US

              And



*[signature]* MELYNDA COOK-REICH – 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3155 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## MEMORANDUM OF LAW

A trail court must record grand jury proceedings in felony cases. *State v. Grewell* (1989), 45 Ohio St. 3d 4, 8; *See* also Crim. R. 22. While prior to *Grewell* the Ohio Supreme did not mandate recording, many jurisdictions recorded the proceedings, either *en toto* or selectively. As an initial matter, Mr. Davis requests that the prosecution identify for the record if any of the grand jury proceedings were recorded in the present case, and if recorded, the extent of the recording.[1]

Once Mr. Davis' re-sentencing hearing commences, this Court and the parties may need to review portions of the grand jury proceedings. Inconsistencies between the trial and grand jury testimony of a witness may serve as a basis for a finding of particularized need. *State v. Sellards* (1985), 17 Ohio St.3d 169. In that case Ohio Supreme Court found that particularized

---

[1] This motion stands separate and apart from this Court's ruling on defendant's companion motions asking for pre-trial disclosure of the grand jury transcript and the names of the witnesses who appeared before the grand jury.

2

need existed because the prosecution's "witnesses testified to significantly different time frames than those presented in the indictment or the bill of particulars. Inspection of the grand jury testimony would establish whether the alleged victims suddenly had remembered previously forgotten facts, whether the state intentionally failed to solicit such information, or whether the testimony as to time was elicited but purposefully withheld from the accused." *Id.,* at 273.

In *State v. Grenell* (1989), 45 Ohio St.3d 4, the Ohio Supreme Court again held that a witness's inconsistent statement before the grand jury could constitute "particularized need." In that case the Court held that the defendant did not make he requisite demonstration because there was "no reference .... established" that the witness's testimony was inconsistent with her grand jury testimony." *Id.,* at 9. *See also State v. Greer* (1981), 66 Ohio St.2d 139 150; *State v. Roberts* (1976), 50 Ohio App.2d 237, 248; *State v. Roberts,* Franklin App. No. 97APA06-778 at p*3-4; *State v, Harris,* Lucas App. No. L-92-039 Nov. 27, 1992), p. *7.

When a defendant requests a determination as to whether the testimony of a grand jury witness is inconsistent, a trial court should enact the following procedure, "Crim.R 6(E) would require the trial court, upon proper motion, to consider the basis of the particularized need advanced by the defendant. This may be accomplished by an *in camera* inspection of the grand *jury* minutes by the trial court assisted by counsel." *State v. Greer,* 66 Ohio St.3d at 151. This procedure assumes that the grand jury testimony has been transcribed. If the testimony has not been transcribed, then the

3

proceedings will have to be continued for purposes of the transcription. This will delay the proceedings the sentencing proceedings.

The Franklin County Court of Appeals addressed an analogous situation in *State v. Roberts, supra.* The trial court therein did not conduct the required review of the grand jury testimony because the prosecutor had failed to have the grand jury testimony of the alleged victim transcribed. Consequently, the trial court in the midst of trial had nothing to review. The appellate court ordered that the case be remanded for purposes of the transcription and review of the testimony. *State v. Roberts,* 1997 Ohio App. LEXIS 6101, pp. *7-*8.

WHEREFORE, Von Clark Davis requests this Court to grant this motion and order, to the extent that it has already not been accomplished, or court reporter prepare a complete copy of the grand jury proceedings.

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

4

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3155 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis'*
*Motion To Transcribe The Grand Jury Proceedings* was hand delivered to Daniel
G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A.
Oster, Jr. Assistant Butler County Prosecuting Attorney by leaving two copies
of the pleading at the Government Services Center, 315 High Street, Hamilton,
Ohio  45011 on this  30th day of June, 2008.

COUNSEL FOR  VON CLARK DAVIS

5

STATE OF OHIO : CASE NO. CR1983-12-0614

Plaintiff : STATE OF OHIO, COUNTY OF BUTLER
vs. : COURT OF COMMON PLEAS
 : (Nastoff, J.)
VON CLARK DAVIS :

Defendant : **STATE'S MEMORANDUM IN OPPOSITION
 TO DEFENDANT'S MEMORANDUM "L"
 : "CONCERNING RIGHT TO A JURY TRIAL
 WITH RESPECT TO RESENTENCING"** [*sic*]

: : : : : : : : : :

Now comes the Prosecuting Attorney, and in opposition to the Defendant's

memorandum claiming a "right to a jury trial with respect to resentencing" [*sic*] and also

belatedly claiming, in essence, that the Defendant's jury waiver in this case was ineffective

as to the sentencing phase of his capital trial before a three-judge panel, says that the

Court should reject such claim as wholly without merit.

> *A. Since the Defendant was previously tried by a three-judge panel and his
> conviction as to guilt has been affirmed, but the federal court vacated his death
> sentence because of error that occurred in the sentencing phase of the trial, R.C.
> 2929.06(B) requires that "if the offender was tried by a panel of three judges, that
> panel or, if necessary, a new panel of three judges shall conduct the hearing."*

Davis was tried in 1984, and resentenced in 1989, by a panel of three judges,

having waived a jury trial. The express language of R.C. 2929.06(B)[1] requires that

> "Whenever *** any federal court sets aside, nullifies, or vacates a sentence of
> death imposed upon an offender because of error that occurred in the sentencing
> phase of the trial and if division (A) of this section does not apply, the trial court
> that sentenced the offender shall conduct a new hearing to resentence the
> offender. *** *If the offender was tried by a panel of three judges, that panel
> or, if necessary, a new panel of three judges shall conduct the hearing*. ***."

---

1. Division (E) of R.C. 2929.06 (effective 3-23-05, amended without material change effective 1-1-08)
 makes the statute retroactively applicable "to all offenders who have been sentenced to death for an
 aggravated murder that was committed on or after October 19, 1981" who were "sentenced to death
 prior to, on, or after March 23, 2005, including offenders who, on March 23, 2005, are challenging
 their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated
 by *** any federal court but who, as of March 23, 2005, have not yet been resentenced."

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Defendant's jury waiver was entered according to R.C. 2945.05, which provides, in

relevant part:

> "In all criminal cases pending in courts of record in this state, the defendant may
> waive a trial by jury and be tried by the court without a jury. Such waiver by a
> defendant, shall be in writing, signed by the defendant, and filed in said cause and
> made a part of the record thereof. ***.
> "Such waiver of trial by jury must be made in open court after the defendant has
> been arraigned and has had opportunity to consult with counsel. Such waiver may
> be withdrawn by the defendant at any time before the commencement of the trial."

R.C. 2945.06 also provides, in relevant part:

> **"In any case in which a defendant waives his right to trial by jury and elects
> to be tried by the court under section 2945.05 of the Revised Code**, any judge
> of the court in which the cause is pending shall proceed to hear, try, and determine
> the cause in accordance with the rules and in like manner as if the cause were
> being tried before a jury. **If the accused is charged with an offense punishable
> with death, he shall be tried by a court to be composed of three judges** ***.
> The judges or a majority of them may decide all questions of fact and law arising
> upon the trial; however the accused shall not be found guilty or not guilty of any
> offense unless the judges unanimously find the accused guilty or not guilty. If the
> accused pleads guilty of aggravated murder, a court composed of three judges shall
> examine the witnesses, determine whether the accused is guilty of aggravated
> murder or any other offense, and pronounce sentence accordingly. **The court shall
> follow the procedures contained in sections 2929.03 and 2929.04 of the
> Revised Code in all cases in which the accused is charged with an offense
> punishable by death. ***."**

Specifically, R.C. 2929.03(D) sets forth the applicable procedure by which the three-judge

panel will conduct a capital sentencing hearing, weigh the aggravating circumstances of

which the offender was convicted against any mitigating factors presented by the offender,

decide whether the former outweighs the latter by proof beyond a reasonable doubt, and

then impose a sentence of death or one of the available life sentences, accordingly.

Under these statutes, it is beyond doubt that "[t]he waiver of the right to trial by jury

in a capital case applies to both the guilt phase and the penalty phase of the trial." **State**

**v. Foust**, 105 Ohio St.3d 137, 2004-Ohio-7006, at ¶54.

Defendant Davis cites no statutory authority, and indeed there is no such authority, by which he might obtain a "bifurcated" trial — by a panel of three judges as to guilt, but by a jury as to sentence. In matters of criminal sentencing, the trial court does not have inherent power to act, but has only such power as is conferred by statute or rule. See *State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384, at ¶¶15-17 (Ohio trial judge patently and unambiguously lacked jurisdiction to convene a jury sentencing hearing in supposed compliance with *Blakely v. Washington* [2004], 542 U.S. 296, 124 S.Ct. 2531, and *Apprendi v. New Jersey* [2000], 530 U.S. 466, 120 S.Ct. 2348, where no statute authorizes a jury to make findings concerning sentencing in criminal cases). More to the point, in a capital case, *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, at ¶¶123-124, the Ohio Supreme Court cited *Griffin* and expressly rejected the suggestion that a capital case could be tried pursuant to a "hybrid" or bifurcated procedure, not permitted by any statute or rule, whereby an accused charged with aggravated murder could waive a jury, request that three judges determine his guilt, and then have a jury decide the penalty. This is consistent with the Ohio Supreme Court's longstanding view that the trial procedure in a capital case is strictly governed by statute, and when it is suggested that nonstatutory deviation may be made, "we may not create such a procedure out of whole cloth," see *State v. Penix* (1987), 32 Ohio St.3d 369, 373. See, also, *State v. Brock* (1996), 110 Ohio App.3d 656, 665-667, *leave to appeal not allowed* (1996), 77 Ohio St.3d 1444 (holding that since there is no provision for a single trial judge to make the determination of guilt in a capital case with the subsequent sentencing decision to be made by a jury, empaneled for sentencing only, conviction and death sentence issued under such procedure was void ab initio for want of jurisdiction).

Page 3

**B. Because Davis waived a jury trial, the decisions in _Apprendi_, _Blakely_, and _Ring v. Arizona_ (2002), 536 U.S. 584, et al., are inapposite.**

Davis invokes **_Apprendi_**, **_Blakely_**, and **_Ring v. Arizona_** (2002), 536 U.S. 584, 122 S.Ct. 2428, _inter alia_, to argue that the Sixth Amendment requires any finding of fact that makes a defendant eligible for the death penalty to be unanimously made by a jury. In **_Apprendi_**, the Supreme Court held that the Sixth Amendment does not permit a defendant to be "expose[d] *** to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (Emphasis _sic_.) **_Apprendi_**, 530 U.S. at 483. In **_Ring_**, a capital case, the Supreme Court held that a trial judge may not make findings of fact on an aggravating circumstance necessary to impose the death penalty, as these findings are within the province of the jury. **_Ring_**, 536 U.S. at 609.

Davis's reliance on **_Apprendi_** and **_Ring_** is misplaced, however, because Davis knowingly, intelligently, and voluntarily waived his right to a jury trial. See **_State v. Ketterer_**, 111 Ohio St.3d 70, 2006-Ohio-5283, at ¶122 ("we reject Ketterer's argument [that he was denied his constitutional right under **_Ring_** to have a jury determine his penalty] because Ketterer knowingly, intelligently, and voluntarily waived his right to a jury trial"). As the United States Supreme Court has specifically stated, "nothing prevents a defendant from waiving his **_Apprendi_** rights." **_Blakely_**, 542 U.S., at 310. See, also, **_United States v. Booker_** (2005), 543 U.S. 220, 276, 125 S.Ct. 738 (Stevens, J. dissenting)("it is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury").

**C.  A jury waiver may be withdrawn <u>before</u> commencement of trial, but not <u>after</u> (or here, years after the conviction was affirmed).**

To the extent that Davis now effectively seeks to withdraw his 1984 jury waiver, this is precluded by the very language of R.C. 2945.05, which provides, in pertinent part:

> "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. ***.

> "***.  *Such waiver may be withdrawn by the defendant at any time before the commencement of the trial*."

Under this statute, while a refusal to allow a timely withdrawal of a jury waiver made **before** the commencement of trial is error, cf. **State v. Grimsley** (1982), 3 Ohio App.3d 265, 266-267, it is not error for a trial court to refuse to accept an untimely withdrawal of a jury trial waiver made **after** commencement of trial, see **State v. Frohner** (1948), 150 Ohio St. 53, at paragraph five of the syllabus ("[a] defendant who has waived his right to trial by jury and has elected to be tried by a three-judge court, may withdraw such waiver and election at any time before the commencement of the trial but not after the hearing accorded under Section 13442-5, General Code [now R.C. 2945.06]"), and **Marysville v. Foreman** (1992), 78 Ohio App.3d 118, 123 (effort to withdraw jury waiver did not arise until after witnesses had been sworn and the trial had, in effect, commenced; "such a withdrawal is not timely or effectively made and that the trial court did not abuse its discretion in proceeding with the bench trial as had been requested").

Davis's case is now essentially in "mid-trial," between the finished guilt phase (the verdict of the three-judge panel being affirmed on direct appeal) and the sentencing phase (redux).

***D. The doctrine of res judicata and law-of-the-case doctrine preclude
consideration of Davis's suggestion that he can withdraw his jury waiver, inasmuch
as any issue as to Davis's jury waiver could have been, but was not, raised upon
the direct appeal in his conviction was affirmed, and since the case is before the
Court on remand for resentencing only.***

Davis's suggestion that his jury waiver is subject to the Court's reconsideration is

also precluded by the doctrine or res judicata and the law-of-the-case doctrine.  Davis is

before this Court solely for re-sentencing.  See ***Davis v. Coyle*** (C.A.6, 2007), 475 F.3d

761, 781 ("the resentencing hearing that we order today will not constitute a 'trial' in the

sense that [Davis]'s guilt or innocence is again at issue").   Not only was there no issue

raised as to his jury waiver in his first appeal, where his 1984 conviction was affirmed,

***State v. Davis*** (1988), 38 Ohio St.3d 361, 363 ("we affirm the judgment of the court of

appeals with regard to [Davis's] conviction, but reverse the judgment of the court of

appeals as to [Davis's] death sentence"), but a suggestion that his jury waiver was not

knowingly, intelligently and voluntarily made was indeed considered, ***and rejected***, in

Davis's subsequent appeal, see ***State v. Davis*** (1992), 63 Ohio St.3d 44, 48-49

(specifically, in his "fifth proposition of law" wherein it was suggested that Davis was

misinformed regarding the distinctions between trial by panel or trial by jury at the time he

signed his 1984 jury waiver).

Under the doctrine of res judicata, a final judgment of conviction bars a convicted

defendant who was represented by counsel from raising and litigating in any proceeding,

except an appeal from that judgment, any defense or any claimed lack of due process that

was raised or could have been raised by the defendant at the trial, which resulted in that

judgment of conviction, or on an appeal from that judgment." ***State v. Szefcyk*** (1996),

77 Ohio St.3d 93, syllabus, reaffirming ***State v. Perry*** (1967), 10 Ohio St.2d 175,

paragraph nine of the syllabus.

> " *** '[P]ublic policy dictates that there be an end of litigation; that those
> who have contested an issue shall be bound by the result of the contest, and
> that matters once tried shall be considered forever settled as between the
> parties.' [Citation omitted.] We have stressed that '[the] doctrine of res
> judicata is not a mere matter of practice or procedure inherited from a more
> technical time than ours. It is a rule of fundamental and substantial justice,
> "of public policy and of private peace," which should be cordially regarded
> and enforced by the courts. ***' [Citation omitted.] "

*Szefcyk*, 77 Ohio St.3d at 95, quoting *Federated Dept. Stores, Inc. v. Moitie* (1981),

452 U.S. 394, 401, 101 S.Ct. 2424. There is no injustice in requiring a litigant "to avail

himself of all available grounds for relief" through the first available instance, i.e. his direct

appeal from a conviction. See *Grava v. Parkman Twp*. (1995), 73 Ohio St.3d 379, 383.

Such recognition "establishes certainty in legal relations and individual rights, accords

stability to judgments and promotes the efficient use of limited judicial or quasi judicial

time and resources." *Grava*, id., at 383-384. See, also, *State v. D'Ambrosio* (1995),

73 Ohio St.3d 141, 143 (before the Supreme Court a second time after remand to court

of appeals for reconsideration of death sentence and the latter court affirmed that

sentence, Supreme Court applied doctrine of res judicata to issues previously decided in its

first decision; "[t]he fact that the case was remanded to the court of appeals for

re-evaluation of the death sentence in no way implicated the finality of those convictions").

Moreover, under the law-of-the-case doctrine, "[t]he judgment of the reviewing

court is controlling upon the lower court as to all matters within the compass of the

judgment." *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*

(1978), 55 Ohio St.2d 94, 97. "Absent extraordinary circumstances, such as an

intervening decision by the Supreme Court, an inferior court has no discretion to disregard

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4214

the mandate of a superior court in a prior appeal in the same case." ***Nolan v. Nolan***

(1984), 11 Ohio St.3d 1, syllabus. This doctrine precludes a litigant from attempting to

rely on arguments at retrial which were fully litigated, or could have been fully litigated, in a

first appeal. ***Hubbard ex rel. Creed v. Sauline*** (1996), 74 Ohio St.3d 402, 404-405.

"[T]he rule is necessary to ensure consistency of results in a case, to avoid endless

litigation by settling the issues, and to preserve the structure of superior and inferior courts

as designed by the Ohio Constitution." ***Nolan***, 11 Ohio St.3d, at 3. A trial court may not

exceed the scope of its remand from the superior appellate courts, see ***Hawley v. Ritley***

(1988), 35 Ohio St.3d 157, 161. Thus, a trial court has no power to hear and determine

a motion to withdraw a guilty plea which would thereby vacate or modify a judgment that

has been affirmed by a superior appellate court, "for this action would affect the decision

of the reviewing court, which is not within the power of the trial court to do." ***State ex***

***rel. Special Prosecutors***, 55 Ohio St.2d, at 98. See, also, ***State v. Allen***, Warren App.

No. CA2006-01-001, 2006-Ohio-5990, at ¶13 (citing ***Special Prosecutors*** and holding

that trial court does not have jurisdiction to maintain and determine a motion to withdraw a

guilty plea subsequent to an appeal and an affirmance by the appellate court).

Specifically, Davis's case has been remanded solely for resentencing,[2] and the trial

court lacks authority to consider a motion to withdraw a jury waiver. See ***State v. Roper***,

Summit App. No. 22988, 2006-Ohio-3661, at ¶¶10-11 (trial court exceeded scope of

---

2.    Of course, this is to be distinguished from a case where a conviction was reversed and a retrial is
      ordered, see ***State v. McGee***, 128 Ohio App.3d 541, 545 (where Supreme Court had reversed the
      defendant's conviction on the basis that he was not properly charged with, or found guilty of, an essential
      element of the offense and remanded the case for a new trial under an amended indictment, "McGee's
      previous waiver of jury trial [was] inherently revoked by the reversal of the conviction" and trial court erred
      in refusing to allow withdrawal of prior jury trial waiver).

remand for the limited purpose of resentencing only under _State v. Foster_, 109 Ohio St.3d

1, 2006-Ohio-856, when it considered motions by defendant to withdraw guilty plea and

by state to reconsider withdrawal of guilty plea); **_State v. Letts_** (Jan. 29, 1999),

Montgomery App. No. 17084 (on remand for resentencing on affirmed convictions for

aggravated robbery where aggravated murder conviction reversed due to insufficient

evidence, remand had a "very limited purpose" to resentence defendant absent the

aggravated murder, thus under law-of-the-case doctrine, "trial court was to do no more

than resentence," and had the trial court elected on remand to consider motion for a new

trial on the aggravated robbery charges, that action would have been wholly inconsistent

with appellate decision affirming robbery convictions, and would have exceeded the

permissible scope of the trial court's authority on remand).

### E.  If considered on its merits, the record is sufficient to establish that Davis's jury waiver was effective.

Arguendo, even if Davis's 1984 jury waiver is reconsidered notwithstanding the law-

of-the-case, see **_Davis_**, 63 Ohio St.3d, at 48-49, and **_State v. D'Ambrosio_** (1993),

67 Ohio St.3d 185, 189 (citing **_Davis_** and rejecting capital defendant's argument which

"assumes that a knowing, intelligent waiver of a jury trial can retroactively be rendered

unknowing and unintelligent by postwaiver events"), there is nothing about the record that

suggests that Judge Bruewer's colloquy with Davis upon acceptance of his jury waiver was

fatally deficient, cf. **_State v. Ruppert_** (1978), 54 Ohio St.2d 263 (jury waiver not knowing,

intelligent and voluntary when defendant is misinformed that the three-judge panel may

render a verdict pursuant to R.C. 2945.06 only by unanimous vote).  Rather, contrary to

Davis's contentions, the record demonstrates that he knew that his waiver applied to both

phases of trial.  See *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, at ¶¶52-55:

"{¶52} *** Waiver may not be presumed from a silent record.  However, if the record shows a jury waiver, the conviction will not be set aside except on a plain showing that the defendant's waiver was not freely and intelligently made.  *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 37, citing *Adams v. United States ex rel. McCann* (1942), 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268.  Moreover, a written waiver is presumptively voluntary, knowing, and intelligent.  *United States v. Sammons* (C.A.6, 1990), 918 F.2d 592, 597; *State v. Bays* (1999), 87 Ohio St.3d 15, 19, 716 N.E.2d 1126.

"{¶53} Although the trial court did not fully advise Foust of all the implications of his jury waiver, '[t]here is no requirement for a trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial.'  *State v. Jells* (1990), 53 Ohio St.3d 22, 559 N.E.2d 464, paragraph one of the syllabus. 'The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel.  While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so.' (Citation omitted.)  Id. at 26, 559 N.E.2d 464; see, also, *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 26; *State v. Bays*, 87 Ohio St.3d at 20, 716 N.E.2d 1126 (trial court's failure to explain that a single juror can block a death recommendation did not invalidate a jury waiver).

"{¶54} We also reject Foust's claim that his jury waiver was invalid because the trial court failed to advise him that the waiver applied to both the guilt and the penalty phases of trial.  The waiver of the right to trial by jury in a capital case applies to both the guilt phase and the penalty phase of the trial.  Contrary to Foust's contentions, the record demonstrates that he knew that his waiver applied to both phases of trial: during a colloquy with counsel after accepting Foust's waiver, the court stated, '[W]e will leave the date for December 12th before a panel of three judges. You should all be aware, in the event any discussions about a plea to reduced charges should be done, that we still have to convene the three-judge court in order to take that plea and impose a sentence.' (Emphasis added.) Thus, the record reflects that all were aware – including Foust – that his waiver of a jury trial meant that the three-judge panel would impose sentence during the penalty phase.

"{¶55} Further, nothing in the record suggests that Foust's jury waiver was not knowingly, intelligently, and voluntarily made.  When the trial court accepted Foust's written waiver, Foust affirmed that his decision was voluntary.  Moreover, his trial counsel did not request that the trial court ask any further questions or clarify any of the other rights associated with Foust's waiver."

Accord, **State v. Lomax**, 114 Ohio St.3d 350, 2007-Ohio-4277, at paragraph two of the

syllabus ("[t]o satisfy the 'in open court' requirement in R.C. 2945.05, there must be some

evidence in the record that the defendant while in the courtroom and in the presence of

counsel, if any, acknowledged the jury waiver to the trial court").  And contrary to Davis's

claim, the trial court was not required to specifically advise Davis of every legal aspect of

trial before a jury, as opposed to trial before a three-judge panel. See **State v. Ketterer**,

111 Ohio St.3d 70, 2006-Ohio-5283, at ¶68 (citing **Bays** and noting that "a defendant

need not have a complete or technical understanding of the jury trial right in order to

knowingly and intelligently waive it." [**Bays**, 87 Ohio St.3d, at 20]. Nor is the trial court

"required to inform the defendant of all the possible implications of waiver." Id.").

Wherefore, the Defendant's "memorandum concerning his right to a jury trial with

respect to resentencing" is wholly without merit and should be disregarded by this Court.

Respectfully submitted,

**ROBIN N. PIPER  (0023205)**
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**

*Michael A. Oster Jr. (per DE)*
**MICHAEL A. OSTER, JR.  (0076491)**
**Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

Page 11

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL (0008259)**
**Assistant Prosecuting Attorney**

- 99-LW-0159 (2nd)

**99-LW-0159 (2nd)**

STATE OF OHIO, Plaintiff-Appellee

v.

JOSEPH LETTS: Defendant-Appellant

C.A. CASE NO. 17084

2nd District Court of Appeals of Ohio, Montgomery County.

Decided on January 29, 1999.

T.C. CASE NO. 94-CR-2753

Mathias H. Heck, Jr. Pros. Attorney; Carley J. Ingram, Asst. Pros. Attorney, P.O. Box 972, Dayton, Ohio 45422, Atty. Reg. No. 0020084, Attorney for Plaintiff-Appellee

D.K. Wehner, 1400 First National Plaza, Dayton, Ohio 45402, Atty. Reg. No.0016080, Attorney for Defendant-Appellant

OPINION

GRADY, P.J.

Joseph Letts was found guilty of one count of Aggravated Murder and four counts of Aggravated Robbery following a jury trial. Each of the charges contained a firearm specification. The trial court sentenced Letts to life imprisonment on the aggravated murder charge. That sentence was to run consecutively to two concurrent ten to twenty-five year terms which the court imposed for aggravated robbery. Those indefinite sentences were in turn to run consecutive to two more concurrent ten to twenty-five year terms for aggravated robbery. Additionally, the court merged all of the firearm specifications and imposed one consecutive three year term of actual incarceration.

On direct appeal, this court vacated Lett's conviction on the aggravated murder charge based upon insufficient evidence. We affirmed Letts' conviction on the four counts of aggravated robbery and remanded the case back to the trial court for resentencing. State v. Letts (June 13, 1997), Montgomery App. No. 15681, unreported.

Prior to resentencing, Letts filed motions in the trial court seeking merger of all four aggravated robbery counts, resentencing pursuant to the new sentencing guidelines enacted by S.B.2, dismissal of all of the firearm specifications, and leave to file a motion for a new trial. The State responded with memorandums opposing all of Letts' motions. In addition, both parties filed sentencing memorandums.

On January 30, 1998, the trial court summarily overruled Letts' pending motions. The court then reimposed the same sentences it had originally imposed on the aggravated robbery charges, finding that it would be "inappropriate to either increase or decrease those sentences." The court's reimposition of those sentences was journalized by entry filed February 3, 1998.

Joseph Letts has now timely appealed to this court, challenging the sentences imposed upon him by the trial court.

FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THE EXCESSIVE SENTENCE IMPOSED IN THIS CASE.

Letts argues that the trial court abused its discretion when, upon remand from this court for resentencing, the trial court imposed maximum consecutive sentences upon him. Letts suggests that the maximum sentences were imposed by the trial court in retaliation for Letts exercising his right to a jury trial. In order to support that allegation, Letts asserts that his sentence on the aggravated robbery charges was more severe than that of his other co-defendants, including the principal offender in this shooting. Letts claims that the only other co-defendant who received a similar sentence as harsh as his likewise exercised her right to trial.

A trial court has broad discretion in selecting an appropriate sentence within statutory limits, Toledo v. Reasonover (1965), 5 Ohio St.2d 22; State v. Williams (1982), 7 Ohio App.3d 160, and its decision in such matters will not be disturbed

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4220

- 99-LW-0159 (2nd)                                                                    Page 2 of 3

on appeal absent a showing that the court abused its discretion. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.

An examination of the record in this case reveals nothing which supports Letts' assertion that he received the maximum sentence in retaliation for going to trial. Co-defendant Lashawnna Keeney, the principal offender in the shooting, entered a plea of guilty to aggravated murder and three counts of aggravated robbery in exchange for the State's agreement to dismiss two counts of aggravated robbery. Keeney was sentenced to life, consecutive to three concurrent ten to twenty-five year terms, consecutive to three years of actual incarceration.

Co-defendant Angela Thuman entered a guilty plea to aggravated murder and three counts of aggravated robbery in exchange for the State's agreement to dismiss two counts of aggravated robbery and a firearm specification. Thuman was sentenced to life, consecutive to three concurrent six to twenty-five year terms.

The sentence imposed upon co-defendant Tyra Patterson was identical to the sentence imposed upon Joseph Letts.

Unlike the cases on which Letts relies, the record before us does not demonstrate that the trial court was involved in plea bargaining in Letts' case, or that a more severe sentence followed after plea negotiations broke down.

The trial judge in this case specifically rejected the idea of altering Letts' original sentence for aggravated robbery upon remand from this court. At the time the court imposed that original sentence, it reviewed a pre-sentence report and considered the relevant statutory sentencing criteria. The trial court was not obligated to order another report for purposes of resentencing. Moreover, this record does not affirmatively demonstrate that the trial court refused to consider any relevant sentencing criteria in R.C. 2929.12, or that it considered legally improper factors in imposing sentence. In short, this record does not demonstrate that the trial court abused its discretion, as that term is defined by law, in imposing the maximum sentence on Letts on the aggravated robbery charges.

The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL.

Letts filed a motion for leave to file a motion for a new trial. According to Letts, he was deprived of a fair trial on the aggravated robbery charges because those robbery charges were tried together with an "unfounded charge" of aggravated murder which this court determined on direct appeal was not supported by legally sufficient evidence. See State v. Letts (June 13, 1997), Montgomery App. No. 15681, unreported.

Letts filed his motion seeking a new trial after we remanded this case back to the trial court for resentencing, but before the trial court could comply with our mandate and resentence Letts. This court ordered Letts resentenced after we set aside his aggravated murder conviction on direct appeal because the evidence presented at trial was legally insufficient to sustain a conviction on that particular charge. However, we affirmed Letts' conviction on all four counts of aggravated robbery. It is abundantly clear from our opinion in the direct appeal that our remand of this case to the trial court had a very limited purpose: to resentence Letts absent the aggravated murder conviction.

In accordance with the law of the case doctrine, trial courts have no discretion to disregard the mandate of a reviewing court, and they have no authority to extend or vary the mandate given. Nolan v. Nolan (1984), 11 Ohio St.3d 1. Ohio courts have consistently followed Nolan and found reversible error when the trial court exceeds the scope of its authority upon remand of the case from a reviewing court. Thomas v. Thomas (December 12, 1997), Greene App. No. 97-CA-10, unreported.

It is manifestly clear from our remand that the trial court was to do no more than resentence Letts, absent the aggravated murder conviction. Had the trial court elected on remand to grant Letts' motion for a new trial on the aggravated robbery charges, that action would have been wholly inconsistent with our decision affirming those robbery convictions, and would have exceeded the permissible scope of the trial court's authority on remand.

The second assignment of error is overruled.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4221

- 99-LW-0159 (2nd)                                                                   Page 3 of 3

THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS THE FIREARM SPECIFICATION.

The trial court overruling Lett's motion to dismiss the firearm specifications in this case. Although acknowledging that an unarmed accomplice may be convicted of a firearm specification, State v. Chapman (1986), 21 Ohio St.3d 41, Letts argues that it is unfair to convict him of a firearm specification when the evidence fails to demonstrate that he was even aware that a firearm was present at the crime scene. In essence, Letts complains that the evidence presented at trial was insufficient to sustain his conviction on the firearm specification.

Clearly, Letts could have raised this issue on direct appeal from his conviction, but he failed to do so. Under res judicata principles, Letts cannot utilize our remand of this case to the trial court for purposes of resentencing only in order to raise this issue for the first time.

Moreover, as with his motion seeking a new trial, Letts filed his motion seeking a dismissal of the firearm specifications after we decided his direct appeal and remanded the case back to the trial court for resentencing only. For the reasons discussed under the second assignment of error, we conclude that the trial court lacked authority to grant Letts' motion to dismiss the firearm specifications as that action would have been inconsistent with our decision and would have exceeded the scope of the trial court's authority on remand.

The third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN REFUSING TO RE-SENTENCE APPELLANT UNDER THE NEW SENTENCING PROVISIONS OF AM.SUB.S.B. NO. 2.

In this assignment of error Letts argues that even though his offenses were committed before July 1, 1996, the effective date of Am.Sub.S.B.2, because he was resentenced by the trial court following remand from this court after that date, he was entitled to be resentenced pursuant to the new law.

This assignment of error is overruled on the authority of State v. Rush (1998), 83 Ohio St.3d 53.

Conclusion

Having overruled all of the assignments of error, the judgment of the trial court will be affirmed.

BROGAN, J. And YOUNG, J., concur.

© Lawriter Corporation. All rights reserved.

The Casemaker™ Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.

http://www.lawriter.net/cgi-bin/texis/web/ohunrep/+3ewxZI5eAfnwBmeu8TOeoPFwwwx...   7/25/2008

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4222

**2006-Ohio-3661; State v. Roper;**

2006-Ohio-3661

[Cite as State v. Roper, 2006-Ohio-3661]

STATE OF OHIO Appellee
v.
DERRICK ROPER Appellant

C. A. No. 22988

9th District Court of Appeals of Ohio, Summit County
Decided on July 19, 2006

APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF
SUMMIT, OHIO CASE No. CR 03 02 0342

This cause was heard upon the record in the trial court. Each error assigned has been reviewed and
the following disposition is made:

DECISION AND JOURNAL ENTRY

WHITMORE, Judge.

{¶1}     Defendant-Appellant Derrick E. Roper has appealed from the decision of the Summit County
Court of Common Pleas that denied his motion to withdraw his guilty pleas and sentenced him to 14
years incarceration. We affirm in part and reverse in part.

I

{¶2}     On February 11, 2003, Defendant-Appellant Derrick E. Roper was indicted on several drug
offenses, including two major drug offender specifications, and a having a weapon under disability
charge. On February 12, 2003, Appellant entered not guilty pleas to all charges in the indictment.

{¶3}     On May 12, 2003, Appellant withdrew his previously entered not guilty pleas and pled guilty to
two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), both felonies of the first degree;
one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the first degree with a
major drug offender specification pursuant to R.C. 2941.1410; and one count of having a weapon while
under disability, in violation of R.C. 2923.13(A)(3), a felony of the fifth degree. Under the plea
agreement, the remaining charges and specification were dismissed. The trial court accepted Appellant's
guilty pleas and sentenced him to a total of 14 years incarceration.

{¶4}     On May 11, 2004, Appellant filed a delayed appeal in this Court. Appellant argued to this Court
that the trial court erred in sentencing him. We agreed and reversed his sentences and remanded the
matter for resentencing.

{¶5}     On July 19, 2005, Appellant filed a motion for resentencing, which included a motion to
withdraw his previously entered guilty pleas and/or vacate said pleas. On September 15, 2005, the trial
court allowed Appellant to withdraw his previously entered guilty pleas and reinstated his original not
guilty pleas. On September 20, 2005, the State filed a motion entitled "Motion to Reconsider" and asked

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4223

the trial court to reconsider its September 15, 2005 decision regarding Appellant's motion to withdraw his guilty pleas and to deny Appellant's motion to withdraw his guilty pleas. On September 22, 2005, the parties presented arguments on the State's motion to reconsider and Appellant's motion to withdraw his pleas/vacate his pleas. On September 27, 2005, the trial court's order granting Appellant's motion to withdraw his pleas and enter not guilty pleas was journalized.

{¶6}     On October 13, 2005, a hearing was held on the State's motion to reconsider and Appellant's motion to withdraw his guilty pleas. At the end of the hearing, the trial court denied Appellant's motion to withdraw his guilty pleas and set a date for resentencing.

{¶7}     Appellant was resentenced on October 20, 2005 and he again received a total of 14 years incarceration. Appellant has timely appealed, asserting three assignments of error.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN CONSIDERING AND GRANTING THE APPELLEE'S MOTION TO RECONSIDER." Assignment of Error Number Two "THE TRIAL COURT ERRED IN ULTIMATELY DENYING THE APPELLANT'S REQUEST TO WITHDRAW HIS GUILTY PLEA BECAUSE HE DID NOT KNOWINGLY AND INTELLIGENTLY ENTER INTO A PLEA OF GUILT."

{¶8}     In his first assignment of error, Appellant has argued that the trial court erred in granting the State's motion to reconsider because the Criminal Rules of Procedure do not allow for a motion to reconsider. In his second assignment of error, Appellant has argued that the trial court erred in denying his motion to withdraw his guilty plea because his plea was not made knowingly and intelligently.

{¶9}     As previously noted, this is the second appeal regarding the instant matter. Appellant's first appeal was based on his sentence. In our January 5, 2005 Decision and Journal Entry, we "reverse[d] and remand[ed] for re-sentencing." *State v. Roper*, 9th Dist. No. 22102, 2005-Ohio-13, at ¶1. In his appeal, Appellant argued that the trial court failed to make the appropriate findings at his sentencing hearing to warrant imposing the maximum sentences for his convictions and we agreed. We ordered the cause "remanded to the Summit County Court of Common Pleas for re-sentencing in accordance" with our opinion. Id. at ¶13.

{¶10}     On remand, a trial court must obey the mandate of the court of appeals. See *State ex rel Davis v. Cleary* (1991), 77 Ohio App.3d 494. The remand order gives the trial court jurisdiction to carry out the directive of the court of appeals. See *International Union of Operating Engineers, Local 18 v. Wannemacher Co.* (1990), 67 Ohio App.3d 672, 675. The trial court is without authority to extend or vary the mandate given by the appellate court. See *Nolan v. Nolan* (1984), 11 Ohio St.3d 1. Therefore, action by the trial court inconsistent with the mandate of the appellate court exceeds the trial court's authority and constitutes error.

{¶11}     We find that the trial court failed to obey the mandate of this Court when it ruled on Appellant's motions to withdraw his pleas/vacate his pleas and the State's motion to reconsider. It is clear from the record that when we remanded the case to the trial court in January 2005 it was for the sole purpose of resentencing. Accordingly, the trial court lacked the authority to consider the motions filed by the State and Appellant. The trial court's actions exceeded our mandate and its jurisdiction. See *Nolan* and *Wannemacher*, supra. Therefore, we find that the trial court erred in ruling on the motions

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4224

regarding the withdrawal of Appellant's pleas. But, we also find said error harmless. Harmless error is
"[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" Crim.R. 52(A).
If an error is deemed harmless beyond a reasonable doubt, it is disregarded and the matter need not be
reversed. Crim.R. 52(A); *State v. Tate*, 9th Dist. No. 21943, 2005-Ohio-2156, at ¶22.

{¶12}    We find the trial court's error harmless because it did not affect a substantial right. Appellant
did not have the right to have his motion to withdraw considered and the State did not have the right to
have its motion to reconsider reviewed. As previously discussed, the trial court only had the authority to
resentence Appellant and that is what it eventually did. The trial court's actions before sentencing
Appellant were harmless error because they did not affect the only right he had under our mandate,
which was to be resentenced. Based on the foregoing, Appellant's first and second assignments of error
lack merit.

Assignment of Error Number Three

"THE TRIAL COURT ERRED IN ACCEPTING THE APPELLANT'S PLEA AND
ULTIMATELY IN SENTENCING THE APPELLANT BECAUSE IT FAILED TO
INFORM HIM THAT HE WOULD BE SUBJECT TO POST RELEASE CONTROL;
THEREFORE, THE APPELLANT DID NOT KNOWINGLY AND INTELLIGENTLY
ENTER A PLEA OF GUILT."

{¶13}    In his third assignment of error, Appellant has argued that the trial court erred in accepting his
guilty plea and sentencing him.(fn1) Specifically, Appellant has argued that the trial court erred because
it did not notify him that he would be subject to postrelease control. The State has conceded that the trial
court erred in failing to notify Appellant of postrelease control during the sentencing hearing. We agree.

{¶14}    "[W]hen sentencing a felony offender to a term of imprisonment, a trial court is required to
notify the offender at the sentencing hearing about postrelease control and is further required to
incorporate that notice into its journal entry imposing sentence." (Footnote omitted). *State v. Jordan*,
104 Ohio St.3d 21, 2004-Ohio-6085, at ¶17. If a trial court sentences a felony defendant to prison and
fails to properly notify him about postrelease control, the sentence is contrary to law and the matter must
be remanded for resentencing. Id. at ¶23.

{¶15}    It is undisputed that the trial court failed to comply with *Jordan* and properly notify Appellant
about postrelease control at his sentencing hearing.

Accordingly, we review the trial court's sentence.

Accordingly, Appellant's sentence is contrary to law and this Court must vacate his sentence and
remand for resentencing. Appellant's third assignment of error has merit.

III

{¶16}    Appellant's first and second assignments of error are overruled. Appellant's third assignment of
error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part,
reversed and vacated in part and remanded for resentencing.2 Judgment affirmed in part, reversed in
part, and cause remanded.

The Court finds that there were reasonable grounds for this appeal.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4225

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

BETH WHITMORE FOR THE COURT

SLABY, P. J, BOYLE, J. CONCUR

JANA DELOACH, Attorney at Law, 7 West Bowery Street, Suite 307, Akron, Ohio 44308, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, Summit County Safety Building, 53 University Avenue, 6th Floor, Akron, Ohio 44308, for Appellee.

---

Footnotes:

1.    Appellant's third assignment of error states that the trial court accepted Appellant's guilty pleas. We disagree, the record does not show that the trial court "accepted" Appellant's guilty pleas; rather, it merely resentenced him.

2.    Appellant's convictions stand and the matter is remanded for the sole purpose of resentencing.

OH

OH Unpublished App.

Lawriter Corporation. All rights reserved.

The Casemaker Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4226

FILED

IN THE COURT OF APPEALS FOR BUTLER COUNTY, OHIO

2008 JUL -1 PM 9: 25

CINDY CARPENTER
STATE OF OHIO, COUNTY
CLERK OF COURTS

Appellee,                                    :           CASE NO. CA2008-04-111

vs.                                          :           ENTRY OF DISMISSAL

VON CLARK DAVIS,                             :

Appellant.          IMAGED        :

The above appeal is taken from a March 31, 2008 entry filed in the Butler County

Court of Common Pleas styled "entry as to release of institutional records."  The entry

directs that "certified copies of all institutional records held at the Ohio State Penitentiary

at Youngstown, Ohio by the Ohio Department of Corrections and Rehabilitation regarding

[appellant, Von Clark Davis] be released to both parties [appellee, the state of Ohio, and

appellant]; it appearing to the Court that such order will facilitate the Prosecuting

Attorney's duty under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, to disclose

any evidence in possession of the State which is potentially favorable to the defendant

and material to punishment ***."  A notice of appeal from the entry was timely filed by

appellant on April 23, 2008.

Appellant was convicted of aggravated murder, murder and having a weapon under

disability in 1984 and sentenced to death.  Appellant was before the Butler County Court

of Common Pleas on March 31, 2008 pursuant to a new sentencing hearing ordered by

the United States Court of Appeals for the Sixth Circuit.  Appellant contends that the

common pleas court's entry releasing institutional records allows the state access records

I CERTIFY THE WITHIN TO BE A
TRUE COPY OF THE ORIGINAL FILED
      7-1                    20 08
CINDY CARPENTER
Butler County Clerk of Courts
Renee Bruce          Deputy

Butler CA2008-04-111
Page -2-

that could involve appellant's doctor/patient and psychologist/client relationships.

By entry filed on May 13, 2008, this court directed the parties to file memoranda on the issue of whether the March 31, 2008 entry appealed from is a final appealable order. Both parties filed memoranda on May 30, 2008, and reply memoranda on June 6, 2008.

A final appealable order must satisfy the requirements of R.C. 2505.02. The parties agree that if the entry appealed from is a final order, it is because the entry constitutes a "provisional remedy" pursuant to R.C. 2505.02(A)(3). Provisional remedy is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of a privileged matter [or] suppression of evidence ***." *Id.* The entry appealed from, according to appellant, concerns discovery of privileged matter due to certain medical and psychological reports and examinations which may be contained in appellant's institutional records.

An order that grants or denies a provisional remedy is a final appealable order if both of the following apply: (1) the order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy, and (2) the appealing party would not be afforded a meaningful or effective remedy by appeal following final judgment as to all proceedings, issues, claims and parties in the action. R.C. 2505.02(4)(a)(b).

It is clear from the record and the pleadings that neither party contends that all of the information ordered released by the trial court is privileged material. The March 31, 2008 entry does not designate what material should be withheld from appellee as

Butler CA2008-04-111
Page -3-

privileged; it provides appellee with access to all of the released materials.  Appellee

contends that none of the material is privileged because the common pleas court simply

ordered disclosure of a state prisoner's records from one state agency (ODRC) to another

(a county prosecutor).  Appellee also points out that it has a duty to examine the material

for possible disclosure under *Brady*.

Given the present state of the record, it cannot be said that the order appealed

from directs disclosure of any privileged matter.  Under the circumstances, the order

appealed from is not a final appealable order.  See *Nat'l. Interstate Corp. v. West*, Summit

App. No. 23877, 2008-Ohio-1057 (order compelling discovery of documents containing

alleged trade secrets not final appealable order because extent to which documents

contained trade secrets unknown); *Legg v. Hallet*, Franklin App. No. 07AP-170, 2007-

Ohio-6695 (partial grant of motion to compel production of allegedly privileged documents

not final appealable order as no showing documents ordered produced were privileged);

*King v. American Standard Ins. Co. of Ohio*, Lucas App. No. L-06-1306, 2006-Ohio-5774

(appeal from order directing appellant to submit certain allegedly privileged material to

court for in camera inspection not final appealable order); *Chambers v. AKAAS Corp.*,

Lorain App. No. 05CA008791, 2006-Ohio-4156 (denial of motion to exclude doctor's

testimony based upon doctor/patient privilege not final appealable order because appeal

was premature and not appeal from actual denial of specific, privileged information);

*Holliday v. Gerth*, Cuyahoga App. No. 86570, 2006-Ohio-934 (denial of motion for

Butler CA2008-04-111
Page -4-

protective order re records allegedly protected by attorney/client privilege not final appeal-

able order as nothing in record indicated information sought was privileged).

Based upon the foregoing, this appeal is hereby DISMISSED, costs to appellant.

IT IS SO ORDERED.

Stephen W. Powell, Judge

William W. Young, Judge

James E. Walsh, Judge

STATE OF OHIO,

          Plaintiff,

vs.

VON CLARK DAVIS,

          Defendant.

CASE NO.  CR1983-12-0614

**STATE OF OHIO**
**COUNTY OF BUTLER**
**COURT OF COMMON PLEAS**
(Nastoff, J.)

**MEMORANDUM IN**
**OPPOSITION TO PRECLUDE**
**USE OF DEATH PENALTY**

: : : : : : : : : : : :

Now comes the Prosecuting Attorney, and respectfully requests that the Defendant's motion to preclude the use of Ohio's current lethal injection procedure as unconstitutional be denied.

The State of Ohio intends to seek the death penalty at the Defendant's re-sentencing hearing. Ohio's sole method of execution, as provided in R.C. 2949.22, is lethal injection through the sequential delivery of three separate drugs. The first drug, sodium thiopental, serves as an anesthetic and renders the inmate unconscious for the delivery of the remaining two drugs. The second drug, pancuronium bromide, is a paralytic drug that prevents muscle seizures from occurring when the third drug is introduced, thus preserving the inmate's dignity during the process. The final drug, potassium chloride, interferes with electrical signals in the body, resulting in cardiac arrest, ultimately causing death.

This past April, the Supreme Court issued its first substantive ruling on the constitutionality of the lethal injection process. Arising from Kentucky's lethal injection process, the Court upheld Kentucky's procedure against several challenges

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

I

as not being in violation of the Eighth Amendment's ban on cruel and unusual punishment. _Baze v. Rees_ (2008), 128 S.Ct. 1520, 1526, 1538.

In discussing the current state of the death penalty, the Court noted that of the 36 states that currently allow for executions, all use lethal injection as either their primary method of execution or provide for alternative methods (e.g. electrocution, hanging, firing squad). _Id_. at 1525, 1527 n.1. Kentucky's three drug combination is in use by at least 30 other states, including Ohio. _Id_. at 1527.

Many of the lethal injection procedure issues addressed and upheld in _Baze_ are applicable to Ohio's lethal injection process as well: risk of procedure not being properly followed (1530-31), risk of pain inherent in medical procedures (1531-32), improper administration of drugs (1533), execution team training and qualifications (1533-34), presence of prison warden in death chamber to monitor inmate during the procedure (1534), having the execution team located in an adjoining room (1534), use of current three drug protocol when other options are available (1535-36), and insuring adequate anaesthetization through the first drug through monitoring equipment(1536).

Just this month, the Fourth Circuit Court of Appeals upheld Virginia's lethal injection procedure in light of _Baze_ and addressed several issues which Defendant raises today. _Emmett v. Johnson_ (2008), --F.3--, 2008 WL 2736034 (4th Cir.). Virginia, like Kentucky and Ohio, uses the same three drug combination upheld in _Baze_. _Id_. at *2. The court also took note that Virginia has carried out 70 lethal injections compared to Kentucky's one. _Id_. at 8. The Fourth Circuit found that the inmate's failed to show that Virginia's procedure was substantially different from Kentucky's. The court rejected the claim that Virginia's use of two grams of

2

sodium thiopental is insufficient to anaesthetize the inmate and that it is substantially different from Kentucky's use of three grams. *Id*. at *12. The court also found that a time of one or two minutes in between the injections of the drugs was sufficient to prevent risk of severe pain associated with the drugs. *Id*. at *8-10.

In his motion, Defendant raises several issues challenging use of the lethal injection procedure, each of which is addressed below.

**"II. OHIO'S LETHAL INJECTION PROCEDURE IS FLAWED"**

In this section, Defendant has highlighted several aspects of the expert testimony of Dr. Mark Heath, from the case *State v. Rivera*, Lorain C.P. Case No. 04CRO65940, which he believes shows that Ohio's lethal injection process is "flawed". However, the points raised by the Defendant are simply statements of fact, mischaracterizations, or issues already addressed by the Supreme Court in *Baze*.

Point 19[1] is a statement of how the third drug, potassium chloride, causes cardiac arrest. This is a statement of its intended effect and is not a flaw. Point 20 correctly states that potassium chloride, injected into the veins of conscious person will cause excruciating pain by activating nerves sensitive to potassium. This point is not disputed, but it is not a flaw. The pain that would be caused by this drug is negated by properly anaesthetizing the inmate with sodium thiopental before administration of potassium chloride. A person properly anaesthetized with sodium thiopental will experience no pain from potassium chloride.

---

[1] Defendant has chosen to highlight only certain points raised by Dr. Heath and begins with point 19. The State then follows the points raised by the Defendant in the order presented by defendant. The remaining points addressed by Dr. Heath and not raised by the Defendant are simply statements of fact or Dr. Heath's own opinion on the lethal injection process.

3

Point 21 is simply an opinion by Dr. Heath. He states that potassium chloride causes "extreme pain upon administration" when in fact the procedure used by Ohio (and several other states) involves anaesthetizing the inmate to the point where this pain will not be felt. He also criticizes the Department of Rehabilitation and Corrections (DRC) for not choosing another drug that would be painless. However, the DRC has adopted a procedure that, when followed properly, will result in a painless execution, a point conceded by the Defendant. (Defendant's Motion, p. 9-10), see also _Baze_, at 1530.

Points 24, 26, and 29 provide a description of pancuronium bromide, the second drug used in the lethal injection process, and what the drug would do if delivered by itself. These points are not flaws. A point not highlighted by the defendant, is point 30, where Dr. Heath states "[t]here is no legitimate reason for including pancuronium bromide in the execution process***". (Defendant's Motion, Appendix, Volume II, Tab 2, ¶31). These four points incorrectly characterize the purpose of pancuronium bromide in the execution process. The drug is intended to preserve the dignity of the inmate during the execution process by preventing involuntary muscle seizures which can be caused by the interruption of the body's electrical signals when the final drug is injected, a point highlighted by the Court in _Baze_, 128 S.Ct. at 1535.

Points 39 and 41 focus on errors that "could" occur due to human or technical error. Even in the best clinical settings, errors occur during medical procedures. (Defendant's Motion, Appendix, Volume II, Tab 2, ¶43, _and_ First Notice of Additional Authority, ¶8). However, the Supreme Court has stated that normal human error associated with a method of execution, "no matter how humane", is acceptable under the Constitution. _Id_. at 1529. Defendant also

4

acknowledges the inherent risk of error in medical settings: "Medication errors are widespread within the clinical arena,". (Defendant's Motion, p. 6)

Under point 42, Dr. Heath mentions several problems that "could" occur during the lethal injection procedure, including: errors in drug preparation and labeling of syringes, errors in selecting the correct syringe and correctly injecting the drug, IV tubing leaks, incorrect insertion or migration of the catheter, perforation of the vein, excessive pressure on the syringes, improperly securing the catheter, and failure to remove the tourniquet and restraining straps. Many of these "problems" are inherent in any medical procedure. Errors in drug preparation can be avoided by following the manufacturers directions. See *Baze*, at 1533. Errors in selecting the correct syringe during the injection process are reduced by having the syringes sequentially labeled in the order they are to be delivered. (Defendant's Motion, Appendix, Volume II, p. 552-53, 562, 571). Problems with inserting the catheter and injecting the drugs is obviated by having the medical team members of the execution team certified to prepare and administer intravenous drugs. (Defendant's Motion, Appendix, Volume I, p. 2). Problems with the IV are minimized by visual monitoring in the execution chamber by the warden and execution team commander. (Defendant's Motion, Appendix, Volume I, p. 480), see also *Baze*, at 1534 (signs of IV infiltration are "very obvious").

Point 44 addresses the issue of contingencies during the injection of the anesthetic. While there is no written procedure, it is the duty of the warden and the execution team leader to ensure that the inmate is properly anaesthetized before signaling to the execution team that the final two drugs can be administered. (Defendant's Motion, Appendix, Volume II, p. 480), see also *Emmett*, at *12.

5

Point 50 questions the decision to have those injecting the drugs in a different room from the inmate. Ohio's procedure is identical to Kentucky's in this aspect. Both states have the execution team administer the drugs from another room to protect their identities, while the warden and another individual are present in the execution chamber to monitor the status of the IV and to make sure the inmate is properly anaesthetized before the remaining two drugs are injected. *Baze*, at 1534. The Supreme Court noted that the safeguards taken by Kentucky obviated any risks associated with the procedure to the point of preventing an Eighth Amendment violation. *Id*.

Points 53 and 54 address the act of finding adequate intravenous injection sites. The medical team members of the execution team are certified by the state to prepare and administer intravenous drugs. (Defendant's Motion, Appendix, Volume I, p. 2). These team members are not placed under time constraints in finding adequate intravenous sites. *Cooey v. Strickland* (2007), 479 F.3d 412, 424. Since, the team members are certified to administer intravenous drugs and given all the time necessary to establish IV lines, the risk of not finding adequate veins to carry out the lethal injection process is drastically reduced.

For these reasons, this Court should find that Defendant's motion does not point out "flaws" in the lethal injection process.

**"III.   OHIO'S LETHAL INJECTION PROCEDURE HAS RESULTED IN BOTCHED EXECUTIONS"**

Under this section, Defendant attempts to attack the lethal injection procedures of Ohio as causing "botched" executions. However, Defendant begins this section by stating that if

6

Ohio's procedures are followed and everything "goes as intended" then the lethal injection process will be "essentially painless".

The first "botched" execution Defendant mentions is that of Wilford Berry, the first Ohio inmate executed through lethal injection. Defendant states that the execution team could not find a vein for the IV and therefore resorted to "violently beating" Berry's arm in order to locate a vein.[2] However, Defendant does not state at what part of the lethal injection process that this became a botched execution since it appears that Berry died without incident once an IV was established. (Defendant's Motion, Appendix, Volume I, p. 255-56).

Defendant then mentions the executions of inmates Barton, Ferguson, Lundgren, and Fillaggi as being "botched" because the pancuronium bromide was injected less than three minutes after the anesthetic was administered. Defendant claims that this was not enough time to ensure that the anesthetic had reached full effect.[3] However, in Kentucky's lethal injection procedure, if the inmate does not lose consciousness withing one minute of being anaesthetized, a second round of sodium thiopental is given and the Supreme Court found no error in this process. *Baze* at 1534. Since Kentucky expects the Sodium Thiopental to work in one minute, the Defendant fails to show how waiting for less than three minutes resulted in these executions being "botched".

Defendant also cites to the execution of Joe Clark. The execution team encountered several problems with Clark's execution. Defendant cites to *Cooey*, 479 F.3d at 423-24, a

---

[2] Defendant provides no citation to support this statement.

[3] Defendant fails to state at what time sodium thiopental takes full effect.

7

Sixth Circuit case describing the execution of Clark:

> When preparing Clark for execution, prison officials could find only one accessible vein in Clark's arms to establish a heparin lock, through which the lethal drugs are administered. (Two locks usually are inserted.) However, once the execution began and the drugs were being administered, this vein collapsed, and Clark repeatedly advised officials that the process was not working. Officials stopped the lethal injection procedure, and after a significant period of time, were able to establish a new intravenous site.

While the errors that occurred during Clark's execution were unintended and appear to be the exception rather than the rule, the Sixth Circuit summarized the steps taken by the State after Clark's execution to prevent the situation from occurring again:

> To avoid similar difficulties in future executions, Ohio made several changes to its lethal injection protocol. First, officials removed time deadlines that previously dictated executions begin by a certain hour, and be completed within a narrow time frame. Second, prisoners are given more in-depth medical examinations prior to execution. Third, correctional personnel will make every effort to obtain two sites for heparin locks before proceeding to the execution chamber. Fourth, personnel will no longer use "high pressure" saline injections to check the viability of the intravenous lines. Instead, a "low pressure" drip of saline will be used to keep the line open and confirm its ongoing viability. Fifth, correctional personnel will observe each inmate's arms and check for signs of intravenous incontinence while the drugs are being administered to the inmate.

_Id_. at 424.

The final execution reference by the Defendant is that of Christopher Newton. In preparing Newton for the lethal injection process, it took the execution team approximately an hour and a half to find two adequate injections sites. However, the length of time needed to find appropriate injection sites should not be used in considering this a "botched" execution, especially after Clark's execution. Defendant then states that Newton did not become immediately unconscious after the delivery of the anesthetic, a fact reflected in the execution time line. (Defendant's Motion, Appendix, Volume II, p. 475). Defendant also provides a

8

declaration from Newton's attorney, a witness to the execution, stating that after the second and third drugs were being administered, Newton's body exhibited movement at two separate times. (Defendant's Motion, Appendix, Volume II, Exhibit 3, ¶¶ r-s). Defendant then claims that this shows that the potassium chloride failed to stop Newton's heart within the time predicted. However, Newton's death was pronounced within three minutes of receiving the final drug. Defendant provides no evidence as to how fast the potassium chloride should work and instead relies on speculation based on Newton's movement that the drugs did not work as intended. This reasoning was cautioned against by the Fourth Circuit Court of Appeals in *Emmett*, at *11. This one instance of an inmate exhibiting movement after the second and third drugs have been injected does not demonstrate a systematic problem with Ohio's lethal injection process.

For these reasons, the Defendant's claim that Ohio's lethal injection process leads to botched executions should fail.

### "IV.   OHIO'S LETHAL INJECTION PROCEDURE VIOLATES R.C. 2849.22(A)(sic)"

The death penalty in Ohio, as codified in R.C. 2949.22(A), provides that the death penalty shall be accomplished by the use of a lethal injection process that "quickly and painlessly causes death." Defendant's two main contentions in this section are that: (1) Ohio's lethal injection procedure violates the "painlessly" aspect of the death penalty statute and (2) due to the word "painlessly" being in Ohio's statute and not Kentucky's, the *Baze* case is not appropriate for reviewing Ohio's death penalty statute.

When reading a statute, R.C. 1.42 states:

9

Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

When applying a statute, R.C. 1.47 provides that:

In enacting a statute, it is presumed that:
(A) Compliance with the constitutions of the state and of the United States is intended;
(B) The entire statute is intended to be effective;
(C) A just and reasonable result is intended;
(D) A result feasible of execution is intended.

When applying R.C. 2949.22(A), the statute must be read in context using common grammar and usage, while also ensuring the feasability of executing the statute.

The term "painlessly" clearly was intended by the General Assembly to mean "without pain" and to establish a humane death penalty procedure. The General Assembly could not have possibly meant that no pain is to be felt as the act of inserting a needle into the skin carries with it some pain and the concept of completely pain free death seems inherently unfeasible.

Defendant has conceded that the current lethal injection procedure used by the state, if done correctly, will be "essentially painless."(Defendant's Motion, p. 9). Defendant then claims in this section that it is not certain that the procedure will be followed, thus causing the inmate pain during the execution process. However, all of Defendant's claims about the process have either been addressed by the Supreme Court in *Baze* or are blatant attempts to use conjecture to try and attack the death penalty.

Defendant again attacks the training and location of the medical team and the use of the second and third drugs. As stated before, the medical team members are certified by the

10

state of Ohio to prepare and administer intravenous drugs. The use of the second and third drugs as well as the execution team being in a separate room has also been addressed and approved by the Supreme Court in *Baze*.

Since the Defendant has conceded that Ohio's lethal injection procedure is "painless", his challenge to R.C. 2949.22(A) should fail, thus subjecting Ohio's lethal injection process to review under the *Baze* decision. Defendant's challenge to the death penalty using *Baze* for analysis should also fail since Ohio's lethal injection process is substantially similar to Kentucky's.

## "V. THE FAILURE OF DRC TO COMPLY WITH R.C. 2949.22(A) CONSTITUES IN ITSELF A SEPARATE CONSTITUTIONAL VIOLATION"

Since the use of the lethal injection procedure does not violate R.C. 2949.22(A), this argument is moot.

## "VI. OHIO'S LETHAL INJECTION PROCEDURE VIOLATE(sic) THE EIGHT(sic) AMENDMENT"

In upholding Kentucky's death penalty, the Supreme Court provided guidance for what would be needed to mount a successful challenge to the death penalty, stating that an inmate "must show that the risk [of severe pain] is substantial when compared to the known and available alternatives. A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." *Baze*, at 1537.

Defendant now contends that Ohio's procedure is not substantially similar to Kentucky's

11

on several grounds. Under point A, Defendant's first claim is that Ohio's execution team members training requirements are inadequate compared to Kentucky because they do not have to undertake as many "dry runs" each year. Ohio execution members must undergo training at least four times per year and does not include execution rehearsal, while Kentucky's execution team is required to participate in at least 10 practice sessions per year. (Defendant's Motion, Appendix, Volume I, p. 3). Training four times per year, plus rehearsals before executions should eliminate any risks that would violate the Eighth Amendment. Also of note is that Kentucky has only executed one inmate using lethal injection, whereas Ohio has executed 26 inmates since 1999, giving the Ohio execution team more actual experience in carrying out the lethal injection process. See also *Emmett*, at *8. As of November 1, 2007, Ohio's execution team consisted of 16 members, 10 of whom had participated in 10 or more executions. (Defendant's Motion, Appendix, Volume II, p. 632).

Defendant's second ground for dissimilarity, point B, is the lack of equipment and alternative procedures in case peripheral veins cannot be used for lethal injection. With the change in procedures and increased examination prior to execution required after the Clark execution, *Cooey*, 479 F.3d at 424, the risks of not being able to find adequate peripheral veins is reduced and time is provided to obtain any necessary equipment to access deeper veins should it become necessary. See Defendant's Motion, Appendix, Volume II, p. 569.

Under point C, Defendant claims that the State fails to allow adequate time between the injection of the anesthetic and the second drug in order to fully ensure that the anesthetic has taken effect. There is no definitive time requirement set by the DRC for injection of the second drug. However, the Supreme Court and the Fourth Circuit have both upheld waiting

12

times of as little as one minute to be sufficient before injection of the second drug. _Baze_, at 1534, _Emmett_, at *8-10. The warden and execution team leader are responsible for visually inspecting the inmate to ensure proper anaesthetization and then ordering the injection of the second drug, a process upheld by the Supreme Court. _Baze_, at 1534.

Under points D and E, Defendant states that DRC fails to station "properly trained" personnel in the death chamber to monitor the inmates level of anaesthetization and to monitor the injection site. However, the procedure of having the medical team members in a separate room and having the warden in the death chamber to monitor the inmate for proper anaesthetization and IV problems is the same procedure used by Kentucky. _Baze_ at 1534. Ohio's procedure is therefore substantially similar to Kentucky's constitutional procedure in this aspect.

Defendant's next contentions, points F and G, are that the State fails to use any type of cardiac monitoring device to determine that the inmate's heart has stopped and failure to have a second set of drugs prepared should the first injection procedure not work. Kentucky's procedure does provide for an EKG monitor to determine death and for a second set of drugs to be administered should the first round of drugs not work. Defendant has failed to note that in Ohio's 26 executions by lethal injection a second set of drugs has never been necessary to ensure the death of the inmate. Defendant also fails to explain how Ohio's procedure of having a physician pronounce death is not substantially similar to Kentucky's procedure.

Under point H, Defendant claims that Ohio's use of two grams of sodium thiopental for anaesthetic purposes is substantially different from Kentucky's procedure which uses three grams. The dosage of sodium thiopental does not be come substantially different under this

13

process just because Ohio uses two grams compared to Kentucky's three grams. If the dosage administered by Ohio was insufficient to cause the necessary anaesthetization then it would be substantially different from Kentucky's procedure. However, the dosage administered by Ohio has been sufficient to cause proper anaesthetization[4], thereby making it substantially similar to Kentucky's procedure.

Under his last point, I, Defendant claims that Ohio's procedure is constitutionally deficient for not having a medical team and equipment standing by to revive the inmate if a stay or clemency is issued after the process begins. This claim does not deal with the actual procedure itself, but instead deals with an external event connected to the execution. Constant communication is maintained between the warden and the DRC legal staff, the Attorney General's office, and the Governor on the day of the execution in order to ensure that any changes in an inmate's legal status are promptly reported. These measures all but eliminate the possibility of a grant of clemency or a stay of execution being issued after the execution process has begun.

After listing what he believes to be risks that create serious harm, the Defendant moves on to the second step required under _Baze_, providing an alternative procedure. The Supreme Court noted that "[t]o qualify, the alternative procedure must be feasible, readily implemented, and in fact _significantly reduce a substantial risk of severe pain_. If a State refuses to adopt such an alternative in the face of these documented advantages, _without a legitimate penological justification for adhering to its current method of execution_, then a State's refusal

---

[4] For discussion of effectiveness of sodium thiopental, see _Emmett_ at *8-9.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4244

to change its method can be viewed as 'cruel and unusual' under the Eighth Amendment." _Baze_, at 1532 (emphasis added).

Defendant's first alternative is to switch from the current three drug protocol to a one drug protocol whereby the inmate would be given an overdose of an anesthetic sufficient to cause death. Defendant acknowledges in his motion that this procedure was offered as an alternative in _Baze_, but turned down by the Supreme Court for reasons including want of an adequate record. _Id_. at 1534-35. Defendant states that he his prepared to fully litigate the facts of his single drug lethal injection process. However, the Supreme Court cautioned:

> a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative. Permitting an Eighth Amendment violation to be established on such a showing would threaten to transform courts into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved technology. Such an approach finds no support in our cases, would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures - a role that by all accounts the States have fulfilled with an earnest desire to provide for a progressively more humane manner of death.

_Id_. at 1531. The Court here should heed the Supreme Court's advice and avoid a scientific debate over which procedure is less "painless". Given Defendant's admission that the current lethal injection procedure is "essentially painless" when done properly, arguing for a switch to a one drug protocol is a matter best left to the legislature.

Defendant's next proposed alternative is to mandate that the execution team wait three minutes after the delivery of the first drug before delivering the second drug and that there be a person "adequately trained" to ensure that the inmate is anaesthetized and to monitor for problems. Ohio's current procedure is to wait for the inmate to be properly anaesthetized

15

before injecting the second drug. Defendant's proposal would only add time to executions where the anaesthetic works in less than three minutes. Given that Kentucky's procedure called for a wait time of one minute, this portion of Defendant's proposal should fail. *Id.* at 1534. The second part of the proposal dealing with having someone trained to detect anaesthetization was similar to a proposal made in *Baze*. There, the Court stated:

> At the outset, it is important to reemphasize that a proper dose of thiopental obviates the concern that a prisoner will not be sufficiently sedated. All the experts who testified at trial agreed on this point. The risks of failing to adopt additional monitoring procedures are thus even more "remote" and attenuated than the risks posed by the alleged inadequacies of Kentucky's procedures designed to ensure the delivery of thiopental.

*Baze*, at 1536. And:

> The asserted need for a professional anesthesiologist to interpret the BIS monitor readings is nothing more than an argument against the entire procedure, given that both Kentucky law, see Ky.Rev.Stat. Ann. § 431.220(3), and the American Society of Anesthesiologists' own ethical guidelines, see Brief for American Society of Anesthesiologists as Amicus Curiae 2-3, prohibit anesthesiologists from participating in capital punishment.

*Id.* The Supreme Court in *Baze* upheld Kentucky's procedure whereby the warden is responsible for checking to make sure that the inmate is adequately anaesthetized before the continuing with the execution. Ohio's procedure is the same as Kentucky's in this respect and the Defendant's proposal should fail for the reasons provided by the Supreme Court.

In Defendant's third proposal, he asks that the State cease using the paralytic drug, pancuronium bromide, because it "introduces a substantial risk of significant pain" and has no "valid penological interest." Addressing Defendant's risk of pain argument, an inmate that is adequately anaesthetized will experience no pain from the lethal injection process, thus obviating the risks associated with the use of pancuronium bromide. The drug also serves a

16

valid penological interest in preserving the dignity of the inmate by preventing involuntary movements that may occur when the final drug is injected. See *Baze*, at 1535. For these reasons, Defendant's third proposal should fail.

Defendant's final proposal is that the state should not use potassium chloride to stop the heart because someone inadequately anaesthetized would experience "excruciating" pain from the injection and because alternative drugs are available to stop the heart. The issue of pain is that same as Defendant's third proposal and should fail for similar reasons. Since the State has significantly reduced the risk of severe pain being inflicted by anaesthetizing the inmate before the injection of these drugs, the availability of other drugs to stop the heart does not amount to an Eighth Amendment violation and for this reason, the Defendant's proposal should fail.

Based on the reasons, the Defendant's argument that Ohio's lethal injection process violates the Eighth Amendment should be denied.

### "VII.   OHIO'S LETHAL INJECTION PROCEDURE VIOLATES THE RIGHT TO COUNSEL"

Defendant claims under this section that the lethal injection procedure violates the right to counsel. Here the Defendant is not attacking the actual lethal injection procedure, but instead R.C. 2949.25(A)(5). This statute allows the inmate to have up to three persons, not confined in a state institution, to witness his execution. Defendant claims that since the statute does not contain a provision automatically allowing for his counsel to attend the execution, a proceeding which Defendant classifies as a "critical stage" of his criminal proceeding, that his right to counsel is being violated. It should first be noted that an inmate's

17

counsel is not prohibited from attending the execution should the inmate allot one of the witness spots to counsel.

Defendant's argument rests on the assumption that his execution is a critical stage in his criminal proceeding. In determining what is a crticial stage and when the right to counsel attaches, the Supreme Court stated:

> our cases have construed the Sixth Amendment guarantee to apply to 'critical' stages of the proceedings. The guarantee reads: 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' (Emphasis supplied.) The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'

*U.S. v. Wade* (1967), 388 U.S. 218, 224-25, 87 S.Ct. 1926. The lethal injection process only occurs after the completion of criminal proceedings against an inmate. While Defendant may be entitled to have counsel collaterally attack any death penalty he is ultimately sentenced to, the actual death sentence is not an accusatorial proceeding and falls outside the scope of what the Supreme Court has defined a critical stage to be and therefore the right to counsel is not violated by Ohio's lethal injection process.

### "VII.  CONCLUSION: OHIO'S FLAWED EXECUTION PROCEDURE WARRANTS THE REMOVAL OF THE DEATH PENALTY"

In his conclusion, Defendant asks this Court to remove the death penalty as a sentencing option, thus limiting the Court to imposing a life sentence. Defendant claims that the death penalty may not be "inflicted" upon him much in the same way that the death penalty may not be inflicted upon mentally retarded criminals after *Atkins v. Virginia* (2002), 536 U.S. 304, 321, 122 S.Ct. 2242, 2252. However, Defendant's analogy to the *Atkins* case

18

is tenuous at best. The Supreme Court barred the execution of mentally retarded criminals because the Court was persuaded that the execution of mentally retarded criminals would not "advance the deterrent or the retributive purpose of the death penalty." *Id*. The Court then found that execution of such criminals would be excessive in light of the Eighth Amendment. *Id*. The Defendant's analogy should not be well taken.

WHEREFORE, the State moves that this Court deny the Defendant's motion to hold an evidentiary hearing on Ohio's lethal injection procedure. The State also moves that this Court deny Defendant's motion to find that Ohio's lethal injection procedure violates R.C. 2949.22(A) and the Eighth Amendment and instead find that Ohio's lethal injection procedure comports with all constitutional and statutory requirements.

Respectfully submitted,
**ROBIN N. PIPER** (0023205)
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL**  (0008259)
**First Assistant Prosecuting Attorney**
**Butler County, Ohio**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45011
Telephone: (513) 887-3474

**MICHAEL A. OSTER, JR.** (0076491)
Chief, Appellate Division

19

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent via ordinary U.S. Mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.


**DANIEL G. EICHEL** (0008259)
**First Assistant Prosecuting Attorney**
**Butler County, Ohio**

20

STATE OF OHIO : CASE NO. CR1983-12-0618

Plaintiff :

vs. : STATE OF OHIO, COUNTY OF BUTLER
COURT OF COMMON PLEAS
(Nastoff, J.)

VON CLARK DAVIS :

: STATE'S MEMORANDUM
Defendant : IN OPPOSITION TO DEFENDANT'S
MOTION "M" TO PRECLUDE THE STATE
: FROM SEEKING THE DEATH PENALTY

: : : : : : : : :

Now comes the Prosecuting Attorney, and in opposition to the Defendant's

motion to preclude the State from seeking the death penalty, says that the Defendant's

motion is wholly without merit. Contrary to the Defendant's argument, R.C. 2929.06[1]

---

1. R.C. 2929.06 provides, in relevant part:

"**(B) Whenever *** any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender.** If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. **If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing.** At the hearing, the court or panel shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, [or] a sentence of life imprisonment ***. If, pursuant to that procedure, the court or panel determines that it will impose a sentence other than a sentence of death, the court or panel shall impose upon the offender one of the sentences of life imprisonment that could have been imposed at the time the offender committed the offense for which the sentence of death was imposed, determined as specified in this division[.] *** [T]he sentences of life imprisonment that are available at the hearing, and from which the court or panel shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 *** of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed.

" ***

"**(E) This section, as amended by H.B. 184 of the 125th general assembly, shall apply to all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981 ***. This section, as amended by H.B. 184 of the 125th general assembly, shall apply equally to all such offenders sentenced to death prior to, on, or after March 23, 2005, including offenders who, on March 23, 2005, are challenging their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal court but who, as of March 23, 2005, have not yet been resentenced.**" [Emphasis added.]

This statute's current version [2007 Am.Sub.S.B. No. 10] is attached at "Appendix A."

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1

and Crim.R. 25(B)[2] provide controlling statutory authority for a new three-judge panel, upon remand after a death sentence is vacated by any state or federal court, to conduct a resentencing hearing which shall follow the procedure set forth in R.C. 2929.03(D), at which the state may seek whatever punishment is lawful including, but not limited to, the death sentence and any life sentence available at the time the offense was committed. Moreover, there is no constitutional impediment to the application of R.C. 2929.06(B)'s remedial/procedural provisions in the case at bar.

### 1. R.C. 2929.06(B) and Crim.R. 25(B)

As applicable here, R.C. 2929.06(B) specifically details the procedure for a new sentencing hearing in an Ohio capital case after any state or federal court has vacated a death sentence because of error that occurred in the sentencing phase of the trial and where none of the three circumstances set forth in division (A) of R.C. 2929.06 apply.[3]

---

2.     Crim.R. 25(B) (effective July 1, 1973) provides:

> "**RULE 25. Disability of a Judge**
> "***
> "**(B) After verdict or finding of guilt**. If for any reason the judge before whom the defendant has been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge, or, in the case of a single-judge division, by the Chief Justice of the Supreme Court of Ohio, may perform those duties. ***."

3.     Division (A) provides for resentencing after a death sentence is vacated under three specific circumstances: (1) upon a reviewing court's determination that Ohio's death penalty statutes are unconstitutional, or (2) if, upon its statutorily-required independent re-weighing under R.C. 2929.05, the reviewing court finds that the evidence does not sustain a death sentence, or (3) upon a determination under R.C. 2929.05(C) that the offender is mentally retarded under standards set forth in decisions of the Ohio or United States Supreme Courts. Under those circumstances, the trial court is limited at resentencing to the imposition of a term of life imprisonment only, see *State v. Denson* (1990), 66 Ohio App.3d 833, 835 ("under R.C. 2929.06 [currently, division (A) of that statute] the offender automatically receives a sentence of life imprisonment, and a hearing is then conducted for the limited purpose of determining whether the offender should receive parole eligibility after either twenty or thirty years' imprisonment"); see, also, *State v. Watson* (1992), 76 Ohio App.3d 258 [appeal from resentencing on remand pursuant to decision in *State v. Watson* (1991), 61 Ohio St.3d 1, which reversed Watson's death sentence upon R.C. 2929.05 independent review where Judge Sage, having acceded to the bench previously held by then-retired Judge Stitsinger who had presided at Watson's jury trial, imposed sentence on remand by operation of Crim.R. 25(B) and local rules of court].

And division (E) of R.C. 2929.06 expressly states the General Assembly's intent that the provisions of this statute apply retroactively to a case where the offense at bar was committed after October 19, 1981, the offender's death sentence was reversed by a state or federal court, and as of March 23, 2005 (or thereafter), the offender has not yet been resentenced.   Defendant Davis's case falls precisely within all the terms of this statute.[4] By the language of R.C. 2929.06(E), the General Assembly has expressed its intent that this statute shall apply retrospectively to Davis's case.  See **State v. Cook** (1998), 83 Ohio St.3d 404, 410 (finding a "clearly expressed legislative intent" that sexual-predator statutes apply retrospectively because the statutes imposed requirements on offenders based on offenses committed before the statutes' effective date), and **State v. Walls**, 96 Ohio St.3d 437, 2002-Ohio-5059, at ¶14 (amendment to statute which made the age of the offender upon apprehension the "touchstone" of determining juvenile-court jurisdiction, without regard to date of offense, indicated intent to apply amended statute retroactively).

Defendant may cite **State v. Williams**, 103 Ohio St.3d 112, 2004-Ohio-4747, for the proposition that the Ohio Supreme Court had previously ruled that R.C. 2929.06(B) is prospective only.[5]   However, the ruling in **Williams** (decided September 22, 2004) was

---

4.    Davis was "sentenced to death for an aggravated murder that was committed on or after October 19, 1981" [specifically, on December 12, 1983], he was "sentenced to death prior to *** March 23, 2005" [specifically, on August 4, 1989], and since the federal court's decision on January 29, 2007, he is an "offender[ ] whose sentence of death has been set aside, nullified, or vacated by [a] federal court but who, as of March 23, 2005, ha[s] not yet been resentenced." R.C. 2929.06(E).  And Davis's death sentence was vacated "because of error that occurred in the sentencing phase of the trial", thus, R.C. 2929.06(B) requires that "the trial court that sentenced [Davis] shall conduct a new hearing to resentence [him]," and whereas he "was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing," R.C. 2929.06(B).

5.    Cf. **Williams** at ¶9  [reasoning that because under former versions of R.C.2929.06 (1998 S.B. No. 107 eff. 7-29-98, 1996 H.B. No. 180 eff. 1-1-97, and 1996 S.B. No. 258, eff. 10-16-96) the statute was "silent as to whether current R.C. 2929.06(B) applies retroactively, it applies only prospectively" under the default rule in R.C. 1.48, and thus it could not be applied to the resentencing of an offender whose capital offense occurred in 1995, prior to the former version's effective date of October 16, 1996; rather, the law in effect at the time of the offenses applied].

Page 3

specifically abrogated by act of the General Assembly, see 2004 Sub.H.B. 184, 125th

General Assembly (passed December 1, 2004, signed into law December 21, 2004,

effective March 23, 2005).[6]  Thus, R.C. 2929.06 was amended to eliminate the

perceived legislative "silence" and expressly state, in a new division (E) of this section, that

the statute shall be applied retroactively to offenses committed after October 19, 1981,

where the offender is to be resentenced after the act's effective date (March 23, 2005).

   And because Davis "was tried by a panel of three judges," R.C. 2929.06(B)

provides:  "that panel or, if necessary, a new panel of three judges shall conduct the

hearing."  Given that none of the three judges on the panel that tried the case in 1984 are

now available (all three having retired, and in addition, the late Judge Stitsinger having

passed away on May 2, 2007), it becomes "necessary" to apply Crim.R. 25(B)'s

longstanding rule (effective July 1, 1973, with the earliest promulgation of the Criminal

Rules) that if, for any reason, a judge before whom a criminal defendant was tried is

thereafter unable to perform the duties of the court after a verdict or finding of guilt,

another judge may be assigned to perform those duties, including sentencing, see **State v.**

**Green** (1997), 122 Ohio App.3d 566, 571 (where Judge Elliott retired following trial and

guilty verdict, and Judge Bressler assumed Judge Elliott's docket prior to sentencing

hearing, Butler County Court of Appeals found it "entirely proper, pursuant to Crim.R.

25(B), for Judge Bressler to have imposed sentence upon appellant after Judge Elliott's

verdict of guilty had been entered").

---

6.   2004 Sub.H.B. 184 is attached at "Appendix B."  We note that the current version of R.C. 2929.06 was reenacted in 2007 Am.Sub.S.B. 10 (effective 1-1-08) which made no material change to the statute's wording, but simply inserts "March 23, 2005" wherever the phrase "the effective date of that act" had previously appeared in division (E) of R.C. 2929.06 as enrolled in 2004 Sub.H.B. 184.

## 2. The application of R.C. 2929.06(B) is constitutional.

Beyond Davis's flawed statutory analysis, his constitutional challenge to the

application of R.C. 2929.06(B) — asserting that for the State to again seek the imposition

of the death penalty "violates the *ex post facto*, due process and double jeopardy clauses

of the United States and Ohio Constitutions" (*sic*, page 2 of Defendant's motion) — is

without merit.  The three issues posed by Davis should be separately discussed; analysis

must begin with the "strong presumption" that R.C. 2929.06 is constitutional, see, e.g.,

***State v. Warren***, 118 Ohio St.3d 200, 2008-Ohio-2011, at ¶¶21-22.

> "{¶ 21}  Our analysis begins with the well-established rule that statutes enjoy a
> strong presumption of constitutionality. ***  A statute will be upheld unless the
> challenger can meet the burden of establishing beyond a reasonable doubt that the
> statute is unconstitutional. ***
> "{¶ 22}  Because [Defendant Davis] argues that the relevant statutes are
> unconstitutional as applied to his particular situation, he 'bears the burden of
> presenting clear and convincing evidence of a presently existing state of facts that
> make the statutes unconstitutional and void when applied to those facts.' ***."
> [Citations omitted.]

See, also, ***Cook***, 83 Ohio St.3d, at 409 (as applicable to retroactivity and ex post facto

analysis).

### (A)  Retroactivity Clause/Ex Post Facto Clause issues.

The "ex post facto" branch of the Defendant's motion involves two related issues:

whether application of R.C. 2929.06(B) retroactively to the offense at bar violates Ohio's

Retroactivity Clause, Section 28, Article II of the Ohio Constitution (which provides that

"[t]he general assembly shall have no power to pass retroactive laws"), see ***State v. Walls***,

at ¶¶15-19, and the distinct legal question whether it offends the federal Ex Post Facto

Clause, Section 10, Article I of the United States Constitution ("no state shall *** pass any

*** ex post facto law"), see ***Walls***, at ¶¶20-49.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4255

### (A)(1)  The Ohio retroactivity question:  R.C. 2929.06 is remedial.

The Ohio Supreme Court has articulated a two-part framework, involving both statutory and constitutional analyses, to determine when a law is *unconstitutionally* retroactive under Section 28, Article II of the Ohio Constitution, see ***Walls***, at ¶10; see, also, ***Bielat v. Bielat*** (2000), 87 Ohio St.3d 350, 353 (emphasis *sic*)("[w]e emphasize the phrase '***unconstitutionally*** retroactive' to confirm that retroactivity itself is not always forbidden by Ohio law").  Once a court finds a "clearly expressed legislative intent" that a statute is to apply retroactively under statutory analysis [as the language of R.C. 2929.06(E) clearly establishes, see pages 2-4 of this Memo], the determination whether retroactive application is constitutionally permissible will then proceed to the second step, which analyzes whether the challenged statute is remedial or substantive, see ***Walls***, at ¶10, citing ***Cook***, 83 Ohio St.3d, at 410, and ***Van Fossen v. Babcock & Wilcox Co.*** (1988), 36 Ohio St.3d 100, paragraph two of the syllabus; see, also, ***Bielat***, 87 Ohio St.3d, at 354.  In ***Walls***, the court detailed the essential test:

> "[A] statute is unconstitutionally retroactive under Section 28, Article II "if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." ***Bielat***, 87 Ohio St.3d 350, 354, 721 N.E.2d 28; see, also, ***Van Fossen***, 36 Ohio St.3d at 106-107, 522 N.E.2d 489.[7]  On the other hand, a statute that is ' "purely remedial" ' does not violate Section 28, Article II. ***Van Fossen***, 36 Ohio St.3d at 107, 522 N.E.2d 489, quoting ***Rairden v. Holden*** (1864), 15 Ohio St. 207, 1864 WL 26, paragraph two of the syllabus.  We have defined as 'remedial' those laws affecting merely ' "the methods and procedure[s] by which rights are recognized, protected and enforced, not *** the rights themselves." (Emphasis added.)' ***Bielat***, 87 Ohio St.3d at 354, 721 N.E.2d 28, quoting

---

7.    The Ohio Supreme Court has also made it clear that "not just any asserted 'right' will suffice," ***Bielat***, 87 Ohio St.3d, at 357, but rather, it must be an "accrued substantive right" that is impaired by the retrospective act, see ***Gregory v. Flowers*** (1972), 32 Ohio St.2d 48, paragraph three of the syllabus; or as stated in ***Van Fossen***, the retroactivity test is stated in terms of "substantive rights," id., at paragraph four of the syllabus; or as stated in ***State ex rel. Matz v. Brown*** (1988), 37 Ohio St.3d 279, 281 an unconstitutionally retroactive law impairs a "vested substantive right.")

Page 6

*Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 39 N.E.2d 148."

*Walls*, at ¶15. "Remedial laws *** generally come in the form of 'rules of practice, courses of procedure, or methods of review.' " *State ex rel. Kilbane v. Indus. Comm.*, 91 Ohio St.3d at 260, 744 N.E.2d at 711, citing *State ex rel. Slaughter v. Indus. Comm.* (1937), 132 Ohio St. 537, paragraph three of the syllabus. Thus, " 'it is generally true that laws that relate to procedures are ordinarily remedial in nature.' " *Walls* at ¶17, quoting *Cook*, 83 Ohio St.3d at 411.

Applying these principles in *Walls*, the Ohio Supreme Court held that the application of 1997 statutes in place at the time the state commenced criminal proceedings under a 1998 indictment, when Walls was age 29, for an aggravated murder committed in 1985 when he was a 15-year old minor — retrospectively divesting the juvenile court of jurisdiction over the arrested adult defendant (whereas a bindover proceeding would have first taken place under pre-1997 law), and placing original jurisdiction in the adult trial court (i.e., the court of common pleas, general division, via direct indictment) — did not impair his substantive rights, but rather, were "remedial within the meaning of *Van Fossen* and its progeny," see *Walls* at ¶¶17-19. The court thus indicated that a provision relating to jurisdiction, i.e., the *forum* which is designated to hear a criminal proceeding, is fundamentally a remedial or procedural matter, see *Walls* at ¶17 ("[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' " Id., quoting *Landgraf v. USI Film Products* [1994], 511 U.S. 244, 274, 114 S.Ct. 1483, in turn quoting *Hallowell v. Commons* [1916], 239 U.S. 506, 508, 36 S.Ct. 202). See, also, *In re Nevius* (1963), 174 Ohio St. 560, 564

(whereas statute in effect at time of attorney's disbarment provided procedure for filing his application for reinstatement in common pleas court, court of appeals, or Supreme Court, the subsequently-enacted Rule XXVII of Supreme Court provided the exclusive procedure for reinstatement, over which the Supreme Court alone had jurisdiction; such Rule was "clearly a matter of a remedial nature" and applied retroactively to previously-disbarred attorney's reinstatement, which filed after the Rule's effective date).

As such, the provision in R.C. 2929.06(B) for resentencing by a three-judge panel other than the original panel, if necessary — retroactive per R.C. 2929.06(E) to Davis's case, where his offense was committed after October 19, 1981, his death sentence was vacated by a federal court after March 23, 2005, and he is yet to be resentenced — is fundamentally procedural and remedial, not substantive.  The changes to resentencing procedures under R.C. 2929.06 did not impair any of Davis's "vested substantive rights" within the meaning of Ohio's retroactivity jurisprudence; clearly, the essential elements of the crime are unchanged (it being unnecessary to re-try the guilt phase of trial), the range of available punishments remain the same, and the quantum and manner of proof at the sentencing hearing [as set forth in R.C. 2929.03(D)] is unchanged.  Indeed, both now and then, Davis similarly faced resentencing inclusive of the death penalty after his original 1984 death sentence was overturned in 1988, see ***State v. Davis*** (1988), 38 Ohio St.3d 361, syllabus (distinguishing ***State v. Penix*** [1987], 32 Ohio St.3d 369, and holding that there is  "nothing unconstitutional in permitting the state to seek whatever punishment is lawful on remand," 38 Ohio St.3d, at 374, and that it was permissible to "remand the action to that trial court for a resentencing hearing at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence.  We have ***not*** found

the evidence in the instant action to be legally insufficient to justify imposition of the death penalty," id., at 374, emphasis *sic*).   Thus, under either the law in effect circa 1983, or under the law presently in effect (subsequent to its effective date, March 23, 2005), Davis was on notice that the offense he committed could subject him to a death sentence when his case was reversed on appellate review and remanded for error in the sentencing phase of the trial, see ***Walls*** at ¶17 ("we cannot characterize this change as anything other than remedial. *** [U]nder either the 1985 law or the 1997 law, Walls was on notice that the offense he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of common pleas").   In the case at bar, the 2005 law merely removed any procedural issue as to whether he was required to be resentenced by the same three-judge panel that originally found him guilty.

And the conclusion that R.C. 2929.06(B) is remedial is "strengthened by our state's recognition of the validity of retrospective ***curative*** laws," see ***Bielat***, 87 Ohio St.3d at 355-356 (emphasis *sic*).

> "As this court noted long ago, the language that immediately follows the prohibition of retroactive laws contained in Section 28, Article II of our Constitution expressly permits the legislature to pass statutes that ' "authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties and officers, by *curing omissions, defects, and errors in instruments and proceedings, arising out of their want of conformity with the laws of this state*." ' [Emphasis added in ***Bielat***.]  ***Burgett v. Norris*** (1874), 25 Ohio St. 308, 316, quoting Section 28.  ***Burgett*** recognized that curative acts are a valid form of retrospective, remedial legislation when it held that '[i]n the exercise of its plenary powers, the legislature *** could cure and render valid, by remedial retrospective statutes, that which it could have authorized in the first instance.'  Id. at 317."

Thus, under the logic of ***Burgett*** and ***Bielat***, in the case at bar, R.C. 2929.06(B) is a purely remedial statute designed to provide a procedure for resentencing in a case not otherwise controlled by the former version of R.C. 2929.06 [now R.C. 2929.06(A)] where

none exited before, see **Davis**, 38 Ohio St.3d, at 375 (Holmes, J., concurring in part and

dissenting in part: "[t]he syllabus law announced today necessarily fills the void left by the

legislature, in the manner most consistent with the existing legislative scheme") and **Davis**,

38 Ohio St.3d at 377-378 (Douglas, J., concurring in part and dissenting in part: "[t]he

fact is that our statute does not provide for the procedure mandated by the majority"). By

enacting R.C. 2929.06(B) and (E), the General Assembly saw fit to retrospectively resolve

the exact procedural issue presented; as our Constitution expressly permits, per **Burgett**

and **Bielat**, R.C. 2929.06(B) cures an omission in Ohio's death-penalty statutory

framework.

### (A)(2)  The federal ex post facto question.

Davis's argument under the federal Ex Post Facto Clause is completely defeated by

the decision in **Dobbert v. Florida** (1977), 432 U.S. 282, 97 S.Ct. 2290 (holding that

the application of remedial statutes amending Florida's capital sentencing procedure after

the Florida Supreme Court found the state's death penalty statutes unconstitutional in the

wake of _Furman v. Georgia_ [1972], 408 U.S. 238, 92 S.Ct. 2726, to a defendant who

was sentenced to death for crimes occurring before the law's effective date, but whose

arrest and trial took place thereafter, did not violate the Ex Post Facto Clause).

> " 'The crime for which the present defendant was indicted, the punishment
> prescribed therefor, and the quantity or the degree of proof necessary to establish
> his guilt, all remained unaffected by the subsequent statute.' [Citation omitted.]"

**Dobbert**, 432 U.S., at 293.[8]

---

8.     Accord, **State ex rel. Corrigan v. McAllister** (1985), 18 Ohio St.3d 239, 480 N.E.2d 783 (application
       of amended statute which redefined "capital offense" to include only those offenses for which the death
       penalty may be imposed, R.C. 2901.02(B), to post-amendment trial of defendant for aggravated murder
       committed prior to effective date of the amendment, did not violate Ex Post Facto Clause).

The  Ex Post Facto Clause is generally said to bar the application of any penal

statutes which disadvantage the offender affected by them, see **Walls** at ¶21, citing

**Collins v. Youngblood** (1990), 497 U.S. 37, 41, 110 S.Ct. 2715, but "[n]ot just any

'disadvantage' to an offender, however, will run afoul of the Ex Post Facto Clause," **Walls**,

id., citing **Collins** at 42, and **Calder v. Bull** (1798), 3 U.S. (3 Dall.) 386, 390-92.  The

United States Supreme Court has used the following four-part framework to evaluate

whether a law runs afoul of the Ex Post Facto Clause:

> "1st. Every law that makes an action done before the passing of the law, and which
> was *innocent* when done, criminal; and punishes such action. 2d. Every law that
> *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law
> that *changes the punishment*, and inflicts a *greater punishment*, than the law
> annexed to the crime, when committed. 4th. Every law that alters the *legal rules of
> evidence*, and receives less, or different, testimony, than the law required at the
> time of the commission of the offence, *in order to convict the offender*." Id., at 390
> (emphasis in original)."

**Calder**, at 390; see, also, **Carmell v. Texas** (2000), 529 U.S. 513, 522, 120 S.Ct.

1620.[9]  And the court has held that these four categories provide "an exclusive definition

of ex post facto laws," see, e.g., **Collins** at 42, and has also noted that it is "a mistake to

stray beyond **Calder**'s four categories." **Carmell**, 529 U.S., at 539 (describing the import

of the **Collins** decision).  Thus, if Davis's claim is to be successful, it must fall within one of

**Calder**'s four categories.   Davis's claim clearly fails, however, under **Dobbert**.

Under the first category, "[t]he primary evil prohibited by this category is the

legislature's retroactive alteration of the definition of crimes." **Walls** at ¶27, citing **Collins**,

497 U.S. at 43.  Viewing the present case in that light, there is absolutely no change made

---

9.      The four categories described above are read to include a prohibition of any statute which "deprives one
        charged with crime of any defense available according to law at the time when the act was committed,"
        see **Collins**, 497 U.S., at 42, citing **Beazell v. Ohio** (1925), 269 U.S. 167, 169-170, 46 S.Ct. 68.

in the definition of the crime of aggravated murder "that makes an action done before the passing of the law, and which was innocent when done, criminal," **Calder** at 390; see **Dobbert** at 293. The substantive statute under which Davis was convicted, R.C. 2903.01(A), was the same in all material respects at the time of Davis's offense in 1983 as it is now; Davis cannot persuasively argue here that the legislature altered the definition of aggravated murder so as to retroactively criminalize his conduct. And indeed, Davis is not to be tried again, rather, his conviction in 1984 stands as it was "affirmed" in 1988.[10]

As the heart of his argument (at p. 10-11 of his memorandum), Davis invokes the third **Calder** factor, which prohibits as ex post facto any law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed," **Calder** at 390; see **Walls** at ¶¶28-29. But Davis's argument is foreclosed by the decision in **Dobbert**. It is clear under R.C. 2929.06(B) that the potential available punishment for Davis's aggravated murder **was, and remains**, a sentence of either death, or life imprisonment with 30 full years to parole eligibility, or life imprisonment with 20 full years to parole eligibility, to be determined under the weighing process prescribed by R.C. 2929.03(D).[11] Moreover, as quite applicable here, **Dobbert** states:

> "It is equally well settled, however, that '[t]he inhibition upon the passage of ex post facto laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.' *** [T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, ***, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance. ***."

---

10. Davis makes no claim, under the second category of ex post facto analysis, that there is anything about the application of R.C. 2929.06(B) "that aggravates a crime, or makes it greater than it was, when committed," **Calder** at 390. It thus becomes unnecessary to discuss that category.

11. Indeed, the current version of R.C. 2929.06(B) expressly provides that the available punishments upon resentencing are either death or the same sentences of life imprisonment that were available at the time the offender committed the offense. See text of R.C. 2929.06(B), at fn.1, page 1 of this Memorandum.

Page 12

***Dobbert***, 432 U.S., at 293 (citations omitted).  See, also, ***Collins*** at 45-52 (holding that a Texas statute which allowed reformation of improper verdicts upon appeal was not an ex post facto law, as applied to defendant who had previously been convicted and received improper sentence, and who would have been entitled to new trial but for retroactive application of statute).[12]   And in further support of his claim under the third ***Calder*** category, Davis would contend that when he committed the murder in 1983, there was no death penalty "in effect" that could be imposed at resentencing (Davis's memorandum at p. 9-12).  But this contention does not prove a valid ex post facto claim, as the following reasoning in ***Dobbert*** reflects:

> "Petitioner's second ex post facto claim is based on the contention that at the time he murdered his children there was no death penalty 'in effect' in Florida.  This is so, he contends, because the earlier statute enacted by the legislature was, after the time he acted, found by the Supreme Court of Florida to be invalid under our decision in *Furman v. Georgia* ***.  Therefore, argues petitioner, there was no 'valid' death penalty in effect in Florida as of the date of his actions.  But this sophistic argument mocks the substance of the Ex Post Facto Clause. ***

> "Petitioner's highly technical argument is at odds with the statement of this Court in ***Chicot County Drainage District v. Baxter State Bank***, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940):

---

12.   While the court in ***Collins*** made it clear that a legislature, by simply labeling a law "procedural," does not thereby immunize it from scrutiny under the Ex Post Facto Clause, see ***Collins***, 497 U.S., at 46, it reiterated the rule that changes in remedies and modes of procedure which do not affect matters of substance, "even though they work to the disadvantage of the accused, do not violate the Ex Post Facto Clause," id., at 45, and cited a number of cases with approval, as examples of retroactive procedural statues upheld as against *ex post facto* claims: ***Dobbert***; ***Beazell*** (Ohio statute retroactively removing previous statutory right of persons jointly indicted to separate trials, and allowing codefendants to be tried jointly for a noncapital offense); ***Mallett v. North Carolina*** (1901), 181 U.S. 589, 597, 21 S.Ct. 730 (change in law allowing the state a right to appeal from decision of intermediate appellate court vacating a conviction and granting new trial, whereas at the time of the offense the state was prohibited by state law from appealing the adverse decisions of intermediate appellate courts in criminal cases); ***Gibson v. Mississippi*** (1896), 162 U.S. 565, 590, 16 S.Ct. 904 (changes in procedures for selection of grand and petit jurors "only prescribed remedies to be pursued in the administration of law" and were not ex post facto); and ***Malloy v. South Carolina*** (1915), 237 U.S. 180, 183, 35 S.Ct. 507 (change in method of execution of death sentence from hanging to electrocution was not ex post facto when applied to crimes previously committed).

Page 13

" 'The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree.  [Citations omitted.]  It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.'

"Here the existence of the statute served as an 'operative fact' to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder.  This was sufficient compliance with the ex post facto provision of the United States Constitution."

In this vein, Davis was put on notice as to the operative concept — that the State could seek the death penalty again upon resentencing on remand after penalty-phase error — by prior decision in this very case, **State v. Davis** (1988), 38 Ohio St.3d 361, 374 (holding that there is "nothing unconstitutional in permitting the state to seek whatever punishment is lawful on remand" when a death sentence is reversed on grounds other than sufficiency of the evidence to sustain the death sentence).

Finally, Davis argues for inclusion of this case within the fourth **Calder** category, claiming that application of R.C. 2929.06(B) "eliminates [an] absolute defense" (Davis's memorandum at p. 12) or "changes [the] rules of evidence" (id., at p. 12-13).  But Davis points to no particular Rule of Evidence that has changed to his detriment and "changed the quantum of evidence necessary to sustain a conviction," cf. **Carmell**, 529 U.S., at 530 (amendment to Texas statute authorizing conviction of certain sexual offenses upon victim's testimony alone, whereas conviction was not previously permitted without corroborative evidence, was law that altered the legal rules of evidence and changed the quantum of evidence necessary to sustain a conviction, thus running afoul of the Ex Post Facto Clause under the fourth **Calder** category).

Page 14

Moreover, Davis's claim that the application of R.C. 2929.06(B) "eliminates [an] absolute defense" simply ignores the following passage in the **_Collins_** decision, wherein the court found it necessary to overrule **_Kring v. Missouri_** (1883), 107 U.S. 221, 2 S.Ct. 443, to indicate that the Ex Post Facto Clause does not bar a procedural "defense" not related to the substantive definition of the crime, or a plea of justification or excuse:

> "It is possible to reconcile **_Kring_** with the numerous cases which have held that 'procedural' changes do not result in ex post facto violations by saying that the change in Missouri law did take away a 'defense' available to the defendant under the old procedure.  But this use of the word 'defense' carries a meaning quite different from that which appears in the quoted language from **_Beazell_**, where the term was linked to the prohibition on alterations in 'the legal definition of the offense' or 'the nature or amount of the punishment imposed for its commission.' **_Beazell_**, 269 U.S., at 169-170, 46 S.Ct., at 68-69.  The 'defense' available to **_Kring_** under earlier Missouri law was not one related to the definition of the crime, but was based on the law regulating the effect of guilty pleas.  Missouri had not changed any of the elements of the crime of murder, or the matters which might be pleaded as an excuse or justification for the conduct underlying such a charge; it had changed its law respecting the effect of a guilty plea to a lesser included offense. The holding in **_Kring_** can only be justified if the Ex Post Facto Clause is thought to include not merely the **_Calder_** categories, but any change which 'alters the situation of a party to his disadvantage.'  We think such a reading of the Clause departs from the meaning of the Clause as it was understood at the time of the adoption of the Constitution, and is not supported by later cases.  We accordingly overrule **_Kring_**."

**_Collins_**, 497 U.S., at 50.  The only case cited by Davis in this regard, **_United States v. Hall_** (D.Pa.1809), 26 F.Cas. 84, is distinguishable, as discussed in **_Collins_**, at 49:

> "In **_Hall_**, a vessel owner was sued by the United States for forfeiture of an embargo bond obliging him to deliver certain cargo to Portland, Me.  As a legal excuse, the defendant argued that a severe storm had disabled his vessel and forced him to land in Puerto Rico, where he was forced by the Puerto Rican government to sell the cargo. *** [A]ccording to the law in effect at the time Hall forfeited the cargo, an 'unavoidable accident' was an affirmative defense to a charge of failing to deliver cargo. *** [A] subsequent law imposing an additional requirement for the affirmative defense – that the vessel or cargo actually be lost at sea as a result of the unavoidable accident – would deprive Hall of a defense of his actions available at the time he sold the cargo and thus be an invalid ex post facto law."

Page 15

In the case at bar, there is nothing about R.C. 2929.06(B) that changes the substantive law as to what evidence can or cannot be weighed by a three-judge panel, but indeed, R.C. 2929.06(B) specifically directs that "[a]t the [resentencing] hearing, the court or panel shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, [or] a sentence of life imprisonment."  By this, a substantive change is neither intended nor effected.

### (B) The Due Process issue.

The second branch of Defendant Davis's constitutional challenge alleges that the retroactive application of R.C. 2929.06(B), as expressly required by R.C. 2929.06(E), would violate the Due Process Clause of the United States Constitution and the Ohio Constitution's analogous provision,[13] citing *Landgraf*, *inter alia*.  However, *Landgraf*'s own reasoning undermines Davis's argument.  *Landgraf* recognized that a jurisdictional statute as to the particular forum in which an action is to be tried may govern retroactively "because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties,' " 511 U.S., at 274 (citations omitted); or to put it another way, "[s]tatutes merely addressing *which* court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties."  See *Landgraf*, 511 U.S., at 275 (emphasis *sic* per Scalia, J., concurring).  Thus, R.C. 2929.06(B) is a remedial law which relates not to any substantive right of the Defendant, but rather, merely addresses which

---

13.   See the Fourteenth Amendment to the United States Constitution (which, in pertinent part, provides that "[n]o State shall *** deprive any person of life, liberty, or property, without due process of law ***"), and Section 16, Article I of the Ohio Constitution ("*** every person *** shall have remedy by due course of law, and shall have justice administered without denial or delay").

*judges* shall have jurisdiction to entertain his resentencing hearing, i.e., it exemplifies the

"[a]pplication of a new jurisdictional rule [which] 'takes away no substantive right but

simply changes the tribunal that is to hear the case.' " **Walls**, at ¶17, quoting **Landgraf**,

511 U.S., at 274.   Thus, "the essential principles that emerge from **Walls** [and **Landgraf**]

make it impossible for [the Defendant] to prevail on his due process argument," see **State**

**v. Warren**, 118 Ohio St.3d 200, 2008-Ohio-2011, at ¶48.

### (C) The Double Jeopardy issue.

The third and final branch of Defendant Davis's motion seeks a double-jeopardy bar

to resentencing, founded on the Ohio and federal Double Jeopardy Clauses.[14]   However,

the Double Jeopardy Clause does not bar further capital sentencing proceedings on remand

when, on appeal, the reviewing court has vacated the death sentence due to error

occurring at the penalty phase, but does not find the evidence legally insufficient to justify

imposition of death penalty and hence, there was no death penalty "acquittal," see **Poland**

**v. Arizona** (1986), 476 U.S. 147, 157, 106 S.Ct. 1749; accord **Skipper v. South**

**Carolina** (1986), 476 U.S. 1, 8, 106 S.Ct. 1669 (where the state trial court erred by its

exclusion of relevant mitigating evidence of defendant's good behavior in custody, "[t]he

resulting death sentence cannot stand, although the State is of course not precluded from

again seeking to impose the death sentence, provided that it does so through a new

sentencing hearing at which petitioner is permitted to present any and all relevant

mitigating evidence that is available").  And Davis's current double jeopardy claim is also

contrary to the holding in his own case, **State v. Davis** (1988), 38 Ohio St.3d 361, 374

---

14.   See Section 10, Article I of the Ohio Constitution ("[n]o person shall be twice put in jeopardy for the
      same offense"), and the Fourteenth Amendment to the United States Constitution ("[n]o person shall
      *** be subject for the same offence to be twice put in jeopardy of life or limb").

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4267

(citing **Skipper** and **Poland** and holding that there is "nothing unconstitutional in permitting the state to seek whatever punishment is lawful on remand *** when a reviewing court vacates the death sentence of a defendant imposed by a three-judge panel due to error occurring at the penalty phase, not otherwise covered by [the then-existing version of] R.C. 2929.06 [i.e., where the Ohio death-penalty statutes are determined to be unconstitutional, or where, upon its independent review, a reviewing court has found the death sentence inappropriate or disproportionate], and the reviewing court does not find the evidence to be legally insufficient to justify imposition of the death sentence").

Double jeopardy principles applicable to resentencing on remand have been well-established.  For non-capital cases, it is clear that a so-called "clean-slate" rule applies, i.e., the Double Jeopardy Clause does not prohibit the imposition of any lawful sentence (including an increased sentence) on remand from appeal.  See **United States v. DiFrancesco** (1980), 449 U.S. 117, 138-139, 101 S.Ct. 426 (cited with approval in **State v. Foster**, 109 Ohio St.3d 1, 2006-Ohio-856, at ¶105); see, also, **North Carolina v. Pearce** (1969), 395 U.S. 711, 721, 89 S.Ct. 2072 (upon reversal of a conviction and order of new trial, as for the sentence, "the slate has been wiped clean. *** [W]e cannot say that the constitutional guarantee against double jeopardy of its own weight restricts the imposition of an otherwise lawful single punishment for the offense in question").  And for capital cases, the "clean-slate" rule also applies except in one circumstance — where the sentencing judge or jury or reviewing court has "decid[ed] that the prosecution has not proved its case" for the death penalty and hence has "acquitted" the accused of that penalty.  See **Bullington v. Missouri** (1981), 451 U.S. 430, 445, 101 S.Ct. 1852, and **Arizona v. Rumsey** (1984), 467 U.S. 203, 209-211, 104 S.Ct. 2305.

Page 18

In *Bullington*, consideration of death sentence was barred on reversal/remand because the jury's decision to impose a life sentence "meant that 'the jury has already acquitted the defendant of whatever was necessary to impose the death sentence' " thus recognizing the principle in *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, that when a defendant's conviction is overturned on appeal on the grounds that the evidence was insufficient to convict, the Double Jeopardy Clause forbids a retrial. Likewise, in *Rumsey*, the sentencing judge's finding that no aggravating circumstance was present, albeit erroneous, was deemed an "acquittal" barring a second death sentence proceeding.

But on the other hand, in *Poland*, the court reviewed the rule in *Bullington* and *Rumsey* and noted that "the relevant inquiry in the cases before us is whether the sentencing judge or the reviewing court has 'decid[ed] that the prosecution has not proved its case' for the death penalty and hence has 'acquitted' petitioners." *Poland*, 476 U.S., at 154, citing *Bullington* at 442. And undertaking that inquiry in *Poland*, the court noted that there had not been an "acquittal" of the death penalty, inasmuch as the sentencing judge "plainly *** did not acquit, for he imposed the death penalty," and while the state supreme court had found error in the sentencing phase, "it did not hold that the prosecution had failed to prove its case for the death penalty," id., 476 U.S., at 154. The court went on in *Poland* to reason that

> "This [double jeopardy] concern [as expressed in *Bullington*] with protecting the finality of acquittals is not implicated when, as in these cases, a defendant is sentenced to death, i.e., 'convicted.' There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has. *** Such a rule would have the odd and unacceptable result of requiring a reviewing court to enter a death penalty 'acquittal' even though that court is of the view that the State has 'proved its case.' Our decisions in *Burks* and *Bullington* do not support such a rule, which would certainly give the prosecution cause to 'complain of prejudice.' "

*Poland*, at 156-157.

Applying these principles to the case at bar, there has not been an "acquittal" of the death penalty in Davis's case — the three-judge panel, sentencing Davis in both 1984 and 1989, "plainly *** did not acquit, for [they] imposed the death penalty," and in *Davis v. Coyle* (C.A.6, 2007), 475 F.3d 761, the United States Court of Appeals for the Sixth Circuit found *Skipper* error in the sentencing phase, but "it did not hold that the prosecution had failed to prove its case for the death penalty," see *Poland*, 476 U.S., at 154. Fundamentally, there is nothing about the federal court's decision in this case which constituted an "acquittal" of facts required to be proven by the state, but rather — as in the *Skipper* case itself[15] — the federal court specifically contemplated a new capital sentencing hearing at which the excluded evidence would be properly admitted ("when a trial court improperly excludes mitigating evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing," *Davis v. Coyle*, id., at 774-775).

See, also, *Sattazahn v. Pennsylvania* (2003), 537 U.S. 101, 107, 123 S.Ct. 732 ("it is not the mere imposition of a life sentence that raises a double-jeopardy bar. *** [A]n 'acquittal' at a trial-like sentencing phase, rather than the mere imposition of a life sentence, is required to give rise to double-jeopardy protections," thus, in *Sattazahn* a jury deadlock as to the appropriateness of death as a penalty was not an acquittal on that issue, because the jury "made no findings with respect to the alleged aggravating

---

15.   In *Skipper* — after reversing a death sentence for exclusion by the state trial court of relevant mitigating evidence in the penalty phase, the very situation now presented in Davis's case — the United States Supreme Court indicated that "the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing at which petitioner is permitted to present any and all relevant mitigating evidence that is available," 476 U.S., at 8. *Skipper* and *Poland* were decided within the same week (*Skipper* on April 29, 1986, and *Poland* on May 5, 1986).

circumstance," nor did the trial judge make any findings when he sentenced the defendant to life, under the relevant state statute which required him to impose a life sentence if there was a hung jury in the penalty phase, and since judgment was not based on findings which resolved some factual matter, it was "not sufficient to establish legal entitlement to a life sentence," 537 U.S. at 109-110).  *Sattazahn* was followed in **State v. Hancock**, 108 Ohio St.3d 57, 2006-Ohio-160, at ¶¶138-150 (where, after a sentencing jury's recommendation of the death sentence, a trial judge declared a mistrial based on a procedural error in the penalty phase and then imposed a life sentence in lieu of a valid death recommendation per **State v. Springer** [1992], 63 Ohio St.3d 167, 171-172, but this did not amount to an "acquittal" of the death penalty as that term is used in **Bullington**, **Rumsey**, **Poland**, and **Sattazahn**, thus, Double Jeopardy Clause would not bar a second resentencing hearing wherein a death sentence could be imposed).

Wherefore, the Defendant's motion should be denied.

Respectfully submitted,

**ROBIN N. PIPER  (0023205)**
**Butler County Prosecuting Attorney**


**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**


**MICHAEL A. OSTER, JR.  (0076491)**
**Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

Page 21

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**

Page 22

Westlaw.

(APPENDIX A)

R.C. § 2929.06

**C**

Baldwin's Ohio Revised Code Annotated Currentness
  Title XXIX. Crimes--Procedure
    Chapter 2929. Penalties and Sentencing (Refs & Annos)
      Penalties for Murder

→ **2929.06 Resentencing after sentence of death is set aside, nullified, or vacated**

(A) If a sentence of death imposed upon an offender is set aside, nullified, or vacated because the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is set aside, nullified, or vacated for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, is set aside, nullified, or vacated pursuant to division (C) of section 2929.05 of the Revised Code, or is set aside, nullified, or vacated because a court has determined that the offender is mentally retarded under standards set forth in decisions of the supreme court of this state or the United States supreme court, the trial court that sentenced the offender shall conduct a hearing to resentence the offender. At the resentencing hearing, the court shall impose upon the offender a sentence of life imprisonment or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment that is determined as specified in this division. If division (D) of section 2929.03 of the Revised Code, at the time the offender committed the aggravated murder for which the sentence of death was imposed, required the imposition when a sentence of death was not imposed of a sentence of life imprisonment without parole or a sentence of an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment to be imposed pursuant to division (A) or (B)(3) of section 2971.03 of the Revised Code and served pursuant to that section, the court shall impose the sentence so required. In all other cases, the sentences of life imprisonment that are available at the hearing, and from which the court shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 or under section 2909.24 of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed. Nothing in this division regarding the resentencing of an offender shall affect the operation of section 2971.03 of the Revised Code.

(B) Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing. At the hearing, the court or panel shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, a sentence of life imprisonment, or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment. If, pursuant to that procedure, the court or panel determines that it will impose a sentence other than a sentence of death, the court or panel shall impose upon the offender one of the sentences of life imprisonment that could have been imposed at the time the offender committed the offense for which the sentence of death was imposed, determined as specified in this division, or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment that is determined as specified in this

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

R.C. § 2929.06

division. If division (D) of section 2929.03 of the Revised Code, at the time the offender committed the aggravated murder for which the sentence of death was imposed, required the imposition when a sentence of death was not imposed of a sentence of life imprisonment without parole or a sentence of an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment to be imposed pursuant to division (A) or (B)(3) of section 2971.03 of the Revised Code and served pursuant to that section, the court or panel shall impose the sentence so required. In all other cases, the sentences of life imprisonment that are available at the hearing, and from which the court or panel shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 or under section 2909.24 of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed.

(C) If a sentence of life imprisonment without parole imposed upon an offender pursuant to section 2929.021 or 2929.03 of the Revised Code is set aside, nullified, or vacated for the sole reason that the statutory procedure for imposing the sentence of life imprisonment without parole that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, the trial court that sentenced the offender shall conduct a hearing to resentence the offender to life imprisonment with parole eligibility after serving twenty-five full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(D) Nothing in this section limits or restricts the rights of the state to appeal any order setting aside, nullifying, or vacating a conviction or sentence of death, when an appeal of that nature otherwise would be available.

(E) This section, as amended by H.B. 184 of the 125th general assembly, shall apply to all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981, or for terrorism that was committed on or after May 15, 2002. This section, as amended by H.B. 184 of the 125th general assembly, shall apply equally to all such offenders sentenced to death prior to, on, or after March 23, 2005, including offenders who, on March 23, 2005, are challenging their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal court but who, as of March 23, 2005, have not yet been resentenced.

(2007 S 10, eff. 1-1-08; 2004 H 184, eff. 3-23-05; 1998 S 107, eff. 7-29-98; 1996 H 180, eff. 1-1-97; 1996 S 258, eff. 10-16-96; 1996 S 269, eff. 7-1-96; 1995 S 2, eff. 7-1-96; 1995 S 4, eff. 9-21-95; 1981 S 1, eff. 10-19-81)

UNCODIFIED LAW

1996 H 180, § 4: See Uncodified Law under RC 2929.13.

HISTORICAL AND STATUTORY NOTES

**Amendment Note:** 2007 S 10 substituted "March 23, 2005" for "the effective date of that act" throughout division (E); made other nonsubstantive changes; and rewrote division (A) and (B), which prior thereto read:

"(A) If a sentence of death imposed upon an offender is set aside, nullified, or vacated because the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is set aside, nullified, or vacated for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, is set aside, nullified, or vacated pursuant to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4274

R.C. § 2929.06

sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing. At the hearing, the court shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.

"(C) If the sentence of life imprisonment without parole that is imposed upon an offender pursuant to section 2929.021 or 2929.03 of the Revised Code is vacated upon appeal for the sole reason that the statutory procedure for imposing the sentence of life imprisonment without parole that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, the trial court that sentenced the offender shall conduct a hearing to re-sentence the offender to life imprisonment with parole eligibility after serving twenty-five full years of impris-onment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment."

**Amendment Note:** 1998 S 107 redesignated the former first occurrence of division (A)(1) as the first paragraph in division (A); substituted "January 1, 1997" for "the effective date of this amendment" in division (A)(2); re-designated the former second occurrence of division (A)(2) as new division (B); redesignated former division (B) as new division (C); and made other nonsubstantive changes.

**Amendment Note:** 1996 S 258 designated division (A)(1); and added division (A)(2).

**Amendment Note:** 1996 S 269 substituted "twenty-five full years" for "twenty full years" in divisions (A) and (B)

**Amendment Note:** 1996 H 180 substituted "impose one of the following sentences upon" for "sentence" in the introductory paragraph of division (A); designated division (A)(1), inserted "Except as provided in division (A)(2) of this section", and substituted "with" for "without" therein; added division (A)(2); and inserted "pursu-ant to section 2929.021 or 2929.03 of the Revised Code" in the first paragraph of division (B).

**Amendment Note:** 1995 S 2 designated division (A) and added a reference to life imprisonment without parole therein; and added division (B).

**Amendment Note:** 1995 S 4 inserted ", in a case in which a sentence of death was imposed for an offense com-mitted before January 1, 1995 [.]"

CROSS REFERENCES

Application of chapter, searches authorized, 2971.07

Capital case status reports, 109.97

Definitions, 2971.01

Notice of incarceration or release of defendant or custody of alleged juvenile offender, 2930.16

Pardon, parole and probation, Ch 2967

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

L-1676

2004 SESSION LAWS—FULL TEXT  H.B. No.

( APPENDIX B )

## AGGRAVATING CIRCUMSTANCES—LIFE IMPRISONMENT— RESENTENCING PERSON SENTENCED TO DEATH

### File 128

#### Sub. H.B. No. 184

To amend sections 2929.03 and 2929.06 of the Revised Code to permit the imposition of a sentence of life imprisonment without parole, life imprisonment with parole eligibility after serving 25 full years of imprisonment, or life imprisonment with parole eligibility after serving 30 full years of imprisonment when an offender is convicted of or pleads guilty to aggravated murder and is not charged with or convicted of an aggravating circumstance and to clarify and revise the procedures that govern the resentencing of a person sentenced to death whose sentence is set aside, nullified, or vacated.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1.  That sections 2929.03 and 2929.06 of the Revised Code be amended to read as follows:

**2929.03**

**(Eff. 03/23/2005)**

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1) Except as provided in division (A)(2) of this section, the trial court shall impose a ~~sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment one of the following sentences on the offender:~~

(a) Life imprisonment without parole;

(b) ~~Life imprisonment with parole eligibility after serving twenty years of imprisonment;~~

(c) ~~Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;~~

(d) ~~Life imprisonment with parole eligibility after serving thirty full years of imprisonment.~~





L-1677
File 128

H.B. 184   125TH GENERAL ASSEMBLY

(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to section 2929.023 of the Revised Code, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard. The instruction to the jury shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but the instruction shall not mention the penalty that may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C)(1) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of each of the specifications, and regardless of whether the offender raised the matter of age pursuant to section 2929.023 of the Revised Code, the trial court shall impose sentence on the offender as follows:

(a) Except as provided in division (C)(1)(b) of this section, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment one of the following sentences on the offender:

(i) Life imprisonment without parole;

(ii) Life imprisonment with parole eligibility after serving twenty years of imprisonment;

(iii) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(iv) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(2)(a) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be one of the following:

(i) Except as provided in division (C)(2)(a)(ii) of this section, the penalty to be imposed on the offender shall be death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(ii) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the penalty to be imposed on the offender shall be death or life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(b) A penalty imposed pursuant to division (C)(2)(a)(i) or (ii) of this section shall be determined pursuant to divisions (D) and (E) of this section and shall be determined by one of the following:

(i) By the panel of three judges that tried the offender upon the offender's waiver of the right to trial by jury;

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4277



L-1678
File 128                    2004 SESSION LAWS—FULL TEXT    H.B. 184

(ii) By the trial jury and the trial judge, if the offender was tried by jury.

(D)(1) Death may not be imposed as a penalty for aggravated murder if the offender raised the matter of age at trial pursuant to section 2929.023 of the Revised Code and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense. When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to section 2947.06 of the Revised Code. No statement made or information provided by a defendant in a mental examination or proceeding conducted pursuant to this division shall be disclosed to any person, except as provided in this division, or be used in evidence against the defendant on the issue of guilt in any retrial. A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, the offender is subject to cross-examination only if the offender consents to make the statement under oath or affirmation.

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to one of the following:

(a) Except as provided in division (D)(2)(b) of this section, to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, to life imprisonment without parole.

If the trial jury recommends that the offender be sentenced to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of



H.B. 184   125TH GENERAL ASSEMBLY

L-1679
File 128

imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. If the sentence is a sentence of life imprisonment without parole imposed under division (D)(2)(b) of this section, the sentence shall be served pursuant to section 2971.03 of the Revised Code. If the trial jury recommends that the sentence of death be imposed upon the offender, the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Except as provided in division (D)(3)(b) of this section, one of the following:

(i) Life imprisonment without parole;

(ii) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(iii) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(E) If the offender raised the matter of age at trial pursuant to section 2929.023 of the Revised Code, was convicted of aggravated murder and one or more specifications of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:

(1) Except as provided in division (E)(2) of this section, one of the following:

(a) Life imprisonment without parole;

(b) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(c) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. For cases in which a sentence of death is imposed for an offense committed before



L-1680
File 128                                2004 SESSION LAWS—FULL TEXT   H.B. 184

January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. For cases in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.

(G)(1) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed before January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the appellate court.

(2) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed on or after January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the supreme court.

2929.06

(Eff. 03/23/2005)

(A) If the a sentence of death that is imposed upon an offender is set aside, nullified, or vacated upon appeal because the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is set aside, nullified, or vacated upon appeal for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, or is set aside, nullified, or vacated pursuant to division (C) of section 2929.05 of the Revised Code, or is set aside, nullified, or vacated because a court has determined that the offender is mentally retarded under standards set forth in decisions of the supreme court of this state or the United States supreme court, the trial court that sentenced the offender shall conduct a hearing to resentence the offender. At the resentencing hearing, the court shall impose one of the following sentences upon the offender:

(1) Except as provided in division (A)(2) of this section, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(2) If the sentence of death was imposed for an aggravated murder committed on or after January 1, 1997, and if the offender also was convicted of or pleaded guilty to a sexual motivation specification and a sexually violent predator specification that were included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to upon the offender a sentence of life imprisonment that is determined as specified in this division. The sentences of life imprisonment that are available at the hearing, and from which the court shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 or under section 2909.24 of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed. Nothing in this division regarding the resentencing of an offender shall affect the operation of section 2971.03 of the Revised Code.

(B) If the Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death that is imposed upon an offender is vacated upon appeal because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing. At the hearing, the court shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, or a sentence of life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4280

H.B. 184   125TH GENERAL ASSEMBLY

L-1681
File 128

~~five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty~~ ~~full years of imprisonment.~~  If, pursuant to that procedure, the court determines that it will impose a sentence of life imprisonment, the sentences of life imprisonment that are available at the hearing, and from which the court shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 or under section 2909.24 of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed.

(C) If the <u>a</u> sentence of life imprisonment without parole~~that is~~ is imposed upon an offender pursuant to section 2929.021 or 2929.03 of the Revised Code is <u>set aside, nullified, or vacated</u> ~~upon appeal~~ for the sole reason that the statutory procedure for imposing the sentence of life imprisonment without parole that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, the trial court that sentenced the offender shall conduct a hearing to resentence the offender to life imprisonment with parole eligibility after serving twenty-five full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

<u>(D) Nothing in this section limits or restricts the rights of the state to appeal any order setting aside, nullifying, or vacating a conviction or sentence of death, when an appeal of that nature otherwise would be available.</u>

<u>(E) This section, as amended by H.B. 184 of the 125th General Assembly, shall apply to all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981, or for terrorism that was committed on or after May 15, 2002. This section, as amended by H.B. 184 of the 125th general assembly, shall apply equally to all such offenders sentenced to death prior to, on, or after the effective date of that act, including offenders who, on the effective date of that act, are challenging their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal court but who, as of the effective date of that act, have not yet been resentenced.</u>

SECTION 2.   That existing sections 2929.03 and 2929.06 of the Revised Code are hereby repealed.

SECTION 3.   Section 2929.03 of the Revised Code is presented in this act as a composite of the section as amended by both Am. Sub. H.B. 180 and Am. Sub. S.B. 269 of the 121st General Assembly.   The General Assembly, applying the principle stated in division (B) of section 1.52 of the Revised Code that amendments are to be harmonized if reasonably capable of simultaneous operation, finds that the composite is the resulting version of the section in effect prior to the effective date of the section as presented in this act.

SECTION 4.   If any provision of this act, any provision of any section in this act, or the application of any such provision to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of other provisions of this act, other sections in this act, other applications of the provision in question, or related sections that can be given effect without the invalid provision or section, and to this end the provisions are severable.

Date Passed: December 1, 2004

Approved December 21, 2004

Act. Eff. March 23, 2005

STATE OF OHIO

        Plaintiff

vs.

VON CLARK DAVIS

        Defendant

FILED

2008 JUL 25  AM 10: 25

CENTER COUNTY
COURTS

CASE NO.  CR1983-12-0614

STATE OF OHIO, COUNTY OF BUTLER
COURT OF COMMON PLEAS
(Nastoff, J.)

**STATE'S MEMORANDUM "O" IN
OPPOSITION TO DEFENDANT'S
MOTION FOR A PRE-TRIAL COPY
OF THE TRANSCRIPT OF GRAND
JURY PROCEEDINGS**

: : : : : : : : : : : : :

Now comes the Prosecuting Attorney, and opposes the defendant's motion for a pre-resentencing copy of a transcript of the grand jury proceedings.

First of all, this case is not in a pre-trial posture.  The Defendant is before this Court *after* conviction, solely for re-sentencing.  See ***Davis v. Coyle*** (C.A.6, 2007), 475 F.3d 761, 774-775 ("when a trial court improperly excludes mitigating evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing"), and id., at 781 ("the resentencing hearing that we order today will not constitute a 'trial' in the sense that [Davis]'s guilt or innocence is again at issue").

Defendant's request is for a full disclosure of Grand Jury proceedings, i.e., transcripts of all testimony of each and every witness.  This requests goes far beyond the scope of any authority available to defendant.  Ohio Criminal Rule 6(E) recognizes the importance of secrecy in Grand Jury proceedings, and the Ohio Supreme Court has a long tradition of respecting this interest.  See ***State v. Rhoads*** (1910), 81 Ohio St. 397; ***State v. CECOS International, Inc.*** (1988), 38 Ohio St.3d 120, at footnote 9.  The United States Supreme Court recognizes this interest as well, and thereby introduced the doctrine that a defendant

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

1



must show a "particularized need" for Grand Jury transcripts <u>before they would be available</u> <u>through discovery</u>. ***United States v. Proctor & Gamble Co.*** (1958), 356 U.S. 677. The Ohio Supreme Court follows this "particularized need" doctrine. ***State v. Greer*** (1981), 66 Ohio St. 2d 139; ***State v. Grewell*** (1989), 45 Ohio St.3d 4.

Furthermore, Grand Jury transcripts are available only in very limited situations, and the Ohio Supreme Court has explicitly refused to permit an across-the-board disclosure of all Grand Jury testimony. ***CECOS International, Inc.,*** *supra.*

The burden is upon the defendant to demonstrate the presence of a particularized need. As the Court stated in ***State v. Roberts*** (1976), 50 Ohio App.2d 237, at 247:

> The disclosure of Grand Jury testimony is an exception to the historical rule of secrecy that protects Grand Jury proceedings and he who would strip the mantle of secrecy from the proceedings must bear the burden of showing the need for such action.

The Court in ***Roberts*** went on to reject the Defendant's contention that he has met the "particularized need" by stating that, if allowed, he would use the testimony of Grand Jury witnesses to impeach their testimony at trial, see ***Roberts***, 50 Ohio App.2d at 247:

> Some of the discussions on the subject of 'particularized need' suggest that the only predicate for disclosure is a showing that the Grand Jury testimony might assist in impeaching the courtroom testimony. We reject such a broad interpretation of 'particularized need.' For if that be the test, every defendant in every criminal case could argue the exercise of 'particularized need.

Thus, defendant's motion should be denied as no particularized need has been demonstrated, and the trial has already occurred. As such, there is no trial testimony to be impeached, and the Defendant has asserted no other need, much less a particularized need for the transcripts.[1]

---

[1] It must be noted that the Defendant has previously attempted to argue to the Ohio Supreme Court that the grand jury transcripts should have been disclosed, only to have the Court reject this argument. See, *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925.

2

What is more, the Defendant's request is tardy. Guidance on this issue is also found in the American Law Reports. See, 20 A.L.R.3d 7 ("Accused's right to inspection of minutes of state grand jury"). Specifically, in 20 A.L.R.3d 7 §6[a], which is subtitled "After judgment of conviction generally," the law report cites to multiple cases that have found an accused possesses no right to grand jury transcripts after conviction when a request could have been made previously. See, *People v. Laskaris* (1967), 28 App.Div.2d 586, 279 NYS2d 799; *People v. Giordano* (1920), 114 Misc. 62, 186 NYS 651 (because request had not been made prior to judgment of conviction, the court holding that the defendant had waived his right to make such a motion); *People v. Famous* (1961), 31 Misc.2d 179, 220 NYS2d 626; *People v. De Groat* (1961), 13 App.Div.2d 849, 214 NYS2d 813.

As such, the Defendant's request should also be denied as being untimely in nature, and not having demonstrated a particularized need.

Respectfully submitted,
**ROBIN N. PIPER** (0023205)
**Butler County Prosecuting Attorney**


**DANIEL G. EICHEL** (0008259)
**First Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474


**MICHAEL A. OSTER, JR.** (0076491)
Chief, Appellate Division

3

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL** (0008259)
**First Assistant Prosecuting Attorney**

4

STATE OF OHIO

         **Plaintiff**

vs.

**VON CLARK DAVIS**

         **Defendant**

FILED

2008 JUL 25: AM 10:35

BUTLER COUNTY COURTS

CASE NO. CR1983-12-0614

**STATE OF OHIO, COUNTY OF BUTLER
COURT OF COMMON PLEAS**
(Nastoff, J.)

**STATE'S MEMORANDUM "N" IN
OPPOSITION TO DEFENDANT'S
MOTION FOR FUNDING TO RETAIN
AN EXPERT**

: : : : : : : : : : : : :

     Now comes the Prosecuting Attorney, and opposes the Defendant's motion for

expert funding as not yet being ripe.

     "For a cause to be justiciable, there must exist a real controversy presenting issues

which are ripe for judicial resolution and which will have a direct and immediate impact

on the parties." _**State v. Stambaugh**_ (1987), 34 Ohio St.3d 34, 38. (Douglas, J.,

concurring in part and dissenting in part), citing _**Burger Brewing Co. v. Liquor Control**_

_**Comm**_. (1973), 34 Ohio St.2d 93, 97-98.  A claim is not ripe if the claim rests upon

"future events that may not occur as anticipated, or may not occur at all." _**Texas v.**_

_**United States**_ (1998), 523 U.S. 296, 300.

     In order to determine whether an issue is ripe for judicial review, a court must

weigh: (1) the likelihood that the alleged future harm will ever occur, (2) the likelihood

that delayed review will cause hardship to the parties, and (3) whether the factual record

is sufficiently developed to provide fair adjudication. _**Ohio Forestry Assn., Inc. v. Sierra**_

_**Club**_ (1998), 523 U.S. 726, 731-733.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. · 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

1

In the present case, the Defendant has request that this Court grant him the funds to retain Dr. Mark Heath, M.D. However, the Defendant on page two of his motion "N" admits that: "**[i]f this Court grants** Mr. Davis an evidentiary hearing on the motion challenging lethal injection, he will need to retain an expert to testify concerning the lethal injection process." (Emphasis added)

Therefore, the Defendant's motion itself contemplates a ruling by this Court that has not yet happened, and a decision going in his favor that is pure speculation. Thus, this issue is not yet ripe, and the State requests that it be given time to respond if and when the issue does becomes ripe. Any present response by the State might be either totally unnecessary or not on point as to what this Court's ruling as to the lethal injection motion itself would be. Further, the State does not believe that a delayed review will cause any hardship to the parties.

As such, the State asks this Court to first rule on the Motion challenging lethal injection, and then, based upon that ruling, allow the State to properly respond to this premature motion, if necessary.

Respectfully submitted,
**ROBIN N. PIPER** (0023205)
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL** (0008259)
**First Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

2

MICHAEL A. OSTER, JR. (0076491)
Chief, Appellate Division


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

DANIEL G. EICHEL (0008259)
First Assistant Prosecuting Attorney

3

STATE OF OHIO        ~ ..ED        :        CASE NO.  CR1983-12-0614

        Plaintiff JUL 25  AM 10: 24   :        STATE OF OHIO, COUNTY OF BUTLER
vs.                                            COURT OF COMMON PLEAS
                        .ENTER          :        (Nastoff, J.)
VON CLARK DAVIS          OUNTY
                        COURTS          :
                                                 **STATE'S MEMORANDUM IN**
        **Defendant**                   :        **OPPOSITION TO DEFENDANT'S**
                                                 **MOTION "I"  FOR PRE-TRIAL**
                                        :        **DISCLOSURE OF POLICE REPORTS**
                                                 **AND WITNESS STATEMENTS**
                                        :

                :  :  :  :  :  :  :  :  :  :  :  :  :  :

        Now comes the Prosecuting Attorney, and in opposition to the Defendant's motion

requesting this Court to "order the prosecution to disclose, prior to trial all police reports ***

as well as the prior statements made by its witnesses," says that this motion is without merit.

        First of all, this case is **not** in a pre-trial posture.  The Defendant is before this Court

**after** conviction, solely for re-sentencing.  See **Davis v. Coyle** (C.A.6, 2007), 475 F.3d

761, 781 ("the resentencing hearing that we order today will not constitute a 'trial' in the

sense that [Davis]'s guilt or innocence is again at issue").

        Defendant cites Crim.R. 16(B)(1)(g), but this provision allows an *in camera*

inspection of a witness's statement following the testimony of that witness on direct

examination at trial.  See **State v. Scudder** (1994), 71 Ohio St.3d 263, 270-271 (capital

defendant not entitled to pre-trial disclosure of witness statements).  Defendant further

alludes to the trial court's discretion in discovery matters, but in **State v. Craft**, 149 Ohio

App.3d 176, 2002-Ohio-4481, at ¶19, the Twelfth District Court of Appeals held that a

trial court's attempt to expand discovery beyond a specific area already addressed by

Crim.R. 16 was an abuse of discretion — that the trial court abused its discretion by

ordering discovery of witness statements, etc. beyond the scope of disclosure as addressed

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1

by Crim.R. 16 — thus, the trial court's discovery order was declared null and void, see

***Craft***, at ¶¶25-26. Pretrial disclosure of police reports and witness statements are

"specific area[s] already addressed by Crim.R. 16," ***Craft***, at ¶19. Crim.R. 16(B)(1)(g)

provides:

> "**In camera inspection of witness' statement**. *Upon completion of a
> witness' direct examination at trial*, the court on motion of the defendant
> shall conduct an in camera inspection of the witness' written or recorded
> statement with the defense attorney and prosecuting attorney present and
> participating, to determine the existence of inconsistencies, if any, between
> the testimony of such witness and the prior statement.
>     "If the court determines that inconsistencies exist, the statement shall be
> given to the defense attorney for use in cross-examination of the witness as
> to the inconsistencies.
>     "If the court determines that inconsistencies do not exist the statement
> shall not be given to the defense attorney and he shall not be permitted to
> cross-examine or comment thereon.
>     "Whenever the defense attorney is not given the entire statement, it shall
> be preserved in the records of the court to be made available to the
> appellate court in the event of an appeal." [Emphasis added.]

Also, Crim.R. 16(B)(2) provides:

> "**Information not subject to disclosure**. Except as provided in
> subsections (B)(1)(a), (b), (d), (f), and (g), *this rule does not authorize the
> discovery or inspection of reports, memoranda, or other internal documents
> made by the prosecuting attorney or his agents in connection with the
> investigation or prosecution of the case or of statements made by witnesses
> or prospective witnesses to state agents.*" [Emphasis added.]

Thus, Crim.R. 16 does not require disclosure of said statements prior to trial, but in fact,

Crim.R. 16(B)(2) specifically excludes from disclosure to the defendant, prior to trial, any

statements made by a witness or prospective witness; and only upon completion of a

witness's direct examination at trial is the defendant entitled to review that witness' written

or recorded statement. Crim.R. 16 (B)(1)(g). The Ohio Supreme Court has reviewed

Crim.R. 16(B)(2) and held the trial court does not err in refusing to compel disclosure of

prior statements given by a state's witness who is not a co-defendant. *State v. Lane* (1976), 49 Ohio St.2d 77, paragraph two of the syllabus. The Ohio Supreme Court has further rejected the argument that the police reports should be considered "witness statements" under Crim.R. 16(B)(1)(g).

In *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, at ¶41, the court was asked to determine whether incident reports compiled by the Lima Police Department during its investigation of the case qualified as "witness statements" under Crim.R. 16. The court reiterated its previous reasoning in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 225, that those portions of a testifying police officer's signed report concerning his own observations and recollection of the events are his "statement" within the meaning of Crim.R. 16(B)(1)(g) (and thus, subject to in camera inspection after the police officer authoring the report has testified on direct examination); however, "[t]hose portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2)."

*Cunningham*, at ¶43, quoting *Jenkins*, 15 Ohio St.3d, at 225.

The *Cunningham* court further distinguished *Jenkins* to hold:

"Unlike the situation in *Jenkins*, the testifying witnesses in this matter were not the officers who wrote the police reports. Instead, the testifying witnesses were victims of the shootings, and their pretrial 'statements' are actually the police officers' written summaries of what the victims had allegedly told the officers. Nothing in the record indicates that these witnesses had reviewed, signed, adopted, or otherwise approved the material in the police reports as their own statements. There is no proof that the police officers' summaries are an accurate reproduction of the witnesses' own words. Therefore, we find that these pretrial statements are not statements subject to an in camera inspection under Crim.R. 16(B)(1)(g)."

*Cunningham*, at ¶44.

Page 3

In the case at bar, the state's witnesses testified at trial 24 years ago. The request to examine their statements after direct examination, indeed, after conviction, is untimely.

Therefore, the Defendant's motion for disclosure, "prior to trial," of all police reports and the prior statements made by its witnesses, should be denied.

Respectfully submitted,

**ROBIN N. PIPER (0023205)**
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL (0008259)**
**Assistant Prosecuting Attorney**

**MICHAEL A. OSTER, JR. (0076491)**
**Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL (0008259)**
**Assistant Prosecuting Attorney**

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4292

STATE OF OHIO        :     CASE NO. CR 1983-12-0614

    Plaintiff                  STATE OF OHIO
                                COUNTY OF BUTLER

vs.           JUL 25   AM 10: 23    COURT OF COMMON PLEAS
                                (Nastoff, J.)

VON CLARK DAVIS            <u>STATE'S SUPPLEMENTAL DISCOVERY "H"</u>

    Defendant        :

: : : : : : : : : :

Now comes the Prosecuting Attorney, and supplementing its previous discovery, discloses the following, with the understanding that it be expressly put into the record that the State is acting upon the assumption that the Defense has all previously given discovery from this case as it dates back to 1983. This would include, but not be limited to discovery given on 2/8/84, supplemental discovery given on 4/20/84 and another supplemental discovery given on 4/27/84.

The State thus gives the following additional discovery not only in an effort to answer present counsel's demand for discovery, but also in acknowledgment of its continuing duty to provide discovery in this case as it relates back to the original demand for discovery. Further, the State is also holding to the assumption that the defense is also still required to provide reciprocal discovery. If any of these assumptions are questioned or if the defense does not have previously disclosed discovery, the State would ask that it be notified as to remedy the situation.

A.       STATEMENTS DISCOVERABLE, Criminal Rule 16(B)(1)(a):

           The defendant made no oral or written statements to any law enforcement officer which are known to the Prosecuting Attorney at this time.

B.       DEFENDANT'S PRIOR CRIMINAL RECORD, Criminal Rule 16(B)(1)(b):

           The defendant's known criminal record has been previously disclosed.

C.       DOCUMENTS AND TANGIBLE EVIDENCE, Criminal Rule 16(B)(1)(C):

           Have all been previously disclosed.

D.       REPORTS OF EXAMINATIONS OR TESTS, Criminal Rule 16(B)(1)(d):

           Copies of such reports have already been disclosed.

E.       WITNESSES' NAMES AND ADDRESSES, Criminal Rule 16(B)(1)(e):
           The Prosecuting Attorney intends to call the following at trial:



See attached list

KNOWN FELONY RECORD OF CONVICTION FOR WITNESSES:

| | |
|---|---|
| Anthony Ferguson: | Burglary 11/16/73<br>Larceny 11/16/73 |
| Mona Aldridge-Bryant: | n/a |
| Reginald Denmark: | n/a |
| Cozetta Massey-Denmark: | n/a |
| Mark Lovett: | Burglary 1997 |
| Wade Coleman: | Rape CR1987-10-0546 (1988) |

F.  FAVORABLE EVIDENCE DISCOVERABLE, Criminal Rule 16(B)(1)(f):

There is no evidence material to guilt or punishment and favorable to this defendant known to the Prosecuting Attorney as to this case.

Respectfully submitted,
ROBIN N. PIPER  (0023205)
Butler County Prosecuting Attorney

DANIEL G. EICHEL  (0008259)
First Assistant Prosecuting Attorney
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone; (513) 887-3474

MICHAEL A. OSTER, JR. (0076491)
Chief, Appellate Division

PROSECUTING ATTORNEY, BUTLER COUNTY, OHIO

P.O. BOX 515, HAMILTON, OH 45012-0515

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

DANIEL G. EICHEL (0008259)
First Assistant Prosecuting Attorney

## Witness List for Von Clark Davis

1. Det. Ron Wells-
   c/o Hamilton Police Department
   331 S. Front Street
   Hamilton, Ohio 45011

2. Det. Don Gross
   ███████████
   Bradenton, Florida, 34209

3. Sgt. James Schmitz-
   ███████████
   Fairfield, Ohio 45014

4. Lt. Charlie Reid-Deceased

5. Capt. Richard Carpenter
   ███████████
   Hamilton, Ohio 45013

6. P.O. Essex Shepherd
   ███████████
   Hamilton, Ohio 45013

7. Det. Edward Petrak
   ███████████
   Hamilton, Ohio 45013

8. P.O. Ralph Bowman
   ███████████
   Hamilton, Ohio 45013

9. Det. James Nugent
   Butler County Prosecutor's Office
   315 High Street, 11th Floor,
   Hamilton, Ohio 45011

10. Det. Joe Logsdon
    ███████████
    Hamilton, Ohio 45013

11. Det. Gary Thompson
    ███████████
    Hamilton, Ohio 45013

12. P.O. R. Shelley -Deceased

13. Capt. Mike Story
    ███████████
    Hamilton, Ohio 45013

14. Det. Gilford Cox
    ███████████
    Hamilton, Ohio 45011

15. Det. Jerry Weisbrodt-Deceased

16. P.O. John Hill
    ███████████
    Indiana

17. Agent Ron Dye
    BCI & I Administrator
    P.O. Box 365
    London, Ohio 43140

18. Dr. Richard Burkhardt
    Butler County Coroner's Office
    315 High Street, 6th Floor
    Hamilton, Ohio 45011

19. Dr. Joseph Brandabur
    Assistant Butler County Coronor
    315 High Street, 6th Froor
    Hamilton, Ohio 45011

20. Thomas Marsh-Deceased

21. Anthony G. Ferguson-Deceased

22. Mona Aldridge-Bryant
███████████
Middletown, Ohio 45044

23. Cozetta Massey-Denmark
███████████
Cincinnati, Ohio 45204

24. Reginald Denmark
███████████
Cincinnati, Ohio 45044

25. Mark Lovett
███████████
Middletown, Ohio 45044

26. Vickie Moody-Cardwell
███████████
Hamilton, Ohio 45011

27. Wade Coleman
███████████
Hamilton, Ohio 45011

28. Phyllis Becker-Canniff
███████████
Atlanta. Michigan 49709

29. Fonsea A. Butler
███████████
Hamilton, Ohio 45011

30. Carlotta Butler
███████████
Hamilton, Ohio 45011

31. Cynthia Butler
███████████
Fairfield, Ohio 45014

32. Leslie Cunningham
███████████
Trotwood, Ohio 45246

33. Jodawna Sourthern-McCreary
███████████
Cincinnati, Ohio 45231

34. Larry Cecere
███████████
Okeana, Ohio

35. Ron Wilson- Address Unknown

36. Ronnie D. Williams
███████████
Hamilton, Ohio 45013

37. John Tipton-Deceased

38. Bonita Thompson
███████████
Fairfield, Ohio 45014

39. Charles Tipton
███████████
Cincinnati, Ohio 45240

40. Alluster Tipton
███████████
Cincinnati, Ohio 45240

41. Dr. Roger Fisher-Address Unknown

42. Elbert Avery-Deceased

43. Shelba Robertson-Deceased

44. Sgt. Gody Pullman-Deceased

45. Capt. Oscar McGraw-Deceased

46. Erwin Wendler
███████████
Portsmouth, Ohio 45662

STATE OF OHIO : CASE NO. CR1983-12-0614

Plaintiff : STATE OF OHIO, COUNTY OF BUTLER
COURT OF COMMON PLEAS
vs. : (Nastoff, J.)

VON CLARK DAVIS :

Defendant **STATE'S MOTION TO STRIKE AND**
: **MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTIONS TO SUPPRESS**
: **PRETRIAL AND TRIAL IDENTIFICATIONS**
[ **DESIGNATED MOTIONS "G" and "K"** ]

: : : : : : : : : :

Now comes the Prosecuting Attorney, and in opposition to the Defendant's

motions[1] for suppression of "all pretrial and trial identifications" in this case, moves to

strike these motions as untimely under Crim.R. 12(D), and further, says that the Court

should deny such motions as being res judicata and/or moot.

With certain exceptions not applicable here, Crim.R. 12(D) requires all pretrial

motions [including "[m]otions to suppress *** identification testimony," see Crim.R.

12(C)(3)], to be made within thirty-five days after arraignment or seven days before trial,

whichever is earlier. **The trial of this case took place in May 1984, over twenty-four**

**years ago**. Failure to file a motion to suppress pursuant to Crim.R. 12(C)(3) prior to the

submission of evidence to the trial court constitutes waiver of any objection to the

admissibility of such evidence, under Crim.R. 12(H).[2]  See **State v. Phillips** (1995), 74

Ohio St.3d 72, 97, citing **State v. Wade** (1978), 53 Ohio St.2d 182, at paragraph three

---

1. Duplicative motions which appear to be identical in all respects, seeking the same relief, were filed by Defendant on June 27, 2008 (designated by Defendant as "Motion K") and previously, on May 28, 2008 (unnumbered, but sequentially, "Motion G").

2. Crim.R. 12(H) provides:
"(H) **Effect of failure to raise defenses or objections**.  Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to division (D) of this rule, or prior to any extension of time made by the court, shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver."

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1



of the syllabus, and **State v. F.O.E. Aerie 2295 Port Clinton** (1988), 38 Ohio St.3d 53,

at paragraph two of the syllabus. See, also, **State v. Cummings** (1985), 23 Ohio App.3d

40, 45 (failure to make pretrial motion to suppress identification testimony constitutes

waiver). Specifically, it is apparent that Davis failed to specifically object to this testimony

at trial and did not move to suppress it, thereby waiving the right to advance this argument

even on a direct appeal from the conviction, see **State v. Allen** (1995), 73 Ohio St.3d

626, 634 — let alone 24 years after the trial and final judgment of conviction, and long

after the parties adduced the testimony involved here.

> "*** The waiver rule requires that a party make a contemporaneous objection to
> alleged trial error in order to preserve that error for appellate review. The rule is of
> long standing, and it goes to the heart of an adversary system of justice.
> "Even constitutional rights 'may be lost as finally as any others by a failure to
> assert them at the proper time.' "

**State v. Murphy** (2001), 91 Ohio St.3d 516, 532, quoting **State v. Childs** (1968), 14

Ohio St.2d 56, 62. In **State v. Slagle** (1992), 65 Ohio St.3d 597, 604, the Ohio

Supreme Court explained:

> "This rule is a product of our adversarial system of justice. 'Its purpose is
> practical: to prevent the defensive trial tactic of remaining silent on a fatal error
> during trial with the expectation of demanding a reversal on appeal if the verdict is
> guilty.' [Citation omitted.] The rule is also consistent with the structure of our court
> system. An appellate court is not to be the first court to decide an issue; it is to
> review decisions made by the trial court after the lower court has had an opportunity
> to hear the arguments of the parties. ***."

**Slagle** id. By express evidentiary rule, a failure to object to the admission of evidence at

trial constitutes a waiver, see Evid.R. 103(A)(1):

> "Error may not be predicated upon a ruling which admits or excludes evidence
> unless a substantial right of the party is affected, and *** [i]n case the ruling is one
> admitting evidence, a timely objection or motion to strike appears of record, stating
> the specific ground of objection, if the specific ground was not apparent from the
> context").

It is beyond any serious question that Davis's conviction in the 1984 trial is final; this conviction was expressly affirmed on direct appeal as to all issues related to Davis's guilt,[3] and that part of the judgment was never overturned,[4] whereas he is before this Court solely for re-sentencing. See *Davis v. Coyle* (C.A.6, 2007), 475 F.3d 761, 774-775 ("when a trial court improperly excludes mitigating evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing"), and id., at 781 ("the resentencing hearing that we order today will not constitute a 'trial' in the sense that [Davis]'s guilt or innocence is again at issue").   The federal court left no doubt that a retrial of Davis's guilt or innocence is not contemplated.

And after the direct appeal of a judgment is decided, the trial court has no jurisdiction to consider any part of the judgment that was affirmed. See *State v. Allen*, Warren App. No. CA2006-01-001, 2006-Ohio-5990, at ¶13.   In other words, a trial court may not vacate or modify a judgment which has been affirmed by the appellate court, "for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do."   *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas* (1978), 55 Ohio St.2d 94, 98.   Under the law-of-the-case doctrine, "[a]bsent

---

3.   See *State v. Davis* (May 27, 1986), Butler App. No. CA84-06-071, 1986 WL 5989 (the Court of Appeals affirming conviction and death sentence); *State v. Davis* (1988), 38 Ohio St.3d 361, 528 N.E.2d 925 (the Ohio Supreme Court affirming the conviction, but reversing the death sentence based on errors occurring after the receipt of mitigating evidence).

4.   In subsequent appeals the death sentence imposed in 1989 was affirmed by the Court of Appeals in *State v. Davis* (Oct. 29, 1990), Butler App. No. CA89-09-123, 1990 WL 165137, and by the Ohio Supreme Court in *State v. Davis* (1992), 63 Ohio St.3d 44, 584 N.E.2d 1192, *certiorari denied*, *Davis v. Ohio* (1992), 506 U.S. 858, 113 S.Ct. 172; the trial court's dismissal of a petition for post-conviction relief was affirmed by the court of appeals, *State v. Davis* (Sept. 30, 1996), Butler App. No. CA95-07-124, 1996 WL 551432, *discretionary appeal not allowed*, *State v. Davis* (1997), 77 Ohio St.3d 1520, 674 N.E.2d 37; and an application for reopening in the Court of Appeals was denied in cases CA84-06-071 and CA89-09-123, and affirmed in *State v. Davis* (1999), 86 Ohio St.3d 212, 714 N.E.2d 384.

extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." **Nolan v. Nolan** (1984), 11 Ohio St.3d 1, syllabus.  This doctrine precludes a litigant from attempting to rely on arguments at retrial which were fully litigated, or could have been fully litigated, in a first appeal.  **Hubbard ex rel. Creed v. Sauline** (1996), 74 Ohio St.3d 402, 404-405.  "[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." **Nolan**, 11 Ohio St.3d, at 3.  A trial court may not exceed the scope of its remand from the superior appellate courts.  See **Hawley v. Ritley** (1988), 35 Ohio St.3d 157, 161.

Also, "[u]nder the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." **State v. Szefcyk** (1996), 77 Ohio St.3d 93, syllabus, reaffirming **State v. Perry** (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.

> " *** '[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' [Citation omitted.]  We have stressed that '[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours.  It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts. ***' [Citation omitted.]"

**Szefcyk**, 77 Ohio St.3d at 95, quoting **Federated Dept. Stores, Inc. v. Moitie** (1981),

452 U.S. 394, 401, 101 S.Ct. 2424. There is no injustice in requiring a litigant "to avail himself of all available grounds for relief" through the first available instance, i.e. Davis's direct appeal from his conviction. See ***Grava v. Parkman Twp***. (1995), 73 Ohio St.3d 379, 383. Such recognition "establishes certainty in legal relations and individual rights, accords stability to judgments and promotes the efficient use of limited judicial or quasi judicial time and resources." Id., at 383-384.

Wherefore, the Defendant's motion should be denied.

Respectfully submitted,

**ROBIN N. PIPER  (0023205)**
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**

**MICHAEL A. OSTER, JR.  (0076491)**
**Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**

Page 5

IMAGED

STATE OF OHIO

Plaintiff

vs.

VON CLARK DAVIS

Defendant

FILED

2000 JUL 25  AM 10: 22

BUTLER
COUNTY
COURTS

CASE NO.  CR1983-12-0614

STATE OF OHIO, COUNTY OF BUTLER

COURT OF COMMON PLEAS

(Nastoff, J.)

:

:

:

:

**STATE'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S
MOTION "F" TO DISMISS THE CAPITAL
SPECIFICATION CONTAINED IN THE
INDICTMENT**

: : : : : : : : :

Now comes the Prosecuting Attorney, and in opposition to the Defendant's motion

to dismiss the capital specification contained in the indictment, says that the Court should

deny such motion as it is barred under the law-of-the-case doctrine.

Defendant's motion presents numerous arguments challenging the constitutionality

of Ohio's death penalty statute as grounds for dismissing the capital specification

contained in the indictment under which, in 1984, he was convicted.  That conviction was

affirmed, see *State v. Davis* (May 27, 1986), Butler App. No. CA84-06-071, 1986 WL

5989 (the Court of Appeals affirming conviction and death sentence); *State v. Davis*

(1988), 38 Ohio St.3d 361 ("we affirm the judgment of the court of appeals with regard

to [Davis's] conviction, but reverse the judgment of the court of appeals as to [Davis's]

death sentence," id., at 363).  In that direct appeal the Ohio Supreme Court considered,

*and rejected*, Davis's "sixth proposition of law" wherein he made most of these same

constitutional arguments.  See *Davis*, 38 Ohio St.3d, at 366-367 ("Appellant presents

numerous arguments challenging the constitutionality of Ohio's death penalty statute in his

sixth proposition of law.  We have previously rejected these arguments ***.").

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1

232



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4303

Under the law-of-the-case doctrine, "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, syllabus.  This doctrine precludes a litigant from attempting to rely on arguments at retrial which were fully litigated, or could have been fully litigated, in a first appeal.  *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 404-405.  "[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Nolan*, 11 Ohio St.3d, at 3.  A trial court may not exceed the scope of its remand from the superior appellate courts.  See *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 161.

Davis is before this Court solely for re-sentencing.  See *Davis v. Coyle* (C.A.6, 2007), 475 F.3d 761, 774-775 ("when a trial court improperly excludes mitigating evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing"), and id., at 781 ("the resentencing hearing that we order today will not constitute a 'trial' in the sense that [Davis]'s guilt or innocence is again at issue").  And after a judgment has been affirmed on direct appeal, the trial court has no jurisdiction to reconsider the judgment that was affirmed.  See *State v. Allen*, Warren App. No. CA2006-01-001, 2006-Ohio-5990, at ¶13 (Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court).  In other words, a trial court has no power to vacate or modify a judgment which has been affirmed by a superior appellate court, "for this action would affect the decision of the reviewing court, which is

Page 2

not within the power of the trial court to do." ***State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*** (1978), 55 Ohio St.2d 94, 98.

Moreover, "[u]nder the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." ***State v. Szefcyk*** (1996), 77 Ohio St.3d 93, syllabus, reaffirming ***State v. Perry*** (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.

> " *** '[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' [Citation omitted.] We have stressed that '[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts. ***' [Citation omitted.] "

***Szefcyk***, 77 Ohio St.3d at 95, quoting ***Federated Dept. Stores, Inc. v. Moitie*** (1981), 452 U.S. 394, 401, 101 S.Ct. 2424. There is no injustice in requiring a litigant "to avail himself of all available grounds for relief" through the first available instance, i.e. his direct appeal from a conviction. See ***Grava v. Parkman Twp.*** (1995), 73 Ohio St.3d 379, 383. Such recognition "establishes certainty in legal relations and individual rights, accords stability to judgments and promotes the efficient use of limited judicial or quasi judicial time and resources." Id., at 383-384.

Specifically, it is apparent that Defendant already made a constitutional challenge to the validity of the specification under which he was convicted, and the arguments he made

Page 3

(or could have made) in 1984 and on direct appeal in 1988 were rejected. Defendant does not call this court's attention to "extraordinary circumstances, such as an intervening decision by the Supreme Court," which would avoid application of the law-of-the-case doctrine or the doctrine of res judicata. Indeed, most of the cases cited by the Defendant in his memorandum [e.g., cases from the 1970's and 1980's] predated his failed arguments on direct appeal. Wherefore, the Defendant's motion to dismiss the capital specification contained in the indictment should be denied.

Respectfully submitted,

**ROBIN N. PIPER (0023205)**
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL (0008259)**
**Assistant Prosecuting Attorney**

**MICHAEL A. OSTER, JR. (0076491)**
**Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL (0008259)**
**Assistant Prosecuting Attorney**

Page 4

IMAGED

STATE OF OHIO

             **Plaintiff**

vs.

**VON CLARK DAVIS**

         **Defendant**

FILED

2008 JUL 25 AM 10: 22

CENTER
COUNTY
COURTS

:

:

CASE NO. CR1983-12-0614

STATE OF OHIO, COUNTY OF BUTLER
**COURT OF COMMON PLEAS**
(Nastoff, J.)

**STATE'S MEMORANDUM "D" IN
RESPONSE TO DEFENDANT'S
MOTION FOR EXCULPATORY EVIDENCE**

: : : : : : : : : : : : :

Now comes the Prosecuting Attorney, and in response to the defendant's motion for exculpatory evidence states that discovery has previously been provided, and will continue to be provided pursuant to *Brady v. Maryland* (1963), 373 U.S. 83. The State will thus honor both the present demand, and the original demand for discovery, which was filed on February 1, 1984. The State is acting upon the assumption that the Defense has all previously given discovery from this case as it dates back to 1983. This would include, but not be limited to, discovery given on 2/8/84, supplemental discovery given on 4/20/84, supplemental discovery given on 4/27/84, and supplemental discovery given contemporaneously with this motion, listed as State's motion "H".

Further, the State is also holding to the assumption that the defense is also still required to provide reciprocal discovery. If any of these assumptions are questioned or if the defense does not have previously disclosed discovery, the State would ask that it be notified as to remedy the situation.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

1


233

The State has thus given all exculpatory information in discovery and is aware of no new exculpatory information.[1]

Respectfully submitted,
ROBIN N. PIPER (0023205)
Butler County Prosecuting Attorney


DANIEL G. EICHEL (0008259)
First Assistant Prosecuting Attorney
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474


MICHAEL A. OSTER, JR. (0076491)
Chief, Appellate Division

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.


DANIEL G. EICHEL (0008259)
First Assistant Prosecuting Attorney

---

[1] After the prison records can be opened, the State will turn over any exculpatory information contained therein.

2

STATE OF OHIO : CASE NO. CR1983-12-0614

**Plaintiff** :

vs. : **STATE OF OHIO, COUNTY OF BUTLER COURT OF COMMON PLEAS**
: (Nastoff, J.)

**VON CLARK DAVIS** :

**Defendant** : **STATE'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION "J" TO COMPEL LAW ENFORCEMENT OFFICIALS TO PROVIDE THE PROSECUTING ATTORNEY WITH ALL THE INFORMATION ACQUIRED DURING THE COURSE OF INVESTIGATION**

: : : : : : : : : : : : :

Now comes the Prosecuting Attorney, and in response to the Defendant's motion to compel law enforcement officials to provide the Prosecuting Attorney with all information acquired during the course of their investigations, has no objection to the Court's order granting such motion so long as the said Order includes **every** state agency involved in **any** investigation as to the Defendant, involving material information relevant to his resentencing — including the Ohio Department of Rehabilitation and Correction ("DRC"). Incongruously, the Defendant has been opposed to the state's effort to have the Defendant's DRC records turned over to the Prosecuting Attorney.

We agree with this motion, but on grounds other than those cited by the Defendant. Indeed, while he claims a constitutional basis for the motion, his argument is actually contrary to **United States v. Agurs** (1976), 427 U.S. 97, where the court determined that "there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all investigatory work on a case.'" **Agurs**, at 109, citing **Moore v. Illinois** (1972), 408 U.S. 786, 795. Moreover, this motion is not timely with regard to any issue of guilt, as the Defendant is now before this Court **after** conviction,

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1



solely for re-sentencing. See ***Davis v. Coyle*** (C.A.6, 2007), 475 F.3d 761, 781 ("the

resentencing hearing that we order today will not constitute a 'trial' in the sense that

[Davis]'s guilt or innocence is again at issue"). The prosecution is fully aware of the State's

obligation under ***Brady v. Maryland*** (1963), 373 U.S. 83, and its genre to disclose

evidence which is favorable to the defendant and "material" in the constitutional sense as

defined in ***Agurs***, at 112. In this case, the prosecution agrees that it should have the

cooperation of every state agency possessing information relevant to Davis's history,

character and background. This obviously includes the Ohio DRC, where Davis has been in

state custody for most of the past four decades. Davis's motion should be granted.

Respectfully submitted,

**ROBIN N. PIPER  (0023205)**
**Butler County Prosecuting Attorney**

**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**

**MICHAEL A. OSTER, JR.  (0076491)**
**Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of July, 2008.

**DANIEL G. EICHEL  (0008259)**
**Assistant Prosecuting Attorney**

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                    :

Plaintiff,                        :        Case No. CR 1983-12-0614

vs.                               :

VON CLARK DAVIS                   :        Judge Daniel Andrew Nastoff

Defendant.                        :

---

## VON CLARK DAVIS' NOTICE OF INTENT
## TO APPEAL TO THE OHIO SUPREME COURT

Von Clark Davis appealed to the Butler County Court of Appeals. *State v. Davis*, App. No. CA2008-04-111. On July 1, 2008, that Court dismissed the appeal finding that it was not a final appealable order. Mr. Davis intends to appeal that ruling to the Ohio Supreme Court.

Respectfully submitted,

OFFICE OF THE
OHIO PUBLIC DEFENDER

Randall Porter (mcr)
RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US



Repper, Pagan,
Cook, Ltd.
Attorneys at Law
1501 First Avenue
Middletown, OH 45044
Phone: 513.424.1823
FAX: 513.424.3135

(235)

And

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middletown, Ohio 45044
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Notice Of Intent  To Appeal To The Ohio Supreme Court* was forwarded by first-class U.S. Mail, postage prepaid to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio 45011 on this 28th th day of July, 2008.

COUNSEL FOR  VON CLARK DAVIS



**Repper, Pagan,**
**Cook, Ltd.**
Attorneys at Law
1501 First Avenue
Middletown, OH 45044
Phone: 513.424.1823
FAX: 513.424.3135

2



**CINDY CARPENTER**  **CLERK OF COURTS**

**WITNESS INFORMATION**

2008 AUG 22 PM 12: 35

NAME: Reginald Denmark
ADDRESS:
CITY:       Cincinnati       STATE: OH       ZIP: 45214

CI... CARPENTER
BU...ER COUNTY
CLERK OF COURTS

Today's Date:       August 22, 2008       Case No.: CR 1983-12-0614

Plaintiff: State of Ohio       vs.       Defendant: Von Clark Davis

**PRAECIPE FOR SUBPOENA**
**Criminal- Hearing**
**COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**

TYPE OF SERVICE:

_____Certified Mail       _____Personal Service by Butler County Sheriff

__XX_ Appointed Process Server       _____ Foreign County Sheriff

_____Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio
45011 as follows:
       **DATE: August 27and 28, 2008**       **TIME: 9:00 a.m. both days**
                                                             **released by Attorney**

       **JUDGE: Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

REQUESTING ATTORNEY
Name: Melynda Cook-Reich
Repper, Pagan, Cook Ltd.
1501 First Avenue
Middletown, OH 45044
513-424-1823; Fax (513) 424-3135

**CINDY CARPENTER**      **CLERK OF COURTS**

**WITNESS INFORMATION**    2008 AUG 22 PM 12: 36

NAME: Jodawna Southern-McCreary
ADDRESS: ███████████
CITY:     Cincinnati     STATE: OH     ZIP: 45231

Today's Date:     August 22, 2008     Case No.: CR 1983-12-0614

Plaintiff: State of Ohio     vs.     Defendant: Von Clark Davis

### PRAECIPE FOR SUBPOENA
### Criminal- Hearing
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

_____ Certified Mail      _____ Personal Service by Butler County Sheriff

__XX__ Appointed Process Server      _____ Foreign County Sheriff

_____ Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio 45011 as follows:

     **DATE: August 27 and 28, 2008**      **TIME: 9:00 a.m. both days**
                                                      **until released by Attorney**

     **JUDGE: Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

                          REQUESTING ATTORNEY
                          Name: Melynda Cook-Reich
                          Repper, Pagan, Cook Ltd.
                          1501 First Avenue
                          Middletown, OH 45044
                          513-424-1823; Fax (513) 424-3135

**CINDY CARPENTER**   **CLERK OF COURTS**

**WITNESS INFORMATION**

2008 AUG 22 PM 12: 36

CLERK BUTLER COUNTY
CLERK OF COURTS

NAME: Cozetta Massey-Denmark
ADDRESS: ▆▆▆▆▆▆▆▆▆
CITY:    Cincinnati    STATE: OH    ZIP: 45204

IMAGED

Today's Date:    August 22, 2008    Case No.: CR 1983-12-0614

Plaintiff: State of Ohio    vs.    Defendant: Von Clark Davis

### PRAECIPE FOR SUBPOENA
### Criminal- Hearing
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

_____ Certified Mail    _____ Personal Service by Butler County Sheriff

__XX__ Appointed Process Server    _____ Foreign County Sheriff

_____ Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio
45011 as follows:

**DATE: August 27 and 28, 2008**    **TIME: 9:00 a.m. both days**
                                    **until released by Attorney**

**JUDGE: Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

REQUESTING ATTORNEY
Name: Melynda Cook-Reich
Repper, Pagan, Cook Ltd.
1501 First Avenue
Middletown, OH 45044
513-424-1823; Fax (513) 424-3135

**CINDY CARPENTER**      **CLERK OF COURTS**

IMAGED

2008 AUG 22 PM 12: 37

CINDY CARPENTER
BUTLER COUNTY
CLERK OF COURTS

**WITNESS INFORMATION**

NAME: Mark Lovett
ADDRESS: ███████
CITY:      Middletown      STATE: OH      ZIP: 45044

Today's Date:      August 22, 2008      Case No.: CR 1983-12-0614

Plaintiff: State of Ohio     vs.      Defendant: Von Clark Davis

**PRAECIPE FOR SUBPOENA**
**Criminal- Hearing**
**COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**

TYPE OF SERVICE:

_____Certified Mail        _____Personal Service by Butler County Sheriff

\_XX\_ Appointed Process Server     _____ Foreign County Sheriff

_____Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio
45011 as follows:
     **DATE: August 27and 28, 2008**        **TIME: 9:00 a.m. both days**
                                                 **released by Attorney**

     **JUDGE: Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

                         REQUESTING ATTORNEY
                         Name: Melynda Cook-Reich
                         Repper, Pagan, Cook Ltd.
                         1501 First Avenue
                         Middletown, OH 45044
                         513-424-1823; Fax (513) 424-3135

**CINDY CARPENTER**          **CLERK OF COURTS**

**WITNESS INFORMATION**

NAME:  Mona Aldridge-Bryant
ADDRESS: ███████████
CITY:        Middletown                    STATE: OH          ZIP:  45044

Today's Date:          August 22, 2008          Case No.: CR 1983-12-0614

Plaintiff:  State of Ohio          vs.          Defendant:  Von Clark Davis

**PRAECIPE FOR SUBPOENA**
**Criminal- Hearing**
**COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**

TYPE OF SERVICE:

_____Certified Mail                    _____Personal Service by Butler County Sheriff

__XX_ Appointed Process Server          _____ Foreign County Sheriff

_____Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio
45011 as follows:
      **DATE:  August 27and 28, 2008**          **TIME: 9:00 a.m. both days**
                                                              **released by Attorney**

      **JUDGE:  Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

                              REQUESTING ATTORNEY
                              Name:  Melynda Cook-Reich
                              Repper, Pagan, Cook Ltd.
                              1501 First Avenue
                              Middletown, OH 45044
                              513-424-1823; Fax (513) 424-3135

**CINDY CARPENTER**     **CLERK OF COURTS**

2008 AUG 22 PM 12: 37

**WITNESS INFORMATION**

CI. . . CARPEN
BUTLER COUNTY
CLERK OF COURTS

NAME: Ronnie D. Williams
ADDRESS: ████████████
CITY:      Hamilton          STATE: OH       ZIP: 45013

Today's Date:      August 22, 2008      Case No.: CR 1983-12-0614

Plaintiff: State of Ohio      vs.      Defendant: Von Clark Davis

**PRAECIPE FOR SUBPOENA**
**Criminal- Hearing**
**COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**

TYPE OF SERVICE:

_____Certified Mail          _____Personal Service by Butler County Sheriff

__XX__ Appointed Process Server      _____ Foreign County Sheriff

_____Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio
45011 as follows:
         **DATE: August 27and 28, 2008**          **TIME: 9:00 a.m. both days**
                                                                      **released by Attorney**

         **JUDGE: Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

                              REQUESTING ATTORNEY
                              Name: Melynda Cook-Reich
                              Repper, Pagan, Cook Ltd.
                              1501 First Avenue
                              Middletown, OH 45044
                              513-424-1823; Fax (513) 424-3135



## CINDY CARPENTER        CLERK OF COURTS

**WITNESS INFORMATION**                        2008 AUG 22  PH 12: 37

NAME:  Wade Coleman
ADDRESS: ████████
CITY:        Hamilton              STATE: OH        ZIP:  45011

Today's Date:        August 22, 2008        Case No.: CR 1983-12-0614

Plaintiff:  State of Ohio        vs.        Defendant:  Von Clark Davis

### PRAECIPE FOR SUBPOENA
### Criminal- Hearing
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

_____Certified Mail                _____Personal Service by Butler County Sheriff

\_\_XX\_ Appointed Process Server        _____  Foreign County Sheriff

_____Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 3rd Floor, 315 High Street, Hamilton, Ohio
45011 as follows:
      **DATE:  August 27and 28, 2008**                **TIME: 9:00 a.m. both days**
                                                **released by Attorney**


      **JUDGE:  Nastoff**


THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

                        REQUESTING ATTORNEY
                        Name:  Melynda Cook-Reich
                        Repper, Pagan, Cook Ltd.
                        1501 First Avenue
                        Middletown, OH 45044
                        513-424-1823; Fax (513) 424-3135

IMAGED

**CINDY CARPENTER**       **CLERK OF COURTS**

**WITNESS INFORMATION**

2008 AUG 22  PM 12: 3&

CINDY CARPENTER
BUTLER COUNTY
CLERK OF COURTS

NAME:  Records Clerk
ADDRESS:  Hamilton Police Department
            331 S. Front St.

CITY:       Hamilton              STATE: OH        ZIP:  45011

Today's Date:       August 22, 2008      Case No.: CR 1983-12-0614

Plaintiff:  State of Ohio      vs.       Defendant:  Von Clark Davis

### PRAECIPE FOR SUBPOENA
### Criminal-Hearing and Duces Tecum
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

_____Certified Mail                   _____Personal Service by Butler County Sheriff

__XX__ Appointed Process Server      _____ Foreign County Sheriff

_____Attorney Service

The above named Witness is commanded to appear in the Common Pleas Court of Butler
County, Ohio at the Government Services Center, 4th Floor, 315 High Street, Hamilton, Ohio
45011 as follows:
    **DATE:  August 27 and 28, 2008      TIME: 9:00 a.m. each day**
                                               **until released by attorney.**

    **JUDGE:  Nastoff**

THE WITNESS IS ORDERED TO BRING THE FOLLOWING DOCUMENTS:

**See Attachment, Exhibit A, as to the specific documents that are to be provided.**

                      REQUESTING ATTORNEY
                      Name:  Melynda Cook-Reich
                      Repper, Pagan, Cook Ltd.
                      1501 First Avenue
                      Middletown, OH 45044
                      513-424-1823; Fax (513) 424-3135

## **EXHIBIT A**

TO:   Records Custodian,
          Hamilton Police Department
          331 S. Front Street
          Hamilton, Ohio 45011

1.    The term "Document" when used herein, shall have the same meaning as defined in rule 34 of the Federal Rules of Civil Procedure, including all originals of any nature whatsoever, identical copies and all non-identical copies thereof pertaining to any medium upon which intelligence or information is recorded in your possession, custody, or control regardless of where located; including, without limiting the generality of the foregoing, punch cards, print-out sheets, video or movie film, slides, phonographs, records, photographs, microfilm, notes, letters, memoranda, ledgers, work sheets, books, magazines, notebooks, diaries, calendars, appointment books, registers, charts, tables, papers, agreements, contracts, purchase orders, acknowledgments, invoices, authorizations, budgets, analyses, projections, transcripts, minutes of meetings of any kind, correspondence, telegrams, drafts, data processing discs or tapes, and computer produced interpretations thereof, x-rays, instructions, announcements, schedules, price lists, and mechanical or electrical sound recordings and transcripts thereof.

2.    The term "relating to" when used herein, means any document that constitutes, contains, embodies, reflects, identifies, states, refers to, or is in any way relevant to that given subject.

## DOCUMENTS TO BE PRODUCED

1.    All documents relating to any pretrial identification procedure(s) used in the course of the investigation of the homicide of Suzette Butler that occurred on December 12, 1983 in Hamilton, Ohio. The term pretrial identifications includes, but is not limited to, photograph arrays (regardless of the number of photographs employed), line ups, and stand ups.

2.    All documents relating to office policies, and training relating to pretrial identification procedures that were in existence in December 12, 1983 in the Hamilton Police Department.

3.    All documents relating to any statement provided by any individual who witnessed any of the events surrounding the homicide of Suzette Butler that occurred December 12, 1983 in Hamilton, Ohio.

STATE OF OHIO

       Plaintiff

vs.

VON CLARK DAVIS

       Defendant

:   CASE NO.  CR1983-12-0614

:

:   STATE OF OHIO, COUNTY OF BUTLER
    COURT OF COMMON PLEAS
:   (Nastoff, J.)

:

:   <u>STATE'S SUPPLEMENTAL AUTHORITY
    FOR MOTION 'C':</u>

:

: : : : : : : : : : : :

    Now comes the Prosecuting Attorney, and submits the following as supplemental authority in the foregoing case:

<u>State v. Bethel</u>, Franklin App. No. 07-AP-810, 2008-Ohio-2697, ¶¶61-62.

<u>Jackson v. Houk</u> (May 1, 2008), 2008 WL 1946790, *76, (N.D. Ohio)

                         Respectfully submitted,
                         **ROBIN N. PIPER**  (0023205)
                         Butler County Prosecuting Attorney

                         **DANIEL G. EICHEL**  (0008259)
                         **First Assistant Prosecuting Attorney**
                         Government Services Center
                         315 High Street, 11th Floor
                         Hamilton, Ohio 45012-0515
                         Telephone: (513) 887-3474

                         **MICHAEL A. OSTER, JR.** (0076491)
                         Chief, Appellate Division

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

1

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of August, 2008.

MICHAEL A. OSTER, JR. (0076491)
Chief, Appellate Division

2

COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO                                    CASE NO. CR1983-12-0614

    Plaintiff                                NASTOFF, J.

vs.                                              ENTRY FOR TRANSPORT

VON CLARK DAVIS                                  August 27, 2008

    Defendant

It appears to the Court that **Von Clark Davis**, Inmate No. **A179828**, is confined at the **Ohio State Penitentiary**, Youngstown, Ohio.

It further appears to the Court that a **Motion Hearing** in the above captioned matter is set for **August 27, 2008 at 9:00AM** in the Butler County Court of Common Pleas, before the **Honorable Nastoff**.

**IT IS THEREFORE, ORDERED** that the Warden of the **Ohio State Penitentiary** cause said defendant to be released to the Sheriff of Butler County, Ohio, for the purpose of attending said hearing in Butler County, Ohio, and said defendant shall be held in the custody of the Sheriff of Butler County, Ohio, until the completion of said hearing and upon the completion of said hearing, said defendant shall be returned to the institution unless otherwise Ordered by this Court.

APPROVED AS TO FORM:                    ENTER

**ROBIN PIPER**
**PROSECUTING ATTORNEY**
**BUTLER COUNTY, OHIO**

    for     NASTOFF, J.

**INSTRUCTIONS TO THE CLERK:** PLEASE CERTIFY TWO COPIES

MO/beg
August 25, 2008



237

IMAGED

| STATE OF OHIO | ꓤED : | CASE NO. CR1983-12-0614 |

Plaintiff  '09 AUG 25  PM 4: 23

vs.

**VON CLARK DAVIS**

Defendant

STATE OF OHIO, COUNTY OF BUTLER
COURT OF COMMON PLEAS
(Nastoff, J.)

**STATE'S NOTICE OF ADDITIONAL
AUTHORITY RE: DEFENDANT'S
MOTIONS F, G, I, J, K, & L**

: : : : : : : : :

Now comes the Prosecuting Attorney, and in opposition to the Defendant's motions which seek

rulings outside the scope of the remand solely for resentencing, and contrary to the law of the case

doctrine and doctrine of res judicata, cites the following as additional authority: *State v. Pieciuk*

Butler App. No. CA2007-04-086, 2008-Ohio-4054 at ¶¶14-15 (decided Aug. 11, 2008, attached).

Respectfully submitted,

**ROBIN N. PIPER  (0023205)
Butler County Prosecuting Attorney**

**DANIEL G. EICHEL  (0008259)
Assistant Prosecuting Attorney**

**MICHAEL A. OSTER, JR.  (0076491)
Assistant Prosecuting Attorney**
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been sent by ordinary U.S. mail to Attorneys
for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda
W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this 25th day of August, 2008.

**DANIEL G. EICHEL  (0008259)
Assistant Prosecuting Attorney**

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST.– 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1

253

Westlaw.

Slip Copy                                                                                                     Page 1
Slip Copy, 2008 WL 3271988 (Ohio App. 12 Dist.), 2008 -Ohio- 4054

State v. Piesciuk
Ohio App. 12 Dist.,2008.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio,Twelfth District, Butler
County.
STATE of Ohio, Plaintiff-Appellee,
v.
Joe PIESCIUK, Defendant-Appellant.
No. CA2007-04-086.

Decided Aug. 11, 2008.

Criminal Appeal from Butler County Court Of
Common Pleas, Case No. CR2003-03-0387.

Robin N. Piper, Butler County Prosecuting Attor-
ney, Gloria J. Sigman, Hamilton, OH, for plaintiff-
appellee.
Joe Piesciuk, Mansfield, OH, defendant-appellant,
pro se.

WALTERS, J.
*1 {¶ 1} Defendant-Appellant, Joseph Piesciuk, ap-
peals a judgment of the Butler County Common
Pleas Court sentencing him to 21 years in prison
and ordering him to pay restitution to various indi-
viduals in the amount of $132,734. Piesciuk asserts
that the trial court erred in his original trial, that it
failed to rule on his pre-sentence motions, that the
restitution order was not supported by sufficient
evidence, that his trial counsel was ineffective, and
that his due process rights were violated by failure
to make full disclosure of the victim impact state-
ment. We find that the claims relating to matters
prior to the resentencing are barred by res judicata,
that his due process rights were not violated; how-
ever we find that the restitution order as to the
victim, Ms. Bierley, was calculated incorrectly.
Therefore, we modify the judgment of the trial
court as to the amount of the Bierly restitution, and

enter judgment on the correct amount as reflected
by the record.

{¶ 2} Piesciuk was originally indicted on multiple
counts in connection with his role as president of
the Original Home Improvement Center ("OHI"), a
remodeling company located in Middletown, Ohio.
The indictment charged that, on or about April 1,
2000 through November 1, 2000, Piesciuk used his
company to take money from multiple homeowners
by securing numerous remodeling projects, and
then failing to commence the project, or failing to
perform the services as promised. He left projects
incomplete, and did not refund any of the custom-
ers' monies. Other criminal charges related to his
failure to pay subcontractors for work performed on
certain construction projects during the same peri-
od.

{¶ 3} A jury found Piesciuk guilty of 13 counts of
theft by deception, eight counts of money launder-
ing, and one count of engaging in a pattern of cor-
rupt activity. The trial court sentenced Piesciuk to
21 years in prison, and ordered restitution.

{¶ 4} Piesciuk appealed this conviction and sen-
tence. We affirmed the conviction and sentence, but
reversed and remanded part of the restitution order,
finding that the amounts ordered were not suppor-
ted by sufficient evidence with regard to four vic-
tims. See *State v. Piesciuk*, Butler App. No.
CA2004-03-055, 2005-Ohio-5767. Thereafter, our
decision as to Piesciuk's sentencing was reversed,
and this case was remanded by the Ohio Supreme
Court for resentencing pursuant to their decision in
*State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.
See *In re Ohio Criminal Sentencing Statutes Cases*,
109 Ohio St.3d 313, 2006-Ohio-2109.

{¶ 5} Piesciuk was re-sentenced on March 13, 2007
pursuant to these two remands, and the trial court
sentenced Piesciuk to the same 21-year prison sen-
tence and ordered restitution to three of the four
victims whose restitution orders had been previ-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4327

Slip Copy                                                                                                      Page 2
Slip Copy, 2008 WL 3271988 (Ohio App. 12 Dist.), 2008 -Ohio- 4054

ously reversed, in the total amount of $86,660.92. It is from this judgment that Piesciuk now appeals, asserting seven assignments of error for our review, which we will address out of the order presented for clarity.

*2 {¶ 6} First Assignment of Error:

{¶ 7} "THE COURT COMMITTED PREJUDICIAL AND PLAIN ERROR BY NOT DISMISSING THE CHARGES RELATED TO COUNTS 23 AND 24."

{¶ 8} Fifth Assignment of Error:

{¶ 9} "DEFENDANT/APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED HIS MOTION TO PROVIDE PUBLIC RECORDS."

{¶ 10} Sixth Assignment of Error:

{¶ 11} "THE COURT IMPROPERLY CONSIDERED INFORMATION IN APPELLANT'S PSI, OBJECTED TO AND FORMERLY POINTED OUT IN A MOTION TO CLARIFY AND CORRECT."

{¶ 12} In these assignments, Piesciuk argues that his original conviction on counts 23 and 24 of the indictment were not supported by sufficient evidence, that the trial court erred in denying his motion for discovery of certain matters, and that he was denied his due process rights by denying his motion to clarify filed prior to his original sentence.

{¶ 13} Piesciuk challenged the sufficiency of the evidence relating to his conviction on counts 23 and 24, being two counts of theft by deception in his first assignment of error in his original merit appeal. Additionally, in both his third and fourth assignments of error in the original appeal, Piesciuk challenged the trial court's reliance on disputed evidence contained in the PSI report. Finally, while it was not raised in his merit appeal, Piesciuk had the opportunity to and failed to challenge the trial court's pre-trial and pre-sentence rulings on discov-

ery of certain matters. *Piesciuk,* 2005-Ohio-5767.

{¶ 14} Initially, we note that the doctrine of res judicata prevents this court from reopening or reconsidering the issues from Piesciuk's original appeal. Errors of law, that were either previously raised or could have been raised through an appeal, may be barred from further review based upon the operation of res judicata. See, generally, *State v. Perry* (1967), 10 Ohio St.2d 175; *State v. Saxon,* 109 Ohio St.3d 176, 2006-Ohio-1245, at ¶ 17. As the Supreme Court explained, "res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which defendant already received a full or fair opportunity to be heard." *Id.* at ¶ 18.

{¶ 15} Based upon the remands from the Ohio Supreme Court and this court, the only issues open at the resentencing were the sentences themselves, pursuant to *Foster,* and the restitution orders involving only the victims; Rose, Kramer, Bierley and Miller.

{¶ 16} While Piesciuk fails to make it clear in his brief, the fifth assignment of error may also be directed to his motions requesting the state to provide certain public records allegedly in the possession of the Prosecuting Attorney and the Ohio Attorney General, filed after the remands and prior to his resentencing. The trial court overruled these motions without explanation on February 23, 2007.

{¶ 17} However, "[I]n the criminal proceeding itself, a defendant may use only Crim.R. 16 to obtain discovery." *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, paragraph two of the syllabus. Therefore, the trial court did not err in overruling Piesciuk's pre-sentence motion to provide public records.

*3 {¶ 18} Piesciuk's first, fifth and sixth assignments of error are overruled.

{¶ 19} Second Assignment of Error:

{¶ 20} "THE COURT COMMITTED PREJUDI-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4328

CIAL AND PLAIN ERROR BY NOT RULING ON ALL MOTIONS FILED BY DEFENDANT PRIOR TO OR DURING THE SENTENCING HEARING OF [MARCH 13, 2007]."

{¶ 21} In this assignment of error, Piesciuk summarily states that the trial court committed prejudicial error by failing to rule on all motions filed prior to his resentencing hearing on March 13, 2007. Piesciuk fails to denominate those motions that he claims the trial court failed to rule upon and fails to explain how such failure prejudiced him.

{¶ 22} A review of the docket in this case shows that Piesciuk filed three motions seeking to have the state provide him with certain public records allegedly in the possession of the Prosecuting Attorney and the Ohio Attorney General. These motions were filed pro se on June 6, 2006, June 7, 2006, and by counsel on October 23, 2006. The trial court overruled these motions by judgment entry filed on February 23, 2007.

{¶ 23} Piesciuk filed, through counsel, a motion for discovery of the Victim Impact Statement on October 26, 2006. The trial court overruled this motion by judgment entry on February 23, 2007.

{¶ 24} Piesciuk filed pro se motions for a psychological examination prior to sentencing on June 6 and June 7, 2006. The trial court, by judgment entry, ordered that these motions be withdrawn at defendant's request on February 23, 2007.

{¶ 25} On March 13, 2007, the day of sentencing, Piesciuk filed a motion seeking the court to adopt a plan of restitution submitted by him. At the sentencing hearing, the trial court expressly addressed this motion and stated that "the court is not going to adopt your restitution plan. It smacks of a civil plan, and it seems to continue to perpetuate your continuing position that this is not a criminal case despite the evidence and despite the findings of a jury in this matter."While the trial court's ruling has not been formally journalized, the court's ruling was expressed to Piesciuk at sentencing, and he cannot

thereby be prejudiced by the failure to journalize such ruling.

{¶ 26} Also, on the day of sentencing, Piesciuk again challenged the facts contained in the original PSI by filing a motion to correct and clarify the PSI. This issue was addressed at both the original sentencing and by this court in Piesciuk's merit appeal. Because the PSI existed at the time of Piesciuk's original sentencing, any further challenge of the PSI at his resentencing would be barred by the principles of res judicata, addressed in our discussion of his first, fifth and sixth assignments of error. Additionally, the trial court, at the resentencing, went through all of the disputed matters, and indicated that it would accept Piesciuk's version of the offenses for the purposes of the sentencing. There is no prejudice in the trial court's failing to rule on this issue.

*4 {¶ 27} Finally, on June 6 and June 7, 2006, Piesciuk filed pro se motions seeking a jury determination of facts at sentencing. On October 26, 2007, counsel filed on Piesciuk's behalf, a motion seeking both a jury determination of facts at sentencing and that Piesciuk be sentenced in conformity with the law in existence at the time of the commission of the offense. These appear to be the only other motions that the trial court failed to address either on the record or by judgment entry.

{¶ 28} It is well accepted that a motion that is still pending at the time of the final disposition of a case is presumed to have been denied, and the mere failure to rule is harmless error. See *State ex rel. Cassels v. Dayton City School Dist. Bd of Edn.*, 69 Ohio St.3d 217, 223, 1994-Ohio-92. Furthermore, there was a colloquy on the record at the sentencing that these late motions had not been presented to the court, and some had not even been filed prior to the commencement of the sentencing. Additionally, the trial court's procedure at the resentencing hearing makes it obvious that it intended to overrule, or would have overruled these motions had they been presented in a timely fashion.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 3271988 (Ohio App. 12 Dist.), 2008 -Ohio- 4054

Page 4

{¶ 29} Piesciuk's second assignment of error is overruled.

{¶ 30} Fourth Assignment of Error:

{¶ 31} "DEFENDANT/APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT GIVEN THE OPPORTUNITY TO RE-VIEW, REBUT, AND EXPLAIN THE ENTIRE BODY OF INFORMATION CONTAINED IN THE VICTIM IMPACT STATEMENT."

{¶ 32} In this assignment, Piesciuk argues that the trial court erred in denying his motions seeking dis-closure of the victim impact statement. R.C. 2947.051(C) provides that "the court may furnish copies of the [victim impact] statement to both the defendant or the defendant's counsel and the pro-secuting attorney." It is therefore, within the trial court's discretion whether to make a victim impact statement available to a defendant. *State v. Bayless* (1982), 4 Ohio App.3d 301.

{¶ 33} The only case in support of his proposition, cited by Piesciuk, is *Stewart v. Erwin* (C.A.6, 2007), 503 F.3d 488. As explained in *Stewart,* "there is no clearly established federal con-stitutional right to full disclosure of all information used by a trial judge in determining a defendant's sentence." Nonetheless, we recognize, as did the Sixth Circuit, that there is a clearly established fed-eral due process protection against a trial court's re-liance on materially false information at sentencing. Unlike in *Stewart,* however, we find no evidence that this sort of due process violation might have occurred here, where there is no indication that the trial court relied on the victim impact statement in making its restitution order as to the victims subject to the remand, nor that any information contained in the victim impact statement was materially false. Consequently, Piesciuk has failed to demonstrate any error in this regard.

*5 {¶ 34} Piesciuk's fourth assignment of error is overruled.

{¶ 35} Seventh Assignment of Error:

{¶ 36} "APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO CONVEY A PLEA OFFER FROM THE STATE ."

{¶ 37} In this assignment, Piesciuk argues that he was never advised of a pre-trial plea offer and that he did not become aware that such an offer had been made until his counsel stated the same at the resentencing hearing.

{¶ 38} This court has previously held that "[a] de-fense attorney's failure to notify his client of a pro-secutor's plea offer constitutes ineffective assist-ance of counsel * * * and satisfies the deficient per-formance prong of the Strickland test." *State v. Hicks,* Butler App. No. CA2002-08-198, 2003-Ohio-7210, ¶ 14. However, there are multiple reasons why this assignment of error is meritless.

{¶ 39} First, this claim is raised for the first time in the Court of Appeals. In order to be cognizable in this court, the issue must first be raised in the trial court. See generally: *State v. Longworth,* Clark App. No.2001-CA-39, 2002-Ohio-4115;*Akron v. Callaway,* 162 Ohio App.3d 781, 2005-Ohio-4095;*State v. Awan* (1986), 22 Ohio St.3d 120.

{¶ 40} Second, the record does not support this claim. The only evidence that there was a failure to communicate a plea offer to Piesciuk comes from his gratuitous, unsworn statement contained in his appellate brief. And there is no evidence that any such plea offer had previously been made. Any claim not supported by the record must be over-ruled by the Court of Appeals. See *State v. Golden,* Paulding App. No. 11-08-03, 2008-Ohio-3227;*State v. Brooks,* Summit App. No. 23237, 2007-Ohio-1424.

{¶ 41} Third, this claim relates to pretrial matters, not to the sole issues addressed at the resentencing hearing. As explained previously, the doctrine of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4330

res judicata prevents this court from reopening or reconsidering the issues from Piesciuk's original appeal. Errors of law, that were either previously raised or could have been raised through an appeal, may be barred from further review based upon the operation of res judicata. See, generally, *Perry, Saxon.* The record fails to demonstrate that Piesciuk was not, nor could not have been aware of this issue at the time of his initial appeal.

{¶ 42} Finally, even if Piesciuk's trial counsel's performance was deficient, he has failed to show that he was prejudiced as a result. To establish prejudice, Piesciuk must show that he would have accepted the plea offer had it been communicated to him. He has failed to do so, and the record fails to demonstrate that. See *Haley v. United States* (C.A.6, 2001), 3 Fed. Appx. 426, certiorari denied, 534 U.S. 1031, 122 S.Ct. 568.

{¶ 43} Third Assignment of Error:

{¶ 44} "THE COURT COMMITTED PREJUDICIAL AND PLAIN ERROR WHEN IT ORDERED RESTITUTION TO THE MILLERS IN THE AMOUNT OF $59,582.93 [sic] AND TO THE BIERLY'S [sic] IN THE AMOUNT OF $24,037.00 ON REMAND."

*6 {¶ 45} In this assignment, Piesciuk argues that the evidence was insufficient to establish the economic loss sustained by the Millers and the Bierleys as a result of his commission of the felony offenses of theft by deception. The record must contain sufficient evidence for the court to ascertain the amount of restitution to a reasonable degree of certainty. *State v. Williams,* Butler App. No. CA2002-09-214, 2003-Ohio-4453, ¶ 31.

{¶ 46} Initially we note that the trial court accepted our previous finding that the evidence did not establish that any restitution was due to victim Rose as previously ordered. The trial court expressly so found at the resentencing.

{¶ 47} With regards to the Miller restitution, the re-

cord establishes that the Millers paid Piesciuk $99,200 toward the total contract price of $125,000 and that at the time of their last payment, the contract was 30 percent complete. Therefore, the value received by the Millers at that point was $37,500. After the payment of those amounts, the only work completed by Piesciuk was some masonry work that he subcontracted. The cost of the materials and labor for this masonry work was $2,197.07. Therefore, the evidence before the trial court demonstrates that the economic loss suffered by the Millers was $59,502.93. This is the amount that the court ordered at resentencing.

{¶ 48} In Bierley's case, Ms. Bierley testified at the original sentencing to various numbers. She claimed that it had cost her over $25,000 to complete the garage, but that there was still $6,641 that she would have owed Piesciuk pursuant to the contract. And she claimed that she had $5,078.90 in mechanics' liens on her house, presumably the result of Piesciuk's failure to pay subcontractors. At the resentencing, the prosecutor referenced the prior sentencing transcript where she testified to the cost of at least $25,000. From that $25,000 figure, he deducted the balance due on the contract, $6,641, and added two mechanics' liens, totaling $5,078, demonstrating a restitution figure of what he claimed to be $24,037. This is the amount that the trial court ordered.

{¶ 49} However, the arithmetic used by the prosecuting attorney appears to be incorrect. Using his figures, the economic loss suffered by Ms. Bierley would be $23,437, a difference of $600. These numbers used are substantiated by the record and the documents in evidence at the resentencing hearing. Because the restitution amount of $24,037 is not supported by the record, we have no choice but to sustain the third assignment of error in this regard.

{¶ 50} Because the error in the calculation of the Bierley restitution appears to be only mathematical, and because it is apparent that the trial court intended to order the proper amount based upon the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 3271988 (Ohio App. 12 Dist.), 2008 -Ohio- 4054

Page 6

evidence before it, namely $23,437, and because that amount is supported by the record, we will enter judgment for that amount of restitution rather than remanding the matter yet again to the trial court.

*7 {¶ 51} The third assignment of error is sustained only as to the aforementioned victim and to the extent outlined above. The remaining portions of this assignment of error are overruled.

{¶ 52} For the foregoing reasons, the sentence is affirmed, and the order of restitution in Piesciuk's sentence is modified to reflect the proper $23,437 amount of restitution due the victim, Ms. Bierley.

{¶ 53} Judgment affirmed as modified.

WALSH, P.J. and POWELL, J., concur.
WALTERS, J., retired, of the Third Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
Ohio App. 12 Dist.,2008.
State v. Piesciuk
Slip Copy, 2008 WL 3271988 (Ohio App. 12 Dist.), 2008 -Ohio- 4054

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4332



IMAGED

**CINDY CARPENTER**        **CLERK OF COURTS**

---

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

Date:    August 22, 2008            Case No. : CR 1983 12 0614

STATE OF OHIO VS VON CLARK DAVIS

---

### SUBPOENA SERVED BY PROCESS SERVER
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County Court of Common Pleas.

Please serve upon the following party:

       WADE COLEMAN

       ███████████

       HAMILTON, OH 45011

CINDY CARPENTER
Butler County Clerk of Courts

By:Rebecca Fleenor
Deputy Clerk

---

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on   8 / 23 , 20 0 8 .   Mileage _____
2. This subpoena was unable to be served for the following reasons:

_____    Return and Service _____

SIGNATURE:   *Jason ___ V.P.*     TOTAL FEES   $ _____
Process Server
Address:   *THPI Inc.*
C000059534

---

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

IMAGED

 **CINDY CARPENTER**  **CLERK OF COURTS**

---

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

---

Date:   August 22, 2008                                   Case No. : CR 1983 12 0614
                        STATE OF OHIO VS VON CLARK DAVIS

---

### SUBPOENA SERVED BY PROCESS SERVER
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County Court of Common Pleas.

Please serve upon the following party:

> HAMILTON POLICE DEPT
> CUSTODIAN OF RECORDS
> 331 SOUTH FRONT ST
> HAMILTON, OH 45011

**CINDY CARPENTER**
Butler County Clerk of Courts

By: Rebecca Fleenor
Deputy Clerk

---

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on ___ 8/23 ___, 2008 .  Mileage _____
2. This subpoena was unable to be served for the following reasons:

                                                          Return and Service _____

SIGNATURE: _____ V.P.          TOTAL FEES   $ _____
Process Server
Address:
C000059533

---

GOVERNMENT SERVICES CENTER  ●  315 HIGH STREET  ●  SUITE 550  ●  HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

IMAGED

CINDY CARPENTER  CLERK OF COURTS

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

Date:   August 22, 2008                    Case No. : CR 1983 12 0614
                        STATE OF OHIO VS VON CLARK DAVIS

SUBPOENA SERVED BY PROCESS SERVER
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County Court of Common Pleas.

Please serve upon the following party:

  MONA ALDRIDGE BRYANT

  ▉▉▉▉▉▉▉
  MIDDLETOWN, OH 45044

CINDY CARPENTER
Butler County Clerk of Courts

By: Rebecca Fleenor
Deputy Clerk

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on ____8/ 23____ , 20_08_ .     Mileage
2. This subpoena was unable to be served for the following reasons:     Return and Service

SIGNATURE:_____ V.P.           TOTAL FEES    $ _____
Process Server
Address:_____ THBF INC.
C000059536

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org



IMAGED

**CINDY CARPENTER**                              **CLERK OF COURTS**

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

Date:    August 22, 2008                     Case No. : CR 1983 12 0614
                         STATE OF OHIO VS VON CLARK DAVIS

### SUBPOENA SERVED BY PROCESS SERVER
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County
Court of Common Pleas.

Please serve upon the following party:

        MARK LOVETT
        ▬▬▬▬▬▬▬▬▬▬▬
        MIDDLETOWN, OH 45044

**CINDY CARPENTER**
Butler County Clerk of Courts


By: Rebecca Fleenor
Deputy Clerk

---

              EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on ___8/23___, 20__.      Mileage _____
2. This subpoena was unable to be served for the following reasons:

_____          Return and Service _____

SIGNATURE: _____          TOTAL FEES   $ _____
Process Server
Address: _____
C000059537

---

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

                BUTLER COUNTY CLERK OF COURTS
                     www.butlercountyclerk.org

IMAGED



CINDY CARPENTER     CLERK OF COURTS

---

*PROCESS SERVER'S SUBPOENA COPY:   JASON QUILAN*

---

Date:   August 22, 2008        Case No. : CR 1983 12 0614
                STATE OF OHIO VS VON CLARK DAVIS

---

## SUBPOENA SERVED BY PROCESS SERVER
## COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County Court of Common Pleas.

Please serve upon the following party:

      IODAWNA SOUTHERN MCCREARY

      ███████████████
      CINCINNATI, OH 45231

CINDY CARPENTER
Butler County Clerk of Courts

By:Rebecca Fleenor
Deputy Clerk

---

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on   8/23  , 20 08 .   Mileage _____
2. This subpoena was unable to be served for the following reasons:

_____    Return and Service _____

SIGNATURE: _____ V.P.      TOTAL FEES   $ _____
Process Server
Address: _____
C000059539

---

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

IMAGED

 

**CINDY CARPENTER**                                                    **CLERK OF COURTS**

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

Date:    August 22, 2008                              Case No. : CR 1983 12 0614
                              STATE OF OHIO VS VON CLARK DAVIS

SUBPOENA SERVED BY PROCESS SERVER
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County
Court of Common Pleas.

Please serve upon the following party:

REGINALD DENMARK
███████████████
CINCINNATI, OH 45214

CINDY CARPENTER
Butler County Clerk of Courts

By: Rebecca Fleenor
Deputy Clerk

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on _____ 8/23 ___, 20 _08_    Mileage _____
2. This subpoena was unable to be served for the following reasons:

                                                      Return and Service _____
_____

SIGNATURE: _____ V.P.          TOTAL FEES   $ _____
Process Server
Address: _____
C000059540

GOVERNMENT SERVICES CENTER  ●  315 HIGH STREET  ●  SUITE 550  ●  HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

IMAGED

 **CINDY CARPENTER**  **CLERK OF COURTS**

---

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

---

Date:    August 22, 2008                    Case No. : CR 1983 12 0614

STATE OF OHIO VS VON CLARK DAVIS

---

### SUBPOENA SERVED BY PROCESS SERVER
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County
Court of Common Pleas.

Please serve upon the following party:

> **RONNIE D WILLIAMS**
>
> HAMILTON, OH 45013

**CINDY CARPENTER**
Butler County Clerk of Courts


By:Rebecca Fleenor
Deputy Clerk

---

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on ___8/24___, 20_08_,   Mileage _____
2. This subpoena was unable to be served for the following reasons:

                                                      Return and Service _____
_____

SIGNATURE: _____   TOTAL FEES $ _____
Process Server
Address:
C000059535

---

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org



**CINDY CARPENTER**    IMAGED    **CLERK OF COURTS**

*PROCESS SERVER'S SUBPOENA COPY: JASON QUILAN*

Date:    August 22, 2008                          Case No. : CR 1983 12 0614
                    STATE OF OHIO VS VON CLARK DAVIS

SUBPOENA SERVED BY PROCESS SERVER
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

To the Special Process Server: You are directed to serve the attached subpoena issued by the Butler County
Court of Common Pleas.

Please serve upon the following party:

COZETTA MASSEY DENMARK ████████

CINTI, OH 45204

CINDY CARPENTER
Butler County Clerk of Courts

By: Rebecca Fleenor
Deputy Clerk

EXECUTION OF SERVICE BY SPECIAL PROCESS SERVER

1. This subpoena was served on ____8/23____, 20 08 .  Mileage _____
2. This subpoena was unable to be served for the following reasons:

_____    Return and Service _____

SIGNATURE: _____    V. P.    TOTAL FEES  $ _____
Process Server                 HPI Inc.
Address:
C000059538

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org



**CINDY CARPENTER**  **CLERK OF COURTS** 8 AUG 27 AM 9: 28

BUTLER COUNTY
CLERK OF COURTS

*WITNESS SUBPOENA COPY:*
**JODAWNA SOUTHERN MCCREA**MAGED

**CINCINNATI, OH 45231**

Date: August 22, 2008        Case No.: CR 1983 12 0614
STATE OF OHIO VS VON CLARK DAVIS

### SUBPOENA SERVED BY PROCESS SERVER
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SUBPOENA: CRIMINAL

To the above named Witness: You are hereby commanded to appear in the Common Pleas Court of Butler
County Ohio at the Government Services Center, 315 High Street, 3RD Floor, Hamilton, Ohio 45011.

DATE:      AUGUST 27 AND 28, 2008      TIME:    9:00 AM EACH DAY
                                                       UNTIL RELEASED BY
                                                       ATTORNEY

JUDGE: NASTOFF

You are required to attend and give testimony on behalf of the plaintiff/defendant in the above captioned
case under penalty of law.

To apply for payment for your services as a witness after testimony, bring this subpoena to the office of the
Butler County Clerk of Courts.

CINDY CARPENTER                      REQUESTING ATTORNEY:
Butler County Clerk of Courts            NAME: MELYNDA COOK REICH
                                           ADDRESS: 1501 FIRST AVE
                                           CITY& STATE: MIDDLETOWN, OH
                                           ZIP: 45044
                                           PHONE: (513) 424-1823

By: Rebecca Fleenor
Deputy Clerk

WITNESS CERTIFICATION
I attest that I appeared to give testimony in the above captioned case. I was present in the Court of Common Pleas for   1   days.
As an out of county witness, I traveled   18   miles from the city of   CINCINNATI   in the
State OHIO

SIGNATURE: _____
            Witness

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4341

IMAGED

**COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

STATE OF OHIO                    2008 AUG 27  AM 11:39  Case No. CR _83-12-0614_

    Plaintiff                                              : Judge _Nastoff_

vs.

_Von Clark Davis_                    : **PRETRIAL ORDER**

    Defendant(s)                         :
                                               ******************

This matter came before this Court this _27th_ day of _August_, 20_08_,

and the following orders and deadlines were established, and shall be the order of the Court:

_____    PLEA or TRIAL SETTING is set for _____ at _____ m.

_____    DISPOSITION is set for _____ at _____ m.

_____    TRIAL is to commence on _____ at _____ m.

___✓___    MOTION _on standing to challenge lethal injection 9/17/08_ shall be filed by

    and shall be heard on _10/10/08  1hr._ at _1:30_ m.

_____    OTHER HEARING is set for _____ at _____ m.

_____    BILL OF PARTICULARS

    Defendant's motion to be filed by _____

    Prosecutor's response to be filed by _____

_____    DISCOVERY

    Defendant's motion to be filed by _____

    Prosecutor's response to be filed by _____

    Prosecutor's motion to be filed by _____

    Defendant's response to be filed by _____

BOND IS REVOKED/SET _Oral Argument on D motions P & N_

CAPIAS TO ISSUE _____

                                    **SO ORDERED:**

_____                    _____
**Defense Counsel**                         **Judge**

_____                    _____
**Defendant**                                   **Prosecutor**