IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff-Respondent,           :   Case No. CR 1983-12-0614

vs.                                     :   Judge Daniel Andrew Nastoff

VON CLARK DAVIS                         :   ORAL ARGUMENT REQUESTED

    Defendant-Petitioner.           :   Pleading O

---

## VON CLARK DAVIS' NOTICE OF FILING OF EXHIBITS IN SUPPORT OF MOTION O

---

       Von Clark Davis provides notice of the filing of the following

pleadings in support of his motion to require the transcription of the grand jury

proceedings:

### EXHIBIT A

*Davis v. Coyle*, S.D. Ohio Case No. C-1-97-402 (Order, Nov. 2, 1998), pp. 10-11

### EXHIBIT B

*Davis v. Coyle*, S.D. Ohio Case No. C-1-97-402 (Docket) (Entry Dated 11/10/1998)

       Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender



8 East Long Street - 11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

*[signature: Melynda Cook-Reich]* 000568

MELYNDA COOK-REICH - 0000568 000568

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3155 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Notice Of Filing Of Exhibits in Support Of Motion O* was hand delivered to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio 45011 on this 28th day of August, 2008.

*[signature]*

COUNSEL FOR VON CLARK DAVIS

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
KENNETH J. MURPHY
CLERK

98 NOV -2 PM 12: 11

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

VON CLARK DAVIS,

        Petitioner,

    vs.

RALPH COYLE, Warden,

        Respondent.

Civil Action C-1-97-402
Judge Graham
Magistrate Judge King

OPINION AND ORDER

    This is a habeas corpus action under 28 U.S.C. §2254 in
which petitioner challenges his conviction on a charge of capital
murder and his death sentence. This matter is now before the Court
on a number of motions of the parties.

    Many of petitioner's motions relate to this Court's
procedural order of December 23, 1997, in which this Court held
that petitioner had waived consideration of certain claims asserted
in the original petition because he had not fairly presented those
claims in the first instance to the state courts. *Opinion and
Order* (December 23, 1997). The Court also rejected petitioner's
claim that this procedural default was caused by (and should
therefore be excused because of) the ineffectiveness of his
appellate counsel. In this regard, the Court held that, in order
to qualify as the "cause" sufficient to excuse a waiver, a claim of
ineffective assistance of appellate counsel must itself have been
preserved as a separate claim and fairly presented to the state

EXHIBIT
A

courts. *Opinion and Order,* at 22-23. Petitioner had not raised a claim of ineffective assistance of appellate counsel in the original petition and had never presented such a claim to the state courts. Moreover, it appears that his time for doing so had now passed, because Ohio R. App. P. 26(B) ordinarily requires that a motion to reopen an appeal to assert a claim of ineffective assistance of appellate counsel be filed within 90 days of the original judgment of the appellate court. *Id.,* at 22n.6.

**1. Petitioner's Motion to Reconsider the Magistrate Judge's Orders Denying Leave to Amend the Petition and Declining to Lift the Stay of Discovery as to Procedurally-Defaulted Claims.**

In two different orders issued on June 30, 1998, the Magistrate Judge denied petitioner's motions for leave to amend the petition to assert additional claims and for leave to conduct discovery relating to claims held to have been procedurally defaulted in the Court's December 23, 1997 *Opinion and Order*. Petitioner seeks reconsideration of each of those decisions. This Court must affirm the decisions of the Magistrate Judge unless they are found to be clearly erroneous or contrary to law. 28 U.S.C. §636(b). Respondent's July 31, 1998 motion for leave to respond to petitioner's appeals from the Magistrate Judge's decisions is GRANTED.

**A. Denial of Motion for Leave to Amend the Petition.**

Petitioner's motion for leave to amend the petition sought to assert seven (7) additional claims. The Magistrate Judge

2

denied petitioner's motion, reasoning that one proposed claim was not cognizable in habeas corpus and that the assertion of the remaining six proposed claims, all of which challenged the effective assistance of counsel during the course of petitioner's various appeals, had been unduly delayed to the substantial prejudice of the respondent. Alternatively, the Magistrate Judge concluded that petitioner had waived this Court's consideration of the remaining six claims by his failure to fairly present those claims to the courts of the State of Ohio. *Opinion and Order* (June 30, 1998).

The Magistrate Judge found no justification for the failure to assert in the original petition proposed Claims 29 and 30, which challenge the effectiveness of petitioner's counsel during his first round of direct appeals. The Magistrate Judge further concluded that respondent, and indeed the public, would be prejudiced by permitting the assertion of these claims at this stage of the proceedings:

> Should leave to amend be granted, petitioner acknowledges that any claims asserted in an amended petition must proceed through three stages: an inquiry as to whether or not such claims are the subject of a procedural default, discovery relating to any new claims asserted in the amended petition, and consideration of the merits of such claims.

*Id.,* at 6 (June 30, 1998). Petitioner has still not justified the failure of his counsel to include these claims in the original petition, and this Court agrees that the delay that would result from permitting him to do so now would work an unreasonable

3

hardship on the respondent and the public.

Proposed new Claims 31-34 allege ineffective assistance of petitioner's appellate counsel in his second round of direct appeals, during which time he was represented by, *inter alia,* one of the attorneys who drafted the original petition in this action.[1] The Magistrate Judge, in denying the motion for leave to amend the petition to assert these claims, rejected petitioner's argument that he could not reasonably have been expected to assert these claims so long as he was represented in this action by an attorney whose performance is challenged in those claims. The Magistrate Judge rejected this argument in light of the fact that petitioner has been, at all relevant times, represented by more than one attorney. It was unreasonable, in the Magistrate Judge's view, not to expect co-counsel "to exercise his professional, independent judgment," *Id.,* at 7, in determining which claims should be pursued. This Court agrees that neither a habeas corpus petitioner nor society at large would be well served by failing to require co-counsel to exercise independent professional judgment in the representation of his or her client. The Magistrate Judge's decision in this regard is neither clearly erroneous nor contrary to law.

The Magistrate Judge also concluded that, in any event, these proposed new claims would be subject to the defense of procedural default, a conclusion entirely consistent with this

---

[1]That attorney has, since the Court's order of December 23, 1997, withdrawn from representation of petitioner in this action.

4

Court's order addressing the procedural issues in this case. *Opinion and Order,* at 22, n.6 (December 23, 1997). Because grant of the motion for leave to amend to assert these claims would be an exercise in futility, *see Thiokol Corp. v. Dept. of Treasury,* 987 F.2d 376, 383 (6th Cir. 1993), it cannot be said that the Magistrate Judge's decision in this regard was clearly erroneous or contrary to law.

Finally, the Magistrate Judge rejected the motion for leave to amend the petition to assert proposed Claim 35, which sought to challenge a state regulation regarding a final statement by a condemned inmate prior to execution. The Magistrate Judge concluded that such a claim would not be cognizable on habeas corpus. 28 U.S.C. §2241(c)(3). The Magistrate Judge's decision in this regard was neither clearly erroneous nor contrary to law.

In short, petitioner's motion to reconsider the Magistrate Judge's denial of the motion for leave to amend the petition is DENIED.

### B. Denial or Motion to Lift the Stay of Discovery with Respect to the Claims Held to Have Been Procedurally Defaulted.

On June 30, 1998, the Magistrate Judge also denied petitioner's motion for leave to conduct discovery as to two defaulted claims:

> Petitioner has never presented his claim of ineffective assistance of appellate counsel to the state courts and, as noted in the Court's December 23, 1997 *Opinion and Order,* his time for doing so has now passed under

5

> Ohio R. App. P. 26(B). Accordingly,
> petitioner is unable to establish cause for
> his procedural default of claims 1 and 6. It
> follows, then, that this Court is prohibited
> from considering the merits of such claims.
> *See Wainwright v. Sykes,* 433 U.S. 72, 87
> (1997); *Maupin v. Smith,* 785 F.2d 135, 138 (6th
> Cir. 1986). Petitioner has therefore failed
> to establish a need for the discovery sought
> by him.

*Opinion and Order,* at 2 (June 30, 1998).

In his motion to reconsider this ruling, petitioner attempts, *inter alia,* to relitigate that portion of this Court's December 23, 1997 procedural order which rejected a claim of ineffective assistance of appellate counsel as "cause" for the procedural default of certain of his claims. Petitioner specifically argues that he could not have complied with the 90-day period for assertion of claims of ineffective assistance of appellate counsel, as established by Ohio R. App. P. 26(B), because his appeals became final on the very day that Rule 26(B) was promulgated. However, the Ohio Supreme Court held, as early as 1995, that applicants under such circumstances "must show good cause why he or she did not attempt to invoke the procedures available under former Ohio App. R. 26 and 14(B)." *State v. Reddick,* 72 Ohio St.3d 88, 90 (1995).

Petitioner fails to explain why -- for eight years after the promulgation of Ohio R. App. P. 26(B) and for three years after the Ohio Supreme Court's decision in *Reddick* -- he made no attempt to present to the state courts the claims of ineffective assistance of appellate counsel which he now seeks to assert in this action.

6

This Court remains convinced, as it was when it issued its procedural order on December 23, 1997, that certain claims asserted on the original complaint have been procedurally defaulted; moreover, petitioner cannot claim ineffective assistance of appellate counsel as "cause" for his default because his claims of ineffective assistance of appellate counsel have themselves been procedurally defaulted.

This Court concludes that the decision of the Magistrate Judge refusing to lift the stay of discovery relating to defaulted claims was neither clearly erroneous nor contrary to law. Petitioner's July 17, 1998 motion to reconsider that decision is therefore DENIED.

## 2. Petitioner's Motion to Stay Proceedings Pending Recently-Instituted State Court Proceedings Under Ohio R. App. P. 26(B).

On August 21, 1998, petitioner filed, pursuant to Ohio R. App. 26(B), two applications for reopening in the Ohio Court of Appeals for the Twelfth Judicial District, in Butler County, Ohio. Petitioner's Exhibits A, B (attached to *Motion to Stay Proceedings and to Hold Case in Abeyance*)(September 1, 1998)).[2]  Each application appears to relate to the petitioner's two rounds of state court appeals.  Petitioner asks that this Court stay these

_____

[2]These applications assert claims of ineffective assistance of appellate counsel in connection with not only the substantive claims previously held by this Court to have been procedurally barred, but also substantive claims never previously presented to this Court.  For example, petitioner refers to a challenge to the selection of the grand and petit juries (although petitioner in this case waived his right to trial by jury); a challenge to the presiding judge of the three-judge panel for claimed improper consideration of remorse at the guilt phase and on re-sentencing; improper mitigation findings by the three-judge panel on re-sentencing; and improper rebuttal evidence at re-sentencing.

7

proceedings and to hold this case in abeyance pending the outcome of these new state court proceedings.

Notwithstanding this Court's conclusion, in the *Opinion and Order* of December 23, 1997, that the time for instituting such proceedings appears to have passed, petitioner argues that the issue of timeliness should be left for resolution by the courts of Ohio. *Motion to Stay Proceedings and to Hold Case in Abeyance,* at 6. Petitioner argues that, to stay this proceeding would be a reasonable balance of "the principles of exhaustion and comprehensive litigation. ..." *Id.* Moreover, petitioner notes that both this Court and the United States Court of Appeals for the Sixth Circuit have held proceedings in abeyance pending resolution of additional state court proceedings. *See, e.g., Beuke v. Collins,* No. 96-3050 (6th Cir., October 31, 1996).[3]

Petitioner has not convinced this Court that there is any reasonable likelihood that the Ohio Court of Appeals for the Twelfth District will in fact entertain the merits of petitioner's recent applications to reopen the state court appeals. *See State v. Reddick, supra,* 72 Ohio St.3d at 90. Accordingly, petitioner's motion to stay this action and to hold this case in abeyance is DENIED. This denial is without prejudice to renewal, however, should the Court of Appeals for the Twelfth District express its intention to entertain the merits of either or both of petitioner's

---

[3]These cases, however, appear to have involved *unexhausted* claims, rather than *waived* claims.

8

applications to reopen.

### 3.  Petitioner's Second Motion to Amend the Petition.

On September 21, 1998, petitioner filed yet another
motion for leave to amend the habeas corpus petition.  Arguing that
*Evitts v. Lucey,* 470 U.S. 1065 (1985), recognizes a constitutional
guarantee of effective assistance of counsel at *every* appeal as of
right,[4] petitioner's second motion to amend the petition seeks to
raise as additional claims in this action the ineffectiveness of
his appellate counsel before the Ohio Supreme Court.[5]  Petitioner
argues that these proposed new claims are exhausted, because they
were presented to the Ohio Supreme Court and rejected on the
articulated basis that there is no procedure under Ohio's Supreme
Court Rules of Practice for the presentation of such claims in
cases that arose prior to January 1, 1995, the date appeals in
capital cases to the Ohio Supreme Court became the first appeal as
of right.

Ohio apparently offers no state court remedy for claims
of ineffective assistance of counsel before the Ohio Supreme Court
in capital cases arising prior to January 1, 1995.  Because there
can be no waiver for failure to pursue a state court remedy that

---

[4]Although the United States Supreme Court has not expressly addressed the
issue of the right to effective assistance of counsel on a "second" appeal as of
right, it has stated that *Evitts v. Lucy* "extends to the first appeal of right,
and no further." *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987).

[5]As indicated *supra,* in footnote 2, these claims relate not only to
substantive claims previously asserted in this action but also to substantive
claims never previously raised.

9

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4353

does not exist, it cannot be said that petitioner has waived these claims.  However, petitioner wholly fails to address the issue of delay or to explain why these claims were not presented in the original petition or substantially earlier in this action.  For the reasons stated in the *Opinion and Order*, at 6, 7 (June 30, 1998), the Court concludes that petitioner's second motion for leave to amend the petition is without merit and it is therefore DENIED.

### 4. Respondent's Motion to Reconsider Order Granting Leave to Conduct Discovery Relating to Second Claim.

On November 18, 1997 and without objection by respondent, the Magistrate Judge granted petitioner leave to conduct certain discovery, including leave to  inspect transcripts of proceedings before the grand jury that indicted petitioner and to depose Anthony Ferguson and Elbert Avery.  This discovery related to petitioner's second ground for relief, *i.e.,* that the indictment was not based upon probable cause and was based only on illegal and incompetent evidence, in violation of petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  In this regard, petitioner alleged that Anthony Ferguson was the only witness to testify before the grand jury.[6]

In his motion to reconsider, respondent argues that, based on "newly discovered evidence," there is no longer any need to conduct this discovery.  Specifically, respondent argues that

---

[6]That discovery order was stayed pending resolution of the procedural issues in this case.  *Order* (November 28, 1997).  Following resolution of those issues, *Opinion and Order* (December 23, 1997), that discovery was initiated by petitioner.

10

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4354

Anthony Ferguson did not, in fact, testify before the grand jury, but that six other persons did.  Accordingly, respondent argues that that portion of the Magistrate Judge's discovery order relating to the second ground for relief should be vacated.

In response, petitioner contends that the motion to reconsider is untimely under F.R. Civ. P. 72(a) because it was not filed within ten (10) days of the May 11, 1998 order lifting the stay of discovery.  Petitioner also argues that, because the information proffered by respondent in support of his motion to reconsider has existed for more than fourteen (14) years, it does not qualify as "newly discovery evidence."

This Court will not preclude respondent from addressing this issue on the basis of timeliness.  However, the Court is perplexed as to why the respondent, over the course of the last fourteen (14) years, has never disputed the factual underpinnings of the allegations made in the petitioner's second claim for relief.  Under these circumstances, and perhaps out of an excess of caution, the Court DIRECTS the respondent to provide to this Court within ten (10) days of the date of this order, the transcript of the grand jury proceedings for the Court's *in camera* review.  The Court will defer final resolution of respondent's motion to reconsider pending its *in camera* review.

5.   Petitioner's Motion to Hold the Butler County Prosecutor's Office in Contempt.

Petitioner issued a subpoena *duces tecum* to the records

11

## 6. Petitioner's Motion for a Sixty-Day Extension of the Time for Discovery.

Petitioner asks that the be granted an additional sixty (60) days in order to complete authorized discovery. In this regard, petitioner refers to his contempt motion and asserts, in addition, that he has thus far been unable to locate Robert Beard Jones and Anthony Ferguson for deposition and that petitioner's trial counsel, Jack Garretson, has been unavailable for deposition because of conflicting demands on his time.

It is unclear whether, since the filing of this motion, petitioner has now located Anthony Ferguson and Robert Beard Jones. If he has not, it appears reasonable to conclude that he will be unable to do so in the foreseeable future. Thus, only the issue of the deposition of Mr. Garretson remains outstanding. Under these circumstances, the Court hereby EXTENDS the time for completion of discovery to November 13, 1998. There will be no extensions of this date.

## 7. Petitioner's Motion to Expand the Record.

On September 21, 1998, petitioner filed a motion, under Rule 7 of the Rules Governing Section 2254 Cases, to expand the record to include the transcripts of the depositions of Timothy R. Evans, Esq., Michael D. Shanks, Esq., Hon. H. J. Bressler, and Dawn Denise Anderson. The respondent does not oppose the motion. *Respondent's Memorandum re Davis' September 21, 1998 Motion to Expand the Record Pursuant to Rule 7 of the Rules Governing Section*

13

custodian of the Office of the Butler County Prosecutor. On June 25, 1998, *i.e.,* the date the records deposition was to take place, the prosecutor filed an objection to the subpoena which, *inter alia,* refused production of the grand jury transcript, on the basis of privilege. However, with the exception of the grand jury transcript, all extant documents responsive to the subpoena *duces tecum* were apparently produced. Because no one appeared at the records deposition, however, petitioner asks that John C. Holcomb, the Butler County Prosecutor, and Daniel G. Eichel, Assistant Prosecutor, be held in contempt. Petitioner specifically argues that, at a minimum, the records custodian should have submitted to deposition so as to enable the petitioner to determine how records are maintained in the office of the prosecutor.

This Court will review, *in camera,* the transcript of the grand jury proceedings. If, after that review, the Court concludes that disclosure of the transcript of the grand jury proceedings to the petitioner is relevant to the resolution of the issues in this case, the Court will make that transcript available to the petitioner. It appears that all of the other extant records responsive to petitioner's subpoena *duces tecum* have been produced, and the Court is not persuaded that the deposition of the records custodian will assist the resolution of the issues in this case. Under these circumstances, petitioner's motion to hold in contempt the Butler County Prosecutor's Office and certain personnel of that office is DENIED.

12

*2254 Cases*.  Petitioner's motion in this regard is GRANTED in light of the respondent's failure to oppose the motion.

## 8.  Petitioner's Motions to Extend Time to File a Traverse Addressing the Merits of the Claims Presently Before the Court.

On August 14, 1998 and again on August 31, 1998, petitioner sought extensions of time, to file his supplemental brief addressing the merits of the claims remaining before this Court.  Moreover, on September 21, 1998, petitioner filed a second motion to stay all proceedings, including the filing of a traverse on the merits, and to hold this case in abeyance pending resolution of the outstanding motions in this case.  Because all those matters have now been resolved, petitioner's second motion to hold this case in abeyance is DENIED.  The Court expects petitioner to file his merits brief no later than November 30, 1998.  There will be no extension of this date.

WHEREUPON, petitioner's motion to reconsider the Magistrate Judge's Orders of June 30, 1998 is DENIED; petitioner's motion to stay this action pending completion of state court proceedings under Ohio R. App. P. 26(B) is DENIED without prejudice to renewal should the Court of Appeals for the Twelfth District express its intention to entertain the merits of either or both of petitioner's applications to reopen; petitioner's second motion to amend the petition is DENIED; petitioner's motion to hold the Butler County Prosecutor's Office and certain of its personnel in

14

contempt is DENIED; petitioner's motion for an extension of time to conduct discovery is GRANTED in part. The time for completion of discovery is EXTENDED to November 13, 1998; petitioner's unopposed motion to expand the record is GRANTED; petitioner's second motion to stay these proceedings is DENIED; petitioner may have until November 30, 1998, and no longer, to file a merit brief. Respondent is DIRECTED to forthwith submit, for the Court's *in camera* review, a transcript of the grand jury proceedings. The Court will defer resolution of the respondent's motion to reconsider the order granting petitioner leave to conduct discovery regarding the second claim, pending its *in camera* review of the grand jury transcript.

IT IS SO ORDERED.

James L. Graham, Judge
United States District Court

15

REMAND-COAP

## U.S. District Court
## Southern District of Ohio (Cincinnati)
## CIVIL DOCKET FOR CASE #: 1:97-cv-00402-JLG-NMK

| | |
|---|---|
| Davis v. Coyle | Date Filed: 04/28/1997 |
| Assigned to: James L Graham | Jury Demand: None |
| Referred to: Norah McCann King | Nature of Suit: 535 Death Penalty - |
| Demand: $0 | Habeas Corpus |
| Case in other court: 02-03227 | Jurisdiction: Federal Question |
| Cols, MC-1-97-00029 | |
| Cause: 28:2254 Petition for Writ of Habeas Corpus (State) | |

**Petitioner**

**Von Clark Davis**                    represented by   **David Bodiker**
                                                        Ohio Public Defender's Office - 2
                                                        8 E Long Street
                                                        11th Floor
                                                        Columbus, OH 43215-0587
                                                        614-466-5394
                                                        Email: bodiker@opd.state.oh.us
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **John Spenceley Marshall**
                                                        Bicentennial Plaza
                                                        111 W Rich Street
                                                        Suite 430
                                                        Columbus, OH 43215-5296
                                                        614-463-9790
                                                        Email:
                                                        jmarshall@marshallandmorrow.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Lori Leon**
                                                        Law Offices of the Federal Public
                                                        Defender - 2
                                                        330 South Third Street
                                                        Suite 700
                                                        Las Vegas, NV 89101
                                                        702-388-6577
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

EXHIBIT
B

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4360

**Laurence E Komp**
423 Madrina
Ballwin, MO 63021
636-394-1237
Fax: 636-207-7330
Email: lekomp@swbell.net
*ATTORNEY TO BE NOTICED*

V.

**Respondent**
**Ralph Coyle**            represented by **Charles L Wille**
Principal Assistant Attorney General
30 E Broad Street, 23rd Floor
Columbus, OH 43215
614-728-7055
Fax: 614-728-8600
Email: cwille@ag.state.oh.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael L Collyer**
Assistant Attorney General
Capital Crimes Section
615 W Superior Avenue
11th Floor
Cleveland, OH 44113
216-787-3030
Fax: 216-787-3480
Email: mcollyer@ag.state.oh.us
*TERMINATED: 11/27/2007*
*LEAD ATTORNEY*

**Stephanie L Watson**
Ohio Attorney General - 2
Corrections Litigation
150 E. Gay Street
16th Floor
Columbus, OH 43215-6001
614-644-7233
Fax: 614-728-9327
Email: slwatson@ag.state.oh.us
*TERMINATED: 12/23/1997*
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/1997 | 1 | PETITION FOR WRIT OF HABEAS CORPUS staying execution (referred to Mag. Judge Norah M. King ) () (bw) (Entered: 04/29/1997) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4361

| 04/28/1997 | 2 | MOTION by respondent for order staying execution () (bw) (Entered: 04/29/1997) |
| 04/28/1997 | 3 | ORDER by Judge James L. Graham granting motion for order staying execution [2-1] (cc: all counsel) () (bw) (Entered: 04/29/1997) |
| 04/29/1997 | 4 | ATTORNEY APPEARANCE for respondent Ralph Coyle by Stephanie L Harris () (bw) (Entered: 04/30/1997) |
| 05/12/1997 | 5 | NOTICE of Status conference set at 1:30 on 5/27/97 (cc: all counsel) (bw) (Entered: 05/14/1997) |
| 05/15/1997 | 6 | ATTORNEY APPEARANCE by John Marshall for petitioner (bw) (Entered: 05/19/1997) |
| 05/29/1997 | 7 | NOTICE of Status conference set at 1:30 on 8/7/97 (cc: all counsel) (bw) (Entered: 05/29/1997) |
| 05/29/1997 | 8 | STATUS CONFERENCE ORDER by Mag. Judge Norah M. King (cc: all counsel) () (bw) (Entered: 05/29/1997) |
| 06/09/1997 | 9 | ANSWER/Return of Writ by respondent (with 9 vol of transcript) (bw) (Entered: 06/10/1997) |
| 06/10/1997 | | 5 Vol of TRANSCRIPT filed by respondent Ralph Coyle (gk) (Entered: 06/10/1997) |
| 07/28/1997 | | ORDER by Judge James L. Graham authorizing attorney fees to John Marshall at the hourly rate of $125.00 every thirty days beginning 7-31-97. (cc: all counsel) () (bw) (Entered: 08/18/1997) |
| 07/31/1997 | 10 | Traverse by petitioner to the return of writ (bw) (Entered: 08/01/1997) |
| 08/05/1997 | 11 | MOTION by petitioner for order to correct traverse () (bw) (Entered: 08/06/1997) |
| 08/06/1997 | 12 | ORDER by Mag. Judge Norah M. King granting motion for order to correct traverse [11-1] (cc: all counsel) ( no pgs: 1) (bw) (Entered: 08/06/1997) |
| 08/07/1997 | 13 | NOTICE of additional co-counsel for petitioner () (bw) (Entered: 08/07/1997) |
| 08/13/1997 | 14 | ORDER by Mag. Judge Norah M. King Status conference held 1:30 8/7/97 - procedural issues ripe for resolution -suppl to pet & return of writ after resolution -conf will be held w/in 30 days after ruling on procedural issues (cc: all counsel) (no pgs: 2) (wh) (Entered: 08/14/1997) |
| 08/26/1997 | 15 | MOTION by petitioner for leave to conduct discovery () (wh) (Entered: 08/28/1997) |
| 08/29/1997 | 16 | MOTION by petitioner pursuant to Rule 5 of rules governing 2254 cases -to provide the entire state court record & correct portions of record filed with this Court (pgs: 37) (wh) (Entered: 09/02/1997) |
| 09/19/1997 | 17 | RESPONSE by respondent to motion for leave to conduct discovery [15-1] () (bw) (Entered: 09/22/1997) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4362

| | | |
|---|---|---|
| 09/22/1997 | 18 | RESPONSE by respondent to motion pursuant to Rule 5 of rules governing 2254 cases [16-1] () (bw) (Entered: 09/23/1997) |
| 09/22/1997 | | NOTICE of corrected exhibits to the Return of Writ by respondent () (bw) (Entered: 09/23/1997) |
| 09/24/1997 | 19 | NOTICE of Correction of the Recond by respondent () (bw) (Entered: 09/25/1997) |
| 09/30/1997 | 20 | MOTION by petitioner to extend time to file reply memos () (bw) (Entered: 10/01/1997) |
| 10/01/1997 | 21 | ORDER by Mag. Judge Norah M. King granting petn motion to extend time until 10-16-97 to file reply memos [20-1] (cc: all counsel) no pgs: 1) (bw) (Entered: 10/03/1997) |
| 10/10/1997 | 22 | REPLY by petitioner to response to motion for leave to conduct discovery [15-1] () (bw) (Entered: 10/21/1997) |
| 10/16/1997 | 23 | REPLY by petitioner to response to motion pursuant to Rule 5 of rules governing 2254 cases [16-1] () (bw) Modified on 10/21/1997 (Entered: 10/17/1997) |
| 11/18/1997 | 24 | ORDER by Mag Norah King granting petn motion for leave to conduct discovery [15-1] in part and denying it in part. (cc: all counsel) ( no pgs: 5) (bw) (Entered: 11/19/1997) |
| 11/28/1997 | 25 | ORDER by Judge James L. Graham staying discovery pending resolution of the procedural issues. (cc: all counsel) ( no pgs: 1) (bw) (Entered: 12/01/1997) |
| 12/08/1997 | 26 | MOTION by petitioner for order declaring certain amendments retroactive re: Chap 153 of Title 28 USC () (bw) (Entered: 12/08/1997) |
| 12/12/1997 | 27 | MOTION by petitioner for order lifing stay of discovery () (bw) (Entered: 12/15/1997) |
| 12/19/1997 | 28 | RESPONSE by respondent to motion for order declaring certain amendments retroactive re: Chap 153 of Title 28 USC [26-1] () (bw) (Entered: 12/22/1997) |
| 12/23/1997 | 29 | OPINION AND ORDER: by Judge James L. Graham: the Court concludes that the following claims for relilef are procedurally barred: 1,6,8,9,11,13,15,16,23 and 24. The Court further concludes that the following claims are not procedurally barred: 2,3,4,5,7,10,12,14,17,18,19,20,21,22,25,26,27 and 28. (cc: all counsel) ( no pgs: 51) (mc) (Entered: 12/24/1997) |
| 12/23/1997 | 30 | ATTORNEY SUBSTITUTION: terminating attorney Stephanie L Harris for Ralph Coyle and substituting attorney Michael L Collyer (no pgs: 2) (wh) (Entered: 12/29/1997) |
| 12/23/1997 | 31 | MOTION by respondent to strike motion for order lifing stay of discovery [27-1] or, in the alternative, memo contra mtn to lift stay (no pgs: 59) (wh) (Entered: 12/29/1997) |
| 01/02/1998 | 32 | NOTICE of withdrawal of Linda Prucha for petitioner (bw) (Entered: |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4363

| | | 01/05/1998) |
|---|---|---|
| 01/02/1998 | 33 | REPLY by petitioner to response to motion for order declaring certain amendments retroactive re: Chap 153 of Title 28 USC [26-1] () (bw) (Entered: 01/05/1998) |
| 01/07/1998 | 34 | NOTICE of filing exhibits to reply memo by petitioner () (bw) (Entered: 01/09/1998) |
| 01/27/1998 | 35 | NOTICE of Status conference set for 2:00 on 2/12/98 (cc: all counsel) (bw) (Entered: 01/28/1998) |
| 01/30/1998 | 36 | MOTION by petitioner for order lifting stay and to set new discovery cutoff date () (bw) (Entered: 02/02/1998) |
| 01/30/1998 | 37 | MOTION by petitioner for order to lift stay re: grounds for relief held not procedurally defaulted and to set new discovery cutoff date () (bw) (Entered: 02/02/1998) |
| 02/11/1998 | 38 | NOTICE by respondent of appearance of Co-Counsel (bw) (Entered: 02/12/1998) |
| 02/13/1998 | 39 | RESPONSE by respondent to motion for order to lift stay re: grounds for relief held not procedurally defaulted and to set new discovery cutoff date [37-1] () (bw) (Entered: 02/17/1998) |
| 02/13/1998 | 40 | RESPONSE by respondent to motion for order lifting stay and to set new discovery cutoff date [36-1] () (bw) (Entered: 02/17/1998) |
| 02/17/1998 | 41 | ORDER by Mag. Judge Norah M. King Status conference was held on 2/12/98 denying as moot resp motion to strike motion for order lifing stay of discovery [27-1] [31-1], denying as moot petns motion for order lifing stay of discovery [27-1] (cc: all counsel) ( no pgs: 2) (bw) (Entered: 02/18/1998) |
| 02/17/1998 | 42 | ORDER by Mag. Judge Norah M. King denying motion pursuant to Rule 5 of rules governing 2254 cases [16-1]. (cc: all counsel) ( no pgs: 2) (bw) (Entered: 02/18/1998) |
| 02/17/1998 | 43 | SUPPLEMENTAL RESPONSE by respondent to motion for order declaring certain amendments retroactive re: Chap 153 of Title 28 USC [26-1] () (bw) (Entered: 02/18/1998) |
| 02/23/1998 | 44 | REPLY by petitioner to response to motion for order to lift stay re: grounds for relief held not procedurally defaulted and to set new discovery cutoff date [37-1] () (bw) (Entered: 02/24/1998) |
| 02/27/1998 | 45 | REPLY by petitioner to response to motion for order declaring certain amendments retroactive re: Chap 153 of Title 28 USC [26-1] () (bw) (Entered: 02/27/1998) |
| 03/03/1998 | 46 | MOTION (Appeal of Magistrate's Order re: motion of petn pursuant ot Rule 5) by petitioner for reconsideration of order [42-1] () (bw) (Entered: 03/04/1998) |
| 03/05/1998 | 47 | Supplemental Merit Brief by respondent () (bw) (Entered: 03/09/1998) |

| 03/12/1998 | 48 | MOTION by petitioner leave to amend the HC petition () (bw) (Entered: 03/13/1998) |
| 03/13/1998 | 49 | NOTICE of filing exhibits by petitioner () (bw) (Entered: 03/16/1998) |
| 03/19/1998 | 50 | MOTION by respondent for leave to oppose petn appeal of USMJ order () (bw) (Entered: 03/20/1998) |
| 04/06/1998 | 51 | RESPONSE by respondent to motion leave to amend the HC petition [48-1] () (bw) (Entered: 04/07/1998) |
| 04/20/1998 | 52 | MOTION by petitioner to clarify the Wardens position () (bw) (Entered: 04/22/1998) |
| 04/20/1998 | 53 | REPLY by petitioner to response to motion leave to amend the HC petition [48-1] () (bw) (Entered: 04/22/1998) |
| 05/11/1998 | 54 | ORDER by Judge James L. Graham denying the motion for order declaring certain amendments retroactive re: Chap 153 of Title 28 USC [26-1] (cc: all counsel) ( no pgs: 3) (seal) (Entered: 05/11/1998) |
| 05/11/1998 | 55 | ORDER by Judge James L. Graham granting motion for order to lift stay re: grounds for relief held not procedurally defaulted and to set new discovery cutoff date [37-1], & [36-1] ; Discovery ddl set on 6/30/98 (cc: all counsel) () (seal) (Entered: 05/11/1998) |
| 05/11/1998 | 56 | RESPONSE by respondent to motion to clarify the Wardens position [52-1] () (bw) (Entered: 05/11/1998) |
| 05/15/1998 | 57 | MOTION by petitioner to extend the discovery cut-off date () (bw) (Entered: 05/17/1998) |
| 05/29/1998 | 58 | RESPONSE by respondent to motion to extend the discovery cut-off date [57-1] () (bw) (Entered: 06/01/1998) |
| 06/04/1998 | 59 | MOTION by petitioner for order for USMS to make service of subpoenas () (bw) (Entered: 06/09/1998) |
| 06/11/1998 | 60 | ORDER by Mag. Judge Norah M. King granting motion for order for USMS to make service of subpoenas [59-1] (cc: all counsel) ( no pgs: 1) (bw) (Entered: 06/12/1998) |
| 06/25/1998 | 61 | OBJECTIONS to inspection of records by Butler County Prosecutors Office (bw) (Entered: 06/26/1998) |
| 06/30/1998 | 62 | ORDER by Mag. Judge Norah M. King granting petns motion to extend the discovery cut-off date [57-1] Discovery ddl extended to 7/31/98 (cc: all counsel) ( no pgs: 1) (bw) (Entered: 06/30/1998) |
| 06/30/1998 | 63 | MOTION by respondent for reconsideration of the Court's Discovery Order () (bw) (Entered: 06/30/1998) |
| 06/30/1998 | 64 | ORDER by Mag. Judge Norah M. King denying petns motion leave to amend the HC petition [48-1] and petns motion to clarify the Wardens position [52-1] (cc: all counsel) ( no pgs: 10) (bw) (Entered: 06/30/1998) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4365

| 06/30/1998 | 65 | MOTION by petitioner for order finding Butler Cty Prosecutors Office in contempt of court () (bw) (Entered: 06/30/1998) |
| 06/30/1998 | 66 | ORDER by Mag. Judge Norah M. King denying motion for leave to oppose petn appeal of USMJ order [50-1] conduct discovery. (cc: all counsel) ( no pgs: 2) (bw) (Entered: 07/01/1998) |
| 07/01/1998 | 67 | ORDER by Judge James L. Graham granting petns motion for reconsideration of order [42-1] [46-1] (cc: all counsel) ( no pgs: 3) (bw) (Entered: 07/01/1998) |
| 07/01/1998 | 68 | MOTION by petitioner to extend time for discovery () (bw) (Entered: 07/02/1998) |
| 07/13/1998 | 69 | MEMO CONTRA by respondent to motion to extend time for discovery [68-1] (no pgs: 4) (wh) (Entered: 07/14/1998) |
| 07/16/1998 | 70 | RESPONSE by Butler Cty Prosecutor to motion for order finding Butler Cty Prosecutors Office in contempt of court [65-1] () (bw) (Entered: 07/18/1998) |
| 07/17/1998 | 71 | NOTICE of Appeal by petitioner to the Court ore: Order of Mag Judge of 6-30-98 (bw) (Entered: 07/18/1998) |
| 07/17/1998 | 72 | NOTICE of Appeal by petitioner of the Order of 6-30-98 re: lifting the stay of discovery (bw) (Entered: 07/18/1998) |
| 07/22/1998 | 73 | RESPONSE by petitioner to motion for reconsideration of the Court's Discovery Order [63-1] () (bw) (Entered: 07/27/1998) |
| 07/22/1998 | 74 | REPLY by petitioner to response to motion to extend time for discovery [68-1] () (bw) (Entered: 07/27/1998) |
| 07/22/1998 | 75 | REPLY by petitioner to response to motion for order finding Butler Cty Prosecutors Office in contempt of court [65-1] () (bw) (Entered: 07/27/1998) |
| 07/31/1998 | 76 | MOTION by respondent for leave to reply to petn appeals of the Mag orders (bw) (Entered: 08/03/1998) |
| 08/14/1998 | 77 | MOTION by petitioner to extend time 21 days to file brief () (bw) (Entered: 08/14/1998) |
| 08/18/1998 | 78 | RESPONSE by respondent to motion to extend time 21 days to file brief [77-1] () (bw) (Entered: 08/19/1998) |
| 08/25/1998 | 79 | REPLY by respondent Ralph Coyle to response to motion for reconsideration of the Court's Discovery Order [63-1] (This document was filed on July 31, 1998 and returned to the sender by the Clerks Office my mistake) (bw) (Entered: 08/25/1998) |
| 08/31/1998 | 80 | SECOND MOTION by petitioner to extend time to file a traverse () (bw) (Entered: 09/01/1998) |
| 09/01/1998 | 81 | MOTION by respondent to stay case until state court proceedings are resolved () (bw) (Entered: 09/02/1998) |
| 09/15/1998 | 82 | RESPONSE by respondent to motion to extend time to file a traverse [80-1] () (bw) (Entered: 09/16/1998) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4366

| 09/21/1998 | 83 | SECOND MOTION by petitioner for leave to amend the habeas petition () (bw) (Entered: 09/21/1998) |
| 09/21/1998 | 84 | SECOND MOTION by petitioner to stay proceedings and to hold case in abeyance () (bw) (Entered: 09/21/1998) |
| 09/21/1998 | 85 | MOTION by petitioner for order to expand the record () (bw) (Entered: 09/21/1998) |
| 09/25/1998 | 86 | RESPONSE by respondent to motion to stay proceedings and to hold case in abeyance [84-1] () (bw) (Entered: 09/25/1998) |
| 09/30/1998 | 87 | Supplemental correction of the record by respondent Ralph Coyle (sh) (Entered: 09/30/1998) |
| 10/09/1998 | 88 | REPLY by petitioner to response to motion to stay proceedings and to hold case in abeyance [84-1] () (bw) (Entered: 10/13/1998) |
| 10/15/1998 | 89 | RESPONSE by respondent to motion for leave to amend the habeas petition [83-1] () (bw) (Entered: 10/16/1998) |
| 10/15/1998 | 90 | RESPONSE by respondent to motion to stay case until state court proceedings are resolved [81-1] () (bw) (Entered: 10/16/1998) |
| 10/15/1998 | 91 | RESPONSE by respondent to motion for order to expand the record [85-1] () (bw) (Entered: 10/16/1998) |
| 10/29/1998 | 92 | REPLY by petitioner to response to motion for leave to amend the habeas petition [83-1] (no pgs: 3) (wh) (Entered: 10/30/1998) |
| 11/02/1998 | 93 | ORDER by Judge James L. Graham denying petn motion for reconsideration of the Court's Discovery Order [63-1] denying petn motion to stay case until state court proceedings are resolved [81-1] denying petn motion for leave to amend the habeas petition [83-1] denying petn motion for order finding Butler Cty Prosecutors Office in contempt of court [65-1] granting in part petn motion to extend time for discovery [68-1] granting petn motion for order to expand the record [85-1] denying petn motion to stay proceedings and to hold case in abeyance [84-1] granting petn motion to extend time 21 days to file brief [77-1] granting motion to extend time to file a traverse [80-1] granting motion for leave to reply to petn appeals of the Mag orders [76-1] (cc: all counsel) ( no pgs: 15) (bw) (Entered: 11/03/1998) |
| 11/10/1998 |  | TRANSCRIPT of State Grand Jury proceedings vs Von Clark Davis, Butler County Case No. CR83-12-0614 submitted by respondent (bw) Modified on 01/12/1999 (Entered: 01/12/1999) |
| 11/30/1998 | 94 | MOTION by petitioner for order to declare application of Post-AEDPA unconstitutionally retroactive () (sh) (Entered: 12/01/1998) |
| 11/30/1998 | 95 | Traverse by petitioner to the return of writ) (sh) (Entered: 12/01/1998) |
| 12/24/1998 | 96 | MEMO CONTRA by respondent to motion for order to declare application of Post-AEDPA unconstitutionally retroactive [94-1] (no pgs: 8 + exhibits) (wh) (Entered: 12/28/1998) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4367

| 12/24/1998 | 97 | MOTION by petitioner for order to expand record (no pgs: 4 + exhibits) (wh) (Entered: 12/28/1998) |
| 12/30/1998 | 98 | SECOND AMENDED MOTION by petitioner for order to expand the record (bw) (Entered: 01/04/1999) |
| 12/30/1998 | 99 | REPLY by respondent Ralph Coyle to petns motion for ext of time (bw) (Entered: 01/04/1999) |
| 01/06/1999 | 100 | REPLY by petitioner Von Clark Davis to response to motion for order to declare application of Post-AEDPA unconstitutionally retroactive [94-1] () (bw) Modified on 08/30/1999 (Entered: 01/07/1999) |
| 01/08/1999 | 101 | MOTION by petitioner for order to reconsider certain procedural default rulings (bw) Modified on 08/30/1999 (Entered: 08/30/1999) |
| 01/19/1999 | 102 | RESPONSE by respondent to motion for order to expand the record [98-1] () (bw) (Entered: 01/19/1999) |
| 01/19/1999 | 103 | RESPONSE by respondent to petn motion for reconsideration of procedural default rulings (bw) (Entered: 01/19/1999) |
| 01/28/1999 | 104 | NOTICE of progress on application to reopen direct appeal by respondent () (bw) (Entered: 01/29/1999) |
| 01/29/1999 | 105 | REPLY by petitioner to response to motion for order to expand the record [98-1] () (bw) (Entered: 02/01/1999) |
| 02/03/1999 | 106 | THIRD MOTION by petitioner to stay and to hold case in abeyance () (bw) (Entered: 02/03/1999) |
| 02/12/1999 | 107 | RESPONSE by respondent to motion to stay and to hold case in abeyance [106-1] () (bw) (Entered: 02/16/1999) |
| 02/25/1999 | 108 | REPLY by petitioner to response to motion to stay and to hold case in abeyance [106-1] () (bw) (Entered: 03/01/1999) |
| 02/25/1999 | 109 | THIRD MOTION by petitioner for order to expand the record () (bw) (Entered: 03/01/1999) |
| 03/05/1999 | 110 | MOTION by petitioner for evidentiary hearing () (bw) (Entered: 03/08/1999) |
| 03/12/1999 | 111 | RESPONSE by respondent to motion for order to expand the record [109-1] () (bw) (Entered: 03/15/1999) |
| 03/29/1999 | 112 | RESPONSE by respondent to motion for evidentiary hearing [110-1] () (bw) (Entered: 03/30/1999) |
| 04/27/1999 | 113 | REPLY by petitioner to response to motion for evidentiary hearing [110-1] () (bw) (Entered: 04/28/1999) |
| 04/27/1999 | 114 | MOTION by petitioner for order to proceed ex parte () (bw) (Entered: 04/28/1999) |
| 05/19/1999 | 115 | RESPONSE by respondent to motion for order to proceed ex parte [114-1] () (bw) (Entered: 05/20/1999) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4368

| 06/16/1999 | 116 | ORDER by Mag. Judge Norah M. King denying motion to stay and to hold case in abeyance [106-1] (cc: all counsel) ( no pgs: 1) (bw) (Entered: 06/17/1999) |
|---|---|---|
| 06/18/1999 | 117 | MOTION by petitioner for order to hold case in abeyance until the OSC resolves Williams v Taylor () (bw) (Entered: 06/18/1999) |
| 06/23/1999 | 118 | RESPONSE by respondent to motion for order to hold case in abeyance until the OSC resolves Williams v Taylor [117-1] () (bw) (Entered: 06/28/1999) |
| 06/30/1999 | 119 | ORDER by Mag. Judge Norah M. King ext time for petn until 7-7-99 for respond to the motion. (cc: all counsel) ( no pgs: 1) (bw) (Entered: 07/01/1999) |
| 07/07/1999 | 120 | APPEAL by petitioner of order [116-1] (no pgs: 5) (wh) (Entered: 07/07/1999) |
| 08/03/1999 | 121 | NOTICE of supplemental authority by petitioner () (sh) (Entered: 08/04/1999) |
| 09/07/1999 | 122 | ORDER by Judge James L. Graham -denying motion for order to declare application of Post-AEDPA unconstitutionally retroactive [94-1] -granting motion for order to expand record [97-1] -granting motion for order to expand the record [98-1] -granting motion for order to expand the record [109-1] -denying motion for order to reconsider certain procedural default rulings [101-1] -denying motion for order to proceed ex parte [114-1] -denying motion for order to hold case in abeyance until the OSC resolves Williams v Taylor [117-1] -denying motion of order [116-1] [120-1] (cc: all counsel) (no pgs: 9) (wh) (Entered: 09/08/1999) |
| 09/08/1999 | 123 | THIRD MOTION by petitioner for leave to amd habeas petition (no pgs: 20) (wh) (Entered: 09/09/1999) |
| 09/17/1999 | 124 | MOTION by petitioner to extend time 30 days to file a memorandum () (bw) (Entered: 09/20/1999) |
| 09/21/1999 | 125 | MEMORANDUM BRIEF FILED by respondent re: Courts consideration of affidavits (bw) (Entered: 09/22/1999) |
| 09/23/1999 | 126 | ORDER by Mag. Judge Norah M. King granting motion to extend time 30 days or until 10-21-99 for petn to file a memorandum [124-1] (cc: all counsel) ( no pgs: 1) (bw) (Entered: 09/24/1999) |
| 10/04/1999 | 127 | RESPONSE by respondent to motion for leave to amd habeas petition [123-1] () (bw) (Entered: 10/05/1999) |
| 10/21/1999 | 128 | MEMORANDUM by petitioner re: court's consideration of affidavits (bw) (Entered: 10/22/1999) |
| 10/25/1999 | 129 | REPLY by petitioner to response to motion for leave to amd habeas petition [123-1] () (bw) (Entered: 10/25/1999) |
| 03/31/2000 | 130 | ORDER by Judge James L. Graham denying petn motion for evidentiary hearing [110-1] (cc: all counsel) ( no pgs: 3) (bw) (Entered: 03/31/2000) |
| 09/13/2000 | 131 | ORDER by Judge James L. Graham granting motion for leave to amend the |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4369

|  |  | habeas petition [123-1] (cc: all counsel) ( no pgs: 4) (bw) (Entered: 09/14/2000) |
|---|---|---|
| 10/05/2000 | 132 | AMENDED PETITION FOR WRIT OF HABEAS CORPUS (referred to Mag. Judge Norah M. King ) () (bw) (Entered: 10/10/2000) |
| 11/06/2000 | 133 | AMENDED RETURN OF WRIT by respondent (with exhibits vvv,qqq-uuu and www-zzz) (bw) (Entered: 11/07/2000) |
| 12/06/2000 | 134 | MOTION by petitioner to extend time ten days to file a traverse to the amended return of writ () (bw) (Entered: 12/07/2000) |
| 12/07/2000 | 135 | ORDER by Mag. Judge Norah M. King granting motion to extend time ten days or until 12-18-00 for petn to file a traverse to the amended return of writ [134-1] (cc: all counsel) ( no pgs: 1) (bw) (Entered: 12/07/2000) |
| 12/15/2000 | 136 | MOTION by petitioner for order to approve substitution and to modify the appointment status of appointed counsel () (bw) (Entered: 12/18/2000) |
| 12/18/2000 | 137 | Supplemental Traverse by respondent Ralph Coyle (bw) (Entered: 12/19/2000) |
| 01/08/2001 | 138 | NOTICE by petitioner Von Clark Davis of change of address of attorney Lori Leon ( no pgs: 2) (sem) (Entered: 01/09/2001) |
| 09/04/2001 | 139 | ORDER by Judge James L. Graham dismissing the habeas corpus petition [1-1] dismissing case and directing final judgment to enter in this action (cc: all counsel) no pgs: 87) (bw) (Entered: 09/04/2001) |
| 09/04/2001 | 140 | JUDGMENT ENTERED as to #139: (cc: all counsel) ( no pgs: 1) (bw) (Entered: 09/04/2001) |
| 09/18/2001 | 141 | MOTION by petitioner to alter or amend the judgment [140-1] 2 vols of exhibits A-Z and AA-BBB submitted with this motion (bw) Modified on 09/19/2001 (Entered: 09/19/2001) |
| 09/19/2001 | 142 | APPEARANCE of Co-Counsel for petitioner by Lori Leon () (bw) (Entered: 09/19/2001) |
| 09/27/2001 | 143 | RESPONSE by respondent to motion to alter or amend the judgment [140-1] [141-1] () (bw) (Entered: 09/27/2001) |
| 10/09/2001 | 144 | REPLY by petitioner to response to motion to alter or amend the judgment [140-1] [141-1] () (bw) (Entered: 10/10/2001) |
| 01/17/2002 | 145 | OPINION AND ORDER by Judge James L. Graham denying motion to alter or amend the judgment [140-1] [141-1] (cc: all counsel) ( no pgs: 9) (sh) (Entered: 01/17/2002) |
| 02/08/2002 | 146 | NOTICE OF APPEAL by petitioner Von Clark Davis from Dist. Court decisions of 9/4/01 and 1-17-02 (seal) Modified on 02/14/2002 (Entered: 02/14/2002) |
| 02/22/2002 | 147 | NOTICE by petitioner of intent to file a request for a certificate of appealability (bw) (Entered: 02/22/2002) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4370

Case: 2:16-cv-00495-SJD-MRM Doc #: 4-36 Filed: 08/08/16 Page: 29 of 211 PAGEID #: 4405

| 03/04/2002 | | RECEIPT OF USCA APPEAL NUMBER - Number Assigned: 02-3227 (bw) (Entered: 03/05/2002) |
|---|---|---|
| 04/24/2002 | 148 | SECOND NOTICE by petitioner of intent to file a request for a certificate of appealability (bw) (Entered: 04/25/2002) |
| 04/29/2002 | 149 | RESPONSE by respondent to [148-1] () (bw) (Entered: 04/30/2002) |
| 05/08/2002 | 150 | REPLY Memorandum in Support by petitioner re [148-1] the 2nd notice of intent to file a req for a certificate of apealability (bw) (Entered: 05/09/2002) |
| 05/20/2002 | 151 | MOTION by petitioner for certificate of appealability () (bw) (Entered: 05/21/2002) |
| 06/13/2002 | 152 | RESPONSE by respondent to motion for certificate of appealability [151-1] () (bw) (Entered: 06/14/2002) |
| 08/13/2002 | 153 | OPINION AND ORDER by Judge James L. Graham granting petitioner's motion for certificate of appealability as to fifteen issues [151-1] (cc: all counsel, faxed copy to COA) ( no pgs: 17) (sln) (Entered: 08/13/2002) |
| 04/17/2003 | | Shipped 5 volumes transcripts & 11 volumes of exhibits. (jh) (Entered: 04/17/2003) |
| 03/03/2006 | | Remark: Original files were shipped to Cincinnati via UPS. (er) (Entered: 03/03/2006) |
| 01/31/2007 | 154 | USCA INFORMATION COPY re 146 Notice of Appeal: The Sixth Circuit REVERSED the judgment of the District Court denying habeas relief & REMAND the case for the issuance of a conditional writ under 28 U.S.C. 2254. (er) (Entered: 01/31/2007) |
| 01/31/2007 | 155 | USCA JUDGMENT as to 146 Notice of Appeal: The Sixth Circuit REVERSED the judgment of the District Court denying habeas relief & REMAND the case for the issuance of a conditional writ under 28 U.S.C. 2254. (er) (Entered: 01/31/2007) |
| 07/16/2007 | 156 | MANDATE of USCA: Pursuant to the court's disposition that was filled 1/29/07 the mandate for this case hereby issues today. (srj) (Entered: 07/17/2007) |
| 07/19/2007 | 157 | ORDER granting the Writ of Habeas Corpus conditioned upon the State of Ohio, within one-hundred eighty (180) days of the date of this order, granting petitioner a new sentencing hearing. Signed by Judge James L Graham on 7/19/07. (rew) (Entered: 07/19/2007) |
| 08/06/2007 | 158 | Mail Returned as Undeliverable. (attempted not know unable to forward) Mailed #157 Order to Lori Leon. (rew) (Entered: 08/07/2007) |
| 11/26/2007 | 159 | NOTICE of Appearance by Laurence E Komp Petitioner Von Clark Davis (Komp, Laurence) (Entered: 11/26/2007) |
| 11/26/2007 | 160 | NOTICE of Appearance by Charles L Wille Respondent Ralph Coyle (Wille, Charles) (Entered: 11/26/2007) |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4371

| 11/26/2007 | 161 | Joint MOTION for Extension of Time New date requested 7/14/2008. by Respondent Ralph Coyle. (Wille, Charles) (Entered: 11/26/2007) |
| 11/27/2007 | 162 | ORDER granting 161 the Motion for Extension of Time for 180 days for the State of Ohio to comply with the conditional writ. Signed by Judge James L Graham on 11/27/2007. (bw) (Entered: 11/27/2007) |
| 12/28/2007 | 163 | Appeal Record Returned. (er ) (Entered: 12/28/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/20/2008 11:21:58 | | | |
| **PACER Login:** | oh0003 | **Client Code:** | Porter/DAvis |
| **Description:** | Docket Report | **Search Criteria:** | 1:97-cv-00402-JLG-NMK |
| **Billable Pages:** | 7 | **Cost:** | 0.56 |

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4372

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

'008 AUG 28 AH 9:21

STATE OF OHIO,                          :

    Plaintiff-Respondent,           :    Case No. CR 1983-12-0614

vs.                                     :    Judge Daniel Andrew Nastoff

VON CLARK DAVIS                         :    ORAL ARGUMENT REQUESTED

    Defendant-Petitioner.           :    Pleading p

---

## VON CLARK DAVIS' NOTICE OF FILING OF ADDITIONAL AUTHORITY IN SUPPORT OF PLEADING P

---

    Von Clark Davis provides the attach opinion in *Cooey v. Strickland*,

S.D. Ohio Case No. 2:04-cv-1156 (August 26, 2008) in support of Pleading P.

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER   0005835
Assistant State Public Defender

8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3155 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Notice Of Filing Of Additional Authority In Support Of Pleading P* was hand delivered to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio  45011 on this 28th day of August, 2008.

_____
COUNSEL FOR  VON CLARK DAVIS

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4374

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD COOEY, et al.,

    Plaintiff,

    v.

TED STRICKLAND, et al.,

    Defendants.

Case No. 2:04-cv-1156
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court pursuant to the Sixth Circuit's July 8, 2008 Order

remanding the appeal of the preliminary injunction pertaining to Plaintiff Kenneth Biros. (Doc.

# 278.) In that Order, the court of appeals concluded that "the question of whether the

preliminary injunction should remain in effect following [*Baze v. Rees*, 128 S. Ct. 1520 (2008),]

is an issue that should be addressed initially by the district court" and remanded so that this

Court could consider whether the injunction "should be vacated in light of the *Baze* decision."

(Doc. # 278, at 1-2.) The Sixth Circuit explained that the scope of the remand permitted this

Court to "schedule whatever briefing and hearing schedules it deems necessary for consideration

of this matter." (Doc. # 278, at 2.)

Arguably complicating this Court's actions upon remand is the fact that following the

April 16, 2008 decision in *Baze*, the Sixth Circuit then issued the June 12, 2008 mandate related

to *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007). Defendants have since moved for

dismissal (Doc. # 295) of Biros' case under Federal Rule of Civil Procedure 12(b)(6) on the

ground that the Sixth Circuit's decision in *Cooey* requires dismissal of the 42 U.S.C. § 1983

claims asserted here based on the statute of limitations. Biros has filed a memorandum in

opposition to that motion (Doc. # 312), and Defendants have filed a reply memorandum (Doc. # 321).

The threshold issue is thus whether the remand permits the Court to consider only the effect, if any, of *Baze* on the injunction or whether it permits the Court to consider the effect of *Baze*, if any, within the context of the fact that the statute of limitations may have expired pursuant to *Cooey*. In other words, does the remand require this Court to pretend that Biros' case is not time barred (if it is) so that the Court can consider *Baze* issues that cannot apply to Biros if his claims are beyond the statute of limitations?

Logic demands that the answer to this question must be no. The appellate panel on the *Biros* remand consisted of Circuit Judges Suhrheinrich, Siler, and Gilman. These exact same judges constituted the appellate panel in *Cooey*. Although that latter panel was split in its decision, the inescapable conclusion is that these judges of course knew what they had done in *Cooey* when they issued the *Biros* remand and would not require this Court to analyze an injunction issued in a potentially time-barred case. Thus, the remand necessarily encompasses the preliminary issue of whether Biros has viable litigation to which *Baze* might apply. To conclude otherwise would charge the court of appeals with being unaware of what it is doing so that it is treating inconsistently litigants in the same district court proceeding who present the same core issues. Although this Court has certainly seen evidence of inconsistent treatment in this often curious litigation, it has not seen such treatment *by the same appellate panel*. The Court therefore concludes that the learned appellate judges must have intended for this Court to address Biros' injunction within the full context of whether *Baze* is relevant, which means that whether *Baze* even matters to Biros' claims is within the scope of the remand. If there is no

2

timely claim for Biros, as there was with Plaintiff Richard Cooey, then *Baze* does not matter.

But if Biros has a timely claim, then *Baze* may matter a great deal.

This conclusion is necessarily limited to Biros.  As the Court recently noted in its

Opinion and Order[1] regarding the dismissal of Plaintiff Jeffrey Hill, the remand

> did not invalidate the *Cooey* statute of limitations and does not constitute on its
> face or implicitly instructions to conduct the factfinding Hill seeks on that issue.
> An inquiry under *Baze* focuses upon the merits of the § 1983 claims being
> advanced in this litigation, and the *Biros* remand permits this Court to reexamine
> the likelihood of success Biros has in light of the Supreme Court's recent
> decision.

(Doc. # 344, at 14.)  Accordingly, having thus concluded that the Sixth Circuit intended for this

Court to examine Biros and *Baze* in light of controlling precedent, this Court turns to the issue of

whether Biros' claims are time barred so as to moot the potential application of *Baze*.

As noted, this Court previously issued an Opinion and Order in this litigation that

discussed at length the Sixth Circuit's construction in *Cooey* of the statute of limitations for such

§ 1983 claims.  (Doc. # 344.)  This Court noted in that prior decision that *Cooey* teaches that §

1983 claims of the sort asserted in this case begin to accrue upon conclusion of direct review in

the state courts and when a plaintiff knows or has reason to know about the act providing the

basis of his or her injury.  *Id.* at 422.  Even in light of recent changes to the lethal injection

protocol and the United States Supreme Court's issuance of *Baze*–which, as noted, pre-dated

issuance of the *Cooey* mandate–the court of appeals issued *Cooey* as binding authority.  This

circuit authority reasons that a plaintiff knew or had reason to know about the act providing the

basis of his or her injury when Ohio made lethal injection the exclusive method of execution in

---

[1]  The Court adopts and incorporates herein the entirety of that decision and attaches it to
the instant decision for ease of reference.

3

December 2001. Consequently, review of the motion to dismiss briefing and the record indicates that the following dates are relevant to the statute of limitations issue:

(1) Date of Biros's conviction and sentence: October 29, 1991.

(2) Date the Ohio Supreme Court affirmed Biros's conviction and sentence: May 14, 1997.

(3) Month in which the time for filing a petition for *certiorari* with the United States Supreme Court expired: August 1997.

(4) Date the Sixth Circuit has held inmates like Biros should have been aware of their § 1983 lethal injection protocol claims: December 2001, at the latest.

In light of the foregoing, this Court concludes that the rationale of *Cooey* does not render Biros' § 1983 claims untimely. The statute of limitations on these claims has therefore not expired. Regardless of whether (1) the Court exempts out of the limitations calculation the period when Biros was *not* under a sentence of death due to an initially successful habeas petition that ultimately failed (perhaps exempting as much as from December 13, 2002 to January 23, 2006) or (2) the Court holds that the limitations period did not even begin to run until reversal of Biros' habeas petition, the end result is the same: the two-year statute of limitation did not expire prior to Biros' October 18, 2006 motion to intervene.[2] (Doc. # 95.)

---

[2] It is important to note that the Sixth Circuit explained in *Cooey* that an inmate such as Cooey (and therefore such as Biros) "should have known of his cause of action in 2001 after amendments to the law required that he be executed by lethal injection, and the information was publicly available upon request." *Cooey*, 479 F.3d at 422. Crediting that analysis, this Court calculates Biros' statute of limitations–assuming *arguendo* that it did not restart entirely following the reversal of his habeas petition–to have begun to run as of December 2001. This Court recognizes that the Cooey majority left open the door for an accrual date in 1993 for the knowledge component of the analysis, *id.*, but in the absence of guidance by the appellate court, this Court shall adhere to the date upon which the Sixth Circuit relied in *Cooey*.

4

Having concluded that Biros' § 1983 case survives the threshold statute of limitations challenge on the grounds discussed above, the Court need not and does not address his alternative arguments that the Court did not previously consider and reject in its attached and incorporated Opinion and Order.  Thus, because Biros's assertion of his § 1983 claims is not time-barred, the Court must proceed under the remand to address the possible application of *Baze*.

Cognizant that the Sixth Circuit has instructed this Court to "schedule whatever briefing and hearing schedules it deems necessary for its consideration of this matter" (Doc. # 278, at 2), the Court therefore **ORDERS**:

(1) The Court **DENIES** Defendants' Motion to Dismiss.  (Doc. # 295.)

(2) The Court deems it necessary under the remand order to schedule an in-court hearing beginning on December 15, 2008, at 9:00 a.m., on the application of *Baze* to the preliminary injunction.  This hearing shall include the presentation of evidence, including testimony if any party so desires, and argument as to whether *Baze* proves dispositive of or otherwise informs to any extent the injunction issue.  The parties should be prepared to address whether under a *Baze* inquiry Biros has a likelihood of success in this litigation so as to warrant continued injunctive relief.

(3) In order to facilitate this hearing, the Court orders that, by September 4, 2008 Defendants must turn over to counsel for Biros the entirety of its lethal injection protocol, including but not limited to all information related to the training and qualifications of all personnel involved in the execution process, as well as all techniques, practices, and equipment employed in the execution process.

5

(4) The parties shall identify their experts and all other witnesses by September 25, 2008.

(5) The parties should complete all depositions related to the in-court hearing by October 24, 2008.

(6) Biros shall file a brief in support of his preliminary injunction by November 14, 2008. Defendants shall file a memorandum in opposition by November 28, 2008. Biros shall file a reply memorandum by December 8, 2008.

(7) The parties are advised that failure to comply with the discovery contemplated in this Opinion and Order will result in the imposition of any applicable and appropriate potential sanction.

(8) In order to expedite discovery and avoid unnecessary delay, no party may file any motion related to discovery without first contacting the Court by telephone in order to schedule a status conference so that the Court can address the dispute directly and promptly.

**IT IS SO ORDERED.**

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

2008 AUG 29 AM 11: 05

STATE OF OHIO             CASE NO. CR1983-12-0614

       Plaintiff,            NASTOFF, J.

vs.                      ENTRY FOR TRANSPORT

VON CLARK DAVIS       October 10, 2008

       Defendant

It appears to the Court that **Von Clark Davis**, Inmate No. , is confined at the **Ohio State Penitentiary**, Youngstown, Ohio.

It further appears to the Court that a **Motion Hearing** in the above captioned matter is set for **October 10, 2008 at 1:30PM** in the Butler County Court of Common Pleas, before the **Honorable Andrew Nastoff.**

**IT IS THEREFORE, ORDERED** that the Warden of the **Ohio State Penitentiary** cause said defendant to be released to the Sheriff of Butler County, Ohio, for the purpose of attending said hearing in Butler County, Ohio, and said defendant shall be held in the custody of the Sheriff of Butler County, Ohio, until the completion of said hearing and upon the completion of said hearing, said defendant shall be returned to the institution unless otherwise Ordered by this Court.

APPROVED AS TO FORM:          ENTER

ROBIN PIPER
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

                               NASTOFF, J.

<u>INSTRUCTIONS TO THE CLERK:</u> PLEASE CERTIFY TWO COPIES

MO/beg
August 27, 2008





IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,

 Plaintiff-Respondent, : Case No. CR 1983-12-0614

vs. : Judge Daniel Andrew Nastoff

VON CLARK DAVIS : ORAL ARGUMENT REQUESTED

 Defendant-Petitioner. : Pleading M

---

## VON CLARK DAVIS' NOTICE OF FILING OF ADDITIONAL AUTHORITY IN SUPPORT OF PLEADING M

---

   Von Clark Davis submits the attach opinion in *State v. White*,

Ashland C.P. No. 96-CRI-0736 (July 12, 2008, Judgment Entry on Defense

Motions A and B) in support of Pleading M previously submitted herein.

     Respectfully submitted,

     OFFICE OF
     THE OHIO PUBLIC DEFENDER

     RANDALL L. PORTER - 0005835
     Assistant State Public Defender

     8 East Long Street -11th Floor
     Columbus, Ohio 43215
     (614) 466-5394 (Voice)
     (614) 644-0703 (Facsimile)
     PorterR@OPD.state.OH.US

     And

     MELYNDA COOK-REICH - 0066896

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Notice Of Filing Of Additional Authority In Support Of Pleading M* was forwarded by first class U.S. mail to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio 45011 on this 8th day of September, 2008.

COUNSEL FOR VON CLARK DAVIS

2

THIS IS A TRUE COPY AND CER      D COPY
OF THE ORIGINAL ON FILE

*Annette Shaw*

CLERK OF COURTS
ASHLAND COUNTY, OHIO

*Denise Patterson Deputy*

2007 JUL 12 PM 3:42

ANNETTE SHAW
CLERK OF COURTS
ASHLAND, OHIO

IN THE COURT OF COMMON PLEAS
ASHLAND COUNTY, OHIO

STATE OF OHIO,                                          Case No. 96-CRI-07366

        Plaintiff,

vs.

MAXWELL D. WHITE, JR.,

        Defendant.                          **JUDGMENT ENTRY ON DEFENSE
                                                       MOTIONS A and B**

     This case is before the Court on Defendant's Motions A and B. The Court conducted a
hearing on the Motions on June 25, 2007. The State of Ohio was represented by Prosecuting
Attorney Ramona Francesconi Rogers and Assistant Prosecuting Attorney Paul Lange. The
Defendant was present and he was represented by Attorney Richard Ketcham and Attorney Andrew
Hyde.

### PROCEDURAL HISTORY OF THE CASE

     On January 19, 1996, the Defendant fatally shot Trooper James Gross of the Ohio State
Highway Patrol on Interstate 71 in Ashland County, Ohio. The Defendant was indicted by the
Ashland County Grand Jury on January 25, 1996 for: (1) Aggravated Murder of Trooper Gross, with
a specification pursuant to Ohio Revised Code Section 2929.04(A)(3) for acting with the purpose
of escaping detection, apprehension, trial or punishment for another offense, and one specification
pursuant to Ohio Revised Code Section 2929.041(A)(6) for committing murder against a peace
officer whom White knew or had reasonable cause to know was engaged in his duties; (2)
Possession of Weapons While Under Disability; and (3) Abduction of Jean White with one

JM # 20

specification for possessing a firearm on or about his person while committing the offense of abduction. The specifications to the Aggravated Murder charge rendered the Defendant eligible for the death penalty.

On June 10, 1996, the guilt phase of the Defendant's trial commenced. He was found guilty by the jury on June 19, 1996 of all charges. The Court commenced the mitigation phase of the Defendant's death penalty proceedings on June 26, 1996. On June 29, 1996, the jury returned a recommendation of death sentence on the Aggravated Murder charge. On July 12, 1996, the Court journalized an entry accepting the jury's recommendation and sentencing the Defendant to death on the Aggravated Murder charge. The Defendant was also sentenced to eighteen (18) months on the Weapons Under Disability charge and five (5) to ten (10) years on the Abduction charge. Those sentences were ordered to be served consecutively to the death sentence.

On August 14, 1996, the Defendant filed an appeal with the Fifth District Court of Appeals. That appeal was dismissed for lack of jurisdiction on September 24, 1996. The Defendant then appealed his case to the Ohio Supreme Court on November 14, 1996 and that Court affirmed his conviction and death sentence on May 20, 1998. *State v. White* (1998), 82 Ohio St. 3d 16. Various motions for reconsideration and post-conviction relief were unsuccessfully pursued by the Defendant thereafter.

In November of 1999[1], the Defendant filed a petition for writ of habeas corpus in federal district court. On December 18, 2001, the district court denied the petition, but the court granted a certificate of appealability on two claims. The Defendant then pursued an appeal of the denial of his petition for writ of habeas corpus in the Sixth Circuit Court of Appeals. The Defendant's

---

[1] The following facts are taken from the Sixth Circuit Court of Appeals decision.

Page 2 of 17

I M # 21

appeal was not argued in the Sixth Circuit Court of Appeals until March 24, 2005. On December 7, 2005, the panel of three judges who heard the appeal rendered a decision reversing the district court decision. The Court remanded the case to the district court with instructions to issue a writ of habeas corpus vacating the Defendant's death sentence unless the State conducts a new penalty phase proceeding. *White v. Mitchell* (2005), 431 F.3d 517. The appellee requested a hearing *en banc* before the Sixth Circuit Court of Appeals and that request was denied. *White v. Mitchell,* 2006 U.S. App. LEXIS 10605 (6th Cir., Apr. 21, 2006), cert. den. *White v. Houk* (Nov. 13, 2006), 127 S. Ct. 581. On December 28, 2006, the District Court complied with the decision of the Sixth Circuit Court of Appeals and issued a conditional writ of habeas corpus vacating the Defendant's death sentence. This case is therefore pending before this Court for new sentencing proceedings. The writ of habeas corpus instructs this Court to resolve, if raised by the Defendant, whether the provisions of Ohio Revised Code Section 2929.06 which allow the empaneling of a new jury for death penalty resentencing are retroactive.

### LEGAL ISSUE

In both motions, the Defendant seeks an order of this Court prohibiting death penalty resentencing. The legal issue raised by Defense Motion A is whether the error in the jury selection process found by the federal court is an error in the sentencing phase of the original proceedings such that the Defendant is subject to jury death penalty resentencing under Ohio Revised Code Section 2929.06(B). The legal issue raised by Defense Motion B is whether the death penalty resentencing of the Defendant pursuant to Ohio Revised Code Section 2929.06 is barred by the *ex post facto*/retroactive, due process or double jeopardy provisions of the United States or Ohio Constitutions. In Defense Motion B, the Defendant has raised the issue of retroactivity of Ohio

JM # 22

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4386

Revised Code Section 2929.06, and thus this Court is under a mandate from the federal court to first resolve that issue before proceeding with resentencing. Given that the issue of retroactivity could be dispositive of all legal issues, the Court addresses that issue first.

## HISTORY OF DEATH PENALTY RESENTENCING IN OHIO

Ohio Revised Code Section 2929.06 is the statute in the State of Ohio which mandates the resentencing procedure in death penalty cases. Ohio criminal law is statutory and the Ohio legislature defines what constitutes criminal offenses and the penalties and procedures for criminal actions. Ohio Revised Code Section 2929.06 was in effect on the date the Defendant committed the murder offense in this case and it continues to be in effect. It has been modified on several occasions by the Ohio legislature and it is those modifications, and Ohio Supreme Court rulings interpreting the statute, which create the retroactivity issue in this case.

As of the date of the offense in this case, January 19, 1996, Ohio Revised Code Section 2929.06 allowed for the resentencing of the defendant for certain specified reasons. The statute stated:

> If the sentence of death that is imposed upon an offender is vacated
> upon appeal because the court of appeals, in a case in which a
> sentence of death was imposed for an offense committed before
> January 1, 1995, or the supreme court, in cases in which the
> supreme court reviews the sentence upon appeal, could not affirm
> the sentence of death under the standards imposed by section
> 2929.05 of the Revised Code, is vacated upon appeal for the sole
> reason that the statutory procedure for imposing the sentence of
> death that is set forth in sections 2929.03 and 2929.04 of the
> Revised Code is unconstitutional, or is vacated pursuant to division
> (C) of section 2929.05 of the Revised Code, **the trial court that
> sentenced the offender shall conduct a hearing to
> resentence the offender. At the resentencing hearing, the
> court shall sentence the offender to life imprisonment with
> parole eligibility after serving twenty full years of**

Page 4 of 17

JM # 23

imprisonment or to life imprisonment with parole eligibility
after serving thirty full years of imprisonment.

(Emphasis added).  This law contained no provision permitting the empaneling of a new and

different jury to conduct death penalty resentencing proceedings, if an offender's death sentence

was vacated on appeal.

In 1987, the Ohio Supreme Court specifically considered whether an offender can be

resentenced to death when the offender's original death sentence is vacated on appeal.  *State v.*

*Penix* (1987), 32 Ohio St.3d 369.  The Court held in its syllabus of that case as follows:

> When an accused is tried by jury and convicted of aggravated
> murder with specification, a death sentence may be imposed by the
> trial judge only upon recommendation of the same jury that tried the
> guilt phase of the proceedings, pursuant to the criteria set forth in
> R.C. 2929.03. **Thus, when a case is remanded to the trial**
> **court following vacation of the death sentence due to error**
> **occurring at the penalty phase of the proceeding, the trial**
> **court, in resentencing the offender, is limited to the**
> **sentences of life imprisonment with parole eligibility after**
> **serving twenty full years of imprisonment or life**
> **imprisonment with parole eligibility after serving thirty full**
> **years of imprisonment. (R.C. 2929.06, applied and**
> **construed.)**

As of the date of his offense and the date of his conviction, under the *Penix* decision and O.R.C.

Section 2929.06 in effect as of the date of the Defendant's offense in this case, Defendant White

could not be resentenced to death, if his original death sentence was vacated by a court of law.

Effective October 16, 1996, _after_ the Defendant's offense and conviction, the Ohio General

Assembly amended Ohio Revised Code Section 2929.06.  The statute was changed to allow for the

empaneling of a new jury to conduct a new resentencing hearing at which a death sentence could

again be considered, under certain circumstances.  The amended statute stated:

Page 5 of 17

JM# 24

> If the sentence of death that is imposed upon an offender is vacated upon appeal because of error that occurred in the sentencing phase of the trial and if division (A)(1) of this section does not apply, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges, shall conduct the hearing. **At the hearing, the court shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.**

(Emphasis added). This statutory change was not made retroactive by the Ohio legislature.

In 2004, the Ohio Supreme Court considered whether the October 16, 1996 amendment permitting the empaneling of a new death penalty sentencing jury applied to persons whose crime was committed <u>before</u> October 16, 1996. In *State v. Williams* (2004), 103 Ohio St.3d 112, the Ohio Supreme Court held that the jury death penalty resentencing provision of Ohio Revised Code Section 2929.06, effective October 16, 1996, was <u>not</u> retroactive. The Court affirmed its prior decision in *Penix* and held that an offender must be resentenced under the version of Ohio Revised Code Section 2929.06 which was in effect at the time of the commission of the murder offense. In its syllabus, the Court held:

> [C]urrent R.C. 2929.06 is inapplicable for resentencing an offender whose offenses occurred prior to the statute's effective date of October 16, 1996. Rather, the law in effect at the time of the offenses applies.

Page 6 of 17

JM # 25

Thus, under Ohio law, as of September 22, 2004, Defendant White, being an offender whose murder offense occurred prior to October 16, 1996, could not be resentenced to death in the State of Ohio.

The Ohio Supreme Court decided the *Williams* case while House Bill 184 was pending in the Senate. House Bill 184, as originally introduced, only amended the penalties for murder in the State of Ohio. It did not contain any provisions amending Ohio Revised Code Section 2929.06. The Senate Judiciary Committee issued Sub. House Bill 184 on November 29, 2004. A major change made by the Senate Judiciary Committee was specifically in response to the Supreme Court's decision in *State v. Williams*. See Comment 7, Bill Analysis, Sub. H.B. 184, 125th General Assembly, (as reported by S. Judiciary). Sub. H.B. 184 was approved by the Senate on November 30, 2004 and approved by the House on December 1, 2004. The bill was signed by the Governor on December 22, 2004. The effective date of the law was March 23, 2005.

In *Williams*, the Ohio Supreme Court held that the jury death penalty resentencing provisions of Ohio Revised Code Section 2929.06 were prospective only and applied only in cases where the offense was committed on or after October 16, 1996. In Sub. H.B. 184, the legislature amended Ohio Revised Code Section 2929.06 and added the following language:

> This section, as amended by H.B. 184 of the 125th General Assembly, **shall apply to all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981**, or for terrorism that was committed on or after May 15, 2002. This section, as amended by H.B. 184 of the 125th general assembly, shall apply equally to all such offenders sentenced to death prior to, on, or after the effective date of that act, **including offenders who, on the effective date of that act, are challenging their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal**

Page 7 of 17

JM # 26

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4390

court but who, as of the effective date of that act, have not yet been resentenced.

The jury death penalty resentencing provisions of Ohio Revised Code Section 2929.06 already applied to offenders whose crimes were committed on or after October 16, 1996.  The 2005 amendment of the statute made those provisions applicable to offenders whose murder offense was committed approximately nine (9) to twenty-four (24) years prior to the effective date of the law, or between October 19, 1981 and October 16, 1996.  The Defendant falls within the category of offenders affected by the 2005 amendment of Ohio Revised Code Section 2929.06.

## ANALYSIS OF O.R.C. SECTION 2929.06 UNDER THE OHIO CONSTITUTION

The Defendant argues that the provisions of O.R.C. Section 2929.06(E) requiring jury death penalty resentencing for the Defendant, an offender whose offense was committed prior to October 16, 1996, are unconstitutional under Article II, §28 of the Ohio Constitution.  That constitutional provision states, in pertinent part, that:

> The general assembly shall have no power to pass retroactive laws.

The State of Ohio argues that O.R.C. Section 2929.06, effective March 23, 2005, is not unconstitutionally retroactive under Article II, §28 of the Ohio Constitution.  Both parties have articulately briefed and orally argued the issues to the Court.

The power to establish crimes, punishments and criminal procedures rests with the Ohio General Assembly. *State v. Young* (1980), 62 Ohio St. 2d 370, 392 and *State v. Morris* (1978), 55 Ohio St. 2d 101, 112.  "It is the General Assembly, of course, that possesses authority to determine the effective dates of enactments passed pursuant to its legislative powers." *State v. Rush* (1998), 83 Ohio St. 3d 53, 57.  However, the Constitution of Ohio prohibits the legislature

Page 8 of  17

JM# 27

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4391

from adopting laws which are unconstitutionally retroactive. "The prohibition against retroactive laws is not a form of words; it is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby." *Lakengren, Inc. v. Kosydar* (1975), 44 Ohio St. 2d 199, 201. "The General Assembly having the power to enact laws, and * * * having enacted laws with certain limitations, and persons having conformed their conduct and affairs to such state of the law, the General Assembly is prohibited, estopped, from passing new laws to reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time." *Miller v. Hixson* (1901), 64 Ohio St. 39, 51.

There is some overlap in the parties' arguments between the *ex post facto* clause of the United States Constitution and the retroactive prohibition in the Ohio Constitution. The Court begins its analysis of this issue by noting that the Ohio and United States constitutional provisions against retrospective laws differ from one another. "Retroactive laws are . . . a larger category than *ex post facto* laws, and comprise statutes imposing 'disabilities' as well as those imposing 'punishments'." *State ex rel. Corrigan v. Barnes* (1982), 3 Ohio App. 3d 40, 44. Further, *ex post facto* prohibitions apply to criminal or penal laws, while retroactive provisions apply to both civil and criminal laws. An examination of the case law interpreting these constitutional provisions establishes that there is a different analysis for the determination of what constitutes an *ex post facto* law under the United States Constitution, as opposed to a retroactive law under the Ohio Constitution. Since the scope of retroactive laws exceeds that of *ex post facto* laws, it is possible

Page 9 of 17

JM# 28

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4392

for a law to be unconstitutional under Article II, §28 of the Ohio Constitution, but constitutional under the *ex post facto* clause of the United States Constitution.

Both the State and Defense correctly point out that ***Calder v. Bull*** (1798), 3 U.S. 386, contains what is still recognized under law as the seminal definition of an *"ex post facto"* law under Article I, §10 of the United States Constitution. ***Collins v. Youngblood*** (1990), 497 U.S. 37. Under that case, an *ex post facto* law is:

1.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.

2.  Every law that aggravates a crime, or makes it greater than it was, when committed.

3.  Every law that changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed.

4.  Every law that alters the legal rules of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offense, in order to convict the offender.

The parties disagree whether Ohio Revised Code Section 2929.06, as amended effective March 23, 2005, falls within any of the ***Calder*** categories above. However, the parties do not dispute that it must fall within one of those categories to constitute an *ex post facto* law under Article I, §10 of the United States Constitution.

The test for constitutionality of a retroactive law under the Ohio Constitution is entirely different from the test of constitutionality under the federal constitution because that test does not involve any consideration of the ***Calder*** categories. The Ohio Supreme Court has, in several clearly

Page 10 of 17

J M # _29_

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4393

written decisions, established the test for the constitutionality of a retroactive law for purposes of the Ohio Constitution.

The analysis of whether a statute is unconstitutionally retroactive under the Ohio Constitution begins with a determination of whether or not the statute is retroactive, because Ohio Revised Code Section 1.48 establishes a presumption that statutes operate prospectively only. If there "is no clear indication of retroactive application, then the statute may only apply to cases arising after its enactment." *VanFossen v. Babcock & Wilson Co.* (1988), 36 Ohio St.3d 100, paragraph 1, syllabus. Indeed, this is the reason that the Ohio Supreme Court held in *State v. Williams*, supra, that Ohio Revised Code Section 2929.06 was prospective only.

In this particular case, the Ohio legislature has, in House Bill 184, clearly expressed in Division (E), an intent that the jury death penalty resentencing provisions of Ohio Revised Code Section 2929.06 apply retroactively. Further support for that intention is evident in the legislative notes for the bill indicating that Division (E) was added as a direct result of the Supreme Court's decision in *State v. Williams*, supra. This Court therefore finds that Ohio Revised Code Section 2929.06, effective March 23, 2005, is a retroactive law within the meaning of Article II, §28. When the legislature clearly expresses an intent that the statute apply retroactively, then a court examining the constitutionality of the statute must go on to analyze whether the statute is remedial or substantive. *State v. Cook* (1998), 83 Ohio St.3d 404, 410 and *VanFossen*, supra, paragraph 2 of syllabus.

Not all retroactive laws violate Article II, §28 of the Ohio Constitution. A purely remedial statute does not violate the Ohio Constitution. *VanFossen* at 107. Remedial laws have been equated with laws that just affect procedures regarding existing rights or obligations. *Id.* In

Page 11 of 17

JM # ___30___

enacting the 2005 amendment to Ohio Revised Code Section 2929.06, the Ohio General Assembly specifically stated that it was clarifying and revising "the procedures that govern the resentencing of a person sentenced to death whose sentence is set aside, nullified, or vacated." Synopsis of SB 184. "By simply labeling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the *Ex Post Facto Clause*. Subtle *ex post facto* violations are no more permissible than overt ones." *Collins*, supra, 497 U.S. at 46. Similarly, the Court finds that it is not bound by the General Assembly's characterization of Sub. H.B. 184 as procedural. See *Rubbermaid, Inc. v. Wayne County Auditor* (2002), 95 Ohio St. 3d 358, 360.

In order to determine whether Ohio Revised Code Section 2929.06, effective March 23, 2005, is remedial or substantive, one must look to the case law of the State of Ohio. The Ohio Supreme Court has defined a substantive law as one which:

(1)  impairs or takes away vested rights;

(2)  affects an accrued substantive right;

(3)  imposes new or additional burdens, duties, obligations or liabilities as to a past transaction;

(4)  creates a new right out of an act which gave no right and imposed no obligation when it occurred;

(5)  creates a new right; or

(6)  gives rise to or takes away the right to sue or defend actions at law.

*VanFossen* at 106-107 (citations omitted). The Supreme Court has also held that in order to constitute a substantive law, there must be a showing of some impairment, burden, deprivation or new obligation which accompanies the new right. *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, paragraph 2 of syllabus.  Remedial laws are "those affecting only the remedy provided. These

Page 12 of 17

JM #  31

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4395

include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Van Fossen* at 107. A remedial law does not establish a new right, obligation or duty. The case law of the Ohio Supreme Court clarifies the distinction.

In *State ex rel. Crotty v. Zangerle* (1938), 133 Ohio St. 532, the Ohio Supreme Court nullified a statute that allowed for the refunding of tax penalties legally paid in prior years. Based upon *Hamilton Cty. Commrs. v. Rosche Bros.* (1893), 50 Ohio St. 103, the *Crotty* court concluded that the statute created a new right by providing a new legal avenue to recover penalties, but that it was unconstitutionally retroactive because it imposed an obligation on the county officials to refund taxes "that did not attach to the transaction when it occurred." *Id.* at 113.

In *Cincinnati School District Bd. of Ed. v. Hamilton* (2001), 91 Ohio St.3d 308, the Ohio Supreme Court analyzed whether a new law which permitted the re-filing of a once dismissed complaint regarding real estate valuation was a remedial or a substantive law. On its face, the law appeared to be merely procedural; i.e., it merely allowed the re-filing of a once dismissed complaint. The Ohio Supreme Court held, however, that the law was substantive and that retroactive application of the law violated Article II, §28 of the Ohio Constitution. The Court noted that the law created a new right; i.e., the right in a property owner to re-file a once dismissed complaint, when that right did not exist under the prior law. The Court also noted that the new law impaired the previously existing right of county officials to have re-filed complaints dismissed and the law imposed new burdens on county officials. Specifically, county officials were required to defend valuation a second time and to possibly have to refund taxes to the property owner in the new valuation action. The law thus met the test for being substantive because it created new

Page 13 of 17



rights and imposed new obligations and burdens. The Court reached a similar conclusion on a different issue involving the same law in *Rubbermaid, Inc. v. Wayne County Auditor* (2002), 95 Ohio St. 3d 358.

In *Kneisley v. Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, the Ohio Supreme Court held that a new law which eliminated the right to a jury trial in a workers' compensation case could not be constitutionally applied retroactively under Article II, §28. The Court specifically held that "the right to a jury trial . . . is substantive, not procedural." *Kneisley* at 356, citing *Cleveland Railway Co. v. Halliday* (1933), 127 Ohio St. 278, paragraph one of the syllabus.

In *State v. Walls* (2002), 96 Ohio St.3d 437, the Ohio Supreme Court analyzed whether a 1997 amendment which eliminated bindover proceedings for juvenile murder offenders, and which provided for automatic prosecution of those offenders in Common Pleas Court, was unconstitutionally retroactive. The Court held that the change in the law was remedial and that it could be applied constitutionally to the offender. The Court noted that under both laws, the State of Ohio had the existing right to pursue prosecution of the juvenile as an adult. The Court further noted that the Defendant was under notice, at the time of the offense, that he could be prosecuted as an adult in the general division of the court of common pleas. The Court held that the law merely changed a procedure regarding how prosecution as an adult would occur, by eliminating the bindover proceeding, and therefore the new law was remedial.

In *State v. Cook* (1998), 83 Ohio St.3d 404, the Ohio Supreme Court considered whether changes to the sex offender registration law were unconstitutionally retroactive. The Ohio Supreme Court held in that case that additional registration and verification requirements placed upon sexual offenders was procedural and remedial for purposes of Article II, §28. In reaching

Page 14 of 17

J M # _____ 33

that holding, the Court noted that Ohio law already placed registration requirements on sexual offenders and that the new law merely changed the frequency and duration of registration requirements and increased the number of classifications.

The *Walls* and *Cook* cases are distinguishable from the facts of this case. In those cases, there was an existing law which permitted the State of Ohio to take some action. In *Walls*, the State of Ohio was already permitted under Ohio law to seek prosecution of a juvenile murder offender as an adult. The new law merely changed the procedures by which that could be done. In *Cook*, the State of Ohio was already permitted to classify and register sex offenders under law. The new law merely changed the registration procedures and classifications of offenders for registration purposes.

This case is analogous to the new rights and new obligations considered and determined substantive by the Supreme Court in *State ex rel. Crotty v. Zangerle, supra, Cincinnati School District Bd. of Ed. v. Hamilton, supra* and *Rubbermaid, Inc. v. Wayne County Auditor, supra*. In this case, there was no existing right under Ohio Revised Code Section 2929.06, as of January 19, 1996, to empanel a new jury for death penalty resentencing. While one might argue that there was an existing right, duty or obligation to seek resentencing, and that the change from a judge resentencing to a jury resentencing was a "procedural" change, this Court rejects that argument because the right to a jury trial is a substantive right under law. The creation of a substantive jury trial right where none existed before, is not remedial in the Court's opinion. Further, the creation of that right was accompanied by some burden. Specifically, the burden to defend a second death penalty proceeding where no such obligation existed under the prior law.

Page 15 of 17

J M #    34

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4398

There has been some argument that the law is not substantive because the Defendant did not have a "vested right" to be resentenced to a life sentence under the prior law. First, it is important to note that deprivation of a vested right is only one hallmark of a substantive retroactive law under Ohio constitutional analysis. There need not be a deprivation of a vested right in order for the law to be deemed a substantive retroactive law. It is sufficient that the law creates a new right and imposes corresponding burdens. See *VanFossen, supra* and *Bielat, supra.*

In applying the above case law to Ohio Revised Code Section 2929.06, as amended in 2005, the Court finds the following:

1. Ohio Revised Code Section 2929.06, effective March 23, 2005, creates a new right, duty or obligation for jury death penalty resentencing when that right, duty or obligation did not exist under the prior law. Further, the law imposes burdens and obligations on the State of Ohio and the Defendant when those obligations did not exist under the prior law.[2]

2. The law does not merely affect "the methods and procedures by which rights are recognized and protected" because there was no right, duty or obligation of jury death penalty resentencing under the former law.

Based upon these findings and the law set forth above, the Court concludes that Ohio Revised Code Section 2929.06, effective March 23, 2005, is unconstitutional under Article II, §28 of the

---

[2]The Defendant argues that the State of Ohio should be prohibited from seeking the death penalty in this case on resentencing. The law states that: "If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing." Accordingly, the law does not seem to give the State of Ohio a choice about pursuing death penalty resentencing. This raises an interesting issue concerning whose right to jury trial is created (i.e., the State of Ohio's or the Defendant's) and who is burdened by that right. The law undoubtedly creates burdens upon the State of Ohio financially (i.e., expenses for indigent attorney fees, prosecution costs, court/jury costs) and it could create evidentiary burdens on the State depending upon the availability of evidence after a potentially long expanse of time between the original and resentencing hearings. The law also creates burdens upon the Defendant, notably the obligation to re-defend against the death penalty when that obligation did not exist under the previous law.

Page 16 of 17

JM# _____ 35



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4399

Ohio Constitution, as it applies to the Defendant, whose crime was committed prior to October 19, 2006.

A jury has already found the Defendant guilty of fatally shooting a State Highway Patrol Trooper in cold blood. Given the gravity of the Defendant's offense, the conclusion in this case is not reached lightly by the Court and it is not reached out of any sympathy for the Defendant or consideration which is not based in law. It is the Court's sworn duty to uphold the laws of the State of Ohio and the Constitution of the State of Ohio. It would be contrary to that oath of office and sworn duty to put any person in jeopardy of death in violation of the Constitution, regardless of the nature of the crime or the identity of the victim.

For the foregoing reasons, the Court SUSTAINS Defense Motion B with regard to the constitutionality of Ohio Revised Code Section 2929.06, effective March 23, 2005, under Article II, §28 of the Ohio Constitution, as it applies to the Defendant. Given the dispositive nature of finding of unconstitutionality on that prong of the motion, the Court does not address the remaining portions of Defense Motions A or B.

Its is ORDERED that the Defendant be sentenced in this case under the provisions of Ohio Revised Code 2929.06 in effect as of January 19, 1996, the date of the offense.

It is so ORDERED.

_Deborah E. Woodward_
Judge Deborah E. Woodward
Ashland County Court of Common Pleas

cc:     Prosecutor
        Defense Attorneys

Page 17 of 17

JM # ___ 36



**Office of the Ohio Public Defender**
8 East Long Street
Columbus, Ohio 43215-2998

www.opd.ohio.gov

(614) 466-5394
Fax (614) 644-0708

TIMOTHY YOUNG
State Public Defender

September 8, 2008

VIA: OVERNIGHT

Clerk, Court of Common Pleas
Butler County
Government Services Center - 5th Floor
315 High Street
Hamilton, Ohio 45011

Re: *State v. Von Clark Davis*
Case No. CR 1983-12-0614

Dear Clerk:

Enclosed please find the original and five (5) copies of Von Clark Davis' Notice of Filing of Additional Authoirty in Support of Pleading M to be filed in the above-captioned case.

Please return a time stamped copy in the envelope provided. Thank you.

Sincerely,

Randall L. Porter
Assistant State Public Defender

RLP/ts

Encls

285570



IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff,                      :        Case No. CR 1983-12-0614

vs.

VON CLARK DAVIS                                  Judge Daniel Andrew Nastoff

    Defendant.                      :

---

## VON CLARK DAVIS' MOTION FOR A TWO DAY EXTENSION FOR THE PARTIES TO SUBMIT BRIEFING ON THE RIPENESS ISSUE

---

Von Clark Davis moves this Court for an extension of two days for both parties to file their pleading regarding the ripeness issue. Von Clark has attached a memorandum that he incorporates in this motion.

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER / 0005835
Assistant State Public Defender

8 East Long Street 11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

1

(243)

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4402

MELYNDA COOK-REICH 0066896

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## MEMORANDUM IN SUPPORT

On August 27, 2008, the Court ordered the parties to submit simultaneous briefing on the issue of ripeness as it relates to his lethal injection challenge. Counsel for Mr. Davis has begun research on the issue. However, lead counsel currently has seventeen capital cases and because of his commitments on some of these other cases he has been unable to complete the drafting of the pleading.

Neither party will be prejudiced if the Court grants this motion. The parties are to simultaneous submit their briefs. Thus, the prosecution will not be deprive of response time. Mr. Davis asks that the order apply to both parties so the prosecution will have no claim that Mr. Davis was able to access its briefing prior to submitting his own briefing. The Court will still have sufficient time to read and study both parties' submissions prior to the oral argument date.

2

WHEREFORE, Mr. Davis respectfully requests this Court to extend the date for both parties to submit their briefing until and including September 19, 2008. Mr. Davis has submitted a proposed entry with this pleading.

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

8 East Long Street -11th Floor
Columbus, Ohio  43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

3

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Motion For A Two Day Extension For The Parties To Submit Briefing On The Ripeness Issue* was forwarded by electronic and first class U.S. mail to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio 45011 on this 17th day of September, 2008.

COUNSEL FOR VON CLARK DAVIS

4

## FACSIMILE FILING COVER

RECIPIENT INFORMATION:

     NAME OF COURT: Court of Common Pleas, Butler County, Ohio

     TITLE OF THE CASE: *State v. Davis*

     CASE NUMBER: 1983 12-0614

     JUDGE: Nastoff

SENDING PARTY INFORMATION:

     NAME: Randall L. Porter

     SUPREME COURT REGISTRATION NUMBER: 0005835

     OFFICE/FIRM: Office of the Ohio Pubic Defender

     ADDRESS: 8 East Long St., 11th Floor, Columbus, Ohio 43215

     TELEPHONE NUMBER: 1-614-752-9215 (Direct)

     FAX NUMBER: 1-614-644-0703

     E-MAIL ADDRESS: Randall.PorterR@OPD.ohio.gov

DOCUMENT BEING SENT

     TITLE: Von Clark Davis' Motion For A Two Day Extension For The
     Parties To Submit Briefing On The Ripeness Issue

     TOTAL PAGES: 6

     DATE SENT: September 17, 2008



## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

STATE OF OHIO,         :

      Plaintiff,      :      **Case No. CR 1983-12-0614**

vs.            :

                   IMAGED

VON CLARK DAVIS    :      **Judge Daniel Andrew Nastoff**

      Defendant.    :

---

## VON CLARK DAVIS' BRIEFING ON THE ISSUE OF RIPENESS

---

On August 28, 2008, this Court entertained oral argument on Mr. Davis' motion to preclude this Court's imposition of the death penalty because the State of Ohio's current procedure for executing individuals violated R.C. 2949.22(A), Article I, § 9 of the Ohio Constitution, and the Eighth Amendment of the United States Constitution.

The Ohio Supreme Court recently addressed this issue in *State, ex rel. Collins v. Burge*, 115 Ohio St. 3d 1470, 2007-Ohio-1576. In that case the Relators instituted a complaint for writ of prohibition to preclude Lorain County Common Pleas Court Judge Burge from holding a pretrial hearing in a trial level death penalty case regarding the constitutionality of lethal injection. [Exhibit 1]. The Relators, while not employing the term "ripeness" challenged the authority of the trial judge to conduct the proceedings prior to the defendant being sentenced to death. [*Id.* at ¶¶ 34-35]. The Relators asserted



VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4407

that "[a] criminal case is not the proper forum for a challenge to the constitutionality of the State's implementation of the statutorily prescribed method of execution, *nor is it the proper time to bring such a challenge. In the event the defendant is convicted and sentenced to death, he could bring such a challenge via a civil suit in state or federal court.*" [*Id.* at ¶ 34] (emphasis added).

Judge Burge moved for judgment on the pleadings. [Exhibit 2]. He fully briefed the issue of ripeness. [*Id.* at pp. 22-29].[1] The Relators in their memorandum in opposition briefed the issue of ripeness. [Exhibit 3, pp. 9-10]. A divided Ohio Supreme Court granted Judge Burge's motion. *State ex rel. Collins v. Burge*, 115 Ohio St. 3d 1470, 2007-Ohio-1576. [Exhibit 4]. While the Court did not issue a published opinion, the basis of its order is clear, "[o]n respondent's answer and motion for judgment on the pleadings. Motion for judgment on the pleadings granted." *Id.*

Prior to the Ohio Supreme Court ruling on the issue, the parties in the criminal case before Judge Burge had briefed the ripeness issue. Judge Burge found that the lethal injection issue was ripe and should be resolved prior to the commencement of the criminal proceedings. [Exhibit 5].

Consequently, the Ohio courts that have addressed this issue have found that the lethal injection issue is ripe for resolution prior to the commencement of a capital case. This is especially true in this case when the trier of fact will only decide the issue of punishment. This conclusion is consistent with Ohio R.

---

[1] To the extent this Court finds that it is not bound by the Ohio Supreme Court decision in *State ex rel. Collins v. Burge*, Mr. Davis adopts by reference all of the arguments made by Judge Burge in his Motion for Judgment on the Pleadings.

2

Crim P. 12. It is also consistent with the practice of this court in this case. Mr. Davis filed a motion to have the death penalty declared unconstitutional. The State did not claim that the issue was not ripe. This Court has not given any indication that it believes that the issue is not ripe. The only difference between the two motions is that one of the pleadings (lethal injection) requires factual development.

Mr. Davis' lethal injection challenge is analogous to a defendant's claim that he cannot be executed because he is mentally retarded. The Ohio Supreme Court has recognized that defendants should raise their mental retardation challenges prior to trial and not wait until the post-judgment or post-conviction setting. *State v. Lott*, 97 Ohio St. 3d, 2002-Ohio-6625, ¶ 25. Consistent with this ruling, the Ohio Supreme Court recently addressed its first mental retardation case in the context of a trial level case. *State v. Were*, 118 Ohio St. 3d 448, 2008-Ohio-2762. That trial court therein conducted the mental retardation hearing prior to the mitigation phase. *Id.* at ¶ 163.

This Court should hold that the lethal injection issue is ripe. It should grant Mr. Davis' motion for funding, permit the parties to conduct the requisite discovery, and then conduct an evidentiary hearing. The Court should proceed to the sentencing hearing only after it has determined that Ohio's lethal injection protocol satisfies R.C. 2949.22(A), Article I, § 9 of the Ohio Constitution and the Eighth Amendment of the United States Constitution.

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

3

RANDALL L. PORTER - 0005835
Assistant State Public Defender

8 East Long Street -11th Floor
Columbus, Ohio  43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
Randall.Porter@opd.Ohio.gov

And

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

4

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Briefing On The Issue Of Ripeness* was forwarded by first class U.S. mail to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio  45011 on this 19th day of September, 2008.

COUNSEL FOR VON CLARK DAVIS

5

IN THE SUPREME COURT OF OHIO

State of Ohio, ex rel.
Terry Collins, Director
Ohio Department of
Rehabilitation and Correction
1050 Freeway Drive North
Columbus, Ohio 43229

       CASE NO.  ___07-1576___

and

       ORIGINAL ACTION IN
       PROHIBITION

State of Ohio, ex rel.
Ohio Department of
Rehabilitation and Correction
1050 Freeway Drive North
Columbus, Ohio 43229

       Relators,

       v.

The Honorable James M. Burge
in his Official Capacity as Judge of the
Lorain County Court of Common Pleas
225 Court Street, 1st Floor
Elyria, Ohio  44035

       Respondent.

---

**COMPLAINT FOR WRIT OF PROHIBITION
WITH AFFIDAVIT AND ATTACHMENTS**

---

FILED

AUG 2 2 2007

CLERK OF COURT
SUPREME COURT OF OHIO

EXHIBIT
1



MARC DANN
Ohio Attorney General


BRIAN J. LALIBERTE (0071125) (COUNSEL OF RECORD)
Deputy First Assistant Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-728-4527
614-466-5087 (fax)
blaliberte@ag.state.oh.us

JANET R. HILL ARBOGAST
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
614-644-7233
614-728-9327 (fax)
jarbogast@ag.state.oh.us

Counsel for Relators

Relators, Terry Collins, Director of the Ohio Department of Rehabilitation and Correction, and the Ohio Department of Rehabilitation and Correction, hereby state their Complaint in Prohibition against Respondent, the Honorable James M. Burge, in his official capacity as the Lorain County Court of Common Pleas Judge assigned to Lorain County Common Pleas Case No. 04CR065940, *State of Ohio v. Ruben Rivera*, as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Complaint in Prohibition pursuant to the Ohio Constitution Article IV, Section 2(B)(1)(b) and S. Ct. R. X(1)(A).  This Court also has personal jurisdiction since this matter involves a controversy between Ohio parties and the underlying event occurred within the geographic limits of this Court.

## PARTIES

2.      Relator Terry Collins ("Director Collins") is the Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), located at 1050 Freeway Drive North, Columbus, Ohio.  As Director, Relator Collins is the executive head of ODRC, and all duties conferred on the various divisions and institutions of the department by law or by order of the director are performed under such rules and regulations as he prescribes, and are under his control, pursuant to R.C. 5120.01.

3.      Relator ODRC is an administrative department of the State of Ohio, as created by R.C. 121.02(P).

4.      Respondent James M. Burge is the judge assigned to Lorain County Common Pleas Court Case No. 04CR065940, *State of Ohio v. Ruben Rivera*.  The Lorain County Common Pleas Court is a court organized and existing pursuant to Article IV, Section 4 of the Ohio Constitution and is located in Elyria, Ohio.  It is Judge Burge's clear legal duty to be fair and

1

impartial, uphold the rule of law in his decisions, and exercise jurisdiction provided by statute in all criminal actions and proceedings.

## INTRODUCTION

5.     Relators Collins and ODRC bring this action to prevent the exercise of judicial power absent any jurisdiction or authority under the laws of the State of Ohio. In a criminal case pending before him, Respondent Judge Burge has appointed a special counsel to present a constitutional challenge to the manner in which Relators implement the statutorily required method for the execution of condemned prisoners. Respondent has directed Relators to produce various categories of information concerning the manner in which Relators implement the statutorily required method. Respondent has ordered a hearing to investigate the manner in which Relators implement the statutorily required method. Judge Burge has no jurisdiction and no judicial power to do any of these things in the context of a criminal prosecution.

6.     Respondent's appointment of a special counsel clearly exceeds the authority conferred upon him by Ohio's statutes. Respondent's order to Relators to produce information concerning the manner in which Relators implement the statutorily required method for the execution of condemned prisoners clearly exceeds the narrow scope of discovery in criminal cases permitted by Ohio's criminal rules. Respondent's independent investigation of the manner in which Relators implement the statutorily required method clearly exceeds the jurisdiction of the common pleas courts to adjudicate allegations of criminal offenses.

7.     It is only in such a rare and extreme circumstance that the Relators would ask this Court to prohibit action by a trial court. As detailed in the Complaint, Relators have taken reasonable steps to facilitate correction of this error by Respondent before filing this action to no avail.

2

## STATEMENT OF FACTS

8.      On August 19, 2004, the Grand Jury for Lorain County indicted Ruben Rivera (hereinafter "Rivera") for aggravated murder in violation of R.C. 2903.01(A) with a capital murder specification; aggravated murder in violation of R.C. 2903.01(B) with a capital murder specification; aggravated burglary in violation of R.C. 2911.11(A)(1); aggravated burglary in violation of R.C. 2911.11(A)(2); aggravated robbery in violation of R.C. 2911.01(A); aggravated robbery in violation of R.C. 2911.01(A)(3); murder in violation of R.C. 2903.02(A); murder in violation of R.C. 2903.02(B); felonious assault in violation of R.C. 2902.11(A)(1) and (2); and tampering with evidence in violation of R.C. 2921.12(A).

9.      On August 25, 2004, Rivera was arraigned, at which time he entered pleas of not guilty. The case was assigned to Judge McGough. Finding Rivera indigent, the Common Pleas Court appointed attorneys Kreig Brusnahan and Kenneth Lieux to represent Rivera.

10.     On August 27, 2004, the case was called for pretrial. The court directed that all procedural motions be filed by October 27, 2004. A further pretrial was set for September 23, 2004. Rivera waived the statutory time for speedy trial pursuant to R.C. 2945.71.

11.     Status conferences were held by the Court, with Judge McGough presiding, on September 23, 2004, October 28, 2004, December 2, 2004, December 30, 2004, March 29, 2005, April 22, 2005, January 26, 2006, June 8, 2006 and October 30, 2006.

12.     Rivera waived the statutory time for a speedy trial at each status conference.

13.     In January of 2007, Judge Burge assumed the docket of Judge McGough.

3

14. On March 1, 2007, Rivera filed among other pleadings a "Motion to Declare the Death Penalty Unconstitutional Due to Lethal Injection Constitutes Cruel and Unusual Punishment." In a memorandum in support of his motion, Rivera indicated that his motion challenged the particular procedures that would be used to implement lethal injection, and that he intended to request an evidentiary hearing in which he could present evidence concerning these procedures. Rivera's motion did not allege nor did he argue in support of his motion that implementation of lethal injection under any or all circumstances would constitute cruel and unusual punishment in violation of the Eighth Amendment. *See* Motion and Memorandum in Support, attached as Exhibit A.

15. On April 10, 2007, Rivera filed a "Supplemental Authority in Support of Motion to Declare the Death Penalty Unconstitutional." The supplemental authority consisted of an order and opinion by the United States District Court for the Southern District of Ohio in which the district court granted a preliminary injunction to permit a death-sentenced prisoner in Ohio to litigate a civil suit challenging Ohio's use of lethal injection on constitutional grounds. In that case, the prisoner does not claim that use of lethal injection in all circumstances is constitutionally forbidden or that use of lethal injection renders his adjudged death sentence constitutionally infirm. See Supplemental Authority, attached as Exhibit B.

16. On May 29, 2007, Judge Burge appointed attorney Jeffrey Gamso as "special counsel" to assist the defendant in preparing for an evidentiary hearing concerning his motion to declare the death penalty unconstitutional. *See* Journal Entry, attached as Exhibit C.

17. On June 8, 2007, the defendant filed a memorandum stating that his challenge to the constitutionality of the lethal injection procedure was ripe for review.

4

18. On June 18, 2007, the State opposed the defendant's memorandum concerning ripeness, and affirmatively asserted that the constitutional challenge to the lethal injection procedure was not ripe because the defendant has neither been found guilty of a capital specification nor received a death sentence; therefore, the defendant's claim rests solely on a future event that may not occur at all.

19. On June 20, 2007, Judge Burge issued an order directing ODRC and its Director, Terry Collins, to produce the following information by July 2, 2007:

a. An exhaustive and detailed list of all equipment and supplies used in the lethal injection process;

b. Specifications and maintenance procedures for all equipment and supplies identified in #1 above;

c. Specifications on the set-up of the intravenous bag of fluids, drip chamber(s), flow regulator(s), IV tubing, stopcock(s), injection port(s), and/or means of injection;

d. Specifications, plans and procedures to be implemented when intravenous access cannot be obtained through an arm or a leg;

e. The physical design, layout and dimensions (including any blueprints or diagrams) of the execution chamber and surrounding areas used in the lethal injection process;

f. Specifications and maintenance procedures for how the drugs used in the lethal injection process are acquired, stored, maintained, examination of their shelf life and expiration dates, and how they are prepared for administration; and

g. An exhaustive and detailed list setting forth the qualifications, certifications, training, experience and background of all persons who participate in any way in the preparation and carrying out of the lethal injection process.

In complying with paragraph #7 above, the Ohio Department of Rehabilitation and Corrections and Director Terry Collins may refrain from disclosing specific identifying information such as name, address and social security number.

5

*See* Journal Entry, attached as Exhibit D. None of these items reasonably relate to any issue of the defendant's guilt or sentence before Judge Burge.

20.     On June 28, 2007, in an effort to potentially avoid having to take the extraordinary step of filing a complaint for writ of prohibition, Relators filed a motion for clarification of Judge Burge's order directing them to produce the above information. *See* Motion for Clarification, attached as Exhibit E. In that motion, Relators noted that the Court's order was one of first impression since, among other things, it ordered Relators, who are not parties to the *Rivera* criminal action, to produce information concerning the lethal injection protocol. Relators' motion requested that the Court clarify the authority upon which its order was based.

21.     On July 9, 2007, a hearing was held at which time Judge Burge ordered the parties to submit proposed entries regarding the issue of ripeness. Relators' presence was not requested by the Court. Judge Burge further ordered the defendant to submit a proposed order regarding the previous order directing Relators to produce the above-mentioned information concerning the lethal injection procedure.

22.     On July 24, 2007, Judge Burge issued an order regarding Relators' motion for clarification in which he held that his court had jurisdiction to order the Relators to produce information because they are parties to the criminal case. More specifically, Judge Burge found that ODRC "is an agency of the State of Ohio and Collins is the Director of that agency. Further, the Court observes that the prosecution in this case is brought in the name of the State of Ohio making the State and its agencies party to the action." *See* Opinion and Journal Entry, pp. 2-3, attached as Exhibit F.

6

23.    Respondent Judge Burge further held in his July 24, 2007, order that his court has the authority to demand that non-parties appear before the court with tangible items. *See* Exhibit F, p. 3. Respondent also stated that he issued the June 20, 2007, order after the Relators failed to fully comply with a subpoena *duces tecum* that was served on them by defendant's counsel. *See* Exhibit F, p. 3.

24.    Also in the July 24, 2007, order, Judge Burge held that Crim. R. 16 does not apply to these circumstances because he had ordered the Relators to provide the information to the Court rather than to the defendant. *See* Exhibit F, p. 3. Moreover, Judge Burge found Crim. R. 16 inapplicable because the documents at issue "are not sought for litigation over defendant's innocence or for purposes of mitigation. * * * The materials are intended for use in determining the constitutionality of lethal injection." *See* Exhibit F, p. 4.

25.    In the July 24, 2007, order, Respondent ultimately ordered Relators to produce the same information he had previously ordered produced, but noted that Relators are not required to produce documentation that does not otherwise exist. *See* Exhibit F.

26.    Also on July 24, 2007, Respondent issued an order holding that the issue of the constitutionality of the lethal injection procedure is ripe for review as a predicate issue before a trial will be held on the criminal charges pending against Rivera. Respondent further ordered that a hearing will be held on the constitutional issue presented by Rivera's motion. *See* Journal Entry attached as Exhibit G. Mr. Gamso, as special counsel, will present the case against the constitutionality of the lethal injection procedure.

27.    Judge Burge has also appointed Mr. Gamso as special counsel in another case, *State of Ohio v. Ronald McCloud*, Lorain County Common Pleas Case No. 05CR068067, to assist McCloud in his challenge to the constitutionality of the implementation of the statutorily

7

prescribed method of execution in Ohio. *See* Judgment Entry attached as Exhibit H. Hence, the question presented and relief requested in this Complaint have significant implications in at least two capital murder prosecutions pending before Judge Burge.

## PROHIBITION ALLEGATIONS

28.    Relators are entitled to a writ of prohibition because Relators can show (1) that Judge Burge is about to exercise judicial power, (2) the exercise of that power is not authorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Mason, Pros. Atty. v. Griffin, Judge*, 104 Ohio St.3d 279, 2004-Ohio-6384, citing *Campaign to Elect Larry Carver Sheriff v. Campaign to Elect Anthony Stankiewicz Sheriff*, 101 Ohio St.3d 256, 2004-Ohio-812. In cases of a patent and unambiguous lack of jurisdiction, the requirement of a lack of an adequate remedy at law need not be proven because the availability of alternate remedies like appeal would be immaterial. *State ex rel. Goldberg v. Mahoning Cty. Bd. of Elections* (2001), 93 Ohio St.3d 160, 162, 753 N.E.2d 192.

29.    Judge Burge's unusual and unprecedented appointment of Mr. Gamso as a special counsel to investigate the implementation of Ohio's statutorily prescribed method for the execution of condemned prisoners clearly exceeds his authority under law. A court of common pleas may not conduct any proceeding or take any action unless such proceeding or action is authorized by Ohio statutes. *State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384. A common pleas court has no inherent authority to appoint counsel, but can only appoint counsel where specifically authorized by statute. *State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658. There are no statutory provisions that authorize a trial court in a criminal case to appoint special counsel to subpoena witnesses or to conduct an investigation and hearing

8

concerning a matter collateral to the legality or appropriateness of the defendant's guilt, conviction or sentence.

30. Judge Burge has ordered that ODRC and Director Collins provide the court with information concerning the State's implementation of Ohio's statutorily prescribed method of execution. There is no authority that permits the defendant in a criminal case to compel the production of such information from the prosecution or from third parties.

31. Indeed, Judge Burge concedes that the information and records compelled to be produced "are not sought for litigation over defendant's innocence or for purposes of mitigation or punishment" and that "Crim. R. 16 is silent on discovery procedures in issues ancillary to the criminal case itself." Journal Entry of July 24, 2007, Attachment F, page 4.

32. There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey* (1977), 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30. In Ohio, discovery in criminal cases is authorized only to the extent specifically permitted by the Ohio Rules of Criminal Procedure. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph 2 of the syllabus (discovery from the opposing party in a criminal case was limited to the discovery authorized by Rule 16 of the Ohio Rules of Criminal Procedure).

33. Accordingly, Judge Burge is without jurisdiction or authority to issue the orders for production of information because those orders (a) do not require ODRC and Director Collins to produce for examination at trial, or at a hearing, specific documents relevant to the defendant's guilt or innocence or degree of punishment (Rivera's motion challenges the method of his execution and not the state's right to execute him); and (b) do not require the production at trial, or at a hearing, of specific documents in response to a properly served subpoena as provided by Crim R. 17. *See State of Ohio v. Cleveland Plain Dealer* (8th Dist., June 15, 1979),

9

1979 Ohio App. LEXIS 10995 (Rule 17 can be used only to compel the production of specific documents at a formal court proceeding).

34.    Judge Burge has ordered an evidentiary hearing, within the confines of a criminal prosecution, concerning Relators' implementation of Ohio's statutorily prescribed method for the execution of condemned prisoners.  A criminal case is not the proper forum for a challenge to the constitutionality of the State's implementation of the statutorily prescribed method of execution, nor is it the proper time to make such a challenge.  In the event the defendant is convicted and sentenced to death, he could bring such a challenge via a civil suit in state or federal court.  This Court has held that an inmate claiming that actions by prison authorities violated his rights under the Eighth Amendment has an adequate remedy at law via a civil suit pursuant to 42 U.S.C. §1983.  *Waites v. Gansheimer*, 110 Ohio St.3d 250, 251, 2006-Ohio-4358, ¶6 (inmate should have filed an action under 42 U.S.C. §1983 to assert his Eighth Amendment claim alleging denial of medical care rather than a habeas corpus action).  Judge Burge is without jurisdiction to consider the defendant's challenge to the constitutionality of the method of execution.

35.    Judge Burge's jurisdiction is limited solely to determining whether the imposition of a *sentence* of death is consistent with the Eighth Amendment.  He is without jurisdiction in the course of a criminal prosecution to direct Relators to implement in a particular manner a validly imposed sentence to death by lethal injection, or to suspend implementation of a validly imposed sentence of death pending alteration of the means used by Relators to implement the sentence. *See State v. Smith* (1989), 42 Ohio St.3d 60, 537 N.E.2d 198, paragraph 1 of the syllabus (courts of common pleas do not have inherent power to suspend execution of a sentence in a criminal case and may order such suspension only as authorized by statute).  Accordingly, Judge Burge is

10

without jurisdiction to compel the production of documents and conduct the evidentiary hearing that he has ordered.

36.     Because Judge Burge's orders are clearly without jurisdiction or legal authority, there is no need for Relators to demonstrate that they have no adequate remedy at law.

### PRAYER

WHEREFORE, Relators pray for the following relief:

A.      That the Court issue a writ of prohibition directing Respondent, Lorain County Common Pleas Judge James M. Burge, to vacate his orders directing ODRC and Director Collins to provide documents and information in response to Attorney Gamso's requests and in compliance with his unlawful discovery orders;

B.      That the Court issue a writ prohibiting Respondent from holding hearings concerning the constitutionality of the statutorily prescribed method of execution;

C.      That the Court issue a writ prohibiting Respondent from exercising jurisdiction over Rivera's challenge to Relators' implementation of the statutorily prescribed method for the execution of condemned prisoners; and

D.      That the Court order all other relief necessary to effect the foregoing.

Respectfully submitted,

MARC DANN
Ohio Attorney General

BRIAN J. LALIBERTE (0071125)
(COUNSEL OF RECORD)
Deputy First Assistant Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-728-4527
614-466-5087 (fax)
blaliberte@ag.state.oh.us

11

JANET R. HILL ARBOGAST (0061955)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
614-644-7233
614-728-9327 (fax)

Counsel for Relators

12

IN THE SUPREME COURT OF OHIO

State of Ohio, ex rel.
Terry Collins, et al.,                          CASE NO. _____

          Relators,                     ORIGINAL ACTION IN
                                                PROHIBITION

    v.

The Honorable James M. Burge,

        Respondent.

## AFFIDAVIT OF BRIAN LALIBERTE

State of Ohio      :
               : ss
County of Franklin  :

     I, Brian J. Laliberte, counsel for Relators, being first duly sworn, depose and state

that the following facts and claims brought by Relators in their complaint for writ of

prohibition are true and accurate to the best of my knowledge:

     I.     On August 19, 2004, in the case of *State of Ohio v. Ruben Rivera*, Case

No. 04CR065940, the Grand Jury for Lorain County indicted Ruben Rivera (hereinafter

"Rivera") for aggravated murder in violation of R.C. 2903.01(A) with a capital murder

specification; aggravated murder in violation of R.C. 2903.01(B) with a capital murder

specification; aggravated burglary in violation of R.C. 2911.11(A)(1); aggravated

burglary in violation of R.C. 2911.11(A)(2); aggravated robbery in violation of R.C.

2911.01(A); aggravated robbery in violation of R.C. 2911.01(A)(3); murder in violation

of R.C. 2903.02(A); murder in violation of R.C. 2903.02(B); felonious assault in

violation of R.C. 2902.11(A)(1) and (2); and tampering with evidence in violation of

R.C. 2921.12(A).

2.     On August 25, 2004, Rivera was arraigned, at which time he entered pleas of not guilty.  The case was assigned to Judge McGough.  Finding Rivera indigent, the Common Pleas Court appointed attorneys Kreig Brusnahan and Kenneth Lieux to represent Rivera.

3.     On August 27, 2004, the case was called for pretrial.  The court directed that all procedural motions be filed by October 27, 2004.  A further pretrial was set for September 23, 2004.  Rivera waived the statutory time for speedy trial pursuant to R.C. 2945.71.

4.     Status conferences were held by the Court, with Judge McGough presiding, on September 23, 2004, October 28, 2004, December 2, 2004, December 30, 2004, March 29, 2005, April 22, 2005, January 26, 2006, June 8, 2006 and October 30, 2006.

5.     Rivera waived the statutory time for a speedy trial at each status conference.

6.     In January of 2007, Judge Burge assumed the docket of Judge McGough.

7.     On March 1, 2007, Rivera filed a motion to declare the death penalty unconstitutional because the use of lethal injection allegedly constitutes cruel and unusual punishment; a motion to continue the trial date; and, a motion for funds to hire an anesthesiologist and neurologist as expert witnesses.

8.     On May 29, 2007, Judge Burge appointed attorney Jeffrey Gamso to assist the defendant in preparing for an evidentiary hearing on the motion to declare the death penalty unconstitutional because the use of lethal injection allegedly constitutes cruel and unusual punishment.

2

9.     On June 8, 2007, the defendant filed a memorandum regarding the issue of whether his challenge to the constitutionality of the lethal injection procedure is ripe for review.

10.     On June 18, 2007, the State filed a brief in opposition to the defendant's memorandum regarding ripeness.

11.     On June 20, 2007, Judge Burge issued an order directing ODRC and its Director, Terry Collins, to produce the following information by July 2, 2007:

    a.     An exhaustive and detailed list of all equipment and supplies used in the lethal injection process;

    b.     Specifications and maintenance procedures for all equipment and supplies identified in #1 above;

    c.     Specifications on the set-up of the intravenous bag of fluids, drip chamber(s), flow regulator(s), IV tubing, stopcock(s), injection port(s), and/or means of injection;

    d.     Specifications, plans and procedures to be implemented when intravenous access cannot be obtained through an arm or a leg;

    e.     The physical design, layout and dimensions (including any blueprints or diagrams) of the execution chamber and surrounding areas used in the lethal injection process;

    f.     Specifications and maintenance procedures for how the drugs used in the lethal injection process are acquired, stored, maintained, examination of their shelf life and expiration dates, and how they are prepared for administration; and

    g.     An exhaustive and detailed list setting forth the qualifications, certifications, training, experience and background of all persons who participate in any way in the preparation and carrying out of the lethal injection process.

12.     On June 28, 2007, in an effort to potentially avoid having to take the extraordinary step of filing a complaint for writ of prohibition, Relators filed a motion for

3

clarification of Judge Burge's order directing them to produce the above information. In that motion, Relators noted that the Court's order was one of first impression since, among other things, it ordered Relators, who are not parties to the *Rivera* criminal action, to produce information concerning the lethal injection protocol. Relators' motion requested that the Court clarify the authority upon which its order was based.

13. On July 9, 2007, a hearing was held between the parties at which time Judge Burge ordered the parties to submit proposed entries regarding the issue of ripeness. Relators' presence was not requested by the Court. Judge Burge further ordered the defendant to submit a proposed order regarding the previous order directing Relators to produce the above-mentioned information concerning the lethal injection procedure.

14. On July 24, 2007, Judge Burge issued an order regarding Relators' motion for clarification in which he noted that his court had jurisdiction to order the Relators to produce information because they are parties to the criminal case. More specifically, Judge Burge found that ODRC "is an agency of the State of Ohio and Collins is the Director of that agency. Further, the Court observes that the prosecution in this case is brought in the name of the State of Ohio making the State and its agencies party to the action."

15. Respondent Judge Burge further held in his July 24, 2007, order that his court has the authority to demand that non-parties appear before the court with tangible items. Respondent also stated that he issued the June 20, 2007, order after the Relators failed to fully comply with a subpoena *duces tecum* that was served on them by defendant's counsel.

4

16.     Also in the July 24, 2007, order, Judge Burge found that Crim. R. 16 does not apply to these circumstances because he had ordered the Relators to provide the information to the Court rather than to the defendant.  Moreover, Judge Burge found Crim. R. 16 inapplicable because the documents at issue "are not sought for litigation over defendant's innocence or for purposes of mitigation.  * * * The materials are intended for use in determining the constitutionality of lethal injection."

17.     In the July 24, 2007, order, Respondent ultimately ordered Relators to produce the same information he had previously ordered produced, but noted that Relators are not required to produce documentation that does not otherwise exist.

18.     Also on July 24, 2007, Respondent issued an order holding that the issue of the constitutionality of the lethal injection procedure is ripe for review as a predicate issue before a trial will be held on the criminal charges pending against Rivera. Respondent further ordered that a hearing will be held on the constitutional issue concerning the death penalty.

19.     Based on the facts contained in ¶¶ 1-18 above, Relators bring this action in prohibition because Respondent Judge Burge exceeded his authority by exercising jurisdiction over Relators who are not parties to the underlying criminal action in which the issue of the constitutionality of Ohio's lethal injection protocol is not ripe for review and has been brought in the wrong forum at the wrong time.

FURTHER AFFIANT SAYETH NAUGHT.

BRIAN J. LALIBERTE (0071125)
Deputy First Assistant Attorney General
Counsel for Relators

5

Sworn to and subscribed in my presence this _22ᵈ_ day of August, 2007.

_Richard Cholar Jr_
NOTARY PUBLIC

NOTARIAL SEAL
STATE OF OHIO

RICHARD T. CHOLAR, JR.
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

6



IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO
CRIMINAL DIVISION



FILED
LORAIN COUNTY

2007 MAR -1 P 1:12

CLERK OF COMMON PLEAS
RON NABAKOWSKI

STATE OF OHIO,                     CASE NO. 04CR065940

           Plaintiff,             JUDGE JAMES BURGE

vs.

RUBEN RIVERA,                     MOTION TO DECLARE THE DEATH
                                  PENALTY UNCONSTITUTIONAL DUE
           Defendant              TO LETHAL INJECTION CONSTITUTES
                                  CRUEL AND UNUSUAL PUNISHMENT

                                  (Oral Hearing Requested)

        Now comes the Defendant, Ruben Rivera, by and through counsel, and respectfully moves

this Court for an order dismissing that portion of the aggravated murder indictment in the above-

captioned matter which elevates the potential penalty from life imprisonment to death for the reasons

stated in the accompanying Memorandum.

                                  Respectfully submitted,

                                  KENNETH M. LIEUX (#0014148)
                                  110 Middle Avenue, 2nd Floor
                                  Elyria, OH 44035
                                  (440) 323-6180
                                  Attorney for Defendant

RECEIVED
2007 MAR -2 P 12:27
THIS P. HILL
LORIN ATTORNEY

1

EXHIBIT
A

## MEMORANDUM IN SUPPORT

The Eighth Amendment to the United States Constitution and Article I, § 9 of the Ohio Constitution prohibit the infliction of cruel and unusual punishment. The Eighth Amendment's protections are applicable to the states through the Fourteenth Amendment. Robinson v. California, 370 U.S. 660 (1962). Punishment that is "excessive" constitutes cruel and unusual punishment. Coker v. Georgia, 433 U.S. 584 (1977). The underlying principle of governmental respect for human dignity is the Court's guideline to determine whether this statute is constitutional. See Furman v. Georgia, 408 U.S. 238 (1972) (Brennan, J., concurring); Rhodes v. Chapman, 452 U.S. 337, 361 (1981); Trop v. Dulles, 356 U.S. 86 (1958).

**A.    Lethal Injection Is Cruel and Unusual Punishment.**

Ohio Rev. Code authorizes execution by a "lethal injection.: This mode of punishment offends contemporary standards of decency. Trop v. Dulles, 336 U.S. at 101. Lethal injection inflict unnecessary pain and suffering.

Defendant intends to present expert testimony at a Hearing on this Motion to establish that legal injection constitutes cruel and unusual punishment.,

**B.    Conclusion.**

Ohio's death penalty scheme that authorizes lethal injection constitutes cruel and unusual punishment. The procedures actually promote the imposition of the death penalty and, thus, are constitutionally intolerable. Ohio Revised Code §§2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10, and 16 of the Ohio Constitution. Furthermore, subjecting Defendant to the prospect of capital punishment violates international law and the Supremacy Clause of the United States Constitution.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4433

For the foregoing reasons, the Defendant Ruben Rivera respectfully moves this Court for an order dismissing that portion of the aggravated murder indictment which elevates the potential penalty from life imprisonment to death.

Respectfully submitted,

KENNETH M. LIEUX (0014148)
110 Middle Avenue, 2nd Floor
Elyria, Ohio 44035
(440) 323-6180
Attorney for Defendant

**CERTIFICATE OF SERVICE** *Tony Cillo*

A copy of the foregoing Motion was served upon ~~Sherry Glass~~, Assistant Prosecuting Attorney, Lorain County Prosecutor's Office, 225 Court Street, Elyria, Ohio 44035, this 28th day of February, 2007.

KENNETH M. LIEUX
Attorney for Defendant

3

FILED
LORAIN COUNTY

2007 APR 10  A 11: 59

CLERK OF COMMON PLEAS
RON NABAKOWSKI

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

STATE OF OHIO,                    )    CASE NO: 04CR065940
                                  )    JUDGE JAMES BURGE
          Plaintiff              )
                                  )
     -vs-                         )    SUPPLEMENTAL AUTHORITY IN
                                  )    SUPPORT OF MOTION TO DECLARE
RUBEN RIVERA,                     )    THE DEATH PENALTY
                                  )    UNCONSTITUTIONAL
          Defendant              )

Defendant, through counsel, respectfully submits this supplemental authority in support of

the *Motion to Declare the Death Penalty Unconstitutional due to Lethal Injection Constitutes Cruel*

*and Unusual Punishment* filed March 1, 2007. Attached hereto for consideration by the Court are

the following:

1. ORDER granting Preliminary Injunction filed by Judge Gregory Frost of the United

   States District Court for the Southern District of Ohio, Eastern Division in *Cooey, et al.*

   *v. Taft, et al.*, Case No. 2:04-cv-1156;

2. Memorandum of Intended Decision filed by Judge Jeremy Fogel of the United States

   District Court for the Northern District of California, San Jose Division in *Morales v.*

   *Tilton*, 2006 U.S. Dist. LEXIS 92243; and

3. ORDER filed by Judge Fernando Gaitan, Jr. of the United States District Court for the

   Western District of Missouri, Central Division in *Taylor v. Crawford*, Case No. 05-4173-

   CV-C-FJG.

EXHIBIT
B

Respectfully submitted,

KENNETH M. LIEUX #0014148
Attorney for Defendant
110 Middle Ave., 2nd Floor
Elyria, OH 44035
(440) 323-6180

And

KREIG J. BRUSNAHAN #0031147
Attorney for Defendant
158-A Lear Road
Avon Lake, Ohio  44012
(440) 930-2600

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served upon Dennis Will, Lorain County Prosecutor, 225 Court Street., 4th floor, Elyria, Ohio  44035 by ordinary U.S. mail on this 10th day of April, 2007.

KREIG J. BRUSNAHAN
Attorney for Defendant

Case 2:04-cv-01156    P-MRA    Document 45    Filed 04/2  2006    Page 1 of 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD COOEY,

and

JEFFREY D. HILL,

     Plaintiffs,

    v.

ROBERT TAFT, Governor,          Case No. 2:04-cv-1156
                                   JUDGE GREGORY L. FROST
REGINALD WILKINSON, Director,    Magistrate Judge Abel

and

JAMES HAVILAND, Warden,

     Defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

Jeffrey Hill, a state prisoner sentenced to death by the State of Ohio, is a plaintiff in a

civil rights action pending before this Court that challenges multiple facets of the lethal injection

protocol used by the State of Ohio. This matter is before the Court on Plaintiff Hill's emergency

motion for a preliminary injunction, *i.e.*, a stay of execution. (Doc. # 37.) For the reasons that

follow, the Court finds the motion well taken. Thus, it is ORDERED, ADJUDGED, and

DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from

implementing an order for the execution of Jeffrey D. Hill issued by any court of the State of

Ohio until further Order from this Court.

Plaintiff Richard Cooey initiated in this Court a civil rights action challenging multiple

facets of Ohio's lethal injection protocol as violating the Eighth Amendment's prohibition

against cruel and unusual punishment. These proceedings have been stayed since April 13, 2005, when the Court issued an order granting Defendants' motion for an order certifying an interlocutory appeal to the United States Court of Appeals for the Sixth Circuit concerning the issue of whether Plaintiffs' action is time-barred. (Doc. # 21.) On August 24, 2005, the Sixth Circuit issued an order expanding the scope of the interlocutory appeal to include the issues of whether Plaintiffs' action is barred by *res judicata* and whether Plaintiffs' action should be construed as a habeas corpus action pursuant to 28 U.S.C. § 2254 instead of a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. # 22.)

On January 19, 2006, this Court issued an order granting Plaintiff Jeffrey Hill permission to intervene. (Doc. # 35.) On April 12, 2006, the Supreme Court of Ohio set an execution date for Plaintiff Hill, *i.e.*, June 15, 2006. (Plaintiff's Emergency Motion for Preliminary Injunction, Doc. # 37, at 1.) Accordingly, Plaintiff Hill filed the instant Emergency Motion for Preliminary Injunction on April 14, 2006. Also before the Court are the Defendants' brief in opposition (Doc. # 39) and Plaintiff's reply memorandum (Doc. # 42).

On April 28, 2006, this Court conducted an informal telephone conference in accordance with S.D. Ohio Civ. R. 65.1. During that conference, the parties agreed to forego a hearing and have this Court resolve the preliminary injunction motion on their briefs.

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). The decision of whether to issue a preliminary injunction rests within the discretion of

2

the district court. *See, e.g., N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989).

In determining whether to exercise its discretion to grant a preliminary injunction, a district court

must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en

banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir.

1995)). The parties should note that "findings of fact and conclusions of law made by a district

court in granting a preliminary injunction are not binding at a trial on the merits." *United States*

*v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *University of Texas v.*

*Camenisch*, 451 U.S. 390 395 (1981)).

Addressing the stay-of-execution issue in the context of a method-of-execution

challenge, the Supreme Court of the United States in *Nelson v. Campbell*, 124 S.Ct. 2117, 2125-

26 (2004), observed that, "the mere fact that an inmate states a cognizable § 1983 claim does not

warrant the entry of a stay as a matter of right." The Supreme Court pointed to its decision in

*Gomez v. United States Dist. Court for Northern Dist. of California*, 503 U.S. 653 (1992) (*per*

*curiam*), where it left open the question of whether an inmate's claim was cognizable under §

1983, but vacated the stay of execution nonetheless because the inmate "waited until the 11[th]

hour to file his challenge despite the fact that California's method of execution had been in place

for years." *Nelson*, 124 S.Ct. at 2126 (discussing *Gomez*, 503 U.S. at 654). The Supreme Court

emphasized:

3

Case 2:04-cv-01156 .r-MRA Document 45 Filed 04/2 2000 Page 4 of 12

> Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, see *Blodgett*, 502 U.S., at 239, 112 S.Ct. 674; *McCleskey*, 499 U.S., at 491, 111 S.Ct. 1454, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

*Nelson*, 124 S.Ct. at 2126.

In connection with this civil rights action and similar actions that have since been dismissed, this Court has twice considered and denied motions for a preliminary injunction staying the execution of a movant. In the case of Adremy Dennis, the Court was constrained to deny that plaintiff's motion for a preliminary injunction because, given the State's strong interest in enforcing its criminal judgments, along with the plaintiffs' inexcusable delay in pursuing a civil rights action challenging Ohio's lethal injection protocol, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Dennis v. Taft*, 2:04-cv-532, Doc. # 14, at 14 (quoting *Nelson v. Campbell*, 124 S.Ct. 2117 (2004)). Following the United States Supreme Court's reasoning in *Nelson* and *Gomez*, this Court concluded that:

> If the instant action cannot be characterized as an 11[th] hour challenge, given the fact that Petitioner Dennis was not facing an execution date when he filed his complaint, it can certainly be characterized as a 9[th] or 10[th] hour challenge, given the fact that he had exhausted all of his other available remedies and the State had requested an execution date to be set.

*(Dennis*, 2:04-cv-532, Doc. # 14, at 12.)

In the case of John R. Hicks, who was granted permission on November 23, 2005 to intervene in the instant action, the Court observed that:

> The situation here is perhaps even more egregious than that in *Dennis*.

4

Case 2:04-cv-01166-    -MRA    Document 45    Filed 04/2    3006    Page 5 of 12

Here, although the Ohio Supreme Court set Hicks's execution date on October 5, 2005, Hicks waited until November 23, 2005 to pursue a stay. This exceeds the eleven days separating the establishment of an execution date and the motion for injunctive relief involved in *Dennis*. In both instances, the movant delayed unnecessarily.

(Doc. # 26, at 4.)

Plaintiff Jeffrey Hill's case is readily distinguishable from those of Dennis and Hicks. First, Plaintiff Hill, when he moved to intervene in the instant action, initiated his civil rights action challenging Ohio's lethal injection protocol in a timely fashion as specifically outlined by this Court in its Opinion and Order of March 28, 2005. (Doc. # 14.) There, the Court concluded that "the statute of limitations on claims raising specific challenges to a method of execution, but otherwise conceding that the execution can be carried out in a constitutional manner if the specific challenges are addressed, begins to run when the execution becomes imminent and the plaintiff knows or has reason to know of the facts giving rise to his specific challenges." (Doc. # 14, at 12.) This Court has reasoned that those two conditions are met when the plaintiff has exhausted all of his state and federal avenues of relief, *i.e.*, when the United States Supreme Court denies *certiorari* in the plaintiff's habeas corpus proceedings or otherwise issues a decision foreclosing federal habeas corpus relief. (Doc. # 14, at 11.) When Plaintiff Hill filed his emergency motion to intervene on December 11, 2005, he avers, the United States Supreme Court had "recently denied [his] petition for a writ of certiorari and the time for filing the rehearing petition has not yet run." (Hill's Emergency Motion to Intervene, Doc. # 29, at 2.) Thus, unlike Dennis and Hicks, Plaintiff Hill was not within days of his execution. He did not sit on his laurels. He did not wait until the State had set or even requested an execution date. Rather, immediately after the occurrence in his case of the preconditions identified by this Court

5

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4441

Case 2:04-cv-01156-( -MRA Document 45 Filed 04/2 300 Page 8 of 12

in its March 28, 2005 for the accrual of his cause of action, Plaintiff Hill moved to intervene in the instant action.

The Court takes note of *Crawford v. Taylor*, 126 S.Ct. 1192 (2006), a case highlighted by Plaintiff Hill in his reply memorandum in which the Supreme Court of the United States refused to interfere with the entry of a stay of execution in a case challenging the State of Missouri's lethal injection protocol. (Reply Memorandum, Doc. # 42, at 4.) As Plaintiff Hill points out, and as review of the attached docket confirms, the plaintiff had commenced his federal litigation challenging the lethal injection protocol years before his execution date had been set. (Doc. # 42, at 4-5; App. A, at 7-10.) Thus, to the extent that *anything* can be gleaned from non-action on the part of the Supreme Court of the United States, it would appear that the Court seems poised to let stand an entry of a stay of execution in cases raising lethal-injection challenges wherein the plaintiff had not engaged in undue delay in bringing his challenge.

A second factor distinguishing Plaintiff Hill's case from those of Dennis and Hicks is the mounting evidence calling Ohio's lethal injection protocol, and the same or similar protocols employed by other states, increasingly into question. In *Morales v. Hickman*, 415 F. Supp. 2d 1037 (N.D. Cal. 2006), the district court took note of "evidence of a kind that was not presented in [] earlier cases," *id.* at 1043, purporting to demonstrate that inmates recently executed in California under its lethal-injection protocol may have continued breathing more than a minute after the administration of sodium thiopental, in contravention of the opinion of Dr. Mark Dershwitz that the amount of sodium thiopental prescribed under California's lethal-injection protocol, *i.e.*, 5 mg, would cause an inmate to lose consciousness and stop breathing within one minute. *Id.* at 1043-44. Although the State subsequently submitted a supplemental affidavit by

6

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4442

Case 2:04-cv-01156- -MRA Document 45 Filed 04/2 9

Dr. Dershwitz opining that the "respirations" observed by witnesses may have been "chest wall movements" and not respirations at all, the district court, while duly considering Dr. Dershwitz's opinion in that regard, concluded that "evidence from eyewitnesses tending to show that many inmates continue to breathe long after they should have ceased to do so cannot simply be disregarded on its face." *Id.* at 1045.

Less than two months later, in *Brown v. Beck*, No. 5:06-CT-3018-H, the District Court for the Eastern Division of North Carolina, Western Division, also had the benefit of "evidence of a kind that is different from that presented in the cases previously considered by this and other courts." (Doc. # 37-2, at 8.) Specifically, the district court had before it toxicology data following four recent executions in North Carolina showing post-mortem levels of sodium pentothal contradicting the opinion of Dr. Dershwitz as to the expected concentration that would be present in a man of average size after having been given a dose of 3000 mg of sodium pentothal. (Doc. # 37-2, at 8-9.) As in *Morales*, the defendants submitted a supplemental affidavit from Dr. Dershwitz offering possible explanations for the post-mortem levels of sodium pentothal. The district court in *Brown* stated that, "[w]hile Dr. Dershwitz's explanation may be correct, the Court cannot ignore the serious questions raised by this [toxicology] data." (Doc. # 37-2, at 9.) The district court in *Brown* also had before it affidavits from attorneys present at recent executions who had witnessed the condemned inmates "writhing, convulsing, and gagging when executed." (Doc. # 37-2, at 9.) The district court noted that, according to an affidavit by Dr. Mark J.S. Heath, such witness accounts of writhing and convulsing would be inconsistent with a sufficient dose of sodium pentothal having been successfully delivered to the brain such that the condemned inmate" would not feel pain. (Doc. # 37-2, at 10.)

7

Case 2:04-cv-01156-  -MRA  Document 45  Filed  ...

This Court has no evidence before it of the kind that the district courts in *Morales* and *Brown* had before them. The reason is not due to a lack of diligence on the part of the plaintiffs, but because this case has been stayed since April 13, 2005, when this Court granted *Defendants'* motion for an order to certify an interlocutory appeal. (Doc. # 21.) The parties in this case have also relied, preliminarily, on affidavits by Drs. Mark J.S. Heath and Mark Dershwitz.[1] That being so, this Court would be remiss if it did not take note of the evidence that the district courts in *Morales* and *Brown* considered. And that evidence raises grave concerns about whether a condemned inmate would be sufficiently anesthetized under Ohio's lethal-injection protocol prior to and while being executed, especially considering that the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol (2 grams) is less than that prescribed under California's protocol (5 grams) and that prescribed under North Carolina's protocol (3000 mg). Compounding the gravity of the risk that Plaintiff Hill will not be properly anesthetized prior to and while being executed, as the district courts in *Morales* and *Brown* noted, is the absence prior to and during the execution process of certified medical personnel capable of ensuring, among other things, that the drugs are properly prepared and delivered, and that the condemned inmate has been rendered unconscious prior to and during the administration of the pancuronium bromide and potassium chloride. In short, the growing body of evidence calling Ohio's lethal injection protocol increasingly into question distinguishes Plaintiff Hill's case from previous cases that this Court has considered.

As the foregoing demonstrates, principles of equity do not militate against Plaintiff Hill regarding undue delay versus the State's substantial interest in enforcing its criminal judgments.

---

[1]    The defendants have also submitted an affidavit by Dr. Carl Rosow agreeing with various observations by Dr. Dershwitz and disagreeing with several observations by Dr. Mark J.S. Heath. (Doc. # 39-7.)

8

Turning to the four factors that must be balanced, *McPherson*, 119 F.3d at 459, this Court is persuaded that Plaintiff Hill is entitled to a preliminary injunction staying his execution. At the very least, Plaintiff has demonstrated a *stronger* likelihood of success on the merits than the plaintiffs who preceded him, given the growing body of evidence calling Ohio's lethal injection protocol increasingly into question. This Court can not and will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North Carolina and *Morales v. Hickman* in California appearing to contradict the opinion of Dr. Mark Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol would be rendered unconscious and would stop breathing within one minute. (Doc. # 39-6, at ¶ 8.) Given the evidence that has begun to emerge calling this and other conclusions by Dr. Dershwitz into question, the Court is persuaded that there is an unacceptable and unnecessary risk that Plaintiff Hill will be irreparably harmed absent the injunction, *i.e.*, that Plaintiff Hill could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

The Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court – even without a fully developed record – that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Plaintiff's execution should and can be minimal. Additionally, in regard to Defendants' argument that the granting of an injunction would harm the State's interest in

9

fulfilling the judgment against Plaintiff Hill in a timely manner, the Court notes that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct"). Finally, as noted by counsel for Plaintiff Hill during the informal telephone conference, it bears noting in regard to the extent to which issuance of the preliminary injunction would cause substantial harm to others that the victim's family in this case, who are also Plaintiff Hill's family, do not want him to be executed at all.

Finally, this Court is in agreement with Plaintiff Hill that the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

This Court is mindful of the many cases raising the same or similar challenges in which

10

motions for a preliminary injunction have been denied. *See, e.g., Smith v. Johnson*, 440 F.3d
262, 263 (5th Cir. 2006); *Bieghler v. Donahue*, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26,
2006), *vacated*, 126 S.Ct. 1190 (2006); *Vinson v. Johnson*, No. 05A971, 2006 WL 1109748
(U.S. Apr. 27, 2006). In those cases, however, the plaintiff's undue delay in bringing his § 1983
action was a factor weighing against him relative to the State's strong interest in enforcing its
criminal judgments. For instance, in *Smith v. Johnson*, the Fifth Circuit remarked, "we have
made clear that waiting to file such a challenge days before a scheduled execution constitutes
unnecessary delay." 440 F.3d at 263 (citations omitted). Further, in *Vinson v. Johnson*, it
appears that the plaintiff filed his § 1983 action within one month of his scheduled execution.
(Doc. # 44-1.) As discussed more fully above, Plaintiff Hill does not, in this Court's view, have
that factor weighing against him.

The Court is also mindful that in the cases upon which it has relied in finding that
petitioner has demonstrated a stronger likelihood of success on the merits than any plaintiff
before him, *Morales* and *Brown*, the district courts conditionally denied the plaintiffs' respective
motions for a preliminary injunction, choosing instead to fashion remedies under which the
States of California and North Carolina, respectively, could carry out the planned executions
without violating the plaintiffs' Eighth Amendment rights. *Morales*, 415 F. Supp. 2d at 1047;
*Brown*, No. 5:06-CT-3018-H, at *13-15 (Doc. # 37-2). In view of the lack of development of the
record in this case, this Court does not feel that it is in a position to avoid the issuance of a
preliminary injunction by fashioning a remedy by which Ohio could carry out the execution of
Plaintiff Hill within the confines of the Eighth Amendment.

For the foregoing reasons, Plaintiff Hill's motion for an emergency preliminary

11

Case 2:04-cv-01156- .-MRA Document 45 Filed 04/2 00 Page 12 of 12

injunction is **GRANTED.** (Doc. # 37.) This Court declines to require a security bond. *Moltan Co. v. Eagle-Picher Indus., Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995) (explaining that whether to require a bond is within the discretion of the court).

Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Jeffrey D. Hill issued by any court of the State of Ohio until further Order from this Court.

IT IS SO ORDERED.

_s/ Gregory L. Frost_
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

12



FILED
LORAIN COUNTY

2007 MAY 29  A 11: 26

CLERK OF COMMON PLEAS
RON NABAKOWSKI

**LORAIN COUNTY COURT OF COMMON PLEAS**
LORAIN COUNTY, OHIO

**RON NABAKOWSKI, Clerk**
**JOURNAL ENTRY**
James M Burge, Judge

| Date | 5/25/07 | Case No. 04CR065940 |
|---|---|---|

| STATE OF OHIO | LORAIN COUNTY PROSECUTOR |
|---|---|
| Plaintiff | Plaintiff's Attorney |

VS

| RUBEN O. RIVERA | KREIG J BRUSNAHAN |
|---|---|
| Defendant | Defendant's Attorney   (440) 930-2600 |

Hearing had on defendant's motions: (1) challenging the constitutionality of Ohio's lethal injection protocol as cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Section 1, Article 9 of the Ohio Constitution, and (2) requesting additional discovery for the purpose of presenting evidence at the hearing on this motion.

Upon consideration of the foregoing, defendant's motion for a continuance of the hearing is granted and the motion for additional discovery is denied.

Upon defendant's oral motion for the appointment of counsel to assist in preparing and conducting the hearing on defendant's motion challenging Ohio's lethal injection protocol, the court appoints Attorney Jeffrey Gamso to assist defendant (1) in the preparation for this hearing, and (2) in the presentation of evidence and argument at this hearing.



EXHIBIT

C

3309



Attorney Kenneth M. Lieux is excused from preparing for, and participating in the hearing on this matter.

Compensation for Attorney Gamso shall be at the rate of $40.00 per hour for out-of-court legal services and $50.00 per hour for services in court.

In related matters the court orders that:

(1) Counsel for defendant shall appear for hearing on June 7, 2007, with the documents necessary to prepare counsel for hearing, and to prepare any expert witnesses who may appear to testify regarding the Ohio death penalty protocol;

(2) Counsel for defendant shall be in a position to schedule the above motion hearing on a date certain;

(3) Counsel for defendant shall furnish the court and the prosecutor with the report from defendant's mitigation expert; and,

(4) Either the state or the defense may submit a brief on the question of the "ripeness" of the death penalty issue raised.

It is so ordered.


VOL_____ PAGE_____

James M Burge, Judge


cc:    Pro. Cillo/Atty.Brusnahan/Atty.Gamso


9310

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

STATE OF OHIO,                    : CASE NO. 04CR065940

                                  2007 JUN 20  A 11:24

              Plaintiff,     CLERK OF COMMON PLEAS
                             RON NABAKOWSKI JUDGE JAMES M. BURGE

     Vs.                          :     **JOURNAL ENTRY**

RUBEN RIVERA,                     :

              Defendant.          :

This cause came on to be heard upon the defendant's Motion to

Declare the Death Penalty unconstitutional.

     The defendant has advised the court that certain information is

required by the defendant's proffered expert, Dr. Mark Heath, in order for

him to submit an expert report on Ohio's method of execution.

     For good cause shown, it is hereby ordered that the Ohio Department

of Rehabilitation and Correction and its Director, Terry Collins, produce the

following and deliver it to the court no later than July 2, 2007:

1.   An exhaustive and detailed list of all equipment and supplies
     used in the lethal injection process;

2.   Specifications and maintenance procedures for all equipment
     and supplies identified in #1 above;

3.   Specifications on the set-up of the intravenous bag of fluids,
     drip chamber(s), flow regulator(s), IV tubing, stopcock(s),
     injection port(s), and/or means of injection;



EXHIBIT
D

4.    Specifications, plans and procedures to be implemented when intravenous access cannot be obtained through an arm or a leg;

5.    The physical design, layout and dimensions (including any blueprints or diagrams) of the execution chamber and surrounding areas used in the lethal injection process;

6.    Specifications and maintenance procedures for how the drugs used in the lethal injection process are acquired, stored, maintained, examination of their shelf life and expiration dates, and how they are prepared for administration; and,

7.    An exhaustive and detailed list setting forth the qualifications, certifications, training, experience and background of all persons who participate in any way in the preparation and carrying out of the lethal injection process.

In complying with paragraph # 7 above, the Ohio Department of Rehabilitation and Corrections and Director Terry Collins may refrain from disclosing specific identifying information such as name, address and social security number.

IT IS SO ORDERED.


JUDGE JAMES M. BURGE

FILED
LORAIN COUNTY COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

2007 JUN 28  A: 9 40

STATE OF OHIO
CLERK OF COMMON PLEAS
RON NABAKOWSKI
      Plaintiff,               :         CASE NO. 04CR065940

     v.                    :         JUDGE JAMES M. BURGE

RUBEN RIVERA,          :

      Defendant.        :

### MOTION OF OHIO DEPARTMENT OF REHABILITATION AND CORRECTION AND DIRECTOR TERRY COLLINS FOR CLARIFICATION OF JOURNAL ENTRY FILED JUNE 20, 2007

The Ohio Department of Rehabilitation and Correction (ODRC) and its Director, Terry Collins (Director Collins), by and through limited appearance of counsel, submit this Motion for Clarification of this Court's June 20, 2007 Journal Entry.

### Procedural History

This is a criminal case brought by the State of Ohio against Ruben Rivera, wherein Mr. Rivera has been charged with aggravated murder with a capital murder specification, as well as other criminal charges. Although the indictment was filed on August 19, 2004, this matter has not yet come to trial. On November 29, 2006, Rivera filed a Motion to Dismiss Capital Components of This Case Due to Constitutional and International Law Violations. On March 1, 2007, Rivera filed a Motion to Declare the Death Penalty Unconstitutional Due to Lethal Injection Constitutes Cruel and Unusual Punishment.

On May 29, 2007, this Court held a hearing on Rivera's motions challenging the constitutionality of the lethal injection procedure. At that hearing, the Court appointed Jeffrey



EXHIBIT
E

Gamso to represent Rivera only on his challenge to the constitutionality of the lethal injection procedure.

On June 7, 2007, Rivera filed a Motion to Preclude Imposition of Death as a Sentencing Possibility Due to Illegality, and a Motion to Preclude the State From Seeking Death Penalty (Apprendi Violation). On June 20, 2007, this Court held a hearing on Rivera's motion to declare the death penalty unconstitutional. At that hearing, Rivera advised the Court that certain information was required by his expert, Dr. Mark Heath, in order for him to submit an expert report on Ohio's method of execution.

This Court then entered its Journal Entry on June 20, 2007, ordering ODRC and Director Collins to produce and deliver to the Court no later than July 2, 2007, various categories of information concerning the lethal injection process, including, but not limited to, "the qualifications of all persons who participate in the preparation and carrying out of the lethal injection process."

### Issue Presented

ODRC and Director Collins neither wish to obstruct these proceedings nor limit the Court access to information it deems necessary to fairly adjudicate the matter in the case of *State v. Rivera*, 04-CR-06-5940. In fact, please note that numerous documents and information at issue in the Court's order have previously been provided to Rivera's attorneys (Jeffry Gamso and Kreig Brusnahan) pursuant to public records request and subpoena.[1] Included in the information already provided to counsel for Rivera are ODRC policies concerning lethal injection as well as execution logs for all executions from 1999 to the present.

---

[1] On June 6, 2007, records relative to the lethal injection procedure were sent to Mr. Gamso. Also, on June 6, 2007, records regarding the lethal injection process were sent to Mr. Brusnahan.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4454

Notwithstanding these efforts by ODRC and Director Collins to provide requested information, the Court has issued an order that is one of first impression for ODRC and the Director. The Court's order seemingly goes well beyond customary record document requests pursuant to subpoena and/or public record requests. For example, several paragraphs of the order would require ODRC to create documents or involve reducing testimonial information (some non-public) to written documents (e.g. see order, paragraphs 1, 5, 7).

ODRC and the Director are not unfamiliar with litigation regarding the constitutionality of the lethal injection process. The Director is a named party in a pending Federal lawsuit filed by death row inmate Cooey (and others). *See, Cooey, et. al. v. Taft,* No. 2:04-CV-1156, U.S. District Court, Southern District of Ohio. Precisely in issue is the lethal injection process and procedure, as well as the same information requested by this Court's order. For sure, the Federal court will order discovery, briefing and evidentiary hearings on this matter, whereupon ODRC and the Director will be called upon, as named parties, to provide full discovery in this matter.

However, in *Cooey,* ODRC and the Director are parties to the lawsuit in a court with subject matter jurisdiction. To the contrary, ODRC and Director Collins are not parties to the criminal action involving *State v. Rivera.* It is for this reason, the pendency of a Federal lawsuit on the matter, as well as the reluctance to create new precedent involving Common Pleas criminal matters, ODRC and the Director respectfully seek clarification for authority upon which to proceed. Specifically, upon what legal grounds shall ODRC and the Director predicate the creation of documentation and testimonial information (some non-public), outside of being a named party in a pending civil lawsuit, in a court with jurisdiction (e.g. Federal Habeas Corpus, Section 1983, or state court civil proceedings).

3

Ohio law is clear: Director Collins and ODRC have no legal obligation, and in fact there is no legal authority compelling them, to create documents or records solely for the purposes of litigation – in particular, a criminal action to which they are not parties. See, e.g., Civ. R. 34(B) (when producing documents, a party shall "produce them as they are kept in the usual course of business"). In an analogous situation, public offices are not required to create documents in response to a public records request. *State ex rel. Kerner v. State Teachers Retirement Board* (1998), 82 Ohio St.3d 273, 1998 Ohio 242, 695 N.E. 2d 256; *State ex rel. White v.Goldsberry* (1999), 85 Ohio St.3d 153, 1999 Ohio 447, 707 N.E.2d 496; *State ex rel. Warren v. Warner* (1999), 84 Ohio St.3d 432, 433, 1999 Ohio 475, 704 N.E.2d 1228; *State ex rel. Wilson-Simmons v. Lake County Sheriff's Dept.* (1998), 82 Ohio St. 3d 37, 42, 693 N.E.2d 789, 793; *State ex rel. Fant v. Mengel* (1991), 62 Ohio St.3d 197, 198, 580 N.E.2d 1085, 1086. Just as Civ. R. 34(B) does not require parties to litigation to produce documents in response to discovery requests, and as Ohio case law does not require public offices to create documents in order to respond to a public records request, ODRC and Director Collins have no legal obligation to create records for this criminal case.

Moreover, the Ohio Supreme Court has held that a criminal defendant is limited to the discovery procedures of Crim. R. 16 in the context of a criminal proceeding. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 429, 639 N.E.2d 83, 90 ("[I]n the criminal proceeding itself, a defendant may use only Crim. R. 16 to obtain discovery"). Since nothing in Crim. R. 16 suggests that anything beyond those records and other listed items in possession of the prosecutor are subject to discovery in a criminal proceeding, Director Collins and ODRC are aware of no authority for this Court to order Director Collins and ODRC to supply the items listed in its order.

4

In summary, ODRC and Director Collins are unable to predicate such a novel order as the one at issue here upon legal precedent or statute that would convey jurisdiction for this Court to order injunctive action upon a non-party in a criminal action.

### Conclusion

For the above stated reasons and in an abundance of caution in taking this novel step, ODRC and Director Collins respectfully request clarification as to the authority upon which to proceed as the Court has ordered.

Respectfully submitted,

MARC DANN
Attorney General

JANET R. HILL ARBOGAST (0061955)
Assistant Attorney General
Corrections Litigation Section
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215
614/644-7233

Counsel for Ohio Department of
Rehabilitation and Correction and
Director Terry Collins

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion of Ohio Department of Rehabilitation and Correction and Director Terry Collins for Clarification of Journal Entry Filed June 20, 2007 has been forwarded to Dennis Will, Lorain County Prosecutor's Office, 225 Court Street, 3rd Floor, Elyria, Ohio 44035-5642, Jeffrey Gamso, Legal Director, American Civil Liberties Union

5

of Ohio Foundation, 4506 Chester Avenue, Cleveland, Ohio 44103-3621, Kreig J. Brusnahan,

158-A Lear Road, Avon, Lake, Ohio 44012, and Ken Lieux, 110 Middle Avenue, Elyria, Ohio

44035, attorneys for defendant via the U.S. Mail this 27th day of June, 2007.

*Janet Hill Arbogast by Richard Cholar*

JANET R. HILL ARBOGAST
Assistant Attorney General

0060062

6

FILED
LORAIN COUNTY

2007 JUL 24  P 1: 45

CLERK OF COMMON PLEAS
RON NABAKOWSKI

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

STATE OF OHIO,                    :   CASE NO. 04CR065940

                 Plaintiff,       :   JUDGE JAMES M. BURGE

        v.                        :   **OPINION AND JOURNAL**
                                      **ENTRY**

RUBEN RIVERA,                     :

                 Defendant.       :

This case is before the Court on its June 20, 2007 Order to the Ohio

Department of Rehabilitation and Correction ("DRC") and its Director,

Terry Collins, and on the Motion for Clarification filed June 28, 2007.

Having reviewed the motion and responsive memoranda, the Court modifies

its June 20, 2007 Order.

DRC and Director Collins (collectively "Movants") ask this Court to

identify its authority and provide them with some reason why they should do

what they claim to want to do and respond to the Order. As they are not

parties, they say, this Court has no authority to order them to do anything.



EXHIBIT

F

Further, they say that defendant Rivera has no right to any discovery from them because he is limited to what is authorized by Crim.R. 16. Finally, they say that they cannot be required to create documents to satisfy the Court's Order.

I.

As an initial matter, the motion to clarify the Court's entry is procedurally peculiar if not improper. A party disinclined to obey a discovery order,[1] may seek a protective Order, may attempt to file an interlocutory appeal, *State ex rel. Gannett Satellite Information Network, Inc. v. Petro* (1997), 80 Ohio St. 3d 261, 264, or may seek a writ of prohibition asserting that, inter alia, the order reflects "the exercise of such power [that] is unauthorized by law." *State ex rel. White v. Junkin* (1997), 80 Ohio St. 3d 335, quoting *State ex rel. Jones v. Garfield Hts. Mun. Court* (1997), 77 Ohio St. 3d 447, 448.

Nevertheless, the Court notes that under Section 18, Article IV, Ohio Constitution, the Court has authority to issue orders with which parties may either comply or seek relief by proper legal process. To satisfy any confusion on Movants' part, the Court notes that DRC is an agency of the State of Ohio and Collins is the Director of that agency. Further, the Court

---

[1] And Movants are certainly parties to the Order, regardless of whether they are parties to this case.

2

observes that the prosecution in this case is brought in the name of the State of Ohio making the State and its agencies party to the action. In addition, the Court notes that it does, indeed, have authority to demand that non-parties to a case appear before it with tangible items. Subpoenas routinely serve that function (and lead, when appropriate, to requests for protective orders, to interlocutory appeals, and even to petitions for writ of prohibition.) In this case, a subpoena duces tecum was issued to Movants who neither fully complied with it nor availed themselves of a proper response. Accordingly, the Court issued the Order of June 20, 2007. Complying with subpoena or Court order is simply not a "novel step." (Motion for Clarification at 5.)

## II.

The movants seek to justify their refusal to comply with the Order by citing Crim.R. 16. Insofar as it is applicable at all, Rule 16 might limit the information available to Defendant Rivera. The Court notes that the Order of June 20, 2007 did not direct Movants to provide any information to Mr. Rivera. Rather, it Ordered that the materials at issue be provided to the Court. Thus, Crim.R. 16 is irrelevant.

However, the Court notes again that if Movants were concerned about whether Mr. Rivera would have access to the information sought and

3

thereby violate Rule 16, it could have responded to the Order and sought a protective order. It did not do that.

In any event, Crim.R. 16 is inapplicable where, as here, the documents at issue are not sought for litigation over defendant's innocence or for purposes of mitigation. Crim. R. 16 is silent on discovery procedures in issues ancillary to the criminal case itself. The materials are intended for use in determining the constitutionality of lethal injection. For such purposes, the criminal procedure rules do not apply.

### III.

The Movants state that some of the records ordered to be released would require testimonial evidence to be reduced to written documents, and that some of the documents do not exist. In their Motion to Clarify, they note that the State of Ohio has no legal obligation to create documents responsive to a public records request and, they assert they have no greater obligation in this context. The Court agrees. Movants are not obliged to deliver to the Court that which does not exist. Should any of the documents requested not exist, Movants need not create them and then submit them to the court. *State ex. rel. Kerner v. State Teachers Retirement Board* (1998), 82 Ohio St. 3d 273, 1998 Ohio 242.

However, that does not release the Movants from their duty to provide

4

the court with documents responsive to its order that do exist.  Moreover, while the information sought in each item of the Order may not exist in a single document, it may exist in multiple documents.  The Movants must provide that which they have.  Insofar as there may be information sought that they do not have in any documentary form, they are specifically to inform the Court that there is no responsive documentation.

## IV.

Finally, Movants complain that providing the Court with information about the background, qualifications, certification, and training of persons involved in the execution process may reveal their identities even if such things as name, address, and social security number are redacted.  The Court is sensitive to that concern.

In responding to item 7 in the Order of June 20, then, Movants may simply provide, for each person who participates in the execution process, minimum job qualifications, certifications, training, and experience possessed and what sort of evidence of those matters is deemed sufficient.

5

ACCORDINGLY, and for good cause shown, it is hereby ORDERED that

the Ohio Department of Rehabilitation and Correction and its Director, Terry

Collins, produce documents containing the following information, *should*

*they exist*, and deliver them to the Court no later than _30_ days from the

date of this Order:

1. An exhaustive and detailed list of all equipment and supplies used in
   the lethal injection process;

2. Specifications and maintenance procedures for all equipment and
   supplies identified in #1 above;

3. Specifications on the set-up of the intravenous bag of fluids, drip
   chamber(s), flow regulator(s), IV tubing, stopcock(s), injection
   port(s), and/or means of injection;

4. Specifications, plans and procedures to be implemented when
   intravenous access cannot be obtained through an arm or a leg;

5. The physical design, layout and dimensions (including any blueprints
   or diagrams) of the execution chamber and surrounding areas used in
   the lethal injection process;

6. Specifications and maintenance procedures for how the drugs used in
   the lethal injection process are acquired, stored, maintained,
   examination of their shelf life and expiration dates, and how they are
   prepared for administration; and,

7. A list of job qualifications, certifications, training and experience
   required of persons who participate in any way in the preparation and
   carrying out of the lethal injection process.

6

Should any of this information not exist in documentary form, the Ohio

Department of Rehabilitation and Correction and Director Collins are

ORDERED to provide the Court with a statement to that effect.

IT IS SO ORDERED.



JUDGE JAMES M. BURGE

7

FILED
LORAIN COUNTY

2007 JUL 24 P 1: 45

CLERK OF COMMON PLEAS
RON NABAKOWSKI

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

STATE OF OHIO,                :        Case No. 04CR065940

    Plaintiff,           :        Judge James Burge

vs.                          :        **JOURNAL ENTRY**

RUBEN RIVERA,                :

    Defendant.           :

    Defendant has asked this Court to preclude the possibility of a death

sentence in this case on the basis that lethal injection as practiced in Ohio is

cruel and unusual punishment in violation of the Eighth and Fourteenth

Amendments to the United States Constitution and of Section 9, Article I of

the Ohio Constitution. The State asserts that the question is not ripe for

resolution and that, accordingly, this Court has no jurisdiction to hold a

hearing or rule on the matter. For the reasons that follow, the Court holds

that it does have jurisdiction.



EXHIBIT

G

The State argues that the constitutionality of lethal injection in Ohio is not ripe for adjudication because Defendant Rivera has not been sentenced to death and may never be. Should he be sentenced to die, the State says, litigation might be proper to determine how he will be executed. Until then, there is nothing to decide.

Were the purpose of Mr. Rivera's motion to determine how he can be executed if he should be sentenced to death, the State might well be correct. But the State misconstrues the Defendant's motion. Mr. Rivera does not ask for a declaration that Ohio's current method of carrying out executions is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and of Section 9, Article I of the Ohio Constitution. Rather, the Defendant asks that the Court "remove death as a sentencing option in this case because the only current method of executing prisoners in Ohio is by a punishment which is unconstitutional and, therefore, imposing a death sentence would be imposing the infliction of a cruel and unusual punishment."

Thus, the basic question before the Court is not whether the current lethal injection protocol is unconstitutional but whether death should be a sentencing option in this case. The Constitutionality of lethal injection is a predicate issue, not the ultimate one. The Court concludes that the ultimate

2

issue is ripe for review at this time and that, therefore, the predicate issue must also be addressed.

A case must be ripe in order to be litigated. "Ripeness 'is peculiarly a question of timing.'" *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140. The ripeness doctrine keeps the courts "from entangling themselves in abstract disagreements over administrative policies." *Abott Laboratories v. Gardner* (1967) 387 U.S. 136, 148.

The issue of ripeness, however, is not jurisdictional but prudential. As the Supreme Court of California has explained:

> [T]he ripeness requirement does not prevent us from resolving a concrete dispute if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question.

*Hunt v. Superior Court of Sacramento County* (Cal. 1999), 21 Cal.4th 984, 998, 987 P.2d 705, 716. As the constitutionality of lethal injection is being litigated around the country[1], it is clearly a matter of great consequence and interest. This is particularly true in this state, which has had two lethal injections go awry in just over a year.[2]

---

[1] Though not, for the moment, in Ohio, where the Sixth Circuit Court of Appeals has halted the litigation. See *Cooey v. Strickland* (CA 6, 479 F.3d 412, rehearing denied (June 1, 2007), ___ P.3d ___, No. 05-4057.
[2] It took the State 87 minutes to execute Joe Clark on May 2, 2006, during which time the prisoner is reported to have sat up and told the executioners , "It don't work. It don't work." Just over one year later, on May 24, 2007, it took the State over two hours to execute Christopher Newton who, it is reported, was convulsing after receiving the drug which should have paralyzed him.

3

Furthermore, in other capital case contexts, it is clear that the possibility of a death sentence may be litigated before a sentence is imposed or the question of guilt determined. In the context of mental retardation, the claim that death cannot be a sentencing option is adjudicated before trial begins. See *State v. Lott* (2002), 97 Ohio St.3d 303. The same question is adjudicated pre-trial in cases where the accused was under eighteen years of age at the time of the alleged offense. See R.C. 2929.023. Finally, courts routinely rule pre-trial on motions to preclude the possibility of death because the death penalty is unconstitutional and because it violates international law. Such a motion was filed in this very case on November 29, 2006.[3] In each of these situations, it is possible that the issue could be deemed not to be ripe since the ultimate question might not be reached. But the question is addressed anyway, and properly so, since their results determine what sort of trial will follow.[4]

If a sentence of death is an option, then the jurors who sit on the case will be death-qualified. There will be an extensive proceeding in which each prospective juror is questioned regarding his or her views of the death penalty and the sorts of circumstances under which he or she would or would not be willing or able to vote for a sentence of death. Moreover,

---

[3] That motion is still pending.
[4] The State contended, during oral argument on this issue, that the Constitutional motion to dismiss is also not ripe for adjudication pre-trial.

4

when death is an option, a change in the focus and strategy of the trial is likely to occur. Both the State and the defense will present their cases with an eye toward what may happen after a guilty verdict of both aggravated murder and a specification is reached. Finally, it is impossible to ignore the fact that the possibility of an execution changes the odds of the verdict. Study after study demonstrates that a death-qualified jury is more likely to find a defendant guilty. See, e.g., *Grigsby v. Mabry* (S.D. Ark. 1980), 483 F.Supp. 1372, 1387, fn. 18. While that may not be an unconstitutional consequence, see *Lockart v. McRee* (1986), 476 U.S. 162, it is a prudential one.[5]

ACCORDINGLY, the Court holds that whether to preclude death as a sentencing possibility because the only current method of execution in Ohio is unconstitutional is properly raised and may properly be determined at this time. As a consequence, the Court will conduct a hearing on whether lethal injection as practiced in Ohio is constitutional.

---

[5] Although the Supreme Court, in *Lockart* rejected the *Grigsby* court's analysis and conclusions, it did not reject its determination that a death-qualified jury is more likely to convict.

IT IS SO ORDERED.



JUDGE JAMES M. BURGE

6

IN THE COURT OF COMMON PLEAS RECEIVED
LORAIN COUNTY, OHIO

2007 JUL 26  A 11: 38

STATE OF OHIO,                    :          CASE NO. 05CR068067

                                               PROSECUTING ATTORNEY
        Plaintiff,                 :          JUDGE JAMES M. BURGE

   Vs.                             :          **JUDGMENT ENTRY**

RONALD MCCLOUD,                   :

        Defendant.                 :

## STATEMENT OF THE CASE

### Defendant's Motion

This cause came on to be heard upon the request of defendant Ronald
McCloud ("McCloud") to join in a motion filed by defendant Ruben Rivera
"Rivera" in the case of State v. Rivera, Lorain County Common Pleas Court
case no. 04CR065940. In this motion, Rivera asks the court to find that the
imposition of the death penalty by the Ohio lethal injection protocol is
unconstitutional. Rivera claims that this method of causing death constitutes
cruel and unusual punishment, in violation of the Eighth Amendment to the
United States Constitution, and in violation of Section 9, Article 1 of the
Ohio Constitution.

### The State's Response

The state of Ohio has filed a brief in opposition to McCloud's motion,
arguing that

1



1.   McCloud has cited no authority for the proposition
     that one criminal defendant may intervene in the
     criminal case of another;

2.   The crime facts alleged against McCloud and Rivera are
     different; and,

3.   In neither <u>Rivera</u> nor <u>McCloud</u> is the death penalty issue
     ripe for the court's determination and, hence, the court has
     no jurisdiction to hear or to resolve this issue.

## Essential Facts

1.   Both McCloud and Rivera are charged by way of an
     indictment which, if properly pled, would permit a jury
     or a panel of judges to consider the imposition of the
     death penalty;

2.   In either case, the death penalty would be imposed by
     the lethal injection method;

3.   Lethal injection would be administered in the same way
     for each defendant;

4.   Each defendant is entitled to be put to death in a manner
     consistent with the federal and state constitutions; and,

5.   The crime facts alleged against each defendant are irrelevant
     to the lethal injection issue.

## Law

The court has ruled in <u>Rivera</u> that is has jurisdiction to determine the

issue raised herein and so rules in this case.

The state is correct that there is no provision in the Ohio Rules of

Criminal Procedure which would allow one defendant in a criminal case to

2

intervene in the litigation of another defendant. Therefore, McCloud's

motion to join in Rivera's case is not well taken.

### Order

1. Defendant McCloud's request to join in Rivera's motion challenging the constitutionality of Ohio's lethal injection protocol as a method of imposing capital punishment is denied;

2. The court will take McCloud's motion to join as simply a motion requesting the same relief in this (McCloud's) case;

3. Any hearing on the issue of whether Ohio's lethal injection protocol constitutes cruel and unusual punishment shall be conducted with both Rivera and McCloud participating under their separate case numbers;

4. Attorney Jeffrey Gamso is hereby appointed to represent McCloud under the same terms and conditions as are ordered in Rivera and, where possible, without duplication of effort;

5. Attorney Michael Camera is excused from participation in the resolution of the death penalty issue, and the litigation and the preparation necessary for this litigation shall be conducted by  Attorney Gamso and Attorney Daniel Wightman only.

JUDGE JAMES M. BURGE

COPY

3

IN THE SUPREME COURT OF OHIO

STATE EX REL. COLLINS, et al.

    Relators,

v.

THE HONORABLE JAMES M. BURGE,

    Respondent.

CASE NO. 07-1576

---

## MOTION OF RESPONDENT THE HONORABLE JAMES M. BURGE FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO RELATORS' COMPLAINT FOR WRIT OF PROHIBITION

---

MARC DANN
Ohio Attorney General

BRIAN J. LALIBERTE (0071125)
Deputy First Assistant Attorney General
(Counsel of Record)
30 East Broad Street, 17th Floor
Columbus, OH 43215
614-728-4527
614-466-5087 (Facsimile)
blaliberte@ag.state.oh.us

JANET R. HILL ARBOGAST (0061955)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, OH 43215
614-644-7233
614-728-9327 (Facsimile)
jarbogast@ag.state.oh.us

Counsel for Relators
Terry Collins and the Ohio
Department of Rehabilitation and Correction

ALEXANDRA T. SCHIMMER (0075732)
(Counsel of Record)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
614-464-3025
614-719-4850 (Facsimile)
atschimmer@vssp.com

JOHN J. KULEWICZ (0008376)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
614-464-5634
614-719-4812 (Facsimile)
jjkulewicz@vssp.com

Counsel for Respondent
The Honorable James M. Burge



EXHIBIT
2

## MOTION FOR JUDGMENT ON THE PLEADINGS

Respondent, The Honorable James M. Burge of the Lorain County Court of Common Pleas, respectfully moves this Court pursuant to Ohio Civ. R. 12(C) and S.Ct.Prac.R. X(5) for a judgment on the pleadings denying Relators' Complaint for Writ of Prohibition. A memorandum in support of this motion is attached.

The Answer of Respondent to Relators' Complaint for Writ of Prohibition was filed separately today.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

By _Alexandra T. Schimmer_
Alexandra T. Schimmer (0075732)
(Counsel of Record)
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
614-464-3025
614-719-4850 (Facsimile)
atschimmer@vssp.com

John J. Kulewicz (0008376)
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
614-464-5634
614-719-4812 (Facsimile)
jjkulewicz@vssp.com

Counsel for Respondent
The Honorable James M. Burge

-2-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4476

## IN THE SUPREME COURT OF OHIO

STATE EX REL. COLLINS, et al.

    Relators,

v.

THE HONORABLE JAMES M. BURGE,

    Respondent.

:
:
:
:
:
:
:
:
:
:

CASE NO. 07-1576

---

**MEMORANDUM IN SUPPORT OF MOTION OF RESPONDENT THE HONORABLE JAMES M. BURGE FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO RELATORS' COMPLAINT FOR WRIT OF PROHIBITION**

---

MARC DANN
Ohio Attorney General

BRIAN J. LALIBERTE (0071125)
Deputy First Assistant Attorney General
(Counsel of Record)
30 East Broad Street, 17th Floor
Columbus, OH  43215
614-728-4527
614-466-5087 (Facsimile)
blaliberte@ag.state.oh.us

JANET R. HILL ARBOGAST (0061955)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, OH  43215
614-644-7233
614-728-9327 (Facsimile)
jarbogast@ag.state.oh.us

Counsel for Relators
Terry Collins and the Ohio
Department of Rehabilitation and Correction

ALEXANDRA T. SCHIMMER (0075732)
(Counsel of Record)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
614-464-3025
614-719-4850 (Facsimile)
atschimmer@vssp.com

JOHN J. KULEWICZ (0008376)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
614-464-5634
614-719-4812 (Facsimile)
jjkulewicz@vssp.com

Counsel for Respondent
The Honorable James M. Burge

## TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT ........................................................................... 1

II. FACTS ............................................................................................................... 6

    A.   Rivera's Motion for an Order Dismissing Those Portions of the Indictment
        That Allow Death as a Possible Penalty and to Preclude a Death Penalty
        Trial ..................................................................................................... 6

    B.   The Appointment of Jeffrey Gamso as Defense Co-Counsel for Rivera ............... 9

    C.   Rivera's Document Subpoena on Relators and the Trial Court's
        Enforcement of the Subpoena ............................................................... 9

III. ARGUMENT ..................................................................................................... 13

    A.   The Trial Court Had Jurisdiction to Appoint Attorney Jeffrey Gamso as
        Co-Counsel for the Defendant ............................................................... 14

    B.   The Trial Court Has Jurisdiction to Enforce a Subpoena Duces Tecum and
        to Order Relators to Produce Documents Regarding the Lethal Injection
        Process ................................................................................................ 16

    C.   The Trial Court Has Jurisdiction to Adjudicate Rivera's Pretrial Motion
        Challenging the Constitutionality of Ohio's Lethal Injection Procedure ............. 20

        i.    Relators are not the real parties in interest, and therefore, do not
           have standing to challenge the trial court's general jurisdiction
           over Rivera's motion ..................................................................... 20

        ii.   The trial court has jurisdiction to adjudicate Rivera's pretrial
           motion pursuant to Ohio Crim. R. 12 ......................................... 22

        iii.  The trial court has jurisdiction to rule on Rivera's motion to
           dismiss before trial because the pendency of the death penalty has
           a direct and immediate impact on the trial proceedings and the
           parties ........................................................................................... 24

    B.   The Writ of Prohibition Should Be Denied Because There Exists an
        Adequate Remedy at Law for Any Alleged Injury the Trial Court's
        Exercise of Jurisdiction May Cause ..................................................... 29

IV. CONCLUSION ................................................................................................ 31

-i-

## TABLE OF AUTHORITIES

Cases

*Bowling Green State Univ. v. Williamson* (1988), 39 Ohio St.3d 141, 142, 529 N.E.2d 1371 ............................................................................................................................... 8, 13

*Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 97-98, 296 N.E.2d 261 .......................................................................................................................... 24

*City of Toledo v. Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152 .................. 24

*City of Toledo v. Tellings*, 6th Dist. No. L-04-1224, 2006-Ohio-975, at ¶¶ 3-30 .......................... 24

*Cooey v. Strickland*, (C.A.6, 2007), 479 F.3d 412 ..................................................................... 27

*Guardado v. State* (Fla. 2007), ---So.2d---, 2007 WL 1836988 ................................................. 29

*Hill v. McDonough* (2006), 126 S. Ct. 2096, 2999, 165 L.Ed.2d 44 ............................................. 27

*In re Martin Marietta Corp.* (C.A.4, 1988), 856 F.2d 619, 621 .................................................. 17

*In re Subpoena Duces Tecum Served Upon Attorney Potts*, 100 Ohio St.3d 97, 2003-Ohio-5234, 796 N.E.2d 915, at ¶11 .................................................................................. 17, 19

*Lockhart v. McCree* (1986), 476 U.S. 162, 170 n.7, 106 S.Ct. 1758, 90 L.Ed.2d 137 ................. 26

*People v. Superior Court of Santa Clara County* (1982), 647 P.2d 76, 131 Cal. 3d 797 ............. 29

*Reno v. Catholic Social Services, Inc.* (1993), 509 U.S. 43, 57 n.18, 113 S.Ct. 2485, 125 L.Ed.2d 38 ............................................................................................................................. 29

*Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 485 N.E.2d 701 ............................................ 21

*State ex rel. Blackwell v. Crawford*, 106 Ohio St.3d 447, 2005-Ohio-5124, 835 N.E.2d 1232 at ¶18 .................................................................................................................... 13, 29

*State ex rel. Butler v. Demis* (1981), 66 Ohio St.2d 123, 133, 420 N.E.2d 116 ...................... 2, 15

*State ex rel. Caley v. Tax Comm. of Ohio* (1934), 129 Ohio St. 83, 88, 193 N.E. 751 ................. 13

*State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 73, 701 N.E.2d 1002 ................... 8, 21, 23

*State ex rel. LTV Steel Co. v. Gwin* (1992), 64 Ohio St.3d 245, 248, 594 N.E.2d 616 ............. 5, 30

*State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384 ......................................... 15

*State ex rel. Matasy v. Morley* (1986), 25 Ohio St.3d 22, 23, 494 N.E.2d 1146 .......................... 14

-ii-

*State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 428, 639 N.E.2d 83 ................ 2, 19

*State ex rel. White v. Cuyahoga Metro. Housing Auth.* (1997), 79 Ohio St.3d 543, 544, 684
    N.E.2d 72 ...................................................................................................................... 29

*State v . Harwell*, 102 Ohio St.3d 128, 2004-Ohio-02149, 807 N.E.2d 330) ................................ 7

*State v. Anderson* (Mo. 2002), 79 S.W.3d 420 ........................................................................ 28

*State v. Bass* (1983), 460 A.2d 214, 189 N.J. Super. 445 ........................................................ 28

*State v. Cleveland Plain Dealer* (June 15, 1979), 8th Dist. Nos. 40531, 40532, 40533, 1979
    WL 210746, *5 ........................................................................................................... 18

*State v. Jalowiec* (2001), 91 Ohio St.3d 220, 225, 744 N.E.2d 163 .......................................... 26

*State v. Karns* (1992), 80 Ohio App.3d 199, 204, 608 N.E.2d 1145 .......................................... 23

*State v. Sapp*, 2d Dist. No. 99CA84, 2002-Ohio-6863 ............................................................. 28

*State v. Smith*, 3d Dist. No. 13-03-25, 2003-Ohio-5461 .......................................................... 14

*State v. Stambaugh* (1987), 34 Ohio St.3d 34, 38, 517 N.E.2d 526 .......................................... 24

*State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167 ................ 4, 20, 21, 23, 24, 28, 29

*Still v. Hayman*, 153 Ohio App.3d 487, 2003-Ohio-4113, 794 N.E.2d 751 ................................ 14

*United States v. Acosta-Martinzes* (C.A.1, 2001), 252 F.3d 13 .................................................. 29

*United States v. Bin Laden* (S.D.N.Y. 2001), 126 F. Supp.2d 290 .............................................. 29

*United States v. Chanthadara* (D. Kan. 1996), 928 F. Supp. 1055 ............................................ 29

*United States v. Church* (W.D.Va. 2001), 151 F. Supp. 2d 715 .................................................. 29

*United States v. Cooper* (D.D.C. 2000), 91 F. Supp.2d 90 ........................................................ 29

*United States v. DesAnges* (W.D.Va. 1996), 921 F. Supp. 349 .................................................. 29

*United States v. Edelin* (D.D.C. 2001), 134 F. Supp.2d 59 ........................................................ 29

*United States v. Johnson* (W.D.Va. 2001), 136 F. Supp.2d 553 .................................................. 29

*United States v. Leaver* (S.D.N.Y. 2005), 358 F. Supp. 2d 273, 276 ........................................... 18

*United States v. Llera Plaza* (E.D. Pa. 2001), 179 F. Supp.2d 444 ............................................ 29

*United States v. Nixon* (1974), 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 ................... 17

*United States v. Pitera* (E.D.N.Y. 1992), 795 F.Supp. 546 ......................................................... 29

*United States v. Quinones* (C.A.2 2002), 313 F.3d 49 ................................................. 3, 26, 27, 29

**Statutes**

28 U.S.C. § 1983 ............................................................................................ 4, 27, 28

Ohio R.C. 149.43 ......................................................................................................... 19

Ohio R.C. 2903.01(A) ................................................................................................... 6

Ohio R.C. 2903.01(B) ................................................................................................... 6

Ohio R.C. 2929.04(A) ................................................................................................. 15

Ohio R.C. 2929.04(A)(7) .............................................................................................. 6

Ohio R.C. 2931.03 ...................................................................................................... 22

Ohio R.C. 2945.67 ..................................................................................... 4, 5, 21, 30

Ohio R.C. 2949.22 ............................................................................................... 25, 28

Ohio R.C. 2949.22(C) ................................................................................................. 25

**Rules**

Fed. R. Crim. P. 17(c) ................................................................................................. 17

Ohio Civ. R. 17(A) ...................................................................................................... 21

Ohio Crim. R. 1(A) ..................................................................................................... 22

Ohio Crim. R. 12 ........................................................................................... 3, 20, 22, 23

Ohio Crim. R. 12(C) ........................................................................................... 3, 22

Ohio Crim. R. 12(C)(2) ............................................................................................... 22

Ohio Crim. R. 12(D) ................................................................................................... 23

Ohio Crim. R. 12(F) ..................................................................................... 3, 22, 23

Ohio Crim. R. 16 .................................................................................. 2, 11, 12, 18, 19

Ohio Crim. R. 16(B) ............................................................................................ 18, 19

Ohio Crim. R. 17 .................................................................................... 2, 17, 18, 21

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4481

Ohio Crim. R. 17(A) .................................................................................................. 18

Ohio Crim. R. 17(C) ....................................................... 1, 2, 10, 16, 17, 18, 19

Ohio Crim. R. 17(F) .................................................................................................. 18

Ohio Crim. R. 44 ........................................................................................................ 14

Ohio Crim. R. 7(E) ..................................................................................................... 23

Rule 20 of the Rules of Superintendence for the Courts of Ohio ............................... 2, 6, 9, 14, 15

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4482

## I.    PRELIMINARY STATEMENT

Relators claim that the trial court is mounting an "independent investigation" into Ohio's lethal injection process, and they insinuate that the trial court has spontaneously commanded them to produce documents about that process. (Cmplt. ¶¶6, 19; Relators' Memo. in Support at 2-3, 5-6.) Those allegations are entirely baseless.

This case arises not from an "independent investigation" of any kind initiated by the trial court, but from a criminal defendant's pretrial motion – specifically, a motion to dismiss the death penalty aspects of the indictment and to preclude his case from proceeding as a capital or death penalty trial, on the alleged ground that Ohio's lethal injection method of execution is unconstitutional.

In connection with a hearing to be held on the defendant's motion, the trial court has ordered Relators to produce documents about the lethal injection process. However, in their Complaint and Memorandum in Support, Relators sidestep the important fact that it was the *defendant*, Ruben Rivera, who initially subpoenaed the documents, and that the trial court issued the production orders *in enforcement of the subpoena* and only *after* Relators failed to fully comply with the subpoena and only *after* they failed to file a motion to quash or modify it by the compliance deadline, as Ohio Crim. R. 17(C) requires.

Relators set forth three arguments in support of their Complaint for Writ of Prohibition, none of which is meritorious or meets the high standard for a writ of prohibition.

*First*, Relators contend that the trial court lacked jurisdiction to appoint an additional lawyer, Jeffrey Gamso, as co-counsel for the defendant, Ruben Rivera. That allegation is meritless. Relators, who are not parties to the criminal proceedings, do not have standing to challenge the appointment of counsel in those proceedings. Moreover, the trial court was fully

authorized to appoint Mr. Gamso pursuant to Rule 20 of the Rules of Superintendence for the Courts of Ohio, which governs the appointment of counsel for indigent capital defendants. At most, Relators object to how the trial court exercised its *discretion* to appoint Mr. Gamso based on his potential ability to assist the defendant with his motion to dismiss. But it is well-settled that, where a court has discretion to act, prohibition "will not lie to control the exercise of that discretion, even if abused" – which, in any case, it has not been. *State ex rel. Butler v. Demis* (1981), 66 Ohio St.2d 123, 133, 420 N.E.2d 116.

**Second**, Relators contend that the trial court lacks jurisdiction to compel them to produce documents regarding Ohio's lethal injection process. That claim is also baseless. Rule 17 of the Ohio Rules of Criminal Procedure makes clear that trial courts are authorized to enforce a subpoena by compelling the pretrial production of documents from third parties for use at a hearing or trial. There is no merit whatsoever to Relators' contention that Ohio Crim. R. 16 somehow limits the trial court's authority to compel documents from a non-party under Ohio Crim. R. 17. Rule 16 simply does not apply to Relators because it governs only "what evidence must be disclosed to a defendant *by a prosecuting attorney*," and vice versa. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 428, 639 N.E.2d 83 (emphasis added). As Relators concede – and as the prosecutor represented in the Common Pleas Court – Relators are not parties to the criminal action nor are their records within the control of the prosecutor. Accordingly, Rule 16 does not apply here and Rule 17(C) fully authorizes a party to subpoena, and a trial court to compel, the production of documents from a third party for use at a pretrial criminal hearing.

**Lastly**, Relators lodge a general objection to the trial court's jurisdiction over Rivera's motion to dismiss. They argue that Rivera's motion is not justiciable prior to the actual

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4484

imposition of a death sentence. But for the many reasons set forth below, that claim is also meritless. Relators are not the real parties in interest with respect to Rivera's motion, and therefore, they lack standing to challenge the trial court's jurisdiction over it. Moreover – and regardless of Relators' standing – the trial court has jurisdiction over Rivera's motion to dismiss. Rule 12 of the Ohio Rules of Criminal Procedure confers clear authority on the trial court to adjudicate a broad range of pretrial motions in criminal proceedings. See Ohio Crim. R. 12(C) ("*prior to trial* . . . any party may raise by pretrial motion *any* defense, objection, evidentiary issue, or request that is capable of determination without trial of the general issue," including but not limited to a motion presenting "[d]efenses and objections based on defects in the indictment, information, or complaint") (emphasis added). Indeed, Rule 12(F) provides that such pretrial motions "*shall be determined before trial whenever possible*." (Emphasis added).

Moreover, Ohio Crim. R. 12 confers broad authority on the trial court to adjudicate the motion "based on a hearing, the proffer of evidence and testimony, or other appropriate means." Ohio Crim. R. 12(F).

Furthermore, the question presented by Rivera's motion is whether his case may proceed as a capital or death penalty trial or not. Regardless of the *merits* of Rivera's constitutional challenge or his entitlement to that relief – *which are not before this Court on a writ of prohibition* – those questions are ripe for review because the pendency of the death penalty has immediate practical and legal consequences for the parties, due to the significant differences between a trial in which the death penalty is an available punishment and trial in which the death penalty is precluded. See *United States v. Quinones* (C.A.2 2002), 313 F.3d 49 (holding that a challenge to the constitutionality of the death penalty is ripe for review before trial because of the immediate practical and legal consequences that the pendency of the death penalty has on the

-3-

pretrial and conviction phases of a criminal case). Indeed, state and federal courts nationwide have addressed a variety of constitutional challenges to the death penalty in pretrial criminal proceedings.

Additionally, contrary to Relators' unsupported supposition, this Court has previously exercised jurisdiction over pretrial motions in criminal proceedings based on the potential for a certain punishment, even though the defendant had not yet been -- and might never have been -- convicted. See *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167.

Relators' contention that Rivera's challenge *could* be raised after conviction, through a 28 U.S.C. § 1983 action, is irrelevant to the question of the court's jurisdiction to rule on the motion before trial. (Relators' Memo., at 13.) Rivera presents arguments differing substantially from those presented by post-conviction defendants in recent § 1983 actions and, most importantly, none of those cases restricts a defendant's lethal injection challenge to a § 1983 suit or precludes a pretrial claim, like Rivera's, challenging the state's right to execute him on constitutional grounds.

Indeed, Relators' suggestion that such a challenge should only be heard through a § 1983 proceeding in federal court would not only prevent the trial court from exercising jurisdiction over a lethal injection challenge, but would also prevent *this Court* from ever passing judgment on Ohio's lethal injection process.

Finally, the writ of prohibition should be denied because there exists an adequate remedy at law for any alleged injury that might arise from the trial court's exercise of jurisdiction. Should the trial court grant *any* aspect of Rivera's motion, the State of Ohio and the Attorney General would have an adequate remedy by means of appeal pursuant to R.C. 2945.67. That statute allows a prosecutor or the attorney general to immediately appeal as a matter of right "any

-4-

decision of a trial court in a criminal case . . . which decision grants a motion to dismiss all or any part of an indictment" and allows appeal by leave of the court for "any other decision, except the final verdict." R.C. 2945.67.  It is well-settled that the availability of an appeal, either as of right or by leave of the court, constitutes an adequate remedy that bars the issuance of extraordinary relief through a writ of prohibition.  *State ex rel. LTV Steel Co. v. Gwin* (!992), 64 Ohio St.3d 245, 248, 594 N.E.2d 616.

For all of these reasons, discussed in more detail below, Relators' Complaint for Writ of Prohibition is meritless and should be denied.

-5-

II.   **FACTS**

On August 19, 2004, a grand jury in Lorain County indicted Ruben Rivera on ten

criminal counts.  (Cmplt. ¶8; Ans. Exh. 2, Indictment.)  The first two counts – which are the

counts most relevant to this action for prohibition – are classified as capital offenses and carry

the potential penalty of death.  Count One charges Rivera with aggravated murder in violation of

R.C. 2903.01(A), and includes the capital murder specification set forth in R.C. 2929.04(A)(7).

(Ans. Exh. 2, Indictment at 1-2.)  Count Two charges Rivera with aggravated murder in violation

of R.C. 2903.01(B), and also includes the capital murder specification set forth in R.C.

2929.04(A)(7).  (Ans. Exh. 2, Indictment at 2.)

The case, *State v. Rivera*, Case No. 04CR065940, was initially assigned to Judge Lynett

McGough of the Lorain County Court of Common Pleas.  (Cmplt. ¶9; Ans. ¶9.)  Finding Rivera

indigent, the Common Pleas Court appointed attorneys Kreig Brusnahan and Kenneth Lieux to

represent Rivera, pursuant to Rule 20 of the Rules of Superintendence of the Courts of Ohio,

which governs the appointment of counsel for indigent defendants in capital cases.  (Cmplt. ¶9;

Ans. ¶9.)

In January 2007, upon Judge McGough's retirement, Judge Burge was assigned the cases

on Judge McGough's docket, including *State v. Rivera*.  (Cmplt. ¶13; Ans. ¶13.)

### A.   Rivera's Motion for an Order Dismissing Those Portions of the Indictment That Allow Death as a Possible Penalty and to Preclude a Death Penalty Trial

On March 1, 2007, Rivera filed a pretrial motion titled: "Motion to Declare the Death

Penalty Unconstitutional Due to Lethal Injection Constitutes Cruel and Unusual Punishment."

(Cmplt. Exh. A) (hereafter, "Rivera's motion to dismiss" or "Rivera's motion.")

-6-

Relators contend that Rivera's motion challenges only "the method of his execution and not the state's right to execute him." (Cmplt. ¶33; Relators' Memo. at 4.) Relators are wrong. Rivera's motion to dismiss and the preliminary hearings on it make clear that he *is* challenging the state's right to execute him and that he seeks to preclude a capital or death penalty trial.[1] This is clear in the very first sentence of Rivera's motion, which requests "an order dismissing that portion of the aggravated murder indictment . . . which elevates the potential penalty from life imprisonment to death." (Cmplt. Exh. A, at 1.) Similarly, at a hearing discussing the motion on July 9, 2007, Rivera's counsel explained that the motion seeks to remove death as a possible penalty on the alleged ground that Ohio's sole method of execution, lethal injection, is unconstitutional. Specifically, Rivera's counsel stated:

> [T]he only method of execution in the State of Ohio is one that we believe under – under the only protocol there is for executing people in the State of Ohio, is one that we believe constitutes cruel and unusual punishment. . . . And if that's so, then the – then what the State would be requesting is that Mr. Rivera receive an unconstitutional sentence, a sentence that he – that cannot constitutionally be imposed on him, because the only way to impose it at this time is cruel[] and unusual[], in violation of the constitution.

(Ans., Exh. 4, 7/9/07 Tr. at 78.)

****

> [T]he question isn't, Can the State find a way to carry out a death sentence. The question is, Can a death sentence be lawfully imposed if the only method that the State currently has for executing people is cruel and unusual.

---

[1] The contours of Rivera's request have not been fully presented to the Common Pleas Court yet. Thus, it is unclear whether Rivera seeks only a non-*death-penalty* trial (i.e. a trial for "capital offenses" but where death has been stricken, in advance, as a potential penalty, see *State v*. *Harwell*, 102 Ohio St.3d 128, 2004-Ohio-2149, 807 N.E.2d 330) or a non-*capital* trial (a trial in which the capital specifications have been dismissed from the indictment, leaving only non-capital murder charges, and where death is therefore not a possible penalty). Whichever is the case, the trial court pleadings and hearings make clear that Rivera *is* challenging the state's right to execute him, and that at the very least, he is seeking to preclude a death penalty trial.

-7-

(Ans. Exh. 4, 7/9/07 Tr. at 83.)

Rivera's request to preclude death as a possible penalty and to preclude a capital or death penalty trial is also apparent in his Memorandum Regarding Ripeness. (Ans. Exh. 5.) There, Rivera argued that his motion should be adjudicated before trial because whether the action proceeds as a capital or death penalty trial or not has immediate consequences for the parties, due to the significant differences between a trial in which death is an available punishment and one in which death is precluded. (Ans., Exh. 5, Memo. Regarding Ripeness, at 2) (arguing that "it is clear that a trial with death as a sentencing possibility is different from a trial in which death is not a sentencing possibility."); (Ex. 6; Reply Memo Regarding Ripeness.)

In short, the trial court pleadings and hearings make clear that Rivera's motion to dismiss *is* challenging the state's right to execute him. Relators' gloss on Rivera's motion is simply wrong and not supported by the record. Moreover, to the extent that Relators' gloss is designed to leapfrog to the merits of Rivera's motion, such efforts are inappropriate for a writ of prohibition. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 73, 701 N.E.2d 1002 ("a writ of prohibition tests and determines solely and only the subject matter jurisdiction of the lower court," not the merits of the underlying claim); *Bowling Green State Univ. v. Williamson* (1988), 39 Ohio St.3d 141, 142, 529 N.E.2d 1371 ("the merits of the underlying action are not properly before the court considering the prohibition action.").

The question before this Court is not whether Ohio's lethal injection process is constitutional or whether the relief Rivera seeks is appropriate. The sole and simple question is whether a trial court has jurisdiction to adjudicate a criminal defendant's pretrial motion challenging an aspect of an indictment and seeking to preclude a capital or death penalty trial.

-8-

As discussed below in Section III, trial courts clearly have such jurisdiction, and in any case, any potential ruling by the trial court that is adverse to the state is appealable before trial.

**B.    The Appointment of Jeffrey Gamso as Defense Co-Counsel for Rivera**

At a hearing on May 24, 2007, Rivera's appointed counsel, Kreig Brusnahan, asked the trial court to appoint for Rivera an additional lawyer, Jeffrey Gamso, to assist with the motion to dismiss. (Ans. Exh. 3; 5/24/07 Tr. at 3-7.) Mr. Brusnahan requested that Mr. Gamso be appointed because of Mr. Gamso's expertise on the issue of lethal injection. (Id.) On May 29, 2007, the trial court filed a journal entry granting the defense request and appointing Mr. Gamso co-counsel for Rivera. (Cmplt. Exh. C.)

Although Relators repeatedly refer to Mr. Gamso as "special counsel" (Cmplt. ¶¶5, 6, 26, 29), that label is Relators' own invention entirely. The trial court has never designated Mr. Gamso "special counsel." The trial court appointed Mr. Gamso pursuant to Rule 20 of the Rules of Superintendence for the Courts of Ohio, which governs the appointment of counsel for indigent defendants in capital cases. (Ans. ¶16, Ans. Exh. 3.) Pursuant to Sup. R. 20, a trial court *must* appoint "[a]t least two attorneys," and is permitted to appoint more, to represent an indigent capital defendant like Rivera. See Sup. R. 20.

Relators do not challenge Mr. Gamso's qualifications to serve as counsel in a capital case and Mr. Gamso is, in fact, certified to serve as a Sup. R. 20 attorney in the courts of Ohio.[2]

**C.    Rivera's Document Subpoena on Relators and the Trial Court's Enforcement of the Subpoena**

Relators' insinuate that Respondent has *sua sponte* commanded Relators to produce documents regarding the lethal injection process. (Cmplt. ¶19; Relators' Memo. at 2-3, 5-6.)

---

[2] Mr. Gamso is on the Supreme Court of Ohio's publicly-available "Statewide List of Rule 20 Certified Attorneys." See http://www.sconet.state.oh.us/Atty-Svcs/Rule20/R20_AttorneySearch.html.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4491

Those allegations are baseless. Relators have sidestepped the fact that it was the defendant, Ruben Rivera, who initially subpoenaed the documents, and that the trial court issued the production orders *in enforcement of the subpoena*, and only *after* Relators failed to comply with the subpoena and failed to file a motion to quash or modify it by the compliance deadline, as Ohio Crim. R. 17(C) requires.

On June 1, 2007, pursuant to Ohio Crim. R. 17(C) and in connection with the motion to dismiss the death penalty aspects of the indictment, Rivera's counsel served a subpoena upon Relators for the production of documents regarding the lethal injection process. (Ans. ¶19 & Ans. Exh. 1, Subpoena.) Rivera's subpoena commanded the documents to be produced to the court on or before June 7, 2007. (Id.)

At a hearing on June 20, 2007, Rivera's counsel notified the trial court that Relators had not fully complied with the defense's document requests. (Ans. ¶19 & Ans. Exh. 7 at 59-60.) Nor had Relators filed a motion to quash or modify any of the subpoena's document requests to which they had not responded. (Ans. ¶19.) At the hearing, the prosecutor indicated that he had no power to direct Relators to produce the documents, stating, "I have no ability to make them comply." (Ans., Exh. 7 at 57.) Accordingly, in a Journal Entry filed on June 20, 2007, after the hearing, the trial court issued an order enforcing the subpoena and compelling Relators to produce to the court, by July 2, 2007, the documents described in the June 20 Journal Entry. (Cmplt. Exh. D, 6/20/07 Journal Entry) (*hereafter*, "the June 20th Order").

On June 28, 2007, three weeks after the subpoena's compliance or response deadline, Relators filed a "Motion for Clarification" of the June 20th Order. (Cmplt. Exh. E.) The "Motion for Clarification" did not purport to be a motion to quash or modify any of the document requests. As Relators state in their Complaint, they only requested "that the Court

-10-

clarify the authority upon which its [production] order was based." (Cmplt. ¶20.) Relators stated

that one or more of the document requests in the June 20th Order might require them to create

documents or reduce to writing information not otherwise available in written form, and thus

they asked the court to "clarify the authority" for such a directive. (Complt. Exh. E at 4.)

Additionally, Relators argued that a criminal defendant is only entitled to documents as set forth

in Crim. R. 16 – which describes what evidence each *party* must disclose to one another – and

that because Relators are not parties to the criminal case, they had no obligation to disclose

documents. (Id. at 4-5.) In their motion, Relators also stated that they had already produced

some documents in response to the subpoena. (Id. at 2.) However, Relators have never

contended that they were fully compliant and have never filed a motion to quash or modify the

document requests to which they have not yet responded.

On July 9, 2007, a hearing was held at which the June 20th Order was discussed.

(Complt. ¶21; Ans. ¶21.) Counsel for Rivera notified the court that Relators had still not

responded fully to the June 20th Order. (Ans. ¶21 & Exh. 4 at 66-72.)

On July 24, 2007, in an Opinion and Journal Entry, the trial court clarified the June 20th

Order. (Cmplt. Exh. F) (*hereafter*, the July 24th Order.) The trial court noted that Relators were

"not obliged to deliver to the Court that which does not exist. Should any of the documents

requested not exist, [the ODRC] need not create them and then submit them...." (Id. at 4.) The

court stated that Relators were only required to produce documents "*should they exist*" and that

"[i]nsofar as there may be information sought that they do not have in any documentary form"

they should simply inform the Court that there is "no responsive documentation." (Id. at 5-6)

(emphasis in original). The trial court also modified paragraph 7 of the June 20th Order to allow

the identities of those involved in the execution process to remain non-public. (Id. at 5.)

-11-

As to Relators' request for "clarification" of the trial court's authority to compel their production of documents under Crim. R. 16, the trial court noted that it had not ordered the production pursuant to Crim. R. 16, because Crim. R. 16 does not govern the document subpoena or the trial court's follow-up production orders. (Id. at 3-4.)

The July 24th Order again directed Relators to produce the relevant documents to the court – this time, within 30 days (i.e. by August 23, 2007). (Id. at 6-7.) The court also explicitly noted that, since the subpoena was issued on June 1, 2007, Relators "had neither fully complied with [the subpoena] nor availed themselves of a proper response." (Id. at 3, 6-7.)

On August 22, 2007 – one day before Relators' deadline for complying with the July 27th Order – Relators filed in this Court their Complaint for Writ of Prohibition.

Relators have still not complied with the July 24th Order, either by producing the designated documents or by informing the trial court that there are no documents responsive to the requests.

III.    ARGUMENT

To be entitled to a writ of prohibition, Relators must establish (1) that the trial court is about to exercise judicial power; (2) that the exercise of that power is not authorized by law; and (3) that denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Blackwell v. Crawford*, 106 Ohio St.3d 447, 2005-Ohio-5124, 835 N.E.2d 1232 at ¶18. "[I]f the lack of jurisdiction is not patent and unambiguous, there is generally no entitlement to a writ of prohibition to prevent a trial court's exercise of jurisdiction." Id. at ¶19.

Where prohibition is sought to halt an action in a lower court, the merits of the underlying action are not properly before the court considering the prohibition action. *Bowling Green State Univ. v. Williamson* (1988), 39 Ohio St.3d 141, 142, 529 N.E.2d 1371. A writ of prohibition "may not be employed as a convenient short cut to a final determination of rights of litigants." *State ex rel. Caley v. Tax Comm. of Ohio* (1934), 129 Ohio St. 83, 88, 193 N.E. 751.

Thus, the question before this Court is not whether Ohio's lethal injection process is constitutional or whether the relief Rivera seeks (*i.e.*, precluding death as a possible punishment and precluding a death penalty or capital trial) is appropriate. The sole question is whether the trial court has *jurisdiction* (1) to appoint an additional lawyer as counsel for Ruben Rivera; (2) to enforce a document subpoena that Relators have neither fully complied with nor moved to quash; and (3) to adjudicate a criminal defendant's pretrial motion challenging an aspect of an indictment and asking the court to preclude a capital or death penalty trial on constitutional grounds.

-13-

For the reasons that follow, the trial court has jurisdiction in every respect. Relators' arguments in support of their Complaint are meritless and simply do not meet the high standard for a writ of prohibition.

### A. The Trial Court Had Jurisdiction to Appoint Attorney Jeffrey Gamso as Co-Counsel for the Defendant

Relators' first contention – that the trial court lacked jurisdiction to appoint attorney Jeffrey Gamso as co-counsel for the defendant – is wrong.

As a preliminary matter, Relators do not have standing to challenge the appointment of counsel in the *Rivera* case. "[A] prohibition action may only be commenced by a person who is either a party to the proceeding sought to be prohibited, or demonstrates an injury in fact to a legally protected interest." *State ex rel. Matasy v. Morley* (1986), 25 Ohio St.3d 22, 23, 494 N.E.2d 1146. As Relators concede, they are not parties to the *Rivera* criminal proceedings. In addition, although part of Rivera's defense consists of challenging Ohio's lethal injection method of execution, the mere fact that this challenge is being aided by court-appointed counsel does not create for Relators a legally protected interest in the appointment of counsel. See *Still v. Hayman,* 153 Ohio App.3d 487, 2003-Ohio-4113, 794 N.E.2d 751 (county child support enforcement agency lacked standing to challenge court's appointment-of-counsel decision in paternity and child support action); *State v. Smith*, 3d Dist. No. 13-03-25, 2003-Ohio-5461 (domestic violence defendant lacked standing to allege trial court committed error in appointing counsel to represent alleged victim).

More importantly, regardless of Relators' standing, the trial court's appointment of Mr. Gamso was authorized by Ohio law. Ohio Crim. R. 44 governs the appointment of counsel in criminal cases generally, and Rule 20 of the Rules of Superintendence for the Courts of Ohio governs the appointment of counsel in capital cases, in particular. Pursuant to Sup. R. 20, a trial

-14-

court must appoint "[a]t least two attorneys," and may appoint more, to represent an indigent defendant charged with aggravated murder and whose indictment includes one or more death specifications pursuant to R.C. 2929.04(A). See Sup. R. 20. Relators do not challenge Mr. Gamso's qualifications to serve as counsel in a capital case, and Mr. Gamso is in fact certified to serve as a Sup. R. 20 attorney. See Section II. Thus, the appointment of Mr. Gamso as co-counsel for Rivera was fully authorized by Ohio law. Indeed, this Court has long held that "the power to appoint counsel reposes in the courts" and that "the appointment of counsel by the court to represent indigent parties . . . *is a necessary function of the court in the exercise of its jurisdiction*." *State ex rel. Butler v. Demis* (1981), 66 Ohio St. 2d 123, 132, 420 N.E.2d 116 (emphasis added).

The cases cited by Relators in their Memorandum in Support are inapposite. (Relators' Memo. at 7.) The case of *State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384, for instance, did not even involve the appointment of counsel for an indigent defendant. In that case, the common pleas court judge sought to appoint outside counsel *for himself* where a criminal defendant had named the judge as a respondent in a habeas action in federal district court. This Court deemed the judge's actions improper because a state statute only allowed for the appointment of outside counsel for the judge pursuant to an application by the prosecuting attorney and the board of county commissioners, which had not been made. Relators' suggestion that the appointment of counsel in *State ex rel. Mason* is analogous to Respondent's appointment of additional counsel for a capital defendant pursuant to Sup. R. 20 is simply not credible.

In short, Respondent had clear jurisdiction to appoint Mr. Gamso as co-counsel for Ruben Rivera. At most, Relators are objecting to how the trial court exercised its *discretion* to appoint Mr. Gamso as Sup. R. 20 counsel based on his potential ability to assist Rivera with his

-15-

motion to dismiss. But, it is well-settled that "[w]here a court has discretion to act, [prohibition] will not lie to control the exercise of that discretion, even if abused." Id. at 133. In any event, there is no basis for concluding that the trial court abused its discretion here.[3]

For all of these reasons, Relators have no basis for challenging the trial court's appointment of counsel for Mr. Rivera.

**B.** **The Trial Court Has Jurisdiction to Enforce a Subpoena Duces Tecum and to Order Relators to Produce Documents Regarding the Lethal Injection Process**

Relators' second contention is that the trial court lacks jurisdiction to order Relators to produce documents related to Ohio's lethal injection method of execution. That claim is meritless. Under Ohio law, a trial court is fully authorized to compel the production of documents subpoenaed from a third party by a criminal defendant.

Rule 17(C) of the Ohio Rules of Criminal Procedure authorizes a party to require, by subpoena, the production of documents or other physical evidence within the custody or control of the individuals who must respond to the subpoena. The rule is clear in conferring discretionary power upon the courts to make a document subpoena returnable *before trial*. See Crim. R. 17(C) (court can direct documents to be produced "at a time prior to the trial or prior to the time they are offered in evidence"). Courts may also provide for pretrial "inspect[ion] by the parties and their attorneys" of the subpoenaed documents. Id.

It has long been recognized that Rule 17(C) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in

---

[3] Indeed, as the Journal Entry appointing Mr. Gamso makes clear (Cmplt. Exh. C), the trial court has taken care to balance the interests of the county and its expenses, on the one hand, with the defendant's interest in additional counsel on the other. As such, with the agreement of all defense counsel, Mr. Lieux has been excused from preparing and participating in the hearing on the motion to dismiss.

-16-

criminal cases. See *United States v. Nixon* (1974), 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d

1039 (holding that the right to the production of documents has "constitutional dimensions"); *In*

*re Martin Marietta Corp.* (C.A.4, 1988), 856 F.2d 619, 621 (Rule 17(C) "implements the Sixth

Amendment guarantee that an accused have compulsory process to secure evidence"). This

Court has held that "Ohio Crim. R. 17(C) is substantively indistinguishable from Fed. R. Crim.

P. 17(c)." *In re Subpoena Duces Tecum Served Upon Attorney Potts*, 100 Ohio St.3d 97, 2003-

Ohio-5234, 796 N.E.2d 915, at ¶11.

It is well-established that there are only limited ways of rendering a subpoena invalid or

unenforceable. As the U.S. Supreme Court has held: "A subpoena for documents may be

quashed if their production would be 'unreasonable or oppressive,' ***but not otherwise.***" *Nixon*,

418 U.S. at 698 (emphasis added); see also *In re Subpoena Duces Tecum Served Upon Attorney*

*Potts* at ¶13 (adopting for Ohio Crim. R. 17 the rationale and test set forth in *United States v.*

*Nixon*). Relators do not contend that the document requests are unreasonable or oppressive –

indeed, they did not file a motion to quash or modify the subpoena prior to the compliance

deadline, as Ohio Crim. R. 17(C) requires.

In this regard, there is absolutely no basis for Relators' umbrage that their "presence was

not requested by the Court" at hearings on the subpoena and enforcement order. (Cmplt. ¶21.) If

Relators harbored objections to the subpoena and intended not to comply with it in any way, then

they were required by Ohio Crim. R. 17(C) to file a motion to quash or modify the subpoena by

the compliance deadline of June 7, 2007. They did not do that.

Rather, in a peculiarly-styled "Motion for Clarification," Relators simply questioned the

trial court's "authority" to compel production of the documents. There is no basis for that

-17-

challenge, however, because Crim. R. 17 clearly confers authority on the defendant to issue, and on the trial court to enforce, a document subpoena.

Nor is there any basis for Relators' contention that the documents cannot be ordered for a hearing before trial. Indeed, the case cited by Relators in their Memorandum, *State v. Cleveland Plain Dealer*, confirms that Crim. R. 17(C) allows documents to be subpoenaed for inspection and hearing before trial. (Relators' Memo., at 10.) In that case, the court held that:

> [Crim. R. 17(C)] must be read in conjunction with Crim. R. 17(A) and 17(F). Crim. R. 17(F) refers to 'subpoenas for attendance at a hearing or trial' and a 'subpoena requiring the attendance of a witness at a hearing or trial.' Implicitly, a subpoena duces tecum can require the person(s) to whom it is directed to produce the documents or other objects designated therein ... *at a hearing or trial.*

*State v. Cleveland Plain Dealer* (June 15, 1979), 8th Dist. Nos. 40531, 40532, 40533, 1979 WL 210746, *5 (emphasis added) (holding that the document subpoena ordering Plain Dealer employees to produce materials to the *prosecutor's office* was an abuse of the use of the subpoena power, "which can be used only to compel the production of evidence at a formal court proceeding"); see also *United States v. Leaver* (S.D.N.Y. 2005), 358 F. Supp. 2d 273, 276 ("A Rule 17(C) subpoena may also properly be used to gather documents for a pretrial or post-trial hearing.").

There is no dispute that the documents at issue here are sought in connection with "a formal court proceeding" – the hearing on Rivera's motion to dismiss.

Finally, there is no merit to Relators' contention that Ohio Crim. R. 16 somehow limits the trial court's authority to compel documents from a non-party under Crim. R. 17(C). Criminal Rule 16 is irrelevant to Relators. It states that "[u]pon written request *each party* shall forthwith provide the discovery herein allowed." (Emphasis added). As this Court has held, Rule 16(B) governs only "what evidence must be disclosed to a defendant *by a prosecuting attorney*," and

vice versa *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 428, 639 N.E.2d 83

(emphasis added). However, as the Lorain County prosecutor stated below – and as Relators

concede – Relators are *not* parties to the criminal action and the documents sought are *not* in the

possession or control of the prosecuting attorney. (Ans. ¶19 & Ans. Exh. 7 at 57); (Cmplt. ¶20.

Accordingly, Rule 16 does not apply.

Relators' reliance on *State ex rel. Steckman v. Jackson* is simply misplaced. *Steckman*

addressed the problem of parties who misused the public records law (R.C. 149.43) to try to

obtain prosecution and law enforcement files they were not otherwise entitled to under Rule 16.

*Steckman,* 70 Ohio St.3d at 421. The Court in *Steckman* ruled that "information not subject to

discovery pursuant to Crim. R. 16(B), contained in the file of a prosecutor who is prosecuting a

criminal matter" is not subject to release under R.C. 149.43. In other words, *Steckman* prevents

parties from making an end-run around Rule 16 by demanding, through a public records request,

***prosecution*** materials not otherwise required to be disclosed ***by the prosecutor*** under Rule 16.

But Rivera is not seeking prosecution materials and nothing in *Steckman* limits the power

under a *different rule* – Rule 17(C) – to subpoena documentary evidence from non-parties.

Indeed, since *Steckman*, this Court has affirmed the continuing vitality of Rule 17(C) as a means

to compel the production of documents from non-parties before trial. See, e.g., *In re Subpoena*

*Duces Tecum Served Upon Attorney Potts*, 100 Ohio St.3d 97, 2003-Ohio-5234, 796 N.E.2d 915

(involving pretrial document subpoena on non-party).

In sum, the trial court was fully authorized by Ohio law to compel the production of

documents subpoenaed by Rivera from Relators and for use in a hearing on Rivera's motion to

dismiss the death aspects of his indictment and his request to preclude the case from proceeding

as a capital or death penalty trial.

-19-

**C.**   **The Trial Court Has Jurisdiction to Adjudicate Rivera's Pretrial Motion Challenging the Constitutionality of Ohio's Lethal Injection Procedure**

Lastly, Relators lodge a general objection to the trial court's jurisdiction over Rivera's pretrial motion. They argue that Rivera's motion is not justiciable prior to the actual imposition of a death sentence. For many reasons, that claim is also meritless. First, Relators are not the real parties in interest with respect to Rivera's motion to dismiss, and therefore, they do not have standing to challenge the trial court's general jurisdiction over the motion. Moreover, and regardless of Relators' standing, the trial court clearly has jurisdiction to adjudicate Rivera's pretrial motion pursuant to Ohio Crim. R. 12, which authorizes trial courts to adjudicate a broad range of motions before trial and further authorizes their adjudication "based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." See Ohio Crim. R. 12. Secondly, Rivera's motion is ripe for review because the pendency of the death penalty has immediate and practical consequences at the pretrial and trial stages. Furthermore, contrary to Relators' unsupported contention, this Court has previously exercised jurisdiction over pretrial motions based only on the potential for a certain punishment, see *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, and state and federal courts nationwide have addressed a variety of constitutional challenges to the death penalty in pretrial proceedings.

**i.**   **Relators are not the real parties in interest, and therefore, do not have standing to challenge the trial court's general jurisdiction over Rivera's motion**

As non-parties to the *Rivera* criminal proceedings in the Court of Common Pleas, Relators do not have standing to challenge the trial court's general jurisdiction over Rivera's pretrial motion. Relators are patently not the real parties in interest with respect to the pretrial

-20-

motion – the Lorain County Prosecutor is. The prosecutor, however, is not a party to this original action. [4]

Ohio Civil Rule 17 requires that "[e]very action shall be prosecuted in the name of the real party in interest." Ohio Civ. R. 17(A). This Court has defined a real party in interest as one "who is *directly* benefited or injured by the outcome of the case," and not merely a party with "an interest in the action itself." *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (emphasis in original) (quotations omitted). It is well-settled that a party that is not the real party in interest lacks standing to prosecute the action. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002.

Here, while Relators might possess a general "interest" in a court proceeding concerning the lethal injection penalty, Relators are not "*directly* benefited or injured by the outcome of the case," as this Court requires of a real party in interest. Indeed, Relators have no more direct interest in Rivera's motion than they would have had, for instance, in *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, where a defendant challenged Ohio's involuntary manslaughter statute in a pretrial motion, on the ground that the potential prison term violated the prohibition against cruel and unusual punishment.

Although Relators are charged with administering both the state's prisons and executions, they are not "directly benefited or injured" by the outcome of any criminal case in which either a potential penalty or the offense classifications in an indictment are challenged. The only parties

---

[4] In any event, even if the Lorain County Prosecutor were a party here, there would still be no basis for a writ of prohibition because the prosecutor has an adequate remedy at law through appeal. R.C. 2945.67 provides that: "A prosecuting attorney . . . or the attorney general may appeal as a matter of right any decision of a trial court in a criminal case . . . which decision grants a motion to dismiss all or any part of an indictment, complaint, or information . . . and may appeal by leave of the court . . . any other decision, except the final verdict, of the trial court in a criminal case. . . ."

-21-

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4503

"directly benefited or injured" by such a challenge are the defendant opposing the potential

penalty and the office of the prosecutor seeking to impose it.

In short, neither Terry Collins nor the ODRC is the real party in interest with respect to

Rivera's motion to dismiss the death specifications in his indictment and to preclude death as a

possible penalty. Accordingly, Relators lack standing to challenge the trial court's general

jurisdiction over Rivera's pretrial motion to dismiss.

### ii. The trial court has jurisdiction to adjudicate Rivera's pretrial motion pursuant to Ohio Crim. R. 12

The trial court possesses basic statutory jurisdiction over the *Rivera* criminal proceedings

pursuant to R.C. 2931.03, which provides that "[t]he court of common pleas has original

jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive

jurisdiction of which is vested in courts inferior to the court of common pleas." In turn, the Ohio

Rules of Criminal Procedure provide procedural guidance to all courts in the exercise of criminal

jurisdiction. See Ohio Crim. R. 1(A) (describing the applicability of the Ohio Rules of Criminal

Procedure).

Rule 12 of the Ohio Rules of Criminal Procedure confers clear authority on the trial court

to adjudicate Rivera's motion prior to trial. Rule 12(C) provides that: *"prior to trial* . . . any

party may raise by pretrial motion *any* defense, objection, evidentiary issue, or request that is

capable of determination without trial of the general issue." (Emphasis added). This includes,

but is not limited to, a motion presenting "[d]efenses and objections based on defects in the

indictment, information, or complaint." Ohio Crim. R. 12(C)(2). The rule explicitly provides

that any such motions *"shall be determined before trial whenever possible."* Ohio Crim. R.

12(F).

-22-

In short, Rule 12 plainly authorizes a trial court to adjudicate a broad range of issues before trial, so long as their adjudication does not require trial of the general factual issues concerning the defendant's guilt or innocence. Here, there is no dispute that Rivera's motion to dismiss the death aspects of the indictment and to preclude a capital or death penalty trial can be adjudicated independent of and prior to the general factual issues concerning his guilt or innocence.[5]

Moreover, Crim. R. 12(F) confers broad authority on the trial court to adjudicate the motion "based on a hearing, the proffer of evidence and testimony, or other appropriate means," Ohio Crim. R. 12(F).

Indeed, this Court has recognized the jurisdiction of Ohio courts to decide pretrial constitutional challenges to aspects of a criminal indictment, including challenges based only on a *potential penalty* and implicating Eighth Amendment issues. For instance, in *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, the trial court and this Court exercised jurisdiction over a defendant's pretrial motion to dismiss her involuntary manslaughter charge on the ground that the potential penalty associated with Ohio's involuntary manslaughter statute violated the

---

[5] Crim. Rule 12(D) states that, except as provided in Crim. R. 7(E) and 16(F), which are inapplicable here, all pretrial motions should be filed within 35 days after arraignment or seven days before trial, whichever is earlier. However, Crim. Rule 12(D) gives trial courts the discretion, in the interest of justice, to extend the time for making pretrial motions. Neither Relators nor the Lorain County Prosecutor has ever challenged the trial court's decision in this case to extend the defendant's time for filing pretrial motions – and, in any case, any such decision is a discretionary – not jurisdictional – matter, and is reviewable on appeal. *State v. Karns* (1992), 80 Ohio App.3d 199, 204, 608 N.E.2d 1145. Because the trial court's decision to extend the pretrial motion deadline is discretionary, and not a jurisdictional issue, it is not appropriate for consideration on a writ of prohibition. Indeed, this Court has made clear that a writ of prohibition is not an appropriate remedy for challenging a court's exercise of discretion. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 78, 701 N.E.2d 1002 (noting that "what relator really argues is that the court either abused its discretion or erred as a matter of law" and ruling that "a writ of prohibition is not an appropriate remedy to correct alleged errors or prevent an allegedly erroneous decision" stemming from a discretionary determination).

-23-

constitutional proscription against cruel and unusual punishment. Although this Court declined

to find the potential penalty constitutionally infirm, neither the trial court nor this Court

expressed *any* jurisdictional concern regarding the defendant's pretrial challenge. *Weitbrecht*, 86

Ohio St.3d at 373-74.

Moreover, Ohio courts routinely consider pretrial motions (and hold pretrial hearings on

them) based on a range of other constitutional issues. See, e.g., *City of Toledo v. Tellings*, 114

Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152 and *City of Toledo v. Tellings*, 6th Dist. No.

L-04-1224, 2006-Ohio-975, at ¶¶ 3-30 (involving pretrial motion by criminal defendant

challenging the constitutionality of state and city pit bull ordinances and involving trial court

hearings on the pretrial motion in which the state called four expert and other witnesses, and the

defendant called 12, and where other evidence was adduced and admitted).

In sum, there is no merit to Relators' claims that the trial court lacks jurisdiction to

adjudicate Rivera's pretrial motion to dismiss and to adjudicate the motion through a pretrial

hearing and the acceptance evidence.

      iii.     **The trial court has jurisdiction to rule on Rivera's motion to dismiss**
                  **before trial because the pendency of the death penalty has a direct**
                  **and immediate impact on the trial proceedings and the parties**

In addition to the clear authority the trial court possesses under the Ohio Criminal Rules

of Procedure to adjudicate Rivera's pretrial motion, it is also well-settled that a cause is

justiciable where there exists "a real controversy presenting issues which are ripe for judicial

resolution and which will have a direct and immediate impact on the parties." *State v. Stambaugh*

(1987), 34 Ohio St.3d 34, 38, 517 N.E.2d 526 (quotations omitted) (citing *Burger Brewing Co. v.*

*Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 97-98, 296 N.E.2d 261).

Contrary to Relators' contention that Rivera's motion challenges only "the method of his execution and not the state's right to execute him" (Cmplt. ¶ 33), Rivera's motion to dismiss and the preliminary hearings held on the motion make clear that Rivera *is* challenging the state's right to execute him and that he is seeking to preclude a capital or death penalty trial. See Section II.A., supra. Although the death penalty statute, R.C. 2949.22, contemplates an alternative method of execution in the event the method of lethal injection is deemed unconstitutional, R.C. 2949.22(C) makes clear that the alternative method must be one "prescribed by law subsequent to the effective date of this amendment [November 21, 2001]."[6] However, neither the General Assembly nor the executive has prescribed any different manner of execution since November 21, 2001. Rivera's counsel contends that because lethal injection is currently the only method of execution in Ohio, if that method is unconstitutional because of the way it is administered, then the death penalty cannot be imposed and the trial should not proceed as a death penalty trial. (Ans. ¶14 & Ans. Exh. 4, 7/9/07 Tr. at 77-84; Ans. Exh 5 Def.'s Memo. Regarding Ripeness; Exh. 6, Def.'s Reply Memo. Regarding Ripeness.)

Thus, the question presented by Rivera's motion is whether his case may proceed as a capital or death penalty trial or not. Regardless of the *merits* of Rivera's constitutional challenge or his claims to this relief – *which are not before this Court on a writ of prohibition* – those questions are ripe for review because the pendency of the death penalty has immediate practical and legal consequences for the parties, due to the significant differences between a trial in which the death penalty is an available punishment and a trial in which the death penalty is precluded.

---

[6] R.C. 2949.22(C) states in relevant part: "If a person is sentenced to death, and if the execution of a death sentence by lethal injection has been determined to be unconstitutional, the death sentence shall be executed by using any different manner of execution prescribed by law subsequent to the effective date of this amendment [November 21, 2001] . . . provided that the subsequently prescribed different manner of execution has not been determined to be unconstitutional."

-25-

For instance, under prevailing United States Supreme Court and Supreme Court of Ohio

precedent, any prospective juror in a death penalty case who is strongly opposed to capital

punishment must be excluded for cause from sitting on such a jury. *Lockhart v. McCree* (1986),

476 U.S. 162, 170 n.7, 106 S.Ct. 1758, 90 L.Ed.2d 137; *State v. Jalowiec* (2001), 91 Ohio St.3d

220, 225, 744 N.E.2d 163. The result is to exclude from the jury a significant class of people

who would be perfectly fit to serve if the death penalty were not a sentencing option. See *United*

*States v. Quinones* (C.A.2, 2002), 313 F.3d 49, 59 (holding challenge to constitutionality of

federal death penalty ripe for review *before trial*, based in part on right of defendant to "a jury on

which persons who are conscientiously opposed to the death penalty are not excluded for

cause.").

The opinion of the U.S. Court of Appeals for the Second Circuit in *United States v.*

*Quinones* (C.A.2, 2002), 313 F.3d 49, is particularly instructive on the differences between a

death penalty trial and a non-death penalty trial. In *Quinones*, the court ruled that a pretrial

challenge to the constitutionality of the federal death penalty was ripe for adjudication because of

the significant differences between a trial in which the death penalty is an available punishment

and a trial in which the death penalty is precluded. The Second Circuit held that "a defendant

suffers practical and legally-cognizable disadvantages" by postponing a challenge to the

imposition of the death penalty until after trial because "[q]uite apart from a defendant's obvious

desire to know in advance whether he will be risking his life by going to trial . . . a defendant

may reasonably prefer a jury on which persons who are conscientiously opposed to the death

penalty are not excused for cause." *Quinones*, 313 F.3d at 59.

In addition, the *Quinones* court explained that if the death penalty remains a possibility

during trial, a defendant may be forced into trial tactics that are designed to avoid the death

-26-

penalty but that have the consequence of making conviction more likely. *Quinones*, 313 F.3d at 59. "Accordingly, to the extent that a defendant might be disposed to plead guilty before trial in order to avoid capital punishment," withholding consideration of a constitutional challenge to the death penalty until after trial, conviction, and sentence "could cause him substantial hardship." Id. at 59.

As these significant effects of the death penalty on the *conviction* phase of a trial well illustrate, Relators' contention that Rivera's claim "rests solely on a future event that may not occur at all" is inaccurate. (Cmplt. ¶17.) The trial court has jurisdiction to rule on Rivera's motion to dismiss before trial because the very pendency of the death penalty has a direct and immediate impact on the trial proceedings and the parties.

This case presents issues differing substantially from those presented by already-convicted defendants in recent actions challenging the lethal injection method of execution pursuant to 28 U.S.C. § 1983. See, e.g., *Hill v. McDonough* (2006), 126 S. Ct. 2096, 2999, 16 L.Ed.2d 44, *Cooey v. Strickland*, (C.A.6, 2007), 479 F.3d 412. First, unlike the defendants in those cases, Rivera *is* presenting a general challenge to his execution and *is* claiming that death should not be an available penalty at all because of the allegedly unlawful method of execution. Compare to *Hill*, 126 S. Ct. at 2098 ("He concedes that other lethal injection methods the State could choose would be constitutional…."); *Cooey*, 479 F.3d at 415 (noting that Cooey does not present a general challenge to his execution). Second, the defendants in those § 1983 cases simply *could not have* challenged lethal injection prior to trial, because at the time of Hill's trial in 1983 and Cooey's trial in 1986, *electrocution* was the sole method of execution. Most importantly, *none* of these cases limits a defendant's challenge to lethal injection to a § 1983 suit or precludes a *different* claim like Rivera's – i.e. a challenge to the state's right to execute him

-27-

and a request to preclude a capital or death penalty trial – from being adjudicated in a criminal proceeding. Accordingly, any claim by Relators that these cases somehow strip the trial court of jurisdiction over Rivera's motion is meritless.

Furthermore, taken to its logical conclusion, Relators' suggestion that lethal injection challenges are appropriate only through § 1983 proceedings would preclude not only Ohio *trial* courts, but also ***this Court***, from ever reviewing the State of Ohio's lethal injection process. That would be significant, particularly because a core question presented by Ohio's lethal injection process concerns the Ohio General Assembly's *statutory* requirement that executions be administered "quickly and painlessly," a legislative overlay to the constitutional proscription against cruel and unusual punishment that the courts of Ohio are certainly entitled to interpret and adjudicate. R.C. 2949.22.

Moreover, contrary to Relators' unsupported contention, this Court and state trial courts exercise jurisdiction over pretrial motions in criminal proceedings based on the potential for a certain punishment, *even though the defendant had not yet been – and might never have been – convicted.* In *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, the trial court and this Court adjudicated a defendant's pretrial motion to dismiss the involuntary manslaughter charge in her indictment on the ground that the potential penalty associated with the involuntary manslaughter statute violated the Eighth Amendment's prohibition against cruel and unusual punishment.

Similarly, state and federal courts nationwide have addressed *in pretrial proceedings in criminal cases* a variety of constitutional challenges to the death penalty. See, e.g. *State v. Sapp*, 2d Dist. No. 99CA84, 2002-Ohio-6863; *State v. Anderson* (Mo. 2002), 79 S.W.3d 420; *State v. Bass* (1983), 460 A.2d 214, 189 N.J. Super. 445; *People v. Superior Court of Santa Clara*

-28-

*County* (1982), 647 P.2d 76, 131 Cal. 3d 797; *Guardado v. State* (Fla. 2007), ---So.2d---, 2007

WL 1836988; *United States v. Quinones* (C.A.2, 2002), 313 F.3d 49; *United States v. Acosta-*

*Martinzes* (C.A.1, 2001), 252 F.3d 13; *United States v. Bin Laden* (S.D.N.Y. 2001), 126 F.

Supp.2d 290; *United States v. Chanthadara* (D. Kan. 1996), 928 F. Supp. 1055; *United States v.*

*Church* (W.D.Va. 2001), 151 F. Supp. 2d 715; *United States v. Cooper* (D.D.C. 2000), 91 F.

Supp.2d 90; *United States v. DesAnges* (W.D.Va. 1996), 921 F. Supp. 349; *United States v.*

*Edelin* (D.D.C. 2001), 134 F. Supp.2d 59; *United States v. Johnson* (W.D.Va. 2001), 136 F.

Supp.2d 553; *United States v. Llera Plaza* (E.D. Pa. 2001), 179 F. Supp.2d 444; *United States v.*

*Pitera* (E.D.N.Y. 1992), 795 F.Supp. 546.

The lack of any jurisdictional concern by these courts – including by this Court in

*Weitbrecht* – is significant, because in both the state and federal systems courts must raise issues

regarding their jurisdiction *sua sponte*, even if not raised by the parties. See *Reno v. Catholic*

*Social Services, Inc.* (1993), 509 U.S. 43, 57 n.18, 113 S.Ct. 2485, 125 L.Ed.2d 38; *State ex rel.*

*White v. Cuyahoga Metro. Housing Auth.* (1997), 79 Ohio St.3d 543, 544, 684 N.E.2d 72.

In sum, for all of the reasons set forth above, Rivera's motion to dismiss death as a

possible penalty from his indictment and to preclude a capital or death penalty trial – regardless

of the motion's merits – is justiciable at this time.

**B.** **The Writ of Prohibition Should Be Denied Because There Exists an**
**Adequate Remedy at Law for Any Alleged Injury the Trial Court's Exercise**
**of Jurisdiction May Cause**

It is well-settled that a writ of prohibition must be denied where there exists an adequate

remedy at law for any alleged injury the trial court's exercise of jurisdiction may cause. *State ex*

*rel. Blackwell v. Crawford*, 106 Ohio St.3d 447, 2005-Ohio-5124, 835 N.E.2d 1232, at ¶18.

-29-

Should the trial court grant Rivera's motion to dismiss that portion of the indictment that elevates his potential sentence from life imprisonment to death and/or should the trial court preclude the case from proceeding as a capital or death penalty trial, the State of Ohio and the Attorney General would have an adequate remedy of law by means of immediate appeal pursuant to R.C. 2945.67, which provides that: "A prosecuting attorney. . . or the attorney general may appeal as a matter of right *any decision of a trial court in a criminal case. . . which decision grants a motion to dismiss all or any part of an indictment,* complaint, or information . . . *and may appeal by leave of the court* to which the appeal is taken *any other decision,* except the final verdict, of the trial court in a criminal case...." R.C. 2945.67 (emphasis added).[7]

This Court has long held that the availability of an appeal, either as of right or by leave of the court, constitutes an adequate remedy that will prevent the issuance of extraordinary relief. *State ex rel. LTV Steel Co. v. Gwin* (1992), 64 Ohio St.3d 245, 248, 594 N.E.2d 616.

Accordingly, the writ of prohibition sought by Relators should be denied.

---

[7] R.C. 2945.67 not only confirms the existence of an adequate remedy at law, but the very fact that this statute allows the State to appeal any adverse ruling arising from Rivera's motion implicitly recognizes the jurisdiction of the trial court *to hear such a motion in the first place,* thus rendering any basis for Relators' complaint for a writ of prohibition groundless.

-30-

## IV.    CONCLUSION

For all of the foregoing reasons, Relators' Complaint for a Writ of Prohibition should be denied.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

By _Alexandra T. Schimmer_

ALEXANDRA T. SCHIMMER (0075732)
(Counsel of Record)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
614-464-3025
614-719-4850 fax
atschimmer@vssp.com

JOHN J. KULEWICZ (0008376)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
614-464-5634
614-719-4812 (Facsimile)
jjkulewicz@vssp.com

Counsel for Respondent
The Honorable James M. Burge

-31-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by electronic mail and regular

U.S. mail, first class, postage prepaid, this 24th day of September, 2007, upon the following:

> Brian J. Laliberte
> Deputy First Assistant Attorney General
> (Counsel of Record)
> 30 East Broad Street, 17th Floor
> Columbus, OH 43215

> Janet R. Hill Arbogast
> Assistant Attorney General
> Corrections Litigation Section
> 150 East Gay Street, 16th Floor
> Columbus, OH 43215

> Counsel for Relators

A courtesy copy was also sent by regular U.S. mail to counsel for the State and

the Defendant in the underlying Common Pleas Court case:

> Tony Cillo
> Assistant Prosecuting Attorney
> Lorain County Prosecutor's Office
> 225 Court Street
> Elyria, Ohio 44035

> Kreig J. Brusnahan
> 158-A Lear Road
> Avon Lake, OH 44012

> Ken Lieux
> 110 Middle Avenue
> Elyria, OH 44035

> Jeffrey Gamso
> 4506 Chester Avenue
> Cleveland, OH 44103-3621

Alexandra T. Schimmer   (0075732)

-32-

IN THE SUPREME COURT OF OHIO

STATE EX REL. COLLINS, *et al.*,

    Relators,

v.

THE HONORABLE JAMES M. BURGE,

    Respondent.

:
:
:
:
:  CASE NO. 07-1576
:
:
:  ORIGINAL ACTION IN PROHIBITION
:
:

---

### RELATORS' MEMORANDUM IN OPPOSITION TO RESPONDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

MARC DANN
Attorney General of Ohio

BRIAN J. LALIBERTE (0071125)
Deputy First Assistant Attorney General
(Counsel of Record)
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-728-4527 phone
614-466-5087 fax
blaliberte@ag.state.oh.us

JANET R. HILL ARBOGAST (0061955)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
614-644-7233 phone
614-728-9327 fax
jarbogast@ag.state.oh.us

Counsel for Relators

ALEXANDRA T. SCHIMMER (0075732)
(Counsel of Record)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
614-464-3025
614-719-4850 fax
atschimmer@vssp.com

JOHN J. KULEWICZ (0008376)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
614-464-5634
614-719-4812 fax
jjkulewicz@vssp.com

Counsel for Respondent



FILED

OCT 0 4 2007

CLERK OF COURT
SUPREME COURT

EXHIBIT
3

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

I.   INTRODUCTION ....................................................................................................2

II.  FACTS ......................................................................................................................2

III. ARGUMENT .............................................................................................................4

    A.   Standard for Writ of Prohibition ..................................................................4

    B.   Respondent has no authority to compel a third party to provide the
    documents and information that he has ordered Relators to produce............4

    C.   Respondent has no authority or jurisdiction to appoint special counsel
    for the sole purpose of challenging the constitutionality of the lethal
    injection procedure in the underlying criminal case......................................6

    D.   Respondent does not have jurisdiction to adjudicate Rivera's motion
    challenging the constitutionality of Ohio's method of lethal injection .........9

    E.   Relators have standing to challenge Respondent's exercise of
    jurisdiction over them and no choice but to seek a writ of prohibition .........10

    F.   Relators have wide discretion in carrying out their duties and courts
    should not interfere with that discretion.......................................................12

IV.  CONCLUSION .......................................................................................................13

    CERTIFICATE OF SERVICE ....................................................................................14

i

# TABLE OF AUTHORITIES

## CASES

Page

*Baze v. Bowling*, Supreme Court Case No. 07-5439 ................................................................11, 12

*Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 .......................................5

*Cooey v. Strickland,* U.S. District Court, Southern District
    of Ohio, Case No. 2:04CV1156...............................................................................................11

*State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382 .........................................4

*State ex rel. Goldberg v. Mahoning Cty. Probate Ct.* (2001), 93 Ohio
    St.3d 160, 753 N.E.2d 192........................................................................................................4, 12

*State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420,
    639 N.E.2d 83...........................................................................................................................5

*State of Ohio v. Cleveland Plain Dealer* (8th Dist., June 15, 1979),
    1979 Ohio App. LEXIS 10995 ................................................................................................6

*State v. Martin*, 103 Ohio St.3d 385, 395, 2004-Ohio-5471 ..........................................................7

*State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167.....................................................9

*Turner v. Safley* (1987), 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 ...........................................12

*United States v. Quinones* (C.A.2, 2002), 313 F.3d 49 .................................................................10

*Weatherford v. Bursey* (1977), 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 ...................................5

## STATUTES AND RULES

Ohio Crim. R. 12 ..............................................................................................................................9, 10

Ohio Crim. R. 16 ..............................................................................................................................5

Ohio Crim. R. 17 ..............................................................................................................................5, 6

Ohio Crim. R. 44 ..............................................................................................................................6, 7, 8

Ohio R.C. 2945.67............................................................................................................................10, 11

Supr. R. 20, I.....................................................................................................................................7, 8

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4517

## I. INTRODUCTION

This is an original action in prohibition. Relators are the Ohio Department of Rehabilitation and Correction ("ODRC") and its Director, Terry Collins ("Director Collins"). Respondent James Burge is a judge of the Court of Common Pleas of Lorain County, Ohio. Respondent is currently presiding over an on-going prosecution of defendant Ruben Rivera for aggravated murder with capital specifications. In the event Rivera is sentenced to death, Relators would be responsible for carrying out the execution by the method prescribed by Ohio law for the execution of death-sentenced prisoners. The execution would occur, if at all, many years from now since Rivera has not been tried, convicted or sentenced to death.

Respondent issued two orders in the Rivera case directing Relators to produce numerous categories of documents and information concerning the implementation of the statutorily mandated method of lethal injection. The bases for Relators' Complaint for Writ of Prohibition are: (1) Respondent is without authority and jurisdiction to order Relators to produce any information relating to the method of execution by lethal injection in the context of Rivera's criminal prosecution; (2) Respondent is without authority to appoint special counsel to assist Rivera's criminal defense attorney only on the collateral issue of the constitutionality of the lethal injection procedure; and (3) Respondent's orders exceed the scope of Ohio's criminal rules.

Respondent filed a Motion for Judgment on the Pleadings simultaneously with his Answer in this matter. For the reasons set forth below, Respondent's motion should be denied.

## II. FACTS

The facts concerning this case are set forth with particularity in the Complaint for Writ of Prohibition and Relators' Memorandum in Support of Complaint for Writ of Prohibition, and the facts set forth in those documents are incorporated herein. The facts are summarized below for

2

purposes of this memorandum in opposition to Respondent's Motion for Judgment on the Pleadings.

On August 19, 2004, the Grand Jury for Lorain County indicted Ruben Rivera on two counts of aggravated murder with capital murder specifications, as well as other crimes. Attorneys Kreig Brusnahan and Kenneth Lieux were appointed to represent Rivera. Numerous hearings have been held since the indictment, with Rivera waiving the statutory time for a speedy trial at each hearing. In January 2007, Respondent Judge Burge assumed the docket of Judge McGough, to whom Rivera's case had been assigned previously.

On March 1, 2007, Rivera filed a motion to declare the death penalty unconstitutional in which he alleged that lethal injection constitutes cruel and unusual punishment. (Complaint, Exhibit A.) On May 29, 2007, Judge Burge appointed attorney Jeffrey Gamso as "special counsel" for the sole purpose of assisting the defense in preparing for an evidentiary hearing concerning Rivera's motion to declare the death penalty unconstitutional. (Complaint, Exhibit C.)

On June 20, 2007, Respondent issued an order directing Relators to produce various categories of information relating to the lethal injection protocol. (Complaint, Exhibit D.) Relators filed a motion for clarification of the order on June 28, 2007, since that order was one of first impression for Relators. (Complaint, Exhibit E.) On July 24, 2007, Respondent issued an order addressing the motion for clarification in which he again ordered Relators to produce the same information listed in the June 20 order. (Complaint, Exhibit F.) On August 22, 2007, Relators filed their Complaint for Writ of Prohibition in this Court.

3

III.   ARGUMENT

A.   **Standard for Writ of Prohibition**

A writ of prohibition should issue where Relators can establish that (1) the Respondent is about to exercise judicial power, (2) the exercise of that power is not authorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382. In cases where there is a patent and unambiguous lack of jurisdiction, the requirement of a lack of an adequate remedy at law need not be proven because the availability of alternative remedies such as appeal is immaterial. *State ex rel. Goldberg v. Mahoning Cty. Probate Ct.* (2001), 93 Ohio St.3d 160, 162, 753 N.E.2d 192. As Relators demonstrated in their Memorandum in Support of Complaint for Writ of Prohibition, and will again demonstrate below, Respondent is patently and unambiguously without jurisdiction to order Relators to produce the subject information or to consider the constitutionality of Ohio's method of lethal injection within the context of a criminal prosecution where the defendant has not yet been tried, convicted or sentenced to death.

B.   **Respondent has no authority to compel a third party to provide the documents and information that he has ordered Relators to produce.**

Respondent's contention that his orders of June 20, 2007 and July 24, 2007, enforced a subpoena previously served on Relators by attorney Brusnahan is unsupported by the record and without merit. The items that are listed for production in Respondent's orders of June 20, 2007 (Complaint, Exhibit D) and July 24, 2007 (Complaint, Exhibit F) are simply not the same as the items listed in the prior subpoena. (Answer, Exhibit 1.) For example, the subpoena requested 17 categories of documents (Answer, Exhibit 1) whereas Respondent's orders list 7 categories of documents (Complaint, Exhibits D and F). Also, Respondent's orders request blueprints or diagrams of the execution chamber (Complaint, Exhibits D and F) whereas the subpoena did not

4

request such documents (Answer, Exhibit 1). Moreover, Respondent's orders do not direct Relators to comply with the subpoena. In fact, the June 20, 2007, order fails to even mention the prior subpoena.

There is simply no statutory authority for a trial court in a criminal case to order a non-party to provide the information and documents that are the subject of Respondent's orders.[1] There is no constitutional right to discovery in criminal cases. *Weatherford v. Bursey* (1977), 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30. Instead, discovery is constitutionally required only to the extent that the defendant is entitled to disclosure of evidence that is material to guilt or innocence or to degree of punishment. *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed. 2d 215. The method of execution has no bearing on the degree of punishment – that is, whether Rivera will be sentenced to death or life without parole, for example, if convicted of aggravated murder. The method of execution only describes how one degree of punishment may be carried out.

Respondent acknowledges in his Motion for Judgment on the Pleadings that the Ohio Rules of Criminal Procedure apply to the underlying case.[2] (Motion for Judgment on the Pleadings, hereafter "Motion," p. 22.) The Rules of Criminal Procedure limit discovery in a criminal case. A defendant can only use Crim. R. 16 to obtain discovery from the prosecution. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 429, 639 N.E.2d 83, 90. Respondent concedes in his Motion for Judgment on the Pleadings that Crim. R. 16 does not apply to Relators because they are not parties to the criminal action. (Motion, pp. 2, 11 and 19.)

Similarly, Crim. R. 17 also cannot be construed to authorize Respondent to exercise jurisdiction over Relators by ordering them to produce documents and other information. Crim.

---

[1] Respondent has abandoned his position set forth in the July 24, 2007, order that Relators are parties to the Rivera criminal action simply because ODRC is a state agency. (Complaint, Exhibit F, pp. 2-3.)
[2] Respondent has also abandoned his position set forth in the July 24, 2007, order that the Rules of Criminal Procedure do not apply to the underlying criminal action. (Complaint, Exhibit F, p. 4.)

5

R. 17 may be used only to compel third parties, pursuant to a lawful subpoena, to produce for examination at trial, or at a hearing, specific documents relevant to the defendant's guilt or innocence or degree of punishment. *State of Ohio v. Cleveland Plain Dealer* (8th Dist., June 15, 1979), 1979 Ohio App. LEXIS 10995. As discussed previously, Respondent's orders were not issued in enforcement of a lawful subpoena. Moreover, Rivera's motion challenges the implementation of Ohio's method of execution – it does not challenge the state's right to sentence him to death. Most notably, Respondent's orders do not require the production of documents relevant to Rivera's guilt or innocence or degree of punishment. In fact, Respondent acknowledged in his July 24, 2007, order that the documents at issue are not sought for defending the charges against Rivera or for purposes of mitigation. (Complaint, Exhibit F, p. 4.) It is clear that Crim. R. 17 does not give Respondent the authority to order Relators to produce anything for purposes of Rivera's constitutional challenge.

In summary, there is no statutory authority or constitutional requirement for a trial court in a criminal case to order a non-party such as Relators to provide information that is not material to guilt, innocence or degree of punishment, but instead is collateral to those issues.

C.    **Respondent has no authority or jurisdiction to appoint special counsel for the sole purpose of challenging the constitutionality of the lethal injection procedure in the underlying criminal case.**

Respondent's contention that he had authority to appoint Jeffrey Gamso as special counsel for Rivera is without merit. Respondent states that Ohio Crim. R. 44 provides him the authority to appoint counsel in criminal cases generally. It is undisputed that Crim. R. 44 does provide for the appointment of counsel for indigent defendants who are charged with serious offenses. As noted in Respondent's Motion for Judgment on the Pleadings, attorneys Brusnahan and Lieux were appointed to represent Rivera shortly after the indictment for capital murder was returned by the Grand Jury. Respondent overlooks the fact that Crim. R. 44 does not authorize

6

courts to appoint special counsel for the sole purpose of challenging the constitutionality of a particular method of lethal injection in a case where the defendant has not received a death sentence. The purpose of Crim. R. 44 is to ensure that a criminal defendant's Sixth Amendment right to counsel in criminal proceedings is protected. *State v. Martin*, 103 Ohio St.3d 385, 395, 2004-Ohio-5471, ¶46 (Moyer, C.J., concurring in judgment only). Respondent's appointment of Attorney Gamso does nothing to protect Rivera's Sixth Amendment rights. Respondent has contorted the rule to facilitate an inquiry into a clearly collateral issue not properly before him in the context of a criminal prosecution. Attorney Gamso's appointment will not ensure that Rivera receives a fair trial during both the guilt and penalty phases of the proceeding. Rather, it only will permit an improper collateral attack on the method of lethal injection which has nothing to do with defending the charges or potential penalties imposed upon Rivera.

Supr. R. 20 does not provide a basis for Attorney Gamso's appointment either. That rule specifically provides for the appointment of two properly certified attorneys to represent indigent defendants in capital cases. Supr. R. 20, I(C). As noted previously, attorneys Brusnahan and Lieux had already been appointed to represent Rivera when Respondent appointed Attorney Gamso to assist for the sole purpose of the constitutional challenge. Indeed, Respondent's argument that Attorney Gamso was not appointed as special counsel, but rather merely as co-counsel for Rivera, is belied by the record. At a hearing on May 24, 2007, Attorney Brusnahan stated that he had asked Attorney Gamso "if he would be willing to assist me for purposes of litigating the constitutionality of the lethal injection motion only . . ." (Answer, Exhibit 3, p. 4.) Respondent's order appointing Attorney Gamso states as follows: "Upon defendant's oral motion for the appointment of counsel to assist in preparing and conducting the hearing on defendant's motion challenging Ohio's lethal injection protocol, the court appoints Attorney Jeffrey Gamso to assist defendant (1) in the preparation for this hearing, and (2) in the

7

presentation of evidence and argument at this hearing." (Complaint, Exhibit C.) Apparently mindful of Supr. R. 20, Respondent further ordered that "Attorney Kenneth M. Lieux is excused from preparing for, and participating in the hearing on this matter." *Id.* This switch confirms that Respondent is making an end run around the rules.

The purpose of Supr. R. 20 is to appoint counsel to prepare and present an adequate defense to capital criminal charges against an indigent defendant. Supr. R. 20, IV. It is patently obvious from Respondent's own order, however, that the appointment of Attorney Gamso was for the sole purpose of assisting Rivera in preparation for and conduct of a hearing on his motion to declare the method of lethal injection unconstitutional. (Complaint, Exhibit C.)

Respondent simply has created a procedure – unauthorized by Ohio law – for conducting a collateral proceeding within the limited context of a criminal trial. Respondent did not appoint Attorney Gamso to present an adequate defense against any criminal charges as Supr. R. 20 contemplates. A constitutional challenge concerning the state's method of carrying out a death sentence by lethal injection is simply not part of a criminal defendant's defense at trial. Accordingly, the only logical conclusion that can be drawn from Respondent's own order and Attorney Brusnahan's statement is that Attorney Gamso was appointed as special counsel for Rivera – not for defending the charges brought by the prosecutor, but for the sole purpose of litigating a collateral issue not material to guilt, innocence or degree of punishment. The Court should not allow such an abuse of power.

Nothing in Crim. R. 44 or Supr. R. 20 authorizes the appointment of counsel in a criminal case to litigate a matter collateral to the interest which the right to counsel is intended to serve, that is, ensuring that a criminal defendant receives a fair trial. Ohio law does not authorize a quasi-civil trial within a criminal prosecution on clearly collateral issues not material to guilt, innocence or degree of punishment. A writ of prohibition, therefore, must issue.

8

**D.    Respondent does not have jurisdiction to adjudicate Rivera's motion challenging the constitutionality of Ohio's method of lethal injection.**

Respondent alleges that Crim. R. 12 authorizes trial courts to adjudicate a broad range of motions before trial. Although Crim. R. 12 authorizes trial courts to adjudicate pre-trial motions, such motions are limited in scope. Crim. R. 12 permits any party to raise by pretrial motion "any defense, objection, evidentiary issue, or request that is capable of determination <u>without the trial of the general issue.</u>" Crim. R. 12(C) (emphasis added). A challenge to the constitutionality of the lethal injection procedure does not fall within the matters that are appropriate for a pretrial motion pursuant to Crim. R. 12(C). Such a challenge is obviously not a defense, objection or evidentiary issue. It is also not a "request that is capable of determination without the trial of the general issue." The general issue in the Rivera case is the defendant's guilt or innocence. Unless and until Rivera is convicted of capital murder and sentenced to death, there is no need for the trial court to entertain his motion challenging the constitutionality of the lethal injection procedure. Indeed, the court is without jurisdiction to entertain any such motion unless and until Rivera is sentenced to death. Trying the constitutionality of the lethal injection procedure in a trial within a trial is clearly outside the scope of Crim. R. 12. The rule should not be abused to reach an issue not pertinent to guilt, innocence or degree of punishment.

In this context, Respondent's reliance on *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, is misplaced. In *Weitbrecht*, a question was certified to the Ohio Supreme Court as to whether Ohio's involuntary manslaughter statute, as applied to a minor misdemeanor traffic offense that resulted in a vehicular homicide, violated the Eighth Amendment. The issue in the Rivera case is not the same as the issue before this Court in *Weitbrecht*. Unlike *Weitbrecht*, Rivera is not challenging the constitutionality of the criminal statute relied on by the prosecutor in bringing capital murder charges against him. Instead, Rivera is challenging the

9

constitutionality of the method of lethal injection that is not codified in any statute or regulation and may be changed before Rivera is convicted, sentenced and scheduled for execution.

Respondents' reliance on *United States v. Quinones* (C.A.2, 2002), 313 F.3d 49, is also misplaced. In that case, the defendants claimed that the federal death penalty was facially unconstitutional based on data that indicated innocent people have been executed. Aside from the fact that *Quinones* is a Second Circuit case that is not binding on this Court, the defendants' challenge in that case was based on the Fifth Amendment, not the Eighth Amendment which is at issue in Rivera's challenge. Regardless, Rivera's contention is that the method of execution is unconstitutional, not the death penalty itself. This simply is improper here given that he has not been convicted and sentenced to death, no execution date has been set and there is no certainty that the current method of execution will be used to carry out a death sentenced imposed upon him.

There is no basis under Crim. R. 12 – or elsewhere in Ohio law – for Respondent's inquiry into the method of lethal injection the state employs. Respondent must be prohibited from abusing Crim. R. 12 to facilitate his review of an issue not properly before him in the Rivera prosecution.

### E. Relators have standing to challenge Respondent's exercise of jurisdiction over them and no choice but to seek a writ of prohibition.

Relators have standing to challenge Respondent's unlawful exercise of jurisdiction over them despite not being parties to the underlying criminal case. Obviously, Respondent's orders of June 20, 2007 and July 24, 2007, have a significant impact on Relators. Those orders direct Relators to produce various categories of information and documents relating to Relators' implementation of the lethal injection process. Respondent's argument that Relators have an adequate remedy at law is completely without merit; R.C. 2945.67 does not allow Relators to

10

appeal the Respondent's unlawful orders and therefore they have no adequate remedy at law. Rather, R.C. 2945.67 provides that a prosecuting attorney or the attorney general may appeal as a matter of right a decision of a trial court in a criminal case that dismisses all or any part of an indictment, and may appeal by leave of court any other decision except the final verdict. Relators are the Ohio Department of Rehabilitation and Correction and its director. Relators are not the prosecuting attorney or the attorney general. Since Relators are not the prosecuting attorney or the attorney general, they would have no standing to appeal any order pursuant to that statute. It is patently obvious, therefore, that R.C. 2945.67 does not provide Relators any remedy at law in this matter, much less an adequate remedy at law. Moreover, R.C. 2945.67 would not prevent the harm caused to Relators by Respondent's continuing unlawful exercise of jurisdiction over them in this criminal case.

Furthermore, the constitutionality of the method of lethal injection is currently being considered in federal court in the case of *Cooey v. Strickland*, U.S. District Court, Southern District of Ohio, Case No. 2:04CV1156. If Respondent is permitted to continue exercising jurisdiction over Rivera's constitutional challenge, and consequently over Relators, inconsistent judgments are likely. This is particularly true here because Respondent has refused to stay his orders compelling Relators to produce documents – subjecting them to potential contempt citations or other judicially imposed penalties for non-compliance. Relators' only remedy, therefore, was to seek a writ of prohibition. Hence, they have standing to bring this original action.

In addition to the *Cooey* case, this Court should take judicial notice that the United States Supreme Court accepted certiorari on September 25, 2007, in the case of *Baze v. Bowling*, Supreme Court Case No. 07-5439, and placed the case on an expedited briefing schedule. The issue in *Baze* is identical to the issue in Rivera's motion – whether the method of lethal injection

11

used by the state of Kentucky violates the Eighth Amendment. Kentucky and Ohio use essentially the same chemical "cocktail" for lethal injections. Given the fact that the United States Supreme Court is going to rule on this very issue, it would be a waste of judicial resources for Respondent to entertain Rivera's motion at this point, and a waste of the state's resources in having Relators comply with Respondent's orders. Even though the *Baze* case will decide the constitutionality of a method of lethal injection similar to Ohio's current procedure, this Court should still issue a writ of prohibition in the instant case because Respondent is without jurisdiction to order Relators to produce documents and other information in the Rivera case. Regardless, Respondent's argument is irrelevant because, as stated previously, there is no need for Relators to demonstrate that they do not have an adequate remedy at law since Respondent is patently and unambiguously without jurisdiction to order them to produce any documents or other information in the Rivera criminal case. *State ex rel. Goldberg v. Mahoning Cty. Probate Ct.* (2001), 93 Ohio St.3d 160, 162, 753 N.E.2d 192.

Respondents, therefore, have standing to bring this action, and absent the relief requested, have no other remedy.

### F.    Relators have wide discretion in carrying out their duties and courts should not interfere with that discretion.

Relators are charged with the implementation of a presumptively constitutional, statutorily prescribed method of execution. Courts have long recognized that prison officials may exercise wide discretion in carrying out their unique and difficult duties. *Turner v. Safley* (1987), 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64. Courts, including the Lorain County Court of Common Pleas, are particularly ill-equipped to micro-manage Relators' duties, including their duty to carry out Ohio's statutorily prescribed method of execution. This is particularly the case in pre-trial proceedings conducted before the defendant is even sentenced to death.

12

## IV.    CONCLUSION

Based on the foregoing, as well as the arguments set forth in Relators' Memorandum in Support of Complaint for Writ of Prohibition, Respondent's Motion for Judgment on the Pleadings should be denied.

Respectfully submitted,

MARC DANN
Attorney General of Ohio

BRIAN J. LALIBERTE (0071125)
(Counsel of Record)
Deputy First Assistant Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-728-4527 phone
614-466-5087 fax
blaliberte@ag.state.oh.us

JANET R. HILL ARBOGAST (0061955)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
614-644-7233 phone
614-728-9327 fax
jarbogast@ag.state.oh.us

Counsel for Relators

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by regular U.S. mail this 4th day of October, 2007, to the following:

Alexandra T. Schimmer
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

John J. Kulewicz
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

A courtesy copy was also served by regular U.S. mail to counsel for the state and the defendant in the underlying common pleas court case:

Dennis Will
Lorain County Prosecutor
225 Court Street, 3rd Floor
Lorain, Ohio 44035

Jeffrey Gamso
Legal Director
American Civil Liberties Union of Ohio Foundation
4506 Chester Avenue
Cleveland, Ohio 44103-3621

Kreig J. Brusnahan
158-A Lear Road
Avon Lake, Ohio 44012

Ken Lieux
110 Middle Avenue
Elyria, Ohio 44035

Brian J. Laliberte

14

1 of 23 DOCUMENTS

**State ex rel. Collins v. Burge.**

**2007-1576.**

**SUPREME COURT OF OHIO**

*115 Ohio St. 3d 1470; 2007 Ohio 5735; 875 N.E.2d 625; 2007 Ohio LEXIS 2836*

**October 31, 2007, Decided**

**NOTICE:** DECISION WITHOUT PUBLISHED OPINION

**PRIOR HISTORY:** *State ex rel. Collins v. Burge, 115 Ohio St. 3d 1401, 2007 Ohio 4723, 873 N.E.2d 900, 2007 Ohio LEXIS 2189 (2007)*

**JUDGES:** [*1] Moyer, C.J., and Pfeifer, O'Connor, Lanzinger, and Cupp, JJ., concur. Lundberg Stratton and O'Donnell, JJ., dissent and would grant an alternative writ.

**OPINION**

**MERIT DECISION WITHOUT OPINION**

In Prohibition. On respondent's answer and motion for judgment on the pleadings. Motion for judgment on the pleadings granted. Cause dismissed.

Moyer, C.J., and Pfeifer, O'Connor, Lanzinger, and Cupp, JJ., concur. Lundberg Stratton and O'Donnell, JJ., dissent and would grant an alternative writ.



EXHIBIT
4

FILED
LORAIN COUNTY

2001 JUL 24  P 1: 45

CLERK OF COMMON PLEAS
RON NABAKOWSKI

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

STATE OF OHIO,                    :        Case No. 04CR065940

    Plaintiff,                    :        Judge James Burge

vs.                               :        **JOURNAL ENTRY**

RUBEN RIVERA,                     :

    Defendant.                    :

    Defendant has asked this Court to preclude the possibility of a death

sentence in this case on the basis that lethal injection as practiced in Ohio is

cruel and unusual punishment in violation of the Eighth and Fourteenth

Amendments to the United States Constitution and of Section 9, Article I of

the Ohio Constitution.  The State asserts that the question is not ripe for

resolution and that, accordingly, this Court has no jurisdiction to hold a

hearing or rule on the matter.  For the reasons that follow, the Court holds

that it does have jurisdiction.



EXHIBIT
5

The State argues that the constitutionality of lethal injection in Ohio is not ripe for adjudication because Defendant Rivera has not been sentenced to death and may never be. Should he be sentenced to die, the State says, litigation might be proper to determine how he will be executed. Until then, there is nothing to decide.

Were the purpose of Mr. Rivera's motion to determine how he can be executed if he should be sentenced to death, the State might well be correct. But the State misconstrues the Defendant's motion. Mr. Rivera does not ask for a declaration that Ohio's current method of carrying out executions is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and of Section 9, Article I of the Ohio Constitution. Rather, the Defendant asks that the Court "remove death as a sentencing option in this case because the only current method of executing prisoners in Ohio is by a punishment which is unconstitutional and, therefore, imposing a death sentence would be imposing the infliction of a cruel and unusual punishment."

Thus, the basic question before the Court is not whether the current lethal injection protocol is unconstitutional but whether death should be a sentencing option in this case. The Constitutionality of lethal injection is a predicate issue, not the ultimate one. The Court concludes that the ultimate

2

issue is ripe for review at this time and that, therefore, the predicate issue must also be addressed.

A case must be ripe in order to be litigated. "Ripeness 'is peculiarly a question of timing.'" *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140. The ripeness doctrine keeps the courts "from entangling themselves in abstract disagreements over administrative policies." *Abott Laboratories v. Gardner* (1967) 387 U.S. 136, 148.

The issue of ripeness, however, is not jurisdictional but prudential. As the Supreme Court of California has explained:

> [T]he ripeness requirement does not prevent us from resolving a concrete dispute if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question.

*Hunt v. Superior Court of Sacramento County* (Cal. 1999), 21 Cal.4th 984, 998, 987 P.2d 705, 716. As the constitutionality of lethal injection is being litigated around the country[1], it is clearly a matter of great consequence and interest. This is particularly true in this state, which has had two lethal injections go awry in just over a year.[2]

---

[1] Though not, for the moment, in Ohio, where the Sixth Circuit Court of Appeals has halted the litigation. See *Cooey v. Strickland* (CA 6, 479 F.3d 412, rehearing denied (June 1, 2007), __ F.3d __, No. 05-4057.
[2] It took the State 87 minutes to execute Joe Clark on May 2, 2006, during which time the prisoner is reported to have sat up and told the executioners, "It don't work. It don't work." Just over one year later, on May 24, 2007, it took the State over two hours to execute Christopher Newton who, it is reported, was convulsing after receiving the drug which should have paralyzed him.

3

Furthermore, in other capital case contexts, it is clear that the possibility of a death sentence may be litigated before a sentence is imposed or the question of guilt determined. In the context of mental retardation, the claim that death cannot be a sentencing option is adjudicated before trial begins. See *State v. Lott* (2002), 97 Ohio St.3d 303. The same question is adjudicated pre-trial in cases where the accused was under eighteen years of age at the time of the alleged offense. See R.C. 2929.023. Finally, courts routinely rule pre-trial on motions to preclude the possibility of death because the death penalty is unconstitutional and because it violates international law. Such a motion was filed in this very case on November 29, 2006.[3] In each of these situations, it is possible that the issue could be deemed not to be ripe since the ultimate question might not be reached. But the question is addressed anyway, and properly so, since their results determine what sort of trial will follow.[4]

If a sentence of death is an option, then the jurors who sit on the case will be death-qualified. There will be an extensive proceeding in which each prospective juror is questioned regarding his or her views of the death penalty and the sorts of circumstances under which he or she would or would not be willing or able to vote for a sentence of death. Moreover,

---

[3] That motion is still pending.
[4] The State contended, during oral argument on this issue, that the Constitutional motion to dismiss is also not ripe for adjudication pre-trial.

4

when death is an option, a change in the focus and strategy of the trial is likely to occur. Both the State and the defense will present their cases with an eye toward what may happen after a guilty verdict of both aggravated murder and a specification is reached. Finally, it is impossible to ignore the fact that the possibility of an execution changes the odds of the verdict. Study after study demonstrates that a death-qualified jury is more likely to find a defendant guilty. See, e.g., *Grigsby v. Mabry* (S.D. Ark. 1980), 483 F.Supp. 1372, 1387, fn. 18. While that may not be an unconstitutional consequence, see *Lockart v. McRee* (1986), 476 U.S. 162, it is a prudential one.[5]

ACCORDINGLY, the Court holds that whether to preclude death as a sentencing possibility because the only current method of execution in Ohio is unconstitutional is properly raised and may properly be determined at this time. As a consequence, the Court will conduct a hearing on whether lethal injection as practiced in Ohio is constitutional.

---

[5] Although the Supreme Court, in *Lockart* rejected the *Grigsby* court's analysis and conclusions, it did not reject its determination that a death-qualified jury is more likely to convict.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4536

IT IS SO ORDERED.



JUDGE JAMES M. BURGE

STATE OF OHIO,                    :    CASE NO.  CR1983-12-0614

          Plaintiff,              :    STATE OF OHIO, COUNTY OF BUTLER
                                       COURT OF COMMON PLEAS
vs.                               :    (Nastoff, J.)

VON CLARK DAVIS,                  :

          Defendant.              :    SUPPPLEMENTAL MEMORANDUM
                                       BY STATE IN OPPOSITION TO
                                  :    DEFENDANT'S MOTION "P" TO
                                       PRECLUDE IMPOSITION OF THE
                                       DEATH PENALTY BY LETHAL INJECTION

: : : : : : : : : :

Now comes the Prosecuting Attorney, in response to the Court's suggestion that the

parties should brief the issue as to the Defendant's standing on his motion to preclude

imposition of the death penalty as authorized under R.C. 2949.22(A) by lethal injection,[1]

says as follows.

The operation of R.C. 2949.22(A) literally requires both "a death sentence" and a

"person, upon whom the sentence was imposed" and, as such, it is apparent that Defendant

Davis currently is not such a person; there is no death sentence presently with regard to Davis

to be "executed" pursuant to R.C. 2949.22(A) (or any other law).  The issue of

constitutionality is premature; the issue is not now ripe, Davis lacks standing to challenge the

constitutionality of the statutory provision at this time.

---

1.    R.C. 2949.22 provides, in pertinent part:

      "(A) Except as provided in division (C) of this section, a death sentence shall be executed by
      causing the application to the person, upon whom the sentence was imposed, of a lethal
      injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause
      death.  The application of the drug or combination of drugs shall be continued until the person
      is dead.  The warden of the correctional institution in which the sentence is to be executed or
      another person selected by the director of rehabilitation and correction shall ensure that the
      death sentence is executed.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

ROBIN PIPER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

Page 1

"Every court must 'refrain from giving opinions on abstract propositions and *** avoid

the imposition by judgment of premature declarations or advice upon potential controversies.'"

*Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, at ¶84, quoting

*Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371.

> It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies. * * *.

*Fortner*, id.

"For a cause to be justiciable, there must exist a real controversy presenting issues

which are ripe for judicial resolution and which will have a direct and immediate impact on the

parties." *State v. Stambaugh* (1987), 34 Ohio St.3d 34, 36, 517 N.E.2d 526 (Douglas, J.,

concurring in part and dissenting in part, citing *Burger Brewing Co. v. Liquor Control Comm.*

[1973], 34 Ohio St.2d 93, 97, 63 O.O.2d 149, 296 N.E.2d 261). In *Burger Brewing Co.* the

Court adopted a two-fold test, as enunciated by Justice Harlan in *Toilet Goods Assn. v.*

*Gardner* (1967), 387 U.S. 158, 162, 87 S.Ct. 1520, to aid in the determination whether a

controversy was of a justiciable character, or "ripe":

> * * * first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage.

It is well established that "[t]he constitutionality of a state statute may not be brought

into question by one who is not within the class against whom the operation of the statute is

alleged to have been unconstitutionally applied and who has not been injured by its alleged

unconstitutional provision." *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512

N.E.2d 971, syllabus. In other words, a person "has no standing to attack the constitutionality of an *** [enactment] unless he has a direct interest in the *** [enactment] of such a nature that his rights will be adversely affected by its enforcement." *Anderson v. Brown* (1968), 13 Ohio St.2d 53, 42 O.O.2d 100, 233 N.E.2d 584, paragraph one of the syllabus. Defendant Davis herein has no such interest.

This lack of a direct interest is seen in the case of *State v. Huertas* (1990), 51 Ohio St.3d 22, 32, 553 N.E.2d 1058, in which the Ohio Supreme Court evaluated a constitutional challenge to Ohio's capital punishment scheme. The Court rejected Huerta's arguments because: "appellant has no standing to attack the death penalty because we have vacated his death sentence." See, also *State v. Shields* (1984), 15 Ohio App.3d 112, 118, 472 N.E.2d 1110 (Defendant had no standing to challenge constitutionality of death penalty because he was not sentenced to death for his aggravated murder conviction). The finding of a failure to have standing in the situational posture of *Huertas* has been followed by Ohio Appellate Courts which uniformly found that a person who is not under a sentence of death, has no standing to challenge the capital punishment statute.

For example, in *State v. Brooks* (Jan 10, 1991), Cuyahoga App. No. 57034, 1991 WL 1494, *13, the Appellant argued that although he did not receive a death sentence, he should be able to appeal "death penalty issues" because "the specter of the death penalty permeated the entire trial proceeding." However, the appellate court found:

> [i]t is a well-settled rule of law that generally a person only has standing to attack the constitutionality of rules and regulations that have affected his interest; those that have been applied to him. *McNea v. Garey* (N.D.Ohio 1976), 434 F.Supp. 95, 103; see, also, *Akron Bd. of Edn. v. State Bd. of Edn. of Ohio, et al.* (C.A.6, 1974), 490 F.2d 1285, 1289. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Palazzi v. Estate of*

*Gardner* (1987), 32 Ohio St.3d 169, syllabus.
> Because appellant did not receive the death penalty, he is not a member of the class claimed to be offended by the challenged statute. Hence, he lacks standing.

*Id.*, at *13-14.

The Court of Appeals for Summit County agrees.  Specifically, the court found "* * * argues that the aggravated murder charge should have been dismissed because the death penalty is unconstitutional. Caldwell does not have standing to attack the death penalty because he was not sentenced to the death penalty. *State v. Huertas* (1990), 51 Ohio St.3d 22, 32. This court will not issue an advisory opinion as it is beyond the scope of proper judicial authority. *State v. Varner* (July 31, 1991), Summit App. No. 15042, unreported." *State v. Caldwell*, (Dec. 4, 1991), Summit App. No. 14720, 1991 WL 259529, *12.

Finally, in 2002, the Marion Appellant Court also followed the holding in *Huertas*.  See, *State v. Satta*, Marion App. No. 9-01-38, 2002 -Ohio- 5049, ¶ 57  (Appellant lacks standing to attack the constitutionality of Ohio's death penalty statute where he was not sentenced to death. *State v. Huertas* (1990), 51 Ohio St.3d 22, 32, 553 N.E.2d 1058.See e.g. *State v. Caldwell* (Dec. 4, 1991), Summit App. No. 14720, *State v. Forney* (June 8, 1983), Summit App. No. 10928; *State v. Vaughn* (June 19, 1985), Summit App. No. 11901).

What is more, in other situations in which a sentence is only a possibility that might not occur, a defendant has been found to lack standing.  See, *State v. Spikes* (1998), 129 Ohio App. 3d 142, 717 N.E.2d 386 (defendant lacked standing to challenge constitutionality of either "bad time" statute, though defendant was sentenced pursuant to these statutes and thus could potentially be subjected to extended prison time or post-release control, where defendant had not yet been subjected to either statutory provision).

This logic flows from the Supreme Court of the United States which has stated "many

times before and reiterate today: Allegations of possible future injury do not satisfy the

requirements of Art. III. A threatened injury must be "'certainly impending'" to constitute injury

in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 1724-1725 (1990). In

*Whitmore*, the High Court denied a claim based on standing and in as much, stated:

> Perhaps recognizing the weakness of his claim for standing, petitioner argues
> next that the Court should create an exception to traditional standing doctrine
> for this case. The uniqueness of the death penalty and society's interest in its
> proper imposition, he maintains, justify a relaxed application of standing
> principles. <u>The short answer to this suggestion is that the requirement of an
> Art. III "case or controversy" is not merely a traditional "rule of practice," but
> rather is imposed directly by the Constitution. It is not for this Court to employ
> untethered notions of what might be good public policy to expand our
> jurisdiction in an appealing case.</u> We have previously resisted the temptation to
> "import profound differences of opinion over the meaning of the Eighth
> Amendment to the United States Constitution into the domain of administrative
> law," Heckler v. Chaney, 470 U.S. 821, 838, 105 S.Ct. 1649, 1659, 84
> L.Ed.2d 714 (1985); id., at 839-840, n. 2, 105 S.Ct., at 1659-60, n. 2
> (BRENNAN, J., concurring), and restraint is even more important when the
> matter at issue is the constitutional source of the federal judicial power itself.
> We hold that Whitmore does not have standing in his individual capacity to
> press an Eighth Amendment objection to Simmons' conviction and sentence.

*Id.*, at 1726

The logic of the State of Ohio also has support when additional federal cases are

evaluated. In *Cheffer v. Reno*, 55 F.3d 1517, 1523, (11th Cir. 1995), the court found that

constitutional challenges by defendants to a particular punishment "are generally not ripe until

the imposition, or immediately impending imposition, of a challenged punishment or fine."

In making that determination, the *Cheffer* court noted that although this was a case of first

impression for the Eleventh Circuit, "other circuits have found that Eighth Amendment claims

of "cruel and unusual punishment" are not ripe when raised prior to the actual, or immediately

pending, imposition of the challenged form of punishment. See, e.g., *18 Unnamed "John*

*Smith" Prisoners v. Meese*, 871 F.2d 881, 882-83 (9th Cir.1989) (Eighth Amendment

challenge to proposed double bunking plan as cruel and unusual punishment not ripe); _Askins_ _v. District of Columbia_, 877 F.2d 94, 97-99 (D.C.Cir.1989) (challenge to proposed transfer to another prison facility not ripe). By the same reasoning, challenges under the Excessive Fines Clause are also generally not ripe until the actual, or impending, imposition of the challenged fine. See, e.g., _United States v. Fleetwood Enterprises_, 689 F.Supp. 389, 392 (D.Del.1988) (challenge to Eighth Amendment constitutionality of potential fines under Manufactured Housing Act not ripe for adjudication where defendant had been charged under the Act but fines had not yet been imposed by the court)." _Id_.

Thereupon, in making their ruling, the Eleventh Circuit found "[a]ppellants' Eighth Amendment claims fail the prudential, or 'fitness' prong of the ripeness inquiry. The parties do not raise a purely legal issue which we can decide in the abstract without further factual development." _Id_., at 1524.

Thus, not only should the motion filed by Davis be denied because he has yet to be sentenced to death, but also because the questions he raises in the motion are not 'purely legal'. In truth, the issues raised by Davis in Motion 'P' are purely factual, such as to the drugs to be injected, the dosages, time lines, number and qualifications of the people present, and multiple other factual questions. Thus, this issue is simply not ripe.

However, Davis may try to argue that under the logic of the Second Circuit, his arguments should be heard. However, due to the aforementioned, the Second Circuit case of _Quinones_ should not be found persuasive.

In _United States v. Quinones_, 313 F.3d 49, 57-60 (2nd Cir. 2002), the Second Circuit found ripe a pretrial challenge to the Federal Death Penalty Act (FDPA). But, the reasoning for that finding was because the challenge was purely a question of law, and no set of

circumstances existed under which the FDPA would be valid if the challenge was successful. *Id*. The *Quinones* court paid extreme attention to the fact that the issue before it was ripe because it was a 'purely legal' question and that the defendant would suffer hardships relative to the selection of a trial jury and issues surrounding the legal strategy of selection a jury, if this question was left until after the death sentence was determined. *Id*. Thus, the court found the two prong test for ripeness to be satisfied.

In the present case, Motion 'P' is not 'purely legal.' That point is evinced by the fact that Davis wants to call a factual witness, and that he argues for a factual finding as to an alternative method of execution. Hence, under Davis' Motion 'P', this Court would be required to make a factual determination as to the alternative execution methods viability after possibly hearing from a fact witness. That is simply not a 'purely legal' determination and cannot survive the first prong of the standing doctrine.

What is more, Davis is not going to be selecting a trial jury as he is scheduled for a new mitigation hearing before a three judge panel. Thus, the hardship prong that was found to be present in *Quinones*, and all of the corollary issues associated with jury selection, are glaringly absent for Davis. Thus, the hardship prong is also not satisfied.

As such, although the Second Circuit found standing on a pretrial issue, the facts and logic of that case to not alter the clear legal determination in the present case that Davis does not have standing to raise his purely factual issue before the sentence of death is imposed upon him.

Wherefore, the Defendant's motion should be dismissed for lack of standing.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4544

Respectfully submitted,

ROBIN N. PIPER  (0023205)
Butler County Prosecuting Attorney


DANIEL G. EICHEL  (0008259)
Assistant Prosecuting Attorney


MICHAEL A. OSTER, JR.  (0076491)
Assistant Prosecuting Attorney
Government Services Center
315 High Street, 11th Floor
Hamilton, Ohio 45012-0515
Telephone: (513) 887-3474


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum has been sent by ordinary U.S. mail to Attorneys for Defendant: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044, on this _19th_ day of September, 2008.


DANIEL G. EICHEL  (0008259)
Assistant Prosecuting Attorney

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 4545

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,

      Plaintiff,

vs.

VON CLARK DAVIS          :

      Defendant.        :

      '08 SEP 30  AM 11: 06

      Case No. CR 1983-12-0614

      Judge Daniel Andrew Nastoff

## ORDER

    This matter comes on before this Court on the Von Clark Davis' motion to extend the date by two days for the parties to submit their briefing on the issue of ripeness as it relates to lethal injection. The Court being fully advised in the matter, GRANTS the motion. The Court ORDERS that both parties submit their briefing by and including September 19, 2008.

9/25/08
Date

Judge Daniel Andrew Nastoff

In Order
9/30/08

5

TOTAL P.06



IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                          :

    Plaintiff,                     :        Case No. CR 1983-12-0614

vs.

                                   :

VON CLARK DAVIS                         :        Judge Daniel Andrew Nastoff

    Defendant.                     :

---

## VON CLARK DAVIS' MOTION FOR A TWO DAY EXTENSION FOR THE PARTIES TO SUBMIT BRIEFING ON THE RIPENESS ISSUE

---

    Von Clark Davis moves this Court for an extension of two days for both parties to file their pleading regarding the ripeness issue. Von Clark has attached a memorandum that he incorporates in this motion.

                    Respectfully submitted,

                    OFFICE OF
                    THE OHIO PUBLIC DEFENDER

                    RANDALL L. PORTER / 0005835
                    Assistant State Public Defender

                    8 East Long Street 11th Floor
                    Columbus, Ohio  43215
                    (614) 466-5394 (Voice)
                    (614) 644-0703 (Facsimile)
                    PorterR@OPD.state.OH.US

                    And

1

MELYNDA COOK-REICH  0066696

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

## MEMORANDUM IN SUPPORT

On August 27, 2008, the Court ordered the parties to submit simultaneous briefing on the issue of ripeness as it relates to his lethal injection challenge. Counsel for Mr. Davis has begun research on the issue. However, lead counsel currently has seventeen capital cases and because of his commitments on some of these other cases he has been unable to complete the drafting of the pleading.

Neither party will be prejudiced if the Court grants this motion. The parties are to simultaneous submit their briefs. Thus, the prosecution will not be deprive of response time. Mr. Davis asks that the order apply to both parties so the prosecution will have no claim that Mr. Davis was able to access its briefing prior to submitting his own briefing. The Court will still have sufficient time to read and study both parties' submissions prior to the oral argument date.

2

WHEREFORE, Mr. Davis respectfully requests this Court to extend the date for both parties to submit their briefing until and including September 19, 2008. Mr. Davis has submitted a proposed entry with this pleading.

Respectfully submitted,

OFFICE OF
THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

8 East Long Street - 11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

And

MELYNDA COOK-REICH - 0066596

REPPER, PAGAN, COOK, Ltd.
1501 First Avenue
Middleton, Ohio 45042
(513) 424-1823 (Voice)
(513) 424-3135 (Facsimile)
Mcook@bizcinci.rr.com

COUNSEL FOR VON CLARK DAVIS

3

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Von Clark Davis' Motion For A Two Day Extension For The Parties To Submit Briefing On The Ripeness Issue* was forwarded by electronic and first class U.S. mail to Daniel G. Eichel, First Assistant Butler County Prosecuting Attorney, and Michael A. Oster, Jr. Assistant Butler County Prosecuting Attorney at the Government Services Center, 315 High Street, Hamilton, Ohio 45011 on this 17th day of September, 2008.

COUNSEL FOR VON CLARK DAVIS

4

## FACSIMILE FILING COVER

RECIPIENT INFORMATION:

    NAME OF COURT: Court of Common Pleas, Butler County, Ohio

    TITLE OF THE CASE: *State v. Davis*

    CASE NUMBER: 1983 12-0614

    JUDGE: Nastoff

SENDING PARTY INFORMATION:

    NAME: Randall L. Porter

    SUPREME COURT REGISTRATION NUMBER: 0005835

    OFFICE/FIRM: Office of the Ohio Pubic Defender

    ADDRESS: 8 East Long St., 11th Floor, Columbus, Ohio 43215

    TELEPHONE NUMBER: 1-614-752-9215 (Direct)

    FAX NUMBER: 1-614-644-0703

    E-MAIL ADDRESS: Randall.PorterR@OPD.ohio.gov

DOCUMENT BEING SENT

    TITLE: Von Clark Davis' Motion For A Two Day Extension For The Parties To Submit Briefing On The Ripeness Issue

    TOTAL PAGES: 6

    DATE SENT: September 17, 2008

STATE OF OHIO,　　　　:　　　CASE NO. CR1983-12-0614

　　　　Plaintiff,　　　　　　STATE OF OHIO
　　　　　　　　　　　　　　　COUNTY OF BUTLER
vs.　　　　　　　　　　:　　　COURT OF COMMON PLEAS

　　　　　　　　　　　　:　　　MOTION TO PROVIDE DISCOVERY

VON CLARK DAVIS,　　　:

　　　　Defendant.　　　:　　　A. NASTOFF, JUDGE

　　　　　　　　　　: : : : : : :

The State of Ohio, by the Prosecuting Attorney, says the defendant, by request or motion, has obtained discovery from the State under Criminal Rule 16(B), on the following dates: 2/8/1984; 4/20/84; 4/27/84; 7/25/2008.

WHEREFORE, the State now moves the Court for an Order requiring the defendant, through counsel, as follows:

(1)　To permit the Prosecuting Attorney to inspect and copy or photograph books, papers, documents, photographs, tangible objects or copies of portions thereof, available to or within the possession, custody or control of the defendant and which the defendant intends to introduce in evidence the trial, as provided under Criminal Rule 16 (B)(1)(a),

(2)　To permit the Prosecuting Attorney to inspect and copy or photocopy any results or reports of physical or mental examination and of scientific tests or experiments made in connection with the particular case or copies thereof, available to or with the possession or control of the defendant, and which the defendant intends to introduce in evidence at trial or which were



prepared by a witness whom the defendant intends to call at trial, when such reports relate to his testimony, pursuant to Criminal Rule 16(C)(1)(b), and

(3)     To furnish the Prosecuting Attorney a list of the names and addresses of witnesses the defendant intends to call at trial, as provided under Criminal Rule 16(C)(1)(c).

Respectfully Submitted,

ROBIN N. PIPER (0023205)
Butler County Prosecuting Attorney

DANIEL G. EICHEL (0008259)
Assistant Prosecuting Attorney

MICHAEL A. OSTER, JR. (0076491)
Assistant Prosecuting Attorney
Government Services Center
315 High Street, 11th floor
Hamilton, Ohio 45011
Telephone: (513) 887-3474

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion has been sent by ordinary U.S. mail to: Randall L. Porter, 8 East Long Street, 11th Floor, Columbus, OH 43215, and Melynda W. Cook-Reich, 1501 First Avenue, Middletown, OH 45044 on this ___ day of September, 2008. OCTOBER

MICHAEL A. OSTER, JR.
Assistant Prosecuting Attorney