# IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

FILED

2011 OCT 25 AM 10: 45

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

STATE OF OHIO,

        Plaintiff-Respondent,

    v.

VON CLARK DAVIS,

        Defendant-Petitioner.

: Case No. CR1983-12-0614
:
: Judge Nastoff
:
: **STIPULATION OF EXTENSION OF**
: **TIME TO RESPOND TO PENDING**
: **MOTIONS**
:
:
:

The parties hereby stipulate that the State of Ohio shall have up to and including **November 10, 2011**, to file pleadings responsive to Petitioner's petition for postconviction relief, motion for leave of court to conduct discovery, and motion for recusal.

**Respectfully submitted**:

 

                                                Michael T. Gmoser (0002132)
                                                Butler County Prosecuting Attorney

Kort Gatterdam - by D. Caster per telephone auth.

Kort Gatterdam (0040434)

Erik P. Henry (0085155)
Carpenter, Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

Donald R. Caster (0077413)
Michael A. Oster, Jr. (0076491)
Butler County Prosecutor's Office
315 High Street, 11th Floor
Hamilton, OH 45011

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

MICHAEL T. GMOSER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

FILED

2011 NOV 10 PM 4: 41

BUTLER COUNTY
CLERK OF COURTS

STATE OF OHIO,

    Plaintiff-Respondent,

v.

VON CLARK DAVIS,

    Defendant-Petitioner.

Case No. CR1983-12-0614

Judge Nastoff

MOTION TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY
JUDGMENT AND MEMORANDUM IN
SUPPORT

## MOTION

The State of Ohio respectfully requests that this Court dismiss Defendant-Petitioner's

postconviction relief petition for failure to state a claim upon which relief can be granted. In

the alternative, the State requests that summary judgment be granted in favor of the State. This

motion is supported by the accompanying memorandum of law.

## MEMORANDUM

### I. Facts and Procedural Posture

On December 12, 1983, at approximately 7:40 pm, Petitioner Von Clark Davis shot and

killed his estranged girlfriend, Suzette Butler, on the sidewalk outside the front door of

American Legion Post 520 on Central Avenue in Hamilton, Ohio. This shooting was witnessed

by several people on the street who indicated that Davis fired multiple shots at Butler's head,

the final shot a "*coup de gras*" as he bent down and fired his pistol within inches of her head;

autopsy findings were consistent with that testimony. Additional witnesses testified that earlier

that day, within a few hours before the shooting, Davis had sought and received their help in

acquiring a .25-caliber semi-automatic pistol and ammunition for it. Since Petitioner had been

convicted in 1971 of second-degree murder for having killed Ernestine Davis (his estranged

wife), he was under disability and could not legally obtain a firearm. Spent .25 caliber shell

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

MICHAEL T. GMOSER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 516
HAMILTON, OHIO 45012

cases found at the scene, ejected from the murder weapon, were of the same caliber and brand as the ammunition purchased that day by Petitioner; the fatal bullets recovered from the victim's head during the autopsy were likewise consistent with the gun and ammunition that Davis acquired, which was never recovered.[1]

A. Prior Proceedings

Following the murder, Petitioner was indicted for the aggravated murder[2] of Butler with a death-penalty specification[3] and having weapons while under a disability.[4] (*Indictment*, T.d. 8) Davis waived a jury trial (T.d. 83, 84) and was tried in May 1984 by a three-judge panel (Hons. Henry J. Bruewer, Judge presiding, John R. Moser and William R. Stitsinger, JJ.). The trial court found Petitioner guilty as charged (*Entry of Findings of Guilty*, T.d. 101)[5], and following a mitigation hearing, Petitioner was sentenced to death. (T.d. 105, 108) On direct appeal, the Twelfth District

---

1. Facts derived from trial record and decision of the Ohio Supreme Court in *State v. Davis* (1988), 38 Ohio St.3d 361, at 361-363, *certiorari denied* (1989), 488 U.S. 1034, 109 S.Ct. 849.

2. R.C. 2903.01(A) (purposely, and with prior calculation and design, causing the death of another).

3. R.C. 2929.04(A)(5) (that prior to the offense at bar he was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, to-wit: murder in the second degree contrary to former R.C. 2901.02, circa 1970).

4. R.C. 2923.13(A)(2) (that he did knowingly acquire, have, carry or use a firearm having previously been convicted of felonies of violence, to-wit: convictions for shooting with intent to wound in 1970, and murder in the second degree in 1971).

5. Davis testified on his own behalf in the 1984 trial's guilt phase, maintaining that he had purchased the murder weapon as part of an exchange with "Silky Carr," a man from Kentucky whom Davis asserted had been Butler's drug dealer; Davis also claimed that Butler owed Carr money, and that on the night of the murder he left Carr and Butler talking in front of the American Legion Hall. See *Davis*, 38 Ohio St.3d, at 363 n.5.

2

affirmed the conviction and sentence.[6] Thereafter, the Ohio Supreme Court also affirmed Petitioner's conviction, but a majority of that court reversed his death sentence on the ground that the three-judge panel had improperly considered non-statutory aggravating circumstances during the penalty phase of the trial.[7] On remand, the same three-judge panel that had originally tried Petitioner conducted a re-sentencing hearing in August 1989 and again sentenced him to death. (T.d. 168, 169)    The Twelfth District[8] and the Ohio Supreme Court[9] affirmed this second death sentence on direct appeal.

Following his unsuccessful exhaustion of postconviction remedies in the Ohio courts,[10] in April 1997, Petitioner filed a petition for a writ of habeas corpus in federal court contending, *inter alia*, that his federal constitutional rights had been violated when he was denied the opportunity to present additional evidence in mitigation at the second sentencing hearing (his postconviction good behavior in prison from 1984 to 1989, as well as a "psychological update" by a psychologist who had previously testified in the sentencing phase in 1984). Ultimately the United States District Court

---

6. *State v. Davis* (May 27, 1986), Butler App. No. CA84-06-071, 1986 WL 5989.

7. *Davis*, 38 Ohio St.3d, at 372-373 (specifically remanding the case to the trial court (the three-judge panel) for a re-sentencing hearing "*** at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence.")

8. *State v. Davis* (Oct. 29, 1990), Butler App. No. CA89-09-123, 1990 WL 165137.

9. *State v. Davis* (1992), 63 Ohio St.3d 44, *rehearing denied*, 63 Ohio St.3d 1433, *certiorari denied* (1992), 506 U.S. 858, 113 S.Ct. 172, *second rehearing denied* (1993), 66 Ohio St.3d 1489.

10. Davis filed a petition for post-conviction relief in 1993 (T.d. 188), which was denied on June 30, 1995 (T.d. 226), affirmed in *State v. Davis* (Sept. 30, 1996), Butler App. No. CA95-07-124, 1995 WL 551432, *discretionary appeal not allowed*, *State v. Davis* (1997), 77 Ohio St.3d 1520. Similarly, Davis' attempts in 1998 to obtain relief pursuant to applications to reopen his direct appeal, under App.R. 26(B), were unsuccessful. See *State v. Davis*, 86 Ohio St.3d 212, 1999-Ohio-160 (affirming the Twelfth District's judgment filed January 13, 1999 in *State v. Davis*, Butler App. No. CA84-06-071, unreported).

3

for the Southern District of Ohio denied habeas relief.[11] However, on appeal from that decision, the United States Court of Appeals for the Sixth Circuit reversed the district court's denial of relief, holding that the trial court's refusal to consider the presentation of additional mitigating evidence at the second sentencing hearing was error under *Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669. Accordingly, the Sixth Circuit ordered the district court to grant Davis a conditional writ of habeas corpus, indicating that *Skipper* required that the case be remanded for a new sentencing hearing.[12] Upon issuance of said writ, this Court once again assumed jurisdiction and issued an order granting Davis a "new sentencing hearing" on December 19, 2007. (T.d. 241)

B. The 2009 Sentencing Hearing

Because the original three judges were unavailable, a three-judge panel, which consisted of the presiding judge (Hon. Andrew Nastoff) and two judges (Hon. Keith M. Spaeth and Hon. Charles L. Pater) chosen by random lot on the record and in open court with the parties participating, was assigned to hear the matter. (T.d. 250)

Petitioner thereafter waived any time requirements (T.d. 237,238), and after agreed continuances (T.d. 331, 393), additional discovery, and a spate of pre-sentence motions were heard and determined (T.d. 337), the re-sentencing hearing was conducted on September 8-10, 2009. The only evidence that the State was permitted to introduce was a judgment of conviction entry, proving

---

11. See *Davis v. Bagley* (S.D. Ohio Jan. 17, 2002), No. C-1-97-402, 2002 WL 193579 (not reported in F.Supp.2d).

12. See *Davis v. Coyle* (C.A.6, 2007), 475 F.3d 761, 774-775 (citing *Skipper*, 476 U.S. at 8); *Id.* at 781.

4

that Petitioner had been convicted of second-degree murder (as defined under then-existing law) in 1971. (T.p. 39-40.[13])

Petitioner presented numerous witnesses in support of his argument for mitigation. Petitioner exercised his right to present an unsworn statement. (T.p. 45-47.) Upon his request, he was permitted to speak in response to questions posed by his counsel, rather than in the narrative. (Id.) Petitioner acknowledged that he had committed a crime that was "callous," "unforgivable," and "evil." (T.p. 46.)

Francis Welland testified on Petitioner's behalf. (T.p. 48-63.) Welland, who has corresponded with Petitioner since 1992, stated that Petitioner is her "friend." (T.p. 49, 51.) Welland testified that the imposition of the death sentence as to Petitioner would "tear [her] apart" because she has "really come to enjoy his company through letters." (T.p. 57.) She also acknowledged having a personal opposition to the death penalty. (T.p. 59.)

Petitioner also called several family members to testify on his behalf. Victor Davis, Petitioner's brother, testified in mitigation. (T.p. 78-95.) He told the Court that Petitioner's life should be spared because Petitioner "is a child of God" and "always, to me, accepted the responsibility of his actions." (T.p. 87.) Sherry Davis, Petitioner's daughter, testified. (T.p. 98-103.) The victim of Petitioner's 1971 murder, Ernestine Davis, was Sherry's mother. (T.p. 100.) Sherry testified that she has forgiven Petitioner for the death of her mother and does not want to see her father taken away from her. (T.p. 100-01.)

---

13. Unless otherwise noted, citations to the transcript of proceedings refer to the sentencing hearing that occurred on September 8 - 10, 2009.

5

Charles Tipton, Petitioner's step-father, testified. (T.p. 104-12.) Tipton married Petitioner's mother in 1962, when Petitioner was twelve-years-old. (T.p. 105.) He and Petitioner were very close before Petitioner was incarcerated, and the two would fish together "every Saturday." (T.p. 107.) He testified that Petitioner was "a very good child growing up." (T.p. 108.) He asked the Court to spare Petitioner's life, because "like every parent," Tipton "love[s his] children ... want[s] to see him living." (T.p. 109.) Alluster Tipton, Petitioner's mother, also testified. (T.p. 113-22.) According to Alluster, Petitioner's biological father, Nick, was "in and out" of the family's life prior to their divorce. (T.p. 118.) Petitioner's mother asked the three-judge panel to impose a sentence other than death, stating that even from prison, Petitioner would play a part in her life. (T.p. 120.) Carol Smith, Petitioner's sister, was also called on Petitioner's behalf. (T.p. 122-145.) She testified that she and Petitioner "got along great" as children. (T.p. 127.) Carol believes that Petitioner is "a good person deep inside" and that does not "see where it will serve any purpose with a death sentence." (T.p. 129.)

Petitioner's life-long friend, Patrick "Rick" Rotundo, also took the stand on Petitioner's behalf. (T.p. 206-16.) Rotundo first met Petitioner when Rotundo moved next door to his family when Petitioner was 18. (T.p. 208.) He observed Petitioner drink "on special occasions" in a manner that was "civil" and "controlled." (T.p. 210.) He felt that Petitioner's family (apart from his biological father) "were wonderful people." (T.p. 214.)

Petitioner also called witnesses to testify about his conduct in prison since the murder of Suzette Butler. Jerome Stineman, a Cincinnati attorney, met Petitioner at the Southern Ohio Correctional Facility ("SOCF") in 1989 or 1990. (T.p. 190-91.) Stineman was a volunteer with an Alcoholics Anonymous program at SOCF. (T.p. 191.) According to Stineman, only the inmates

6

who had demonstrated "good behavior" and a "willingness and desire to participate" were permitted to be involved in the program. (T.p. 192.) Petitioner told Stineman that he killed Suzette Butler during an alcohol-induced blackout. (T.p. 193-94.)

Scott Nowak, a correctional program specialist at the Ohio State Penitentiary ("OSP"), was also called by Petitioner. (T.p. 216-29.) Nowak's job is to perform daily case manager duties for inmates. (T.p. 217.) Prior to the hearing, Nowak completed an Institutional Summary Report regarding Petitioner. (T.p. 219 & Ex. J.) The information in the form is compiled from the inmate's unit file and an interview with an inmate. (T.p. 220.) The report showed that since he had been incarcerated, Petitioner had received only one bad-conduct report (in 1990), which resulted in a verbal warning. (T.p. .Ex. J.) While at OSP, Petitioner had held the position of porter since 2005, and in May 2006, was moved to OSP's extended privilege unit. (Id.) While housed at Mansfield Correctional Institution, Petitioner held various positions: porter, recreation worker, food service worker, and artist. (Id.) He participated in programs at OSP, Mansfield, and SOCF, including stress management, positive thinking, anger management, AA, and military veteran meetings. (Id.) Over the State's objection, Nowak testified that if the Court imposed a life sentence, Petitioner would be transferred to an institution that had a lower correctional-officer-to-inmate ratio. (T.p. 223-225.)

Petitioner also called Cynthia Mausser, chair of the Ohio Parole Board, to testify. (T.p. 145-89.) Prior to her employment with the parole board, Mausser was an assistant public defender representing parole violators before the parole board. (T.p. 148.) Mausser explained the process by which parole-eligible offenders are evaluated for release. (T.p. 148-59.) Mausser indicated that the fact that the offender was incarcerated for committing an offense similar to one for which he had been previously convicted would be treated as a negative factor by the board. (T.p. 159.) Opposition

7

by the judge, prosecutor, and victim would also be a negative factor. (Id.) The fact that an individual was on parole at the time he committed the offense that led to his current incarceration would also be a negative factor. (T.p. 166.) In response to a hypothetical that purportedly described Petitioner's circumstances, Mausser testified that she believed that such a person "would likely spend a large portion of the remainder of their life in person," and that it would be "unlikely" for a person in such circumstances to be granted parole in his first hearing. (T.p. 176.)

Finally, Petitioner called Dr. Robert Smith, a clinical psychologist and addiction specialist. (T.p. 230-313.) Dr. Smith met with Petitioner twice, for five to six hours each time. (T.p. 242.) He also met with Charles and Alluster Tipton, Elliot Davis (Petitioner's brother), Carold Smith, Victor Davis, and Rick Rotundo. (T.p. 243.) He also reviewed interview summaries for several individuals, as well as Petitioner's school and military records. (T.p. 244.) Dr. Smith also read other expert evaluations regarding Petitioner and police reports from the murders of Ernestine Davis and Suzette Butler. (T.p. 245.) Dr. Smith concluded that at the time Petitioner murdered Suzette Butler, he suffered from alcohol dependence and borderline personality disorder. (T.p. 248.) Symptoms of borderline personality disorder include severe impulsivity; inappropriate and intense anger; and transient, stress-related paranoid ideation. (T.p. 264-67.)

After deliberation, on September 10, 2009, this Court once again imposed a death sentence. (T.d. 432—Judgment of Conviction Entry and T.d. 435—*Sentencing Opinion* filed Sept. 21, 2009.) The Twelfth District unanimously affirmed.[14] An appeal as of right is currently pending before the Supreme Court of Ohio.[15]

---

14. *State v. Davis*, Butler App. No. CA2009-10-263, 2011-Ohio-787.

15. *State v. Davis*, Supreme Court of Ohio Case No. 2011-0538.

8

## II. Argument

R.C. 2953.21 permits a collateral civil attack on a criminal judgment. *State v. Steffen* (1994), 70 Ohio St.3d 399. In post-conviction proceedings, the petitioner bears the initial burden to provide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. *State v. Kapper* (1983), 5 Ohio St.3d 36, *cert. denied*, 464 U.S. 856, 104 S.Ct. 174.

### A. Standard for Dismissal Under Civ.R. 12(B)(6)

Dismissal pursuant to Civ.R. 12(B)(6) is appropriate when a plaintiff or petitioner can prove no set of facts in support of his claim that would entitle him to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 11. In adjudicating a motion to dismiss, a court must construe all of the allegations in the complaint or petition as true, construing them and any reasonable inferences that can be drawn from them in favor of the nonmoving party. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418, 1995-Ohio-61.

### B. Summary Judgment Standard

To the extent the Court relies on matters outside the pleadings, the Court must treat its ruling as one granting summary judgment. Civ.R. 12(B). Under R.C. 2953.21(D), either party may file a motion for summary judgment within twenty days of the filing of a motion for postconviction relief. Summary judgment is appropriate when the right to such judgment "appears on the face of the record." *State v. Raypole*, Fayette App. No. CA96-04-006, 1996 WL 679672, at *2. Summary judgment adjudication in a postconviction relief proceeding differs from that in a civil proceeding. This is because in postconviction relief proceedings, "the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of guilt or no-contest plea." *State v. Calhoun*, 86 Ohio St.3d 279, 284, 714

9

N.E.2d 905, 1999-Ohio-102. Thus, in a postconviction relief proceeding, a trial court may "deem affidavit testimony to lack credibility without first observing or examining the affiant." *Id.* Moreover, where the affidavit would not constitute sufficient grounds for postconviction relief even if true, its truth or falsity is inconsequential.

C. Petitioner's First Eight Grounds For Relief

Petitioner's first eight grounds for relief all assert that his prior attorneys rendered ineffective assistance of counsel. Seven of those grounds challenge counsel's performance during the 2007 resentencing hearing; the eighth centers on conduct of Petitioner's counsel for the 1984 trial.

The Sixth Amendment to the United States Constitution protects an accused's right to effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was deficient, and that the deficient performance deprived the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 689. "Warning against the temptation to view counsel's actions in hindsight, the Supreme Court stated that judicial scrutiny of an ineffective assistance claim must be 'highly deferential.'" *State v. McIntosh*, Butler App. Nos. CA2006-03-051, CA2006-10-282, CA2007-10-241, 2008-Ohio-5540, ¶ 10, quoting *Strickland.* In the context of the penalty phase of a capital case, a defense attorney is required to "conduct a reasonable investigation into the defendant's history and background." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 220. However, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 156, quoting *State v. Treesh* (2001), 90 Ohio St.3d 460, 490. What is more, "strategic choices made after thorough investigation of law

10

and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91.

1.    *Petitioner's Right To Counsel Was Not Violated At The 2009 Resentencing Hearing Due To A Failure To Investigate Mitigating Evidence.*

In his first ground for relief, Petitioner claims that his counsel for the 2009 sentencing hearing failed to investigate "mitigating evidence regarding Davis' exemplary prison record." (Petition at ¶ 38.) Based on the record before this Court, this claim is demonstrably untrue.

Over Petitioner's objection, this Court ordered Petitioner's unit file–the file Petitioner now claims his 2009 sentencing hearing counsel did not discover–to be produced to both Petitioner and the State. (T.d. 253–Entry as to Release of Institutional Records.) Thus, regardless of the scope of the investigation undertaken by the 2009 sentencing hearing counsel, the record is clear that Petitioner's counsel possessed the unit file, but made a strategic decision not to introduce it during the sentencing hearing. The affidavit of Diane Menashe (Petition Ex. D) expressing the opinion that counsel's alleged failure to investigate "constitutes ineffective assistance of counsel" has zero probative value. This is because ***the records Menashe examined in forming her opinion do not include the files of sentencing counsel***. (Petition Ex. D at ¶ 6.) In other words, Menashe has no idea what sentencing counsel did or did not have access to as a result of their investigation; she knows only what sentencing counsel chose to present during the sentencing hearing.

Petitioner's claim is based on another factual inaccuracy, in that he claims that "the defense called only one witness regarding Davis' prison record, Scott Nowak, Davis' case manager. (Petition at ¶ 43.) This is not true. The defense also called Jerome Stineman, an attorney who volunteered with the AA program at SOCF. (T.p. 191.) Stineman's testimony showed that Petitioner participated in an alcohol abuse program while incarcerated.

11

"A counsel's performance is deficient if he committed errors so serious that he was not performing at a reasonable professional level. The burden is on the defendant to make such a showing by 'identify[ing] the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.'" *Williams v. Coyle* (C.A.6 2001), 260 F.3d 684, 703 (en banc), quoting *Strickland*, 466 U.S. at 690. Here, Petitioner cannot demonstrate an omission on the part of sentencing counsel. Because sentencing counsel clearly had the file that Petitioner argues their investigation should have uncovered, Petitioner's first ground for relief should be denied.

2.  *Petitioner's Right To Counsel Was Not Violated At The 2009 Sentencing Hearing Due To A Failure To Present Mitigating Evidence.*

Petitioner claims that sentencing counsel failed to present relevant, mitigating evidence. In particular, he argues that counsel should have presented his entire unit file, rather than the two-page institutional summary and the testimony of his case manager. (Petition at ¶ 57.) Sentencing counsel's decisions about which evidence to present does not, however, constitute ineffective assistance of counsel.

As the *Strickland* court noted, strategic decisions about which evidence to present are "virtually unchallengeable." 466 U.S. at 691. Introducing only the institutional summary (T.p. Ex. J), rather than the voluminous unit file, was a legitimate strategic decision. The summary provides an easy-to-read synopsis of Petitioner's conduct while incarcerated. The decision to call only two witnesses (Smith and Stineman) regarding Petitioner's conduct while an inmate is similarly sound legal strategy. Petitioner's counsel obviously concluded that the Petitioner's post-offense conduct

12

was mitigating. However, Petitioner's counsel apparently decided to limit the number of witnesses to discuss this issue, thus emphasizing Petitioner's role as a family member over his status as an inmate. This is not a professionally unreasonable judgment.

Moreover, even if Petitioner could show a deficiency in sentencing counsel's performance, he cannot show prejudice as a result. Petitioner notes that the full unit file included a certification of completion for a stress management seminar and job evaluations. (Petition at ¶ 57.) However, the institutional summary report shows that Petitioner held various jobs in OSP, SOCF, and Mansfield, and that Petitioner completed several programs including one for stress management. (T.p. Ex. J.) The full unit file would merely have duplicated the information presented in the summary report and through Nowak's testimony.

Petitioner challenges strategic decisions made by sentencing counsel. These decisions were not outside of the norms of professional practice. Moreover, Petitioner is unable to show he was prejudiced by the actions about which he now complains. Accordingly, Petitioner's second ground for relief should be denied.

3.  *Petitioner's Right To Counsel Was Not Violated At The 2009 Sentencing Hearing Due to Counsel's Decision To Call Cynthia Mausser.*

Next, Petitioner argues that sentencing counsel's decision to call Cynthia Mausser, the chair of the Ohio Parole Board, constituted ineffective assistance. (Petition at ¶ 64.) On direct examination, Mausser testified that an offender such as Petitioner "would likely spend a large portion of the remainder of their life in person," and that it would be "unlikely" for a person such as Petitioner to be granted parole in his first hearing. (T.p. 176.) On cross-examination, she

13

acknowledged, as she does in her affidavit (Petition Ex. D), that she could not take a position as to whether she would vote for parole in a specific, future case or predict how fellow members of the Board would vote. (T.p. 133-35.)

Petitioner's claim is barred by res judicata. "Res judicata bars the assertion of claims against a valid, final judgment of conviction that have been raised or could have been raised on direct appeal." *State v. Ketterer* (2010), 126 Ohio St.3d 448,2010-Ohio-3831, at ¶ 59. Res judicata includes the concept of claim preclusion, which "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *State v. Redwine*, Brown App. No CA2009-12-045, 2010-Ohio-3468, at ¶ 14. When a party attempts to bring such a subsequent action, the previous transaction is conclusive. *Id.* Res judicata applies to criminal proceedings. *See Ketterer*, at ¶ 59 ("Ohio courts have applied res judicata to bar the assertion of claims in a motion to withdraw a guilty plea that were or could have been raised at trial or on appeal.")

When a defendant, "represented by new counsel on direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief." *State v. Cole* (1982), 2 Ohio St.3d 112, syllabus; *see also State v. Lentz* (1994), 70 Ohio St.3d 527, 529-30.

Petitioner's claim regarding sentencing counsel's decision to elicit testimony from Mausser could have been raised on direct appeal, but was not. (Respondent's Ex. 1–Cover Page & Contents of Defendant-Appellant's Brief in Butler App. No. CA2009-10-263.) Nothing in Petitioner's argument on this claim requires the Court to consider evidence *dehors* the record. While Petitioner

14

purports to rely on a new affidavit from Mausser, nothing in that affidavit has any bearing on the ineffective assistance claim; instead, it is merely descriptive of what is readily apparent from the trial transcript. Because this claim could have been raised on direct appeal, res judicata bars Petitioner from raising it in postconviction relief.

Even if this claim were not barred by res judicata, Petitioner fails to show deficient performance. Of course, Mausser was unable to predict with accuracy a specific outcome. However, her testimony provided some assurance to the Court that if the panel voted for a life sentence, Petitioner was unlikely to be paroled immediately following the expiration of thirty years.

Even if the performance were deficient, Petitioner is unable to show prejudice. As Petitioner notes, the panel gave Mausser's testimony "no weight." (T.d. 435–Sentencing Opinion–at 10.) While the panel ultimately found Mausser's testimony unpersuasive, that does not equate to Mausser's testimony "assist[ing Petitioner] in receiving the death penalty." (Petitioner at ¶ 70.) Instead, "no weight" mean just that: the testimony neither hurt nor helped. Moreover, the absence of Mausser's testimony would not have rendered the panel unable to complete simple mathematical operations. The Court knew, with or without Mausser's assistance, that the only permissible sentences were death or thirty years to life.

Finally, Petitioner complains that his sentencing counsel did not provide Mausser the opportunity to expand upon an answer to question asked during cross-examination. According to Mausser:

> If permitted, I would have corrected my answer … where I said I had not sat on a case to vote on parole where a person was convicted of a death penalty specification but the indificual received a sentence of less than death. The question was confusing. I actually have sat on cases where a person came before the Parole Board for a parole hearing having been convicted of a death penalty specification but receiving a life

15

sentence.
(Petition Ex. F at ¶ 8.)

Petitioner fails to explain how this correction would have buttressed his argument for mitigation. Conspicuously absent from Mausser's affidavit is an assertion that such inmates are never granted parole. Simply put, sentencing counsel elicited from Mausser the best testimony available to them: that if given a life sentence, Petitioner would likely not be paroled at his first hearing. That the panel found this testimony unpersuasive does not mean that their strategy constitutes ineffective assistance of counsel. *See State v. Carpenter* (1996), 116 Ohio App.3d 615, 626 (a reviewing court presumes "that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Accordingly, Petitioner's third ground for relief should be denied.

4.    *Petitioner's Right To Counsel Was Not Violated At The 2009 Sentencing Hearing Due To Counsel's Decision To Call Dr. Smith.*

Petitioner continues his assault on sentencing counsel's strategic decisions in claiming that counsel rendered constitutionally impermissible assistance of counsel by calling a psychologist to testify on his behalf. Petitioner's argument finds no support in the record.

Petitioner claims that Dr. Smith's testimony "left the panel with the impression that he was and is still dangerous." (Petition at ¶ 80.) Dr. Smith's testimony was geared towards arguing that Petitioner's conduct–two separate murders–was mitigated by a psychological problem. Dr. Smith did not opine that Petitioner would be dangerous if he were, at some future point, released on parole. Dr. Smith now claims:

I would have been able to testify that Von at the present time is a different person

16

> than he was when he was admitted to ODRC in 1984. Having been in a structured setting for the past 27 years, Von has learned to accept external rules and expectations regarding his behavior. He has developed coping strategies to deal effectively with frustration, annoyance, disappointment, etc. He has learned to weigh the potential consequences of his decisions and actions.

(Petiton Ex. I at ¶ 12.)

Dr. Smith's affidavit does not, however, offer any opinion as to Petitioner's likelihood of recidivism if released. Nor could it. Dr. Smith has been able to review Petitioner's behavior in the confines of a correctional institution. As he testified, "If you put [a person with borderline personality disorder] in a very structured environment … [he] will adapt and adjust." (T.p. 258.) People with this diagnosis, however, have problems "in the community where [they] have no clear structure." (Id.) Regardless of what Dr. Smith was or was not asked regarding the possibility of Petitioner's release, he could not have altered his diagnosis of Petitioner's condition or how that condition manifests itself. Moreover, tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter* (1995), 72 Ohio St.3d 545, 558.

Moreover, even if Dr. Smith had testified that Petitioner is "a different person" than the one who brutally murdered two intimate partners, this testimony would have been duplicative of other evidence placed before the Court. The defense called Welland to testify as to what she had observed about Petitioner through correspondence in the 1990's and 2000's. Petitioner's prison record was admitted to show his compliance with prison rules and his ability to hold a job within the institution. Stineman testified regarding his regular attendance at AA meetings while housed at SOCF. Sentencing counsel introduced ample evidence regarding Petitioner's supposed transformation since he murdered Suzette Butler.

Petitioner also argues that sentencing counsel should have decided against presenting

17

psychological testimony in mitigation because "the second panel [that sentenced Petitioner to death in 1989 following remand from the Ohio Supreme Court] actually used the psychological testimony to help bolster their decision to impose death." (Petition at ¶ 81.) This is patently untrue. The 1989 panel did not consider Petitioner's psychological condition to be an aggravating factor. Doing so would have been reversible error. Instead, the Court noted merely that Petitioner's condition "is not of such a nature as would have any great mitigating effect." Given the advancement of the understanding of personality disorders since 1989, Petitioner's 2009 sentencing counsel made a reasonable decision to utilize his condition as potentially mitigating evidence. The panel's disagreement with counsel's position is not evidence of ineffective assistance.

Moreover, R.C. 2929.04(B)(3) specifically requires a sentencing court to consider in mitigation "whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial to capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law." The only evidence that could invoke this mitigating factor is psychological or psychiatric testimony. Given the General Assembly's determination that mental disease is a mitigating factor, sentencing counsel would have had a hard time finding a justification for not calling Dr. Smith. Thus, Petitioner's fourth ground for relief should be denied.

5.    *Petitioner's Right To Counsel Was Not Violated At The 2009 Sentencing Hearing Due To Counsel's Decision Not To Call John Lee.*

Petitioner claims that sentencing counsel provided ineffective assistance of counsel by failing to call John Lee, Petitioner's mitigation investigator, in order to present summaries of witness

18

interviews conducted during the 1990's. A review of the exhibits Petitioner now wishes had been introduced at his 2009 sentencing hearing, however, demonstrates that they are of little probative value.

According to the interview notes, Elizabeth Crawford talked a great deal about Petitioner's mother and father. (Petition Ex. L–"Elizabeth Crawford (Paternal Aunt)".) Crawford reported that Petitioner's biological father was a heavy drinker, and theat Petitioner was "a quiet little boy." She provided no other information about Petitioner's upbringing. Dr. Charles Flowers was also interviewed by Lee. (Petition Ex. L–"Dr. Charles Flowers".) Flowers "grew up with [Petitioner's] parents" and "was able to give some limited historical perspectives on the Davis family and a few insights on [Petitioner]." (Id.) He told Lee that Petitioner's biological parents fought frequently, and that he "believed [Petitioner] learned to hate women because he was always being whipped by one, be it his mother or one of his female relatives." (Id.)

Milton Flowers provided an affidavit in 1993. (Petition Ex. L–"Exhibit U Affidavit of Milton Flowers".) Flowers wrote that Petitioner was "very small as a child" and that he had a "violent temper." (Id.) He recounted that "[a]t times when he was angry, the other kids would have to catch and hold him until he cooled down." (Id.) Finally, Fannie Whiteside, Petitioner's maternal great aunt, was interviewed by Lee. (Petition Ex. L–"Fannie Whiteside".) Lee wrote that Whiteside "was able to give some limited social history on Alluster but because of the age difference and the fact she moved away from Hamilton when she married, very little of significance was offered." (Id.)

It is difficult to see how the testimony of older relatives and family friends–who did not live with Petitioner and his immediate family–would have altered (or even informed) the Court's judgment. Several relatives, including Petitioner's mother, step-father, brother, and sister, testified

19

on Petitioner's behalf. They painted a complete picture of Petitioner's upbringing. The only

allegation of note in the affidavits and interview notes is Charles Flowers' allegation that Petitioner

was "always being whipped" by a woman. Flowers, however, does not recount any specific instance

when he observed Petitioner being abused as a child. Instead, the statement appears to be nothing

more than Flowers' speculation. And it is speculation that is not supported by the testimony of any

of Petitioner's family members, who appeared highly motivated to bring any mitigating evidence to

light. Thus, the failure to call Lee to recount interviews of witnesses he had conducted nearly two

decades prior to the 2009 sentencing hearing does not constitute ineffective assistance of counsel,

and Petitioner's fifth ground for relief should be denied.

6.   *Petitioner's Right To Counsel Was Not Violated At The 2009 Sentencing Hearing Due To Counsel's Decision Not To Seek The Recusal Of Judge Nastoff*

Petitioner contends that sentencing counsel should have sought Judge Nastoff's recusal. This

argument is wholly without merit.

During the 2009 sentencing hearing, counsel called Carol Smith to testify. At the conclusion

of her testimony, Judge Nastoff disclosed to the parties, in open court, that he had prosecuted

Smith's son, Lahray Thompson. (T.p. 126, 131.) Petitioner's sentencing counsel indicated that they

were already aware of Judge Nastoff's participation in Thompson's prosecution, and had decided

not to seek recusal. (T.p. 132.)

Petitioner's claim regarding sentencing counsel's failure to seek Judge Nastoff's recusal

could have been raised on direct appeal, but was not. (Respondent's Ex. 1–Cover Page & Contents

of Defendant-Appellant's Brief in Butler App. No. CA2009-10-263.)   As previously noted, res

judicata, which applies to criminal cases, bars the assertion of claims against a judgment of

20

conviction that could have been raised on direct appeal. *Ketterer*, at ¶ 59. So long as a defendant is represented by new counsel on direct appeal, claims of ineffective assistance are subject to the bar of res judicata. *See, e.g., Cole* at syllabus. The trial transcript clearly shows the nature of the alleged basis for Judge Nastoff's recusal. Thus, nothing outside the record is required in order to adjudicate this claim. Because it could have been litigated on direct appeal, this claim cannot be raised in a petition for postconviction relief.

Even if res judicata did not bar this claim, Petitioner's assertions should be denied as without merit. The Sixth Amendment right to counsel does not require a defense attorney to file a frivolous motion. *See, e.g., State v. Lott* (1990), 51 Ohio St.3d 160, 174. Petitioner has pointed to no authority for the proposition that a judge is barred from presiding over a criminal trial because he previously prosecuted the defendant's sister's son. Indeed, Ohio law does not even require the recusal of a judge when he has previously prosecuted the defendant. In *In re Disqualification of Hedric*, 127 Ohio St.3d 1227, 2009-Ohio-7208, Chief Justice Moyer was asked to disqualify a judge from presiding over a criminal trial in which the defendant was charged with felony OVI. According to the materials presented to the Chief Justice, Judge Hedric had previously prosecuted the defendant for OVI, and the conviction obtained as a result of that prosecution was to be used as a predicate for the new felony charge. Chief Justice Moyer noted that a "judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *Id.* at ¶ 11, quoting *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5.

The result in *Hedric* is consistent with the result of cases from around the country holding that a judge need not recuse himself because he previously prosecuted the defendant. *Del Vecchio*

21

*v. Illinois Dept. of Corrs.* (C.A.7 1994), 31 F.3d 1363, 1375 (en banc) ("Prosecuting a defendant in one case is not the kind of action from which we can presume bias or prejudgment in a future case."); *Jenkins v. Bordenkircher* (C.A.6 1979), 611 F.2d 162, 167 (finding no rule that "it is a denial of due process for a judge to preside over a jury trial in a criminal case where the judge, as a prosecutor, had previously been involved in proceedings against the defendant in entirely unrelated cases"); *People v. Curkendall* (2004), 13 A.D.3d 710, 713, 783 N.Y.2d 707 (finding "no merit in defendant's contention that he was denied a fair trial by the County Judge's refusal to recuse himself from the case because he had prosecuted defendant 14 years earlier on a similar offense when he was the District Attorney").

Just as in *Hedric*, courts have held that even when the judge previously prosecuted the defendant for a crime that is now being used as either a predicate offense or a sentencing enhancement, recusal is not required. *Johnson v. State* (1982), 274 Ark. 572, 575-76, 626 S.W.2d 947 (disqualification of judge not required although judge had actively prosecuted defendant in three of the four prior felony convictions relied on for enhancement of punishment); *State v. Zamora* (1997), 129 Idaho 817, 818, 933 P.2d 106 (no disqualification needed where judge prosecuted defendant in prior case that was being used as basis for habitual offender charge); *Dishman v. State* (Ind. 1988), 525 N.E.2d 284, 285-86 (no disqualification when judge had prosecuted defendant twice previously and prior convictions were the basis of habitual offender charge).

If a judge need not recuse himself because he previously prosecuted a defendant for an offense that would elevate the penalty that judge could impose in a new case, it is difficult to coherently argue that a judge must recuse himself because he previously prosecuted the defendant's sister's son in a completely unrelated case. The failure to seek Judge Nastoff's recusal did not

22

constitute ineffective assistance of counsel, because such a motion would have been patently frivolous. Accordingly, this ground for relief should be denied.

7. *Petitioner's Right To Counsel Was Not Violated At The 2009 Sentencing Hearing Because Counsel Allegedly Told Petitioner That A Sentence Of Life Without Parole Was Possible.*

Petitioner claims that sentencing counsel "failed to clearly state that life without parole was not a possible option in his sentencing phase." (Petition at ¶ 104.) Even if this were true, Petitioner makes no effort to explain how this was prejudicial to Petitioner.

Petitioner cites a trio of cases that stand for the unremarkable proposition that during plea negotiations, a defendant's right to counsel includes being correctly informed of the sentencing implications of the plea and the potential penalties following a trial. *See Smith v. United States* (C.A.6 2003), 348 F.3d 545 (involving rejection of plea); *Magana v. Hofbauer* (C.A.6 2001), 263 F.2d 542 (same); *Sparks v. Sowders* (C.A.6 1988, 852 F.2d 882 (acceptance of plea). But Petitioner does not allege that prior to the 2009 sentencing hearing, he accepted or rejected a plea offer based on erroneous advice from counsel. (Indeed, Petitioner could not make such an allegation, as no such plea offer was tendered.) Thus, even if sentencing counsel did, in fact, misinform Petitioner as to the possible outcomes of the 2009 hearing (a dubious proposition, given the extensive experience of sentencing counsel), Petitioner is unable to show any prejudice as a result. Moreover, even if Petitioner had been told that life without parole were an option, such information would not have altered Petitioner's conduct. The "redacted mitigation write-up"[16] (Petition Ex. H) states that Petitioner "would rather be sentenced to death than received LWOP." So even if counsel incorrectly

---

16. The State hereby reserves the right to demand the production of the entire mitigation write-up, pursuant to Evid.R. 106.

23

told him that life without parole was possible, Petitioner would have taken no action that would have furthered that result.

A prerequisite of an ineffective assistance claim is prejudice. Petitioner has made absolutely no effort to show even the slightest prejudice as a result of sentencing counsel's allegedly incorrect advice regarding sentencing options. Accordingly, this ground for relief must be denied.

8.   *Petitioner Cannot Litigate Whether He Received Effective Assistance Of Counsel When He Waived His Right To A Trial By Jury In 1984.*

In May 1984, Petitioner waived his right to a jury trial. (T.d. 83, 84.) Now, some twenty-seven years later, Petitioner wishes to challenge whether he was afforded effective assistance of counsel in proffering that waiver. This claim, however, is time-barred and may not be considered by the Court.

When Petitioner was convicted in 1984, R.C. 2953.21 permitted a postconviction relief petition to be filed "at any time" subsequent to the conviction. However, 1995 S.B. 4, which became effective on September 21, 1995, substantially amended the postconviction statutes to provide a 180-day, jurisdictional time limit on the filing of postconviction petitions. Section 3 of S.B. 4 provided:

> A person who seeks postconviction relief pursuant to sections 2953.21 through 2953.23 of the Revised Code with respect to a case in which sentence was imposed prior to the effective date of this act ... shall file a petition within the time required in division (A)(2) of section 2953.21 of the Revised Code, as amended by this act, or within one year from the effective date of this act, whichever is later.

Because Petitioner was convicted in 1984, the time for filing a postconviction relief petition expired on September 21, 1996. *See State v. Freeman*, Cuyahoga App. Nos. 73784, 73785, 73786, 73787, 1998 WL 855613. Thus, the instant petition, filed on October 21, 2011, is untimely as to claims

24

arising from the 1984 proceedings.

This Court may therefore entertain Petitioner's eighth claim for relief only if "the petitioner shows either that he was unavoidably prevented from discovering the facts upon which he relies in the petition, or that the United States Supreme Court has, since his last petition, recognized a new federal or state right that applies retroactively to the petitioner." R.C. 2953.23; *Freeman*, at *1. Petitioner does not even allege the existence of new facts or a new substantive right. Accordingly, this Court is without jurisdiction to entertain the merits of this claim for relief.

D. Petitioner's Ninth Ground For Relief

Finally, Petitioner argues that Ohio's capital sentencing regime is unconstitutional because Ohio's postconviction relief mechanisms are constitutionally inadequate. This claim must be denied as barred by res judicata or, in the alternative, meritless.

As previously noted, in criminal cases, res judicata bars the litigation of claims that could have been raised on direct appeal. *See Ketterer*, at ¶ 59. This is not a claim that Petitioner raised on direct appeal. (Respondent's Ex. 1.) Petitioner does not even argue that evidence dehors the record is required to support his claim. Accordingly, it is barred by res judicata.

Even if the claim were not barred, however, it is without legal merit. No court–state or federal–has ever held that Ohio's postconviction relief procedure is constitutionally inadequate. To support his position, Petitioner claims that the Sixth Circuit "has expressed its concerns" regarding Ohio's postconviction remedies. (Petition at ¶ 122.) This is not, however, accurate. In *Keener v. Ridenous* (C.A.6 1979), 594 F.2d 581, 590, the court discussed the interplay of Ohio's postconviction statutes and federal habeas statutes. The court expressed no opinion as to the

25

constitutionality of the procedures employed in Ohio. Instead, the court merely noted that because of the limits on claims that can be reviewed on collateral attack, some claims will be cognizable in federal habeas litigation although they "have never been reviewed by the State courts of Ohio." *Id.*

More recently, the Sixth Circuit has limited the holding in *Keener*, noting that the case only discusses whether a habeas petitioner has exhausted available state remedies. *Coleman v. Mitchell* (C.A.6 2001), 268 F.3d 417, 428-29. And in *Broom v. Mitchell* (C.A.6 2006), 441 F.3d 392, the court relied on the limitations in Ohio's postconviction relief statutes to conclude that certain federal claims had been procedurally defaulted.

Finally, Petitioner's claim is precluded by binding precedent from the Twelfth District Court of Appeals. In *State v. McGuire*, Preble App. No. CA2000-10-011, 2001 WL 409424, *6, the court noted that "postconviction state collateral review itself is not a constitutional right." Recognizing that once the right is extended, it must be applied in a manner consistent with due process, the court upheld Ohio's postconviction relief framework against constitutional challenge.

Petitioner should have raised his challenge to the adequacy of postconviction relief on direct appeal from his 1984 conviction. He had the opportunity to again do so on appeal from the 2009 sentencing hearing. His failure to do so raises the bar of res judicata. And even were his claim justiciable, it is without merit. Accordingly, it should be denied.

26

### III.  Conclusion

Three different sentencing hearing have ended with the same result: Petitioner should be put to death.  Petitioner has failed to raise any meritorious claim in his petition for postconviction relief. Accordingly, his petition should be denied without a hearing.

Respectfully submitted,

**MICHAEL T. GMOSER (0002132)**
**Butler County Prosecuting Attorney**

**Donald R. Caster (0077413)**
**Assistant Prosecuting Attorney**
**Appellate Division**
Government Services Center
315 High Street, 11th Floor
Hamilton, OH 45012-5202
Telephone: (513) 785-5202

### PROOF OF SERVICE

This is to certify that a copy of the foregoing pleadings was served upon:

Kurt Gatterdam
Erik P. Henry
Carpenter, Lipps & Leland, LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

by ordinary U.S. mail this 10th day of November 2011.

Donald R. Caster (0077413)

27

IN THE COURT OF APPEALS
TWELFTH DISTRICT COURT OF APPEALS
BUTLER COUNTY, OHIO

FILED
2010 MAY 17 PM 3:22
CINDY CARPENTER
BUTLER COUNTY
CLERK OF COURTS

STATE OF OHIO,

FILED BUTLER CO.
COURT OF APPEALS
MAY 17 2010
CINDY CARPENTER
CLERK OF COURTS

      Appellee,

vs.

VON CLARK DAVIS,

      Appellant.

:
:
:
:
:
:
:

Case No. CA2009-10-263

CAPITAL CASE

---

### MERIT BRIEF OF APPELLANT

---

LAURENCE E. KOMP (0060142)
Attorney at Law
P.O. Box 1785
Manchester, Missouri 63011
636-207-7330
lekomp@swbell.net
JOHN P. PARKER (0041243)
Attorney at Law
988 East 185th Street
Cleveland, Ohio 44119
216-881-0900
johnpparker@earthlink.net
ALAN M. FREEDMAN (PHV)
(Illinois Bar No. 0869570)
MIDWEST CENTER FOR JUSTICE, LTD.
P.O. Box 6528
Evanston, Illinois 60201
847-492-1563
fbpc@aol.com
COUNSEL FOR APPELLANT

DANIEL EICHEL
MICHAEL A. OSTER, JR.
Assistant Butler County Prosecuting Attorneys
Government Services Center, 315 High Street,
Hamilton, Ohio 45011
COUNSEL FOR APPELLEE



# TABLE OF CONTENTS

PROCEDURAL POSTURE...........................................................................................1

STATEMENT OF FACTS...........................................................................................1

ARGUMENT..............................................................................................................2

**ASSIGMENT OF ERROR NO. I -** THE TRIAL COURT ERRED IN VIOLATION
OF THE EIGHTH AMENDMENT AND DUE PROCESS TO ALLOW A
25-YEAR OLD, STALE JURY WAIVER TO STAND WHEN THERE WAS A NEW
PENALTY HEARING....................................................................................................2

*Issue Presented for Review No. 1: The trial court erred in violation of the Eighth Amendment
and Due Process to allow a 25-year old, stale jury waiver to stand when there was a new
penalty hearing.*.........................................................................................................2

### Authorities

*Adams v. United States ex rel McCann* (1942), 317 U.S. 269, 63 S.Ct. 236......................6

*Addington v. Texas* (1979), 441 U.S. 418, 99 S.Ct. 1804...................................3

*Boykin v. Alabama* (1964), 395 U.S. 238, 89 S.Ct. 1709...................................6

*Bullington v. Missouri* (1981), 451 U.S. 430, 101 S.Ct. 1852.........................3,4

*Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761................................................7,8

*Duncan v. Louisiana* (1968), 391 U.S. 145, 88 S.Ct. 1444.............................6-7

Eighth Amendment........................................................................................4

Fourteenth Amendment..................................................................................4

*Furman v. Georgia* (1972), 408 U.S. 238, 92 S.Ct. 2726...................................4

*In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068..........................................3

*Patton v. United States* (1930), 281 U.S. 276, 50 S.Ct. 253...............................6

Sixth Amendment..........................................................................................4

*State v. Davis* (1992), 63 Ohio St. 3d 44.......................................................5-6

*State v. McGee* (Ohio Ct. App. 1998), 128 Ohio App.3d 541............................4

i

*Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052.........................................9

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000)...................................................7

*Issue Presented for Review No. 2: Appellant did not knowingly, intelligently and validly waive his jury in 1984 for a sentencing hearing in 2009.*.................................................9

### Authorities

*Burnham v. N. Chicago St. Ry. Co.* (7th Cir. 1898), 88 F. 627..........................................10

Fourteenth Amendment.................................................................................9

*Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019......................................................9

O.R.C. 2929.03(C)(2)(a)...............................................................................10

O.R.C. 2929.06 (1981)...............................................................................10,11

O.R.C. 2929.06 (2010)..................................................................................10

Section 5, Article 1 of the Ohio Constitution.........................................................9

*Simmons v. State* (1905), 75 Ohio St. 346.............................................................9

Sixth Amendment.......................................................................................9

*State v. Baker* (2008), 119 Ohio St.3d 197, syll., 2008-Ohio-3330.....................................11

*State v. Davis* (1988), 38 Ohio St. 3d 361.............................................................9

*State v. Penix* (1987), 32 Ohio St. 3d 369.............................................................9

*State v. Ruppert* (1978), 54 Ohio St. 2d 263.........................................................11

*United States v. Groth* (6th Cir. 1982), 682 F.2d 578................................................10

**ASSIGNMENT OF ERROR II -** THE THREE JUDGE PANEL ERRED IN NOT CONSIDERING AND GIVING EFFECT TO MITIGATING EVIDENCE..............................12

*Issue Presented for Review No. 1– Whether the trial court erred in giving no weight to mitigation.*..................................................................................12

### Authorities

*Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761.........................................................12

ii

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6456

*Eddings v. Oklahoma*, (1982) 455 U.S. 104, 102 S.Ct. 869.........................12, 13

*Porter v. McCollum* (2009), __ U.S. __, 130 S.Ct. 447.....................................12

*State v. Davis* (1992), 63 Ohio St. 3d 44......................................................13

*Issue Presented for Review No. 2– Whether the trial court listened to mitigation*........................13

### Authorities

*Eddings v. Oklahoma*, (1982) 455 U.S. 104, 102 S.Ct. 869.........................13, 15

*Porter v. McCollum* (2009), __ U.S. __, 130 S.Ct. 447.................................13,14

*Rompilla v. Beard* (2005), 545 U.S. 374, 125 S.Ct. 2456.................................14

*Skipper v. South Carolina* (1986), 487 U.S. 1, 106 S.Ct. 1669.........................14

*State v. Davis* (1992), 63 Ohio St. 3d 44......................................................14

*State v. Simko* (1994), 71 Ohio St.3d 483.....................................................14

*State v. Smith* (2000), 87 Ohio St.3d 424, 447, 2000-Ohio-450.........................14

*State v. Rojas* (1992), 64 Ohio St. 3d 131.....................................................14

*Wiggins v. Smith* (2003), 539 U.S. 510, 123 S.Ct. 2527...................................14

**ASSIGNMENT OF ERROR III -** THE TRIAL COURT ERRED IN NOT PRECLUDING THE DEATH PENALTY AND ENFORCING THE THEN EXISTING PROVISIONS OF O.R.C. 2929.03(C)(2)(a)..............................................................................15

*Issue Presented for Review – Whether the trial court violated the constitution in applying a revised and amended O.R.C. 2929.03 in order to make death an available option*......................15

### Authorities

Art. I, Section 10 of United States Constitution...............................................17

Art. I, Section 16 of the Ohio Constitution.....................................................16

Art. II, Section 28 of the Ohio Constitution....................................................17

*Calder v. Bull* (1798), 3 U.S. 386................................................................17

*Carmell v. Texas* (2000), 529 U.S. 513, 120 S.Ct. 1620...................................17

iii

Eighth Amendment.................................................................................................16

Fifth Amendment..............................................................................................16, 17

Fourteenth Amendment....................................................................................16, 17

*In Re Medley* (1890), 134 U.S. 160, 10 S.Ct. 384.................................................17

*Landgraf v. U.S.I. Film Products* (1994), 511 U.S. 244, 114 S.Ct. 1483.............16

*Lindsey v. Washington* (1937), 301 U.S. 397, 57 S.Ct. 797.................................17

*Miller v. Florida* (1987), 482 U.S. 423, 107 S.Ct. 2446.......................................17

O.R.C. 2929.03.......................................................................................................15

O.R.C. 2929.06.............................................................................................16, 17, 18

O.R.C. 2945.05.......................................................................................................15

O.R.C. 2945.06.......................................................................................................15

*State v. Davis* (1988), 38 Ohio St. 3d 361...........................................................16

*State v. Penix* (1987), 32 Ohio St. 3d 369...........................................................17

**ASSIGNMENT OF ERROR IV -** APPELLANT'S DEATH SENTENCE IS DISPORPORTIONATE AND INAPPRORPRIATE.......................................................18

*Issue Presented for Review– Appellant's death sentence is disproportionate and inappropriate in violation of the Eighth and Fourteenth Amendments of the United State's Constitution and Sections 9 and 16 of the Ohio Constitution.....................................................................18*

**Authorities**

*Profitt v. Florida* (1976), 428 U.S. 242, 96 S.Ct. 2960.......................................18

*Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954.........................................18

O.R.C. 2929.05.......................................................................................................18

*State v. Carter* (1992), 64 Ohio St.3d 218.........................................................19

*State v. Cassano* (2002), 96 Ohio St.3d 94, 2002-Ohio-3751............................19

*State v. Cowens* (1999), 87 Ohio St.3d 68.........................................................19

iv

*State v. Taylor* (1997), 78 Ohio St.3d 15..................................................................19

**ASSIGNMENT OF ERROR NO. V -** TWENTY-SIX YEARS ON OHIO'S DEATH ROW
CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT UNDER THE STATE AND
FEDERAL CONSTITUTION, AND INTERNATIONAL LAW................................20

*Issue Presented No. 1 - Executing Appellant after such a lengthy stay on death row constitutes
cruel and unusual punishment.  Lackey v. Texas (1995), 514 U.S. 1045, 115 S.Ct. 1421 (Stevens,
J., dissenting from denial of certiorari)*..................................................................20

**Authorities**

*Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761.............................................................20

*Lackey v. Texas* (1995), 514 U.S. 1045, 115 S.Ct. 1421............................................20, 21

*State v. Davis* (May 27, 1986), Butler App. No. CA84-06-071, 1986 Ohio App. LEXIS
6919, 1986 WL 5989.................................................................................................20

*State v. Davis* (1988), 38 Ohio St. 3d 361.................................................................20

*State v. Davis* (Oct. 29, 1990), Butler App. No. CA89-09-123, 1990 Ohio App. LEXIS
4717, 1990 WL 165137............................................................................................20

*State v. Davis* (1992), 63 Ohio St. 3d 44..................................................................20

*Thompson v. McNeill* (2009), __ U.S. __, 129 S.Ct. 1299.......................................21

*Issue Presented No. 2 - Executing Appellant after such a lengthy stay on death row violates
international law*......................................................................................................21

**Authorities**

African Charter on Human and People's Rights, Art. 5.................................................24

American Convention on Human Rights, Art. 5.........................................................23-24

Article VII of the International Covenant on Civil and Political Rights....................22, 24

*Catholic Comm'n for Justice & Peace in Zimbabwe v. Attorney General*, No. S.C. 73/93
(Zimb. June 24, 1993)...............................................................................................23

Declaration of Tehran, Final Act of the International Conference on Human Rights 3, at
4, para. 2, 23 GAOR, U.N. Doc. A/CONF. 32/41 (1968)..........................................24

*De Sanchez v. Banco Central de Nicaragua* (5th Cir. 1985), 770 F.2d 1385....................24

v

European Convention for the Protection of Human Rights and Fundamental Freedoms, Art. 3................................................................................................................23

14 Hum. Rts. L. J. 323 (1993)............................................................................23

*Minister of Justice v. Burns and Rafay*, 2001 SCC 7 (S.C. Canada, 22 March 2001).......23

*Pratt and Morgan v. The Attorney General of Jamaica*, 3 SLR 995, 2 AC 1, 4 All ER 769 (Privy Council 1993)(en banc)......................................................22

*Simmons v. Roper* (2005), 543 U.S. 551, 125 S.Ct. 1183................................22

*Soering v. United Kingdom,* 11 Eur. Hum. Rts. Rep. 439 (1989)......................................22

Universal Declaration of Human Rights, Article 5............................................................23

*Vatheeswaran v. State of Tamil Nadu*, 2 S.C.R. 348, 353 (India 1983).......................22-23

**CONCLUSION**..............................................................................................25

**APPENDIX INDEX**............................................................................................vii

vi

# IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

FILED
2011 NOV 10 PM 4:41

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

STATE OF OHIO,

    Plaintiff-Respondent,

    v.

VON CLARK DAVIS,

    Defendant-Petitioner.

: Case No. CR1983-12-0614
:
:
: Judge Nastoff
:
: **STATE OF OHIO'S MEMORANDUM IN**
: **OPPOSITION TO PETITIONER'S**
: **MOTION FOR LEAVE OF COURT TO**
: **CONDUCT DISCOVERY**
:
:

## INTRODUCTION

Petitioner asks this Court to permit him to conduct discovery in connection with his petition for postconviction relief. Because this request is contravened by well-settled Ohio law, the motion should be denied.

## ARGUMENT

Ohio courts have uniformly rejected requests, such as the one Petitioner makes here, to conduct discovery in postconviction relief petitions. *State v. Frazier*, Lucas App. No. L-07-1388, 2008-Ohio-5027, ¶¶ 74-77 (explaining that because postconviction proceedings are special statutory proceedings, the civil rules do not entitle a petitioner to conduct discovery); *State v. McKnight*, Vinton App. No. 07CA665, 2008-Ohio-2435, ¶ 105 (holding that a "postconviction relief petitioner is not entitled to discovery to help the petitioner establish substantive grounds for relief"); *State v. Bies*, Hamilton App. No. C-020306, 2003-Ohio-442, ¶ 10 (noting that "the postconviction statutes do not contemplate discovery in the initial stages of postconviction proceedings"); *State v. Kinley* (1999), 136 Ohio App.3d 1 (capital defendant sentenced to death is not entitled to conduct discovery in postconviction proceedings). Thus, Ohio law is clear: Petitioner is not entitled to conduct discovery in postconviction proceedings.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

MICHAEL T. GMOSER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 516
HAMILTON, OHIO 45012

Next, Petitioner argues that "federal standards require liberal discovery." (Motion at 5.)  The argument borders on spurious.  The "Habeas Rules," as Petitioner calls them, are actually formally titled the Rules Governing Section 2254 Cases in the United States District Courts.  And Rule 1(a) governs the scope of these rules: "These rules govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254."  Thus, by their own terms, the "Habeas Rules" do not apply to state proceedings.

Moreover, Ohio courts have repeatedly made clear that a petitioner does not have a federal or state constitutional right to conduct discovery in postconviction proceedings.  In *State v. La Mar*, Lawrence App. No. 98 CA 23, 2000 WL 297413, the Fourth District noted that "the cases are in agreement that the lack of discovery during the initial stages of the postconviction process is based upon sound logic and does not violate any constitutional rights of the petitioner."  *Id.* at *5.  The same conclusion was reached in *State v. Jones*, Hamilton App. No. C-990813, 2000 WL 1886307, at *13.

## CONCLUSION

Ohio law does not provide for discovery during postconviction proceedings.  Moreover, Petitioner has no federal or state constitutional right to conduct discovery in connection with his postconviction relief petition.  Accordingly, Petitioner's motion should be denied.

2

Respectfully submitted,

**MICHAEL T. GMOSER (0002132)**
**Butler County Prosecuting Attorney**

**Donald R. Caster (0077413)**
**Assistant Prosecuting Attorney**
**Michael A. Oster, Jr. (0076491)**
**Chief, Appellate Division**
Government Services Center
315 High Street, 11th Floor
Hamilton, OH 45012-5202
Telephone: (513) 785-5202

## PROOF OF SERVICE

This is to certify that a copy of the foregoing pleadings was served upon:

Kurt Gatterdam
Erik P. Henry
Carpenter, Lipps & Leland, LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

by ordinary U.S. mail this 10th day of November, 2011.

**Donald R. Caster (0077413)**

3

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

F I L E D

STATE OF OHIO, 2011 NOV 10 PM 4: 40 : Case No. CR1983-12-0614

SWAIN
Plaintiff-Respondent, : Judge Nastoff
BUTLER COUNTY
CLERK OF COURTS STATE OF OHIO'S MEMORANDUM IN
v. : OPPOSITION TO PETITIONER'S
: MOTION FOR RECUSAL
VON CLARK DAVIS, :
:
Defendant-Petitioner. :

**INTRODUCTION**

Among the motions currently pending before the Court is Petitioner's motion seeking

the recusal of the Honorable Judge Andrew Nastoff. The State of Ohio urges the Court to

resolve this motion prior to any others. The Court should deny the motion, as recusal is not

warranted now and was not warranted in 2009.

**ARGUMENT**

The crux of Petitioner's argument is that because Petitioner claims that the attorneys

that represented him at his 2009 sentencing hearing provided ineffective assistance of counsel

by failing to seek Judge Nastoff's recusal, "it would be unfair" for the Court to preside over

the petition. This argument, unsupported by case law, is without merit.

The postconviction relief petition will require the Court to determine whether

sentencing counsel should have sought Judge Nastoff's recusal. In order to prevail on a claim

of ineffective assistance of counsel, a defendant must establish that his trial counsel's

performance was deficient, and that the deficient performance deprived the defendant of a fair

trial. *Strickland v. Washington* (1984), 466 U.S. 668, 689. The first prong of *Strickland*, then,

will require this Court only to determine whether, had counsel made the recusal motion, it

would or should have been granted. Petitioner does not suggest that the Court cannot fairly

make this determination. In fact, had sentencing counsel taken the action Petitioner now insists

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

MICHAEL T. GMOSER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

they should have, the Court would have been required to decide the motion in 2009.[1] If the Court determines that such a motion would have been granted, that is the end of the inquiry, as the Court need not undertake a prejudice analysis. If a biased judge presided over the sentencing hearing, structural error–mandating reversal without resort to harmless error analysis–would have occurred. *See, e.g., Turney v. Ohio* (1927), 273 U.S. 510. Thus, this Court will not be required to determine whether Petitioner was prejudiced as a result of Judge Nastoff's participation in his sentencing hearing.[2]

What is more, a motion for recusal in 2009 would have been denied as frivolous. Petitioner has pointed to no authority for the proposition that a judge is barred from presiding over a criminal trial because he previously prosecuted the defendant's sister's son. Indeed, Ohio law does not even require the recusal of a judge when he has previously prosecuted the defendant. In *In re Disqualification of Hedric*, 127 Ohio St.3d 1227, 2009-Ohio-7208, Chief Justice Moyer was asked to disqualify a judge from presiding over a criminal trial in which the defendant was charged with felony OVI. According to the materials presented to the Chief Justice, Judge Hedric had previously prosecuted the defendant for OVI, and the conviction obtained as a result of that prosecution was to be used as a predicate for the new felony charge. Chief Justice Moyer noted that a "judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be

---

[1]Notably, Petitioner does not argue that counsel should have sought the disqualification of the Court under R.C. § 2701.03. Such a motion would have been resolved by the Chief Justice of the Ohio Supreme Court

[2]As set forth in Respondent's Motion for Summary Judgment, the Court should not reach any of the merits of Petitioner's ineffective assistance/recusal claim, because the claim is barred by res judicata.

2

compelling to overcome these presumptions." *Id.* at ¶ 11, quoting *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5.

The result in *Hedric* is consistent with the result of cases from around the country holding that a judge need not recuse himself because he previously prosecuted the defendant. *Del Vecchio v. Illinois Dept. of Corrs.* (C.A.7 1994), 31 F.3d 1363, 1375 (en banc) ("Prosecuting a defendant in one case is not the kind of action from which we can presume bias or prejudgment in a future case."); *Jenkins v. Bordenkircher* (C.A.6 1979), 611 F.2d 162, 167 (finding no rule that "it is a denial of due process for a judge to preside over a jury trial in a criminal case where the judge, as a prosecutor, had previously been involved in proceedings against the defendant in entirely unrelated cases"); *People v. Curkendall* (2004), 13 A.D.3d 710, 713, 783 N.Y.2d 707 (finding "no merit in defendant's contention that he was denied a fair trial by the County Judge's refusal to recuse himself from the case because he had prosecuted defendant 14 years earlier on a similar offense when he was the District Attorney").

Just as in *Hedric*, courts have held that even when the judge previously prosecuted the defendant for a crime that is now being used as either a predicate offense or a sentencing enhancement, recusal is not required. *Johnson v. State* (1982), 274 Ark. 572, 575-76, 626 S.W.2d 947 (disqualification of judge not required although judge had actively prosecuted defendant in three of the four prior felony convictions relied on for enhancement of punishment); *State v. Zamora* (1997), 129 Idaho 817, 818, 933 P.2d 106 (no disqualification needed where judge prosecuted defendant in prior case that was being used as basis for habitual offender charge); *Dishman v. State* (Ind. 1988), 525 N.E.2d 284, 285-86 (no disqualification when judge had prosecuted defendant twice previously and prior convictions were the basis of habitual offender charge).

3

## CONCLUSION

Recusal was not appropriate in 2009. Likewise, it is not appropriate now. Defendants should not be able to judge-shop by raising claims seeking to impugn the impartiality of the Court when those claims have no basis in law or fact. Accordingly, Petitioner's motion should be denied.

Respectfully submitted,

**MICHAEL T. GMOSER (0002132)**
**Butler County Prosecuting Attorney**

**Donald R. Caster (0077413)**
**Assistant Prosecuting Attorney**
**Michael A. Oster, Jr. (0076491)**
**Chief, Appellate Division**
Government Services Center
315 High Street, 11th Floor
Hamilton, OH 45012-5202
Telephone: (513) 785-5202

## PROOF OF SERVICE

This is to certify that a copy of the foregoing pleadings was served upon:

Kurt Gatterdam
Erik P. Henry
Carpenter, Lipps & Leland, LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

by ordinary U.S. mail this 10th day of November 2011.

**Donald R. Caster (0077413)**

4

FILED

2011 NOV 21  PM 12: 50

MARY ......
CLERK OF COURTS

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

STATE OF OHIO,                              :          Case No. CR-1983-12-0614
                                            :
    **Plaintiff-Respondent,**                :          **Judge Nastoff**
                                            :
    **v.**                                   :
                                            :
**VON CLARK DAVIS,**                        :          **CAPITAL CASE**
                                            :
    **Defendant-Petitioner.**                :

---

## DEFENDANT-PETITIONER'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE REPLY MEMORANDUM IN SUPPORT OF POST-CONVICTION PETITION, MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY, AND MOTION FOR RECUSAL

---

Defendant-Petitioner Von Clark Davis, through counsel, moves for an extension of time

in which to file reply memoranda in support of the previously filed Post-Conviction Petition,

Motion for Leave of Court to Conduct Discovery, and Motion for Recusal. Counsel for the State

of Ohio does not oppose this motion. Reasons in support of this motion are more fully stated in

the attached memorandum in support.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
       henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

## MEMORANDUM IN SUPPORT

On December 19, 2007, to comply with granting of a conditional writ of habeas corpus in *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761, this Court granted Defendant-Petitioner Von Clark Davis a new sentencing hearing. A resentencing hearing was conducted before this Court from September 8, 2009 through September 10, 2009. At the conclusion of the resentencing hearing, on September 10, 2009, this Court along with two other judges resentenced Davis to death. The sentencing opinion was filed on September 21, 2009.

On October 21, 2011, Davis filed a Post-Conviction Petition, Motion for Leave of Court to Conduct Discovery, and Motion for Recusal. Following a stipulation of extension of time to respond, on November 10, 2011, the State of Ohio filed memorandums opposing the discovery and recusal motions, along with a Motion to Dismiss or in the Alternative for Summary Judgment regarding Davis' Post-Conviction Petition. Pursuant to Local Rule 4.09(D), Davis' reply memorandums are due within ten (10) days of service of the State's filings. For the following reasons, Davis requests an extension until December 7, 2011, in which to file his reply memorandums.

Undersigned counsel has been diligently working on the reply memorandums. However, due to other trial and appellate matters in state and federal court as well as the fact that next week is a holiday week, counsel does not anticipate being able to conclude the necessary research and writing to respond to the State's filings and to discuss the same with Mr. Davis before the current filing date. Counsel believes a two-week extension will allow them to conduct the research, discuss the replies with Mr. Davis, and to finish drafting the same.

Undersigned counsel consulted with counsel for the State of Ohio regarding this extension request, and the prosecutor indicated no objection.

2

Counsel assures this Court that this request is not made for purposes of delay, but is made to provide Davis the effective assistance of counsel.

For all the foregoing reasons, Defendant-Petitioner, Von Clark Davis, respectfully requests an extension of time until December 7, 2011, in which to file his reply memorandums. A proposed Entry is attached.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
          henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Unopposed Motion for Extension of Time to File Reply Memorandum in Support of Post-Conviction Petition, Motion for Leave of Court to Conduct Discovery, and Motion for Recusal was forwarded by first-class, postage prepaid U.S. Mail to Donald R. Caster, Assistant Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 17th day of November, 2011.

Kort Gatterdam

050-384-300071

3

CARPENTER LIPPS & LELAND LLP

ATTORNEYS AT LAW

TELEPHONE: (614) 365-4100

180 NORTH LASALLE
SUITE 2640
CHICAGO, ILLINOIS 60601
TELEPHONE (312) 777-4300

1025 CONNECTICUT AVENUE N.W.
SUITE 1000
WASHINGTON, DC 20036-5417
TELEPHONE (202) 365-2808

280 PLAZA, SUITE 1300

280 NORTH HIGH STREET

COLUMBUS, OHIO 43215

WWW.CARPENTERLIPPS.COM

WRITER'S DIRECT NUMBER:

(614) 365-4138
henry@carpenterlipps.com

November 17, 2011

Mary L. Swain
Butler County Clerk of Courts
315 High Street, Fifth Floor
Hamilton, OH 45011

Re:     State of Ohio v. Von Clark Davis
        Butler County Court of Common Pleas, Ohio
        Case No. CR-1983-12-0614

Dear Clerk of Courts:

Enclosed for filing in the above matter, please find Defendant-Petitioner's Unopposed Motion For Extension Of Time To File Reply Memorandum In Support Of Post-Conviction Petition, Motion For Leave Of Court To Conduct Discovery, And Motion For Recusal. Please return a time-stamped copy in the postage prepaid envelope enclosed.

Thank you for your assistance. Please call with any questions or concerns.

Very truly yours,

Erik P. Henry

Enclosure

cc:     Donald R. Caster, Esq. (w/enclosure)

050-384/300118

FILED

**IN THE COURT OF COMMON PLEAS**

2011 NOV 22 BUTLER COUNTY, OHIO

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| Plaintiff-Respondent, | : | |
| | : | Judge Nastoff |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

**ENTRY**

Upon consideration of Defendant-Petitioner's unopposed motion, and for good cause shown, the Court hereby grants Defendant-Petitioner's extension request. Defendant-Petitioner's reply memorandums to the State of Ohio's memorandums and motion filed November 10, 2011, shall be filed by December 7, 2011.

_____
Judge Nastoff

Respectfully submitted,

_____
Kort Gatterdam (0040434)

COUNSEL FOR DEFENDANT-PETITIONER

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

FILED

2011 NOV 29 PM 12: 45

BUTLER COUNTY
CLERK OF COUNTY
COURTS

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

### ENTRY

Upon consideration of Defendant-Petitioner's unopposed motion, and for good cause shown, the Court hereby grants Defendant-Petitioner's extension request. Defendant-Petitioner's reply memorandums to the State of Ohio's memorandums and motion filed November 10, 2011, shall be filed by December 7, 2011.

Judge Nastoff

Respectfully submitted,

Kort Gatterdam (0040434)

COUNSEL FOR DEFENDANT-PETITIONER

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

---

**DEFENDANT-PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR RECUSAL**

---

Defendant-Petitioner Von Clark Davis, through counsel, hereby submits this Reply Memorandum to Plaintiff-Respondent's Memorandum in Opposition to Defendant-Petitioner's Motion for Recusal.

At the outset, it should be noted that undersigned counsel did not file the recusal motion and raise the issue in the Post-Conviction Petition for purposes of "judge shopping" as the State suggests. (State's Memo p.4). Neither Mr. Gatterdam nor Mr. Henry have ever appeared in the Butler County Court of Common Pleas, nor are either familiar with or personally know any of the judges on the bench. Davis' counsel have the utmost respect for the judiciary generally and this Court specifically. Davis' counsel have a job to raise all issues, even those that may not be easy to address, on behalf of their client. Thus, the State is misplaced to suggest that Davis and his counsel were "judge shopping" in raising this issue.

Instead, when reviewing the record, it immediately became apparent to counsel and Davis' expert that at a minimum, there **appeared** to be bias, prejudice, or impropriety with this Court deciding Davis' ultimate fate. *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-

Ohio-7354, ¶ 10. Because of this concern, counsel deemed it necessary to raise the issue because these appearances of bias, prejudice, or impropriety should be avoided to protect the right to a fair trial. *Id.*; *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34.

This Court prosecuted a family member of Mr. Davis, not for OVI but for capital murder. This Court, to do its job effectively as a prosecutor, had to review the defense mitigation evidence and take issue with it. This Court had to attack and/or poke holes in the defense mitigation and argue for death. Then in 2009, this Court had to set all that aside and pretend it did not acquire information about Davis' family before. Now, this Court has to review all the issues raised in Davis' petition including whether this Court should have stayed on the case. To avoid the appearance of impropriety, particularly in deciding whether this Court should have stayed on the case, recusal is warranted.

The State relies upon *In re Disqualification of Hedric*, 127 Ohio St.3d 1227, 2009-Ohio-7208. (State's Memo p.2). However, *Hedric* is distinguishable from the instant case. In *Hedric*, the defendant was charged with felony OMVI, and the indictment alleged that the defendant had at least one other felony OMVI conviction and included a specification that the defendant had five or more prior OMVI convictions. *Id.* at ¶2. The defendant sought Judge Hedric's removal because while working as an assistant county prosecutor, Judge Hedric prosecuted one of the defendant's prior OMVI convictions. *Id.*

Importantly, when the defendant appeared before Judge Hedric, "he did not remember the defendant or his prior OMVI case." *Id.* at ¶8. By contrast, this Court acknowledged in open court remembering not only prosecuting Davis' nephew, but also arguing to the jury that the nephew should receive the death sentence. (Tr. Vol. II, p.131).

2

The decision in *Hedric* was not establishing a "rule" regarding disqualification. The Chief Justice did not say it would be inappropriate for disqualification, or a judge should not recuse, under circumstances similar to the instant case. The former Chief Justice has stated that "[t]he prior professional activities of a judge are not grounds for disqualification where the record fails to demonstrate the existence of a relationship or interest that clearly and adversely impacts on a party's ability to obtain a fair and impartial trial." *In re Disqualification of Cross* (1991), 74 Ohio St.3d 1228, 1228. Further, the Ohio Supreme Court has not found counsel ineffective for failing to object to a new judge/former prosecutor on a three-judge panel where the judge had no prior involvement with the case as a prosecutor. *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, ¶120.

However, the instant case is different because the record demonstrates a relationship that clearly and adversely impacted Davis' ability to obtain a fair and impartial trial. By being involved with the nephew's prosecution, this Court obtained knowledge of Davis' family and believed that Davis' nephew was a liar. (Exhibits M and N attached to Post-Conviction Petition). This Court also likely reviewed family mitigation in Thompson that would overlap in Davis' case. This is quite different than Judge Hedric's situation where he did not remember the defendant, or cases where the judge had no prior knowledge of the case despite working in the same prosecutor office.

Thus, to avoid even the appearance of bias, prejudice, or impropriety, and to ensure the unquestioned neutrality of an impartial judge to the parties, their counsel, and the public, this Court should not have been deciding Davis' fate and instead should have been removed from the case. It would be unfair to have this Court now rule on whether the Sixth Ground for Relief, or

3

any other grounds in the Post-Conviction Petition, should require a new penalty phase given the nature of the Sixth Ground. Death is different, for that reason, more process is due, not less.

Should this Court deny Davis' motion and remain on the case, then Davis respectfully requests that as part of the denial, it allow Davis and his counsel fourteen (14) days in which to file an affidavit with the Ohio Supreme Court per R.C. 2701.03.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
        henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Reply Memorandum in Support of Motion for Recusal was forwarded by first-class, postage prepaid U.S. Mail to Donald R. Caster, Assistant Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 6th day of December, 2011.

Kort Gatterdam

050-384-300172

4

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| **STATE OF OHIO,** | : | **Case No. CR-1983-12-0614** |
| | : | |
| **Plaintiff-Respondent,** | : | **Judge Nastoff** |
| | : | |
| **v.** | : | |
| | : | |
| **VON CLARK DAVIS,** | : | **CAPITAL CASE** |
| | : | |
| **Defendant-Petitioner.** | : | |

---

**DEFENDANT-PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE OF COURT TO CONDUCT DISCOVERY**

---

Defendant-Petitioner Von Clark Davis, through counsel, hereby submits this Reply
Memorandum to Plaintiff-Respondent's Memorandum in Opposition to Defendant-Petitioner's
Motion for Leave of Court to Conduct Discovery.

Ohio courts have held that "[w]hether discovery may be had on a postconviction claim is
a matter committed to the discretion of the trial court." *State v. Wiles* (1998), 126 Ohio App.3d
71, 79 (citing *State v. Smith* (1986), 30 Ohio App.3d 138). Post-conviction actions are civil
proceedings, and as such, the Ohio Rules of Civil Procedure apply. *State v. Milanovich*, 42 Ohio
St.2d 46, 49, 52 (1975) (Civil Rules of Procedure apply to summary judgment in post-conviction
actions). Davis, facing a death sentence, must at the very least possess the same rights as a
petitioner in any civil case, and this Court in its discretion can permit discovery.

Capital petitioners such as Davis face a serious dilemma under Ohio's post-conviction
scheme. The text of the statute provides that a petitioner must include affidavits or evidence
dehors the record in support of the claims in the petition. R.C. 2953.21(A). It is from the face of
the petition that a trial court must determine if a hearing is required. *State v. Jackson* (1980), 64

Ohio St.2d 107, 110. All this must be done without any benefit of the discovery processes available to **every** other civil litigant, without question. Should this Court deny Davis access to traditional civil tools of discovery, Ohio's post-conviction process would impose an impossible pleading standard on Davis and the process would be rendered meaningless.

The State takes the short sighted approach in its reply by criticizing Davis's citation to federal habeas corpus rules. (State's Reply at 2). Davis never said this Court **is** governed by those rules, but suggested that this Court consider how higher courts have addressed similar claims. Perhaps the State prefers more years of litigation and reversal for failure to accord Davis the rights the federal courts believe he must be accorded prior to imposition of the ultimate punishment.

The concern over Ohio's inadequate, excessively narrow, and ineffectual post-conviction scheme is shared by the Sixth Circuit Court of Appeals. *Keener v. Ridenour*, 594 F.2d 581, 590 (6th Cir. 1979). The basis for the Sixth Circuit's dissatisfaction with Ohio's lack of process can be traced to *State v. Perry* (1967), 10 Ohio St.2d 175. After the *Perry* decision, the Sixth Circuit immediately recognized that "[b]ecause of the narrow limits placed on the Ohio post-conviction statute, there is no longer any effective State remedy open to the Petitioner to exhaust. The *Perry* decision has rendered such process ineffective to protect the rights of the Appellant." *Coley v. Alvis* (6th Cir. 1967), 381 F.2d 870, 872; *accord Allen v. Perini* (6th Cir. 1970), 424 F.2d 134, 139–40.

Ohio has chosen to establish a post-conviction procedure to effectuate constitutional rights for those defendants sentenced to death. Assuming arguendo that these procedures do not emanate directly from clear constitutional provisions, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the

2

dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Evitts v. Lucey* (1985), 469 U.S. 387, 401. This is all the more so when a petitioner's "life" interest—protected by the "life, liberty and property" language in the Due Process Clause—is at stake in the proceeding. *Ohio Adult Parole Authority v. Woodard* (1998), 523 U.S. 272. Death is different; for that reason more process is due, not less. *Woodson v. North Carolina* (1976), 428 U.S. 280, 305. Ohio's procedures for post-conviction review at the trial court level must comport with the constitutional requirements of due process.

Davis' pursuit of discovery at this stage in the proceedings is even more important should his case ever reach federal court in a habeas corpus case. Under principles of comity and federalism, Ohio defendants such as Davis are required to provide the Ohio courts the first opportunity to correct federal constitutional violations. Recently, in *Cullen v. Pinholster* (2011), 131 S. Ct. 1388, the United States Supreme Court stated that in review habeas cases, the federal court is limited to the record that was before the state court when it adjudicated the claim on the merits. *Id.* at 1398. To effectuate this mandate, this Court must have before it all relevant evidence regarding Davis' claims. This means that discovery should be permitted, rather than wait until habeas review which does provide for discovery. *See* Rule 6, Rules Governing Section 2254 Cases in the United States District Courts ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."); *Bracy v. Gramley* (1997), 520 U.S. 899, 908–09.

The majority of Davis' post-conviction claims relate to his counsel's ineffectiveness. This will require this Court to "conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms,' which **includes** a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the

3

time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (quoting *Strickland*, 466 U.S. at 688) (emphasis added). The best source of evidence related to this time and context-dependent inquiry is from defense counsel. *See, e.g.*, Opinion and Order at 10–11, Marvin G. Johnson v. David Bobby, No. 2:08-cv-55 (S.D. Ohio Sept. 30, 2010). However, waiting until this case reaches habeas review to conduct depositions of defense counsel runs the risk of faded memories, which would hinder both parties' pursuit of justice. *Hickman v. Taylor* (1947), 329 U.S. 495, 507 ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

For all these reasons, and for all the reasons more fully stated in Davis' motion, this Court should grant Davis leave to conduct discovery.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
　　　　henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

4

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Reply Memorandum in Support of Motion for Leave of Court to Conduct Discovery was forwarded by first-class, postage prepaid U.S. Mail to Donald R. Caster, Assistant Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 6th day of December, 2011.

Kort Gatterdam

050-384-300320

5

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | EVIDENTIARY HEARING REQUESTED |

---

### DEFENDANT-PETITIONER VON CLARK DAVIS' MEMORANDUM IN OPPOSITION TO PLAINTIFF-RESPONDENT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

---

Defendant-Petitioner Von Clark Davis opposes the State's Motion to Dismiss or in the Alternative Motion for Summary Judgment regarding Davis' Post-Conviction Petition. For the reasons set forth in the following Memorandum in Opposition, and for the reasons more fully stated in the Post-Conviction Petition, this Court should deny the State's Motion and grant Davis a new sentencing hearing, or, in the alternative, discovery and an evidentiary hearing on his grounds for relief.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
            henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

**MEMORANDUM IN OPPOSITION**

### I.  <u>Introduction</u>

On December 19, 2007, to comply with granting of a conditional writ of habeas corpus in *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761, this Court granted Defendant-Petitioner Von Clark Davis a new sentencing hearing.  A resentencing hearing was conducted before this Court from September 8, 2009 through September 10, 2009.  At the conclusion of the resentencing hearing, on September 10, 2009, this Court along with two other judges resentenced Davis to death.  The sentencing opinion was filed on September 21, 2009.

On October 21, 2011, Davis filed a Post-Conviction Petition pursuant to R.C. 2953.31. Davis concurrently filed a discovery motion and a recusal motion.  On November 10, 2011, the State filed a Motion to Dismiss or in the Alternative for Summary judgment regarding the post-conviction petition, and also filed memorandums in opposition to Davis' other two motions. After receiving one extension, Davis now submits this Memorandum in Opposition to the State's Motion to Dismiss or in the Alternative for Summary Judgment.

### II.  <u>The Post-Conviction Pleading Standard</u>

#### a.  Petitioner has a right to an evidentiary hearing.

Any person convicted of a criminal offense in Ohio whose rights have been infringed in violation of the Ohio or U.S. Constitution may seek relief under the Ohio post-conviction statutes.  The duty "to search for constitutional error with painstaking case is never more exacting than it is in a capital case." *Kyles v. Whitely* (1995), 514 U.S. 419, 422 (quoting *Burger v. Kemp* (1987), 483 U.S. 776, 785).

The statute further directs that a hearing shall be held "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief." R.C. 2953.21(E).  The plain

2

language of the statute creates a presumption in favor of a hearing in this case and against dismissal or summary judgment for the State. Davis is not required to prove his claims and prejudice based solely on his petition, and to adopt such a position simply reads the evidentiary hearing provision out of the statute. While the petitioner is required to raise sufficient operative facts demonstrating prejudice, an evidentiary hearing, with proper discovery, is the proper forum for Davis to prove prejudice. *State v. Jackson* (1980), 64 Ohio St.2d 107, 110.

Therefore, Davis is entitled to a full and fair hearing on the merits of the grounds for relief presented in his petition.

### b. The doctrine of res judicata does not bar Davis' grounds for relief.

The Ohio Supreme Court has recognized several situations in which the doctrine of res judicata does not apply. Under Ohio law, "evidence dehors the record" must demonstrate that the grounds for relief raised in the post-conviction petition could not have been raised on appeal based on the information in the original record. *State v. Perry* (1967), 10 Ohio St.2d 175, at paragraph nine of the syllabus. The evidence submitted with the petition must be competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial. *State v. Combs* (1994), 100 Ohio App.3d 90, 97–99.

Many of Davis' grounds for relief are based solely on evidence dehors the record, and thus, are not barred by res judicata. The remainder of Davis' grounds arise, in part, from the face of the trial court record, but are dependent upon credible evidence dehors the trial record. If the post-conviction issue is supported by evidence outside the record, as well as evidence which appears in the record, the issue is not subject to the doctrine of res judicata. *State v. Smith* (1985), 17 Ohio St.3d 98, 101 n.1; *State v. Milanovich* (1975), 42 Ohio St.2d 46, 50. When evidence is outside the record, it could not have been raised by counsel on direct appeal. *State v.*

3

*Ishmail*, 54 Ohio St.2d 402, 406 (A reviewing court cannot add matter to record before it, which was not a part of trial court's proceedings.).

The petition and attached documentation contain specific "factual allegations that cannot be determined by an examination of the files and records of the case," which is the precise definition and requirement for evidence dehors the records. *State v. McNeill* (2000), 137 Ohio App.3d 34, 41. Davis offered sufficient affidavits and evidence to support his claims, thus, an evidentiary hearing is now the proper forum to evaluate that evidence.

### c. The State is not entitled to dismissal or in the alternative summary judgment.

Post-conviction actions are civil proceedings and the Ohio Rules of Civil Procedure apply. The State cited two civil rules, failure to state a claim and summary judgment, in arguing Davis' Post-Conviction Petition should be dismissed. Under either standard, Davis has met his burden and relief is warranted.

Ohio R. Civ. P. 12(B)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. For the moving party to prevail, "it must appear beyond doubt from the complaint that the plaintiff can prove not set of facts entitling relief." *Marchetti v. Blankenburg*, Butler App. No. CA2010-09-232, 2011-Ohio-2212, ¶9 (citation omitted). Thus, "'as long as there is a set of facts, consistent with the plaintiffs complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Id.* (quoting *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 145).

Davis presented nine grounds for relief in his petition. As detailed below and more fully in his petition, Davis' presented meritorious claims. At a minimum, it is not "beyond doubt" that Davis is not entitled to relief. Accordingly, the State's motion to dismiss for failure to state a claim must be denied.

4

In considering a motion for summary judgment, this Court must strictly adhere to the provisions of Ohio R. Civ. P. 56. *Milanovich*, 42 Ohio St.2d at 52. There must be no dispute over the facts or the applicable law for a party to be entitled to summary judgment. Each ground for relief must be considered separately, i.e., a party may be entitled to summary judgment on one ground for relief or all of them. Ohio R. Civ. P. 56(D). Most importantly, the nonmoving party is entitled to have the evidence construed most strongly in its favor. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295.

The Ohio Supreme Court has made it clear that a party seeking summary judgment cannot succeed merely on conclusory allegations:

> [T]he moving party must be able to specifically point to some evidence of the type listed in Ohio R. Civ. P. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.

*Id.* at 293. The State offers no evidence in support of its motion for summary judgment and this, on its face requires its motion to be denied. Additionally, for the reasons stated below, there are fact disputes with each of Davis's grounds for relief and drawn in the light most favorable to Davis, the State is not entitled to summary judgment as a matter of law.

### d. Claims of ineffective assistance of counsel are properly raised in post-conviction.

A post-conviction proceeding is the proper forum for considering trial counsel's ineffective assistance based on evidence de hors the record. *State v. Madrigal* (2000), 76 Ohio St.3d 378, 391. Such grounds, by their very nature require "proof outside the record, such as affidavits demonstrating a lack of effort to contact witnesses or the availability of additional mitigating evidence." *State v. Keith* (1997), 79 Ohio St.3d 514, 537. Specifically, the State contends that the Third and Sixth grounds for relief are barred by res judicata. However, these

5

claims are supported by credible evidence dehors the record, and are therefore not barred by res judicata.

The Ohio Supreme Court has consistently recognized that when the ineffectiveness claim involves a component alleging the failure to conduct a reasonable investigation, then the ineffectiveness claim should be brought in post-conviction. *Madrigal*, 87 Ohio St.3d at 390–91. "The introduction in a post-conviction petition of evidence dehors the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata." *State v. Cole* (1982), 2 Ohio St.3d 112, 114. Courts cannot divide ineffectiveness claims between direct appeal and post-conviction. To properly resolve an ineffectiveness claim a court must consider "all circumstances." *Strickland v. Washington* (1984), 466 U.S. 668, 689.

The Ohio Supreme Court has also assured defendants that trial ineffectiveness issues could be raised and are not barred by procedural default in post-conviction actions, so long as the issue has not actually been raised and adjudicated on direct appeal. *State v. Cooperrider* (1984), 4 Ohio St.3d 226, 228–29. In addition, a claim based upon the affidavit testimony of an expert who was not called at trial must be raised in post-conviction because a direct appeal court, absent speculation, has "no way of knowing, what if anything the expert testimony would have demonstrated." *State v. Carter* (2000), 89 Ohio St.3d 593, 606.

6

III.    **Grounds for Relief**

    a.  **First and Second Grounds for Relief**[1]

Davis' first two grounds are separate, ground one focusing on the failure to investigate and call prison guards and/or prison staff in support of Davis' excellent conduct in prison. The second ground focuses on the failure to present prison records evidence in support of Davis' good conduct. Because the State essentially merged the issues in its response, Davis will address the issues together.

The weakness of the State's response to the first claim is obvious. At no point does the State attempt to address the Sixth Circuit's opinion in *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761. The Sixth Circuit laid out evidence that existed and which the judges of the Sixth Circuit believed should have been allowed to be admitted into evidence. *Id.* at 773. The evidence was both admissible and persuasive. The utter failure on the part of defense counsel to even consider evidence that three neutral judges found admissible and persuasive is inexcusable.

The State discusses strategic decisions. Strategic decisions imply that the person investigated the information and then made a voluntary choice not to use it. *Combs v. Coyle* (6th Cir. 2000), 205 F.3d 269, 288. That is **not** what happened here. Davis discussed with his attorneys how guards and case managers had seen his good behavior since 1984, but his attorneys never asked for names of those personnel to even consider having them testify or to interview them about testifying. Ex. B, Affidavit of Von Clark Davis.[2] Davis obviously knew the names of numerous potential witnesses as evidenced by the proffer offered by Davis' former

---

    [1]    The State alleges that seven of Davis's grounds relate to the 2007 re-sentencing hearing. (State's Mot. at 10). Davis will assume this was a typographical error as the re-sentencing hearing was held in 2009, not 2007.
    [2]    The cites to Exhibits in this Memorandum refers to those Exhibits attached to Davis' Post-Conviction Petition.

attorneys in 1989. Ex. A, 8/4/1989 Transcript pages 1–5. One cannot make a strategic decision when one ignores helpful mitigation evidence and refuses to even consider it. That is ineffective assistance of counsel.

The State never explains why the guards and other prison personnel would not have been helpful in Davis's mitigation. Nor does the State explain any reasonable tactical decision in not presenting said evidence. The State does not submit any evidence from defense counsel that they did investigate the evidence and then chose not to use it, which suggests said evidence does not exist.

The State claims Davis has argued that trial counsel "did not discover" his prison unit file. (State's Mot. at 11). Davis has made no such claim whatsoever. In fact, the opposite is true. Davis has claimed that counsel were ineffective because they **had the prison file and failed to introduce anything from it** except an institutional summary. A review of the first two claims made by Davis shows the State's position is unsupported by the record.

The State is in error in claiming that the affidavit of Diane Menashe has zero probative value because she did not have trial counsel's file. (State's Mot. at 11). As part of her review, Ms. Menashe had the exhibits attached to the Post-Conviction Petition (which trial counsel had) and could easily see how mitigating they are. Ex. D, Affidavit of Diane Menashe, ¶6. Moreover, she has opined how important demonstrative evidence is for the trier of fact. *Id.* ¶11. Thus, she has reviewed evidence that was in possession of trial counsel and sees no valid strategic reason for refusing to use the evidence at the re-sentencing hearing; therefore, her opinion is probative.

In its Motion, the State did not introduce any negative prison records. That is because said records do not exist. If they had, presumably the State would have cross-examined Scott

8

Nowak at trial about the records when he testified to the institutional summary. Much like most of the State's response, it relies on suppositions and assumptions instead of facts. Depositions and an evidentiary hearing are even more necessary upon review of the State's Motion.

Davis had an excellent prison record and had made a favorable impression on guards and staff alike. When the three judge panel was faced with the decision of whether Davis should live or die, presumably the panel was concerned with how he would behave if paroled. Hearing from those that dealt with him and wrote things about him over the last 25 years would be the best evidence that Davis should receive a life sentence. Defense counsel however, completely ignored both testimonial and demonstrative evidence despite all but being spoon fed the evidence by the Sixth Circuit Court of Appeals.

The State's argument that trial counsel "apparently decided to limit the number of witnesses to discuss this issue" (prison record and accomplishments) again relies on speculation without any evidence. (State's Mot. at 13).[3] More importantly, there was no decision made to limit the witnesses; **no other witnesses were considered.** Again, investigating and interviewing witnesses and then deciding whether to call them is one thing, but that is not what happened here. Trial counsel ignored mitigating evidence. Davis was in prison for over 25 years when the re-sentencing hearing began. No records but a two page summary and an alcoholic anonymous witness were presented.[4] The failure to present the testimony and records prejudiced Davis. It strains credibility to argue that the only thing that was worthy of presenting on his behalf for

---

[3]  Permitting discovery, including depositions of trial counsel would answer this and other questions and make the record clear.

[4]  The testimony of Jerome Stineman harmed Davis when it was pointed out in cross-examination that what he testified to was inconsistent with what Davis previously said and when Stineman could no longer remember what Davis had said to him. (Tr. Vo. II, p.195).

9

over 25 years was a two page summary. The Sixth Circuit was not fooled by the State's argument, and this Court should not be either.

### b. Third Ground for Relief

The State first argues the claim is barred by res judicata. (State's Mot. at 14). The claim is not barred by res judicata because there is credible off the record evidence from Mr. Davis, Cynthia Mausser, and Davis's expert, Diane Menashe.

Counsel on direct appeal could not raise the issues raised in Ms. Mausser's affidavit because what she told trial counsel or what trial counsel told her was not on the record at trial, nor could it have been. This involved private discussions between trial counsel and their witness. Moreover, Davis' protestations about using Ms. Mausser could not have been raised on direct appeal because it too involves conversations between Davis, his attorneys, and his mitigation specialist. Finally, until reviewing the explanations in Ms. Mausser's affidavit, Ms. Menashe could not give a complete expert opinion on trial counsel's ineffectiveness in raising the issue. Moreover, even if she could have given an opinion, her opinion would have been inadmissible on direct appeal as it was not part of the trial record.

The State's argument that nothing in Davis's argument requires the Court to consider evidence dehors the record is simply wrong. (State's Mot. at 14). This Court has to consider the attached affidavits in conjunction with the testimony to make a reasoned decision on whether trial counsel were ineffective. Ignoring the evidence dehors the record would be tantamount to failing to fairly consider the claim.

The State then makes the unsupported argument that Ms. Mausser's affidavit has no bearing on the ineffective assistance of counsel claim because the affidavit is simply descriptive of the trial transcript. (State's Mot. at 15). How trial counsel came to a decision to call Ms.

10

Mausser and whether it was a strategic decision or not is not apparent from the record. Post-conviction review is necessary because the on the record statements by trial counsel are simply untrue. Evaluating defense counsel's decision to call Ms. Mausser **must** be based on what she has said in her affidavit regarding what she did and did not tell defense counsel prior to trial. Upon reading her affidavit, it is immediately apparent that there was no valid strategy in calling Ms. Mausser.

At trial, trial counsel said on the record that he spoke to Ms. Mausser and she said Davis would never be paroled. (Tr. Vol. II, p.140). Trial counsel said if she did not testify to that, he would be surprised and would suffer affirmative damage as a result. (Tr. Vol. II, p.137). Mausser made no such promises. Ex. F, Affidavit of Cynthia Mausser. Thus, the strategic decision to call Ms. Mausser must be evaluated in light of this evidence, not available at the time of trial. Expert Diane Menashe has opined that given this state of the evidence, the decision to call Ms. Mausser was ineffective assistance of counsel. Ex. D, Affidavit of Diane Menashe. Moreover, trial counsel should not promise the trier of fact that a witness will testify to something that they will not testify to.

The State then concludes that Ms. Mausser provided the panel "some assurance" that if the panel gave Davis a life sentence, Davis was unlikely to be paroled immediately after the expiration of thirty years. (State's Mot. at 15). Ms. Mausser provided **no** such assurance. In fact, to the contrary, she stated she could not predict what would happen at Davis's parole hearing. (Tr. Vol. II, p.188). She said she could not speak for other parole board members and how they would vote. (*Id.* at 184). She said she had not been provided the entire packet of information she needed by counsel to even give the panel an idea of how she might vote. (*Id.* at 181–84). It is odd indeed that the State now makes this argument when it argued at the hearing

11

that Ms. Mausser's testimony was total speculation and that she gave no assurance that Davis would be kept in prison for life. (See State's rebuttal closing, Tr. Vol. III, p.355–63).

The State's final argument is that Davis cannot show prejudice. (State's Mot. at 15). The evidence the State uses to support its argument is that the panel gave Ms. Mausser's testimony no weight. (*Id.*). The panel's opinion is hardly a ringing endorsement of counsel's decision to call her. In addition, the panel did note that Ms. Mausser could not state with certainty whether Davis would be paroled, thus supporting Davis's argument that her testimony was actually used against him instead of in his favor.

Moreover, the State misses the point. Trial counsel thought Ms. Mausser would testify or guarantee that Davis would not get paroled. (Tr. Vol. I, p.36–38; Vol. II, p.137, 140). If she would have told counsel that she would testify that way, that may have been trial strategy in presenting her testimony. However, her affidavit proves she did not tell trial counsel that. Ex. F, Affidavit of Cynthia Mausser. But worse than that, Ms. Mausser helped the panel give Davis a death sentence. Her testimony solidified the State's argument that Davis could get paroled at some point and therefore, a death sentence was the only way to ensure he would not be paroled. Trial counsel was ineffective for putting on a witness that helped their client receive a death sentence.

### c. Fourth Ground for Relief

The State criticizes Dr. Smith for not giving an opinion on Davis's likelihood of recidivism in his affidavit. (State's Mot. at 17). The State obviously has not reviewed paragraph 12 of Dr. Smith's affidavit very closely. There, Dr. Smith details the changes in Davis over the last 25 years, which suggest he would be a much better candidate for release than when this crime was committed. Ex. I, Affidavit of Dr. Bob Smith, ¶12. Moreover, in paragraph 13, Dr.

12

Smith opines that the structure of the parole process itself would "assist him in successfully re-entering society." *Id.* ¶13.[5]

The State again misses the point. The point is that Dr. Smith was not prepared by trial counsel to address the most critical issue in the case: what happens if Davis is paroled. Had he been prepared to discuss that issue, he could have assisted in Davis's defense. Instead, he testified to who Davis was over 25 years ago and how the disease he suffers from is mitigated by being in a structured environment. That testimony not only ignored that Davis might not be in a structured environment in the future, but also ignored how he is today. Defense counsel completely missed the boat in presenting this testimony. Combining Dr. Smith's "structured environment" testimony with Cindy Mausser's "no guarantee he won't be released" testimony and it is clear the defense witnesses aided obtaining a death sentence.

The State argues that Dr. Smith could not have altered his diagnosis. (State's Mot. at 17). Nobody asked him to do so. The question is whether trial counsel were ineffective in presenting the testimony knowing it would harm the defense's case. Moreover, had trial counsel spent sufficient time with Dr. Smith, they would have learned that he could have addressed the most critical issue in the case of what would happen if Davis were paroled. Attorneys cannot make strategic decisions when they do not investigate and learn of evidence that would impact those decisions.

The State argues that even if Dr. Smith could have testified Davis is a different person, it would have been duplicative of other evidence placed before the Court. (State's Mot. at 17). There were no other experts to testify for either side, meaning Dr. Smith's testimony was not

---

[5]   The State's argument adds further support to the need for depositions of both trial counsel and Dr. Smith to determine their level of questioning and preparation of Dr. Smith as well as what information was not asked of him which would have aided in Davis's defense.

13

duplicative. Not one witness testified, from a psychological perspective, how Davis would likely handle life on the outside if paroled again. Again, this was the critical issue in the case since if a 30 to life sentence was imposed, Davis would have been eligible for parole in approximately 6 years.

Presenting an expert in psychological disorders should carry far greater weight than a pen pal who had been writing Davis over the years, as suggested by the State's argument. Finally, an expert traditionally puts all the lay witness testimony together and gives a psychological opinion as to what all the lay testimony and evidence means. Since defense counsel never bothered to inquire of Dr. Smith, they were unaware that Dr. Smith could have actually helped instead of harmed Davis's case.

The State disputes the effect the psychological testimony had on the second panel. (State's Mot. at 18). Davis never argued, contrary to the State's claim, that the panel used it as "an aggravating factor." (*Id.*). He argued, as with several issues presented by trial counsel, that the testimony the defense presented actually harmed instead of helped their client.

Here, a simple review of the 1989 panel's opinion would have given trial counsel a glimpse of how another panel considered the same psychological evidence. The panel did not call it aggravating but it did say "Defendant's explosive personality disorder, which we found may have contributed to the violence in the case at bar, may explain it but in no way excuses it, and is not of such a nature as would have any great mitigating effect." Ex. K, 8/10/1989 Sentencing Opinion, p.2. Thus, the panel used the psychological evidence against Davis which trial counsel should have considered here.

At the very least, trial counsel should have examined the second panel's opinion with Dr. Smith so he could have provided the testimony given in his affidavit attached to Davis's current

14

Post-Conviction Petition. Ex. I, Affidavit of Dr. Bob Smith. This would have been helpful, not harmful to Davis's case. Trial counsel is under no duty to present psychological testimony and should not do so if it will not help their client.

The State's final point is that Dr. Smith needed to testify to for the court to consider 2929.04(B)(3), the mental disease or defect mitigating factor. (State's Mot. at 18). The State misstates the record. At the final status conference, the defense stated the only mitigating factor they requested that the court consider was 2929.04(B)(7), the catchall factor. (9/3/2009 Status Conference Transcript, p.8). Neither in opening nor in closing did the defense argue mental disease or defect. In fact, this Court asked the defense which factors it was relying on and trial counsel did not state that they were requesting that the Court consider the (B)(3) mitigating factor.

A court is under no duty to consider mitigating factors not presented or argued and if it were a jury trial, should not instruct on factors not presented. To do so could cause the trier of fact to hold it against the defense for not presenting a certain mitigating factor. The defense is under no duty to present the testimony of a psychologist and if a decision is made to call said expert, it should not be done based on a strategy that only aided the trier of fact in imposing a death sentence, as occurred here.

### d. Fifth Ground for Relief

The State argues that the affidavit evidence that was not admitted was of little probative value. (State's Mot. at 18–19). That is for the trier of fact, not the State to decide. Due to trial counsel's failures, the trier of fact never had an opportunity to make the decision the State is now unilaterally opining about. A review of the affidavits suggests the State's opinions are off base.

15

Evidence from Davis' paternal aunt, Elizabeth Crawford, would have provided the panel with information about Davis' father, who died in December 1974. This evidence includes how Davis' father had a temper growing up, left school in the ninth grade, frequently "got into it" with Davis' mother Alluster, and was a heavy drinker but never sought professional help. Ex. L, Elizabeth Crawford write-up. The evidence also details the circumstances surrounding Davis' father leaving Davis and the rest of the family. *Id.* No other witness who testified could have provided this perspective of Davis' father.

The evidence from family friend, Milton Flowers, was also significant. Mr. Flowers was a neighbor of Davis' grandmother and had known Davis' mother since she was a baby. Ex. L, Affidavit of Milton Flowers. He recalled how Davis' grandmother had a violent character and was abusive, and how Davis' mother adopted this violent temper and got into numerous fights. *Id.* Mr. Flowers also saw how after Davis' parents separated, there were numerous men in and out of Alluster's life, leading to a poor quality of care for Davis and his siblings. *Id.* Mr. Flowers opined that the outbursts he saw from Davis were like those of his grandmother and mother. *Id.* The trier of fact should have heard this information to explain Davis' personality, and this information was not available from the witnesses who testified.

Fannie Whiteside, Davis' maternal great aunt, believed that Davis was told that the person everyone assumed was his father, Nicholas Davis, may not have been. Ex. L, Fannie Whiteside write-up. Ms. Whiteside also could have offered information on how Davis' mother was raised. *Id.*

The Charles Flowers testimony was particularly important and the State unwittingly supports the argument in their Motion. The State suggests since other family members did not testify to the whipping, perhaps Charles Flowers was not telling the truth. (State's Mot. at 20).

16

Or perhaps Charles Flowers was telling the truth and other family members were hiding that fact in an effort to protect family members, or to not appear to have condoned such activity. Charles Flowers' information would have been very important for the trier of fact to hear.

The State also fails to realize that how Davis's family members were raised ultimately impacted Davis either directly or indirectly. Knowing the type of life his parents, aunts, uncles and others had is critical for a trier of fact. The sum total of the family picture may have been enough to convince even one member of the panel that the single aggravating factor did not outweigh the mitigating factors beyond a reasonable doubt.

Finally, it is worth noting the State does not address the fact that trial counsel apparently did not understand the evidence was admissible. After initially claiming to be calling John Lee "next" (Tr. Vol. I, p.65), defense counsel failed to call Mr. Lee and equally important, failed to even attempt to introduce the affidavits as evidence or argue for their admission. There can be no strategic reason for this, particularly when defense counsel had just stated in open court his intent to introduce the evidence and had the affidavits marked as exhibits.

### e. Sixth ground for relief

The State argues that this issue is foreclosed by the doctrine of res judicata. (State's Mot. at 20-21). The affidavit of Von Clark Davis is evidence de hors the record. After Judge Nasthoff disclosed the potential conflict, trial counsel said they were aware of it and chose not to seek recusal. (Tr. Vo. II, p.131– 32). What is de hors the record is that Davis was not aware of the issue, was not consulted on the issue, and would not have consented to keeping Judge Nasthoff on the case had he been made aware prior to trial. The issue could not be litigated on appeal given this evidence.

17

Moreover, the affidavit of Diane Menashe could not have been considered on appeal and this too necessitates post conviction to resolve the issue. Post conviction is also the only appropriate forum because a hearing is necessary to determine what, if any, strategic reason was behind trial counsels' decision or what went into making the decision not to seek recusal.

The State suggests trial counsel was not required to file a frivolous motion. (State's Mot. at 21). Asking to remove a judge who sought death of your client's family is not frivolous; it is part of defense counsel's duty. Davis incorporates by reference the reasons why this Court should not have remained on this case from the Post-Conviction Petition and supporting affidavits and will not repeat them here. In addition, Davis incorporates his arguments in his motion for recusal and reply to the State's response to Davis's motion for recusal.

Judges are to avoid even the appearance of impropriety. Having asked a jury to impose death on a family member, having called a family member of Davis' a liar, and then being asked to forget all that and pretend that he knew nothing about the Davis family is too much to ask. Shame on the State for comparing this to a case where a judge prosecuted someone for an OVI and purported concern over judges having to recuse themselves too much if Davis's argument is sustained. A man's life is on the line here. Death is different, for that reason more process is due, not less. *Woodson v. North Carolina* (1976), 428 U.S. 280.

### f. Seventh Ground for Relief

The State erroneously claims Davis was not prejudiced by trial counsel misinforming him that life without the possibility of parole was a sentencing option. (State's Mot. at 23). Davis was on trial for his life, and therefore should have been fully informed as to the consequences of the sentencing hearing. Davis's approach to the hearing and his ability to offer assistance to his counsel were affected by his counsel's wrong advice.

18

Furthermore, the misinformation shows, along with the other remaining assignments of error, the problems with defense counsel's effort in this case. How can counsel be effective when counsel is not even aware of the potential punishments their client faces? This error further exacerbates counsel's deficient performance, which certainly prejudiced Davis. *See also United States v. Barnett* (6th Cir. 2005), 398 F.3d 516, 526 (recognizing how some errors do affect the outcome of the proceedings, but the nature of the errors makes it exceptionally difficult to demonstrate prejudice).

### g. Eighth Ground for Relief

The State claims Davis' Eighth Ground for Relief is time barred because it was not filed before September 21, 1996. However, the State is mistaken.

In the evidence presented dehors the record, Davis explained that the consequences of the jury waiver were never fully explained to him. Ex. B, Affidavit of Von Clark Davis, ¶9. In other words, Davis did not knowingly and intelligently waive his right to a jury because the consequences of that waiver were never made clear to him. It follows then that upon his third resentencing, Davis was unaware that his request to remove the jury waiver would be denied, even after the Sixth Circuit Court of Appeals offered a viable solution. *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761, 780–81.

Because this error manifested itself during his third sentencing hearing, the natural place to raise the issue with evidence dehors the record is the Post-Conviction Petition stemming from that hearing. The State does not argue that Davis' Post-Conviction Petition filed October 21, 2011, was untimely. Therefore, because Davis' Eighth Ground for Relief was raised in a timely Post-Conviction Petition stemming from his third sentencing hearing, it is not time barred.

19

Furthermore, Davis cited *Padilla v. Kentucky* (2010), 130 S. Ct. 1382, in his Petition. Petition ¶109. In *Padilla*, the United States Supreme Court recognized that a defendant must be advised of the collateral consequences of a plea. Davis submits that even if the State is correct that this Court must look to R.C. 2953.23, the *Padilla* decision should apply retroactively to him.

### h. Ninth Ground for Relief

The State first argues that Davis' Ninth Ground for Relief is barred by res judicata. (State's Mot. at 25). The State is completely mistaken. Davis could not raise this issue on direct appeal because the issue was not, and more importantly could not have been, raised during the resentencing hearing. The essence of R.C. 2953.21 is to allow petitioners to file petitions **post** conviction. How could Davis challenge the post-conviction procedures in Ohio when he had not yet had an opportunity to file a petition? The State offers no sensible answer to this question, meaning Davis' claim is not barred by res judicata.

The State also contends that Davis' claim lacks merit. (State's Motion at 25–26). Again, the state is wrong for the reasons more fully stated in Davis' Ninth Ground for Relief.

### IV.     Conclusion

Davis' Post-Conviction Petition raises constitutional violations that occurred at his sentencing hearing, and is supported by evidence dehors the record that provides sufficient operative facts to warrant relief. Davis requests that the State's Motion be denied, and that this Court grant Davis a new sentencing hearing, or, in the alternative, discovery and an evidentiary hearing.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP

20

280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
       henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Memorandum in Opposition to Plaintiff-Respondent's Motion to Dismiss or in the Alternative for Summary Judgment was forwarded by first-class, postage prepaid U.S. Mail to Donald R. Caster, Assistant Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 6th day of December, 2011.

                                 _____
                                 Kort Gatterdam

050-384-300324

21

FILED

2012 JAN -6 PM 2: 51

BUTLER COUNTY
CLERK OF COURTS

## COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

STATE OF OHIO,               \*       Case Number: CR 1983 12 0614

                                     \*

                                       \*

         Plaintiff-Respondent,     \*       Judge Andrew Nastoff

                                       \*

vs.                              \*

                                     \*       **ORDER DENYING**

                                     \*       **DEFENDANT'S MOTION**

VON CLARK DAVIS,           \*       **FOR RECUSAL**

                                     \*

                                     \*

         Defendant-Petitioner.      \*

                                     \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

      This matter is before the Court upon Defendant's motion for recusal, filed December 7, 2011. After carefully considering the Defendant's basis for recusal, relevant Ohio case law, and the Code of Judicial Conduct, the Court finds that the Defendant's motion is not well taken. Defendant's motion for recusal is **DENIED**. The Court is aware that additional motions remain pending in this matter; specifically, Defendant-Petitioner's motion for leave to conduct discovery and Plaintiff-Respondent's motion for summary judgment. The Court will issue rulings on each motion forthwith.

      **SO ORDERED,**

                                         Andrew Nastoff, Judge

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

1

cc:

Kort Gatterdam
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
*Counsel for Defendant-Petitioner*

Donald R. Caster
Assistant Butler County Prosecuting Attorney
315 High Street, 11th Floor
Hamilton, Ohio 45011

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

2

**12AP004**

FILED

**IN THE SUPREME COURT OF OHIO**

2012 JAN 13 AM 11: 56

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

FILED

JAN 10 2012

**CLERK OF COURT
SUPREME COURT OF OHIO**

**STATE OF OHIO,**                      Case No.

    **Plaintiff-Respondent,**          :

                                   :

         **v.**                           :     **Butler County Case No. CR-1983-12-0614**

                                   :

**VON CLARK DAVIS,**                    :

    **Defendant-Petitioner.**           :     **CAPITAL CASE**

---

### DEFENDANT-PETITIONER VON CLARK DAVIS' APPLICATION FOR DISQUALIFICATION OF BUTLER COUNTY COMMON PLEAS COURT JUDGE DANIEL ANDREW NASTOFF

---

Defendant-Petitioner, Von Clark Davis, pursuant to Ohio Const. Art. IV, § 5 and R.C. 2701.03, requests that the Chief Justice of the Ohio Supreme Court, or her designee, disqualify Butler County Common Pleas Court Judge Daniel Andrew Nastoff from further consideration of his post-conviction petition and related motions for the reasons more fully set forth in the accompanying affidavit of counsel.

Kort Gatterdam (0040434)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

Donald R. Caster (0077413)
Assistant Butler County Prosecuting Attorney
Butler County Prosecutor's Office
315 High Street, 11th Floor
Hamilton, Ohio 45011
Telephone: (513) 887-3474
Facsimile: (513) 887-3489

COUNSEL FOR PLAINTIFF-RESPONDENT

SUPREME COURT OF OHIO
LEGAL RESOURCES

JAN 10 2012

**RECEIVED**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of January, 2012, a true copy of the foregoing

Application for Disqualification of Butler County Common Pleas Court Judge Daniel Andrew

Nastoff was forwarded by first-class, postage prepaid U.S. Mail to:

Donald R. Caster
Assistant Butler County Prosecuting Attorney
315 High Street, 11th Floor
Hamilton, Ohio 45011

Hon. Daniel Andrew Nastoff
Butler County Common Pleas Court
315 High Street
Hamilton, Ohio 45011

_____
Kort Gatterdam

# IN THE SUPREME COURT OF OHIO

FILED BUTLER CO.
COURT OF COMMON PLEAS

JAN 13 2012

MARY L. SWAIN
CLERK OF COURTS

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | Case No. |
|  | : |  |
| Plaintiff-Respondent, | : |  |
|  | : |  |
| v. | : | Butler County Case No. CR-1983-12-0614 |
|  | : |  |
| VON CLARK DAVIS, | : |  |
|  | : |  |
| Defendant-Petitioner. | : | CAPITAL CASE |

## AFFIDAVIT OF KORT GATTERDAM

| County of Franklin | ) |
|---|---|
|  | ) ss: |
| State of Ohio | ) |

I, Kort Gatterdam, being duly sworn, swear that the following is true:

1. I am at attorney with Carpenter Lipps & Leland LLP with offices at 280 Plaza, Suite 1300, 280 North High Street, Columbus, Ohio 43215, and I along with Erik P. Henry represent Defendant-Petitioner Von Clark Davis ("Davis") in post-conviction proceedings.

2. To comply with the granting of a conditional writ of habeas corpus in *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007), a resentencing hearing was conducted before a three-judge panel of the Butler County Common Pleas Court from September 8, 2009 through September 10, 2009 regarding Davis in case number CR-1983-12-0614. At the conclusion of the resentencing hearing, on September 10, 2009, the panel resentenced Davis to death. The sentencing opinion was filed on September 21, 2009.

3. The Hon. Daniel Andrew Nastoff was the presiding judge for the proceedings and part of the panel which sentenced Davis to death. Prior to becoming a judge with the Butler County Common Pleas Court, Judge Nastoff worked with the Butler County Prosecutor's Office.

4. Currently pending before Judge Nastoff is a post-conviction petition filed by Davis on October 21, 2011. Also pending is Davis' motion for leave to conduct discovery and the State of Ohio's motion to dismiss or in the alternative for summary judgment.

5. There is no hearing currently scheduled in this matter.

6. In Davis' post-conviction petition, in the Sixth Ground for Relief, he alleged that his trial counsel provided ineffective assistance for not seeking the recusal of Judge Nastoff. Davis contended that because Judge Nastoff served as a prosecutor in the death penalty case of Davis' nephew, and advocated for Davis' nephew's death, Davis' trial counsel were ineffective for failing to seek the removal of Judge Nastoff. Exhibit 1 and Exhibit 3 attached to this affidavit contain the arguments and evidence in support of Davis' claim and are hereby incorporated by reference and will not be repeated.

7. Davis concurrently filed a motion for recusal based on the same reasoning as the Sixth Ground for Relief. (Exhibit 1, Motion for Recusal). Davis believed it would be unfair to have Judge Nastoff now rule on whether the Sixth Ground, or any other ground, in the post-conviction petition should require a new penalty phase given the nature of the Sixth Ground. Exhibit 1 and Exhibit 3 attached to this affidavit contain the arguments and evidence in support of Davis' claim and are hereby incorporated by reference and will not be repeated.

8. On November 10, 2011, the State of Ohio filed a memorandum in opposition to Davis' recusal motion (Exhibit 2, Memorandum in Opposition), to which Davis filed a reply on December 7, 2011. (Exhibit 3, Reply Memorandum in Support).

9. On January 6, 2012, Judge Nastoff denied Davis' motion for recusal and intends to issue rulings on Davis' petition and discovery motion "forthwith." (Exhibit 4, Order).

2

10. Incorporating by reference Exhibit 1 and Exhibit 3 and all arguments and attachments within those exhibits, in order to avoid even the appearance of any partiality, prejudice or other impropriety, as well as to ensure confidence in the integrity of the judicial system, the Chief Justice is respectfully requested to disqualify the Hon. Daniel Andrew Nastoff from further consideration of Davis' post-conviction petition and related motions.

Further Affiant sayeth naught.

_____
Kort Gatterdam

Signed and sworn before me this January 10, 2012.

_____
Notary Public

KARLA LEBEAU
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
July 10, 2015

3

# IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

---

### DEFENDANT-PETITIONER'S MOTION FOR RECUSAL

---

Defendant-Petitioner Von Clark Davis, through counsel, moves this Court to recuse itself from this case. Reasons in support of this motion are more fully stated in the attached memorandum in support.

Respectfully submitted,

_____
Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
        henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

**EXHIBIT**

1

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6511

## MEMORANDUM IN SUPPORT

On December 19, 2007, to comply with granting of a conditional writ of habeas corpus in *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761, this Court granted Defendant-Petitioner Von Clark Davis a new sentencing hearing. A resentencing hearing was conducted before this Court from September 8, 2009 through September 10, 2009. At the conclusion of the resentencing hearing, on September 10, 2009, this Court along with two other judges resentenced Davis to death. The sentencing opinion was filed on September 21, 2009.

On September 9, 2009, Davis' sister, Carol Smith, testified on Davis' behalf. Ms. Smith revealed that she has a son by the name of Lahray Thompson, and that Mr. Thompson had been convicted of aggravated murder in a capital case. (Tr. Vol. II, p.126). Following Ms. Smith's testimony, this Court disclosed that he prosecuted Mr. Thompson and argued to the jury that he should receive the death sentence. (Tr. Vol. II, p.131). In the concurrently filed Post-Conviction Petition, one of the grounds for relief is that Davis' trial counsel provided ineffective assistance for not seeking recusal of this Court. (See Sixth Ground for Relief).

"It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34 (citing *Rose v. Clark* (1986), 478 U.S. 570, 577; *Tumey v. Ohio* (1927), 273 U.S. 510, 534). According to the Ohio Supreme Court, the removal of a judge is necessary "to avoid even an appearance of bias, prejudice, or impropriety, and to ensure the parties, their counsel, and the public the unquestioned neutrality of an impartial judge." *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-Ohio-7354, ¶ 10; *see also State ex rel. Turner v. Marshall* (1931), 123 Ohio St. 586, 587 ("[I]t is of vital importance that the litigant believe that he will have a fair trial.").

2

Canon 3 of the Ohio Code of Judicial Conduct states generally that "a judge shall perform the duties of judicial office impartially and diligently." Furthermore, "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3(E)(1).

The post-conviction petition being filed concurrently with this motion contains a claim regarding whether defense counsel should have sought the recusal of this Court prior to conducting the penalty phase. The reasons why defense counsel were ineffective in not seeking recusal are set forth in the Sixth Ground for Relief of the post-conviction petition. (Sixth Ground and relevant attachments included herein). It would be unfair to have this Court now rule on whether that ground or any other grounds in the post-conviction petition should require a new penalty phase given the nature of the Sixth Ground.

For these reasons, this Court's removal from this case is necessary "to avoid even an appearance of bias, prejudice, or impropriety, and to ensure the parties, their counsel, and the public the unquestioned neutrality of an impartial judge." *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-Ohio-7354, ¶ 10. Therefore, Davis, through counsel, respectfully asks this Court to recuse itself from this matter and ask the Chief Justice to appoint a new judge to rule upon the concurrently filed post-conviction petition.

3

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile: (614) 365-9145
E-mail:  gatterdam@carpenterlipps.com
         henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion for Recusal was forwarded by first-class, postage prepaid U.S. Mail to Michael T. Gmoser, Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 21st day of October, 2011.

Kort Gatterdam

050-384-296792

4

SIXTH GROUND FOR RELIEF

93.     Davis hereby incorporates by reference all previous paragraphs as if fully rewritten herein.

94.     Davis' sentence is void and/or voidable because defense counsel provided ineffective assistance at the penalty phase and as a result, Davis was sentenced to death. Counsel knew that Judge Andrew Nastoff served as a prosecutor in the death penalty case of Davis' nephew, Lahray Thompson, and advocated for Mr. Thompson's death, yet counsel failed to seek the removal of Judge Nastoff. Counsel did not provide objectively reasonable assistance and Petitioner was prejudiced as a result of this failure. *Strickland v. Washington* (1984), 466 U.S. 668. Davis was denied his right to effective assistance of counsel as guaranteed by the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

95.     "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34 (citing *Rose v. Clark* (1986), 478 U.S. 570, 577; *Tumey v. Ohio* (1927), 273 U.S. 510, 534). According to the Ohio Supreme Court, the removal of a judge is necessary "to avoid even an appearance of bias, prejudice, or impropriety, and to ensure the parties, their counsel, and the public the unquestioned neutrality of an impartial judge." *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-Ohio-7354, ¶ 10; *see also State ex rel. Turner v. Marshall* (1931), 123 Ohio St. 586, 587 ("[I]t is of vital importance that the litigant believe that he will have a fair trial.").

96.     During the mitigation hearing, Davis' sister, Carol Smith, testified on Davis' behalf. Ms. Smith revealed that she has a son by the name of Lahray Thompson, and that Mr. Thompson had been convicted of aggravated murder in a capital case. (Tr. Vol. II, p.126)

97.     Following Ms. Smith's testimony, Judge Nastoff disclosed that he was a member of the prosecution team against Mr. Thompson and had argued to the jury that he should receive the death sentence. (Tr. Vol. II, p.131). Indeed, the motions filed pretrial in Mr. Thompson's case confirm that Judge Nastoff was actively seeking the death penalty against Mr. Thompson. Ex. M, Prosecution Memorandums in Opposition filed in State v. Lahray Thompson. The transcript from Mr. Thompson's trial confirms that Judge Nastoff argued that Mr. Thompson was eligible for the death penalty. Ex. N, State v. Lahray Thompson Trial Tr. 1188–92. The transcript further reveals that he called Mr. Thompson a liar. *Id.* 1205–07.

98.     Davis' counsel stated that the defense already knew Judge Nastoff was involved in the prosecution, but made the decision not to seek his recusal. (Tr. Vol. II, p.132). Counsel knew that Judge Nastoff had previously sought the death penalty against a member of Davis' family, yet did not seek to remove Judge Nastoff from the case. As a prosecutor in Mr. Thompson's case, Judge Nastoff obtained knowledge of Mr. Thompson's family, which included Davis and some of his witnesses. Further, Judge Nastoff had already argued in favor of sentencing Davis' nephew to death, and believed that Mr. Thompson was a liar. Thus, to avoid even the appearance of bias, prejudice, or impropriety, and to ensure the unquestioned neutrality of an impartial judge to the parties, their counsel, and the public, Judge Nastoff should not have

20

been deciding Davis' fate and instead should have been removed from the case.    Ex. D, Affidavit of Diane Menashe.

99.    Mr. Davis's attorneys never discussed the conflict issue with Mr. Davis. Ex. B, Affidavit of Von Clark Davis. Had they done so, Mr. Davis would have requested that Judge Nasthoff recuse himself. Mr. Davis did not find out about the issue until after his sister testified at the penalty phase hearing.

100.    Davis supports this ground with evidence dehors the record that contains sufficient operative facts to demonstrate a lack of competent counsel and prejudice that resulted from that ineffectiveness. *State v. Jackson* (1980), 64 Ohio St.2d 107, 111. Davis must be granted a new trial or, at a minimum, discovery and an evidentiary hearing on this ground for relief.

**Supporting Exhibits**: B, Affidavit of Von Clark Davis; D, Affidavit of Diane Menashe; M, Prosecution Memorandums in Opposition filed in State v. Lahray Thompson; N, State v. Lahray Thompson Trial Transcript.

**Legal Authority in Support of Ground for Relief**: Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, §§ 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution; *Strickland v. Washington* (1984), 466 U.S. 668; *Rose v. Clark* (1986), 478 U.S. 570; *Tumey v. Ohio* (1927), 273 U.S. 510; *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-Ohio-7354; *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128; *State v. Jackson* (1980), 64 Ohio St.2d 107; *State ex rel. Turner v. Marshall* (1931), 123 Ohio St. 586.

21

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

---

### AFFIDAVIT OF VON CLARK DAVIS

---

COUNTY OF MAHONING )
                   )    SS:
STATE OF OHIO      )

I, Von Clark Davis, being first duly cautioned do state the following:

1. I am over 18 years of age, am of sound mind, and am competent to testify regarding the matters discussed in this affidavit.

2. I am the Defendant in the above-captioned case. My attorneys for my September, 2009 penalty phase hearing were Randall Porter and Melynda Cook-Reich.

3. I discussed with my attorneys all my certificates, job evaluations, good conduct as well as guards and case managers that have seen me in prison since 1984. Other than the institutional summary introduced through Scott Nowak, my attorneys did not present any evidence at the penalty phase hearing of my job reviews, achievements or good conduct while in prison.

4. My attorneys never asked me for names of guards, case managers (other than Mr. Nowak) or other prison personnel to interview about possibly testifying for me. I could have provided them a number of names, particularly of guards at OSP (Ohio State Penitentiary) where I have been for the last 4 years as well as the two institutions I had previously been housed, Mansfield Correctional Institution and the Southern Ohio Correctional Institution. I believe they have seen me a sufficient amount of time to be able to attest that, among other things: I follow the rules, I do not act out, I am a hard worker and I have been helpful to them in a number of ways over the years.

**EXHIBIT**

**B**

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6517

5. I recall my attorneys mentioning at the sentencing hearing that they were going to have John Lee testify about some interviews he did of the following family members: Charles Flowers, Milton Flowers, Fannie Whiteside, and Elizabeth Crawford. I was upset that my attorneys did not call Mr. Lee to testify or attempt to admit the write-ups from Mr. Lee and others of these family members who were deceased or who had dementia at the time of my September, 2009 hearing. I thought these interviews provided important family insight that was not contained in other people's testimony. I also believed that their information was necessary as substantive evidence, not just for Dr. Smith's social history.

6. My attorneys mentioned to me that they were going to call someone from the Parole Board to say that I would never be paroled. I told both my attorneys and the mitigation specialist from the Office of the Public Defender that I did not like this idea at all. I thought this person would be putting a nail in my coffin. Mr. Porter said this information would help. He and I argued about it because I did not agree.

7. My attorneys said to me that I was never getting out of prison. I wanted some hope of getting out. They sent the mitigation specialist up to talk to me about possibly taking a life without parole deal but I rejected that. I had no idea that life without parole was not a sentencing option in my case.

8. My attorneys did not discuss at all with me their decision not to seek the recusal of Judge Nastoff. I did not know until my sentencing hearing in September, 2009 that Judge Nastoff was one of the prosecutors who went to trial and sought the death penalty against my nephew, Lahray Thompson. I was too shocked to say anything to my attorneys at that point but had I been asked earlier, I would have asked my attorneys to seek Judge Nastoff's recusal.

9. Prior to my first trial in this case, back in 1984, I had attorneys Michael Shanks and John Garretson. I was unaware of all the consequences of my jury waiver back in 1984. I was not told by my trial attorneys that once I waived a jury, I could never have a jury in my case even if I was convicted and the case was reversed on appeal. I was also under the impression that the jury waiver applied to this panel of judges only and for this trial only, not to any new panel of judges or even one different judge that might hear the case later if my case was reversed on appeal. I was not informed that if death penalty law changed, I would not get the benefit of those changes because I had waived my right to a jury trial. All of these things would have affected my decision to waive jury and I would not have waived jury had I known these things back in 1984.

2

FURTHER AFFIANT SAYETH NAUGHT.

_(signature)_

Von Clark Davis

Sworn to and subscribed before me this 17th day of October, 2011.

_(signature)_

Notary Public

3

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

---

### AFFIDAVIT OF DIANE M. MENASHE

---

| | |
|---|---|
| COUNTY OF FRANKLIN ) | |
| ) | SS: |
| STATE OF OHIO ) | |

I, Diane Menashe, being first duly cautioned do state the following:

1. I am over 18 years of age, am of sound mind, and am competent to testify regarding the matters discussed in this affidavit.

2. I am attorney, licensed to practice law in the State of Ohio since 1998. I worked in the Office of the Ohio Public Defender from 1997 to 2001. From 2001 to present, I have been in private practice in my own office, Diane M. Menashe Co., L.P.A.

3. My practice is exclusively focused on criminal defense in state and federal court. I have litigated numerous cases in state and federal court.

4. I am certified by the State of Ohio as lead counsel in capital cases pursuant to Rule 20 of the Ohio Rules of Superintendence and have handled and tried numerous capital cases. I have also handled two federal capital cases that went to jury, *United States v. Lawrence* and *United States v. Henderson*, both in the Southern District of Ohio, Eastern Division.

5. I was retained by Attorney Kort Gatterdam to provide my opinion on the sentencing phase trial beginning September 8, 2009, in State of Ohio v. Von Clark Davis.

6. As part of my duties, I reviewed: the September 8, 2009 – September 10, 2009 penalty phase transcript; Supreme Court of Ohio opinions; Court of Appeals opinions; Sixth Circuit Court of Appeals opinion ordering a new penalty phase hearing; mitigation write-

---

**EXHIBIT**

**D**

ups; affidavits of Cynthia Mausser, Dr. Bob Smith, Kort Gatterdam, and Von Clark Davis; transcript of proffer of defense witnesses for August 1989 penalty phase hearing, p. 1–5; prior penalty phase opinions; prison records attached to post-conviction petition; penalty phase exhibits B-I.

7.  I am fully conversant with the Sixth Amendment test for ineffective assistance of counsel enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, and its progeny. Based upon my experience and upon the prevailing constitutional standards, it is my professional opinion that trial counsel's performance was deficient in several areas and those deficiencies prejudiced the penalty phase of Von Clark Davis's case.

8.  First Ground for Relief – I am familiar with the Sixth Circuit's Opinion in *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761. In that case, the Sixth Circuit granted Davis habeas relief because during Davis' second penalty phase hearing, the three-judge panel erroneously excluded testimony regarding Davis' exemplary behavior on death row between his first and second sentencing hearings. *Id.* at 770. Regarding the evidence, the Sixth Circuit stated:

> Such testimony would have established that Davis was classified as an "A" prisoner, indicating that he had no discipline or conduct problems; that he was the clerk on death row for the unit manager and helped conduct tours of death row; and that he had created no problems for other inmates or for security personnel and had no conduct write-ups. Davis worked directly for Oscar McGraw, the unit manager for death row, who complimented Davis's positive attitude and pleasant personality. Herb Wendler, Davis's case manager, observed that Davis was cooperative and courteous, that he had been given much more freedom than other inmates on death row, and that he had been placed in various positions of trust within the unit.

*Id.* at 773. The Sixth Circuit determined that based on the record in the case, this evidence was "without doubt . . . highly relevant to the single aggravating factor relied upon by the state—that future dangerousness should keep Davis on death row." *Id.*

9.  It is my understanding the defense counsel handling Davis' 2009 penalty phase hearing never attempted to contact Sgt. Gordy Pullman, Oscar McGraw, Herb Wendler or any other witnesses who may have had information as to Davis' model behavior while on death row. I find this to be deficient performance. The anticipated testimony of Oscar McGraw and Herb Wendler was the basis for the Sixth Circuit's reversal of Davis' 1989 death sentence. There is no legitimate reason for defense counsel's failure to even attempt to locate these or any other witnesses which may have had information regarding Davis's good behavior while incarcerated on death row. If defense counsel was concerned with ODRC's policy regarding employee interviews, they could very easily have subpoenaed the witnesses to the penalty phase hearing and interviewed (or had their mitigation specialist interview) the witnesses when they appeared for court.

2

10. The failure to conduct this investigation is objectively unreasonable and constitutes ineffective assistance of counsel pursuant to the two prong test in *Strickland v. Washington.*

11. Second Ground for Relief – I read the penalty phase testimony of caseworker Scott Nowak. It is my understanding that Mr. Davis had a number of certificates, and other information about his accomplishments while in prison, work history while in prison, lack of institutional write-ups and security level reductions. It is my opinion that these documents should have been marked as exhibits and introduced at the penalty phase hearing. Demonstrative evidence of Davis' accomplishments and his behavior while in prison would have been important tangible evidence for the trier of fact. The evidence was admissible, available and relevant to whether Davis should be sentenced to death. Submitting a two page summary through Mr. Nowak was incomplete and unpersuasive, particularly when other evidence existed.

12. The failure to present this evidence is objectively unreasonable and constitutes ineffective assistance of counsel pursuant to the two prong test in *Strickland v. Washington.*

13. Third Ground for Relief – I believe defense counsel has a duty to determine, before placing a witness on the stand, whether that witness could potentially harm the defense case and if so, whether that is a risk worth taking. I read the testimony and affidavit of Cynthia Mausser. Given what Ms. Mausser stated in her affidavit and in her testimony at the penalty phase hearing, I would not have called her as a witness. I believe her testimony harmed Mr. Davis's case. Although defense counsel in their opening statement promised otherwise, Ms. Mauser could not say that Davis would never be paroled. To the contrary, she testified that Davis was apt to be paroled and because he had twice been convicted of murder, the streets would not be safe if/when he were ever released.

14. As the Chair of the Board, I find it hard to believe Ms. Mausser would have guaranteed defense counsel during an interview that Mr. Davis would never be paroled. Rather, it stands to reason that Ms. Mausser's affidavit about what she told defense counsel when interviewed about the possibility of Davis' parole is accurate. No single Parole Board Member constitutes a majority so even if she had an opinion on parole, it would not necessarily be shared by others on the Board.

15. The presentation of Cynthia Mausser's testimony is objectively unreasonable and constitutes ineffective assistance of counsel pursuant to the two prong test in *Strickland v. Washington.*

16. Fourth Ground for Relief – Dr. Smith was asked to provide testimony on Davis's psycho-social history and what, if any, psychological disorders he suffered from at the time of the incident. In my opinion, the key question in this penalty phase was whether Mr. Davis would be a danger to anyone in the community if he was paroled. Defense counsel obviously did not prepare Dr. Smith to testify on this issue because he offered no testimony in this regard. Moreover, his testimony had the opposite effect; he opined that the nature of borderline personality disorder is that an inmate does well in a structured setting like prison but not when they have no clear cut structure like a person out in the

3

community. Given Mr. Davis's prior history, I believe this testimony was harmful and contributed to the panel giving Mr. Davis death.

17. In addition, defense counsel should have gained information from the prior two panels of judges that heard similar testimony and rejected the psychological testimony. In fact, the second panel actually used the psychological testimony to assist them in making their decision that the death penalty was the appropriate sentence. Defense counsel should either have not presented the testimony of Dr. Smith or focused on the future dangerousness issue as addressed by Dr. Smith's affidavit.

18. The presentation of Dr. Bob Smith's testimony is objectively unreasonable and constitutes ineffective assistance of counsel pursuant to the two prong test in *Strickland v. Washington*.

19. Fifth Ground for Relief – Defense counsel had an exhibit notebook with Exhibits A–L, presumably which they intended to introduce into evidence at the penalty phase hearing. However, they only submitted Exhibits J, K, and L. Of the documents not submitted was an affidavit and the mitigation write-ups from four witnesses who were either deceased or were no longer competent to testify. These witnesses had relevant and important historical information to provide about Davis. Although defense counsel initially indicated to the Court that they intended to present the affidavit and mitigation write-ups through the testimony of their mitigation specialist, John Lee, they did not. For reasons unknown, the defense did not call Mr. Lee. Furthermore, they later withdrew their request to have the exhibits introduced.

20. The defendant is to be given great latitude in presenting mitigating factors in a capital sentencing hearing. *See* R.C. 2929.04(C); *State v. Landrum* (1990), 53 Ohio St.3d 107, 115. Moreover, in this case the affiants were unavailable, so under a more lax standard of evidentiary rules the documents were apt to be admissible. Further, the fact that the case was being tried to a three judge panel makes it more likely than not that the affidavit and the mitigation the write-ups would have been admitted into evidence and given the appropriate weight. I believe that the evidence was admissible as substantive evidence and defense counsel should have introduced or at least attempted to introduce this testimony. Moreover, I believe the evidence was relevant and important to the defense case.

21. The failure to present John Lee's testimony and/or the mitigation write-ups and affidavit is objectively unreasonable and constitutes ineffective assistance of counsel pursuant to the two prong test in *Strickland v. Washington*.

22. Sixth Ground for Relief – At the end of Carol Smith's testimony, Judge Nastoff indicated that he prosecuted, and argued for the death penalty, against Ms. Smith's son, Lahray Thompson. Carol Smith is the sister of the Defendant, making Lahray Thompson the Defendant's nephew. Defense counsel indicated that he made the decision long ago not to challenge the judge's connection to Ms. Smith as grounds for recusal.

4

23. I have reviewed Mr. Davis's affidavit where he states that his attorney never discussed the recusal issue with him. I find this to be problematic. Moreover, I find it deficient performance not to seek recusal of Judge Nastoff based on his affiliation to Ms. Smith. Judge Nastoff sought the death penalty against Mr. Davis's nephew. During that prosecution he heard and cross examined some of the very same mitigation evidence that Davis presented in his case. It would be difficult, if not impossible, to put aside Judge Nastoff's prior opinions about the veracity and strength of the mitigation.

24. Further, as a practical matter, Judge Nastoff was a former prosecutor who litigated capital cases. Strategically he was not likely to favor the defense presentation given his prior employment.

25. The failure to seek Judge Nasthoff's recusal is objectively unreasonable and constitutes ineffective assistance of counsel pursuant to the two prong test in *Strickland v. Washington*.

26. In addition to the aforementioned examples of ineffectiveness, I observed several other deficiencies in defense counsel's representation.

27. The first witness to testify was Francis Weiland from England. Ms. Weiland had important information about Mr. Davis's remorse and how he has rehabilitated himself over time. She had a letter from Mr. Davis addressing his remorse but was prevented from introducing it into evidence because defense counsel did not provide a copy of the letter to the prosecution as required by the Rules of Evidence.

28. I also found Mr. Davis's unsworn statement to be rehearsed and unconvincing. Despite the Sixth Circuit's reason for reversal in the case of *Davis v. Coyle* (6th Cir. 2007), 475 F.3d 761, defense counsel did not ask Davis about his institutional adjustment or achievements. Davis' testimony as to this issue was even more critical in the absence of any ODRC employees being called as witnesses by the defense. Mr. Davis should have been asked to testify about his exemplary behavior in prison, his certificates, work history, etc.

29. All of my opinions are based on my experience, my review of the records in this case and my knowledge of the standard for ineffective assistance of trial counsel under *Strickland v. Washington*. For the reasons stated above, both individually and cumulatively, Von Clark Davis was deprived of the effective assistance of trial counsel under the Ohio and United States Constitutions.

5

FURTHER AFFIANT SAYETH NAUGHT.

DIANE M. MENASHE

Sworn to and subscribed before me this 21st day of October, 2011.

Notary Public

KOFT GATTERDAM, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

6

STATE OF OHIO : CASE NO. CR95-12-1111
~A96-05-0094
Plaintiff FILED : STATE OF OHIO
COUNTY OF BUTLER
vs. '96 JUL 24 PM 1 15 : COURT OF COMMON PLEAS
(Moser, J.)
~. MARK ~~~~~ :
LAHRAY THOMPSON CLERK OF COURTS
MEMORANDUM IN OPPOSITION TO
Defendant DEFENDANT'S MOTION TO ALLOW
FILED ... DEFENSE TO ARGUE LAST
BUTLER ... AT MITIGATION PHASE
JUL 24 1996

: : : : : : : : : : : :

Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's motion to allow the defense to argue last in penalty-phase closing

arguments, filed herein on April 4, 1996, says that the defendant's motion is not

well taken. This motion is "backed by neither law nor effective argument," see

*State v. Evans* (1991), 63 Ohio St.3d 231, 251, 586 N.E.2d 1042, 1059.

It is clear that the State bears a very high burden of proof in a criminal

case -- proof beyond a reasonable doubt. Accordingly, it was held in *State v.*

*Jenkins* (1984), 15 Ohio St.3d 164, 214-215, 473 N.E.2d 264, 307-308, that the

prosecutor should argue first and last in the penalty-phase final arguments,

since the State bears the burden of proof in the penalty phase of a capital trial

(to prove that the aggravating circumstances outweigh the mitigating factors by

proof beyond a reasonable doubt). *See also State v. Rogers* (1985), 17 Ohio St.3d

174, 182-183, 478 N.E.2d 984, 993, *State v. Hicks* (1989), 43 Ohio St.3d 72, 80,

538 N.E.2d 1030, 1039, and *State v. Grant* (1993), 67 Ohio St.3d 465, 483, 620

N.E.2d 50, 69.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

**EXHIBIT**

**M**

-3-

WHEREFORE, the defendant's motion should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this 24 day of July, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO                    :      CASE NO. CR95-12-1111
                                        CA96-05-0094
           Plaintiff         FILED    STATE OF OHIO
                                      COUNTY OF BUTLER
     vs.            '96 JU: 24 PM 1 COURT OF COMMON PLEAS
                                      (Moser, J.)
                      E. CARR JOHEN
LAHRAY THOMPSON       CLERK OF COURTS
                                      MEMORANDUM IN OPPOSITION TO
           Defendant                  DEFENDANT'S "VOIR DIRE MEMORANDUM"
                                      RE PROPER STANDARD FOR DEATH-
                                      QUALIFICATION EXCUSAL

     :    :    :    :         :    :    :    :    :    :    :    :

     Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's "voir dire memorandum" regarding the proper standard for death-

qualification, filed herein on April 4, 1996, says that the defendant's

proposition of law is incorrect.

     Death-qualification of jurors was upheld as proper in _State v. Jenkins_

(1984), 15 Ohio St.3d 164, 473 N.E.2d 264, at paragraph two of the syllabus.  The

Ohio Supreme Court in _State v. Rogers_ (1985), 17 Ohio St.3d 174, 478 N.E.2d 984,

_vacated on other grounds_ (1985), 474 U.S. 1002, following the standard enunciated

in _Wainright v. Witt_ (1985), 469 U.S. 412, 420, established as a matter of Ohio

law that a prospective juror in a capital case is subject to challenge for cause

based on his views in opposition to capital punishment if "those views would

prevent or substantially impair the performance of his duties as juror in

accordance with his instructions and his oath." _Rogers, id._, at paragraph three

of the syllabus.  See also _State v. Beuke_ (1988), 38 Ohio St.3d 29,38, 526 N.E.2d

274, 284, and _State v. Greer_ (1988), 39 Ohio St.3d 236, 248, 530 N.E.2d 382, 397.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

J. F. HOLCOMB
PROSECUTING ATTORNEY

5 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

The Court has several times reaffirmed its holding in *Rogers*, rejecting the very argument made by defendant herein that the Ohio statute, R.C. 2945.25(C), demands a different, "stricter" standard for death qualification in Ohio, as opposed to the federal constitutional standard. *See, e.g., State v. Roe* (1989), 41 Ohio St.3d 18, 21, 535 N.E.2d 1351, 1357, and most recently, *State v. Frazier* (1995), 72 Ohio St.3d 323, 329, 652 N.E.2d 1000, 1007. The *Rogers* line of cases clearly establish that the standard under the Federal Constitution and the Ohio statute are identical. It has also been held that a juror who is excludable under the *Wainwright v. Witt* or *Rogers* standard is "unsuitable" to be a juror under R.C. 2945.24(O), *see State v. Greer*, 39 Ohio St.3d at 248, 530 N.E.2d at 397; *State v. Beuke*, 38 Ohio St.3d at 38, 526 N.E.2d at 284; and *State v. Buell* (1988), 22 Ohio St.3d 124, 139, 489 N.E.2d 795, 808.

The attached death qualification question as asked by this Court in *State v. Benge* (1993), Butler C.P. No. CR93-02-0116, (excerpt from Trial Transcript pp. 52-54), affirmed in *State v. Benge* (Dec. 5, 1994), Butler App. No. CA93-06-116, unreported, is a proper form for applying the *Wainwright v. Witt* / *Rogers* standard.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

FILED

JUL 24 1996

WHEREFORE, the defendant's proposed standard for death-qualification should be rejected, and the attached questioning standard, or similar wording, should be utilized in the voir dire of this case.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _23_ day of _____, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

1

STATE OF OHIO           FILED        :    CASE NO. CR95-12-1111

         Plaintiff '95 JUL 24 PM 1:10    CA96·05·0094
                                          STATE OF OHIO
                                          COUNTY OF BUTLER
vs.              T. MARK BADER,           COURT OF COMMON PLEAS
                 CLERK OF COURTS          (Moser, J.)

LAHRAY THOMPSON
                 FILED IN Common Pleas Court
         Defendant  BUTLER COUNTY, OHIO    MEMORANDUM IN OPPOSITION TO DEFENDANT'S
                      JUL 24 1996           MOTIONS TO LIMIT PROSECUTOR'S
                                            EVIDENCE AND ARGUMENT IN
                   T. MARK BADER            THE PENALTY PHASE
                      CLERK
       :   :   :   :   :   :   :   :   :   :   :   :


        Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's motions as follows:

"MOTION TO LIMIT PROSECUTOR'S ARGUMENT TO THE AGGRAVATING CIRCUMSTANCES PROVEN
AT THE FIRST PHASE OF THE TRIAL AND TO LIMIT THE PROSECUTOR'S PRESENTATION OF
EVIDENCE AND ARGUMENT TO PROPER REBUTTAL OF THE DEFENSE PRESENTATION,"

"MOTION TO LIMIT STATE'S EVIDENCE TO REBUTTAL" and

"MOTION TO ALTER DEFINITION OF MITIGATING CIRCUMSTANCES TO REMOVE REFERENCE TO
REDUCING THE DEGREE OF BLAME AND TO SO LIMIT PROSECUTOR IN HIS ARGUMENT"

filed herein on April 4, 1996, and

        Defendant's motions seek to severely restrict and limit the prosecutor's

penalty-phase argument.  However, the Ohio Supreme Court has clearly outlined the

range of permissible argument for a prosecutor in the "mitigation" or "penalty"

or sentencing" phase of a capital trial, see _State v. Gumm_ (1995), 73 Ohio St.3d

413, 653 N.E.2d 253, where the Court held in its syllabus:

        Subject to applicable Rules of Evidence, and pursuant to R.C.
    2929.03(D)(1) and (2), counsel for the state at the penalty stage of a

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6531

2

capital trial may introduce and comment upon (1) any evidence raised at trial that is relevant to the aggravating circumstances specified in the indictment of which the defendant was found guilty, (2) any other testimony or evidence relevant to the nature and circumstances of the aggravating circumstances specified in the indictment of which the defendant was found guilty, (3) evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant, (4) the presentence investigation report, where one is requested by the defendant, and (5) the mental examination report, where one is requested by the defendant. Further, counsel for the state may comment upon the defendant's unsworn statement, if any. (R.C. 2929.03[D], construed; *State v. DePew* [1988], 38 Ohio St.3d 275, 528 N.E.2d 542, affirmed and followed.)

Thus, the Court has rejected the argument presented in defendant's motions that the prosecutor must restrict his penalty-phase remarks to a rote, "professorial" outline of the aggravating circumstances specified in the indictment and proven in the guilt phase of trial. Neither the Eighth Amendment nor cases decided by the Ohio or United States Supreme Courts preclude the prosecutor from argument in the penalty phase concerning the nature and circumstances of the murder itself, see *State v. Gumm*, 73 Ohio St.3d at 416-418, 653 N.E.2d at 259-264. Indeed, the statute itself, R.C. 2929.03, requires the sentencing authority (jury and judge, or three-judge panel) to consider the nature and circumstances of the offense, see *Gumm*, *id*. at 418-420, citing *State v. Jenkins* (1984), 15 Ohio St.3d 164, 174, 473 N.E.2d 264, 277-278, *State v. Steffen* (1987), 31 Ohio St.3d 111, 116-117, 509 N.E.2d 383, 390, and *State v. Stumpf* (1987), 32 Ohio St.3d 95, 99, 512 N.E.2d 598, 604. The Court also noted that "it is only by considering the nature and circumstances of the offense, as

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

FILED COURT PLEAS & etc.
BUTLER COUNTY, OHIO

JUL 24 1996

CLERK

3

well as the statutory aggravating circumstances, that it is possible 'to prevent
a rigid and mechanistic sentencing scheme,' *Gumm*, *id*. at 420, citing *State v.
Jester* (1987), 32 Ohio St.3d 147, 153, 512 N.E.2d 962, 969; and in *Gumm* it was
also noted that "some crimes are by their very nature so 'horrendous' or
'harrowing' that it would be difficult to imagine factors that might be
mitigating," *Gumm*, *id*., citing *State v. Morales* (1987), 32 Ohio St.3d 252, 262,
513 N.E.2d 267, 277, and *Steffen*, *supra* at 128, 509 N.E.2d at 398. The Court in
*Gumm* reasoned that in *DePew* it was held that a prosecutor in the penalty stage
of a capital case may introduce, and comment upon, any evidence raised at trial
that is relevant to the aggravating circumstances, which allows the prosecutor
to reintroduce much if not all of the evidence heard in the guilt phase; and in
many cases it has been held that once lawfully inserted into the sentencing
considerations, admissible evidence is subject to fair comment by both parties,
see, e.g., *State v. Greer* (1988), 39 Ohio St.3d 236, 253, 530 N.E.2d 382, 402,
and *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212, 218. The
Court in *Gumm* cautioned prosecutors (and trial courts in their instructions and
sentencing opinions) to avoid imprecise designation of the "nature and
circumstances of the offense" as "aggravating circumstances" to be "weighed
against" the mitigating factors, *cf. State v. Davis* (1988), 38 Ohio St.3d 361,

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

16 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

367-368, 528 N.E.2d 925, 931-932. However, so long as the prosecutor does not
confuse "aggravating circumstances" with the nature and circumstances of the

FILED IN COMMON PLEAS COURT
BUTLER COUNTY, OHIO

4

FILED        JUL 24 1996

95 JUL 24 PM 1 11  G. MARK GAGEN
CLERK

F. MARK GAGEN
CLERK OF COURTS

aggravated murder, he is perfectly within the proper bounds of final argument to comment on the nature and circumstances of the aggravated murder which are relevant to the sentencing considerations.

_Gumm_ also holds that it is permissible to comment on the defendant's unsworn statement, see syllabus in _Gumm_; see also _State v. Mapes_ (1985), 19 Ohio St.3d 108, 115-116, 484 N.E.2d 140, 147 ("If a defendant chooses to make an unsworn oral statement to the jury, the prosecution should be allowed to argue that the defendant's statement has less credibility because it is not given under oath. *** [T]he state should be able to dispute the weight of that statement ***.").

Defendant's suggestion that the prosecutor may not comment on relevant aspects of the murder victim's character which have been admitted in evidence in either the guilt or penalty phase of trial is an argument that has been rejected by unanimous decisions of the Ohio Supreme Court in _State v. Loza_ (1994), 71 Ohio St.3d 61, 82, 641 N.E.2d 1082, 1105, and _State v. Fautenberry_ (1995), 72 Ohio St.3d 435, 438-440, 650 N.E.2d 878, 881-882. The Court in _Fautenberry_ noted the fact that the cases on which defendant's argument relies, _Booth v. Maryland_ (1987), 482 U.S. 496, and _South Carolina v. Gathers_ (1989), 490 U.S. 805, were overruled in _Payne v. Tennessee_ (1991), 501 U.S. 808, which held that the Eighth Amendment erects no _per se_ bar to the admission of victim-impact evidence. Thus,

in _Fautenberry_ the Ohio Supreme Court held that "evidence which depicts _both_ the

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

5

circumstances surrounding the commission of the crime and also the impact of the murder on the victim's family may be admissible during *both* the guilt and the sentencing phases." *Id.* (Emphasis per the Court in *Fautenberry*.) The Court cited *State v. Loza* as an example where evidence relating to victim-impact (*e.g.*, the fact that one of the victims was pregnant, that the killings represented "many years" of potential life expectancy) was admissible in the guilt phase of trial as facts surrounding the offense, and thus comments by the prosecutor in the sentencing phase relating to such victim-impact evidence was permissible. The Court in *Fautenberry* carefully pointed out that expressions of a witness's opinion as to the appropriate sentence, *e.g.*, that the victim's family desires that defendant be sentenced to death (as allowed by statute in most non-capital cases pursuant to R.C. 2943.041) are not admissible in a capital case. *Fautenberry*, 72 Ohio St.3d at 439, 650 N.E.2d at 882; *accord, State v. Huertas* (1990), 51 Ohio St.3d 22, 553 N.E.2d 1058, syllabus. However, the Court in *Fautenberry* specifically allowed testimony from the victim's family members and employer concerning the impact of the victim's death on his survivors. *Fautenberry*, *id.* at 438-439, 650 N.E.2d at 881-882.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

5 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

6

WHEREFORE, the defendant's motions should be denied.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474


PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C.
Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton
St., Hamilton, Ohio 45011 by U.S. regular mail this ___ day of _____.
1996.


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO              :    CASE NO.  CR95-12-1111
                                  CA 96-05-0094

        Plaintiff         FILED   :    STATE OF OHIO
                                    COUNTY OF BUTLER

   vs.         '96 JUL 24 PM 1 16   COURT OF COMMON PLEAS
                                     (Moser, J.)

                 T. MA. . . PATEN
LAHRAY THOMPSON    CLERK OF COURTS COURT
                          : OHIO **MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
    Defendant                  **MOTION TO PROHIBIT REFERENCES TO THE**
             JL 24 1996        **JURY THAT A VERDICT AS TO DEATH IS ONLY**
                                **A RECOMMENDATION**

     :   :   :   :   :   :   :   :   :   :   :   :   :   :

       Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's motion to prohibit refernces to the jury that a verdict as to death

is a nonbinding recommendation, filed on April 4, 1996, says that defendant's

motion is not well taken.  Defendant's argument has been rejected numerous times

by the Ohio Supreme Court.  In *State v. Jenkins* (1984), 15 Ohio St.3d 164, 473

N.E.2d 264, at paragraph six of the syllabus, the Court held,

> The jury in the penalty phase of a capital prosecution may be
> instructed that its recommendation to the court that the death penalty
> be imposed is not binding and that the final decision as to whether the
> death penalty shall be imposed rests with the court.

       This Court in the trial of another capital case gave the following

instruction, in *State v. Williams*, Butler Common Pleas No. CR90-08-0665:

> "It is going to be your responsibility *** to decide what sentence
> to recommend to this Court regarding the charge of aggravated murder with
> Specifications ***.

> "I have used the word 'recommend' and I want you to make sure that
> you understand you are not to construe that word to diminish your
> responsibility in this matter.  It is an awesome task, and the fact that
> the word 'recommend' is used should not be considered by you to lessen
> your task."  (Trial Transcript in *Williams*, Vol. XI, page 200, copy
> attached.)

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-  FILED

'96 JUL 24 PM 1 15

The conviction and death sentence in that case were affirmed with approval of that instruction, see *State v. Williams* (Nov. 20 1992), Butler App. No. CA91-04-060, unreported, at pages 13-15, affirmed, *State v. Williams* (1995), 73 Ohio St.3d 153, 652 N.E.2d___ (the issue was not even raised in the Supreme Court).

A similar instruction in *State v. Mills* (1992), 62 Ohio St.3d 357, 375, 582 N.E.2d 972, 988, that told the jury that "you should recommend the appropriate sentence as though your recommendation will, in fact, be carried out," and the Ohio Supreme Court stated, "we commend the trial judge for his instruction."

Since *Jenkins*, while the Court has held that such instruction accurately states Ohio law and does not constitute reversible error, it has also stated its "preference" that no comment be made on the question of who bears the ultimate responsibility for determining the appropriateness of a death sentence. *See, e.g.*, *State v. Loza* (1994), 71 Ohio St.3d 61, 73-74, 641 N.E.2d 1082, 1099; *State v. Henderson* (1988), 39 Ohio St.3d 24, 30; 528 N.E.2d 1237, 1243; *State v. Williams* (1986), 23 Ohio St.3d 16, 21-22, 490 N.E.2d 906, 912; and *State v. Steffen* (1987), 31 Ohio St.3d 111, 113-114, 509 N.E.2d 383, 387-388.   The instruction given by this Court in the *Williams* trial is not only an accurate statement of Ohio law but also ensures that the jury takes its responsibility very seriously.   The State therefore requests that the same instruction be given herein, as approved by the Court of Appeals and "commended" by the Supreme Court in *Mills*.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
CUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

FILED    JUL 24 1996

'96 JUL 24 PM 1 16

WHEREFORE, the defendant's motion should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

## PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this 24 day of July, 1996.


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO                          :        CASE NO.  CR95-12-1111
                                FILED                    CA96-05-0094
          Plaintiff               :     STATE OF OHIO
                    '96 JUL 24  PM 1 1 6 COUNTY OF BUTLER
     vs.                                 COURT OF COMMON PLEAS
                    T. _____N       (Moser, J.)
                    CLER_ OF COURTS
LAHRAY THOMPSON     ____ _____ _____
                    B__  _____ OHIO
                                  :      MEMORANDUM IN OPPOSITION TO
          Defendant    ___ 24 1996      DEFENDANT'S REQUESTED
                                  :     PRE-VOIR DIRE JURY INSTRUCTIONS
                    _ ____ _____
                    CL _RK
          :  :  :  :  :  :  :  :  :  :  :  :  :  :

     Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's requested pre-voir dire jury instructions, filed herein on April 4,

1996, says that the defendant's motion is proper in general, in that preliminary

remarks about the procedures involved in a capital case are appropriate; however,

the prosecution objects to the defendant's proposed instructions, and says that

the preliminary instructions and remarks as given by this Court in *State v. Benge*

(1993), Butler C.P. No. CR93-02-0116, affirmed in *State v. Benge* (Dec. 5, 1994),

Butler App. No. CA93-06-116, unreported, are tested, correct instructions on the

concepts which should be addressed in commencement of the voir dire in a capital

case. (Certain minor modifications would be in order inasmuch as there is no

longer a "special venire" for capital cases after repeal of former R.C. 2945.18

and 2945.19.)

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-
FILED

'96 JUL 24 PM 1 16

CLERK OF COURTS

FILED
BUTLER COUNTY, OHIO

JUL 24 1996

J. MARK ...
CLERK

WHEREFORE, the defendant's motion should be granted in part, defendant's proposed instructions should be rejected, and instructions as given in *State v. Benge*, or similar preliminary remarks, should be given.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this 24 day of July, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO                    :        CASE NO.  CR95-12-1111
                                          CA96-05-0094
        Plaintiff              :        STATE OF OHIO
                FILED                    COUNTY OF BUTLER
    vs.                        :        COURT OF COMMON PLEAS
        '96 JUL 24 PM 1 15              (Moser, J.)
                                :
LAHRAY THOMPSON   T. HALL       :
                CLERK OF COURTS  :        MEMORANDUM IN RESPONSE TO
        Defendant                         DEFENDANT'S "VOIR DIRE MEMORANDUM"
                BUTLER          :        RE "THE DEFENSE MUST BE ALLOWED
                                          TO EXAMINE PROSPECTIVE JURORS
                JUL  4 1996              REGARDING THEIR VIEWS ON CAPITAL
                                :        PUNISHMENT PRIOR TO THEIR EXCUSAL"
                T. HALL
                CLERK

        :  :  :  :  :  :  :  :  :  :  :  :  :

        Now comes John F. Holcomb, Prosecuting Attorney, and in response to the

defendant's "voir dire memorandum" regarding defense examination of prospective

jurors as to their views on capital punishment prior to excusal, filed herein on

April 4,1996, says that the defendant's proposition of law is correct in part.

        The State would agree that "reasonable examination" of prospective jurors

by counsel for both sides should be allowed, as provided in R.C. 2945.27; Crim.R.

24(A) also provides that counsel be given an opportunity to voir dire prospective

jurors or supplement the court's voir dire examination. *Accord, State v. Heurtas*

(1990), 51 Ohio St.3d 22, 29-30, 553 N.E.2d 1058, 1067, (explaining that while

it would have been "better practice" for the court to allow defense counsel to

voir dire a prospective juror before she was excused  for cause, her unequivocal

statement that she could never vote for the death penalty under any circumstance

was, in itself, sufficient basis for her removal). The scope of voir dire is

within the sound discretion of the trial court, and the judgment will not be

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

JUL 24 1996

reversed absent a showing that the trial court abused its discretion in restricting the scope of voir dire, see *Heurtas*, *id.*, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 186, 473 N.E.2d 264, 286; and *State v. Lundgren* (1995), 73 Ohio St.3d 474, 481, 653 N.E.2d 304, 315. Restrictions on voir dire have generally been upheld, see *Lundgren*, *id.*, and numerous cases cited therein.

The fact that latitude is allowed counsel, however, does not mean that a juror whose views on capital punishment renders him subject to challenge for cause because "those views would prevent or substantially impair the performance of his duties as juror in accordance with his instructions and his oath," see *Wainwright v. Witt* (1985), 469 U.S. 412, 420, can be fully "rehabilitated" by further examination of defense counsel. "If a trial court finds that a juror has expressed unwillingness to follow the court's instructions, the ability of defense counsel to elicit somewhat contradictory views from the juror does not, in and of itself, render the trial court's judgment [to exclude the juror for cause] erroneous." *State v. Frazier* (1995), 72 Ohio St.3d 323, 328, 652 N.E.2d 1000, 1007; *State v. Beuke* (1988), 38 Ohio St.3d 29, 38, 526 N.E.2d 274, 284.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

FILED

'06 JUL 24 PM 1 15

WHEREFORE, the defendant's motion that his counsel be permitted to make reasonable examination of prospective jurors in the discretion of the Court, pursuant to R.C. 2945.27, Crim.R. 24(C), and Ohio case law, should be granted.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

**PROOF OF SERVICE**

FILED

JUL 2 4 1996

CLERK

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _24_ day of _July_. 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO                    :        CASE NO.  CR95-12-1111

                                          CA96-05-0084
                FILED
       Plaintiff              :           STATE OF OHIO
              '96 JUL 11 PM 2 47          COUNTY OF BUTLER
vs.                                       COURT OF COMMON PLEAS
              T. HERK EAGER                (Moser, J.)
              CLERK OF COURTS

LAHRAY THOMPSON

       Defendant                          MEMORANDUM IN RESPONSE TO
                                          DEFENDANT'S "VOIR DIRE MEMORANDUM"
                                          RE "VENIRE PERSONS WHO CANNOT FAIRLY
                                          CONSIDER MITIGATING EVIDENCE AND
                                          WHO WOULD AUTOMATICALLY VOTE FOR
                                          DEATH UPON A SHOWING OF GUILT
                                          MUST BE EXCUSED"

            :   :   :   :   :   :   :   :   :   :   :   :   :   :

       Now comes John F. Holcomb, Prosecuting Attorney, and in response to the

defendant's "voir dire memorandum" regarding "venire persons who cannot fairly

consider mitigating evidence and who would automatically vote for death upon a

showing of guilt must be excused," filed herein on April 4, 1996, says that the

defendant's *initial* proposition of law, as stated in the motion's heading, is

correct *in the abstract*.  The State would agree with the defendant that it is the

purpose of voir dire to obtain fair, unbiased jurors who will have no difficulty

following the law applicable in this case, in particular the Ohio statutes

involving procedure in capital cases, R.C. 2929.03-2929.04.  A person who in voir

dire states that he or she cannot fairly consider mitigating evidence and who

would automatically vote for death upon a showing of guilt, and thus would be

unable to follow the penalty-phase jury instructions, is "unsuitable" to be a

juror, R.C. 2945.24(0).

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
P   CUTING ATTORNEY

116 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

This is not to say, however, that the prosecution accepts defendant's formulation that the defense should be allowed to show bias in favor of imposing the death penalty "circumstantially," by asking prospective jurors whether they may feel that certain specific mitigating factors such as "youth," "history, character and background," would carry some, little, or no weight in a sentencing decision. In *State v. Lundgren* (1995), 73 Ohio St.3d 474, 481, 653 N.E.2d 304, 315, the Ohio Supreme Court rejected the defendant's assumption that jurors may be voir-dired in such a way, finding that a trial court had "exercised appropriate discretion in not allowing jurors to be asked if they would consider specifically named mitigating factors." The Court in *Lundgren* reasoned that

"weighing aggravating circumstances against mitigating factors is a complex process. Jurors weigh mitigating factors together, not singly, and do so collectively as a jury in the context of a penalty hearing. Realistically, jurors cannot be asked to weigh specific factors until they have heard all the evidence and been fully instructed on the applicable law. Moreover, 'evidence of an offender's history, character and background' that is not found to be mitigating 'need be given little or no weight against the aggravating circumstances.' *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph two of the syllabus."

*Lundgren*, *id.* at 481, 653 N.E.2d at 315.

The defense motion is also premature, in that it anticipates possible responses of potential jurors that may never arise. The question must be determined with each juror on a case-by-case basis, and not in the abstract; there are many cases where jurors were alleged to be "pro-death" because of certain statements about consideration of mitigating evidence in the abstract, yet they were found to be qualified jurors who would fairly and impartially

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

16 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

consider all the evidence and follow the instructions of law, *see Lundgren, id.* "Their inability to conjure abstract mitigating factors does not reflect an inability to to be fair and impartial jurors." *Lundgren, id.* at 483, 653 N.E.2d at 316. *See also State v. Mack* (1995), 73 Ohio St.3d 502, 509-510, 653 N.E.2d 329, 335-336 (trial court did not abuse its discretion by refusing to remove for cause potential jurors with initial predisposition toward imposition of death penalty, but who later stated they would follow trial instructions).

WHEREFORE, the defendant's suggestion that his counsel be permitted to ask prospective jurors if they would consider specifically named mitigating factors should be denied, and jurors's qualifications should be determined in accordance with the foregoing memorandum.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-4-

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _11th_ day of _July_ , 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

FILED

STATE OF OHIO                    :      CASE NO. CR95-12-1111

'96 JUL 11 PM 2 49                      CA96-05-0094

        Plaintiff                :      STATE OF OHIO
                    T. MARK BADEN         COUNTY OF BUTLER
vs.                 CLERK OF COURTS       COURT OF COMMON PLEAS
                                        (Moser, J.)

LAHRAY THOMPSON

        Defendant                       MEMORANDUM IN OPPOSITION TO
                                 :      DEFENDANT'S MOTION TO PROHIBIT
                                        DEATH QUALIFICATION OF JURY, ETC.

    :   :   :   :   :   :   :   :   :   :   :   :   :

    Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the
defendant's motion to prohibit death qualification of the jury or, in the
alternative, to seat separate juries for the guilt and penalty phases of trial,
filed herein on April 4, 1996, says that the defendant's arguments are not well
taken.

    Defendant's motion lacks merit on each of its propositions.  It is clear
that death-qualification of jurors is constitutionally proper, see *State v.*
*Jenkins* (1984), 15 Ohio St.3d 164, 473 N.E.2d 264, paragraph two of the syllabus;
see also *State v. Grant* (1993), 67 Ohio St.3d 465, 476, 620 N.E.2d 50, 64.

    It is also clear that separate juries *cannot* be seated for the penalty and
guilt phases of a capital trial in Ohio, where by statute the same trial jury
which determines guilt *must* also make a recommendation of punishment.  *State v.*
*Carter* (1995), 72 Ohio St.3d 545, 559-560, 651 N.E.2d 965, 978, citing *State v.*
*Penix* (1987), 32 Ohio St.3d 369, 372, 513 N.E.2d 744, 747-748.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

WHEREFORE, the defendant's motion should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _11_ day of _July_. 1996.


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO          :     CASE NO. CR95-12-1111

          Plaintiff          STATE OF OHIO
                             COUNTY OF BUTLER
     vs.                      COURT OF COMMON PLEAS
                             (Moser, J.)

LAHRAY THOMPSON

          Defendant     :    MEMORANDUM IN OPPOSITION TO
                             DEFENDANT'S MOTION TO PROHIBIT
                        :    THE USE OF PEREMPTORY CHALLENGES
                             TO EXCLUDE JURORS WHO EXPRESS
                        :    CONCERNS ABOUT CAPITAL PUNISHMENT

     :    :    :    :    :    :    :    :    :    :    :    :    :

          Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's motion requesting that this Court prohibit the State from excluding,

through the use of peremptory challenges, any jurors who express concerns about

capital punishment, filed herein on April 4,1996, says that the defendant's

argument is without merit.

          "Aside from racial exclusion, prosecutors can exercise a peremptory

challenge for any reason, without inquiry, and without a court's control." *State*

*v. Seiber* (1990), 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 419, citing *State v.*

*Esparza* (1988), 39 Ohio St.3d 8, 13-14, 529 N.E.2d 192, 198 (both cases expressly

rejecting the argument made by defendant herein).  The Ohio Supreme Court has

rejected defendant's proposition repeatedly since the *Esparza* and *Seiber*

decisions, see *State v. Evans* (1992), 63 Ohio St.3d 231, 249, 586 N.E.2d 1042,

1057; *State v. Waddy* (1992), 63 Ohio St.3d 424, 451 n.11, 588 N.E.2d 819, 839;

*State v. Cook* (1992), 65 Ohio St.3d 516, 518, 605 N.E.2d 70, 76; *State v. Slagle*

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
CUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

(1992), 65 Ohio St.3d 597, 600, 605 N.E.2d 916, 922; and *State v. Williams* (1995), 73 Ohio St.3d 153, 168, 652 N.E.2d 721, 734. Federal courts facing this issue have also rejected the defense argument, *see, e.g.*, *Brown v. Dixon* (CA 4, 1989), 891 F.2d 490, 496-498 (cited by the Ohio Supreme Court in *Waddy*), *Bolder v. Armentrout* (W.D.Mo. 1989), 713 F.Supp. 1558, 1576-1577, and *Kordenbrock v. Scroggy* (E.D.Ky. 1988), 680 F.Supp. 867, 911-912.

The limitation on peremptory challenges as set forth in *Batson v. Kentucky* (1986), 476 U.S. 79, would require that peremptory challenges not be used to exclude a member of a particular minority (racial or ethnic) for discriminatory purpose. Other than the limitation established in *Batson*, however, it is "the ordinary rule that a prosecutor may use his peremptory strikes for any reason at all." *Brown v. North Carolina* (1986), 479 U.S. 940 (O'Connor, J., concurring in denial of certiorari). Thus, aside from *Batson*, the right of peremptory challenge is entirely discretionary; a plurality of the United States Supreme Court would apparently agree that "nothing in *Batson* suggests that courts may examine a prosecutor's motives whenever he has excluded peremptorily those whom the court may not remove for cause." *Gray v. Mississippi* (1987), 481 U.S. 648, 672 (Powell, J., concurring opinion, in which three other justices concurred; see also *id.*, 481 U.S. at 679-680 (Scalia, J., dissenting opinion).

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

WHEREFORE, the defendant's motion should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this 11th day of July, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

'OHN F. HOLCOMB
|ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO : CASE NO. CR95-12-1111

FILED

CA96-05-0094

Plaintiff '96 JUL 11 PM 2:43 STATE OF OHIO
COUNTY OF BUTLER

vs. T. MARK BADEN COURT OF COMMON PLEAS
CLERK OF COURTS (Moser, J.)
FILED in Common Pleas Court
BUTLER COUNTY, OHIO

LAHRAY THOMPSON

MEMORANDUM IN OPPOSITION TO DEFENDANT'S

Defendant JUL 11 1996 MOTION TO PROHIBIT ANY REFERENCES
T. MARK BADEN TO THE FIRST PHASE AS THE "GUILT PHASE"
CLERK

: : : : : : : : : : :

Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the
defendant's motion to prohibit any reference to the first stage of trial as the
"guilt phase", filed herein on April 18, 1996, says that the defendant's motion
is not well taken.

Defendant's motion is backed by neither law nor effective argument. It is
implausible that reference to the first stage of a capital trial where the issue
of guilt *vel non* is determined will influence the jury's verdict, *see State v.*
*Campbell* (1994), 69 Ohio St.3d 38, 51, 630 N.E.2d 339, 352. The Court and parties
will refer to this stage of trial as "the guilt phase," if at all, in a context
of explaining in voir dire that there will be two separate parts of the trial,
the first of which determines whether defendant is guilty or not guilty of
aggravated murder, with or without specifications, or guilty or not guilty of any
other offenses charged or any lesser included offenses.

It would be quite inaccurate to label this stage of the proceedings the
"trial phase" or "evidentiary phase" inasmuch as it takes *both* phases to
constitute the "trial," and evidence is to be recieved at both phases. The

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

'N F. HOLCOMB
P    CUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

defense suggestion that this be labeled the "fact-finding" stage, aside from being unwieldy, is likewise inaccurate as the jury in determining sentence in the second stage of the proceedings will also determine whether the proffered mitigating evidence is "fact."

WHEREFORE, the defendant's motion should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

## PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _____ day of _____, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PR       JTING ATTORNEY

16 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO            :      CASE NO. CR95-12-1111

            FILED

           CA96-05-0094

Plaintiff  '96 JUL 11 PM 2 41    STATE OF OHIO

vs.        T. MARK Filed in Common Pleas Court    COUNTY OF BUTLER

       CLERK Butler County, OH    COURT OF COMMON PLEAS

            (Moser, J.)

LAHRAY THOMPSON       JUL 11 1996

          MARK BADEN

Defendant     T. MARK BADEN CLERK :   MEMORANDUM IN OPPOSITION TO
                            DEFENDANT'S MOTION TO PROHIBIT
                            DEATH QUALIFICATION UNTIL PROSECUTION
                            SHOWS PROBABLE CAUSE THAT CASE
                            WILL PROCEED TO MITIGATION

     :   :   :   :   :   :   :   :   :   :   :   :

     Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the
defendant's motion to prohibit death qualification of the jury unless and until
the prosecution has shown probable cause that the case will proceed to mitigation
phase, filed herein on April 4, 1996, says that defendant's argument is not well
taken. While defendant's ploy is to eliminate death-qualification of jurors
altogether, it is well-established that death qualification is constitutionally
proper, see *State v. Jenkins* (1984), 15 Ohio St.3d 164, 473 N.E.2d 264, paragraph
two of the syllabus; see also *State v. Grant* (1993), 67 Ohio St.3d 465, 476, 620
N.E.2d 50, 64. The United States Supreme Court has refused to accept the
argument that the exclusion of "*Witherspoon*-excludables" (jurors whose opposition
to capital punishment makes them unable to fairly sit as jurors and apply the
law) results in an unrepresentative jury on the issue of guilt or increases the
risk of conviction. *Lockhart v. McCree* (1986), 476 U.S. 816; see also
*Witherspoon v. Illinois* (1968), 391 U.S. 510, 517-518, and *Bumper v. North
Carolina* (1968, 391 U.S. 543, 545.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

16 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6558

-2-

Before enactment of the current death penalty statutes, the proposition that a voir dire procedure conducted pursuant to *Witherspoon* would result in a conviction-prone jury was rejected by the Ohio Supreme Court in *State v. Carver* (1972), 30 Ohio St.2d 280, 59 O.O.2d 343, 285 N.E.2d 26, where the Court reasoned that such a procedure would not have imbedded in the minds of the jurors that defendant was guilty and that they will merely be determining the penalty. *Id.* In *State v. Jenkins*, the Court re-examined the issue and specifically held, at paragraph two of the syllabus, "to death qualify a jury prior to the guilt phae of a bifurcated capital prosecution does not deny a capital defendant a trial by an impartial jury."

Defendant's only citation in support of his proposition was *Grigsby v. Mabry* (E.D.Ark. 1983), 569 F.Supp. 1273; defendant fails to note, however, that the result in *Grigsby* was nullified by the United States Supreme Court in *Lockhart v. McCree*, supra.

The defendant engages in the absurd assumption that the State would "secure a capital indictment for the sole purpose of enhancing the chances of conviction." (*Sic*, Defense Memorandum at page 4.) This derogates the role of the grand jury in determining probable cause for the charges set forth in the indictment, as well as personally insults the prosecutors in this case. There should rather be a presumption that the grand jurors and prosecutors competently and faithfully performed their legal and ethical duties, contrary to the defendant's assumption that they did not.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

Failing in his argument to block death-qualification of the jury, defendant in the alternative seeks, in effect, a second "preliminary hearing" at which the prosecution should again establish probable cause that the defendant is guilty of aggravated murder in violation of R.C. 2903.01 with one of more R.C. 2929.04(A) specifications. This should be denied, for the reason that no such redundant procedure is provided for in the Ohio statutes or procedural rules governing capital trials, and the Court cannot create a procedure from the void, see *State v. Penix* (1987), 32 Ohio St.3d 369, 372-373, 513 N.E.2d 744, 747-748 (where no statutory procedure to reimpanel the trial jury for a resentencing hearing after reversal on appeal, "we may not create such a procedure out of whole cloth").

WHEREFORE, the defendant's motion should be denied.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-4-

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _14th_ day of _July_, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

16 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO           :        CASE NO.  CR95-12-1111

                    FILED              CA96-05-0094
        Plaintiff       :        STATE OF OHIO
                                 COUNTY OF BUTLER
    vs.        '96 JUL 11 PM 2   COURT OF COMMON PLEAS
                                 (Mosen, J.)
              T. MARK BADEN
              CLERK OF this Court
LAHRAY THOMPSON  FILED In Common Pleas
              BUTLER COUNTY, OHIO
                         :       MEMORANDUM IN OPPOSITION TO
        Defendant        JUL 11 1996  DEFENDANT'S MOTION TO STRIKE
                                 AGGRAVATING CIRCUMSTANCES
              T. MARK BADEN
              CLERK     :   :   :   :   :   :   :   :   :

    Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's motion to strike aggravating circumstances under R.C. 2929.04(A)(3),

(7) filed herein on April 4, 1996, says that the defendant's arguments are not

well taken.

    Defendant's  argument  is  nothing  more  than  an  attack  on  the

constitutionality of the Ohio death penalty statutes.  The Supreme Court of Ohio

has repeatedly rejected such arguments and has held the death penalty statutes

constitutional in many of the more than one hundred capital cases decided by the

Court, from the detailed analysis in *State v. Jenkins* (1984), 15 Ohio St.3d 164,

167-179, 473 N.E.2d 264, 272-281, and at paragraph one of the syllabus, through

the more recent summary dispositions of this issue in *State v. Loza* (1994), 71

Ohio St.3d 61, 84, 641 N.E.2d 1082, 1106, and most recently, *State v. Fautenberry*

(1995), 72 Ohio St.3d 435, 443, 650 N.E.2d 878, 885, and *State v. Carter* (1995),

72 Ohio St.3d 545, 560-561, 651 N.E.2d____.

    Summary disposition of these time-worn arguments is appropriate; this

Court, like the Ohio Supreme Court, should not "waste its valuable judicial

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

resources discussing what continues as well-settled law," *State v. Lawson* (1992),

64 Ohio St.3d 336, 351, 595 N.E.2d 902, 913. *See also State v. Hawkins* (1993),

66 Ohio St.3d 339, 342-343, 612 N.E.2d 1227, 1230; *State v. Bonnell* (1991), 61

Ohio St.3d 179, 181, 573 N.E.2d 1082, 1085; and *State v. Poindexter* (1988), 36

Ohio St.3d 1, 3-4, 520 N.E.2d 568, 571.

WHEREFORE, the defendant's motions should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
SECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

## PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _11th_ day of _July_, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO                    :    CASE NO.   CR95-12-1111
                         FILED              CA 96-05-0094
        Plaintiff                    STATE OF OHIO
                 '96 JUL 11  PM 2 47 COUNTY OF BUTLER
    vs.                              COURT OF COMMON PLEAS
                    T. MARK BAILEY   (Moser, J.)
                    CLERK OF COURTS

LAHRAY THOMPSON

        Defendant                    MEMORANDUM IN OPPOSITION TO
                                     DEFENDANT'S CONSTITUTIONAL
                                     MOTION TO DISMISS

    :   :   :   :   :        :   :   :   :   :

        Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the

defendant's constitutional motion to dismiss filed herein on April 18, 1996, says

that the defendant's arguments are not well taken.

        Defendant's argument engages in a general attack on the constitutionality

of the Ohio death penalty statutes.  The Supreme Court of Ohio has repeatedly

rejected such arguments and has held the death penalty statutes constitutional

in many of the more than one hundred capital cases decided by the Court, from the

detailed analysis in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 167-179, 473

N.E.2d 264, 272-281, and at paragraph one of the syllabus, through the more

recent summary dispositions of this issue in *State v. Loza* (1994), 71 Ohio St.3d

61, 84, 641 N.E.2d 1082, 1106, *State v. Fautenberry* (1995), 72 Ohio St.3d 435,

443, 650 N.E.2d 878, 885. and *State v. Carter* (1995), 72 Ohio St.3d 545, 560, 651

N.E.2d 965, 979.

        Summary disposition of these time-worn arguments is appropriate; this

Court, like the Ohio Supreme Court, should not "waste its valuable judicial

resources discussing what continues as well-settled law," *State v. Lawson* (1992),

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

64 Ohio St.3d 336, 351, 595 N.E.2d 902, 913.  *See also State v. Hawkins* (1993),

66 Ohio St.3d 339, 342-343, 612 N.E.2d 1227, 1230; *State v. Bonnell* (1991), 61

Ohio St.3d 179, 181, 573 N.E.2d 1082, 1085; and *State v. Poindexter* (1988), 36

Ohio St.3d 1, 3-4, 520 N.E.2d 568, 571.

WHEREFORE, the defendant's motion to dismiss should be overruled.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
CUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

## PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _14th_ day of _July_, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

16 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO          :     CASE NO. CR95-12-1111

                FILED      CA96-05-0094

      Plaintiff    :    STATE OF OHIO

'96 JUL 11 PM 2 46 COUNTY OF BUTLER

vs.                  COURT OF COMMON PLEAS

    T. MARK BADEN    (Moser, J.)

    CLERK OF COURTS

LAHRAY THOMPSON        MEMORANDUM IN RESPONSE TO

                  DEFENDANT'S MOTION TO COMPEL

      Defendant        PROSECUTING ATTORNEY TO

                  DISCLOSE DEATH PENALTY DATA

:   :   :   :   :   :   :   :   :   :   :

Now comes John F. Holcomb, Prosecuting Attorney, and in response to the defendant's motion to compel the Prosecuting Attorney to disclose death penalty data, filed herein on April 18, 1996, says as follows:

Defendant's motion is based on a faulty premise and is not well taken. First of all, the trial court does not engage in the type of proportionality review of the case at bar with other cases as contemplated by R.C. 2929.05(A), which is strictly an undertaking of the appellate and Supreme Courts. Secondly, the idea that any court (trial, appellate, or Supreme Court) will consider cases in which the death penalty was not imposed for comparative proportionality review purposes, is simply wrong. *See* *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 443, 650 N.E.2d 878, 885, (rejecting the so-called "lucky ten" argument, that others in the jurisdiction of the court were similarly indicted and/or convicted of aggravated murder and aggravated robbery but failed to receive the death penalty), citing *State v. Sowell* (1988), 39 Ohio St.3d 322, 335, 530 N.E.2d 1294, 1308, *State v. Steffen* (1987), 31 Ohio St.3d 111, 123-124, 509 N.E.2d 383, 394-395, and *State v. Jenkins* (1984), 15 Ohio St.3d 164, 209, 473 N.E.2d 264, 304.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

Moreover, defendant's request for cases in which the death penalty was not imposed, such cases are not utilized in the appellate and Supreme Court's proportionality review under R.C. 2929.05(A), see *State v. Steffen*, supra, at paragraph one of the syllabus.

The Prosecuting Attorney therefore responds to the defendant's request with the following answer: to the knowledge of the Prosecuting Attorney, those cases in the Twelfth Appellate District in which the death penalty has been imposed and affirmed by that court are as follows.

> **State v. Davis** (May 27, 1986), Butler App. No. CA84-06-071,
> unreported, *remanded for resentencing*, (1988), 38 Ohio St.3d 361,
> sentence affirmed in **State v. Davis** (Oct. 29, 1990), Butler App. No.
> CA89-09-123, unreported, *affirmed*, (1992), 63 Ohio St.3d 44;
> **State v. Depew** (June 29, 1987), Butler App. No. CA85-07-075,
> unreported, *affirmed*, (1988), 38 Ohio St.3d 275;
> **State v. Watson** (Mar. 31, 1989), Butler App. No. CA88-01-0`4,
> unreported, *death sentence reversed*, (1991), 61 Ohio St.3d 1
> **State v. Lawson** (June 4, 1990), Clermont App. No. CA88-05-044,
> unreported, *affirmed*, (1992), 64 Ohio St.3d 336;
> **State v. Williams** (Nov. 2, 1992), Butler App. No. CA91-04-060,
> unreported, *appeal now pending*, Case No. 93-007;
> **State v. Loza** (Apr. 19, 1993), Butler App. No. CA91-11-198,
> unreported, *affirmed*, (1994), 71 Ohio St.3d 61;
> **State v. Webb** (May 24, 1993), Clermont App. No. CA91-08-053,
> unreported, *affirmed*, (1994), 70 Ohio St.3d 325; and
> **State v. Benge** (Dec. 5, 1994), Butler App. No. CA93-06-116,
> unreported, *appeal now pending*, Case No. 95-112.

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PRO′  ′TING ATTORNEY

5 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

Wherefore, except as answered above, the defendant's motion should be denied.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

PROOF OF SERVICE

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this _____ day of _____, 1996.

DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PRO'   TING ATTORNEY

S SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

STATE OF OHIO :  CASE NO.  CR95-12-1111

                FILED     CA96-05-0094

       Plaintiff        :   STATE OF OHIO

           '86 JUL 11 PM 2 4 COUNTY OF BUTLER

vs.            :   COURT OF COMMON PLEAS

        T. MARK BALEN  (Moser, J.)

        CLERK OF COURTS

LAHRAY THOMPSON        <u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S</u>
                      <u>MOTION TO PROHIBIT ANY EVIDENCE</u>
       Defendant       <u>BEARING ON CHARACTER OF THE VICTIM</u>
                      <u>OR VICTIM IMPACT</u>

  :  :  :  :  :  :  :  :  :

Now comes John F. Holcomb, Prosecuting Attorney, and in opposition to the defendant's motion to prohibit any evidence bearing on the character of the victims or victim impact, filed herein on April 4, 1996, says that the defendant's argument is not well taken.

Defendant's argument fails to consider the fact that the cases on which he relies, *Booth v. Maryland* (1987), 482 U.S. 496, and *South Carolina v. Gathers* (1989), 490 U.S. 805, were overruled in *Payne v. Tennessee* (1991), 501 U.S. 808, which held that the Eighth Amendment erects no *per se* bar to the admission of victim-impact evidence. The Ohio Supreme Court has recognized this fact in numerous cases, *see, e.g.*, *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 438-439, 650 N.E.2d 878, 882.

In *Fautenberry*, the Court held that "evidence which depicts *both* the circumstances surrounding the commission of the crime and also the impact of the murder on the victim's family may be admissible during *both* the guilt and the sentencing phases." *Id.* (Emphasis per the Court in *Fautenberry*.)  The Court cited *State v. Loza* (1994), 71 Ohio St.3d 61, 82, 641 N.E.2d 1082, 1105, as an example

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

6 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-2-

where evidence relating to victim-impact (*e.g.*, the fact that one of the victims was pregnant) was admissible in the guilt phase of trial as facts surrounding the offense, and thus comments by the prosecutor in the sentencing phase relating to such victim-impact evidence was permissible. The Court in *Fautenberry* carefully pointed out that expressions of a witness's opinion as to the appropriate sentence, *e.g.*, that the victim's family desires that defendant be sentenced to death (as allowed by statute in most non-capital cases pursuant to R.C. 2943.041) are not admissible in a capital case. *Fautenberry*, 72 Ohio St.3d at 439, 650 N.E.2d at 882; *accord*, *State v. Huertas* (1990), 51 Ohio St.3d 22, 553 N.E.2d 1058, syllabus. However, the Court in *Fautenberry* specifically allowed testimony from the victim's family members and employer concerning the impact of the victim's death on his survivors. *Fautenberry*, *id.* at 438-439, 650 N.E.2d at 881-882.

Defendant is correct in stating that a pertinent character trait of the victim is admissible as provided in Evid.R. 404(A)(2), which provides:

> "Evidence of a pertinent trait of character of the victim of the crime offered by the accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible ***."

Thus, the admissibility of character evidence may depend on the issues raised in the case, which may make the victim's character relevant. This issue, therefore, cannot be determined as a sterile, abstract question without reference

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
ECUTING ATTORNEY

216 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

-3-

to the facts to be developed at trial.

WHEREFORE, the defendant's motion should be denied.

Respectfully submitted,

JOHN F. HOLCOMB (0001499)
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO


DANIEL A. NASTOFF (0056263)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO
216 Society Bank Building
Hamilton, Ohio 45012-0515
Telephone (513) 887-3474

<u>PROOF OF SERVICE</u>

This is to certify that a copy of the foregoing Memorandum was sent to Ronald C. Morgan, 110 N. Third St. Hamilton, Ohio 45011, and Lynn Cunningham, 616 Dayton St., Hamilton, Ohio 45011 by U.S. regular mail this 11th day of July, 1996.


DANIEL J. GATTERMEYER (0031305)
ASSISTANT PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

JOHN F. HOLCOMB
PROSECUTING ATTORNEY

6 SOCIETY BANK BUILDING
P.O. BOX 515
HAMILTON, OHIO 45012

1188

1   Judge on that as well with regard to some of the

2   specifications in this case.  Specifically gun

3   specifications.  And I'll address that again when

4   we get back there, ladies and gentlemen, those are

5   all the elements of that aggravated robbery.

6          And these are, this is part and parcel of

7   the first count of aggravated murder.  Let's talk

8   about the specifications to these murder counts.

9          These are the specifications that the law

10  said must exist to make someone eligible for the

11  death penalty.  In addition to finding him guilty

12  of aggravated murder, if this is true, he's

13  eligible for the death penalty.  What this says is

14  that Ronald Gosser was a witness to an offense, and

15  that he was purposely killed to prevent his

16  testimony in any criminal proceeding regarding that

17  offense.

18         And that the aggravated murder of Ronald

19  Gosser was not committed during the commission,

20  attempted commission, or flight immediately after

21  the commission, or attempted commission of the

22  offense to which Ronald Gosser was a witness.

23  Okay.  Break that down.

24         He was a witness to the DeAngelo

25  shooting.  Okay.  His murder was not -- did not

EXHIBIT

N

CINCINN                          INC.
Fairfield: 737-0880              USA: (800) 569-7888

1189

1    occur during the flight, during the commission of

2    the shooting or during the flight immediately

3    thereafter.  His murder occurred some 45 minutes

4    later, after they had left the area one time and

5    had returned.

6         That element of that, that part of that

7    is clearly satisfied.  And that Ronald Gosser was a

8    witness to an offense.  That's the heart and soul

9    of this case.  It's what explains everyone's

10   actions.  We know that from Lieutenant Murray, we

11   know it from Ronald Gosser himself.  We know it

12   from his fiancee.  We know it because of the way he

13   pleads with his killers.  We know that from the way

14   he pleads with them.  I'm with you, I'm with you.

15   That tells us that he's a witness and that he was

16   purposely killed to prevent his testimony in any

17   criminal proceeding regarding that offense.

18        Well, see, John Barefield didn't want to

19   say on the stand when he was being crossed that he

20   wanted to kill Ron Gosser.  Was it ridiculous, was

21   it absolutely ridiculous that he would deny that?

22   He shot him in the back of the head, he didn't want

23   to kill him.  After he falls to the ground,

24   shooting him six more times in the chest, and, boy,

25   never had the intent to kill the guy?  Is that just

CINCINNATI STENOGRAPHIC, INC.
Fairfield: 737-0880  Dayton: 228-6900  USA: (800) 569-7888

1190

1   absolutely ridiculous?  That has no weight.

2   What has weight is what you know from Ron

3   Gosser, and what you know from the other

4   eyewitnesses presented by the State in this case.

5   There is another way in this case that Lahray

6   Thompson along with his partners are eligible for

7   the death penalty, this is another specification.

8   There are a number of these laid out in

9   the law that have to be met.  But the aggravated

10  murder of Ronald Gosser was committed while Lahray

11  Thompson acting with prior calculation and design

12  in the commission of the aggravated murder, Ronald

13  Gosser was committing or attempting to commit the

14  offense of aggravated robbery.

15  Okay.  If you intentionally, purposely

16  kill somebody while you're committing the

17  aggravated robbery, that makes you eligible for the

18  death penalty.  It's a felony murder type concept.

19  Okay.  It's not simply because you're doing the

20  aggravated robbery.  But you know, there are

21  inferences that you make in that area, about the

22  type of force involved, the consequences of putting

23  a gun to the back of somebody's head and

24  discharging it.

25  I mean, there are inferences you make

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6576

1191

1    about what the people were intending. Prior

2    calculation and design. It is the same prior

3    calculation and design which existed before.

4         Lahray Thompson knew why they were

5    looking for Ronald Gosser, he knew that, that

6    wasn't a mystery. It wasn't, well, let's go out

7    and find Ron Gosser because we wanted to invite him

8    to a party, it wasn't anything like that.

9         It was find the dude that talked to the

10   police. Find the guy that's ratting on us, that

11   dare tells on me. And Lahray Thompson knew that

12   that's what they were doing.

13        This is the third specification, which

14   makes it the death penalty eligible. It's that the

15   aggravated murder of Ronald Gosser was committed

16   for the purpose of escaping detection,

17   apprehension, trial or punishment for another

18   offense committed by Lahray Thompson with the

19   aggravated robbery.

20        Ladies and gentlemen, it's quite obvious

21   the intended effect of killing the fellow after you

22   robbed him, and it's going to definitely have the

23   effect of preventing his testimony, at least that's

24   what they're intending. They didn't fully have

25   that effect. They didn't know that.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6577

1192

1    Specification Four, that Lahray Thompson

2    had a firearm on his person or under his control

3    while committing the offense.  Joyce Jones saw him

4    with the firearm.  She did.  Ashley Gaither didn't

5    say she saw that.  She came up later, but you know,

6    under the law, on or about his person includes an

7    unarmed accomplice to an armed principal offender,

8    that's the law on a gun specification.

9        If you jointly join in the criminal

10   enterprise, and everybody knows that one has the

11   gun and that he's going to use the gun in

12   committing the offense, they're all responsible.

13   You'll see that theory is, runs throughout the

14   law.  You want to discourage complicity.  People

15   are less likely to be successful without help.  You

16   discourage that.

17       On the final count, ladies and gentlemen

18   of the jury, is the felonious assault of Barry

19   DeAngelo.  And ladies and gentlemen, this is the

20   motive count.  That's basically what it is.  It's

21   the motive.  Okay.  Butler County, Ohio, use of a

22   deadly weapon, a .22 revolver, we've got the

23   evidence of the bullets seized from the vehicle,

24   we've got the gun and we've got the ballistics

25   evidence that ties it to the shooting and to the

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6578

1205

1  star witnesses? The star witnesses that they talk

2  to you about in their opening statement? The star

3  witnesses are Lawrence Jones. Lawrence Jones tells

4  you what he's really all about, not on the stand,

5  but in his letter that he writes to Lahray, I'm

6  going to clear your name right off the map. Blood

7  are thicker than water. You my family. That's

8  there, it's his writing. He wrote it to Lahray.

9         They aren't set to snitch, if you got no

10  choice, tell them John-John did it. Well, how does

11  he know, he wasn't there. How is he going to say

12  that? He can't say that, because he doesn't know.

13  If they ask you, tell them you weren't nowhere

14  around.

15         Well, why do you have to tell a person

16  that they weren't anywhere around if they weren't

17  anywhere around. Wouldn't they know that? Why do

18  you have to tell them that? You see, the letter

19  tells you where Lawrence Jones is coming from. You

20  notice he made a point, a real point of saying he

21  was the one wearing a checkered shirt?

22         Why does he say that, why does he offer

23  that as an important factor? John Barefield, John

24  Barefield is articulate, and a forceful speaker,

25  and he makes for real interesting drama. But do

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
APPENDIX - Page 6579

1206

1    you think for one second that the man who already

2    murdered one witness for trying to tell the truth,

3    that the man who has it in him to put a gun

4    directly to the back of somebody's head and murder

5    them would think twice about telling you a lie?

6    Would that be important to him?  Would he care?

7            Does he have a value system that is

8    anything like, anything like yours?  No.  He has a

9    code he lives by, he told you about his code.  He

10   wouldn't think twice about it, and you know why,

11   he's already done it.

12           He already sat in that same chair in

13   front of a jury just like you and lied.  And you

14   know he wanted to just dismiss it, he just wanted

15   to be able to say I lied, I told a lot of lies and

16   have it be over with, you know, it's just not that

17   simple.  He didn't just tell one lie, he told about

18   50 pages worth of lies in detail and he had added

19   some details.

20           And now he comes in this time, I'm

21   telling you the truth, because I have nothing to

22   gain and everything to lose.  Well, ladies and

23   gentlemen, we know what he does when he has

24   something to lose, he lies and he advised anybody

25   else, anybody else, he said that, anybody else who

1207

1    is facing the death penalty needs to lie, too, you

2    need to do the same thing, pardon my language, so

3    save your ass, that's his advice, get on there, get

4    your girlfriend in, get whoever in, and lie.

5        .    And you know, he's already won his

6    victory when he lied his way out of the death

7    penalty in this case. He's won his victory.

8    Ladies and gentlemen, we know from John Barefield

9    that, if we didn't know before, that you build an

10    alibi by lying, by getting your friends and family

11    to come in, that's important when you lie.

12        You know, it's a mockery, it's an

13    absolute mockery. A lie is nothing but a tool.

14    The truth has no independent value. A lie is a

15    tool that gets yourself out of trouble. Is this

16    Defendant above that? Is Lahray Thompson above

17    that? When he was arrested, I'm Julius, my name is

18    Julius. His name isn't Julius, is it? It's a

19    lie.

20        And he told you why he lied, because he

21    didn't want to be questioned about this offense.

22    And you know the playing thing is, in a matter of

23    seconds when he was arrested, he assembled a crowd

24    and he called to the crowd to verify that he was

25    Julius, say I'm Julius, I'm Julius.

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                         :  Case No. CR1983-12-0614

    Plaintiff-Respondent,          :  Judge Nastoff

v.                                     :  STATE OF OHIO'S MEMORANDUM IN
                                          OPPOSITION TO PETITIONER'S
VON CLARK DAVIS,                       :  MOTION FOR RECUSAL

    Defendant-Petitioner.          :

### INTRODUCTION

    Among the motions currently pending before the Court is Petitioner's motion seeking the recusal of the Honorable Judge Andrew Nastoff. The State of Ohio urges the Court to resolve this motion prior to any others. The Court should deny the motion, as recusal is not warranted now and was not warranted in 2009.

### ARGUMENT

    The crux of Petitioner's argument is that because Petitioner claims that the attorneys that represented him at his 2009 sentencing hearing provided ineffective assistance of counsel by failing to seek Judge Nastoff's recusal, "it would be unfair" for the Court to preside over the petition. This argument, unsupported by case law, is without merit.

    The postconviction relief petition will require the Court to determine whether sentencing counsel should have sought Judge Nastoff's recusal. In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was deficient, and that the deficient performance deprived the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 689. The first prong of *Strickland*, then, will require this Court only to determine whether, had counsel made the recusal motion, it would or should have been granted. Petitioner does not suggest that the Court cannot fairly make this determination. In fact, had sentencing counsel taken the action Petitioner now insists

OFFICE OF
PROSECUTING ATTORNEY
BUTLER COUNTY, OHIO

MICHAEL T. GMOSER
PROSECUTING ATTORNEY

GOVERNMENT SERVICES CENTER
315 HIGH ST. - 11TH FLOOR
P.O. BOX 515
HAMILTON, OHIO 45012

**EXHIBIT**
**2**

they should have, the Court would have been required to decide the motion in 2009.[1]  If the Court

determines that such a motion would have been granted, that is the end of the inquiry, as the Court

need not undertake a prejudice analysis.  If a biased judge presided over the sentencing hearing,

structural error—mandating reversal without resort to harmless error analysis—would have occurred.

*See, e.g., Turney v. Ohio* (1927), 273 U.S. 510.  Thus, this Court will not be required to determine

whether Petitioner was prejudiced as a result of Judge Nastoff's participation in his sentencing

hearing.[2]

      What is more, a motion for recusal in 2009 would have been denied as frivolous.  Petitioner

has pointed to no authority for the proposition that a judge is barred from presiding over a criminal

trial because he previously prosecuted the defendant's sister's son.  Indeed, Ohio law does not even

require the recusal of a judge when he has previously prosecuted the defendant.  In *In re*

*Disqualification of Hedric*, 127 Ohio St.3d 1227, 2009-Ohio-7208, Chief Justice Moyer was asked

to disqualify a judge from presiding over a criminal trial in which the defendant was charged with

felony OVI.  According to the materials presented to the Chief Justice, Judge Hedric had previously

prosecuted the defendant for OVI, and the conviction obtained as a result of that prosecution was to

be used as a predicate for the new felony charge.  Chief Justice Moyer noted that a "judge is

presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be

---

[1]Notably, Petitioner does not argue that counsel should have sought the disqualification of
the Court under R.C. § 2701.03.  Such a motion would have been resolved by the Chief Justice of
the Ohio Supreme Court

[2]As set forth in Respondent's Motion for Summary Judgment, the Court should not reach
any of the merits of Petitioner's ineffective assistance/recusal claim, because the claim is barred
by res judicata.

2

compelling to overcome these presumptions." *Id.* at ¶ 11, quoting *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5.

The result in *Hedric* is consistent with the result of cases from around the country holding that a judge need not recuse himself because he previously prosecuted the defendant. *Del Vecchio v. Illinois Dept. of Corrs.* (C.A.7 1994), 31 F.3d 1363, 1375 (en banc) ("Prosecuting a defendant in one case is not the kind of action from which we can presume bias or prejudgment in a future case."); *Jenkins v. Bordenkircher* (C.A.6 1979), 611 F.2d 162, 167 (finding no rule that "it is a denial of due process for a judge to preside over a jury trial in a criminal case where the judge, as a prosecutor, had previously been involved in proceedings against the defendant in entirely unrelated cases"); *People v. Curkendall* (2004), 13 A.D.3d 710, 713, 783 N.Y.2d 707 (finding "no merit in defendant's contention that he was denied a fair trial by the County Judge's refusal to recuse himself from the case because he had prosecuted defendant 14 years earlier on a similar offense when he was the District Attorney").

Just as in *Hedric*, courts have held that even when the judge previously prosecuted the defendant for a crime that is now being used as either a predicate offense or a sentencing enhancement, recusal is not required. *Johnson v. State* (1982), 274 Ark. 572, 575-76, 626 S.W.2d 947 (disqualification of judge not required although judge had actively prosecuted defendant in three of the four prior felony convictions relied on for enhancement of punishment); *State v. Zamora* (1997), 129 Idaho 817, 818, 933 P.2d 106 (no disqualification needed where judge prosecuted defendant in prior case that was being used as basis for habitual offender charge); *Dishman v. State* (Ind. 1988), 525 N.E.2d 284, 285-86 (no disqualification when judge had prosecuted defendant twice previously and prior convictions were the basis of habitual offender charge).

3

## CONCLUSION

Recusal was not appropriate in 2009. Likewise, it is not appropriate now. Defendants should

not be able to judge-shop by raising claims seeking to impugn the impartiality of the Court when

those claims have no basis in law or fact. Accordingly, Petitioner's motion should be denied.

Respectfully submitted,

**MICHAEL T. GMOSER (0002132)**
**Butler County Prosecuting Attorney**

**Donald R. Caster (0077413)**
**Assistant Prosecuting Attorney**
**Michael A. Oster, Jr. (0076491)**
**Chief, Appellate Division**
Government Services Center
315 High Street, 11th Floor
Hamilton, OH 45012-5202
Telephone: (513) 785-5202

## PROOF OF SERVICE

This is to certify that a copy of the foregoing pleadings was served upon:

Kurt Gatterdam
Erik P. Henry
Carpenter, Lipps & Leland, LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215

by ordinary U.S. mail this 10th day of November 2011.

**Donald R. Caster (0077413)**

4

## CARPENTER LIPPS & LELAND LLP

ATTORNEYS AT LAW

280 PLAZA, SUITE 1300

280 NORTH HIGH STREET

COLUMBUS, OHIO 43215

WWW.CARPENTERLIPPS.COM

TELEPHONE: (614) 365-4100

180 NORTH LASALLE
SUITE 2640
CHICAGO, ILLINOIS 60601
TELEPHONE (312) 777-4300

1025 CONNECTICUT AVENUE N.W.
SUITE 1000
WASHINGTON, DC 20036-5417
TELEPHONE (202) 365-2808

WRITER'S DIRECT NUMBER:

(614) 365-4138
henry@carpenterlipps.com

December 6, 2011

**Via Federal Express**

Mary L. Swain
Butler County Clerk of Courts
315 High Street, Fifth Floor
Hamilton, OH 45011

*FILED BUTLER CO.*
*COURT OF COMMON PLEAS*

*DEC 0 7 2011*

*MARY L SWAIN*
*CLERK OF COURTS*

Re:    State of Ohio v. Von Clark Davis
       Butler County Court of Common Pleas, Ohio
       Case No. CR-1983-12-0614

Dear Clerk of Courts:

Enclosed for filing in the above matter, please find the following:

1.    Defendant-Petitioner Von Clark Davis' Memorandum In Opposition To Plaintiff-Respondent's Motion To Dismiss Or In The Alternative For Summary Judgment;

2.    Defendant-Petitioner's Reply Memorandum In Support Of Motion For Leave Of Court To Conduct Discovery; and

3.    Defendant-Petitioner's Reply Memorandum In Support Of Motion For Recusal.

Please return a time-stamped copy of each in the postage prepaid envelope enclosed.

Thank you for your assistance. Please call with any questions or concerns.

*Copies Sent to Judge*
*Only 1 copy of each Sent*

Very truly yours,

Erik P. Henry

Enclosure

cc:    Donald R. Caster, Esq. (w/enclosure)

050-384/301461

```
EXHIBIT
3
```

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. CR-1983-12-0614 |
| | : | |
| Plaintiff-Respondent, | : | Judge Nastoff |
| | : | |
| v. | : | |
| | : | |
| VON CLARK DAVIS, | : | CAPITAL CASE |
| | : | |
| Defendant-Petitioner. | : | |

## DEFENDANT-PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECUSAL

Defendant-Petitioner Von Clark Davis, through counsel, hereby submits this Reply Memorandum to Plaintiff-Respondent's Memorandum in Opposition to Defendant-Petitioner's Motion for Recusal.

At the outset, it should be noted that undersigned counsel did not file the recusal motion and raise the issue in the Post-Conviction Petition for purposes of "judge shopping" as the State suggests. (State's Memo p.4). Neither Mr. Gatterdam nor Mr. Henry have ever appeared in the Butler County Court of Common Pleas, nor are either familiar with or personally know any of the judges on the bench. Davis' counsel have the utmost respect for the judiciary generally and this Court specifically. Davis' counsel have a job to raise all issues, even those that may not be easy to address, on behalf of their client. Thus, the State is misplaced to suggest that Davis and his counsel were "judge shopping" in raising this issue.

Instead, when reviewing the record, it immediately became apparent to counsel and Davis' expert that at a minimum, there **appeared** to be bias, prejudice, or impropriety with this Court deciding Davis' ultimate fate. *In re Disqualification of Floyd*, 101 Ohio St.3d 1215, 2003-

Ohio-7354, ¶ 10. Because of this concern, counsel deemed it necessary to raise the issue because these appearances of bias, prejudice, or impropriety should be avoided to protect the right to a fair trial. *Id.*; *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34.

This Court prosecuted a family member of Mr. Davis, not for OVI but for capital murder. This Court, to do its job effectively as a prosecutor, had to review the defense mitigation evidence and take issue with it. This Court had to attack and/or poke holes in the defense mitigation and argue for death. Then in 2009, this Court had to set all that aside and pretend it did not acquire information about Davis' family before. Now, this Court has to review all the issues raised in Davis' petition including whether this Court should have stayed on the case. To avoid the appearance of impropriety, particularly in deciding whether this Court should have stayed on the case, recusal is warranted.

The State relies upon *In re Disqualification of Hedric*, 127 Ohio St.3d 1227, 2009-Ohio-7208. (State's Memo p.2). However, *Hedric* is distinguishable from the instant case. In *Hedric*, the defendant was charged with felony OMVI, and the indictment alleged that the defendant had at least one other felony OMVI conviction and included a specification that the defendant had five or more prior OMVI convictions. *Id.* at ¶2. The defendant sought Judge Hedric's removal because while working as an assistant county prosecutor, Judge Hedric prosecuted one of the defendant's prior OMVI convictions. *Id.*

Importantly, when the defendant appeared before Judge Hedric, "he did not remember the defendant or his prior OMVI case." *Id.* at ¶8. By contrast, this Court acknowledged in open court remembering not only prosecuting Davis' nephew, but also arguing to the jury that the nephew should receive the death sentence. (Tr. Vol. II, p.131).

2

The decision in *Hedric* was not establishing a "rule" regarding disqualification. The Chief Justice did not say it would be inappropriate for disqualification, or a judge should not recuse, under circumstances similar to the instant case. The former Chief Justice has stated that "[t]he prior professional activities of a judge are not grounds for disqualification where the record fails to demonstrate the existence of a relationship or interest that clearly and adversely impacts on a party's ability to obtain a fair and impartial trial." *In re Disqualification of Cross* (1991), 74 Ohio St.3d 1228, 1228. Further, the Ohio Supreme Court has not found counsel ineffective for failing to object to a new judge/former prosecutor on a three-judge panel where the judge had no prior involvement with the case as a prosecutor. *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, ¶120.

However, the instant case is different because the record demonstrates a relationship that clearly and adversely impacted Davis' ability to obtain a fair and impartial trial. By being involved with the nephew's prosecution, this Court obtained knowledge of Davis' family and believed that Davis' nephew was a liar. (Exhibits M and N attached to Post-Conviction Petition). This Court also likely reviewed family mitigation in Thompson that would overlap in Davis' case. This is quite different than Judge Hedric's situation where he did not remember the defendant, or cases where the judge had no prior knowledge of the case despite working in the same prosecutor office.

Thus, to avoid even the appearance of bias, prejudice, or impropriety, and to ensure the unquestioned neutrality of an impartial judge to the parties, their counsel, and the public, this Court should not have been deciding Davis' fate and instead should have been removed from the case. It would be unfair to have this Court now rule on whether the Sixth Ground for Relief, or

3

any other grounds in the Post-Conviction Petition, should require a new penalty phase given the nature of the Sixth Ground. Death is different, for that reason, more process is due, not less.

Should this Court deny Davis' motion and remain on the case, then Davis respectfully requests that as part of the denial, it allow Davis and his counsel fourteen (14) days in which to file an affidavit with the Ohio Supreme Court per R.C. 2701.03.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: gatterdam@carpenterlipps.com
        henry@carpenterlipps.com

COUNSEL FOR DEFENDANT-PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Reply Memorandum in Support of Motion for Recusal was forwarded by first-class, postage prepaid U.S. Mail to Donald R. Caster, Assistant Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 6th day of December, 2011.

Kort Gatterdam

050-384-300172

4

COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

STATE OF OHIO,                                    *          Case Number: CR 1983 12 0614
                                                 *
                                                 *
      Plaintiff-Respondent,                      *          Judge Andrew Nastoff
                                                 *
vs.                                              *
                                                 *          **ORDER DENYING**
                                                 *          **DEFENDANT'S MOTION**
VON CLARK DAVIS,                                 *          **FOR RECUSAL**
                                                 *
      Defendant-Petitioner.                      *
                        * * * * * * * * * * * * * * * * * * *

This matter is before the Court upon Defendant's motion for recusal, filed December

7, 2011. After carefully considering the Defendant's basis for recusal, relevant Ohio case

law, and the Code of Judicial Conduct, the Court finds that the Defendant's motion is not

well taken. Defendant's motion for recusal is **DENIED**. The Court is aware that additional

motions remain pending in this matter; specifically, Defendant-Petitioner's motion for leave

to conduct discovery and Plaintiff-Respondent's motion for summary judgment. The Court

will issue rulings on each motion forthwith.

**SO ORDERED,**

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

                                                        Andrew Nastoff, Judge

1

**EXHIBIT**
4

cc:

Kort Gatterdam
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
*Counsel for Defendant-Petitioner*

Donald R. Caster
Assistant Butler County Prosecuting Attorney
315 High Street, 11th Floor
Hamilton, Ohio 45011

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

2

# The Supreme Court of Ohio

### OFFICE OF LEGAL RESOURCES
65 SOUTH FRONT STREET, COLUMBUS, OH 43215-3431

CHIEF JUSTICE
MAUREEN O'CONNOR

JUSTICES
PAUL E. PFEIFER
EVELYN LUNDBERG STRATTON
TERRENCE O'DONNELL
JUDITH ANN LANZINGER
ROBERT R. CUPP
YVETTE MCGEE BROWN

TELEPHONE 614.387.9560
TOLL FREE 800.826.9010
FACSIMILE 614.387.9569
www.supremecourtofohio.gov

January 11, 2012

Mary L. Swain
Butler County Clerk of Courts
315 High Street, 5th Floor
Hamilton, Ohio 45011

Re:     Affidavit of Disqualification against Judge Andrew Nastoff
         Butler County Court of Common Pleas Case No. CR 1983 12 0614
         *State of Ohio v. Von Clark Davis*
         Supreme Court File No.: 12-AP-004

Dear Ms. Swain:

Pursuant to Section 2701.03 of the Revised Code, notice is hereby given that the enclosed affidavit of disqualification was filed with the Clerk of the Supreme Court of Ohio on January 10, 2011.

The affidavit relates to the above matter pending in your court. You are respectfully requested to notify any parties to the case, or their counsel, who have not been served by the affiant, that the affidavit has been filed.

This matter will be handled by the Ohio Supreme Court's Office of Legal Resources. All future filings regarding this matter should be directed to the Office of Legal Resources located at 65 S. Front Street – 8th Floor, Columbus, Ohio 43215. If you have any questions, please contact me at 614-387-9560.

Sincerely,

James F. Bumbico
Master Commissioner

Enclosures

cc:     Kort Gatterdam, Esq.
         Honorable Andrew Nastoff

FILED

## IN THE SUPREME COURT OF OHIO

2012 FEB 22 AM 9:23

BUTLER COUNTY
CLERK OF COURTS

STATE OF OHIO,                                    Common Pleas Case No. CR-1983-12-0614

    Respondent,                                  From the Butler County
                                                  Court of Common Pleas
vs.
                                                  Supreme Court Case No. 12-AP-004
VON CLARK DAVIS,
                                                  **Judgment Entry**
    Petitioner.


       Kort Gatterdam, counsel for petitioner, has filed an affidavit with the Clerk of this Court under R.C. 2701.03 seeking to disqualify Judge Andrew Nastoff from acting on any further proceedings in case No. CR-1983-12-0614, a postconviction relief action now pending in the Court of Common Pleas of Butler County.

       Attorney Gatterdam contends that it would be unfair for Judge Nastoff to rule on Davis's petition for postconviction relief. Judge Nastoff presided over the three-judge panel that sentenced Davis to death. Gatterdam states that the postconviction petition currently before Judge Nastoff contains a claim that Davis's defense counsel were ineffective in not seeking to recuse Judge Nastoff from presiding over Davis's capital sentencing hearing. Gatterdam argues that, given the nature of the ineffective-assistance-of-counsel claim, Judge Nastoff should be disqualified from presiding over the underlying postconviction relief proceedings.

       Judge Nastoff has responded in writing to the concerns raised in the affidavit of disqualification. According to the judge, he is capable of deciding the underlying petition in a fair and impartial manner, and he asks that he be allowed to remain on the case.

       For the following reasons, no basis has been set forth for ordering the disqualification of Judge Nastoff.

**Relevant Facts**

In 1984, petitioner Davis was convicted of aggravated murder and sentenced to death. *See State v. Davis*, 63 Ohio St.3d 44, 584 N.E.2d 1192 (1992) (affirming death sentence). In 2007, the Sixth Circuit Court of Appeals reversed Davis's death sentence and remanded his case for a new sentencing hearing. *Davis v. Coyle*, 475 F.3d 761 (6th Cir.2007).

From September 8 through September 10, 2009, a new sentencing hearing was held before a three-judge panel of the Butler County Common Pleas Court, with Judge Nastoff sitting as the presiding judge. During the sentencing hearing, defense counsel called Davis's sister, Carol Smith, as a mitigation witness. Smith testified that her son, Lahray Thompson, had previously been convicted of aggravated murder. Prior to this, Judge Nastoff was not aware of the family connection between Davis and Thompson. The judge immediately informed all counsel that he had appeared as an assistant prosecuting attorney in Thompson's capital trial. After this disclosure, Davis's defense counsel advised Judge Nastoff that they were already aware of his prior involvement in Thompson's case and did not believe that further discussion was necessary. See affidavit of disqualification at ¶ 6; Judge's response at 2; Davis's motion for recusal at 2. At the conclusion of the sentencing hearing, the panel sentenced Davis to death. *See State v. Davis*, 12th Dist. No. CA2009-10-263 (affirming death sentence).

On October 21, 2011, Davis filed a petition for postconviction relief with the trial court. Davis claimed in the petition that his trial counsel rendered ineffective assistance for not seeking to recuse Judge Nastoff. In his Sixth Ground for Relief, Davis argued that his trial counsel should have requested that Judge Nastoff step aside from the penalty-phase hearing because he served as a prosecutor in the death penalty case of Davis's nephew and advocated for the nephew's death.

2

Davis also filed a motion requesting that Judge Nastoff recuse himself from deciding the postconviction-relief petition. Judge Nastoff denied the motion to recuse on January 6, 2012. See affidavit of disqualification, ex. 4. Following this denial, attorney Gatterdam filed the instant affidavit of disqualification on Davis's behalf.

### The Merits of the Affidavit of Disqualification

It is well settled that a judge who presided at trial will not be disqualified from hearing a petition for postconviction relief in the absence of evidence of bias, prejudice, or a disqualifying interest. *In re Disqualification of Kilbane*, 42 Ohio St.3d 602, 536 N.E.2d 1153 (1989); *In re Disqualification of Aubry*, 117 Ohio St.3d 1245, 2006-Ohio-7231, 884 N.E.2d 1095 (state and federal courts have been virtually unanimous in holding that a judge who presided over prior proceedings involving a party presently before the court will not be disqualified from presiding over later proceedings involving that same party absent a showing of actual bias). *See also* Flamm, Judicial Disqualification 949, Section 31.4 (1996) (it is generally held that, absent a statute that mandates otherwise, a convicted defendant has no absolute right to a new judge in post-conviction proceedings).

No factual basis for disqualification has been presented in the instant affidavit. Attorney Gatterdam argues only that it would be "unfair" to have Judge Nastoff now rule on the ineffective assistance of counsel claim -- or any other ground in the postconviction petition -- given the "nature" of the ineffective-counsel claim. Affidavit at ¶ 7. But Gatterdam does not explain why the nature of the claim makes it unfair for Judge Nastoff to rule on the postconviction petition. In an affidavit-of-disqualification proceeding, the burden falls on the affiant to submit sufficient argument and evidence demonstrating that disqualification is warranted. *See* R.C. 2701.03(B)(1) (requiring affiant to include specific allegations of bias, prejudice, or disqualifying interest and the facts to support those allegations). It is not this

3

court's duty to speculate as to what grounds the affiant believes would compel disqualification of the judge. *In re Disqualification of Mitrovich*, 101 Ohio St.3d 1214, 2003-Ohio-7358, 803 N.E.2d 816, ¶ 4; *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 5.

Moreover, nothing in the record of this case suggests that Judge Nastoff is incapable of presiding over the underlying case in a fair and impartial manner. The very nature of a postconviction relief proceeding requires trial judges to evaluate and pass upon their own actions and conduct. *See* R.C. 2953.21(A)(1)(a) (requiring a petition for postconviction relief to be filed in the same court that imposed sentence). Judge Nastoff's disqualification from postconviction proceedings is not required merely because Gatterdam has raised questions about the judge's impartiality in the underlying criminal case. Indeed, even if circumstances in the postconviction case ultimately show that Judge Nastoff should have removed himself from Davis's sentencing hearing, it does not automatically follow that defense counsel rendered ineffective assistance in failing to seek his recusal. Quite simply, Gatterdam has not shown that the resolution of the ineffective-assistance-of-counsel claim will necessarily turn on Judge Nastoff's judgment concerning his own impartiality. While there may be circumstances that would prevent Judge Nastoff from presiding over Davis's ineffective-assistance-of-counsel claim, Gatterdam has not established such grounds in his affidavit of disqualification. *See In re Disqualification of Walker*, 36 Ohio St.3d 606, 522 N.E.2d 460 (1988) (vague and unsubstantiated allegations are insufficient to establish bias or prejudice).

## Conclusion

"A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of*

4

*George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.  Those presumptions have not been overcome in this case.

For the reasons stated above, the affidavit of disqualification is denied.  The case may proceed before Judge Nastoff.

Dated this 16th day of February, 2012.

MAUREEN O'CONNOR
Chief Justice

Copies to:     Kristina D. Frost, Clerk of the Supreme Court
               Hon. Andrew Nastoff
             ✓ Butler County Clerk of Courts
               Kort Gatterdam, counsel for petitioner

5

BUTLER CCOURT OF COMMON PLEAS
CLERK OF COBUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | * | Case Number: CR1983 12 0614 |
| | * | |
| Plaintiff, | * | Judge Andrew Nastoff |
| | * | |
| vs. | * | **ENTRY AND ORDER** |
| | * | **DISMISSING PETITION FOR** |
| VON CLARK DAVIS, | * | **POSTCONVICTION RELIEF** |
| | * | **AND DENYING MOTION FOR** |
| Defendant. | * | **LEAVE TO CONDUCT** |
| | * | **DISCOVERY** |
| | * | |
| | * | **FINAL APPEALABLE ORDER** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on a petition for postconviction relief and a motion for leave to conduct discovery filed by Defendant-Petitioner Von Clark Davis ("Davis"). For the reasons that follow, the Court dismisses the petition and denies the motion.

On remand from the Sixth Circuit Court of Appeals, this Court granted Davis a new sentencing hearing for his 1984 conviction for the aggravated murder of Suzette Butler while on parole for the 1970 fatal stabbing of his wife, Ernestine. Pursuant to R.C. 2929.03 and R.C. 2929.04, a three-judge panel presided over the resentencing hearing from September 8, 2009 through September 10, 2009, to determine whether the single aggravating circumstance in this case outweighed the mitigating factors beyond a reasonable doubt. The aggravating circumstance weighed against the mitigating factors was as follows: that prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of another. R.C. 2929.04(A)(5). At the conclusion of the hearing, the

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

1

panel re-sentenced Davis to death.  Davis now petitions the Court to set aside or vacate his

sentence pursuant to R.C. 2953.21.  The state moves to dismiss Davis' petition or, in the

alternative, moves for summary judgment.

     Ohio's postconviction relief statute, R.C. 2953.21, provides, in part:

> (A)(1)(a) Any person who has been convicted of a criminal
> offense . . . and who claims that there was such a denial or
> infringement of the person's rights as to render the judgment
> void or voidable under the Ohio Constitution or the
> Constitution of the United States . . . may file a petition in the
> court that imposed sentence, stating the grounds for relief
> relied upon, and asking the court to vacate or set aside the
> judgment or sentence or to grant other appropriate relief. The
> petitioner may file a supporting affidavit and other
> documentary evidence in support of the claim for relief.

* * *

> (C) The court shall consider a petition that is timely filed
> under division (A)(2) of this section even if a direct appeal
> of the judgment is pending. Before granting a hearing on a
> petition filed under division (A) of this section, the court
> shall determine whether there are substantive grounds for
> relief. In making such a determination, the court shall
> consider, in addition to the petition, the supporting
> affidavits, and the documentary evidence, all the files and
> records pertaining to the proceedings against the petitioner,
> including, but not limited to, the indictment, the court's
> journal entries, the journalized records of the clerk of the
> court, and the court reporter's transcript. The court reporter's
> transcript, if ordered and certified by the court, shall be taxed
> as court costs. If the court dismisses the petition, it shall
> make and file findings of fact and conclusions of law with
> respect to such dismissal.

* * *

**Judge Andrew Nastoff**
Common Pleas Court
Butler County, Ohio

2

(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.

"[T]he trial court is not required to conduct a hearing when a petition for postconviction relief is filed." *State v. Ramos,* 11th Dist. No. 2007-G-2794, 2008-Ohio3738, at ¶ 28, citing *State v. Allen* (1994), 11th Dist. No. 93-L-123, 1994 WL 590342. "As the court in the *State v. Jackson* case stated, 'the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavit and the files and records of this cause.'" *State v. Scheidel,* 11th Dist. No.2004-A-0055, 2006-Ohio-198, at ¶ 11, quoting *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819. Regarding this inquiry, this court has held:

"For purposes of determining whether there are substantive grounds for postconviction relief that would warrant a hearing, it is generally accepted that affidavits presented in support of the petition should be accepted as true. . . . However, conclusory or self-serving affidavits presented by the petitioner in support of his claims, without more, will not satisfy the petitioner's evidentiary burden." *State v. Pierce* (1998), 127 Ohio App.3d 578, 586, 713 N.E.2d 498. (Internal citations omitted.)

Davis raises a total of nine claims for relief.

**I.**

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

3

In his first claim for relief, Davis asserts trial counsel were ineffective for failing to adequately investigate and present mitigating evidence concerning his favorable prison record.

The Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Moreover, " 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' " *Id.* at 143, quoting *Strickland*, 466 U.S. at 697.

Davis asserts trial counsel should have asked him for the names of prison personnel to interview and subpoena to testify as mitigation witnesses during the penalty phase. Davis claims that his attorneys failed to present evidence of his "job reviews, achievements or good conduct." Davis argues that such testimony would have established his reputation for following rules, behaving, and working hard while incarcerated. Davis further argues that prison personnel would have demonstrated that he was a trusted and model inmate who was

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

4

granted a wide latitude of freedom. Davis supports his claim with the affidavit of Diane Menashe, a veteran criminal defense attorney with appreciable experience defending capital murder cases. According to Menashe, trial counsel's failure to attempt to contact Oscar McGraw, a death row unit manager, Herb Wendler, a case manager, and Sergeant Gordy Pullman was deficient. The original three-judge panel's refusal to allow Davis to present McGraw's, Wendler's, and Pullman's testimony concerning his post-sentence prison behavior served as the basis for the Sixth Circuit's decision remanding this case for a third sentencing hearing. The Sixth Circuit noted that testimony from McGraw, Wendler, and Pullman would have established that Davis was well-behaved, had a pleasant personality, and had been placed in positions of trust within his death row unit.

At the re-sentencing hearing, Scott Nowak, Davis' case manager, testified that he behaved well in prison and held a position on death row's "extended privilege unit" or "honor block." Through Nowak, trial counsel introduced an institutional summary of Davis' work history and program participation. According to the summary, Davis has been employed in five different capacities while incarcerated, most recently as a porter for the Ohio State Penitentiary. The summary further indicated that Davis completed programs in stress management, positive thinking, and anger management, attended Alcoholics Anonymous meetings, and meetings for military veterans. The summary noted that Davis was involved in only one instance of misconduct since his 1984 incarceration. That incident occurred in 1990. Jerome Stineman, a volunteer who conducted Alcoholics Anonymous

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

5

meetings with death row inmates, including Davis, testified that Davis regularly attended and actively participated in meetings.

McGraw, Wendler, Pullman, and other unnamed prison personnel that Davis sought to have testify on his behalf would have provided testimony centering on Davis' work ethic, good attitude, good behavior, and trustworthiness. Their testimony would have been cumulative. The summary of Davis' work history showed that he was a strong and trusted employee. The summary of Davis' program participation revealed the positive attitude of a man who made legitimate attempts to better himself while incarcerated. The fact that Davis received one warning for a rule infraction since 1984 and his admittance to the prison's extended privilege unit was evidence that he was well-behaved. Thus, through Nowak, Stineman, and the institutional summary, trial counsel presented evidence regarding all of the topics that the proposed witnesses would have testified to. Trial counsel's performance was not deficient for failing to call these additional witnesses. For the same reasons, Davis has failed to establish that he was prejudiced by trial counsels' failure to call these witnesses.

## II.

In his second claim for relief, Davis asserts trial counsel were ineffective for presenting a summary of his prison unit file to the three-judge panel instead of the entire unit file. Davis supports his argument with the affidavit of Diane Menashe. According to Menashe, counsel's decision to introduce a summary of the unit file was deficient.

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

6

"[T]rial strategy decisions should not be second-guessed and . . . ' "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' " *State v. Ogletree*, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, ¶ 64, quoting *State v. Mason*, 82 Ohio St.3d at 157-158, 694 N.E.2d 932, quoting *Strickland*, 466 U.S. at 689.

This Court granted trial counsel access to Davis' entire unit file in discovery. The unit file includes certificates of completion for a stress management seminar, positive job evaluations, favorable school records and reports, a GED certificate, and college transcripts. During the penalty phase, trial counsel chose to introduce a two-page institutional summary of the unit file that, as noted above, listed Davis' work history, program participation history, and incident report history. The summary conveyed the substance of the unit file, namely, that Davis was a well-behaved, hard working prisoner who took advantage of the self-help and education opportunities available to him in prison. Trial counsel's performance was not deficient as a result of their strategic decision to distill the mitigating aspects of the unit file into a summary. Additionally, Davis has failed to establish that he was prejudiced by trial counsels' failure to introduce his entire unit file.

### III.

In his third claim for relief, Davis asserts trial counsel were ineffective in their preparation and strategy to call Cynthia Mausser as a mitigation witness. Davis argues that counsel provided ineffective assistance by representing to the panel during opening

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

7

statements that Mausser would testify that Davis would never be paroled if given a sentence less than death. Mausser did not so testify. Davis also claims that counsel were ineffective for failing to examine Mausser on re-direct when she attempted to correct her previous testimony. Davis supports his claim with the affidavit of Diane Menashe, who states that it was unreasonable to call Mausser as a witness because she harmed Davis' case. Davis also supports the claim with the affidavit of Mausser, who testifies that trial counsel did not provide her with sufficient information to allow her to determine whether she would ever vote to parole Davis. Mausser also states that she attempted to clarify previous testimony while on the witness stand. According to Mausser, if defense counsel would have asked her what she sought to clarify, she would have informed the panel that as a member of the Ohio Parole Board she participated in a parole hearing in which the defendant had been convicted of a death penalty specification, but received a life sentence.

During the penalty phase, Mausser, Chairperson of the Ohio Parole Board, described the Parole Board's various policies and procedures. Mausser testified that it was "unlikely" Davis would be paroled at the first opportunity and would "likely" spend a substantial portion of his remaining adult life in prison. Mausser did not state with any certainty if or when Davis might be paroled if the Court imposed a sentence less than death. Mausser testified that if Davis became parole-eligible, he would be considered for parole at intervals ranging from one to ten years for the rest of his life.

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

8

Because Davis could have addressed trial counsels' decision to call Mausser as a witness in his direct appeal, the issue is barred by the doctrine of *res judicata*. "Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Reynolds*, 5th Dist. No. 09-CA-13, 2009-Ohio-3998, quoting *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104.

Even if *res judicata* did not bar his claim, Davis has failed to show that he was prejudiced by Mausser's testimony. While Davis characterizes Mausser's testimony as damaging, the reality is that she gave testimony that was potentially valuable as mitigation. Her testimony assured the panel that if it imposed a life sentence, Davis was unlikely to be paroled for a significant period of time. Trial counsels' decision to offer the evidence was a trial strategy that cannot be criticized and was not deficient under *Strickland*. Certainly, it would have been desirable for defense counsel to avoid contradicting its opening statement. However, Davis suffered no prejudice as a result, as there is nothing to suggest that counsels' failure to deliver a promise offered during opening statement influenced the panel's decision to impose death.

Likewise, trial counsel were not deficient for failing to provide Mausser with Davis' entire unit file, or by failing to have her correct her testimony on the witness stand. In each

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

9

instance, had trial counsel done what Davis claims they should have, Mausser, at best, could have presented the panel with a more clear indication of whether she would vote to parole Davis. However, as Mausser testified, a majority of the Parole Board would be required to vote in favor of paroling Davis, meaning her vote would not necessarily be indicative of the Board's ultimate determination. On the question of whether Davis would ever be paroled if given a sentence less than death, the panel found Mausser's testimony to be highly speculative and entitled to no weight. Providing the panel with a clearer picture of how Mausser would vote when her vote is not determinative would not change the speculative nature of her testimony.

Trial counsels' performance was not deficient in their preparation or strategy to call Mausser as a witness. Davis additionally failed to establish that he was prejudiced by trial counsels' performance.

## IV.

In his fourth claim for relief, Davis asserts trial counsel were ineffective for calling clinical psychologist Dr. Robert Smith. Davis claims that Dr. Smith's testimony was harmful to his cause, as it left the three-judge panel "with the impression that due to [his] borderline personality disorder, if [he] were ever released from prison, and no longer in a structured environment, he could kill again." Davis further argues that counsel's line of questioning to Dr. Smith unnecessarily focused on his state of mental health as it existed in 1984. Davis states that counsel should have tailored questions to Dr. Smith to allow him to address Davis'

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

10

present ability to adapt in society even while suffering from a borderline personality disorder. Davis supports this argument with Dr. Smith's affidavit. According to Dr. Smith, if trial counsel had informed him that Davis' parole was at issue, he would have testified that Davis had developed coping strategies and learned to accept external rules and expectations with respect to his behavior. Dr. Smith further states that he could have explained to the three-judge panel that the parole process would provide sufficient structure to allow Davis to successfully re-enter society.

At the penalty phase, Dr. Smith testified with respect to Davis' social history. Dr. Smith recounted interviews conducted with Davis' family members and reviewed interview summaries of other individuals familiar with Davis, as well as psychological evaluations of Davis performed between 1964 and 2002. Dr. Smith testified that after conducting the interviews and reviewing the summaries and evaluations, he met with Davis twice. Each visit lasted approximately five to six hours. Dr. Smith testified that the aforementioned interviews and evaluations, in the aggregate, provided a sufficiently "rounded" and "longitudinal" picture of Davis for purposes of rendering a diagnosis.

Dr. Smith found that at the time of the offense at bar, Davis suffered from borderline personality disorder and alcohol dependence. Dr. Smith found that Davis suffers from these co-occurring disorders to this day. In Dr. Smith's opinion, a biological component exists with respect to the borderline personality disorder. It is Dr. Smith's belief that Davis' borderline personality disorder formed in early adolescence when Davis' dysfunctional

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

11

childhood environment and the biological component coalesced. Dr. Smith testified that his diagnosis does not excuse or justify Davis' actions in killing Suzette Butler, but offers some explanation as to how or why the killing occurred. Dr. Smith testified that Davis' good behavior while in prison was not surprising, given that individuals with borderline personality disorder function well in a highly structured environment such as prison.

Davis' borderline personality disorder and substance abuse problems were relevant mitigating factors for defense counsel to advance during the penalty phase. *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, ¶ 120. Trial counsels' examination of Dr. Smith, as well as their examination of Davis' family members and friends show that they chose to pursue an "unbonded child" theory of mitigation. In other words, counsel chose to argue that Davis was raised in a dysfunctional family to explain why he was driven to commit multiple murders at a relatively young age. Hindsight cannot affect the evaluation of trial counsels' performance. Simply because trial counsels' approach turned out to be unsuccessful does not mean that they provided ineffective assistance of counsel. Trial counsels' approach presented the trial court with valuable mitigation and did not deprive Davis of the effective assistance of counsel.

Furthermore, had trial counsel asked Dr. Smith to provide an opinion as to Davis' ability to adapt to society if released, his testimony would have been largely cumulative. The panel heard testimony from Scott Nowak, Jerome Stineman, and pen pal Francis Welland and admitted the aforementioned institutional summary as an exhibit. That evidence showed

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

12

that Davis adapted and adjusted well to a structured environment and had learned to control his behavior.

For the reasons stated, trial counsels' performance was not deficient as a result of their strategic decision to emphasize Davis' borderline personality disorder in mitigation and to refrain from eliciting an opinion from Dr. Smith concerning Davis' ability to adapt to society if released on parole. Davis additionally failed to establish that he was prejudiced by trial counsels' strategic decisions.

V.

Davis' fifth claim for relief asserts trial counsel were ineffective for failing to call mitigation specialist / investigator John Lee as a mitigation witness. Davis submits that Lee would have presented summaries of interviews conducted with mitigation witnesses who were unavailable for the re-sentencing hearing. Davis supports his claim with the interview summaries of Elizabeth Crawford, Charles Flowers, Milton Flowers, and Fannie Whiteside.

Elizabeth Crawford is Davis' paternal aunt. When interviewed, Crawford stated that Davis' parents consumed alcohol regularly and fought frequently. Crawford also recounted that Davis' father abandoned his wife and children and moved to Washington D.C. Crawford recalled Davis being a quiet child who did not present behavioral issues.

Charles Flowers grew up in Hamilton, Ohio with Davis' parents. During his interview, Flowers stated that Davis' mother, Alluster, was "wild" and was raised in a household with questionable morals. According to Flowers, Davis' parents fought

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

13

frequently. Flowers noted that Davis had no male role model as a child and believed Davis grew "to hate women because he was always being whipped by one, be it his mother or one of his female relatives."

Milton Flowers lived next door to Davis' mother's family in Hamilton, Ohio. Flowers stated that Alluster had a violent temper. Flowers further stated that as a child, Davis received little care from his parents. Flowers noted that Davis was a small child with a violent temper that was the likely product of his dysfunctional home life.

Fannie Whiteside, Davis' maternal aunt, offered "very little of significance" during her interview, according to the summary. Whiteside had no recollection of Davis as a child or adult, but recalled Alluster being a poor parent that was involved with several different men.

During the penalty phase, defense counsel presented a number of mitigation witnesses, including Davis' mother (Alluster Tipton), step-father (Charles Tipton), younger sister (Carol Smith), younger brother (Victor Davis), daughter (Sherry Davis), and two friends (Rick Rotundo and Fran Welland). The testimony of those witnesses, coupled with the testimony of Dr. Robert Smith, painted a complete picture of Davis' upbringing, as well as Davis' parents' upbringing. Thus, in light of the evidence presented, summaries of the interviews conducted by John Lee with Elizabeth Crawford, Charles Flowers, Milton Flowers, and Fannie Whiteside would have been cumulative. Trial counsels' performance

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

14

was not deficient for failing to call John Lee as a witness. For the same reasons, Davis has failed to establish that he was prejudiced by trial counsels' failure to call John Lee.

## VI.

In his sixth ground for relief, Davis assert trial counsel were ineffective for failing to seek the recusal of Judge Andrew Nastoff. At the penalty phase, trial counsel were aware that Judge Nastoff previously prosecuted Davis' nephew, Lahray Thompson, for aggravated murder and sought the death penalty. Trial counsel indicated on the record that they were aware of Judge Nastoff's participation in Thompson's prosecution, but chose not to seek recusal. Davis supports this claim with his affidavit, in which he testifies that upon learning that Judge Nastoff was involved in the Thompson prosecution, he was "too shocked" to request a recusal at the re-sentencing hearing. Davis did not raise this claim in his direct appeal.

"To overcome the *res judicata* bar, evidence offered *dehors* the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record." *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362. Davis has failed to offer evidence suggesting that he was unable to raise this claim on direct appeal. Because he could have done so, it is barred by *res judicata*.

## VII.

In his seventh ground for relief, Davis asserts trial counsel were ineffective for suggesting to him that he was eligible for a sentence of life imprisonment without the

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

15

possibility of parole. The only evidence submitted by appellant that supports this ineffective assistance of counsel claim is his own affidavit in which he makes self-serving statements in an attempt to disparage trial counsels' performance. This Court discounts Davis' self-serving affidavit and finds that it is insufficient to justify granting his petition for postconviction relief on this claim. *State v. Hoop*, 12th Dist. No. CA2004-02-003, 2005-Ohio-1407, ¶ 11; *State v. Isbell*, 12th Dist. No. CA2003-06-152, 2004-Ohio-2300, ¶ 14. Furthermore, even if trial counsel erroneously advised Davis that the three-judge panel could impose a sentence of life imprisonment without the possibility of parole. he has failed to show that he was prejudiced by that advice.

## VIII.

In his eighth ground for relief, Davis asserts that in 1984, his original trial counsel were ineffective for failing to advise him of all collateral consequences of a jury waiver. The Twelfth District Court of Appeals recently held that Davis' "habitual challenges" to his jury waiver are barred by *res judicata*. *Davis v. Coyle*, 12th Dist. No. CA2009-10-263, 2011-Ohio-787, ¶ 16-17. The court noted that Davis' jury waiver was made knowingly, voluntarily, and intelligently and that he could have, but failed to, directly challenge his jury waiver in his earliest appeals. *Id.* at ¶ 20, 28. This Court likewise finds that because Davis could have directly appealed the validity of his jury waiver, his claim is barred by *res judicata*.

## IX.

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

16

In his ninth ground for relief, Davis contends that Ohio's post-conviction procedures are unconstitutional because they do not provide an adequate corrective process. The Court notes that the Tenth Appellate District and "other Ohio appellate courts have rejected [the] claim that Ohio's postconviction relief statute does not afford an adequate corrective process." *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, at ¶ 73.

Davis argues that R.C. 2953.21 is not an adequate corrective process because it does not afford him the benefit of the discovery process. In rejecting a similar argument, the Third Appellate District has held that R.C. 2953.21 is a civil attack on a judgment and, thus, the petitioner is entitled only to those rights that are granted by the statute. *State v. Yarbrough* (2001), 3rd Dist. No. 17-2000-10, 2001 WL 454683, citing *State v. Calhoun*, 86 Ohio St.3d at 281, 714 N.E.2d 905. Further, the Third District noted that statutes have a strong presumption of constitutionality. *Id.* at * 11. Finally, the Third District held:

> "We cannot say that the failure to afford a postconviction relief petitioner discovery during the initial proceeding to determine whether an evidentiary hearing is warranted renders the postconviction relief process unconstitutional. Ohio case law has affirmatively established that the lack of discovery during the initial stages of the postconviction process does not violate any constitutional rights of the postconviction relief petitioner." *Id.* at * 11.

In light of the foregoing analysis, the Court concludes that Ohio's postconviction relief statute is constitutional and rejects Davis claim that it does not offer an adequate corrective process.

Additionally, a postconviction claim must be based on a constitutional deprivation

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

17

that occurred during the proceedings resulting in the petitioner's conviction. *State v. Fitzpatrick,* 1st Dist. No. C-030804, 2004-Ohio-5615. Because Davis' argument attacking the constitutionality of R.C. 2953.21 is in no way related to the events of his re-sentencing hearing, it is not appropriate for the Court to consider.

Having found that Davis failed to establish substantive grounds for postconviction relief, his petition is **DISMISSED**. Davis is consequently not entitled to a hearing on his petition, nor is he entitled to conduct discovery in this matter. Davis' motion for leave to conduct discovery is therefore **DENIED**.

This is a final appealable order. There is no just cause for delay. Civ.R 54(B).

**SO ORDERED.**

ENTER,

Andrew Nastoff, Judge

cc:

Donald R. Caster
Assistant Prosecuting Attorney
315 High Street, 11th Floor
Hamilton, OH 45011

Judge Andrew Nastoff
Common Pleas Court
Butler County, Ohio

Kort Gatterdam
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215

18

CA 12 12 0258

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

STATE OF OHIO,        :       **Case No. CR-1983-12-0614**

    Plaintiff-Appellee,           **Judge Nastoff**

        v.

**VON CLARK DAVIS,**        **CAPITAL CASE**

    Defendant-Appellant.     :

FILED BUTLER CO.
COURT OF COMMON PLEAS

DEC 18 2012

MARY L. SWAIN
CLERK OF COURTS

FILED BUTLER CO.
COURT OF APPEALS

DEC 18 2012

MARY L. SWAIN
CLERK OF COURTS

**NOTICE OF APPEAL**

Notice is hereby given that Defendant-Appellant, Von Clark Davis, hereby appeals to the

Twelfth District Court of Appeals for Butler County, Ohio, from the Entry and Order Dismissing

Petition for Postconviction Relief and Denying Motion for Leave to Conduct Discovery entered

in this action on November 26, 2012, attached hereto.

Respectfully submitted,

Kort Gatterdam (0040434)
Erik P. Henry (0085155)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail:    gatterdam@carpenterlipps.com
           henry@carpenterlipps.com

Counsel for Defendant-Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Notice of Appeal was forwarded by first-class, postage prepaid U.S. Mail to Donald R. Caster, Assistant Butler County Prosecuting Attorney, 315 High Street, 11th Floor, Hamilton, Ohio 45011, on this 17th day of December, 2012.

_____
Kort Gatterdam

050-384-337084

2