1



COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

------------------------------------

STATE OF OHIO,

    Plaintiff,        Case No. CR-1983-12-0614

                  CA-09-10-263

    vs.          HONORABLE ANDREW NASTOFF

VON CLARK DAVIS,

    Defendant.

------------------------------------

- - -

MOTION HEARING

TRANSCRIPT OF PROCEEDINGS

December 4, 2007

- - -

JILL M. CUTTER, RPR
(513) 785-6596



2

```
 1    APPEARANCES:

 2

 3           On behalf of the plaintiff:

 4                 MICHAEL A. OSTER, JR., ESQ.
                   Assistant Butler County Prosecuting Attorney
 5                 11th Floor
                   315 High Street
 6                 Hamilton, Ohio 45011

 7

 8           On behalf of the defendant:

 9                 MELYNDA COOK-REICH, ESQ.
                   Repper, Pagan, Cook
10                 1501 First Avenue
                   Middletown, Ohio 45044
11                      and
                   RANDALL PORTER, ESQ.
12                 Assistant State Public Defender
                   250 East Broad Street
13                 Suite 1400
                   Columbus, Ohio 43215

14

15

16

17

18

19

20

21

22

23

24

25
```

JILL M. CUTTER, RPR
(513) 785-6596

1     Transcript of Proceedings

2       Afternoon Session

3     - - - - - - - - - -

4     THE COURT: All right. We're on record in State

5  of Ohio vs. Von Clark Davis. This is CR83-12-0614.

6  Let the record reflect that Von Clark Davis appears

7  with counsel Randall Porter and Melynda Cook-Reich.

8  Representing the State of Ohio at today's hearing is

9  assistant prosecting attorney Michael Oster. Before we

10  begin, counsel, I do have the certification that needs

11  to be sent to the Supreme Court on appointments. Ms.

12  Cook-Reich stopped by earlier to sign, but Mr. Porter

13  we would need your signature on there as well

14  indicating that you have indeed accepted appointment on

15  to the case. Thank you, and we will see that that gets

16  appropriately sent off to the Supreme Court.

17     For the record, this is Ms. Cook-Reich's first

18  appearance on this matter. We did have a hearing

19  yesterday over the lunch hour at which time we

20  addressed the issue of Mr. Komp's situation, and as I

21  stated at that time if Mr. Komp wishes to petition the

22  Court in some way to seek certification so that he can

23  participate in that manner in the case, he is welcome

24  to do so and the Court will take whatever steps we can

25  take to facilitate that; whatever would be appropriate.

01:47PM

01:47PM

4

1    Also, whatever his relationship is with Mr. Davis,

2    obviously, if he wants to continue to participate on

3    his own right without having been appointed, that is

4    really a matter between him and Mr. Davis and you all I

5    assume.  So I just wanted to state that for the

6    record.

7         One of the issues that we left off with yesterday,

8    we did have a hearing with Mr. Davis regarding the

9    waiver of time requirements in the case, and we went

10   over that on the record to some degree with the        01:47PM

11   assistance of Mr. Porter.  However, what the Court was

12   concerned about the applicability of the standard

13   speedy trial waiver forms that we have in cases, and

14   whether that -- and thought that that would probably

15   not be an appropriate form to use in this case, and so

16   I indicated that we would follow-up today.

17        I worked with my staff attorney and came up

18   somewhat of a form.  There was a form presented by Mr.

19   Oster that looked like it had some good language, which

20   I incorporated.  I am not sure if the defense has       01:47PM

21   something but if the defense would like to take a look

22   at this hybrid form that we have come up with now to

23   see if that would satisfy your concerns.  Mr. Oster,

24   you probably need to look at that as well.  Why don't

25   we take a moment, first of all, counsel look that over

JILL M. CUTTER, RPR
(513) 785-6596

1    and see if you think it suffices for the situation and

2    if you think that it is legally sufficient, then you

3    can discuss with Mr. Davis whether he wishes to again

4    -- yesterday he indicated a willingness to waive these

5    rights, but whether he wishes to do so in writing.

6        MS. COOK-REICH:  Do you want me to have Joe make a

7    copy of this so Mr. Oster can look at this at the same

8    time?

9        THE COURT:  Yeah, why don't we do that.  While

10   that copy is being made -- and again that may be too          01:48PM

11   early, I don't imagine counsel has had a whole lot of

12   time to speak and game plan strategy, legal strategies,

13   things like that, but I was going to ask Mr. Porter,

14   Ms. Reich, whether at this point in time you

15   anticipated litigating the issue of how a three-judge

16   panel would be selected.

17       I understand we may -- you know, there is still a

18   question.  I am not asking you to waive any issues you

19   may have about litigating whether it should be a jury

20   or a three-judge panel, but as in any case, we will,       01:49PM

21   well before that issue is determined, do the draw for

22   the three-judge panel so that defense counsel knows who

23   those judges would be.  And so I guess I was wondering

24   if you knew whether you were going to litigate whether

25   it should be a random draw or not.  And if you were not

1   going to litigate that issue, I was going to propose

2   that we go ahead and draw the names of the proposed

3   panel while we are here today, so that you would have

4   that information and I could get that information out

5   to the other judges as expeditiously as possible.

6   MS. COOK-REICH: Your Honor, at this time

7   Mr. Porter and I have only had a brief amount of time

8   to talk in regards to becoming familiar with the case.

9   I have done nothing other than read the District

10  Court's decision. We would like to ask to do that at    01:50PM

11  another time. Apparently, there is also documents that

12  we are going to get shipped to us and we would like the

13  opportunity to review those.

14  THE COURT: Understood. I just wanted to see if

15  you could affirmatively rule it out. And what you are

16  saying is at this point it's too early to affirmatively

17  ruling out litigating that issue?

18  MS. COOK-REICH: Yes, Your Honor.

19  THE COURT: Fair enough. Why don't you go ahead

20  and look over the time waiver form, first of all, as to  01:50PM

21  whether it appears to be legally sufficient to

22  accomplish the purpose that it is purported to

23  accomplish.

24  MR. PORTER: Mr. Davis has had opportunity to

25  review that and I believe Mr. Porter had gone over a

1  similar form with him at the jail yesterday and I

2  believe that we would be willing to sign this.

3       THE COURT: First of all, you are indicating that

4  in defense counsel's opinion, it is a legally

5  sufficient document to accomplish the waiver of time

6  that we are addressing here at this hearing?

7       MS. COOK-REICH: That's correct, Your Honor. And

8  Mr. Porter has gone over it more extensively with Mr.

9  Davis in regards to the necessity that as we are going

10 to be having a new hearing on this case, we would like          01:53PM

11 to have the opportunity to actually prepare for that

12 and not move it so fast that Mr. Porter and I are not

13 prepared to do so.

14      THE COURT: Sure.  All right.  Mr. Oster, I

15 believe that it is substantially similar to what you

16 had put together, so --

17      MR. OSTER: It is, Your Honor.  The only addendum

18 I would possibly make, and after I had sent my proposed

19 time waiver to both the Court and to defense counsel, I

20 did add five sentences in -- or I am sorry -- five           01:53PM

21 words in.  I apologize for scaring the Court with five

22 sentencing.  At the very last paragraph after the word

23 federal courts there is a comma and any other speedy

24 trial, I added in the words and/or speedy resentencing

25 rights to reflect what this Court talked about

1    yesterday as to any case law that may have to deal with

2    speedy resentencing or anything else.  The State may

3    just make the request that not only speedy trial but

4    and speedy resentencing rights be added to that part

5    so that we are properly reflecting what is going on

6    here and reflecting what we did talk about yesterday.

7    That would be my error of omission.  I apologize to the

8    Court for that.

9        THE COURT:  It's all right.  And, you know, for

10   the record, the document obviously will be in the          01:54PM

11   record and will speak for itself and it does reference

12   resentencing earlier in the document, but does the

13   defense have any objection to adding those words in the

14   second to last line right after speedy trial right

15   and/or just -- what is it and/or --

16       MR. OSTER:  And/or speedy resentencing rights.

17       MS. COOK-REICH:  No, Your Honor.  We have no

18   objection to that.  We just want to make sure that this

19   limiting the fact of the time waiver to the fact that

20   we are just waiving the time for the speedy trial        01:55PM

21   purposes and we are not limiting any other issue that

22   we might be raising relative to the case.

23       THE COURT:  Right.  We're not going to set it, you

24   know, Star Trek time or anything like that.  We are

25   going to still want to move forward as expeditiously as

9

1    possible.  This is intended simply to allow the Court

2    to be able to make scheduling decisions based on the

3    attorneys' calendars and the attorneys' opinion on how

4    long it would take them to properly prepare to be able

5    to go forward on the myriad of issues that may present

6    themselves and for the Court to be able to make those

7    scheduling decisions without concern that we are

8    violating the defendant's rights in some other way.

9    And that is really the only reason that we are, I

10   guess, beating on this horse.  Fair to say?  Why don't                01:56PM

11   we go ahead and add that.  Unfortunately, my judicial

12   assistant had to leave early today due to a family

13   emergency and so I am going to have to see if my staff

14   attorney can quickly put that together.  Print it back

15   out and then we will have him make that small change

16   and we will be able to hopefully put this issue to

17   rest.

18        Well, while we are waiting on that, what other

19   issues did we want to address today?  We do at least --

20   we have accomplished having both attorneys here present        01:57PM

21   on the case, and that is no small task, so we are glad

22   that we are able to move forward in that regard.  It

23   appears that we are going to have the time issue

24   resolved.  What is counsel seeking by way of further

25   scheduling on this matter today?

JILL M. CUTTER, RPR
(513) 785-6596

1         MS. COOK-REICH: Your Honor, Mr. Porter and I

2 discussed that briefly given lack of information and

3 knowledge we have of the case, what we would like to do

4 today is set another pretrial date and then from there

5 hopefully we can determine what issues we might be

6 pursing and what other further motion hearing dates we

7 might need.

8         THE COURT: I will also indicate -- and Mr. Oster

9 yourself as well?

10         MR. OSTER: The only thing the State would like to   01:58PM

11 bring up as we say we are beating a dead horse, I say

12 this every time we are here, but with both attorneys

13 now here and Mr. Davis here, it may be a good time to

14 discuss the Court actually putting an order on granting

15 this new sentencing hearing. The State of Ohio --

16         THE COURT: Do you think we have to se a date in

17 order to grant the hearing?

18         MR. OSTER: I don't believe a date would have to

19 be set. I just believe an order and defense counsel

20 may want to weigh in on this as well, but an order   01:59PM

21 stating obviously the case law that has led us here,

22 the procedural posture of this case and that the

23 federal courts have made that order that this Court is

24 aware of that, and pursuant to those is granting the

25 new sentencing hearing which is exactly what the

11

1   original order on July 19th from Judge Graham stated

2   this Court was required to do to satisfy the writ. And

3   the reason obviously the State of Ohio brings this up

4   is the writ is what we are truly here on. The writ

5   states we need to have that granted and while the time

6   waiver will help aid in this case, the State would feel

7   that both that order granting that new sentencing

8   hearing coupled with a time waiver would be what would

9   allow this Court to proceed without any time

10  limitations at that point because it would satisfy the          01:59PM

11  writ and then have a time waiver. The time waiver

12  itself would not satisfy the State to the feeling that

13  there could be no possible other issues. The State

14  would still feel that it would need that order granting

15  the new sentencing hearing coupled with the time waiver

16  in this case.

17      THE COURT: All right. Although the time waiver

18  specifically addresses Judge Graham's order, however, I

19  see no harm in preparing an entry indicating that, you

20  know, we certainly intend to follow the directive of          02:00PM

21  the Federal Court and grant the resentencing hearing

22  that has been ordered in this case.

23      So defense counsel, do you have -- do you wish to

24  be heard regarding the form of the resentencing entry

25  or the necessity of it?

12

1        MS. COOK-REICH:  If I may have a second, Your

2    Honor.

3        THE COURT:  All right.  Counsel, do you want to go

4    ahead and take a look at the time waiver form as

5    amended?

6        MR. OSTER:  Can I approach, Your Honor?

7        THE COURT:  Please.

8        MR. OSTER:  Thank you.

9        THE COURT:  And once you have looked at it, why

10   don't you go ahead and give it to them.         02:01PM

11       MS. COOK-REICH:  Your Honor, we would be fine with

12   just adding it to the time waiver as a sentence that

13   the parties agree because both counsels are signing it

14   and the defendant is signing it.  That the parties and

15   defendant agree that this qualifies for the resetting

16   of the resentencing hearing per the Court order and it

17   could be placed at the bottom of the paragraph that

18   actually references the District Court order.

19       THE COURT:  I understand.  I think that perhaps

20   the formality and I think it is merely that, quite    02:02PM

21   frankly, the formality of the Court formally putting on

22   an entry indicating that we have accepted jurisdiction

23   over the matter again and have granted a resentencing

24   hearing.  It can be very brief.  I don't know that it

25   needs to say a whole lot more than that.  But simply,

1   an entry formalizing the fact that the case has once

2   again been accepted into the Common Pleas Court for the

3   purpose of conducting a resentencing hearing as ordered

4   by the 6th Circuit.

5       MR. OSTER: Your Honor, if I may, the one thing I

6   would say to that is if you look at the direct language

7   it says it is conditioned upon the State of Ohio within

8   180 days, not necessarily the defense signing anything

9   or anything else. It's conditioned upon the State of

10  Ohio. There needs to be an action by the State or the     02:03PM

11  Court doing that so the State would assert that we

12  wouldn't feel comfortable just tacking that onto the

13  time waiver. It may be I am anticipating too much or

14  trying to go a step farther. The State is not asking

15  for this and in way to necessary curtail any further

16  motion the defense may have or anything else. The

17  State of Ohio in getting this order is strictly

18  concerned with meeting the 180-day requirement and

19  meeting this writ and not having any problems with

20  that. We are not trying to do anything sly with this      02:03PM

21  order or anything else. We are just trying to get our

22  time satisfied.

23      THE COURT: We wouldn't accuse you of being sly.

24      MR. OSTER: I appreciate that, Your Honor.

25      THE COURT: All right.

14

1   MS. COOK-REICH:  Certainly understand his

2   position, Your Honor, if that is an entry you would

3   like to place on.

4   THE COURT:  Any objection to the State preparing a

5   proposed entry, circulating to you for, you know, your

6   review prior to signing to be signed if you approve it

7   as to form?

8   MS. COOK-REICH:  No problem, Your Honor.

9   THE COURT:  All right.  All right.  And then we

10  do have the corrected version of time waiver Mr. Oster          02:04PM

11  if you want to take a look at that and let them do

12  their thing with that.

13  MR. OSTER:  Yes, Your Honor.  Thank you.

14  THE COURT:  Mr. Davis, I now have in my hands a

15  two-page form captioned time waiver up here.  On the

16  second page it appears to have your signature right

17  here.  Is that, in fact, your signature, sir?

18  THE DEFENDANT:  That is correct.

19  THE COURT:  All right.  And prior to signing this

20  form, did you read the entire form?                             02:06PM

21  THE DEFENDANT:  Yes, I did.

22  THE COURT:  And did you understand all of the

23  information that was contained in this form?

24  THE DEFENDANT:  Yes, I do.

25  THE COURT:  All right.  And you understand that by

15

1    signing this, you are waiving your right to have us

2    strictly comply with the time requirements set out by

3    the Federal District Court judge as well as any other

4    time requirements that may be construed to apply to

5    this hearing?

6         THE DEFENDANT: I understand.

7         THE COURT: All right. And you want me to accept

8    this as evidence of your intent to knowingly,

9    intelligently, and voluntarily waive your right to the

10   time limitations established in this case?            02:06PM

11        THE DEFENDANT: Yes, I do.

12        THE COURT: All right. I will go ahead and sign

13   this time waiver indicating that the Court finds that

14   it has been knowingly, intelligently, and voluntarily

15   signed by the defendant. And the Court finds that the

16   defendant has hereby waived the time requirements that

17   would apply to this hearing. All right. Thank you.

18        MS. COOK-REICH: Thank you, Your Honor.

19        THE COURT: And we will need to make sure that

20   this gets filed. All right. Having addressed that,    02:07PM

21   we have also addressed the issue of the entry formally

22   accepting jurisdiction of the case and granting the

23   resentencing hearing. In an abundance of caution, does

24   counsel need to discuss amongst themselves and with Mr.

25   Davis, any issues involving Ms. Cook-Reich's status as

1   partner with Mr. Pagan?

2       MR. PORTER: I think I did briefly yesterday. If

3   I could beg the Court 30 seconds to talk about that one

4   more time.

5       THE COURT: You can have more time than that if

6   you need. We will just take another brief break to

7   allow them to discuss that.

8       (Off-the-record discussion between defense

9   counsel.)

10      MR. PORTER: Your Honor, we have reviewed the      02:09PM

11  matter with him again, and he is comfortable with the

12  current status of counsel.

13      THE COURT: Okay. All right. We will continue

14  with that then. I just wanted to give you the

15  opportunity to raise that here on the record if there

16  was going to be any such issue. All right. Assuming

17  that we have an entry signed that you had previously

18  referenced, now, as far as scheduling future matters in

19  this case, is there any reason why we would not be able  02:09PM

20  to set a date by which counsel would be able to file

21  any motions that they anticipate in this case and then

22  a response date? Any reason why we wouldn't be able to

23  set a deadline by which to file? We are not pushing

24  time issues now, so we can set that I think at a

25  comfortable pace for counsel given their workload and

17

1  given the need to thoroughly prepare.    Is there any

2  reason why we can't do that?

3       MS. COOK-REICH:  There is no reason if you would

4  give us sufficient time to read the record.  We would

5  prefer just to set a different pretrial date so that we

6  can at least have the opportunity to begin doing that.

7  But if the Court would like to set that pretrial

8  deadline date, if you would give us -- I don't have a

9  number in my head.  I don't know if Mr. Porter does --

10  sufficient time to read the record and become familiar          02:10PM

11  with the case.

12       THE COURT:  Sure Mr. Oster, do you have a

13  preference one way or the other once the time issues

14  are resolved?

15       MR. OSTER:  Once the order is signed and granted

16  and we have the time waiver now I don't actually an

17  opinion as to whether I would have another pretrial or

18  have motions be met.  Either way is fine.

19       THE COURT:  I will indicate also, counsel, that

20  through some diligent efforts of my bailiff, we were          02:11PM

21  able to locate a file from the Clerk of Court's office.

22  There are two boxes in my chambers in the corner that

23  counsel would certainly have access to.  Those are

24  public records obviously.  It's the file from the Clerk

25  of Court's office and I had it brought down for

18

1    purposes of this hearing.  But certainly, you would

2    have access to be able to review any and all documents

3    that are contained in there, as well as any other

4    transcripts or other matters that are pertinent to the

5    record that you need to review.

6        MR. OSTER:  Thank you, Your Honor.

7        MS. COOK-REICH:  We are expecting to receive the

8    volumes from the Chicago attorney who handled that.

9    So we may not need that, but I would ask the question:

10   Are you intending to send the file back up to the          02:12PM

11   Clerk's office that they would then send over to the

12   archives and who knows where they put it?

13       THE COURT:  It is my intent as long as we are

14   dealing with this matter to retain those boxes in that

15   corner of my chambers and to have any newly filed

16   matters perhaps be kept separately by the clerk's

17   office ultimately to be married up once this matter is

18   concluded.

19       I think the fact that we are putting this entry on

20   kind of regranting the sentencing hearing may put the      02:12PM

21   case back on an active status with the clerk's office

22   anyway so that they would not archive it.  That may be

23   additional benefit to the entry that you were

24   discussing.

25       MR. PORTER:  There isn't a lot of track records

1    for the State of Ohio of cases being sent back from the

2    6th Circuit especially going to three-judge panels, so

3    there will be a lot of issues coming up that may appear

4    minor to the Court, but could be significant to the

5    parties.

6    THE COURT: And my view is if they are significant

7    to the parties they are significant to the Court.

8    MR. PORTER: The concern that at Lee I will say

9    that I have, is since you will be involved in the trial

10   resentencing however phrase we want to use at this          02:14PM

11   time, that it would probably be the best practice that

12   the Court not read transcript from the first trial,

13   since that will put evidence before the Court that I

14   don't think should be before the Court. That trial has

15   been reversed, at least the sentencing has been

16   reversed.

17   THE COURT: Any reason why the Court would not be

18   able to review matters that occurred during the trial

19   phase?

20   MR. PORTER: It became -- I have been in involved    02:14PM

21   in just one of these and I think there are only three

22   or four that have gone back. I was involved in one in

23   Hamilton County and it settled, but one of the issues

24   that was left open and didn't get resolved before the

25   settlement, is what access to the facts that the trier

1    of fact should or should not have.  And I would have

2    some deep concern about the Court accessing a

3    transcript that may or may not be introduced into

4    evidence.  It's currently an open question I believe

5    under Ohio jurisprudence of what the prosecutor gets to

6    put it in or doesn't get to put in with respect to a

7    resentencing.  I certainly don't mean my remarks as any

8    disrespect to the Court.  I just think that it could

9    cause a large issue later on especially if the

10   prosecutor is permitted to introduce some facts and I    02:15PM

11   don't know in what form and the Court has, in fact,

12   read what went on previously.

13       THE COURT:  All right.  Well, in that regard, let

14   me just indicate for the record that I have yet to take

15   the lids off of either of those boxes, so I don't know

16   if there are transcripts in there or not, or if it is

17   simply the types of, you know, pleadings that normally

18   end up in the clerk's file discovery, subpoenas being

19   issued, returns, those kind of things.  I don't know

20   what is in there.  And since counsel believes that     02:16PM

21   there may be some issue, I will keep it that way until

22   we have resolved that issue.

23       MS. COOK-REICH:  And again we are in an awkward

24   position in that we just get on the case ourselves, so

25   I can't -- neither of us are in a position to tell you

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 722

21

1    what is in the transcript.  And for either of us to

2    consent at this time would be very bad form

3    professionally.

4        THE COURT:  I would rather error on the side of

5    caution, honor your concern until we are able to

6    determine whether or not it's present here.  So I have

7    no problem with that.  I don't think the State has any

8    problem with that.

9        MR. OSTER:  No, Your Honor.

10       THE COURT:  You can have access to those boxes to        02:16PM

11   review them, but for the time being I will refrain from

12   doing so.   All right.

13       So it sounds to me like the preference of the

14   defense is to set one additional pretrial hearing so

15   that you can get up to speed on the case to catch up,

16   so to speak, on what has transpired in this case over

17   the past 24 or so years.  So why don't we go ahead and

18   set one additional pretrial hearing with the idea being

19   that in the interim period, I will sign an entry that

20   is proposed along the lines of what the State said.         02:17PM

21   Obviously I could do that today if you prepare it

22   today.

23       MR. OSTER:  To that regard, Your Honor, maybe I

24   should wait until defense counsel is finished

25   conferring, but I want to just make the record clear

JILL M. CUTTER, RPR
(513) 785-6596

22

1    and I believe I heard it correctly, but wanted to make

2    sure I understood and don't leave here without making

3    sure this was.  I thought I heard the defense say that

4    the prosecution obviously preparing that order, having

5    it come down to, Your Honor and Your Honor signing that

6    order granting it, they have no objection to that.

7         THE COURT:  That is correct.  I did indicate that

8    they would have an opportunity to review it and approve

9    it as to form.

10        MS. COOK-REICH:  That's correct.                    02:18PM

11        MR. OSTER:  I wanted to make sure that -- coming

12   from the prosecutor's office down to Your Honor, Your

13   Honor granting it, was not objected to.

14        MS. COOK-REICH:  You are going to send it to us

15   first?

16        MR. OSTER:  I will send it to you.  But just that

17   the procedure itself, that there --

18        THE COURT:  And the reason for that, I am

19   indicating on the record that I intend to grant the

20   rehearing and to accept jurisdiction over the case.   I  02:18PM

21   don't feel that I have a choice in the matter anyway.

22   It's simply going to be a matter of the wording, and so

23   as long as the defense has had the opportunity to

24   review it, I don't see any harm in having the State

25   take the first shot at drafting that wording.

23

1     MR. OSTER:  And again, I apologize and Your Honor

2     will probably get a little sick of this assistant

3     prosecutor, but coming from the appellate division, a

4     lot of times I just want to make sure the record is

5     clear since I harp on other people, I would hate to be

6     guilty of it myself.

7     THE COURT:  If I get sick of you, it probably has

8     nothing to do with the appellate division.  Just

9     kidding.

10    I am trying to figure out, when -- give me a rough          02:19PM

11    idea of what counsel would like to come back and feel

12    that -- because what I would like to do at the next

13    hearing is then take a substantial step towards setting

14    a full scheduling order in the case to include the

15    ultimate hearing date, to include a briefing schedule

16    for motions, to include a date for oral argument or the

17    presentation of evidence on any of those motions, all

18    of those matters that we would normally take up.  And

19    so how much time do you think it would take counsel to

20    be able to familiarize yourself with the history of the     02:19PM

21    case sufficiently to set those dates?

22    MS. COOK-REICH:  If we could set it for the last

23    week of January, Your Honor.

24    THE COURT:  Any objection to that, Mr. Oster?

25    MR. OSTER:  The only thing I may add to that, Your

1   Honor, if it is going to be the last week in January,

2   we may well just ask for it to be that first week in

3   February.   I believe I maybe having co-counsel join me

4   and that co-counsel may be around come February 4th,

5   the week of, which is that first week in February.

6   But if we need to do in January, as we are just setting

7   times, I don't think that is a problem here either.

8   Just wanted to state that on the record for all

9   parties.

10      MS. COOK-REICH:  We are fine with the next week in

11  February, Your Honor.  The only date that I cannot do

12  it would be Tuesday, the 5th.

13      THE COURT:  All right.

14      MR. OSTER:  I will say that the 4th and the 6th

15  then would be our preference, Your Honor.

16      THE COURT:  All right.   I currently have a civil

17  bench trial scheduled for the 4th and being a bench

18  trial I could take a break from that really at any

19  point in time.   So what time during the day would be

20  most convenient to counsel?  I know you will be

21  traveling down from Columbus, Mr. Porter, so I imagine

22  the afternoon on Monday 4th.

23      MS. COOK-REICH:  Yes, please.

24      THE COURT:  Do we want to go ahead and set that

25  for maybe the 2:00 range.  I may even have the bench

25

1    trial concluded by that time.

2        MR. OSTER:  That's fine with the State, Your

3    Honor.

4        THE COURT:  This matter is set for hearing at

5    2:00 PM, February 4th, 2008.  I will indicate that the

6    defendant waived all time requirements in the case on

7    the record and in writing.  The Court to sign an entry

8    re-assuming jurisdiction and granting a resentencing

9    hearing.  That is just summarizing the matters that we

10   took up at this hearing.  If counsel would approach and     02:24PM

11   sign the pretrial order.

12       MR. PORTER:  We have another issue we would like

13   to address, And this may fit in the category of

14   housekeeping, but certainly should not be delegated to

15   what we normally refer to as housekeeping.

16       I was advised by Mr. Davis yesterday when we met

17   prior to the hearing that he had been left in a cold

18   room for approximately four hours, in a room without

19   heat.  I then I met with him afterwards yesterday and    02:25PM

20   was informed that the local jail removed all his OSP

21   clothing when he arrived.  They gave him an orange

22   jumpsuit.  They didn't give him socks.  It's my

23   understanding and I will take his word for it that he

24   doesn't have anything on underneath the orange

25   jumpsuit.  He has not been given any soap.  He has not

JILL M. CUTTER, RPR
(513) 785-6596

1  been given any other toiletries. To be honest with you

2  and I apologize to Mr. Davis, to miss this significance

3  of this until I was outside this morning bright and

4  early and had a heavy leather jacket on and thought of

5  Mr. Davis who is there in a skimpy, short sleeve

6  jumpsuit with nothing on underneath it.

7       THE COURT: And he gets the benefit of being able

8  to come in through sally ports where he is not exposed

9  to elements, but that being said --

10      MR. PORTER: It is certainly still unacceptable     02:26PM

11  that he -- the sock that he has on today are borrowed.

12  He doesn't have any toilet items. He is unable to

13  shower and that is certainly at least from my limited

14  perspective, unacceptable. I have never gone about

15  that -- ran into this problem in another county. And I

16  am unclear about how to go to solve the problem. It

17  doesn't, to be honest with you, appear to be defense

18  counsel's problem. If the jail is housing him, they

19  ought to at least give him sufficient items and

20  sufficient clothing, and would like the matter          02:26PM

21  corrected in the future so he doesn't sit cold, so he

22  has socks of his own, and so he is able to bathe on his

23  own. And I truly do not believe that is too much to

24  ask.

25      THE COURT: All right. Well, okay. Thank you

JILL M. CUTTER, RPR
(513) 785-6596

1    for raising the issue. I obviously have no

2    independent information as to what the practice is over

3    there with regard to Mr. Davis or what reasons there

4    maybe for how they are handling Mr. Davis, but if you

5    believe it is an issue, I would certainly welcome you

6    -- we can have an evidentiary hearing on that and you

7    would be able to present evidence as to what you

8    believe the circumstances are that are inappropriate

9    and if the State feels that there is evidence to be put

10    on to suggest that it is appropriate, we can deal with   02:27PM

11    that issue as well.

12        Certainly, I would expect that Mr. Davis would be

13    given the same courtesies and rights while housed at

14    the Butler County Jail that any other inmate would

15    have. And if he doesn't have that, then, you know,

16    that is inappropriate. But I don't know if we are

17    considered luxurious or skimpy by other counties'

18    standards. I am not --

19        MR. PORTER: I just don't know how denying someone

20    soap -- it is one of the most basic things of life.   02:28PM

21        THE COURT: I don't know what the circumstances

22    are. And other than you saying it here, I don't have

23    any evidence before me as to what is transpiring or is

24    not transpiring. If you think that it rises to the

25    level of an issue that you really need to bring before

1    me, then, you know, you are welcome, like I said, to

2    set that matter for hearing.  We can have an

3    evidentiary hearing and determine what the appropriate

4    course of action should be.

5        In the meantime, of course, I will take it upon

6    myself to reiterate to the transport officers that, of

7    course, I would expect that he would enjoy this same

8    rights and privileges that any other person of his

9    status would have at the jail.  There may be some

10   differences between people that are pretrial, people                   02:28PM

11   that are there that have been transported from other

12   facilities, people, you know, in different security

13   levels that may apply.  I'm not sure.  But whatever a

14   person, another person, or any other person of his

15   status would be able to enjoy, he should be able to

16   enjoy as well.

17       MR. PORTER:  I have learned from Mr. Oster so the

18   appellate record is clear on this, Mr. Davis today is

19   dressed in a jumpsuit, which has for lack of a better

20   term a plunging neck line.  He has what I would refer              02:39PM

21   to as flip-flops.  He has on a pair of white socks,

22   which I understand was -- he borrowed from another

23   inmate and hopefully I am not jeopardizing Mr. Davis or

24   the other inmate when I shared the information that he

25   borrowed the socks.  And I believe I mentioned it was a

1    short sleeve shirt.  If the conditions continue, then

2    we will accept the Court's offer and we will go ahead

3    with that evidentiary hearing on the matter.

4         I would also indicate for the appellate record

5    that the escorting deputy while the Court made its

6    recent statement about whether he was being treated any

7    differently or not, was shaking his head, no.  So I am

8    only to assume at least from the shake of the head is

9    that this is standard procedure in the Butler County

10   Jail that we, in fact, deny people the basics.                    02:30PM

11        MR. OSTER:  Your Honor, I would object to that

12   statement.  That is not evidence here.   That is an

13   observation.  We don't know why he is doing that.

14   Furthermore, the State is not aware of any of this.  We

15   were never contacted that there was any problem.  I

16   never heard that there was a request made by Mr. Porter

17   to any of the deputies asking for that or anything

18   else.  While I don't want this situation to go if it is

19   a problem and I would agree that if there is a problem,

20   we would want it addressed.  We would simply ask to be   02:30PM

21   asked.   If there is a situation like that, we will try

22   correct what we can.   But as to the deputy and what

23   they may or may not have done, we would ask that -- we

24   would object to that and ask for that to be stricken.

25        THE COURT:  Well, it's certainly speculative on

30

1    your part to interpret from 40 feet away what any

2    gestures, that I obviously am not privy to because I am

3    looking at you, what gestures the transport officer may

4    or may not have made.  So -- and as far as then

5    assuming what that means, it's purely speculative, Mr.

6    Porter.  And so as long as the record reflect that as

7    well, then I think I am satisfied in that regard.

8         I will also indicate that the clothing that Mr.

9    Davis is wearing, is garb that this Court sees in about

10   every case.  So I think that -- I don't think it's                    02:31PM

11   inappropriate to indicate that that is the standard

12   jail garb that I see 20 or 30 times a week probably on

13   prisoners in the Butler County Jail.

14        MS. COOK-REICH:  Your Honor, if I could speak to

15   that.  As Mr. Porter is not from this county that I

16   have practiced in for 11 years, I advised Mr. Porter

17   that it was my opinion and my experience and at least

18   in the last couple of years that it is common practice

19   of the Butler County Sheriff's Department to not

20   provide the shampoo and the toothpaste; that they                     02:32PM

21   provide it a commissary.  As well as the socks,

22   underwear and undergarment shirt.  I believe what Mr.

23   Porter is speaking of is that he came from his facility

24   here with some of those things and they would not allow

25   him to have those.  And we are talking about warmth and

JILL M. CUTTER, RPR
(513) 785-6596

1    things of that nature, as well as cleanliness. I

2    advised that maybe one possible solution, because he is

3    being transported down here and he may not be able to

4    -- has not been allowed to have those things, is that

5    the next time that he knows that he is going to be down

6    here, I could certainly go and purchase those items and

7    drop them off at the jail and then bill those out to

8    the county expense at the end of the matter. That is

9    my personal experience. I didn't see the deputy nod or

10   not, but I know from my experience, that other clients          02:32PM

11   have told me those things.

12        THE COURT: All right. Well, we certainly, as I

13   indicated, would want Mr. Davis to have the same rights

14   and enjoy the same privileges that any other person of

15   his status would have. If there have been any

16   different treatment, I would certainly hope that is

17   based on some contingency, such as the fact that he was

18   transported from another facility, and they have

19   certain security issues or other issues or rules that

20   apply. I think that in the short-term it would will              02:33PM

21   be remedied by the fact that he will be transported

22   back to the institution until we are ready for the

23   other hearing. And if, counsel, there is more to be

24   presented on this issue, like I said, feel free to, if

25   you do not believe that you can remedy it by virtue of

JILL M. CUTTER, RPR
(513) 785-6596

32

1  making a request or handling it the way Ms. Cook-Reich

2  indicated, file a motion and we will hear it.

3      MR. OSTER:  Your Honor, one other thing I would

4  add to that, is the reason that Mr. Davis was here at

5  that time is the transport order that we put on tried

6  to get him here early.  The hearing before that we had,

7  I will try to make sure I make this right for the

8  record, I believe the November 5th hearing we had, we

9  wanted to make sure that Mr. Davis could come over in

10  time so that Mr. Porter could consult with him.  So it          02:34PM

11  was our office that asked for him to be here at 8:30 so

12  that he was here and more than available to be

13  consulted with.

14      Obviously, if that is ever going to be a problem

15  we can try to take care of that from our end as well.

16  If the State aided in that part of it, we will be more

17  than happy to fix that, but I would just like to say

18  that was why the transport order was like that.  My

19  understanding from that hearing was that they would

20  have liked him here early to discuss things with him.          02:34PM

21  And if that is too early, again, we are more than happy

22  to have people speak to us, and try to take care of

23  that situation if we can.

24      THE COURT:  All right.  Anything more?

25      MR. PORTER:  I have nothing, Your Honor.

JILL M. CUTTER, RPR
(513) 785-6596

33

1    MS. COOK-REICH: No, Your Honor.

2    THE COURT: I think that the record is sufficient

3    in that regard. If counsel would approach, then, and

4    sign the pretrial order, please.

5    Counsel, then is there anything further that we

6    need to take up today on the record? Otherwise we will

7    be adjourned on this matter until February 4th at

8    2:00 PM. The defendant to be transported back to the

9    State facility between now and the next hearing. We

10   will make sure that we have him transported back for          02:35PM

11   that next hearing. And in the interim period, I will

12   be ultimately signing an entry that has been reviewed

13   by both counsel regarding the granting of the

14   rehearing. Anything further?

15   MS. COOK-REICH: One thing, Your Honor. Is it

16   possible to have an order to have Mr. Davis remain here

17   at least until Friday morning so that I might have an

18   opportunity to see him while he is still in the county.

19   I had something cleared from my schedule and I could go

20   over and see him on Thursday.                                 02:36PM

21   THE COURT: I'm just now concerned about the other

22   issues that have been raised. And, you know, I don't

23   want to be put between a rock and a hard place that by

24   granting your request, I am in some way not adequately

25   addressing his other needs.

34

1    MS. COOK-REICH:  I discussed that with Mr. Davis

2    and he would like an opportunity to stay and he will --

3    THE COURT:  Obviously, if the Court needs -- or if

4    Court's intervention is needed in some manner, get

5    ahold of the prosecutor, get ahold of me and we will

6    handle it by way of hearing.

7    MS. COOK-REICH:  Thank you, Your Honor.

8    THE COURT:  The defendant will stay here until

9    Friday.

10   MR. OSTER:  Just two very small things.  First    02:37PM

11   one, just note for the record at certain times defense

12   counsel turned off their microphone so that their

13   microphone probably wasn't working right.  The court

14   reporter's transcript will probably be the easiest

15   thing for purposes of the record in this case.  Just

16   so that is noted in case it ever becomes an issue.  I

17   don't anticipate it.

18   The second thing would be I know that we have

19   decided pursuant to what the defense felt as far as not

20   pulling random draw or something else as to the three    02:37PM

21   judges, the State did a little bit of research on that;

22   didn't know if the Court wanted to hold off on that, or

23   would like the case cites to look at.  Any way the

24   Court would like to handle that.

25   THE COURT:  We will wait until the issue is before

JILL M. CUTTER, RPR
(513) 785-6596

35

```
1              the Court by way of motion.
2                    MR. OSTER:  That's fine, Your Honor.
3                    MS. COOK-REICH:  Thank you.
4                    THE COURT:  Anything further --
5                    MS. COOK-REICH:  No, Your Honor.
6                    THE COURT:  -- I hesitate to say.   All right.
7                    MR. OSTER:  Nothing on the State's part.
8                    THE COURT:  We will be adjourned on this matter.
9       We can go off record.
10                   (Hearing concluded at this time 2:38 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

36

```
1   STATE OF OHIO          )
2                          )  SS.  REPORTER'S CERTIFICATE
3   COUNTY OF BUTLER )
4              I Jill M. Cutter, RPR, do hereby certify that I am
5   a Registered Professional Reporter and Notary Public within
6   the State of Ohio.
7              I further certify that these proceedings were
8   taken in shorthand by me and by electronic means at the time
9   and place herein set forth and was thereafter reduced to
10  typewritten form, and that the foregoing constitutes a true
11  and accurate transcript, all done to the best of my skill and
12  ability.
13             I further certify that I am not related to any of
14  the parties hereto, nor am I in any way interested in the
15  result of the action hereof.
16             Dated at Hamilton, Ohio, this 24th day of
17  December, 2009.
18
19
20                         Jill M. Cutter, RPR
                           Official Court Reporter
21                         Butler County Common Pleas
                           Hamilton, Ohio   45011
22
23
24
25
```

JILL M. CUTTER, RPR
(513) 785-6596

1

1            COURT OF COMMON PLEAS

2            BUTLER COUNTY, OHIO

3    -------------------------------

4   STATE OF OHIO,

5      Plaintiff,      Case No. CR-1983-12-0614

                      CA 09-10-263

6

7      vs.        HONORABLE ANDREW NASTOFF

8   VON CLARK DAVIS,

9      Defendant.

10   -------------------------------

11

12

13

14

15               - - -

16

17           MOTION HEARING

18      TRANSCRIPT OF PROCEEDINGS

19        MARCH 6, 2008

20

21               - - -

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

2

```
 1 │  APPEARANCES:

 2

 3              On behalf of the plaintiff:

 4                   MICHAEL A. OSTER, JR., ESQ.
                     DAN EICHEL, ESQ.
 5                   Assistant Butler County Prosecuting Attorney
                     11th Floor
 6                   315 High Street
                     Hamilton, Ohio 45011
 7

 8              On behalf of the defendant:

 9                   MELYNDA COOK-REICH, ESQ.
                     Repper, Pagan, Cook
10                   1501 First Avenue
                     Middletown, Ohio 45044
11                        and
                     RANDALL PORTER, ESQ.
12                   Assistant State Public Defender
                     250 East Broad Street
13                   Suite 1400
                     Columbus, Ohio 43215
14

15

16

17

18

19

20

21

22

23

24

25
```

JILL M. CUTTER, RPR
(513) 785-6596

3

| | |
|---|---|
| 1 | Transcript of Proceedings |
| 2 | Afternoon Session |
| 3 | - - - - - - - - - - |

4     THE COURT: We're on record in State of Ohio vs.

5    Von Clark Davis. This is CR83-12-0614. For the

6    record, Von Clark Davis appears personally with counsel

7    Mr. Porter and Ms. Cook-Reich. For the State, they are

8    represented by their assistant county prosecutors

9    Michael Oster and Dan Eichel. Good afternoon, counsel.

10    Refresh my recollection. On our overall pretrial    03:00PM

11    schedule in this case, I know we are here today for the

12    limited purpose of addressing some additional or some

13    issues regarding appropriation of funds. We wanted to

14    handle those separately and early enough so that the

15    experts, assuming that funds are provided -- can get to

16    work and allow us to be able to accomplish things along

17    the time line we originally set.

18    Was there anything further that we were going to

19    take up today above and beyond that according to the

20    schedule?    03:01PM

21    MS. COOK-REICH: I had a notation that we were

22    going to do the three-judge pull today.

23    MR. OSTER: As did I as well, Your Honor.

24    THE COURT: I believe that I have a bucket

25    available. Let me make sure that we have all of the

4

1    names in there.  We can take that up as well.  All

2    right.

3         Correct me if I am wrong, but is there an

4    agreement that Judge Sage would be not appropriate to

5    be in the pull since he was a prosecutor in the

6    original action?

7         MS. COOK-REICH:  If there were no agreement, we

8    would certainly file a written motion to that effect.

9    He should be recused.

10        THE COURT:  Do you wish to argue that?          03:01PM

11        MR. EICHEL:  We agree with that, Your Honor.

12        THE COURT:  All right.  Any other judges that you

13   can think of?  I have Judge Spaeth, Oney, Hedric,

14   Powers, Pater, anyone in that group that you know of

15   that has any conflict or any reason why they would not

16   be able to preside, if indeed it is a three-judge panel

17   that hears the case?

18        MS. COOK-REICH:  Your Honor, as you are aware,

19   Judge Powers is my former law partner.  I haven't had

20   any cases with him in this calendar year.  I don't know   03:02PM

21   whether he is still recusing himself from our cases.

22        THE COURT:  I think the law contemplates about a

23   one-year period after a person -- that is what I was

24   informed is that it contemplates not hearing cases with

25   former law partners or affiliates for a period of one

JILL M. CUTTER, RPR
(513) 785-6596

5

1    year. We are beyond that time period.

2         MS. COOK-REICH: We are beyond that, Your Honor,

3         THE COURT: Are you raising an issue in that

4    regard?

5         MR. EICHEL: No, Your Honor.

6         THE COURT: All right. Well, we can take that up

7    in a moment. First, I know that we have a motion to be

8    heard ex-parte. And, counsel, what I would ask

9    initially, although there have been occasions where I

10   have granted ex-parte hearing in these -- in capital        03:03PM

11   litigation. I haven't found that it is always

12   necessary to do so. I believe the law contemplates a

13   situation where the defense should not be place in a

14   position where essentially they would have to reveal

15   trial strategy issues, things like that, that they

16   wouldn't have otherwise been forced to reveal had they

17   been able to retain the expert privately. And so,

18   obviously I wouldn't want to get into a situation where

19   we would be discussing that, but I am noting for the

20   record that there is not going to be a trial on the        03:04PM

21   matter, the underlying -- there has already been a

22   conviction and a finding of guilt and we are at a

23   mitigation phase, so that may factor in or may at least

24   lessen some of the concerns with regard to trial

25   strategy since we are really talking about mitigation

6

1    strategy.  But with that being said, I mean, are you

2    arguing that we have to go into an ex-parte hearing

3    immediately, or generally I am inclined to grant these

4    motions early on based on, you know, just showing --

5    making a prima facia showing of the Mason standards in

6    Ohio, and the Ake standards and then if there is a

7    requirement to come back for additional funds and you

8    require an ex-parte hearing, I would consider that

9    separately.  I guess I am trying to figure out where

10   you are at on this counsel.                              03:05PM

11       MS. COOK-REICH:  Your Honor, we would request a

12   full ex-parte hearing on all of the funds that we are

13   requesting.  We believe that although the word trial

14   strategy is used, that also is applicable to the

15   mitigation trial strategy.  We believe it is our

16   client's right not to have that available to the

17   prosecutor prior to the time in which we are deciding

18   to go use an expert.

19       THE COURT:  Well, the problem is, I can't even

20   tell from the motion what experts you are requesting.   03:05PM

21   Like what areas you are requesting.  I mean, I have to

22   be able to at least make a preliminary determination.

23       MS. COOK-REICH:  In general, we are requesting

24   funds for obviously a mitigation specialist, an

25   investigator, and mental health experts.  In regards to

1 the specific mental health experts, we would like an

2 ex-parte on that and I can tell you that we are

3 interviewing and determining which ones we may proceed

4 forward on.

5   THE COURT: All right. State wish to be heard?

6   MR. OSTER: Your Honor, obviously the State filed

7 a motion, which hopefully this Court has at least been

8 able to get --

9   THE COURT: Yes.

10   MR. OSTER: The State obviously addressed the fact

11 that multiple states have ruled that there is no

12 constitutional right for this, and we have cited

13 numerous cases for that proposition. Secondly, it

14 seemed the State to be a twofold argument that the

15 defense put forward, the first issue being that right

16 of self incrimination, which in this case, there is

17 already been a guilty finding, which has been affirmed

18 by multiple courts. So the state is having trouble

19 seeing where a self incrimination could be seen by Mr.

20 Eichel and myself sitting here today listening to which

21 experts were needed.

22   I think the second, when it goes to the theory of

23 the case or I think what would be put in quotation

24 marks is you know that for layman's terms, cat out of

25 the bag type argument, this case has already had a jury

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 745

8

1    -- or a panel finding of guilt. It's had a mitigation

2    hearing in 1983. A mitigation hearing in 1989. It has

3    gone through the Court systems. The 6th Circuit wrote

4    its decision saying why specifically this had to come

5    back, which details what evidence will be allowed to be

6    put on. Obviously, the prison records of the defendant

7    in this case. To the State it's hard to see where the

8    proverbial cat out of the bag is in this case, as it

9    has already gone through that many stages.

10   It's not the case I think as we had put on the          03:07PM

11   record before of a typical case. Most people in this

12   courtroom have never seen a case quite of this

13   procedural posture. And I don't think it is the type

14   of case and it would be the State's position that these

15   typical arguments hold in light all of that, that I

16   have put on the record here today, Your Honor.

17   THE COURT: All right. Well, yeah, I think it is

18   a fair statement that, you know, most of us in here

19   haven't seen a case in this procedural posture and I

20   don't want to see it again.                              03:07PM

21   MR. PORTER: We would like an opportunity to

22   address those arguments, Your Honor.

23   THE COURT: Sure.

24   MR. PORTER: The first is, I am currently

25   litigating another case with Mr. Oster, so I may be

9

1    reading something into his argument that at least

2    having seen it another case from him, as I don't think

3    there is anything in that 6th Circuit opinion that

4    limits what evidence we could put before you with

5    respect to the new sentencing hearing.

6         THE COURT: Well, yeah. My understanding is that

7    it is a resentencing and that it is a, you know, a de

8    novo hearing. It is a resentencing de novo.

9         MR. PORTER: Secondly is, there has been a

10   reference to Red, as I will call him, having forfeited        03:08PM

11   his Fifth Amendment right. I am under no law that

12   knows that he has forfeited his right to self

13   incrimination with respect to this resentencing

14   hearing. He certainly also has a right to his Sixth

15   Amendment right to counsel at the new hearing, which

16   would again protect our privileged communications with

17   him.

18       With respect to the cat out of the bag argument is

19   we plan, at least tentatively, of going in new areas

20   with respect to the sentencing hearing that this Court        03:09PM

21   holds in August. To think that we are just going to

22   put on the same evidence that was put on at the prior

23   hearing, would certainly mean that this Court would

24   have to do the hearing yet again because that would

25   amount to ineffective assistance of counsel.

10

1    The Court -- the State has cited you to some cases

2    and I would like to discuss those with you if I could,

3    Your Honor.

4        THE COURT:  All right.

5        MR. PORTER:  And that, the prosecution is -- what

6    I try to do is group them by jurisdiction.  They cited

7    you, Your Honor, to a number of cases.  And I think we

8    need to start with the U.S. Supreme Court case of *Ake*

9    *vs. Oklahoma*.  And I am quoting from page 82 to page

10   83.  Quote, When the defendant is able to make an                03:10PM

11   ex-parte threshold showing to the trial court that his

12   sanity is likely to be a significant factor in his

13   defense, the need for assistance of a psychiatrist is

14   readily available.  So I would suggest to the Court

15   strongly that the U.S. Supreme Court itself in Ake

16   recognized the right to an ex-parte hearing.

17       THE COURT:  There is a difference between

18   recognizing a right under certain circumstances and

19   indicating that it is constitutionally required in all

20   circumstances.  Wouldn't you agree?                              03:10PM

21       MR. PORTER:  I understand, but again, it's Ake's

22   coming out of a case coming out of Oklahoma.  The only

23   thing that the U.S. Supreme Court would be addressing

24   in Ake would not be a state statutory right.  It would

25   have to be a federal constitutional right since that is

JILL M. CUTTER, RPR
(513) 785-6596

11

1 the only way that the U.S. Supreme Court would have

2 jurisdiction over this case.

3  THE COURT: I remember reading some cases,

4 subsequent to the, you call it Ake, and I have always

5 referred to it as Ake, I don't know which one is right.

6 You may be right. It proposed that the reason that

7 language is in Ake is because there is a federal

8 statutory requirement for an ex-parte hearing that they

9 may have been assuming would apply in state scenarios

10 as well. I know there are other states as well as the 03:11PM

11 federal system that have a statutory requirement. The

12 State of Ohio, to my knowledge, does not have a

13 statutory requirement, but recognizes that under

14 certain circumstances, an ex-parte hearing may be

15 appropriate. Now, that is my understanding of the law.

16  MR. PORTER: That is correct with respect to some

17 Court's speculating that was an assumption by the U.S.

18 Supreme Court. I think it is a dangerous assumption,

19 again, since they are addressing a case out of

20 Oklahoma, and why they would be assuming that federal 03:12PM

21 statute comes into may or the two statutes are similar.

22 Certainly, somewhat demeans the U.S. Supreme Court that

23 they would be making assumptions such as the same.

24  I would also like to discuss some of the cases

25 cited by the State, because I think they are helpful.

12

1   And the first is, and I am going to group them together

2   by jurisdiction, if I could, Your Honor.  The first

3   being *State vs. Fitz*, which is a North Carolina case.

4   And the Court talks about that it may -- while they

5   didn't find it a constitutional right, the Court found

6   that it was a preferred procedure to go ex-parte.  And

7   then I think it is important to look at how North

8   Carolina continues to apply Fitz.  And if the Court

9   would go onto -- and again this is a case cited by the

10  State, *State of Ohio North Carolina vs. White*.  And in       03:13PM

11  White, the Court cites to *State vs. Ballard*, which we

12  cited in our memorandum.  And I am on -- when I am

13  looking at Ballard, I am looking at page 277, Your

14  Honor.

15      THE COURT:  Okay.

16      MR. PORTER:  And I meant to bring a copy with

17  Ballard with me this morning.  I did not.  The North

18  Carolina, courts have recognized that -- the way I read

19  Ballard -- is that there is an absolute right to an

20  ex-parte hearing when you are talking about mental          03:14PM

21  health professionals.  And the reason for that is as

22  opposed to an investigator, when you are sharing work

23  product with the Court with respect to the need for a

24  mental health professional, you are talking about

25  things that, in fact had gone on in the defendant's

JILL M. CUTTER, RPR
(513) 785-6596

13

1    mind, the way he was processing information, and that

2    certainly implicates his Fifth Amendment rights. And

3    again, I would repeat for the Court, is, in fact, that

4    we are requesting mental health assistance in this

5    matter. And that it is our position -- I am sorry. I

6    lost my train of thought for a minute. It is certainly

7    our position that the Fifth Amendment will apply to the

8    resentencing hearing.

9        And the case of *State vs. Garner*, cited by the

10   State again, the Court in that case -- and I am on page          03:15PM

11   695 to 696 -- again, recognizes the right to go

12   ex-parte when dealing with a mental health

13   professional. So to the extent that those courts, this

14   Court finds those cases relevant, with respect to the

15   issue of ex-parte, it speaks in the terms of we have an

16   absolute right with respect to a mental health

17   professional.

18       The prosecution also cited the Court to the case

19   of *State of Tennessee vs. Smith*. And that case is

20   certainly distinguishable, because as this Court has            03:15PM

21   just mentioned briefly, Tennessee is one of those

22   jurisdictions with respect to there is a right to go

23   ex-parte.

24       The prosecution cited this Court to two Virginia

25   cases. Excuse me, Your Honor. And it is always

JILL M. CUTTER, RPR
(513) 785-6596

14

 1     interesting to look at the jurisprudence of those

 2     states in which they actively execute their citizens.

 3     They cite you to *Weeks vs. Virginia*.  And in Weeks, I

 4     agree with the prosecution's reading that they held

 5     that there was no right to go ex-parte to the Court

 6     with respect to experts.  But they do it in one

 7     paragraph and site the reader back to the *Ramdass vs.*

 8     *Commonwealth*.  And if you go back to read -- and the

 9     State, I believe, cites Ramdess, when you go back to

10     Ramdass, it is pretty much of a one-paragraph issue,         03:16PM

11     and what it does -- two paragraphs, excuse me, Your

12     Honor -- and cites the Court back to the O'Dell

13     decision.  And when you go back to read the O'Dell

14     decision, and the full cite is *O'Dell vs.*

15     *Coommonwealth*, 364 SE 2d. 491.  The decision itself,

16     which is really the original decision cited by all of

17     the Virginia cases, has nothing to do with the ex-parte

18     appointment of experts.  There is one additional

19     jurisdiction that the prosecutor cited this Court to,

20     and both of them were two Arizona cases.  And in those       03:17PM

21     cases, there is a little discussion, and what the Court

22     basically came down to is that the Supreme Court of

23     Arizona found that defense counsel could not ethically

24     meet with defense counsel for purposes of an ex-parte

25     funding hearing.  I suggest that doesn't control in

15

1    this case, I am also aware and I assume that at the

2    most recent judges' conference there was a presentation

3    regarding an ex-parte conversation case that came out

4    of the Ohio Supreme Court recently in the case of

5    *State vs. Roberts*. And I am sorry I don't have a cite

6    to it. I gather it has been the mention of some

7    judges. I think the case is distinguishable, but I

8    would like to talk a minute about the case.

9        In Roberts what it occurred is, that the jury had

10   returned a death verdict and the prosecutor,                    03:18PM

11   prosecutors, and the trial judge, Judge Stewart decided

12   they would get together and jointly draft the

13   sentencing opinion. The Ohio Supreme Court opinion

14   really doesn't do justice on what occurred in the case.

15   Defense counsel was not aware of the ex-parte process.

16   At sentencing the Judge, before asking defense counsel

17   or the defendant if they had anything to say, started

18   to read the death opinion into the record. Defense

19   counsel noticed that every time the Judge turned his

20   page, the prosecutor was likewise turning the page and   03:19PM

21   at some point defense counsel stood up and objected.

22   The Judge, Judge Stewart, stood up and said gosh, I'm

23   sorry, we forgot to tell you about the drafting

24   process. And the judge at that point said will, there

25   is only one or two versions, the prosecutor said three

1    or four. The Judge then went into chambers, met with

2    defense counsel and the prosecutor and we heard there

3    were four or five, then we heard there were six or

4    seven. And the case got reversed. But I think the

5    case is substantially different, because in that case,

6    what was going on is there was drafting of a sentencing

7    opinion, which had certainly affected the defendant, as

8    well as the prosecution.

9        In this case, and it's been our presentation in

10    the motion is that the funding issue that we are asking    03:20PM

11    to approach, asking to approach this Court ex-parte,

12    does not relate to the prosecution. So, in fact, the

13    Roberts decision has no relevancy to the issue that is

14    currently before the Court. I understand that there

15    are disciplinary proceedings pending against the Judge

16    and prosecutor which are going forward in evidentiary

17    hearing in March. I don't think it has any relevancy

18    to the issue before this Court. Thank you, Your Honor.

19        THE COURT: Thank you, Mr. Porter. Let me just

20    ask the prosecutor, I don't need you to respond to the    03:21PM

21    recitation of the case law, but what is the State's

22    position regarding the underlying issue of the

23    appropriateness of the Court providing funds for expert

24    assistance in this matter?

25        MR. OSTER: I don't think the State has any

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 754

17

1  objection necessarily for funds being furnished for

2  what is necessary and that is Your Honor's decision and

3  your discretion, and I think that, you know, in these

4  type cases I think that, you know, typically funds will

5  be given by the discretion of the trial court as to

6  what is necessary.  The State has no objection to the

7  Court using its discretion.

8      THE COURT:  All right.  And I guess the only

9  question I would have is typically I know the Court

10  will entertain motions for an investigator and a        03:22PM

11  mitigation specialist and if appropriate if there is an

12  issue that is raised, a mental health expert.  But

13  normally the investigator, in my experience, assists in

14  trial preparation; the mitigation specialist assists in

15  preparation for mitigation phase materials.  And then

16  obviously the mental health expert would also apply in

17  mitigation.  I guess, whether you have a position on

18  the appropriateness of funds for an investigator, when

19  there is not a trial to be had versus simply -- not to

20  diminish the importance of it, but it is the mitigation  03:22PM

21  phase.  It is one part of the trial, not the entire

22  trial.

23      MR. EICHEL:  If Your Honor, please, it's my

24  understanding of what a mitigation specialist does, is

25  that part of the -- that is the way it has been

18

1    explained to us by defense attorneys in the past, they

2    do the investigation for the mitigation. Whereas the

3    Court traditionally is appointed an investigator on the

4    facts of the case to go during for a -- the guilt phase

5    as to use that -- to use that term, I object to use

6    that term. Investigator would be rather limited to

7    mitigation, so I don't know that there is a real

8    difference between the words. We are just using

9    different words to describe the same thing.

10       THE COURT: All right. Without going into defense          03:23PM

11   strategy, can you explain to me why you would need a

12   separate investigator or a mitigation specialist as

13   opposed to a mitigation specialist alone? Is there --

14   I mean, if it is a matter of funding, then, you know,

15   perhaps, additional funds could be appropriated for the

16   mitigation specialist if need be, but I think I am just

17   trying to figure out why you would need both.

18       MR. PORTER: And I assume gathering the

19   prosecutor's remarks, is because they see this case as

20   being different. I think at some point, I am gathering    03:24PM

21   the State is going to, whoever the trier of fact is,

22   whether it be a three-judge panel or a jury, is going

23   to try to put into evidence, the facts from the

24   underlying conviction.

25       THE COURT: I don't know.

JILL M. CUTTER, RPR
(513) 785-6596

1    MR. PORTER:  That's the only way that -- and that

2    is an open question of how you do it in these

3    particular cases, but because the State is going to try

4    to put into evidence some of those facts, at that

5    point, I think it becomes an obligation upon us to, in

6    fact, reinvestigate at the trial phase to be able to

7    address those facts as they come in.

8    MS. COOK-REICH:  If I could add one further

9    response, I believe in the Harvey Johnson case, Mr.

10   Piper came down and indicated that he believed that the          03:25PM

11   mitigation specialist's job was solely to help develop

12   the theme of mitigation and not to investigate

13   whatsoever.

14   In this particular case, we will need an

15   investigator to help us locate witnesses and continue

16   to pursue that, and we would ask for funds for both of

17   those things.

18   THE COURT:  Do you have proposed individuals with

19   information as to their hourly billing rates available?

20   MS. COOK-REICH:  Your Honor, I would propose Jason          03:25PM

21   Quinlan who I have used in the past and this Court has

22   approved him.  Off the top of my head, I don't remember

23   his hourly rate, but I thought it was $65.  It is the

24   same as it was in the Harvey Johnson matter.

25   And Mr. Porter can speak as to the mitigation

20

1    specialist.

2        MR. PORTER: What we would propose is we would use

3    a mitigation investigator at the office. His policy to

4    charge for that would be $35 an hour. And would be

5    asking for a hundred hours.

6        THE COURT: Okay. All right. And then with

7    regard to mental health expert?

8        MS. COOK-REICH: We don't wish to disclose --

9        THE COURT: Do you have it available in an entry

10   for me?                                                    03:26PM

11       MS. COOK-REICH: We do not yet. As I indicated

12   when we first spoke, we would like ex-parte on that

13   because we would choose not to advise the prosecutor

14   and which fields we are looking and Mr. Porter and I

15   are still seeking particular experts.

16       THE COURT: Okay. Well, so you don't -- is it

17   that you don't want to reveal at this time, or you

18   don't have one at this time? It sounded like you said

19   you are still seeking.

20       MS. COOK-REICH: A little bit of both, Your Honor.   03:26PM

21   I can stand here and advise the Court that we are, in

22   fact, going to use mental health experts. We have not

23   yet narrowed the field.

24       THE COURT: All right. This is what I am going to

25   do: For the time being, I am going to deny the request

1  for ex-parte, for an ex-parte hearing because -- as to

2  the motion for an investigator, as to the motion for a

3  mitigation specialist. What I will -- I am going to

4  grant the motions of the defense. I'm going to

5  initially limit the investigator to a cap of $1,000 at

6  the hourly billing rate indicated, which I assume would

7  be the same as the Johnson case.

8      MS. COOK-REICH: It is, Your Honor.

9      THE COURT: With regard to a mitigation

10  specialist, same order; that I am going to cap it    03:27PM

11  initially at a dollar figure of $2,500 with the proviso

12  that should, as the case develops, counsel require

13  additional funds, that they can reapproach the Court,

14  they can request an ex-parte hearing, which may or may

15  not be granted depending on the circumstances, and upon

16  good cause shown, may be entitled to additional funds.

17  But again, it would be on the basis of good cause

18  shown.

19      With regard to the mental health expert, what I am

20  going to ask counsel to do is to -- I do not want to    03:28PM

21  grant an order without knowing who I'm appointing, what

22  their billing rate is, maybe even what their background

23  is. If it is someone that is unfamiliar to the Court

24  that has not been appointed by the Court previously, I

25  would imagine that the Court may want to know a little

22

1    bit more information about their background, a CV,

2    something like that.  And I may grant this in terms of

3    an ex-parte hearing to be able to review that.  I need

4    to know the initial information first.

5        MS. COOK-REICH:  Obviously, Your Honor, that is

6    part of what we don't wish to disclose to the

7    prosecutor in regards to who we are looking at, their

8    CV.

9        THE COURT:  I understand.  I'm not asking you to

10   reveal that to counsel or to myself at this point in          03:29PM

11   time.  I am asking that we address the issue when you

12   are prepared to provide that information.  I mean,

13   right now, I don't see that you are prepared to go

14   forward and provide that information to the Court.  I

15   don't think that we should go into an ex-parte hearing

16   to discuss it when we are not going to be able to get

17   to a final resolution of it.  So what I am suggesting

18   is that we come back as quickly as you can have that

19   information available.

20       MS. COOK-REICH:  And we will, Your Honor.  We are      03:30PM

21   scheduled to meet with one particular expert on the

22   17th and we will be back forthwith.

23       THE COURT:  Well, I am thinking that we should set

24   something now.

25       MS. COOK-REICH:  That is fine.

JILL M. CUTTER, RPR
(513) 785-6596

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 760

23

1     THE COURT: What I don't want to do is, you know,

2 have the matter linger because you get distracted by

3 the other issues that you are dealing with, and then we

4 are dealing with this issue at the 11th hour and it

5 jeopardizes the hearing date that we have. So if you

6 can give me a ballpark on -- you are indicating that

7 you're meeting with someone you are going to consult

8 with on the 17th. Would it be possible to come back in

9 early April?

10     MS. COOK-REICH: We would like to come back before     03:30PM

11 then, Your Honor.

12     THE COURT: Well, the Court is unavailable --

13     MS. COOK-REICH: -- the 20th and 30th, as I am.

14     THE COURT: Right. That is the problem and I

15 don't know -- I am -- I'm going to be involved in an

16 eight or nine day trial starting Monday, so I am going

17 to have limited availability before the 20th. Although

18 I could put something in at the end of the day or over

19 a lunch hour or something like that.

20     MS. COOK-REICH: Would you have any time available     03:31PM

21 on either March 18th or 19th, Your Honor?

22     THE COURT: Counsel, what is -- do you have a

23 preference on either the 19th --

24     MS. COOK-REICH: I prefer the 18th.

25

JILL M. CUTTER, RPR
(513) 785-6596

24

1    THE COURT:  So do I.  Either the end of the day or

2    first thing in the morning on the 18th, how do your

3    calendars look, Mr. Oster or Mr. Eichel and it may be

4    brief.  If I do decide to grant an ex-parte hearing,

5    obviously your participation would be pretty limited at

6    the beginning and then obviously we would carry on

7    without you.  But at least initially, I would want you

8    to be there.  And in the event that we do not need an

9    ex-parte hearing, do you have a preference?

10   MR. OSTER:  I think, talking to Mr. Eichel, I          03:32PM

11   don't think either one of us has a preference

12   necessarily.

13   MS. COOK-REICH:  No preference.  In the morning

14   Mr. Porter needs to come down from Columbus, so I would

15   prefer not first thing in the morning in case we get

16   weather.

17   THE COURT:  Why don't we look at 4:00 on Tuesday

18   the 18th.

19   MR. OSTER:  We going to be able to get a transport

20   order?  Just wanted to make sure, Your Honor.          03:32PM

21   THE COURT:  All right.  Joe, do you have a

22   pretrial order for me to --

23   THE BAILIFF:  Yes, Your Honor.

24   THE COURT:  Are we good on that date?

25   MS. COOK-REICH:  Yes, Your Honor.  Your Honor, Mr.

Porter had a suggestion in case we go long, would you be okay with setting that hearing at 3:00 instead of 4:00 on that day?

THE COURT: I will be in a jury trial. 4:00 is what I am going to have to do. Just for clarification, my feeling on the ex-parte hearings is that they are not constitutionally required. I think the law in Ohio, and my interpretation of the Ake decision, is that it is not constitutionally required, but that an ex-parte hearing may be necessary at times to protect counsel's defense strategy.

I believe I was able to rule today on your request without requiring you to reveal any defense strategy inappropriately or too early in the proceeding and that is why I did not grant that motion because I feel that it was mooted by the Court's granting of the underlying request.

With regard to whether we would have an ex-parte hearing regarding the last issue, quite frankly it's going to depend on whether the Court -- how much information the Court needs to hear from defense counsel. You have to make a showing, obviously the showing contemplated by the statute by the Mason case, as to I guess the particularized need for the expert. And if the Court feels or is convinced that you would

03:35PM

03:35PM

JILL M. CUTTER, RPR
(513) 785-6596

26

1   have to get into defense strategy in order to meet that

2   burden then I would grant an ex-parte hearing. But if

3   I feel that I can make the ruling without requiring or

4   without having you get into that issue too deeply, then

5   we may be able to deal with it without an ex-parte

6   hearing. Just so you understand where I am coming from

7   on the issue and so that the record has some eyes on

8   that issue. All right.

9        Anything further, then, that we need to take up on

10  this issue?                                                  03:36PM

11      MR. OSTER: No, Your Honor.

12      MS. COOK-REICH: No, Your Honor.

13      THE COURT: All right. All right. The way that I

14  conduct the three-judge draw, I have a beautiful gray

15  bucket. Inside the bucket are my business cards. All

16  have my name on the one side, so that they are all the

17  same size, so that there is no way to be able to tell

18  anything from looking at the outside. On each of the

19  cards on the other side, there is the name of one of

20  the general division judges, and I have already removed     03:37PM

21  Judge Sage from this panel.

22      The order in which the judges are drawn will be

23  the presumptive order in which they would be called

24  upon to sit on any perspective three-judge panel. We

25  do this drawing as a courtesy to the defense counsel so

JILL M. CUTTER, RPR
(513) 785-6596

27

1    that you have some idea of the pecking order of judges

2    that would be sitting on a three-judge panel in case

3    that would be an option chosen by defense counsel, and

4    obviously, if it is required in the case as well.

5    Obviously, it does not in any way impact any motions

6    that you may file regarding whether the three-judge

7    panel is required or not. That is a separate issue.

8    It will be determined separately.

9         With that being said, either Mr. Porter or Ms.

10   Cook-Reich, either one of you --                        03:38PM

11        MS. COOK-REICH: We would like Mr. Davis to draw

12   those if that would be okay with the Court.

13        THE COURT: Any objection?

14        MR. OSTER: No objection. But in doing that, are

15   that I waiving any argument as to this procedure at

16   all?

17        MR. PORTER: My understanding from the Court's

18   statement a minute ago is we reserved all rights to

19   object.

20        THE COURT: Well --                                  03:38PM

21        MR. PORTER: And whose hand is in the bucket, I

22   have a hard time believing that is going to be an

23   issue. We would waive any and all issues with respect

24   to whether it's Ms. Cook that draws, Mr. Davis that

25   draws, or myself. In fact, we are requesting that Mr.

28

1   Davis make the draw.

2       THE COURT: Ms. Cook, if you would come and get

3   this. Satisfy yourself first that the names of all of

4   the judges are in there, and that Judge Sage is not in

5   there. And then, you can hold the bucket while Mr.

6   Davis draws the name.

7       MS. COOK-REICH: Your Honor, I am satisfied with

8   the five cards that hold the judges minus Sage. Your

9   name is not in there.

10      THE COURT: I would be the presiding judge and          03:39PM

11  then two other judges would come in the order drawn.

12      MS. COOK-REICH: The first name is Judge Spaeth.

13      THE COURT: All right. And the record will

14  reflect that Mr. Davis drew the name of Judge Spaeth

15  first.

16      MS. COOK-REICH: Second name is Judge Pater.

17      THE COURT: Judge Pater was drawn by Mr. Davis

18  second.

19      MS. COOK-REICH: Third name is Judge Powers.

20      THE COURT: Judge Powers was drawn by Mr. Davis,        03:40PM

21  third.

22      MS. COOK-REICH: Fourth name is Judge Hedric.

23  There is only one left. It's -- Judge Oney, would be

24  the last name, Your Honor.

25      THE COURT: All right. All right. For the

29

1    record, that will be the presumptive order. Of course,

2    this will be subject to availability. My common

3    practice is once we have conducted this drawing, I will

4    do two things: I will prepare an entry reflecting that

5    this is the result of the three-judge draw for a

6    prospective three-judge panel. I will also send an

7    e-mail to the other judges advising them of the date of

8    the hearing, and the order of the draw and asking them

9    to keep their calendars as open as their dockets will

10   allow, and to give them as much advanced notice as          03:41PM

11   possible in that regard.

12        I will then print out a copy of that e-mail and

13   have that filed in the case file as well, so that there

14   won't be any traffic going on that isn't reflected in

15   the file itself. Wish to be heard on that recommended

16   procedure?

17        MS. COOK-REICH: No, Your Honor.

18        THE COURT: All right. All right. Anything

19   further, then, that we need take up at today's hearing?

20        MS. COOK-REICH: No, Your Honor.                         03:41PM

21        THE COURT: And we are back on the 18th of March

22   at 4:00 PM.

23        MS. COOK-REICH: Thank you.

24        THE COURT: Counsel, if you would come and sign

25   the pretrial order, please. Mr. Eichel, do you wish to

30

1    sign off?

2        MS. COOK-REICH: Your Honor, in regards to

3    transporting Mr. Davis back and forth, we had been

4    trying to discuss that with him. Mr. Davis would be

5    fine remaining in the Butler County Jail pending the

6    18th. It's the 6th today. That would be 12 days.

7    Obviously, the transport back and forth is costly and

8    12 days isn't long, if the Court wishes to have him

9    remain here.

10        THE COURT: Do you know whether the jail would    03:42PM

11    have any preference one way or the other?

12        DEPUTY BAKER: I don't know what the break off

13    would be or what would be a preference.

14        THE COURT: Well, we will to ahead -- unless I

15    hear -- does the State have any input on that?

16        MR. OSTER: From behind me, I am hearing that part

17    of the victim's family objecting to that. Your Honor,

18    I don't know, you know, the sheriff with not having any

19    hearings until then, for 12 days, obviously, Mr. Davis

20    it's my understanding is still on death row. It may be    03:43PM

21    better to send him back there instead of placing that

22    burden our sheriff when there isn't a hearing for

23    12 days.

24        MS. COOK-REICH: Your Honor, there is the right to

25    meet with his counsel during that time period, also.

31

```
1        THE COURT:  You need access -- well, Youngstown is
2   almost as close to Mr. Porter as we are here.
3        MS. COOK-REICH:  It is, but Mr. Porter and I have
4   made it a point to try to visit with Mr. Davis jointly
5   together, because it is a joint team effort.
6        THE COURT:  Right.  All right.  Okay.  We are
7   going to go ahead and allow him to remain in the Butler
8   County Jail until the hearing on the 18th.  How long
9   after that?  I mean, because we are not going to have
10  him here the entire time until august obviously.          03:44PM
11       MS. COOK-REICH:  No, after the 18th hearing, he
12  can go back.  I am just wondering when we are back,
13  what does the calendar show?
14       MS. COOK-REICH:  Not 'til June.
15       THE COURT:  All right.  That will be the order.
16       MS. COOK-REICH:  Thank you, Your Honor.
17       THE COURT:  If there is nothing further, then, we
18  will be in recess on this matter until 4:00 PM on
19  March 18th.
20       MR. OSTER:  Thank you, Your Honor.                    03:44PM
21       (Proceedings concluded at this time 3:44 PM.)
22
23
24
25
```

JILL M. CUTTER, RPR
(513) 785-6596

32

```
1  STATE OF OHIO            )
2                           )  SS.   REPORTER'S CERTIFICATE
3  COUNTY OF BUTLER )
4           I Jill M. Cutter, RPR, do hereby certify that I am
5  a Registered Professional Reporter and Notary Public within
6  the State of Ohio.
7           I further certify that these proceedings were
8  taken in shorthand by me and by electronic means at the time
9  and place herein set forth and was thereafter reduced to
10 typewritten form, and that the foregoing constitutes a true
11 and accurate transcript, all done to the best of my skill and
12 ability.
13          I further certify that I am not related to any of
14 the parties hereto, nor am I in any way interested in the
15 result of the action hereof.
16          Dated at Hamilton, Ohio, this 22 day of December,
17 2009.
18
19                         Jill M. Cutter, RPR
20                         Official Court Reporter
                           Butler County Common Pleas
21                         Hamilton, Ohio   45011
22
23
24
25
```

JILL M. CUTTER, RPR
(513) 785-6596

IMAGED

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

FILED

2010 JAN -8 PM 2: 41

CYNTHIA CARPENTER
BUTLER COUNTY
CLERK OF COURTS

STATE OF OHIO,

    Plaintiff,           Case No. CR-1983-12-0614

                           CA -09-10-263

      vs.           HONORABLE ANDREW NASTOFF

VON CLARK DAVIS,    FILED BUTLER CO.   ☐ ORIGINAL
                  COURT OF APPEALS

    Defendant.      JAN 08 2010

                CINDY CARPENTER
                CLERK OF COURTS

- - -

MOTION HEARING

TRANSCRIPT OF PROCEEDINGS

MARCH 18, 2008

- - -

JILL M. CUTTER, RPR
(513) 785-6596

2

```
1   APPEARANCES:

2

3          On behalf of the plaintiff:

4                MICHAEL A. OSTER, JR., ESQ.
                 DAN EICHEL, ESQ.
5                Assistant Butler County Prosecuting Attorney
                 11th Floor
6                315 High Street
                 Hamilton, Ohio 45011
7

8          On behalf of the defendant:

9                MELYNDA COOK-REICH, ESQ.
                 Repper, Pagan, Cook
10               1501 First Avenue
                 Middletown, Ohio 45044
11                    and
                 RANDALL PORTER, ESQ.
12               Assistant State Public Defender
                 250 East Broad Street
13               Suite 1400
                 Columbus, Ohio 43215
14

15

16

17

18

19

20

21

22

23

24

25
```

JILL M. CUTTER, RPR
(513) 785-6596

3

| | |
|---|---|
| 1 | Transcript of Proceedings |
| 2 | Afternoon Session |
| 3 | - - - - - - - - - |
| 4 | THE COURT: We are on record in State of Ohio vs. |
| 5 | Von Clark Davis, CR 83-12-0614. The record will |
| 6 | reflect that Von Clark Davis appears along with |
| 7 | counsel, Mr. Porter and Ms. Cook-Reich. On behalf of |
| 8 | the State of Ohio, its two assistant county prosecutors |
| 9 | Dan Eichel and Mike Oster appear on their behalf. |
| 10 | Counsel, we are here -- I believe this, if memory |
| 11 | serves, we were a couple of weeks ago with regard to |
| 12 | motions for funds -- well, a motion for an ex-parte |
| 13 | hearing and then motion for funds to retain certain |
| 14 | experts. There were two motions granted for an |
| 15 | investigator, for a mitigation specialist. Before we |
| 16 | go -- and then we kicked over to today, the motions |
| 17 | regarding mental health expert because as of the last |
| 18 | hearing, it's my understanding that there were no |
| 19 | particular experts that had been identified by the |
| 20 | defense at that time. And so we set it over to |
| 21 | today's date for further proceedings on that motion. |
| 22 | Before we get into that, I would ask -- I have not |
| 23 | yet seen the entry granting the motions from last time. |
| 24 | You have those? |
| 25 | MS. COOK-REICH: I have those. |

04:11PM (line 10)

04:12PM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

4

1        THE COURT: Has the prosecution seen them as to

2 form?

3        MS. COOK-REICH: Probably not. They are -- I had

4 my secretary pull the entries from the Harvey Johnson

5 case.

6        THE COURT: Fair enough.

7        MS. COOK-REICH: Except for the numbers that were

8 different in this particular one.

9        THE COURT: I just want you to satisfy yourself

10 that the form of the order comports with the language.    04:12PM

11 I mean, the amounts that I ordered the last time we

12 were here.

13        MR. OSTER: The only thing that I --

14        THE COURT: I am at a disadvantage since I don't

15 have them.

16        MS. COOK-REICH: I apologize I just brought the --

17        THE COURT: That's okay. I will listen to what

18 you have to say. I just have to see what you are

19 talking about. Okay. You were going to say, Mr.

20 Oster?                                       04:13PM

21        MR. OSTER: Yes, Your Honor. In looking at and I

22 am trying to -- I'm checking the outside of my folder.

23 I am trying to check my exact notes. For the

24 mitigation specialist, I had two things written down,

25 which seem to be a little strange with each other. I

5

1    believe and I am just trying to make sure I am correct,

2    one place I had written down 100 hours, another place I

3    had written down $25,000 as a cap.

4         MC. COOK-REICH: $25,000?

5         MR. OSTER: $2,500, I apologize, as a cap. So I

6    am just trying to figure out. If it's $35, then 110

7    hours would be obviously more than 25. I am just --

8         THE COURT: There was a request for 100 hours. I

9    granted the motion with a cap of $2,500 initially, with

10   a provision that upon -- for good cause shown they can          04:14PM

11   return to the Court to seek additional funds should

12   that prove necessary.

13        MS. COOK-REICH: I prepared the entry as you had

14   granted it. If we need additional funds on anything,

15   we would always coming back to the Court.

16        THE COURT: With regard to the investigator, quite

17   frankly, the reason that the initial authorized amount

18   is lower, is given the procedural posture of the case

19   that we don't have a trial. I thought that at least

20   initially, that $1,000 figure may suffice, but for some      04:14PM

21   reason and obviously if that should prove not to be the

22   case, again, for good cause shown, I would entertain

23   further motion.

24        With that being said, I am going to go ahead and

25   sign these entries. Who wants to see that they are

JILL M. CUTTER, RPR
(513) 785-6596

6

```
1    filed?

2         MS. COOK-REICH:  I will make sure that they are

3    filed.

4         THE COURT:  All right.   And if you need to make

5    copies, when we get done with this hearing, Joe will

6    allow them to use the copier so that the prosecution

7    gets their copies, Court gets a copy and defense gets

8    sufficient copies.  Anything further we need to take up

9    on that matter?

10        MS. COOK-REICH:  No, Your Honor.                        04:15PM

11        MR. EICHEL:  If Your Honor please, there is --

12   this occurred to me after the previous hearing, so in

13   the -- along the same lines of their getting their

14   investigation underway, it occurred to me that maybe

15   the State should see what we can do about getting both

16   sides up to speed on the prison records.

17        The federal District Court, Federal Court of

18   Appeals has already said that there is potential

19   mitigating evidence out there in the custody of the

20   State, which make it Brady material, the institutional   04:16PM

21   records of the defendant.   We contacted the state

22   institution, specifically the Ohio State penitentiary

23   in Youngstown, Ohio, and they told us we can get those

24   records upon a court order.

25        In that regard, I have taken the liberty of
```

JILL M. CUTTER, RPR
(513) 785-6596

7

1    preparing an entry that gives the records, the same

2    records to both sides so that that complies with our

3    requirement to give any potential exculpatory evidence

4    in way of mitigation and in the way of evidence

5    favorable to the accused and material to his

6    punishment, which is there in the institutional

7    records.

8         I have taken the liberty of preparing an entry

9    that grants both sides that institutional record, a

10   certified copy of it. So that in other words, it would      04:17PM

11   save them a lot of money as far as an investigator's

12   time in getting these records. We are doing it for

13   them.

14        THE COURT: Has the defense seen their proposal?

15        MS. COOK-REICH: No, and we would object to that,

16   Your Honor.

17        THE COURT: On the basis of?

18        MS. COOK-REICH: On the basis that this sounds

19   like the way for the State to try to obtain our

20   client's records that we would not acquiesce to have      04:17PM

21   them have.

22        THE COURT: These are public records held by State

23   of Ohio, correct?

24        MR. PORTER: I wanted to respond, I am sorry, Your

25   Honor. I am interrupting. They are not public

JILL M. CUTTER, RPR
(513) 785-6596

8

1    records.

2        MS. COOK-REICH:  If we choose to -- if we have

3    difficulty in obtaining the records that we need and we

4    believe that a court order will assist in that, as Mr.

5    Eichel has said that the OSP has said that they need a

6    court order, we will certainly come to this Court and

7    request such.  But it is disingenuous for the

8    prosecutor to stand here and say that they are going to

9    try to help us out on this matter.  What it sounds like

10   is they what a copy of our client's record without us      04:18PM

11   first seeing it, whether we decided to use it or not.

12   And Mr. Eichel, would have no way of nothing whether

13   there is mitigation evidence in there or not.  He is

14   portraying that to the Court for the reason for getting

15   it.

16       THE COURT:  Well, I can say this:  That I have

17   never known Mr. Eichel to be disingenuous based on my

18   experience with him.  There are obviously, tremendous

19   restrictions on what the State would be able to present

20   at any resentencing hearing that are governed, you         04:18PM

21   know, the statutory scheme.  What advantage the State

22   would gain by having a copy of those records, I mean, I

23   don't see it.  I mean, there are -- they are going to

24   be restricted on what they are going to be able to use

25   or be able to present.  The idea I imagine would be so

JILL M. CUTTER, RPR
(513) 785-6596

9

1    that there could be no claim that there was a failure

2    to provide -- if there is any ulterior motive so to

3    speak, I would think it is simply to assure that there

4    is no claim thereafter that they had failed to exercise

5    due diligence to assure that there was no mitigating

6    evidence or Brady material in the possession of the

7    state that they could have turned over.    And so I

8    guess if there is any ulterior motive, I would see that

9    as being the only one and I think that that is

10   consistent with their obligation.                            04:19PM

11       Now, as far as whether I am going to sign the

12   order, I will take it under advisement.  Let me see the

13   order.

14       MS. COOK-REICH:  I placed it back on the

15   prosecutor's desk.

16       MR. EICHEL:  Your Honor, please, for the record

17   the impetus that this -- where I am coming from, it was

18   in a case a number of years ago, probably more than ten

19   years ago, and it was either counsel for this defendant

20   at that time, but I was actually accused of not giving   04:20PM

21   Brady material once when I gave part, but not all of

22   the institutional records of the person who was

23   standing trial for a capital offense.    I was somewhat

24   taken back by the accusation then that I was being

25   unethical and not giving over the records in the

1  custody of the State.  So that is where I am coming

2  from right now.

3      THE COURT:  All right.  I understand, and all of

4  the comments regarding speculation as to motives aside,

5  I will review the entry.  I will review the applicable

6  law, and I will make a determination as to whether I

7  would sign entry or not.

8      MS. COOK-REICH:  Can I have a second, Your Honor,

9  with Mr. Porter?

10      THE COURT:  Yes.  Nothing further on that, Your                 04:21PM

11  Honor.

12      THE COURT:  All right.  I'm just and the reason I

13  am taking it under advisement, is in a case like this,

14  I am not going to sign anything quite frankly without

15  look into it fully and completely.  I am taking what

16  both counsel have said to me and I am going to do my

17  own additional looking into the matter and pertinent

18  research and I will determine if it is appropriate to

19  sign.

20      With that being said, let's move onto the matter           04:22PM

21  of mental health expert or experts . There is a pending

22  motion to proceed ex-parte, and I believe that I

23  communicated that my view of the State of the law Ohio

24  on that is that it is -- can be at times appropriate

25  ,if it would require the defense to prematurely reveal

11

1   strategic matters, matters of that nature or

2   attorney-client issues, but it's not always necessary.

3   I guess what I was trying to determine is, you know, if

4   you have a proposed mental health expert that you are

5   seeking assistance for mitigation, I am inclined to

6   grant that.  The law appears to view favorably, you

7   know, such a situation.  If there is anything unusual

8   or outside of the ordinary, in the request, you know,

9   above and beyond the requests that I have entertained

10  in other similar types of cases, then we may have to      04:23PM

11  have a hearing for you to be able to make that case.

12  But I am, you know -- I am of a mind that if you are

13  requesting a reasonable amount of funds to retain as

14  long as I can assure that it is an appropriately

15  credentialed expert that you are requesting, then I am

16  inclined to grant that.

17      MS. COOK-REICH:  On that matter, Mr. Porter and I

18  have contacted two defense psychological experts that

19  are willing to take on Mr. Davis' case.  They are in

20  two different fields.  I don't wish to disclose those      04:24PM

21  at this time unless the Court would grant us an

22  ex-parte hearing.

23      THE COURT:  So you are asking for more than one?

24      MS. COOK-REICH:  I am.  They have two different

25  specialties.  The first has an hourly rate of $180

JILL M. CUTTER, RPR
(513) 785-6596

12

1  dollars an hour. We estimate that it will take about

2  32 hours of her work excluding possible testimony.

3  Ten of those hours are reviewing the records in the

4  case and there is a multitude of records; two and a

5  half banker boxes of records relative to mitigation

6  that have been gathered over the years.

7      The second expert in a separate field is $270 an

8  hour and we estimate that that particular expert will

9  take 28 hours of time excluding testimony, also. Those

10  figures then come up to $5,760 for the first                    04:25PM

11  psychological expert, and the second in a different

12  field, we estimate at $8,100. And those are excluding

13  trial testimony if that is deemed necessary.

14      I will say, that if this Court would like to have

15  their CVs, we have those available for the court. We

16  prefer to do that ex-parte . We have a breakdown of the

17  hours and how those are spent. We also prefer to do

18  that ex-parte. We have our mitigation specialist here

19  to testify as to the necessity for the different

20  psychological experts, and we are certainly prepared to    04:25PM

21  go forward on the ex-parte if the Court wishes to do

22  so. Obviously, I know from past experience that those

23  numbers are over and above what would be used for let's

24  say Dr. Hopes who is used in many other prior

25  psychological evaluations. And we don't wish to

13

1    pursue.

2        Dr. Hopes at this time for this particular case.

3        THE COURT: All right. Well, what I would

4    indicate is the number of experts being requested and

5    the amounts are higher than what would normally be

6    contemplated by the Court, so this is the position that

7    I am in: If the State is indicating that they have no

8    issue, that they would acquiesce in me signing an order

9    for those amounts, then we don't need to have an

10   ex-parte hearing. However, if we are not in a                    04:26PM

11   position where there is acquiescence on that issue,

12   then I think that I am going to need to grant the

13   request for an ex-parte hearing so that I can have them

14   establish their prima facia basis for the expenditure.

15       MR. OSTER: Your Honor, if I may be heard?

16       THE COURT: Yes.

17       MR. OSTER: First of all in what we have just

18   heard, which was there will be two experts, different

19   fields, and their hourly rate, I did not hear that

20   particularized showing, probability that they would aid  04:27PM

21   in his defense in any way, did not hear that if denied,

22   would lead to an unfair trial. Further, I would

23   submit to the Court that an indigent defendant doesn't

24   necessarily have the right to choose their particular

25   psychiatrist. The Court stating these amounts have

JILL M. CUTTER, RPR
(513) 785-6596

14

1   been higher, I would urge the Court defendant's due

2   process rights to state provided psychiatrist does not

3   include the right to a psychiatrist of the defendant's

4   choice.  *Thompson vs. Bell*, 315 Federal 3d, 566 our of

5   the 6th Circuit in 2003.  Furthermore, in, *State vs.*

6   *Johnson, a* 2006 case out of the Ohio Supreme Court when

7   they are talking about ordering a competency hearing

8   after the guilt phase in a capital murder prosecution,

9   it was required to provide access to a psychiatrist

10  assistance on the issue of defendant's competency.      04:26PM

11  They said that the defendant was not entitled to a

12  psychiatrist of his choice.  The Ohio Supreme Court,

13  the 6th Circuit Court have said that.  I don't think as

14  well, with those numbers being high is why I would lead

15  the Court to that.  And as well, I don't think that

16  when we were here last we talked about it, at least

17  making a showing of the two prongs of the *Mason vs.*

18  *Broom* test, I'm sorry *State vs. Mason*, both the Ohio

19  Supreme Court 98, 88, and we have not heard that yet.

20      THE COURT:  Right.  And I recognize that, and I am   04:26PM

21  assuming that counsel is being general before the Court

22  determined whether it was going to be proceeding

23  ex-parte or in an open hearing.  And I had indicated

24  previously that if there is a good faith representation

25  that in order to meet that standard, the particularized

JILL M. CUTTER, RPR
(513) 785-6596

1   showing required by Mason and by Broom, that I would be

2   inclined to grant the motion for an ex-parte hearing at

3   that point in time, so I think that is why we have only

4   heard an initial general statement by defense.

5       MS. COOK-REICH:  That is correct, Your Honor.

6       MR. OSTER:  Your Honor, the other thing I would

7   say is in our original motion, the contra to this -- I

8   am trying to find it now exactly -- we did cite a case,

9   *State vs. White*, the North Carolina case, 340 North

10  Carolina, 264 out of 1995.  It said that they needed to

11  make the threshold showing of particularized need of

12  the two factors that are very similar . And it said

13  that they should do that, I believe that court, they

14  should at least make that before being able to go to an

15  ex-parte case.

16      THE COURT:  Then that would undermine the purpose

17  for the ex-parte hearing.

18      MR. OSTER:  Again, there is no constitutional

19  right to it, Your Honor.

20      THE COURT:  I understand.  All right.  I am

21  referring, I believe, it was the Peoples case, which is

22  the language that I had cited to most recently.  I

23  think that is out of the Fourth.  Ohio, quite frankly,

24  has not addressed this issue as fully and completely as

25  one might expect given the number of capital cases that

04:29PM

04:30PM

16

1    have been decided by the Supreme Court in the state. I

2    was quite surprised, quite frankly, to find that Ohio

3    had developed this area regarding the ex-parte hearings

4    more fully, but my understanding is that Peoples

5    provides the most complete statement or analysis with

6    regard to an Ohio case of the need and purposes for an

7    ex-parte hearing.

8         That being said, what I am going do at this time I

9    am going to grant the defenses' request for an ex-parte

10   hearing regarding the very specific and narrow issue of          04:30PM

11   the funds to retain a proposed expert in the area of

12   mental health. Those will be the only matters that

13   will be discussed, and I just want to make that clear

14   on the record, since the State will not be here. I

15   want the record to be clear as to the scope of the

16   hearing. And that will be the limited nature of the

17   scope of the hearing.

18        Is there anything further before we go into the

19   ex-parte hearing that we need to take up?

20        MS. COOK-REICH: There is something I wanted to           04:31PM

21   bring up prior to proceedings on ex-parte that the

22   State should be present for.

23        At our last hearing at the conclusion of that,

24   after you had left the bench, I don't know if the

25   prosecutor was still in the room, when Deputy Baker was

17

1    getting prepared to take our client out the door, a

2    spectator was present in the courtroom.  He was a white

3    male, I would say late thirties, mid-thirties, and he

4    made what I considered to be a threat to our client

5    in both his tone and demeanor and the exact wording was

6    something like, we'll have a party ready for you when

7    you get out.  And I know that if he had made such a

8    statement in the Court's presence, you would have

9    instructed him to not do so.  But we would like the

10   Court to be aware of that.  He is not present in the          04:32PM

11   courtroom today.  I don't know who he was.  Our client

12   did not know who he was, but he knew who our client

13   was.

14        THE COURT:  And I assume the security personnel

15   heard that?

16        MS. COOK-REICH:  Baker gave him a look.   And then

17   the man stepped back and left.

18        THE COURT:  All right.  Well, I will make security

19   aware of that.  And if you have any further

20   description or identifying --                                 04:32PM

21        MS. COOK-REICH:  He was probably 6'3", slim,

22   probably weighed 160 or 170.  He had blondish hair.

23        THE COURT:  Well, obviously the security of every

24   person present in this courtroom is a priority to the

25   Court, and the Court wouldn't tolerate any such

JILL M. CUTTER, RPR
(513) 785-6596

1    activity. Of course, it happened outside the Court's

2    presence. All I can indicate is that I will assure

3    that our security personnel, supervisor, are aware that

4    an incident like this was alleged to have occurred and

5    for them to have a heightened awareness of that issue

6    from this point forward.

7        Anything further, then, that we need to address on

8    that?

9        MS. COOK-REICH: No, Your Honor.

10        THE COURT: Anything further before we go into the          04:33PM

11    ex-parte phase?

12        MR. OSTER: No, Your Honor. The only thing I

13    would ask is, myself nor Mr. Eichel didn't hear

14    anything -- maybe we were out of the courtroom -- about

15    that situation.

16        THE COURT: All right. All right. Remind folks

17    when we are back. I have my bench filled with

18    documents from a civil case that I am trying.

19        MS. COOK-REICH: June 26th.

20        THE COURT: That is our motion hearing date?          04:33PM

21        MS. COOK-REICH: I believe so, yes, at 9:00 in the

22    morning.

23        THE COURT: And everything else is still on

24    schedule with regard to filings of motions, everything

25    like that?

JILL M. CUTTER, RPR
(513) 785-6596

19

1    MS. COOK-REICH: Yes, Your Honor.

2    THE COURT: All right. Thank you, and we will

3    now go into the ex-parte phase of the hearing. I would

4    ask that other than necessary personnel that the

5    courtroom be cleared. The court reporter will be

6    ordered to serve this portion of the transcript under

7    seal.

8    MR. OSTER: Your Honor, just briefly, are you

9    going to need us anymore today to come back to end the

10   hearing? Do you want us to stick around?                04:34PM

11   THE COURT: I don't anticipate. If you want to

12   wait in the hallway just in the event that there is

13   some other issue, but that is why I was trying to take

14   up any other matters that we night need to address

15   before we went into this, so that you would be able

16   to -- I appreciate your inquiry. I think we are okay.

17   MR. OSTER: Thank you, Your Honor.

18   (At this time, an ex-parte hearing was held

19   between the Court and attorneys for the defense, Mr.

20   Porter and Ms. Cook-Reich, outside the presence of the

21   assistant prosecutors, Mr. Eichel and Mr. Oster.)

22   - - - - - - - - - -

23   (Ex-parte hearing concluded at this time 5:51 PM.)

24   - - - - - - - - - -

25   THE COURT: All right. At this point, counsel,

JILL M. CUTTER, RPR
(513) 785-6596

20

1    thank you.   We will see you in June.  All of you.

2    See you before then obviously for the purposes of the

3    entry, if you would also take care of presenting the

4    envelopes, anything that you need to assure they are

5    filed under sealed.  Don't leave that to the clerk's

6    office.

7         MS. COOK-REICH:  Never.  Thank you.

8         THE COURT:  All right.  We will be back then on

9    June 26, 9:00 in the morning.

10        (Proceedings concluded at this time.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

STATE OF OHIO          )

                       )  SS.   REPORTER'S CERTIFICATE

COUNTY OF BUTLER )

       I Jill M. Cutter, RPR, do hereby certify that I am a Registered Professional Reporter and Notary Public within the State of Ohio.

       I further certify that these proceedings were taken in shorthand by me and by electronic means at the time and place herein set forth and was thereafter reduced to typewritten form, and that the foregoing constitutes a true and accurate transcript, all done to the best of my skill and ability.

       I further certify that I am not related to any of the parties hereto, nor am I in any way interested in the result of the action hereof.

       Dated at Hamilton, Ohio, this 22 day of December, 2009.

Jill M. Cutter, RPR
Official Court Reporter
Butler County Common Pleas
Hamilton, Ohio   45011

JILL M. CUTTER, RPR
(513) 785-6596

1

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

-----------------------------------

STATE OF OHIO,

    Plaintiff,           Case No.  CR83-12-0614

                    HONORABLE ANDREW NASTOFF

    vs.

VON CLARK DAVIS,

    Defendant.

-----------------------------------

- - -

MOTION HEARING

TRANSCRIPT OF PROCEEDINGS

August 27, 2008

- - -

JILL M. CUTTER, RPR
(513) 785-6596



2

1   APPEARANCES:

2

3      On behalf of the plaintiff:

4         MICHAEL OSTER, ESQ.
         DAN EICHEL, ESQ.
5         Assistant Prosecuting Attorneys
         315 High Street, 11th Floor
6         Hamilton, Ohio 45011

7      On behalf of the defendant:

8         MELYNDA COOK-REICH, ESQ.
         1501 First Avenue
9         Middletown, Ohio

10        RANDALL PORTER, ESQ.
        Office of the Ohio Public Defender
11        250 East Broad Street, Suite 1400
         Columbus, Ohio 43215

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | TRANSCRIPT OF PROCEEDINGS |
| 2 | Wednesday, August 27, 2008 |
| 3 | * * * * * * * * * * * * * * * |
| 4 | THE COURT: We're on record in State of Ohio vs. |
| 5 | Von Clark Davis. This is CR83-12-0614. This matter is |
| 6 | before the Court today for hearings on various pretrial |
| 7 | motions that were filed on behalf of Mr. Davis by his |
| 8 | counsel and I will go through in a few moments and |
| 9 | catalog those to make sure that we are all on the same |
| 10 | sheet of music. |
| 11 | Before we do that, I do want to indicate that the |
| 12 | defendant, Von Clark Davis, does appear personally and |
| 13 | with his counsel, Mr. Porter and Ms. Cook-Reich. Good |
| 14 | morning to you. |
| 15 | MR. PORTER: Good morning. |
| 16 | MS. COOK-REICH: Yes, Your Honor. |
| 17 | THE COURT: And that the State of Ohio is |
| 18 | represented at today's hearing by its assistant |
| 19 | prosecuting attorneys being Mr. Dan Eichel and Mr. |
| 20 | Michael Oster. Good morning to you as well. |
| 21 | MR. PORTER: Good morning. |
| 22 | MR. OSTER: Good morning. |
| 23 | THE COURT: Before we get started dealing with the |
| 24 | substance of any of these motions, what I would like to |
| 25 | do -- I tried to make a list of all of the motions that |

09:21AM

09:21AM

JILL M. CUTTER, RPR
(513) 785-6596

4

1    were filed, the responses that I received so that I

2    could make sure that we were comprehensive in dealing

3    with the issues presented.  So if the Court would -- or

4    if counsel would indulge the Court in allowing me to

5    kind of go through my list here and then see if there

6    is anything that I have missed or something that I

7    think would be more unlikely, that maybe something I

8    have that you don't, just in the event there wasn't a

9    copy that was provided to opposing counsel of

10   something, something like that.                           09:21AM

11        The first matter I have is a motion for disclosure

12   of exculpatory evidence and the State's response

13   thereto.  And that I show being marked as motion D.  Is

14   that what everyone else has?

15        MS. COOK-REICH:  Yes, Your Honor.

16        MR. OSTER:  Your Honor, we do -- just to let the

17   Court know, we have actually marked as C the motion to

18   preclude the imposition of the death penalty because of

19   Ohio's lethal injection constitutes cruel and unusual

20   punishment.                                               09:21AM

21        THE COURT:  I have that as P.

22        MS. COOK-REICH:  I have that as E.

23        THE COURT:  That is why it is good to do this.

24   Let me go through what I have got and then we will see

25   if we can make any changes so that we are all singing

```
 1        from the same sheet of music, so to speak.
 2             What I have as E would be the motion to require a
 3        sealed copy of the prosecution's file be made a part of
 4        the record.  So is everybody -- are we consistent on D
 5        and E so far?
 6             MR. OSTER:  The State is consistent with Your
 7        Honor.
 8             THE COURT:  The defense?
 9             MS. COOK-REICH:  I will remark it.  I am making a
10        list as what you have it marked as, so I will just redo      09:21AM
11        ours.
12             THE COURT:  Okay.  Then I have as F, the motion to
13        dismiss the capital specification contained in the
14        indictment.
15             MR. OSTER:  That's what the State has as well,
16        Your Honor.
17             MS. COOK-REICH:  Yes, Your Honor.
18             THE COURT:  And if I am not referencing it on each
19        of these, I have a response from the State as well.  I
20        have -- I guess I want to clarify because I have as G,      09:21AM
21        the motion to suppress pretrial and trial
22        identifications.
23             MS. COOK-REICH:  Yes, Your Honor.  It was marked
24        as both G and K and I can advise the Court that the
25        problem with that is that we fax filed it.  And for
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 796

Case: 2:16-cv-00495-SJD-MRM Doc #: 5-5 Filed: 08/08/16 Page: 95 of 190 PAGEID #: 7920

```
 1        several, two or three weeks it never showed up on the
 2        clerk's website despite me having a fax sheet.  When I
 3        went up there, it appears that is what they ended up
 4        doing is both filing it when it was faxed and filing it
 5        when I got up there to check on it.
 6             THE COURT:  Okay.  Well, the reason I want to go
 7        through this is so that the record has some eyes and is
 8        clear when we are referencing these motions and if we
 9        are using the shorthand letter to make sure that we
10        are, you know, all talking about the same legal issue.        09:22AM
11        So we will call that G.
12             MR. OSTER:  Your Honor, we have that marked both
13        as G and K.
14             THE COURT:  Okay.  Then we have -- for H I had
15        just a supplemental discovery.
16             MS. COOK-REICH:  Demand for discovery.
17             THE COURT:  Right.
18             MR. OSTER:  Yes, Your Honor.
19             THE COURT:  All right.  I, I have is the motion
20        for pretrial disclosure of police reports and witness         09:22AM
21        statements.
22             MR. OSTER:  Correct, Your Honor.
23             THE COURT:  J, I have as motion to compel law
24        enforcement officials to provide prosecutor with all
25        information acquired during investigation; is that
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 797

```
 1 ||        consistent --
 2 ||            MR. OSTER:  Yes.
 3 ||            MS. COOK-REICH:  Yes.
 4 ||            THE COURT:  All right.  I did show that there was
 5 ||        a separate K that was also a motion to suppress
 6 ||        pretrial identifications and now I understand why that
 7 ||        is the case, but it is one in the same motion.
 8 ||            MS. COOK-REICH:  They are, Your Honor.
 9 ||            THE COURT:  Let's proceed with that as G.  And
10 ||        indicate that K was simply a duplicative filing of the
11 ||        same motion.  I then have L being a motion concerning a
12 ||        right to a jury trial with respect to resentencing.
13 ||            MR. OSTER:  Yes.
14 ||            MS. COOK-REICH:  Yes.
15 ||            THE COURT:  I have M being a motion to preclude
16 ||        the State from seeking the death penalty.
17 ||            MS. COOK-REICH:  Yes, Your Honor.
18 ||            THE COURT:  I have N being a motion for additional
19 ||        funds to retain Dr. Mark Heath.
20 ||            MS. COOK-REICH:  Yes, Your Honor.
21 ||            THE COURT:  I have O as a motion to transcribe
22 ||        Grand Jury proceedings.
23 ||            MR. OSTER:  Yes.
24 ||            MS. COOK-REICH:  Yes, Your Honor.
25 ||            THE COURT:  And then I had as P and I think I did
```

09:22AM

09:22AM

```
 1        it just because it didn't have a letter on it, and I
 2        put it on the end.  It sounded like you put it on at
 3        the beginning, but it was a motion to preclude
 4        imposition of the death penalty because of Ohio's
 5        lethal injection constitutes cruel and unusual
 6        punishment.
 7              MS. COOK-REICH:  Yes, Your Honor.
 8              MR. OSTER:  The reason the State did that without
 9        having a C and that motion was actually filed 5-27-08
10        so it actually proceeded some of the other ones.  We
11        think it probably would run into motion N in some
12        regard, so we actually just labeled it as C because of
13        the date.
14              THE COURT:  Can we all agree on what letter we
15        want to call it?  Does anybody care?
16              MS. COOK-REICH:  I will call it by the letters you
17        have just listed.
18              THE COURT:  We don't have another P or something,
19        right?  Let's just call it that.  All right.  And that
20        is what I have.  Now, I also received filed on August
21        25th the State's notice of additional authority that
22        pertains to defendant's motions F, G, I, J, K, and L.
23        That is the caption I have.  Has the defense received a
24        copy of that?
25              MS. COOK-REICH:  Yes, Your Honor.
```

09:22AM

09:22AM

```
 1              THE COURT:  All right.  And then I believe there
 2        was also a filing that put the Court on notice of the
 3        decision of Judge Burge up in Lorain County on the
 4        Rivera matter and that was filed by the defense; is
 5        that correct?
 6              MR. PORTER:  That is correct, Your Honor.
 7              THE COURT:  All right.  From the State's
 8        perspective, am I missing anything?
 9              MR. OSTER:  There was another -- it is called
10        State's supplemental authority for motion C, which is       09:22AM
11        now motion P that was filed on August 25th.  I did
12        notify by e-mail both Ms. Cook-Reich and Mr. Porter
13        about that.  I had asked for the runner in our office
14        to bring it down to Your Honor.  I apologize if it has
15        not gotten there.
16              It is two very brief cases discussing the U.S.
17        Supreme Court case, as well as this morning I gave Ms.
18        Cook-Reich another case, which is two paragraphs.
19              THE COURT:  Do you have an additional copy of that
20        for the Court?  It may be in my in box, but if you have    09:22AM
21        it --
22              MR. OSTER:  I will be more than happy to give Your
23        Honor the copy that I have.
24              MS. COOK-REICH:  I did get a copy from Mr. Oster.
25              THE COURT:  If you are able to function without
```

JILL M. CUTTER, RPR
(513) 785-6596

1   that copy, I would appreciate it.  And do you have

2   copies of those cases?

3        MR. OSTER:  I have marked-up copies of those

4   cases.

5        THE COURT:  That's fine.

6        MR. OSTER:  If Your Honor would like to enter a

7   recess, I would be happy to pull them off.

8        THE COURT:  That's fine.  Other than that, then,

9   do we have all of the same motions?

10       MR. OSTER:  Yes.

11       MS. COOK-REICH:  Yes, Your Honor.

12       MR. OSTER:  If Your Honor would like, I do have

13   the one I gave today, I do have a copy of that that is

14   clean.

15       THE COURT:  That is one in addition to the ones

16   that are marked here?

17       MR. OSTER:  Yes, Your Honor.

18       THE COURT:  McKnight.  If you have an extra copy

19   that would be nice.  And then Mr. Porter or Ms.

20   Cook-Reich, my list of the motions that are pending,

21   does that correspond with your respective lists or have

22   I missed something that you have that I did not?

23       MS. COOK-REICH:  Your Honor, that covers all of

24   the motions that we had listed pending.  Just to bring

25   to the Court's attention, as I am sure you are aware,

1    that the motions that we filed, the motion and the

2    amended motion and the reply relative to the March 31st

3    order to rescind it relative to the ODRC records, that

4    is still pending in the Ohio Supreme Court. We filed a

5    notice of appeal on that.

6        THE COURT: I think the last time that we were in

7    court and again, I will just state this, memorialize

8    this for the record and then if counsel has anything in

9    addition that they want to state on the record I will

10   give them that opportunity. I believe the last time

11   all of us were present in court that matter was still

12   pending before the 12th District, that since that time

13   this Court has received a decision from the 12th

14   District indicating that it found that the Court's

15   order was not a final appealable order, and that they

16   have overruled the appeal or dismissed the appeal or

17   whatever the appropriate language they use was and that

18   since then, there was a notice of appeal filed with the

19   Ohio Supreme Court on that issue. And that was the

20   last I heard of the matter.

21       MS. COOK-REICH: That is correct, Your Honor. We

22   were trying to find the date. I believe it was filed

23   on August 15th. It is pending in the Ohio Supreme

24   Court. We bring that to the Court's attention because

25   we would indicate that given that that is pending up in

12

```
 1 ┃┃     the Ohio Supreme Court that that would stay these
 2 ┃┃     proceedings, also.
 3 ┃┃          THE COURT:  All right.  Is there an additional
 4 ┃┃     argument above and beyond what we have talked about
 5 ┃┃     last time with regard to the stay?  I mean, is there
 6 ┃┃     anything -- why would it stay all of these proceedings?
 7 ┃┃          MS. COOK-REICH:  The matter is pending before the
 8 ┃┃     Ohio Supreme Court.
 9 ┃┃          THE COURT:  On that issue.
10 ┃┃          MS. COOK-REICH:  On that issue.  I believe that     09:23AM
11 ┃┃     that issue also involves, at least according to the
12 ┃┃     prosecutor's request for those records, indicates that
13 ┃┃     they need to review those records for Brady materials,
14 ┃┃     which is an issue we are going to be dealing with today
15 ┃┃     also.
16 ┃┃          THE COURT:  All right.  Anything else?
17 ┃┃          MR. OSTER:  No, Your Honor.
18 ┃┃          THE COURT:  All right.  These are the defense
19 ┃┃     motions.  Do you have a proposed, I guess first of all
20 ┃┃     I want to ask, do any of these motions -- as we sit     09:24AM
21 ┃┃     here today, do you have testimony or evidence that you
22 ┃┃     wish to present on any of those motions and if so, I
23 ┃┃     would propose that we deal with those first.
24 ┃┃          MS. COOK-REICH:  We have subpoenaed several
25 ┃┃     witnesses, Your Honor, and --
```

JILL M. CUTTER, RPR
(513) 785-6596

13

```
 1              THE COURT:  On which motion?

 2              MS. COOK-REICH:  On motions I had -- I am trying

 3      to get the right numbers now using your numbers.  D.

 4              THE COURT:  Exculpatory evidence?

 5              MS. COOK-REICH:  Exculpatory evidence.

 6              THE COURT:  Okay.

 7              MS. COOK-REICH:  H, which is the limited demand

 8      for discovery.  J, motion to compel law enforcement

 9      officials to provide prosecuting attorney with all

10      information acquired during the course of the

11      investigation.  I, motion for pretrial disclosure of

12      police reports and witness statements.

13              Mr. Porter reminded me that they don't go to that.

14      I am sorry.  They go to G, which is the motion to

15      suppress pretrial and trial identifications.

16              THE COURT:  Oh, okay.  And they don't go to which

17      one?

18              MS. COOK-REICH:  They don't go to the previous

19      ones that I discussed, D, H, I or J.

20              THE COURT:  So it is only G?  And is that a

21      witness that you have subpoenaed?

22              MS. COOK-REICH:  Several witnesses, Your Honor.

23              THE COURT:  On G.  One moment, Mr. Eichel.

24              MS. COOK-REICH:  Mr. Porter and I met and we are

25      not prepared today because we set this for two days.
```

09:24AM

09:25AM

JILL M. CUTTER, RPR
(513) 785-6596

14

 1        We didn't want to subpoena a bunch of witnesses for

 2        today and tomorrow.  We would anticipate having some

 3        witnesses on L and M specifically; probably more -- I'm

 4        sorry, L.

 5             THE COURT:  Being the right to a jury trial?

 6             MS. COOK-REICH:  Yes, Your Honor.

 7             MS. COOK-REICH:  And M.  L and M.

 8             THE COURT:  All right.

 9             MS. COOK-REICH:  And we anticipated doing that --

10        those two tomorrow in conjunction.                      09:26AM

11             THE COURT:  Okay.  Mr. Eichel?

12             MR. EICHEL:  May it please the Court, in light of

13        the statement that they wish to introduce evidence on,

14        on G, the pretrial identification, motion to suppress

15        pretrial identification and trial identification, in

16        light of the State's response that we have already

17        filed, we would object to any hearing on this matter

18        because the trial court is limited on this remand to

19        the resentencing and this motion goes to things that

20        happened at trial, things that should have happened     09:27AM

21        before the trial in 1984.  Res judicata and the law of

22        the case, the conviction being affirmed in 1988 would

23        preclude this trial court from having any jurisdiction

24        over acting in derogation to that conviction.  This was

25        trial testimony that was admitted without objection.

| | |
|---|---|
| 1 | There was no motion to suppress, no evidentiary hearing |
| 2 | at the time that it should have been had in 1984. |
| 3 | THE COURT: And refresh my recollection. I tried |
| 4 | to go back and read through Davis 1, 2, 3 and 4 and |
| 5 | then the federal cases, and I don't recall seeing that |
| 6 | this was ever an issue that was an assignment of error |
| 7 | during the appeal. |
| 8 | MR. EICHEL: No, it was not. But the law res |
| 9 | judicata prohibits further litigation after a |
| 10 | conviction is affirmed. Res judicata prohibits things |
| 11 | that could have been or -- were raised or could have |
| 12 | been raised at the proper time. A litigant is given |
| 13 | the proper opportunity before trial to file a motion to |
| 14 | suppress. If they didn't, that is res judicata. |
| 15 | THE COURT: Okay. All right. |
| 16 | MS. COOK-REICH: Response, Your Honor. Relative |
| 17 | to having a hearing on this, the defense would indicate |
| 18 | that even the prosecutor has recognized its need to |
| 19 | still prove the aggravated murder charge as part of the |
| 20 | mitigation hearing. Just as you would in a normal |
| 21 | death penalty case you have to resubmit evidence, |
| 22 | witnesses' statements, testimony, as well as |
| 23 | photographs. And the fact that the prosecutor has, in |
| 24 | their discovery response, listed -- I lost track of the |
| 25 | numbers -- but listed at least 25 witnesses -- maybe |

09:28AM (line 10)

09:28AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

1   they just used those numbers -- as potential witnesses

2   for the mitigation phase going towards the aggravated

3   murder, and recognized by the prosecutor themselves

4   that they believe they have to present this evidence.

5   We would also indicate that if this Court says we

6   are not allowed to have witnesses on this or no

7   argument, then it would file that we would be reduced

8   to any time that something is already admitted into

9   this particular mitigation trial, reduced to only the

10  objections or issues raised by the prior trial counsel,

11  and so if something is said we are not allowed to

12  object to it unless it was objected to in the first

13  trial and that is why we are requesting this.

14  It would be just like when Davis was being

15  resentenced the second time by the second three-judge

16  panel indicating they can't produce additional evidence

17  on the matter.

18  THE COURT: Well, mitigation evidence.  I mean,

19  that is the key of the holding I believe in the Davis

20  vs. Coyle and Skipper, is that the defense is to have

21  wide latitude in presenting additional mitigation

22  evidence even if it was not evidence that was presented

23  at the original hearing that you should be allowed to

24  do that.  But why would issues that involve the

25  determination of guilt or innocence which has been

09:29AM

09:29AM

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | determined and has been upheld on appeal, why would |
| 2 | that be an issue that this Court would take up at this |
| 3 | time? |
| 4 | MS. COOK-REICH: The State has recognized their |
| 5 | need to prove that aggravated murder as part of the |
| 6 | mitigation -- what I would also say to the Court is |
| 7 | part of the mitigating factors enumerated by the |
| 8 | statute are the facts and circumstances of the offense. |
| 9 | THE COURT: To the extent that they are |
| 10 | mitigating, right. |
| 11 | MS. COOK-REICH: Yes, Your Honor. |
| 12 | THE COURT: Mr. Porter, would you like to be heard |
| 13 | on it as well? |
| 14 | MR. PORTER: I am a big movie fan. |
| 15 | THE COURT: Nice to know. |
| 16 | MR. PORTER: And one of the movies I have watched |
| 17 | repeatedly is Ground Hog Day. I don't know whether the |
| 18 | Court has seen that one or not. |
| 19 | THE COURT: Yes, I have. Thank you. |
| 20 | MR. PORTER: And it involves an individual that |
| 21 | repeatedly wakes up and repeats the day after day after |
| 22 | day 'til he gets his life right. That is really what |
| 23 | is going on here, is that when this case was back on |
| 24 | remand, there was an issue of what evidence Mr. Davis |
| 25 | could present. And if you look at the concurring |

09:30AM

09:31AM

JILL M. CUTTER, RPR
(513) 785-6596

18

```
 1          opinion in the 6th Circuit, it isn't a Skipper issue,
 2          but it is --
 3               THE COURT:  It's a due process issue.
 4               MR. PORTER:  -- of being able to challenge the
 5          evidence that the prosecution puts forward.
 6               THE COURT:  Specifically the concurrence thoughts
 7          about the future dangerousness issue.
 8               MR. PORTER:  Future dangerousness and evidence of
 9          that sort.
10               THE COURT:  Okay.                                   09:31AM
11               MR. PORTER:  I have some additional arguments
12          because I believe this is an important issue.  The
13          State has suggested to this Court that this matter is
14          governed by the law of the case.  And they site the
15          Court to Nolan -- and just a minute if I could, Your
16          Honor -- and Nolan talks about that it is a law of
17          convenience.  It is not something that binds this
18          Court.
19               THE COURT:  All right.
20               MR. PORTER:  When you are looking at -- I suggest   09:32AM
21          when you are interpreting the 6th Circuit's decision,
22          you should look at what binds this Court pursuant not
23          to state law, but to federal law.  And 6th Circuit law
24          is very clear and I am fumbling through this and not
25          finding the case I want, but 6th Circuit law is very
```

1   clear that the only thing that binds this Court

2   pursuant to the 6th Circuit mandate is any issue that

3   was decided by the 6th Circuit.  The issue of whether

4   there was improper identification was never decided by

5   the 6th Circuit.

6        In fact, if you look at the 6th Circuit opinion,

7   Your Honor, it leaves open the fact that a lot of the

8   issues that Red raised are going to be relitigated.

9   Red raised the issue that he should have been able to

10  withdraw his jury plea the first time around.  The 6th

11  Circuit says, we know you are going to relitigate that

12  when it goes back down.  The 6th Circuit said you

13  raised an issue about whether the trial judges

14  committed error by not appointing new experts the last

15  time around.  We know you are going to litigate that

16  when it goes back down.

17       I suggest to the Court that even looking at the

18  law of the 6th Circuit and looking at the opinion

19  itself, it does not limit the Court on this issue.  I

20  would suggest the Court cannot consider evidence for

21  purposes of sentencing Red if that evidence violates

22  the Fifth Amendment and there was an unduly suggested

23  procedure.

24       THE COURT:  Well, I appreciate that.  I am going

25  to tell you at this point in time where I am at on the

1    issue, but then I am going to tell you how I think we

2    ought to proceed.  And this is not to be interpreted as

3    a ruling on this motion at this point in time, but I am

4    going to tell you that as I reviewed the motions and at

5    first blush my feeling is that we are not here in

6    December to retry the case.  Okay.  We are here for a

7    resentencing hearing.  That the guilt of Mr. Davis has

8    been established at the initial trial and has been

9    upheld on appeal by the Ohio Supreme Court.  That this

10   case was remanded to this Court because the earlier          09:35AM

11   three-judge panel was deemed to have unduly restricted

12   the defense's ability to present evidence in mitigation

13   pertinent to whether or not the death penalty or a life

14   sentence should be imposed.

15         Now, what I am going to -- however, I am not

16   ruling on that at this time.  I am just telling you

17   that that is where I believe we are at on this.  What I

18   would propose, though, is that if you have witnesses

19   here that you proceed with the witnesses, that it could

20   be interpreted, at a minimum, as a proffer.  And in the    09:36AM

21   event that the Court ultimately determines, Mr. Porter,

22   that you are correct in being able to present these

23   issues, then the evidence will have been presented and

24   the Court would obviously be able to consider it, but

25   at a minimum it would be proffered.  It would be there

```
 1        for a subsequent Court to review in the event that this
 2        Court determines that it is not appropriate to be
 3        relitigated. So we will allow that testimony, but it
 4        is going to be -- just because I am not allowing the
 5        testimony I don't want you to think that I am making
 6        any determination as to whether or not it would
 7        ultimately be admissible at this point in time at the
 8        subsequent resentencing hearing. All right.
 9              MR. EICHEL: The Court will note our objection to
10        that procedure.
11              MR. OSTER: Obviously the State would like to make
12        the objection, you know, the doctrine of res judicata
13        says from raising and litigating, even raising the
14        issue should be barred by res judicata. It is a public
15        policy that dictates that there should she an end to
16        this litigation. It is a rule of fundamental and
17        substantial justice of public policy and private
18        speech. That is what res judicata is. It should be
19        enforced by the Court. We would object to that citing,
20        State vs. Szefurk, 77, Ohio State 3d. 98, which talks
21        about res judicata, public policy and why there needs
22        to be an end to this litigation and in the State's
23        opinion because there is a final judgment that has been
24        affirmed by the Ohio Supreme Court and the 6th Circuit
25        has affirmed his conviction, the State would object to
```

09:37AM

09:38AM

JILL M. CUTTER, RPR
(513) 785-6596

1 it even being raised much less litigated in this type

2 of proffer.

3  MR. PORTER:  I would like to respond to the

4 citations.  First is, two of the cases that they site

5 to involve re-raising issues or raising issues in

6 post-conviction that could have been raised on direct

7 appeal, but they have nothing to do here unless I am

8 missing something.  I think this is a de novo hearing

9 and he is entitled to a new hearing. what issues of res

10 judicata have to do with post-conviction confuse me or 09:39AM

11 I just don't understand.

12  The other two cases are real troublesome in that

13 both of the cases, the Ohio Supreme Court case and the

14 other case, involves a situation -- the U.S. Supreme

15 Court case -- involves a situation where an individual

16 sued or brought a compliant.  Lost.  Chose not to

17 appeal.  And then reinstituted the litigation.  That is

18 certainly not the situation here.  Red won.  There is

19 nothing.  This would have been -- that precedent would

20 only be applicable if Red had lost in the 6th Circuit 09:40AM

21 and then he was going back through a second time.  Red

22 won, which distinguishes the Ohio Supreme Court and

23 distinguishes the United States Supreme Court, the case

24 that they cite to.

25  THE COURT:  All right.  Well, as I indicated, I am

1    going to allow them to present that, but I am not

2    indicating at this point in time that I agree, Mr.

3    Porter, with your motion.  So we will allow that

4    testimony to be presented today.  The Court will

5    consider it, as I stated, at a minimum as a proffer for

6    purposes of preserving the record, but in the event

7    that the Court would determine that you are correct,

8    that evidence is of record.

9        What about the evidence on the jury trial issue

10   and seeking the death penalty, those are both tomorrow?     09:41AM

11       MS. COOK-REICH:  Yes, Your Honor.

12       THE COURT:  How many witnesses do you have here on

13   this pretrial and trial identification issue?

14       MS. COOK-REICH:  Seven, Your Honor.

15       THE COURT:  Seven witnesses?  Okay.  Now, are

16   these -- I mean, are these fact witnesses from the

17   original trial?  Is that what this is?

18       MS. COOK-REICH:  One is not.  And actually she is

19   -- one goes to the motion for G, but also has some

20   overlap relative to the motions on the disclosure of       09:42AM

21   the file.

22       THE COURT:  Okay.  And I am going to indicate I am

23   allowing this to be presented also just in an abundance

24   of caution just in the event that there would be

25   anything presented that could arguably be considered

24

 1    mitigating evidence regarding the nature and

 2    circumstances of the offense at a subsequent hearing.

 3    And I think that the proffer would provide the best

 4    source for the Court to be able to make that

 5    determination later at the resentencing hearing and

 6    determine whether there was anything here that could be

 7    argued as being relevant to mitigation in this case.

 8         So with that being said, do we want to go ahead

 9    and proceed with those witnesses at this time?

10         MR. EICHEL:  Your Honor, we will object on the        09:42AM

11    same grounds without reiterating.

12         THE COURT:  I understand.

13         MR. EICHEL:  And the jury trial matter is again a

14    matter of law.  I don't understand why we need any

15    evidence on that issue.  It's a matter of law.  That's

16    enough said.

17         THE COURT:  Right.  Okay.  All right.

18         MR. EICHEL:  Well, there is one other thing.  I

19    don't understand why we don't get reciprocal discovery

20    in this case.  They have named -- or they have not       09:43AM

21    named a witness that they say was not a fact witness at

22    trial.  We don't know who that is.

23         THE COURT:  Well, you are going to find out today

24    well in advance of the resentencing hearing.  You know,

25    my understanding is that this is for purposes of this

JILL M. CUTTER, RPR
(513) 785-6596

1     motion.  This is not necessarily testimony that just

2     because it is presented today at this Court, that it is

3     something that would be considered by the ultimate

4     sentencing body in this case, whether it be a

5     three-judge panel or a jury.

6         MS. COOK-REICH:  While we are on that particular

7     issue of reciprocal discovery, defense has taken the

8     position that we are not required to provide reciprocal

9     discovery.  Our limited demand for discovery, which is

10    motion H, which is what we had it labeled as, as the   09:44AM

11    Judge also had it labeled, is very specific into the

12    demand for discovery we are requesting.  And it is our

13    position that the request we have placed within the

14    record does not require us to have reciprocal

15    discovery.  And I make that statement based upon the

16    repeated filings by the prosecutor using the words, we

17    are assuming that the defense is going to provide

18    limited or discovery reciprocal and, in fact, we are

19    not.

20        THE COURT:  Okay.  Well, we will address that   09:44AM

21    issue separately.  Are you prepared to call your first

22    witness?

23        MS. COOK-REICH:  Mr. Porter wishes to address one

24    issue.

25        MR. PORTER:  We think pursuant to Brady vs.

| | |
|---|---|
| 1 | Maryland and to be properly prepared for this hearing |
| 2 | that we are entitled to all evidence that the |
| 3 | prosecution has; that they used an unduly suggestive |
| 4 | pretrial lineup procedure. What happened is -- or at |
| 5 | least what I think happened is, at trial defense |
| 6 | counsel tripped over the fact that with two of the |
| 7 | witnesses, that the police were only using one photo |
| 8 | for purposes of a lineup. I think we can all agree |
| 9 | that that is improper. |
| 10 | For each of those witnesses for us to be prepared |
| 11 | for today's hearing we are entitled to know which |
| 12 | witnesses they only used one photograph for. |
| 13 | THE COURT: All right. What is it that you are |
| 14 | seeking to ultimately gain? You are seeking to, for |
| 15 | purposes of the sentencing hearing, having the trial |
| 16 | identifications and pretrial identifications |
| 17 | suppressed? |
| 18 | MR. PORTER: So the three-judge panel or the jury |
| 19 | cannot consider them. |
| 20 | THE COURT: How does that not undermine the |
| 21 | finding of guilt that has been sustained by those |
| 22 | courts? |
| 23 | MR. PORTER: Because you have to consider that |
| 24 | evidence for purpose of sentencing. |
| 25 | THE COURT: Right, but the guilt has been |

09:45AM

09:46AM

JILL M. CUTTER, RPR
(513) 785-6596

1    established.

2         MR. PORTER:  I understand that, but you cannot

3    turn around and use the three-judge panel.  The jury

4    cannot turn around and use that evidence for purposes

5    of sentencing.

6         THE COURT:  Well, I mean what the three-judge

7    panel or the jury is going to be looking at is the

8    aggravating circumstance and then the mitigating

9    factors that you are going to present and they can look

10   at the nature and circumstances of the offense to the          09:47AM

11   extent that they are trying to determine whether there

12   is any mitigating factors present that you are going to

13   offer, but as far as actually seeking to suppress

14   pretrial and trial identifications on a final

15   conviction, I mean that is not something that we are

16   going to be doing here.

17        MR. PORTER:  And I understand that, but our

18   position is we aren't looking to upset the verdict.  We

19   are looking to limit the evidence that can be used for

20   purposes of sentencing.  And to that effect, we are           09:47AM

21   entitled pursuant to Brady to any evidence the State

22   has that they were using one lineup photographs.  And

23   for us to do this hearing, having to call people blind

24   because we haven't gotten that evidence, is impossible.

25        THE COURT:  So you are indicating that you are not

|   |   |
|---|---|
| 1 | prepared at this time to call these witnesses? Is that |
| 2 | what you are saying? |
| 3 | MR. PORTER: We have the witnesses here, but we |
| 4 | are certainly entitled to that evidence the State has |
| 5 | prior to having to call these witnesses. |
| 6 | THE COURT: All right. All right. |
| 7 | MR. OSTER: Your Honor, if I may, it seems as what |
| 8 | the defense is trying to do is raise some sort of |
| 9 | residual doubt issue. Residual doubt does not belong |
| 10 | in the mitigation hearing anymore. If what the |
| 11 | defense's strategy is to do is to try take away |
| 12 | identifications that were made at a trial that have |
| 13 | been affirmed that that conviction is final. |
| 14 | The defense said that Mr. Davis won. Well, Mr. |
| 15 | Davis won as to a mitigation hearing. His conviction, |
| 16 | Mr. Davis lost. Mr. Davis is guilty of the murder |
| 17 | charge. Those -- |
| 18 | THE COURT: And the specification. |
| 19 | MR. OSTER: And the specification, and he has lost |
| 20 | to that issue, so if you are trying to go under a |
| 21 | residual doubt, I think the Ohio Supreme Court is clear |
| 22 | as to what residual doubt, that it does not play into a |
| 23 | mitigation hearing. |
| 24 | MR. PORTER: And we are certainly not arguing |
| 25 | residual doubt. What we are saying is, the sentence -- |

09:48AM (line 10)

09:48AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

1    or whoever it may be cannot rely upon testimony for

2    purposes of sentencing that was obtained in violation

3    of the Fifth Amendment.

4        THE COURT:  Okay.  But there is no -- I mean, this

5    is testimony that was presented at the original trial

6    that was considered by the original three-judge panel

7    that made a finding of guilt that has subsequently been

8    affirmed by multiple levels of appellate courts,

9    including the Ohio Supreme Court.

10       You are saying the evidence that that three-judge          09:49AM

11   panel considered on the guilt issue and that's been

12   sustained is not going to be -- you are seeking to

13   suppress it for purposes of the mitigation hearing?

14       MR. PORTER:  Yes, Your Honor.

15       THE COURT:  So it is not so much -- I mean, is

16   your argument that it doesn't pertain to the

17   aggravating circumstance?  Because I mean, normally,

18   there is going to be at least some restriction on what

19   the State is going to be presenting at the mitigation

20   hearing because the facts and circumstances of the          09:50AM

21   offense is not an aggravating circumstance.  So I

22   understand that.  And I understand that that is not

23   something that they are going to hear, but that is not

24   like suppressing.  I mean, I think what you're -- what

25   I am interested in hearing and the reason that I am

JILL M. CUTTER, RPR
(513) 785-6596

1     willing to allow you to proffer this testimony is to

2     determine in an abundance of caution given the ruling

3     in the Davis vs. Coyle case, given the fact that we are

4     25 years down the pike doing this, in an abundance of

5     caution I want to make sure that if there is any

6     mitigating factor present as a result of the nature and

7     circumstances of the case, that something that you

8     would be able to present that you have the opportunity

9     to flush that out.  Because what I am not going to do

10    in this case is unduly restrict you in presenting       09:51AM

11    mitigation.

12         Now, of course, it still has to be relevant

13    mitigation.  We still have to follow the law in those

14    respects.  But I guess what I am suggesting to you, Mr.

15    Porter, is I am not going to open up -- order the

16    prosecution to open up their file to present items to

17    you in preparation for this testimony today that merely

18    goes to, I guess, the reliability of the lineup

19    procedure, all of that.  How is that a mitigating

20    circumstance -- or mitigating factor that relates to    09:52AM

21    the character or the background of this defendant?

22         If you can present to me or establish to me that

23    it is a mitigating factor in the case, you know, I will

24    listen that, but the fact that a lineup procedure or an

25    identification -- I mean, that issue has been decided.

1    MR. PORTER: Let me go at it a different way. The

2    State has listed these eyewitnesses in discovery. I

3    assume they did it for some reason other than just to

4    make us run around trying to find the witnesses. I am

5    assuming there is a good faith basis they intend to

6    call these people.

7    MR. EICHEL: Your Honor, our intent is listing

8    everything we know in discovery is at issue. We listed

9    everything we know, whether we are going to use it or

10   not. It is our understanding of the discovery rules

11   that we have to give them everything --

12   THE COURT: Right. And that is the standard.

13   MR. EICHEL: -- in the nature of witnesses. We

14   did.

15   THE COURT: All right. Now, is this -- your

16   request right now for this information, does that

17   correspond to any of the identified motions? Are we

18   arguing another motion?

19   MR. PORTER: No, we are arguing the same motion.

20   We filed a motion to suppress based upon pretrial

21   identification unduly suggestive. There has never been

22   any evidence -- the Court has taken the position --

23   this should have been raised under appeal or at least

24   that is the prosecution's basis. It is really hard to

25   raise those issues on direct appeal unless the evidence

JILL M. CUTTER, RPR
(513) 785-6596

```
 1        was ever put in the record.
 2               THE COURT:  He has had 24 years of appeals to be
 3        able to raise that issue.  And I don't think the first
 4        place that the Court should be considering whether the
 5        pretrial and trial identifications in this matter that
 6        occurred back in the early eighties, is appropriate or
 7        not as today.  I mean, there was ample opportunity to
 8        have raised that.  It has not been raised.  It was not
 9        objected to at trial.  It wasn't raised on appeal to
10        address it for purposes of plain error or anything like    09:54AM
11        that.  It has not been raised in any of the
12        post-conviction proceedings.
13               MR. PORTER:  That is incorrect.
14               THE COURT:  Which case?  I looked through the
15        cases.  I didn't see where it was raised.
16               MR. PORTER:  It was at least raised in the federal
17        habeas proceedings.
18               THE COURT:  And pardon me if I didn't see that,
19        but what was the result?
20               MR. PORTER:  It was raised in terms of appellate    09:54AM
21        counsel had failed to raise the issue --
22               THE COURT:  Ineffective assistance?  We're not
23        back here with the conviction having been reversed due
24        to ineffective assistance of counsel, are we?
25               MR. PORTER:  We are not.
```

| 1 | | THE COURT: All right. I am going to overrule |
|---|---|---|
| 2 | | your request. Let's call your witnesses. |
| 3 | | ALLISON BAKER |
| 4 | Having been first duly sworn, was examined and testified under |
| 5 | oath as follows: |
| 6 | | DIRECT EXAMINATION |
| 7 | BY MR. PORTER: |
| 8 | Q. | Would you state your name for the record, please? |
| 9 | A. | Allison Baker. |
| 10 | Q. | And spell your last name for the court reporter, |
| 11 | please. |
| 12 | A. | B-A-K-E-R. |
| 13 | Q. | And your address? |
| 14 | A. | █████████████ |
| 15 | Q. | And are you currently employed? |
| 16 | A. | Yes. |
| 17 | Q. | And where are you employed? |
| 18 | A. | City of Hamilton Police Department. |
| 19 | Q. | And what is your job title? |
| 20 | A. | I am the police records supervisor. |
| 21 | Q. | And how long have you held that position? |
| 22 | A. | Four years. |
| 23 | Q. | What does that job entail? |
| 24 | A. | I supervise seven clerks in the office.  Take care |
| 25 | of monthly reports to send to the state and FBI, and we |

09:56AM

09:57AM

JILL M. CUTTER, RPR
(513) 785-6596

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 824

1   catalog any paperwork that comes into the office.

2          Q.   I am going to show you --

3               MR. PORTER:  Court's permission to approach the

4          witness, Your Honor?

5               THE COURT:  Permission granted.

6          Q.   I will show you what is marked as defendant's

7   Exhibit A.  Have you seen that previously?

8          A.   Yes.

9          Q.   And could you tell the Judge what that is?

10         A.   This is a witness information form, subpoena, that     09:58AM

11  I received on Monday to appear here in court today.

12         Q.   And did it request you bring specific items?

13         A.   Yes, it did.  It requested I bring pretrial

14  information.

15         Q.   And how did you physically receive that subpoena?

16         A.   It was placed in the bin at our front desk area.

17  We have a central records designated bin and all of the

18  paperwork is placed in there.  And the desk officer received

19  it and placed it in our bin.

20         Q.   Did you make an effort to comply with the          09:59AM

21  subpoena?

22         A.   Yes, I did.

23         Q.   Could you tell Judge Nastoff what you did?

24         A.   I contacted my immediate supervisor and we went to

25  the property room and searched for any records from this

JILL M. CUTTER, RPR
(513) 785-6596

```
 1 ║ incident.
 2 ║      Q.   were you able to find any?
 3 ║      A.   No, sir.
 4 ║      Q.   what sort of filing system do you have there?
 5 ║      A.   Right now or then?
 6 ║           MR. EICHEL:  I don't know the point of this.  This
 7 ║      is a discovery matter.  we have already established
 8 ║      there is -- there is no records there.  Okay.
 9 ║           THE COURT:  well, by her last answer you are
10 ║      saying?
11 ║           MR. EICHEL:  I object to the calling of all police
12 ║      personnel for discovery matters.  That is my basic
13 ║      objection.
14 ║           THE COURT:  Okay.
15 ║           MR. PORTER:  It is pursuant to the U.S. Supreme
16 ║      Court precedent assuming we are here on a motion to
17 ║      suppress.
18 ║           THE COURT:  we are not here on a motion to
19 ║      suppress.
20 ║           MR. PORTER:  we're here on --
21 ║           THE COURT:  well, I know you have styled this as a
22 ║      motion to suppress pretrial and trial identifications.
23 ║      what I have indicated is that is something that is
24 ║      properly raised during the trial, prior to trial, not
25 ║      24 years after trial, and not after all of the appeals
```

09:59AM

10:00AM

JILL M. CUTTER, RPR
(513) 785-6596

```
 1    have been exhausted and the conviction has been
 2    affirmed by the highest court in the state.
 3         I mean, to the extent that you have something that
 4    goes -- that can be considered a mitigating factor that
 5    can be presented at a sentencing hearing, I am trying
 6    to give you as much leeway as possible.  But counsel, I
 7    mean, this is a motion leading up to a resentencing
 8    hearing.  We are not going to be talking about whether
 9    we are suppressing an identification.  I mean, the
10    identification has been made and it is a part of the
11    finding of guilt.  The three-judge panel -- the things
12    that the three-judge panel or the jury are going to be
13    reviewing, are going to be the matters that -- and we
14    will have a separate hearing to determine this.  You
15    will have an opportunity to object to items of evidence
16    that are presented.  But it is going to be matters that
17    are relevant to the aggravating circumstance and your
18    mitigation.
19         MR. PORTER:  Could I have a minute to confer with
20    co-counsel, Your Honor?
21         THE COURT:  Yes.
22         (Defense Counsel confer off the record.)
23    Q.   (By Mr. Porter)  I don't mean to repeat your
24    answers, ma'am.  You said you looked and you found no records?
25    A.   Correct.
```

10:01AM

10:01AM

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 827

```
 1          Q.   Do you have a record retention schedule regarding
 2   these records?
 3          A.   We do at present.  In 1987, there was a flood in
 4   the room that the records were kept.  And what I understand,
 5   quite a bit of information was destroyed.
 6          Q.   It's my understanding that in 1986 you started to
 7   microfilm or microfiche, I get those terms confused, records.
 8          A.   Yes.
 9          Q.   Did you look to see if these records are
10   microfilmed or microfiched?                                    10:02AM
11          A.   Yes.  At pretrial we did not get into central
12   records.  We would not have access to that information.
13          Q.   It's my understanding that the individual officers
14   often kept their separate files for their own purposes
15   regarding investigations they did?
16          A.   I have no idea what they kept, sir.
17          Q.   Did you check with any of the officers that had
18   been assigned to this case or detectives that were around back
19   then?
20          A.   From what I understand, the people that were there  10:03AM
21   in 1983 have retired.
22               MR. PORTER:  Let me check with counsel for one
23          minute, Your Honor.
24               THE COURT:  All right.
25               (Defense counsel confer off-the-record.)
```

38

```
 1                    MR. PORTER:  We have no further questions.
 2                    MR. EICHEL:  No questions for this witness, Your
 3          Honor.
 4                    THE COURT:  You may be excused.  Thank you.
 5                              MONA BRYANT
 6     Having been first duly sworn, was examined and testified under
 7     oath as follows:
 8                          DIRECT EXAMINATION
 9     BY MR. PORTER:
10          Q.   Can you state your name for the record, please?      10:05AM
11          A.   Mona Bryant.
12          Q.   I am sorry.  I didn't hear.
13          A.   Mona Bryant.
14          Q.   Would you spell your last name?
15          A.   B-R-Y-A-N-T.
16          Q.   And your address?
17          A.                        Middletown, Ohio.  45044.
18          Q.   All right.  And I understand you contacted --
19          A.   Melynda.
20          Q.   -- about testifying today?                           10:05AM
21          A.   Yes, I did.
22          Q.   And you are --
23          A.   I told her I was on medication for my nerves.  I
24     have severe anxiety attacks, and that I really can't remember
25     what happened that day.
```

JILL M. CUTTER, RPR
(513) 785-6596

```
 1              Q.   I will try to make it short and try to make it as
 2    stress free as possible.
 3              A.   Okay.
 4              Q.   Are you currently employed?
 5              A.   No, I am not.
 6              Q.   And you are wearing glasses today?
 7              A.   Yes, I am.
 8              Q.   Are they to see things clear?  I'm sorry.  Not
 9    clear.  Distant?
10              A.   Far away.                                            10:06AM
11              Q.   And back in 1983 were you wearing glasses?
12              A.   No, I was not.
13              THE COURT:  You may want to assist the Court in
14         identifying who this witness is and what she knows.
15         I'm not sure who we are talking to and what any of your
16         questions are relevant to.
17              MR. PORTER:  I was going to get to that in a
18         minute, Your Honor.
19              THE COURT:  I guess it maybe helpful if you
20         establish some foundation so that I have some idea       10:06AM
21         where we are at and where we are going.
22              Q.   Back when this case was initially tried, were you
23    called as a witness?
24              A.   I am quite sure I was.
25              Q.   All right.  And did you testify regarding some
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 830

```
 1    events that you had seen around the shooting in this case?
 2          A.    I probably did, but I cannot remember what was
 3    said.  I blocked all of that out of my memory.  I do not
 4    remember.
 5          Q.    Was your -- can you remember anything at all then?
 6          A.    Not very much.  Not that happened 24 years ago.
 7    Not very much.
 8          Q.    Were you at the --
 9          A.    I was at the club that night.
10          Q.    You need tell the Judge what club that was.              10:07AM
11          A.    It was the Legion in Hamilton, Ohio.
12          Q.    Can you -- did you have any contact with the
13    victim in this case on the day of the shooting?
14          A.    Yes, I did.  She was a friend of mine.
15          Q.    All right.  And her name was for the record?
16          A.    Suzette Butler.
17          Q.    Did you see a fellow that you know by the name of
18    Red or Von Davis on that day?
19          A.    I did see him in the club.
20          Q.    And did you see him with the victim on that day?       10:07AM
21          A.    I can't testify to that.  I can't -- I cannot
22    remember seeing them together at all.
23          Q.    Was there some point that you looked outside and
24    saw an argument?
25          A.    I might have, but I can't remember.  Like I said,
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 831

```
 1    I cannot remember exactly what happened and how the events
 2    happened that day.  What took place first I cannot remember.
 3         Q.    To the best of your recollection when you
 4    testified previously, is that still accurate?
 5         A.    I wouldn't say that was accurate.  Because I can't
 6    say exactly what I said back then.  Because it's been -- I
 7    will be honest with you.  I told her I cannot remember.
 8         Q.    Did you have any contact with the investigating
 9    officers after the shooting?
10         A.    Not that I know of.                              10:08AM
11         Q.    All right.  I would like to show you Exhibit 2.
12              MR. EICHEL:  I would like for the record to
13         reflect, this was a joint exhibit at the trial in 1984.
14         It is the statement of Mona Aldridge.
15              THE COURT:  This is Mona Bryant.  Was she formerly
16         Mona Aldridge?
17              THE WITNESS:  Yes, I was formerly Mona Aldridge.
18              THE COURT:  Thank you for that clarification.
19              MR. EICHEL:  As it reflects this was a pretrial
20         statement given to defense at trial and it's been in    10:09AM
21         their possession for the last 24 years.
22              THE COURT:  That's fine.  You may proceed.
23              MR. PORTER:  I am going to have it marked as
24         Defendant's Exhibit B today.  Court's permission to
25         approach the witness for purposes of showing her an
```

```
 1          exhibit?

 2                  THE COURT:  You may.

 3          Q.   (By Mr. Porter)  Can you take a look at that?

 4          A.   Some of it I do remember.  I do remember seeing

 5   her outside, but some of the statements I do not remember

 6   making at all.

 7          Q.   I am sorry.  Could you please repeat that for the

 8   record?

 9          A.   I said some of the statements I did -- I can

10   remember saying; that I was at the Legion with her.  But some      10:10AM

11   of these statements I do not remember at all saying.  And I

12   signed it.

13          Q.   Let me back up for a minute.  The Judge is going

14   to require me to ask a couple of questions first.  Have you

15   ever seen Defendant's Exhibit B previously?

16          A.   I probably have.

17          Q.   Okay.  Is that your -- there is a signature --

18          A.   That is my signature.

19          Q.   Okay.

20                  MR. PORTER:  Could I again approach the witness      10:11AM

21          just for looking at what I --

22                  THE COURT:  Go ahead.

23          Q.   (By Mr. Porter)  In the lower right-hand corner of

24   the document there is a number.  Do you see that?

25          A.   608?
```

43

| | |
|---|---|
| 1 | Q. Right. Do you know to what the 608 refers? |
| 2 | A. No, I do not. |
| 3 | Q. Okay. Can you remember giving that statement? |
| 4 | A. Not really. Like I said, that night when that |
| 5 | happened, I was drinking, so I can't remember exactly what I |
| 6 | said that night. |
| 7 | Q. Okay. How much had you been drinking that night? |
| 8 | A. Oh, quite a lot. |
| 9 | MR. OSTER: Object. |
| 10 | THE COURT: Sustain the objection. |
| 11 | MR. OSTER: I thought this was supposed to go |
| 12 | toward identification for possibly a proffer as to if |
| 13 | she was shown pictures, not her statement or a fishing |
| 14 | expedition or anything to rehash the trial. |
| 15 | THE COURT: Mr. Porter, I am struggling to see how |
| 16 | this pertains to anything that is going to be relevant |
| 17 | at the resentencing hearing. This is all, as far as I |
| 18 | can see, issues where you are attempting to |
| 19 | collaterally attack the conviction that has been |
| 20 | sustained and affirmed by the Ohio Supreme Court |
| 21 | previously. |
| 22 | MR. PORTER: Well, if the witness had been |
| 23 | drinking on the night in question, that certainly would |
| 24 | be relevant mitigating evidence. |
| 25 | THE COURT: These are all issues that would have |

10:12AM (line 10)

10:12AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

```
 1    been ferreted out at trial, at a motion prior to trial
 2    that would have been issued.  I just don't see any
 3    vehicle or any way that this is -- I mean, believe me,
 4    I am trying to give you as broad -- I am trying to be
 5    as lenient as possible in the event that there is
 6    something here that could arguably be used at
 7    resentencing, but going into undermining
 8    identifications that -- I mean, all of that is just an
 9    attempt to undermine the conviction or to argue a
10    residual doubt issue or something along those lines.  I    10:13AM
11    just don't see how it relates to any mitigating factor
12    involving this defendant, his background or a
13    mitigating aspect of the nature and circumstances of
14    the case.  That is -- and that is what was represented
15    is that I have to look at the nature and circumstances
16    of the case as a potential mitigating factor.  I am
17    just waiting to see --
18         MR. PORTER:  The State is going to have to, I
19    assume, re-prove part of their case.  I assume they are
20    going to be calling some witnesses.  It sounds like the    10:14AM
21    Court is saying that the State is not going to be
22    permitted to call any witnesses.  And if so, then maybe
23    I can understand the Court's position.
24         THE COURT:  Well --
25         MR. PORTER:  But if a witness is going to be
```

```
 1              called by the State, whose testimony is a product of a
 2              Fifth Amendment violation, that certainly is relevant
 3              to the proceedings.
 4                    THE COURT:  I'm going to sustain that objection.
 5                    MR. OSTER:  Thank you, Your Honor.
 6              Q.    (By Mr. Porter)  Can you remember where you gave
 7         the -- where you were when you gave the statement?
 8              A.    No, I cannot.  I cannot remember that night.  I
 9         have blocked a lot of that memory out.  I cannot remember
10         exactly where I was.                                        10:14AM
11              Q.    Can you remember if the police showed you any
12         pictures?
13              A.    I cannot recall that at all.
14                    MR. PORTER:  A moment to confer with counsel?
15              A.    I told -- went to her office --
16                    THE COURT:  Ma'am, there is no question before you
17         right now.
18                    (Defense counsel confer off the record.)
19                    MR. PORTER:  We have no further questions, Your
20         Honor.                                                      10:15AM
21                    MR. EICHEL:  I have just a few.
22                         CROSS-EXAMINATION
23         BY MR. EICHEL:
24              Q.    It's Mrs. Bryant?
25              A.    Yes, it is.
```

JILL M. CUTTER, RPR
(513) 785-6596

| 1 | Q. | And your name was Mona Aldridge back in 1983? |

1     Q.   And your name was Mona Aldridge back in 1983?

2     A.   Yes, it was.

3     Q.   And you were a good friend of Suzette Butler, were

4 you not?

5     A.   Yes, I was.

6     Q.   How long had you known her?

7     A.   I had known the family all of my life.  We grew up

8 together.

9     Q.   And growing up together as children and as adults

10 you socialized with her?                                 10:16AM

11     A.   Yes, I did.

12     Q.   Live in the same neighborhood?

13     A.   On and off.  Once we got grown we all went our

14 separate ways.

15     Q.   Well, but you said you do recall that that night

16 you were at the Legion?

17     A.   Yes, I was.

18     Q.   And Suzette was there?

19     A.   Yes.

20     Q.   And you said Mr. Davis was there?            10:16AM

21     A.   Yes.

22     Q.   Mr. Davis, what was he in relation to Suzette,

23 that you remember from those days?

24     A.   She was seeing him in them days, but I think they

25 had broke up.  The night we was at the Legion I think they had

47

```
 1    broke up.
 2         Q.   So you knew Mr. Davis through her?
 3         A.   Yes.
 4         Q.   And you socialized with him and her on occasion?
 5         A.   Probably on occasion I did.
 6         Q.   Okay.  So you knew Mr. Davis' name through
 7    Suzette?
 8         A.   Mr. Davis, I knew his brother.  I knew his family.
 9    Hamilton is a very -- it's a very small town, so people knew
10    everybody in Hamilton back then.                                10:17AM
11         Q.   So it is fair to say --
12         A.   It is fair to say I did know him.
13         Q.   -- you knew Mr. Davis not quite as well you knew
14    Suzette, but you knew him from the neighborhood, too?
15         A.   Yeah, I have seen him.
16         Q.   So you told -- would you have told the police you
17    knew him, same thing you are telling me today?
18         A.   I probably would have told the police that if they
19    asked me that, did I know him.
20         Q.   Was it even necessary for the police to show you      10:17AM
21    some kind of a lineup for you to say Mr. Davis was the guy you
22    saw that night?
23              MS. COOK-REICH:  Object.  Speculation.
24              MR. PORTER:  We are going to object and certainly
25         it's not her job or her role to say what is necessary
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 838

```
 1            for the police to do or not do.

 2                 MR. EICHEL:  I will withdraw the question.

 3            Q.   (By Mr. Eichel)  Did you know Mr. Davis on sight?

 4    You knew what he looked like?

 5            A.   Yes, I knew what he looked like.

 6            Q.   And you could tell the police what he looked like?

 7            A.   I don't know that.

 8                 THE COURT:  Hold on one second.  For the record,

 9            there is construction going on in the space above the

10            courtroom.  There has been some loud clattering during       10:18AM

11            this line of questioning, so there has been a couple of

12            interruptions I guess because of that.  I just wanted

13            to indicate that it isn't the conduct of counsel that

14            is interrupting anything.  All counsel are behaving

15            appropriately, but there is a circumstance outside of

16            our control that we are attempting to remedy as we

17            speak.  So I just wanted the record to understand why I

18            kind of interrupted a couple of times.  To the extent

19            that you are able to proceed with the distraction, feel

20            free to do so.  If you feel that you can't, let me know     10:19AM

21            and we will take a break.

22                 MR. EICHEL:  Thank you, Your Honor.

23                 THE COURT:  Same goes for the defense.

24            Q.   (By Mr. Eichel)  What has been marked previously

25    as Joint Exhibit 2, is now marked today as Defendant's Exhibit
```

1    B, you said was your statement?

2         A.    I can't remember making that statement.  And if I

3    did sign it, I am not going to testify that it was true

4    because I can't remember what happened back then.

5         Q.    Well, that is fair --

6         A.    Now, I just can't remember.

7         Q.    -- fair enough.  But you did --

8         A.    I did identify it back then.

9         Q.    Right under your signature it says the date

10   12-12-83.  In the text, in the words of this, you identified a        10:20AM

11   person named -- the word Red Davis is right there?

12        A.    I know him as Red Davis.

13        Q.    Okay.  And throughout the rest of this, you refer

14   to Red here, and Red here.  Red had a gun in his hand it says

15   right here.  At the end, when Red was arguing with Suzette, he

16   pointed the gun at her head.

17        A.    I don't remember none of that.

18        Q.    It said it --

19             MR. PORTER:  I will object.  The document speaks

20        for itself.  She already said she can't verify what is         10:21AM

21        accurate in the document, Your Honor.

22             THE COURT:  All right.  But once again, I am going

23        to indicate as we are going through this witness, all

24        of these issues appear to be relevant only to

25        credibility of a witness.  That is an issue that would

1    have been determined by the trier of fact in the

2    original trial, not an issue for this Court 25 years

3    post to be looking at.  So I understand you are

4    following up on questions that have been asked.

5         MR. EICHEL:  Let me ask just one more question.

6    Q.   (By Mr. Eichel)  It wouldn't be unusual back then

7    or even today to refer to the defendant here as Red?

8    A.   No, it wouldn't be unusual.  That is the name I

9    knew of him.

10        MR. EICHEL:  Thank you.  No further questions.   `10:21AM`

11                 REDIRECT EXAMINATION

12   BY MR. PORTER:

13   Q.   The document that we have been referring to,

14   ma'am, do you remember if you were the person that typed that?

15   A.   No.  I know I did not type that.  Not at all.  I

16   didn't even have access to a typewriter back then.

17   Q.   How far did you go in school?

18   A.   12th.  I graduated from high school.  I knew how

19   to type, but I didn't have a typewriter.

20   Q.   All right.  The prosecutor asked you about the   `10:22AM`

21   statement and went through the content of the statement with

22   you.  Do you remember if you read the statement prior to

23   signing it?

24   A.   Most likely I didn't.  I will be honest.  Most

25   likely I didn't read the statement.

JILL M. CUTTER, RPR
(513) 785-6596

51

```
 1              MR. PORTER:  I have no further questions, Your
 2       Honor.
 3              THE COURT:  Anything further, Mr. Eichel?
 4              MR. EICHEL:  Nothing further, Your Honor.
 5              THE COURT:  Ma'am, you can be excused.  Thank you
 6       for coming in.
 7              THE WITNESS:  Do I have to stay here for the rest
 8       of the day?
 9              THE COURT:  No, you do not, ma'am.  You are
10       released.  Ms. Cook-Reich is getting the next witness?    10:23AM
11              MR. PORTER:  That is correct, Your Honor.
12                        JODAWNA MCREARY
13   Having been first duly sworn, was examined and testified under
14   oath as follows:
15                      DIRECT EXAMINATION
16   BY MS. COOK-REICH:
17         Q.   Ma'am, can you state your name for the record,
18   please?
19         A.   JoDawna McCreary.
20         Q.   Were you previously also known as JoDawna          10:24AM
21   Southern?
22         A.   Yes.
23         Q.   Okay.  And ma'am, can you state your address for
24   the record, please?
25         A.                             Cincinnati, Ohio.
```

```
 1            Q.   Okay.  And I apologize, I meant to have you spell
 2    your first and last name for the court reporter.
 3            A.   J-O D-A-W-A-N-A, M-C-C-R-E-A-R-Y.
 4            Q.   And, ma'am, did you previously testify at a trial
 5    in regards to State of Ohio vs. Von Clark Davis in 1983 or
 6    '84?
 7            A.   I was subpoenaed.
 8            Q.   Do you recall if you testified?
 9            A.   I didn't talk, so.
10            Q.   You didn't talk at all?                              10:25AM
11            A.   No.
12            Q.   Did you testify at any other prior hearing on Mr.
13    Davis' case?
14            A.   I talked with a detective at the police station,
15    and that was it.
16            Q.   Do you recall whether when you spoke with the
17    police detective at the police station whether you were shown
18    any photographs?
19            A.   No, I wasn't.
20            Q.   You were not shown any photographs?                  10:25AM
21            A.   No.
22            Q.   Did you know Suzette Butler?
23            A.   Yes, I did.
24            Q.   Prior to that day?
25            A.   Yes.
```

53

| 1 | Q. Did you know Mr. Davis prior to that day? |
|---|---|
| 2 | A. Yes, I did. |
| 3 | Q. Did you provide statements to the detective if you |
| 4 | remember? |
| 5 | A. Yes, I did. |
| 6 | MR. EICHEL: Your Honor, I think those last |
| 7 | questions end the matter. |
| 8 | THE COURT: Well -- |
| 9 | MR. EICHEL: Object to further questioning on |
| 10 | those. |
| 11 | THE COURT: Let me try to give some further |
| 12 | guidance as to where I am at on this. Okay. |
| 13 | Mitigating factors under 2929.04 (D), and these are the |
| 14 | kind of things that I was trying to allow the defense |
| 15 | to have some latitude so that we can see if there is |
| 16 | anything pertinent to these things; whether the victim |
| 17 | of the offense induced or facilitated it; whether it is |
| 18 | unlikely that the offense would have been committed but |
| 19 | for the fact that the offender was under duress, |
| 20 | coercion, strong provocation. You know, any of these |
| 21 | other factors that are listed under 2929.04(D) or under |
| 22 | the catchall and the summary I have of various relevant |
| 23 | mitigating factors that courts have addressed, family |
| 24 | history, background, or family environment of the |
| 25 | defendant, good character, favorable community |

10:25AM

10:26AM

JILL M. CUTTER, RPR
(513) 785-6596

1    reputation, substance abuse issue, personality disorder

2    low level of intelligence or mental retardation,

3    remorse, assistance to cooperation with police, promise

4    reformation or religious conversion, military service,

5    victim's illegal activities have been addressed,

6    employment, love and support of family members, good

7    prison conduct, impact on a child, probability of no

8    release from prison, health problems of a defendant,

9    care of an elderly, you know, these are the kind of

10   mitigating factors that we look at; not whether or not          10:27AM

11   a procedure leading to an identification followed, you

12   know, met certain requirements or not when that issue

13   was never raised at trial.  It was not something that

14   was litigated at trial, it has never been litigated on

15   appeal other than in the context of an ineffective

16   assistance claim and to that extent, has not been found

17   to have merit.

18        So, please, I am going to allow you to call

19   witnesses, but the idea is that there is going to be

20   something that pertains to some of these mitigating          10:28AM

21   factors or something about the nature and circumstances

22   of the offense that would be mitigating for this

23   defendant.

24        MR. OSTER:  If I may just briefly, I think

25   possibly looking at the eyes of the witness that an

JILL M. CUTTER, RPR
(513) 785-6596

1          exhibit may be laying on the witness table.  I would

2          like to have that removed.

3                THE COURT:  That was from the previous witness?

4                MR. OSTER:  Yes, Your Honor.

5                THE COURT:  Prior exhibits are up here.

6                MR. EICHEL:  For the record, after the testimony

7          of the previous witness, I have no objection of that

8          being admitted into evidence at this point.

9                THE COURT:  For purposes of this hearing.  All

10         right.  So with the Court's comments in mind you may          10:28AM

11         proceed.

12             Q.   (Ms. Cook-Reich)  Ms. McCreary, how well did you

13    know Red Davis?

14             A.   I didn't know him that well.  Not like that, no.

15    Just knew of him.

16             Q.   Knew of him.

17             A.   And knew what he looked like.

18             Q.   Okay.

19             A.   And who his name was, what it is.

20             Q.   Prior to that evening at the Legion had you seen          10:29AM

21    him on more than one occasion?

22             A.   Yes.

23             Q.   Were you from the neighborhood of Hamilton where

24    he was from?

25             A.   Yes, uh-huh.

JILL M. CUTTER, RPR
(513) 785-6596

56

```
 1          Q.   You knew him from the neighborhood?

 2          A.   I knew his parents and stuff.

 3          Q.   Okay.

 4          A.   His mom and his sister.

 5          Q.   And I apologize, when you say I knew them, you

 6   knew of them or you knew them?

 7          A.   I knew them.

 8          Q.   You were an acquaintance of them, friends with

 9   them?

10          A.   Yes.  Yes.                                    10:29AM

11          Q.   And therefore, you were an acquaintance by

12   relation to Von Clark Davis?

13          A.   Well, I knew -- well, I just knew him.  I knew who

14   he was.

15          Q.   Okay.  And you weren't shown any photographs of

16   him by any detective or any police officer?

17          A.   No.

18          Q.   Did you witness any other person be shown a

19   photograph?

20          A.   No.                                           10:30AM

21          Q.   Were you interviewed individually?

22          A.   Yes.

23          Q.   Were you interviewed at the Legion or at a

24   different location?

25          A.   At the police station.
```

57

```
 1              MS. COOK-REICH:  If I can have a second,
 2     Your Honor?
 3              THE COURT:  You may.
 4              MS. COOK-REICH:  I have no further questions for
 5     Ms. McCreary.  Thank you.
 6              THE COURT:  Do you have anything, Mr. Eichel?
 7              MR. EICHEL:  No, we have no questions.
 8              THE COURT:  Ma'am, you may be released.  Thank
 9     you.  As to the comments by Mr. Porter about that the
10     State is going to have to present evidence at the          10:30AM
11     resentencing hearing, they don't have to re-prove the
12     murder conviction.  They don't have to re-prove the
13     aggravating circumstance.  I mean, that has been found
14     and proven beyond a reasonable doubt and the jury is
15     instructed on that.  The additional evidence that they
16     are allowed to put in, the Court traditionally monitors
17     this closely.  We don't just blanket allow the State to
18     re-present all evidence that was admitted in the guilt
19     phase.  It has to pertain to the aggravating
20     circumstance only, and it would be relevant to the        10:31AM
21     aggravating circumstance.  So any additional evidence
22     that they submit is not going to be going towards
23     re-proving the underlying crime.  It is going to be
24     towards what is relevant for the sentencing body to
25     consider in being able to weigh that aggravating
```

JILL M. CUTTER, RPR
(513) 785-6596

1   circumstance against the mitigating factors that will

2   be presented. I wanted to make sure that we were all

3   clear there as well. So when you talk about that they

4   are going to have to call witnesses or that they are

5   going to have to present evidence, I mean, the only

6   evidence is going to be as pertains to the aggravating

7   circumstance. And traditionally, that entails a

8   re-submission of portions of the evidence from the

9   guilt phase that are relevant to that aggravating

10   circumstance.                              10:32AM

11        MS. COOK-REICH: Your Honor, when I spoke

12   previously and indicated the State had provided a list

13   of witnesses, I have put my hand upon that. They filed

14   supplemental discovery listed as H, on July 25th, 2008.

15   And in that discovery, they have listed 46 witnesses

16   including the ones that we have called thus far except

17   for the records custodian.

18        THE COURT: I think out of fairness, you know,

19   none of the counsel that are present in this courtroom

20   right now were counsel of record on this trial. This   10:32AM

21   is an unusual circumstance. This case, the sentence

22   was vacated and remanded for resentencing, you know,

23   decades after this original trial transpired. To the

24   extent that the State is providing anything and

25   everything that they have to the defense so that you

1    can learn everything possible that you need to know

2    about this case to be able to adequately represent Mr.

3    Davis is admirable, and it would be something that the

4    Court would want them to do.

5         But again, I mean, in no trial that this Court has

6    ever been involved in has it been a situation that

7    because witnesses were listed in discovery that there

8    was some type of a requirement that they be called or,

9    in fact, I believe the rule prohibits comment on the

10   witness list; who is and isn't called.  The idea is to      10:33AM

11   provide you discovery.

12        MS. COOK-REICH:  Actually, and maybe I have a

13   different concept of what the rule is, a list of

14   witnesses they intend to call at trial and they have

15   listed 46 of them including the ones that we have

16   subpoenaed today, other than the records custodian we

17   have subpoenaed no one who is not on their witness

18   list.

19        MR. OSTER:  Your Honor, to make a proffer inside a

20   proffer I guess, as we stand here today, I did the          10:34AM

21   discovery where I gave those names over.  In looking at

22   this case from 1983 trying to go through multiple

23   boxes, it is hard to know exactly what is going to

24   happen and how things will play out.  It was out of

25   caution that counsel, myself, gave over all of those

1    things and trying to make sure there wasn't anything
2    missing.
3        Prosecutors, we are very nervous about Brady
4    issues and we do try to take that seriously and I would
5    rather give over a name that I am not going to use than
6    have something come up where we are sitting here a week
7    before trial and I have to look at Your Honor and say
8    there is something that should have been and there is
9    not.  That is not a position that is liked by
10   prosecutors as we sit here.                          10:34AM

11       THE COURT:  And quite frankly, that is what is
12   guiding the Court today in terms of, again, I am
13   trying, consistent with the law, to allow defense
14   counsel to have latitude to be able to explore issues
15   that are going to be relevant to this resentencing, but
16   up to this point, I mean, it appears to me that there
17   is really an attempt to try to attack the guilt finding
18   in the case and that is simply -- that is not before
19   the Court.  That is something that has been affirmed.

20       We are here to get ready for a resentencing, to   10:35AM
21   allow any motions that are appropriate to be determined
22   prior to that resentencing hearing to be heard, and
23   again, I am proceeding in a cautious manner because,
24   quite frankly, this is a matter that is unusual in its
25   posture, procedural posture.  And I think all of us,

1    you know, need to be given the opportunity to explore

2    certain avenues here maybe more so than in a standard

3    case, but that doesn't mean that we have cart blanche

4    to go and try to retry the guilt phase of the trial.

5         And so, counsel, please, as you go through these

6    witnesses keep in mind what is at issue in a

7    resentencing and let's address those issues.

8         MS. COOK-REICH:  Can we have a second, Your Honor?

9         (Defense counsel confers off the record.)

10        MR. PORTER:  If it may please the Court, if the    10:37AM

11   Court has made anything clear today it is that the

12   Court is not going to let us proceed with respect to

13   the motion to suppress.  That is what we are prepared

14   to do here today.  So again, this case is going to go

15   up to numerous rounds of appeal.

16        At this point we intend to offer no more evidence

17   with respect to the motion to suppress only because of

18   the Court's comments that we can't address that issue

19   when we call witnesses.  It doesn't make any sense to

20   do that.  And the second thing I would take objection    10:37AM

21   to and the record should not reflect that the

22   prosecutor has given us anything and everything.  That

23   should be readily apparent given the fact that the

24   Court wouldn't order that the information regarding the

25   pretrial identification be turned over.

JILL M. CUTTER, RPR
(513) 785-6596

| 1 | So at this point, let the record reflect we will |
| 2 | be calling no more witnesses because the Court has |
| 3 | indicated that it does not want to hear any testimony |
| 4 | with respect to the motion to suppress. |
| 5 | THE COURT: What I am going to indicate is that I |
| 6 | have welcomed you to present any testimony that might |
| 7 | pertain to any mitigating evidence, any mitigating |
| 8 | factor that this Court would be -- or that a |
| 9 | three-judge panel or a jury would ultimately be |
| 10 | weighing in this matter, but to the extent that the |
| 11 | evidence that is presented, and up to this point all |
| 12 | goes to witness credibility issues that were determined |
| 13 | at trial, those kind of issues, you know, that is not |
| 14 | something that the Court is going to relitigate. The |
| 15 | conviction in the case is final. The conviction has |
| 16 | been affirmed. It has been final. It wasn't reversed |
| 17 | by the 12th District. It wasn't reversed by the Ohio |
| 18 | Supreme Court. And it has not been reversed by any |
| 19 | federal court that has reviewed it. |
| 20 | MR. OSTER: Your Honor, if I may as well, looking |
| 21 | over notes as I have been having to go back and look at |
| 22 | different witnesses who may or may not be here, we have |
| 23 | talked about the law of the case and res judicata 1on |
| 24 | page 163 of the transcript, which I know Your Honor has |
| 25 | not looked at pursuant to the defense making a motion |

10:38AM

10:39AM

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 853

1   in that regard.  The defense in this case did make a

2   motion to strike the in-court identification due to the

3   impermissible picture of the defendant.  At one point

4   on page 164 then, the trial court overruled that motion

5   and said it went to the weight of the testimony.  That

6   issue was then not appealed, but it was made part of

7   the trial record.  It was overruled very similar to

8   what Your Honor just said as to the weight of the

9   testimony.

10      I know Your Honor has not had a chance to look at

11   that, but inside of this proffer I would like to put

12   that on the record that that was there.  It was chosen

13   not to be an appeal issue and it does go to exactly

14   what has been litigated here today.

15      THE COURT:  Mr. Porter, hold on a second.  What

16   you are indicating when you say you are not going to

17   call any further witnesses, is that you would expect

18   that the testimony of the witnesses that you have here

19   remaining would be similar in nature to what has been

20   presented thus far?

21      MR. PORTER:  And that the Court is going to

22   preclude us from asking questions regarding the

23   pretrial identification procedures as it has with the

24   other witnesses.

25      THE COURT:  All right.

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | MR. PORTER: And the other comment I would make, |
| 2 | what is interesting is that when counsel did object |
| 3 | during the trial to the impermissible eyewitness |
| 4 | identification procedure, the Court says it goes to the |
| 5 | weight of the evidence. Truly it does not. It goes to |
| 6 | the admissibility. Thank you. |
| 7 | THE COURT: All right. |
| 8 | MR. EICHEL: Well, if Your Honor, please, again I |
| 9 | object to the defense counsel's characterization of the |
| 10 | Court's ruling. The motion and the record that Mr. |
| 11 | Oster already pointed out on page 163 of the trial |
| 12 | transcript that dealt with the testimony of Cozette |
| 13 | Massy, who -- I presume the defense was ready to call |
| 14 | her this morning, and has chosen now not to. |
| 15 | THE COURT: Well, you know, I don't feel that I |
| 16 | have been restrictive. I mean, I have been allowing |
| 17 | you to proceed. I have just been waiting for it to |
| 18 | pertain to something relevant to the matter which is |
| 19 | before the Court. And I fail to see the legal |
| 20 | distinction that counsel is making on a motion to |
| 21 | suppress. I mean, you wouldn't file a motion to |
| 22 | suppress to prevent something from being heard at the |
| 23 | sentencing hearing in a capital case. Motions to |
| 24 | suppress are by their very nature pretrial. I mean, to |
| 25 | the extent that you will be objecting to certain |

10:40AM

10:41AM

| | |
|---|---|
| 1 | evidence being considered by a jury or a three-judge |
| 2 | panel for purposes of sentencing, you still have that |
| 3 | option. Nothing that is happening today would preclude |
| 4 | you from being able to object at the appropriate time, |
| 5 | and the Court will then make a ruling based on what is |
| 6 | being offered into evidence and what the objections are |
| 7 | at that time. But to the extent that counsel |
| 8 | characterizes this as a motion to suppress the pretrial |
| 9 | and trial identifications relating to this defendant |
| 10 | that -- I mean, I don't see any way that any of the |
| 11 | information that is presented to this Court thus far |
| 12 | has not been designed to attack the guilt finding. It |
| 13 | appears that it is all oriented towards the guilt |
| 14 | finding and that matter has been determined. That is |
| 15 | not before the Court. |
| 16 | So, if you have something further with regard to |
| 17 | mitigation, feel free to proceed. If not, then I |
| 18 | certainly honor your decision not to call any further |
| 19 | witnesses. All right. Do you wish to -- are there any |
| 20 | other witnesses here on any of the other motions today? |
| 21 | MR. PORTER: None today, Your Honor. |
| 22 | THE COURT: All right. Do you wish to argue, |
| 23 | present oral argument on any of these motions or are |
| 24 | you simply submitting them based on the written |
| 25 | argument? You certainly should have an opportunity to |

10:42AM

10:43AM

JILL M. CUTTER, RPR
(513) 785-6596

1   present any oral argument in support of all or any of

2   these motions that you desire.

3          MS. COOK-REICH:  We would like to argue, Your

4   Honor.  There is one that we wish to submit on.  Let me

5   get to my record.  We would submit on F, motion to

6   dismiss the capital specification contained in the

7   indictment.  If I could have one second to make sure

8   that people aren't sitting outside --

9          THE COURT:  That is F as in Frank?

10         MS. COOK-REICH:  Yes.                              10:44AM

11         THE COURT:  Yes, as a courtesy if you are not

12  calling any further witnesses, feel free to release

13  them.  Thank you.

14         MS. COOK-REICH:  Thank you, Your Honor.

15         THE COURT:  All right.  You were saying that you

16  wanted to -- which one -- was there one that you wanted

17  to argue or one that you wanted to submit?

18         MS. COOK-REICH:  I thought we would get over the

19  one that we wish to submit, which is F, motion to

20  dismiss capital specifications contained in the          10:45AM

21  indictment.

22         THE COURT:  Does the State agree to submit that

23  matter?

24         MR. EICHEL:  Yes, Your Honor.  We will submit it

25  also.

JILL M. CUTTER, RPR
(513) 785-6596

1       THE COURT: All right. I will take that matter

2       under advisement. You may proceed with oral argument

3       then and just identify the motion. What I would prefer

4       that we do is allow you to argue a motion and then hear

5       a response from the State before we proceed to the next

6       motion to try to keep things as focused and clear as

7       possible.

8       MS. COOK-REICH: We will proceed forward

9       alphabetically. D as in David, motion for disclosure

10      of exculpatory evidence. Obviously I will not go back   10:46AM

11      through the multiple-page memorandum placed in the

12      record, Your Honor.

13      THE COURT: I will indicate for the record that I

14      have read the 11-page motion for disclosure of

15      exculpatory evidence. I have also reviewed the

16      two-page response from the State. So I have done that

17      prior to the oral argument.

18      MS. COOK-REICH: I won't go on ad nauseam on this.

19      I would just indicate to the Court as our memorandum

20      suggests and indicates that the evidence we are seeking   10:46AM

21      to insure has been placed within the record and it

22      dovetails into the issue that we were trying to get to

23      on pretrial identification. We are requesting that the

24      Court order that the State affirmatively on the record

25      indicate that there are no memorandum, notes, reports,

1    regarding any Brady material, any exculpatory evidence

2    that go to both any potential exculpatory evidence for

3    Mr. Davis including the photo lineup procedures which

4    we were attempting to go through relative to the motion

5    to suppress.

6         As you are aware, we had the records custodian

7    come in from the Hamilton Police Department. This is

8    kind of dovetailed in with that because we wanted to

9    see what records were contained within the Hamilton

10   Police Department still. As you have heard the                    10:47AM

11   testimony, they have no records at their police

12   department. We would like the Court to order the State

13   to affirmatively state that they have provided any and

14   all relevant information.

15        THE COURT: All right. And just to the extent

16   that -- Brady applies to both issues involving guilt

17   and mitigation, and so to the extent obviously that the

18   State -- that the State has a Brady obligation that

19   continues. Obviously if there was exculpatory

20   information regarding guilt, I would expect that that          10:48AM

21   would have already been provided and certainly if there

22   is anything you have, you would have an obligation to

23   present that. But I think that this is more oriented

24   at this point in time given the posture of the case

25   towards Brady material regarding mitigation.

JILL M. CUTTER, RPR
(513) 785-6596

1       MR. OSTER:  Yes, Your Honor.  The State has no

2    problem acknowledging that Brady does extend to the

3    mitigation hearing.  I think we have acknowledged that

4    much.   We have also acknowledged previous discovery

5    given February 8th, '84, April 20th, '84, April 27th,

6    '84, and what would be motion H, which was Davis'

7    demand for discovery, we did give discovery over as

8    well.  I can look back on the exact date, but obviously

9    it was in year 2008 now.  I believe we filed that July

10   25th, 2008.

11       The State has been in contact with and working

12   with detectives from the Hamilton Police Department

13   trying make sure we get all of the information we can.

14       THE COURT:  So you are observing or cognizant of

15   your continuing duty to investigate and disclose as

16   well?

17       MR. OSTER:  Yes, Your Honor and we obviously

18   realize that Brady continues up until the date and

19   through the trial.  So if anything would come up we

20   would give it to defense counsel immediately.

21       THE COURT:  All right.  Anything further on that

22   motion?

23       MS. COOK-REICH:  Just two notes, that it also

24   extends to impeachment evidence as well as their actual

25   constructive possession.  So I certainly understand

JILL M. CUTTER, RPR
(513) 785-6596

1    that he is indicating he is in contact with the

2    detective from the Hamilton Police Department, but as

3    you have heard the records custodian from the police

4    department testify, the detectives involved in this

5    case kept -- may have, in fact, kept their own records.

6         THE COURT:  There was a question about that.  I

7    think the witness testified that she doesn't know what

8    they did.

9         MS. COOK-REICH:  They are not contained in the

10   Hamilton Police Department records, so we would ask the        10:49AM

11   court -- our position is that simply contacting a

12   current detective at the Hamilton Police Department is

13   not sufficient to insure that all Brady material has

14   been disclosed.  It would require them to actually

15   contact the detectives that are still living, whether

16   they live in Ohio or not, and make sure that they are

17   not hanging on to any impeachment or exculpatory

18   evidence also, Your Honor.

19        MR. OSTER:  If it may please the Court, Your

20   Honor, the only thing I would say is our detective has        10:50AM

21   tracked down the previous detectives, the people he can

22   find; who is dead and who is alive.  He has tried to

23   talk to people.  So we are, on a continuing basis,

24   trying to do that and get everything we can.  We

25   understand Brady and we are fully willing to comply

```
 1        with it.
 2             THE COURT:  All right.  All right.  Which motion
 3        do you want to address next?
 4             MS. COOK-REICH:  It would probably be best to go
 5        to the sealed copy E, motion to require a sealed copy
 6        of the prosecutor's file to be made part of the record.
 7             THE COURT:  Are you going to be arguing this, Mr.
 8        Porter?
 9             MS. COOK-REICH:  Mr. Porter will argue this one.
10             THE COURT:  You may proceed.                          10:51AM
11             MR. PORTER:  Briefly, Your Honor, I understand the
12        Court has latitude in this area.  The Court has
13        discretion in this area.  But we would direct the
14        Court's attention and it's in our outline or I'm sorry
15        in our motion of State vs. Brown in which case, the
16        Ohio Supreme Court reversed a capital conviction
17        recently.  And I understand it is the Court's position
18        we are only here on sentencing in which the Court
19        ordered that the prosecutor's file out of an abundance
20        of caution be sealed and made a part of the record for   10:51AM
21        purposes of later review.  Given the nature of the
22        punishment involved here, we would ask the Court to
23        adopt the same precaution.  I certainly wasn't there.
24        I am speculating a tad on this, Your Honor, but I would
25        gather when State vs. Brown -- it was argued in the
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 862

1 trial court and the defense counsel made the motion to

2 have the prosecutor's file be sealed and made part of

3 the record and we aren't asking to look at the file,

4 Your Honor.  All we are asking is a copy be sealed.  I

5 am sure the prosecutor in that case stood up and argued

6 that they knew what the Brady obligation was.  The

7 Judge still out of precautions, given the nature of the

8 penalty, made it be part of the record.  And, in fact,

9 later on it was determined through oversight or

10 whatever, it makes no difference for purposes of Brady, 10:52AM

11 that there was some Brady material and warranted the

12 granting of a new trial.

13   I understand the Court is well aware that if the

14 Court denies the motion we will not be successful on

15 appeal.  The Court does have the discretion to be safe.

16 We ask the Court out of an abundance of caution to seal

17 the -- to order a copy of the prosecutor's file be

18 sealed.

19   THE COURT:  All right.  Thank you, Mr. Porter.  Do

20 you wish to present anything above and beyond your 10:53AM

21 memorandum?

22   MR. EICHEL:  No.  I would like to reiterate in our

23 memorandum we cited State vs. Craft.  12th District

24 case.

25   THE COURT:  That was Judge Crehan's case, correct?

 1        MR. EICHEL:  Yes.  The Court held the trial court

 2   abused his discretion in ordering something over and

 3   above what Criminal Rule 16 requires, and the Supreme

 4   Court law in capital cases has well establish the trial

 5   Court is not required to seal the prosecutor's file,

 6   based on speculation that the prosecutor might have

 7   withheld exculpatory evidence.  It is a well-worn

 8   issue.

 9        THE COURT:  All right.

10        MR. PORTER:  One comment, if the State has adopted

11   the position they have done all they can to provide us

12   with exculpatory evidence, then they should have no

13   objection to, in fact, sealing a copy of their file.

14   And again, we would point out to the Court, State vs.

15   Brown.

16        THE COURT:  All right.  Matter will be taken under

17   advisement.

18        MS. COOK-REICH:  We have submitted on motion F,

19   Your Honor, and we have had testimony on G.  That would

20   leave us with H, which is defense limited demand for

21   discovery.

22        THE COURT:  You can argue G if you like.  I

23   haven't made a final ruling.

24        MS. COOK-REICH:  Nothing further to argue on that,

25   Your Honor.  Let me just check on that.  We have

1    nothing further to argue on that.  Thank you.  H,

2    limited demand for discovery, I think I kind of

3    addressed that when we first began this morning and I

4    am mostly responding to the State's response and their

5    statements in there that they are assuming that we are

6    providing reciprocal discovery.  And I want to place

7    the Court and prosecutor on notice that we specifically

8    titled that limited demand for discovery for a purpose.

9    It wasn't just a demand for discovery.

10        THE COURT:  Well --                                    10:55AM

11        MR. OSTER:  Your Honor, I guess to state the

12   obvious, the State has a different position.  When we

13   argued -- just argued D, motion for disclosure of

14   exculpatory as well as here in H, the State has given

15   multiple items of discovery over.  This case is in a

16   mid-trial setting.  It is not new.  It is not something

17   where things can be undone.  The rules of discovery

18   would still stand.

19        There is nothing here saying that once a trial has

20   progressed, discovery has been given three to four       10:55AM

21   times, that now the defense can somehow invoke this

22   shield to say we no longer have to give any discovery

23   even though we have been given everything throughout

24   the entirety of this case.  I think that what the State

25   would ask and what the rules of discovery would require

1    is that since this case is ongoing, since discovery has

2    been given, since discovery has been asked for multiple

3    times, that the discovery rules apply and both sides

4    give discovery equally.

5         THE COURT:  Ms. Cook-Reich, let me just make sure

6    that I clarify.  Are you indicating that your position

7    right now is that you are not obligated to provide

8    reciprocal discovery.  You are not saying that if the

9    Court were to put on an order that you would be

10   disobeying the Court's order?                          10:56AM

11        MS. COOK-REICH:  I would never disobey a Court's

12   order, Your Honor.

13        THE COURT:  I guess -- all right.

14        MS. COOK-REICH:  And if I could say, there is no

15   motion, at least currently by the prosecutor, in the

16   posture that we are standing here today, there is no

17   motion by the State to request -- at least a written

18   motion to request the State -- by the State to request

19   the defense to provide discovery.  There is simply

20   their response to our H indicating they assume we are    10:57AM

21   going to provide that.

22        If I could speak to D.  It would seem that Mr.

23   Oster was trying to imply that D was -- motion D was

24   additionally in regards to criminal rules, discovery

25   rules.  That is specifically also entitled under Brady

1    rules and the constitution, so I just point that out to

2    the Court.

3        MR. OSTER:  Reciprocal discovery will obviously be

4    filed in this case, Your Honor.

5        THE COURT:  Are we at I?

6        MS. COOK-REICH:  Mr. Porter is going to address

7    this motion.

8        MR. PORTER:  The motion speaks for itself.

9        THE COURT:  Okay.

10       MR. PORTER:  The Ohio Supreme Court numerous times          10:57AM

11   has said that you have the discretion to go beyond what

12   is required of Criminal Rule 16.  We have cited the

13   Court to those cases.  This Court today has taken --

14   repeatedly cited to the fact that this case is 24 years

15   old or 25 -- and I am sorry, I don't remember the exact

16   number and I don't mean to misstate you, Your Honor.

17       THE COURT:  It depends on where you start I guess,

18   but I think it is '83 to today from the incident is 24

19   to 25 because I think it was December of '83, so that

20   is 24, going on 25 years.                                       10:58AM

21       MR. PORTER:  Given the discretion the Court has

22   given the fact that it is a 25-year-old case, given the

23   fact that we have a duty to go back and investigate

24   everything, it's really hard to go back 25 years as the

25   Court has seen from one of the witnesses who could not

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | even remember.  My recollection of her testimony was |
| 2 | she wasn't even sure if she signed her statement, |
| 3 | wasn't too sure of the contents of the statement.  It |
| 4 | is really hard to go back and talk to and effectively |
| 5 | interview those witnesses.  Red is entitled to that |
| 6 | type of investigation, so we would ask the Court to |
| 7 | exceed what is permitted under Criminal Rule 16 and the |
| 8 | authority is there for the Court to do if it so |
| 9 | chooses. |

MR. EICHEL:  May it please the Court, in addition
to what I have written, and I cited again State vs.
Craft in my memorandum, point out in addition to that,
that State vs. Craft is unusual because it was a
30-year-old case and in addition to that fact, it was a
30-year-old case that had never been tried 30 years
ago.

THE COURT:  That was the case where he was
declared incompetent:  Is that correct?  Why was it
30 years old?  Remind me.  That wasn't my case.

MR. EICHEL:  The defendant's identity was
discovered in the aggravated murder case almost
30 years -- and he was indicted almost 30 years to the
day after he committed the rape and kidnapping of this
girl.  Murder.  He was charged with aggravated murder
in that case.  And 30 years later Judge Crehan thought

10:59AM

10:59AM

JILL M. CUTTER, RPR
(513) 785-6596

| 1 | it was within his discretion to order extra Criminal |
| 2 | Rule 16 discovery. The Court of Appeals said no, the |
| 3 | Court abused its discretion when it went into matters |
| 4 | that are specifically addressed by Criminal Rule 16. |

The Court of Appeals declared the trial court's
discovery order null and void. In that, part of that
trial court's order it was declared null and void. The
Judge took it on himself to take a bunch of witness
statements in camera inspection for Brady material.
The Court of Appeals specifically said that was an
abuse of discretion. Criminal Rule 16 (b)(2)
specifically provides information not subject to
disclosure. Case law says that a witness statement is
discoverable only when the person has testified on
direct examination and the request is made --

THE COURT: I'm familiar with the procedure.

MR. EICHEL: We don't have that in the case. The
trial is over. We had a trial in this case.

THE COURT: And I'm assuming that -- and again, I
don't have the benefit of having read the trial
transcript at this point. Again, I have been
attempting to honor a request that was made by Mr.
Porter earlier in that regard, but I would assume that
that procedure was followed during the trial if, in
fact, it was requested and that after direct

11:00AM

11:01AM

1          examination if there was a witness statement that was

2          provided, there was an opportunity for an in camera

3          review for inconsistencies and the procedure that is

4          contemplated by the rules, and I imagine that those

5          statements then would have been preserved for the

6          record.

7              MR. EICHEL:  To that extent, yes, I believe we saw

8          one of those today.  It was a Joint Exhibit 2.  I think

9          there was Joint Exhibit 1 as well that might have also

10         been a witness statement of one witness that was called          11:02AM

11         and testified at trial.

12             THE COURT:  Okay.

13             MR. PORTER:  We just -- not to beat a dead horse,

14         the Court has our pleadings.  I understand the Court

15         will file an opinion.  We just ask the Court to look at

16         the Ohio Supreme Court cases we cited as opposed to

17         appellate court cases.

18             THE COURT:  So it is clear, I mean, not only will

19         the Court dutifully read the motions that have been

20         filed, but the Court will also peruse the case law that          11:02AM

21         is cited and frequently the Court reviews case law

22         above and beyond that that has been cited by counsel in

23         these motions, so I will definitely honor that request,

24         Mr. Porter.

25             MR. PORTER:  I am just struck by as Ms. Cook-Reich

1    pointed out to me a minute ago, once again that is the

2    State saying we have provided anything and everything

3    and anytime we have asked for a little bit additional

4    under the criminal rules they are fighting us tooth and

5    nail.

6         THE COURT:  All right.  That matter is under

7    advisement.  Next?

8         MS. COOK-REICH:  J, motion to compel law

9    enforcement officials to provide the prosecuting

10   attorney will all the information acquired during the          11:03AM

11   course of their investigation.  Mr. Porter will handle

12   that motion.

13        THE COURT:  Mr. Porter?

14        MR. PORTER:  I am never quite sure, having

15   prosecuted for five years in the darker period of my

16   life, of why prosecutors fight this.  It was always my

17   experience when I prosecuted that one of the greatest

18   challenges from prosecuting was to try to get all of

19   the information from the cops.

20        THE COURT:  As I read the response I don't think          11:04AM

21   they are.

22        MR. PORTER:  I was unclear from the response to be

23   honest with you.  I read it twice.

24        THE COURT:  Okay.

25        MR. PORTER:  And if, in fact, the Court -- if in

 1    fact, they concede, I certainly do not want to be

 2    taking up the Court's time.  I'm always going back to

 3    -- I have been doing this work too long and was arguing

 4    these motions in the mid-eighties.

 5         THE COURT:  Well, I think they have a similar

 6    desire to want to know everything there is to know

 7    about the case from law enforcement to the extent that

 8    that is an arm of the State.  I think -- that is how I

 9    interpreted their response.

10         MR. PORTER:  So if they are conceding I will sit          11:04AM

11    down and not take up the Court's time.

12         MR. EICHEL:  I think the motion is unnecessary.  I

13    think law enforcement cooperates with us at our

14    request.  So I don't see a problem with that.  I do

15    find it kind of curious that the State agency, we

16    requested their records and they are fighting that.  I

17    don't understand.

18         MR. PORTER:  I want to speak to that last -- the

19    prosecution agrees that it should have the cooperation

20    of every state agency possessing information relevant         11:05AM

21    to Davis.  This obviously includes the DRC.  They

22    aren't involved in the prosecution.  I mean, do we get

23    records that they have on the postal inspector?  That

24    is just a red herring.  We have said all along we have

25    those records.  We don't need you to enter an order for

JILL M. CUTTER, RPR
(513) 785-6596

1    the prosecution to get a copy of --

2         THE COURT:  I can't even address that issue.

3         MR. PORTER:  Well, they are the ones that went

4    there, Your Honor.

5         THE COURT:  Well, I understand and just so it is

6    clear, I wasn't addressing it in their response.  I am

7    not addressing it in yours.  That is a matter that is

8    before the Ohio Supreme Court at this point in time.

9    My interpretation of the case law is that I am without

10   authority to act on that narrow issue until the            11:06AM

11   appellate issue is resolved.

12        MR. PORTER:  And the prosecutor raised the issue

13   of why I filed the motion.  Most of my practice is in

14   federal court looking at these cases.  I was involved

15   in the case out of Hamilton County several years ago

16   that took I think about a decade to litigate.  It

17   turned out that the police had not turned over most of

18   their file, they only turned over stuff that was

19   helpful.  That individual that we were representing in

20   that case is now the 122nd person to walk off death row   11:07AM

21   in this country a free man.  So that is the purpose of

22   filing this motion.

23        THE COURT:  Thank you, Mr. Porter.  Similarly that

24   matter will be taken under advisement.

25        MS. COOK-REICH:  K I believe is the same thing as

| | |
|---|---|
| 1 | G, which we have already dealt with. We would like to |
| 2 | address L and N tomorrow as we have some witnesses that |
| 3 | I didn't think we would get to today. I didn't want |
| 4 | them sitting here all day. Rather than deal with N, |
| 5 | which is the motion for funding which really relates to |
| 6 | P, which is a motion on the lethal injection, I would |
| 7 | like to skip O and come back to P and N if I could. |
| 8 | And O is the motion to transcribe Grand Jury |
| 9 | proceedings and Mr. Porter will -- |
| 10 | MR. PORTER: It's a simple motion. It doesn't ask |
| 11 | that we get access. It just asks that it be |
| 12 | transcribed so if an issue comes up, and we request the |
| 13 | Court to look at it, this Court won't be put in a |
| 14 | position of, for instance -- and I am not trying to be |
| 15 | presumptuous. I have been involved in some cases where |
| 16 | it wasn't transcribed. There was a jury. The judge |
| 17 | didn't want to wait around for it to be transcribed, |
| 18 | and hence, the case just got continued on. All we are |
| 19 | asking is that it be transcribed. |
| 20 | THE COURT: All right. Anything? |
| 21 | MR. OSTER: Very simply, obviously the Court is |
| 22 | well aware of the particularized need standard. "If" I |
| 23 | don't believe qualifies as a particularized need. I |
| 24 | also think the case State vs. Davis, 88, which is 38 |
| 25 | Ohio, which is the site, Ohio State 3rd 361 that issue |

11:07AM

11:08AM

| | |
|---|---|
| 1 | was raised. It's in our motion as a footnote one, |
| 2 | where they previously argued to the Ohio Supreme Court |
| 3 | Grand Jury transcript should have been disclosed only |
| 4 | to have the Court reject that argument. And we ask |
| 5 | again the Court to reject it as the Ohio Supreme Court |
| 6 | did. |
| 7 | MR. PORTER: I am back to we aren't asking it to |
| 8 | be disclosed to us. We are asking that it be |
| 9 | transcribed. Is it yes or no? Are you objecting to it |
| 10 | being transcribed? |
| 11 | MR. OSTER: Yes. |
| 12 | MR. PORTER: And, you know, what is real |
| 13 | interesting is they gave -- they transcribed it. They |
| 14 | gave it to the federal district court judge and they |
| 15 | are here today telling you they won't transcribe it. I |
| 16 | have problems with that. |
| 17 | THE COURT: You know more about it than I do at |
| 18 | this point. I am not aware that it has been |
| 19 | transcribed and presented to anyone else, but |
| 20 | obviously, I understand what your request is, that it |
| 21 | is simply to have it transcribed and ready. I |
| 22 | understand your response and that matter will be taken |
| 23 | under advisement. |
| 24 | MR. PORTER: Well, we would request the Court's |
| 25 | permission to submit one additional exhibit in support |

11:09AM (line 10)

11:09AM (line 20)

1          of this.

2                  THE COURT:  Okay.  Well, not at this time?

3                  MR. PORTER:  No, we just want to submit an

4          additional exhibit which if we could have a half hour

5          to find it.

6                  MS. COOK-REICH:  We thought we were going to get

7          to that tomorrow.

8                  THE COURT:  That's fine.

9                  MR. OSTER:  The only thing that I would say is

10         there has been a lot of mention of, well, the State          11:10AM

11         could do this or could do that or a lot of other

12         things.  There are rules out there that the State is

13         following.  We don't see the need not to follow those

14         rules.  Obviously some of those things are there for a

15         reason.

16                 THE COURT:  There is no jury here.  I mean, I

17         understand what the law is.  I understand what the

18         requirements of counsel are.  I understand discretion.

19         I understand those issues, and I am taking all of that

20         into consideration.  All right.  Were you going to          11:10AM

21         address P and then N?

22                 MS. COOK-REICH:  Yes, Your Honor.

23                 THE COURT:  Because I guess I had one issue that I

24         -- I had a question before we got into it, because I

25         didn't note that it was raised by either side, but my

JILL M. CUTTER, RPR
(513) 785-6596

1    preliminary question in every case that I reviewed

2    involving challenges to either Ohio's lethal injection

3    protocols or other states, it is always been a position

4    where the person who raised the issue has been a person

5    who has actually been sentenced to death and in this

6    case, we don't know -- we are not in that posture.

7         The death sentence has been vacated.  It has been

8    remanded for resentencing.  It is one option at this

9    point as we stand here among three.  And I guess my

10   first question is, is there proper standing at this          11:12AM

11   point to raise the issue?

12        Now, I understand that Judge Burge in the Rivera

13   case did, but I mean, that is not authority that is

14   binding on the Court.  I guess I am interested is there

15   any appellate authority or Supreme Court authority or

16   federal authority, where there has been an instance

17   where a person who has not been sentenced to death has,

18   you know, been found to have standing to challenge the

19   death penalty?

20        MR. PORTER:  The Court raises a good issue.  I can    11:12AM

21   give the Court some authority.  It's not directly on

22   point.  The Rivera case has an interesting history in

23   that -- and I don't know if the Court has had an

24   opportunity meet with Judge Burge or not.

25        THE COURT:  I have not.  I know other -- I believe

JILL M. CUTTER, RPR
(513) 785-6596

87

```
 1      I have met other judges from Lorain County, but not
 2      Judge Burge.
 3          MR. PORTER:  And I understand it is backhanded
 4      authority, so if the Court would just give me a minute
 5      to address this issue.  As Judge Burge announced, he
 6      was going to hold the hearing.  He then entered a
 7      discovery order for DRC to turn over specific material
 8      so the hearing could go forward.  The Lorain County
 9      prosecutor then sued Judge Burge in the Ohio Supreme
10      Court to preclude him from going forward with a hearing      11:13AM
11      on lethal injection.
12          The Ohio Supreme Court denied that motion.
13      Whether that is actually a ruling on standing, if the
14      Court would want additional briefing, I am sure Ms.
15      Cook and I would submit additional briefing on the
16      issue.  But that is the best I can offer this Court.
17      And I understand -- I am sorry, Your Honor, I misspoke.
18      It is also my understanding -- and I can't give you the
19      Judge's name.  I should be able to.  I apologize -- is
20      that one of the Mahoney Common Pleas Court judges is      11:14AM
21      now conducting a hearing or has conducted the hearing
22      in regard to the matter.
23          THE COURT:  In a status that is --
24          MR. PORTER:  Pretrial.
25          THE COURT:  Okay.
```

JILL M. CUTTER, RPR
(513) 785-6596

1      MR. PORTER:  And other than that, if the Court
2   would like additional briefing, we certainly welcome
3   the opportunity.
4      THE COURT:  The reason I asked the question is I
5   was looking at this and thinking that obviously, you
6   know, there is -- his sentence has not been determined
7   obviously.  That is the critical issue that this Court
8   is going to have to determine, whether again it is with
9   participation of a jury or through a three-judge panel,
10  because that issue has not been resolved yet.  But you     11:15AM
11  know, in Baze vs. Rees, just the first page,
12  "Petitioners, convicted murderers, sentenced to death
13  in Kentucky State Court," and as I went through and did
14  a Westlaw search, every case I found out of every
15  jurisdiction it was -- the lethal injection protocol
16  was being challenged by individuals who had been
17  sentenced to death, not by someone in a pretrial
18  posture or someone -- I certainly didn't find any cases
19  where there was a situation like this because I think
20  it is an unusual, like I said, an unusual procedural     11:15AM
21  posture.  I did note in State vs. Huertas, 51 Ohio St.
22  3rd. 22, on -- and again it is not directly on point,
23  but in this case, under section nine, miscellaneous
24  issues, the last paragraph on page 14 -- well, no, I
25  guess that is not the proper page.  Let me see.  Let me

| | |
|---|---|
| 1 | get the correct page cite. Looks like it would be on |
| 2 | page 32 of the actual decision. It says, "In a 17th, |
| 3 | 18th, 20th and 21st propositions of law appellant |
| 4 | attacks the constitutionality of Ohio's capital |
| 5 | punishment scheme and these arguments have been |
| 6 | rejected in previous cases. And they cite Spisak, |
| 7 | Poindexter, Steffen, Buell, Jenkins. Then the next |
| 8 | line, "In addition, appellant has no standing to attack |
| 9 | the death penalty because we have vacated his death |
| 10 | sentence." Then in a 9th District case, State vs. |
| 11 | Caldwell, again, it is not -- it was an assignment of |
| 12 | error. It says, "Caldwell argues that the aggravated |
| 13 | murder charge should have been dismissed because the |
| 14 | death penalty is unconstitutional. Caldwell does not |
| 15 | have standing to attack the death penalty because he |
| 16 | was not sentenced to the death penalty." So it's not |
| 17 | exactly the same situation here, but it says, "This |
| 18 | Court will not issue an advisory opinion as it is |
| 19 | beyond the scope of proper judicial authority." And |
| 20 | they overruled that assignment of error. |
| 21 | In State vs. Brooks out of the 8th District, 1991 |
| 22 | decision, that is similar to the last one. It talks |
| 23 | about, "Appellant argues in his 13th, 19th and 20th |
| 24 | assignment of error issues which challenge the |
| 25 | constitutionality of the death penalty statute, |

11:16AM

11:17AM

JILL M. CUTTER, RPR
(513) 785-6596

1  appellant in his brief states the reason he argues the

2  death issues albeit he was not sentenced to death, is

3  because quote the specter of the death penalty

4  permeated the entire trial proceeding."

5      The Court goes on to say there is well-settled

6  rule of law that generally a person only has standing

7  to attack the constitutionality of rules and

8  regulations that have affected his interest, those that

9  have been applied to him. And it cites McNea vs.

10  Garey, which is a federal case out of the northern

11  district and then Akron Board of Education vs. State

12  Board of Education, a 6th Circuit case. They say the

13  constitutionality of state statute may not be brought

14  into question by one who is not within the class

15  against whom the operation of the statute is alleged to

16  have been unconstitutionally applied and who has not

17  been injured by its alleged unconstitutional provision.

18  Because appellant did not receive the death penalty is

19  not a member of the class claimed to be offended by the

20  challenges statute, hence he lacks standing.

21      Again, I understand the distinction factually from

22  this case, but I am concerned about the extent to which

23  it is instructive.

24      MR. PORTER: Would the Court like additional

25  briefing?

11:18AM (line 10)

11:18AM (line 20)

```
 1          THE COURT:  You know, I think it may be helpful.
 2     I am not trying to make work, but it appears to me that
 3     in looking at the issue that would be the critical
 4     concern and, of course, I am not sure to the extent
 5     that this case would have any factual difference from
 6     Rivera, I mean, that wasn't appealed.  I noticed -- I
 7     looked up the notice of appeal as to the 9th District.
 8     It wasn't to the Ohio Supreme Court, so I don't know
 9     that we would receive any dispositive ruling from that
10     court in time to impact us or not, but it seems to me
11     that there may be -- if indeed there is a standing
12     issue, it may behoove all of us to wait and see whether
13     it is an issue in the case and in the meantime, whether
14     there is further instruction provided out of that
15     appeal with the idea that should it become an issue, we
16     can then take a look at whether this is the proper
17     vehicle or whether it really should be separate.
18     Because in Baze, for example, they filed a separate
19     suit, the petitioners in that case, they filed a
20     separate suit in state court asserting that the
21     Commonwealth's lethal injection protocol violates the
22     8th Amendment being cruel and unusual punishment.  And
23     there the state trial court I believe had a seven-day
24     trial with 20-some odd witnesses, and all of that to
25     address those issues.  And I understand that your
```

11:19AM

11:20AM

JILL M. CUTTER, RPR
(513) 785-6596

1  motion, as does Judge Burge's decision, also invokes
2  the separate state statute and I understand those
3  issues are at play, so I am not suggesting that, you
4  know, by looking at their standing in Baze, that Baze
5  is necessarily completely dispositive of the issue.  I
6  mean, we're not there yet to be making those
7  determinations.
8       But I guess I would want to be sure given the
9  limited, you know, scope of judicial authority, that,
10  you know, we are in a position where we are -- he has        11:21AM
11  standing to raise the issue and I have proper
12  jurisdiction to determine the issue and that we don't
13  spend hours and hours litigating an issue that is
14  ultimately going to be determined to have been
15  improperly before the Court at that time.
16       MR. PORTER:  Two points and they certainly don't
17  carry the day or anything like that.  I don't know if
18  the Court would like an update of where Rivera is right
19  now.  That case is up on appeal.
20       THE COURT:  I saw that there was a notice of        11:22AM
21  appeal filed July 3rd.  That was the last thing that I
22  saw.
23       MR. PORTER:  The State has asked for expedited
24  briefing, that has been opposed.  I know the Court went
25  ahead and set a regular briefing schedule.  And the

1    other is just -- off the top of my head, is just I

2    wonder if there isn't some analogy here and I don't

3    know if the Court has had to do an Adkins hearing yet

4    for purposes of a death penalty case.  In the ones I

5    have been involved with, the Court has done the Adkins

6    hearing prior to the mitigation hearing; arguably

7    mental retardation, some logic there hopefully, the

8    equivalent of a standing issue.

9         THE COURT:  I just didn't see that issue raised at

10   this point in time.  Have you raised an Adkins issue?    11:23AM

11        MR. PORTER:  We weren't here.  I'm just saying --

12        THE COURT:  By analogy?

13        MR. PORTER:  By analogy is that the Supreme Court

14   said in Adkins that you couldn't be sentenced to death

15   or you couldn't be executed rather, excuse me, if you

16   were mentally retarded.  At least some of the cases,

17   the ones I have been involved with, they have done the

18   hearing prior to the actual mitigation.

19        THE COURT:  I guess the distinction that I see off

20   the top of my head is that that is a factor or           11:23AM

21   characteristic about an individual defendant that can

22   be determined prior to trial or prior to the mitigation

23   phase in a case.  Whereas, this really doesn't deal

24   with any particular characteristic of this defendant.

25   It deals with the constitutionality of the protocol

| | |
|---|---|
| 1 | used by the State in its lethal injection procedures. |
| 2 | And the only way that this defendant would be affected |
| 3 | by that is if the sentence of death were ultimately |
| 4 | imposed in the case. And as I stated, that is |
| 5 | certainly not a foregone conclusion because that is the |
| 6 | entire purpose of us coming back here. And that |
| 7 | whoever the sentencing authority is, is going to have |
| 8 | to engage in the appropriate weighing pursuant to |
| 9 | 2929.03 before any determination like that is made. |
| 10 | MR. PORTER: And one additional update and I am |
| 11 | sorry if I am going on, I don't mean to take up the |
| 12 | Court's time. |
| 13 | THE COURT: Does the State have anything -- |
| 14 | MR. PORTER: There is one additional ruling. I |
| 15 | haven't gotten a chance to read it. I will -- it came |
| 16 | out yesterday, and Ms. Cook has been forcing me this |
| 17 | week to drive to and from the city every day so far |
| 18 | this week, so I haven't had a chance to read it. Judge |
| 19 | Frost has granted an evidentiary hearing in the middle |
| 20 | of December for purposes of -- federal district for |
| 21 | purposes of determining the applicability of Rees to |
| 22 | Ohio procedures that -- |
| 23 | THE COURT: All right. |
| 24 | MR. OSTER: Your Honor, just briefly, and probably |
| 25 | confusing in retrospect, in looking back at the way the |

11:24AM

11:25AM

```
1           State filed their motions, motion C, which is now P,
2           the State filed more to try to prevent an evidentiary
3           hearing on the issue as opposed to really going into
4           the issue itself.  N, where it was requested for --
5                THE COURT:  Right.  It --
6                MR. OSTER:  We do talk about whether or not the
7           issue is ripe if it goes toward the standing issue.
8           Obviously the standard in -- for something to be ripe,
9           it can't be a future event that may not occur, that is
10          anticipated, or may not occur at all.  Standing at this
11          point --
12               THE COURT:  Ripeness issues.
13               MR. OSTER:  -- justiciable by this Court.
14               THE COURT:  And those are concerns that I had as I
15          was looking at it.  It was just something that I felt
16          perhaps didn't get the initial attention they should
17          have.  I am not finding fault.  I am just -- I looked
18          at it for hours before it occurred to me that wait a
19          minute, maybe we better be looking at that issue first.
20          So what I would suggest is perhaps that we have some
21          additional research and authority presented on that
22          issue to determine whether or not that is something
23          that should be heard prior to the mitigation phase or
24          if it is something that would be entertained by this
25          Court subsequently, or if it is something that, in
```

11:26AM (line 10)

11:26AM (line 20)

| | |
|---|---|
| 1 | fact, that should be the subject of a separately filed |
| 2 | suit if appropriate. I mean, I'm not sure which of |
| 3 | those options or if that even encompasses the entire |
| 4 | universe of options. I think it might be pertinent to |
| 5 | have a little further research on that issue. |
| 6 | MR. PORTER: Would the Court set a date? I do |
| 7 | better if the Court sets a date for purposes of |
| 8 | submitting additional briefing. |
| 9 | THE COURT: That is fine. Is it something that we |
| 10 | want to do in terms -- is there any reason why you |
| 11 | wouldn't be able to file simultaneous argument on the |
| 12 | issue? It is not something I see where you would |
| 13 | necessarily go back and forth on it. |
| 14 | MR. OSTER: No objection. |
| 15 | MR. PORTER: We have no objection. |
| 16 | THE COURT: What is an appropriate amount of time, |
| 17 | given your schedules? |
| 18 | (All counsel confer off the record.) |
| 19 | THE COURT: Has counsel had an opportunity to |
| 20 | discuss what they would propose as a date for |
| 21 | submitting further authority? |
| 22 | MR. OSTER: September 17th seemed to be agreeable |
| 23 | to both sides. |
| 24 | THE COURT: All right. Joe, can I have a pretrial |
| 25 | order? I will set that as a separate date. And then I |

11:27AM

JILL M. CUTTER, RPR
(513) 785-6596

97

| 1 | assume we are going to want to argue that issue as |
| 2 | well, correct? |
| 3 | MS. COOK-REICH: Yes, Your Honor. |
| 4 | MR. PORTER: Yes. |
| 5 | THE COURT: All right. Looking at the Court's |
| 6 | schedule in October, it seems like one day is just as |
| 7 | bad as another. I would like perhaps to deal with it |
| 8 | prior to me getting into the O'Hara case. How about |
| 9 | early in the afternoon on Friday, October 10th, after I |
| 10 | conclude my criminal docket? That would give Mr. |
| 11 | Porter some time to drive down that day and, you know, |
| 12 | again being an oral argument issue on this one issue, I |
| 13 | don't see where we would need to set aside a large |
| 14 | block of time. I mean, I will put it down as an hour |
| 15 | of docket time. Don't know that we would use all of |
| 16 | that. |
| 17 | MS. COOK-REICH: That is fine with both of our |
| 18 | calendars, Your Honor. |
| 19 | MR. PORTER: Just so I am adequately prepared, is |
| 20 | this Court going to want argument just on the standing |
| 21 | issue that day or will it want argument on the entire |
| 22 | kit and caboodle for lack of a better term. |
| 23 | THE COURT: I feel that -- I mean, you have |
| 24 | already briefed pretty thoroughly the other issues, so |
| 25 | I think that any argument that you would have presented |

11:31AM (line 10)

11:31AM (line 20)

1    today on this, be prepared -- if it does turn out that

2    he has standing, be prepared to go forward with those

3    arguments as well.  And we will just defer further

4    action on this motion P and N until that date.  I am

5    going to set that at 1:30 PM.  Will counsel approach

6    and sign this pretrial order just setting that date?

7        I'm going to be doing my own research also, so at

8    that point we can determine that issue with some

9    finality that day, but in the event assuming arguendo,

10   that there is a standing or a ripeness issue that would       11:34AM

11   prevent the Court from considering it prior to

12   sentencing, I would also like counsel to contemplate

13   whether it would be appropriate to have some type of

14   hearing after a verdict on sentence before this Court

15   or whether it is really an issue that like many of

16   these other cases is properly brought as a separate

17   action either in the state or federal court.

18       It looks like Baze vs. Rees in state court in

19   Kentucky, my research showed that a lot of the cases

20   are brought up either on habeas or a 1983 action if        11:34AM

21   they are only challenging the protocol itself.  It

22   looked like there were some different vehicles and I

23   really haven't gotten that far to know which would be

24   appropriate.  So any input counsel would have on that

25   issue would assist the Court.

JILL M. CUTTER, RPR
(513) 785-6596

```
 1          Counsel, given that we are going to be addressing
 2     L and M tomorrow, is there anything further that we
 3     need to take up today regarding the motions that we
 4     have already discussed or any other motions?
 5          MS. COOK-REICH:  Your Honor, Mr. Porter is trying
 6     to be very congenial and he is suggesting a possible
 7     resolution relative to our motions on the March 31st
 8     order, which are now up in the Ohio Supreme Court.
 9     Obviously, you have made statements that because that
10     is pending there, you won't touch that particular
11     issue.  We certainly understand that.  We are
12     attempting to try to resolve that in the event that
13     they agree that it is not a final appealable order, Mr.
14     Porter might be requesting an evidentiary hearing on
15     that, which is what we would have liked before it went
16     that far as to whether or not they are so entitled to
17     those records.  He is suggesting a possible resolution
18     that we would certainly consider withdrawing our
19     pending motion and appeal before the Ohio Supreme Court
20     if we are granted that evidentiary hearing which might
21     put this back before the Court.
22          THE COURT:  Well, thank you for advising me.
23     Again, I don't feel comfortable commenting on it one
24     way or the other.  But thank you for advising me that
25     you're engaged in that analysis.  Obviously, if it was
```

11:36AM

11:37AM

JILL M. CUTTER, RPR
(513) 785-6596

100

```
 1 ║  a matter that I had authority to act on, I would
 2 ║  consider it appropriately.
 3 ║      Is there anything else, then, or are we going to
 4 ║  be back tomorrow morning on L and M?
 5 ║      MR. OSTER:  There is nothing on behalf of the
 6 ║  State.  We have no motions.
 7 ║      MS. COOK-REICH:  Your Honor, if I could have just
 8 ║  one second.  I have a notice from a witness that said
 9 ║  that he would be available I thought it was 10:00
10 ║  tomorrow instead of 9:00.  Would the Court indulge us     11:37AM
11 ║  and allow us to begin at 10:00?
12 ║      THE COURT:  Any objection?
13 ║      MR. OSTER:  No, Your Honor.
14 ║      THE COURT:  All right.  Let's restart tomorrow at
15 ║  10:00.
16 ║      MS. COOK-REICH:  Thank you, Your Honor.
17 ║      MR. OSTER:  Thank you, Your Honor.
18 ║      THE COURT:  In the meantime, we will be adjourned
19 ║  on this matter.  We will see everybody here tomorrow
20 ║  morning at 10:00.                                          11:38AM
21 ║      (Proceedings concluded at 11:38 a.m.)
22 ║
23 ║
24 ║
25 ║
```

JILL M. CUTTER, RPR
(513) 785-6596

101

```
 1
 2   STATE OF OHIO          )
 3                          )  SS.   REPORTER'S CERTIFICATE
 4   COUNTY OF BUTLER )
 5              I Jill M. Cutter, RPR, do hereby certify that I am
 6   a Registered Professional Reporter and Notary Public within
 7   the State of Ohio.
 8              I further certify that these proceedings were
 9   taken in shorthand by me and by electronic means at the time
10   and place herein set forth and was thereafter reduced to
11   typewritten form, and that the foregoing constitutes a true
12   and accurate transcript, all done to the best of my skill and
13   ability.
14              I further certify that I am not related to any of
15   the parties hereto, nor am I in any way interested in the
16   result of the action hereof.
17              Dated at Hamilton, Ohio, this 29 day of March,
18   2009.
19
20
21                             Jill M. Cutter, RPR
                               Official Court Reporter
22                             Butler County Common Pleas
                               Hamilton, Ohio   45011
23
24
25
```

JILL M. CUTTER, RPR
(513) 785-6596