1

FILED

2009 APR -2 PM 2: 20

CINDY CARPENTER
BUTLER COUNTY
CLERK OF COURTS

1       COURT OF COMMON PLEAS

2       BUTLER COUNTY, OHIO

3       -----------------------------------

4    STATE OF OHIO,

                        CASE NO. CR83-12-0614
5         Plaintiff,

                        HONORABLE ANDREW NASTOFF
6

7              vs.

8    VON CLARK DAVIS,

9         Defendant.

10       -----------------------------------

11

12

13

14

15              - - -

16           MOTION HEARING

17      TRANSCRIPT OF PROCEEDINGS

18         August 28, 2008

19

20              - - -

21

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

2

```
 1 ‖ APPEARANCES:

 2 ‖

 3          On behalf of the plaintiff:

 4               MICHAEL OSTER, ESQ.
                 DAN EICHEL, ESQ.
 5               Assistant Prosecuting Attorneys
                 315 High Street, 11th Floor
 6               Hamilton, Ohio 45011

 7     On behalf of the defendant:

 8               MELYNDA COOK-REICH, ESQ.
                 1501 First Avenue
 9               Middletown, Ohio

10               RANDALL PORTER, ESQ.
                 Office of the Ohio Public Defender
11               250 East Broad Street, Suite 1400
                 Columbus, Ohio 43215

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | TRANSCRIPT OF PROCEEDINGS |
| 2 | Thursday, August 28, 2008 |
| 3 | * * * * * * * * * * * * * * * |
| 4 | THE COURT:  We're back on record in State of Ohio |
| 5 | vs. Von Clark Davis, CR83-12-0614.  Again for the |
| 6 | record, Von Clark Davis appears in person with counsel |
| 7 | Randall Porter, Melynda Cook-Reich.  And on behalf of |
| 8 | the State of Ohio their assistant prosecutors Dan |
| 9 | Eichel and Mike Oster appear as well.  Good morning to |
| 10 | you counsel and Mr. Davis. |
| 11 | We left off yesterday, it was my understanding |
| 12 | that there were witnesses that had been subpoenaed for |
| 13 | today's date in anticipation that we wouldn't get to it |
| 14 | yesterday regarding the memorandum concerning Mr. |
| 15 | Davis' right to a jury trial with respect to |
| 16 | resentencing and also on the motion to preclude the |
| 17 | State from seeking the death penalty, which is pleading |
| 18 | L and M if I remember correctly.  So it's my |
| 19 | understanding we are going to proceed on those matters. |
| 20 | I will also note for the record that I did receive |
| 21 | the supplemental authority in regard to pleading P, |
| 22 | which attaches the Cooey vs. Strickland decision and |
| 23 | then I will acknowledge receipt of a notice of filing |
| 24 | of exhibits in support of motion O.  I have not had an |
| 25 | opportunity to look at it yet.  It was just handed to |

10:05AM

10:05AM

JILL M. CUTTER, RPR
(513) 785-6596

| 1 | me, but I have received it and I will obviously review |
| 2 | it prior to rendering a decision on that issue. |
| 3 | MR. PORTER: And those two pleadings, I think they |
| 4 | were promises of things I told the Court I would file |
| 5 | yesterday, so they are more cleaning up of yesterday's |
| 6 | record. And I have one other issue if we could clean |
| 7 | up the record from yesterday. |
| 8 | THE COURT: Sure. |
| 9 | MR. PORTER: And I know the Court doesn't want to |
| 10 | revisit the motion to suppress issue. I was fumbling |
| 11 | through my papers for the citation yesterday to a 6th |
| 12 | Circuit case. I was unable to locate it despite my |
| 13 | fumbling for a lengthy period of time. The reason I |
| 14 | couldn't find it was because it was on my desk at home |
| 15 | or desk at the office. The citation I wanted to give |
| 16 | the Court was Westside Mothers vs. -- I'm going to |
| 17 | spell it because I am not good with pronunciation -- |
| 18 | O-L-S-Z-E-W-S-K-I, 454 Fed 3rd, 532 pinpoint site 539, |
| 19 | 6th Circuit, 2006. Yesterday if the Court may remember |
| 20 | -- I understand the Court has a million cases -- is I |
| 21 | was trying to reference how the 6th Circuit would read |
| 22 | the 6th Circuit's own law with respect to what issue |
| 23 | the mandate would pertain to and what issues the |
| 24 | mandate would not pertain to, whether the opinion would |
| 25 | pertain to, and the 6th Circuit case that I just cited |

10:06AM

10:07AM

| | |
|---|---|
| 1 | the Court to address that issue. |
| 2 | THE COURT: Do you have a copy of that case for |
| 3 | the Court? |
| 4 | MR. PORTER: I do not, Your Honor. I could |
| 5 | provide the Court one. |
| 6 | THE COURT: If you don't have one ready, we can |
| 7 | get our own copy of it. That pertains to the issue |
| 8 | that you suggest that that would provide additional |
| 9 | support for the idea that you could be addressing the |
| 10 | suppression of the pretrial identification and trial |
| 11 | identification on the guilt phase of the original trial |
| 12 | during this remand for -- during this remand? |
| 13 | MR. PORTER: And I'm not trying to mince words |
| 14 | with the Court or to phrase it slightly different that |
| 15 | we could address the Fifth Amendment motion to suppress |
| 16 | issue with respect to the degree that testimony would |
| 17 | come in with regard to the mitigation phase. |
| 18 | THE COURT: All right. Thank you, Mr. Porter. |
| 19 | Mr. Eichel? |
| 20 | MR. EICHEL: Just another housekeeping matter, |
| 21 | just to add to the number of cases on your desk, I am |
| 22 | sure -- I have two copies given to opposing counsel |
| 23 | this morning, two copies -- or a copy of two cases. |
| 24 | One is Sanistaj vs. Burt, which is cited in the Davis |
| 25 | vs. Coyle majority decision, the copy I think might be |

IMAGED

10:08AM

10:08AM

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 897

1    instructive today on issue L, as well as a case I found

2    this morning that discusses State vs. McGee, a Court of

3    Appeals decision, which was cited in as well as Davis

4    vs. Coyle and that case is State vs. Martin out of the

5    12th District.

6        THE COURT:  Thank you.  I have read the McGee

7    decision, but I don't think I have seen that one.  All

8    right.  With those housekeeping matters having been

9    tended to, are we ready to proceed at this time with --

10   which motion do you wish to address first, L or N?          10:10AM

11       MR. PORTER:  They were filed as separate pleadings

12   and I will explain that to the Court later on.  The

13   testimony will really, I think, go to the first motion,

14   although it could overlap to the second.  We are ready

15   to proceed.

16       THE COURT:  The first motion meaning the one with

17   regard to a jury trial with respect to resentencing?

18       MR. PORTER:  Yes.

19       THE COURT:  All right.

20       MR. PORTER:  If the Court had no objection since     10:10AM

21   we have witnesses subpoenaed if we could do this

22   testimony prior to providing argument on the motions.

23   Would that be acceptable, Your Honor?

24       THE COURT:  That would be my preference.

25       MR. EICHEL:  Without belaboring the point for the

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 898

1    same reasons we objected to testimony on the motions

2    yesterday, same basis, we think the State's position as

3    a matter of law it need not concern any testimony, no

4    matter what testimony is -- testimony is

5    inconsequential to the outcome of these motions as a

6    matter of law.

7         THE COURT:  And it may very well end up being the

8    case.  However, I just think it is prudent at this

9    point in time to allow the testimony to be presented,

10   if nothing else to be considered again as a proffer for        10:11AM

11   subsequent review perhaps to be considered

12   substantively if the Court were to disagree with your

13   analysis.

14        However, I do understand your position is that

15   under res judicata and the law of the case, since the

16   issue with regard to the jury waiver has been litigated

17   and been affirmed on appeal, that I do not have the

18   authority to reconsider that because I don't have the

19   authority essentially to overrule a higher court in

20   layman's terms, so to speak.                                   10:11AM

21        MR. EICHEL:  We are all on the same page.

22        THE COURT:  I understand that is your position and

23   I understand the argument, but I think that the -- I

24   just think it is a more prudent course at this point in

25   time to allow the testimony to be presented to give the

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 899

1    record eyes as to what it is that they are offering,

2    and then also, you know, to potentially consider it in

3    the event that I should find merit to their motion.

4         MR. EICHEL:  Fair enough.

5         MR. PORTER:  I want to make one quick response.

6    The Court, and I know you understand this and please, I

7    don't want to belabor a point, but the higher court in

8    this case is the 6th Circuit.

9         THE COURT:  Well, there are several.  I am pretty

10   low on the overall rung here.                        10:12AM

11        MR. PORTER:  With respect to this case, the higher

12   court is the 6th Circuit.  And that is the opinion you

13   are dealing with.  And clearly, that Court has said for

14   the trial Court to address the jury waiver issue.  I

15   don't know how it could not be more clear.

16        THE COURT:  I read Davis vs. Coyle.  I read the

17   comments by Judge Daughtrey -- is that how you

18   pronounce it -- indicating, you know, that she felt

19   that it would be an issue on remand and that she was

20   providing some guidance in dicta, as to how it ought to  10:13AM

21   be viewed and I have read that carefully.  I read the

22   case that she cited to and I am prepared to hear the

23   arguments and so I understand that.

24        MR. PORTER:  Maybe a question from the Court would

25   help me here, and I mean that respectfully, to try to

```
 1          fully articulate the issues.  Given Judge Daughtrey's
 2          opinion that it would be an issue on the case that was
 3          remanded, I guess I am unclear of how in good faith you
 4          could say that is part of my res judicata.
 5               THE COURT:  I'm not saying that it is.  I haven't
 6          ruled on the issue.  I recognize that that is their
 7          argument.  That is all.  I have not rendered a decision
 8          on any of these motions yet.  It is my intent to render
 9          a written decision in response to all of these motions.
10          I simply indicated that I understand pursuant to their
11          argument it would be error for me, in fact, to consider
12          really the motion.  However, I am not going to make a
13          determination on that at this point.  And given that I
14          have not made that determination, I think the more
15          prudent course is to hear the testimony.
16               MR. PORTER:  I mean, if it is going to be an
17          issue, certainly one of our options is to go back to
18          the 6th Circuit and have them issue an order to that
19          effect.
20               THE COURT:  I'm not going to tell you what you
21          need to do or not do.  You have to make your own
22          decisions in that regard.  I can tell you I read Davis
23          vs. Coyle and I can tell you that it is on remand for
24          resentencing, but I also read where they -- the Judge
25          elected to provide guidance on issues that really
```

10:14AM

10:14AM

JILL M. CUTTER, RPR
(513) 785-6596

1   weren't before the Court at that point in time.  I also

2   read the concurring opinion of the other judge that did

3   not look favorably upon Judge Daughtrey's doing so and

4   I have considered all of that, and all of it is

5   something that I will take into consideration.  All I

6   am saying, is you have witnesses here.  Call your

7   witness.

8          MR. PORTER:  With that, Your Honor, we would call

9   Mr. Davis.  Mr. Davis will not be testifying as to the

10  facts of the case, so he would be reserving his Fifth          10:15AM

11  Amendment right.  He will be testifying regarding

12  conversations he had with his attorney regarding his

13  jury waiver.

14          We understand to the extent that he testifies to

15  those conversations, it is a waiver of the privilege,

16  but only to that extent.  Call Mr. Davis.

17          THE COURT:  Mr. Davis.

18                      VON CLARK DAVIS

19  Having been first duly sworn, was examined and testified under

20  oath as follows:                                               10:16AM

21                    DIRECT EXAMINATION

22  BY MR. PORTER:

23      Q.   State your name for the record.

24      A.   Von Clark Davis.

25      Q.   And is Clark your middle name --

JILL M. CUTTER, RPR
(513) 785-6596

11

```
 1          A.   Yes, it is.
 2          Q.   -- just for clarification of the record?
 3          A.   Yes, it is.
 4          Q.   And Von Clark Davis, the normal -- the way you
 5   spell it is the normal way people spell it?
 6          A.   Yes, it is.
 7          Q.   And your current address?
 8          A.   Ohio State Penitentiary, Youngstown, Ohio.
 9          Q.   And are you the defendant in this case?
10          A.   Yes, I am.                                          10:17AM
11          Q.   And I'm going to start by asking you some
12   background information.  First is, do you have a nickname
13   persons call you by?
14          A.   Red.
15          Q.   And how old are you, Red?
16          A.   Sixty-one.
17          Q.   And prior to being incarcerated, how far did you
18   go in school?
19          A.   GED.
20          Q.   And since you have been incarcerated, have you    10:17AM
21   obtained any additional education?
22          A.   Yes.
23          Q.   And could you tell the Judge what that additional
24   education is?
25          A.   Associate's degree in liberal studies and a
```

JILL M. CUTTER, RPR
(513) 785-6596

```
 1 ║  year-and-a-half of personnel management.
 2 ║      Q.   Did you, in obtaining your Associate's degree, did
 3 ║  you have any courses in constitutional law or a related area?
 4 ║      A.   No, I didn't.
 5 ║      Q.   Are -- I'm going to use the term jail house
 6 ║  lawyer.  Could you tell me what your understanding of that
 7 ║  term is?
 8 ║      A.   It's basically considered inmates helping other
 9 ║  inmates with their law work, their cases.
10 ║          THE COURT:  I have heard the term before.
11 ║      Q.   Have you served as a jail house lawyer to other
12 ║  individuals?
13 ║      A.   No.
14 ║      Q.   Have you, in fact, offered some suggestions to
15 ║  Melynda and I with respect to how to litigate your case?
16 ║      A.   No, I haven't.
17 ║      Q.   Have you forwarded suggestions from other people?
18 ║      A.   Yes, I have.
19 ║      Q.   And were those suggestions formulated by you?
20 ║      A.   Yes.
21 ║      Q.   Were they form -- did you come up with those
22 ║  suggestions?
23 ║      A.   No, I did not.
24 ║      Q.   I want to move ahead to the present case now.
25 ║  When you were charged in this matter, were you able to retain
```

10:18AM (line 10)

10:18AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

```
 1   counsel?
 2        A.   Yes.
 3        Q.   You hired the attorneys that represented you?
 4        A.   They were appointed to me.
 5        Q.   And could you identify for the Judge who those
 6   attorneys were?
 7        A.   Mr. Jack Garretson and Mr. Michael Shanks.
 8        Q.   And could you describe briefly your relationship
 9   with those attorneys?
10        A.   It was very good.                                    10:19AM
11        Q.   Did you have faith in those attorneys?
12        A.   Absolute faith.
13        Q.   And did you trust -- to what degree -- I'm sorry,
14   I am leading, Your Honor -- to what degree did you trust the
15   advice those attorneys gave you?
16        A.   Well, I should point out here that I had the
17   utmost confidence in Mr. Shanks and Mr. Garretson.  I relied
18   totally on their advice and their direction.  I felt
19   comfortable the way they was handling the case, and I accepted
20   that.  I thought they were for my best interests.  They showed  10:20AM
21   that, displayed that, from the very beginning.
22        Q.   At some point did it become an issue whether you
23   should waive your right to a jury trial or not?
24        A.   Yes, it did.
25        Q.   And who raised that issue with you?
```

```
1              A.   My attorneys.

2              Q.   And your attorneys being?

3              A.   Mr. Garretson and Mr. Shanks.

4              Q.   And prior to them raising that issue, what did you

5    think you were going to do for purposes of your trial?

6              A.   My knowledge at the time was it would be a jury

7    trial.  I was unaware that a three-judge panel existed at that

8    time.

9              Q.   Did, at some point, you make a decision to waive

10   your right to a jury trial?                                        10:21AM

11             A.   Yes, I did.

12             Q.   Prior to reaching that decision, did the attorneys

13   make any promises to you?

14             A.   There was never any promises.

15             Q.   And did you, in fact, waive your right to a jury

16   trial?

17             A.   Yes, I did.

18                  MR. PORTER:  Court's permission to approach

19             the witness for purposes of showing him Defendant's

20             Exhibit C, Your Honor?                                   10:22AM

21                  THE COURT:  Permission granted.

22             Q.   Would you please look at Defendant's Exhibit C?

23             A.   (Witness complies with request.)

24             Q.   Are you able to identify that?

25             A.   Yes.
```

JILL M. CUTTER, RPR
(513) 785-6596

```
 1              Q.   And could you tell the Judge what that Exhibit C
 2    is?
 3              MR. PORTER:  Your Honor, I have a copy.  Would the
 4         Court like a copy?
 5              THE COURT:  That would be helpful.
 6              MR. PORTER:  I should have offered you the
 7         exhibits yesterday, I'm sorry.
 8              THE COURT:  No apologies necessary.  I have
 9         actually seen this.  It is attached to one of the
10         motions as an exhibit.
11              MR. PORTER:  It is.  I didn't know if you had it
12         available, Your Honor.
13         Q.   (By Mr. Porter)  Could you please identify
14    Defendant's Exhibit C for the record and for the court
15    reporter?
16         A.   This is a jury waiver.
17         Q.   And whose jury waiver is that?
18         A.   Mine.
19         Q.   And whose name appears on that?
20         A.   My name is signed here.
21         Q.   And can you tell the Judge why you signed that?
22         A.   I signed it because I felt it was the best advice
23    given by my attorneys and I felt comfortable doing so.  I saw
24    no reason to question or challenge my own decision making at
25    the time.  They were, again, to my best interests and I took
```

                                    10:22AM

                                    10:23AM

```
 1 ║  their advice and signed the waiver.
 2 ║         Q.  And did you, in fact, appear in court and tell the
 3 ║  judges that you waived your right to a jury trial?
 4 ║         A.  Yes, I did.
 5 ║         Q.  Can you remember actually appearing there?
 6 ║         A.  Yes.
 7 ║         Q.  And did you tell the Judges you waive or Judge you
 8 ║  waive your right to a jury trial?
 9 ║         A.  Yes, I did.
10 ║         Q.  And why did you do that?                          10:23AM
11 ║         A.  It was -- again, I felt it was the best advice
12 ║  from my attorneys and that is why I signed it.
13 ║              MR. PORTER:  Could I have an opportunity to confer
14 ║         with counsel for a minute, Your Honor, please?
15 ║              THE COURT:  Yes.
16 ║              (Counsel defers with co-counsel off the record.)
17 ║              MR. PORTER:  Your Honor, we have no further
18 ║         questions.  Thank you for the opportunity.
19 ║              THE COURT:  Mr. Eichel, do you have questions?
20 ║              MR. EICHEL:  No questions at this time.          10:24AM
21 ║              THE COURT:  Mr. Davis, you can return to your seat
22 ║         at counsel table.
23 ║              THE DEFENDANT:  Thank you.
24 ║              MS. COOK-REICH:  Call Mike Shanks.
25 ║
```

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | MICHAEL SHANKS |
| 2 | Having been first duly sworn, was examined and testified under |
| 3 | oath as follows: |
| 4 | DIRECT EXAMINATION |
| 5 | BY MS. COOK-REICH: |
| 6 | Q. For the record, can you state your name, please? |
| 7 | A. My name is Michael Shanks. |
| 8 | Q. And your address? |
| 9 | A. My business address is 110 North Third Street, |
| 10 | Hamilton, Ohio. |
| 11 | THE COURT: Can you speak a little bit louder? |
| 12 | Q. You were trial attorney for Von Clark Davis, also |
| 13 | known as Red? |
| 14 | A. Along with Jack Garretson, that is correct. |
| 15 | Q. You were the initial attorneys on that for both |
| 16 | the 1983 and 84 case, as well as 1989 when it was sent back |
| 17 | for resentencing; is that correct? |
| 18 | A. That's correct. |
| 19 | Q. Ultimately in 1984 the case was tried before a |
| 20 | three-judge panel? |
| 21 | A. Yes, it was. |
| 22 | Q. At the time that the case was originally before |
| 23 | the trial court, can you relate to the Court the persons that |
| 24 | comprised your defense team? |
| 25 | A. Jack Garretson and I, my secretary. I believe Tim |

10:25AM

10:25AM

JILL M. CUTTER, RPR
(513) 785-6596

1    Evans was also helping us out and I believe that was it.

2         Q.    Other than yourself and Mr. Garretson, were there

3    any other attorneys, private investigators, social workers,

4    mitigation specialists, psychologists appointed or assigned to

5    assist you and Mr. Garretson in Von Clark Davis' defense?

6         A.    Not directly to assist us.  I believe Dr. Roger

7    Fisher was a psychologist and was appointed by the Court, but

8    I don't think he was appointed or given to us as an expert for

9    our purposes.

10        Q.    When the case came back to the Court in 1989, at          10:27AM

11   that time did you have any additional assistance such as a

12   mitigation specialist, social worker, an investigator,

13   psychologist to assist in Von Clark Davis' defense?

14        A.    If my recollection is correct, I believe we asked

15   for an additional psychologist or psychological review and I

16   believe that was turned down.

17        Q.    Okay.

18        A.    So the answer is, other than that, I don't think

19   we had any other assistance.

20        Q.    Mr. Shanks, you have had an opportunity to review     10:27AM

21   the American Bar Association's Guidelines for the Appointment

22   and Performance of Counsel at Death Penalty Cases as of 2003?

23        A.    I did.

24        Q.    Okay.  And specifically are you familiar with

25   Guideline 4.1?

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | MR. EICHEL: Your Honor, this appears to be way |
| 2 | beyond the scope of the jury waiver issue before the |
| 3 | Court. |
| 4 | THE COURT: All right. |
| 5 | MR. EICHEL: If it is before the Court. |
| 6 | MS. COOK-REICH: It goes to the information and |
| 7 | knowledge he had in order to provide that advice. |
| 8 | THE COURT: This is as of 2003, and you are asking |
| 9 | him about advice he gave in 1983 or '84? |
| 10 | MS. COOK-REICH: Yes, sir. There are several |
| 11 | cases from the United States Supreme Court in the 6th |
| 12 | Circuit that specifically indicate that the 2003 ABA |
| 13 | Guidelines are to be applied to cases back from the |
| 14 | 1980s, specifically -- |
| 15 | THE COURT: But even if that is the case, I mean, |
| 16 | obviously in 1984, he did not have knowledge of rules |
| 17 | that had not come out for 20 years. |
| 18 | MS. COOK-REICH: Absolutely. I can provide you a |
| 19 | line of cases that indicate even cases in the 1980s are |
| 20 | governed by the 2003 ABA Guidelines. |
| 21 | THE COURT: I mean, I am going to overrule the |
| 22 | objection. I am going to allow her to ask the |
| 23 | question. I am assuming you will -- |
| 24 | MS. COOK-REICH: I will wrap it up, clear it up. |
| 25 | THE COURT: Clear it up, right. |

10:28AM (line 10)

10:28AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

1          THE WITNESS:  I'm not familiar with it by section

2     number.  I am familiar with the basic guidelines.

3          Q.   (By Ms. Cook-Reich)  Okay.  And would it be fair

4     to say that obviously in 1984 you didn't have any knowledge of

5     2003 ABA Guidelines?

6          A.   That's true.

7          Q.   In regards to the ABA Guidelines relative to what

8     should comprise of a defense team in a death penalty case, did

9     you familiarize yourself with that?

10         A.   Yes.                                                        10:29AM

11         Q.   Would you agree, Mr. Shanks, that at the time of

12    your representation of Mr. Davis and at the time of advice

13    given to him as to the waiver of a jury trial in 1984, that

14    you did not have the requisite team as the ABA Guidelines set

15    forth?  Meaning you didn't have a defense investigator, you

16    didn't have a social worker, you didn't have a mitigation

17    specialist, you didn't have a psychologist specifically

18    assigned to assist you in determining the life issues that

19    your client might have faced to explain the offense?

20         A.   That's correct.  I believe the guidelines say at a     10:29AM

21    minimum that would be the team and we had none of those

22    experts.

23         Q.   Okay.  And would it also be fair that in 1989 when

24    the resentencing came back, you didn't have that?

25         A.   That's correct.

JILL M. CUTTER, RPR
(513) 785-6596

1          Q.   Okay.  And in regards to the information that an
2     -- let me back up.  If you didn't have an investigator, who
3     did you use or what did you use as your investigative
4     services?

5          A.   For the most part Mr. Garretson and I spoke to
6     family members.  I knew most of his family, if not all of his
7     family, spoke to them personally.  Witnesses.  I am not --
8     it's conceivable that the law office I had, Holbrock & Jonson
9     -- at the time Tim Evans was an attorney.  He may have gone
10    out with me a couple of times just because he might have been          10:30AM
11    interested in the case, but I know that Mr. Garretson and I
12    did the bulk of the investigation.

13         Q.   Would you say that given the lack of additional
14    assistance of that defense team, we will just call them the
15    other people that you didn't have, that you relied upon what
16    you and Mr. Garretson could discover as attorneys?

17         A.   By default, that is correct.

18         Q.   To your knowledge, do yourself or Mr. Garretson
19    have any expert training in psychology?

20         A.   No, but over the course of years of practicing          10:31AM
21    criminal law you become familiar with it.  I am not trained as
22    a psychologist in any way, shape or form.

23         Q.   A neurologist?

24         A.   Certainly not that.

25         Q.   Okay.  Social worker?

1   A. Far from that.

2   Q. Would you have -- strike that.  If you had been

3 given information by a psychologist or a neurologist that your

4 client suffered from possible brain impairment, would that

5 have impacted upon your advice and opinion as to a jury

6 waiver?

7   A. The answer is I believe it would have, because all

8 cases -- the decision to -- for trial strategy to take one

9 trial strategy or another, or the decision to waive a jury or

10 not, decision to go three-judge panel in a death penalty case, 10:32AM

11 these are extremely serious decisions and these are the types

12 of things that you lay awake at night thinking about the right

13 or wrong judgment.

14    I happened to know Mr. Davis personally, before

15 his involvement in this case and was aware that he took a

16 rigid -- what I perceived to be kind of a rigid attitude to

17 his defense, which I couldn't really understand knowing his

18 personality to be something different from that.  And honestly

19 I believe that if I had the advantage of a trained

20 psychologist that would have been more specialized to look 10:33AM

21 into these background issues, which would help to explain the

22 attitude that he was presenting to us in the defense of his

23 case, it may have impacted on the way we handled the jury

24 waiver or the way we dealt with him on the issue of the jury

25 waiver.

23

1       Q.   Would you agree, Mr. Shanks, that a decision made

2  without all of the facts, such as potential brain impairment,

3  is a decision that is not well informed?

4       A.   A decision made with all of the facts sometimes is

5  difficult, but a decision made without all of the facts is

6  certainly deficient most of the time.

7       Q.   At the time that you advised Mr. Davis to waive --

8  let me back up.  You did provide advice to Mr. Davis as to the

9  waiver of the jury trial?

10      A.   That is -- Mr. Garretson and I together, over a     10:33AM

11  long time ultimately it resulted in advice being given to him

12  to take the case to a three-judge panel.

13      Q.   And you are familiar with the Exhibit C, which was

14  previously admitted and it might still be in front of you?

15      A.   Well, I am certainly familiar with it.  In all

16  honesty, I didn't remember it particularly, but I am familiar

17  with it.

18      Q.   I will show you what is marked as Defendant's

19  Exhibit C.  Do you recognize your signature on that document?

20      A.   I do.     10:34AM

21      Q.   And that is the jury waiver that was executed

22  prior to proceeding in open court?

23      A.   That's correct, and even though I don't have

24  direct recollection of the specific document, it is my

25  signature and I do believe this one was filed in this case.

JILL M. CUTTER, RPR
(513) 785-6596

1        Q.    At the time that you signed that or advised Mr.

2    Davis relative to the right to a jury trial and his waiver of

3    that jury trial right, you didn't have the expert assistance

4    of a psychologist?

5        A.    That's correct.

6        Q.    If you had a social history of Mr. Davis,

7    indicating a multi-generational history of children born out

8    of wedlock, parental abandonment, children raised without

9    fathers or father figures, infidelity, divorce, alcoholism,

10   violent tempers on the part of women in the family, physically        10:35AM

11   abusive behavior and illegal activities and incarceration, not

12   just with Mr. Davis, but a multi-generational history of that,

13   would that have impacted upon your advice given to Mr. Davis

14   as to a waiver of a jury trial?

15       A.    It would have and I think in this case even more

16   specifically it would have been important because the history

17   I have had of Mr. Davis was really directly related to my

18   personal knowledge of his family.  And it was limited to my

19   prior experience with him plus interviews with his friends and

20   family that Mr. Garretson and I had done.  And as I sit here        10:35AM

21   right now, I don't believe we developed any of those issues

22   that later turned out to have some impact on Mr. Davis'

23   personality.

24       Q.    Would it also have impacted your advice and

25   opinion as to the ripeness of a jury waiver if you had known

JILL M. CUTTER, RPR
(513) 785-6596

1　about his dysfunctional nuclear family although you knew some

2　of his family you didn't know the extent of his full family?

3　　　　A.　Knowing how defense in capital cases have evolved

4　and the experience that I have later obtained and with the

5　benefit of capital death penalty seminars, it would have had

6　an impact because it would have impacted the mitigation that

7　we would have been able to present to a jury which may have

8　been more substantial, should have been more substantial if we

9　would have had the investigators and all of the experts that

10　now are common in capital cases.　　　　　　　　　　　　　10:36AM

11　　　　Q.　Mr. Shanks, in a prior affidavit and I believe the

12　post-conviction litigation, you indicated that your waiver of

13　the jury trial and advice to Mr. Davis was rested mainly, and

14　you used the word "mainly", on the trial Court's failure to

15　sever the weapons under disability charge.　If you had had the

16　information relative to brain impairment, the

17　multi-generational history of problems in his family and the

18　dysfunctional nature of his family, would that "mainly" word

19　change?

20　　　　A.　It may have, because it would have given us an　10:37AM

21　explanation for some of his conduct that we weren't able to

22　explain away in a satisfactory way.　I was concerned, I am

23　sure Mr. Garretson was concerned, about the effect of his

24　prior weapons issues and weapons involved in this case, and in

25　dealing with juries, we felt that that was a very negative

```
 1    circumstance that we didn't have ammunition to deal with to
 2    balance out, you know, we think in an appropriate manner.  So
 3    it may have impacted our decisions and our thought processes
 4    because at that point in time that was the most critical
 5    aspect or one of the most critical aspects in our decision to
 6    recommend a jury waiver.
 7             MS. COOK-REICH:  Okay.  May I have one second,
 8         please?
 9             THE COURT:  You may.
10             MS. COOK-REICH:  I have no further questions for          10:38AM
11         Mr. Shanks.
12             THE COURT:  Okay.  Mr. Eichel?
13                       CROSS-EXAMINATION
14    BY MR. EICHEL:
15         Q.   Good morning, Mr. Shanks.
16         A.   Mr. Eichel.
17         Q.   You and I know each other for a long time?
18         A.   Fortunately we have known each other.
19    Unfortunately, it's a long time, that's correct.
20         Q.   Okay.  Class of 1976 UC law school, you are a          10:38AM
21    graduate with honors?
22         A.   Thank you very much.
23         Q.   I graduated, not necessarily --
24         A.   You are blowing my cover here, Dan.
25         Q.   Back in 1983, the Common Pleas Court of Butler
```

27

```
 1 │ County consisted of three general division judges; is that
 2 │ correct?
 3 │        A.    I believe so.
 4 │        Q.    That is Judge Moser, Judge Stitzinger and Judge
 5 │ Brewer who was presiding over this case?
 6 │        A.    Right.
 7 │        Q.    And Judge Brewer had a plethora of pretrial
 8 │ motions filed by you and Mr. Garretson?
 9 │        A.    Yes.
10 │        Q.    And one of those was the motion to sever Count     10:39AM
11 │ Two, the trial of Count Two from the trial of Count One, which
12 │ Judge Brewer denied?
13 │        A.    Right.
14 │        Q.    And it has already been brought out, your main
15 │ reason -- mainly was the word you used in that affidavit --
16 │ was because the severance was denied, therefore you wouldn't
17 │ be able to keep that evidence from the jury, so you waived a
18 │ jury trial; is that correct?
19 │        A.    Yes.  That was a trial strategy issue that we all
20 │ considered.  It was a concern for us for sure.               10:40AM
21 │        Q.    Okay.  In fact, Mr. Evans, who handled the case on
22 │ appeal, you were aware of what was -- what was eventually
23 │ raised on appeal, the primary issue was about the severance;
24 │ is that not right?
25 │        A.    Yes, you know, I am relying on my memory now, but
```

1    I believe that is correct. I wasn't involved in the actual

2    appeal. Mr. Evans did it. But I do think that that was the

3    focus.

4           Q.   Mr. Evans was solo on every appeal he ever did

5    really. Well, on this one. Let's not talk about other cases.

6    And you testified today you knew Mr. Davis personally?

7           A.   I did.

8           Q.   You consulted with him on this case from virtually

9    the moment he was first in the Butler County jail?

10          A.   Actually, I think before he was in the Butler          10:40AM

11   County jail.

12          Q.   When he came into the Butler County jail, he

13   already had told police you were his attorney?

14          A.   Yes, I believe I actually talked to him or at

15   least talked to his family before he turned himself in.

16          Q.   Okay. And you gladly took this case?

17          A.   Honestly, sadly would be the thing, because I

18   thought a lot of him and as everybody who knew him was

19   extremely saddened by the allegations and felt bad for him to

20   be in the circumstance, but I took the case willingly.          10:41AM

21          Q.   Yeah. You weren't reluctant to take the case at

22   all?

23          A.   No.

24          Q.   You spent a lot of hours on this case?

25          A.   Yes.

1     Q.   You were court appointed.  I'm sure the documents

2  filed in this case for you to be paid reflected a lot of

3  hours?

4     A.   They don't reflect all of the hours because there

5  was a $2,500 limit and you get to that pretty quickly.

6     Q.   Okay.

7     A.   You spend a lot of time.

8     Q.   And you also over the years prior to this

9  occurrence were very familiar with Dr. Roger Fisher?

10    A.   Yes.                                                           10:42AM

11    Q.   And Dr. Fisher is court appointed on hundreds of

12  cases in Butler County.  Was a court appointed attorney --

13  well, court appointed evaluator, psychologist?

14    A.   It was at the start of his career here, but, yes,

15  he had been involved in the court before and had done

16  evaluations for different -- NGRI's, things like that.

17    Q.   It's your recollection today that he was court

18  appointed by the Judge but not on a motion of yours?

19    A.   You know what, Dan, I don't really recall.  I

20  believe he was court appointed, but he is appointed by the      10:42AM

21  Court but he wasn't given to us in a traditional sense where

22  we had an employer/employee relationship where he had

23  confidential circumstances.  It wasn't that type of situation,

24  but we may have had filed a motion.  I don't recall right now.

25    Q.   Whatever that situation was, the record reflected

JILL M. CUTTER, RPR
(513) 785-6596

1  that?

2          A.    Right.

3          Q.    But whether he was court appointed or not, isn't

4  it true that Dr. Fisher always freely discussed these cases

5  with defense counsel, with all counsel?

6          A.    Sure.  He was available and he was candid in his

7  evaluations and spoke to us, spoke to me.  I think the

8  difficulty with Roger Fisher's evaluation is at the time and I

9  remember in one of the motions filed, the psychology expert

10  -- the psychology experts were focused on issues of                    10:43AM

11  competency, insanity, and things like that.  They had yet to

12  develop the expertise that they are now talking about as far

13  as helping with family issues, social issues, other

14  impairments that might go to mitigation.

15          Roger Fisher was very open with us as far as the

16  evaluations he performed.  And I am sure I asked him, although

17  I don't remember specifically everything I asked him, a lot of

18  things that might help us, but I am not sure he was

19  experienced in the type of evaluations that they do now.

20          Q.    Well, with that qualification, he may have not at     10:44AM

21  the time psychology -- maybe clinical psychology at the time

22  wasn't up with what it is today with mitigation?

23          A.    It is evolved for sure.

24          Q.    At that time, though, he was very astute in issues

25  of competency to stand trial, insanity at the time of the

JILL M. CUTTER, RPR
(513) 785-6596

1   offense, present competency to assist you, counsel, in his own

2   defense?

3        A.    He was, yes.  He was competent to make those

4   evaluations for sure.

5        Q.    And he did so on many, many occasions?

6        A.    Right, not just this one.

7        Q.    And you did discuss this case with Dr. Fisher?

8        A.    Many times.

9        Q.    And Dr. Fisher, in fact, was called at one stage

10  or another of this case I believe?                              10:44AM

11       A.    He was called.

12       Q.    Do you recall his testimony, and for the record

13  this is, counsel, information on page 404 of the transcript of

14  testimony.  The defendant is now free of disease or defect.

15  Do you recall?

16       A.    I recall that the substance of his evaluation was

17  he was free of disease or defect.  Do I remember him saying

18  that specifically?  No, but I believe that was his opinion.

19       Q.    Also page 403 the transcript of testimony,

20  defendant was free of mental disease or defect that would have  10:45AM

21  impaired his capacity to appreciate the criminality of any

22  conduct which he engaged or had conformed his conduct to the

23  requirements of the law?

24       A.    I am aware that that was the substance of his

25  testimony; that is correct.

JILL M. CUTTER, RPR
(513) 785-6596

32

1   Q. And basically he said he was -- had explosive

2 psychiatric disorder and problems relating with women?

3   A. I think it was an isolated explosive disorder.  I

4 am not sure what the phraseology was, but yes, explosive

5 psychiatric disorder and I know that he indicated that he had

6 a problem in dealing with women.

7   Q. But free of mental disease or defect were the

8 lynch pins of his decision?

9   A. I do not dispute what you read because that would

10 be an accurate verbatim statement.       10:46AM

11   Q. In consulting with him before he testified, you

12 knew -- you freely discussed what he meant in regard to his

13 evaluation of what he saw in Mr. Davis?

14   A. Yeah, that is true.  Really more than that; what

15 he meant and how it could help us and how we could relate that

16 issues that would help either in his defense or mitigation.

17 It was more than just what he meant by that, because that is a

18 pretty cold diagnosis.  You are not insane at the time and the

19 defense of insanity, you know, there was an issue about

20 diminished capacity back then, which was focused on whether or 10:47AM

21 not that was allowed to be used in trial.  I dealt with him in

22 anything which we thought might be helpful.

23    My concern now for Mr. Davis is that I am not sure

24 Roger was able to identify things that we might have been able

25 to use later on for mitigation.

1   Q. In mitigation?

2   A. Right.

3   Q. Such as dysfunctional family issues?

4   A. The things that she said.  The things that have

5 evolved to be focus issues on mitigation.

6   Q. I see.  All right.  Did he ever give any

7 indication to you that there was a problem with his competency

8 to stand trial?

9   A. No.

10   Q. And that was a major issue at the time as far as  10:47AM

11 criminal cases in general, you would have asked those

12 questions?

13   A. Yes.

14   Q. And he did not indicate anything of the sort that

15 he was not competent?

16   A. No.  And I didn't have any indication from my

17 experience that he was incompetent to stand trial.

18   Q. And your focus personally with yourself and Mr.

19 Davis you had no indication?

20   A. No.  10:48AM

21   MR. EICHEL:  Okay.  No further questions, Your

22  Honor.

23   MS. COOK-REICH:  I just have a couple of clean-up

24  questions.

25   THE COURT:  That's fine.

34

```
 1              REDIRECT EXAMINATION

 2   BY MS. COOK-REICH:

 3        Q.   Mr. Shanks, would you agree that -- I want to make

 4   sure I am hearing you right.  Dr. Fisher's role in his

 5   psychological evaluation was to assist on the issue of

 6   potential not guilty by reason of insanity as a plea, to

 7   assist in regards to whether the client was competent and to

 8   assist as to potentially an issue of diminished capacity?

 9        A.   The answer to the best of my recollection is that

10   is correct and that would be because those were the issues         10:49AM

11   that psychologists traditionally testified to in that time

12   frame.  And as a defense lawyer, and as I answered Mr. Eichel,

13   I did try to speak with him to see if there was anything else

14   that might be helpful, but those were the traditional concerns

15   that he did the evaluation for.  If I recall, the tests that

16   he performed were those tests that were used to determine

17   those basic issues, competency...

18        Q.   And those things would go to the issue of guilt,

19   not mitigation?

20        A.   More specifically to guilt than mitigation for        10:49AM

21   sure.

22        Q.   You're aware that the 2003 ABA Guidelines indicate

23   that the psychologist is to be an integral part of the team

24   assisting at all steps and certainly at the mitigation phase

25   of a case?
```

| | |
|---|---|
| 1 | A. I am aware that that is what -- |
| 2 | Q. To help develop a social history, help develop or |
| 3 | find an explanation for a client's actions? |
| 4 | A. The role of psychologist now is something separate |
| 5 | from what Roger Fisher performed for the Court on that date, |
| 6 | that is correct. |
| 7 | MS. COOK-REICH: No further questions. |
| 8 | THE COURT: Any further? |
| 9 | MR. EICHEL: No. |
| 10 | THE COURT: All right. Mr. Shanks, thank you for |
| 11 | your testimony and you are excused. |
| 12 | MS. COOK-REICH: Your Honor, can we go off the |
| 13 | record for a minute? |
| 14 | (Defense counsel confers with defendant off the |
| 15 | record.) |
| 16 | MS. COOK-REICH: Thank you, Your Honor. |
| 17 | THE COURT: You have had a moment to confer with |
| 18 | counsel and with your client? |
| 19 | MS. COOK-REICH: Yes, Your Honor. |
| 20 | THE COURT: Are you ready to proceed? |
| 21 | MS. COOK-REICH: That would be the end of our |
| 22 | witness testimony in this case, and we have identified |
| 23 | C today, and yesterday we identified A and B. We would |
| 24 | like to submit them into the record for the Court. I |
| 25 | know you have seen C. I don't think we provided you a |

10:50AM (line 10)
10:52AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

```
 1        copy of A and B yesterday.
 2             THE COURT:  And that would be fine.  Are you
 3        saying that your testimony is complete with regard to
 4        all motions?
 5             MS. COOK-REICH:  Yes, Your Honor.
 6             THE COURT:  All right.  Any objection to me
 7        accepting these exhibits into evidence for purposes of
 8        this hearing?
 9             MR. EICHEL:  No, Your Honor.
10             THE COURT:  All right.                              10:52AM
11             MS. COOK-REICH:  I will give them to Joe.
12             THE COURT:  And it is A, B and C?
13             MS. COOK-REICH:  Yesterday when we finished I left
14        A and B up on the podium here and I took them home with
15        me.
16             THE COURT:  Those have now been admitted into
17        evidence.  Is there any evidence or testimony that the
18        State wishes to offer?
19             MR. EICHEL:  We need to proffer nothing, Your
20        Honor.                                                   10:53AM
21             THE COURT:  All right.  Let me know when you are
22        ready or are prepared to argue.
23             MS. COOK-REICH:  We are going to split the factual
24        and the legal argument.  I will do the factual.  Mr.
25        Porter will do the legal argument.
```

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 928

1      You have heard the testimony of both Mr. Davis and

2   Mr. Shanks today relative to the information that both

3   counsel had available to them and the information that

4   Mr. Davis had available to him when he made the waiver

5   of the jury trial. And we would submit to the Court

6   that under the 2003 ABA standards, given the deficiency

7   in the information counsel had available to them to

8   provide the proper advice, that the waiver should be

9   taken away at this time and Mr. Davis should be allowed

10   to have a jury trial relative to mitigation.                10:54AM

11      I would like to first address, although I am going

12   to get into legal argument, the issue that we kind of

13   started on in regards to why the 2003 ABA Guidelines

14   should apply. And I will give you the case cites to

15   them specifically. VanHook, which it is <u>Van Hook vs.</u>

16   <u>Anderson</u>, V-A-N-H-O-O-K. A decision from August 4,

17   2008 from the 6th Circuit. I don't have the F 3D cite

18   yet. The Westlaw cite is 2008, 29 52 109. And in that

19   particular case the ABA Guidelines from 2003 are

20   addressed relative to the issue of counsel's advice and    10:54AM

21   performance and investigation and they indicate that

22   the 2003 guidelines are applicable even though cases

23   and the facts of the case occurred previously and then

24   there is a line of cases out of the 6th Circuit on the

25   similar vein. One would be <u>Hamblin, H-A-M-B-L-I-N, vs.</u>

1    Mitchell. Case cite 354, F 3D 462. Specifically at
2    page 487. And in that particular case, the Court
3    indicated that the 2003 ABA Guidelines simply explain
4    in greater detail than the 1989 guidelines, the
5    obligations of counsel and that those guidelines do not
6    depart in principle or context from Strickland,
7    Wiggins, or other 6th Circuit decisions concerning
8    obligations of counsel.

9        Specifically, in the Hamblin case, that was a 1982
10   trial of an aggravated murder case. So they are                10:55AM
11   applying the 2003 standards even back to a 1982 case.
12   Additionally, in Dickerson vs. Bagley, case cite 453 F
13   3D 690, at page 694 also a 6th Circuit decision out of
14   2006 also applying the 2003 standards from the ABA
15   Guidelines from an aggravated murder trial from 1985.

16       And additionally, Rompilla vs. Beard,
17   R-O-M-P-I-L-L-A, 2005 125 Supreme Court 2456 and that
18   is a 1988 murder trial in which the Court in 2005, the
19   United States Supreme Court applied the 1989 and 2003
20   ABA Guidelines to counsel's performance, investigation   10:56AM
21   and obligations.

22       THE COURT: So I am clear, your argument is that
23   due to these proposed deficiencies in the advice, that
24   the jury waiver was not knowing, intelligent and
25   voluntary as to sentencing, but it was as to guilt?

1    MS. COOK-REICH: We tried to stay away from guilt

2    because you --

3        THE COURT: I'm just trying to figure out what

4    your argument is.

5        MS. COOK-REICH: Factually, I focused only on

6    mitigation and I did so with Mr. Shanks because the

7    Court has directed in Davis v. Coyle as directed that

8    this is not a resentencing and I am trying to limit

9    what we did. I simply put on Mr. Shanks as to the

10   impact of additional information, if it would have                    10:57AM

11   impacted his advice had he had both the assistance back

12   in those years and the information, how would that have

13   impacted his advice to his client and his decision as

14   to how to proceed on the mitigation trial. If you

15   would like additional information as to how it would

16   have impacted the guilt, I can certainly go forward on

17   that, but I didn't want to open that --

18       THE COURT: I was just trying to figure out what

19   your argument was and you were tailoring the

20   argument --                                                           10:57AM

21       MS. COOK-REICH: I am tailoring the argument to

22   the mitigation phase because that is what we are

23   particularly here on. At the time that Mr. Shanks and

24   Mr. Garretson represented Mr. Davis, they were without

25   the assistance other than themselves. They had no

1   social worker to gather social history.  They didn't

2   have mitigation specialists.  They didn't have a

3   regular investigator to conduct interviews of witnesses

4   and they certainly didn't have a psychologist that was

5   assigned to them to help them put it all together.  And

6   as Mr. Shanks put it, specifically, the role of Dr.

7   Fisher at the time was to do an NGRI, competency and a

8   little bit of diminished capacity and he stuck with the

9   guilt phase of the trial.  He didn't assist with the

10   mitigation phase which is what the 2003 ABA Guidelines    10:58AM

11   cover and I can point the Court to that specifically.

12       THE COURT:  And the only thing -- I don't know for

13   sure because again, I haven't read the transcript, but

14   just from my review of kind of the appellate history of

15   the case, in Davis vs. Bagley, which was the case out

16   of the District Court, there are references in that

17   case to the fact that he was appointed after the guilt

18   phase prior to mitigation pursuant to the statutes that

19   allow the Court to order a PSI, and allow them to

20   appoint for purposes of mitigation.  That was the       10:59AM

21   impression that I had from the discussion in that case.

22   And let me see if I can find it specifically.  Again,

23   you have an advantage over me at this point in terms of

24   being more familiar with the transcript of the

25   proceedings.  I'm just asking what the facts are, not

1    legal argument.

2        MS. COOK-REICH:  My factual memory of --

3        THE COURT:  There was an issue in that case, it

4    says, "Petitioner also urges the Court to alter or

5    amend its judgment because the psychologist presented

6    by defense counsel during petitioner's mitigation

7    hearing was not actually a defense expert witness.

8    Specifically petitioner argues that although he

9    initially requested the appointment of Dr. Roger Fisher

10   as his defense psychologist pursuant ORC 2929.024,      11:00AM

11   subsequent actions by the prosecution in the trial

12   court resulted in the appointment of Dr. Fisher not as

13   a defense expert pursuant to 2029.024, but as an expert

14   pursuant to 2929.03(D)(1), who is obligated to report

15   his findings to the prosecution and the trial court?

16   And so, I guess just from a factual standpoint, it

17   appears that he was appointed and specifically

18   2929.03(D)(1) provides when death may be imposed as a

19   penalty the Court upon the request of the defendant

20   shall require a pre-sentence investigation to be made    11:00AM

21   and upon request of the defendant shall require a

22   mental examination to be made and shall require reports

23   of the investigation.  And if a mental examination,

24   copies of any reports prepared should be furnished to

25   the Court, the trial jury if the offender was tried by

1  a jury, to the prosecutor, and to the offender or the

2  offender's counsel.

3  So just from a factual standpoint I wasn't sure

4  that what you were stating was accurate because it

5  seems like -- at least the record that was in front of

6  that District Court would indicate that he was

7  appointed at the mitigation or for purposes of

8  mitigation, but obviously not pursuant to 2929.024,

9  which is what would occur today.

10  MS. COOK-REICH: I am relying upon my memory of

11  the history, but I was only 12 when this particular

12  case was coming through and what I have read what Mr.

13  Shanks has advised as to what Dr. Fisher's role was at

14  the time. I think that your statement reading that

15  particular case that Dr. Fisher was more of the Court

16  expert rather than the defense expert as in comport

17  with Mr. Shanks has testified to, and is completely

18  opposite of what the 2003 ABA Guidelines provide. And

19  specifically, I would point to the Court to guideline

20  4.1, which is the defense team's supporting services as

21  well as 10.7, which is the investigation guideline and

22  10.11, defense case concerning penalty. And those

23  guidelines including the commentaries all speak of the

24  psychologist. I am going to focus on him because that

25  is the only one expert that existed, but the

11:01AM

11:02AM

1    psychologist is supposed to be a team member, the

2    defense team member and supposed to have the ability

3    to --

4        THE COURT:  Similar to the experts that I have

5    appointed in this case to assist Mr. Davis in his

6    resentencing, correct?

7        MS. COOK-REICH:  Yes, but the role of those

8    particular experts pursuant to the ABA Guidelines is

9    that they are not a Court's witness, Your Honor, but

10   instead they are part of the defense team with the          11:02AM

11   privileges that are associated with that; someone to

12   talk with, have him evaluated to determine if there is

13   a family history that needs to be gone into, obtain and

14   review -- I apologize.  A mitigation specialist would

15   obtain but a psychologist would review any relevant

16   records, social workers, Naval history, family history,

17   the history that we spoke of that were in prior

18   affidavits from this case relative to potential brain

19   disorders.  Those things that are important in what Mr.

20   Shanks says that he was without at the time of                11:03AM

21   providing the advice to Mr. Davis and although Mr.

22   Garretson is not here, I relate to the Court that Mr.

23   Shanks said that he and Mr. Garretson spoke about this

24   case at all times and that Mr. Shanks didn't have that

25   advice.  Mr. Garretson wasn't a psychologist or

1   neurologist or social worker either. And I apologize

2   for not bringing that to Mr. Shanks' attention, but he

3   indicated they didn't have those extra degrees. But

4   our argument is that at the time, they didn't have the

5   expert services which would have assisted them to

6   uncover the mitigation evidence that was necessary to

7   provide an explanation for the offense which is what

8   the role and goal of mitigation and mitigation hearing

9   is. You are past the guilt phase. You are past

10   explaining I did or I didn't do this. You are in the   11:04AM

11   phase of what explains the client's behavior and as Mr.

12   Shanks said he didn't have that. He had none of that.

13   Yes, he knew Mr. Davis and Mr. Davis' family because

14   they lived in Hamilton, but he certainly didn't have

15   the information relative to the multi-generational

16   issues that Mr. Davis had in his past and I believe Mr.

17   Shanks testified that all of those things would have

18   impacted on his advice relative to waiving the jury

19   trial. And most significantly brain impairment would

20   have provided that connection why is Red here? And I   11:04AM

21   think Mr. Eichel asked him about his first involvement

22   with the case, and Mr. Shanks said, you know, we were

23   saddened to hear because I was a friend of the family.

24   Such advice and expert assistance would have impacted

25   as Mr. Shanks said his advice to his client. And Mr.

45

```
 1    Davis testified that he relied on his attorney's
 2    advice.  He has the utmost respect for Mr. Shanks and
 3    Mr. Garretson and would have taken their advice.  Mr.
 4    Davis, likewise, is not a neurologist or a
 5    psychologist, not a social worker to provide the
 6    multi-generational history and the social history that
 7    is necessary in mitigation cases.  What I am trying to
 8    say is that the information and advice that an attorney
 9    provides to their client is only as good as the
10    information that attorney has.  And without that, that     11:05AM
11    is not a knowing, intelligent waiver of the right to a
12    jury trial.
13         THE COURT:  All right.
14         MS. COOK-REICH:  Mr. Randall Porter will discuss
15    the legal issues.
16         THE COURT:  This is still on L?
17         MS. COOK-REICH:  Yes, I focused on L.
18         MR. PORTER:  And based upon the Court's questions
19    if I could jump in on my partner's and add to this,
20    though I am sort of getting into the factual issues.      11:06AM
21         I don't have a cite, but it is Glen, G-L-E-N-N,
22    vs. Tate.  It was the first Ohio case to reach 6th
23    Circuit.  It was out of Mahoney County.  Counsel in
24    that case elected to proceed with the appointment of an
25    expert pursuant to 2929.03 as opposed to 2929.024 and
```

1    the 6th Circuit found that counsel was ineffective for

2    doing so. The second and I don't have the citation off

3    the top of my head and I apologize to the Court. I

4    should have been prepared for this issue. I'm sorry.

5    I do have the Glenn vs. Tate cite now thanks to

6    counsel. 71 fed 3rd 1204 6th Circuit, 1995. The

7    second fact that the Court raised and I will go on to

8    the legal issues, is that the Court cited from the

9    record that counsel had waited 'til between guilt and

10    mitigation or trial phase and sentencing phase to ask    11:07AM

11    for the appointment of mitigation. I will submit

12    additional authority on that, Your Honor. There is a

13    plethora of 6th Circuit case law that says if you are

14    waiting to prepare your sentencing phase in a capital

15    case after the trial phase, then you are pretty much

16    per se ineffective.

17        THE COURT: I don't know that that happened. I am

18    indicating that based on my experience in the capital

19    cases that I have handled that that 2929.03(D)(1) issue

20    doesn't occur or doesn't arise until after a finding of    11:07AM

21    guilt and prior to proceeding into the mitigation

22    phase. And my experience now, of course, defense

23    counsel almost always declines to have their client

24    participate in either a PSI or that mental examination,

25    but I -- that is why I made that comment. There is

1  nothing in <u>Davis vs. Bagley</u> that tells me precisely

2  when the request happened or anything like that.  I

3  didn't mean to side track you with that issue.

4      MR. PORTER:  And I think there is some -- in

5  counsel's citing of the case I think real insightful is

6  the Van Hook case that Melynda cited you to.  It

7  occurred during the same time frame the Court talks

8  about the difficulties and counsel being ineffective

9  for retaining someone from the court clinic and

10  secondly for not having a mitigation investigator and      11:08AM

11  again this was a 1983 case.  I am not standing up here

12  -- I am supposed to talk about the legal issues.  What

13  I tried to do preparing last night is to move through

14  the State's argument and I think I just have five

15  points I want to respond to.

16      The first is and it's probably error on my part,

17  is the way we have let the issue become framed.  And we

18  have let the issue become framed of one of should Red

19  get to withdraw his jury waiver?  And I am the one that

20  framed it.  And I am thinking back I should have framed      11:09AM

21  it differently.  It should have been framed as, does

22  this Court have the power to reconstitute a three-judge

23  panel?  The prosecution --

24      THE COURT:  That kind of moves us into the other

25  motion, though, doesn't it?

1    MR. PORTER: It does, but I am responding -- and I
2    agree with the Court wholeheartedly. The prosecution
3    addressed both issues, both responses. I am not being
4    very articulate. All I was going to say is maybe I
5    focused the issue wrong. And if, in fact, the Court
6    finds that 2929.06 is constitutionally infirm at that
7    point I think the Court doesn't have the power to
8    reconvene the panel. There is no other basis for the
9    Court to do that. Secondly --

10   THE COURT: But that is a distinct legal issue I        11:10AM
11   think from whether he would be entitled to have a jury
12   either whether you want to characterize it as the right
13   to withdraw his previous jury waiver and ask for a jury
14   to participate in the resentencing in this case, or
15   simply whether he has the ability to request a jury at
16   this point despite his waiver, that is separate and
17   distinct I think from the analysis of whether 2929.06
18   applies retroactively.

19   MR. PORTER: And I want to think about the Court's
20   question for a minute. And if my answer is not           11:11AM
21   responsive, please ask me to clarify. I think it is a
22   distinct issue, but --

23   THE COURT: Ramifications are very similar, but it
24   is a distinct issue. I understand.

25   MR. PORTER: It is a distinct issue, but if you

| | |
|---|---|
| 1 | can't reconvene and reconvene may be the wrong word |
| 2 | there. If you can't reconvene the panel, then whether |
| 3 | he can withdraw his jury waiver becomes somewhat moot. |
| 4 | THE COURT: Yes, I agree. |
| 5 | MR. PORTER: The second issue, is the Ring issue. |
| 6 | Back when this case was tried in 1983, Red didn't have |
| 7 | a 6th Amendment constitutional right to a jury for |
| 8 | purposes of sentencing. The scope of the 6th Amendment |
| 9 | has changed dramatically for purposes of capital |
| 10 | litigation. We cited the Court to Ring vs. Arizona. |
| 11 | And this day where the U.S. Supreme Court is |
| 12 | constricting the bill of rights -- |
| 13 | THE COURT: I guess a question -- not to take you |
| 14 | off track again -- but in 1983, just as today, he did |
| 15 | have the right in a capital case to have the jury -- to |
| 16 | have a jury both as to guilt and as to sentencing. |
| 17 | MR. PORTER: He had a statutory right. He did not |
| 18 | have a constitutional right. That is the distinction. |
| 19 | THE COURT: Okay. |
| 20 | MR. PORTER: The prosecution cites the Court to |
| 21 | the Ohio Supreme Court case in Ketterer. Ketterer is |
| 22 | distinguishable -- and I don't disagree with what they |
| 23 | cite in the holding report. They cite to -- that a |
| 24 | defendant can waive his 6th Amendment right as |
| 25 | interpreted by Ring. I agree wholeheartedly with that, |

11:12AM

11:13AM

1    but if you look at the facts as they layout, Ring was

2    decided June 24, 2002. Mr. Ketterer committed his

3    crime, I have it in my notes on February 24th, 2003.

4    Hence that constitutional right or the constitution as

5    we understand it now, existed at the time Mr. Ketterer

6    made his waiver. That didn't exist in this case.

7        Third is the prosecution argues that what Red is

8    attempting to do today is to withdraw his jury waiver

9    in the middle of the trial. What we have basically had

10   is I think we said it's either 24 or 25-year break in          11:14AM

11   this.

12       THE COURT: Coming up on 25.

13       MR. PORTER: And the prosecution in their

14   pleadings has cited to part of the 6th Circuit holding,

15   but I think it is important to look at the sentence

16   after the fact, that the prosecution has repeatedly

17   cited to as we -- I am quoting now -- we note that

18   under Ohio Revised Code 2945.05 a waiver of jury trial

19   may be withdrawn by the defendant at any time before

20   the commencement of trial. Here is what the                   11:15AM

21   prosecution cites: Granted the resentencing hearing

22   that we order today will not constitute a trial in the

23   sense that the petitioner's guilt or innocence is again

24   at issue. But I think it is important that the Court

25   -- and I know the Court is familiar with the opinion.

1    Please, I don't mean to insult the Court's

2    intelligence.

3        THE COURT:  I don't take insult easily, so feel

4    free to make your argument.

5        MR. PORTER:  The next sentence I think is real

6    important, which the 6th Circuit goes on, however, in

7    this case, the proceeding can indeed be considered a

8    functional equivalent of a trial because unlike

9    sentencing in a non-capital case it will take the form

10   of an evidentiary proceeding on the question whether          11:16AM

11   Davis should receive the death penalty or some form of

12   a life sentence.  So Red would respectfully disagree

13   with the prosecutor's characterization that we have

14   just taken a 24 or 25-year break in the proceedings and

15   here we are again.  And I don't mean to throw the

16   Court's words back at him, but we have had this

17   argument in the past in this case and the Court I think

18   used the term he is here on a de novo proceeding.  And

19   I would at least like to suggest that we are really

20   here on a new day, a new trial for purposes of these          11:16AM

21   proceedings.

22       The fourth issue and we have heatedly debated this

23   morning already, I am not going to go there again, is

24   what effect the 6th Circuit decision has with respect

25   to res judicata and law of the case.  Cite the Court to

| | |
|---|---|
| 1 | <u>Davis vs. Coyle,</u> 475 781. Again, I know the Court is |
| 2 | familiar with the case. And I also think and the Court |
| 3 | cited Givens concurring opinion this morning. |
| 4 | THE COURT: I indicated that I have read that. I |
| 5 | read the opinion from soup to nuts. |
| 6 | MR. PORTER: I think it is interesting how she |
| 7 | interprets the majority opinion that it is, in fact, |
| 8 | giving this Court guidance as to what issues can be |
| 9 | reopened or not reopened and this was one of those |
| 10 | issues. Just as Givens goes on to talk about after |
| 11 | concluding, the case must be resentenced I would |
| 12 | refrain from expressing any opinion as to the other now |
| 13 | moot issues raised by Davis. In particular, I would |
| 14 | avoid suggesting to the Ohio courts an approach to the |
| 15 | jury waiver issue as the majority opinion does after |
| 16 | concluding there is no basis from federal relief. And |
| 17 | I think she is at least acknowledging there that, in |
| 18 | fact, that is what majority has done here. They said |
| 19 | this is an open issue when it comes back to this Court. |
| 20 | Those are my responses. I thank the Court for |
| 21 | listening. |
| 22 | THE COURT: Thank you. Mr. Eichel, will you be |
| 23 | arguing for the State? |
| 24 | MR. EICHEL: Yes, Your Honor, thank you. |
| 25 | THE COURT: If I neglected to do so, I think I |

11:17AM

11:18AM

1    said it yesterday, but I will make it clear again,

2    prior to the hearing today, prior to argument either by

3    Ms. Cook-Reich, Mr. Porter or yourself, I did and have

4    fully reviewed the motions and the responses that have

5    been provided in writing. I just want the record to be

6    clear that I have done that.

7        MR. EICHEL: Thank you, Your Honor. It was my

8    intention today to approach this as I would an

9    appellate argument knowing that in the appellate court

10   as in this court everything has already been read and        11:19AM

11   considered. You want further oral argument on what we

12   think of the other side's argument I think.

13       THE COURT: Fair enough.

14       MR. EICHEL: We have heard a lot about what the

15   6th Circuit said and I would point out clearly it is

16   dicta. It is not a part of the remand. Not a part of

17   the order of the Court. And that being said, I don't

18   ask the Court to totally disregard it, but I ask the

19   Court to look at what that majority -- those two judges

20   of the majority did say and take it at face value.            11:20AM

21       First of all, they did not consider or cite or say

22   anything about the impact of the Ohio resentencing

23   statute that is the motion M, the actual motion M.

24   2929.06(B) expressly requires that if you had a

25   conviction after a three-judge panel's decision and

1      resentencing is ordered by any federal or state court,

2      that resentencing shall be done by a three-judge panel.

3      Davis vs. Coyle didn't consider the fact that Ohio has

4      a statute that provides a procedure here.

5          Secondly, they consider only one Ohio case when

6      they try to discern what the Ohio law will be on

7      retrial.  They only cite 2945.05, which expressly

8      states you don't have a withdrawal of a jury waiver

9      after the commencement of trial.  And they cite one

10     case Court of Appeals decision State vs. McGee, which          11:21AM

11     in that case, it did involve a new trial on remand

12     reversal on the conviction.  McGee was reversed by the

13     Ohio Supreme Court because of defective indictment.  It

14     was remanded for a whole new trial.  The prosecutor

15     even went to the point of amending the indictment to

16     fix it, to fix the error that caused the reversal then

17     you start from an arraignment.  According to the Court

18     of Appeals you proceed anew from arraignment of the

19     amendment indictment to a new trial.  So you inherently

20     revoke -- and that makes sense.  It makes inherent          11:22AM

21     sense because you are starting a commencement of the

22     trial.  We are not doing that in this case.

23         McGee, that Court of Appeals decision, was

24     considered and distinguished by Judge Valen in 2004 in

25     State vs. Martin and on that very ground.  In that

| 1 | case, there was a trial during the course of the trial |
| 2 | the McGee error was discovered there was a missing |
| 3 | element. The prosecutor in the trial amended the |
| 4 | indictment. The trial proceeded, and then the case was |
| 5 | reopened later. Judge Valen said there was -- the |
| 6 | reopening didn't trigger the right to have a new jury. |
| 7 | This is distinguished from State vs. McGee. |
| 8 | Look at Davis vs. Coyle again. They cite two |
| 9 | federal court decisions about waiver of jury trial does |
| 10 | not bar a demand for a jury on a retrial of the same |
| 11 | case. United States vs. Groth and United States vs. |
| 12 | Lee, they cite a third case Sinistaj vs. Burt another |
| 13 | 6th Circuit case. It says the rule in Groth is |
| 14 | inapplicable when no event such as the reversal and |
| 15 | remand for a new trial intervenes between the waiver |
| 16 | and attempted withdraw. Sinistaj vs. Burt is exactly |
| 17 | like what Judge Valen says McGee should be |
| 18 | distinguished. I'm not sure I said that phrase |
| 19 | correctly, but -- |
| 20 | THE COURT: I understood what you were saying. |
| 21 | MR. EICHEL: It also -- because there is no event |
| 22 | that intervened between the waiver and the attempted |
| 23 | withdraw, in that such as a remand for new trial, that |
| 24 | doesn't contemplate a new waiver, a new jury waiver |
| 25 | having been necessary. |

11:23AM (line 10)

11:23AM (line 20)

JILL M. CUTTER, RPR
(513) 785-6596

| | |
|---|---|
| 1 | Mr. Porter argued today -- I wrote down four |
| 2 | issues. I missed the fifth one I guess. The first |
| 3 | thing, most important thing that he mentioned first was |
| 4 | he should rephrase the memorandum. In fact, if you |
| 5 | look at L, it is not captioned motion. It is captioned |
| 6 | memorandum. But he should rephrase his issue, does |
| 7 | this Court have the power to reconvene a panel? I |
| 8 | submit what this memorandum asks the Court is, does |
| 9 | this Court have the power to impanel a jury for |
| 10 | resentencing? |
| 11 | I think that question is answered by State -- the |
| 12 | Supreme Court of Ohio in a couple of cases. One is |
| 13 | State vs. Mason, vs. Griffin. In matters of criminal |
| 14 | sentencing of Ohio is a statutory procedure. Trial |
| 15 | court does not have any inherent power to act. It only |
| 16 | has such power to act as is provided in the statute or |
| 17 | rule. And in that Mason vs. Griffin, Judge Griffin |
| 18 | unambiguously lacked jurisdiction to convene a jury |
| 19 | sentencing hearing supposed compliance with Blakely and |
| 20 | Apprendi. |
| 21 | Mr. Porter is asking this Court to convene a jury |
| 22 | trial under Ring. That is the same as Apprendi and |
| 23 | Blakely. Same legal theory a Apprendi and Blakely. |
| 24 | Supreme Court, long standing rule, we do not create |
| 25 | procedure out of whole cloth. They said that in 1987 |

11:24AM

11:25AM

JILL M. CUTTER, RPR
(513) 785-6596

```
1        in State vs. Penix.  And they cited that type of logic
2        in State vs. Mason, vs. Griffin.  Most important, State
3        vs. Ketterer, is a case citing Mason vs. Griffin.  And
4        in Ketterer arising out of Butler County, it was asked
5        that the trial judge or three-judge panel take guilty
6        plea and a waiver of jury and then have a bifurcated
7        proceeding where the jury determines the sentence.
8        That is exactly what is being asked for here today.
9        That is exactly what is being asked for.  And the
10       Supreme Court says there is no rule.  It is not              11:26AM
11       permitted by any statute or rule in Ohio to have a
12       hybrid or bifurcated procedure such as that.
13            If you look at the Ring line of cases, Apprendi,
14       Blakely, Ring, Booker, the Supreme Court has stated in
15       one of those cases, it is Blakely, the Supreme Court
16       majority of that Court said nothing prevents defendant
17       from waiving his Apprendi rights.  In this case the
18       defendant waived his 6th Amendment right to a jury
19       trial.  He waived it and had a bench trial.  Based on
20       that, he had a bench trial under Ohio law, three-judge     11:27AM
21       panel.  And under Ohio law as motion L and motion M
22       will determine, that law is if you had a conviction and
23       your conviction is affirmed, you get a resentencing
24       down the road by a three-judge panel if you had a
25       three-judge panel in the first place.  It is consistent
```

1    with Ketterer. It is consistent with Mason. It is

2    consistent with the law of the case. And I need not

3    reiterate what I said in the memorandum I filed in this

4    case. Thank you.

5        THE COURT: Thank you. Mr. Porter, final word on

6    the matter?

7        MR. PORTER: I just have two very brief responses.

8        THE COURT: And if one of them isn't addressing

9    where I would derive the authority to impanel a jury,

10   please add that as one of the issues that I would like       11:28AM

11   to hear about.

12       MR. PORTER: I think the first question is if you

13   have -- assuming you have either an invalid waiver or

14   for a number of reasons we have set forth, I think at

15   that point I accept the prosecution's argument --

16       THE COURT: You are saying we can't impanel a new

17   jury, that I am just --

18       MR. PORTER: To go by the prosecution's argument

19   you can't impanel a new jury either and at that point

20   you are required to impose a life sentence. In fact --    11:28AM

21       THE COURT: Even though you are seeking -- the

22   memo says memorandum concerning his right to a jury

23   trial with respect to resentencing, you are not really

24   under any scenario expecting or asking that a jury

25   actually be impaneled. You are simply indicating that

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 950

| | |
|---|---|
| 1 | if either M -- if the Court would adopt your argument |
| 2 | in M that 2929.06 does not apply retroactively, or if I |
| 3 | would accept the argument that he should be able to |
| 4 | withdraw the previous jury waiver, that that would |
| 5 | simply under either scenario eliminate the Court from |
| 6 | being able to impanel a new three-judge panel to hear |
| 7 | the case, and that we would then be left with the |
| 8 | options that existed in the previous version of 2929.06 |
| 9 | which is to impose the life sentence? More or less? |

10    MR. PORTER: More or less. Again, I'm not trying    11:30AM
11    to mince words. Under the prior 2929.06 if that
12    incorporates 2929.03 you could reconstitute the panel
13    if you have the same members available. So given that
14    caveat, and I think at that point, when the Court
15    reaches that decision you are bound by -- again, I am
16    going by analogy if I could -- State vs. Penix,
17    P-E-N-I-X, which I am sure the Court is familiar with.

18    The only other point I want to touch base on, and
19    it seems to be a glaring error in their argument is the
20    prosecutor ended up saying Red waived his 6th Amendment    11:30AM
21    right in 1983. Well, since that was prior to Red, he
22    had no Sixth Amendment right to waive and he couldn't
23    have waived anything that he didn't know about. So
24    those are my two rebuttal points.

25    THE COURT: All right. That matter will be taken

| | |
|---|---|
| 1 | under advisement. And the Court will issue a written |
| 2 | decision on that motion simultaneous with the decisions |
| 3 | that I will render on the motions that I have taken |
| 4 | under advisement yesterday. This leaves pleading M. |
| 5 | I'm sorry, Mr. Porter, you have something -- |
| 6 | MR. PORTER: I'm sorry, Your Honor. You are going |
| 7 | there. You are well ahead of me. |
| 8 | THE COURT: That leaves pleading M. |
| 9 | MR. PORTER: We have made -- or I have made a |
| 10 | tactical choice today. I think M speaks for itself. I |
| 11 | am not going to reiterate it for the Court. I am going |
| 12 | to file additional authority. Earlier we were talking |
| 13 | about meeting prevailing standards of practice, and I |
| 14 | think I may have missed on this. There is a Common |
| 15 | Pleas Court decision out now. It is my understanding |
| 16 | they did find 2929.06 is unconstitutional. I will file |
| 17 | that with the Court next week. |
| 18 | THE COURT: But before you forego any argument and |
| 19 | I did read your argument multiple times as I did the |
| 20 | State's, and I guess if you would simply address the |
| 21 | argument that this is a procedural statute, or remedial |
| 22 | and that therefore can be employed retroactively, I |
| 23 | understand there is language specifically in the |
| 24 | statute that says that it applies retroactively, but |
| 25 | then there are the additional arguments as to whether |

11:31AM

11:32AM

| | |
|---|---|
| 1 | they can, in fact, do that. And it seems to me to |
| 2 | hinge on the issue of whether it is procedure or |
| 3 | substantive. Did you have anything further above and |
| 4 | beyond what you have already cited that you wish me to |
| 5 | consider on that issue? |
| 6 | MR. PORTER: I have nothing, Your Honor. |
| 7 | THE COURT: All right. Do you have wish to submit |
| 8 | on that? |
| 9 | MR. EICHEL: Your Honor, I am happy to submit this |
| 10 | motion on what I have filed and I would like to point |
| 11 | out how familiar I am with this issue. I am counsel of |
| 12 | record for the State in State vs. Walls. The case is |
| 13 | highly relevant to these issues. And that is why Walls |
| 14 | -- the case of Walls is woven throughout my memorandum |
| 15 | on the State issue, state retroactivity issue and the |
| 16 | ex post facto issue. My point, just a point of |
| 17 | reference, it's kind of odd that in the trial court and |
| 18 | the Court of Appeals the federal ex post facto issue |
| 19 | wasn't even litigated. It sort of arose in the Supreme |
| 20 | Court of Ohio as an additional issue that was thrown in |
| 21 | a reply brief of defense counsel. |
| 22 | THE COURT: Are you talking about in the Walls |
| 23 | litigation? |
| 24 | MR. EICHEL: Yes, in Walls. So I had to relearn |
| 25 | the law before oral argument in Walls. It was quite |

11:33AM

11:34AM

JILL M. CUTTER, RPR
(513) 785-6596

1    instructive to me to get into the case law on this.

2         My argument in this case is that this case is an

3    even better example of the matter of procedure,

4    remedial law than was Walls. Even better. But it is

5    highly analogous. In Walls we had a choice between

6    juvenile court and Common Pleas Court; what is the

7    form, what is the trial judge to hear this case. This

8    case is nothing more than that, that very same thing

9    whether there are three judges here or three new

10   judges. It's that simple.                                    11:35AM

11        THE COURT: Okay. Any last words based on that?

12        MR. PORTER: Again, I am trying to do this by

13   analogy. I think it might be instructive -- I don't

14   know quite how to do this, submit an additional one

15   page brief, to look at State vs. Williams. I

16   understand it was a different issue, but it would be

17   interesting to see if they dealt with the remedial

18   issue in that aspect. I think it is Williams which was

19   the Toledo case which they found they didn't have the

20   language. I know the statute has been amended. I'm        11:35AM

21   not going there for that purpose.

22        THE COURT: You are saying to look at the analysis

23   in Williams to see if they had any -- addressed that

24   particular issue?

25        MR. PORTER: The remedial aspect. It's my

JILL M. CUTTER, RPR
(513) 785-6596

|  |  |
|---|---|
| 1 | recollection and I am going from the cuff and I know |
| 2 | the prosecutor is getting ready to a respond. I'm not |
| 3 | too sure Williams would prevail under his challenge of |
| 4 | 2929.06. |
| 5 | THE COURT: I will take a look at it. |
| 6 | MR. PORTER: If it was, in fact, a remedial |
| 7 | statute. |
| 8 | THE COURT: I will take a look at it. I don't |
| 9 | remember if they addressed that in williams or not. |
| 10 | MR. EICHEL: My recollection is the Williams |
| 11 | Supreme Court decision did not address it because it |
| 12 | became moot. I don't know what it did in the Court of |
| 13 | Appeals. That may be where he is going. |
| 14 | MR. PORTER: If I am thinking of the right |
| 15 | decision, it didn't moot out. It was the one that |
| 16 | declared 2929.06. This issue has been before the Ohio |
| 17 | Supreme Court. I need to back up. I don't know where |
| 18 | the Court is. This issue was squarely before the |
| 19 | court. The Court, two years ago on an ex post facto |
| 20 | and also on a statutory challenge -- |
| 21 | THE COURT: They found the legislature had been |
| 22 | silent on whether it was supposed to be retroactively |
| 23 | applied and then of legislators went back and put the |
| 24 | language in saying it is retroactive. Right. Okay. I |
| 25 | am familiar with the case just not chapter and verse |

11:36AM

11:37AM

JILL M. CUTTER, RPR
(513) 785-6596

64

1      off the top of my head.  I will look at it again with

2      your thoughts in mind to see whether there is anything

3      of merit in that.

4              MR. PORTER:  We have nothing else to add on this

5      issue other than assuming that the Max White case is on

6      point.  We will file the trial court opinion with

7      respect to 2929.06.

8              THE COURT:  Just as additional authority?

9              MR. PORTER:  Yes.

10             THE COURT:  All right.  This will also be taken          11:37AM

11     under advisement.  By my count, it appears that we have

12     addressed all of the pending motions.  They are all

13     under advisement at this time with the exception of P

14     and N, which are you going to be providing additional

15     argumentation on the standing issue.  We discussed that

16     yesterday.  And then we will be coming back I believe

17     on October 10th is that --

18             MR. OSTER:  Correct, Your Honor.

19             THE COURT:  -- without looking at my calendar that

20     is what I recall at 1:30 to hear the argument on both       11:38AM

21     the standing issue and then if appropriate the merits

22     of P and N.

23             Is there anything that we need to do between now

24     and then or can we stand in recess so that I can

25     properly consider the motions leading up to that?

| | |
|---|---|
| 1 | MR. PORTER: Could I have just -- I don't mean to |
| 2 | be rude and extend the proceedings. I know it's been |
| 3 | long. Can counsel and I just have a minute to confer |
| 4 | with the client please, Your Honor. |
| 5 | THE COURT: Absolutely. Sure. |
| 6 | MS. COOK-REICH: Thank you, Your Honor. |
| 7 | (Off the record discussion between defense counsel |
| 8 | and defendant.) |
| 9 | THE COURT: When we went off record, Mr. Porter, |
| 10 | you requested a little bit of additional time to have |
| 11 | discussions with your client and with co-counsel. Have |
| 12 | you had that opportunity? |
| 13 | MR. PORTER: We have. I thank the Court for the |
| 14 | courtesy. We have nothing to add to proceedings at |
| 15 | this point, Your Honor. |
| 16 | THE COURT: All right. Mr. Oster? |
| 17 | MR. OSTER: Very briefly, Your Honor. One was |
| 18 | something we talked about yesterday, but to make sure |
| 19 | it is put on the record again today I understand there |
| 20 | may be argument as to it. I want to put it on the |
| 21 | record. The State probably will be in the interim |
| 22 | filing a motion for reciprocal discovery. |
| 23 | The other is the State will probably be filing a |
| 24 | motion to have the District Court release any evidence |
| 25 | they still may have in this case just so we make sure |

11:40AM (line 10)

11:40AM (line 20)

1    any and all evidence has gotten back into Butler County

2    from the District Court and other things.  Just to make

3    the Court aware the State may be filing two motions in

4    those two regards.

5        THE COURT:  All right.  The motion with regard to

6    the District Court wouldn't be before me.  That would

7    be a motion that you are saying you would be filing in

8    the District Court asking them to release exhibits.  I

9    imagine that you would probably join in their request

10   in that regard so that you would that information, is        11:41AM

11   that --

12       MR. PORTER:  We would not oppose it, Your Honor.

13       THE COURT:  All right.  Thank you.  That is duly

14   memorialized and if there is nothing further at this

15   time I will retire to deliberate on your motions and I

16   will obviously attempt to have decisions forthwith with

17   the exception of the one that I am awaiting further

18   argumentation on.  All right.

19       Counsel, unless contacted and advised that we need

20   to meet prior to that time, I will see everyone at 1:30    11:41AM

21   on October 10th.  We are in recess.

22       (Proceedings concluded at 11:41 a.m.)

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

67

1

2    STATE OF OHIO              )

3                              )    SS.    REPORTER'S CERTIFICATE

4    COUNTY OF BUTLER )

5              I Jill M. Cutter, RPR, do hereby certify that I am

6    a Registered Professional Reporter and Notary Public within

7    the State of Ohio.

8              I further certify that these proceedings were

9    taken in shorthand by me and by electronic means at the time

10   and place herein set forth and was thereafter reduced to

11   typewritten form, and that the foregoing constitutes a true

12   and accurate transcript, all done to the best of my skill and

13   ability.

14             I further certify that I am not related to any of

15   the parties hereto, nor am I in any way interested in the

16   result of the action hereof.

17             Dated at Hamilton, Ohio, this 31st day of March,

18   2008.

19

20

21             Jill M. Cutter, RPR
               Official Court Reporter
22             Butler County Common Pleas
               Hamilton, Ohio   45011

23

24

25

                        JILL M. CUTTER, RPR
                          (513) 785-6596

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 959

IMAGED

1

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

-------------------------------------

STATE OF OHIO,

    Plaintiff,          Case No. CR-1983-12-0614

                        CA 09-10 -263

    vs.    FILED BUTLER CO. HONORABLE ANDREW NASTOFF
             COURT OF APPEALS

VON CLARK DAVIS,  JAN 08 2010    □ORIGINAL

    Defendant.  CINDY CARPENTER
             CLERK OF COURTS

-------------------------------------

- - -

MOTION HEARING

TRANSCRIPT OF PROCEEDINGS

November 24, 2008

- - -

JILL M. CUTTER, RPR
(513) 785-6596



2

```
 1    APPEARANCES:

 2

 3           On behalf of the plaintiff:

 4               MICHAEL A. OSTER, JR., ESQ.
                 Assistant Butler County Prosecuting Attorney
 5               11th Floor
                 315 High Street
 6               Hamilton, Ohio 45011
                      and
 7               DANIEL G. EICHEL, ESQ.
                 Assistant Butler County Prosecuting Attorney
 8               11th Floor
                 315 High Street
 9               Hamilton, Ohio 45011

10           On behalf of the defendant:

11               MELYNDA COOK-REICH, ESQ.
                 Repper, Pagan, Cook
12               1501 First Avenue
                 Middletown, Ohio 45044
13                    and
                 RANDALL PORTER, ESQ.
14               Assistant State Public Defender
                 250 East Broad Street
15               Suite 1400
                 Columbus, Ohio 43215
16

17

18

19

20

21

22

23

24

25
```

3

1      Transcript of Proceedings

2           Morning Session

3        - - - - - - - - - -

4           THE COURT: We're on record in State of Ohio vs.

5      Von Clark Davis. CR83-12-0614. The record will

6      reflect that the defendant Von Clark Davis appears with

7      counsel, Mr. Porter and Ms. Cook-Reich. The States

8      representatives assistant prosecutors Dan Eichel and

9      Michael Oster appear on behalf of the State.

10          Counsel, I summoned you here for a hearing because       02:18PM

11     there had been some new motions filed that I thought

12     necessitated a brief hearing. I also wanted to update

13     you on the status of the earlier motions that have been

14     argued to the Court. I am going to indicate to you

15     that I have a draft of my decision completed at 22

16     pages, probably will still have the final of that

17     within the next day or two. I expect it to be filed

18     and provided to counsel. If not, prior to close of

19     business this week, certainly early next week just for

20     your planning purposes. I wanted to advise you of       02:18PM

21     that.

22          I would like to go through and catalog the issues

23     that I have before me, and make sure that we are all on

24     the same sheet of music. First, I have a second motion

25     to be heard ex-parte on funding issues. I have a

JILL M. CUTTER, RPR
(513) 785-6596

4

1    defendant's motion to continue the resentencing hearing

2    that is currently scheduled to commence on

3    December 15th, and then I have the State's response to

4    the defendant's motion to continue.

5         Does anyone else have anything else that is on the

6    agenda for today or items that need to be discussed

7    today?

8         MR. OSTER:  Your Honor, the only other thing I

9    would point out would be the State did file a motion

10   for discovery.  The defense has filed a motion in        02:18PM

11   opposition to providing the State discovery.

12        JUDGE NASTOFF:  I see that.  Von Clark Davis'

13   response to discovery?

14        MR. OSTER:  Yes, Your Honor.

15        JUDGE NASTOFF:  All right.

16        MR. OSTER:  Which in part I would say does tie

17   into what you have listed as on our sheet of music

18   number two.  And that goes into our response to a

19   motion to continue as one of the issues as to why we

20   filed that response in that manner.                       02:18PM

21        JUDGE NASTOFF:  All right.  Mr. Porter or Ms.

22   Cook-Reich, do you see anything else we need to be

23   discussing at today's hearing or is that pretty much --

24        MS. COOK-REICH:  That is it, Your Honor.

25        JUDGE NASTOFF:  You requested to be heard on the

JILL M. CUTTER, RPR
(513) 785-6596

5

1    funding issue prior to discussing the motion for a

2    continuance. And is there a particular reason?

3    MS. COOK-REICH: It goes into why we are

4    requesting for a continuance and we thought that you

5    having that information prior to -- it would be hard to

6    say we would like a continuance to have the prosecutor

7    here in the room and you go, why? And we go, well, we

8    can't tell you yet. We thought that you would like to

9    hear that first.

10    JUDGE NASTOFF: All right. All right. Let me ask

11    this: You reference in here that the request to be

12    heard ex-parte, this is essentially a continuation of

13    the previous ex-parte hearing; is that correct?

14    MS. COOK-REICH: It is regarding the same issue we

15    last were here on ex-parte.

16    THE COURT: So this isn't a separate request for

17    additional funding for some -- a separate expert. This

18    is regarding --

19    MS. COOK-REICH: We need to move some different

20    funds around.

21    JUDGE NASTOFF: Does the State wish to be heard on

22    their request? I mean, I understand the State's

23    position previously, that -- and I share the State's

24    position in large part that ex-parte motions are not to

25    be granted Willy-Nilly; that it is not an automatic

02:18PM

02:18PM

6

1    type of thing.  But it appears to me that this is a

2    continuation of a previous issue that the Court already

3    determined was appropriate to be heard ex-parte.  The

4    only thing I wanted to clarify first is the precise

5    scope of it because I think that it is appropriate that

6    the State understand the very limited scope that we

7    would be addressing ex-parte and that we stick only to

8    that issue until we invite the State back in.

9        MR. OSTER:  To try to respond as briefly as

10    possible, we would note our continuing objection that    02:18PM

11    we filed, written, and hat we have argued to the Court.

12    We understand the Court has ruled on that.  If it is a

13    continuation of that, the Court's ruling is the Court's

14    ruling.  We will ask our objection be noted, but that

15    is all.

16        JUDGE NASTOFF:  All right.  Well then, with that

17    being said, the Court is going to grant the defense's

18    request to be heard ex-parte on funding issues

19    regarding what they indicate is a -- concerning a

20    potential modification of the Court's previous entry.    02:18PM

21    With that being said, I do want to address these other

22    issues, so counsel if you could remain close by so that

23    that when we conclude this portion, we can come back in

24    and discuss the other substantive issues, but at this

25    point in time, I would suggest that we go into the

7

1     ex-parte session.  And that would be the order at this

2     point in time.

3          (At this time, an ex-parte hearing was conducted

4     outside the presence of the assistant prosecuting

5     attorneys.)

6          JUDGE NASTOFF:  The record will reflect that we

7     are back in full session in State of Ohio vs. Von Clark

8     Davis.  The defendant and his counsel remain present.

9     Mr. Eichel and Mr. Oster from the prosecutor's office

10    have again joined us.  And I believe the next issue for          02:19PM

11    us to address would be the motion to continue the

12    sentencing hearing.

13         The defendant's motion indicates that they needed

14    additional time to fully prepare their penalty phase

15    mitigation case and that they would not be able to be

16    in a position to be fully compliant with their duties

17    under the law by the December 15th date.

18         I have the State's response, which indicates and

19    kind of reminds the Court that we have a remaining

20    issue that is pending before the Ohio Supreme Court           02:19PM

21    regarding the Court's earlier order regarding prison

22    records.  And so based on the fact that that issue has

23    not yet been ruled upon, the written motion of the

24    State indicates they do not oppose the defendant's

25    motion to continue the sentencing proceedings herein.

JILL M. CUTTER, RPR
(513) 785-6596

8

1   Can I make an inquiry whether anyone knows what the

2   current status of the matter before the Ohio Supreme

3   Court is and what the timing is if it is known?

4       MR. OSTER:  I looked this morning on their online

5   docket it still hasn't been ruled on.  The case is

6   open.  It is just pending.  Whether or not the Court, I

7   believe I will be correct, whether or not the Court

8   will accept jurisdiction in the case to hear it,

9   whether they are going deny it, based upon that

10   decision could determine a lot of different things, but   02:19PM

11   as of, I believe Mr. Eichel were in my office checking

12   at 8:45 this morning, and there is absolutely nothing

13   the online docket to indicate.  And there is --

14       JUDGE NASTOFF:  It's not been set for any argument

15   or --

16       MR. OSTER:  No, Your Honor.  Nothing will happen

17   until they would accept jurisdiction.  If they accept

18   jurisdiction, it would get a briefing  schedule and

19   would continue on.  If they deny jurisdiction, the case

20   would be dead as far as they are concerned.  But we   02:19PM

21   have no indication when they are going to decide it.

22   The only thing we can tell the Court, at least from the

23   State's behalf, is that nothing as of 8:45 this morning

24   was decided as to that issue.

25       JUDGE NASTOFF:  All right.  Well --

1       MR. OSTER: If I may, it kind of dovetails on to

2  it that the reason we wrote that and typically the

3  State would not be in a position to -- we don't

4  typically agree to a continuance. We understand speedy

5  trial issues and things like that, but without being

6  able to look at those records which obviously we have

7  already argued and rehashed a lot of different things

8  to this Court, the importance of those, without being

9  provided discovery, right now the State feels like we

10  are half blind in this case and to go forward and to do   02:19PM

11  what we are supposed to do in this case to fulfill our

12  role, mr. Eichel and I are of the position for the

13  State of Ohio, we can't go into this and represent the

14  State fully, half blind. And that is our concern and

15  that is why we wrote about the posture of the case

16  being what we see is the problem.

17       JUDGE NASTOFF: All right. Well, it appears at

18  least that there is agreement that for varying reasons

19  both sides don't believe that they are going to be in a

20  position to be ready to go forward with the   02:19PM

21  resentencing as scheduled on December 15th.

22       I know this Court had hoped to be able to resolve

23  the matter during that time period, but obviously the

24  Court doesn't want to let the tail wag the dog, so to

25  speak. what is important is that the case is done

1    right and that everyone is in a position to be able to

2    perform their duties appropriately. And it doesn't

3    appear to me that either side is not ready because they

4    have been dilatory in any way. It appears that both

5    sides are fulfilling their duties with vigor and

6    exercising appropriate due diligence, and that

7    circumstances have simply prevented us from being able

8    to go forward at that time.

9        Since it would be the defendant's motion, I don't

10   believe that there would be any time issues involved in   02:19PM

11   any delay regarding the federal court's order. There

12   had previously been a waiver, so to speak, of any time

13   limitations put on by the federal court. But I believe

14   that since this would be the defendant's motion, any

15   additional time would be taxed to the defense for

16   purposes, if not for speedy trial purposes, at least

17   for purposes of complying with the time requirements

18   ordered by the federal court. Is there any

19   disagreement with that from the defense?

20       MS. COOK-REICH: No, Your Honor. That would be   02:19PM

21   our position also and we fully discussed that with our

22   client. He has executed a declaration it's attached to

23   our motion to continue. He understands that this would

24   be taxed to him and it would not be an issue that we

25   were requesting.

11

1          JUDGE NASTOFF: All right. Well, I understand

2    where to a certain extent shooting in the dark since we

3    don't know exactly when the Supreme Court will have

4    made a decision. It could be tomorrow. It could be

5    three months. It could be six months from now. We

6    just don't know. I'm not looking to delay the case any

7    longer than is necessary, but I also don't want to be

8    in a position where everybody is geared up and we are

9    still waiting.

10          I have to say that I am somewhat hesitant to delay    02:19PM

11    the case solely on the basis of the Ohio Supreme Court

12    not having decided that issue. I understand the

13    State's position, and I don't argue with that, but

14    simply my concern is that there could be any number of

15    interlocutory appeals that could be sought in a case on

16    decisions that turn out to be -- that they aren't even

17    final appealable orders and if we continuously delayed

18    those matters, I mean we could never get to the

19    sentencing hearing. I certainly wouldn't want to set a

20    precedence that on that basis alone this Court would    02:19PM

21    entertain continuing, continuing and continuing the

22    case, but I think there has been a confluence here of

23    circumstances that dictate that we do continue the

24    matter.

25          Consistent with your representations made, you

JILL M. CUTTER, RPR
(513) 785-6596

12

1    have indicated that you feel that you would be ready to

2    proceed in the May to June time frame; is that correct?

3        MS. COOK-REICH: Yes, Your Honor. We request a

4    continuance to that time.

5        JUDGE NASTOFF: what does the State's schedule

6    look like?

7        MR. OSTER: Your Honor, to be honest with this

8    Court, if discovery were given tomorrow and if the

9    Supreme Court decided tomorrow we would be ready to go

10   in two weeks. So we are pretty much open. we will be          02:19PM

11   ready to go as soon as the Court can get us in and we

12   don't want to delay this any farther than we need to so

13   that would be the representations I would make on

14   behalf of the State.

15       JUDGE NASTOFF: Fair enough. Are we still

16   anticipating setting aside a week for the mitigation

17   case?

18       MS. COOK-REICH: Yes, Your Honor. No more than a

19   week, Your Honor.

20       JUDGE NASTOFF: Okay.                                       02:19PM

21       MS. COOK-REICH: Even if we were allotted a jury

22   it wouldn't take longer than a weak.

23       THE COURT: I think even by Mr. Porter's

24   arguments, it doesn't appear that a jury is an issue.

25   I believe if I remember Mr. Porter's argument, if the

1  Court were to find that a three-judge panel couldn't

2  hear the case, that he thinks that a jury wouldn't be

3  appropriate either. It would be that the Court would

4  have to impose one of the life options. I think -- am

5  I correct?

6      MR. PORTER: That is correct, Your Honor.

7      JUDGE NASTOFF: So I think under either scenario,

8  we are looking at a three -judge panel. It's just

9  whether it is going to go forward as contemplated under

10  the current version of the statute or whether the          02:19PM

11  hearing would be quite short if you were to prevail.

12      MR. OSTER: On behalf of the State, I don't think

13  we would take probably much more than a half a day with

14  our presentation.

15      JUDGE NASTOFF: I'm not suggesting that this case

16  resembles anything else that the Court has done any

17  time recently, but typically in this Court's experience

18  the State case at resentencing is fairly short. Even

19  the defendant's case is what I have seen at most two

20  days. So I figure if we go four days that ought to be   02:19PM

21  plenty of time and then obviously we would make the

22  appropriate adjustments if need be. How about Monday

23  May 11th, that week?

24      MS. COOK-REICH: Yes, Your Honor. That would be

25  good for the defense.

14

1    JUDGE NASTOFF:  Does that work?

2    MR. OSTER:  Yes, Your Honor.

3    JUDGE NASTOFF:  Can I have a pretrial order?  That

4    will get us past any potential scheduling issues, too,

5    with trials and any judges that have kids with spring

6    break issues, counsel with kids with spring break

7    issues, anything like that.

8    I have a pretrial order here for counsel to sign

9    setting the new sentencing hearing on May 11th, 2009,

10   at 9:00 a.m. scheduled for four days indicating that          02:19PM

11   the 12-15-08 sentencing hearing is continued to that

12   date on motion of defendant's counsel without objection

13   from the State.

14   Why don't we go ahead and have that signed.  Have

15   Mr. Davis sign it as well, just indicating he is aware

16   of his new date.  That will be the order in that

17   regard.

18   Now, there is the matter of the dispute on

19   discovery.  And let me see if I can boil down the

20   arguments of both sides here and make sure that I am          02:19PM

21   understanding where each side is coming from on this

22   issue.  From the State's perspective, it's my

23   understanding that the State argues that there was a

24   request for discovery filed in the original action in

25   this case in the original trial in this case, that that

JILL M. CUTTER, RPR
(513) 785-6596

15

1   was a general discovery request.  That it triggered a

2   reciprocal duty under Criminal Rule 16 on the part of

3   the defense to provide reciprocal discovery and that

4   although this is a de novo sentencing hearing, it is a

5   sentencing hearing that is a part of CR83-12-0614, the

6   same case, and therefore that previous discovery

7   request and reciprocal discovery duty should continue

8   to apply in this hearing.  Is that roughly your

9   position?

10      MR. EICHEL:  Yes, Your Honor, exactly.  And 16(C)        02:19PM

11   is the basic authority that says both sides have a

12   continuing duty to comply with the original discovery

13   in this case.  So Judge Brewer by the same token on

14   February the 8th, 1984, issued an order to the defense

15   to provide discovery in response to the State's April

16   25th, 1984 -- their original request was April 25th,

17   1984.  The State responded giving everything that they

18   were entitled to under that request.  The order says

19   defendant shall be ordered to provide discovery to the

20   State under Criminal Rule 16(C).  And Rule 16, I forget      02:19PM

21   which subparagraph, it is beyond (C), there is a

22   continuing duty and that is what we have always

23   understood.  If there is a re-trial or re-hearing,

24   resentencing the State is under a continuing duty to

25   disclose without any necessity for a new request for

16

1    discovery. By the same token, both sides have that

2    continuing duty.

3        JUDGE NASTOFF: All right. And then my

4    understanding through the defense argument is that

5    essentially that was a discovery request that was filed

6    by previous counsel some 25 years ago, that since this

7    is a de novo sentencing hearing, a new sentencing

8    hearing, it should not be viewed as a continuation of

9    the previous sentencing hearing, but rather as a new

10   proceeding, and that since the defense, during this

11   period of litigation, has requested only a specific and

12   limited demand for discover invoking certain

13   subsections of Criminal Rule 16, that their reciprocal

14   duty should only lie in those parallel specific

15   subsections of Criminal Rule 16 and not be -- not go

16   any farther than that. Is that a correct, I guess,

17   summary?

18       MR. PORTER: That is a fair statement and I think

19   this is very similar to some of the arguments that the

20   Court addressed in August of whether this is a whole

21   new proceeding or this is a continuation of the '84

22   proceedings.

23       JUDGE NASTOFF: All right. I'm going to tell you

24   that obviously this is not a circumstance that has

25   arisen before this Court before where we have had a

02:19PM

02:19PM

JILL M. CUTTER, RPR
(513) 785-6596

1    trial and then a separate sentencing hearing, and then

2    it be remanded 24 or 25 years after the fact back to

3    the Court for a de novo sentencing hearing.  So I am

4    not sure -- when I am asking for --  I can tell you

5    that I have not found any authority that even addresses

6    any scenario or factual scenario remotely similar, but

7    I would ask if counsel has -- I know there have been in

8    the past cases that have been remanded for

9    resentencing, certainly not the first time in history

10   that that has ever happened.  Has this issue ever arose

11   to counsel's knowledge in prior case law?  Is there any

12   authority for the State's position or for the

13   defendant's interpretation or is this really a matter

14   of where the Court is going to have to be guided by the

15   language of the rule itself and by analogy to some

16   similar situation?  Mr. Oster?

17         MR. OSTER:  Your Honor, I can speak at least a

18   little bit on behalf of the State.  I have looked, not

19   to the extensive fact that I want to say a hundred

20   percent, but I did look and could not find a completely

21   analogous situation to this.  It does seem to be a bit

22   of anomaly.  I did look in a couple of other states

23   even to see some Federal rules.  There are some Federal

24   things that touch on, but do not -- I wouldn't say that

25   they address on all fours, or don't squarely look at

18

1    this issue, so in my brief kind of preparing for

2    today's hearing, just looking at the issue itself in a

3    once-over kind of way, I did not see anything that I

4    think would be a hundred percent authoritative to this

5    Court.

6        While the State understands it is a de novo by the

7    6th Circuit, it doesn't take away, in the State's

8    position the fact that this is still a two-part hearing

9    and we are still in part two, but you don't have a part

10   two, without a part one.                                02:19PM

11       But to answer the Court's question, I will not

12   keep going, I did not find anything at this point that

13   I believe is hundred percent authoritative on this

14   issue.

15       JUDGE NASTOFF: Are there any situations that you

16   views as analogous to this situation? For example,

17   cases where there has been a substitution of counsel in

18   the course of the case and there was previous discovery

19   requested by preceding counsel, but subsequent counsel

20   sought not to be bound? Are there any situations like   02:19PM

21   that that have arisen that have generated case law to

22   your knowledge?

23       MR. OSTER: To my knowledge, I ran across a couple

24   where they talked about substitution. They weren't the

25   ones that I read at full scale. They did not seem to

19

1    be saying, at least the ones I found, because I did try

2    that avenue and again even more brief than other, maybe

3    one or two times I punched something in trying to find

4    some terms in Westlaw. And while I found some that

5    talk about substitution, I didn't find any where then

6    it was attempted to be limited from what counsel had

7    first requested and then the State objected to that.

8    And I did not find any where there was substitution in

9    my brief looking that had this exact kind of footprint

10   where there was a full request. It was given. It was          02:19PM

11   supplemented. There was the order making reciprocal

12   discovery. Reciprocal discovery was given, and then

13   later on when substitution of counsel would happen,

14   that counsel would say no, we only want limited and try

15   to take everything away from what was previously done.

16   I did not find that even in substitution of counsel

17   cases.

18        JUDGE NASTOFF: Mr. Porter or Ms. Cook-Reich, same

19   question: Is there any authority that you have come

20   across from any situation that would be factually          02:19PM

21   analogous that you could point the Court to, to assist

22   the Court in resolving this issue or if not factually

23   similar, at least an analogous situation where the

24   Court could, I guess, it would grant some type of

25   additional authority to your position?

1    MR. PORTER:  I know of no additional authority and

2    this is the second re-trial -- resentencing hearing I

3    have been involved with, Your Honor, and it did not

4    come up in the earlier resentencing hearing.

5    JUDGE NASTOFF:  All right.  And I just want to see

6    if I follow the ramifications of the request here.

7    Mr. Porter, are you suggesting that if the earlier

8    request for discovery does not apply to you, and if we

9    are only to be guided by your new limited request, what

10   do you see as being the fallout of that?  Is it that          02:19PM

11   you are not going to be required to disclose reports

12   even of witnesses that you may have testify?  Is it --

13   I mean, what is the -- you don't have to provide a list

14   of who you may intend to call?  I'm just trying to

15   figure out what the fallout of that would be in terms

16   of how we proceed.

17   MR. PORTER:  I believe that Mr. Davis would have

18   no obligation under Criminal Rule 16.  That is why we

19   drafted our motion like we did, Your Honor.  I do not

20   know honestly, and I believe this is an issue left open   02:19PM

21   for litigation, whether the Court has the ability to

22   order an expert to prepare a report outside Criminal

23   Rule 16.

24   JUDGE NASTOFF:  All right.  But what you are

25   suggesting is that he wouldn't have an obligation to

1    provide a list of witnesses -- to provide, I mean, I

2    don't know that he would be required.  I don't think

3    the experts would be required to prepare a report, but

4    if there is a report prepared, generally if there is

5    discovery issues, that would be provided if that

6    witness was going to be called.  But you are saying

7    that none of that would apply to Mr. Davis going

8    forward?

9          MR. PORTER:  That is correct, Your Honor.

10         JUDGE NASTOFF:  Is that how you see it?          02:19PM

11         MR. OSTER:  It's how they phrase it and how they

12   requested it.  The only thing I would bring to the

13   Court's attention is the only case I can think of that

14   has happened in this county that is even somewhat

15   similar and there wasn't a request by the State, is

16   *State vs. Donald Ketterer* where it did come back for

17   the non-capital issues and I know that the defense in

18   that case, Mr. Porter being counsel, did make a request

19   in that case for additional discovery at the sentencing

20   -- resentencing hearing of the non-capital.  The State   02:19PM

21   in that case, while we did not give Mr. Porter, and I

22   am sure he would admit to this, everything he thought

23   he was entitled to under that rule, we did provide more

24   discovery because the State -- this isn't the only case

25   we have said this, the State believes we do have that

1  continuing duty upon resentencing and if the case is

2  still going.  That is why we gave it in this case

3  itself.  We are not trying to do anything different

4  with the rules other than just say when a case comes

5  back if it's in a part two, part one still exists and

6  we still have that duty and that is all we are asking

7  the defense be held to as well, Your Honor.

8      JUDGE NASTOFF:  Go ahead.

9      MR. PORTER:  Cases run together.  It's been a

10  while.  My recollection, and I am just saying it's my          02:19PM

11  recollection, Your Honor, is that we did not get any

12  discovery in Mr. Ketterer's case on resentencing.  I

13  know we filed a Brady motion, and the Court denied the

14  Brady motion that we filed and that is my recollection

15  of the only discover request that was made.  I could be

16  wrong, but that is just my recollection.  I certainly

17  would be willing to file with the Court within two

18  days, copies of any discovery.  My recollection is, I

19  know it was a three-judge panel and I know the panel --

20  we argued the Brady motion up front.  The panel then          02:19PM

21  went into deliberations, came back and denied the

22  specific Brady motion.

23      JUDGE NASTOFF:  I don't need you to supplement

24  with any additional filings.  My access to the Ketterer

25  file is probably as good as yours.  I'm going to take

1   the matter under advisement.  And I'm going to issue a

2   decision.  I will try to get a decision out along with

3   the decisions on the other motions that are pending

4   before the Court, so that everyone has an appropriate

5   amount of time to react to that and to game plan

6   appropriately going forward given the new sentencing

7   date.  So with that being said, that matter will be

8   under advisement.

9       All right.  Is there anything further, then, that

10  we need to take up at this time that we haven't already      02:19PM

11  addressed?

12      MR. OSTER:  This is more housekeeping, Your Honor,

13  I don't believe you signed them because I had them

14  printed off and none are signed.  I don't believe you

15  signed yet the entry for transport for December 15th.

16  And if it is not signed, we don't have to vacate it.  I

17  have a lot of copies that I believe I was going to have

18  you sign today if it went.  So I will double-check that

19  and I will make sure that either way we get --

20      JUDGE NASTOFF:  If we need to vacate that order, I      02:19PM

21  will vacate it and we can put on a new transport order

22  for the May 11th date.  I mean, counsel, when would you

23  want Mr. Davis brought down?  Obviously, he would be

24  brought down at least the Friday before the Monday

25  hearing, but would you want him brought down any

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 982

1     earlier than that for preparation purposes?

2        MR. PORTER: Could we have the Thursday before as

3     opposed to the Friday before, Your Honor?

4        THE COURT: Mr. Oster, would you be so kind as to

5     use that date? I need to look. Let me see. To have

6     him transported on Thursday, May 7th?

7        MR. OSTER: Yes, Your Honor.

8        THE COURT: All right. If there is nothing

9     further, then, on this matter, we will be in recess.

10     We don't have anything that I can see docketed, any    02:19PM

11     further hearings between now and May 11th. Are we all

12     right with leaving it that way or should we set some

13     type of a final pow-wow in the weeks leading up to

14     that? Or maybe even on that Friday the 8th just to

15     assure anything we need?

16        MR. PORTER: On behalf of Mr. Davis, we don't

17     think we need a date certain. We would like to leave

18     it open if an issue comes up prior to May 11th, that we

19     could approach the Court and the Court could schedule a

20     hearing as it may deem fit.    02:19PM

21        JUDGE NASTOFF: I have tried to make a practice of

22     being flexible in those types of situations. Beyond

23     that, any request from the State?

24        MR. EICHEL: Nothing that we can foresee. Thank

25     you.

1     JUDGE NASTOFF: Obviously, if something does come

2 up that wasn't foreseen today, then counsel file the

3 appropriate motions and get it -- bring my attention to

4 it and we will get things put together so that we can

5 get back together on the record prior to that time.

6     As it stands at this point in time, we will be in

7 recess on this matter until 9:00 a.m. on May 11th,

8 when we will proceed. I will send out an updated

9 e-mail to the judges, so that they can have that date

10 available in the event that we go forward with a new

11 three-judge panel. And it is going to be based on the

12 same list that was selected I believe in, I want to say

13 it was in March, and if memory serves the order was

14 Spaeth, Pater, Powers, Hedric, Oney.

15     MR. OSTER: Correct, Your Honor. And it was

16 March 6, '08 when that was done.

17     JUDGE NASTOFF: All right. Fair enough. We are

18 in recess.

19     (Proceedings concluded at this time.)

20

21

22

23

24

25

02:19PM

26

1

2  STATE OF OHIO            )

3                          )  SS.  REPORTER'S CERTIFICATE

4  COUNTY OF BUTLER         )

5         I, JILL M. CUTTER  RPR, an Official Court Reporter

6  and Notary Public within the State of Ohio do hereby certify

7  that the foregoing proceedings were taken in stenotype by me

8  at the time and place herein set forth and thereafter reduced

9  to typewritten form;

10         That the foregoing 25 pages constitutes a true and

11  accurate transcript of the proceedings held, all done to the

12  best of my skill and ability.

13         I further certify that I am not related to any of

14  the parties hereto, nor am I in any way interested in the

15  result of the action hereof.

16         IN WITNESS WHEREOF, I have hereunto set my hand at

17  Hamilton, Ohio, this 22 day of December, 2009.

18

19

20  _____

21  JILL M. CUTTER, RPR
    Official Court Reporter

22  Butler County Common Pleas
    Hamilton, Ohio  45011

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

1

1                 COURT OF COMMON PLEAS

2                 BUTLER COUNTY, OHIO

3       -----------------------------

4   STATE OF OHIO,

5      Plaintiff,      Case No. CR83-12-0614

6                 HONORABLE ANDREW NASTOFF

7       vs.

8   VON CLARK DAVIS,

9      Defendant.

10      -------------------------------------

11

12

13

14

15               - - -

16           MOTION HEARING

17       TRANSCRIPT OF PROCEEDINGS

18          APRIL 8, 2009

19

20              - - -

21

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

2

1    APPEARANCES:

2

3        On behalf of the plaintiff:

4            DAN EICHEL, ESQ.
             MICHAEL OSTER
5            Assistant Prosecuting Attorneys
             315 High Street, 11th Floor
6            Hamilton, Ohio 40511

7        On behalf of the defendant:

8            MELYNDA COOK-REICH, ESQ.
             RANDALL PORTER, ESQ.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

3

1
2                  TRANSCRIPT OF PROCEEDINGS
3                      MORNING SESSION
4                   * * * * * * * * * *
5          THE COURT:  All right.  We are on record in State
6      of Ohio vs. Von Clark Davis.  This is CR83-12-0614.  I
7      will note for the record that Mr. Randall Porter and
8      Melynda Cook-Reich appear on behalf of Mr. Davis.  For
9      the State of Ohio, assistant prosecutors Dan Eichel and
10     Michael Oster appear.  I will note as the first matter
11     that we should take up today, that Mr. Davis, himself,
12     is not present at today's hearing.  And to that point
13     I'm going to indicate that I am in receipt of a -- what
14     has been captioned, Von Clark Davis' Notice of Filing,
15     file stamped today's date, April the 8th, reads that,
16     "Von Clark Davis provides notice of filing with this
17     Court of the following attached document:  Waiver of
18     appearance of Von Clark Davis for the April 8th, 2009
19     pretrial."  And attached thereto is another document
20     captioned, "Waiver of appearance of Von Clark Davis for
21     the April 8, 2009 pretrial."
22          And it states, "I, Von Clark Davis, for the
23     limited purposes of the April 8th, 2009 pretrial, waive
24     my appearance at the April 8th, 2009 pretrial.  I have
25     been advised of my right to be present under both of

1     the Ohio and Federal Constitutions, as well the Ohio

2     Criminal Rules. I waive my rights under those

3     provisions." Signed by Von Clark Davis. And is that

4     his inmate number following that or --

5         MR. PORTER: That is correct, Your Honor.

6         THE COURT: All right. Mr. Porter, you filed this

7     document so I would just ask for you to document, for

8     purposes of the record, how you obtained this and

9     affirm that it is, in fact, Mr. Davis' wish to go --

10    for you to go forward today without his appearance.

11        MR. PORTER: It is Mr. Davis' wish to go forward

12    without his appearance today. I spoke with him on the

13    telephone on this past Monday, which would make it

14    April 6th, on a telephone call at approximately 9:00

15    a.m. While we were on the telephone, the waiver was

16    presented to him by the case manager. He read it over

17    and told me he would sign it. Obviously since he was

18    not in front of me I did not actually witness the

19    signature, but it was his indication once again, in

20    fact, he was calling. I had arranged the call and he

21    had also requested a call with me for the purpose of

22    making sure that the waiver was presented to the Court

23    and that he would not have to appear today.

24        I would, along those lines, ask the Court not to

25    somehow draw inference from the waiver that he doesn't

1     care about these proceedings. There was some other

2     matters going on in his case and it was our belief that

3     those matters needed to be taken care of rather than

4     his appearance today. Does the Court have any

5     additional questions, Your Honor?

6     THE COURT: Not at this time. I would certainly

7     never draw any such inference. I understand that there

8     are reasons having to do with trial preparation

9     strategy and those types of issues that factor in. I

10    just wanted to assure that it was a knowing,

11    intelligent and voluntary waiver of his appearance.

12    And based on your discussions, you can advise to the

13    Court as an officer of the Court that it is a knowing,

14    intelligent and voluntary waiver on his part?

15    MR. PORTER: It is, Your Honor.

16    THE COURT: All right. Does the State desire that

17    I inquire any further on that issue?

18    MR. EICHEL: No, Your Honor, we are satisfied with

19    this procedure.

20    THE COURT: All right. We will adopt that and

21    find that Mr. Davis has knowingly, intelligently and

22    voluntarily waived his appearance at today's hearing.

23    This is categorized as a pretrial. We currently have

24    the penalty phase in this case scheduled to begin on

25    Monday, May 11th, and we have blocked out that week, if

1    necessary, for those proceedings. Not knowing exactly

2    how long they may take, we wanted to block out the

3    entire week for that purpose. What I would like to do

4    is, and perhaps I will begin with the State and then

5    ask the defense, can you please -- let's, before we get

6    into the substance of any particular issue, let's

7    catalog the issues that we believe that we need to

8    address at today's hearing, so that we are all on the

9    same sheet of music and then we can address these

10   seriatim.

11      So Mr. Eichel or Mr. Oster, if you would care

12   to -- I just want to make sure that what you have got

13   on your plate and what I have on my plate and what the

14   defense has on their plate is all the same.

15      MR. EICHEL: Very good. Your Honor, as I

16   understand it, the State has two motions pending. One

17   is a motion for an order regarding discovery

18   forthcoming from the defense --

19      THE COURT: Okay.

20      MR. EICHEL: -- that was ordered back in December.

21   The second motion is the motion regarding procedure to

22   be followed on consideration of the trial transcript.

23      THE COURT: All right.

24      MR. EICHEL: It's also my understanding there is a

25   third -- there is an unresolved motion that the Court

1     has not resolved regarding a motion for reconsideration

2     of the order back a year ago, in March a year ago by

3     which the prison file of Mr. Davis was released to both

4     parties.

5          THE COURT:  Okay.  That was, if memory serves,

6     that was a motion for a stay, correct?  Or

7     reconsideration of a stay, I believe that was the

8     relief that was requested?

9          MR. OSTER:  I believe it was a reconsideration.

10          THE COURT:  Okay.  All right.  And anything else

11     that you are aware of?

12          MR. OSTER:  Nothing else as far as motions have

13     been filed.  The only other thing I would note briefly

14     for the record is the State did file supplemental

15     discovery yesterday on April 7th.  That supplemental

16     discovery said it was served by mail, but I talked to

17     at least one of defense counsel, I talked to Ms.

18     Cook-Reich, tried to call Mr. Porter, and I determined

19     after talking to defense counsel, it probably would be

20     better if I just hand served them here today.  They

21     would get it faster.  So it was not served by US mail

22     and I did give them a copy of that.  They each have one

23     here today.

24          THE COURT:  All right.  Okay.  The record will

25     reflect that.  Mr. Porter or Ms. Cook-Reich, do you

1     agree with the catalog of issues referenced by the

2     State? Are there any additional issues that you are

3     aware of that we need to take up today?

4          MS. COOK-REICH: No, Your Honor. We would agree

5     that that is what is set forth today and that is what

6     we are ready for.

7          THE COURT: Okay. One thing that I wanted to add

8     to the list, these are just, again, procedural issues,

9     one is I wanted to remind counsel of the order of names

10    for the prospective three judge panel. And I'm going

11    to indicate for the record that I have not, as of this

12    moment, confirmed availability, but it is my intent at

13    the close of this hearing to send out an e-mail to

14    these judges to formally confirm their availability on

15    the 11th and, of course, it will be in the order that I

16    am going to read in a moment, and this was an order

17    that was selected by draw back on March 6, 2008. And

18    then there is one issue that has come to my attention

19    regarding this order that I want to address on the

20    record, okay.

21         What I have is the order of priority, obviously, I

22    would be the presiding judge since the case is assigned

23    to me, and then the judges are in the following order

24    of the priority, Judge Keith Spaeth, Judge Charles

25    Pater, Judge Noah Powers, II, Judge Craig Hedric and

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 993

1    Judge Patricia Oney, in that order.  And like I said, I

2    will confirm their availability at the close of this

3    hearing by e-mail.  I will make copies of any of those

4    e-mails and file them in the -- with the Clerk of

5    Court's Office so that that e-mail traffic is properly

6    preserved.

7         The thing that I wanted to bring up is I am aware

8    from other cases that Judge Powers has been recusing

9    himself in any matters in which Ms. Cook-Reich is

10   counsel of record.  I remember, I think back on March

11   6th, 2008 we briefly touched on that, but I think that

12   I indicated that certainly more than a year would have

13   passed by this time and I was of the opinion that any

14   of the concerns under the Cannons, Judicial Cannons or

15   the ethical rules would be alleviated, but it's my

16   understanding, and I am not privy to all of the

17   details, but it is my understanding that as recently as

18   last week, he has recused himself from a case that you

19   are involved in as counsel.

20        MS. COOK-REICH:  That is correct, Your Honor, he

21   is still currently recusing himself.

22        THE COURT:  So, with that in mind, I did, just

23   before coming out on the bench, contact Judge Powers by

24   way of telephone to remind him that he was fourth on

25   the list, that if Judge Spaeth and Judge Pater are

10

1     available it would be irrelevant since, you know, he is

2     next on the list, but should one of them not be

3     available, he would be up. And I inquired as to

4     whether he would be continuing to recuse himself and he

5     indicated that he would. That he thought that there

6     was still pending business with the prior firm, that he

7     thought should dictate that he continue to recuse

8     himself until those matters are resolved, and didn't go

9     into any further detail and I didn't ask any further

10    detail.

11    So, with that being said, I just wanted to raise

12    that issue for the record and seek input from defense

13    counsel.

14    MS. COOK-REICH: Nothing further. He has been

15    recusing himself from my cases. I just had a case that

16    bounced from him most recently, Lesley Moore, and I

17    know when the new capital case got appointed recently,

18    because it was already assigned to him, both myself and

19    Mr. Pagan are taken out of the running for appointment

20    on that case.

21    THE COURT: All right. Okay. Well, then, what I

22    am going to indicate is, since that is the case, I am

23    going to indicate for the record that Judge Powers will

24    not be available. So, the priority would be Judge

25    Keith Spaeth, Judge Charles Pater, Judge Craig Hedric,

11

1    Judge Patricia Oney.  Judge Powers would be recusing

2    himself for the reasons we stated, and previously Judge

3    Sage has recused himself since he participated in the

4    original prosecution of this matter.  He was a member

5    of the prosecution team, I believe, back in 1983.  All

6    right.  Any questions on that?

7         MR. OSTER:  No, Your Honor.

8         THE COURT:  Any objections to me contacting by way

9    of e-mail after this hearing to confirm availability

10    for the hearing and me then forwarding that e-mail

11    traffic to both defense counsel and the State for your

12    planning purposes?

13         MS. COOK-REICH:  No objection, Your Honor.

14         MR. OSTER:  None on behalf of the State.

15         THE COURT:  Fair enough.  All right.  Do we want

16    to discuss the discovery issue first or do we want to

17    discuss the procedure issue first?  Is there a

18    consensus, or should I just pick one?

19         MS. COOK-REICH:  Pick.

20         THE COURT:  All right.  Why don't we discuss the

21    discovery issue first, and let me see if I can recite

22    for the record where I believe we are.  I know that as

23    a part of the pretrial motion litigation that we were

24    involved in some months ago, there was a dispute

25    between the State and the defense as to whether there

1    was an obligation for the defense to respond to -- or
2    whether there was a continuing discovery request from
3    the original trial phase that continued and had
4    viability for purposes of these current hearings.  I
5    considered those issues, considered the law that was
6    cited and conducted further research and issued a
7    written ruling indicating that I believe that there was
8    an ongoing discovery order and an obligation, both a
9    reciprocal obligation and a continuing obligation also
10   on behalf of the State that did apply in this matter.
11   And I don't have the specific date of that ruling
12   before me, but I believe it was some time --
13          MR. OSTER:  December 29.
14          THE COURT:  December 29th.  All right.  On March
15   the 12th I received a motion for an order or sanctions
16   under Criminal Rule 16 (E) for defense non-disclosure
17   of discoverable matters.  I then received on March
18   24th, 2009, Von Clark Davis' answer to request for
19   discovery, and of course, I received the State's
20   supplemental discovery that was referenced earlier
21   today that was file stamped yesterday.  Does this
22   resolve the issue?
23          MR. EICHEL:  Your Honor, not necessarily.  The
24   filing that was given to us --
25          MS. COOK-REICH:  That would be the exact same one

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 997

1      the Judge has.

2           MR. OSTER:  -- from the defense basically says we

3      will supplement upon receipt.  Which, you know, that's

4      -- it gives us a sheet of paper saying that they are

5      going to give us discovery, but it doesn't give us

6      discovery.

7           THE COURT:  All right.

8           MR. EICHEL:  So, that is our difficulty with that.

9      Further, the only witness named is Mr. Davis himself,

10     and certainly wouldn't -- even if his name wasn't

11     named, I don't think we would object to him being

12     called at trial, or at the sentencing, because he

13     certainly has a right of allocution, if nothing else.

14     At any rate, I want to speak to the case law that I

15     cited in the motion and memorandum in support.  I

16     acknowledge that it doesn't concern a sentencing in a

17     capital case.  Not a single case does concern that.

18          So, witness preclusion as a sanction, I have to

19     state on the record now that I am not sure that that is

20     an appropriate sanction in a capital proceeding.

21          THE COURT:  And there are, I think is also a rub

22     that has been recognized in case law between

23     constitutional rights and discovery provisions that

24     would come into play also.

25          MR. EICHEL:  Absolutely.  So witness preclusion

1    may be off the table.  However, the Court still has the
2    right to set discovery deadlines, the right to order
3    discovery, the -- all of the reasons for discovery
4    still apply here.  And absent witness preclusion, the
5    Court certainly has a lot of options as far as
6    sanctioning orders, appropriate orders which Criminal
7    Rule 16 says the Court can issue any appropriate order
8    in regard to discovery violation.  That said, that is
9    the State's position.

10        THE COURT:  All right.  Ms. Cook-Reich or Mr.
11   Porter?

12        MS. COOK-REICH:  I will speak to this, Your Honor.
13   First off, I find it ironic that they want us to name
14   witnesses that I haven't yet identified for purposes of
15   our sentencing.  If they would like me to just give
16   them a hundred people that might be called, I can start
17   naming people.  They have their own list.  I suppose
18   they could start with their own list of persons that
19   they provided and go from there.  But at this point in
20   time, on today's date, other than Von Clark Davis,
21   neither myself nor Mr. Porter have identified a witness
22   to be used, and I can say that as of today's date, I do
23   not have a report or documentation that I intend to use
24   at our sentencing phase.

25        As this Court is aware, we have some ongoing

1       matters that we have had some ex-parte hearings on, and

2       when those are concluded, Mr. Porter and I will meet

3       and make, I will call it a trial strategy, and make

4       that list. I find it odd to think that the prosecutor

5       doesn't have an idea of who we might call, if they want

6       to go that route, because this matter has been going on

7       for twenty years and there are affidavits attached to

8       the habeas proceedings of potential witnesses. If they

9       would like me to just simply list all of those and they

10      can, not knowing that I am going to call them, I will

11      do that. But I don't think that sanctions are even

12      proper in this case.

13              In regards to exclusion of witnesses, I believe

14      our client has some constitutional rights that would

15      preclude that, in my opinion. And I would just point

16      to the fact that on many occasions in multiple charge

17      cases with the prosecutor's office from this county, I

18      could get discovery the Friday before trial and I don't

19      get any of those witnesses excluded or those documents

20      or tests excluded. I will -- when I -- when Mr. Porter

21      and myself identify those witnesses that we are going

22      to use and we determine our proper strategy that we are

23      going to use, I will be forthcoming.

24              When I received the State's motion I believe I was

25      on vacation, so when I got to the stack of things that

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1000

1    were on my desk when I got to their's and saw that, I

2    called Mr. Porter and said, who do you want to list

3    because we haven't identified.  I said, thus far, Von

4    Clark.  I put together the answer, sent it off to the

5    Court and the prosecutor immediately.

6         THE COURT:  So you are representing as, again, as

7    an officer of the Court, that the answer filed on March

8    24th, at that time, and as of today's hearing, truly

9    and accurately reflects the state of your discovery in

10   this case?

11        MS. COOK-REICH:  It is, Your Honor, and I am sure

12   the prosecutor can look at the docket sheet from the

13   clerk's office and see that we have not issued any

14   subpoenas.  And that would primarily be what we would

15   be doing when we determine who those persons are that

16   we are going to call.

17        THE COURT:  All right.  I will accept that.  I

18   would simply for purpose -- and I don't know that I

19   need to do this, but for purposes of the record, I

20   would simply remind counsel for both sides that this

21   Court would expect everyone to engage in appropriate

22   zealous advocacy on behalf of their respective sides of

23   the case within the ethical rules, and that based on

24   your representations at this time, I don't have any

25   reason to believe otherwise.  But certainly as soon as

1     you are aware of a witness and/or a report, and/or a

2     document or tangible evidence that you intend to

3     utilize at the penalty phase, you would have a duty to

4     supplement, which you have acknowledged in your

5     response. And given the calendar date, please make

6     your best effort to make that as timely as possible.

7     And upon receipt of that, counsel, the State, if for

8     some reason the date of any possible disclosure creates

9     issues that you think you need to bring up with the

10    Court, then do so. All right?

11        But I don't know that at this time there is a

12    whole lot more that I can do. Everyone here

13    understands Criminal Rule 16. The response here to me

14    is an indication that the defense, for purpose of these

15    hearings, has accepted the Court's earlier ruling, may

16    not agree with the Court's earlier ruling, but it has

17    accepted it and is following that order, and this is

18    what they indicate is the status of their discovery.

19    Anything further that the State would like to indicate?

20        MR. EICHEL: If Your Honor please, the

21    representation of the counsel begs the question, how do

22    we prepare if we get this last-minute name on the day

23    of trial or whenever they choose to decide that this

24    person is going to be called? This case has been

25    pending for -- this resentencing has been pending since

18

1        the Court ordered it almost well over a year ago.

2              THE COURT:  Well, I understand.  I'm not going to

3        operate under the assumption that anybody is sand

4        bagging.  I don't think it is appropriate to make that

5        assumption.  They have indicated as officers of the

6        court that that is the status, that they are aware of

7        their duty to supplement, and that they will timely do

8        so as soon as possible.  And what I have indicated in a

9        vague fashion, because I think it is the only way I can

10       indicate it at this point, is that should the State,

11       having received that, find itself in the position that

12       it needs to request some sort of relief or order or

13       something, I'm not sure what, because obviously we

14       are -- we don't know what might be disclosed, we're

15       just not in that position at this point in time, please

16       bring that to my attention.  I will analyze the

17       situation that is before the Court at that time and try

18       to make a ruling that would effectuate the best

19       interests of justice consistent with the law and the

20       rights of the defendant.

21             MR. EICHEL:  Thank you, Your Honor.

22             THE COURT:  All right.  And everyone has fax

23       numbers for -- everyone has fax numbers for each other

24       so that in the event --

25             MS. COOK-REICH:  I would normally send them by fax

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1003

1      or e-mail.  It makes it easier --

2          THE COURT:  I would ask the State likewise as we

3      move forward since we are just more than a month out at

4      this point in time, if you have updates or supplements

5      to your discovery, make sure that you have accurate fax

6      numbers for the defense and fax that to them so that

7      they can have it at the earliest possibility, and if

8      the defense would exercise that same courtesy,

9      professional courtesy, and provide any supplemented

10     discovery by way of fax, obviously to be followed up

11     with filing with the Court.

12         MS. COOK-REICH:  Any time I actually personally

13     file our documents, I just bring them right up to the

14     prosecutor's office.  I can't remember the last time I

15     mailed something from there.

16         THE COURT:  Mr. Porter?

17         MR. PORTER:  To alleviate the Court's fear, and

18     getting back to the first matter, I know the Court has

19     already ruled, as we sit here today, I can tell the

20     Court we have not decided our strategy for purposes of

21     mitigation.  So for us to have identified the witnesses

22     at this point it would have been impossible.

23         The second, to alleviate the Court's concern that

24     pleadings be provided expeditiously to the parties, I

25     would gladly consent to the order and although I have

1    not discussed it with Ms. Cook-Reich, I assume she

2    would too, that on the day that any motion is filed by

3    either party, that they have -- that the Court enter an

4    order that they have a duty to serve it upon the other

5    party electronically either by facimile or e-mail.  I

6    have tried to do that for most of the pleadings in this

7    case.  We -- the federal courts do it routinely.  The

8    Ohio Supreme Court does it when there is serious

9    execution date, so I would suggest to the Court that

10   such an order be entered in this case; that when a

11   pleading is filed, it be served upon counsel for the

12   other parties the same day electronically.

13        THE COURT:  All right.  Do you have any objection?

14   I don't know that we need that order.  I think that

15   counsel has indicated that they are abiding by that and

16   everyone has agreed to that and if there would be an

17   issue, I don't know that I need to formally enter that

18   as an order, but I think that we can all agree here as

19   a matter of procedure and as a matter of professional

20   courtesy going forward, given the time considerations

21   that are involved that we would follow that procedure.

22        MR. OSTER:  The other thing I would say, Your

23   Honor, to that is, I think that's fine, I don't think

24   we need an order with that.  The other thing is some of

25   the documents we're sending over or that we have

1       attached to scan them through and everything else, they
2       are very old from 1970.  I would prefer not to put them
3       in a lot of electronic documents to make electronic
4       copies at all times if I don't have to, if I can make a
5       regular copy, scan it through.  I think we will do
6       it -- I don't know that we need a per se order.  We
7       obviously have tried to give the defense everything in
8       a very timely manner and contact them on the day to
9       make sure it is being handled.  I think we're okay
10      without that order and we will try to get it to them
11      one way or the other.

12          THE COURT:  I think the record is clear and I
13      think counsel understands my concern simply that we not
14      have a lot of lag time by snail mail if unnecessary,
15      that we utilize the technology available so that we
16      don't have those types of issues.  All right.  I think
17      that is the state of things.  I am not going to order
18      any sanctions at this time.  I don't think that it is
19      called for on the state of the record that is before
20      the Court at this time, but obviously the Court is
21      aware that I would have a continuing duty to police
22      discovery, and hopefully we won't have any problems
23      going forward, but if there are, bring them to my
24      attention and we will do our best to address them in a
25      timely fashion.

1     All right.  If there is nothing further on that, I

2     think we next need to discuss the motion in limine

3     regarding the procedure to be followed.  And I will

4     give counsel an opportunity to speak to the issue.  I

5     have read your written submissions, and I will give you

6     an opportunity to supplement that with any argument

7     that you wish to present here in court.  And then I

8     will indicate to you what I propose as the procedure,

9     and seek any input after that as well.

10     So first, from the State regarding your motion, I

11     will indicate that I have read both your original

12     motion, I had given my only copy of it to my magistrate

13     for follow-up, so I had to get a second copy this

14     morning, but I had read it prior to that time and now

15     have another copy of it.  I have the defense reply --

16     or memoranda contra, and then the State's reply to that

17     and I have read all of those pleadings.  Mr. Oster, Mr.

18     Eichel, do you have anything?

19     MR. EICHEL:  Yes, Your Honor, our motion and

20     memoranda basically speak for themselves.  I would like

21     to point out that in writing the reply, I was able to

22     find the essence of what I was looking for when I first

23     filed the motion and that is in State vs. Stump, which

24     is 1980 case, it was recently as last year in 2008 was

25     followed in State vs. Hale, so it remains good law.  It

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1007

1    basically lays out the idea that in any event the

2    nature and circumstances of the offense are relevant

3    and must be considered in the penalty phase.

4         Practically all guilt phase evidence is relevant

5    to the aggravating circumstance or the nature and

6    circumstances of the offense, or any claim such as

7    anything in mitigation. So the Court has to consider

8    the 1983 case as presented in the trial.

9         In the normal situation, we have the same triers

10   of fact trying both stages of this bifurcated hearing.

11   This is an unusual proceeding because it is a

12   resentencing, but the statute there throws us back to

13   the other statute that says this is what can be

14   considered. And the Supreme Court has been very clear

15   in all of its cases to say that much, if not all, of

16   the evidence admitted at trial is relevant to the

17   considerations of weighing the aggravating circumstance

18   against the mitigating circumstance.

19        How else are you going to find what is mitigating

20   of this crime, the 1983 crime? We are not sentencing

21   for the 1971 murder. That sentencing was done 39 years

22   ago. We are sentencing for the 1983 murder, which was

23   first tried in 1984. The bifurcation of guilt phase

24   and sentencing phase doesn't mean that we ignore the

25   guilt phase when we do the sentencing phase. And I

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1008

1    think that is the essence of what not only the Ohio

2    Supreme Court has said, but the US Supreme Court in the

3    two cases that were cited by the defense memo, which I

4    took a look at after getting the defense memo.  And I

5    have set those cases out in my reply memorandum.

6        <u>Woodson vs. North Carolina</u>, 1976, <u>Zant vs.</u>

7    <u>Stephens</u>, 1983, Z-A-N-T vs. Stephens with a P-H.

8    Individualized determination of sentence must not only

9    consider the individual -- the defendant's own

10    individual character and everything about him, but also

11    the circumstances of the offense.  The Supreme Court of

12    the United States has said that is the 8th amendment

13    jurisprudence.  That is what we consider when we impose

14    a sentence for a capital offense.  Thank you.

15        THE COURT:  Thank you, Mr. Eichel.  Ms. Cook-Reich

16    or Mr. Porter?

17        MS. COOK-REICH:  I have something to say and

18    Randall is going to stand up here and talk.

19        THE COURT:  That's fine.

20        MS. COOK-REICH:  Your Honor, I would just say that

21    the transcript that I ordered immediately upon

22    receiving the motion, as I have been on vacation I got

23    back and got that motion, I took upon myself to order

24    the transcript immediately from the August hearings

25    because both myself and Mr. Porter recalled

1     specifically the Court already ruling on this issue.
2     And we have made reliance upon that ruling and we have
3     attached the transcript pages to our response of
4     pleading.  And I believe Ms. Cutter, the court
5     reporter, already sent the full transcript from those
6     two days of hearings to Mr. Oster and Mr. Eichel.

7          We relied upon the Court's statements, pages, I
8     believe, 58 and 59, that are attached as Exhibit A, 59
9     specifically, where the Court read and said to all
10    present in this courtroom, "We don't just blanket allow
11    the State to re-present all evidence that was admitted
12    in the guilt phase.  It has to pertain to the
13    aggravating circumstance only and it would be relevant
14    to the aggravating circumstance."  And then later down
15    on that same page, the Court says, "I mean, the only
16    evidence is going to be as pertains to aggravating
17    circumstance.  And traditionally that entails a
18    resubmission of portions of the evidence from the guilt
19    phase that are relevant to that aggravating
20    circumstance."

21         I would just say that Mr. Porter and I in
22    preparing since that date, August I think it was 28 is
23    that particular hearing, have relied upon the Court's
24    statement and we believe ruling to, I would say,
25    proceed forward.  We haven't yet determined our exact

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1010

1        strategy, but we have gone down the road and prepared

2        thus far in looking at witnesses and looking at

3        potential avenues for mitigation based upon the

4        statements that the Court gave us, and so we were kind

5        of surprised when we got the State's motion in middle

6        or late March.  We would ask the Court to abide by its

7        ruling also and I am going to let Randall speak to the

8        rest of the motion.

9                THE COURT:  Mr. Porter?

10               MR. PORTER:  I would begin with a procedural issue

11       and I am not too sure Ohio laws really set out in this.

12       This appears to me to be an issue of what evidence is

13       going to be admissible --

14               THE COURT:  I agree that it is an evidentiary --

15               MR. PORTER:  -- mitigation phase, and sometimes my

16       comments can appear disrespectful, but this one is not

17       meant to be.  I am wondering if this is an

18       admissibility issue --

19               THE COURT:  And if so, it has to be voted on by

20       two of the three judges.

21               MR. PORTER:  That's correct, Your Honor.

22               THE COURT:  You are reading my mind.

23               MR. PORTER:  And if so then my initial matter

24       would be to suggest that the Court should reconvene for

25       purposes of considering this issue and if I can step

1    back even, move back one step even further.  Whether

2    this is an issue itself for the panel as opposed to

3    yourself, maybe that in itself should be an issue that

4    has been decided or should be decided by the panel.

5        I would then like to address the merits of the

6    motion itself, unless the Court wants me to remain or

7    has any questions about -- I don't want to call it the

8    jurisdictional issue, but the procedural issue --

9        THE COURT:  I am listening to what you have to

10   say.  I have my own thoughts that I am going share at

11   the conclusion.  And I am incorporating what I'm

12   hearing from you as we go.  So this is your opportunity

13   to speak to the issue, Mr. Porter.

14       MR. PORTER:  I am going to begin by stepping back

15   and looking at the specification in this case.  It is

16   truly an unusual specification and I probably didn't

17   elaborate it enough -- or excuse me, we didn't

18   elaborate it enough on our memorandum contra.  This is

19   a status offense or status specification.  The

20   specification the Court is sentencing on has nothing to

21   do with the 1983 offense.  And I take difference with

22   the prosecutor's statement.  I think, in fact, since

23   you weigh the aggravator versus the mitigator, that

24   really the sentence in this case will be determined not

25   by the '83 murder, because that has nothing to do with

1    the status aggravator, but instead the '72 conviction.

2         The prosecutor has set out the law, and for once

3    we don't disagree with it. I think you begin with a

4    statute, and I confess to making an error on the

5    memorandum I filed with the Court. What I did was

6    cited to the statute 2929.03 that is now in effect.

7    What I should have done and is gone back, and I don't

8    think there are any differences, but I don't want to

9    say that as a matter of fact, should have referenced

10   the Court to the statute that was in effect at the time

11   of the trial, which would be 1983. I did pull it and

12   didn't put in it.

13        But I think when you look at the statute, because

14   all of the Supreme Court cases, and we don't seem to

15   have a big difference with the prosecution, literally

16   cites to the statute itself. When you look to the

17   statute, the statute only talks in terms of relevant

18   evidence from the trial phase. And when you look at

19   the Ohio Supreme Court cases, all they are doing is

20   defining the term relevancy. I am looking at some of

21   the prosecutor's cases now and all of them talk in the

22   term of relevancy to the aggravator.

23        I am still unclear and these are obviously

24   knowledgeable prosecuting attorneys, what relevance the

25   '83 conviction has to -- I'm sorry, the '83 murder has

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1013

1      to the 1972 conviction. Just citing to, and they pick

2      up -- you look at their quotes and I mean, they are the

3      reliable and accurate quotes and they are saying that

4      we rely upon is that it needs to be relevant to the

5      aggravators or to the single aggravator in this case.

6      And not once have they offered how the '83 murder is

7      relevant to the 1972 conviction. And I am still

8      puzzled by it.

9      I would suggest that and the law is clear on this

10    and we just received the response today and I am

11    certainly not saying it is late. I am just telling you

12    why we didn't have one additional point that I would

13    like to have researched or made is I think the Ohio

14    Supreme Court has been very clear that the facts of the

15    aggravated murder, the 1983 murder in this case, can

16    only be mitigating but they cannot be aggravating.

17    I think the Ohio Supreme Court has been very clear

18    on the procedure that is to be followed in mitigation

19    phase. The prosecutor generally goes first and asks

20    for re-introduction of evidence, and the Court will

21    allow and not allow some depending on the facts of the

22    case, and then it is the defense burden to forward.

23    And the prosecutor is limited in his case in chief in

24    mitigation as to the evidence that is relevant to the

25    sentencing phase. The prosecutor, in his case in chief

1    in mitigation, cannot present evidence of the

2    mitigators, because at that point they have no idea of

3    which mitigators the defendant is going to raise.

4        The burden or the defense case, the defense gets

5    to make the choice of which mitigators, and then the

6    prosecution is -- has the opportunity to rebut any of

7    those mitigators.  So, I would suggest to the Court

8    that first it look at -- I'm sorry, I lost my -- is

9    that I would suggest to the Court is that it is too

10   early to determine if this evidence is admissible.  The

11   Court should wait and determine whether we are going to

12   argue whether the facts are mitigating or not.  And at

13   that point, if that is the argument that is made, then

14   the facts are, in fact, mitigating, then the prosecutor

15   is free to rebut them.  I would suggest and I am just

16   suggesting now, with all due respect to the Court, is I

17   don't know what use the Court would have of the facts

18   surrounding the 1983 conviction at this point.  It is

19   not relevant to the aggravator.  He has already been

20   found guilty of that, unless for some reason we are

21   going to relitigate that and we have assumed from the

22   Court's remarks that, in fact, that is not going to be

23   the opportunity.

24       The prosecutor cited briefly to Woodson, to

25   Locket, the Court has those cases in front of him.  The

1       only point we are trying to make there and it goes back
2       to Ms. Cook-Reich's point, is that if, in fact, the
3       facts of the '83 conviction are going to come in, then
4       you have to give us -- through the transcript or
5       whatever, then you have to give us the opportunity to
6       relitigate them.  And we were clear that is not where
7       these proceedings were going to go.  We based our
8       strategy upon that.

9           I can tell the Court without violating the
10      attorney-client privilege or the work product
11      privilege, the Court was nice enough to give us limited
12      funds for a trial phase investigator, and I think other
13      than using him to serve subpoenas for the earlier
14      hearing, we have not used him at all.  If the Court is
15      going to go the route that the prosecutor suggests,
16      then we would request the Court to grant a continuance
17      just based upon our preparation, or lack of preparation
18      at this point, we would be unable to proceed if the
19      prosecutor is going to be bringing in all of the trial
20      phase evidence.

21          I would again just point the Court back to the
22      prosecutor's own cases.  I have circled the language
23      again and again.  I am not going to do that, but
24      certainly the Court still has done it, is they again
25      and again say the evidence needs to be relevant to the

| 1 | aggravating circumstances. Given the unique nature of |
|---|---|

1     aggravating circumstances. Given the unique nature of

2     the circumstance in this case, I just don't know how it

3     is relevant, if someone would at least tell me so I can

4     respond, I am at a loss. Thank you, Your Honor.

5          THE COURT: All right. Mr. Oster?

6          MR. OSTER: Judge, if I may, Judge.

7          THE COURT: Yes.

8          MR. OSTER: I think and I want to clear this up, I

9     think there is a lot of confusion currently being

10    discussed about what the State is actually asking for.

11         THE COURT: Yeah, I don't think I am confused,

12    but --

13         MR. OSTER: Okay. For the record, I want to make

14    sure, we are not asking through this motion for the

15    admission of that transcript for the mitigation phase.

16    It is not what we are asking for.

17         THE COURT: And I'm not in a position to rule on

18    that as Mr. Porter, I think, accurately pointed out.

19         MR. OSTER: Correct, but I think a lot of these

20    issues as to whether or not it is relevant to 1970 and

21    how is it, the fact of the matter is that transcript is

22    the guilt phase. And our point is that the body, the

23    trier of fact who will eventually find the sentence,

24    has to be acquainted in some fact. There is not a

25    Chinese wall that is drawn between one to the other.

1    Bifurcated proceedings where we tried to do that were
2    specifically struck down in State ex rel Mason vs.
3    Griffin, I apologize, it's a Supreme Court case.  We
4    are just trying to --
5         THE COURT:  I think it's Burt Griffin, right?
6         MR. OSTER:  Cuyahoga County, correct, Your Honor.
7         THE COURT:  Okay.
8         MR. OSTER:  But there they tried to have
9    different -- have an insulation between the two.  We
10   are just trying to get a procedure so that the
11   three-judge panel can understand it.  And the defense
12   has stated and we have no problem with this, they did
13   not want Your Honor to be reading that previously.  We
14   come to a point though now where there has to be some
15   familiarity with what happened at that time.  We are
16   asking for a procedure as to how to make the three
17   judges aware of that, not for a full admission of that
18   entire transcript.  We are not standing here saying the
19   first thing we want to admit in the mitigation phase is
20   that entire transcript.  That is not what we are
21   saying.  And I want to clear up that confusion because
22   it seems like that is a lot of the overlapping problem.
23        THE COURT:  All right.  And I have understood
24   that.  And I -- Mr. Porter, if you have something to
25   say, go ahead.

34

1   MR. PORTER: It looks like the prosecutor wants to

2  have something additional to state and can I defer 'til

3  they get done.

4   THE COURT: Did you have something else, Mr.

5  Eichel?

6   MR. EICHEL: Yes, Your Honor. These aren't my

7  words. These are the words of the Ohio Supreme Court,

8  which were reaffirmed just last year, but in State vs.

9  Stump, the Court said appellant's argument thus assumes

10  that the nature and circumstances of his offense cannot

11  be cited as reasons for or bear no relation to the

12  finding that the aggravating circumstance sufficiently

13  outweighs the mitigating factors. This assumption is

14  erroneous. Revised Code 2929.04 (B) requires the jury,

15  trial court or the three-judge panel to consider and

16  weigh against the aggravating circumstances proved

17  beyond a reasonable doubt the nature and circumstances

18  of the offense. Emphasis added on that later phrase.

19   In a particular case, the nature and circumstances

20  of the offense may have a mitigating impact or they may

21  not, see State vs. Stephan. In either way they must be

22  considered. It's not me saying it. It is the Ohio

23  Supreme Court.

24   THE COURT: It's you saying it, too.

25   MR. EICHEL: Well, I am saying the Supreme Court

1    has recently as last year in <u>State vs. Hale</u> said that

2    that is good law.

3        THE COURT: All right. I just didn't want the

4    record to appear that there was a third person

5    speaking.

6        MR. OSTER: No ghost prosecutor, even though we

7    are on an older case, Your Honor.

8        THE COURT: Mr. Porter?

9        MR. PORTER: I just have a brief response and my

10    recollection of Hale is it wasn't -- the aggravator

11    wasn't a single status aggravator that was in this

12    case. Again, I think this case is really unique. I

13    hate to use the word really, just because of the nature

14    of the specification. And I am struck by Mr. Oster's

15    last response. And again I mean this respectfully to

16    him, is we don't want -- he is saying we don't want the

17    Court to admit the transcript.

18        THE COURT: They are not asking at this point in

19    time is how I interpreted that.

20        MR. PORTER: And I understand --

21        THE COURT: May or may not.

22        MR. PORTER: And I am understanding that, and I am

23    a bit perplexed because I have never been involved in a

24    proceeding before where the trier of fact gets to go

25    out and consider a transcript or anything that is not

1      in evidence.  I mean, if you are looking for invited

2      error that seems to me to be considering something that

3      is not properly before the Court.

4          THE COURT:  Okay.  All right.  All right.  This is

5      my view, and it may take me a moment to get through

6      this.  I will explain to you where I am at and where I

7      believe we are going to be as far as the procedure on

8      this after having considered your written submissions

9      and further argument today.

10         First of all, the statements that were quoted back

11     to me from our August hearing, I certainly don't take

12     any issue with what I said then today.  I think that

13     what I indicated is accurate, that it reflects the

14     appropriate procedure to be followed in the case.  I

15     don't know that it is properly characterized as a

16     ruling that affects this, because I believe I was

17     ruling on a separate motion.  But certainly, this Court

18     is aware of the Supreme Court case law that indicates

19     that it has a gatekeeper function to perform in

20     determining the evidence that is admissible at the

21     penalty phase and that to simply, as a blanket

22     statement, allow all evidence from the trial phase to

23     be admitted at the penalty phase, it could potentially

24     be error and I am aware of the cases that say admit it

25     all and let the jury figure out what is relevant, that

1    that has been found to be error, and certainly that is
2    not the Court's inclination.  It is not going to be the
3    procedure that is followed.

4         Were this any other capital case, the same trier
5    of fact at the trial phase, at the conclusion of those
6    proceedings, would then go on to consider the penalty
7    phase.  Whether that would be the original three-judge
8    panel in this case, whether that would be any three
9    judge panel hearing any capital case, or any jury
10   hearing any capital case or this 2009 new three-judge
11   panel, all of those fact finders are in a position
12   where they have heard the trial phase evidence, and
13   then the law requires that that fact finder then turn
14   the page to consider the penalty phase and they are
15   given specific instructions on how to proceed in that
16   penalty phase.  At the -- and so every fact finder that
17   has ever had to determine whether the aggravating
18   circumstances outweigh the mitigating factors beyond a
19   reasonable doubt has done so within a context.  And the
20   context being, the context of the trial of the case
21   that they heard.

22        I can't imagine that any rational being would
23   suggest that a matter of such gravity as this should be
24   decided without a context.  I mean, it would be, I
25   think, egregious error to have three judges consider,

1      engage in that weighing process absent a context to be
2      provided.  So this is -- and this is how I see this
3      going down is that when we start on Monday morning, May
4      the 11th, we are picking up where, you know, the matter
5      was left off back in 1984.  We are heading in to the
6      penalty phase of this trial.  At that point in time
7      there will be three judges up here pursuant to the
8      order and there will be some evidentiary issues that
9      are addressed.

10     The State will seek, I imagine, to introduce
11     pertinent portions of the evidence from the trial
12     phase.  I don't know what those may be.  I don't know
13     how voluminous it may be.  I don't know how restricted
14     it may be, but they are going to make that proffer, I
15     assume, of evidence.

16     The defense will object to certain portions, may
17     agree to others, but there is going to be decisions
18     that are going to have to be made by that three-judge
19     panel as to what is admissible and what is not
20     admissible out of that transcript.  There is no way
21     that the three judges up here can make that
22     determination without having read the transcript.  I
23     mean, there is no way that these judges can determine
24     what would be relevant.  To go to the issue that Mr.
25     Porter raised is what is relevant to this aggravating

1　　circumstance, in order to be able to properly make that
2　　determination, that three-judge panel would have to
3　　have read as background material, as preparatory
4　　material, that trial phase transcript so that it has
5　　the appropriate context, so that it is similarly
6　　situated to the original three-judge panel, or any
7　　other three-judge panel that would ever make this type
8　　of a decision.

9　　　　That does not by any means suggest that that trial
10　　phase transcript will then be considered as evidence in
11　　the penalty phase, but it provides the context within
12　　which that three-judge panel must make determinations
13　　about what is admissible. And then that three judge
14　　panel will dutifully only consider the matters that are
15　　admitted for purposes of the penalty phase, and those
16　　are -- that is going to be according to statute and
17　　case law, the matters that are relevant to the weighing
18　　process only.

19　　　　Additionally, the instructions that I am familiar
20　　with that would be provided to a jury that would be
21　　making this determination, I believe the law that would
22　　guide a three-judge panel. In addition to the
23　　mitigating factors that will ultimately be raised by
24　　the defense there is typically a catch all factor that
25　　would suggest that the finder of fact needs to consider

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1024

1      any other factor that may be mitigating. I have
2      frequently heard it argued and, in fact, objected to by
3      the State but argued by defense counsel that a
4      mitigating factor can be any relevant factor that you
5      want it to be essentially from a jury.

6      Similarly, the Court, I think, has a duty to
7      review the trial phase transcript of proceedings in
8      this case, has a duty to review that to determine
9      whether it finds any aspect of the nature and
10     circumstances of the offense mitigating. It
11     certainly -- the case law indicates that the aggravated
12     murder itself is not to be considered an aggravating
13     circumstance and the Court is aware of that. We will
14     make sure that the other members of the panel are aware
15     of that. But certainly there is a duty to determine
16     whether there is any mitigation to be weighed in the
17     process within that.

18     So I agree with Mr. Porter that it is to -- it is
19     premature for me to determine the admissibility of
20     evidence at a penalty phase. There is a procedure that
21     is dictated by statute that that is an evidentiary
22     determination to be made during the penalty phase
23     hearing at the commencement of the penalty phase
24     hearing, and since that is during the hearing or during
25     the trial it must be made in accordance with the way

1    evidentiary issues are resolved during trial, which is
2    by agreement of two out of three of the members of the
3    three-judge panel.

4        There has to be a majority vote yea or nay on
5    admissibility.  My proposal and the procedure that I
6    anticipate following, and this is similar to the
7    procedure that this Court followed in the Geldrich case
8    is that I am going to take steps to prepare a penalty
9    phase notebook, so to speak, for myself, for the other
10   members of the three-judge panel, and I will be more
11   than happy to allow counsel to inspect it and review it
12   and address any issues that they may have with it.  But
13   it is a notebook to bring the other judges up to speed
14   on where we are in this case.

15       Included in that notebook I propose that we would
16   have the transcript of the trial phase, again, for
17   purposes of background to provide a context so that the
18   judges will know how to rule on what is admissible and
19   what is not admissible, and to otherwise situate that
20   three-judge panel as closely as possible to the
21   original panel, or to any other panel that would ever
22   make this type of a determination.  I also would think
23   that a copy of the sentencing statutes that were in
24   effect at the time of trial should be provided in that,
25   so that the judges have the law that is going to govern

1       these proceedings close at hand and available to them.

2           I would also propose that I provide a copy of the

3       -- this Court's rulings during the case on pretrial

4       motions. So that, again, they know what this Court has

5       ruled on pretrial and what they have not, and if any of

6       those were in the form of motions in limine which could

7       be re-raised, they will understand the context in which

8       those have been raised, they will understand what

9       issues have been resolved and have not been resolved,

10      and I would be willing to accept suggestions if there

11      is anything further, but I think that at a minimum,

12      those three things would have to be provided to the

13      Judges in -- prior to the commencement of the penalty

14      phase hearing so that when we start the penalty phase

15      hearing we can address the first matter of business,

16      which is going to be what's admissible in this hearing.

17      So, with that being said, does the State have any

18      additional comments that they wish to offer?

19          MR. EICHEL: We have nothing further, Your Honor.

20          THE COURT: All right. Mr. Porter or Ms.

21      Cook-Reich, do you have any --

22          MR. PORTER: Could we have a moment, please?

23          THE COURT: Sure.

24          MR. PORTER: As we understand the Court's

25      proposal, what we would ask is for -- I am thinking of

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1027

43

1       my schedule -- next Tuesday to file objections to the
2       Court's proposal?
3               THE COURT: Okay. Yeah, I mean, you can reserve
4       -- yeah, you are reserving until Tuesday to file a
5       written objection?
6               MR. PORTER: Written objections.
7               THE COURT: Okay.
8               MR. PORTER: What the Court has done, and let me
9       elaborate. The Court has suggested what it believes to
10      be the appropriate procedure.
11              THE COURT: Yes.
12              MR. PORTER: None of us have had an opportunity to
13      hear it just prior to the Court announcing it. What I
14      really I am asking for is four or five days just to put
15      the objections before the Court prior to the Court
16      creating the notebook.
17              THE COURT: All right. That is fine. I mean, you
18      can obviously have a right to object now or at any time
19      that you feel is appropriate.
20              MR. PORTER: I think we would like to give some
21      thought as to how we want to make the objections.
22              THE COURT: All right. But, you know, to me, it
23      is -- reading that trial transcript is not a whole lot
24      different than reading the case law as this case is
25      developed. It is, you know, it's part of familiarizing

1       the panel with the procedural posture of this case, and
2       I think it would be utterly irresponsible for this
3       Court to -- not to do that. But yes, I obviously --
4       obviously you have a right to object. I solicited your
5       comments, and you can feel free to write your written
6       objections and I will review those and address them
7       accordingly.
8           But that is -- I have, at the request of counsel
9       and as a courtesy up 'til this date in the proceedings,
10      have not reviewed the transcript of the trial phase.
11      And there have been times when I have felt somewhat at
12      a disadvantage as a result of having not read that, but
13      I've done that, but I think that the law would
14      recognize that just as every three-judge panel in the
15      history of Ohio capital case jurisprudence has heard
16      the trial phase, and then determined what evidence
17      would be admissible at the second phase and only
18      consider that, that's what this three-judge panel will
19      do is be familiar with the trial phase, make
20      determinations as to what portions of that will be
21      considered. I imagine there may be portions of it that
22      would be requested by defense as mitigating issues.
23      There certainly is that possibility. But, you know,
24      but at that point in time we will make those rulings
25      and I know that I will scrupulously honor that

45

1   obligation to only consider the evidence that is

2   admitted at the penalty phase and only consider it in

3   the manner provided for by law.

4       All right. So with that being said, is there

5   anything further at this time subject to your further

6   written objections?

7       MS. COOK-REICH: Your Honor, we would also need

8   another date for myself and Mr. Porter to come back on

9   a funding issue. I know that you are gone on, I think,

10  Friday and then you're gone for a week.

11      THE COURT: Yes.

12      MS. COOK-REICH: We can certainly schedule that

13  with the office at a later time, I just want to not

14  leave today without mentioning that to you.

15      THE COURT: All right. Yeah, I, obviously this

16  case is highest priority to me. I am going to tell you

17  that my -- I am -- the Court is unavailable after

18  tomorrow until the 20th, and as I am looking at my

19  calendar now, I am in trials every day leading up to

20  this hearing with the exception of Fridays which are

21  set aside as the Court's criminal docket.

22      I will indicate that on May the 1st I do not have

23  a docket on that day, that is a Friday, there is a 12th

24  District seminar that typically goes until around 2:00

25  in the afternoon, and --

JILL M. CUTTER, RPR
(513) 785-6596

1    MS. COOK-REICH: We would like to do it as soon

2    as --

3    THE COURT: Sooner than May the 1st? Okay.

4    MS. COOK-REICH: More like the week of the 20th

5    when you come back at some point in time.

6    THE COURT: Well, we could set it towards the end

7    of any of those days, I guess. It looks -- as we

8    speak, I have -- I am going to have jury trials every

9    day. But, you know, what we can do is set it towards

10   the end of the day when I am releasing the jury.

11   MS. COOK-REICH: That will be fine.

12   THE COURT: Is there any --

13   MS. COOK-REICH: Or Mr. Porter indicated he would

14   come early 8:00 in the morning if you wanted to do it

15   before you start your day.

16   THE COURT: I generally have, I mean, I have civil

17   reports that are set on all of those days and I could

18   have my magistrate cover one or more of those if

19   necessary, but if it's all the same, I would just as

20   soon do it towards the end of the day on a given day.

21   MS. COOK-REICH: That's fine.

22   THE COURT: And the State obviously --

23   MS. COOK-REICH: Any day by the 24th.

24   THE COURT: If this follows the procedure that we

25   followed in the past, the State's participation would

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1031

1    only be at the beginning to determine the scope of any

2    hearing, and you know, whether it is appropriate to

3    grant in the context requested. And then after that,

4    you know, we wouldn't need you to be around all that

5    long if indeed I decide to grant request for an

6    ex-parte hearing. So, is there a day around 4:00 --

7         MS. COOK-REICH:  Not the 27th or the 28th.

8         THE COURT:  Let me finish.

9         MS. COOK-REICH:  Sorry.

10        THE COURT:  A day around 4:00 the week of the 20th

11   that is better than any others?  I would request that

12   it not be the 24th.

13        MR. OSTER:  If we, just so Your Honor knows

14   schedules of the prosecutor, if we go on a Thursday or

15   Friday, that is typically not a day Mr. Eichel is here,

16   he has made himself available based on this case to

17   work that around, if need be we can, but our preference

18   is Monday through Friday, but Mr. Eichel has --

19        THE COURT:  A Monday through Wednesday, you mean?

20        MR. OSTER:  I'm sorry, Monday through Wednesday.

21        THE COURT:  Okay.

22        MS. COOK-REICH:  I prefer Monday through Friday

23   also, Judge.

24        THE COURT:  Right; right.  We have gone on

25   Saturday, recently.

VON CLARK DAVIS v. WARDEN
CASE NO. 2:16-cv-00495
STATE COURT TRANSCRIPTS - Page 1032

48

 1          MS. COOK-REICH:  I have been here on Saturdays.

 2          THE COURT:  Yes, recently.  Okay.  On that Monday,

 3     Tuesday, Wednesday the 20th, 21st or 22nd, is any --

 4          MS. COOK-REICH:  Mr. Porter can't do the 22nd.

 5          THE COURT:  Okay.  Any preference between the 20th

 6     and 21st?

 7          MS. COOK-REICH:  None to me.

 8          THE COURT:  All right.  If my schedule continues

 9     as it is now, it looks like on the 21st I would likely

10     have a jury deliberating in the afternoon and that

11     would be my preference is to do it then as opposed to

12     on Monday which would be in the midst of the trial.  So

13     why don't we say 4:00 on Tuesday, April 21st.

14          MS. COOK-REICH:  Thank you, Your Honor.

15          THE COURT:  All right.  And if there is -- since

16     you would have any proposed objections to the Court's

17     procedure filed, it looks like a week prior to that, we

18     may be in a position where we can address some of those

19     matters also.  Now, the next question is do we need Mr.

20     Davis here for the 21st?

21          MR. PORTER:  No, I will obtain a waiver from Mr.

22     Davis if that is acceptable to the Court and use the

23     same content of the form that we used for the hearing.

24          THE COURT:  Same procedure that you followed for

25     this waiver?

49

1           MR. PORTER:  Yes.

2           THE COURT:  Is the State all right with that?

3           MR. OSTER:  Yes, that's fine.

4           THE COURT:  Okay.  All right.  Well then, I will

5      expect we will not -- and Mr. Porter, in reliance on

6      that, we will not be putting a transport order on, so

7      if there is any change, if you find out that Mr. Davis

8      is desirous of being here for that hearing, please

9      contact us at the earliest time possible so that we can

10     get the transport order on, but based on the

11     representation that he would be waiving that, we are

12     not going to put an order on at this time.

13          MS. COOK-REICH:  Thank you, Your Honor.

14          MR. OSTER:  Your Honor?

15          THE COURT:  Yes.

16          MR. OSTER:  This may be a bit premature, but for

17     the sake of being a little green for the environment, I

18     have worked with the Court administrator, Mary Swain,

19     our copy of the transcript -- obviously it's the

20     typewriter paper which is very difficult.  Mary Swain

21     was gracious enough, she made a copy that is just the

22     trial itself for us which is a lot easier, obviously to

23     run through and make copies, if we get to, obviously,

24     your procedure in making that to be green, we had that

25     available where it may not kill as many trees, we may

50

1     be able to use that and be a lot easier than --

2          THE COURT:  Okay.  I'm not sure I am following

3     what you are saying.  I have a copy of the trial phase

4     only in my chambers that I have not read yet.  I

5     haven't even looked at the page count.  I can note that

6     it appears to be around 2 inches thick, that is as much

7     as I can comment on at this point in time.  And I

8     assume that that is what would be copied and provided

9     to the other judges.

10         MR. OSTER:  What I am letting the Court know is I

11    have additional copies --

12         THE COURT:  Already made?

13         MR. OSTER:  Already in my office that Mary Swain

14    provided to me.

15         THE COURT:  Now I understand what you are saying.

16         MR. OSTER:  So if, and I understand there is going

17    to be objections, if we get to that point, my whole

18    thing, and I tried to preface it in a funny joke, but

19    it failed, of being green, is to try to save some of

20    those papers.  If the Court were to decide that after

21    objections and everything else, I worked with Mary

22    Swain and those have been created at this point if they

23    were ever to be utilized.

24         THE COURT:  All right.

25         MR. OSTER:  We have been utilizing them, they are

1    not marked up or anything, but --

2         THE COURT:  Well, I am sure we will take advantage

3    and try to avoid the senseless slaughter of innocent

4    trees.

5         MR. OSTER:  I know the county budget as well, so I

6    am just doing what I can, Your Honor.

7         THE COURT:  All right.  I understand.  Anything

8    further then that we need to take up at this point in

9    time?  There was the stay issue.  Let me -- where are

10   we at on that?

11        MR. OSTER:  It's -- it's --

12        MR. PORTER:  Could I confer with the prosecutors

13   on that to see where we are?

14        THE COURT:  Sure.

15        (Counsel confer off the record).

16        THE COURT:  Yes, Mr. Porter.

17        MR. PORTER:  Please the Court, I had an

18   opportunity to discuss with the prosecutor and had an

19   opportunity to discuss it with Ms. Cook, there is

20   somewhat of a lengthy history with respect to the DRC

21   records, the motion for reconsideration was -- and I

22   just putting this out for the record, I know the Court

23   is well versed in the issue -- filed a motion for

24   reconsideration, the Court adopted the position, at

25   least my recollection is that since Mr. Davis, by that

52

1       time, or closely thereafter, filed his notice of

2       appeal, the Court didn't have jurisdiction to resolve

3       the issue --

4            THE COURT:  Right, because it was subject to the

5       appeal.

6            MR. PORTER:  Yes.  To resolve the issue, we

7       would -- we have a numbered copy of the records, I was

8       anticipating filing by next Tuesday, with the Court's

9       permission, any objections to the Court's procedural

10      order today, we would file under seal with the Court

11      any of the DRC records we object to and we would

12      turnover to the prosecution the remainder of the DRC

13      records that we don't have any objection to.

14           THE COURT:  All right.  And then ask me to make a

15      ruling on the sealed records that you object to?

16           MR. PORTER:  Yes.

17           THE COURT:  All right.  Okay.  Procedurally so

18      that I understand, there was -- I know there was an

19      original request by the State that I ruled on for an

20      order regarding the DRC records.  You had -- I do

21      remember that there was a notice of appeal filed and

22      then you asked me to reconsider that ruling, which I

23      determined I didn't have jurisdiction to do at that

24      time.  Since then the appellate issue has been

25      resolved.  I believe that in terms of it being found

53

1      not to be a final appealable order, not the merits

2      necessarily, but just that it was not a final

3      appealable order, and I thought that subsequent to

4      that, there was a motion for a stay, for lack of a

5      better term, asking me to order the State not to review

6      those records while you prepared, and I forget the

7      terminology you used exactly, but it was a privilege

8      log or something along those lines, I believe is the

9      term you used.

10         MR. PORTER:  That would be correct, Your Honor.

11         THE COURT:  Yeah, I was not familiar with that

12     terminology myself, but that was my understanding of

13     what you had requested, and then I had never seen the

14     proposed privilege log that was supposed to be

15     forthcoming.  And so, no action has been taken to this

16     point.  It's my understanding that as of today's date

17     is the State still has not review those records; is

18     that correct?

19         MR. OSTER:  No, Your Honor, we have been trying to

20     be as --

21         THE COURT:  Patient.

22         MR. OSTER:  Yeah, but it's gotten to the point,

23     you know, the Court is well aware of the date in April

24     and --

25         THE COURT:  May.

54

1           MR. OSTER: May is coming rather soon, we -- you

2       know, I'm not going to harp back on the discovery

3       issue, but we need to get going on this case, and this

4       motion has been pending for a long time and now we are

5       going to have a log, and this Court ruled originally we

6       are entitled to those, we got them from this Court, no

7       appellate court stopped that, the State feels it is our

8       right to look at those records now, and that we have to

9       look at those records for all of the reasons we stated

10      over a year ago --

11          THE COURT: Right.

12          MR. OSTER: -- as to them and I won't rehash any

13      of them.

14          THE COURT: Well --

15          MR. PORTER: Let's be clear what the appellate

16      court ruled, the appellate court did not rule they had

17      any right to look at those records. We filed our

18      motion asked the Court to stay, the Court never ruled

19      on the motion, our motion to -- or to file the

20      privilege log was a little bit premised on the Court

21      ruling on that motion. What we have suggested is, is

22      we will go through the records. We will turn over all

23      but the few, and the records are numbered, all but the

24      few that we think are privileged, we will file them

25      under seal.

55

1              THE COURT:  All right.

2              MR. PORTER:  You know, to sit here and to say that

3         the appellate court has decided that issue, you know,

4         is really a misrepresentation, a blatant

5         misrepresentation.  All they decided was that --

6              THE COURT:  I sense your passion, Mr. Porter, and

7         I understand the point, and I understand they ruled

8         that it was not a final appealable order, and that is

9         the extent of their ruling.  The issue that I have is

10        after having received the motion for a stay, I had

11        engaged in some research based on the merits of your

12        request, which your request seemed to be based on the

13        idea that there was a privilege that was recognized

14        under law that would be protected, and so the Court

15        looked into that issue to see whether an individual who

16        is incarcerated in the state prison system and who has

17        engaged in any type of perhaps counseling or

18        psychological counseling, or things like that, has a

19        recognized privilege, and I can't cite the case because

20        I don't have that in front of me at this time, I could

21        get it.  But my understanding is that there is a

22        privilege that is recognized under Ohio law, but to the

23        extent that the mental state of the defendant is then

24        raised in mitigation, that privilege would be deemed

25        waived.

1        So as we stand, based on the state of the

2    discovery, I don't see that the mental state has been

3    placed in issue by the defense, but I am aware that

4    should that be the case, that that, then, would waive

5    the -- the certain privileges.  So, I do think that

6    there is a legal basis for keeping the State under the

7    order for the time being, but I think that we need to

8    resolve the issue of whether the -- what is going to be

9    placed in issue as a part of the penalty phase of the

10   trial quickly.

11       And I think your proposed procedure of Tuesday

12   filing under seal those portions that you object to, I

13   think that I can review that in conjunction with the

14   law that I have already reviewed, the case names escape

15   me as we speak, but the essence of which is what I just

16   communicated, and then make a ruling that would, of

17   course, be then subject to change based on whether

18   mental state becomes a matter of issue.

19       Other privileges, you know, I guess you would have

20   to educate me as to what other privileges, other than,

21   you know, medical privilege would be involved.

22       MS. COOK-REICH:  Judge, along those lines that

23   would mean that on Tuesday the portions that we are not

24   asking the Court to rule on under seal we would be

25   providing to the prosecutor.  Now, I will say those

1    probably won't be by fax, or electronic transmission.

2    They will be a hard copy, and we will provide those.

3         THE COURT:  Okay.  And it is likely what they have

4    in the box that they haven't seen yet.

5         MS. COOK-REICH:  Yes, it's the same stuff.

6         THE COURT:  So, you could either give them a copy

7    or you could --

8         MS. COOK-REICH:  We'd probably give them a copy

9    because we would have taken off particular numbered

10    pages --

11         THE COURT:  So they don't have to sort through and

12    figure it out, I got it; I got you.

13         MR. PORTER:  And the thought is, that since we've

14    numbered a copy of the pages, what we file under --

15    what we file with the privilege log with the Court it

16    would be pages four through six, psychological

17    privilege and we could look, I'm just using an example,

18    please, Your Honor, and then the Court could look at

19    those with respect to the privilege and pages eight

20    through nine medical or something.

21         MS. COOK-REICH:  They can be re-inserted if you

22    determine that some or all of them are not privileged,

23    they just could get those pages.

24         THE COURT:  Yeah, I think that is essentially what

25    we have to do at this point.  So those will be issues,

58

1     you will evidently know what can be viewed without

2     objection as of close of business Tuesday.  And then

3     the portions that remain for my ruling we will

4     determine that on the 21st.

5          MR. OSTER:  I would ask then, Your Honor, if I

6     could bring the sealed box down to your chambers to

7     have that with the rest so there is no claim that we

8     did anything and that it be preserved that way in your

9     chambers?

10         THE COURT:  Yeah.

11         MS. COOK-REICH:  No problem, I would rely upon Mr.

12    Oster's oath as an officer of the Court that he has not

13    looked through that.

14         THE COURT:  That's fine.  But, you know, I

15    shouldn't be the only one who doesn't have the records.

16    So, yeah, that would be fine, Mr. Oster, why don't you

17    bring those down and then we will make that

18    determination at that time.

19         MR. OSTER:  Thank you, Your Honor.

20         MR. PORTER:  Just so the procedure is established

21    and I don't create any misstep.  My intention to file

22    with you are only the documents that we are claiming

23    are privileged as opposed to all 1,400 pages.

24         THE COURT:  Right.

25         MR. OSTER:  And then we should expect to get the

59

1      unprivileged ones by Wednesday or Thursday at the
2      latest?
3          MS. COOK-REICH:  Those will go in the mail,
4      because they are in Randall's office, the numbered --
5          MR. PORTER:  I will put them in the mail,
6      overnight them Tuesday which means he will have them on
7      Wednesday.
8          THE COURT:  Okay.  Fair enough.  All right.
9      Anything further then that we need to take up at
10     today's hearing?
11         MR. OSTER:  Not on behalf of the State, Your
12     Honor.
13         THE COURT:  All right.  As soon as we finish here,
14     I'm going to send out the e-mails to the other judges
15     and confirm the availability as I referenced and I will
16     look forward to seeing counsel on April the 21st at
17     4:00 p.m.
18         MR. OSTER:  Thank you, Your Honor.
19         MS. COOK-REICH:  Thank you, Your Honor.
20
21                     - - -
22                 PROCEEDINGS CONCLUDED
23                     - - -
24
25

*JILL M. CUTTER, RPR*
*(513) 785-6596*

60

1    STATE OF OHIO              )

2                              )   SS.   REPORTER'S CERTIFICATE

3    COUNTY OF BUTLER )

4              I Jill M. Cutter, RPR, do hereby certify that I am

5    a Registered Professional Reporter and Notary Public within

6    the State of Ohio.

7              I further certify that these proceedings were

8    taken in shorthand by me and by electronic means at the time

9    and place herein set forth and was thereafter reduced to

10   typewritten form, and that the foregoing constitutes a true

11   and accurate transcript, all done to the best of my skill and

12   ability.

13             I further certify that I am not related to any of

14   the parties hereto, nor am I in any way interested in the

15   result of the action hereof.

16             Dated at Hamilton, Ohio, this 8th day of May,

17   2009.

18

19                                    _____

20                                    Jill M. Cutter, RPR
                                      Official Court Reporter
21                                    Butler County Common Pleas
                                      Hamilton, Ohio  45011

22

23

24

25

                         JILL M. CUTTER, RPR
                           (513) 785-6596



COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

---------------------------------

STATE OF OHIO,

    Plaintiff,

      vs.

VON CLARK DAVIS,

    Defendant.

---------------------------------

Case No. CR-1983-12-0614

CA-09-10-263

HONORABLE ANDREW NASTOFF

ORIGINAL

- - -

MOTION HEARING

TRANSCRIPT OF EX-PARTE PROCEEDINGS

APRIL 21, 2009

- - -

JILL M. CUTTER, RPR
(513) 785-6596

COURT OF COMMON PLEAS

BUTLER COUNTY, OHIO

-----------------------------------------

STATE OF OHIO,

    Plaintiff,

vs.

VON CLARK DAVIS,

    Defendant.

Case No.  CR83-12-0614

CA 09-10-263

HONORABLE ANDREW NASTOFF

ORIGINAL

-----------------------------------------

FILED BUTLER CO.
COURT OF APPEALS

MAY 0 8 2010

CINDY CARPENTER
CLERK OF COURTS

- - -

FINAL STATUS CONFERENCE HEARING

TRANSCRIPT OF PROCEEDINGS

September 3, 2009

- - -

JILL M. CUTTER, RPR
(513) 785-6596



2

1    APPEARANCES:

2

3          On behalf of the plaintiff:

4              MICHAEL OSTER, ESQ.
               DAN EICHEL, ESQ.
5              Assistant Prosecuting Attorneys
               315 High Street, 11th Floor
6              Hamilton, Ohio 45011

7          On behalf of the defendant:

8              MELYNDA COOK-REICH, ESQ.
               1501 First Avenue
9              Middletown, Ohio

10             RANDALL PORTER, ESQ.
               Office of the Ohio Public Defender
11             250 East Broad Street, Suite 1400
               Columbus, Ohio 43215

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

3

```
 1              Transcript of Proceedings
 2                  Morning Session
 3              - - - - - - - - - -
 4
 5        THE COURT:  We are on record in State of Ohio vs.
 6    Von Clark Davis.  This is CR83-12-0614.  The record
 7    will reflect that Mr. Davis is present personally.  He
 8    is accompanied with his counsel, lead counsel Randall
 9    Porter, co-counsel Melynda Cook-Reich.  Good morning to
10    you.                                                        11:40AM
11        MS. COOK-REICH:  Good morning, Your Honor.
12        MS. COOK-REICH:  Good morning Your Honor.
13        THE COURT:  Also present in court representing the
14    State of Ohio, assistant prosecutors Dan Eichel and
15    Michael Oster.  Good morning to you as well.
16        MR. OSTER:  Good morning.
17        MR. EICHEL:  Good morning.
18        THE COURT:  We are here today for what has been
19    termed or what I have captioned for lack of a better
20    term a final status conference.  We are scheduled to     11:40AM
21    proceed with the resentencing phase of this case
22    beginning on Tuesday, September the 8th.  And we set
23    this matter to, number one, so that I had the peace of
24    mind of knowing for certain that Mr. Davis had, in
25    fact, been transported here in a timely fashion.  We
```

4

1    didn't have any surprises in that area come Tuesday.

2    And secondly, to check with counsel on status, any

3    issues that may have arisen or they anticipate arising

4    that we may need to discuss.  And then lastly, I wanted

5    to inquire about a few things such as I think now if it

6    hasn't been done before now, certainly now would be the

7    appropriate time perhaps to notify the Court as to

8    which mitigating factors under 2929.04(B) you wish the

9    Court to be focusing on or consider for purposes of the

10   hearing next week.  Certainly at least that is the                    11:40AM

11   Court's expectation at this point.

12        With that being said, first Mr. Eichel or Mr.

13   Oster, anything from the State that you wanted to

14   address or that you wanted the Court to take up at this

15   hearing or for purposes of this hearing?

16        MR. OSTER:  I think the only real request I would

17   ask for the court is if there is a good time tomorrow

18   that I could come down to set up a laptop to make sure

19   it is working.  If the Court knows its schedule, I

20   don't.  If I request that, just a time for that.                      11:40AM

21        The only other thing is we would just say we hope

22   Mr. Porter's father is doing better.

23        THE COURT:  The Court similarly expresses those

24   sentiments with regard to your family.  I purposely

25   cleared out my courtroom schedule for tomorrow, in

JILL M. CUTTER, RPR
(513) 785-6596

1  anticipation that I was going to be spending time

2  focusing on this matter.  And so the courtroom would be

3  open if either side needs to come in to check

4  technology issues, those kind of things, feel free you

5  will have access to court to be able to do whatever you

6  may need to do to prepare for next week's hearing, so

7  that is fine.  Ms. Cook-Reich, Mr. Porter, anything you

8  wanted to take up?

9       MS. COOK-REICH:  Your Honor, just to preserve the

10  record, we have a pending motion which I assume is     11:40AM

11  going to wait until we begin session on Monday --

12  Tuesday.

13       THE COURT:  The motion in limine regarding the

14  aggravating circumstance?

15       MS. COOK-REICH:  Yes, Your Honor.

16       THE COURT:  I will indicate that I am in receipt

17  of a motion to expedite the ruling on that.  And the

18  Court's feeling on the matter is this:  That a motion

19  in limine even in a typical case by its very nature is

20  an anticipatory ruling.  It is not final until the     11:40AM

21  matter is raised at trial and ruled on at trial in

22  light of the evidence that is presented at trial.  And

23  therefore, is subject to being changed or reversed or

24  otherwise modified based on the context in which the

25  evidence is presented at trial.

1        In this instance, even more so, any ruling that
2    this Court would make in limine, is subject to being
3    overridden by a two to one vote on an evidentiary
4    ruling when the three-judge panel is set.  I think it
5    is a matter that is best left to be addressed Tuesday
6    morning with the three-judge panel.  What I can tell
7    you is that I have done my research on the issue.  I am
8    going to make sure that both Judge Pater and Judge
9    Spaeth have copies of your motions and any case law
10   that we have found that we think is pertinent to the          11:40AM
11   issue, so that everyone will be aware that that is a
12   pending issue and ready to deal with it at the first
13   opportunity then on Tuesday.

14        As far as the merits of that motion, I understand
15   that you desire to have some indication ahead of time.
16   I imagine every attorney in every trial would want to
17   know ahead of time how the Court was going to rule on
18   evidentiary issues at trial.  We all know that it is
19   the nature of trial practice that you know how judges
20   are going to rule when they rule.  And we contingency       11:40AM
21   plan and we prepare for plan A's and plan B's and those
22   sorts of things.  It's the nature of trial practice.  I
23   know both of the defense attorneys in this case are
24   highly skilled, and highly experienced, and will be
25   prepared to proceed based on the ruling.

7

1     MS. COOK-REICH:  And just so the Court is aware

2   given the extensive nature of the discovery that the

3   prosecutor has presented, there are numerous witnesses

4   although they have only issued subpoenaed for three, we

5   have spaced our witnesses out accordingly, assuming

6   that we may not get to our case on Tuesday so that,

7   bear with us in the event that you rule in our favor,

8   we are not prepared to begin a full frontal assault at

9   that time.  Just to give you the heads up.

10     THE COURT:  Well, what I will indicate is that I          11:40AM

11   and the other judges based on representations made at

12   earlier hearings have set aside all four days of next

13   week for purposes of this case and this case only.  I

14   cancelled my criminal docket for next Thursday so that

15   that would not interfere.  So we wanted to make sure

16   that we were focused completely on this case with

17   minimal distractions and that we had allotted

18   appropriate time.  So I think that we can certainly be

19   somewhat flexible with scheduling matters within the

20   context of that four-day period of time.  Was there          11:40AM

21   anything further that --

22     MS. COOK-REICH:  No, Your Honor.

23     THE COURT:  All right.  The only other thing that

24   I would reference and again for purposes of assisting

25   the Court, typically, at least in this Court's

JILL M. CUTTER, RPR
(513) 785-6596

1   experience, and in capital cases that this Court has

2   dealt with -- believe me, I am not saying that this is

3   a typical case by my means, nor that any of them are,

4   but in the three prior cases I have had that have gone

5   to trial, at the conclusion of the trial phase, once

6   there has been a finding that would necessitate a

7   second phase or a sentencing phase, typically that

8   falls over a weekend type of time frame where the trial

9   phase ends at the end of the first week and we begin

10  the sentencing phase the second week.  Typically at the        11:40AM

11  conclusion of that trial phase, is when the defense

12  notifies the Court which factors that it would be

13  requesting a jury to be instructed on under 2929.04 (B)

14  (1) through (7).  Maybe your answer is that all of them

15  are at issue.  I'm not sure, but if you can provide any

16  guidance to the Court, I think that that would be

17  appropriate at this time, unless you object to

18  proceeding in that way and if so, you can state that

19  for the record and your reason for that.

20      MR. PORTER:  It's my position what few trials I              11:40AM

21  still do as opposed to appellate work, always ask the

22  Court to only instruct on (B)(7).  We will tell you

23  this morning (B)(7) is the only factor we will be

24  pursuing under.

25      THE COURT:  Okay.  All right.  And (B)(7) is the

JILL M. CUTTER, RPR
(513) 785-6596

1  -- so that would include by my interpretation the body

2  of (B) plus (7) which is any other factors that are

3  relevant to the issue of whether the offender should

4  she sentenced to death.  The body would include

5  history, character, background of the offender, nature

6  and circumstances of the offense to the extent that

7  they are mitigating only.  And the aggravating

8  circumstances proven beyond a reasonable doubt.

9      MR. PORTER:  I'm sorry, what was the Court's last

10 statement, Your Honor, about the aggravating                11:40AM

11 circumstances?

12     THE COURT:  And the aggravating circumstance that

13 has been proved beyond a reasonable doubt.

14     MS. COOK-REICH:  Okay.  Yes.  I didn't know if the

15 Court said aggravating circumstances as opposed

16 aggravating circumstance.

17     THE COURT:  I am aware that in this case there is

18 one.  It is the (A)(5) provision.  And I am familiar

19 with that as will the other judges at that time.

20     MR. PORTER:  Thank you, Your Honor.                     11:40AM

21     THE COURT:  Anything further that we need to take

22 up at this time?  All right.  What I would suggest is

23 one thing I will note is last time we were here, back

24 in May, Judge Pater had requested that we start a

25 little bit later on the Tuesday because he had a

10

1    docket.  I am not sure if that is his request this
2    time.  But what I think might be appropriate is just on
3    the side of caution, why don't we set a 10:00 start
4    date on Monday, we can have Mr. Davis brought over --
5    pardon me, on Tuesday, yes.  Monday being Labor Day.
6    On Tuesday.  You can have Mr. Davis brought over
7    earlier than that, 9:00, 9:30, whatever your request
8    would be if you need time with him before we begin.
9    And then we would begin obviously with discussion of
10   the motion in limine that is pending, which would be          11:40AM
11   brought up in the context of the State indicating I
12   believe what evidence it's going to be offering in the
13   case.  We would entertain, then proceed and entertain
14   any opening statements if you are going to make them.
15   Sometimes they are waived at this point, sometimes they
16   are made, and that will be entirely up to you.  And so
17   I don't know -- and then I'm not sure where we are
18   going to be at that point, but we will just proceed if
19   there is any evidence to be taken further that day from
20   the State, we will proceed.  And it is my understanding     11:40AM
21   that your first witnesses wouldn't be available until
22   the earliest on Wednesday; is that correct?
23        MS. COOK-REICH:  We have some that are coming on
24   Tuesday.  I just didn't have a plethora of people
25   coming on Tuesday.

11

1   THE COURT: Fair enough. Fair enough.

2   MR. OSTER: We would ask, we have witnesses coming

3   in for Tuesday as well. I guess scheduling-wise would

4   it be wise not to ask them to come until 1:00 at that

5   point then with openings and the initial argument

6   about --

7   THE COURT: I would have somebody available

8   earlier than that just in the event that we move

9   through those early proceedings fairly quickly. Have

10  someone available and then if we need to take a short          11:40AM

11  break while you get together anybody else, again, we

12  can be flexible on that.

13  MR. OSTER: Thank you, Your Honor.

14  MR. PORTER: I think one issue that will arise on

15  Tuesday, with the benefit of the Court's remarks today,

16  is because this is such an unusual case, at least I

17  have never been in this posture before, Your Honor, is

18  if the -- and I'm not trying to play semantics, so no

19  offense meant to the Court, is if the three-judge panel

20  decides its going to accept testimony with respect to          11:40AM

21  the aggravating circumstance, either in the form of

22  live witnesses or I believe the Court suggested that

23  the prosecutor may want to admit or readmit, and I

24  don't know what the correct verb is with respect to

25  some of the testimony from the trial phase, is --

1    THE COURT:  Obviously only that which would be

2    relevant to the aggravating circumstance itself.

3    MR. PORTER:  I understand that and assuming -- and

4    I don't want to concede the issue, please, Your Honor,

5    assuming the Court is going to admit either some

6    testimony or some transcript, is that going to be

7    treated as part of the trial phase or is that going to

8    be treated as part of the mitigation phase, which

9    raises an issue only for me logistically, I sometimes

10   get stuck on logistics, is the mitigation opening going          11:40AM

11   to go before that or is it going to go after that?  If

12   the Court understands the quandary that at least I am

13   personally in.

14   THE COURT:  I think I understand.  What I can tell

15   you is that everything we are doing next week is

16   sentencing phase.  The trial phase in this case was

17   completed quite some time ago.  And so everything that

18   we are doing is relevant solely to the sentencing

19   phase, or the resentencing in this case, phase of the

20   case.  And what I anticipate as far as the way we               11:40AM

21   proceed is that we would deal with, for lack of a

22   better term, housekeeping type matters prior to hearing

23   opening statements in the case.  So, if we -- if it is

24   a matter if the State indicates that they want to offer

25   some -- reoffer some evidence from the trial or some

JILL M. CUTTER, RPR
(513) 785-6596

1    exhibits from that, we can entertain their offer, your

2    objection, if any, hear arguments on that, and kind of

3    sort through those housekeeping matters to determine

4    essentially what portions from the trial would be

5    readmitted as part of the sentencing phase.  We will

6    make those determinations prior to an opening

7    statement, but obviously the opening statement would

8    precede the actual admission of any evidence.

9        MR. PORTER:  Thank you, Your Honor.  That does

10    help with that clarification.               11:40AM

11        MS. COOK-REICH:  Judge, can I have two minutes to

12    talk to Mr. Porter about something?

13        THE COURT:  Yes.

14        (A brief recess was taken at this time.)

15        THE COURT:  Go ahead.  We're back on record in

16    State of Ohio vs. Von Clark Davis.  All parties present

17    prior to us going off record are again present.  We

18    just took a short break for counsel to confer on an

19    additional matter.  Is there anything else we need to

20    take up?                                     11:40AM

21        MS. COOK-REICH:  There is, Your Honor.  We have

22    three out-of-county witnesses that are coming and we

23    have -- my office has issued two checks for two

24    out-of-county persons and we have a third one that is

25    coming from out of state.

14

1    THE COURT:  That was the subject of the

2    application?

3    MS. COOK-REICH:  The application for the Maryland

4    witness.  And I can say that given the state of

5    reimbursement by the County, I am not in a position to

6    write that third check nor -- it's come to my attention

7    that I am to ask for immediate appropriation for the

8    funds that I have already issued for the two

9    out-of-county checks and I don't have those numbers

10   here because I have been in here today.  And I can        11:40AM

11   certainly get those for you in five minutes if I can

12   contact my secretary she can give you the numbers.  The

13   third check that should be written for the witness in

14   Maryland, we are going to ask the Court for immediate

15   appropriation of those funds.  Seems quite difficult to

16   get as of Thursday and I need them to send to him to

17   Maryland according to Mr. Porter.

18   THE COURT:  I mean, is this additional funds above

19   and beyond what is previously been authorized in toto

20   to counsel?  Is this within the framework that was        11:40AM

21   originally issued, but perhaps needs to be adjusted

22   from unused funds for an investigator but could be used

23   for a witness now?  Or are you --

24   MR. PORTER:  We understood the Court's prior

25   allotment.  Just a clarification, was to bring

JILL M. CUTTER, RPR
(513) 785-6596

1   witnesses from out of the country.  The difficult

2   situation we have in this case is three of the

3   witnesses are from out of the county.  The Court is

4   certainly more aware of the criminal rules than I am,

5   which is the subpoena is not valid --

6       THE COURT:  Unless it is tendered with the

7   milage --

8       MR. PORTER:  -- tendered with the miles, so we

9   aren't talking about a hotel or anything like that.  We

10  are just talking about miles.  The first time around we

11  did not have the out of state to the two witnesses out

12  of county.  I had proffered my own personal checks.  I

13  am not in the position to do that at this time.  We

14  probably cover and we are guessing is what we have left

15  I don't have the figures in front of me, is probably

16  have with what the Court is allotted and have money

17  left to cover the two in state, out of county.  And

18  what we don't have left is the miles and the witness

19  fee for the witness from Montgomery County, Maryland.

20      THE COURT:  And do you have an estimate of what

21  that milage reimbursement would be?

22      MR. PORTER:  Ms. Cook-Reich's office does.

23      MS. COOK-REICH:  I am trying to text my secretary

24  now to get those figures.

25      MR. PAGAN:  About $550.

1    THE COURT:  All right.

2    MR. PORTER:  Well, and that is again, we aren't

3    trying to run up fees with the Court.  I just look at

4    the criminal rule and if we don't issue a valid

5    subpoena, they don't appear.  Some judges would bang

6    the gavel and say move on Mr. Porter, you couldn't

7    issue a valid subpoena.

8    THE COURT:  Does the State wish to be heard on

9    this matter?

10   MR. OSTER:  No, Your Honor.                        11:41AM

11   MR. EICHEL:  No.

12   THE COURT:  All right.  We will authorize the

13   funds in order to issue a valid subpoena to the witness

14   from Maryland.  We have previously issued an order to

15   that court identifying that person as a material

16   witness.  And the rules require that milage be prepaid

17   in order for any subpoena to be valid, so the Court

18   will authorize those funds to insure that any such

19   subpoena is valid.  I understand what you say about not

20   wanting to drive up costs.  It's a situation where     11:41AM

21   we're not going to make penny wise, pound foolish

22   decisions.  If this is a witness that needs to be here

23   and that is what the rules require, then we will

24   approve that.

25   MS. COOK-REICH:  I have an exact figure, Your

JILL M. CUTTER, RPR
(513) 785-6596

17

1  Honor, for Mr. Flowers from Maryland, apparently the

2  mileage one way is $560.45.

3  THE COURT: All right. Prepare an entry.

4  Anything further we need to take up?

5  MR. PORTER: No, Your Honor.

6  THE COURT: That will be the order. What time

7  would you like Mr. Davis here Tuesday morning, assuming

8  that we are going to get underway at 10:00?

9  MS. COOK-REICH: 9:30, Your Honor.

10  THE COURT: 9:30 it is. Joe, can you assure, make      11:41AM

11  sure that you contact the jail and let them know that

12  Mr. Davis needs to be here at 9:30.

13  If there is nothing further, then, we will see

14  everyone here Tuesday morning. We will be in recess on

15  this matter until that time. And if anything does

16  arise over the weekend of an emergency nature, please

17  make sure that counsel for each side has access to my

18  cell phone number so that you can make contact if need

19  be. Actually, I think it would be better to contact my

20  judicial assistant so that there is no ex-partes.      11:41AM

21  Contact my judicial assistant if there is any

22  administrative emergencies that come up or anything

23  like that. Hopefully, we won't have anything, but I am

24  familiar with what happened last time, so just to be

25  sure, make sure you have that. Anything else?

18

```
 1          MS. COOK-REICH: No, Your Honor.

 2          THE COURT:  We are in recess.

 3          (Proceedings concluded at this time.)

 4          THE COURT:  Let's go back on record one more time.

 5          We are again on record in State of Ohio vs. Van

 6     Clark Davis.  All parties and counsel present prior to

 7     our last break are again present.  Counsel for the

 8     defendant wanted to be heard on an additional matter

 9     before we adjourned for the day.

10          MS. COOK-REICH:  The same matter in regards to the      11:41AM

11     check for this out of state witness.  I will bring you

12     an entry and I assume that it would normally have to go

13     through the normal process of up to the clerk's and

14     over to the auditors.  I don't envision that is going

15     to be get paid by the auditors given what I know as to

16     their current state of funds.  They are not paying

17     attorney fee apps.

18          THE COURT:  Well, what I can indicate to you, is

19     that if need be, it can be reimbursed along with any

20     fee app that is submitted if that needs to occur in      11:41AM

21     order to expedite.  If you need to walk something

22     through, you can do that, but --

23          MS. COOK-REICH:  Normally I would submit them with

24     my fee app, and I guess the reason why we were asking

25     for it today is because I, myself, have fee
```

JILL M. CUTTER, RPR
(513) 785-6596

19

1    applications out for months and they have not been paid

2    and it is very typical that it would be about five

3    months before I ever get this.

4         THE COURT:  I understand.

5         MS. COOK-REICH:  In the event the auditor's office

6    doesn't honor your order, would you like me to come

7    back?

8         THE COURT:  Sounds like something that we need to

9    probably address, so contact the Court if that arises.

10        We will be in recess on this matter.                 11:41AM

11        (Proceedings concluded at this time.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596

20

| | |
|---|---|
| 1 | STATE OF OHIO            ) |
| 2 |                         ) SS.   REPORTER'S CERTIFICATE |
| 3 | COUNTY OF BUTLER )  |

4              I Jill M. Cutter, RPR, do hereby certify that I am

5      a Registered Professional Reporter and Notary Public within

6      the State of Ohio.

7              I further certify that these proceedings were

8      taken in shorthand by me and by electronic means at the time

9      and place herein set forth and was thereafter reduced to

10     typewritten form, and that the foregoing constitutes a true

11     and accurate transcript, all done to the best of my skill and

12     ability.

13             I further certify that I am not related to any of

14     the parties hereto, nor am I in any way interested in the

15     result of the action hereof.

16             Dated at Hamilton, Ohio, this 22 day of December,

17     2008.

18

19

20                                 Jill M. Cutter, RPR
                                   Official Court Reporter
21                                 Butler County Common Pleas
                                   Hamilton, Ohio   45011

22

23

24

25

JILL M. CUTTER, RPR
(513) 785-6596