# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

VON CLARK DAVIS,

        Petitioner,    :    Case No. 2:16-cv-495

  - vs -        District Judge Susan J. Dlott
                Magistrate Judge Michael R. Merz

TIMOTHY SHOOP, Warden,
  Chillicothe Correctional Institution,

                          :

        Respondent.

## DECISION AND ORDER ON MOTION FOR DISCOVERY

This capital habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Motion for Discovery (ECF No. 38). The Respondent opposes the Motion (ECF No. 39) and Petitioner has filed a Reply in support (ECF No. 40).

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Davis seeks leave to conduct discovery as to Grounds for Relief Three, Seven, Eight (ineffective assistance of counsel during his second resentencing), Ten (State's obtaining his conviction through "unnecessarily suggestive procedures and unreliable identifications"), Twelve (inability to inspect the transcript of grand jury proceedings), Thirteen (unconstitutional selection of grand jury foreperson), Eighteen (death sentence is disproportionate and inappropriate); and Twenty-Three through Twenty-Six (State's execution protocol is unconstitutional) (Motion, ECF

No. 38, Page ID 9435; Petition, ECF No. 6, Page ID 8565, 8566-68, 8570-73). He claims to have designated "specific acts and evidence 'that lend support to his claim[s],'" and that "the information requested by Mr. Davis is essential to the full and fair litigation of his Grounds for Relief . . . *i.e.*, with this additional information, he may be able to demonstrate that he is entitled to relief." *Id.*, Page ID 9440, quoting *Bracy v. Gramley*, 520 U.S. 899, 909 (1997). Thus, he argues, he meets the requirements to conduct discovery under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, codified at 28 U.S.C. § 2254(e)(2).

"In Mr. Davis's earlier petition challenging his death sentence from his first resentencing, the Sixth Circuit unanimously held that Mr. Davis was entitled to relief and reversed his death sentence." (Motion, ECF No. 38, Page ID 9441, citing *Davis v. Coyle (Davis X)*, 475 F.3d 761 (6th Cir. 2007)). On remand, Davis was resentenced to death by a three-judge panel of the Butler County, Ohio, Court of Common Pleas (State Court Record, ECF No. 4-39, Page ID 4924-34), making the instant Petition his first challenge of his death sentence, rather than a second-or-successive petition (Motion, ECF No. 38, Page ID 9441, citing *King v. Morgan*, 807 F.3d 154, 159 (6th Cir. 2015); *Askew v. Bradshaw*, No. 13-4171, 636 F. App'x 342, 348 (6th Cir. 2016)). As Davis has "an affirmative duty . . . to litigate all federal constitutional claims in an initial petition," he argues that "the federal courts" in turn, must provide him with "the necessary tools to satisfy this duty, including authorizing discovery." *Id.*, Page ID 9442.

Davis claims that the state courts did not allow him to conduct discovery regarding his claims of ineffective assistance of counsel as to the second resentencing proceeding (Claims Three, Seven, and Eight), and never adjudicated the merits of the remaining claims (Ten, Twelve, Thirteen, Eighteen, and Twenty-Three through Twenty-Six) (Reply, ECF No. 40, Page ID 9480-

81, citing *State v. Davis* ("*Davis XIV*"), 2014-Ohio-1615, ¶ 117; *State v. Davis (Davis VIII)*, 86 Ohio St. 3d 212, 214 (1999) (per curiam); *State v. Davis (Davis II)*, 38 Ohio St. 3d 361, 364-65 (1988); State Court Record, ECF No. 4-23, PageID 2591; Traverse, ECF No. 29, Page ID 9373-74). Thus, he argues, the Supreme Court's strict confinement of the Court's review to the state court record does not apply; nor does the deference mandated by the AEDPA. (Motion, ECF No. 38, Page ID 9444-46, citing 28 U.S.C. § 2254(d)(1); *Cullen v. Pinholster* 563 U.S. 170, 185-86 (2011); *Wellons v. Hall*, 558 U.S. 220, 220, 221 (2010) (per curiam); *Richardson v. Branker*, 668 F.3d 128, 152 n.26 (4th Cir. 2012); *Wiley v. Epps*, 625 F.3d 199, 207-13 (5th Cir. 2010); *Johnson v. Bobby*, No. 2:08-cv-55, 2012 WL 628507, *2 (S.D. Ohio Feb. 27, 2012) (Sargus, J.)).

The Warden responds that "claims 3, 7, and 8, each of which allege[s] claims of ineffective assistance of counsel . . . were denied on the merits by the state courts." (Memo. in Opp., ECF No. 39, Page ID 9477, citing Return of Writ, ECF No. 17, Page ID 9045-47, 9050-60). As to the remaining grounds for relief, he claims that, "because of significant procedural and substantive deficiencies[,] . . . it is most doubtful the Court would later determine that viable questions of fact remain that could be explored by a grant of discovery." *Id.*, Page ID 9477-78.

**LEGAL STANDARD**

A habeas petitioner is not entitled to discovery as a matter of course, but only after the court, in its discretion, determines that the petitioner has made a showing of good cause to do so. Rule 6(a), Rules Governing § 2254 Cases; *Bracy*, 520 U.S. at 901 (1997); *Harris v. Nelson*, 394 U.S. 286, 295-96 (1969). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904,

*citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F.3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery[.]'" *Id.*, *quoting Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir. 1991).

In order to obtain an evidentiary hearing in federal court on a claim on which he has not fully developed the factual basis in state court, a habeas corpus petitioner must show cause and prejudice. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11 (1992), *superseded by statute on other grounds as stated in Williams v. Taylor*, 529 U.S. 420, 432 (2000). Logically, there is no good reason to gather evidence which one will not be permitted to present because one cannot satisfy the *Keeney* standard. Therefore, if there are items of evidence sought in discovery which could have been obtained and presented during the state court process but were not, a petitioner should make the required *Keeney* showing before being authorized to conduct discovery to obtain the evidence. In *Johnson v. Bobby*, 2018 U.S. Dist. LEXIS 44709 (S.D. Ohio Mar. 19, 2018), Chief Judge Sargus applied this same reasoning to deny discovery where the results could not have been presented in federal court because of *Cullen v. Pinholster,* 563 U.S. 170 (2011).

# Analysis

## A. Ineffective Assistance of Counsel Claims

In Claim Three, Davis argues that his right to effective counsel at sentencing was violated by counsel's failure "to investigate and present mitigating evidence of Mr. Davis's good prison behavior even though this information was known, available and relevant." (Petition, ECF No. 6, Page ID 8652). In Claim Seven, Davis asserts that he was denied effective assistance of counsel during the second resentencing by counsel's: (A) calling Cynthia Mausser ("Mausser"), Chair of the Ohio Parole Board, as a mitigation witness; (B) failing to adequately investigate and present the mitigation evidence of retained psychologist, Robert Smith, Ph.D. ("Smith"), and calling "Dr. Smith as a mitigation witness after knowing his testimony would likely do more harm than good"; (C) failing to call mitigation investigator John Lee ("Lee") as a mitigation witness; and (D) failing to effectively investigate and present mitigation evidence from members of his family. *Id*., Page ID 8678-92. In Claim Eight, Davis argues that counsel was ineffective in failing to seek the recusals of Common Pleas Court Judges Andrew Nastoff, Keith M. Spaeth, and Charles L. Pater, who together resentenced Davis to death on remand. *Id*., Page ID 8693-98.

In Claim Ten, Davis argues that the State obtained his conviction via "unnecessarily suggestive procedures" by law enforcement questioning eyewitnesses, "and unreliable identifications" by those eyewitnesses at trial (Petition, ECF No. 6, Page ID 8706-09). In Claim Thirteen, he alleges that the grand jury foreperson was selected through a discriminatory process, which caused the grand jury that indicted him to be impermissibly racially and sexually biased. *Id*., Page ID 8717-19. Davis argues that to the extent these claims are "procedurally defaulted,

ineffective assistance of his direct-appeal and post-conviction counsel can excuse such default." (Motion, ECF No. 38, Page ID 9450).

Davis argues that, to prosecute these claims fully, he must take the depositions of:

- Second Resentencing Counsel Randall Porter and Melynda Cook-Reich (now Melynda Cook Howard)
- Appellate Counsel Laurence E. Komp, John P. Parker, and Alan M. Freedman
- Post-Conviction Counsel Kort Gatterdam and Erik P. Henry
- Dr. Smith, who served as an expert witness in the areas of clinical psychology and addiction
- Mitigation Investigator John Lee
- The Honorable Charles L. Pater
- The Honorable Keith M. Spaeth
- The Honorable Andrew Nastoff
- Prison personnel who, through their interactions and evaluations of Mr. Davis, are able to speak to his behavior, attitude, and personality. These individuals' handwritten signatures appear on selected documents from Mr. Davis's DRC records that were provided in post-conviction exhibit E. (*See* ECF 4-46, PageID 6281-364.) The Warden's assistance is required in identifying the names of these employees from their signatures.

(Motion, ECF No. 38, Page ID 9451). "In addition to the depositions, Mr. Davis seeks the resentencing file of Counsel Porter and Cook-Reich." *Id.*

The Warden argues, and Davis concedes, that the state courts examined and denied on their merits Claims Three, Seven and Eight (Memo. in Opp., ECF No. 39, Page ID 9477, citing Return of Writ, ECF No. 17, Page ID 9045-47, 9050-60; Reply, ECF No. 40, Page ID 9481). Indeed, the Twelfth District Court of Appeals and the Supreme Court of Ohio expressly addressed and accorded "some weight" to the evidence offered by Davis in mitigation. *Davis XIV*, 2014-Ohio-1615, ¶¶ 93-95, 112 ("*Davis XIV*"), citing *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986); *State v. Davis*, 12th Dist. Butler No. CA-2009-10-263, 2011-Ohio-787, ¶¶ 75-78 (Feb. 22, 2011) ("*Davis XIII*"). While Davis is correct that his Petition is his first opportunity to litigate ineffective assistance of counsel claims as to his second resentencing, the state courts' adjudications of those claims are entitled to deference. Consequently, Davis "must overcome the limitation of §

2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185.

Davis argues that *Pinholster* "does not stand as an impediment to additional factual development in situations where the state court refused to permit factual development of a claim." (Reply, ECF No. 40, Page ID 9481, citing Motion, ECF No. 38, Page ID 9445-48). Yet, both the Twelfth District and Supreme Court of Ohio found that the three-judge panel that resentenced Petitioner had examined evidence of Davis's good behavior in prison, along with his history of mental illness (including borderline personality disorder) and alcohol dependence, "remorse and apology, age (62), probability of no release from prison, whether a sentence of life in prison would bring closure to the victim's family, and the savings to taxpayers should a life sentence be imposed." *Davis XIII*, 2011-Ohio-787, ¶ 75; *Davis XIV*, 2014-Ohio-1615, ¶¶ 82-115. Given the extensive mitigation evidence presented by Porter and Cook-Reich at the second resentencing, specifically as to "*Skipper* evidence" of good behavior, the Court cannot reasonably conclude that the deposition testimony of prison personnel, even if properly introduced, would render the state courts' rejection of Claim Three "contrary to, or involv[ing] an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see generally Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a viable ineffective assistance of counsel claim requires both errors or omissions so serious that his attorneys were, for all intents and purposes, not serving as counsel at all, *and* prejudice resulting from those errors or omissions).

Davis argues that Porter and Cook-Reich were deficient in "fail[ing] to prepare or revise Dr. Robert Smith's testimony in light of Ms. Mausser's testimony," (Motion, ECF No. 38, Page ID 9451), and claims that Dr. Smith's deposition "can shed light on whether counsel properly investigated his mitigating evidence and whether counsel was aware that his testimony would

likely do more harm than good." *Id.*, Page ID 9452. Yet, beyond that conclusory statement, Davis has not argued, much less presented evidence, that Dr. Smith's testimony at the second resentencing does not speak for itself as to whether Porter and Cook-Reich's decision to call him as a witness constituted deficient performance under *Strickland*. Thus, Davis's request for leave to depose Dr. Smith is not well-taken.

Davis argues that mitigation investigator John Lee ("Lee") can "document the extent of the mitigation investigation, and . . . also shed light on . . . the information he could have provided from his interviews with witnesses who were unavailable for the second resentencing hearing." (Motion, ECF No. 38, Page ID 9452). Specifically, Davis claims, Lee could have testified as to how "the family's history of alcohol dependence, Mr. Davis's childhood behavior issues, and Mr. Davis's parents' relationship problems . . . affected Mr. Davis and his siblings." *Id.* Yet, the Supreme Court of Ohio discussed extensively the evidence introduced at the second resentencing regarding Davis's history of alcohol dependence, his familial dysfunction, and mental illness. *Davis XIV*, 2014-Ohio-1615, ¶¶ 85-92. Thus, the state court already evaluated the evidence about which Lee might testify, and that evaluation is entitled to deference. While Davis claims that "counsel failed to sufficient[ly] present" evidence regarding Davis's "absent, abusive and alcoholic father, frequent separations and extramarital relationships by his parents, and ongoing repeated pregnancies by his mother," (Motion, ECF No. 38, Page ID 9452, citing State Court Record, ECF No. 5-8, Page ID 8459-60), he does not explain how Lee's testimony as to that evidence would have any bearing on trial counsel's presentation of same. In other words, Davis has not demonstrated prejudice from counsel's failure to call Lee as a witness, and thus, has not shown good cause to depose Lee.

Davis states that if the "Court determines that any portions of his Eighth, Tenth, and

Thirteenth grounds for relief are procedurally defaulted," then "ineffective assistance of his direct-appeal and post-conviction counsel can excuse such default." (Motion, ECF No. 38, Page ID 9452). He claims that depositions of those attorneys will help "determine whether any strategic reasons existed for any omission or action, and, if so, whether the strategic basis offered was reasonable or whether trial counsel simply failed to thoroughly investigate." *Id*. Yet, ineffective assistance of counsel is governed by an objective, rather than subjective, standard; *i.e.*, it matters not whether not presenting the arguments that underlie Claims Eight, Ten, and Thirteen was a careless oversight or an intentional decision. What matters is whether, by not presenting those arguments, counsel fell below the standard for adequate representation. *Strickland*, 466 U.S. at 687-88. The depositions of appellate and initial post-conviction counsel would do nothing to further Davis's presentation of an ineffective assistance argument or the Court's consideration of that issue, and the Court will not grant leave for him to take those depositions.

Davis argues that "[t]he depositions of Judge Pater, Judge Spaeth, and retired Judge Nastoff will allow Mr. Davis to establish prejudice from counsel's failure to investigate and seek recusal of biased judges in Mr. Davis's second resentencing." (Motion, ECF No. 38, Page ID 9453). Davis's argument is befuddling as to all three judges. Post-conviction counsel Kort Gatterdam sought, unsuccessfully, to disqualify Judge Nastoff, *In re Disqualification of Nastoff*, 134 Ohio St. 3d 1232, 2012-Ohio-6339, ¶¶ 1, 4, and it strains credulity to conclude that Porter and Cook-Reich were deficient in not seeking to do so again. Further, Davis does not claim that Porter and Cook-Reich were ineffective in failing to seek the recusal of Judge Spaeth. *See* Petition, ECF No. 6, Page ID 9567 (counsel was supposedly ineffective only with respect to failing to seek Judge Nastoff's recusal and failing to conduct voir dire of Judge Pater).

Finally, Davis, in his Petition, quoted Judge Pater's on-record statements that he had been

9

"good friends" since high school with Victor Davis, Davis's brother and a mitigation witness at the second resentencing, but that he could "fairly and impartially decide this matter[.]" (Petition, ECF No. 6, Page ID 8696, quoting State Court Record, ECF No. 5-7, Page ID 8285-86; citing ECF No. 5-7, Page ID 8268). Davis appears to claim that Judge Pater's close relationship with Davis's brother made him less receptive to "Dr. Smith's conclusion that [Davis] suffered an extreme and dysfunctional upbringing[,]" a conclusion which the three-judge panel rejected. *Id.*, Page ID 8697, quoting State Court Record, ECF No. 4-39, Page ID 4933. Thus, Davis is aware of and has articulated the prejudice he allegedly suffered, and the deficient performance prong of *Strickland* is concerned with his attorney's failure to conduct voir dire in light of Judge Pater's relationship with Davis's brother, not the Judge's purported bias as a result of that relationship. Accordingly, a deposition of Judge Pater would not aid Petitioner in developing his ineffective assistance of counsel claim.

Petitioner's only argument as to the necessity of deposing appellate attorneys Freedman, Komp, and Parker, or of initial post-conviction counsel Gatterdam and Henry, is that "to the extent that the Court determines that any portions of his Eighth, Tenth, and Thirteenth grounds for relief are procedurally defaulted, ineffective assistance of his direct-appeal and post-conviction counsel can excuse such default." (Motion, ECF No. 38, Page ID 9451-52). Yet, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted). Moreover, his argument that ineffectiveness of those particular counsel could excuse any procedural default is unavailing as to those three grounds for relief. Davis alleges in Claim Eight that counsel's performance was defective in failing to investigate and seek the recusals of Judges Nastoff and Pater as to the second

10

resentencing (Petition, ECF No. 6, Page ID 8693-98), which occurred *after* Freedman, Gatterdam, Henry, Komp, and Parker's involvement with the case ended. As to the gravamen of Claim Thirteen, improper selection of the grand jury foreperson, Davis does not argue, much less put forth evidence, that trial counsel had objected as to the selection of the foreperson. Accordingly, there is no evidence before the Court that the issue was preserved for appeal or postconviction, such that counsel's failure to raise the issue could excuse procedural default.

As to Claim Ten, in which Davis claims that his conviction was the product of "unnecessarily suggestive procedures" by law enforcement and the State "and unreliable identifications" by eyewitnesses (State Court Record, ECF No. 4-21, Page ID 2287-89), he concedes that the Twelfth District "held that Mr. Davis's claim was barred by *res judicata because it could have been raised on direct appeal*." (Motion, ECF No. 38, Page ID 9460 (emphasis added)). Thus, the issue could not have been raised by postconviction counsel. Further, Davis provides no reason as to why the *subjective* states of mind of his appellate attorneys with respect to not investigating and raising the claim have any bearing on whether their failures to do so constituted *objectively* incompetent representation, as is required under *Strickland*. Thus, the proposed depositions of Freedman, Gatterdam, Henry, Komp, and Parker are not reasonably calculated to lead to the discovery of evidence that the Court may consider, and Davis has not demonstrated good cause to take them.

As to the proposed depositions of Porter and Cook-Reich, along with production of their client file, Davis notes that Magistrate Judge Norah McCann King, in his "original habeas case[,] permitted him to conduct discovery for his ineffectiveness claims, including depositions of his prior counsel." (Motion, ECF No. 38, Page ID 9457), citing *Davis v. Coyle (Davis IX)*, No. C-1-97-402, Opinion and Order, ECF No. 24 (S.D. Ohio Nov. 18, 1997) (McCann King, Mag. J.).

However, Davis does not attach Magistrate Judge McCann King's Order, and her decision from twenty-one years ago does not, by itself, constitute good cause for Davis to depose Porter and Cook-Reich about an entirely separate proceeding.

Davis argues that he was diligent in seeking discovery on his ineffective assistance claims, and complains that "[a]s a post-conviction petitioner," he was "caught in the classic Catch-22 situation. He couldn't [sic] obtain a hearing until he demonstrated adequate proof of a constitutional violation, but he couldn't [sic] utilize the means to gather his proof (discovery) without submitting sufficient proof of the constitutional violations to the court." (Motion, ECF No. 38, Page ID 9456-57, citing *State v. Cooperrider*, 4 Ohio St. 3d 226, 228 (1983); *State v. Smith*, 30 Ohio App. 3d 138, 140 (9th Dist. 1986) (noting that Ohio Rev. Code § 2953.21, the statute authorizing post-conviction relief, does not grant a petitioner discovery and an evidentiary hearing as a matter of right.)). Davis argues that "Ohio's post-conviction process imposes an impossible pleading standard on petitioners. The Ohio courts effectively foreclosed Mr. Davis from having his legitimate claims reviewed." *Id*., Page ID 9457. Yet, Davis cites no caselaw, and the Court is unaware of any, holding that Ohio Rev. Code § 2953.21's requirements, by themselves, deprive a petitioner of his or her constitutional rights. In light of the above, and the fact that there is no constitutional right to representation in post-conviction proceedings, even in death penalty cases, Davis's conclusory statement that he needs to take the depositions of Porter and Cook-Reich to fully develop his claims falls short of the good cause required to obtain leave to conduct discovery. Therefore, his Motion is overruled as to those requests.

### B. Lethal Injection Protocol Claims

Although Davis has raised four claims regarding the constitutionality of Ohio's lethal injection protocol, he concedes that he is a named plaintiff in consolidated litigation regarding the

protocol's constitutionality (the "protocol case"), "a great deal of discovery relevant to [Davis's] claims has been produced in the § 1983 lethal injection case"; and his attorneys "have signed and filed Declarations of Compliance" with the protective order governing that case. (Motion, ECF No. 38, Page ID 9472, citing *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, ECF Nos. 1857, 1887). Davis asks only "that information that has been or is in the future produced in the § 1983 case and is designated CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION be permitted to be used for the purpose of litigating this habeas action[,]" *id*. (emphasis in original), and the Warden does not specifically object to this portion of the Motion in her memorandum *contra*. Nonetheless, the Court is skeptical of Davis litigating two actions regarding the constitutionality of Ohio's lethal injection protocol simultaneously, as it creates the grave risk of inconsistent decisions affecting not only Davis, but the other plaintiffs in the protocol case. While Davis alleges that his "unique, individual physical and or mental characteristics will cause any execution by lethal injection under Ohio law to violate the Eighth Amendment," (Petition, ECF No. 6, Page ID 8796), his Petition is not verified, and he does not designate facts in the instant Motion supporting that allegation**.** The Court cannot reasonably infer that the evidence produced during discovery in the protocol case would assist him in developing his individual protocol claims as distinct from those raised in the protocol case. Accordingly, his Motion is overruled with respect to Claims Twenty-Three through Twenty-Six.

### C. Remaining Claims

In his memorandum *contra*, the Warden argues that Claims Ten (conviction was product of unnecessarily suggestive procedures and unreliable identifications), Twelve (denial of inspection of grand jury testimony), Thirteen (improper selection of grand jury foreperson), and

Eighteen (death penalty sentence disproportionate and inappropriate) are either barred by *res judicata* and/or were never properly presented to the state courts with respect to the final judgment currently being attacked, which was entered on March 2, 2015 (Memo. in Opp., ECF No. 39, Page ID 9477-78, citing Return of Writ, ECF No. 17, Page ID 9061-62, 9065-67, 9070-71). Davis concedes that he did not raise Claim Ten on direct appeal, and that, in affirming the trial court's dismissal of his initial petition for post-conviction relief, the Twelfth District held that that specific claim was barred by *res judicata* (Motion, ECF No. 38, Page ID 9460, citing *State v. Davis (Davis VI)*, 12th Dist. Butler No. CA95-07-124, 1996 WL 551432, at *9 (Sept. 30, 1996)). *Res judicata* is an adequate and independent state law ground upon which to find a claim procedurally defaulted, and thus, bar its consideration of claims district courts. *Coleman v. Mitchell*, 244 F.3d 533, 538-39 (6th Cir. 2001), citing *State v. Perry*, 10 Ohio St. 2d 175 (1967). Thus, without more evidence, which Davis does not provide, he is not entitled to discovery as to the gravamen of Claim Ten.[1]

Davis argues that he "has been diligent in attempting to raise [Claim Twelve] in the state courts" as both a state and federal constitutional claim, but that the Supreme Court of Ohio only addressed his state law claim (Motion, ECF No. 38, Page ID 9463, citing *State v. Davis (Davis II)*, 38 Ohio St. 3d 361, 364-65 (1988); State Court Record, ECF No. 4-6, Page ID 769-78). Thus, he argues, the federal constitutional claim that underpins Claim Twelve has not been procedurally defaulted. *Id.* Davis's argument is unavailing for two reasons. *First*, as the Warden discusses (ECF No. 17, Page ID 9066, citing *Davis v. Ohio*, 135 S.Ct. 1494 (Mem.) (2015)), there is no indication that Davis raised this claim in her appeal from the state court judgment at issue in this case—the judgment of death which was imposed as part of his second resentencing, which became final on March 2, 2015. *Second*, the *Davis II* court *did* address the federal constitutional issue,

---
[1] To the extent he seeks the depositions of his appellate counsel to demonstrate cause and prejudice to excuse the procedural default, that portion of his Motion is denied for the reasons discussed above.

holding that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence[,]" *Davis II*, 38 Ohio St. 3d at 365 (internal quotation marks omitted), quoting *United States v. Calandra*, 414 U.S. 338, 344-45 (1974), and that "[n]othing in the record indicates that [Davis] failed to receive a fair trial because he was not provided with the grand jury testimony." *Id*. As Claim Twelve was already adjudicated on the merits, this Court's review, and the evidence it may consider therein, are sharply circumscribed. 28 U.S.C. § 2254(d); *Pinholster*, 563 U.S. at 185. Moreover, Davis's citations to supposedly inconsistent trial testimony (Motion, ECF No. 38, Page ID 9461 (citations omitted)) fall well short of demonstrating the particularized need required to obtain access to grand jury transcripts. *State v. Greer*, 66 Ohio St. 2d 139, paragraph two of the syllabus (1981). Accordingly, the Motion is overruled as to Claim Twelve.

Davis argues that he has been diligent in raising Claim Thirteen in the state court (Motion, ECF No. 38, Page ID 9465, citing *State v. Davis (Davis VIII)*, 86 Ohio St. 3d 212 (1999) (per curiam); State Court Record, ECF No. 4-27, Page ID 2965). Yet *Davis VIII* concerned Davis's applications to reopen his direct appeal, and there is no evidence that: (a) he attempted to raise this claim during his actual direct appeal; or (b) the claim was not reasonably available to him at that earlier time. 86 Ohio St. 3d at 213. Also, the Supreme Court of Ohio's conclusion "that Davis has failed to establish good cause for failing to file timely applications under App.R. 26(B)[,]" *id*. at 214, is entitled to deference. In light of the above, the Court must conclude that Claim Thirteen is procedurally defaulted, and thus, the Court may not adjudicate its merits.

Alternatively, even if the claim is not procedurally defaulted, the only evidence offered by Davis regarding biased selection of the grand jury foreperson in Butler County are the supposedly racially and sexually discriminatory selection process in Hamilton County, Ohio, and the fact that

Butler County is adjacent to Hamilton County. Davis has no evidence that the process in Butler County was discriminatory or impermissibly altered the composition of the grand jury venire. Absent any such facts, Davis has not demonstrated good cause sufficient to conduct discovery, and the Motion as to Claim Thirteen must be overruled.

Finally, as to Claim Eighteen, "Davis requests access to records from the Butler County Court of Common Pleas of negotiated guilty pleas to aggravated murder[,]" and "all documents reflecting or referencing procedures, policies, or guidelines regarding who should be charged with capital murder in Butler County before or at the time of Mr. Davis's prosecution[.]" (Motion, ECF No. 38, Page ID 9467-68). This request is incongruous with the gravamen of Claim Eighteen, in which Davis claims that the death sentence imposed was disproportionate and inappropriate, *id*., Page ID 9466, and Davis fails to explain how discovery regarding the proportionality of the capital *indictment* is reasonably calculated to lead to the discovery of admissible evidence as to the proportionality and appropriateness of the *death sentence*. Nowhere in his Petition, Motion, or Reply does Davis cite any caselaw suggesting the existence of a constitutional right to proportionality in the indictment, and the Court is unaware of any such caselaw. Thus, even assuming arguendo that Claim Eighteen is not procedurally defaulted, Davis still has failed to demonstrate good cause to take the requested discovery, and the Court will not grant him leave to do so.

## II. CONCLUSION

For the foregoing reasons, the Court DENIES Davis's Motion for Leave to Conduct Discovery (ECF No. 38). Davis's Petition for Writ of Habeas Corpus (ECF No. 6) remains pending before this Court.

November 2, 2018.

                                                                       s/ *Michael R. Merz*
                                                                   United States Magistrate Judge