**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **VON CLARK DAVIS,** | ) | **Case No. 2:16-CV-0495** |
| | ) | |
| **Petitioner,** | ) | **Judge:  Susan J. Dlott** |
| | ) | |
| **v.** | ) | **Magistrate Judge Michael R. Merz** |
| | ) | |
| **CHARLOTTE JENKINS, Warden,** | ) | <u>**THIS IS A DEATH PENALTY CASE**</u> |
| **Chillicothe Correctional Institution,** | ) | |
| | ) | *No Execution Date Scheduled* |
| **Respondent.** | ) | |

---

**PETITIONER VON CLARK DAVIS'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (ECF 51)**

---

**Deborah L. Williams**
Federal Public Defender

*/s/ Erin G. Barnhart*
**Erin G. Barnhart (0079681)**
*Lead/Trial counsel*

**Jordan S. Berman (0093075)**
*Co-Counsel*

Assistant Federal Public Defenders
Federal Public Defender's Office
for the Southern District of Ohio
Capital Habeas Unit
10 W. Broad Street, Suite 1020
Columbus, Ohio 43215
Phone: (614) 469-2999
erin_barnhart@fd.org
jordan_berman@fd.org
**Counsel for Petitioner**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ I

I.     INTRODUCTION ............................................................................... 1

II.    STANDARD OF REVIEW ................................................................. 2

III.   PROCEDURAL BACKGROUND ........................................................ 3

IV.   FACTUAL OVERVIEW ..................................................................... 4

V.    CONSTITUTIONAL CLAIMS ........................................................... 7

FIRST GROUND FOR RELIEF: ...................................................................... 7

MR. DAVIS'S WAIVER OF HIS RIGHT TO A JURY TRIAL WAS INVALID
BECAUSE IT WAS NOT KNOWING, INTELLIGENT AND
VOLUNTARY, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION. ..................................................................... 7

A.    Introduction ............................................................................... 7

B.    Objections to cognizability analysis ........................................ 7

C.    Objections to merits analysis .................................................. 9

SECOND GROUND FOR RELIEF: ................................................................ 20

THE TRIAL COURT VIOLATED MR. DAVIS'S RIGHTS UNDER THE
SIXTH AND EIGHTH AMENDMENTS AND THE DUE PROCESS
CLAUSE WHEN IT ENFORCED HIS JURY WAIVER AT TWO
SUBSEQUENT RESENTENCING HEARINGS. ........................... 20

A.    Introduction ............................................................................. 20

B.    Objections to cognizability analysis ...................................... 20

C.    Objections to merits analysis ................................................ 21

THIRD GROUND FOR RELIEF: ................................................................... 24

MR. DAVIS'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER
THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO
REASONABLY INVESTIGATE AND PRESENT MITIGATING
*SKIPPER* EVIDENCE. .............................................................. 24

A.    Introduction ............................................................................. 24

B.    Objections to merits analysis ................................................ 24

FOURTH GROUND FOR RELIEF: ............................................................... 29

MR. DAVIS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FIFTH , SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION DUE TO HIS COUNSEL'S FAILURES IN ADVISING HIM REGARDING A JURY WAIVER ............... 29

    A.    Introduction ........................................................... 29

    B.    Objections to merits analysis ................................. 30

FIFTH GROUND FOR RELIEF: ..................................................... 32

MR. DAVIS'S RIGHTS AS GUARANTEED BY THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT FAILED TO FULLY AND FAIRLY CONSIDER ALL MITIGATING EVIDENCE .................................................................... 32

    A.    Introduction ........................................................... 32

    B.    Objections to merits analysis ................................. 33

SIXTH GROUND FOR RELIEF: ..................................................... 36

THE CAPITAL SPECIFICATION OF A PRIOR HOMICIDE THAT WAS USED IN MR. DAVIS'S CASE WAS TOO REMOTE IN TIME, IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION. ......................................................... 36

    A.    Introduction ........................................................... 36

    B.    Objections to merits analysis ................................. 37

SEVENTH GROUND FOR RELIEF: ................................................ 39

MR. DAVIS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS SECOND RESENTENCING HEARING WHEN COUNSEL FAILED TO REASONABLY INVESTIGATE AND PRESENT MITIGATION EVIDENCE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ................................. 39

    A.    Introduction ........................................................... 39

    B.    Objections to merits analysis ................................. 40

EIGHTH GROUND FOR RELIEF: ................................................... 53

MR. DAVIS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS SECOND RESENTENCING WHEN COUNSEL FAILED TO INVESTIGATE AND SEEK RECUSAL OF BIASED JUDGES IN VIOLATION OF MR. DAVIS'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ................................. 53

A.  Introduction ............................................................................. 53

B.  Objections to procedural default analysis ................................ 53

C.  Objections to merits analysis ................................................... 57

NINTH GROUND FOR RELIEF: .................................................................. 59

EXECUTING MR. DAVIS AFTER MORE THAN THIRTY YEARS ON
    DEATH ROW CONSTITUTES CRUEL AND UNUSUAL
    PUNISHMENT IN VIOLATION OF THE FIFTH, EIGHTH AND
    FOURTEENTH AMENDMENTS TO THE UNITED STATES
    CONSTITUTION. ............................................................................. 59

A.  Introduction ............................................................................. 59

B.  Objections to merits analysis ................................................... 60

TENTH GROUND FOR RELIEF: .................................................................. 62

THE STATE OBTAINED DAVIS'S CONVICTION VIA UNNECESSARILY
    SUGGESTIVE PROCEDURES AND UNRELIABLE
    IDENTIFICATIONS IN VIOLATION OF THE FIFTH, SIXTH,
    EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED
    STATES CONSTITUTION .................................................................. 62

A.  Introduction ............................................................................. 62

B.  Objections to procedural default and merits analysis .............. 63

ELEVENTH GROUND FOR RELIEF: ........................................................... 67

THE STATE COURTS VIOLATED MR. DAVIS'S RIGHTS UNDER THE
    FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE
    FEDERAL AND STATE CONSTITUTIONS BOTH TIMES THEY
    RESENTENCED HIM TO DEATH. .................................................... 67

A.  Introduction ............................................................................. 67

B.  Objections to merits analysis ................................................... 68

TWELFTH GROUND FOR RELIEF: ............................................................. 72

MR. DAVIS WAS NOT PERMITTED TO INSPECT THE GRAND JURY
    TESTIMONY IN HIS CASE, IN VIOLATION OF HIS RIGHTS UNDER
    THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
    OF THE UNITED STATES CONSTITUTION. .................................... 72

A.  Introduction ............................................................................. 72

B.  Objections to merits analysis ................................................... 72

THIRTEENTH GROUND FOR RELIEF: ........................................................ 74

THE SELECTION OF THE GRAND JURY FOREPERSON IN MR. DAVIS'S
    CASE VIOLATED THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH
    AMENDMENTS OF THE UNITED STATES CONSTITUTION .................... 74

A.     Introduction ........................................................................ 74

B.     Objections to merits analysis ............................................. 75

FOURTEENTH GROUND FOR RELIEF: ................................................... 77

MR. DAVIS WAS NOT ABLE TO INTRODUCE THE TESTIMONY OF
DEFENSE WITNESS ELBERT AVERY.  THE TRIAL COURT'S
PROHIBITION OF THIS WITNESS'S TESTIMONY VIOLATED THE
SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION. ................................................. 77

A.     Introduction ........................................................................ 77

B.     Objections to procedural default analysis .............................. 78

C.     Objections to merits analysis ............................................. 79

FIFTEENTH GROUND FOR RELIEF: ....................................................... 80

THE SPECIFICATION USED AT MR. DAVIS'S CAPITAL TRIAL TO MAKE
HIM DEATH-ELIGIBLE WAS INVALID, IN VIOLATION OF HIS
RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION. ................. 80

A.     Introduction ........................................................................ 80

B.     Objections to procudural default analysis .............................. 81

C.     Objections to merits analysis ............................................. 81

SIXTEENTH GROUND FOR RELIEF: ....................................................... 83

MR. DAVIS'S COUNSEL WERE INEFFECTIVE FOR FAILING TO
INVESTIGATE THE CIRCUMSTANCES SURROUNDING THE
PRIOR HOMICIDE CHARGED IN THE CAPITAL SPECIFICATION
TO THE AGGRAVATED MURDER CHARGE, IN VIOLATION OF
HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION. ......................................................................... 83

A.     Introduction ........................................................................ 83

B.     Objections to procudural default analysis .............................. 83

C.     Objections to merits analysis ............................................. 84

SEVENTEENTH GROUND FOR RELIEF: ................................................... 87

THE TRIAL COURT DENIED DEFENSE COUNSEL'S MOTION TO SEVER
THE TWO CHARGES CONTAINED IN THE INDICTMENT IN
VIOLATION OF DAVIS'S RIGHTS UNDER THE FIFTH, SIXTH,
EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED
STATES CONSTITUTION. .............................................................. 87

A.     Introduction ........................................................................ 87

B.     Objections to merits analysis ............................................. 88

EIGHTEENTH GROUND FOR RELIEF: .................................................................... 92

MR. DAVIS'S DEATH SENTENCE IS DISPROPORTIONATE AND
    INAPPROPRIATE IN VIOLATION OF THE FIFTH AND
    FOURTEENTH AMENDMENTS TO THE UNITED STATES
    CONSTITUTION. ............................................................................................... 92

TWENTIETH GROUND FOR RELIEF: ...................................................................... 92

THE DEATH SENTENCE IMPOSED ON MR. DAVIS IS
    DISPROPORTIONATE IN VIOLATION OF THE FIFTH, SIXTH,
    EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED
    STATES CONSTITUTION .................................................................................. 92

    A.    Introduction ............................................................................................ 92

    B.    Objections to merits analysis ................................................................ 93

NINETEENTH GROUND FOR RELIEF: .................................................................... 97

THE EVIDENCE PRESENTED AT MR. DAVIS'S TRIAL WAS
    INSUFFICIENT TO SUPPORT THE CONVICTION FOR
    AGGRAVATED MURDER IN VIOLATION OF PETITIONER
    DAVIS'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND
    FOURTEENTH AMENDMENTS OF THE UNITED STATES
    CONSTITUTION. ............................................................................................... 97

    A.    Introduction ............................................................................................ 97

    B.    Objections to merits analysis ................................................................ 97

TWENTY-FIRST GROUND FOR RELIEF: ............................................................... 100

MR. DAVIS'S CONSTITUTIONAL RIGHTS TO DUE PROCESS, EQUAL
    PROTECTION, AND A RELIABLE SENTENCING WERE VIOLATED
    BY OHIO'S INADEQUATE STATE POST-CONVICTION PROCESS
    THAT FAILED TO PROVIDE A REMEDY FOR MR. DAVIS TO
    FULLY AND FAIRLY VINDICATE HIS FEDERAL
    CONSTITUTIONAL CLAIMS IN THE STATE COURTS ............................ 100

    A.    Introduction .......................................................................................... 100

    B.    Objections to cognizability analysis ..................................................... 100

TWENTY-SECOND THROUGH TWENTY-SIXTH GROUNDS FOR RELIEF: ..... 103

VI.    PERMISSION TO PROCEED *IN FORMAL PAUPERIS* ON APPEAL .......... 106

VII.    CERTIFICATE OF APPEALABILITY ............................................................ 107

VIII.    CONCLUSION ................................................................................................. 109

CERTIFICATE OF SERVICE ................................................................................... 110

## OBJECTIONS TO THE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATIONS (ECF 51)

On June 16, 2020, Magistrate Judge Michael R. Merz issued his Report and Recommendation.  (ECF 51.)  The Magistrate Judge recommended that Von Clark Davis's Petition for Habeas Corpus be dismissed, that he be denied a certificate of appealability, and "that this Court certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*."  (*Id.* at PageID 9710.)  Pursuant to Fed. R. Civ. P. 72, Mr. Davis respectfully objects.  Mr. Davis requests that this Court sustain his objections to the Magistrate Judge's Report and Recommendation, address Mr. Davis's Grounds for Relief *de novo* and grant his Petition for Writ of Habeas Corpus.  In the alternative, Mr. Davis requests an opportunity to brief a request for a certificate of appealability and permission to proceed *in forma pauperis* on appeal.

## I.    INTRODUCTION

Von Clark Davis has been on death row in Ohio since 1984.  He was originally convicted by a three-judge panel of the Butler County Court of Common Pleas for aggravated murder of Suzette Butler and sentenced to death via the electric chair in 1984.  Since then, he has been resentenced to death twice and faced no less than seven execution dates.  His prison record over the past three decades has been exemplary and, over time, convincingly demonstrates his ability to function in prison at a high and very safe level.  Yet each time he has faced a capital sentence, the state court has given this increasingly weighty mitigating factor less and less weight. Further, the state courts have refused to allow Mr. Davis to withdraw the jury waiver he entered in 1984, even though it was involuntary, unintelligent and unknowing at the time he entered it, and became significantly more so over the next twenty-five years.

In 2007, the Sixth Circuit granted penalty phase relief to Mr. Davis because the state court had wrongly prevented him from introducing *Skipper* evidence of his good prison behavior at his first resentencing hearing.  By the time his second resentencing commenced in 2009, that powerful evidence had multiplied exponentially to constitute an extraordinary twenty-five year record of good behavior and contributions with only a single, minor write-up.  Yet inexplicably, counsel at his second resentencing introduced just a *single two-page summary* of Mr. Davis's extensive prison file.  Counsel failed to introduce even all of the *Skipper* evidence proffered in 1989 at his initial resentencing, not to mention any of the additional twenty years' worth of similarly powerful evidence.  The Sixth Circuit had found that the *Skipper* evidence from just the few years proffered in 1989 was powerful; undoubtedly two decades more worth of that evidence would have been even more compelling.

These and other errors by counsel and the state courts render Mr. Davis's conviction and death sentence constitutionally infirm.  This court should therefore grant him a writ of habeas corpus.

## II.    STANDARD OF REVIEW

Objections to a magistrate's report and recommendation are governed by 28 U.S.C. § 636(b)(1).  According to its provisions, a judge may assign a magistrate judge the responsibility of making proposed findings of fact and recommending the disposition of certain "dispositive" motions, including motions for summary judgment.  28 U.S.C. § 636(b)(1)(B). Should a party object to these proposed findings and recommendations, the judge must make a *de novo* determination on the contested portions.  *United States v. Raddatz*, 447 U.S. 667, 673-74 (1980); *Roland v. Johnson*, 856 F.2d 764, 769 (6th Cir. 1988).  "Any dispositive report and recommendation by a magistrate judge is subject to *de novo* review of those portions of the

report or specified proposed findings or recommendations to which objection is made." *Render v. Warden*, 889 F. Supp. 2d 1014, 1019 (S.D. Ohio 2012) (citations and internal quotation marks omitted). Failure to conduct such a review constitutes reversible error. *EEOC v. Keco Indus., Inc.*, 748 F. 2d 1097, 1102 (6th Cir. 1984). In conducting a *de novo* review, the judge is free to accept, reject, or modify any of the magistrate's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Raddatz*, 447 U.S. at 673-74, 680.

## III.    PROCEDURAL BACKGROUND

Mr. Davis filed a Petition for Habeas Corpus on August 25, 2016. (ECF 6). A complete statement of the prior procedural history in state court is contained in his Petition. (*See id.* at PageID 8588-8625.) The Warden answered on May 10, 2017. (Warden's Return of Writ, ECF 17). Mr. Davis filed his Traverse on December 18, 2017. (ECF 29).

On January 5, 2018, the Magistrate Judge denied Mr. Davis's motion to amend to supplement his Second Ground for Relief in light of the Sixth Amendment right of a capital defendant to be sentenced by a jury under *Hurst v. Florida*, 136 S.Ct. 616 (2016). On January 26, 2018, the Court overruled Mr. Davis's appeal of the Magistrate Judge's Decision and Order. (ECF 34.)

On November 2, 2018, the Magistrate Judge denied Mr. Davis's Motion for Leave to Conduct Discovery. (ECF 41.) On January 28, 2019, this Court denied Mr. Davis's appeal of the Magistrate Judge's Decision denying discovery. (ECF 49.)

On June 16, 2020, the Magistrate Judge issued a Report and Recommendations, recommending the denial of Mr. Davis's habeas petition. (ECF 51.) These Objections are in response to the Magistrate Judge's Report and Recommendation pursuant to Fed R. Civ. P 72.

## IV.    FACTUAL OVERVIEW

Mr. Davis waived his rights to a jury trial in 1984 only because the trial court refused to try separately his charge for murder with his charge for having a weapon under disability.  The weapon charge was based on his prior conviction for another murder.  The prejudicial impact of a previous murder conviction during the trial of a subsequent murder charge is so obvious that the Ohio General Assembly crafted a procedure for a defendant standing trial for aggravated murder based on a prior murder to prevent the jury from hearing about the first murder conviction during the phase of a capital trial.  Mr. Davis elected to exercise this procedure to keep the jury from hearing aggravating circumstance of his prior murder when determining whether to convict him with Ms. Butler's murder.

But Mr. Davis's election turned out to be meaningless because the Court refused to grant his motion to sever the two counts.  This denial meant that at a joint trial of both counts, all the facts of his prior murder conviction would come in to prove the weapon-under-disability charge.  Thus, although Mr. Davis did not wish to give up his rights to a jury trial, when the court refused to sever Counts One and Two, he was forced to do so to avoid the inevitable prejudice from putting such information before a jury.  Before waiving his jury-trial rights, Mr. Davis requested and obtained the identities of the judges who would make up his panel.  Only after he was given this information did he waive jury, and his jury waiver specified that he was waiving to these three specific judges.

The three-judge panel convicted and sentenced Mr. Davis to death.  On direct appeal, however, the Ohio Supreme Court reversed his death sentence and remanded for a new penalty phase trial.  It held that Mr. Davis would again be eligible for a death sentence upon remand, even though it had previously held that under Ohio law prevailing at the time that death could

not be an option at a resentencing trial. *See State v. Penix*, 513 N.E.2d 744 (Ohio 1987). In Mr. Davis's case, the Ohio Supreme Court held the *Penix* rule did not apply to him because he was sentenced by a three-judge panel, not a jury like Mr. Penix.

On remand, Mr. Davis moved to withdraw his jury waiver on the basis that the Ohio Supreme Court's unanticipated ruling departing from *Penix* rendered his waiver unknowing and unintelligent. The panel denied Mr. Davis's request and enforced the previous waiver. In addition, the panel refused to allow Mr. Davis to introduce evidence of his good behavior in prison since his conviction under *Skipper v. South Carolina*, 476 U.S. 1 (1986). It again sentenced him to death.

In a second direct appeal and first post-conviction proceedings, the state courts affirmed Mr. Davis's conviction and sentence. But, Ohio Supreme Court Justice Wright expressed a concern, in the context of the appropriateness review, that the prior determination that death was appropriate would cause the panel at the subsequent resentencing hearing to believe that there was a presumption of validity to the original death sentence, which would inappropriately require Mr. Davis to overcome a presumption as opposed to a reweighing of the aggravating factor and the mitigation anew. *State v. Davis* (*Davis IV*), 584 N.E.2d 1192, 1199 (Ohio 1992) (Wright, J., dissenting) (*also available at* ECF 4-15, PageID 1693).

In federal court, the Sixth Circuit ruled that Mr. Davis was entitled to habeas relief on his *Skipper* claim. *Davis v. Coyle* (*Davis X*), 475 F.3d 761 (6th Cir. 2007). The court explained that "the core of the analysis in *Skipper* reflects the Court's understanding that the right of a defendant to present evidence of good behavior in prison is particularly relevant when a prediction of future dangerousness figures centrally in a prosecutor's plea for imposition of the death penalty." *Id*. at 771. After reviewing the evidence that could have been presented, *id*. at

773, the Sixth Circuit concluded that "[t]he *Skipper* error in this case is both indisputable and dispositive," *id.* at 775.

Back in state court for a second sentencing hearing in 2009, none of the three judges from Mr. Davis's original panel were available. Mr. Davis moved to withdraw his twenty-five-year-old jury waiver for the reasons he had previously argued rendered it invalid at his first resentencing, and for the additional reason that the waiver he had made in 1984 with knowledge of the three specific judges who would constitute his panel now was especially unknowing because he faced a panel composed of three completely different judges. Nevertheless, the court denied his request and enforced this quarter-century old waiver against him.

By this time, defense counsel possessed more than twelve hundred pages of Department and Rehabilitation and Correction records of Mr. Davis's twenty-five years on death row since his conviction. Incredibly, trial counsel presented just a few pages of *Skipper* evidence. This evidence failed to provide any anecdotal or corroborative aspects of twenty-five years of Mr. Davis's life. Moreover, without explanation, trial counsel reneged on their promise to present a mitigation specialist to testify to interviews and their substance due to the unavailability of several mitigation witnesses. Counsel also failed to, as promised, present evidence that Mr. Davis would never be paroled.

Davis requests that this Court consider his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and such other relief to which he is entitled.

## V. CONSTITUTIONAL CLAIMS

## FIRST GROUND FOR RELIEF:

**MR. DAVIS'S WAIVER OF HIS RIGHT TO A JURY TRIAL WAS INVALID BECAUSE IT WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A. INTRODUCTION

Mr. Davis's jury waiver was involuntary, unknowing, and unintelligent at the time he entered it in 1984. Subsequent events rendered it even more unknowing and unintelligent in additional ways.

Mr. Davis was on trial for his life, and the decision whether to be tried by a jury was particularly crucial. He had a constitutional right to know and understand the consequences of his waiver. Because he did not, he should have been permitted to withdraw that waiver in his resentencings.

### B. OBJECTIONS TO COGNIZABILITY ANALYSIS

Mr. Davis objects to the Magistrate Judge's holding that sub-claim 1(C)— that Mr. Davis did not know that he was waiving his jury-trial rights twenty-five years in the future to be tried before a panel of three unknown judges rather than the panel specifically identified in his waiver—is non-cognizable. The Magistrate Judge held that since "the Supreme Court recently reaffirmed that *Ring* [*v. Arizona*, 536 U.S. 584, 602 (2002),] is retroactive only on direct appeal, not on collateral review[,]" the Court "cannot reasonably conclude that *Hurst* would apply retroactively, either." (ECF 51, PageID 9650-51 (citing *McKinley v. Arizona*, 140 S.Ct. 702, 709 (2020) (Ginsburg, J., dissenting); *Schiro v. Summerlin*, 542 U.S. 348, 358 (2004); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)).

The Magistrate Judge agreed with Mr. Davis that the cases cited by both the Warden and the Ohio Supreme Court—finding no Sixth or the Eighth Amendment right to be sentenced by a

jury, even in a capital case—are based on cases that were explicitly overruled in *Hurst*. (ECF 51, PageID 9650-51 (citing Return of Writ, ECF 17, PageID 9043-44 &*State v. Davis*, 9 N.E.2d 1031, 1042 (Ohio 2014) (*Davis XIV*)).); *See Hurst v. Florida*, 136 S. Ct. 616, 623–624 (2016) ("We now expressly overrule *Spaziano* and *Hildwin* in relevant part . . . . Time and subsequent cases have washed away the logic of *Spaziano* and *Hildwin*.").

While Mr. Davis viewed *Hurst* as a development of Sixth Amendment jurisprudence, this Court made clear that it believes that this Sixth Amendment right long pre-dated *Hurst*: "*Hurst* was a straightforward application of *Ring v. Arizona,* 536 U.S. 584 (2002), not a watershed change in criminal practice." (Decision and Order, ECF 34, PageID 9427.) *Hurst* repeatedly made clear that increasing a defendant's authorized punishment based on judicial factfinding violates the Sixth Amendment "[i]n light of *Ring*[.]" *Hurst*, 136 S. Ct. at 622. In particular, the Supreme Court held that the conclusion that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury" was "wrong, and irreconcilable with *Apprendi* [*v. New Jersey,* 530 U.S. 466 (2000)]." *Id*. at 623 (internal quotation omitted). The court emphasized that it had already come to this conclusion in 2002:

> Indeed, *today is not the first time we have recognized as much.*
> In *Ring,* we held that another pre-*Apprendi* decision—*Walton,* 497
> U.S. 639—could not "survive the reasoning of *Apprendi*." 536
> U.S.[] at 603. *Walton,* for its part, was a mere application
> of *Hildwin*'s holding to Arizona's capital sentencing scheme. 497
> U.S.[] at 648.

*Id.* (emphasis added) (parallel citations omitted).

Accordingly, even at the time of Mr. Davis's resentencing in 2009, let alone his direct appeal in 2014, the trial court violated Mr. Davis's constitutional rights as established by *Apprendi* and *Ring* when it forced him to be sentenced before three completely new judges

twenty-five years after his jury waiver—in addition to all the other constitutional infirmities with Mr. Davis's jury waiver—despite the fact that he had specified that he was forgoing his jury-trial rights in favor of being tried and sentenced by three specific judges. (Jury Waiver and Election of Three-Judge Panel, May 8, 1984, ECF 4-3, PageID 433.)

Even before his resentencing, the Sixth Circuit warned the state courts *in this case* against such behavior. *Davis X*, 475 F.3d 761, 780 (6th Cir. 2007) (recognizing "a legitimate question as to whether a criminal defendant should be held to a jury waiver entered almost 25 years before his newly-mandated sentencing hearing."). Accordingly, this Court should sustain Mr. Davis's objection to the Magistrate Judge's finding of lack of cognizability for Ground for Relief 1(C).

## C.    OBJECTIONS TO MERITS ANALYSIS

For the remaining subclaims, the Magistrate Judge agreed that "Davis's interpretation of *King* [*v. Morgan*, 807 F.3d 154 (6th Cir. 2015)] is correct: That Davis raised and was unsuccessful with these claims previously is irrelevant; he is challenging the most recent death sentence . . . . Moreover, upon resentencing, the statute of limitations clock reset, and the law-of-the-case doctrine does not apply. Thus, the sub-claims are properly before this Court." (ECF 51, PageID 9652-53.)

The Magistrate Judge then noted that one of Mr. Davis's arguments against procedural default—"that the Court should treat the sub-claims as identical to those in *Davis IX*—is inconsistent with his argument elsewhere—that the Court should review these subclaims *de novo*, as if they had *not* been raised in this Court before." (*Id*. at 9654.) This is not an accurate reflection of Mr. Davis's arguments. The fact that Mr. Davis raised some of the same claims in *federal* court in his previous habeas petition (*Davis IX*) is not relevant to procedural default; what is relevant is that Davis previously raised identical claims in state court. (Traverse, ECF 29,

PageID 9156-58.) The state court's failure to address these claims on the merits is what renders the analysis *de novo*. The fact that another federal judge reviewed some of these same claims in an earlier, overruled decision in *Davis IX* is irrelevant for procedural default purposes and does not bind this Court. *King*, 807 F.3d at 159–60; *see also Muniz v. United States*, 236 F.3d 122, 126 (2d Cir. 2001) ("AEDPA did not abrogate the well-settled traditional rule [that *res judicata* has no application in the habeas corpus context].."); (Traverse, ECF 29, PageID 9154-56.) Nevertheless, as the Magistrate Judge did not rule that the sub-claims are procedurally defaulted, Mr. Davis preserves the argument without further objection on this point. (ECF 51, PageID 9654.)

Mr. Davis objects to the Magistrate Judge's recommended denial of Ground for Relief 1(A)—that his jury waiver was not voluntary because the trial court's denial of his motion to sever forced him to waive jury. (ECF 51, PageID 9654-55.) The Magistrate Judge recommended that this Court view the legal holdings of *Davis X*—the Sixth Circuit decision reversing the denial of relief for his previous habeas petition—as binding on this Court. (*Id.*) The recommendation failed to note that the Sixth Circuit also expressed strong reservations in ruling against relief on this point: "Left to our own devices, we might well remain skeptical, despite the wealth of settled law, about the degree to which Ohio's joinder provisions undercut the protection afforded a capital defendant by Ohio Revised Code § 2929.022(A), especially given the heightened concerns regarding undue prejudice in a capital case." *Davis X*, 475 F.3d at 778. Accordingly, Mr. Davis preserves his argument that he was forced to waive his right to trial by jury because the trial court refused to sever the weapon-under-disability charge, rendering his jury waiver involuntary and in violation of his constitutional rights.

Mr. Davis objects to the Magistrate Judge's recommended denial of Ground for Relief 1(B)—that the waiver was not knowing and intelligent because Mr. Davis could not have known that the Supreme Court of Ohio would refuse to extend *State v. Penix*, 513 N.E.2d 744, 746–47 (Ohio 1987), as to him, and thus leave him eligible for a death sentence upon resentencing. (ECF 51, PageID 9655-57.)  The Sixth Circuit upheld the district court's denial of relief, holding that the differentiation was "arguably rational" on the ground that "the three judges who comprised the original panel in the petitioner's case were still available to resentence the petitioner."  *Davis X*, 475 F.3d at 780 (quotation omitted).  On his second resentencing, the trial court then relied on *Davis X* to hold that that *res judicata* barred Davis from litigating the jury waiver's validity, *Davis XIV*, 9 N.E.3d 1031, 1039 (Ohio 2014), even though by then, none of the three judges who comprised the original panel were available to resentence Mr. Davis.

The Magistrate Judge quotes from the Sixth Circuit's decision at length without acknowledging that the "rational basis" the Sixth Circuit relied upon *does not exist* in this case. Mr. Davis's waiver is invalid as applied *twenty-five years later* to three completely different judges than those of whom he was aware at the time he waived his rights, whose names were explicitly enumerated in his waiver.  (Jury Waiver and Election of Three-Judge Panel, May 8, 1984, ECF 4-3, PageID 433).  Mr. Davis specifically requested and obtained the identities of the judges in his original three-judge panel before deciding to waive his rights to a jury trial.  (Mot. Hr'g, Feb. 15, 1984, ECF 5-1, PageID 7209.)  His written waiver also stated that he was forgoing his jury-trial rights in favor of being tried and sentenced by those three specific judges.  (Jury Waiver and Election of Three-Judge Panel, May 8, 1984, ECF 4-3, PageID 433.)  In fact, at the time Mr. Davis entered his waiver, Ohio law did not allow a three-judge panel to change in composition.  By the time of his second resentencing, however, the law had changed, and the

11

new statute permitted the change in composition.  *See* Ohio Rev. Code § 2929.03(C)(2)(a); *id.* at § (c)(2)(b)(i).  In his second resentencing, none of these three judges was available, and he was sentenced by three different judges.  Accordingly, he was sentenced by three judges who were not part of his original trial, thus obviating any rational basis for allowing the death penalty on resentencing.

If the only legal basis for differentiating defendants sentenced by jury versus those sentenced by three-judge panels is that a three-judge panel can be reassembled, *Davis X*, 475 F.3d at 780, then this differentiation has no rational basis in cases where the panel cannot be reassembled.  The failure of this rationale is most obvious under the amended version of Ohio Rev. Code § 2929.06(B) now in place, which allows those sentenced to death by a three-judge panel to be resentenced on remand by the same panel of three judges "or, if necessary, a new panel of three judges shall conduct the hearing."  There is no rationale, therefore, for cases like Mr. Davis's, where he was last resentenced by an entirely different three-judge panel, none of whom had participated in his earlier sentencing or guilt phase trials.

Accordingly, the different treatment of those sentenced by three-judge panels violates Mr. Davis's constitutional rights.  Because "[t]he right of trial by jury in cases at law, whether a civil or criminal case, is a high and sacred constitutional right in Anglo-Saxon jurisprudence, and is expressly guaranteed by the United States constitution," any "stipulation for the waiver of such right should therefore be strictly construed in favor of the preservation of the right."  *Burnham v. N. Chi. St. Ry. Co.*, 88 F. 627, 629 (7th Cir. 1898).

Even before Mr. Davis's first resentencing, the trial court was counseled against subjecting him to this treatment on remand.  In the remand of his original direct appeal in the Ohio Supreme Court, Justice Douglas, joined by Chief Justice Moyer, found no authority to

support the majority "in remanding the action to that trial court for a resentencing hearing at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence." *State v. Davis*, 528 N.E.2d 925, 939 (Ohio 1988) (*Davis II*) (Douglas, J., concurring in part and dissenting in part) (internal quotation marks omitted); *see also id.* ("The majority cites no authority for this action. There is good reason—none exists."). The justices instead found that "our statute does not provide for the procedure mandated by the majority" and that the "same reasoning" underlying *Penix* applies here:

> Even if the same three judges are available, can there be any doubt that they are *not* in the same posture as they were at the time of the original trial? Since that time, *they will inevitably have discussed the case outside the court, read the opinions of the court of appeals and this court, and have generally been exposed to matters that they had previously, in order to ensure the defendant a fair trial, avoided.* This is not to say that our trial judges could not put all this aside in making a subsequent determination. But-are they the *same* panel in *fact* that they are in law?

> Further, what if one of the three original judges is no longer available? Do we then permit a resentencing by a panel that has not heard the guilt phase of the trial?

> What happens if the same panel is available in this case, but in the next case the panel, as originally constituted, cannot be reconvened? Do defendants then have an equal protection argument?

*Id.* at 940 (emphasis added). These justices foresaw the very same constitutional infirmities now in play in subjecting an individual to the death penalty on remand after changes to the composition of a three-judge panel. These concerns are only exacerbated by Ohio's later changes in the law allowing for a new three-judge panel to again sentence Mr. Davis to death 25 years after a guilt phase in front of entirely different judges.

The Magistrate Judge acknowledges that the Sixth Circuit expressly cautioned the state courts *against* treating Mr. Davis exactly as he complains of here. In particular, the Sixth Circuit

13

advised the state courts that "there is a legitimate question as to whether a criminal defendant should be held to a jury waiver entered almost 25 years before his newly-mandated sentencing hearing." *Davis X*, 475 F.3d at 780-81 (citing *United States v. Groth*, 682 F.2d 578, 580 (6th Cir. 1982) (noting that in federal cases in this circuit, "waiver of a jury trial does not bar a demand for a jury on retrial of the same case unless the original waiver explicitly covers this contingency.")); *see also id.* (noting that "'when a reviewing court finds error in the conduct of a trial and reverses with directions for a new trial the general rule is that a litigant is not bound by his prior waiver of a jury trial unless the language of a waiver unambiguously states that it will apply in all retrials should they be ordered.'" (brackets and ellipses omitted) (quoting *United States v. Lee*, 539 F.2d 606, 608 (6th Cir. 1976)).

The Sixth Circuit was clear in its direction that the practice of finding a jury waiver inherently revoked "*should certainly inform* the sentencing court's determination of the viability of Davis's jury waiver on remand" where "additional evidence would be introduced from both the prosecution and the defense, as is likely to occur on remand of [Mr. Davis's] case." *Davis X*, 475 F.3d at 781 (emphasis added) (quoting *State v. McGee*, 715 N.E.2d 1175, 1178 (Ohio Ct. App. 1998) (brackets removed)).

Despite Sixth Circuit's use of "certainly," the Magistrate Judge concluded, without explanation, that any failure to treat Mr. Davis's jury waiver as revoked "by the trial court cannot constitute a violation of 'clearly established federal law,' and thus cannot form the basis of a viable habeas claim." (ECF 51, PageID 9656-57 (citing 28 U.S.C. § 2254(d)(1)).) For the reasons stated above, Mr. Davis objects to that conclusion.

The Supreme Court has also made clear that any waiver of rights must be strictly construed and applied by its terms, *see, e.g., Lehman v. Nakshian*, 453 U.S. 156, 161 (1981)

(conditions regarding waiver of sovereign immunity must be strictly observed), and the burden is always upon the state to prove the knowing and voluntary relinquishment of any constitutional right. *Tague v. Louisiana*, 444 U.S. 469, 470 (1980).

Though Mr. Davis made a waiver of the right to jury trial in favor of being tried before the three judges at his original proceeding, he did not agree to sentencing by any judges other than those three original judges. As the Supreme Court has made clear, plea bargains are essentially contracts, and thus, they can (and do) only bind a defendant insofar as he waived a particular right in that agreement and did so knowingly and intelligently. This was clearly established federal law. *Puckett v. United States*, 556 U.S. 129 (2009); *Mabry v. Johnson*, 467 U.S. 504 (1984); *Santobello v. New York*, 404 U.S. 257 (1971). Consequently, to the extent that the terms of Mr. Davis's waiver of jury sentencing only allowed for sentencing by the judges whom he agreed upon, he could not be sentenced by judges not contemplated by that agreement, and he did not knowingly, intelligently, and voluntarily agree to sentencing by any other three judges.

In addition, Mr. Davis objects to the Magistrate Judge's application of an incorrect standard of law to this subclaim. The Magistrate Judge recommended denial of Ground for Relief 1(B) on the basis that the failure to release Mr. Davis from his jury waiver on remand "cannot constitute a violation of 'clearly established federal law,' and thus cannot form the basis of a viable habeas claim." (ECF 51, PageID 9656-57 (citing 28 U.S.C. § 2254(d)(1)).) However, this claim was considered *de novo* by the Sixth Circuit, which found that the state court ruling on this issue was "not a decision on the merits and, therefore, that the AEDPA standard of review set out in § 2254 does not apply to this claim." *Davis X*, 475 F.3d at 779.

15

Given that the state courts have provided no new merits ruling on this issue, the same standard applies now.

Mr. Davis also objects to the Magistrate Judge's recommended denial of Ground for Relief 1(D)—that the waiver was not knowing and intelligent because Mr. Davis did not know that two of the three judges on his panel represented a party adverse to him in a prior case. (ECF 51, PageID 9657-58.) The Magistrate Judge relied on the district court's previous decision in *Davis IX* to hold that "Davis's inability to show evidence of bias on the part of the judges or prejudice resulting therefrom meant that their involvement did not render his waiver constitutionally invalid." (*Id.* (citing *Davis IX*, ECF 16-2, PageID 8981, 8984; *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Sinistaj v. Burt,* 66 F.3d 804, 808 (6th Cir. 1995).) The Magistrate Judge noted that "*Bracy*, *Tumey*, and *Sinistaj* are still binding precedent upon this Court[.]" (*Id.*)

While those three cases are still good law, none of them hold that a jury waiver can be knowing and intelligent where a petitioner was not informed that he would be tried by judges who were previously opposing counsel against him. To the contrary, two out of three cases actually ruled in their petitioners' favor. *See Bracy*, 520 U.S. at 904-08 (finding "good cause" for discovery where trial judge had been convicted of taking bribes from defendants in other criminal cases, even though his theory of bias was "quite speculative" and "not supported by any solid evidence,"); *Tumey*, 273 U.S. at 523 (reversing conviction where the mayor had a direct personal pecuniary interest in convicting the defendant who came before him for trial). *Sinistaj*, in which the Sixth Circuit denied relief, did not involve an accusation of judicial bias—merely that the defendant was not informed that his case would be transferred to another judge for trial. 66 F.3d at 808.

16

Mr. Davis would not have waived his right to trial by jury had he known that two of the judges on his panel were "instrumental" in taking away his home. (1st PC Ex. N, ECF 4-19, PageID 1980-81.) Accordingly, Mr. Davis's waiver was unknowing and unintelligent because he could not have anticipated that he would be tried before two judges who had previously worked to deprive him of his home. That decision represented "an arbitrary disregard of [Mr. Davis's] right to liberty" and accordingly violated his due process rights. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). Mr. Davis never consented to or waived any issue of judicial bias regarding these judges. Because judicial-bias waivers must be "knowing and intelligent" to comport with due process, *Dyas v. Lockhart*, 771 F.2d 1144, 1147 (8th Cir. 1985), Mr. Davis's trial by biased judges without his knowledge or consent rendered his jury waiver, and the resulting trial before the three-judge panel, unconstitutional. Mr. Davis is entitled to habeas relief and objects to the Magistrate Judge's recommended denial.

Mr. Davis objects to the Magistrate Judge's recommended denial of Ground for Relief 1(E)—that the waiver was not knowing and intelligent because the trial court misinformed Mr. Davis that the state's evidence would be subject to a higher standard of proof before a three-judge panel than before a jury. (ECF 51, PageID 9658-59.)

First, the Magistrate Judge inaccurately stated that the state court opinion could reasonably be read as a ruling on the merits based on the following line: "The Ohio Supreme Court held in *Dickerson* that the standard of proof is the same before a three-judge panel and a jury." *State v. Davis*, No. CA95-07-124, 1996 WL 551432, at *7-8 (Ohio Ct. App. Sept. 30, 1996) (*Davis VI*) (citing *State v. Dickerson*, 543 N.E.2d 1250, 1253–54 (Ohio 1989)). This analysis is actually about Mr. Davis's Ninth Assignment of Error in that appeal—whether "he faced an increased risk of being sentenced to death when tried before a three judge panel"—

17

rather than his Tenth Assignment of Error—whether he was "misinformed by the court as to the standard of proof" so as to render his jury waiver invalid. (Appellant's Br., ECF 4-21, PageID 2276-77). The latter assignment of error is the basis for Ground for Relief 1(E), that "[t]he trial court's misadvice on the standard of proof prevented Mr. Davis from making a knowing, intelligent and voluntary waiver of his right to a jury trial." (Petition, ECF 6, PageID 8638.) In fact, the point of Ground for Relief 1(E) is that the standard of proof is the same in either situation, but the trial court wrongfully advised him that there was a difference. (*Id.*) ("Mr. Davis was mistakenly forced to choose between a jury trial where the jury only had to be 'convinced' of his guilt versus a three-judge panel that had to determine his guilt beyond a reasonable doubt.") Accordingly, the analysis that the Magistrate Judge cites—that there is no difference in the standard of proof—only bolsters the claim that Mr. Davis is making here. In any event, the only state court analysis of the Tenth Assignment of Error is that it is "barred by the principles of res judiciata." *Davis VI,* 1996 WL 551432, at *7-8.

Second, the Magistrate Judge stated that the state's court's dismissal based on *res judicata* was an adequate and independent state ground of decision as required for procedural default. (ECF 51, PageID 9659 (citing *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986)).) Mr. Davis agrees that "Ohio's application of its *res judicata* rule generally constitutes an independent and adequate state ground that forecloses federal habeas review." *Hartman v. Bagley*, 492 F.3d 347, 357-58 (6th Cir. 2007). If the state court's reliance on its own rule was misplaced or erroneous, however, the federal court is not foreclosed from reviewing the claim. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005). An Ohio court erroneously applies *res judicata* when it dismisses a post-conviction claim that is based on evidence outside the record such that it could not have been brought on direct appeal. *See, e.g.*, *Hartman*, 492 F.3d at 358 (ineffective-

assistance claim was based on psychologist's report that was not part of the trial record and could

not have been litigated on direct appeal); *White*, 431 F.3d at 527 (ineffective-assistance claim

supported by affidavits from the trial mitigation expert, as well as two other experts); *Hill v.

Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005) (post-conviction claim introduced evidence outside

the record, including a post-trial affidavit from the mitigation expert, and an affidavit from

another expert).

   Here, the Magistrate Judge ruled that Mr. Davis failed to explain "why he did not raise

this sub-claim until post-conviction, even though all the relevant facts underpinning the sub-

claim were available to Davis on direct appeal."  (ECF 51, PageID 9659.)  Mr. Davis objects to

this ruling.  Mr. Davis raised the claim in state court based on evidence outside the record that

could not have been brought on direct appeal.  In particular, Mr. Davis argued in post-conviction

that he was prejudiced by this misinformation, and attached an affidavit stating that he relied

upon this misinformation when waiving his right to a jury.  (Post-conviction Petition, ECF 4-18,

PageID 1909; Affidavit of Von Clark Davis, ECF 4-19, PageID 1961-62.)  Accordingly, since

Mr. Davis's claim included this affidavit to meet his burden to show that he did not expressly

and intelligently consent to waive a jury trial, post-conviction counsel appropriately included it

as an outside-the-record claim.  *See, e.g. Filiaggi v. Bagley*, 445 F.3d 851, 855 (6th Cir. 2006)

(holding that for a petitioner seeking to set aside a jury waiver, "it is not asking too much that the

burden of showing essential unfairness be sustained by him who claims such injustice and seeks

to have the result set aside, and that it be sustained not as a matter of speculation but as a

demonstrable reality." (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281

(1942))).

**SECOND GROUND FOR RELIEF:**

THE TRIAL COURT VIOLATED MR. DAVIS'S RIGHTS UNDER THE SIXTH AND EIGHTH
AMENDMENTS AND THE DUE PROCESS CLAUSE WHEN IT ENFORCED HIS JURY WAIVER AT TWO
SUBSEQUENT RESENTENCING HEARINGS.

### A.     INTRODUCTION

As explained in his First Ground for Relief (Traverse, ECF 29, PageID 9162-76), Mr.

Davis's jury waiver was unknowing because at the time he waived his rights to a jury trial, he

could not anticipate either that the Ohio Supreme Court would hold that *Penix* did not apply to

him merely because he was tried before a three-judge panel and Mr. Penix was tried before a

jury, or that he would be held to his waiver twenty-five years in the future when facing a panel of

three judges entirely different from the ones before which he agreed—by name—to be tried and

sentenced in 1984.  Accordingly, the trial court's refusal to grant his motion to withdraw that

jury waiver in his two subsequent resentencing violated his constitutional rights.

### B.     OBJECTIONS TO COGNIZABILITY ANALYSIS

Mr. Davis objects to the Magistrate Judge's holding that sub-claim 2(B)—that the trial

court violated Mr. Davis's rights under the Eighth and Sixth Amendments and the Due Process

Clause by enforcing a stale jury waiver at a new penalty hearing twenty-five years later before an

entirely different panel of judges—is non-cognizable.  The Magistrate Judge held that, as with

subclaim 1(C), "the right to be sentenced by a jury in a capital case, established by *Ring* and

*Hurst*, is not retroactive on collateral review, only on direct appeal[.]"  (ECF 51, PageID 9660

(citing Return of Writ, ECF 17, PageID 9043-44).)

Mr. Davis objects for the same reasons as for subclaim 1(C) above, incorporated here by

reference.  While Mr. Davis viewed *Hurst* as a development of Sixth Amendment jurisprudence,

this Court made clear that it believes that this Sixth Amendment right long pre-dated *Hurst*:

"*Hurst* was a straightforward application of *Ring v. Arizona,* 536 U.S. 584 (2002), not a watershed change in criminal practice." (Decision and Order, ECF 34, PageID 9427.)

At the time of Mr. Davis's resentencing in 2009, let alone his direct appeal in 2014, the trial court violated Mr. Davis's constitutional rights as established by *Apprendi* and *Ring* when it forced him to be sentenced before three completely new judges twenty-five years after his jury waiver—in addition to all the other constitutional infirmities with Mr. Davis's jury waiver—despite the fact that he had specified that he was forgoing his jury-trial rights in favor of being tried and sentenced by three specific judges. (Jury Waiver and Election of Three-Judge Panel, May 8, 1984, ECF 4-3, PageID 433.)

Even before his resentencing, the Sixth Circuit warned the state courts *in this case* against such behavior. *Davis X*, 475 F.3d 761, 780 (6th Cir. 2007) (recognizing "a legitimate question as to whether a criminal defendant should be held to a jury waiver entered almost 25 years before his newly-mandated sentencing hearing."). Accordingly, this Court should sustain Mr. Davis's objection to the Magistrate Judge's finding of lack of cognizability for Ground for Relief 2(C).

### C. OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommended denial of Ground for Relief 2(A)—that the trial court violated Mr. Davis's rights under the Eighth and Sixth Amendments and the Due Process Clause by enforcing his prior jury waiver at his first resentencing when he had no knowledge at the time of the waiver that Ohio Supreme Court would refuse to apply the rule of *Penix* to his case and hold him eligible to be resentenced to death. (ECF 51, PageID 9660-61.) The Magistrate Judge held that "[f]or the same reasons that sub-claim 1(B) was unavailing, sub-claim 2(A) is as well." (*Id.*) Citing the deferential standards in AEDPA, it held that "a fair-minded jurist could differentiate the factual and procedural circumstances in *Penix* and those in

21

*Davis*, and do so in a manner not inconsistent with Supreme Court precedent." (*Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).)

Mr. Davis objects for the same reasons as for subclaim 1(B) above, incorporated here by reference. The differentiation between this case and *Penix* that the Sixth Circuit and Ohio Supreme Court relied upon *did not exist* when Mr. Davis's case was remanded for a second time. The Sixth Circuit held that the differentiation was "arguably rational" on the ground that "the three judges who comprised the original panel in the petitioner's case were still available to resentence the petitioner." *Davis X*, 475 F.3d at 780 (quotation omitted). On his second resentencing, the trial court then relied on *Davis X* to hold that that *res judicata* barred Davis from litigating the jury waiver's validity. *Davis XIV*, 9 N.E.3d 1031, 1039 (Ohio 2014).

The trial court enforced Mr. Davis's waiver *twenty-five years later* with three completely different judges than those of whom he was aware at the time he waived his rights, whose names were explicitly enumerated in his waiver. (Jury Waiver and Election of Three-Judge Panel, May 8, 1984, ECF 4-3, PageID 433). In his second resentencing, none of these three judges was available, and he was sentenced by three different judges. Accordingly, he was sentenced by three judges who were not part of his original trial, thus obviating any rational basis for allowing imposing of the death penalty on resentencing.

If the only legal basis for differentiating defendants sentenced by jury versus those sentences by three-judge panels is that a three-judge panel can be reassembled, then this differentiation has no rational basis in cases where the panel cannot be reassembled. *Davis X*, 475 F.3d at 780 (finding the differentiation "arguably rational" on the ground that "the three judges who comprised the original panel in the petitioner's case were still available to resentence the petitioner") (quotation omitted). There is no rationale, therefore, for cases like Mr. Davis's,

where he was last resentenced by an entirely different three-judge panel, none of whom had participated in his earlier sentencing or guilt phase.

The Sixth Circuit expressly cautioned the state courts *against* treating Mr. Davis exactly as he complains of here. In particular, the Sixth Circuit advised the state courts that "there is a legitimate question as to whether a criminal defendant should be held to a jury waiver entered almost 25 years before his newly-mandated sentencing hearing." *Davis X*, 475 F.3d at 780 (citing *United States v. Groth*, 682 F.2d 578, 580 (6th Cir. 1982) (noting that in federal cases in this circuit, "waiver of a jury trial does not bar a demand for a jury on retrial of the same case unless the original waiver explicitly covers this contingency")); *see also id.* at 781 (noting that "'when a reviewing court finds error in the conduct of a trial and reverses with directions for a new trial the general rule is that a litigant is not bound by his prior waiver of a jury trial unless the language of a waiver unambiguously states that it will apply in all retrials should they be ordered.'" (brackets and ellipses omitted) (quoting *United States v. Lee*, 539 F.2d 606, 608 (6th Cir. 1976)).

Even before the Sixth Circuit decision, and even before Mr. Davis's first resentencing, the trial court was counseled against subjecting him to this treatment on remand. In the remand of his original direct appeal in the Ohio Supreme Court, Justice Douglas, joined by Chief Justice Moyer, found no authority to support the majority "in remanding the action to that trial court for a resentencing hearing at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence." *Davis II*, 528 N.E.2d 925, 939 (Ohio 1988) (Douglas, J., concurring in part and dissenting in part) (internal quotation marks omitted); *see also id.* ("The majority cites no authority for this action. There is good reason—none exists.").

Mr. Davis should be granted habeas corpus relief based on the denial of his constitutionally guaranteed right to a knowing, intelligent and voluntary waiver of his right to a jury trial.

## THIRD GROUND FOR RELIEF:

**MR. DAVIS'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO REASONABLY INVESTIGATE AND PRESENT MITIGATING *SKIPPER* EVIDENCE.**

### A.    INTRODUCTION

Mr. Davis was denied the effective assistance of counsel at his second resentencing hearing.  Defense counsel failed to reasonably investigate and present mitigating evidence of Mr. Davis's good prison behavior even though this information was known, available and relevant. *See Skipper v. South Carolina,* 476 U.S. 1, 5–7 (1986).  Moreover, defense counsel failed to present this evidence of Mr. Davis's exemplary prison record despite the Sixth Circuit remanding the case for a new penalty phase to consider this very evidence.  *See Davis X*, 475 F.3d 761, 774-75 (6th Cir. 2007).  As a result of defense counsel's failures, the trial court, yet again, failed to consider and weigh relevant mitigating evidence.  The acts and omissions of counsel prejudiced Mr. Davis and denied him due process, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  *See Wiggins v. Smith*, 539 U.S. 510, 534–35 (2003); *Williams v. Taylor*, 529 U.S. 362, 396-98 (2000); *Strickland v. Washington*, 466 U.S. 668 (1984).

### B.    OBJECTIONS TO MERITS ANALYSIS

The Magistrate Judge began by stating that "Davis argues that counsel's inadequate representation prejudiced him, as the first resentencing court found that his continued danger to the community was an aggravating circumstance in reimposing a death sentence."  (ECF 51, PageID 9666-67.)  He concluded that Mr. Davis "does not have a viable *Strickland* claim with

respect to the first resentencing." (*Id.* at PageID 9667.) To be clear, Mr. Davis's Third Ground for Relief states that "Mr. Davis was denied the effective assistance of counsel at his *second* resentencing hearing." (Petition, ECF 6, PageID 8652.) (Emphasis added.) The Magistrate Judge's reasoning for discussing the first resentencing—since vacated by the Sixth Circuit—as part of this claim are unclear.

Mr. Davis objects to the Magistrate Judge's conclusion that "Davis's barebones allegation that trial counsel failed to investigate and present certain mitigation evidence is not supported by the record, including the affidavits of Davis and his postconviction counsel." (ECF 51, PageID 9669.) In other words, the Magistrate Judge agreed with the state court that the evidence that Mr. Davis asserts should have been discovered and presented at his second sentencing "covered the same topics and mitigation factors on which counsel had already put forth evidence. (*Id.*) ("Such cumulative evidence is unlikely to have changed Davis's sentence when the aggravating circumstance could be reasonably interpreted as 'overwhelming.'")

First, Mr. Davis's allegations were not "barebones" or unsupported by the record. Mr. Davis has discussed in detail the contents of his unit file that were not reflected in the institutional summary presented at his second resentencing, including a certificate of completion for a twelve-week stress management seminar; a job evaluation indicating that Mr. Davis was "a real good worker" and "has demonstrated excellent adjustment"; classification forms dating back to 1986 showing "responsibility [Mr. Davis] has demonstrated" and lack of disciplinary reports; Mr. Davis's GED certification, the classes he has enrolled in while incarcerated, including college courses; and his application for membership with the Vietnam Veterans of America. (*See* PC Ex. E, ECF 4-46, PageID 6281-364.) Further, Mr. Davis was never asked by his second resentencing attorneys for names of other guards, caseworkers, or other prison personnel with

25

whom he interacted while incarcerated. (PC Ex. B, Aff. of Von Clark Davis, ECF 4-46, PageID 6270). Failing to investigate and talk to favorable witnesses is not a thorough investigation. Defense counsel took a minimalist approach and failed to explore fully this compelling theory of mitigation, leading the trial and appellate courts to lend little weight to the evidence provided. (Petition, ECF 6, PageID 8652-58; Traverse, ECF 29, PageID 9192-95.)

Second, the evidence that Mr. Davis asserts should have been discovered and presented at his second sentencing was not "cumulative" evidence of the same the same topics and mitigation factors already presented. The United States Supreme Court has explicitly recognized the importance of permitting capital defendants to put forth evidence of the likelihood of future good conduct at sentencing. *Ayers v. Belmontes*, 549 U.S. 7, 15 (2006). The evidence presented regarding Mr. Davis's behavior while on death row included only that Mr. Davis had not been to disciplinary control; that he had received only one conduct report since 1984; his work assignments and completed programs; his move to the extended privilege unit in 2006; and his regular attendance and active participation in Alcoholics Anonymous meetings.

As noted above, the omitted evidence that counsel should have presented would have included testimony regarding Mr. Davis's character, interactions with prison personnel and fellow inmates, positive job evaluations, a certification of completion for a twelve-week stress management seminar, evidence showing Mr. Davis's demonstrated responsibility and lack of disciplinary reports, his GED, college courses, and application for membership with the Vietnam Veterans of America. None of this evidence was presented, nor was it duplicative of presented evidence.

Reasonable strategic decisions cannot be made with a lack of information. Counsel has a duty to investigate the facts in order "to preserve options" before embarking on a course of

mitigation. *Powell v. Collins*, 332 F.3d 376, 399-400 (6th Cir. 2003). Counsel's failure to reasonably investigate, prepare and present this mitigating evidence cannot be viewed as a reasonable strategic decision, but rather must be viewed as a dereliction of duty that prejudiced Mr. Davis. *See Wiggins*, 539 U.S. at 525 (stating that a *Strickland* violation is established where the scope of an attorney's investigation into mitigating evidence prior to trial was "unreasonable in light of what" counsel knew about their client). Absent counsel's deficient performance, there is a reasonable probability that Mr. Davis would not have been sentenced to death. Counsel's deficient performance precluded the sentencing panel from considering and giving weight and effect to available, compelling mitigation evidence in Mr. Davis's sentencing. Mr. Davis's post-conviction expert, Diane Menashe, an experienced criminal defense attorney in Ohio, opined that the failure to investigate and present this evidence constitutes ineffective assistance of counsel. (PC Ex. D, ECF 4-46, PageID 6275-79.)

The Magistrate Judge's recommendation that such evidence was "unlikely to have changed Davis's sentence when the aggravating circumstance could be reasonably interpreted as 'overwhelming'" is contrary to the Sixth Circuit's holding in Mr. Davis's own case. (ECF 51, PageID 9669 (citing *Strickland*, 466 U.S. at 699).) In fact, upon reversal, the Sixth Circuit noted that "the record in this case establishes without doubt that" evidence about Mr. Davis's behavior and adjustment to prison life since his incarceration after his trial in 1984 "was highly relevant to the single aggravating factor relied upon by the state—that future dangerousness should keep Davis on death row." *Davis X*, 475 F.3d at 773. The Sixth Circuit previously reversed Mr. Davis's death sentences because this evidence existed but had not been admitted. Despite the reversal, new counsel ignored much of this evidence, to Mr. Davis's prejudice.

In addition, Mr. Davis objects to the Magistrate Judge's recommendation to accord AEDPA deference on the basis that "fair-minded jurists could agree that the *Davis XIII* decision was a reasonable application of *Strickland* and its progeny[.]" (ECF 51, PageID 9669 (citing *State v. Davis (Davis XIII)*, No. CA2012-12-258, 2013 WL 4806935, at *3-4 (Ohio Ct. App. Sept. 9, 2013) (*also available at* ECF 4-48, Page ID 6940)).)

As noted in the Traverse, the Eighth Amendment requires the sentencer to consider the circumstances of the crime and the defendant's character, history and background during the penalty phase of a capital trial. (Traverse, ECF 29, PageID 9195-99 (citing *Boyd v. California*, 494 U.S. 370, 377–78 (1990); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)).) The United States Supreme Court has provided specific guidance with respect to reasonable professional assistance during the sentencing phase of a capital case. *Rompilla v. Beard*, 545 U.S. 374, 381–90 (2005); *Wiggins*, 539 U.S. at 521–29; *Williams*, 529 U.S. at 395–97. In particular, the Court has recognized that counsel in a capital case has an "obligation to conduct a thorough investigation of the defendant's background" to determine the availability of mitigating evidence. *Williams*, 529 U.S. at 396. Moreover, pursuant to *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982), it is clearly established federal law that "the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (emphasis removed).

Defense counsel failed to introduce even all of the *Skipper* evidence proffered in 1989, not to mention any of the additional twenty years of similarly powerful evidence. This is the evidence that the Sixth Circuit previously held, in granting habeas relief, was "without doubt . . . highly relevant to the single aggravating factor relied upon by the state—that future

dangerousness should keep Davis on death row." *Davis X*, 475 F.3d at 773.  There is no reasonable strategy that would including leaving out evidence that the federal court held was compelling enough to support a grant of habeas relief.  Therefore, counsel's failure cannot be viewed as a reasonable strategic decision, but rather viewed as a dereliction of duty that prejudiced Mr. Davis.  *See Wiggins*, 539 U.S. at 525–26.  Accordingly, the state court's decision holding otherwise was an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Mr. Davis should be granted relief because his constitutional right to effective assistance of counsel was violated when trial counsel failed to reasonably investigate and present mitigating *Skipper* evidence at his second resentencing.


## FOURTH GROUND FOR RELIEF:

**MR. DAVIS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FIFTH , SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION DUE TO HIS COUNSEL'S FAILURES IN ADVISING HIM REGARDING A JURY WAIVER.**

### A.    INTRODUCTION

Defense counsel must advise their clients of the collateral consequences of waiving a constitutional right.  *Padilla v. Kentucky*, 559 U.S. 356, 364–66 (2009).  Mr. Davis's defense counsel did not meet this standard.  Mr. Davis's convictions and sentences are constitutionally infirm because his original defense counsel did not advise him of the collateral consequence of his decision to waive his right to a jury trial.  Defense counsel's failure to provide objectively reasonable assistance prejudiced Mr. Davis.  *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Strickland v. Washington*, 466 U.S. 668 (1984).  Mr. Davis was denied his right to effective

assistance of counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**B.      OBJECTIONS TO MERITS ANALYSIS**

Mr. Davis objects to the Magistrate Judge's recommendation that his Fourth Ground for Relief should be dismissed.  The Magistrate Judge held that, according to Ohio courts, "the standard of review on appeals from jury verdicts versus verdicts from three-judge panels is identical . . . . As there is no legally recognized difference between the standards of review, it could not have been error for trial counsel to have failed to advise him of such[.]" (ECF 51, PageID 9670.)

While the Magistrate Judge mentioned only the standard-of-review issue, Mr. Davis had asserted that his counsel was ineffective for failing to inform him of several additional collateral consequences of his decision to waive his right to a jury trial.  As discussed in his petition, in addition to the standard of review issue, defense counsel were ineffective for 1) failing to explain to Mr. Davis that he could not retract his jury waiver at a new trial and/or penalty phase, regardless of who the panel judges were at a retrial, 2) failing to reserve Mr. Davis's right to withdraw his jury waiver, and 3) advising Mr. Davis to waive jury when they knew that he was likely to be sentenced to death because his innocence defense would prevent him from accepting responsibility.  (Petition, ECF 6, PageID 8659-68.)  The Magistrate Judge did not address any of these issues, which also entitle Mr. Davis to relief.

Regarding the standard-of-review issue, it is unclear what the Magistrate Judge is referencing when he notes that "Ohio courts have consistently held that the standard of review on appeals from jury verdicts versus verdicts from three-judge panels is identical[.]"  (ECF 51, PageID 9670.)  He appears to be referencing a previous cite to the Ohio Court of Appeals

decision in *Davis VI* stating, "The Ohio Supreme Court held in *Dickerson* that the standard of proof is the same before a three-judge panel and a jury."  (ECF 51, PageID 9659 (citing *Davis VI*, No. CA95-07-124, 1996 WL 551432, at * 7 (Ohio Ct. App. Sept. 30, 1996) (citing *State v. Dickerson,* 543 N.E.2d 1250, 1253–54 (Ohio 1989))).)  That citation, however, is about the standard of proof at *trial*, not the standard of review on *appeal*.  (*See id.* at PageID 9613, noting that the presumption at issue here "is applied at the appellate, rather than trial, level.")

To the contrary, the Ohio Supreme Court has adopted a rule in capital cases that in a trial before a three-judge panel, the appellate court will, in reviewing the case, presume that the panel considered only relevant, material, and competent evidence in reaching its decision unless the record affirmatively demonstrates otherwise.  *State v. White*, 239 N.E.2d 65, 70 (Ohio 1968); *See also State v. Davis,* 584 N.E.2d 1192, 1196 (Ohio 1992) (*Davis IV*) (noting that a three-judge panel "is presumed to consider only relevant, competent and admissible evidence in its deliberations"); *State v. Post*, 513 N.E.2d 754, 759 (Ohio 1987).  (*See* Petition, ECF 6, PageID 8660-62, incorporated by reference.)

Mr. Davis has included proof that a capital defendant should always be advised prior to waiving a jury that his case will be subject to a less favorable standard of review on appeal if tried before a three-judge panel.  (Aff. of Harry Reinhart, 1st PC Ex. P, ECF 4-19, PageID 1987-91; Aff. Of Gerald Simmons, Ex. PP to Pet'r's Mot. to Alter or Amend ¶¶ 10, ECF 141, *Davis v. Coyle*, No. C-1-97-402 (S.D. Ohio Sept. 18, 2001) (*Davis IX*) (stating that in capital cases, "client[s] need to understand this presumption by the appellate courts in order to make a knowing and meaningful decision whether to have his case tried to a jury or a three-judge panel").)  Accordingly, the standard of review on appeals from jury verdicts versus verdicts from

31

three-judge panels is *not* identical, and Mr. Davis was prejudiced by his counsel's failure to inform him of this difference.

Contrary to the Magistrate Judge's recommendation, as the Ohio courts have not addressed this issue on the merits, this Court is not "bound by the Ohio courts' decisions" on this issue. (ECF 51, PageID 9670; Traverse, ECF 29, PageID 9213-14.) Rather, the Ohio courts inappropriately failed to consider the issue on the merits in post-conviction on *res judicata* grounds, even though Mr. Davis relied upon evidence outside of the record. *Davis VI,* 1996 WL 551432, at *3.

Accordingly, Mr. Davis should be granted habeas corpus relief based on the denial of his constitutionally guaranteed right to the effective assistance of counsel due to his counsel's failures in advising him regarding a jury waiver.

## FIFTH GROUND FOR RELIEF:

**MR. DAVIS'S RIGHTS AS GUARANTEED BY THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT FAILED TO FULLY AND FAIRLY CONSIDER ALL MITIGATING EVIDENCE.**

### A. INTRODUCTION

The failure of the trial court to fairly and fully consider and weigh mitigating evidence violates Supreme Court precedent and Mr. Davis's rights to a fair trial and due process guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The three-judge panel's unexplained dismissal of every mitigating factor prevented the trial court from properly weighing the mitigating evidence and considering Mr. Davis's individualized characteristics. The panel unreasonably assigned very little or no weight to factors that could provide a context for Mr. Davis's actions and show that he can succeed in a structured environment without a death sentence.

###### B. OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Fifth Ground for Relief should be dismissed.

First, the Magistrate Judge stated that the resentencing panel "considered each of the factors listed by Davis" and found "immaterial" the fact that the trial court appeared to give less weight to certain factors than did the Supreme Court of Ohio. (ECF 51, PageID 9662-63.) ("[H]e disagrees with the weight afforded to that evidence by the trial court, which is not a constitutional violation.")

As discussed in the Traverse, the sentencing panel's ignoring and impermissibly discounting all mitigating evidence prevented it from making an individualized determination of "the particularized characteristics" of Mr. Davis, in violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. (ECF 29, PageID 9217-23 (citing *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *Lockett v. Ohio*, 438 U.S. 586 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976); *Gregg v. Georgia*, 428 U.S. 153 (1976); *Profitt v. Florida*, 428 U.S. 242 (1976).)

The three-judge panel rejected every mitigating factor presented by assigning it no "significant weight," "very little weight," "little or no weight," "little weight" or "no weight" at all. (*See* 2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4932-34.) In doing so, the court reduced the mitigating evidence to "inconsequential proportions" and "unreasonably discounted" each piece of mitigating evidence. *Porter v. McCollum*, 558 U.S. 30, 43 (2009). And, by assigning "no weight" to other mitigating evidence, the trial court improperly excluded relevant mitigating evidence from their weighing determination. *See Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982).

33

For example, the trial court impermissibly discounted mitigating evidence of Mr. Davis's good behavior while in prison, attributing "little weight" to it without explanation. (*See* 2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933.) The three-judge panel also gave "little weight" to Mr. Davis's diagnosed personality disorder and alcohol dependence. (*Id*. at PageID 4931-32). The panel's reasoning is not supported by the record, particularly in light of the multiple mental health evaluations of Mr. Davis that found similar symptoms and diagnoses. In fact, Ohio law directs the sentencer to consider the existence of a "mental disease or defect" at the time of the offense as a mitigating factor. Ohio Rev. Code § 2929.04(B)(3). The panel decided that love and support from family and friends "does not deserve significant weight," (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4931-32), despite the Ohio Supreme Court specifically noting such evidence as mitigating, *see State v. Smith*, 721 N.E.2d 93, 116 (Ohio 2000) ("Also mitigating is the love and support that appellant enjoys from some family members."). The panel similarly found that Mr. Davis's remorse and apology should be given "little weight," (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933), even though the Supreme Court of Ohio has found remorse to be mitigating, *see State v. Rojas*, 592 N.E.2d 1376, 1387 (Ohio 1992). The panel even dismissed testimony that the victim's daughter had forgiven Mr. Davis by assigning it "very little weight." (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4932.) As for the benefit to taxpayers from a life sentence and closure to the victim's family, the panel merely stated it was "uncertain whether these factors are relevant mitigating factors" and then dismissed them. (*Id*. at PageID 4933-34.) However, the trial court provided no reasoning or explanation as to why these factors would not be relevant.

All of this demonstrates that the state courts started from a presumption of death and unreasonably discounted and ignored increasingly weighty mitigation, in violation of Mr. Davis's constitutional rights.

Second, Mr. Davis objects to the Magistrate Judge's recommended denial on the ground that "there was no evidence presented that he would never be released from prison if he was not sentenced to death." (ECF 51, PageID 9663.) The Magistrate Judge found that Cynthia Mausser, the Chair of the Ohio Parole Board, "testified that she could *not* promise that Davis would never be paroled, and that it would be inappropriate for her to guess how a parole board member might vote[.]" (*Id.* (citing 2nd Resent'g Tr., ECF 5-7, PageID 8378-79).)

Mr. Davis agrees that Ms. Mausser did not conclusively testify that Mr. Davis would never be released from prison if he was not sentenced to death, and he has never argued otherwise. (*See, e.g.,* Traverse, ECF 29, PageID 9218) (noting only that Mausser was "discussing the *probability* that Mr. Davis would never be released from prison if given a sentence less than death") (emphasis added). However, as the Magistrate Judge later acknowledged, "Even though Mausser could not testify that Davis would never be paroled, she did testify that it was unlikely." (ECF 51, PageID 9673.)

Regardless of Ms. Mausser's testimony, as with the other mitigating factors above, the trial court's reasoning for disregarding this mitigating factor—that Mr. Davis would likely never be released from prison if he were to be sentenced to life imprisonment—was not supported. Rather, the panel impermissibly discounted this evidence in violation of Mr. Davis's constitutional rights. The panel found these statements "highly speculative and unconvincing and entitled to no weight." (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933.) Even in the absence of Ms. Mausser's testimony, the Ohio Supreme Court had previously found that

35

"[t]his factor is entitled to some weight in mitigation as appellant has demonstrated (during his prior incarceration for causing the death of his wife) his ability to successfully adapt to prison life." *Davis IV*, 584 N.E.2d 1192, 1198 (Ohio 1992). On appeal from the second resentencing, the Ohio Supreme Court agreed with the panel that Mausser's testimony was "speculative" but concluded, "Nevertheless, given his age (67), the likelihood that Davis will never be released from prison is credible enough to deserve some weight." *Davis XIV*, 9 N.E.3d 1031 1056 (Ohio 2014) (citing *State v. Bradley*, 538 N.E.2d 373, 385 (Ohio 1989) (court should consider probability that defendant will never be released from prison)). Accordingly, the panel's groundless refusal to give this mitigation factor any weight violated Mr. Davis's constitutional rights. *See Simmons v. South Carolina*, 512 U.S. 154, 171 (1994) (noting "the obvious relevance of petitioner's parole ineligibility to the jury's formidable sentencing task" when the parties make arguments "relating to petitioner's future dangerousness").

Mr. Davis should be granted habeas relief because his constitutional rights were violated when the trial court failed to fully and fairly consider all mitigating evidence.

## SIXTH GROUND FOR RELIEF:

**THE CAPITAL SPECIFICATION OF A PRIOR HOMICIDE THAT WAS USED IN MR. DAVIS'S CASE WAS TOO REMOTE IN TIME, IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

### A.    INTRODUCTION

Count one of the indictment carried a capital specification that prior to this offense, Mr. Davis had been convicted of an offense, an essential element of which was the purposeful killing of, or attempt to kill, another. Ohio Revised Code § 2929.04(A)(5).

Mr. Davis was convicted in 1971 for a homicide in 1970. This prior homicide predates *Furman v. Georgia*, 408 U.S. 238 (1972), *Lockett v. Ohio*, 438 U.S. 586 (1978), and Ohio's

*Lockett*-compliant death penalty statute effective in 1981, by two years, seven years and ten years, respectively. This offense was too remote in time to be used as a specification for the death penalty.

### B.     OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Sixth Ground for Relief should be dismissed.

First, citing *State v. Mapes*, 484 N.E.2d 140 (Ohio 1985) (conditional writ of habeas corpus aff'd in *Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004)), the Magistrate Judge concluded that "the *Davis II* decision did not run afoul of clearly established precedent with respect to Davis's *ex post facto* argument." (ECF 51, PageID 9665.) In 2004, however, the Sixth Circuit granted a writ of habeas corpus for Mr. Mapes, directing the state court to grant a new direct sentencing appeal. *Mapes v. Tate*, 388 F.3d 187. In fact, the Sixth Circuit granted relief on an ineffective assistance of appellate counsel claim particularly for failing to raise a claim that "that the jury was not allowed to consider mitigating evidence relating to Mapes's prior murder conviction" that was used as an aggravating factor. *Id.* at 190. Following that remand, the Eighth District vacated Mapes's death sentence. *State v. Mapes*, No. 86225, 2006 WL 181865, at *4 (Ohio Ct. App. Jan. 26, 2006) (finding that "the trial court erred and abused its discretion by improperly limiting the jury from considering" certain mitigating evidence).

This reversal occurred several years before the Ohio Supreme Court relied on this overturned case to support Mr. Davis's sentence in 2014, let alone well before the Magistrate Judge's Report and Recommendation. In other words, neither the Ohio Supreme Court nor the Magistrate Judge cited any case similar to Mr. Davis's where a death sentence passed scrutiny under federal review. Accordingly, the use of Mr. Davis's 13-year-old prior murder conviction

to qualify him for the death penalty was arbitrary and capricious. *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980). In addition, use of this offense as an aggravating circumstance was unconstitutionally retroactive because it attached new legal consequences to events completed before enactment of Ohio's current death penalty scheme (and R.C. § 2929.04(A)(5)) in 1981. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); (*See* Traverse, ECF 29, PageID 9224-25, 9227.)

The Magistrate Judge also minimized the remoteness in time for the earlier conviction in light of "similarities between the two crimes" and the fact that Mr. Davis was incarcerated as a result of the earlier conviction. (ECF 51, PageID 9665.) The Ohio Supreme Court did not use any such reasoning, however. To the contrary, the court decided that the General Assembly had removed any authority for the judiciary to decide whether a prior conviction was too remote in time to support a capital specification. *Davis II*, 528 N.E.2d 925, 933 n.9 (Ohio 1988) ("The General Assembly has placed no time limits on the use of the prior conviction and it is not required to do so.")

The Ohio Supreme Court's assertion that it lacked any temporal or other discretion to review a capital specification is contrary to the clear holdings of the U.S. Supreme Court: "We have reiterated the general principle that aggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *See Lewis v. Jeffers*, 497 U.S. 764, 776 (1990); *see also Zant v. Stephens*, 462 U.S. 862, 877 (1983) ("[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.") (footnote omitted). A thirteen-year-old offense (which occurred prior to the enactment of Ohio's current death penalty

scheme) has no relationship to the course of conduct that made Mr. Davis eligible for the death penalty. This Court should grant relief after a *de novo* review of this claim.

Finally, the Magistrate Judge disagreed with Mr. Davis's assertion that "that use of a prior conviction as an aggravating circumstance violated *Blockburger* and thus constituted a Double Jeopardy violation." (ECF 51, PageID 9665 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).) Contrary to the Magistrate Judge's conclusion, however, using Mr. Davis's prior conviction in charging him regarding a subsequent crime subjects him to jeopardy twice for a single offense by the same jurisdiction, since the first conviction did not "require[] proof of a fact" beyond what was required for the second conviction. *Blockburger*, 284 U.S. at 304 (citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911).)

Mr. Davis should be granted habeas corpus relief based on the use of a capital specification of a prior homicide that was too remote in time, in violation of his constitutional rights.

## SEVENTH GROUND FOR RELIEF:

**MR. DAVIS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS SECOND RESENTENCING HEARING WHEN COUNSEL FAILED TO REASONABLY INVESTIGATE AND PRESENT MITIGATION EVIDENCE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A. INTRODUCTION

Counsel's decision to call Cynthia Mausser as a witness, failure to prepare or revise Dr. Robert Smith's testimony in light of Ms. Mausser's testimony, failure to call mitigation investigator John Lee to testify to information on behalf of unavailable witnesses, and failure to adequately prepare available mitigating witnesses for testifying prejudiced Mr. Davis and denied

him due process, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

### B.    OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Seventh Ground for Relief should be dismissed.

#### 1.    Testimony of Cynthia Maussser

Mr. Davis asserted that counsel failed to reasonably investigate and prepare for mitigation by calling Cynthia Mausser, the chair of the Ohio Parole Board, as a mitigation witness without discussing her anticipated testimony and then by failing to examine her on re-direct. (Petition, ECF 6, PageID 8678-82.) In response, the Magistrate Judge concluded, "Counsel's decision to call Mausser and elicit certain testimony fell within the broad ambit of sound trial strategy and did not prejudice Davis." (ECF 51, PageID 9673.)

The Magistrate Judge also noted that counsel "faced a more daunting challenge" in light of the fact that life without possibility of parole was not an available sentencing option. While this was unique in 2009, it was not unique for the capital bar overall, since this circumstance existed in every Ohio capital case before the enactment of S.B. 2 in 1996. *See* Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996. In short, it appears that the Magistrate Judge found that counsel's desire for evidence regarding "the unlikelihood of parole" for Mr. Davis, so that the three-judge panel would be more comfortable with a life sentence, was reasonable. (ECF 51, PageID 9673-74.)

While the reasonableness of the strategy may be debatable, counsel's implementation was clearly unreasonable. Without Ms. Mausser's testimony at his first resentencing, the Ohio Supreme Court had previously given "some weight in mitigation" to "the probability that

appellant would never be released from prison if he were to be sentenced to life imprisonment." *Davis IV*, 584 N.E.2d 1192, 1198 (Ohio 1992).

In contrast, after the second resentencing panel heard Ms. Mausser's testimony, it found her testimony "highly speculative and unconvincing" and gave no mitigating weight to the probability that Mr. Davis would never be released from prison if given a sentence less than death. (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933.)  Similarly, the panel gave "little weight" to Mr. Davis's "good behavior while in prison[.]" (*Id.*)  Mr. Davis was prejudiced by this deficient performance.

Providing Ms. Mausser's testimony did nothing to improve Mr. Davis's mitigation argument; to the contrary, it affirmatively prejudiced him.  For example, the Magistrate Judge did not address the fact that, in opening statements, Mr. Davis's defense counsel promised the trial court that Ms. Mausser would testify that Mr. Davis "will never be paroled."  (2nd Resent'g Tr., Sept. 8, 2009, ECF 5-7, PageID 8227.)  Even after the prosecutor informed the court that he spoke with Ms. Mausser, who denied that she would provide such testimony, defense counsel insisted that she testify anyway: "we will be in a position of surprise and affirmative damage if she testifies as the prosecution is suggesting because we, in fact, interviewed her four months ago and Ms. Cook will testify, if necessary, that that is not what we were told."  (*Id.* at PageID 8323, 8327.)  Based on these representations, the panel permitted Ms. Mausser to testify.  (*Id.* at PageID 8333-35.)

Ms. Mausser's affidavit indicates that contrary to the record made by defense counsel, she did not agree to testify that Mr. Davis would never be paroled.  (2nd PC Ex. F, ECF 4-46, PageID 6365.)  She would have been able to give a better opinion if she had the proper materials provided to her, but defense counsel did not provide her what she needed.  (*Id.* at PageID 6366.)

41

Despite the speculative and harmful nature of her testimony, defense counsel had her testify anyway. Defense counsel also failed to have Ms. Cook testify that Ms. Mausser had made a prior inconsistent statement on this matter, contrary to their promises to the court. (2nd Resent'g Tr., Sept. 8, 2009, ECF 5-7, PageID 8327.)

Additionally, Mr. Davis instructed defense counsel not to present this testimony in his case. (2nd PC Ex. B, Aff. of Von Clark Davis, ECF 4-46, PageID 6271; 2nd PC Ex. H, Redacted Mitigation Write-Up, July 7, 2009, ECF 4-46, PageID 6379.) His attorneys ignored his request.

Mr. Davis's post-conviction expert, Diane Menashe, an experienced criminal defense attorney in Ohio, stated that promising the panel a witness who could guarantee no parole when no such witness existed was harmful to Mr. Davis and constitutes ineffective assistance of counsel. (2nd PC Ex. D, ECF 4-46, PageID 6277.)

In addition to promising testimony to the court that defense counsel could not deliver—even after being warned by the prosecutor—defense counsel deficiently failed to follow up during redirect on an obvious attempt by Ms. Mausser to correct her earlier testimony. At the end of her testimony, Ms. Mausser indicated that she wanted to correct an answer she gave earlier and began to say: "I think it might be unusual" before being stopped by the panel because no question had been asked. (2nd Resent'g Tr., ECF 5-7, PageID 8379.) Had counsel followed-up on this opportunity and requested permission to ask Ms. Mausser on redirect whether she had anything to add or correct to her previous testimony, Ms. Mausser could have indicated how she had actually voted on cases where a person with death specifications came up for parole. (2nd PC Ex. F, ECF 4-46, PageID 6366.)

The Magistrate Judge did not address any of these deficiencies, only defense counsel's decision to call Ms. Mausser in general, in the absence of any of this context. The Magistrate Judge acknowledged that Mr. Davis's defense "was premised in part on his never being released" (ECF 51, PageID 9674), a premise undermined by the way in which counsel presented Ms. Mausser's testimony. The promises made by defense counsel in the opening statement and before Ms. Mausser's testimony regarding Mr. Davis's parole eligibility went unfulfilled, and the panel had no choice but to find no mitigation had been presented in this regard.

Counsel's mitigation-phase performance fell below an objective standard of reasonableness when counsel called Ms. Mausser as a mitigation witness without adequately preparing her or confirming whether she would testify that Mr. Davis would likely never be paroled. Ms. Mausser's testimony greatly undermined counsel's mitigation strategy, which was based on convincing the panel that Mr. Davis would not be a danger to society if he was sentenced to life in prison rather than death. Because counsel called the witness without adequately interviewing her, they brought to the panel's attention that Mr. Davis could, in fact, be paroled. This testimony was especially damaging in context, when counsel planned to call additional witnesses to testify that Mr. Davis would not be dangerous in a structured setting such as prison. A substantial amount of counsel's strategy hinged on testimony that counsel should have known Ms. Mausser would be unable to give. Ms. Mausser's testimony served only to contradict counsel's opening statements and to provide the flawed basis to counsel's subsequent deficient mitigation strategy.

If counsel would have conducted a reasonable investigation and effectively prepared for mitigation, the harmful testimony of Ms. Mausser would not have been presented in the first place. Absent counsel's deficient performance, there is a reasonable probability that the outcome

43

of the trial would have been different and the three-judge panel would not have sentenced Mr.

Davis to death. This Court should sustain Mr. Davis's objection and hold that he was denied his

right to effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth and Fourteenth

Amendments to the United States Constitution. *See Strickland,* 466 U.S. at 667-88.

### 2. Testimony of Dr. Robert Smith

Mr. Davis objects to the Magistrate Judge's recommended denial of his claim that

defense counsel failed to adequately investigate the mitigating evidence prepared by Dr. Smith

and unreasonably called Dr. Smith as a mitigation witness after knowing his testimony would

likely do more harm than good. (ECF 6, PageID 8682-85.) The Magistrate Judge concluded that

"the testimony by Dr. Smith adequately discussed Davis's history of alcohol dependence and

borderline personality disorder, and Davis's argument that Dr. Smith would have provided more

persuasive testimony had he been fully informed of Davis's family history is purely speculative."

(ECF 51, PageID 9673-74.)

The Magistrate Judge appears to have conflated two subclaims—7(B) defense counsel's

failure to adequately investigate Dr. Smith's mitigation evidence and deficient decision to call

him as a witness, and 7(D), failure to adequately investigate Mr. Davis's complex and

dysfunctional family history, including for pertinent information regarding Mr. Davis's

borderline personality and alcohol dependence diagnoses as well as his psycho-social

background. Subclaim 7(D), discussed further below, is not about whether adequate

investigation of Mr. Davis's family history would have fully informed Dr. Smith, but that such

an investigation would have adequately informed the court.

As for subclaim 7(B), Mr. Davis is not arguing that Dr. Smith failed to "adequately

discuss[]" Mr. Davis's history of alcohol dependence and borderline personality disorder or

whether he was "fully informed of Davis's family history." Rather, Mr. Davis asserts that

counsel's failure to adequately review the mitigating evidence prepared by Dr. Smith and unreasonable decision to call him left the panel with the impression that, due to Mr. Davis's borderline personality disorder, if Mr. Davis were ever released from prison, and no longer in a structured environment, he could kill again.  (ECF 6, PageID 8682-85.)

Dr. Smith's testimony did not mitigate any fears that the panel might have had after learning from Ms. Mausser's testimony that Mr. Davis could possibly be paroled.  Dr. Smith testified that someone in Mr. Davis's psychological condition would be prone to "unwarranted aggressive behavior that comes about with minor provocation."  (2nd Resent'g Tr., Sept. 10, 2009, ECF 5-8, PageID 8451.)  Further, Dr. Smith testified that Mr. Davis was still affected by chronic borderline personality disorder.  (*Id.* at PageID 8453, 8468.)

No sound trial strategy would involve calling one witness to say that the defendant was not precluded from parole and another witness to say that the client was still affected by psychological problems that made him prone to aggressive behavior.  A reasonable investigation and preparation for mitigation would have shown such information to be harmful and reasonable counsel would not have presented the testimony to the three-judge panel.

The Magistrate Judge also found Dr. Smith's testimony about Mr. Davis becoming violent upon release "immaterial," since Mr. Davis's counsel "premised" his defense in part on him never being released.  (ECF 51, PageID 9674.)  As explained with regard to subclaim 7(A) above, however, to the extent counsel premised Mr. Davis's defense on his never being released, they deficiently failed to investigate and prepare Ms. Mausser for her testimony, allowing her to diminish that line of defense.  At that point, Dr. Smith's testimony about potential violence upon Mr. Davis's release was no longer immaterial.

45

Defense counsel deficiently failed to change its line of questioning with Dr. Smith even after Ms. Mausser could not guarantee that Mr. Davis would not be paroled if he received a non-death sentence. Counsel failed to have Dr. Smith address how Mr. Davis had changed over time and even with borderline personality disorder, he could adapt in society. Instead, they focused on his psychological state of mind in 1984, which left the panel with the impression that he was and still is dangerous. Dr. Smith's affidavit states that, if counsel had discussed these topics with him and asked him pertinent questions at the hearing, he would have been able to provide beneficial, instead of harmful, information for Mr. Davis:

> Had I known parole was a concern and how Von Clark Davis would interact in society if released on parole, I could have testified that with time, maturity, and freedom from drugs and alcohol, someone with Borderline Personality Disorder will gain insight and develop coping skills that would enable him to adjust to living in the outside world. I would have been able to testify that Von at the present time is a different person than he was when he was admitted to ODRC in 1984. Having been in a structured setting for the past 27 years, Von has learned to accept external rules and expectations regarding his behavior. He has developed coping strategies to deal effectively with frustration, annoyance, disappointment, etc. He has learned to weigh the potential consequences of his decisions and actions.

(PC Ex. I, ECF 4-46, PageID 6382.) Dr. Smith also "could have explained that the parole process itself would provide Von with significant structure and guidelines that would assist him in successfully re-entering society." (*Id*.) Defense counsel's failure to adequately investigate and prepare Dr. Smith for his testimony, specifically, for the fact that parole was going to be a critical issue, is what rendered his testimony not just immaterial, but in fact prejudicial to the defense.

The Magistrate Judge also found no prejudice, on the basis that "there was no indication in the trial court opinion that the possibility of Davis's becoming violent upon release influenced the panel's decision to sentence him to death." (ECF 51, PageID 9674.) To the contrary, the trial

court opinion gave little regard to Dr. Smith's testimony about Mr. Davis's good behavior in prison, for the very reasons at issue here: "Ultimately, however, Dr. Smith failed to forecast Defendant's behavior or recommend a treatment plan, should he eventually be released from prison." (*See* 2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4931.) The panel went on to conclude that "Dr. Smith's diagnosis, even if valid, is entitled to little weight in mitigation." (*Id.* at PageID 4933.) Similarly, Mr. Davis's "good behavior while in prison" was given "little weight[.]" (*Id.*) Accordingly, Mr. Davis was prejudiced by his counsel's deficient performance and is entitled to habeas relief.

### 3. Mitigation Investigator John Lee

Mr. Davis objects to the Magistrate Judge's recommended denial of his claim that counsel was ineffective for failing to call mitigation investigator John Lee to present summaries of interviews with witnesses who were unavailable for the second resentencing hearing. (ECF 6, PageID 8685-88.) The Magistrate Judge quoted the Warden in concluding, "As a fact witness, elementary rules of hearsay would preclude Lee from parroting out-of-court statements from others to prove that Davis supposedly is a great guy who deserves a lenient sentence." (ECF 51, PageID 9674 (quoting Return, ECF 17, PageID 9054).)

To begin, Lee would not have been a fact witness; he would have been offered as an expert witness. *See*, *e.g. Doe v. Ayers,* 782 F.3d 425, 450 (9th Cir. 2015) (treating a mitigation investigator as an expert witness in a California case, and allowing opinions based on interviews with the defendant's "family members and friends"). Neither the Warden nor the Magistrate Judge cite any authority stating that a mitigation investigator is not an expert.

Even if this Court were to find that Mr. Lee would have been a fact witness, he would still fit within a hearsay exception. *See Mason v. Mitchell*, 293 F. Supp. 2d 819, 826 (N.D. Ohio 2003) (noting that a mitigation expert could testify in a federal case if he meets a hearsay

47

exception that the "testimony exhibits a guarantee of trustworthiness"). Mr. Lee would have testified regarding his interviews with four unavailable witnesses: two were deceased and the other two were incompetent. (*See* PC Ex. L, ECF 4-46, PageID 6389-402.) Accordingly, Mr. Lee could have qualified for hearsay exceptions such as, for example, "Reputation concerning personal or family history," Ohio Evid. R. 803(19) or "Statement of personal or family history," Ohio R. Evid. 804(B)(4). Ohio Revised Code 2929.04(C) grants wide latitude to the defendant in the presentation of mitigating evidence during death penalty hearings, and hearsay rules cannot be used to defeat the ends of justice. *State v. Landrum*, 559 N.E.2d 710, 720 (Ohio 1990) (citing *Green v. Georgia*, 442 U.S. 95, 97–98 (1979)); *see also State v. Sheppard*, 703 N.E.2d 286, 294 (Ohio 1998) ("[T]he United States Supreme Court has carved out an exception to evidentiary rules for mitigation evidence in extreme circumstances when its exclusion would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (citing *Green*, 442 U.S. 95)); (*See* Traverse, ECF 29, PageID 9235-36.)

The Magistrate Judge also concluded that such testimony would be "cumulative" and that decisions not to present cumulative testimony "are generally considered sound trial strategy." (ECF 51, PageID 9674.) The information was not cumulative of other evidence and was necessary to give the panel a complete picture of Mr. Davis's family history. The four mitigating witnesses—all of whom were unable to testify themselves—could have provided critical substantive information about Mr. Davis and his family upbringing, including about Mr. Davis's parents' alcoholism, violence and neglect, how Mr. Davis's father abandoned his wife and children, how Mr. Davis was physically abused by his mother and other relatives. (*See* 2nd PC Ex. F, G, H, I, ECF 4-46, PageID 6394-6402.) Defense counsel recognized its importance by having Mr. Lee prepared to testify and the exhibits marked for introduction into evidence. For

48

reasons unknown, when it came time to introducing the exhibits, defense counsel withdrew all of the exhibits. (Resent'g Tr., Sept. 10, 2009, ECF 5-8, PageID 8504.) As a result, this relevant and important mitigating evidence regarding Mr. Davis's family background was never presented to the trial court.

Mr. Davis's post-conviction expert, Diane Menashe, an experienced criminal defense attorney in Ohio, reviewed the exhibits and the trial record and opined that Mr. Davis was deprived of effective assistance when counsel failed to present known, available and relevant mitigating evidence at the second resentencing hearing. (*See* 2nd PC Ex. D, ECF 4-46, PageID 6278.)

After the conflicting testimony of Mr. Davis's friends and family, counsel's decision not to present evidence that could lend more credibility to Dr. Smith's testimony only further prejudiced Mr. Davis. (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933.) ("[T]he separate testimony of Defendant's family and friends does not support Dr. Smith's conclusion that Defendant suffered an extreme and dysfunctional upbringing.")

Accordingly, counsel's failure to present available and known mitigating evidence prevented the trial court from considering pertinent evidence regarding Mr. Davis's family history, character and background, and Mr. Davis is entitled to relief on this ground.

### 4. Mr. Davis's family

As noted in section (B)(2) above, the Magistrate Judge did not directly address Mr. Davis's claim that counsel failed to adequately investigate and develop evidence from mitigation witnesses regarding Mr. Davis's character, background and mental health. The closest the Magistrate Judge came to addressing this subclaim was the conclusion that "the testimony by Dr. Smith adequately discussed Davis's history of alcohol dependence and borderline personality disorder, and Davis's argument that Dr. Smith would have provided more persuasive testimony

had he been fully informed of Davis's family history is purely speculative." (ECF 51, PageID 9673-74.) However, this is not the claim in Mr. Davis's petition. (ECF 6, PageID 8688-92.)

Rather, Mr. Davis alleged that counsel failed to adequately investigate his dysfunctional family and therefore presented the panel with an incomplete and inaccurate picture of Mr. Davis's family history, background and mental health symptoms. Exploring Mr. Davis's background by thoroughly interviewing his family and family friends could only have aided counsel's strategy of showing that Mr. Davis "was raised in a dysfunctional environment." (2nd Resent'g Tr., Sept. 8, 2009, ECF 5-7, PageID 8224.) However, defense counsel's investigation and presentation at mitigation failed to provide context for Mr. Davis's dysfunctional family life and instead painted a much different picture of his upbringing and family background.

Mr. Davis's dysfunctional family history included an absent, abusive and alcoholic father, frequent separations and extramarital relationships by his parents, and repeated pregnancies by his mother. (ECF 5-8, PageID 8459-60.) However, counsel failed to elicit details regarding Mr. Davis's father and his drinking, any familial abuse, or the impact of the parents' tumultuous relationship on Mr. Davis and his siblings. Despite knowing about Mr. Davis's alcohol dependence, counsel failed to investigate and present evidence regarding alcoholism in the family or Mr. Davis's personal alcohol use. Even though Mr. Davis presents with multiple symptoms of borderline personality disorder, counsel failed to investigate or elicit details from mitigation witnesses regarding Mr. Davis's behavior as child, adolescent or adult.

Defense counsel's failure to prepare the family for their mitigation testimony directly harmed Mr. Davis by negatively influencing the three-judge panel's perspective of his childhood and family life as well as Dr. Smith's diagnoses. The panel used defense counsel's cursory mitigation presentation against Mr. Davis when finding that "the separate testimony of

Defendant's family and friends does not support Dr. Smith's conclusion that Defendant suffered an extreme and dysfunctional upbringing." (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933.) By failing to adequately investigate witnesses for mitigation, defense counsel presented multiple witnesses who contradicted known facts from previous and current psychological evaluations and reports that demonstrated a complex and dysfunctional family history.

The Magistrate Judge also stated, without explanation, that "*Wiggins* is a much higher bar to relief than Davis wishes it to be." (ECF 51, PageID 9673 (citing *Wiggins v. Smith*, 539 U.S. 510 (2003)).) In particular, the Magistrate Judge noted that Mr. Davis's "attorneys retained a mitigation expert and called witnesses to testify as to the full range of mitigation factors, including but not limited to his childhood, substance abuse, and borderline personality disorder." (*Id.*) While a petitioner claiming ineffective assistance of counsel must overcome the "strong presumption" that counsel's actions were part of "sound trial strategy." *Strickland*, 466 U.S. at 689, this presumption is subject to challenge, especially where Counsel's ineffectiveness stems from a lack of investigation. *See, e.g.*, *Wiggins*, 539 U.S. at 524 (requiring counsel's investigation to "comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." (emphasis in original) (quotation omitted)).

While the Magistrate Judge pointed to factual differences between *Wiggins* and this case, in both cases "counsel chose to abandon their investigation at an unreasonable juncture": "Despite these well-defined norms, however, counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Id.* at 527, 524; *see also id.* at 527 ("In assessing the reasonableness of

an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.").

Objectively reasonable performance and sound trial strategy would not include the decision to put on evidence undercutting Dr. Smith's testimony about dysfunction, especially when it did not follow reasonable investigation. As the Warden acknowledges, "Especially where trial counsel could rely on a seasoned professional like Dr. Smith to develop 'dysfunctional upbringing' evidence, reasonable counsel could readily conclude that relying on untrained and unsophisticated family members to testify about family dysfunctionality would not be the optimum means by which to present this evidence." (Warden's Return of Writ, ECF 17, PageID 9056-9057.) Had counsel better investigated and prepared the witnesses who testified, their testimony would have been valuable for mitigation. Instead, as presented, it prejudiced Mr. Davis.

Mr. Davis should be granted habeas corpus relief based the violation of his constitutionally guaranteed right to effective assistance of counsel during his second resentencing hearing when counsel failed to reasonably investigate and present mitigation evidence.

## EIGHTH GROUND FOR RELIEF:

**MR. DAVIS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS SECOND RESENTENCING WHEN COUNSEL FAILED TO INVESTIGATE AND SEEK RECUSAL OF BIASED JUDGES IN VIOLATION OF MR. DAVIS'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A.     INTRODUCTION

Mr. Davis was denied effective assistance of counsel at his second resentencing hearing when counsel failed to seek the recusal of Judge Andrew Nastoff.  Counsel failed to seek the recusal of Judge Nastoff even though counsel was aware that Judge Nastoff served as a prosecutor in the death penalty case of Mr. Davis's nephew, Lahray Thompson, and advocated for Mr. Thompson's death.  The acts and omissions of counsel prejudiced Mr. Davis and resulted in the denial of effective assistance of counsel in violation of Mr. Davis's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Mr. Davis was also denied the effective assistance of counsel at his second resentencing hearing when counsel failed to conduct *voir dire* of Judge Pater after learning that the judge had a close personal relationship with one of the witnesses.  These acts and omissions of counsel prejudiced Mr. Davis and denied him due process, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### B.     OBJECTIONS TO PROCEDURAL DEFAULT ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Eighth Ground for Relief should be dismissed.

Mr. Davis objects to the Magistrate Judge's recommendation that "Claim Eight is procedurally defaulted as it pertains to any failure to voir dire or seek recusal of Judge Pater." (ECF 51, PageID 9675-76.)  The Magistrate Judge recommended that "Davis's ineffective

assistance claim should be dismissed as procedurally defaulted unless Davis could show good cause to excuse appellate counsel's failure to raise the issue, or good cause to excuse postconviction counsel's failure to seek to reopen Davis's direct appeal or raise it in Davis's state court postconviction petition." (ECF 51, PageID 9676 (citing *Edwards v. Carpenter*, 529 U.S. 446, 449-50, 452-53 (2000)).) The Magistrate Judge based that conclusion on the assertion that "Davis does not dispute that the ineffective assistance of trial counsel claim was available to him on direct appeal." (*Id*.) But that is incorrect. Mr. Davis specifically alleged ineffective assistance of his post-conviction counsel in his Traverse as "cause" to excuse the failure to raise the issue. To the extent this claim was based on evidence outside of the record and was not raised in Mr. Davis's initial state post-conviction petition, the performance of state post-conviction counsel was deficient, to Mr. Davis's prejudice, depriving him of the effective assistance of initial review state-post-conviction counsel. *See Strickland*, 466 U.S. 668; *White v. Warden*, 940 F.3d 270 (6th Cir. 2019) (citing *Trevino v. Thaler*, 569 U.S. 413 (2013) & *Martinez v. Ryan*, 566 U.S. 1 (2012)).

Showing prejudice from Judge Pater's bias required evidence outside of the trial-court record concerning his relationship with Mr. Davis's family and the information he knew from that relationship that was inconsistent with the evidence admitted at trial. Accordingly, this claim was not available to Mr. Davis on direct appeal, and could only have been brought in post-conviction. Because his post-conviction counsel failed to raise it, he was denied the effective assistance of initial review state post-conviction counsel, demonstrating "cause" to excuse any default for failing to properly raise this claim in state post-conviction.

Mr. Davis can demonstrate prejudice as well from Judge Pater's independent knowledge of Mr. Davis's family. The panel specifically found that "the separate testimony of Defendant's

family and friends does not support Dr. Smith's conclusion that Defendant suffered an extreme and dysfunctional upbringing." (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933). Judge Pater considered information not known to defense counsel and not admitted into evidence when weighing mitigating factors related to Mr. Davis's family history, based on his own forty-year personal knowledge of Mr. Davis's family. Because defense counsel failed to *voir dire* Judge Pater, the judge's personal knowledge about the Davis family remained secret, and Mr. Davis was never given an opportunity to deny or explain it.

Moreover, it would be inappropriate for this Court to deny this claim without further factual development. *See Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). Factual development is crucial for this Court to decide claims of ineffective assistance and whether cause exists to excuse procedural default based on ineffective assistance. Counsel's assistance can only be evaluated after a determination as to what, when, why, and how informed trial counsel were. *See Sasser v. Hobbs*, 735 F.3d 833, 853-54 (8th Cir. 2013) (holding that when a habeas petitioner alleges a defaulted ineffective-assistance claim and alleges ineffective assistance of post-conviction counsel to excuse the default, discovery and an evidentiary hearing is authorized by 28 U.S.C. § 2254(e) and "required under *Trevino*."). Accordingly, this Court must obtain this information from prior counsel to make an accurate determination of good cause to excuse the procedural default. Discovery is also essential for a portion of this ground for relief to provide the information that, by definition, does not exist because of trial counsel's failure to *voir dire* Judge Pater—or Judge Nastoff, for that matter—after learning of the existence of a conflict.

Regarding the failure to seek the recusal of Judge Nastoff, the Magistrate Judge found procedurally defaulted Mr. Davis's argument that counsel was ineffective for failing to discuss the recusal issue with him. In particular, the Magistrate Judge noted that "Judge Nastoff held

55

that the claim was available to him on direct appeal but was not presented, and thus, was barred by *res judicata.*" (ECF 51, PageID 9677-78 (citing State Court Record, ECF 4-47, PageID 6647).) Putting aside the appropriateness of Judge Nastoff himself ruling on a claim about whether counsel should have challenged him as biased, there is no procedural default on this issue, as Judge Nastoff's ruling is not the last reasoned state court opinion.

As Mr. Davis explained, and as the Warden agreed, the last reasoned state court opinion was the postconviction appeal from Judge Nastoff's decision. *Davis XIII*, No. CA2012-12-258, 2013 WL 4806935 (Ohio Ct. App. Sept. 9, 2013) (*also available at* ECF 4-48, PageID 6946-47); (Traverse, ECF 29, PageID 9247-50; Return of Writ, ECF 17, PageID 9058). In *Davis XIII*, the Ohio appellate court did not hold that the claim was barred by *res judicata.* Rather, it denied the claim on the merits, finding that "counsel's decision not to seek recusal of Judge Nastoff from the three judge panel does not amount to ineffective assistance of counsel." 2013 WL 4806935, at *6. The Warden agreed that this decision was on the merits. (Return of Writ, ECF 17, PageID 9058. ("[T]he state courts rejected Davis's post-conviction claim that his trial counsel were ineffective for failing to seek the recusal of Judge Nastoff.""))

As there is no procedural bar to this claim, Mr. Davis asserts that the state court's adjudication of this claim was an unreasonable application of, or contrary to, clearly established federal law (§ 2254(d)(1)) and based on an unreasonable determination of the facts in light of the evidence presented in state court (§ 2254(d)(2)). (Traverse, ECF 29, PageID 9247-50.) As part of this argument, Mr. Davis noted that the state court did not take into account counsel's complete failure to discuss the recusal issue with Mr. Davis. (PC Ex. B, Aff. of Von Clark Davis, ECF 4-46, PageID 6271.) The United States Supreme Court has emphasized counsel's constitutional duty "to consult with the defendant on important decisions and to keep the

defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688.

In addition, a defendant must be given "an opportunity to comment on facts which may influence the sentencing decision in capital cases." *Gardner v. Florida*, 430 U.S. 349, 360 (1977); *see also Simmons v. South Carolina*, 512 U.S. 154, 161 (1994). Judge Nastoff previously heard and cross examined mitigation evidence involving Mr. Davis's family members in the Thompson case, and accordingly had already formed opinions and made arguments about Mr. Davis's family background. Mr. Davis was prejudiced by not having the opportunity to request the recusal of a judge who had reason to be biased against him. Therefore, upholding a decision in which counsel failed to seek recusal or conduct *voir dire* of a judge who considered outside factual information is an unreasonable application of clearly established federal law. *See, e.g.*, *Gardner*, 430 U.S. 349.

### C. OBJECTIONS TO MERITS ANALYSIS

The Magistrate Judge recommended denying the ineffective assistance of counsel claim regarding counsel's failure to seek the recusal of Judge Andrew Nastoff, concluding that "trial before a judge with *potential* bias has not been held by the Supreme Court to be structural error." (ECF 51, PageID 9677-78.) As Mr. Davis made an actual bias claim, this reasoning is irrelevant: "Here, bias was not just potential, but actual." (Petition, ECF 6, PageID 8695.)

It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law. *Rose v. Clark*, 478 U.S. 570, 577 (1986); *Tumey v. Ohio*, 273 U.S. 510, 533–34 (1927). Supreme Court precedent clearly establishes that the denial of the right to be tried by an impartial decisionmaker is an error that taints any resulting conviction with constitutional infirmity. *See, e.g.*, *Neder v. United States,* 527 U.S. 1, 8 (1999) (the presence of a

biased decisionmaker is structural error "subject to automatic reversal"); *Edwards v. Balisok,* 520 U.S. 641, 647 (1997) ("A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him."); *Johnson v. United States*, 520 U.S. 461, 468–69 (1997); *Rose*, 478 U.S. at 577-78.

Here, trial counsel was aware that Judge Nastoff served as a prosecutor in the death penalty case of Mr. Davis's nephew, Lahray Thompson, and advocated for Mr. Thompson's death. As a prosecutor in Mr. Thompson's case, Judge Nastoff obtained knowledge of Mr. Thompson's family, which included Mr. Davis and some of his witnesses. Further, Judge Nastoff had already argued in favor of sentencing Mr. Davis's nephew to death, and believed that Mr. Thompson was a liar. (Petition, ECF 6, PageID 8693-95.) In fact, "[d]uring that prosecution he heard and cross examined some of the very same mitigation evidence that Davis presented in his case. It would be difficult, if not impossible, to put aside Judge Nastoff's prior opinions about the veracity and strength of the mitigation." (PC Ex. D, Aff. of Diane Menashe, ECF 4-46, PageID 6278-79.) Judge Nastoff should have been recused from sentencing Mr. Davis. Judge Nastoff had personally pursued a death sentence for a member of Mr. Davis's family. He should not have been deciding Mr. Davis's fate. (*Id.*)

The Magistrate Judge also found that if the error was not structural, then there was no evidence of prejudice. The Magistrate Judge based this conclusion on the denial of an affidavit of disqualification in *In re Disqualification of Nastoff*, 983 N.E.2d 354 (Ohio 2012), which "while not binding on this court, is instructive—the court found no allegations of actual bias or prejudice on the part of Judge Nastoff." (ECF 51, PageID 9678.) That denial, however, was based on entirely different evidence than what Mr. Davis presented in his post-conviction petition concerning the judge's participating in his second resentencing hearing. (Traverse, ECF

29, PageID 9250-51.) In addition, the denial was about Judge Nastoff's capability to preside over Mr. Davis's post-conviction petition, not about the second resentencing itself. *Nastoff*, 983 N.E.2d at 355 ("Judge Nastoff's disqualification from postconviction proceedings is not required merely because Gatterdam has raised questions about the judge's impartiality in the underlying criminal case.").

The affidavit for disqualification in that case was not even presented here, so it is hard to see its relevance. That opinion did not consider, for example, the reasoning of Diane Menashe, who stated that during that prosecution of Mr. Thompson, Judge Nastoff "heard and cross examined some of the very same mitigation evidence that Davis presented in his case. It would be difficult, if not impossible, to put aside Judge Nastoff's prior opinions about the veracity and strength of the mitigation." (PC Ex. D, Aff. of Diane Menashe, ECF 4-46, PageID 6278-79.) Absent counsel's deficient performance, there is a reasonable probability that Mr. Davis would not have been sentenced to death by the three-judge panel.

Mr. Davis should be granted habeas corpus relief because he was denied effective assistance of counsel during his second resentencing when counsel failed investigate and seek recusal of biased judges in violation of Mr. Davis's constitutional rights.

## NINTH GROUND FOR RELIEF:

**EXECUTING MR. DAVIS AFTER MORE THAN THIRTY YEARS ON DEATH ROW CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A.    INTRODUCTION

Mr. Davis's rights as guaranteed under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution are violated by pursuing his execution following thirty-six years and counting on death row. The delay in Mr. Davis's execution is attributable to the multiple

state-court errors resulting in two resentencing hearings thus far. Accordingly, executing Mr.

Davis after his lengthy stay on death row constitutes cruel and unusual punishment, and violates

evolving standards of decency. *See Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J.,

respecting the denial of certiorari).

### B. OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Ninth Ground for

Relief should be dismissed.

The Magistrate Judge agreed with the Warden that "there is not a clearly established

federal legal principle that delay in carrying out death sentence is cruel and unusual under the

Eighth Amendment." (ECF 51, PageID 9679-80 (citing Return of Writ, ECF 17, PageID 9060).)

In particular, the Magistrate Judge noted that Mr. Davis relied on dissents from denials of

certiorari, among other sources, and that "[d]issents, no matter how eloquent and continuous, do

not create constitutional law." (*Id.*) Mr. Davis quoted those dissents as perhaps the best

synthesis of federal law on the subject, but they consistently rely on clearly established federal

law, as determined by the United States Supreme Court, as required by § 2254(d)(1).

A long line of United States Supreme Court opinions supports Mr. Davis's request for

relief. More than a century ago, the Court described as "horrible" the "feelings" that accompany

uncertainty about whether, or when, the execution will take place. *In re Medley,* 134 U.S. 160,

172 (1890); *see also Baze v. Rees,* 553 U.S. 35, 81 (2008) (Stevens, J., concurring) (noting that

"time for a dispassionate, impartial comparison of the enormous costs that death penalty

litigation imposes on society with the benefits that it produces has surely arrived.") ; *Furman v.

Georgia,* 408 U.S. 238, 288 (1972) (*per curiam*) (Brennan, J., concurring) ("[T]he prospect of

pending execution exacts a frightful toll during the inevitable long wait between the imposition

of sentence and the actual infliction of death."); *id.* at 312 (White, J., concurring) ("A penalty with such negligible returns to the State would be patently excessive and cruel and unusual punishment violative of the Eighth Amendment.").  It is therefore appropriate to conclude that a punishment of death after significant delay is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia,* 428 U.S. 153, 183 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.).

More broadly, Mr. Davis cited clearly established federal law that the Eighth Amendment prohibition on cruel and unusual punishment draws the constitutional line of acceptable punishments at "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958);  (Traverse, ECF 29, PageID 9256.) These evolving standards of decency of what constitutes cruel and unusual punishment are also informed by international norms, *Roper v. Simmons*, 543 U.S. 551, 578 (2005), which have condemned lengthy delays in carrying out a death sentence as inhumane.

Finally, Mr. Davis objects to the Magistrate Judge's conclusion that even though the U.S. Supreme Court characterized such delay as "horrible," *In re Medley*, 134 U.S. at 172, "that horribleness does not by itself violate the Eighth Amendment."  (ECF 51, PageID 9680.)  As noted in his Traverse, Mr. Davis has, so far, received seven execution warrants for his death to occur on a date certain during his time on death row.  (ECF 29, PageID 9255.)   The cycle of preparing to die on a certain day, then receiving a reprieve, only to face yet another execution date, is so gratuitous as to violate the Eighth Amendment. *See Gregg,* 428 U.S. at 177, 182-83 (joint opinion of Stewart, Powell, and Stevens, JJ.); *Furman*, 408 U.S. at 312 (White, J., concurring) (noting that when the death penalty ceases to further the social purposes of retribution and deterrence, "its imposition would then be the pointless and needless extinction of

life" and that the death penalty "would be patently excessive and cruel and unusual punishment violative of the Eighth Amendment."). The extraordinary delay in Mr. Davis's case is especially cruel when "he has experienced that delay because of the State's own faulty procedures and not because of frivolous appeals on his own part." *See Elledge v. Florida*, 525 U.S. 944 (1998) (Breyer, J., dissenting from denial of certiorari). As noted in the Traverse, executing Mr. Davis after such lengthy delays, which are not attributable to him but rather due to errors by the trial court, constitutes "cruel, inhuman or degrading treatment or punishment" and violates norms of international law; thus it is contrary to evolving standards of decency. (ECF 29, PageID 9256-57.)

Mr. Davis should be granted habeas corpus relief because executing him after more than thirty years on death row constitutes cruel and unusual punishment in violation of his constitutional rights.

## TENTH GROUND FOR RELIEF:

**THE STATE OBTAINED DAVIS'S CONVICTION VIA UNNECESSARILY SUGGESTIVE PROCEDURES AND UNRELIABLE IDENTIFICATIONS IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A.    INTRODUCTION

The circumstances relevant to several witnesses' identifications of Mr. Davis, including their lack of prior familiarity with Mr. Davis, their failure to describe almost any physical characteristics of the shooter and the inaccuracies in the few descriptions they did provide, and the highly suggestive photograph of Mr. Davis with the victim that police showed them proves that their identifications were constitutionally unreliable. Showing an eyewitness a single photograph of an alleged suspect, particularly when no emergency or exigent circumstances exist, is an unnecessarily suggestive confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 109

(1977).  Because Mr. Davis was prejudiced by the suggestive identification procedures and unreliable identifications used in his case, his conviction must be reversed.

### B.    OBJECTIONS TO PROCEDURAL DEFAULT AND MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Tenth Ground for Relief should be dismissed.

Mr. Davis objects to the Magistrate Judge recommendation to deny the claim as procedurally defaulted.  The Magistrate Judge noted that "Davis argues that the last reasoned state court decision was *Davis VI*, in which the Twelfth District held that, because the claim did not require evidence *dehors* the record, Davis's failure to raise it on initial direct appeal meant that it was barred by *res judicata* on postconviction." (ECF 51, PageID 9681 (citing *Davis VI*, No. CA95-07-124, 1996 WL 551432, at *9 (Ohio Ct. App. Sept. 30, 1996)).)  Accordingly, the Magistrate Judge concluded that "*res judicata* is an adequate and independent state ground upon which to find a claim procedurally defaulted and precluded from federal habeas review."  (*Id.* (citing *Durr v. Mitchell*, 487 F.3d 423, 431-32 (6th Cir. 2007)).)  Similarly, the Magistrate Judge also recommended denying Mr. Davis's claim because "an identical claim was presented and rejected in his first habeas corpus petition before this Court" also on the basis of procedural default.  (ECF 51, PageID 9682 (citing Return of Writ, ECF 17, PageID 9061 &*Davis IX*, ECF 16-1, PageID 8914-22).)

If this Court finds that Mr. Davis could have presented this claim on direct appeal, any default is excused by ineffective assistance of appellate counsel.  Appellate counsel failed to raise or properly litigate this critical federal constitutional issue that was apparent from the record, that should have been evident to a competent appellate attorney, and for which there existed no reasonable strategic reason to not raise this issue.  *See Mapes v. Coyle*, 171 F.3d 408,

429 (6th Cir. 1999); *see also Franklin v. Anderson*, 434 F.3d 412, 430-31 (6th Cir. 2006) (failure to raise strong claim on appeal was prejudicial under *Strickland*).

The Magistrate Judge noted that Judge Graham in that earlier case declined to excuse the procedural default on the basis of appellate counsel's deficient failure to raise the claim, and that "Davis failed to articulate what objective external factor impeded appellate counsel from raising it on direct appeal (as is required to excuse the procedural default of the underlying claim)." (ECF 51, PageID 9682 (citing *Davis IX*, ECF 16-1, PageID 8917-20 (citing *Murray v. Carrier*, 477 U.S. 478 (1986))).)

The lack of an external impediment is not an appropriate basis on which to deny Mr. Davis's assertion of cause to excuse procedural default. *Carrier* clearly held that "[i]neffective assistance of counsel, then, is cause for a procedural default." 477 U.S. at 488. The requirement for an external impediment only exists "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*[.]" *Id.*

Here, Mr. Davis has alleged ineffective assistance of counsel, and that claim was, as required by *Carrier*, 477 U.S. at 489, "presented to the state courts as an independent claim" as a prerequisite "before it may be used to establish cause for a procedural default." In *Davis VIII*, Mr. Davis fairly presented his claim to the Ohio Supreme Court. (*Davis VIII*, Appellant's Br., ECF 4-27, PageID 2942.) The court did not address on the merits whether the unnecessarily suggestive procedures and unreliable identifications in Mr. Davis's case violated his constitutional rights. *State v. Davis*, 714 N.E.2d 384, 385-86 (Ohio 1999) (*Davis VIII*). Rather, the court held that the application to reopen was untimely. The Supreme Court of Ohio's treatment of the timeliness of Applications to Reopen in capital cases has been "erratic" and has

"fluctuated" markedly since 2000. *Franklin*, 434 F.3d at 420-21 (listing cases and inconsistent dispositions). Accordingly, the Sixth Circuit has concluded that the ninety-day time limit is not an "actually enforced" "state procedural sanction." *Id.* at 420 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). In turn, therefore, the Ohio rule was found "not an adequate and independent state rule" that is regularly established and followed such that it would preclude consideration of an IAAC claim on habeas review. *Id.* at 421.

Despite the conclusion in post-*Franklin* case law that Rule 26(B) was firmly established and regularly followed by June 2006, there is significant disparity between the treatment of applications to reopen under Rule 26(B) brought by capital litigants compared to non-capital litigants, which results in the Rule's continued inconsistent application. Non-capital litigants are routinely granted reopening of their direct appeal proceedings, but reopening in a capital case in all but unheard of despite meritorious claims for reopening being raised. Thus, Rule 26(B) still is not applied with the regularity and evenhandedness necessary for its use as a procedural bar.

The Magistrate Judge also recommended denying the claim on the basis that Judge Graham found no prejudice. Judge Graham held that that the problematic testimony by Mr. Ferguson and Ms. Massey "does not at all undermine the credibility of the other two eyewitnesses who identified the petitioner as the person who shot Suzette Butler." (ECF 51, PageID 9682 (citing *Davis IX*, ECF 16-1, PageID 8920).) Judge Graham noted that the Ohio Supreme Court found "substantial" evidence of Mr. Davis's guilt, and the lack of "any new evidence even tending to establish his innocence." (*Davis IX*, ECF 16-1, PageID 8921-22.)[1]

---

[1] While Judge Graham characterized the Ohio Supreme Court opinion as describing "substantial" evidence of guilt, the Ohio Supreme Court did not make such a characterization. (*Davis IX*, ECF 16-1, PageID 8921-22.) Rather, the Ohio Supreme Court held that "there is *sufficient* evidence in the record to support the conviction." *Davis II*, 528 N.E.2d at 931 (emphasis added).

But at the same time, and in direct contradiction, the Magistrate Judge acknowledged the centrality of the eyewitness testimony to the State's case: "The evidence upon which the State relied to convict Davis was almost exclusively the eyewitness testimony of Anthony Ferguson (before the grand jury), Reginald Denmark, Cozette Massey, and Shelba Robertson[.]" (ECF 51, PageID 9680-81.) The Magistrate Judge also recounted some of the problematic issues with the identifications: "Ferguson and Massey's identifications of Davis did not come from a photo array or live lineup. Rather, investigators showed them a single photo of Davis with Butler[.]" (*Id.*; *see also id.* at PageID 9590-91.)

While Judge Graham relied on the credibility of the other two witnesses, their testimony was similarly problematic. (*See* Nineteenth Ground for Relief, Petition, ECF 6, PageID 8735-38.) For example, Mr. Denmark testified that he did not see Mr. Ferguson at the scene of the killing, (Trial Tr., ECF 5-2, PageID 7373-7374, 7382-7383, 7424), nor did Mr. Ferguson see Mr. Denmark, even though they would have had to have been standing at the same location. (Trial Tr., ECF 5-3, PageID 7499.) In addition, according to the timeline, Mr. Denmark recounted at trial, he would not have left his apartment in time to witness the shooting. (Petition, ECF 6, PageID 8735-36 (citing Trial Tr., ECF 5-3, PageID 7450.).) Ms. Robertson also did not see Ms. Massey or Mr. Ferguson. In fact, she did not see anyone standing in front of the laundry building, (Trial Tr. 340, ECF 5-3, PageID 7569), where Ms. Masssey claimed to have been, (Trial Tr. 161, ECF 5-2, PageID 7391).

The Magistrate Judge also found no prejudice on the basis that in Mr. Davis's original direct appeal, the Supreme Court of Ohio discussed Mr. Denmark and Ms. Massey's testimony and "conclude[d] that there is sufficient evidence in the record to support the conviction." (ECF 51, PageID 9681-82 (citing *Davis II*, 528 N.E.2d 925, 931 (Ohio 1988).) On direct appeal, Mr.

Davis briefly mentioned that Mr. Ferguson did not see Ms. Massey or Mr. Denmark at the scene—or vice versa—but made no argument about the identification procedures or the inconsistencies with Ms. Massey's descriptions to the police. (Appellant's Br., ECF 4-6, PageID 803-08.) Given that the court had not yet heard such arguments, the fact that the court found sufficient evidence is irrelevant to this claim.

If anything, the fact that the Ohio Supreme Court relied on Mr. Denmark and Ms. Massey to find sufficient evidence only underscores how critical they were to the prosecution's case, and how Mr. Davis was prejudiced by their unreliable testimony and the suggestive procedures used in his case. There is a reasonable probability that the outcome of Mr. Davis's trial and sentencing proceeding would have been different if the improperly suggestive and unreliable testimony had been excluded.

Mr. Davis should be granted habeas corpus relief based the violation of his constitutionally guaranteed right to be protected from the unnecessarily suggestive procedures and unreliable identifications underlying his conviction.


**ELEVENTH GROUND FOR RELIEF:**

**THE STATE COURTS VIOLATED MR. DAVIS'S RIGHTS UNDER THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE FEDERAL AND STATE CONSTITUTIONS BOTH TIMES THEY RESENTENCED HIM TO DEATH.**

### A.     INTRODUCTION

The state courts violated the Fifth, Eighth, and Fourteenth Amendments of the Constitution during Mr. Davis's resentencing hearing by finding him eligible for death and resentencing him to death, thereby departing from the law in effect under *Penix* at the time he was convicted, and also in not precluding the death penalty by enforcing the provisions of Ohio

Rev. Code § 2929.03(C)(2)(a), which was in existence at the time of Mr. Davis's second resentencing in 2009.

### B. OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Eleventh Ground for Relief should be dismissed.

The Magistrate Judge assumed but did not decide that *de novo* review was proper. (ECF 51, PageID 9696.) AEPDA deference does not apply to this claim for the reasons stated in Mr. Davis's Traverse. (Traverse, ECF 29, PageID 9271-72.) In short, the Sixth Circuit held, "we note that this ruling is not a decision on the merits and, therefore, that the AEDPA standard of review set out in § 2254 does not apply to this claim." *Davis X*, 475 F.3d 761, 779 (6th Cir. 2007). On appeal from Mr. Davis's second resentencing, the Ohio Supreme Court declined to revisit its original holding. Accordingly, the same conclusion—that AEPDA does not apply—is compelled here.

The Magistrate Judge acknowledged the Sixth Circuit "cast doubt on the continued validity of a jury waiver twenty-five years after the initial trial." (ECF 51, PageID 9695-96 (citing *Davis X*, 475 F.3d at 780-81 & *State v.McGee,* 715 N.E.2d 1175, 1178 (Ohio Ct. App. 1998)).) Nonetheless the Magistrate Judge recommended denying Mr. Davis's equal protection claim because the next portion of *Davis X* was "fatal" to his claim: "the opinion continued that *McGee* was 'not directly on point, because *Davis is not facing a new indictment*[.]'" (*Id.* at PageID 9696 (citing *Davis X*, 475 F.3d at 781& *McGee,* 715 N.E.2d at 1178) (emphasis added by Magistrate Judge).) Accordingly, the Magistrate Judge found this distinction "a rational basis for treating Davis differently than McGee." (*Id.*)

If the Report and Recommendation had quoted the full sentence, it would reveal that the Sixth Circuit explicitly did not think this distinction provided a rational basis: "While not directly on point, because Davis is not facing a new indictment, the reasoning of the Ohio court in *McGee* should certainly inform the sentencing court's determination of the viability of Davis's jury waiver on remand." *Davis X*, 475 F.3d at 781. The Sixth Circuit noted that revoking the jury waiver on remand in *McGee* "was based on the fact that on remand, additional evidence would be introduced from both the prosecution and the defense, *as is likely to occur on remand of this case*." *Id.* (emphasis added). Indeed, as predicted, new evidence was introduced at Mr. Davis's second resentencing. In other words, the Sixth Circuit found no rational basis for treating Mr. McGee and Mr. Davis differently. Despite Sixth Circuit's use of "certainly," the Report and Recommendation characterizes this language as "mere uncertainty" that cannot support an equal protection claim. (ECF 51, PageID 9696.)

While the Sixth Circuit affirmed Judge Graham in finding an arguably rational distinction for holding Mr. Davis to his waiver in the first resentencing, the decision also established why the distinction was not rational in his second resentencing. If the only legal basis for differentiating defendants sentenced by jury versus those sentenced by three-judge panels is that a three-judge panel can be reassembled, then this differentiation has no rational basis in cases where the panel cannot be reassembled. *Davis X*, 475 F.3d at 780 (finding the differentiation "arguably rational" on the ground that "the three judges who comprised the original panel in the petitioner's case were still available to resentence the petitioner.") (quotation omitted). There is no rationale, therefore, where Mr. Davis was last resentenced by an entirely different three-judge panel, none of whom had participated in his earlier sentencing or guilt phase. Even before the Sixth Circuit decision, and even before Mr. Davis's first resentencing, the trial court was

counseled against subjecting him to this treatment on remand. (*See* First Ground for Relief, *supra* (quoting *Davis II*, 528 N.E.2d 925, 939 (Ohio 1988)(Holmes, J., concurring in part and dissenting in part) (finding no authority to support the majority "in remanding the action to that trial court for a resentencing hearing at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence." (internal quotation marks omitted)).)

Regarding Mr. Davis's *ex post facto* argument, the Magistrate Judge noted that Judge Graham explained "that the change in the statute to allow for a different three-judge panel was procedural, rather than substantive, in nature, and a procedural change, no matter how significant, cannot form the basis of an *ex post facto* claim." (ECF 51, PageID 9694 (citing *Davis IX*, ECF 16-2, PageID 8991-93.).) He also noted that the state courts held that "since the statute allowed for a death sentence upon resentencing, just as in the original trial, there was no greater punishment possible, and thus was procedural in nature." (*Id*. (citing *Davis XI*, No. CA2009-10-263, 2011 WL 646404, at ¶ 62 (Ohio Ct. Ap. Feb. 22, 2011), *aff'd Davis XIV*, 9 N.E.3d 1031, 1043 (Ohio 2014)).)

As explained in his Traverse (ECF 29, PageID 9272-73), the Ohio courts' decision was contrary to clearly established federal law when it held that "R.C. 2929.06(B) does not fall within any of the four categories of ex post facto laws identified in *Calder [v. Bull*, 3 U.S. 386, 390 (1798)]. Hence, its application in this case does not violate the Ex Post Facto Clause." *Davis XIV*, 9 N.E. at 1045 (brackets original) (quoting *State v. White*, 972 N.E.2d 534, 549 (Ohio 2012)). Under the third *Calder* category, "the *Ex Post Facto Clause* forbids the [government] to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range." *Peugh v. United States*, 569 U.S. 530, 550 (2013) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505 (1995)).

70

Here, the amendments to Ohio Rev. Code § 2929.06 increased the severity of Mr. Davis's sentence. Under the law at the time of the crime, death penalty was not a "possible alternative sentence[]" for Mr. Davis on remand. *Cf. Dobbert v. Florida*, 432 U.S. 282, 300 (1977). Now, however, Mr. Davis finds himself again sentenced to death under the new law. This change in available penalties occurred after the crime in question was committed, after Mr. Davis chose to waive a jury, after he was convicted, and after he was originally sentenced. The Ohio Legislature increased the potential punishment to death where it was not previously available, and this substantive, retroactive change is unconstitutional under *Calder's* third category.

The Magistrate Judge accused Mr. Davis of "ignor[ing] the conclusion in *White* that '[a]pplying R.C. 2929.06(B) to a defendant whose case was remanded for resentencing after that provision became law is analogous to extending an unexpired statute of limitations.'" (ECF 51, PageID 9697 (citing *White,* 972 N.E.2d at 549 ).) The Magistrate Judge concluded that "[a]s *White* was not reversed or modified by the United States Supreme Court in any case, the decision in *Davis XIV* could not have been 'clearly established federal law.'" (*Id.*)

"Clearly established Federal law" has been defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Mr. Davis has alleged that the retroactive application of Ohio Rev. Code § 2929.06(B) violates Article I Section 10 of the U.S. Constitution, *see Calder v. Bull*, 3 U.S. 386 (1798); *In Re Medley*, 134 U.S. 160 (1890); *Lindsey v. Washington*, 301 U.S. 397 (1937); *Carmell v. Texas*, 529 U.S. 513 (2000), and the Fifth, Eighth and Fourteenth Amendments, *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). Accordingly, the Magistrate Judge's citation to the state court decision in *White* as the standard for "clearly established federal law" is inappropriate under 28 U.S.C. § 2254(d)(1).

71

The retroactive application of the amendments to Ohio Rev. Code § 2929.06 violated Due Process and Equal Protection under the Fifth and Fourteenth Amendments. Mr. Davis should be granted habeas corpus relief because the state courts violated his constitutional rights when they resentenced him to death.

## TWELFTH GROUND FOR RELIEF:

**MR. DAVIS WAS NOT PERMITTED TO INSPECT THE GRAND JURY TESTIMONY IN HIS CASE, IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

### A. INTRODUCTION

At his trial, Mr. Davis filed a motion to dismiss the indictment and allow him to inspect the grand jury transcript on the basis that the indictment was not based on probable cause—and that it was based on illegal and incompetent evidence. The trial court denied the motion.

In Ohio, a defendant may inspect grand jury transcripts when the ends of justice require it and he shows a particularized need for disclosure exists which outweighs the need for secrecy. *State v. Greer*, 420 N.E.2d 982, 986 (1981). A "particularized need" has been described as "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial . . ." *State v. Sellards*, 478 N.E.2d 781, 785 (1985). Here, the denial of his motion deprived Mr. Davis of a fair trial.

### B. OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Twelfth Ground for Relief should be dismissed.

The Magistrate Judge explicitly declined to address whether AEDPA deference was appropriate. (ECF 51, PageID 9698.) For the reasons stated in Mr. Davis's Traverse, this Court should address this claim *de novo*. (Traverse, ECF 29, PageID 9279-81.) First, the ruling of the Supreme Court of Ohio is based entirely on its interpretation of state law. *Davis II*, 528 N.E.2d

925, 929 (Ohio 1988) (citing *Greer* 420 N.E.2d 982 & *Sellards*, 478 N.E.2d at 785). Thus, under

28 U.S.C. § 2254(d)(1), there is no adjudication on the merits of the federal constitutional claims

raised in state courts. Second, the Ohio Supreme Court unreasonably decided that "[n]othing in

the record indicates that appellant failed to receive a fair trial because he was not provided with

the grand jury testimony." *Davis II*, 528 N.E.2d at 930. The Ohio Supreme Court's ruling was

contrary to the constitutional requirement of allowing "a meaningful opportunity to present a

complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v.

Trombetta*, 467 U.S. 479, 485 (1984)); *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987).

The Magistrate Judge recommended dismissing this claim as "speculative" on the basis

that Mr. Davis failed to "identify what evidence he thinks is contained in the transcripts, much

less how the outcome of his trial and sentencings would have been different if he had had access

to the transcripts." (ECF 51, PageID 9698-99 (citing Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556

U.S. 662, 678-79 (2009); &the Rules Governing § 2254 Cases).)

To the contrary, Mr. Davis demonstrated a particularized need to access the grand jury

testimony in light of various inconsistencies by eyewitnesses. (*See, e.g.,* Traverse, ECF 29,

PageID 9319-20; Motion for Discovery, ECF 38, PageID 9461-62.) For instance, weeks after the

shooting, Cozette Massey was alleged to have "identified" Davis as the shooter when shown a

highly prejudicial photograph of Davis and the victim. (Trial Tr., ECF 5-2, PageID 7385-86.)

Before seeing this picture, Massey did not independently describe the shooter to the police. (*Id.*

at PageID 7384.) Additionally, there were no compelling reasons for the trial court to refuse

Davis's request for a transcript of the grand jury proceedings, and none articulated to refuse the

request all these years later. (ECF 38, PageID 9461-62.) For example, there is no concern that

Davis could suborn perjury or tamper with the witnesses, nor was it likely at the time of the proceedings, when he was incarcerated. *See Greer*, 420 N.E.2d at 989.

The court's refusal to permit Mr. Davis to inspect the grand jury testimony in his case constitutes a violation of his rights by depriving him of a fair trial and undermining confidence in the outcome of his trial. Mr. Davis should be granted habeas corpus relief based the violation of his constitutionally guaranteed right to present a defense, including his right to inspect the grand jury testimony in his case upon the showing of a particularized need.

## THIRTEENTH GROUND FOR RELIEF:

**THE SELECTION OF THE GRAND JURY FOREPERSON IN MR. DAVIS'S CASE VIOLATED THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

### A. INTRODUCTION

Mr. Davis alleges two constitutional violations related to the selection of the grand jury foreperson in his case. First, the process for selecting grand jury forepersons is susceptible to abuse because state judges choose the foreperson. Ohio Rev. Code § 2939.02 (specifically permitting the presiding criminal judge to select the foreperson outside of the regular and random process for selecting other grand jury members). Under Ohio Rev. Code § 2939.02, the judge may choose a foreperson whose name need not be included in the grand jury venire.

Second, the underrepresentation of African-Americans and women as grand jury forepersons in Hamilton County, an adjoining county to Butler County, was a statistically significant over a period of eighteen years. Of the eighty-seven Hamilton County grand juries that returned capital indictments from 1982 through 1998, there were only four African-American and only nineteen women grand jury forepersons. African-Americans were underrepresented by seventy-five percent; or, under the standard deviation analysis, by 6.19

74

standard deviations. Women were underrepresented by fifty-eight percent; or, under the standard deviation analysis, by 6.99 standard deviations.

Based upon the evidence regarding Hamilton County, counsel have reason to believe that the same improper procedures resulted in similar discrimination in Butler County, an adjoining county, where Mr. Davis was tried.

### B.    OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Thirteenth Ground for Relief should be dismissed.

The Magistrate Judge notes that he previously rejected a claim based on racially discriminatory grand jury foreperson selection in *Hughbanks v. Hudson*, on the basis that "the Supreme Court of Ohio's adjudication [against Hughbanks] was not 'decision that was contrary to, or involved an unreasonable application of, clearly established federal law.'" No. 1:07-cv-111, 2018 WL 9597457, at *35-36 (S.D. Ohio Sept. 7, 2018)(Merz, M.J.) (quoting 28 U.S.C. § 2254(d)(1)).

The Report and Recommendation applied the wrong standard of review. AEDPA deference does not apply to this claim because there was no adjudication on the merits of Mr. Davis's constitutional claims by the state court. In *Davis VIII*, Mr. Davis fairly presented his claim to the Ohio Supreme Court. (*Davis VIII*, Appellant's Br., ECF 4-27, PageID 2965.) The court did not address on the merits whether the selection of the grand jury foreperson in Mr. Davis's case violated his constitutional rights. *Davis VIII*, 714 N.E.2d 384, 385-86 (Ohio 1999). Rather, the court held that the application to reopen was untimely. If this Court finds that this claim is defaulted, Mr. Davis can demonstrate both cause and prejudice for any such default. (Traverse, ECF 29, PageID 9283-84.)

The Magistrate Judge also referred to Mr. Davis's allegation that Butler County adopted Hamilton County's discriminatory grand jury foreperson selection policy as "speculation[.]" (ECF 51, PageID 9699-700.)

As the judge's power to choose a foreperson whose name need not be included in the grand jury venire is statewide practice, *see* Ohio Rev. Code § 2939.02, there is no question that it applied in Butler County just as in Hamilton County.  Accordingly, this practice violated Mr. Davis's rights to due process, equal protection, effective assistance of counsel, a jury trial (and a jury waiver), a fair proceeding, a fair cross-section, and to be free from cruel and unusual punishment (e.g., reliable sentencing).  *See Campbell v. Louisiana*, 523 U.S. 392, 396-97 (1998); *Rose v. Mitchell*, 443 U.S. 545, 566 (1979); *Casteneda v. Partida*, 430 U.S. 482, 497 (1977); *Alexander v. Louisiana*, 405 U.S. 625, 627-32 (l972); *Jefferson v. Morgan*, 962 F.2d 1185, 1189 (6th Cir. 1992).

The question is whether similar standard deviations in Butler County show statistically significant underrepresentations, to Mr. Davis's prejudice.  *See Campbell*, 523 U.S. at 395; *Casteneda*, 430 U.S. at 494-96 n.17; *Whitus v. Georgia*, 385 U.S. 545 (1967); *Jefferson*, 962 F.2d at 1189-90 (granting relief where underrepresentation of African-Americans was by six standard deviations).  While the Magistrate Judge faulted Mr. Davis for failing to provide more facts about the level of deviations in Butler County, Mr. Davis had requested discovery for records of grand-jury forepersons in Butler County as well as a records deposition of the Butler County Jury Commissioner regarding the grand jury selection process (Traverse, ECF 29, PageID 9283; Motion for Discovery, ECF 38, PageID 9464-66.) Such discovery would prove the how racially discriminatory this practice was in Butler County.  Even without such records, however, this Court can assume that this arbitrary practice was susceptible to abuse.  *Rose*, 443

76

U.S. at 566 (assuming process is susceptible to abuse where judges choose grand jury foreperson).

Mr. Davis should be granted habeas corpus relief based on the selection of the grand jury foreperson in violation of his constitutional rights.

## FOURTEENTH GROUND FOR RELIEF:

**MR. DAVIS WAS NOT ABLE TO INTRODUCE THE TESTIMONY OF DEFENSE WITNESS ELBERT AVERY. THE TRIAL COURT'S PROHIBITION OF THIS WITNESS'S TESTIMONY VIOLATED THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A. INTRODUCTION

During the trial phase, defense counsel called Anthony Ferguson to testify. Mr. Ferguson testified about what he witnessed on the night of the shooting. He testified that he witnessed Mr. Davis shoot the victim in this case. (Trial Tr., ECF 5-3, PageID 7495.) Trial counsel then called Elbert Avery to impeach the identification by Ferguson. The trial court sustained the prosecutor's objection to this attempt to impeach Ferguson. (*Id.*, PageID 7513-14.) Trial counsel proffered Mr. Avery's testimony outside the presence of the three judge panel as follows: Mr. Avery had seen Ferguson in an excited, agitated state near Ms. Butler's body and asked Ferguson what he had seen; Mr. Ferguson said that he heard a shot, thought someone was shooting at him, and that he did not see the shooter. (*Id.*, PageID 7515-16.)

Through Mr. Avery's testimony, defense counsel was attempting to impeach Ferguson with the use of Ferguson's prior inconsistent statement. By prohibiting Mr. Avery's testimony, the trial court violated Mr. Davis's constitutional rights to confront witnesses against him, present a defense, and produce witnesses on his behalf.

## B.     OBJECTIONS TO PROCEDURAL DEFAULT ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Fourteenth Ground for Relief should be dismissed.

The Magistrate Judge recommended dismissing the claim on the basis that "the Twelfth District found that the claim was barred by *res judicata* and did not address its merits." (ECF 51, PageID 9700 (citing Traverse, ECF 29, PageID 9287 (citing *Davis VI*, No. CA95-07-124, 1996 WL 551432, at *9 (Ohio Ct. App. Sept. 30, 1996)).) Ohio's post-conviction procedure is inadequate as described in the Twenty First Ground for Relief. (Petition, ECF 6, PageID 8747-52.) Furthermore, if this Court finds that Mr. Davis could have presented this claim on direct appeal, any default is excused by ineffective assistance of appellate counsel. (Traverse, ECF 29, PageID 9288.)

The Magistrate Judge then recommended rejecting Mr. Davis's argument that appellate counsel's ineffective assistance provided cause for failing to raise the issue on direct appeal. The Magistrate Judge noted that Rule 26(B) was "was firmly established and regularly followed" by the time of Mr. Davis's latest direct appeal, and that while Mr. Davis moved under Rule 26(B) to reopen his direct appeal in 1998, he did not raise this claim in the application. (ECF 51, PageID 9700-01 (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010)).)

Despite the conclusion in more recent case law that Rule 26(B) was firmly established and regularly followed by June 2006, there is significant disparity between the treatment of applications to reopen under Rule 26(B) brought by capital litigants compared to non-capital litigants, which results in the Rule's inconsistent application. Non-capital litigants are routinely granted reopening of their direct appeal proceedings, but reopening in a capital case in all but

unheard of despite meritorious claims for reopening being raised. Thus, Rule 26(B) is not applied with the regularity and evenhandedness necessary for its use as a procedural bar.

### C. OBJECTIONS TO MERITS ANALYSIS

The Magistrate Judge also recommended denying the claim on the merits, on the basis that "there was more than sufficient evidence to convict Davis for the murder of Butler, even if Ferguson's testimony were to be discounted." (ECF 51, PageID 9701.) This recommendation contradicts the Magistrate Judge's earlier acknowledgment that "[t]he evidence upon which the State relied to convict Davis was almost exclusively the eyewitness testimony of Anthony Ferguson (before the grand jury),[2] Reginald Denmark, Cozette Massey, and Shelba Robertson." (*Id.* at PageID 9680.) In fact, at a preliminary hearing, Mr. Ferguson was the only civilian who testified on behalf of the State. (Preliminary Hearing Tr., ECF 5-1, PageID 7127-7152). Moreover, Mr. Davis has laid out the reasons that Ms. Massey and Mr. Denmark in particular were suspect witnesses. (*See, e.g.,* Traverse, ECF 29, PageID 9319-20.) Accordingly, preventing the three-judge panel from hearing Mr. Avery's testimony that clearly undermined Mr. Ferguson's credibility denied Mr. Davis the right to confront the witness, due process, and a fair trial. Mr. Davis was prejudiced and his conviction and sentence must be reversed.

The Magistrate Judge also found that requiring Mr. Davis to submit Mr. Avery's testimony as a proffer "was not completely prejudicial" since it prevented "Avery being subject to cross-examination that could have damaged *Avery's* credibility." (ECF 51, PageID 9701.) (Emphasis original.) Since there is no indication that Mr. Avery had credibility issues, this

---

[2] Defense counsel called Mr. Ferguson to testify at trial, even though he implicated Mr. Davis in his testimony. (Trial Tr., ECF 5-3, PageID 7495.) Judge Graham indicated that Mr. Ferguson did not testify before the grand jury, but Mr. Davis has not been granted access to grand jury transcripts. (ECF 16-2, PageID 8960.)

finding is pure speculation. Indeed, it is equally likely that Mr. Avery's in-person testimony would have bolstered his credibility before the panel. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (stating, in a benefits-termination case, that "where credibility and veracity are at issue . . . written submissions are a wholly unsatisfactory basis for decision").

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). In fact, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (citing *e.g.*, *Washington v. Texas*, 388 U.S. 14, 19 (1967)). Defendants have "the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). To exclude testimony relevant and vital to the defense is a violation of the Sixth and Fourteenth Amendments. *See generally Washington*, 388 U.S. 14.

Mr. Davis should be granted habeas corpus relief based the violation of his constitutionally guaranteed right to introduce Elbert Avery's witness testimony in Mr. Davis's defense.

## FIFTEENTH GROUND FOR RELIEF:

**THE SPECIFICATION USED AT MR. DAVIS'S CAPITAL TRIAL TO MAKE HIM DEATH-ELIGIBLE WAS INVALID, IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A. INTRODUCTION

Mr. Davis was charged in a two-count indictment. The first count charged aggravated murder and carried one death penalty specification under Ohio Revised Code § 2929.04(A)(5), having been convicted of a prior purposeful murder. The second count charged Mr. Davis with having a weapon under disability pursuant to Ohio Revised Code § 2923.13.

80

The specification of a prior purposeful killing referred to the killing of Mr. Davis's wife, Ernestine, in 1970.  This killing was not purposeful.  Accordingly, it should not have served as a basis to make him death-eligible.

### B.    OBJECTIONS TO PROCUDURAL DEFAULT ANALYSIS

The Magistrate Judge did not recommend denying the claim on the basis of procedural default, although he noted that "Judge Graham relied in part on the Twelfth District's *res judicata* ruling to deny the claim in Davis's first habeas petition."  (ECF 51, PageID 9702 (citing *Davis IX*, ECF 16-2, PageID 8967-74).)

Judge Graham, however, explicitly *did not* deny the claim on the basis of *res judicata*.  To the contrary, Judge Graham correctly noted that Mr. Davis's claim was not procedurally defaulted:

> This Court concludes that, because this claim is based upon evidence outside the record in petitioner's aggravated murder trial, it was properly raised on postconviction. This claim was therefore fairly presented to the state courts, notwithstanding the fact that the state court of appeals declined to consider the merits of the claim.

(*Davis IX*, ECF 16-1, PageID 8924-25.)  Mr. Davis properly presented the substance of this claim in state post-conviction proceedings, since the Beard letter at issue "nowhere appears on the record of petitioner's trial for aggravated murder."  (*Id.*).  For the same reasons, this Court should again find this claim not procedurally defaulted and consider the claim on its merits.

### C.    OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Fifteenth Ground for Relief should be dismissed.

The Magistrate Judge recommended dismissing Mr. Davis's claim on the grounds that Mr. Davis plead guilty to second-degree murder, which required a finding of purposeful killing,

and that "the letter from Davis's neighbor cannot, by itself, render the conviction for second

degree murder unconstitutional."  (ECF 51, PageID 9702.)

Mr. Davis's guilty plea, however, came before Robert Jones Beard, a witness to the

killing of Mrs. Davis, wrote a letter to Mr. Davis's attorney in 1978 demonstrating that Mr.

Davis's actions towards Ernestine were a response to her aggressive and threatening behavior,

and not a "purposeful" killing. (*Davis V*, P.C. Petition, Ex. CC, ECF 4-19, PageID 2028-29).

This court has jurisdiction under 28 U.S.C. § 2254 to determine the validity of an earlier

conviction for which a petitioner is no longer in custody if that conviction was used to enhance

the penalty for an offense for which the petitioner is currently in custody and the petitioner

challenges the enhanced conviction.  *See Maleng v. Cook*, 490 U.S. 488, 492-93 (1989) (per

curiam); *see, e.g.*, *Young v. Vaughn*, 83 F.3d 72, 75 (3d Cir. 1996); *White v. Butterworth*, 70 F.3d

573 (11th Cir. 1995); *Brock v. Weston*, 31 F.3d 887, 890 (9th Cir. 1994); *but see Lackawanna

Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 405 (2001) (limiting collateral attacks on a prior

conviction—through a habeas motion directed at the enhanced sentence—to failure to appoint

counsel, but noting that "another exception to the general rule precluding habeas relief might be

available, although the circumstances of that case did not require us to resolve the issue").

An Ohio defendant can only be eligible for the death penalty if one of the statutory

specifications listed in Ohio Revised Code § 2929.04 is proved beyond a reasonable doubt.

(Traverse, ECF 29, PageID 9290-94.)  Under Ohio Revised Code § 2929.04(A)(5), an essential

element of the prior homicide used for the specification is that it was a purposeful killing.  This

essential element was lacking in the killing of Ernestine Davis.  Therefore, its use as a

specification to aggravated murder prejudiced Mr. Davis, and he is entitled to habeas relief.

Mr. Davis should be granted habeas corpus relief because the specification used at his capital trial to make him death-eligible was invalid, in violation of his constitutional rights.

## SIXTEENTH GROUND FOR RELIEF:

**MR. DAVIS'S COUNSEL WERE INEFFECTIVE FOR FAILING TO INVESTIGATE THE CIRCUMSTANCES SURROUNDING THE PRIOR HOMICIDE CHARGED IN THE CAPITAL SPECIFICATION TO THE AGGRAVATED MURDER CHARGE, IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A.    INTRODUCTION

Because Mr. Davis's counsel failed to thoroughly investigate the circumstance of the prior homicide conviction, they failed to discover evidence demonstrating that that killing was not purposeful, as required by the statute. (*Davis V*, P.C. Petition Ex. DD, ECF 4-19, PageID 2032.) Mr. Davis was denied the effective assistance of counsel at his capital trial and was prejudiced. Thus, his conviction and sentence must be reversed.

### B.    OBJECTIONS TO PROCUDURAL DEFAULT ANALYSIS

The Magistrate Judge noted that "the Twelfth District held that the claim was barred by *res judicata*," without explicitly recommending whether to deny relief on that basis. (ECF 51, PageID 9678-79.)

The Report and Recommendation failed to mention that this Court, in its previous habeas decision, correctly held that Mr. Davis's claim was not procedurally defaulted. The Twelfth District should not have barred the claim by *res judicata*, as Mr. Davis appropriately presented the substance of this outside-the-record claim in state post-conviction proceedings. This Court noted that the Beard letter at issue "was never made part of the record in petitioner's aggravated murder case." (*Davis IX*, ECF 16-1, Page ID 8934). In fact, counsel's failure to make the Beard letter part of the record is part of the facts underlying this very claim:

> Indeed, the crux of petitioner's twelfth claim alleging ineffective
> assistance of trial counsel is that this evidence, which existed in a
> separate criminal proceeding, should have been discovered by trial
> counsel in petitioner's aggravated murder trial had trial counsel
> rendered effective assistance to petitioner in that case.  Because
> this claim of ineffective assistance of counsel depends on evidence
> *dehors* the record, it was properly raised for the first time on
> postconviction relief . . . .  Accordingly, petitioner's [ineffective
> assistance] claim is not procedurally barred notwithstanding the
> fact that the state courts declined to consider the merits of that
> claim.

(*Id.*)  For the same reasons, this Court should again find this claim not procedurally defaulted and

consider the claim on its merits.

## C.    OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Sixteenth Ground

for Relief should be dismissed.

The Magistrate Judge recommended dismissing the claim on the merits, stating, "The

letter from Beard could not, by itself, have overcome the uncontested finding that Davis had

purposely killed Ernestine." (ECF 51, PageID 9679.)  Accordingly, he found that "[a]ny failure

to investigate the circumstances surrounding Davis's killing of Ernestine did not prejudice

Davis" as required by *Strickland*.  (*Id.*)

The *Strickland* prejudice standard requires "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." 466

U.S. 668, 694 (1984).  Furthermore, a court examining claims of ineffectiveness should

ultimately focus on the "fundamental fairness of the proceeding," as the *Strickland* test is meant

to prevent courts from producing unreliable, unjust results.  *Id.* at 696.

Defense counsel's failure to investigate Mr. Beard's evidence undermined confidence in

the outcome and called into question the fundamental fairness of the proceeding.  Counsel did

not make an informed decision to abandon an investigation or argument based on this evidence.

Rather, counsel did not pursue this issue merely because another attorney who had sought a new

trial on the basis of Mr. Beard's evidence "didn't get very far" with that effort, even though Mr.

Shanks knew that the prior attorney had not sought an appeal of the denial of the new-trial

motion.  Deposition of Michael D. Shanks, Esquire, at 14-15, *Davis v. Coyle*, No. C-1-97-402

(S.D. Ohio June 23, 1998) (attached as Exhibit C to ECF 81 (filed Sept. 3, 1998).  Counsel

admitted that Mr. Davis's was his "first death penalty case, with the statute recently enacted,"

and that he "probably didn't follow up on it, and to a significant degree, because I just wasn't

really familiar with, you know, all the things that I had to do."  *Id*.  Counsel concluded "that that

probably wasn't going to be very helpful as far as" his "ability to find some defense to the

specification" without ever attempting to look for any defense.  *Id.*

Counsel could not make an informed decision as to whether evidence could successfully

be used in a capital trial to dispute the existence of aggravating circumstances based on a single

unsuccessful effort to seek a new trial years after a conviction in another case.  This is

particularly true where counsel recognized that Beard's letter "was a significant piece of

evidence and it would warrant a close look by a court" but at the same time anticipated that the

new-trial effort would likely fail because courts "don't like to overturn convictions" in such

circumstances.  *Id*. at 16.

No strategic reason existed to not contest the existence of the aggravated circumstance

based on a prior purposeful killing.  Because defense counsel failed to investigate this issue, they

did not even attempt to challenge the death penalty specification.  Instead, they stipulated to the

records showing Mr. Davis had been convicted of second-degree murder and shooting with

intent to wound without challenging in any way the facts of those convictions.  (ECF 5-3,

PageID 7437-40.)  Counsel failed to use the available evidence to rebut the existence of the specification based on a purposeful killing.

As Mr. Davis's prior conviction was used to make him death-eligible, the constitutional errors therein clearly prejudiced him.  Under Ohio law, the "aggravating circumstances" against which the mitigating evidence is weighed are limited to the specifications of statutory aggravating circumstances set forth in Ohio Rev. Code § 2929.04(A) that have been alleged in the indictment and proved beyond a reasonable doubt.  Ohio Rev. Code § 2929.03(D); *State v. Wogenstahl*, 662 N.E.2d 311, 313, (Ohio 1996) *syllabus*; *State v. Johnson*, 494 N.E. 2d 1061, 1061 (Ohio 1986) *syllabus* ("[Ohio Rev. Code §] 2941.14(B) limits the aggravating circumstances which may be considered in imposing the death penalty to those specifically enumerated in [Ohio Rev. Code §] 2929.04(A).").  A defendant can only be eligible for imposition of the death penalty if one of the statutory specifications listed in Ohio Revised Code § 2929.04 is proved beyond a reasonable doubt.  Under Ohio Revised Code § 2929.04(A)(5), an essential element of the prior homicide used for the specification is that it was a purposeful killing.  This essential element was lacking in the killing of Ernestine Davis.

As the Supreme Court recently reaffirmed, counsel's failure "to conduct any independent investigation of the State's case in aggravation" constitutes "deficient performance" under *Strickland*.  *Andrus v. Texas*, 140 S. Ct. 1875, 1884 (2020) ("He thus could not, and did not, rebut critical aggravating evidence."); *Rompilla v. Beard*, 545 U.S. 374, 385 (2005) ("counsel ha[s] a duty to make all reasonable efforts to learn what they c[an] about the offense[s]" the prosecution intends to present as aggravating evidence).  The Court vacated the denial of habeas relief where, as here, there was "significant evidence that counsel concededly failed to investigate" regarding a prior incident used as aggravation:

> Thus, by failing to conduct even a marginally adequate investigation, counsel not only "seriously compromis[ed his] opportunity to respond to a case for aggravation," *Rompilla*, 545 U.S. at 385, 125 S.Ct. 2456, but also relinquished the first of only two procedural pathways for opposing the State's pursuit of the death penalty. There is no squaring that conduct, certainly when examined alongside counsel's other shortfalls, with objectively reasonable judgment.

*Andrus*, 140 S. Ct. at 1885. Similarly here, counsel deficiently failed to investigate an incident that provided the State's sole aggravating circumstance, to which the trial court assigned "great weight." (Sentencing Opinion, ECF 4-39, PageID 4947.) Accordingly, there is a reasonable probability that had the evidence been investigated and presented, the weight of the sole aggravating factor would have been lessened, and at least one judge would have had reasonable doubt as to whether the aggravating circumstances outweighed the mitigation. Counsel's failure here unconstitutionally deprived Mr. Davis of that opportunity.

Therefore, the ineffective assistance of counsel in challenging the death penalty specification prejudiced Mr. Davis, and he is entitled to habeas relief.

## SEVENTEENTH GROUND FOR RELIEF:

**THE TRIAL COURT DENIED DEFENSE COUNSEL'S MOTION TO SEVER THE TWO CHARGES CONTAINED IN THE INDICTMENT IN VIOLATION OF DAVIS'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

### A.    INTRODUCTION

The State charged Mr. Davis in a two-count indictment. The first count charged aggravated murder and carried one death penalty specification under Ohio Revised Code § 2929.04(A)(5): having been convicted of a prior purposeful murder. The second count charged Mr. Davis with having a weapon under disability under Ohio Revised Code § 2923.13. The trial court's refusal to grant Mr. Davis's motion to sever the counts of the indictment

violated Mr. Davis's right to a jury trial because it forced him to choose a hearing by a three-judge panel and waive his constitutional right to a jury. The trial court's error violated Mr. Davis's rights and prejudiced him; thus, his convictions and sentences must be reversed.

### B.    OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Seventeenth Ground for Relief should be dismissed.

#### 1.   Standard of Review

The Magistrate Judge discussed Mr. Davis's argument that no AEDPA deference applies where, as here, the state courts evaluated only the Ohio statutory claim rather than the federal constitutional claim. (ECF 51, PageID 9703-04.) The Report and Recommendation did not explicitly address whether AEDPA deference applies, other than to note that, according to Judge Graham's previous decision in this case, "the Supreme Court of Ohio went into much greater detail than suggested by Davis." (*Id.* (citing *Davis IX*, ECF 16-2, PageID 8975).)

Mr. Davis stands by the accurate statement in his Traverse that the Supreme Court of Ohio did not address whether the trial court's denial of Mr. Davis's motion to sever violated his federal constitutional rights. (Traverse, ECF 29, PageID 9306-09.) Rather, the court examined Mr. Davis's claim only through the lens of a statutory right under Ohio Rev. Code § 2929.022(A). *Davis II*, 528 N.E.2d at 928-29 ("Appellant essentially argues that the trial court's refusal to sever the charges abridged his right under R.C. 2929.022(A) to elect to have evidence of the prior purposeful killing considered solely at a sentencing hearing."). The only U.S. Supreme Court case cited—*Spencer v. Texas* 385 U.S. 554, 562, (1967)—was a "*see also*" cite in the discussion of whether Mr. Davis could show prejudice, without any reference to whether Mr. Davis's federal constitutional rights were violated. *Davis II*, 528 N.E.2d 295, 929 (1988) ("This does not meet the requirement of affirmatively showing prejudice. A jury is believed capable of

segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated.")  While the Report and Recommendation implied that Judge Graham gave a different description of the Ohio Supreme Court decision at issue, he in fact described it in the same terms as Mr. Davis, as ruling on an Ohio statute: "The Ohio Supreme Court affirmed the judgment of the court of appeals, agreeing that the offenses had been properly joined, and that §2929.022(A) did not mandate severance."  (*Davis IX*, ECF 16-2, PageID 8975.)

Therefore, there has been no "adjudication on the merits" of the federal constitutional issue to which 28 U.S.C. § 2254(d) would require this court to defer.  This Court must address the federal constitutional claims *de novo.*

### 2.  Merits

The Magistrate Judge recommended dismissing this claim on the basis that the the Ohio Supreme Court's holding that it was "speculative" "that a jury would not adhere to a limiting instruction" was "well-reasoned[.]" (ECF 51, PageID 9704.)

Putting aside Mr. Davis's argument that the denial of a jury trial is structural error that requires no prejudice analysis, (ECF 29, PageID 9304-06 (citing *Sullivan v. Louisiana,* 508 U.S. 275, 281–82 (1993))), the prejudice here is not speculative.  To the contrary, there is obvious prejudice in telling a jury that the man on trial for murder of his girlfriend had previously murdered his wife.  The Supreme Court held in *Old Chief v. United States* that a district court abuses its discretion by rejecting a defendant's offer to stipulate to a prior judgment and admitting the full record of the conviction "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction [under § 922(g)(1)]."  519 U.S. 172, 174 (1997).  The *Old Chief* holding is based on the theory that "evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant."  *Id.* at 185.

89

Here, evidence of Mr. Davis's prior conviction was unfairly prejudicial. *See United States v. Johnson,* 27 F.3d 1186, 1193 (6th Cir. 1994) ("When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant [was] a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'"); *see also* Fed.R.Evid. 403 advisory committee's note ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."). Evidence of a defendant's prior crimes "unquestionably has a powerful and prejudicial impact." *Johnson,* 27 F.3d at 1193.

In *United States v. Bell,* for example, the Sixth Circuit—following the clearly established federal law in *Old Chief*—reversed a drug conviction where the court wrongly admitted evidence of the defendant's prior drug convictions. 516 F.3d 432, 448 (6th Cir. 2008). In particular, the Sixth Circuit found that the evidence "painted a picture of Bell as a career drug dealer, making it substantially more likely that the jury would convict him, not on the evidence presented, but rather because of a belief that if Bell dealt drugs in the past, he probably possessed and intended to distribute the drugs in the present case." *Id.*

Similarly here, the impact of telling a jury that the man on trial for murder of his girlfriend had previously murdered his wife would "greatly increas[e] the chance that the jury would punish him not for his involvement in the offense at issue, but rather because he appeared to be a 'bad' guy." *Id.* at 446. No amount of curative instruction would remove that prejudice from the jury's mind. Given the nature of the previous crime for which Mr. Davis was convicted, in the words of Justice Cardozo, "[t]he reverberating clang of those accusatory words

90

would drown all weaker sounds." *Shepard v. United States,* 290 U.S. 96, 104 (1933); *see United States v. Stout,* 509 F.3d 796, 801 (6th Cir. 2007).

The Magistrate Judge also recommended dismissing this claim because "Davis's argument that, but for the joinder of the counts, the prior murder conviction would have been excluded, is speculative at best." (ECF 51, PageID 9704 (noting that the "prior murder conviction was the basis upon which he was charged with *aggravated* murder and a capital specification".) (Emphasis original.)

It is not speculation that the jury would not have learned about his prior conviction as part of his capital specification, however, because Mr. Davis's attorneys ended up stipulating to the records of the prior conviction. (ECF 5-3, PageID 7437-40.) This stipulation was problematic for other reasons, *see* Sixteenth Ground for Relief, *supra*, but in any event, the Supreme Court in *Old Chief* upheld a defendant's ability to use such stipulations. 519 U.S. 174. In contrast, as Judge Graham noted, there is no indication in the transcript of the pretrial hearing on petitioner's motion for severance that the petitioner ever agreed to stipulate to the prior felony conviction element in Count 2 of the indictment, for which he sought severance. (*Davis IX*, ECF 16-2, PageID 8979.) Accordingly, the prejudice to Mr. Davis from litigating Count 2 in front of a jury was significantly greater.

The trial court's refusal to sever the charges represented "an arbitrary disregard of [Mr. Davis's] right to liberty" and accordingly violated his due process rights. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). Mr. Davis should be granted habeas corpus relief.

## EIGHTEENTH GROUND FOR RELIEF:

**MR. DAVIS'S DEATH SENTENCE IS DISPROPORTIONATE AND INAPPROPRIATE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

## AND

## TWENTIETH GROUND FOR RELIEF:

**THE DEATH SENTENCE IMPOSED ON MR. DAVIS IS DISPROPORTIONATE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### A.      INTRODUCTION

Mr. Davis alleged in his Eighteenth Ground for Relief that the sole aggravating circumstance in his case does not outweigh the mitigating evidence presented.  (Petition, ECF 6, PageID 8732-34.)  Accordingly, the death penalty is inappropriate and disproportionate because the government failed to meet its burden that the aggravating circumstance outweigh the mitigating factors.  Imposing such an inappropriate and disproportionate death sentence on Mr. Davis violates his right to due process as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

Mr. Davis alleged in his Twentieth Ground for Relief that his death sentence is disproportionate and unconstitutional.  (Petition, ECF 6, PageID 8739-46.)  The Supreme Court of Ohio's refusal to include cases where a death sentence had not been imposed in its proportionality review violated Mr. Davis's constitutional rights.  The Ohio Supreme Court provided no analysis other than a conclusory assertion that the sentence was not excessive or disproportionate.  *State v. Davis (Davis XIV),* 9 N.E.3d 1031, 1057 (Ohio 2014).  The Ohio Supreme Court cited *State v. Taylor*, 676 N.E.2d 82 (Ohio 1997), and *State v. Mapes*, 484 N.E.2d 140 (Ohio 1985), but engaged in no comparative analysis to point out how Mr. Davis's case was similar.

Because the Report and Recommendation considered both claims in combination, Mr. Davis combines his objections as well.

## B.     OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Eighteenth and Twentieth Grounds for Relief should be dismissed.

### 1.   Eighteenth Ground for Relief

The Magistrate Judge recommended dismissal of Mr. Davis's Eighteenth Ground for Relief on the basis that he was not aware of any caselaw "in which the Supreme Court has held that a death sentence was unconstitutional despite there being substantial mitigating evidence and a prior murder being the sole aggravating circumstance." (ECF 51, PageID 9706-07.)

The Supreme Court has held, however, that extreme sentences that are grossly disproportionate to the crime are prohibited as cruel and unusual under the Eighth Amendment. *Coker v. Georgia*, 433 U.S. 584, 592 (1977) (citing *Gregg v. Georgia*, 428 U.S. 153, (1976)). The fundamental question is whether our system of capital punishment "accurately and consistently determine[s]" which defendants "deserve" to die and which do not. *Callins v. Collins,* 510 U.S. 1141, 1145 (1994) (Blackmun, J., dissenting from denial of certiorari). Such a determination did not happen here. In light of the cursory review in this case, Ohio's statutory scheme under which the death penalty is authorized fails to ensure that arbitrary and discriminatory imposition of the death penalty will not occur, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

The Magistrate Judge did not find significant that the Ohio Supreme Court relied on vacated sentences in *Taylor* and *Mapes*, as "neither sentence was voided for lack of proportionality." (ECF 51, PageID 9707 (*citing Taylor v. Mitchell*, 296 F. Supp. 2d 784, 839-40

(N.D. Ohio 2003) (quoting *Buell v. Mitchell*, 274 F.3d 337, 369 (6th Cir. 2001)); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 899 (E.D. Ky. 1988)).)

Mr. Davis's point was that the Ohio Supreme Court's review was particularly arbitrary where it cited only two cases for similarly approved death sentences, *both of which* had been overturned several years prior to the court's 2014 decision.[3]  In other words, the court cited two cases factually similar to Mr. Davis's where the death penalty was *not* appropriate, and did not cite any case similar to Mr. Davis's where a death sentence passed scrutiny under federal review.

Accordingly, contrary to the dictates of the Fourteenth Amendment, the Supreme Court of Ohio provided Mr. Davis no "meaningful appellate review [that] ensure[s] that the death penalty is not imposed arbitrarily or irrationally."  *Parker v. Dugger*, 498 U.S. 308, 321 (1991); s*ee also State v. Richey*, 595 N.E.2d 915, 933-34 (Ohio 1991) (Brown, J., dissenting, in a case akin to Mr. Davis's, where the Ohio Supreme Court merely string-cited other cases: "[I]f one reads those cases (which are merely listed and not analyzed by the majority), it is obvious that not one is remotely similar to this one . . . .  Such a review deserves more than lip service and a listing of cases which are in no sense comparable to this one.").

Finally, the Magistrate Judge held that the trial court's finding—that "previously killing an estranged significant other" outweighed the mitigation factors—does not "shock the conscience."  (ECF 51, PageID 9707.)  The only evidence presented by the State at the second resentencing hearing was the judgment of conviction entry from April 20, 1971, indicating that Mr. Davis had been convicted of second-degree murder.  (2nd Resent'g Tr., Sept. 8, 2009, ECF

---

[3] The Sixth Circuit granted a writ of habeas corpus where the trial judge instructed the jury that it was not allowed to consider any mitigating evidence related to a prior murder conviction.  *Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004).  Here, defense counsel failed to investigate such evidence, which similarly prejudiced Mr. Davis at sentencing.

5-7, PageID 8228.)  In comparison, Mr. Davis presented extensive mitigating evidence for the trial court's consideration:  He is loved by family and friends.  (*Id.* at PageID 8240, 8277-78, 8299, 8310-11, 8319-20.)  He grew up in an uneducated and poverty-stricken neighborhood in Appalachia.  (ECF 5-8, PageID 8399-402.)  He was raised in a dysfunctional family which impacted his personality development and mental health, as Dr. Robert Smith testified.  (*Id.* at PageID 8457-72.)  Mr. Davis has a borderline personality disorder and alcohol dependence.  (*Id.* at PageID 8438, 8448, 8453-56, 8472-78.)  Given his criminal history, it is unlikely that he will ever be released from prison.  (*Id.* at PageID 8534.)  He has an unparalleled history of good behavior in prison.  (*Id.* at PageID 8409-14; ECF 4-50, PageID 7112-13.)  He is of an advanced age for a prisoner.  He apologized for his conduct and showed remorse.  (ECF 5-7, PageID 8235.)  In addition to the substantial mitigation presented, Earnestine Davis's daughter has forgiven Mr. Davis and does not want to see him die.  (*Id.* at PageID 8289-91.)  The sole aggravating circumstance does not outweigh this mitigation beyond a reasonable doubt.

### 2.  Twentieth Ground for Relief

Although the Magistrate Judge ostensibly combined the analysis for Mr. Davis's Eighteenth and Twentieth Grounds for Relief, the Report and Recommendation contains no analysis of the merits of the Twentieth Ground for Relief, including that the Ohio Supreme Court violated Mr. Davis's rights in its proportionality review by failing to provide a comparative analysis of the two cases it cited in imposing death upon Mr. Davis, and refusing to include cases in which a sentence other than death had been imposed.  (Petition, ECF 6, PageID 8739-46.)

In short, there is no reasonable basis for concluding that Ohio's proportionality framework is constitutional.  No fair-minded jurist could believe that deliberately excluding *all* of the cases resulting in a life sentence from a state's proportionality review is constitutional.  As Justice Pfeifer explained, this practice is "ethically indefensible."  *State v. Murphy*, 747, N.E. 2d

765, 813 (Ohio 2001) (Pfeifer, J., dissenting). Justice Stevens' statements in *Walker* further demonstrate that the Ohio Supreme Court's practice of excluding non-capital sentences from its proportionality analysis cannot be reconciled with federal constitutional requirements laid out in *Gregg*. *Walker v. Georgia*, 555 U.S. 979, 979 (2008) (statement of Stevens, J., respecting the denial of writ of certiorari). The Ohio state courts, in their application of Ohio Rev. Code § 2929.05(A), acted contrary to the clearly established federal law in *Gregg*, 428 U.S. 52, and *Zant*, 462 U.S. 862, 880 n.19 (1982), contemplating fundamental statutory protections, and the individualized assessment of a death sentence as required in the line of cases following *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), resulting in the arbitrary or discriminatory imposition of Mr. Davis's death sentence in contravention of the Eighth Amendment. Furthermore, contrary to the dictates of the Fourteenth Amendment, the Supreme Court of Ohio provided Mr. Davis no "meaningful appellate review [that] ensure[s] that the death penalty is not imposed arbitrarily or irrationally." *Parker*, 498 U.S. at 321; s*ee also Richey*, 595 N.E.2d at 933-34 (Brown, J., dissenting).

Accordingly, Mr. Davis should be granted habeas corpus relief because his death sentence is disproportionate and inappropriate, and the refusal of the Supreme Court of Ohio to consider similar cases in which a lesser sentence had been imposed violated Mr. Davis's constitutional rights. Habeas corpus relief is thus warranted.

**NINETEENTH GROUND FOR RELIEF:**

THE EVIDENCE PRESENTED AT MR. DAVIS'S TRIAL WAS INSUFFICIENT TO SUPPORT THE
CONVICTION FOR AGGRAVATED MURDER IN VIOLATION OF PETITIONER DAVIS'S RIGHTS
UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION.

A.     INTRODUCTION

The State's witnesses who testified against Mr. Davis at his capital trial were wholly

contradictory and lacked credibility.  Furthermore, the State failed to prove "prior calculation

and design," a required element to sustain a conviction for aggravated murder.

B.     OBJECTIONS TO MERITS ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Nineteenth Ground

for Relief should be dismissed.

The Magistrate Judge recommended denying this claim on the basis that "a finding of

prior calculation and design is not unreasonable" in light of the evidence presented at trial.  (ECF

51, PageID 9709-10.)  The Magistrate Judge based his evaluation on the three factors listed in

*State v. Walker*: "(1) Did the accused and victim know each other, and if so, was that relationship

strained? (2) Did the accused give thought or preparation to choosing the murder weapon or

murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events?'" 82

N.E.3d 1124, 1128-29 (Ohio 2016) (quoting *State v. Taylor*, 676 N.E.2d 82, 89 (1997)).

The Magistrate Judge found that factor one "weighs heavily in favor of finding prior

calculation and design" as Ms. Butler and Mr. Davis separated "less than a week before the

murder."  (ECF 51, PageID 9709.)

The prosecution presented no evidence that the relationship between Mr. Davis and Ms.

Butler had been "strained" under factor one. In his testimony, Mr. Davis said that they separated

by "mutual agreement," that there were no hard feelings, that he had still kept some of his

possessions at her home, and that he had even gone out for breakfast with Ms. Butler after the separation.  (ECF 5-3, PageID 7542-45.)

The Magistrate Judge was equivocal about factor two—there was testimony that Mr. Davis bought the gun for self-defense, but the Magistrate Judge noted that Mr. Davis brought the loaded gun to the American Legion "and continued to have it as he and Butler went outside to talk, despite there being no evidence that Butler posed any type of threat to Davis." (ECF 51, PageID 9709.)

The prosecution presented no testimony indicating that Mr. Davis intended to kill Ms. Butler or that he had bought the gun for that reason, as opposed to just continually keeping it on his person at the time.  One witness called by the State, Wade Coleman, testified that Von had bought a gun for protection.  (Trial Tr., ECF No. 5-2, PageID 7313-15). While the Magistrate Judge noted that Mr. Davis kept the gun on his person as he stepped outside with Ms. Butler, it's not clear what the alternative would have been, other than to randomly hand it off to someone at the American Legion.  In addition, there is no evidence concerning any "thought or preparation" to the site: a bar where he had just sat at a table with Ms. Butler in front of a roomful of witnesses.

The Magistrate Judge was also equivocal about factor three, noting that "there was no evidence that Davis went to the American Legion intending to kill Butler," but also that "Davis and Butler were together for more than half an hour prior to the killing."  (ECF 51, PageID 9709.)

The act was not "drawn out," but occurred in "an almost instantaneous eruption."  The shooting was the direct result of a spontaneous, heated argument between Mr. Davis and Ms. Butler, where several minutes before they had been sitting down and having drinks together

inside the American Legion.  (Trial Tr., ECF 5-2, PageID 7336-37.)  Ms. Mona Aldridge, another witness called by the State, that there was no sign of arguing while Ms. Butler and Ms. Davis were still inside.  (*Id.* at PageID 7349.)  Ms. Aldridge told police that when Mr. Davis and Ms. Butler went outside, however, they were arguing, (*Id.* at PageID 7360-61 ("I went to the front door and saw them arguing on the sidewalk;" "When Red was arguing with Suzette . . . "); *see also* Joint Trial Exhibit 2, ECF 4-28, PageID 3187), although she said in her trial testimony that she could not hear them. (Trial Tr., ECF 5-2, PageID 7361.)  Ms. Aldridge then stated that Mr. Davis had a confused look on his face, as if he had been arguing.  (*Id.*)

The evidence points to, if anything, Mr. Davis shooting Ms. Butler in the heat of the moment during an argument, and *not* that he had a scheme in place designed to implement the calculated decision to kill her.  "Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death."  *Walker*, 82 N.E.3d at 1128 (affirming vacatur of aggravated murder conviction in a case where "a plan to commit felonious assault" quickly escalated into murder). Mr. Davis was prejudiced by the State's failure to prove prior calculation and design, and his conviction and sentences must be reversed.  *In re Winship*, 397 U.S. 358, 364 (1970); *Jackson v. Virginia*, 443 U.S. 307 (1979).

**TWENTY-FIRST GROUND FOR RELIEF:**

**MR. DAVIS'S CONSTITUTIONAL RIGHTS TO DUE PROCESS, EQUAL PROTECTION, AND A RELIABLE SENTENCING WERE VIOLATED BY OHIO'S INADEQUATE STATE POST-CONVICTION PROCESS THAT FAILED TO PROVIDE A REMEDY FOR MR. DAVIS TO FULLY AND FAIRLY VINDICATE HIS FEDERAL CONSTITUTIONAL CLAIMS IN THE STATE COURTS.**

### A.    INTRODUCTION

Von Clark Davis's rights were violated because Ohio's post-conviction framework failed to provide him with an adequate corrective process for the vindication of his federal constitutional rights.  Mr. Davis was required to fairly present and exhaust his federal constitutional challenges to his conviction and sentence in the state courts through post-conviction proceedings prior to being able to litigate those claims in federal court.  Mr. Davis properly raised numerous issues on post-conviction in conformance with the Ohio post-conviction statute.  *See* Ohio Rev. Code Ann. §§ 2953.21 *et seq*.  These claims were supported by affidavits and other evidence *dehors* the record.  *See State v. Cole*, 443 N.E.2d 169 (Ohio 1982).  Yet, the Ohio courts effectively foreclosed Mr. Davis from having his legitimate claims reviewed.

### B.    OBJECTIONS TO COGNIZABILITY ANALYSIS

Mr. Davis objects to the Magistrate Judge's recommendation that his Twenty-First Ground for Relief should be dismissed as non-cognizable.

The Magistrate Judge relied on Judge Graham's earlier opinion, noting that "the Sixth Circuit has held that alleged errors in state collateral proceedings cannot form the basis for habeas corpus relief." (ECF 51, PageID 9684 (quoting *Davis IX*, ECF 16-2, PageID 9030 (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986))).)

To the contrary, the Due Process Clause of the Fourteenth Amendment requires every State to provide a corrective process for any constitutional violation that cannot be remedied

during the course of trial.  *Carter v. Illinois*, 329 U.S. 173, 175 (1946) ("A State must give one whom it deprives of his freedom the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface.")  States are free to employ whatever corrective process they prefer, but the chosen method must be adequate to vindicate the constitutional rights of the defendant.  *Id*. at 175-76; *see also Richardson v. Miller*, 716 F. Supp. 1246, 1256-57 (W.D. Mo. 1989); *Young v. Ragen*, 337 U.S. 235, 239 (1949); *Case v. Nebraska*, 381 U.S. 336, 337-40 (1965) (Clark, J., concurring).  Furthermore, it is well-settled that "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause."  *Evitts v. Lucey*, 469 U.S. 387, 401 (1985).  An adequate corrective process should be "swift and simple and easily invoked," should "eschew rigid and technical doctrines of forfeiture, waiver or default," and should "provide for full fact hearings to resolve disputed factual issues."  *Case*, 381 U.S. at 346–47 (1965) (Brennan, J., concurring); *see also Goldberg v. Kelly*, 397 U.S. 254, 267-71 (1970); *Evitts v. Lucey*, 469 U.S. at 400-05.

Ohio's post-conviction framework fails to comply with the minimum requirements for a constitutionally adequate corrective process, especially in the death penalty context.  The clearest evidence of this failure is the sheer volume of cases in which the Sixth Circuit has found it necessary to grant federal habeas corpus relief to Ohio prisoners under a death sentence, notwithstanding the fact that they had already sought post-conviction review in Ohio state court.[4]

---

[4]*See, e.g.*, *Williams v. Mitchell*, 792 F.3d 606 (6th Cir. 2015); *Sowell v. Anderson*, 663 F.3d 783 (6th Cir. 2011); *Foust v. Houk*, 655 F.3d 524 (6th Cir. 2011); *Goodwin v. Johnson*, 632 F.3d 301 (6th Cir. 2011); *Johnson v. Mitchell*, 585 F.3d 923 (6th Cir. 2009); *Johnson v. Bagley*, 544 F.3d 592 (6th Cir. 2008); *Mason v.* Mitchell, 543 F.3d 766 (6th Cir. 2008); *Jells v. Mitchell*, 538 F.3d 478 (6th Cir. 2008); *Morales v. Mitchell*, 507 F.3d 916 (6th Cir. 2007); *Haliym v. Mitchell*, 492 F.3d 680 (6th Cir. 2007); *Dickerson v. Bagley*, 453 F.3d 690 (6th Cir. 2006); *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003).

Furthermore, the recent decisions in *White v. Warden*, 940 F.3d 270 (6th Cir. 2019), *Martinez v. Ryan*, 566 U.S. 1 (2011), and *Trevino v. Thaler*, 569 U.S. 413 (2013), demonstrate the vital importance of state collateral review in protecting the right to counsel at trial, particularly in states like Ohio where evidence that is not part of the trial record cannot be considered on direct review. *See, e.g.*, *State v. Hunter*, 960 N.E.2d 955, 966 (Ohio 2011).

The Sixth Circuit Court of Appeals has expressed concern regarding the State of Ohio's inadequate, excessively narrow, and ineffectual post-conviction scheme. *See Keener v. Ridenour*, 594 F.2d 581, 590 (6th Cir. 1979). The basis for the Sixth Circuit's dissatisfaction with Ohio's lack of process can be traced to *State v. Perry*, 226 N.E.2d 104 (Ohio 1967). After *Perry*, the Sixth Circuit recognized that "[b]ecause of the narrow limits placed on the Ohio post-conviction statute, there is no longer any effective State remedy open to the Appellant to exhaust. The *Perry* decision has rendered such process ineffective to protect the rights of Appellant." *Coley v. Alvis*, 381 F.2d 870, 872 (6th Cir. 1967); *accord Allen v. Perini*, 424 F.2d 134, 139–40 (6th Cir. 1970).

Ohio's post-conviction system embodied in Ohio Revised Code §§ 2953.21 *et seq.* did not provide Mr. Davis an adequate and independent means by which to vindicate his federal constitutional rights in the state court system. As a result, Mr. Davis was denied his rights to due process and equal protection, as well as a full and fair opportunity to present and litigate his federal constitutional claims in state post-conviction proceedings in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

To the extent this Court views *Kirby* as controlling, Mr. Davis preserves the argument that *Kirby* was wrongly decided under the caselaw of the United States Supreme Court. *See Rodriquez v. United States,* 395 U.S. 327, 330 (1969) (holding that habeas relief for a

constitutional defect in state procedure cannot be made to depend upon whether the petitioner's underlying claim would be cognizable in a habeas proceeding or is grounds for reversal).  In fact, the Supreme Court has specifically addressed state post-conviction procedures via habeas petitions in *Lane v. Brown,* 372 U.S. 477 (1963) (review of state's denial of a free transcript to an indigent seeking review of denial of a writ of coram nobis) and *Dowd v. Cook,* 340 U.S. 206 (1951) (review of petitioner's claim that state's failure to allow state habeas petition, coram nobis, or delayed appeal denied equal protection to petitioner).

Mr. Davis should be granted habeas corpus relief because his constitutional rights were violated by Ohio's inadequate state post-conviction process.

## TWENTY-SECOND THROUGH TWENTY-SIXTH GROUNDS FOR RELIEF:

THE STATE OF OHIO CANNOT CONSTITUTIONALLY EXECUTE MR. DAVIS BECAUSE THE ONLY MEANS AVAILABLE FOR EXECUTION UNDER THE LAW VIOLATE HIS EIGHTH AMENDMENT RIGHTS, VIOLATE THE FOURTEENTH AMENDMENT'S DUE PROCESS AND PRIVILEGES OR IMMUNITIES CLAUSES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, AND DEPEND ON STATE EXECUTION LAWS THAT ARE PREEMPTED BY FEDERAL LAW.

To begin, the Magistrate Judge recommended that the claims concerning Ohio's lethal-injection process be dismissed as procedurally defaulted, noting "the Warden's uncontradicted assertion that Davis failed to present these claims in either of his state court postconviction petitions."  (ECF 51, PageID 9685.)  But Mr. Davis responded to the Warden's procedural-default allegation by arguing that he could not have raised his claims in state court, as Ohio does not provide a forum for litigating lethal-injection claims, (*see* Traverse, ECF 29, PageID 9373 (citing *Scott v. Houk*, 760 F.3d 497, 511 n.2 (6th Cir. 2014)), an argument the Magistrate Judge does not address in recommending dismissal for procedural default. Accordingly, Mr. Davis objects on that basis to this recommendation.

As for the merits, the Magistrate Judge concluded that the claims are barred as a matter of law, citing the intervening decision in *In re Smith*, 806 F. App'x 462, 463, (6th Cir. 2020) (*per curiam*).  Mr. Davis acknowledges the state of the law in the Sixth Circuit at this time and objects to preserve his argument to the contrary that the cognizability of constitutional lethal-injection claims is supported by *Bucklew* v. *Precythe*, 139 S.Ct. 1112, 1128 (2019) (noting, "if the relief sought in a 42 U.S.C. § 1983 action would foreclose the State from implementing the [inmate's] sentence under present law, then recharacterizing a complaint as an action for habeas corpus might be proper" (quotations omitted)).  *In re Smith* did not "put to rest" the question of whether lethal injection claims may be presented in federal habeas, because *Bucklew* clearly contemplated that habeas corpus may still provide a remedy for a lethal injection challenge such as Mr. Davis's. *See Bucklew*, 139 S. Ct. at 1119 (citing *Baze v. Rees*, 553 U.S. 35, 52 (2008)).

Mr. Davis's Twenty-Sixth ground for relief is not a constitutional claim governed by *In re Smith* or the previous Sixth Circuit cases considering lethal-injection challenges to Ohio's protocol, however.  The Magistrate Judge asserted, without elaboration, that *Glossip v. Gross*, 576 U.S. 863, 880–81 (2015) and *In re Campbell*, 874 F.3d 454, 465-66 (6th Cir. 2017), foreclose this claim as well.  (ECF 51, PageID 9688.)  But *In re Campbell* considered only challenges to "a method of execution as unconstitutionally painful," not statutory claims.  *In re Campbell*, 874 F.3d at 465.  The same is true of the claims at issue in *Glossip*.  Therefore, Mr. Davis objects to the Magistrate Judge's recommendation concerning the cognizability of this ground for relief.

Finally, the Magistrate Judge concluded that the Twenty-Sixth ground for relief would fail on its merits in any event, agreeing "with Davis that, if his preemption argument were accepted, it would be impossible to implement the lethal injection protocol of Ohio and every

other state that uses the method." (ECF 51, PageID 9688, 9692.) This is not a rejection of the merits of Mr. Davis's legal arguments; to the contrary, it is an endorsement of their legal merit. The Magistrate Judge nevertheless concluded that these arguments must not be meritorious merely because cases have repeatedly upheld states' use of lethal injection, and because the federal government has recently also resumed executions via lethal injection. (*Id.* at 9692-93.) The Magistrate Judge has recommended the denial of Mr. Davis's challenges to Ohio's use of controlled substances or drugs in violation of the Federal Controlled Substances Act (CSA) and Food Drug and Cosmetic Act (FDCA), on the grounds that Mr. Davis's arguments are "dubious, if not absurd," and where, if accepted, such arguments would make it impossible for Ohio or other states to perform lethal injections. (*Id.*)

There is no question that Ohio is obtaining and using controlled substances, and that persons obtaining, possessing, and administering such drugs are doing so in violation of the express provisions of the CSA and/or FDCA, and are administering such drugs without a valid prescription and using such drugs to cause death, all of which makes their use illegal under federal law. *See e.g.*, 21 U.S.C. § 829, 21 C.F.R. § 1306.04. *See also Gonzales v. Oregon*, 546 U.S. 243, 299 (2006) (Scalia, J., dissenting) ("If the term '*legitimate* medical purpose' has any meaning, it surely excludes the prescription of drugs to produce death."). The Magistrate Judge has asserted that there is no pre-emption under federal law, but in reaching that conclusion, the Magistrate Judge properly acknowledges that "state law is naturally preempted to the extent of any conflict with a federal statute." (ECF 51, PageID 9691 (quoting *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012)).) That actually proves the merit of Mr. Davis's argument, for the Ohio lethal injection process cannot survive the CSA or FDCA, because it is in "conflict with a federal statute." *See e.g., Roane v. Barr*, No. 19-mc-145, 2020 U.S. Dist. LEXIS

155191 (D.D.C. Aug. 27, 2020) (granting summary judgment on lethal injection challenge to drugs as being used in violation of FDCA), *vacated Roane v. Barr*, No. 20-5260, 2020 U.S. App. LEXIS 27495 (D.C. Cir. Aug. 27, 2020) (vacating injunction for lack of findings regarding irreparable injury). To be sure, that may make lethal injection difficult if not impossible, but under Article VI, § 2 of the U.S. Constitution, that is the necessary outcome where, as here, a state violates federal law. That is not "dubious" or "absurd," but a fundamental application of the Supremacy Clause. Such violation of the Supremacy Clause is also a "fundamental defect" in these proceedings (*see* ECF 51, PageID 9691), allowing this Court to grant habeas corpus relief. *See also* 28 U.S.C. § 2241(c)(3) (habeas corpus relief may be granted if prisoner alleges violation of his rights under the "laws or treaties" of the United States). The Magistrate's conclusions regarding Mr. Davis's Twenty-Sixth Ground for Relief should be overruled.

## VI.    PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

*Sua sponte*, the Magistrate Judge recommended that this Court "certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*." (ECF 51, PageID 9710.)

"This Court will grant the motion [to proceed *in forma pauperis* on appeal] if it is persuaded that the appeal is being taken in good faith, i.e., that the issues to be raised are not frivolous. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). An issue is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)." *McCoy v. State of Michigan*, No. 08-1641, 2008 U.S.App.LEXIS 28032, at *1-2 (6th Cir. Nov. 18, 2008).

For all the reasons Mr. Davis has expressed in these objections, and in his Petition and Traverse, any appeal would be taken in good faith, the issues are not frivolous, and his claims

have an arguable basis in law and fact. This Court, therefore, should allow him to proceed on appeal *in forma pauperis*.

## VII. CERTIFICATE OF APPEALABILITY

The Magistrate Judge concluded, with no analysis or even reference to the governing standards, that "no reasonable jurist would find that Davis 'has made a substantial showing of the denial of a constitutional right,' or would disagree with this conclusion with respect to any of the claims," and recommended this Court deny Mr. Davis a certificate of appealability (COA). (ECF 51, PageID 9710 (quoting 28 U.S.C. § 2253(c)(2)).) Mr. Davis objects to this recommendation. To begin, he has never been given an opportunity to identify the claims deserving of COAs, much less brief the arguments in support of a COA request. The COA analysis "is not coextensive with a merits analysis," *Buck v. Davis*, 137 S. Ct. 759, 773 (2017), which is the only analysis the Magistrate Judge has provided in the Report and Recommendations.

Further, the COA standard is substantially easier to meet than the merits standard; "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (internal quotation marks omitted). Indeed, a petitioner is not even required to prove "that some jurists would grant the petition for habeas corpus." *Miller-El, v. Cockrell*, 537 U.S. 322, 338 (2003).

A COA should be granted unless the claim presented is "utterly without merit," *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000). Further, in cases where the death penalty is at

issue, courts have recognized that any doubts regarding the propriety of a certificate of appealability must be resolved in the petitioner's favor. *See, e.g.*, *Skinner v. Quarterman,* 528 F.3d 336, 341 (5th Cir. 2008); *Jermyn v. Horn*, 266 F.3d 257, 279 n.7 (3d Cir. 2001); *Miller v. Johnson,* 200 F.3d 274, 280–81 (5th Cir. 2000); *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001); *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The Magistrate Judge's analysis of Mr. Davis's claim does not show that each and every one of his claims is so "utterly without merit" as to recommend he not be permitted to appeal any of them to the Sixth Circuit. This is certainly true where the Sixth Circuit granted Mr. Davis relief on his first habeas petition and specifically supported his present claims concerning enforcement of his jury waiver in his second resentencing. Accordingly, Mr. Davis objects.

In light of Mr. Davis's objections, and for all the reasons stated in these objections, and in his Petition and Traverse, this Court should conclude that Petitioner's claims are debatable among reasonable jurists, and grant him a COA on his constitutional claims.

## VIII.   CONCLUSION

For the reasons stated herein and in Mr. Davis's Petition and Traverse, the Court should

sustain his objections to the Magistrate Judge's Report and Recommendation, address Mr.

Davis's Grounds for Relief *de novo* and grant his Petition for Writ of Habeas Corpus.  In the

alternative, Mr. Davis requests an opportunity to brief a request for a certificate of appealability

and permission to proceed *in forma pauperis* on appeal.

          Respectfully submitted,

          **Deborah L. Williams**
          Federal Public Defender

          */s/ Erin G. Barnhart*
          **Erin G. Barnhart (0079681)**
              Lead/Trial counsel
          **Jordan S. Berman (0093075)**
              Co-Counsel
          Assistant Federal Public Defenders
          Federal Public Defender's Office
          for the Southern District of Ohio
          Capital Habeas Unit
          10 W. Broad Street, Suite 1020
          Columbus, Ohio 43215
          Phone: (614) 469-2999
          erin_barnhart@fd.org
          jordan_berman@fd.org

          **Counsel for Petitioner**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to the email

addresses of opposing counsel on file with the Court.

*/s/ Jordan S. Berman*
**Jordan S. Berman (0093075)**
Assistant Federal Public Defender