**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **VON CLARK DAVIS,** | ) | **Case No. 2:16-CV-0495** |
| | ) | |
| **Petitioner,** | ) | **Judge:  Susan J. Dlott** |
| | ) | |
| **v.** | ) | **Magistrate Judge Michael R. Merz** |
| | ) | |
| **CHARLOTTE JENKINS, Warden,** | ) | <u>**THIS IS A DEATH PENALTY CASE**</u> |
| **Chillicothe Correctional Institution,** | ) | |
| | ) | *No Execution Date Scheduled* |
| **Respondent.** | ) | |

---

**PETITIONER VON CLARK DAVIS'S REPLY IN SUPPORT OF**
**HIS OBJECTIONS, (ECF 57), TO THE MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION, (ECF 51)**

---

The Warden did not file objections to Magistrate Judge's June 16th Report and
Recommendations, (ECF 51).  Instead, the Warden devotes more than half of her response to
Petitioner Von Clark Davis's objections to that R&R to arguing about "Davis's violation of the
fair presentation rule," (*see* ECF 60, PageID 9956–74), an issue that was not the subject of Mr.
Davis's objections nor a basis for the Magistrate Judge's recommendations. The argument is
untimely, inaccurate, and inconsistent with the Warden's previous arguments to this Court.  In
addition, the Warden's response mischaracterizes most of Mr. Davis's objections to individual
claims.  Accordingly, Mr. Davis requested and received permission to file a reply in support of
his objections, (*see* ECF 61 & 62), to respond to these new arguments.

For all these reasons, as further explained in the attached memorandum, this Court should
sustain Mr. Davis's objections to the Magistrate Judge's Report and Recommendation.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

I. THE WARDEN'S PROCEDURUAL DEFAULT ARGUMENTS ARE
UNTIMELY AND WITHOUT MERIT BECAUSE MR. DAVIS FAIRLY
PRESENTED HIS ARGUMENTS IN STATE COURT AND WAS
PROCEDURALLY BARRED FROM RERAISING THEM AFTER HIS
SECOND RESENTENCING. .................................................................................. 3

II. THE WARDEN'S RESPONSES MISCHARACTERIZE MR. DAVIS'S
OBJECTIONS TO INVIDUAL CLAIMS AND ARE WITHOUT MERIT. ................... 8

    A. First and Second Grounds for Relief ........................................... 8

    B. Fifth Ground for Relief ................................................................ 10

    C. Sixth Ground for Relief ............................................................... 11

    D. Third Ground for Relief ............................................................... 11

    E. Fourth Ground for Relief ............................................................. 13

    F. Seventh Ground for Relief ........................................................... 14

    G. Eighth Ground for Relief ............................................................. 15

    H. Sixteenth Ground for Relief ........................................................ 17

    I. Ninth Ground for Relief ............................................................... 18

    J. Tenth Ground for Relief ............................................................... 19

    K. Twenty-First to Twenty-Sixth Ground for Relief ................................. 20

    L. Eleventh Ground for Relief .......................................................... 20

    M. Twelfth Ground for Relief ............................................................ 21

    N. Thirteenth Ground for Relief ....................................................... 22

    O. Fourteenth Ground for Relief ...................................................... 22

    P. Fifteenth Ground for Relief ......................................................... 23

    Q. Seventeenth Ground for Relief .................................................... 24

    R. Eighteenth and Twentieth Ground for Relief ................................. 25

    S. Nineteenth Ground for Relief ...................................................... 26

III. CONCLUSION ................................................................................................. 27

CERTIFICATE OF SERVICE

I.    **THE WARDEN'S PROCEDURUAL DEFAULT ARGUMENTS ARE
      UNTIMELY AND WITHOUT MERIT BECAUSE MR. DAVIS FAIRLY
      PRESENTED HIS ARGUMENTS IN STATE COURT AND WAS
      PROCEDURALLY BARRED FROM RERAISING THEM AFTER HIS
      SECOND RESENTENCING.**

Ostensibly responding to Mr. Davis's objections, the Warden argues that certain of his

claims are procedurally defaulted because Mr. Davis failed to raise them in the state courts after

his second resentencing.  (ECF 60, PageID 9956–57.)  In the Report and Recommendation, the

Magistrate Judge had agreed with Davis's interpretation of *King v. Morgan*, 807 F.3d 154 (6th

Cir. 2015), to conclude that, contrary to the Warden's position, the fact "that Davis raised and

was unsuccessful with these claims previously is irrelevant" because in this case, "he is

challenging the most recent death sentence," (ECF 51, PageID 9652-53).  Further, the Magistrate

Judge found that, "upon resentencing, the statute of limitations clock reset, and the law-of-the-

case doctrine does not apply.  Thus, the sub-claims are properly before this Court."  (*Id*. at 9652-

53.)

The Warden's response states that she "respectfully reasserts the defense of procedural

default due to failure of fair presentation" of certain claims.[1]  (ECF 60, PageID 9973.)  This

---

[1] The Warden, citing the Return of Writ, includes Grounds for Relief 8(A) and (B) and 22
through 26 in a list of purportedly procedurally defaulted claims.  This argument lacks merit.
Mr. Davis presented the basis for 8(A)—his ineffective assistance claim for failure to seek
recusal of Judge Nastoff after his second resentencing—and the state court addressed the claim.
*See State v. Davis* (*Davis XIII*), No. CA2012-12-258, 2013 WL 4806935, at *6 (Ohio Ct. App.
Sept. 9, 2013).  Davis asserted cause and prejudice to excuse any procedural default of 8(B)
based on ineffective assistance of counsel, a cause unrelated to the issue here.  (ECF 29, PageID
9251.)  Similarly, Davis fairly presented the basis for Ground for Relief 22 to the state courts in
his second resentencing.  (2nd Resent'g, Mot. to Dismiss Capital Specification, May 27, 2008,
ECF 4-34, PageID 4054).  With regard to Grounds for Relief 23 through 26, the Sixth Circuit has
recognized that there is no state court forum for litigating lethal injection claims in Ohio.  (ECF
29, PageID 9374-76 (citing *Scott v. Houk*, 760 F.3d 497, 511 n.2 (6th Cir. 2014)).)

"reassertion" is in fact an objection to the Magistrate Judge's decision not to address procedural default, and if the Warden wanted to assert it, she should have done so in timely filed objections.

More importantly, the Warden's arguments are without merit. Unlike the "hypothetical" the Warden set out at length in her response, (*see* ECF 60, PageID 9662–65), Mr. Davis *did* fairly present his claims to the state courts. As discussed in his Traverse, the substance of Mr. Davis's previously raised claims was presented to and considered by the state courts. (ECF 29, PageID 9156-58.) The Warden acknowledges as much in arguing that it is of no import that "an identical claim had been denied under former state court judgment that no longer exists." (ECF 60, PageID 9970.)

When Mr. Davis obtained sentencing relief from the Sixth Circuit in his first habeas proceedings, his conviction was left in place. *See State v. Davis* (*Davis XIV*), 9 N.E.3d 1031, 1041 (Ohio 2014) (ECF 4-44, PageID 6085) ("In this case, Davis's conviction was not reversed or set aside."). The Magistrate Judge acknowledged there was "no dispute" that the claims the Warden targets "relate to his original conviction, rather than the resentencing." (ECF 51, PageID 9653.) Hence, there is no concern about fair presentment or exhaustion under AEPDA because Mr. Davis's claims were in fact adjudicated in state court, and the resentencing judgment now at issue relied on that earlier, undisturbed conviction.

As the Warden concedes that these claims were earlier presented to the state court, and as Mr. Davis has not added additional factual allegations or legal theories, no additional exhaustion is necessary. Indeed, the Warden repeatedly emphasizes that the claims at issue are the "exact same" or "identical" to those previously raised, (ECF 17, PageID 9039-43, 9049, 9061, 9065, 9067-71, 9073), and does not argue that any additional fact or argument has "fundamentally alter[ed] the legal claim already considered by the state courts," *Vasquez v. Hillery*, 474 U.S.

254, 260 (1986); *see also Sampson v. Love,* 782 F.2d 53, 57 (6th Cir. 1986). Nor do the allegations "rely on or otherwise implicate new legal theories." *Fautenberry v. Mitchell*, No. C-1-00-332, 2001 WL 1763438, at *20 (S.D. Ohio Dec. 26, 2001). Since the opportunity to meaningfully present is "what the exhaustion doctrine was intended to facilitate," Mr. Davis's presentation of the same claims as those he previously raised clearly satisfies the exhaustion and fair presentment requirements. *Davis v. Bobby*, No. 2:10-cv-107, 2015 WL 5734458, at *32 (S.D. Ohio Sept. 29, 2015); *see also Martin v.*, No. 1:07cv725, 2008 WL 4924818, at *4 n.5 (S.D. Ohio Nov. 17, 2008) (finding exhaustion satisfied despite the fact that petitioner had recently been resentenced in state court, and denying relief on other grounds).

Mr. Davis's only reference to this issue in his objections was to note the irrelevance, for procedural-default purposes, of the fact that he has raised some of the same claims in his petition presently before this Court as he did in his previous habeas petition (*Davis IX*); what is relevant is that Mr. Davis previously raised identical claims in state court. (ECF 57, PageID 9849-50 (citing Traverse, ECF 29, PageID 9156-58).) The Warden now agrees with Mr. Davis that the Court is not bound by its prior decision in Mr. Davis's previous habeas case, stating:

> [T]he teaching of *Magwood* and *King* is that the second-in-time habeas petition, if properly pled, is adjudicated on its own terms, without the outcome being automatically pre-ordained by adjudications from the first-in-time habeas petition. This is so since each state court judgment is a separate and distinct legal entity to be individually and separately assessed.

(ECF 60, PageID 9969; *see also id.* at PageID 9971 (arguing that "neither the prior state nor federal adjudications retain any legal power in and of themselves, and are classified by the *King* court under the mundane category of ordinary precedent.").)

While Mr. Davis welcomes the Warden's agreement on this point, the Warden fails to explain why or even to acknowledge that she made the opposite argument in her Return of Writ.

5

There, the Warden summarily objected to fifteen of Petitioner's grounds for relief by asserting that relief is "procedurally barred in that identical claims have already been denied in prior federal habeas proceedings." (Return of Writ, ECF 17, PageID 9039-43, 9065, 9067-71, 9073). The Warden now acknowledges that "the new state court judgment can be attacked in habeas for any reason" without being subject to summary dismissal.  (ECF 60, PageID 9971.)

The issue here, however, is whether Mr. Davis was required to—or even could have—returned to state court after the reversal of his previous sentencing, and re-raised all of the same conviction-based claims that the state courts had already addressed.  The Warden now argues that Mr. Davis purposefully bypassed the state courts, as "there is no doubt that Mr. Davis *could have* attacked his conviction and sentence in the state courts" after his second resentencing, even for claims that related to his conviction.  (ECF 60, PageID 9968 (emphasis original).)  That is inaccurate, and a view *no one* shared in state court.  All agreed that Mr. Davis was procedurally barred from re-raising his previous conviction-based claims after his second resentencing.  The Ohio Supreme Court discussed at length how Mr. Davis would have been barred from raising challenges to his conviction "that were available to be pursued in a first appeal and to claims that either were or could have been raised at trial or on appeal."  *Davis XIV*, 9 N.E.3d at 1039-41. The court specified that claims relating to Mr. Davis's initial conviction, such as a claim challenging his jury waiver, "would be barred in the current appeal."  *Id.*  Indeed, the State— represented by the Butler County Prosecuting Attorney— argued in that court that *res judicata* and law-of-the-case doctrine "precludes consideration" of such claims.  (Appellee's Br., ECF 4-44, PageID 5994-98 ("Specifically, Davis' case was remanded solely for resentencing, and the trial court lacked authority to consider a motion to withdraw a jury waiver.").)

The Warden argues that Mr. Davis failed to comply with state procedural rules, (ECF 60, PageID 9972), when in fact the opposite is true.  Mr. Davis did not attempt to game the system by failing to raise claims he "no doubt" could have, as the Warden suggests.  Rather, he was precluded by the state courts from re-raising claims that they already assessed and that did not relate to his second resentencing.  In other words, Mr. Davis is not arguing that he declined to re-raise those claims because he "was unlikely to prevail" in state court.  (*Id*. at PageID 9968.) Rather, he was procedurally barred from doing so.  Accordingly, it would be fundamentally unfair to penalize Mr. Davis for following the dictates of the state courts.

The Warden then argues, without citing any law, that even if Mr. Davis was barred from re-raising his conviction-based claims that the state courts already addressed, a "futility" exemption to exhaustion only applies to attempts to amend a habeas petition, not to an initial habeas petition.  (*Id.* at PageID 9968.)  To the contrary, section 2254(b)(1)(B)(i) does not require exhaustion where "there is an absence of available State corrective process."  (ECF 29, PageID 9159.)  Indeed, Mr. Davis cited several Sixth Circuit cases in his Traverse that waived an exhaustion requirement where "'pursuit [of a state remedy] is clearly futile.'"  (ECF 29, PageID 9159 (quoting *Sherley v. Parker*, 229 F.3d 1153, 2000 WL 1141425, at *5 (6th Cir. Aug. 8, 2000) (table)); *id*. (citing *Wiley v. Sowders,* 647 F.2d 642, 647 (6th Cir. 1981); *Matlock v. Rose,* 731 F.2d 1236, 1240 (6th Cir.1984)).)  *See also Turner v. Bagley,* 401 F.3d 718, 724 (6th Cir. 2005) (citing *Lucas v. Michigan,* 420 F.2d 259, 262 (6th Cir. 1970) (holding that "such a judicial runaround is not mandated" by the exhaustion requirement)); *Sulek v. Brunsman*, No. 3:06cv00238, 2009 WL 1935878, at *5 (S.D. Ohio June 23, 2009).  While some of these cases were in a different procedural posture than Mr. Davis's, *none* of them discussed an attempt to amend a habeas petition.

Finally, if the Court finds further exhaustion necessary, Mr. Davis has requested the opportunity to exhaust his claims in the Ohio Supreme Court while staying the instant claims. (Traverse, ECF 29, PageID 9160-61 (*citing Rhines v. Weber,* 544 U.S. 269, 278 (2005) (holding that if there is good cause for the failure to exhaust state remedies, district courts should "stay, rather than dismiss," a premature habeas petition)).)  Mr. Davis had good cause for not having sought to do so previously, given the novel procedural context and the fact that the state courts would have barred any such attempt.  *See Davis XIV*, 9 N.E.3d at 1040.

## II.    THE WARDEN'S RESPONSES MISCHARACTERIZE MR. DAVIS'S OBJECTIONS TO INVIDUAL CLAIMS AND ARE WITHOUT MERIT.

### A.    First and Second Grounds for Relief

The Warden argues that this Court should reject Mr. Davis's objections to the Magistrate Judge's non-cognizability finding for Grounds for Relief 1(C) and 2(A) because "Davis adheres to the false proposition of law that *Hurst* forbids a jury waiver in a capital case."  (ECF 60, PageID 9974; *see also id*. at 9977.)  This is a mischaracterization of Mr. Davis's position.  While a capital defendant *could* knowingly and intelligently waive a jury, that did not happen in this case, where Mr. Davis did not knowingly and intelligently waive rights in 1984 concerning a 2009 trial with new evidence, new lawyers, new judges and new applicable statutory requirements that were not even envisioned by Ohio's legislature in 1984.  As Mr. Davis explained in his objections, the trial court violated Mr. Davis's constitutional rights as established by *Apprendi* and *Ring* when it forced him to be sentenced before three completely new judges twenty-five years after his jury waiver—in addition to all the other constitutional infirmities with Mr. Davis's jury waiver—despite the fact that he had specified that he was forgoing his jury-trial rights in favor of being tried and sentenced by three specific, named judges. (ECF 57, PageID 9847-49 (citing Jury Waiver and Election of Three-Judge Panel, May

8, 1984, ECF 4-3, PageID 433).) Even before his resentencing, the Sixth Circuit warned the state courts *in this case* against such behavior. *Davis v. Coyle* (*Davis X*), 475 F.3d 761, 780 (6th Cir. 2007) (recognizing "a legitimate question as to whether a criminal defendant should be held to a jury waiver entered almost 25 years before his newly-mandated sentencing hearing.").

Regarding Mr. Davis's Grounds 1(A), 1(B), and 1(D), the Warden does not address the substance of Mr. Davis's objections, incorporated here by reference. (*See* ECF 57, PageID 9849-57.) Instead, the Warden mischaracterizes the substance of the claims as whether "a defendant's mis-prediction of events that postdate his waiver of jury renders the jury waiver unconstitutional." (ECF 60, PageID 9975.) As explained in his objections, Mr. Davis alleged in Ground 1(A) that he was forced to waive his right to trial by jury because the trial court refused to sever the weapon-under-disability charge. This claim has nothing to do with prediction of events after his jury waiver, and the Sixth Circuit expressed strong reservations in ruling against relief on this point. (ECF 57, PageID 9850 (*citing Davis X*, 475 F.3d at 778).) In Ground 1(B), Mr. Davis alleged that the waiver was not knowing and intelligent because he could not have known that the Supreme Court of Ohio would refuse to extend *State v. Penix*, 513 N.E.2d 744, 746–47 (Ohio 1987), as to him, and thus leave him eligible for a death sentence upon resentencing, in violation of clearly established federal law. (ECF 57, PageID 9851-56.) In Ground 1(D), Mr. Davis alleged that his waiver was not knowing and intelligent because he did not know that two of the three judges on his panel represented a party adverse to him in a prior case. (*Id.* at PageID 9856-57.) Again, this claim has nothing to do with future events, but with whether the jury waiver was knowing and intelligent when relevant facts were not disclosed to Mr. Davis *at the time of his waiver*. (*Id.*)

Regarding Ground 1(E), the Warden repeats the inaccurate fair-presentment arguments examined above. The Warden does not address Mr. Davis's substantive objections, incorporated here by reference, such as the fact that the Magistrate Judge mistakenly relied on analysis relating to a different claim in state court, and that the federal court is not foreclosed from reviewing the claim where an Ohio court erroneously applied *res judicata*. (ECF 57, PageID 9857-59.)

Mr. Davis incorporates by reference his objections to the Magistrate Judge's denial of his Second Ground for Relief, for many of the same reasons as his objection to the First Ground for Relief. (ECF 57, PageID 9860-64.) Contrary to the Warden's assertion that "there was no clearly established federal law on the subject of the continued enforcement of a prior jury waiver during state court resentencing proceedings," the Supreme Court has in fact repeatedly held that a plea bargain only binds a defendant insofar as he waived a particular right in that agreement and did so knowingly and intelligently. *See, e.g., Puckett v. United States*, 556 U.S. 129 (2009); *Mabry v. Johnson*, 467 U.S. 504 (1984); *Santobello v. New York*, 404 U.S. 257 (1971). Consequently, to the extent that the terms of Mr. Davis's waiver of jury sentencing allowed for sentencing only by the three named judges whom he agreed upon, he could not be sentenced by judges not contemplated by that agreement, and he did not knowingly, intelligently, and voluntarily agree to sentencing by any other judges.

**B.     Fifth Ground for Relief**

The Warden argues that Mr. Davis wrongly relied on *Porter v. McCollum*, 558 U.S. 30, 43 (2009), which reversed the denial of habeas relief where a court unreasonably reduced mitigating evidence to "inconsequential proportions" and "unreasonably discounted" each piece of mitigating evidence. (ECF 60, PageID 9977-78.) Contrary to the Warden's assertions, Mr.

10

Davis never argued that *Porter* overruled *Harris v. Alabama*, 513 U.S. 504, 512 (1995), which noted that "that the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer." *Harris*, in turn, did not overrule the clearly established federal law requiring individualized determination of "the particularized characteristics" of a defendant. *See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 303–04 (1976); *Gregg v. Georgia*, 428 U.S. 153, 206 (1976); *Profitt v. Florida*, 428 U.S. 242, 251 (1976).  The sentencing panel was unable to do so in this case because it ignored and impermissibly discounted all mitigating evidence, in violation of Mr. Davis's rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  (ECF 29, PageID 9217-23.)  He incorporates his remaining objections by reference.  (ECF 57, PageID 9872-76.)

### C.      Sixth Ground for Relief

The Warden accuses Mr. Davis of repeating "near verbatim" the same arguments in his objections, but does not cite any particular language supporting this allegation.  (ECF 60, PageID 9978-79.)  Mr. Davis incorporates by reference the detailed reasoning in his objections, which discuss the Magistrate Judge's recommendations point by point.  (ECF 57, PageID 9876-79.)

### D.      Third Ground for Relief

The Warden characterizes this claim as whether "trial counsel should have presented more anecdotes about his good behavior in prison," (ECF 60, PageID 9979), contrary to its actual substance: whether defense counsel failed to reasonably investigate and present mitigating evidence of Mr. Davis's good prison behavior even though this information was known, available and relevant.  (ECF 6, PageID 8652-58.)  The omitted evidence that counsel should

have presented would have included testimony regarding Mr. Davis's character, interactions with prison personnel and fellow inmates, positive job evaluations, a certification of completion for a twelve-week stress management seminar, evidence showing Mr. Davis's demonstrated responsibility and lack of disciplinary reports, his GED, college courses, and application for membership with the Vietnam Veterans of America. None of this evidence was presented, nor was it duplicative of presented evidence. (ECF 57, PageID 9864-69.)

The Warden argues that there was a "constitutionally adequate investigation" because "this Court first noted that Davis himself provided relevant evidence to his own defense team." (ECF 60, PageID 9979.) The Magistrate Judge's recommendations contain no conclusion that trial counsel need not conduct any mitigation investigation so long as their client provides them with the limited files to which he has access in prison. (ECF 51, PageID 9668-69.) Indeed, such a conclusion would run counter to the holdings of the Supreme Court. *See, e.g., Rompilla v. Beard*, 545 U.S. 374, 381–90 (2005) (finding counsel deficient in failing to examine the court file on petitioner's prior conviction, even where the Commonwealth argued that information trial counsel gathered from petitioner and other sources was sufficient investigation); *Wiggins v. Smith*, 539 U.S. 510, 534–35 (2003) (a *Strickland* violation is established where the scope of an attorney's investigation into mitigating evidence prior to trial was "unreasonable in light of what" counsel knew about their client); *Williams v. Taylor*, 529 U.S. 362, 396-98 (2000) (counsel in a capital case has an "obligation to conduct a thorough investigation of the defendant's background" to determine the availability of mitigating evidence).

Despite "mostly agree[ing]" with Mr. Davis's "specific contention" that Judge Graham's analysis in Mr. Davis's previous habeas petition regarding whether he was prejudiced at his *first* resentencing is irrelevant to this Court's evaluation of this *second* resentencing, the Warden

nevertheless asserts that the adjudication in the prior habeas case should have "precedential value" here.  (ECF 60, PageID 9980.)  The Warden is incorrect.  The analysis involved different facts—a different mitigation presentation—and was vacated *on this ground* by the Sixth Circuit.  *See Davis X*, 475 F.3d at 774-75.

Mr. Davis also does not "merely" disagree with the Magistrate Judge's factual assessment.  (ECF 60, PageID 9980.)  Rather, he laid out in his objections how the Magistrate Judge's recommendations erred as a matter of fact and law.  For example, the recommendation that the mitigation evidence at issue was "unlikely to have changed Davis's sentence when the aggravating circumstance could be reasonably interpreted as 'overwhelming'" is contrary to the Sixth Circuit's holding in Mr. Davis's own case.  (ECF 57, PageID 9867.)  The Warden also accuses Mr. Davis of "blather[ing] on with boilerplate citations," though the Warden does not cite any particular page to support this allegation.  (ECF 60, PageID 9980-81.)  To the contrary, Mr. Davis discussed the decades of powerful *Skipper* evidence that his counsel unreasonably failed to include in his case.  As he explained, there is no reasonable strategy that would including leaving out evidence that the Sixth Circuit held was compelling enough to support a grant of habeas relief.  (ECF 57, PageID 9864-69.)

### E.     Fourth Ground for Relief

The Warden mischaracterizes Mr. Davis's claim as whether Ohio law "render[s] the findings by a three-judge panel as conclusive such that state court appellate review in becomes meaningless."  (ECF 60, PageID 9981.)  To begin, while the Magistrate Judge and the Warden mentioned only the standard-of-review issue, Mr. Davis has asserted that his counsel was ineffective for failing to inform him of several additional collateral consequences of his decision to waive his right to a jury trial.  (Petition, ECF 6, PageID 8659-68.)  In addition, Mr. Davis

never asserted that appellate review was "meaningless"—only that a capital defendant should always be advised prior to waiving a jury if, as here, his case will be subject to a less favorable standard of review on appeal if tried before a three-judge panel. (*Id*. at PageID 8660-62.)

The Warden does not address Mr. Davis's other objections on this claim, including that the Magistrate Judge appeared to address standards of proof rather than standards of review, or that Mr. Davis cited affidavits proving that his attorneys fell below the standard for capital representation. (ECF 57, PageID 9869-72 (citing Report and Recommendations, ECF 51, PageID 9670; Traverse, ECF 29, PageID 9213-14).)

### F.    Seventh Ground for Relief

Mr. Davis's Seventh Ground for relief is not, as the Warden alleges, whether "trial defense counsel should have called more witnesses and pursued a different mitigation theme," (ECF 60, PageID 9981), but rather whether defense counsel failed to reasonably investigate and present mitigation evidence in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments, (ECF 6, PageID 8678-92). The Warden argues that Mr. Davis's counsel gave a "robust presentation of expert and family evidence" as compared to the "barely more than nothing at all" offered in *Wiggins*, 539 U.S. 510. (ECF 60, PageID 9981). In fact, *Wiggins* supports Mr. Davis's claim that "counsel chose to abandon their investigation at an unreasonable juncture": "Despite these well-defined norms, however, counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources." 539 U.S. at 524, 527. Mr. Davis's claim and objections discuss the many ways in which trial counsel ineffectively conducted their mitigation presentation, none of which the Warden addressed. Far from being robust, trial counsel's presentation was so unreasonably deficient as to affirmatively prejudice Mr. Davis, for example by promising testimony it could

not deliver, putting on testimony that Mr. Davis could kill again if released from prison, failing to provide critical substantive information about Mr. Davis and his family upbringing, and failing to adequately investigate his dysfunctional family.  (ECF 57, PageID 9880-92.)

The Warden argues that mitigation investigator John Lee would have offered only cumulative "feel-good anecdotes."  (ECF 60, PageID 9982).  As explained in Mr. Davis's objections, the information was not cumulative of other evidence and was necessary to give the panel a complete picture of Mr. Davis's family history—including about Mr. Davis's parents' alcoholism, violence and neglect, how Mr. Davis's father abandoned his wife and children, and how Mr. Davis was physically abused by his mother and other relatives.  (ECF 57, PageID 9888-99 (citing 2nd PC Ex. F, G, H, I, ECF 4-46; PageID 6394-6402).)  Counsel's decision not to present evidence clearly prejudiced Mr. Davis.  (2nd Resent'g Op., Sept. 21, 2009, ECF 4-39, PageID 4933 ("[T]he separate testimony of Defendant's family and friends does not support Dr. Smith's conclusion that Defendant suffered an extreme and dysfunctional upbringing.").)  The Warden's description of such evidence as "feel-good anecdotes" is inaccurate to say the least.

### G.    Eighth Ground for Relief

Mr. Davis incorporates by reference his objections to the Magistrate Judge's procedural default analysis.  (ECF 57, PageID 9893-97.)  The Warden asserts that "Davis merely restates the claim in a *single sentence* and says no more about the recommended denial for procedural default due to failure of fair presentation" regarding Ground 8(B)—counsel's to conduct *voir dire* of Judge Pater.  (ECF 60, PageID 9893 (emphasis added).)  The Warden ignores Mr. Davis's multi-page objection on this point, which noted that he specifically alleged ineffective assistance of his post-conviction counsel in his Traverse as "cause" to excuse the failure to raise the issue.  (ECF 57, PageID 9893-95.)

15

Regarding Ground 8(A)—counsel's failure to seek the recusal of Judge Andrew Nastoff—the Warden states without explanation that "this Court determined the allegation was factually inaccurate." (ECF 60, PageID 9982.) It's not clear what inaccuracy the Warden is referencing. To the extent this is a reference to the Magistrate Judge's reliance as instructive on *In re Disqualification of Nastoff*, 983 N.E.2d 354 (Ohio 2012), that decision was based on entirely different evidence than what Mr. Davis presented in his post-conviction petition, and was about Judge Nastoff's capability to preside over Mr. Davis's post-conviction petition, not about the second resentencing itself. (ECF 57, PageID 9897-99 (citing Traverse, ECF 29, PageID 9250-51); *Nastoff*, 983 N.E.2d at 355.)

The Warden also mischaracterizes Mr. Davis's claim regarding Judge Nastoff as "a bare allegation of subjective bias." (ECF 60, PageID 9982). To the contrary, Mr. Davis has demonstrated that, for example, during the prosecution of Mr. Davis's nephew, Judge Nastoff "heard and cross examined some of the very same mitigation evidence that Davis presented in his case. It would be difficult, if not impossible, to put aside Judge Nastoff's prior opinions about the veracity and strength of the mitigation." (PC Ex. D, Aff. of Diane Menashe, ECF 4-46, PageID 6278-79.) To the extent that the Warden questions the support for Mr. Davis's allegations, this is exactly why Mr. Davis has argued that it would be inappropriate for this Court to deny his ineffective assistance of counsel claims without further factual development. (ECF 29, PageID 9246-47.)

The Warden also argues that the right to an impartial judge is limited to cases "where the compensation of the judge was dependent upon monetary sanctions against the defendant" (ECF 60, PageID 9982-83), a limitation which has no basis in caselaw, *see, e.g., In re Murchison*, 349 U.S. 133, 136 (1955) ("To this end no man can be a judge in his own case and no man is

permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered."); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980) ("A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions."); *Taylor v. Hayes*, 418 U.S. 488, 503 (1974) (finding bias where the judge had been the target of personal abuse or criticism from the party before him).  In *In re Murchison*, for example, the Court found a due process violation where the judge was "part of the accusatory process" as a "judge-grand jury," such that it would be "difficult if not impossible for a judge to free himself from the influence" of the earlier proceedings.  349 U.S. at 137-38 ("His recollection of [his 'grand jury' secret session] is likely to weigh far more heavily with him than any testimony given in the open hearings.")  So too here; it would be difficult if not impossible for Judge Nastoff to free himself from his prior opinions about the mitigation evidence that appeared in his previous case involving Mr. Davis's family.  Effective counsel would have sought his recusal.

Finally, the Warden does not address Mr. Davis's objection to the Magistrate Judge's decision to discuss potential bias, rather than the actual bias alleged here.  (ECF 57, PageID 9897-99.)

### H.    Sixteenth Ground for Relief

The Warden asserts that "no competent counsel would be obligated to pursue" the "extraordinary remedy" of vacating Mr. Davis's prior conviction "based solely on a casual letter from the defendant's friend."  (ECF 60, PageID 9984.)  Mr. Davis is not seeking to vacate his prior conviction, but to dispute the existence of aggravating circumstances.  Such a remedy is not extraordinary, but rather a fundamental tenet of capital defense representation.  There is a

reasonable probability that had the evidence been investigated and presented, the weight of the sole aggravating factor would have been lessened, and at least one judge would have had reasonable doubt as to whether the aggravating circumstances outweighed the mitigation.

Further, the point of the claim is that Mr. Davis's trial counsel did not even make an informed decision to abandon an investigation or argument based on this evidence. As explained in Mr. Davis's objections, no strategic reason existed not to contest the existence of the aggravated circumstance based on a prior purposeful killing. (ECF 57, PageID 9924-27.) The Supreme Court has vacated the denial of habeas relief where, as here, there was "significant evidence that counsel concededly failed to investigate" regarding a prior incident used as aggravation. *Andrus v. Texas*, 140 S. Ct. 1875, 1885 (2020).

The Warden's remaining response is to repeat the inaccurate fair-presentment arguments discussed above. (ECF 60, PageID 9983-84.)

## I.     Ninth Ground for Relief

The Warden argues that the Eight Amendment does not require "temporally swift" executions, and that Mr. Davis does not argue that the Magistrate Judge's decision was "wrong." (ECF 60, PageID 9984.) To the contrary, Mr. Davis noted a long line of United States Supreme Court opinions that support his request for relief. (ECF 57, PageID 9900-02 (citing*, inter alia, Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)); *Furman v. Georgia,* 408 U.S. 238, 312 (1972) (*per curiam*) (White, J., concurring)).) As noted in the Traverse, executing Mr. Davis after he has spent thirty-six years and counting on death row due to state-court errors, with (so far) seven execution warrants for his death to occur on a date certain during his time on death row, constitutes "cruel, inhuman or degrading

treatment or punishment" and violates norms of international law; thus it is contrary to evolving standards of decency. (ECF 29, PageID 9256-57.)

> ### J.  Tenth Ground for Relief

The Warden asserts that there can be "no viable prejudice" even where several witnesses' identifications of Mr. Davis were constitutionally unreliable, due to their lack of prior familiarity with Mr. Davis, their failure to describe almost any physical characteristics of the shooter and the inaccuracies in the few descriptions they did provide, and the highly suggestive photograph of Mr. Davis with the victim that police showed them.  (ECF 60, PageID 9984-85.)  Mr. Davis explained in his objections why the Magistrate Judge should not have recommended denying Mr. Davis's claim on the basis that Judge Graham found no prejudice in Mr. Davis's previous habeas case.  (ECF 57, PageID 9905-07.)  For example, Judge Graham relied on the credibility of the other two witnesses whose testimony, it turns out, was similarly problematic. (*See* Nineteenth Ground for Relief, Petition, ECF 6, PageID 8735-38.)  The Magistrate Judge also relied on the Ohio Supreme Court's finding of "sufficient evidence" to support the conviction, even though at that time the court had not yet heard the arguments at issue here.  (ECF 51, PageID 9681-82 (citing *Davis II*, 528 N.E.2d 925, 931 (Ohio 1988).)  If anything, the fact that the Ohio Supreme Court relied on the identifications at issue to find sufficient evidence only underscores how critical they were to the prosecution's case, and how Mr. Davis was prejudiced by the unreliable testimony and suggestive procedures used here.

The Warden mentions but does not contest Mr. Davis's argument, incorporated here by reference, that any procedural default is excused by ineffective assistance of appellate counsel. (ECF 57, PageID 9903-05.)

### K.      Twenty-First to Twenty-Sixth Ground for Relief

The Warden refers to Mr. Davis's seven pages of objections—responding point-by-point to the Magistrate Judge's recommendations regarding Ohio's post-conviction and lethal injection procedures—as "boilerplate claims," and does not respond to their substance.  (ECF 60, PageID 9985.)  Mr. Davis incorporates his objections by reference.  (ECF 57, PageID 9940-46.)

### L.      Eleventh Ground for Relief

The Warden argues that Mr. Davis's objections are based on "sweeping generalizations" from "erroneously cited" U.S. Supreme Court cases.  (ECF 60, PageID 9986.)  The Warden also refers to Mr. Davis's citations as "too flimsy and rickety to bear any weight."  (*Id.*)  As the Warden does not cite any caselaw or any particular objection to support this assertion, Mr. Davis simply incorporates his objections by reference.  (ECF 57, PageID 9907-12.)  The Warden also argues that Mr. Davis's due process and equal protection arguments are based on similar principles, but does not explain what that has to do with the merits of the claim.   (ECF 60, PageID 9986.)

The Warden also does not address the substance of numerous objections, including the fact that that under the reasoning of the Sixth Circuit in Mr. Davis's own case, there is no rational basis for holding him to his twenty-five-year-old jury waiver in a second resentencing and finding him eligible for the death penalty.  (ECF 57, PageID 9907-12 (citing *Davis X*, 475 F.3d 761, 780 (6th Cir. 2007)).)

Finally, the Warden states that "[o]f course, Davis's contention is incorrect" that the Magistrate Judge's citation to the state court decision in *State v. White*, 972 N.E.2d 534, 549 (Ohio 2012), as the standard for "clearly established federal law" is inappropriate under 28 U.S.C. § 2254(d)(1).  (ECF 60, PageID 9986.)  The Warden does not explain what component of

Mr. Davis's objection is incorrect. Accordingly, Mr. Davis stands by his objection to the Magistrate Judge's *Ex Post Facto* Clause recommendations. (ECF 57, PageID 9910-12.) As Mr. Davis explained in his objections, the retroactive application of Ohio Rev. Code § 2929.06(B) to his case violates the clearly established law that "the *Ex Post Facto* Clause forbids the [government] to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range." *Peugh v. United States*, 569 U.S. 530, 550 (2013) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505 (1995)). (*Id.* at PageID 9910.)

### M.     Twelfth Ground for Relief

In response to Mr. Davis's claim that the denial of his motion to inspect grand jury proceedings denied him a fair trial, the Warden argues that Mr. Davis relies on cases that "have no bearing on the state-by-state secrecy of grand jury proceedings." (ECF 60, PageID 9986-87.) In particular, the Warden references *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), and *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). (*Id.*) Those cases were cited for the proposition that the Ohio Supreme Court's ruling was contrary to the constitutional requirement of allowing "a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (quotations omitted)); *Ritchie*, 480 U.S. at 56 (holding that defendants have "the right to put before a jury evidence that might influence the determination of guilt"). (ECF 57, PageID 9913.) In addition, Mr. Davis has also cited cases such as *Dennis v. United States,* which reversed and remanded for a new trial where "petitioners were entitled to examine the grand jury minutes relating to trial testimony of the four government witnesses, and to do so while those witnesses were available for cross-examination." 384 U.S. 855, 875 (1966). (*See* Traverse, ECF 29, PageID 9280.) Here, Mr. Davis demonstrated a particularized need to access the grand jury testimony in light of

various inconsistencies by eyewitnesses. (*See, e.g.,* Traverse, ECF 29, PageID 9319-20; Motion for Discovery, ECF 38, PageID 9461-62.)

### N.     Thirteenth Ground for Relief

The Warden does not discuss the substance of Mr. Davis's objections, instead quoting only from Mr. Davis's introductory paragraph.  (ECF 60, PageID 9987, quoting ECF 57, PageID 9915.)  Accordingly, Mr. Davis incorporates his objections by reference, including the objection that it is not speculation that Butler County practiced the discriminatory grand jury foreperson selection policy, *see* Ohio Rev. Code § 2939.02, and that further factual development would prove the racially discriminatory nature of this practice in Butler County.  (ECF 57, PageID 9914-17.)

### O.     Fourteenth Ground for Relief

The Warden argues that "defense witness Elbert Avery did in fact appear and testify in Davis's defense case."  (ECF 60, PageID 9987.)  While Mr. Avery was called to the stand, he discussed his personal background for about one page of testimony, and the court stopped defense counsel as it began substantive questioning.  (Trial Tr., ECF 5-3, PageID 7510-11.)  By prohibiting Mr. Avery from testifying as to what he saw on the night of the shooting, the trial court violated Mr. Davis's constitutional rights to confront witnesses against him, present a defense, and produce witnesses on his behalf.

Even though it is unrelated to the Magistrate Judge's recommendations or Mr. Davis's objections, the Warden next argues that Mr. Davis's claim is a matter of "ordinary state evidentiary law" prohibiting impeachment of one's own witness, rather than a constitutional issue.  (ECF 60, PageID 9987-88.)  Mr. Davis supported the constitutional nature of his claim in his Traverse.  (ECF 29, PageID 9286-87 (citing, *inter alia, Chambers v. Mississippi*, 410 U.S.

284, 302 (1973)).)  In *Chambers*, for example, the Supreme Court held that a Mississippi common-law rule that a party may not impeach his own witness "plainly interfered with Chambers' right to defend against the State's charges."  410 U.S. at 295.  Indeed, "[t]he availability of the right to confront and to cross-examine those who give damaging testimony against the accused has never been held to depend on whether the witness was initially put on the stand by the accused or by the State."  *Id.* at 297-98.  Accordingly, the Warden's argument to the contrary is without merit.

As the Warden does not address Mr. Davis's objections that he was prejudiced by the exclusion of Mr. Avery's testimony, Mr. Davis incorporates his objections by reference.  (ECF 57, PageID 9919-20.)  Mr. Davis incorporates his procedural-default arguments as well, including that any default is excused by ineffective assistance of appellate counsel.  (*Id.* at PageID 9918-19.)

### P.     Fifteenth Ground for Relief

The Warden does not address the substance of Mr. Davis's objection that Magistrate Judge incorrectly noted that "Judge Graham relied in part on the Twelfth District's *res judicata* ruling to deny the claim in Davis's first habeas petition," (ECF 51, PageID 9702 (citing *Davis IX*, ECF 16-2, PageID 8967-74), when in fact Judge Graham found this claim "fairly presented to the state courts" in that case, (ECF 57, PageID 9921 (citing *Davis IX*, ECF 16-1, PageID 8924-25).  The Warden's only response is to repeat the inaccurate fair-presentment arguments discussed above.  (ECF 60, PageID 9988.)

The Warden argues that Mr. Davis's guilty plea to second-degree murder "directly contradicts Mr. Davis's habeas claim that competent counsel should have acted to try and undo the long-settled prior conviction."  (*Id.*)  The Warden appears to confuse this claim—that the

specification used to make Mr. Davis death-eligible violated his constitutional rights—with his ineffective-assistance-of-counsel claim in his Fifteenth Ground for Relief. In any event, contrary to the Warden's assertion, Mr. Davis is not seeking to reverse his prior conviction. Rather, as explained in his objections, this Court should exercise its jurisdiction under 28 U.S.C. § 2254 to determine the validity of an earlier conviction used to enhance the penalty for an offense for which Mr. Davis is currently in custody. (ECF 57, PageID 9921-23.)

### Q. Seventeenth Ground for Relief

As with the Fifteenth Ground for Relief, the Warden addresses this claim as an ineffective-assistance-of-counsel claim, when in fact the claim alleges *trial court error* in refusing defense counsel's motion to sever. (ECF 6, PageID 8729-31.) The Warden argues that "no competent counsel would think viable grounds to sever were present." (ECF 60, PageID 9989; *see also id.* ("[R]easonable counsel would lack any valid reason under state law to seek a severance.").) Mr. Davis's counsel in fact thought viable grounds to sever were present, and accordingly moved to sever the counts of the indictment. (ECF 5-1, PageID 7211-15.)

The Warden also cites an unpublished, out-of-circuit case to argue that the denial of Mr. Davis's motion to sever raises "state law questions only." (ECF 60, PageID 9988-89 (citing *Morens v. Meisner*, 702 F. App'x 446, 452 (7th Cir. 2017).) The cited case, however, addressed a different question: whether there is "a bright line constitutional rule that drug and felon-in-possession charges must be severed for trial because evidence of the felony conviction unfairly prejudices the defendant." *Morens*, 702 F. App'x at 450-52.

Mr. Davis raises a different issue here: whether the denial of his motion to sever violated Mr. Davis's right to a jury trial because it forced him to choose a hearing by a three-judge panel. (ECF 6, PageID 8729-31.) As Mr. Davis explained in his Traverse, this denial violated his due

process rights and right to a jury trial because it forced him to choose a hearing by a three-judge panel, rather than prejudicially tell a jury that the man on trial for murder of his girlfriend had previously been convicted of murdering his wife.  (Traverse, ECF 29, PageID 9304-06 (citing, *inter alia, Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Adams v. United States*, 317 U.S. 269, 275 (1942).)

The Warden argues that there is no "possible confusion by the jury," as "Davis has always been before a three-judge panel."  (ECF 60, PageID 9989.)  The point of the claim, however, is that Mr. Davis was forced to waive his right to a jury trial *as a result of* the court's denying his motion to sever.  (ECF 6, PageID 8729.)  This was the primary reason his counsel advised Mr. Davis to waive his right to a jury.  (Aff. of Michael Shanks, ECF 4-19, PageID 1966-69.)  Mr. Davis laid out in his objections why he felt forced into such a waiver, where no amount of curative instruction would remove the prejudice from his prior conviction from the jury's mind.  (ECF 57, PageID 9929-31.)

The Warden does not address Mr. Davis's objection that this Court must address the federal constitutional claims *de novo*, or that the denial of his motion was structural error and unfairly prejudicial, incorporated here by reference.  (*Id*. at PageID 9928-31.)

**R.  Eighteenth and Twentieth Ground for Relief**

The Warden refers to these grounds for relief as "boilerplate claims about proportionality review" even though both claims discuss the specific facts of Mr. Davis's case, including that the sole aggravating circumstance does not outweigh the mitigating evidence presented, and that the Ohio Supreme Court ignored any comparison to cases with similar facts where the death penalty was not imposed.  (ECF 60, PageID 9989)  The Warden cites *Getsy v. Mitchell*, 495 F.3d 295, 309 (6th Cir. 2007) (en banc), for the proposition that there is no proportionality review

requirement that a death sentence be compared with the sentences imposed in other cases.  (*Id.*)
As Mr. Davis explained in his Traverse, the Sixth Circuit based its conclusion on a misreading of
*Pulley v. Harris*, 465 U.S. 37, 44-51 (1984), that is contrary to the clearly established federal law
contemplating fundamental statutory protections, and the individualized assessment of a death
sentence, in cases such as *Zant v. Stephens*, 462 U.S. 862 (1983); *Gregg v. Georgia*, 428 U.S.
153 (1976); and *Furman v. Georgia*, 408 U.S. 238 (1972).  (ECF 29, PageID 9332-33.)

The Warden does not address any of Mr. Davis' objections, incorporated by reference,
including that extreme sentences that are grossly disproportionate to the crime are prohibited as
cruel and unusual under the Eighth Amendment; that the Ohio Supreme Court's review was
particularly arbitrary where it cited only two cases for similarly approved death sentences, *both
of which* had been overturned several years prior to the court's 2014 decision; or that no fair-
minded jurist could believe that deliberately excluding *all* of the cases resulting in a life sentence
from a state's proportionality review is constitutional.  (ECF 57, PageID 9933-36.)

### S.    Nineteenth Ground for Relief

The Warden declined to address the substance of Mr. Davis's objections: that under the
three factors listed in *State v. Walker*, 82 N.E.3d 1124, 1128-29 (Ohio 2016), on which the
Magistrate Judge relied, the State failed to prove "prior calculation and design," a required
element to sustain a conviction for aggravated murder.  (ECF 57, PageID 9937-39.)  Instead, the
Warden asserts, without any examples, that Mr. Davis's objections "are of no import" against the
Magistrate Judge's "unassailable" sufficiency-of-evidence analysis.  (ECF 60, PageID 9990.)
Mr. Davis incorporates his objections by reference.

## III. CONCLUSION

For the reasons stated herein and in Mr. Davis's objections, the Court should sustain his objections to the Magistrate Judge's Report and Recommendation, address Mr. Davis's Grounds for Relief *de novo* and grant his Petition for Writ of Habeas Corpus.

The Warden does not address Mr. Davis's argument that, should this Court overrule his objections, it should allow him to proceed on appeal *in forma pauperis*, and grant him a certificate of appealability on his constitutional claims. (ECF 57, PageID 9946-48.) Accordingly, in the alternative to sustaining his objections to the Magistrate Judge's recommendations on the claims in his petition, Mr. Davis request this Court grant his un-opposed request for an opportunity to brief a request for a certificate of appealability and permission to proceed *in forma pauperis* on appeal.

Respectfully submitted,

**Deborah L. Williams**
Federal Public Defender

*/s/ Erin G. Barnhart*
**Erin G. Barnhart (0079681)**
 *Trial attorney*

**Jordan S. Berman (0093075)**
 *Co-counsel*

Assistant Federal Public Defenders
Federal Public Defender's Office
for the Southern District of Ohio
Capital Habeas Unit
10 W. Broad Street, Suite 1020
Columbus, Ohio 43215
Phone: (614) 469-2999
erin_barnhart@fd.org
jordan_berman@fd.org
**Counsel for Petitioner**

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to the email

addresses of opposing counsel on file with the Court.

*/s/ Erin G. Barnhart*
**Erin G. Barnhart (0079681)**
Assistant Federal Public Defender