# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

VON CLARK DAVIS,

             Petitioner,              :     Case No. 2:16-cv-495

   - vs -

                                              District Judge Susan J. Dlott
                                              Magistrate Judge Michael R. Merz

TIMOTHY SHOOP, Warden,
  Chillicothe Correctional Institution

                                     : 

             Respondent.

# ORDER ADOPTING REPORT AND RECOMMENDATIONS IN PART
# AND DENYING PETITION FOR HABEAS CORPUS

This capital habeas corpus case is before the Court for decision on the merits on the Petitioner Von Clark Davis's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (ECF No. 6). The case was referred to the Magistrate Judge for a Report and Recommendations, 28 U.S.C. § 636(b)(1)(B), which he filed on June 16, 2020 (Report, ECF No. 51). Davis subsequently filed Objections (ECF No. 57), to which the Warden has responded (Response, ECF No. 60), and Davis has filed a Reply (ECF No. 63).[1] For the reasons set forth below, the Report is ADOPTED, with the following exceptions: Davis is allowed to proceed *in forma pauperis* on appeal and is granted a certificate of appealability as to Claims Four and Eleven, and Claims Twenty-Two

---

[1] Davis raised no new arguments and incorporated by reference his objections to the following: Claims Six, Eleven, Thirteen, Nineteen, and Twenty-One through Twenty-Six; and Sub-claims 1(A-B, D-E), 2(A), and 8(B) (Reply, ECF No. 63, PageID 10002, 10004, 10008, 10013-14, 10015, 10019).

through Twenty-Five only as to their cognizability.[2] The Petition is DENIED.

## I. LEGAL STANDARDS

### A. 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b)

A District Judge may, as the undersigned has here, refer a dispositive matter to a Magistrate

Judge "to submit to a judge of the court proposed findings of fact and recommendations for the

disposition[.]" 28 U.S.C. § 636(b)(1)(B).

---

[2] The Magistrate Judge extensively and accurately set forth the factual background and procedural history of the case (Report, ECF No. 51, PageID 9586-9644), which the Court adopts in full. Given the case's history and complexity, the Court finds it useful to restate the ordinal fashion in which the parties and the Court have long referred to the various proceedings:

1. *Davis I*: *State v. Davis*, 12th Dist. Butler No. CA84-06-071, 1986 WL 5989 (May 27, 1986); (**Appeal from conviction and first sentencing to death**)
2. *Davis II*: *State v. Davis*, 38 Ohio St. 3d 361 (1988) (**Appeal from conviction and first sentencing to death**);
3. *Davis III*: *State v. Davis*, 12th Dist. Butler No. CA89-09-123, 1990 WL 165137 (Oct. 29, 1990) (**Appeal from second sentencing to death**);
4. *Davis IV*: *State v. Davis*, 63 Ohio St. 3d 44 (1992) (**Appeal from second sentencing to death**);
5. *Davis V*: *State v. Davis*, No. CR83-12-0614 (Butler Cnty. C.P. Jun. 30, 1995) (State Court Record, ECF No. 4-20, PageID 2158-66) (**First postconviction petition**)
6. *Davis VI*: *State v. Davis*, 12th Dist. Butler No. CA95-07-124, 1996 WL 551432 (Sept. 30, 1996) (**Appeal from first postconviction petition**)
7. *Davis VII*: *State v. Davis*, No. 96-2547, 77 Ohio St. 3d 1520, 674 N.E.2d 372 (TABLE) (Jan. 15, 1997) (**Appeal from first postconviction petition**)
8. *Davis VIII*: *State v. Davis*, 86 Ohio St. 3d 212 (1999) (*per curiam*) (**Appeal from application to reopen direct appeal**)
9. *Davis IX*: *Davis v. Bagley*, No. C-1-97-402, ECF No. 16-2, PageID 8947-9032 (S.D. Ohio Jan. Sept. 4, 2001) (Graham, J.) (**Habeas petition**)
10. *Davis X*: *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007) (**Appeal from habeas petition**)
11. *Davis XI*: *State v. Davis*, 12th Dist. Butler No. CA2009-10-263, 2011-Ohio-787 (Feb. 22, 2011) (**Direct appeal from second resentencing**);
12. *Davis XII*: *State v. Davis*, No. CR83-12-0614 (Butler Cnty. C.P. Nov. 26,2012), unreported, included at State Court Record, ECF No. 4-47, PageID 6633-50 (**Second postconviction petition**);
13. *Davis XIII*: *State v. Davis*, 12th Dist. Butler, No. CA2012-12-258, 2013-Ohio-3878 (Sept. 9, 2013) (**Appeal from second postconviction petition**);
14. *Davis XIV*: *State v. Davis*, 139 Ohio St. 3d 122, 2014-Ohio-1615 (**Direct appeal from second resentencing**);
15. *Davis XV*: *State v. Davis*, 144 Ohio St. 3d 1441, 2015-Ohio-3427 (**Appeal from second postconviction petition**);
16. *Davis XVI*: *Davis v. Ohio*, 574 U.S. 1202 (2015) (**Denial of certiorari from direct appeal from second resentencing**); and
17. *Davis XVII*: *Davis v. Ohio*, 136 S.Ct. 88 (Mem.) (2016) (**Denial of certiorari from appeal from second postconviction petition**).

Accordingly, future references to this order shall be to "*Davis XVIII*."

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).


**B.    28 U.S.C. § 2254**

As Davis is imprisoned based on a state court judgment, he may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition:

> [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]

28 U.S.C. § 2254(d). A habeas corpus petitioner must also satisfy additional procedural requirements, including but not limited to exhaustion of State court judicial remedies. 28 U.S.C. § 2254(b). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, this Court's review of a claim adjudicated on its merits in a State court proceeding is sharply circumscribed: the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133,

3

140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. A determination of a factual issue made by a State court is presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court may be found to have acted "contrary to" federal law in two ways: (1) if the state court's decision is "substantially different from the relevant precedent" of the United States Supreme Court; or (2) if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [United States Supreme Court] precedent[.]" *Williams v. Taylor*, 529 U.S. 362, 405 (2006). A state court does not act contrary to federal law simply because its application of federal law was incorrect. Rather, the decision must have been "mutually opposed[,]" *id.*, to "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), which encompasses only the holdings of Supreme Court decisions, and not their dicta. *Williams*, 529 U.S. at 412.

The "unreasonable application" standard is distinct from and more deferential than that of "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court decision was erroneous. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 76 (2003) (internal quotation marks omitted). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (internal citation omitted). However, this deferential standard applies only when the

state court has addressed the merits of a claim raised on appeal; "[w]here a state court has not adjudicated a claim on the merits, the issue is reviewed *de novo* by a federal court on collateral review." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

### C.      Exhaustion, Procedural Default, and *Res Judicata*

A federal habeas corpus petitioner must exhaust his claims in the state court before he may bring those claims before this Court.  28 U.S.C. § 2254(b)(2).  This can be shown by demonstrating that:  (1) the highest court of a state has adjudicated the merits of the claim; or (2) under state law, the claims are procedurally barred.  *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).  "[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  However, if a claim is procedurally barred under state law because "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, [then] federal habeas review of the claims is barred." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Under Ohio law, failure to make timely objections at trial or to raise the issue on direct appeal from the trial court, if possible, bars a petitioner from raising that claim in a federal habeas corpus petition.  *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000), citing *State v. Perry*, 10 Ohio St. 2d 175, 176 (1967), paragraphs eight and nine of the syllabus; *see also*, *e.g.*, *Coleman v. Mitchell*, 244 F.3d 533, 538-39 (6th Cir. 2001) ("*Coleman I*"), *superseded by statute on other grounds as stated in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020) (holding that the "*Perry* rule" regarding *res judicata* was an adequate and independent state law ground upon which to find a claim procedurally defaulted, and thus, bar its consideration of claims by district courts); *Wong*, 142 F.3d at 322 (emphasis added) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of *res*

*judicata*.").  A claim of ineffective assistance of counsel—*e.g.* for failure to make timely objections at trial—normally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

Further, in raising the claims in the state court, a petitioner must set out why he believes his federal constitutional rights have been violated to avoid procedural default.  28 U.S.C. § 2254; *Gray*, 518 U.S. at 162-63.  The procedural default analysis focuses on the "last explained state court judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).  Therefore, a decision by a state supreme court in which the court declines to exercise jurisdiction over an appeal from an intermediate appellate court, but that does not provide reasons for that decision, does not constitute the "state judgment" upon which this Court resolves the procedural default question.  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), citing *Ylst, supra*.  However, the threshold for what constitutes an "explained state court judgment" is modest—an order from a state supreme court stating nothing more than "that the petitioner had failed to meet the burden of establishing entitlement to relief under [Michigan Rule of Criminal Procedure] 6.508(D) – though brief – constituted the last explained state court decision in the case." *Id*. (internal quotation marks omitted), quoting *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000).  A decision by a state court to review the merits of an otherwise-defaulted claim, as an act of grace to an appellant, does not save that claim from being procedurally defaulted in the federal District Court.  *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001) ("*Coleman II*"), quoting *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995).  Finally, a District Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180, 181 (2011).

A State's procedural default defense must clear four hurdles.  *First*, a petitioner must have

actually violated the state procedural rule; a state court's mistaken interpretation of a rule in finding that the petitioner violated that rule will not suffice. *Lee v. Kemna*, 534 U.S. 362, 376-77, 387 (2002); *Trevino v. Texas*, 503 U.S. 562, 567 (1992) (*per curiam*). *Second*, the case must not fall within an exception to the state procedural rule which the petitioner is alleged to have violated; *e.g.*, if the gravamen of a petitioner's ineffective assistance of counsel claim is based on evidence outside the trial court record, then failure to raise that claim on direct appeal does not constitute a procedural default. *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007). *Third*, the state court, in its last explained decision, must expressly state that a claim has been procedurally defaulted by failing to comply with a procedural rule; otherwise, "[w]hen a federal claim has been presented to a state court[,] and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication [of such a holding] or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. *Finally*, the state procedural rule must be "adequate"—that is, it must have been clearly announced, "firmly established[,] and regularly followed" by the state. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

The Sixth Circuit adopted a four-part test in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), in which the District Court must examine whether:  (1) a petitioner failed to comply with a procedural rule; (2) the state court enforced the procedural sanction; (3) the state procedural bar is "an adequate and independent ground" upon which the state can foreclose federal review; and (4) a petitioner can demonstrate good cause for not complying with the procedural rule, and actual prejudice from enforcement of the default. *Id*. at 138.  A petitioner may circumvent the procedural default bar by showing cause for the default and actual prejudice as a result of the alleged violation of federal law, "or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 749-50; *McCleskey v. Zant*, 499 U.S.

467, 494-95 (1991). A petitioner must show that an objective factor, external to petitioner, prevented him from complying with the procedural rule, *Murray*, 477 U.S. at 488, and that his trial was "infected with error so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *U.S. v. Frady*, 456 U.S. 152, 163 (1982), citing FED.R.CRIM.P. 52(b). Similarly, ineffective assistance of counsel in failing to raise a claim in postconviction can be considered good cause to set aside the procedural default and examine the claim on its merits. *Trevino v. Thaler*, 569 U.S. 413 (2013); *Martinez v. Ryan*, 566 U.S. 1 (2012) ("*Martinez-Trevino* doctrine.").

Procedural default may also be excused if a Petitioner can show, by a preponderance of the evidence, that he is "actually innocent," such that "a court cannot have confidence in the outcome of the trial[,]" *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001), quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995), and thus, his conviction constituted a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750.


## II.  ANALYSIS

### A.    Fair Presentation and Exhaustion

The Warden devotes much of his Response to arguing that many of Davis's claims should be considered defaulted for failure to raise them anew in the state courts after the second resentencing (ECF No. 60, PageID 9957 n.1, 9956-74). In his Reply, Davis notes that the Magistrate Judge did not accept this argument, even though it was raised in the Return of Writ (ECF No. 63, PageID 9996, citing *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015); Report, ECF No. 51, PageID 9652-53). Davis argues that he fairly presented the claims to the state courts, which considered those claims. *Id*. at PageID 9997, citing Traverse, ECF No. 29, PageID 9156-58. "Hence, there is no concern about fair presentment or exhaustion under AEPDA because Mr.

8

Davis's claims were in fact adjudicated in state court, and the resentencing judgment now at issue relied on that earlier, undisturbed conviction." *Id.* Further, Davis claims that the Warden's argument that there was nothing stopping Davis from re-raising claims in state court has no support in Ohio law, *id*. at PageID 9999, citing Response, ECF No. 60, PageID 9968, and that Davis did not re-raise the claims in state court because he was procedurally barred, not because it was futile; "section 2254(b)(1)(B)(i) does not require exhaustion where 'there is an absence of available State corrective process.'" *Id*. at PageID 10000, quoting Traverse, ECF No. 29, PageID 9159.

The Court agrees with Davis that he fairly presented and exhausted his claims in state court when appropriate, and that the procedural bar that kept him from raising the claims anew after the second resentencing did not, as the Warden argues, constitute a "purposeful bypass of the state courts[.]" (Response, ECF No. 60, PageID 9971). Thus, Davis has fairly presented and exhausted his claims, *King*, 807 F.3d at 160, and the Court will not procedurally default any claims for failure to attempt to raise them after the second resentencing. However, if a claim was previously procedurally defaulted by a state court, then the Court will examine whether that previous default bars Davis from obtaining relief on that claim.

### B. Jury Waiver Grounds for Relief

#### 1. Claim One: Jury Waiver not Knowing, Intelligent, and Voluntary

Davis sets forth five reasons as to why his conviction and death sentence are void due to the impermissible waiver of his fundamental right to a jury trial:

    a.    Mr. Davis's jury waiver was not voluntary because the trial court's denial of his motion to sever forced him to waive jury.

    b.    Mr. Davis's jury waiver was not knowing and intelligent because he did not know at the time of the waiver that Ohio

Supreme Court would refuse to apply the rule of *Penix* to his case and hold him eligible to be resentenced to death.

    c.    Mr. Davis's jury waiver was not knowing and intelligent because he did not know when he waived his right to a jury trial in favor of being tried before three specifically identified judges that he was also waiving his jury-trial rights twenty-five years in the future to instead be tried before an entirely different panel of three unknown judges.

    d.    Mr. Davis's jury waiver was not knowing and intelligent because he did not know that two of the three judges on his panel represented a party adverse to him in a prior case.

    e.    Mr. Davis's jury waiver was not knowing and intelligent because he did not know that a different standard of proof would be applied to him on appeal from a decision by three-judge panel than would have been applied to an appeal from a jury verdict.

(Petition, ECF No. 6, PageID 8565, 8626-27 (citations omitted)). The Magistrate Judge concluded that Sub-Claim 1(C) is not cognizable because *Hurst v. Florida* may not be applied retroactively on collateral review (Report, ECF No. 51, PageID 9650-51, citing *McKinley v. Arizona*, 140 S.Ct. 702, 709-10 (2020) (Ginsburg, J., dissenting); *Hurst*, 577 U.S. 92, 94, 102 (2016); *Schiro v. Summerlin*, 542 U.S. 348, 358 (2004); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)). The Magistrate Judge concluded that Sub-Claims 1(A, B, and D) failed on their merits for the same reasons that they did in *Davis IX*, and that Sub-Claim 1(E) was procedurally defaulted. *Id*. at PageID 9654-59.

As to Sub-Claim 1(A), Davis objects that "[t]he recommendation failed to note that the Sixth Circuit also expressed strong reservations in ruling against relief on this point" in *Davis X*. "Accordingly, Mr. Davis preserves his argument that he was forced to waive his right to trial by jury because the trial court refused to sever the weapon-under-disability charge, rendering his jury waiver involuntary and in violation of his constitutional rights." (Objections, ECF No. 57, PageID

9850, quoting *Davis X*, 475 F.3d at 778). The *Davis X* panel explains why relief is not appropriate: "Nevertheless, a habeas corpus proceeding is not an appropriate vehicle for this court to substitute its own judgment for that of the State of Ohio." 475 F.3d at 778. This statement is just as true now as it was in 2007, and the objection as to Sub-Claim 1(A) is overruled.

In Sub-Claim 1(B), Davis claims that the "arguably rational" basis for holding him to his jury waiver during the first penalty phase retrial—that the original three-judge panel could be reassembled— did not exist for the second such retrial, and thus, the state court's decision not to apply *State v. Penix* to him and require a trial by jury violated his Sixth and Fourteenth Amendment rights (Objections, ECF No. 57, PageID 9851-52, citing *Davis X*, 475 F.3d at 780; Ohio Rev. Code § 2929.03(C)(2)(a), (C)(2)(b)(i); *State v. Penix*, 32 Ohio St. 3d 369, 372 (1987)). The *Davis X* panel stated that "the practice of finding a jury waiver inherently revoked '*should certainly inform* the sentencing court's determination of the viability of Davis's jury waiver on remand' where 'additional evidence would be introduced from both the prosecution and the defense, as is likely to occur on remand of [Mr. Davis's] case.'" *Id.* at PageID 9854 (emphasis and brackets in original), quoting *Davis X*, 475 F.3d at 781. Yet, "should clearly inform" falls well short of a violation of clearly established federal law by the trial court ignoring the Sixth Circuit's advice. Absent such a violation, relief may not be granted under 28 U.S.C. § 2254(d), and the Court overrules the objections as to Sub-Claim 1(B).

Sub-Claim 1(C) is discussed *infra* in conjunction with Sub-Claim 2(B).

As to Sub-Claim 1(D), Davis objects that the Magistrate Judge improperly relied on Judge James L. Graham's decision "that 'Davis's inability to show evidence of bias on the part of the judges or prejudice resulting therefrom meant that their involvement did not render his waiver constitutionally invalid.'" (Objections, ECF No. 57, PageID 9856, quoting Report, ECF No. 51,

PageID 9658; citing *Davis IX*, ECF No. 16-2, PageID 8981, 8984). Davis notes that in none of the cases relied upon by the Magistrate Judge was the judge in question adverse to a defendant in a previous action, whereas two of the three judges on his initial panel "were 'instrumental' in taking away his home." *Id*. at PageID 9856-57, citing *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Sinistaj v. Burt,* 66 F.3d 804, 808 (6th Cir. 1995)).

Davis has still not met burden of showing that the waiver was *prima facie* invalid simply because Judges John R. Moser and William R. Stitsinger of the first panel worked on a foreclosure action against Davis and his then-wife, Ernestine, fourteen years prior to the first trial. A foreclosure action is different in nature from a criminal prosecution, or even a complex civil case, and the Court has no reason to disbelieve the statements of the judges that they (and Davis) had no recollection of having been involved in that action at the time of the trial. *See, e.g.*, *Davis VI*, 1996 WL 551432, at *8. Given that the judges did not remember the action, it is unreasonable to presume that their prior involvement could have caused them to be biased against Davis, and Davis's objections allude to no facts that would make the presumption reasonable. Absent any circumstance that would lead to actual bias, Davis cannot show that the judges' mere involvement rendered his jury waiver unknowing or involuntary, such that it would implicate his constitutional rights. Accordingly, the objections to Sub-Claim 1(D) are overruled.

As to Sub-Claim 1(E), that Davis was purportedly misled into thinking there were differing standards of proof for a bench or jury trial, the Magistrate Judge noted that the state court had dismissed the claim as barred by *res judicata* (Report, ECF No. 51, PageID 9658-59). Davis concedes that is normally an adequate and independent ground upon which to preclude habeas review (Objections, ECF No. 57, PageID 9858, quoting *Hartman v. Bagley*, 492 F.3d 347, 357-58 (6th Cir. 2007); citing Report, ECF No. 51, PageID 9659; *Maupin*, 785 F.3d 135). However, Davis

12

objects that the *Davis VI* court erred, as the sub-claim could only have been brought in postconviction, because he relied on his affidavit—evidence *dehors* the record—that he was misinformed as to the standard of proof.  Consequently, the state court misapplied *res judicata*, and there is no procedural bar to this Court reviewing the claim.  *Id*. at PageID 9859, citing *Filiaggi v. Bagley*, 445 F.3d 851, 855 (6th Cir. 2006); State Court Record, ECF No. 4-18, PageID 1909; State Court Record, ECF No. 4-19, PageID 1961-62).

The Court disagrees with Davis's characterization of *Davis VI*.  Therein, the Twelfth District Court of Appeals held that because "the sufficiency of the trial court's colloquy . . . concerning the jury waiver could have been determined from the trial record itself, [the appellant's] claim is barred by the principles of *res judicata*."  1996 WL 551432, at *7-8 (brackets in original), quoting *State v. Brewer*, 2nd Dist. Greene No. 93CA62, 1994 WL 527740, *8 (Ohio App. Sept. 27, 1994).  Davis does not argue that the purportedly misstated burden of proof was not contained in the original trial record.  Thus, Sub-Claim 1(E) could have been raised on direct appeal, and the holding in *Davis VI* that the claim was barred by *res judicata* was correct under Ohio law.  Consequently, the sub-claim is foreclosed from review here, and Davis's objection is overruled.

## 2. Claim Two: Court Violated Davis's Sixth, Eighth, and Fourteenth Amendment Rights by Enforcing Jury Waiver in Resentencings

Davis set forth two reasons why continued enforcement of his jury waiver in resentencing was unconstitutional:

   a.    The trial court violated Mr. Davis's rights under the Eighth and Sixth Amendments and the Due Process Clause by enforcing his prior jury waiver at his first resentencing when he had no knowledge at the time of the waiver that Ohio Supreme Court would refuse to apply the rule of *Penix* to his case and hold him eligible to be resentenced to death; and

   b.    The trial court violated Mr. Davis's rights under the Eighth and

> Sixth Amendments and the Due Process Clause by enforcing a
> stale jury waiver at a new penalty hearing twenty-five years
> later before an entirely different panel of judges.

(Petition, ECF No. 6, PageID 8565).

### a. Sub-claim 2(B) is not Cognizable

The Magistrate Judge concluded that, as with sub-claim 1(C), sub-claim 2(B) was not

cognizable on collateral review; "at the very least, the continued enforcement of the waiver by the

trial court is not a violation of clearly established federal law required for habeas relief." (Report,

ECF No. 51, PageID 9660, quoting *Williams (Terry) v. Taylor*, 529 U.S. 362, 379-80 (2000).

Accordingly, he recommended that Sub-Claim 2(B) be dismissed. *Id*. Davis objects that *Hurst*

was nothing more than an extension of *Apprendi v. New Jersey* and *Ring v. Arizona*, and thus, the

right to be sentenced by a jury was clearly established at the time of his second resentencing

(Objections, ECF No. 57, PageID 9860-61, citing *Ring*, 536 U.S. 584, 603 (2002); *Apprendi*, 530

U.S. 466 (2000)). Yet, the *Davis X* panel "recogniz[ed] 'a legitimate question as to whether a

criminal defendant should be held to a jury waiver entered almost 25 years before his newly-

mandated sentencing hearing.'" *Id*. at PageID 9861, quoting *Davis X*, 475 F.3d at 780. A

"legitimate question" falls well short of clearly established federal law required for habeas relief.

Finally, Davis states that he is not arguing that *Hurst* forbids a capital defendant from waiving a

jury, but that his waiver was not valid because he waived the jury initially only on the ground that

the original particular three judges would be the ones trying and sentencing him (Reply, ECF No.

63, PageID 10001-02, citing Objections, ECF No. 57, PageID 9847-49). This statement does

nothing to overcome the non-cognizability of these claims in habeas, and the Court overrules

Davis's objection.[3]

        **b.**        **Petitioner has not met his burden under as to Sub-Claim 2(A)**

Davis objects to the recommendation for Sub-Claim 2(A) for the same reasons he objects as to Sub-Claim 1(B), validating the Magistrate Judge's conclusion that the claims are "virtually identical." (Report, ECF No. 51, PageID 9660; Objections, ECF No. 57, PageID 9862). Accordingly, for the same reasons that Sub-Claim 1(B) is dismissed, Sub-Claim 2(A) is as well, and Davis's objection is overruled.

      **C.**        **Mitigation Evidence Claims for Relief**

        **1.**        **Claim Five: Court failed to Consider all Mitigating Evidence**

"Davis argue[d] that the second resentencing panel failed to give the particularized, individualized consideration of mitigating evidence has been 'repeatedly stressed' since capital punishment was reinstated, by ignoring or inappropriately discounting mitigation evidence presented." (Report, ECF No. 51, PageID 9661, citing Petition, ECF No. 6, PageID 8669-71). The Report concluded that "Davis's case is not one in which his due process rights were violated because he was prevented from introducing certain evidence. Rather, he disagrees with the weight afforded to that evidence by the trial court, which is not a constitutional violation." *Id*. at PageID 9663.

Davis devotes an entire page in his Objections to mitigation evidence that he believes was given too little weight (Objections, ECF No. 57, PageID 9874 (citations omitted)). Yet, contrary to Davis's argument *id*. at PageID 9873, *Porter v. McCollum*, 558 U.S. 30, 43 (2009), does not

---

[3] Davis states that this Reply pertained to Sub-Claims 1(C) and 2(A) (Reply, ECF No. 63, PageID 10001), but the gravamen of Sub-Claims 1(C) and 2(B) are virtually identical; both are distinct from Sub-Claim 2(A).

transform a disagreement over the weight of the evidence into a constitutional claim. In *Porter*, trial counsel was deficient in "fail[ing] to conduct a thorough—or even cursory—investigation" into mitigating evidence. 558 U.S. at 42. Here, counsel investigated and presented extensive mitigation evidence. Moreover, the *Porter* Court held that the trial court erred when it "unreasonably discounted" to zero the petitioner's past military experience. *Id*. at 43. In this case, the only factors assigned no weight were: Cynthia Mausser's statement that it was unlikely Davis would ever be paroled; and Davis's argument that a life sentence would be economical and provide closure to the victim's family (State Court Record, ECF No. 4-39, PageID 4933-34). The panel's reason for doing so—that Mausser's statement was "highly speculative" and that "the panel [was] uncertain whether these factors are relevant mitigating factors under Ohio law"—are not baseless, and the Court will not disturb that reasoning. The Supreme Court of Ohio affirmed that both factors were entitled to "no weight," *Davis XIV*, 2014-Ohio-1615 at ¶¶ 111, 114, and certainly did not suggest that the panel was predisposed to sentencing Davis to death. Davis's objection is overruled.[4]

### 2.    Claim Six:  Capital Specification was too Remote in Time

Davis argued that his 1971 murder conviction being used as the capital specification was unconstitutional because it was too remote in time, had no relation to the present offense, and constituted "an *ex post facto* application of a sentencing enhancement provision that did not exist in 1971." (Petition, ECF No. 6, PageID 8676-77). The Magistrate Judge remarked that the:

> Supreme Court of Ohio held that the prior conviction was not too

---

[4] Davis additionally argued that the Warden's assertion that Davis relied upon *Porter v. McCollum* overruling *Harris v. Alabama* was erroneous (Reply, ECF No. 63, PageID 10003-04, citing *Porter*, 558 U.S. 30, 43 (2009) (*per curiam*); *Harris*, 513 U.S. 504, 512 (1995)), an issue not relevant to the Court's decision, and reiterated his argument that the panel ignored and impermissibly discounted mitigating evidence in violation of his rights. *Id*. at PageID 10004, citing Traverse, ECF No. 29, PageID 9217-23. He incorporated the remainder of his objections by reference. *Id*.

16

> remote in time to serve as the capital specification, noting that "[t]he General Assembly has placed no time limits on the use of the prior conviction and it is not required to do so[,]" and that it had previously upheld a death sentence "which involved the aggravating circumstance of an eleven-year-old prior conviction."

(Report, ECF No. 51, PageID 9664-65, quoting *Davis II*, 38 Ohio St. 3d at 369 n.9; citing *State v. Mapes*, 19 Ohio St. 3d 108 (1985), *conditional writ of habeas corpus on other grounds aff'd in Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004)).  The Magistrate Judge noted that, while the death sentence in *Mapes* was vacated, it was not vacated "because of the year in which the defendant was sentenced for the prior [crime] . . . .  Accordingly, the *Davis II* decision did not run afoul of clearly established precedent with respect to Davis's *ex post facto* argument."  *Id*. at PageID 9665.

Finally, the Magistrate Judge, in recommending that Claim Six be dismissed, concluded that:

> Davis's focus on the time in between his sentence for killing Ernestine[5] and his death sentence ignores the similarities between the two crimes:  murder of a significant other during an argument, and the remoteness in time can be explained almost completely by the time Davis spent incarcerated for killing Ernestine.

*Id*.

Davis argues that the Magistrate Judge improperly relied on *Mapes*, where the death sentence was vacated due to the jury's not being allowed to consider mitigating evidence regarding the prior homicide being used as an aggravating factor (Objections, ECF No. 57, PageID 9877, citing *Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004); *State v. Mapes*, 8th Dist. Cuyahoga No. 86225, 2006-Ohio-294, ¶¶ 12-18 (Ohio App. Jan. 26, 2006)).  Yet, neither Sixth Circuit nor the Eighth District found that it was improper, much less constitutionally infirm, for the prior homicide to be used as an aggravating circumstance.  Indeed, the Eighth District stated that "[t]he trial court also found Mapes guilty on the third specification, which involved a prior murder conviction.

---

[5] Davis's estranged wife, Ernestine Davis, for whose killing Davis pled guilty to second-degree murder in 1971.

Therefore, pursuant to R.C. 2929.04(A), Mapes was eligible for the death penalty." *Mapes*, 2006-Ohio-294 at ¶ 43. Davis's argument is thus unavailing.

Davis also claims that while the Magistrate Judge relied on the similarities between the two crimes to minimize the amount of time that had lapsed between the crimes and the fact that he was incarcerated, the Supreme Court of Ohio relied on no such reasoning. "To the contrary, the court decided that the General Assembly had removed any authority for the judiciary to decide whether a prior conviction was too remote in time to support a capital specification." (Objections, ECF No. 57, PageID 9878, citing *Davis II*, 38 Ohio St. 3d at 369 n.9). Davis argues that this assertion by the Supreme Court of Ohio is contrary to United States Supreme Court precedent, which forbids legislatures from removing certain aggravating circumstances from judicial review. *Id.*, quoting *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990); citing *Zant v. Stephens*, 462 U.S. 862, 877 (1983). Yet, Davis mischaracterizes the above-quoted language in *Davis II*, in which the Supreme Court of Ohio stated that the General Assembly had declined to *exclude categorically* crimes that happened a certain number of years before the crime for which the defendant is currently charged. *Davis II*'s reliance on the original *Mapes* decision therefore was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1).

Davis argues that, because there is no common course of conduct or other similarities between his killings of Ernestine and Suzette Butler[6], the Court should review Claim Six *de novo*. He also claims that the prior homicide's use as an aggravating circumstance violates his constitutional right against double jeopardy, "since the first conviction did not 'require[] proof of a fact' beyond what was required for the second conviction." (Objections, ECF No. 57, PageID 9878-79, quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Both arguments are

---

[6] Davis's estranged girlfriend, whose murder by Davis is the subject of the instant conviction and death sentence.

18

facially unreasonable, and Davis cites no statute or caselaw making them any less so. Davis's objection is overruled.

### D. Ineffective Assistance of Counsel Claims for Relief

Davis raised several claims of ineffective assistance of trial and appellate counsel. The Court examines them in turn, noting that when the issue is ineffective assistance of counsel, the federal court is required to be doubly deferential as to any claim adjudicated by the state courts. *Harrington*, 562 U.S. at 105.

### 1. Claim Three: Failure to Effectively Investigate and Present Character Evidence

Davis argued that "[d]efense counsel failed to reasonably investigate and present mitigating evidence of Mr. Davis's good prison behavior even though this information was known, available and relevant" and "despite the Sixth Circuit remanding the case for a new penalty phase in order to consider this very evidence." (Petition, ECF No. 6, PageID 8652, citing *Skipper v. South Carolina,* 476 U.S. 1, 5 (1986); *Davis X*, 475 F.3d at 774-75). The Magistrate Judge found that this argument was belied by the record, and certainly was not enough to overcome the double deference that must be accorded state court decisions on ineffective assistance of counsel (Report, ECF No. 51, PageID 9666, 9668-70, quoting *Strickland v. Washington*, 466 U.S. 668, 699 (1984); *Davis XIII*, 2013-Ohio-3878 at ¶¶ 16-18).

Davis objects that the Magistrate Judge's conclusion is belied by the record, which showed extensive additional mitigation evidence that the Sixth Circuit found was "highly relevant" in light of the single aggravating circumstance—the previous killing of Ernestine (Objections, ECF No. 57, PageID 9865-67, quoting *Davis X*, 475 F.3d at 773). Even if true, "highly relevant" is not the

19

standard under either prong of *Strickland*. Moreover, *Davis XIII* restated the significant mitigation evidence researched and presented by counsel. 2013-Ohio-3878 at ¶¶ 16-18. It is axiomatic that research and presentation of every piece of mitigation evidence is not necessary for competent representation under *Strickland*. Moreover, Davis's Objections do not lead the undersigned to conclude that, had the additional evidence been presented, there was a reasonable probability that the three-judge panel would hand down a different result. "As fair-minded jurists could agree that the *Davis XIII* decision was a reasonable application of *Strickland* and its progeny, AEDPA deference must be accorded[.]" (Report, ECF No. 51, PageID 9669).

In his Reply, Davis argues that the Warden mischaracterized his claim as mere anecdotes of good behavior; the point was that there was myriad evidence that counsel didn't investigate (Reply, ECF No. 63, PageID 10004-05, quoting Response, ECF No. 60, PageID 9979; citing *Rompilla v. Beard*, 545 U.S. 374, 381-90 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534-35 (2003); *Williams v. Taylor*, 529 U.S. 362, 396-98 (2000)). Further, he claims that, contrary to the Warden's argument, *Davis IX* should not have precedential value, since it was vacated on this ground in *Davis X*. *Id*. at PageID 10005-06, citing *Davis X*, 475 F.3d at 774-75; Response, ECF No. 60, PageID 9980. "Mr. Davis discussed the decades of powerful *Skipper* evidence that his counsel unreasonably failed to include in his case. As he explained, there is no reasonable strategy that would including leaving out evidence that the Sixth Circuit held was compelling enough to support a grant of habeas relief." *Id*. at PageID 10006, citing Objections, ECF No. 57, PageID 9864-69.

Again, Davis's argument is rebutted by the last reasoned state court decision, which discussed the breadth of evidence introduced and considered by the panel. *Davis XIII*, 2013-Ohio-3878 at ¶¶ 16-18. While Davis claims that the evidence of his good behavior—the subject of the remand in *Davis X*—was not sufficiently introduced:

20

> [A]s the state aptly recognizes, the Sixth Circuit's decision in *Coyle* did not hold the testimony from . . . specific individuals must be introduced.  Rather, the Sixth Circuit merely found the three judge panel erred by improperly precluding Davis from introducing *any evidence* of his good behavior while on death row contrary to the United States Supreme Court's decision in *Skipper v. South Carolina*[.]

*Id*. at ¶ 20, citing 476 U.S.1 (1986).  The interpretation of *Davis X* by the *Davis XIII* panel is

accurate, and the denial of the claim was neither factually nor legally unreasonable.  Thus, the

Court may not substitute its judgment for that of *Davis XIII*, and Davis's objection is overruled.


### 2. Claim Four:  Failure to Advise of More Deferential Appellate Review of Verdicts of Three-Judge Panels vis-à-vis Jury Verdicts

> Davis allege[d] that Ohio has an effectively non-rebuttable presumption that a three-judge panel 'considered only relevant, material, and competent evidence in reaching its decision unless the record affirmatively demonstrates otherwise[,]' and that his trial counsel was ineffective in failing to advise him on the different standards of review prior to Davis making his jury waiver[.]

(Report, ECF No. 51, PageID 9670, quoting Traverse, ECF No. 29, PageID 9204).  The Magistrate

Judge concluded that "Ohio courts have consistently held that the standard of review on appeals

from jury verdicts versus verdicts from three-judge panels is identical; as such an interpretation is

not clearly erroneous, this Court is bound by the Ohio courts' decisions on matters of state law"

*Id*., citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Davis raises two main objections.  *First*, Davis argues that the Magistrate Judge appears to

conflate the burden of proof at trial with the standard of review on appeal (Objections, ECF No.

57, PageID 9870-71 (citations omitted)).

> To the contrary, the Ohio Supreme Court has adopted a rule in capital cases that in a trial before a three-judge panel, the appellate court will, in reviewing the case, presume that the panel considered only relevant, material, and competent evidence in reaching its decision unless the record affirmatively demonstrates otherwise.

*Id*. at PageID 9871, citing *State v. Post*, 32 Ohio St. 3d 380, 384 (1987), *overruled on other grounds by State v. McDermott*, 72 Ohio St.3d 570, 574 (1995); *State v. White*, 15 Ohio St. 2d 146, 151 (1968); State Court Record, ECF No. 4-19, PageID 1987-91. No such affirmative showing is required with respect to a jury verdict, thus creating a *de facto* higher standard of review. *Post*, 32 Ohio St. 3d at 384. *Second*, Davis claims that there is no state court decision for this Court to defer to, as the last reasoned state court decision improperly applied *res judicata* to foreclose review (Objections, ECF No. 51, PageID 9872, citing *Davis VI*, 1996 WL 554132, at *3).

Even assuming that the substance of Davis's objections is true, and that this Court must review the claim *de novo*, the objection is still unavailing. As the Warden correctly notes, any higher standard of review that may exist is not the same as saying that there is no meaningful appellate review of decisions from three-judge panels (Response, ECF No. 60, PageID 9981). Indeed, Davis obtained such meaningful review on direct appeal from the one instance in which he actually waived a jury trial—the Supreme Court of Ohio vacated his death sentence and remanded the matter for a new penalty phase trial. *Davis II*, 38 Ohio St. 3d at 373. Davis does not argue that, had the case been before a jury, he would have been acquitted. In other words, even if counsel was deficient in failing to advise Davis of a different standard of review, he suffered no prejudice from that deficient performance. Consequently, there was no *Strickland* violation and no violation of Davis's constitutional rights.

Davis claims that "while the Magistrate Judge and the Warden mentioned only the standard-of-review issue, Mr. Davis has asserted that his counsel was ineffective for failing to inform him of several additional collateral consequences of his decision to waive his right to a jury trial." (Reply, ECF No. 63, PageID 10006, citing Petition, ECF No. 6, PageID 8659-68; Response, ECF No. 60, PageID 9981). Moreover, he claims that he "never asserted that appellate review was

'meaningless'—only that a capital defendant should always be advised prior to waiving a jury if, as here, his case will be subject to a less favorable standard of review on appeal if tried before a three-judge panel." *Id*. at PageID 10007, citing Petition, ECF No. 6, PageID 8660-62. As with his objections, these arguments fail to show how Davis was prejudiced by any failure to advise.

Thus, Davis's objection is overruled. However, because reasonable jurists could disagree with this conclusion, Davis is granted a certificate of appealability on this issue.

### 3. Claim Seven: Failure to Represent Davis Adequately at Second Resentencing Hearing

Davis argues that counsel at the second resentencing was deficient in four areas: (1) calling Mausser as a witness; (2) failing to call John Lee; (3) failing to revise Dr. Robert Smith's testimony in light of Mausser's testimony; and (4) failing to prepare adequately the mitigation witnesses (Objections, ECF No. 57, PageID 9879-80, citing *Strickland*, 466 U.S. at 687-88). The Magistrate Judge concluded Davis had not met the standard for showing deficient, prejudicial representation in the penalty phase and recommended that the claim be dismissed (Report, ECF No. 51, PageID 9672-74, citing *Wiggins v. Smith*, 539 U.S. 510, 524 (2003)). Much of Davis's objection rehashes the arguments made in his Petition and Traverse; such practice is not the point of objections and does not compel this Court to review those arguments. *Ahmed v. Houk*, No. 2:07-cv-658, 2020 WL 5629622, *5 (S.D. Ohio Sept. 21, 2020) (Watson, J.). The Court will examine only those portions of the objection "offering targeted discussion of why the Magistrate Judge's determinations are wrong." *Id*.[7]

---

[7] Beyond incorporating his objections in the Reply, Davis also restates his argument that counsel's performance was so deficient that it meets the *Wiggins* standard (ECF No. 63, PageID 10007-08). For the reasons discussed below, Davis has fallen well short of meeting *Wiggins*.

### a.     Mausser

Davis objects that the Magistrate Judge addressed only his attorneys' decision to call her as a witness, not their deficiencies in the following areas:  (1) pursuing a line of testimony that they knew or should have reasonably known was impossible (that Davis would never be released) and that Davis asked them not to present; (2) failing to redirect Mausser even after she began to clarify a statement before being cut off by the panel; and (3) failing to call a witness who would have testified that Mausser had made a prior inconsistent statement (Objections, ECF No. 57, PageID 9881-83).  In sum, "[a] substantial amount of counsel's strategy hinged on testimony that counsel should have known Ms. Mausser would be unable to give.  Ms. Mausser's testimony served only to contradict counsel's opening statements and to provide the flawed basis to counsel's subsequent deficient mitigation strategy."  *Id*. at PageID 9883.

As the Magistrate Judge noted, the State's strategy at resentencing was to rely Davis's eligibility for parole, and "[e]ven though Mausser could not testify that Davis would never be paroled, she did testify that it was unlikely."  (Report, ECF No. 51, PageID 9673).  Davis does not articulate how else counsel could have countered the State's strategy than with Mausser's testimony.  In light of that, pursuing the above line of testimony and not impeaching her were within the broad ambit of reasonable trial strategy.  Further, the issue of whether to redirect a witness is exactly the type of judgment call that cannot be second guessed by appellate or habeas courts.  *Davis XIII*, 2013-Ohio-3839 at ¶ 24.  Davis's objection as to Mausser is overruled.

### b.     Lee

The Magistrate Judge concluded that Lee, despite being retained as a mitigation expert, would not have provided expert testimony as contemplated by Ohio R.Evid. 702.  Rather, he would

have testified as to "Davis's family background and history and his personal character," which necessarily would have involved repeating out-of-court statements of others, *i.e.* hearsay testimony for which no exception applied (Report, ECF No. 51, PageID 9674). "Moreover, even if Lee were allowed to testify . . . , such testimony would have been cumulative of the testimony offered by other fact witnesses. Decisions not to present cumulative testimony—or even attempt to do so— are generally considered [within the ambit of] sound trial strategy." *Id.*; *see also Davis XIII*, 2014-Ohio-3839 at ¶ 24 (internal quotation marks and citations omitted) ("the decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.").

Davis argues that Lee would have been an expert witness (Objections, ECF No. 57, PageID 9887, citing *Doe v. Ayers,* 782 F.3d 425, 450 (9th Cir. 2015)), and even if he were a fact witness, his testimony would have come within a hearsay exception, especially given the wide latitude in presenting mitigation evidence. *Id.* at PageID 9887-88, citing Ohio Rev. Code § 2929.04(C); Ohio R.Evid. 803(19), 804(B)(4). Further, his testimony would not have been cumulative, as he would have summarized the planned testimony of four mitigation witnesses unable to testify, all of whom would have provided evidence that Davis had suffered a dysfunctional upbringing. *Id.* at PageID 9888-89. Thus, the failure to call Lee and offer his exhibits into evidence fell below the standards of professional representation and prejudiced Davis. *Id.* at PageID 9889, citing State Court Record, ECF No. 4-39, PageID 4933; ECF No. 4-46, PageID 6278).

Even assuming that Lee could have testified in the manner Davis wanted, Davis does not identify in the Objections the unavailable mitigation witnesses or why they would have been prepared to testify as projected. The Court is left with, at best, a claim that Lee would have testified as to unknown statements, and that those statements would have caused the panel to conclude that

Davis had a dysfunctional upbringing and give significant weight to that mitigating factor. Such speculation falls well short of what is required under *Strickland*, and Davis's objection as to Lee is overruled.

### c.      Smith

The Magistrate Judge concluded that Smith's testimony that Davis could become violent in an uncontrolled environment was immaterial, as the defense strategy at resentencing was premised in part on Davis's never being released, and there was no indication that the potential of release factored into the panel's decision to resentence him to death (Report, ECF No. 51, PageID 9674). He also found that "Dr. Smith adequately discussed Davis's history of alcohol dependence and borderline personality disorder, and Davis's argument that Smith would have provided more persuasive testimony had he been fully informed of Davis's family history is purely speculative." *Id*. at PageID 9673-74. Davis argues that, once Mausser could not testify that he would never be released, allowing Smith to testify about the danger Davis posed to society was no longer a reasonable strategy. Further, he claims that the Magistrate Judge conflated sub-claim 7(B) (failure to investigate and make reasonable decision to call Smith) with sub-claim 7(D) (failure to obtain adequate family history to inform the panel) (Objections, ECF No. 57, PageID 9884-85). Finally, the Magistrate Judge's finding of no prejudice was erroneous, as the panel concluded that "Dr. Smith failed to forecast Defendant's behavior or recommend a treatment plan, should he eventually be released from prison" and gave his opinion "little weight." *Id*. at PageID 9886-87, quoting State Court Record, ECF No. 4-39, PageID 4931, 4933.

None of these points is persuasive. As Davis notes, Smith testified that Davis still struggled with borderline personality disorder (Objections, ECF No. 57, PageID 9885, citing Trial Tr., ECF No. 5-8, PageID 8453, 8468). While the panel judges could have interpreted this struggle as a

continuing danger should he be released (as Davis argues), they also could have could have interpreted it as underscoring the severity of Davis's mental illness, a key factor in mitigation. Simply because the strategy was unsuccessful does not render the representation constitutionally deficient. *Davis XIII*, 2013-Ohio-3878 at ¶¶ 24-25. Further, because the panel gave Smith's opinion "little weight," it is still unclear how his testimony prejudiced Davis. Finally, any conflation of sub-claims does not change the fact that Davis has failed to satisfy either prong of *Strickland* with respect to Smith, and his objection as to Smith is overruled.

### d.    Inadequate Development of Mitigation Evidence

Davis argued that counsel's investigation and development of mitigation evidence of his dysfunctional upbringing, alcohol dependence, or lifelong behavioral issues, would have led to a much more persuasive mitigation case being presented. Thus, Davis claimed, their failure to do so prejudiced him. The Magistrate Judge concluded that any inadequacies in investigation did not rise to the level of a constitutional violation: "*Wiggins*[*v. Smith*] is a much higher bar to relief than Davis wishes it to be." (Report, ECF No. 51, PageID 9673, citing 539 U.S. 510, 523-24 (2003)). The Magistrate Judge contrasted *Wiggins*, in which: no mitigation was presented at all; counsel did not retain an forensic social worker despite being afforded funds to do so; and counsel performed only a rudimentary investigation into mitigation evidence, and the instant case, in which "his attorneys retained a mitigation expert and called witnesses to testify as to the full range of mitigation factors, including but not limited to his childhood, substance abuse, and borderline personality disorder." *Id*. at PageID 9671-73, citing *Wiggins*, 539 U.S. at 524.

Davis claims that this case is legally similar to *Wiggins*, in that "counsel chose to abandon their investigation at an unreasonable juncture[,]" and that had counsel investigated and prepared witnesses better, the panel would have found that Davis had suffered from a dysfunctional

upbringing and granted greater weight to the mitigation factors (Objections, ECF No. 57, PageID 9891-92, quoting *Wiggins*, 539 U.S. at 527). The Court disagrees. The transcript shows mitigation witnesses testifying to a wide variety of evidence regarding his good character in prison, mental health diagnoses, alcoholism, and dysfunctional upbringing, including but not limited to having an alcoholic, absentee father (Report, ECF No. 51, PageID 9623-30 (citations omitted)). Simply because the evidence was not persuasive or because there was other evidence that could have been presented is insufficient to rebut the heavy presumption of competent representation under *Strickland*. Davis's objection is overruled.

### 4. Claim Eight: Failure to Seek Recusal of Biased Judges

Davis argued that his attorneys were ineffective in declining to *voir dire* or seek recusal of Judge Charles Pater, a friend of Davis's brother Victor, and Presiding Judge Andrew Nastoff, who prosecuted Davis's nephew for capital murder, although the death penalty was not imposed (Petition, ECF No. 6, PageID 8693-98).

The Magistrate Judge concluded that the claim as to Judge Pater was procedurally defaulted, and found that there was no good cause to set aside that default (Report, ECF No. 51, PageID 9675-76). He also concluded that, in the absence of any actual bias by Judge Nastoff, there was no prejudice in failing to *voir dire* him or seek his recusal, *id*. at PageID 9676-77, citing *In re Disqualification of Nastoff,* 134 Ohio St. 3d 1232, 2012-Ohio-6339, ¶¶ 9-10, and that any claim "that counsel deprived him of his right to participate in decisions affecting his possible sentence" was procedurally defaulted. *Id*. at PageID 9678, citing *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

Regarding procedural default as to the claim regarding Judge Pater, the Magistrate Judge wrote:

> Davis does not dispute that the ineffective assistance of trial counsel claim was available to him on direct appeal. Consequently, Davis's ineffective assistance claim should be dismissed as procedurally defaulted unless Davis could show good cause to excuse appellate counsel's failure to raise the issue, or good cause to excuse postconviction counsel's failure to seek to reopen Davis's direct appeal or raise it in Davis's state court postconviction petition. *Edwards v. Carpenter,* 529 U.S. 446, 449-50, 452-53 (2000). Davis does not allege facts that would constitute such good cause. Accordingly, Claim Eight is procedurally defaulted as it pertains to any failure to voir dire or seek recusal of Judge Pater.

(Report, ECF No. 51, PageID 9676).

Davis objects:

> The Magistrate Judge based that conclusion on the assertion that "Davis does not dispute that the ineffective assistance of trial counsel claim was available to him on direct appeal." *(Id.*) But that is incorrect. Mr. Davis specifically alleged ineffective assistance of his post-conviction counsel in his Traverse as "cause" to excuse the failure to raise the issue[8]. To the extent this claim was based on evidence outside of the record and was not raised in Mr. Davis's initial state post-conviction petition, the performance of state post-conviction counsel was deficient, to Mr. Davis's prejudice, depriving him of the effective assistance of initial review state-post-conviction counsel. See *Strickland*, 466 U.S. 668; *White v. Warden*, 940 F.3d 270 (6th Cir. 2019) (citing *Trevino v. Thaler,* 569 U.S. 413 (2013) & *Martinez v. Ryan*, 566 U.S. 1 (2012)).

(Objections, ECF No. 57, PageID 9894). Davis's allegation of ineffective assistance in the Traverse as excusing cause is completely conclusory: "Mr. Davis specifically asserts ineffectiveness of trial counsel, his direct appeal counsel, and his post-conviction counsel for failing to properly present this claim to the state courts as cause for any default. *See Murray v. Carrier*, 477 U.S. 478 (1986)." (Traverse, ECF No. 29, PageID  In other words, the Traverse does

---

[8] The Traverse is 259 pages long, but Petitioner's counsel fail to include a citation to the place in the Traverse where this allegation is purportedly made. This failure violates S.D. Ohio Civ.R. 7.2(b)(5) which provides "all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced."

not spell out, but merely assets, that direct appeal counsel and/or post-conviction counsel performed ineffectively as to this claim. It is, of course, axiomatic that if the claim necessarily depended on evidence outside the appellate record, failure to present the claim on direct appeal would not preclude its assertion in a post-conviction petition under Ohio Revised Code § 2953.21. It is also true in light of *Martinez* and *Trevino* that a failure to present the claim in post-conviction could be excused by showing ineffective assistance of counsel in post-conviction that met the *Strickland* standard. But merely reciting axioms of law does not prove their applicability to a given case.

Davis argues that the Magistrate Judge's "potential bias" analysis as to Judge Nastoff was irrelevant and misguided, as Davis claimed in his Petition that Judge Nastoff's prior capital prosecution of Davis's nephew, whom he referred to as "a liar" during that trial, was actual bias that should have prompted counsel to *voir dire* Judge Nastoff and request his recusal or move to disqualify him (Objections, ECF No. 57, PageID 9897-99, citing Petition, ECF No. 6, PageID 8695; Report, ECF No. 51, PageID 9677-78). He further claims that the Magistrate Judge's "no prejudice" conclusion was erroneous because, as a biased factfinder, Judge Nastoff's presence on the panel irreversibly tainted the sentencing, and because the evidence before the Supreme Court of Ohio in *In re Nastoff* was not the same as the evidence in the second resentencing. *Id*. at PageID 9898-99, quoting Report, ECF No. 51, PageID 9678; *Neder v. United States,* 527 U.S. 1, 8 (1999); *Rose v. Clark*, 478 U.S. 570, 577 (1986); *Tumey v. Ohio*, 273 U.S. 510, 533-34 (1927); *In re Nastoff*, 2012-Ohio-6339 at ¶ 11.

Davis argues that because Judge Nastoff used some of the same mitigation evidence presented by Davis in prosecuting and cross-examining Davis's nephew, it would be virtually impossible for him to set aside his bias (Reply, ECF No. 63, PageID 10009, citing State Court

Record, ECF No. 4-46, PageID 6278-79). Further, and contrary to the Warden's argument, presumptive actual bias goes beyond simply cases in which the judge has a pecuniary interest. *Id.* at PageID 10009-10, quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980); *In re Murchison*, 349 U.S. 133, 136 (1955); Response, ECF No. 60, PageID 9982; citing *Taylor v. Hayes*, 418 U.S. 488, 503 (1974). "In *In re Murchison*, for example, the Court found a due process violation where the judge was 'part of the accusatory process' as a 'judge-grand jury,' such that it would be 'difficult if not impossible for a judge to free himself from the influence' of the earlier proceedings." *Id.* at PageID 10010, quoting 349 U.S. at 137-38. "So too here; it would be difficult if not impossible for Judge Nastoff to free himself from his prior opinions about the mitigation evidence that appeared in his previous case involving Mr. Davis's family." *Id.*

While Davis argues that the evidence for *In re Nastoff* and the second resentencing were different, he does not actually state what the different evidence was. Moreover, even though the former pertained to adjudicating his postconviction petition and the latter to being on a panel, the gravamen was the same—that Judge Nastoff was supposedly biased due to his prosecution of Davis's nephew. Thus, the Magistrate Judge was correct that *In re Nastoff*'s denial of Davis's motion to disqualify because there was no evidence of bias, "while not binding . . . , is instructive" (Report, ECF No. 51, PageID 9678, citing *In re Nastoff*, 2012-Ohio-6339 at ¶¶ 9-11). Further, the cases cited by Davis in the Objections and Reply, in addition to being repetitive of what he cited in his Traverse, only stand for the well-established proposition that participation by an actually biased judge is structural error. *Tumey*, in which the trial judge had a pecuniary interest in conviction, 273 U.S. at 522, is so far removed from the factual circumstances here as to be inapposite. The *In re Murchison* judge was both a "one-man grand jury" and the trial judge for the same defendant arising out of the same course of conduct, 349 U.S. at 135-36; similarly, the

judge in *Taylor* convicted the defendant attorney of criminal contempt from conduct arising out at a criminal trial at which that judge also presided. 418 U.S. at 489-90. *Marshall* addressed a governmental agency's reimbursement from successful enforcement of child labor laws. 446 U.S. at 239.

None of these cases suggests that prosecution of a family member, even for the same-level crime for which the defendant is charged, creates in the judge a presumptive actual bias, such that counsel's failure to *voir dire* or challenge his inclusion on the panel would violate *Strickland*, and it was not ineffective assistance by counsel to decline to *voir dire* Judge Nastoff or seek his recusal. Davis's objections as to Ground Eight are overruled.

### E. Execution Claims

#### 1. Claim Nine: Execution after Thirty-Six Years on Death Row is Cruel and Unusual Punishment

Davis argued that carrying out a death sentence after more than thirty years on death row would constitute cruel and unusual punishment (Traverse, ECF No. 29, PageID 9252, 9255, 9259 (citations omitted)). The Magistrate Judge recommended denying the claim on the grounds that "there is not a clearly established federal legal principle that delay in carrying out death sentence is cruel and unusual under the Eighth Amendment. Dissents, no matter how eloquent and continuous, do not create constitutional law." (Report, ECF No. 51, PageID 9679-80). Davis cites numerous Supreme Court opinions in his Objections (ECF No. 57, PageID 9900-02, quoting *Baze v. Rees,* 553 U.S. 35, 81 (2008) (Stevens, J., concurring); *Elledge v. Florida*, 525 U.S. 944 (1998) (Breyer, J., dissenting from denial of certiorari); *Gregg v. Georgia,* 428 U.S. 153, 183 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); *Furman v. Georgia,* 408 U.S. 238, 288 (1972) (*per curiam*) (Brennan, J., concurring); *id.* at 312 (White, J., concurring); citing *Roper v. Simmons*, 543

U.S. 551, 578 (2005); *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) (plurality opinion); *In re Medley*, 134 U.S. 160, 172 (1890)). In his Reply, Davis reiterates his argument that he "noted a long line of United States Supreme Court opinions that support his request for relief." (ECF No. 63, PageID 10011). However, none of the actual holdings of those cases establishes that a long wait between sentence and execution constitutes an Eighth Amendment violation. Only holdings of the Supreme Court, not dicta in its opinions, much less concurring or dissenting opinions, can warrant habeas corpus relief. *Bryan v. Bobby*, 843 F.3d 1099 (6th Cir. 2016), citing *White v. Woodall*, 572 U.S. 415 (2014). As there is no clearly established law for this proposition, Davis's objection is overruled.

### 2. Claim Twenty-One: Ohio's Postconviction Scheme Inadequate to Address Constitutional Claims in State Courts

Davis argued that Ohio's postconviction scheme is unconstitutional because of its discretionary nature, the high threshold it imposes on petitioners without the chance to engage in discovery prior to filing the petition (Petition, ECF No. 6, PageID 8749-50), and that restrictions on filing means that "in practice the granting of postconviction relief by Ohio courts is so rare that it fails to provide the meaningful opportunity for relief required by the Fifth and Fourteenth Amendments." (Report, ECF No. 51, PageID 9684, citing *Keener v. Ridenour*, 594 F.2d 581, 590 (6th Cir. 1979); *Allen v. Perini*, 424 F.3d 134, 139-40 (6th Cir. 1970); *Coley v. Alvis*, 381 F.2d 870, 872 (6th Cir. 1967); Petition, ECF No. 6, PageID 8750). The Magistrate Judge recommended dismissing the claim as non-cognizable, "because 'the [. . .] Sixth Circuit has held that alleged errors in state collateral proceedings cannot form the basis for habeas corpus relief." *Id*., quoting *Davis IX*, ECF No. 16-2, PageID 9030; citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986).

Davis objects that *Kirby* applies only when a postconviction regime comports with due

process, which Ohio's does not because it fails the requirement that the "corrective process should be 'swift and simple and easily invoked,' should 'eschew rigid and technical doctrines of forfeiture, waiver or default,' and should 'provide for full fact hearings to resolve disputed factual issues.'" (Objections, ECF No. 57, PageID 9941, quoting *Case v. Nebraska*, 381 U.S. 336, 346-47 (1965) (Brennan, J., concurring); *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *Carter v. People of State of Illinois*, 329 U.S. 173, 175 (1946)). "The clearest evidence of this failure[,]" Davis argues, "is the sheer volume of cases in which the Sixth Circuit has found it necessary to grant federal habeas corpus relief to Ohio prisoners under a death sentence, notwithstanding the fact that they had already sought post-conviction review in Ohio state court." *Id.*, citations to twelve cases at n.4. Yet, despite numerous chances to overrule *Kirby*'s non-cognizability holding, none of those cases called *Kirby* into question. If *Kirby* is no longer good law, the Sixth Circuit will so inform us; for now, the Magistrate Judge's non-cognizability analysis is correct, and the Court adopts it.

Davis states that "[t]o the extent this Court views *Kirby* as controlling, Mr. Davis preserves the argument that *Kirby* was wrongly decided under the caselaw of the United States Supreme Court." (Objections, ECF No. 57, PageID 9942-43, citing *Rodriquez v. United States*, 395 U.S. 327, 330 (1969); *Lane v. Brown,* 372 U.S. 477 (1963); *Dowd v. Cook,* 340 U.S. 206 (1951)). Yet, in none of the cases cited by Davis was the petitioner attacking the constitutionality of a state's postconviction regime, as Davis is here. Davis is free to raise that argument with the Sixth Circuit, but it is not persuasive here, and his objection is overruled.

### 3. Claims Twenty-Two through Twenty-Six: Method of Execution and Legal Injection is Unconstitutional

For Claims Twenty-Two through Twenty-Five, Davis concedes that the panel in *In re Smith* held that *Bucklew v. Precythe* did not abrogate the rule in *In re Campbell* that method of

execution challenges must be brought under 42 U.S.C. § 1983, rather than habeas (Objections, ECF No. 57, PageID 9944; quoting *Bucklew*, 139 S.Ct. 1112, 1128 (2019); citing *In re Smith*, 806 F. App'x 862, 863-64 (6th Cir. 2020) (*per curiam*); *In re Campbell*, 874 F.3d 454, 464 (6th Cir. 2017). "Davis acknowledges the state of the law in the Sixth Circuit at this time and objects to preserve his argument to the contrary that the cognizability of constitutional lethal-injection claims is supported by *Bucklew*." *Id.*, citing *Bucklew*, 139 S.Ct. at 1128. As Davis cites no caselaw that would cause the Court to depart from the logic in *Smith*, the objection is overruled. However, the Court does adopt the Magistrate Judge's recommendation to grant a certificate of appealability as to the cognizability of these claims.

> **Twenty-Six:** The State of Ohio cannot constitutionally execute Mr. Davis because the only means available for execution depend on state execution laws that are preempted by federal law.

(Petition, ECF No. 6, PageID 8571, 8814). Davis argued that:

> Ohio's use of drugs, including controlled substances and/or compounded drugs, to execute Mr. Davis will result in violations of various provisions of the Controlled Substances Act (CSA), 21 U.S.C. §§ 801, *et seq.*, the Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et seq.*, and federal regulations issued by the Drug Enforcement Agency (DEA) and Food and Drug Administration (FDA).
>
> . . .
>
> The Ohio lethal-injection statute, Ohio Revised Code § 2949.22(A), along with DRC's practices, policies and protocols used to carry out that statute, are preempted by the Controlled Substances Act (CSA), 21 U.S.C. §§ 801, *et seq.*, the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301, *et seq.*, and federal regulations issued by the Drug Enforcement Agency (DEA) and Food and Drug Administration (FDA).

(Petition, ECF No. 6, PageID 8815-16).

The Magistrate Judge, noting that the claim had not been raised in Davis's state court petitions, concluded that the claim was procedurally defaulted (Report, ECF No. 51, PageID 9685).

He also found the claim meritless, noting: the heavy burden a petitioner must meet to obtain habeas relief based on a federal statutory violation; the absence of a preemption clause in the FDCA; the inapplicability of the CSA's preemption clause; and that lethal injection protocols have never been held to be in conflict with federal drug laws and regulations. *Id*. at PageID 9691-93.

Davis objects that the claim could not have been raised in state court, as Ohio's postconviction regime does not allow for adjudicating statutory claims (Objections, ECF No. 57 PageID 9943). He also claims that the Magistrate Judge's analysis vindicates his argument, *id*. at PageID 9944-45, and reiterates his argument that

> There is no question that Ohio is obtaining and using controlled substances, and that persons obtaining, possessing, and administering such drugs are doing so in violation of the express provisions of the CSA and/or FDCA, and are administering such drugs without a valid prescription and using such drugs to cause death, all of which makes their use illegal under federal law.

*Id*. at PageID 9945, quoting *Gonzales v. Oregon*, 546 U.S. 243, 299 (2006) (Scalia, J., dissenting); citing 21 U.S.C. § 829; 21 C.F.R. § 1306.04. "The Magistrate Judge has asserted that there is no pre-emption under federal law, but in reaching that conclusion, the Magistrate Judge properly acknowledges that 'state law is naturally preempted to the extent of any conflict with a federal statute.'" *Id*., quoting *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012); Report, ECF No. 51, PageID 9691. As the Supremacy Clause of the United States Constitution requires the invalidation of any state law that conflicts with federal law, Ohio's lethal injection protocol must be invalidated. *Id*. at PageID 9945-46, citing U.S. Const. art. VI, § 2; *Roane v. Barr*, No. 19-mc-145, 2020 U.S. Dist. LEXIS 155191 (D.D.C. Aug. 27, 2020), *vacated on other grounds at Roane v. Barr*, No. 20-5260, 2020 U.S. App. LEXIS 27495 (D.C. Cir. Aug. 27, 2020) (*per curiam*).

There are numerous issues with Davis's claim and objections, including the threshold issue of standing. In *Durr v. Strickland*, a plaintiff facing execution by lethal injection sought a

declaratory judgment that Ohio's lethal injection protocol violated the CSA and FDCA.  This Court dismissed the civil complaint on the ground that neither statute afforded a private right of action, No. 2:10-cv-288, 2010 WL 1610592 at *2-3 (Apr. 15, 2010) (Frost, J.), *aff'd* 602 F.3d 788, 789 (6th Cir. 2010).  The latter decision has not been overruled, and nowhere in his Petition, Traverse, or Objections does he explain why he has standing when Durr did not.  As Judge Gregory L. Frost explained in *Durr*, the plaintiff did not seek to protect his own rights, *e.g.*, against an inhumane execution, but to prevent the State from violating federal law through an unauthorized use of execution drugs.

> Thus, the only injury that the declaratory relief sought here actually informs is whether Defendants would be acting in technical violation of federal law. Implicit in any declaration that such a violation would exist would be a possible suggestion (according to Plaintiff) that Defendants might be subjecting themselves to potential prosecution for violating federal law. This is an injury to Defendants, not to Plaintiff.

*Id*. at *4; *accord:  In re Ohio Execution Protocol Litig.*[9], No. 2:11-cv-1016, 2017 WL 2964901, *24 (S.D. Ohio Jul. 12, 2017) (Merz, Mag. J.) ("[T]here is no constitutional right to the statutory protections provided by the FDCA or CSA.").  Moreover, to the extent that Davis is alleging that the protocol, rather than the death sentence itself, violates his constitutional rights, his claim properly arises under 42 U.S.C. § 1983, not in habeas.  *See id.* ("An allegation that a violation of the federal law involved here would lead to an inhumane execution . . . would constitute a § 1983 civil rights violation, regardless of whether such a claim is then asserted.").

Also, *Roane* addressed "a pure legal question: is pentobarbital subject to the FDCA when used for lethal injection? Under D.C. Circuit precedent, the answer appears to be yes."  2020 U.S. Dist. LEXIS 155191 at *12-13, citing *Cook v. FDA*, 733 F.3d 1, 10-11 (D.C. Cir. 2013).  The

---

[9] Davis is an active Plaintiff in that consolidated 42 U.S.C. § 1983 litigation.

District Court did not opine on the state of the law elsewhere, and indeed noted that "the Supreme Court has expressly declined to consider the 'thorny' jurisdictional issue of whether of the FDCA applies to drugs used for executions." *Id*. at *16, citing *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Davis cites no Sixth Circuit caselaw as to whether the FDCA applies to execution drugs; given the unsettled nature of the law's applicability, Davis has fallen well short of showing "a fundamental defect which inherently results in a complete miscarriage of justice [o]r an omission inconsistent with the rudimentary demands of fair procedure[,]" *Hill v. United States*, 368 U.S. 424, 428 (1962), as is necessary for a federal statutory violation to be cognizable in habeas. Finally, the Magistrate Judge's analysis as to why there has been no preemption and that there is no indication of conflict between Ohio execution and federal drug law (Report, ECF No. 51, PageID 9692-93) is well-founded and adopted. For these reasons, Claim Twenty-Six is without merit, and Davis's objection is overruled.

### F.     Pretrial, Trial, and Sentencing Claims for Relief

#### 1.     Claim Ten:  Conviction product of Unnecessarily Suggestive Police Procedures and Unreliable Eyewitness Testimony

Davis set forth numerous purported problems with the procedures used by police with eyewitnesses to identify Davis as Butler's killer, and why the eyewitness testimony used almost exclusively to convict Davis was unreliable. Thus, Davis claimed, the conviction should be vacated and reversed as unreliable (Petition, ECF No. 6, PageID 8706-09 (citations omitted)). The Magistrate Judge noted that the claim had been barred by *res judicata* in the last reasoned state court decision (Report, ECF No. 51, PageID 9681, citing *Davis VI*, 1996 WL 551432 at *9) and that "*res judicata* is an adequate and independent state ground upon which to find a claim procedurally defaulted and precluded from federal habeas review." *Id*., citing *Durr v. Mitchell*,

38

487 F.3d at 431-32.

Davis argues that ineffective assistance of appellate counsel is cause to excuse the procedural default, and that he had properly presented the ineffective assistance claim to the Supreme Court of Ohio in an Application to Reopen Direct Appeal (Objections, ECF No. 57, PageID 9904, citing *Murray*, 477 U.S. at 488; State Court Record, ECF No. 4-27, PageID 2942 *et seq.*). The Supreme Court of Ohio did not address the merits, holding instead that the Application to Reopen was untimely and that no good cause existed to excuse the untimely filing. *Davis VIII*, 86 Ohio St. 3d at 213-14, citing Ohio App.R. 26(B). Davis argues that the Sixth Circuit had held that the ninety-day limit was not consistently enforced, and thus, fails the *Maupin* test for enforcing procedural default (Objections, ECF No. 57, PageID 9904-05, citing *Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006)). Yet, in caselaw predating, postdating, and contemporaneous with *Franklin*, the Sixth Circuit found the ninety-day limit consistently enforced for *Maupin* purposes. *See, e.g.*, *Van Hook v. Bobby*, 661 F.3d 264, 270 (6th Cir. 2011); *Poindexter v. Mitchell*, 454 F.3d 564, 583-84 (6th Cir. 2006); *Coleman I*, 244 F.3d at 540). Moreover, at the time the Supreme Court of Ohio applied the Rule 26(B) deadline in *Davis VIII*, the sanction *was* regularly enforced. *Franklin*, 434 F.3d at 420-21 (citations omitted). Davis fails to address the *res judicata* issue in his reply, focusing solely on the merits (ECF No. 63, PageID 10012-13). As the Magistrate Judge's recommendation on procedural default was proper, Davis's objection is overruled.

## 2. Claim Eleven: Resentencing Procedures Violated Federal and State Constitutions

Davis claimed that the first resentencing violated his Equal Protection rights because he was subject to a death sentence upon remand, whereas defendants sentenced to death originally by juries could not be. He claimed that the second resentencing violated his due process rights

because, in contravention of Ohio law, he was tried before a different three-judge panel than the one from his initial trial and first resentencing. Finally, he argued that both the first and second resentencings violated his rights under the *Ex Post Facto* clause (Petition, ECF No. 6, PageID 8710-14 (citations omitted)). The Magistrate Judge noted that the gravamen of his equal protection and due process claims were identical; this Court had already rejected both his equal protection and *ex post facto* claims; and that the Sixth Circuit did not disturb those rulings when it remanded for the second resentencing in *Davis X* (Report, ECF No. 51, PageID 9694-96). The Magistrate Judge concluded the Sixth Circuit's differentiation of the case of *State v. McGee*—in which the defendant had to be retried by a jury because he would be under a new indictment—and the instant case—in which only the penalty phase was being retried—was a rational basis for differentiation, and thus the equal protection claim failed. *Id*. at PageID 9695-96. Further, the Supreme Court of Ohio rejected Davis's *ex post facto* claim, "finding that it did not fit into any of the categories of *ex post facto* laws set forth in *Calder*[*v. Bull*] and its progeny." *Id*. at PageID 9697, citing *Calder*, 3 U.S. 386, 390 (1798); *Davis XIV*, 2014-Ohio-1615 at ¶ 54; *State v. White*, 132 Ohio St. 3d 344, 2012-Ohio-2583, ¶ 64; Ohio Rev. Code § 2929.06(B). The Magistrate Judge concluded that *Davis XIV* was not contrary to clearly established federal law, and recommended that Claim Eleven be denied (Report, ECF No. 51, PageID 9697).

Davis argues that the Magistrate Judge misread *Davis X*, in which the Sixth Circuit stated that "[w]hile not directly on point, because Davis is not facing a new indictment, the reasoning of the Ohio court in *McGee* should certainly inform the sentencing court's determination of the viability of Davis's jury waiver on remand." (Objections, ECF No. 57, PageID 9909, quoting *Davis X*, 475 F.3d at 781). Moreover, the arguably rational basis for differentiating this case from others in which a jury was mandated on retrial—that the original panel could be reassembled—

was no longer rational in the second resentencing, which was before an entirely different panel, and in which new evidence was introduced. *Id.*, citing *Davis*, 475 F.3d at 780. Finally, they claim that Judge Graham erred in *Davis IX* by finding that the change of the law in Ohio Revised Code § 2929.06(B) was procedural, rather than substantive; *Davis XIV* violated *Calder*; there has been a violation of clearly established federal law; and habeas relief is proper. *Id.* at PageID 9910-12 (citations omitted).

While Davis claims that the Magistrate Judge ignored clearly established federal law, as the Warden points out, he never actually states what that law is (Response, ECF No. 60, PageID 9986). Davis claims that the retroactive application of the modified Ohio Revised Code § 2929.06(B) to allow for a new panel of three judges to resentence him to death on retrial constituted a sentencing enhancement that violated the *Ex Post Facto* clause (Objections, ECF No 57, PageID 9910, citing *Peugh v. United States*, 569 U.S. 530, 550 (2013); *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505 (1995); *Calder*, 3 U.S. at 390; *Davis XIV*, 2014-Ohio-1615 at ¶¶ 54-55). In addition to this being a recitation of the arguments raised in his Traverse (ECF No. 29, PageID 9272-73), Davis does not set forth the holdings in these cases beyond the well-established principle that "the *Ex Post Facto* Clause forbids the States to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range." *Morales*, 514 U.S. at 505. The amendment to Ohio Rev. Code § 2929.06(B), meanwhile, merely changed the procedure by which a three-judge panel could be constituted. It did not empower a three-judge panel to impose a death sentence on remand when that was not possible before. Thus, Judge Graham's decision that the modification was procedural, rather than substantive, was correct, and the Supreme Court of Ohio's rejection of Davis's *Ex Post Facto* claim, *Davis XIV*, 2014-Ohio-1615 at ¶¶ 54-55, was not contrary to clearly established federal law.

The statement in *Davis X* that *McGee*, "[w]hile not directly on point, . . . should certainly inform the sentencing court's determination of the viability of Davis's jury waiver on remand[,]" 475 F.3d at 781, means that there is not clearly established federal law on whether continued enforcement of the jury waiver violated his due process and equal protection rights. Thus, Davis's objection is overruled. However, because a reasonable jurist could disagree with these conclusions, Davis is granted a certificate of appealability as to Claim Eleven.

### 3.      Claim Twelve: Inability to Inspect Grand Jury Transcripts

"Davis argue[d] that he had a particularized need to see the grand jury transcripts, specifically, the need to prepare and present a complete defense, and that his need . . . outweighed the State's presumptive need to keep the testimony secret." (Report, ECF No. 51, PageID 9697-98, citing Petition, ECF No. 6, PageID 8715). The Magistrate Judge concluded that the claim was speculative, as:

> Nowhere in the Petition or Traverse does Davis identify what evidence he thinks is contained in the transcripts, much less how the outcome of his trial and sentencings would have been different if he had had access to the transcripts. Rather, Davis is asking, more than thirty years after the grand jury issued the indictment against him, for a grant of discovery to see the transcripts so that he might formulate a theory based on what might be contained in there

*Id*. at PageID 9698.

Davis argues that *de novo* review of the claim by this Court is necessary, as the last reasoned state court decision, *Davis II*, was based entirely on state law (Objections, ECF No. 57, PageID 9912-13, citing *Davis II*, 38 Ohio St. 3d at 364-65). Under that standard, Davis claims, relief is proper, as he has demonstrated a particularized need to inspect the transcripts that outweighs the general presumption of secrecy: the inconsistent statements of eyewitness and trial witness Cozette Massey. *Id*. at PageID 9913. The inability to examine the transcript meant that

42

he was deprived of "a meaningful opportunity to present a complete defense." *Id.*, quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). Davis further argues that, contrary to the Warden's assertion, the main issue is not the secrecy of the grand jury, but the need to present a complete defense (Reply, ECF No. 63, PageID 10014). "Davis has also cited cases such as *Dennis v. United States,* which reversed and remanded for a new trial where 'petitioners were entitled to examine the grand jury minutes relating to trial testimony of the four government witnesses, and to do so while those witnesses were available for cross-examination.'" *Id.* citing *Dennis*, 384 U.S. 855, 875 (1966); Traverse, ECF 29, PageID 9280.

The Supreme Court cases relied upon by Davis in his Objections are inapposite; none of them deals with matters, such as grand jury testimony, in which a presumption in favor of access does not apply. In *Dennis*, "the Government concede[d] the that the importance of preserving the secrecy of the grand jury minutes is minimal and also admit[ted] the persuasiveness of the arguments advanced in favor of disclosure[.]" 384 U.S. at 871-72. Thus, it could not "fairly be said that the defense has failed to make out a 'particularized need.'" *Id.* at 872. No such concession or admission has been made by the Warden in this case. Further, the defendant in *Dennis* had identified four key trial witnesses about whom grand jury minutes existed, and sought those minutes for the purpose of cross-examination. *Id.* at 875. No such analogue exists for Davis. As to the example Davis cites for needing to inspect the transcript—Cozette Massey's inconsistent identification of Davis as the shooter (among other, unspecified eyewitness statements) (Objections, ECF No. 57, PageID 9913)—Davis provides no reason as to why he thinks that evidence is only obtainable through the grand jury transcripts. After all, Massey testified at trial (Trial Tr., ECF No. 5-2, PageID 7227), and counsel had the opportunity to impeach her on cross-

43

examination.  Contrary to his argument (Reply, ECF No. 63, PageID 10014-15), Davis cites to no caselaw suggesting that mere inconsistent statements constitute the "particularized need" to inspect the transcripts.   In sum, even under a *de novo* standard, his objection must be overruled.

### 4.        Claim Thirteen:  Discriminatory Selection of Grand Jury Foreperson in Violation of Fifth, Sixth, Eighth, and Fourteenth Amendments

"Davis claim[ed] that the Presiding Judge of the Court of Common Pleas selecting the grand jury foreperson, who need not be part of the venire, is arbitrary and the resulting selection process is racially discriminatory, and thus, unconstitutional." (Report, ECF No. 51, PageID 9699, citing Petition, ECF No. 6, PageID 8717).  The Magistrate Judge recommended that the claim be dismissed as speculative, as the only argument Davis offered in support of the discrimination argument was that in Hamilton County, adjacent to Butler County, the presiding judge of the Court of Common Pleas selects the grand jury foreman, and that African-Americans and women were underrepresented there by a statistically significant amount from 1982 through 1998.  *Id*.

Davis argues that the Magistrate Judge, by using the "clearly erroneous or contrary to law" standard, improperly applied AEDPA deference when there was no state court adjudication on the merits of that fairly presented claim (Objections, ECF No. 57, PageID 9915, citing *Davis VIII*, 86 Ohio St. 3d 212; State Court Record, ECF No. 4-27, PageID 2965).  Yet, this argument was raised for the first time in Davis's untimely Rule 26(B) motion (State Court Record, ECF No. 4-25, PageID 2809-10).  As discussed above, default for failure to file a Rule 26(B) Motion in a timely manner is a consistently enforced sanction for procedural default purposes.  Thus, regardless of the standard applied by the Magistrate Judge, the claim is procedurally defaulted, and Davis's objection is overruled.

5.      **Claim Fourteen:  Trial Court Prohibiting Elbert Avery from Testifying During Guilt Phase**

Davis argued that the trial court's unwillingness to allow Elbert Avery to testify for the purpose of impeaching fellow defense witness Anthony Ferguson "deprived him of his fundamental right to present a complete defense."  (Report, ECF No. 51, PageID 9700, citing Petition, ECF No. 6, PageID 8720-21; *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967).  The Magistrate Judge concluded that the state court was correct in finding the claim barred by *res judicata* for failure to raise it on direct appeal, and that "[t]his adequate and independent state ground forecloses habeas relief."  *Id*., citing *Davis VI*, 1996 WL 551432, *9.  He concluded that Davis's argument that ineffective assistance of appellate counsel was cause to excuse the default was itself defaulted by counsel's failure to properly raise the issue in his untimely filed application to reopen direct appeal.  *Id*. at PageID 9700-01.

For the reasons stated above, *res judicata* for failure to raise on direct appeal and failure to file a timely Rule 26(B) application are adequate and independent state grounds for procedural default and, thus, foreclose this Court's review of the claim.  This is especially true when, as here, there are two levels of procedural default.  While Davis argues that capital and non-capital appellants are treated differently in their applications to reopen (Objections, ECF No. 57, PageID 9918-19), he cites no data or caselaw in support.  Davis's Reply deals only with the merits and does not address procedural default (ECF No. 63, PageID 10015).  Davis's objection is overruled.

6.      **Claims Fifteen and Sixteen:  Capital Specification was Invalid, and Counsel Failed to Investigate the Underlying Crime**

As to Claim Fifteen, Davis argued that he killed his estranged wife Ernestine "in a heat of passion and without any premeditation or purpose, and thus, lacked the requisite *mens rea* for the specified prior offense" of second-degree murder, which was defined at the time as purposeful

killing. (Objections, ECF No. 57, PageID 9720-21, citing Ohio Rev. Code § 2929.04(A)(5); State Court Record, ECF No. 4-19, PageID 2028-29; Petition, ECF No. 6, PageID 8722-23). Absent a proper death specification or other aggravating circumstance, Davis argued, his "conviction on this aggravated specification and his death sentence are unconstitutional and must be vacated." (Petition, ECF No. 6, PageID 8723). The Magistrate Judge, declining to rule whether the claim was procedurally defaulted, found the claim meritless. He noted the letter from Robert Jones Beard, Davis's neighbor who witnessed the killing and, years later, wrote that Davis did so in the midst of a heated argument. However, the Magistrate Judge concluded that letter was not enough to overcome his guilty plea for second-degree murder, which at the time required a finding of purposeful killing, such that "the prior conviction was infected with constitutional error." (Report, ECF No. 51, PageID 9702, quoting *Davis IX*, ECF No. 16-2, PageID 8969).

Davis restates his argument that Beard's letter demonstrates that Davis could not have had the *mens rea* to commit second degree murder, and that this Court has jurisdiction to review the earlier conviction's validity when, as here, Davis is attacking that conviction and, consequently, the sole capital specification (Objections, ECF No. 57, PageID 9922). Davis notes that the Warden does not respond to the objection that Judge Graham did not find it procedurally defaulted, (Reply, ECF No. 63, PageID 10016, citing *Davis IX*, ECF No. 16-1, PageID 8924-25, ECF No. 16-2, PageID 8967-74; Report, ECF No. 51, PageID 9702; Objections, ECF No. 57, PageID 9921), and argues that, contrary to the Warden's assertion, Davis is not trying to vacate his prior conviction, but to examine the prior conviction as a sentencing enhancement. *Id*. at PageID 10016-17. Davis does not meaningfully address the Magistrate Judge's well-reasoned conclusion that a single letter written years after his conviction does not outweigh his tacit admission, via his guilty plea for second-degree murder, that he purposefully killed Ernestine  The Court finds there was no

46

constitutional error in the underlying conviction, and Davis's objection is overruled as to Claim Fifteen.  Because the underlying claim was not meritorious, even if "counsel did not even make an informed decision to abandon an investigation or argument based on this evidence[,]" *id.* at PageID 10011, that failure could not have been prejudicial under *Strickland*.  Davis's objection as to Claim Sixteen is overruled as well.

### 7.     Claim Seventeen:  Denial of Motion to Sever

"Davis claim[ed] that the trial court's denial of his motion to sever Counts One (aggravated murder) and Two (possessing a weapon under a disability) caused him to waive his right to a jury trial and proceed before a three-judge panel."  As his waiver was not knowing, intelligent, and voluntary, "the unconstitutional waiver of his jury right was a structural error, for which no showing of prejudice is required."  (Report, ECF No. 51, PageID 9703).  He also argues that he was prejudiced because the denial of his motion meant that the prior conviction was admitted, whereas it would have otherwise "been excluded from trial of the aggravated murder count under Ohio R.Evid. 403."  *Id.*  Had the prior killing been excluded, Davis argued, there is a reasonable probability that a jury would not have voted to convict him and sentence him to death.  *Id.*, citing *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *Sullivan v. Louisiana,* 508 U.S. 275, 280-82 (1993); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942); Traverse, ECF No. 29, PageID 9304-06.  The Magistrate Judge rejected Davis's argument that the Supreme Court of Ohio only evaluated his state law claims and recommended dismissal even if a *de novo* review were proper, as the claim was "speculative at best."  *Id.* at PageID 9703-04, citing *Spencer v. Texas*, 385 U.S. 555, 562 (1962); *Davis II*, 38 Ohio St. 3d at 364.

Davis raises two main objections.  First, he claims that the Magistrate Judge's focus on

prejudice was misguided, as violation of a right to a jury trial—which is what the denial of the motion to sever was—is structural error (Objections, ECF No. 57, PageID 9929, citing *Sullivan*, 508 U.S. at 281-82). Second, the prejudice was more than speculative, as evidence of the prior conviction would have made a jury much more likely to convict him because they thought he was a bad guy, not because he killed Suzette Butler. *Id*. at PageID 9930, quoting *United States v. Bell*, 516 F.3d 432, 446, 448 (6th Cir. 2000). Moreover, the jury almost certainly would not have heard testimony about his killing of Ernestine, as Davis's attorneys stipulated to the prior conviction. Taken together, the "trial court's refusal to sever the charges represented 'an arbitrary disregard of [Mr. Davis's] right to liberty' and accordingly violated his due process rights." *Id*. (brackets in original), quoting *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); citing *Old Chief v. United States*, 519 U.S. 172, 174 (1997).

As a petitioner claiming a federal constitutional violation based on a state court application of state law, Davis faces the heavy burden of showing "that misjoinder of the counts 'result[ed] in prejudice so great as to deny a defendant his ... right to a fair trial.'" *Davis X*, 475 F.3d at 777 (brackets in original), quoting *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). Neither Davis in his Objections or Reply nor the Warden in his Response acknowledged that the Sixth Circuit already extensively discussed and rejected this claim in *Davis X*. *Id*. at 776-79. Davis does not explain what new caselaw or argument has been presented that either: (a) is more persuasive than what was before the Sixth Circuit in *Davis X*; or (b) would lead this Court to conclude that the holding or reasoning in *Davis X* should not apply as to the instant Petition. In *Davis X*, the Sixth Circuit concluded that "[b]ecause the denial of Davis's motion for severance did not constitute a denial of the petitioner's due process right to a fair trial, that ruling cannot be said to have rendered his waiver of a jury trial involuntary." *Id*. at 778-79. There being no compelling reason presented

to depart from the appellate court's well-reasoned discussion and conclusion, the Court overrules Davis's objection.

### 8. Claims Eighteen and Twenty:  Death Sentence is Disproportionate, and the Product of a constitutionally Inadequate Proportionality Review

"In Claim Eighteen, Davis argue[d] that the trial court panel's conclusion that the sole aggravating factor, his 1971 homicide conviction, outweighed the extensive mitigation evidence presented resulted in a death sentence that was disproportionate, in violation of the Fifth and Fourteenth Amendments[.]"  (Report, ECF No. 51, PageID 9705, citing *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991); Petition, ECF No. 6, PageID 8732; Traverse, ECF No. 29, PageID 9313, Ohio Rev. Code § 2929.05).  "In Claim Twenty, which is closely related, Davis argue[d] that the Supreme Court of Ohio's proportionality review, by comparing Davis only with cases in which a death sentence was imposed, did not comport with due process."  *Id*. at PageID 9705-06, citing *State v. Taylor*, 78 Ohio St. 3d 15 (1997), *writ of habeas corpus granted at Taylor v. Mitchell*, 296 F. Supp. 2d 784 (N.D. Ohio 2003); *State v. Mapes*, 19 Ohio St. 3d 108 (1985), *conditional writ of habeas corpus aff'd at Mapes*, 388 F.3d 187; Petition, ECF No. 6, PageID 8739).  The Magistrate Judge rejected both claims, noting that no case had found a death sentence disproportionate when the single aggravating circumstance was a prior homicide, and that no case had held that a sentencing scheme such as Ohio's—in which the case is only weighed against cases in which a death sentence has been imposed—"shocked the conscience" for Fourteenth Amendment purposes.  *Id*. at PageID 9706-07.

Davis concedes that the Supreme Court of Ohio adjudicated and rejected the merits of Claims Eighteen and Twenty (Objections, ECF No. 57, PageID 9933-34; *see also Davis XIV*, 2014-Ohio-1615 at ¶ 117).  Davis objects that the adjudication was contrary to law because the

state court only compared Davis to cases in which death sentences were upheld but subsequently vacated. "In other words, the court cited two cases factually similar to Mr. Davis's where the death penalty was *not* appropriate, and did not cite any case similar to Mr. Davis's where a death sentence passed scrutiny under federal review." *Id*. at PageID 9934. Yet, as the Magistrate Judge pointed out, the death sentences in *Taylor* and *Mapes* were vacated for reasons other than lack of proportionality (Report, ECF No. 51, PageID 9707). Davis points to no case in which a prior homicide serving as the sole aggravating factor was insufficient to outweigh the mitigating evidence. In other words, Davis has offered no reason why the *Davis XIV* decision was even wrong, much less contrary to clearly established federal law, as is required for habeas relief. Moreover, Davis cites Supreme Court precedent for the general proposition that disproportionate death sentences, or sentences imposed arbitrarily or irrationally, violate the Eighth and Fourteenth Amendments (Objections, ECF No. 57, PageID 9933, 9934, quoting *Parker v. Dugger*, 498 U.S. 308, 321 (1991); citing *Callins v. Collins*, 510 U.S. 1141, 1145 (Blackmun, J., dissenting from denial of certiorari); *Coker v. Georgia*, 433 U.S. 584, 592 (1977); *Gregg v. Georgia*, 428 U.S. 153 (1976)). Yet, none of those cases suggests that a death sentence imposed with the single aggravating factor of a prior homicide—even against substantial mitigation evidence—is so disproportionate or unfair as to be cruel and unusual punishment under the Eighth Amendment or "shock the conscience" for Fourteenth Amendment purposes. Nor do they suggest that the comparative analysis undertaken by *Davis XIV* rendered the death sentence arbitrary or irrational.

Davis incorporates his main arguments on proportionality (Claim Eighteen) and shocking the conscience (Claim Twenty) (Reply, ECF No. 63, PageID 10019). He also takes issue with the Warden's reliance on *Getsy v. Mitchell*, "for the proposition that there is no proportionality review requirement that a death sentence be compared with the sentences imposed in other cases." *Id*. at

PageID 10018-19, citing 495 F.3d 295, 309 (6th Cir. 2007) (*en banc*); Response, ECF No. 60, PageID 9989.  "As Mr. Davis explained in his Traverse, the Sixth Circuit based its conclusion on a misreading of *Pulley v. Harris* that is contrary to the clearly established federal law contemplating fundamental statutory protections[.]"  *Id*. at PageID 10019, citing *Pulley*, 465 U.S. 37, 44-51 (1984).  The Court need not reach this issue because, as discussed above, the Supreme Court of Ohio *did* conduct a proportionality review, and that review was not constitutionally infirm.  Davis's objections as to Claims Eighteen and Twenty are overruled.

### 9.    Claim Nineteen:  Insufficient Evidence to Support a Conviction for Aggravated Murder

Davis argued that there was insufficient evidence to prove the prior calculation and design element beyond a reasonable doubt, and "thus, his conviction and death sentence were unconstitutional."  (Report, ECF No. 51, PageID 9708, citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *State v. Robbins*, 58 Ohio St. 2d 74 (1979); *State v. Cotton*, 56 Ohio St. 2d 8 (1978); Petition, ECF No. 6, PageID 8737-38).  The Magistrate Judge, reviewing the three factors that Ohio courts consider with respect to prior calculation and design, concluded that the finding by the trial court of prior calculation and design was not unreasonable *Id*. at PageID 9709-10, citing *Taylor*, 78 Ohio St. 3d at 19.

Davis notes that the Magistrate Judge was equivocal as to the second (thought and preparation as to murder weapon or location) and third (drawn out or instantaneous killing) factors (Objections, ECF No. 57, PageID 9938, citing Report, ECF No 51, PageID 9709), and claims that the Magistrate Judge erred in his analysis of the first factor (whether the parties knew each other and if their relationship was strained).  *Id*. at PageID 9937-38.  Davis argues that the State presented no evidence of a strained relationship between Butler and him, whereas Davis "said that they

separated by 'mutual agreement,' that there were no hard feelings, that he had still kept some of his possessions at her home, and that he had even gone out for breakfast with Ms. Butler after the separation." *Id*., citing Trial Tr., ECF No. 5-3, PageID 7542-45. Yet, there was also some evidence that Butler had called the police on Davis shortly after the breakup (Trial Tr., ECF No. 5-3, PageID 7545). Further, as the Magistrate Judge pointed out, there was evidence, albeit conflicting, that Davis had given prior thought to the murder weapon (bringing a loaded gun into the American Legion) and that the confrontation was drawn out (more than thirty minutes elapsing from entering the American Legion until Davis killed Butler) (Report, ECF No. 51, PageID 9709). Thus, even if the undersigned were to agree with Davis that "if anything, Mr. Davis shooting Ms. Butler in the heat of the moment during an argument, and *not* that he had a scheme in place designed to implement the calculated decision to kill her[,]" (Objections, ECF No. 57, PageID 9939 (emphasis in original)), such agreement would be immaterial. The role of this habeas Court is not to stand in the shoes of the factfinder, but to determine whether the trial court's conclusion "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). As a finding beyond a reasonable doubt that Davis exhibited prior calculation and design is not unreasonable, Davis's objection is overruled.

## III.  CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report (ECF No. 51) is ADOPTED in full except as where expressly set forth below. Davis's Petition (ECF No. 6) is DENIED and DISMISSED WITH PREJUDICE. Judgment shall enter in favor of the Warden and against Davis. No reasonable jurist would find that Davis "has made a substantial showing of the denial of a

constitutional right," 28 U.S.C. § 2253(c)(2), or would disagree with this conclusion with respect to Claims One through Three, Five through Ten, Twelve through Twenty-One, and Twenty-Six, and Petitioner is denied a certificate of appealability on those claims.  However, reasonable jurists could disagree with the undersigned with respect to the cognizability of Claims Twenty-Two through Twenty-Five, and if Davis's argument is correct, he may be able to make the showing required under 28 U.S.C. § 2253(c)(2).  Reasonable jurists could also disagree with the undersigned's conclusions as to Claims Four and Eleven.  Davis is granted a certificate of appealability only as to those claims.  Because Davis's appeal on these issues do not lack a basis in law or fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Coppedge v. United States*, 369 U.S. 438, 445 (1962), Davis is permitted to proceed *in forma pauperis*.

The above-captioned cause is hereby ordered terminated upon the docket of the United States District Court for the Southern District of Ohio.

*IT IS SO ORDERED.*

March 29, 2021.

S/Susan J. Dlott_____
    Susan J. Dlott
    United States District Judge